Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669

**FILED**

Aug 18, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,
      Plaintiff,

    vs.

Robert Puckett, Sr.; Clint Dingman; Michele
Hanson; Melissa Tulledo; Hornbrook
Community Services District; Bruce's
Towing/Radiator & Dismantling; John Does 1-
20

      Defendants,

)
)
)
)
)
)
)
)
)
)
)
)

Case No:  2:21-cv-1482 KJM DMC (PS)

**COMPLAINT
(JURY TRIAL REQUESTED)**
ACTION AT LAW FOR CIVIL RIGHTS
VIOLATIONS; VIOLATIONS OF THE
AMERICANS WITH DISABILITIES ACT;
PENDENT STATE CLAIMS

REQUEST FOR PRELIMINARY AND
PERMANENT INJUNCTIONS, AND FOR
DECLARATORY RELIEF

**EMERGENCY RELIEF REQUESTED**

USC 42 §§1983, 1985, 1986, 1988, and 12l31-
12134

---

## JURISDICTION

1. Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of
the United States Code, as arising under the Constitution and laws of the United States,
specifically Amendments 1, 4, 5, and 14 of the United States Constitution; The Americans with
Disabilities Act ("ADA"); and, sections 1983, 1985[1], 1986, 1988, and 12131-12134 of Title 42
of the United States Code, as an action seeking redress of grievances for violations of rights and
privileges secured to Plaintiff Kimberly R. Olson ("Plaintiff") by the Constitution and Laws of
the United States.  Supplemental jurisdiction (Section 1367) is asserted over Plaintiff's pendent

---

[1] Concerning Plaintiff's federal claims, and her equal protections claims generally, Plaintiff asserts that
she was singled out for disparate and discriminatory treatment by the defendants, who had no rational
basis to do so other than their malicious intent to retaliate against Plaintiff as a "class of one" for bringing
legal actions against the HCSD.  See, generally, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000);
*Indiana State Teachers Ass'n v. Board of Sch. Comm'rs,* 101 F.3d 1179, 1181 (7th Cir. 1996) ("The
equal protection clause does not speak of classes.  A class, moreover, can consist of a single member.").
Plaintiff also alleges discrimination and refusal to accommodate based upon her disabled status.

state law claims for relief - including, but not limited to, common torts, violations of State laws, violations of the Hornbrook Community Services District Bylaws ("Bylaws"), and/or the Hornbrook Community Services' District's ("HCSD" or "District") operational policies or procedures specified on the District's website at https://hornbrookcsd.specialdistrict.org/district-transparency ("Operational Policies" or "Policies" hereinafter)[2]. This action is also brought in the name of all persons similarly situated to Plaintiff, as a Private Attorney General, and as provided by the HCSD Bylaws at Section A-9(26).[3] Times material to this complaint, so far as is known to Plaintiff after reasonable investigation, are July 1, 2021, through and including the date of filing of this action, and ongoingly as specified. All claims in this complaint are based upon conduct which occurred, or was discovered[4], during this time period, and within Siskiyou County, California.

## PARTIES

2. Defendants Robert Puckett, Sr. ("Puckett"), Clint Dingman ("Dingman"), Michele Hanson ("Hanson"), and Melissa Tulledo ("Tulledo") are citizens of Siskiyou County, California, and are the Directors and employees of Defendant Hornbrook Community Services District, a public entity providing domestic water to the community of Hornbrook, and operating wholly within the County of Siskiyou, a political subdivision of the State of California, created, and at all times material operating, as an independent special district[5] under the laws of California and of the United States, as well as its own duly adopted Bylaws and Policies, and subject to their jurisdiction. Defendant Bruce's Towing/Radiator & Dismantling ("Bruce's Towing") is a business operated and licensed within the City of Yreka, itself within the County of Siskiyou, California, which business acted knowingly, willfully, and recklessly by accepting the directions

---

[2] The HCSD Bylaws, adopted on April 18, 2014, and the rules and regulations of the HCSD listed on its website as "Operation Policies" are hereby incorporated herein to the extent necessary to make out any applicable claims and/or allegations, and/or any basis for relief sought.
[3] Among other sections thereof. A true copy of the HCSD Bylaws as adopted and ratified on April 18, 2014 will be concurrently lodged, and they are incorporated herein as referenced.
[4] Under law, a cause of action for a claimed harm accrues on the date of its discovery by the Plaintiff. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.) "Claimed harm" refers to all of the elements of the cause of action, which must have occurred before the cause of action can be said to accrue, and the limitation period begins. (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1029.) Federal law applies a similar rule. See *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998) ("[F]ederal law determines when the limitations period begins to run, and the general federal rule is that 'a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action.'").
[5] Special Districts are primarily controlled by California Government Code sections 61000, *et seq.*, and in this case, the California Water Code.

and instruction of Defendants Puckett, HCSD, Dingman, and the John Doe Siskiyou County

Sheriff's Deputies[6], in trespassing onto Plaintiff's property located at 408 Henley-Hornbrook Rd.,

Hornbrook, California[7] on July 20 and July 23, 2021, then and there acting to seize property and

otherwise violate Plaintiff's rights as described below.  Such action rendered Bruce's Towing a

"joint actor" with the government agency defendants for purposes of the herein 42 USC §1983,

and related claims.

    3. The HCSD was at times material to this complaint governed by a Board of Directors

consisting in relevant part of President Robert Puckett, Sr., Secretary Michele Hanson, and

Director Melissa Tulledo, who are collectively referred to herein as "the Board Defendants", with

the agreement, assistance, ratification, and aid of employee Clint Dingman ("Dingman"[8]).  Some

of the Defendant John Does are Deputies of the Sheriff of Siskiyou County, and employed by the

Siskiyou County Sheriff's Department.  Those Defendants herein identified as being employed

by, or who are officers of, any public entity or agency are also collectively referred to herein as

"government entity" and/or "public officer/employee" Defendants.  Each of these persons

engaged in wrongful (and sometimes unlawful) agreements, and joint actions towards their

shared wrongful goals with each and all of the other Defendants, and also acted at all times

material as agents of, and in joint action with, the HCSD, Board Defendants and Dingman.  Most

notably, Plaintiff alleges on information and belief that the Board Defendants and Dingman

cooperated and acted together, and with the other Defendants, to take the wrongful, illegal,

and/or civil rights-violating actions against Plaintiff as part of a scheme to retaliate against

Plaintiff for filing governmental complaints and legal actions involving the HCSD, because her

doing so was threatening ~$6.5 million in various fundings targeted via agencies of the State of

California, and the USDA, to the HCSD that the Board Defendants hoped to profit from, as well

as an "emergency grant" of some $800,000 for a single new well.

    4. Plaintiff Kimberly R. Olson ("Olson") is a taxpayer, elector, property owner, resident,

and citizen of Siskiyou County, California, and of the HCSD, and a water customer of the

HCSD, which supplies the only source of potable water to Plaintiff's home, and has done so

pursuant to contract since 2006.  Plaintiff is also a disabled person under State and Federal laws

---

[6] Some of the John Doe Defendants are Siskiyou County Sheriff's Department law enforcement Deputies. Their names and positions are unknown to Plaintiff at this time.

[7] The HCSD has no right of entry onto Plaintiff's land except by her express permission, as it holds no easements thereon.

[8] In his individual, and official capacities as the HCSD's Systems Operator, shift operator, "acting general manager", watermaster, and/or water plant operator.

who suffers from mobility and other disabilities as a result of spinal damage and associated surgeries, and who is entitled to reasonable accommodations by the governmental Defendants, their agents, and employees under Title II of the Americans with Disabilities Act ("ADA") - including in regards to her rights to notice and other due process as provided by federal, state, and local laws. This action is also brought in the name of all persons similarly situated to Plaintiff (if any there be), as a Private Attorney General where permitted by law, and as provided by the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030.  Concerning Plaintiff's pendent state claims herein, Plaintiff timely and properly provided <u>written</u> notice(s) of her state-law claims to the public employee, entity, and agency Defendants (HCSD, Dingman, Board Defendants) in <u>full compliance</u> with all  requirements of the **California Government Tort Claims Act**, <u>Government Code</u> sections 905[9], 910, and 915[10].  The HCSD, Board Defendants, and its employees failed to respond to Plaintiff's claims.

### OVERVIEW AND BASIS FOR CLAIMS/ACTION

5.  On July 20, and July 23, 2021, the HCSD, Puckett, Dingman, Bruce's Towing, and the John Doe public officer/agent Defendants, while acting under color of law, and of their offices as public officer/employees, agreed and acted as participants of an ongoing wrongful agreement and plan to wrongfully, absent any due cause, without any notice, warrant, or due process, trespass onto Plaintiff's land in order to seize (and ultimately convert) Plaintiff's property, that of her overnight guests, and service contractors[11].  While doing so on July 20, 2021, these Defendants[12] additionally, without due cause, notice, or due process of law[13], wrongfully **cut off**

---

[9] The HCSD took no action on the claims (incorporated herein), failing to respond to the claims notice (see CA Govt. Code 910.8; 911; *Martinez v. County of Los Angeles*, 78 Cal.App.3d 242, 245 (1978)).
[10] Plaintiff notes that no compliance with the Tort Claims Act is required as to Bruce's Towing, nor for her Federal and/or Constitutional claims against these Defendants, nor as to those against the Siskiyou County agents/officers.  Tort claims notices relating to any later-amended pendent state claims as to the Siskiyou County public officer Defendants (as well as any later-discovered state agency John Does) will be timely presented and processed.
[11] This property included Plaintiff's water meter, a utility van belonging to a plumbing contractor hired by Plaintiff, and a 2001 Honda CR-V belonging to Olson's Personal  Caregiver (actually seized <u>twice</u>).  The Defendants also destroyed some of Plaintiff's landscaping and bushes while unlawfully seizing property. The Defendants also actually <u>seized a portion of Plaintiff's driveway</u> by declaring that neither she, nor any of her guests, could use it without their vehicles being towed without warning or other due process. Seizures of property without a warrant or determination by a Court are *per se* unreasonable under the Fourth Amendment, and it is the burden of the government agency undertaking the seizure to prove its legitimacy in every respect. See, i.e., *United States v. Hawkins*, 249 F.3d 867, 872 (9th  Cir. 2001)
[12] Plaintiff is informed and believes that some supposedly official acts, including assertion and/or assignment of executive, and/or *ex parte* and/or *ultra vires* power to Puckett and/or Dingman alleged herein, were actually unilaterally taken by Dingman and/or Puckett with the agreement, encouragement,

**the domestic water supply to Plaintiff's home** from the HCSD system, and prevented Plaintiff from getting alternative water service by seizing (by plugging, and locking off) the <u>residence side</u> of the water supply *piping* to Plaintiff's home, which piping is wholly on Plaintiff's land, and is her personal property. Further, the HCSD and Puckett thereafter stated that neither Plaintiff, nor her agents, contractors, nor overnights guests could use certain portions of Plaintiff's driveway upon pain of further unlawful (and without notice) seizures - thus committing a government taking of Plaintiff's land. All these actions inflict serious, ongoing harm to Plaintiff, and left her without means to redress those wrongful acts other than by injunction, and/or TRO. **<u>Plaintiff therefore seeks an emergency order of this Court to restore her water service.</u>**

    6. Since the dates of the above actions, <u>despite Plaintiff's written request for an explanation of the termination, return of her property, and for restoration of her water service,</u> as well as notification to the Defendants by Plaintiff that she is a person coming under the protection of Health and Safety Code §116910, Defendants HCSD, Puckett, Hanson, and/or Dingman have refused and failed to comply with any due process, even just that of the HCSD's own Policies and Bylaws, or to otherwise provide Plaintiff Olson with <u>any</u> information on the basis for the seizures and water shut off, or as to the availability of any challenge, hearing rights, or other means by which she may get her water service back on. The monthly billing Plaintiff received from the HCSD <u>after</u> the seizures and discontinuation of water service does not show **any** fines, surcharges, or other information that would permit Olson to determine the process by which to reinstate service. The inaction and disregard by the Defendants for Plaintiff's rights and safety is aggravated by the Declaration of Disaster for Siskiyou County, issued August 5th, 2021 by Governor Newsom on the basis of the fires sweeping the area[14], and the fact that Heat Warnings, with temperatures exceeding 105 degrees, have predominated in the area surrounding

---

and ratification of Hanson and Tulledo **outside** of any <u>official</u>, properly noticed, and/or or agendized Board meetings, and without compliance with Gov. Code §61045 - for the purpose of concealing such unilateral acts from the public, and Plaintiff, and to prevent opposition to those wrongful acts via direct petitioning activities, and the provisions of the HCSD Bylaws and Policies. All such acts also violate the provisions of Govt. Code section 61045, among other laws, and so are void in the legal sense of the term.
[13] See, i.e., *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978). Plaintiff was not given **any** information on how to challenge the actions taken against her, or how to pay any amounts necessary (or take any other actions required) to restore service. It is plain that the Defendants' goal is to permanently deprive Plaintiff of any domestic water service.
[14] Olson is a survivor of the Klamathon fire of 2018. Her home was saved only due to the quick action of her Caregiver and neighbors, who saved an entire block of homes using only garden hoses. Sadly, that protection is not now available to Olson thanks to the wrongful actions of these Defendants in terminating her water service. Governor Newsom has also issued Executive Order N-42-20 which set a (currently effective, and ongoing) moratorium on the shut off of water service to customers.

and encompassing Plaintiff's home for most of July and August. As a result of Defendants' actions, Plaintiff, who subsists on a fixed income, has had to borrow and expend substantial sums in constructing a system of temporary pumps, plumbing, and storage for potable water to her home, and have potable water delivered by truck on a regular basis at great cost[15].

7. On information and belief, Plaintiff alleges that these Defendants engaged in the foregoing described acts as part of an agreement and coordinated plan amongst them to act maliciously, with reckless disregard for Plaintiff's rights and any harms that may befall her as a result of their actions, and acted to engage in enforcing and/or implementing written and unwritten policies, customs, or practices of the HCSD under color of law and of their official positions with the HCSD and the Siskiyou County Sheriff's Department that advanced these wrongful goals and actions. Further, in regards to the HCSD, Board Defendants, and Dingman, the acts were additionally calculated to retaliate against Plaintiff for her political and legal activity in opposition to them[16], all with deliberate indifference to Plaintiff's statutory and Constitutional rights. These Defendants also thus jointly acted to systematically and wrongfully stifle, deny, suppress, and thwart, Plaintiff Olson's Rights under the federal and State constitutions, statutory rights[17], as provided in the HCSD's Bylaws and Policies, and specifically inclusive of her First Amendment, and Equal Protection rights[18], partly in order to vindictively retaliate against Olson for exercising those, and other statutory rights. These Defendants agreed, and acted to do so by acting as stated above, but also by wrongfully ignoring any applicable statutory or Constitutional mandates, the requirements of the HCSD's Operational Polices, and/or

---

[15] Additionally, use of this temporary system is only possible because the outside temperatures are currently above freezing, and Plaintiff's lack of income and funds means she has no way to keep contracting for deliveries, so no dependable domestic water supply with her service cut off..

[16] Over the past several years, Plaintiff has brought multiple legal actions against the HCSD and its officers for violations of the Brown Act (prevailing on many in both the trial court, and the Third District Court of Appeals of California), filed complaints concerning its operations with multiple government agencies, and has assisted others in doing those things as well, much to their angst and irritation. In fact, Puckett seized the opportunity while he was on local television to complain about some of that litigation. See news story on the Channel 10 Medford, OR station at: https://ktvl.com/news/local/amid-water-crisis-small-community-takes-matters-into-its-own-hands  The leak featured on the news story was caused by a 1/2" hole in the water main, which at 60-70 PSI of water pressure lost 25,000 gallons per day for many weeks or months, during which time the HCSD and Board Defendants did nothing to find or fix the leak.

[17] Including, but not limited to, Water Code §106.3.

[18] The governmental entity/agent Defendants specifically plotted, and agreed to take action in furtherance of, the plans to bring baseless, wrongful, unconstitutional governmental and other actions against Plaintiff - but without utilizing the same tactics or actions against any other customers of the HCSD besides Plaintiff - leading to the reasonable inference that every supposedly official "emergency" act during the month of July was (at least in part) a ruse/pretext abusing governmental power to provide "cover" for adverse actions taken against Plaintiff in that same month.

the Bylaws' provisions of certain aspects of HCSD operations relating to their conduct towards Plaintiff.  Finally, the HCSD Board Defendants corruptly misused their official positions and authority to gain access to Plaintiff's personal information as contained in her water account with the HCSD, and provided that information to third parties to engender ridicule and ill-will towards Plaintiff, without Plaintiff's consent, violating her right to privacy, and the Information Practices Act of California.

8.  The HCSD and Board Defendants have also failed and refused to respond as required by the United States and California Constitutions, and State and local laws to Plaintiff's demands for notice, due process, statements of account, CPRA requests, and other inquiries related to her demand for immediate return of her property, and reconnection of her domestic water supply.

9.  During the month of July, 2021, the HCSD and Board Defendants along with the aid, assistance, encouragement, and/or ratification of those other named defendants as detailed herein, and as part of the plan to take the wrongful actions against Plaintiff detailed herein, including, but not limited to, terminating her water service without any due process, wrongfully agreed, planned, and acted to violate the provisions, requirements, and restrictions upon them imposed by: the Constitutions of the United States and of the State of California, and the statutes of California, including, but not limited to: the Brown Act; Water Code Sections 350-357; Government Code Sections 53069.4, 61045, 61050, and 61051; the HCSD Bylaws; and, the HCSD Policies.  The HCSD and Board Defendants did so in part by means of: holding non- or improperly-noticed Board meetings at which they purportedly took various official actions; taking an/or adopting certain (often pretextual) resolutions, motions, ordinances, and other actions that did not meet the statutory and/or administrative procedural requirements for them to do so, which were arbitrary and capricious, while also failing to make proper administrative findings supported by any substantial evidence for those purported actions[19]; failing to undertake diagnostics needed to competently operate the water facilities, and to make needed and necessary repairs to the HCSD water production, storage, and distribution systems in order to create the false perception of an "emergency"; failing to create and/or post on the HCSD website those

_____

[19] As well as creating definitions for words which are in direct conflict with existing definitions throughout the Codes of California, and making findings and actions that are not reasonable extensions of the evidence before the Board.  Further, those action occurred without any proper notice or opportunity to be heard by Plaintiff, nor any of the other electors of the HCSD, or the public.  Plaintiff further alleges some of the HCSD and Board Defendants' actions violated Government Code §§25120, 25123(d), 25124, 25131, and 25132.

documents they were required to create and post thereon and in the manner required by law[20];
and, taking and/or adopting certain actions, individual resolutions, motions, and/or ordinances
that were legally defective on the basis of conflict with the Constitutions and laws of the United
States and/or the State of California, and so void also on that basis both on their face, and as
applied to Plaintiff Olson, such that they are each and all unenforceable.

10. All claims made herein are brought against the natural person defendants in their
individual, as well as their official capacities to the extent permitted by law, and the
circumstances of each of the claims made against them.

11. By naming the Board Defendants and the HCSD as co-Defendants, Plaintiff has
intended to comply with the provisions of California <u>Government Code</u> 815.3 throughout each
applicable cause of action herein, whether specifically set forth, or implied in the recitation of
factual allegations. The term "Defendants", when used herein, means all of the named
defendants, and each of them, <u>unless otherwise specified in limiting language</u> (i.e. "each of the
Defendants named in this paragraph", "these Defendants", or similar language in a paragraph).

12. At all times material, each of the Defendants (including John Does), individually,
jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and
employees, officers, directors, board members, ostensible agents, principals, co-conspirators
and/or partners of one another as to any specific act, plan, agreement, coordinated action,
conspiracy, or joint venture as described herein, and that each agreed with, and intended the
reasonably foreseeable outcome thereof, while acting in reckless disregard for any reasonably
foreseeable harms that could have befallen Plaintiff. All Defendants acted pursuant to policies,
customs, and practices of the HCSD, as adopted and/or ratified by the Board Defendants, their
administrators or other directors, operators, employees, contractors, and/or agents. (See also
California Govt. Code §815.3.)

13. Each of the Defendants caused and is responsible for the herein-described wrongful,
unlawful, and/or tortious conduct resulting injuries by: personally agreeing to and participating
in the wrongful conduct; acting jointly, aiding, abetting, or conspiring with others who did so; by
authorizing, ratifying, encouraging, agreeing with, or acquiescing in wrongful conduct and goals;
setting in motion, policies, plans, or actions, that led to the wrongful conduct; or, engaging in
actions which although lawful themselves, were in furtherance of other, unlawful, wrongful,
and/or tortious conduct while knowing the ultimate goals of the conduct and agreements to do so

---

[20] The statutorily deficient HCSD website is located at: https://hornbrookcsd.specialdistrict.org/

were wrongful and/or violated Plaintiff's rights; by failing to take action to prevent the unlawful, wrongful, and/or tortious conduct described in the complaint; and, by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the laws of the United States, the State of California, and/or the HCSD Bylaws.

14. In doing the acts alleged herein, the Board Defendants, Dingman, and John Does 1 through 20, were acting in their official capacity as elected officials and/or public employees/officers, or as a direct agent of an elected or public official or public officer, and/or were "jointly engaged" with a public officer or official while engaging in the alleged wrongful conduct, and/or were acting under color of law, and of such authority as public agency employees, officers, or agents thereof.

15. Although reference is made herein to events and/or circumstances occurring at purported (legal and illegal) meetings of the Hornbrook Community Services District ("HCSD"), by its Board, and/or concerning any Defendant's wrongful purported: authoring of HCSD documents; communications to or with government officials; representations concerning legal actions against the HCSD, Board Defendants, and/or Dingman; and, instructions to, and/or agreements with, the Board Defendants (individually or as a group) and Dingman, occurring in part at any private, or purportedly "closed session" public meeting of the HCSD Board; it is not Plaintiff's intention to base any state law, or common-law tort, cause of action or request for relief, upon any actual filing or statement in a court of law, before any lawfully convened tribunal, or to any enforcement agency; or, to base any such claims upon any statement or other expression of First Amendment rights occurring by any person at any public proceeding, interaction with an enforcement agency, or lawful meeting of any public entity.

**ADDITIONAL ALLEGATIONS AGAINST BOARD DEFENDANTS AND AGENTS**

**A. Additional Specific Allegations Against Board Defendants**

16. At all times material, the Board Defendants, Puckett, Hanson, and Tulledo, were Directors of the HCSD and citizens and residents thereof, and of Siskiyou County, California. Each of the Board Defendants, during the times material to this Complaint, agreed with, aided, and abetted the other Defendants, in acting to wrongfully: engage in purportedly official conduct in violation of the provisions of State laws, and the HCSD Bylaws, and to create, or cause to be created, and to mail and/or email false government documents, to prevent scrutiny and accountability for the HCSD, Board Defendants, and their agents; deprive Plaintiff of her right to procedural and substantive due process; deprive Plaintiff of meaningful access to and right to petition the government for redress of her grievances before an unbiased tribunal; and, to

maliciously inflict harms on Plaintiff by shutting off her domestic water supply and not permitting any method by which that shut off might be challenged, appealed, stayed, or rescinded.

17.  The Board Defendants took these various wrongful actions under color of law , and of their official capacities as public officials and officers, and also failed to properly supervise, train, and/or control, the HCSD employee, Board Member, agent, and/or contractor Defendants so that reasonably foreseeable harm would not befall Plaintiff.

18.  As a result of these failures and wrongful conduct, Plaintiff's statutory rights; her rights to the equal protection of the laws, and the due process of the laws; her right not to have her personal and real property seized without warrant, and/or any due process; her rights to speak and petition the government for redress and without retaliation, were infringed, chilled, denied, and/or violated.  On information and belief, Plaintiff alleges that some John Doe Defendants improperly directed, aided, agreed with, encouraged, assisted, aided, and abetted the Board Defendants in committing that wrongful conduct, and as herein alleged, ratified their conduct.

**B.  Additional Specific Allegations Against Clint Dingman**

19.  At all times material, Defendant Clint Dingman acted as a public officer, employee, and/or agent of the HCSD and/or Board Defendants, while also acting under color of law of his offices as HCSD Systems Operator, shift operator, "acting general manager", watermaster, and/or water plant operator.

20.  During all times material, Defendant Dingman, in agreement with the other Defendants, and in furtherance of the mutual wrongful goals with the Board Defendants, has: helped create and submit false government documents[21]; failed to comply with the duties and responsibilities imposed upon him by the HCSD Policies, and the Bylaws at Sections A-4, A-5-1, and A-7; failed to obtain the approval of the General Manager or of the Board pursuant to Government Code §61045 prior to undertaking various random "duties" for which he has grossly increased the amount of hours for which he demands to be paid[22]; has falsified his timesheets to get paid for work he did not do, and for extra time it did not take him to do what he claims he did; claimed time on his timesheets for "duties" that were never approved by the HCSD Board at a noticed public meeting; agreeing to perform, aiding, abetting and ratifying the wrongful actions

[21] To the HCSD files, and to the SWRCB concerning HCSD water production/treatment/distribution, as well as the grants and loans for which it has applied.
[22] This is technically theft, a waste of taxpayer funds, and a breach of Dingman's fiduciary duty to the District and its customers.

of the other Defendants to retaliate against Plaintiff for protected conduct; and, claimed time for payment from the HCSD for taking illegal actions such as the seizure and conversion of Plaintiff's real and personal property (and that of her contractors and guests), and cutting off the supply of water to Plaintiff's home and property without notice or opportunity for review.

21.  The Board Defendants and HCSD knew of, agreed with, willfully permitted, ratified, and encouraged each instance of the aforementioned wrongful acts by Dingman.  Further, the actions of Dingman were the result of the implementation of, and conduct conforming to, the written and unwritten official policy, custom, or practices of the HCSD as created and implemented by one or more of the Board Defendants, and/or the HCSD itself.  Additionally, HCSD and Board Defendants have failed to insist on training for Dingman, and/or that he comply with any and all HCSD Bylaws and Policies, contractual obligations, and/or State laws concerning Plaintiff and her water service.  These actions directly harmed Plaintiff and resulted in economic, general, and special damages to her.

22.  Dingman's wrongful, improper, and illegal pay increase, and extra hours, above and beyond those stated in his contract with the District, without any action by the Board of the HCSD approving such; along with Board Defendants' and HCSD's ratification of Dingman's false claims of pay rate, number of hours, and hours worked on each of his timesheets, are improper gifts of public funds[23], waste of public funds, and fraud.

## DEFENDANT JOHN DOES

23.  At all times material, defendant John Does 1-20 were board members, policy makers, employees, independent contractors, public officers or agents, instructors, rule enforcers, assistants, co-conspirators, confidants, and otherwise actors and/or agents of the HCSD, the named natural person defendants, the governmental officer and/or agent Defendants, the Board Defendants, and/or of each other.

24.  The true names and capacities of these John Doe defendants is uncertain at this time, but will be substituted to this Complaint as they are definitely determined and/or discovered.

## CIVIL CONSPIRACY BY THE DEFENDANTS

25.  At all times material, the HCSD, Board Defendants, Dingman, and public officer/agent Defendants, wrongfully, improperly, and/or illegally solicited and enlisted the agreement and aid of the other Defendants to promote, accomplish, assist with, legitimize, aid in, and/or ratify each wrongful act and goal of the Board Defendants, the HCSD, and their

---

[23] Cal. Const., Art. XVI, §6; Cal. Const., Art. IV, §17; Govt. Code §8314.

employees and agents (inclusive of John Does) as set forth in the preceding paragraphs, with the ultimate goal being to vindictively, and maliciously, deprive Plaintiff of opportunities to exercise her statutory and Constitutional rights, and to retaliate against her for exercising her rights. Each of these Defendants, with full knowledge of the wrongfulness, and/or unlawfulness of these goals, plans, acts, and methodologies, did in fact agree to, and thereafter acted to, aid, abet, assist in planning and execution, conspire with, and ratify the Board Defendants' and their agents' wrongful conduct and ultimate goals as described in the Complaint.

26.  Plaintiff's allegations of conspiracy, aiding, abetting, ratifying, and/or directly participating in any portion of the conspiracies concerning State laws or common torts detailed in this complaint as to any Defendant also relies upon the general liability as to them by focusing on instances of "substantial assistance" between the Defendants concerning actions undertaken by each and all of them in regards to agreed-upon common objectives  constituting "wrongful conduct"; either their own, or that of another of the Defendants.  See *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303; *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006).

### FIRST CLAIM FOR RELIEF (Federal Causes of Action)

27.  Plaintiff incorporates the foregoing statements of fact and allegations made in this Complaint as if fully set forth.  The term "these Defendants" as used in any particular Count, shall *only* mean the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" generally.  If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has asserted a damages claim, Plaintiff reserves her right to all non-monetary relief.  Plaintiff intends that her claims concerning animus, discrimination, and equal protection be brought on the basis of arbitrary and malicious governmental conduct without rational basis, as a "class of one"[24], and/or as a disabled person as is appropriate to the context of the claim.  As to those causes of action involving the HCSD, Board Defendants, and/or the employees or agents thereof, Plaintiff alleges that each instance of wrongful conduct or rights violation was also result of the implementation of, and conduct conforming to, official policy, custom, or practice of the HCSD as created and implemented by one or more of the Board Defendants, and/or the HCSD itself.

---

[24] *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board  of Sch. Comm'rs*, 101  F.3d 1179,  1181  (7th Cir. 1996) ("The equal  protection clause does not  speak  of classes.  A class,  moreover, can  consist of a single  member.").

### Count I  4th/5th Amendment Violations; Searches and Seizures Without Warrant

28.  The HCSD, Board Defendants, Dingman, and John Does, by trespassing onto Plaintiff's property, seizing her property without warrant or due process, and taking a portion of her driveway exclusively for governmental use without due process or compensation, violated her rights under the 4th and 5th Amendments to the Untied States Constitution.

Further, these same Defendants did improperly and illegally agree and conspire to, and actually did, aid abet, assist each other, and participate in a mutual agreement to act wrongfully as set forth in this complaint, adversely to Plaintiff, and did so willfully, with the intent and common goal being to vindictively interfere with, prevent, impede, and/or coerce Plaintiff into abandoning, and/or to punish her for, her exercise of statutory and constitutional rights: to speak freely; to assemble and/or associate with other citizens for the purpose of petitioning; to petition the government and courts for redress of grievances concerning the wrongful acts of the HCSD and its minions.  These acts by these Defendants also thus deprived Plaintiff of the protections of rights and privileges under federal and State law, as well as the Bylaws and Policies, without notice, opportunity to be heard, or other due process.

### Count II  Conspiracy for Deprivation of Rights: (42 USC 1983)

29.  Plaintiff alleges that the Board Defendants, HCSD, Dingman, and John Does, during times material to this Complaint, knowingly and affirmatively agreed and acted on July 20 and 23, 2021 to willfully and deliberately deny Plaintiff's rights to not have her property seized without any warrant, or without due process, and not to have her water service shut off without notice, opportunity to be heard, and/or information on how to have the service restored; and, failing to abide by the rights and privileges granted by the HCSD Policies and Bylaws' provisions relating to those due process, property, and other rights - instead undertaking such actions and polices in direct contradiction with those provisions without any notice or other due process[25].  Further, these same Defendants acted to deny and interfere with Plaintiff's rights as part of a concerted agreement and plan to retaliate against Plaintiff for her protected First Amendment conduct of filing complaints about the HCSD, the Board Defendants, and Dingman to governmental enforcement agencies, and in the courts.

---

[25] In this case, the "due process" guaranteed by the HCSD Bylaws and Policies is that Plaintiff as a customer and elector of the District, would be protected by her contract for water service - and thereby benefit from laws governing operations/administration of the HCSD (particularly notice, hearing, and appeal), and that provisions in the Bylaws cannot themselves be amended or revoked by the HCSD Board without voter approval.  See Bylaws at Sections A-2(11), A-9(1); A-9(11), A-9(13); A-9(26); Chapter 3, Section 1-3.010, Section 1-5.030.

## Count III Deprivation of Due Process and Equal Protection

30.  Plaintiff alleges that the Board Defendants, Dingman, and HCSD, during times material to this Complaint, failed to act on, or respond in any way to Plaintiff's multiple direct requests to them for statutorily-mandated opportunity to restore her water service after it was wrongly cut off.   Acting as set forth herein, and ignoring Plaintiff's demands for an accounting and opportunity for restoration of her water service was a denial of procedural and substantive due process and equal protection on each occasion of that wrongful conduct by these Defendants. The denials of the right to be informed as to any charges, and the process by which her water service could be restored, without any notice or hearing to Plaintiff as to those denials was arbitrary, capricious, and deliberately deprived Plaintiff of her rights to due process, and also the equal protection of the laws[26].

## Count IV Deprivation of Equal Protection of the Laws, and to Due Process of Law

31.  The HCSD, Board Defendants, Dingman, Bruce's Towing, and John Does; did improperly and illegally agree and conspire to, and actually did, aid abet, assist, and participate with each other to wrongfully and vindictively deny due process and equal protection of the laws to Plaintiff by aiding and abetting the HCSD, Puckett, Dingman, and Board Defendants to terminate Plaintiff's domestic water service, and so to violate, and/or refuse to follow, procedural and other mandates of Federal law[27], State law, and the HCSD's own Policies and Bylaws.  They also did so by acting as described in this Complaint to vindictively, arbitrarily, and deliberately punish Plaintiff for protected conduct of making complaints to them[28] and other government agencies, and bringing legal actions against the HCSD and its minions.  These Defendants also did these things without the notice, procedural and substantive due process, and other rights afforded by the Constitution of the United States, and the HCSD Bylaws, and/or Policies.

## Count V Unlawful Retaliation for Exercise of Constitutional Rights

32.  Plaintiff's complaints (both administrative and via legal actions to the courts), assistance to others making complaints, and testimony to the HCSD, courts, and State and Federal enforcement agencies about violations of law, and Plaintiff's statutory and Constitutional

---

[26] No other customer in the boundaries of the HCSD had their property seized and/or water service shut off during the time material to this complaint.

[27] As discussed in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), and otherwise.  In addition to her procedural challenges, Plaintiff is also asserting a substantive due process claim as to the "official" and/or administrative acts of the HCSD, Board Defendants, and Dingman.

[28] Other citizens and electors from Hornbrook who complained to the HCSD and/or the SWRCB about the HCSD's operations and conduct were not subject to any retaliatory or adverse acts.

rights, and wrongful denial and suppression of Plaintiff's rights granted under the HCSD Policies and Bylaws, entitle her to protection from retaliation by way of wrongful and/or discriminatory adverse action by the Board Defendants, as well as those persons acting in agreement and/or joint action with them as government agents.

33. The HCSD, by and with the Board Defendants, along with the other government entity/officer/employee Defendants undertook the wrongful acts herein in part to retaliate against Plaintiff for her exercise of First Amendment rights to speak freely, and to petition for redress of grievances to government agencies, and to the Courts.

**Count VI Violations of the ADA, and Title II as to the HCSD, and Board Defendants**

34. The Board Defendants (and thus the HCSD), in acting as set forth herein in manners adverse to Plaintiff in regards to her disability, particularly by failing to accommodate her disability by giving her adequate and proper notice of any adverse determinations or actions (including, but not limited to, and seizures of her property, and/or shut off of her water service); while also not treating her in the same manner that other water customers are treated, and as to the interactions, notices, and other benefits as other persons were given; have done so willfully, with the intent to interfere with Plaintiff's use and enjoyment of their services and facilities in the same manner as non-disabled persons, and in an attempt to coerce Plaintiff into abandoning her demands for accommodation.

35. At all times material, the Board Defendants, HCSD, and Dingman, with full knowledge of Plaintiff's status as a disabled person, operated under official policies, customs, and practices created and implemented by one or more of them of intentionally, willfully, and wrongfully violating the ADA by: repeatedly withholding access to the on-site facilities of the HCSD where public records concerning Plaintiff's water service account are stored; and, failing to maintain a place open to the public and accessible by Plaintiff during normal office hours for inspection of Plaintiff's account and other public records of the HCSD, so that she may have opportunity to pay or dispute any charges, or adverse actions, as is required by law - all in violation of the statutory due process required by law, or opportunity to be heard, with deliberate indifference to Plaintiff's statutory and constitutional rights, and with the discriminatory intent that Plaintiff's known disability would make it much harder, or even impossible, for her to obtain access to her file, any of the other records of the HCSD, or to obtain any redress for adverse actions taken against her by any agent or employee of the HCSD.

////////

## Count VII Violations of 42 USC 1985(2) and (3)

36. The vindictive, retaliatory, and oppressive "plan" by the government agency/officer/employee Defendants, and the acts of using official powers or positions ("force" and/or "intimidation") in furtherance thereof, to prevent and/or intimidate Plaintiff from continuing her then-pending, and/or contemplated administrative complaints and/or legal actions in federal and state courts, to deny her due process, to retaliate against her for her past legal actions, and to prevent, distract, and/or or dissuade her from filing new legal actions against the HCSD, its officers, and others, violated on <u>each</u> such occasion the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one".

## Count VIII: Violations of 42 USC 1986

37. The deliberate "plan" by the HCSD, Board Defendants, and Dingman, and their acts of using official powers or positions ("force" and "intimidation") as described herein in furtherance thereof, to prevent and/or intimidate Plaintiff from continuing to make and prosecute her administrative complaints, and/or legal actions against them in federal court, to deny her procedural and substantial due process, to retaliate against her for her past legal actions in federal and state courts, and to keep her from filing new legal actions in federal court as to the HCSD, and its officers, violated on <u>each</u> such occasion the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one", so each of those Defendants also violated 42 USC §1986 by failing and/or refusing to take any action to stop, or prevent, the violation of Plaintiff's Constitutional rights.

## ***SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS***

38. Plaintiff incorporates the foregoing statements of fact and allegations made in this Complaint as if fully set forth. In making out each of the following "Counts" in this <u>Second Claim for Relief</u> against one or more Defendants, the term "these Defendants" <u>as used in any particular Count</u>, shall mean <u>only</u> the Defendants which are *specifically* named <u>therein</u>, and is not intended to apply to all "Defendants" named in this action generally. Plaintiff also specifically incorporates the disclaimer set forth in paragraph 15, above.

39. If Plaintiff states a claim or cause of action that only permits injunctive or other relief, but inadvertently asserted a claim for damages, Plaintiff reserves her right to non-monetary relief as otherwise provided by law, and <u>Government Code</u> section 814.

## Count – I, Violations of HCSD Bylaws

40. Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that the Board Defendants, HCSD, and Dingman, in engaging in the conduct alleged herein, did also thus

wrongfully, improperly, and illegally, conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws by: denying Plaintiff equal access to HCSD facilities, water supply, and the benefits and rights granted by the HCSD's Policies.

### Count II - Negligence

41. In performing the acts complained of herein, each and all of the Board Defendants, Bruce's Towing, and Dingman acted negligently, recklessly, and with wanton indifference and disregard for any possible harm that may have befallen Plaintiff as a result of their failures to abide by the Constitution and laws of the United States, the State of California, and the Policies and Bylaws of the HCSD.  (See also, generally, California Civil Code, section 1714.)

42. Plaintiff alleges that the individual Board Defendants, Bruce's Towing, and Dingman, each owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, the State of California, and the HCSD Policies and Bylaws, but in performing the acts as complained of *ante*, and against Plaintiff under the assumed mantle of employees and/or agents of the HCSD, breached that duty in recklessly and negligently violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Policies and Bylaws as set forth herein.  As a result of their acts, Plaintiff suffered psychological and physical harm, economic loss, and general and special damages.

### Count III - Trespassing and Nuisance

43. Trespass onto private property by agents of the government without a warrant is presumed to violate the Fourth Amendment's prohibition on unreasonable searches, but it is also a cause of action in and of itself under California law[29].  The HCSD, Puckett, Bruce's Towing, and Dingman trespassed onto Plaintiff's land on multiple occasions on and between the dates of July 20 and 23, 2021, and while there, damaged and interfered with Plaintiff's personal and real property, and her free use and enjoyment of her personal and real property.

### Count IV - Waste/Gifts of Public Funds, and Fraud as to Clint Dingman

44. At all times material to this Complaint, Defendant Clint Dingman improperly conspired with, influenced, and engaged in corrupt activity with the HCSD and Board Defendants, in order to receive gifts of public funds, in the form an unagendized, and

---

[29] See CACI Nos. 2000, and 2101.

unformalized[30], extra duties and extra paid hours granted/assigned by Puckett and/or Hanson (all such extra paid hours thus being a gift of public funds[31]).

45.   Also, at all times material, Dingman, with the assistance of Hanson[32] has also fraudulently claimed to have performed all of the duties applicable to his position(s) within the HCSD, and to have worked various hours every two weeks on those tasks, when in fact he did not faithfully actually complete those tasks, and/or work those hours as he claimed.  Dingman further failed to use the log in/out sheet at the water plant in order to conceal these facts and falsehoods.  All of these acts were undertaken by Dingman in order to wrongfully collect money to which he was not entitled. The Board Defendants and Dingman further conspired, and acted, to wrongfully and deliberately conceal from the Public, and Plaintiff, the wrongful extra hours and pay, and the false claims of work performed.

46.   Plaintiff invokes herein the strictures and remedies of California Code of Civil Procedure Sections 526a, 1021.5, and 1084.

### Count V - Violations of California Constitution

47.   The actions of the HCSD, Board Defendants, and Dingman were additionally violations of Plaintiff's rights under the California Constitution at: Article 1, Section 1; Article I, section 7(a)[33]; Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I, section 17; and Article I, section 19(a).

### Count VI - Negligence as to HCSD, Board Defendants, and Dingman

48.   Plaintiff alleges that the HCSD, Board Defendants, and Dingman, each owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, the State of California, and the HCSD Bylaws and Policies, but in performing the acts as complained of *ante*, and against Plaintiff under the assumed mantle of employees and/or agents of the HCSD,

---

[30] That is, the Board of the HCSD never ratified or approved any such additional duties for Dingman at a public meeting, and/or in conformance with Govt. Code 61045 and/or the HCSD Bylaws.

[31] Cal. Const. Art. XVI, Section 6;  Cal. Const. Art. IV, Sec. 17; Cal. Govt. Code section 8314.

[32] Dingman consults with, and gets assistance from, Hanson to complete his timesheets, and she *ultra vires* and wrongfully approves them for payment prior to any Board Meeting in violation of Government Code §§61045, 61050, and 61051.  Hanson also unilaterally allows extra hours to Dingman.

[33] Due process guaranteed under Article I § 7 of the California Constitution  "presumes that when an individual is subject to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity." People v. Ramirez , 25 Cal.3d 260, 268-69 (1979).  The principle that procedural due process protection is applicable to all adjudicatory action was affirmed in Saleeby v. State Bar of California, 39 Cal.3d 547, 563-64 (1985).  The most important distinction to bear in mind is that due process under the California Constitution applies to all adjudicative actions, whereas due process under the United States Constitution is triggered only when liberty or property interests are at stake.

breached that duty in recklessly and negligently violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws and Policies as set forth herein. As a result of their wrongful acts, Plaintiff suffered harm, loss, and damages.

### Count VII – Willful and/or Negligent Infliction of Emotional Distress

49.  Plaintiff alleges that the HCSD and Board Defendants, Bruce's Towing, as well as Defendant Dingman, in performing the acts complained of herein as to any particular one of them, or identified group of them, did so while acting negligently, recklessly, wantonly, vindictively, and/or willfully to vex, harass, oppress, and annoy Plaintiff, and/or to subject her to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, financial loss, destruction of her real and personal property, interference with the use and enjoyment of her property, devaluation of her real property, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for possible harm that may have befallen Plaintiff as a result.

### Count VIII  Violation of Government Code §§61045, 61050, 61051

50.  The HCSD was at all times material mandated by law to have a General Manager whose duties are those set forth in Government Code §61050, and subject to section 61051.  At all times material, the HCSD and Board Defendants failed and refused to hire a General Manager, and instead wrongfully operated the HCSD administration, as well as oversight of its finances and water facilities, directly themselves via individual *ultra vires* acts by Defendants Puckett and/or Hanson in violation of Government Code §61045, 61050, and 61051.

### Count IX  Conversion

51.  The wrongful seizure of Plaintiff's personal and real property by the HCSD, Board Defendants, and Dingman, and the conversion thereof to their own use, without any notice, or other due process, and without any payment of just compensation to Plaintiff, was wrongful, and constituted a conversion of Plaintiff's property which harmed Plaintiff, resulting in damages.

### Count X  Violation of Right to Privacy

52.  The HCSD Board Defendants corruptly misused their official positions and authority to gain access to Plaintiff's personal information as contained in her water account with the HCSD, and provided that information to third parties to engender ridicule and ill-will towards Plaintiff, without Plaintiff's consent, violating her right to privacy under the California Constitution at Article 1, Section 1, as well as the Information Practices Act of California.

### The Actions of These Defendants Resulted in Damages to Plaintiff

53.  Plaintiff alleges that the actions by the specified Defendants as set forth in each of

the foregoing "counts" of her First and Second Claims for Relief, and as incorporating the factual allegations against each Defendant as specified in their respective Sections, caused general, special, and pecuniary damages to Plaintiff, in an amount to be proven at trial, but in no event less than $50,000.00 per event, circumstance, alleged tort, or statutory violation, and so no less than $500,000.00 in total. Plaintiff is also entitled in each instance to any additional statutory damages, civil penalties, and/or other relief provided by law.

**Punitive Damages Demand**

54. The actions of each of the Defendants herein, as described in this Complaint in the First and Second Claims for Relief pertaining to any of them, were reckless, willful, wanton, vindictive, and oppressive, and done with willful disregard for Plaintiff's rights, and harm that may have befallen Plaintiff, while also being generally the product of ill-will towards Plaintiff, and so Plaintiff hereby demands punitive and exemplary damages as to each and all of these Defendants in the amount of $100,000.00 for each instance thereof as occurred on July 20, and 23, 2021.

**REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION**

55. Plaintiff requests that the Court grant a preliminary and permanent injunction against the HCSD, Board Defendants, and Dingman that bars them from seizing her property, and/or the property of her guests and contractors, without a warrant, and/or proper notice and other due process mandated by law, and also that the HCSD, Board Defendants, and/or Dingman immediately restore Plaintiff's domestic water service, and not terminate that service during the pendency of these proceedings, while permanently enjoining the HCSD, Board Defendants and Dingman from taking or using any portion of Plaintiff's land without just compensation, easement, or her written permission - or from terminating Plaintiff's water service without complying with the provisions of the HCSD's Policies and/or Bylaws, as well as all State laws, and the California and United States Constitutions hereafter.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff now prays for judgment against Defendants, as well as:

1. Declaration of the respective rights and duties of the parties under the foregoing authorities, and particularly a declaration that the purported official actions taken by the HCSD and Board Defendants during the month of July were improperly and/or defectively noticed under the Brown Act and Water Code, were written and adopted in a statutorily, procedurally, and administratively defective manner that was arbitrary and capricious while also being not supported by substantial evidence, and that those actions are void, while the individual

resolutions, motions, and ordinances adopted by them are legally defective additionally on the basis of conflict with the Constitutions and laws of the United States and/or the State of California, while the HCSD/Board Defendants' findings pertaining thereto are themselves not supported by substantial evidence, and/or are arbitrary and capricious, and so void additionally on those bases;

2. For general, special, economic, statutory, and exemplary damages determined at trial;

3. Disgorgement by Dingman of all wasted public funds, and/or gifts of public funds received by Dingman relating to his self-assigned additional duties, or those activities unilaterally and/or ultra vires assigned him by Puckett and/or Hanson without compliance with Government Code §61045;

4. An Order commanding the HCSD to immediately (within 30 days) hire a General Manager as required by Government Code §61050, who shall assume all duties as set forth in Government Code §§81050 and 61051, and to henceforth maintain the General Manager or his/her successors in those capacities hereafter;

8. For a preliminary injunction and a permanent injunction, each enjoining the HCSD, Board Defendants, and Dingman from damaging, or seizing Plaintiff's personal and/or real property without a warrant, or terminating her water service without complete due process;

10. For preliminary and permanent injunctions, each requiring the immediate return to Plaintiff of all property seized by any of the Board Defendants, HCSD, and/or Dingman;

11. An Order declaring each purported act, agreement, motion, resolution, ordinance, and/or contract, of the Board Defendants, Dingman, and/or the HCSD, taken in violation of the HCSD's Policies or Bylaws, Government Code §61045, and/or any other State law, to be *ultra vires,* and/or void for illegality[34];

12. A declaration that the seizure of Plaintiff's property, and termination of water service to Plaintiff's home was done unlawfully, without notice, and without any procedural or substantial due process, in violation of State law, the California Constitution, the United States Constitution, and the HCSD's own Polices and/or Bylaws; and, an Order that Plaintiff's water

---

[34] California Civil Code §1608 codifies the doctrine of illegality and provides that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Under Civil Code §1667 , "unlawful" is broadly defined as that which is contrary to an express provision of law; contrary to the policy of express law, though not expressly prohibited; or, otherwise contrary to good morals.

service immediately (within 24 hours of service upon the HCSD, a Board Defendant, or Dingman of an Order to do so) be restored and maintained hereinafter[35];

13. For statutory damages under 42 USC §1983 in the amount of $500,000.00 against each of the individual government agency/entity officer/employee Defendants (inclusive of John Does), the HCSD, Board Defendants, and Dingman;

14. An injunction prohibiting Puckett, Hanson, and/or Tulledo from taking individual *ultra vires* acts which attempt to usurp the authority of the HCSD and/or its Board as a body in violation of Government Code §§61045, 61050, and/or 61051 - inclusive of assigning duties to regular HCSD employees, certifying "timesheets", enforcing the Policies and/or Bylaws of the HCSD, initiating litigation, ordering seizure of property, and/or shutting off the water service to customers of the HCSD;

15. For any attorney fees and costs of suit herein actually incurred; and,

16. For such other and further relief as the court may deem proper.

Dated this _17th_ day of August, 2021

*Kimberly R Olson*
Kimberly R. Olson, Plaintiff Pro Se

### Verification

I, Kimberly R Olson am the Plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Hornbrook, California.

Dated: 8-17-21          By: *Kimberly R Olson*
                             Kimberly R. Olson, Plaintiff

---

[35] A trial court may issue a writ of administrative mandate where an agency has deprived the petitioner of a fair hearing pursuant to Code of Civ. Proc., §1094.5, subd.(b).

Complaint - 22