1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KIMBERLY OLSON,                          No.  2:21-CV-1482-KJM-DMC

12                Plaintiff,

13        v.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14   ROBERT PUCKETT, SR., et al.,

15                Defendants.

16

17            Plaintiff Kimberly Olson, proceeding pro se, brings this civil action. Before the

18   Court is Olson's motion for a temporary restraining order. <u>See</u> ECF No. 3. The Court has

19   construed it as a motion for injunctive relief. <u>See</u> ECF Nos. 7, 12. Olson moves for an injunction

20   mandating restoration of water service to her property.  <u>See</u> ECF No. 3. She alleges that

21   Defendants removed her home's water meter and stopped her water service without notice. <u>See</u>

22   ECF No. 1. Olson, who is disabled and of limited means, alleges that she now has little or no

23   access to water. <u>See</u> ECF Nos. 1, 3, 4.

24            Defendants do not substantively oppose the motion in writing. ECF No. 17.

25   Instead, they focus Olson's allegedly untimely service of the motion, as well as her vexatious

26   litigation history.  <u>See id.</u> Defendants concede they received copies of the motion. <u>See id.</u>

27   / / /

28   / / /

                                              1

1    Evidence subsequently presented by Defendants at the time of the hearing of this

2    motion indicates Olson received notice before termination of her water service. Defendants,

3    however, skipped steps in the termination process and Olson faces significant hardship without

4    water. The undersigned thus recommends granting some limited injunctive relief to Plaintiff here.

5

6                                    **I. BACKGROUND**

7    This case is but the latest entry in a series of lawsuits initiated by Olson against

8    local government entities and officials in Siskiyou County, California. It is one of several that she

9    has brought against Hornbrook Community Services District. And it is the fourth case of hers

10   before this Court specifically.  Olson is a prolific pro se litigant. Notwithstanding, this motion is

11   not about Olson's litigiousness. It is about water.

12        **A.    Procedural History**

13   Olson filed suit on August 18, 2021. See ECF No. 1. Olson sues six defendants by

14   name: (1) Hornbrook Community Services District (HCSD); (2) Robert Puckett, Sr.; (3) Clint

15   Dingman; (4) Michele Hanson; (5) Melissa Tulledo; and (6) Bruce's Towing/Radiator &

16   Dismantling (Bruce's Towing).[1] See id. at 1–3. She also sues twenty John Does.  See id.

17   Concurrently with the complaint, Olson filed her motion for injunctive relief

18   seeking restoration of water service to her property, as well as a declaration in support of the

19   motion. See ECF Nos. 3 and 4. The Chief Judge referred the case to this Court on August 20,

20   2021.  See ECF No. 5. The Court, on August 23, 2021, ordered Olson to serve copies of the

21   motion and declaration by 5:00 p.m. on August 25, 2021.  See ECF No. 7. Proof of service was

22   due by August 31, 2021. Id. The Court also directed summons to issue.  See ECF No. 8. Olson

23   had the option of requesting service of the complaint on Defendants by the United States Marshal

24   or serving it herself.  See id. at 3.

25   / / /

26   / / /

27   ─────────────────────
     [1]      Olson served defendant Bruce's Towing/Radiator & Dismantling, but they have
28   not appeared, and the opposition to Olson's motion has only been filed on behalf of the remaining
     defendants. See ECF Nos. 13, 17.

1    The same day that the Court issued its service order, Olson filed a statement saying

2    she had served the motion on HCSD, Puckett, Dingman, and Hanson prior to the Court's order,

3    on August 20, 2021. See ECF No. 11 at 1–2. She served those defendants by mail and email. See

4    id. at 2. The Court subsequently issued its show cause order on August 26, 2021, directing

5    Defendants to reply to the motion by September 3, 2021.  See ECF No. 12 at 1. Olson had until

6    September 8, 2021 to file a response.  See id.  The Court set a hearing on the motion for

7    September 14, 2021.  See id.

8    Later in the day on August 26, Olson filed a new certificate of service stating that

9    she had served Tulledo and Bruce's Towing by mail on August 24, 2021. See ECF No. 13. On

10   August 30, 2021, she filed a "notice of compliance" with the Court's order directing summons to

11   issue.  See ECF No. 14. Returns of service were filed on August 30, 2021, as well.  See ECF No.

12   15. Roger Gifford served copies of the complaint on Defendants in person on August 26, 2021.

13   See id. at 2, 4, 6, 8, 10.

14   Defendants concede Olson sent copies of the motion by email on August 20, 2021,

15   and that at least some of them knew of the motion by August 23, 2021.  See ECF Nos. 17, pg. 3;

16   17-4, pg. 2. Robert Puckett, in a supporting declaration, states that Gifford served him copies of

17   both the complaint and the motion.  See ECF No. 17-5, pg. 2. In any event, Defendants appear to

18   concede they received copies of the motion by August 26, 2021, at the latest.  See ECF No. 17,

19   pg. 2.

20       **B.    Olson's Allegations**

21   As stated, Olson identifies six defendants: (1) HCSD; (2) Puckett; (3) Dingman;

22   (4) Hanson; (5) Tulledo; and (6) Bruce's Towing.  See ECF No. 1, pgs. 1–3. She includes the

23   John Does.  See id.

24   Hornbrook is a little community of a couple hundred people in Siskiyou County,

25   California, near California's border with Oregon. HCSD is a public entity that provides water to

26   Hornbrook residents.  See ECF No. 1, pg. 2. Olson lives in Siskiyou County and is an HCSD

27   customer.  See id. Puckett, Hanson, and Tulledo are all members of HCSD's board of directors.

28   See id. at 3. Dingman is HCSD's employee, variously acting as general manager and general

systems operator.  See id. at 3, n.8. Bruce's Towing is a private business operating out of

Siskiyou County.  See id. at 2. The John Does are deputies of the Siskiyou County Sheriff's

Office and other state agency officials.  See id. at 3 & n.6; 10 & n.4.

       Olson has been an HCSD customer since 2006.  See id. at 3. A copy of her initial

payment check and application for service are attached to her declaration in support of the

motion. See ECF No. 4, pgs. 5–6. A couple of years after Olson first became an HCSD customer,

her water meter malfunctioned.  See ECF No. 4pg. 1. HCSD asked an excessive price for a new

meter, according to Olson, so she claims she purchased one secondhand.  See id. That meter was

installed at her own expense.  See id.

       Olson is disabled.  See ECF Nos. 1, pg. 6 & n.15; 3, pgs. 2, 4; 4 pg. 2. She is

significantly mobility impaired due to spinal damage and consequent surgeries. See ECF Nos. 1,

pg. 6 & n.15; 3, pg. 4; 4, pg. 2. She lives on a diminutive, fixed income.  See ECF Nos. 1, pg. 6 &

n.15; 3, pg. 2, 4; 4, pg. 2.

       In the complaint, Olson makes numerous allegations against Defendants.[2] See ECF

No. 1 at 4–11. Around July 20 and 23, 2021, Defendants allegedly trespassed onto Olson's

property.  See ECF No. 1, pg. 4. There, they confiscated Olson's water meter.  See id. They then

shut off water service to Olson's home entirely and without any notice beforehand.  See id. at 5.

Defendants further precluded *any* water supply to Olson's home by plugging the water pipes to

her property.  See id. Plaintiff contends that they did so by plugging property-side pipes, rather

than water lines leading to the property.  See id. The property-side pipes only connect to the water

meter, not to any public lines.  See ECF No. 4, pg. 2. Defendants also allegedly informed Olson

that neither she nor anyone else could use certain portions of her driveway (presumably around

water access areas) without their vehicles being towed. See ECF Nos. 1, pgs. 4–5; 4, n.11; 3, pgs.

1–2, 4 & n.3. Plaintiff also contends that in the course of the events at issue a vehicle was towed.

---

[2]    Because the immediate issue before the Court is the motion for injunctive relief,
these findings and recommendations are confined to only the most pertinent allegations and
claims. Olson makes several federal and state law claims that do not immediately affect injunctive
relief (e.g., causes of action for conspiracy and trespass).  See ECF No. 1, pgs. 13, 17. Her
allegations about Defendants' motivations and theories of liability are not immediately pertinent.
See id. at 6–11.

Olson asserts that she later requested restoration of water service and an explanation of its abrupt termination.  See ECF No. 1, pg. 5. Allegedly, Defendants provided neither.  See id. The monthly billing statement that Olson received *after* Defendants shut off her water supply offered no explanation.  See id. The statement identified no fines or delinquent payments. See id.  Because the bill was uninformative, Olson paid part of her bill by check and sent it to HCSD demanding her water service be restored.  See ECF No. 4, pgs. 3, 11, 13.  HCSD cashed the check but did not restart her service.  See id. at 3. Olson has never before had her water supply shut off other than for maintenance.  See id. at 1.

Thus, Olson charges that she has been left without a consistent water supply.  See ECF No. 1, pgs. 5–6. She has had to borrow money and expend her limited income to erect temporary pumps, plumbing, and storage for potable water. See id. While Olson has also been able to contract for some delivery of water, her limited means make the pumps and deliveries only temporary, emergency solutions.  See id. at 6 & n.15.

The unreliable access to water, Olson alleges, is especially dangerous because of the heat and fires impacting Siskiyou County.  See id. at 5. Temperatures regularly exceed 105 degrees.  See id. The Governor also issued a Declaration of Disaster for Siskiyou County due to the fires ravaging Northern California.[3]  See id. Olson (and her property) already survived 2018's Klamathon Fire, which was only possible because her caregiver and neighbors had access to garden hoses. See id. at 5, n.14. Though not expressly averred, the implication of Olson's allegations is that fire remains a serious, plausible threat to her home and life. See id. at 5 & n.14; see also ECF No. 3, pgs. 3, 5 & n.6. She has also been unable to combat COVID-19 because she cannot wash and maintain appropriate sanitary conditions. See id. at 5.

Most of the additional allegations in Olson's complaint concern Defendants' motivations, the causes of action brought because of Defendants' actions, and Olson's requested relief.  See ECF No. 1, pgs. 6–22. It is germane, however, that at the core of Olson's complaint is the assertion that Defendants removed her water meter without cause, and out of retaliation for

---

[3]       The Governor's Declaration of Disaster enables additional emergency services and assistance to combat the fires and loss associated with the fires.

her many lawsuits.[4]  See ECF Nos. 1, pg. 6 & n.16; 3, pg. 6 & n.8. Her motion for injunctive relief, as well her declaration in support of the motion, largely restate the above: Defendants allegedly shut off her water without explanation, leaving her in a dangerous predicament given her disabilities and the fires threatening California. ECF Nos. 3, pgs. 4–7; 4, pgs. 2–3.

**C.   Olson's Motion for Injunctive Relief**

Olson argues that she satisfies the requirements for issuance of injunctive relief. See ECF No. 3, pgs. 5–9. She hinges most of her argument on irreparable harm and the assertion that the United States Supreme Court has recognized entitlement to due process for utility shut-offs.  See id.

First, Olson argues that she will suffer irreparable harm absent injunctive relief. See id. at 6–8. Olson's physician has certified that she is a seriously disabled person, and that deprivation of water denied her a basic necessity of life.  See id. at 6-7. Olson, alongside her declaration submitted in support of the motion, includes a certification from her physician that she is disabled.  See ECF No. 4, pgs. 2, 8. Olson's physician, Dr. Kuhl, certified that Olson is permanently disabled and that discontinuation of her water service would pose serious risks to her health and safety.  See id. at 8. Dr. Kuhl addressed the certification to HCSD under California Health and Safety Code § 116910.[5]  See id. The certification is dated August 10, 2021.  See id.

Continuing, Olson argues that the Supreme Court held that, when state law prohibits termination of utilities except for cause, utility customers have a legitimate claim of entitlement to the utility, which claim falls under the ambit of the Due Process Clause.  See ECF No. 3, pg. 7 (discussing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978)). Constitutionally compliant notice is required before termination of service.  See id. California does not permit arbitrary discontinuation of water service.  See id. HCSD's own policies require 48 hours' notice prior to shut-off of water.  See id. Thus, pre-termination notice was required

---

[4]      Though Bruce's Towing is caught up in the alleged conspiracy to remove Olson's water meter, Olson does not ascribe retaliatory motive to that defendant. See, e.g., ECF No. 6.

[5]      Section 116910 prohibits discontinuation of residential water services for nonpayment if a primary care physician certifies that discontinuation will be life threatening to or will pose a serious risk to the health and safety of, the water service customer. Cal. Health & Safety Code § 116910(a).

1   before HCSD could discontinue Olson's water supply.  See id. Olson allegedly received no notice

2   at all.  See id. at 8.

3          Second, Olson contends that her requested relief merely maintains the status quo.

4   See id. She defines status quo as "the last peaceable uncontested status which preceded the

5   pending controversy." Id. (quoting United Railroads v. Superior Court, 172 Cal. 80, 87 (1966)).

6   Olson theorizes that she is merely seeking to restore a fifteen-year, peaceable water supply and

7   free use of her driveway while this case proceeds.  See id.

8          Third, Olson argues that she is likely to succeed on the merits of her claims.[6]  See

9   id. Due process is required prior to cessation of water service.  See id. Irrespective of any

10  (unknown) nonpayment or violation of some agency rule, Plaintiff argues that Defendants were

11  obligated to provide notice and an opportunity for Olson to be heard on the matter.  See id.

12  Defendants provided no process at all.  See id.

13         Fourth and finally, Olson maintains that the balance of the hardships tips in her

14  favor.  See id. at 8–9. In her view, there is no comparison between (1) Defendants having to

15  reinstate Olson's water meter, water supply, and use of her driveway; and (2) Olson having to live

16  as a disabled, impoverished person without water.  See id. at 9. Olson reasons that under any

17  conception of the requirements for injunctive relief, the conclusion tilts in her favor.  See id. at 8–

18  9. She has the belief that there is a likelihood of a success on the merits *and* that the balance of

19  the hardships favors her.  See id. And even if she has not shown a likelihood of success, she has at

20  least established serious questions going to the merits and that the balance of hardships angles

21  *sharply* towards her.  See id. at 9.

22  / / /

23  / / /

24  / / /

25  / / /

26  _____

27      [6]    In arguing that she is likely to succeed on the merits, Olson does not appear to
address anything other than her due process claims. ECF No. 3 at 8. She does not, for example,
appear to address any of the other claims in her complaint, such as negligence or conspiracy. ECF

28  Nos. 1 at 11–20; 3 at 8.

7

1          **D.      Defendants' Opposition**

2                  Defendants' opposition consists of a written response, filed in advance of the

3    expedited hearing, ECF No. 17, and a combination of Supplemental Briefing, live testimony at

4    the time of the hearing, and evidence and argument at the hearing, see ECF No. 26 (submitted at

5    the hearing and filed the following day).[7] The preliminary written response was directed

6    principally to procedural challenges as to Olson's allegedly late service of the motion, and

7    Olson's history as a vexatious litigant.  See ECF No. 17, pgs. 1–4. The more substantive

8    opposition was presented at the time of the hearing, including evidence that notice was in fact

9    served in advance of the termination of service at issue.  See ECF No. 26. Defendants contend

10   that the District Attorney has charged Olson with tampering with the water meter at issue in this

11   case.  See id. at 2. Puckett also states in his declaration submitted with the opposition that Olson

12   used water in a quantity close to the total of all other HCSD customers combined.  See ECF No.

13   17-5, pg. 2.

14          1.      Olson's Allegedly Untimely Service

15                  According to Defendants, Olson did not comply with the Court's August 23,

16   2021,[8] order because she did not serve them a copy of the motion for injunctive relief by August

17   25, 2021, at 5:00 p.m. See ECF No. 17, pg. 2. Gifford allegedly personally served the motion on

18   Olson's behalf one day late, on August 26, 2021.  See id.  While the record reflects a number of

19   contentions regarding the time and procedures employed for service of both the Complaint at

20   issue and the instant Motion, the Court finds that service of both was satisfactory, and Defendants

21   were not materially prejudiced in their ability to address the pending issues.

22   / / /

23   / / /

24   _____

25          [7]      While the hearing was in progress, the Court emailed Plaintiff a courtesy copy of
     the supplemental declaration received at the hearing, which Plaintiff indicated she received and
26   which she referred to during the hearing in responding to Defendants' arguments and cross-
     examining Defendant Puckett, who testified.

27          [8]      Throughout their motion, Defendants mistakenly state that the order issued on
     August 26, 2021. See ECF No. 17, pg. 2. The only order to issue on August 26, 2021, was the
28   show cause order.  See ECF No. 12.

1              2.      Notice by Defendants

2              At the hearing on Plaintiff's Motion on September 14, 2021, Defendants readily

3 conceded that they discontinued Olson's water service, but provided evidence in support of such

4 action. Noting that HCSD maintains 122 connections to the water system, Defendants charged

5 that Olson's water use exceeded the total of all other users combined, averaging some 6,000

6 gallons per day before action was taken by the District. That quantity was far in excess of

7 HCSD's District-wide limitation on daily water use. Due to extremely low water levels, HCSD

8 currently operates under emergency limits of 200 gallons per day per household. Defendants

9 argued that Olson's requested relief of full restoration of her water service would significantly

10 burden HCSD, ultimately draining HCSD's limited available water supply. HCSD Board

11 President Robert Puckett testified at the hearing on Plaintiff's Motion that Olson, like every

12 HCSD customer, received notice of water restrictions and urgently low water levels.  His

13 supplemental declaration also avers that Olson was served notice that her continued use violations

14 would result in service termination, with such notices being posted at Plaintiff's property and

15 being delivered by e-mail. Puckett.  See ECF No. 26, pgs. 1-2, ¶¶ 1–4.

16              General District-wide notices were also attached as exhibits to Puckett's

17 declaration. Those notices included an April 29, 2021, general noticed to conserve water that was

18 emailed and hand delivered to all HCSD customers. See id. at 6-8 (Ex. A). On July 24, 2021, the

19 Siskiyou County Office of Emergency Services disseminated a plea asking all customers to

20 conserve water.  See id. at 10 (Ex. B). The notice was hand delivered to all customers and posted

21 to HCSD's website.  See id at 1-2, ¶ 2. A few weeks later, in July, HCSD went further and

22 adopted a resolution under California's Water Code, declaring a water shortage emergency and

23 instituting the 200-gallon limit.  See id. at 12-15 (Ex. C). That same resolution also permits, after

24 written notice, installation of flow regulators on customers' water meters if they violate water

25 restrictions.  See id.  Only after further violations would HCSD be able to terminate water service.

26 See id.  Another public notice went out on July 17, 2021, declaring an emergency and asking

27 customers to reduce water usage.  See id. at 2, ¶ 4. That notice was hand delivered to customers,

28 posted around Hornbrook, and posted to HCSD's website.  See id.

1    Puckett avers and testified that HCSD began reading individual water use meters

2  daily to ensure compliance. See id. When efforts were made to gather the meter data from the

3  Olson residence, it was allegedly discovered that a plank had been placed over the face of the

4  meter, and a vehicle parked on the plank to prevent access to the meter. Id. at ¶ 5. HCSD issued a

5  violation for obstructing the meter.  See id. at 17 (Ex. D). HCSD also cited Olson for outdoor

6  watering, which was not permitted under the water restrictions.  See id. at 19 (Ex. E). Both

7  notices reference violations occurring on July 19, 2021.  See id. at 17, 19.  HCSD issued Olson a

8  second violation for obstruction of her water meter on July 20, 2021.  See id. at 21-22 (Ex. F).

9  Defendants maintain that such notices were both posted and emailed to Plaintiff.

10    Notwithstanding, Olson persisted in excessive water use. See id. at 2, ¶ 7. HCSD

11  read her meter on July 22, 2021, and she had far exceeded the 200-gallon per day per household

12  limit.  See id.  HCSD issued a violation and ordered her to cease overuse.  See id. at 24-25 (Ex.

13  G). The notice again warned Olson that continued violation would result in a flow regulator being

14  placed on her meter.  See id. The violation also warned that disregard of restrictions after

15  placement of a restrictor would result in removal of her meter and termination of service.  See id.

16    Despite the repeated warnings, Olson persisted in her unexplained excessive water

17  use. The Court notes that Plaintiff claimed at the time of the hearing that allegations of her use of

18  6,000 gallons per day were "insane" but offered no explanation for the apparent discrepancy

19  between her claimed use and the amounts asserted by the District. Claiming only that she had not

20  received the multiple notices from Defendants, she offered no response to the District.  See id. at

21  3, ¶ 8.

22    On July 23, 2021, HCSD again found that Olson obstructed the water meter with a

23  car.  See id. HCSD issued a violation.  See id. HCSD also called the Siskiyou County Sheriff to

24  have Olson remove the car from over the water meter.  See id. Olson refused.  See id. The Sheriff

25  explained that if she did not remove her car, it would be towed.  See id. Olson refused to move

26  the car, and HCSD had it towed in order to access the meter.  See id. The same day, Olson parked

27  her car over the meter yet again.  See id. She also parked a van over the meter and placed a water

28  tank over it.  See id. Eventually, Olson poured cat litter over the meter and covered it with a

10

1   plank.  See id.  When HCSD was finally able to read the meter, it reflected Olson had used in

2   excess of 6,200 gallons of water per day.  See id. at ¶ 9.

3               Again, on July 23, 2021, HCSD notified Olson that she in violation of District use

4   limitations.  See id. at ¶ 10. She refused to follow directions to remove obstructions to her meter.

5   Id. The cars covering the meter were again towed.  See id. At this point, HCSD removed the

6   meter and terminated Olson's water service on or about July 23, 2021.  See id. Olson contends

7   that the meter was in fact removed and her water supply terminated several days earlier on July

8   20, 2021.

9               The Court notes that at the hearing on Plaintiff's Motion, Olson continued to

10  maintain that she had not received notices from the District. On cross examination of Defendants'

11  witness Robert Puckett, Olson asked how HCSD delivered the various notices of noncompliance,

12  and if HCSD had ever called her or mailed the notices through the postal service. Olson stated

13  that she does not check her email, and that Puckett should have called her. Puckett testified that

14  HCSD did not call Olson or send the violations through the post office. Instead, HCSD taped

15  multiple notices to the fence, emailed them to her, and put one on the car obstructing her water

16  meter. The Court does not find Plaintiff's testimony to be credible on the issue of receiving notice

17  from the Defendant District.

18              The Court also notes that, notwithstanding the provisions within the notices from

19  the District that continued violation would result in a flow restrictor being applied to Plaintiff's

20  water line, no such step was taken by the District. When questioned on this issue, District Board

21  member Puckett maintained that the quantity, rapid succession, and severity of Plaintiff's

22  violations had precluded such an interim step in advance of water service termination.

23

24                          **II.  STANDARD OF REVIEW**

25              The primary purpose of a preliminary injunction is preservation of the status quo.

26  See, e.g., Ramos v. Wolf, 975 F.3d 872, 887 (9th Cir. 2020). More specifically, the purpose of a

27  preliminary injunction is preservation of the Court's power to render a meaningful decision after a

28  trial on the merits. See, e.g., Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Barth v.

1  Montejo, No. 2:19-cv-1874-DB-P, 2021 WL 1291962, at *1 (E.D. Cal. Apr. 7, 2021). It is meant

2  to maintain the relative positions of the parties and prevent irreparable loss of rights before a trial

3  and final judgment. See, e.g., Camenisch, 451 U.S. at 395; Ramos, 975 F.3d at 887; Doe #1 v.

4  Trump, 957 F.3d 1050, 1068 (9th Cir. 2020). A preliminary injunction may assume two forms.

5  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir. 2009).

6  Prohibitory injunctions prevent a party from acting, thus maintaining the status quo. Id. A

7  mandatory injunction directs some responsible party to act. Id. at 879.

8          The legal principles applicable to requests for injunctive relief, such as a

9  temporary restraining order or preliminary injunction, are well established. To prevail, the

10  moving party must show that irreparable injury is *likely* in the absence of an injunction. See

11  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Nat. Res. Def.

12  Council, Inc., 555 U.S. 7, 20–22 (2008)); see also All. for the Wild Rockies v. Cottrell, 632 F.3d

13  1127, 1131 (9th Cir. 2011). To the extent that prior Ninth Circuit cases suggest a lesser standard

14  by focusing solely on the *possibility* of irreparable harm, such cases are "no longer controlling, or

15  even viable." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.

16  2009); see Cottrell, 632 F.3d at 1132; Stormans, 586 F.3d at 1127. Instead, a party must

17  demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in

18  the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is

19  in the public interest. E.g., Winter, 555 U.S. at 20; Cottrell, 632 F.3d at 1131; Stormans, 586 F.3d

20  at 1127.

21          The Ninth Circuit evaluates the above factors under a sliding scale. Cottrell, 632

22  F.3d at 1131–35. A stronger showing on one factor may offset a weaker showing on another. Id.

23  at 1132. But a plaintiff must make some showing on all four factors. Id. at 1135. Under the scale,

24  if the balance of hardships tips *sharply* towards the plaintiff, the plaintiff need only show "serious

25  questions going to the merits" provided that the plaintiff also satisfies the other two factors. Id. at

26  1131–35. Thus, when there are serious questions going to the merits and a balance of hardships

27  tips sharply towards the plaintiff, a preliminary injunction may issue if the plaintiff also shows

28  that there is a likelihood of irreparable injury and that the injunction is in the public interest. Id.

A preliminary injunction is an extraordinary remedy that is not awarded as of right. Winter, 555 U.S. at 24; Cottrell, 632 F.3d at 1131. The burden to achieve injunctive relief is particularly high when a party seeks a mandatory injunction. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015). Mandatory injunctions go beyond an injunction preventing a party from acting, and thus beyond mere maintenance of the status quo. See id. They require a party to act. See id. District courts must deny requests for mandatory injunctions unless the law and facts clearly favor a moving party.  See id. The Court will not grant such requests in doubtful cases. See id.

## III.  DISCUSSION

The Court makes the following recommendations with regard to the issues arising from Plaintiff's request for injunctive relief:

### A.    Service

To the extent that Defendants argue that the District Court should deny Olson's motion because of untimely service, see ECF No. 17, pg. 5, the Court does not find Defendants' arguments regarding service convincing. Defendants received actual notice of the motion and Olson substantially complied with this Court's orders and the Federal Rules of Civil Procedure. The undersigned United States Magistrate Judge recommends that any objection to service be overruled.

### B.    Preliminary Injunction

#### 1.    Likelihood of Success on the Merits

The likelihood of success on the merits is the most important factor for the court to consider in making a determination on injunctive relief.  See Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017); Garcia, 786 F.3d at 740.  Nevertheless, serious questions going to the merits of a plaintiff's claims may still persist if the balance of hardships tips sharply in her favor.  See Cottrell, 632 F.3d at 1131–35.

/ / /

/ / /

13

1    Olson's pleading includes eight federal law claims and ten state law claims. See

2    ECF No. 1, pgs. 12–19. However, central to her claim for injunctive relief here is the charge of

3    Defendants' violation of Plaintiff's due process rights.  See ECF No. 3, pg. 7. Olson argues that,

4    before Defendants could terminate her utility services, they were required to provide notice and

5    an opportunity to be heard. See id.  Her point is well-taken at this stage.

6    Under the Fourteenth Amendment's Due Process Clause, the government cannot

7    deprive individuals of life, liberty, or property without due process of law.  See U.S. const. amend

8    XIV; Wright v. Beck, 981 F.3d 719, 727 (9th Cir. 2020). One of the due process' core promises is

9    that, before the government deprives someone of a protected interest, it must provide—at the very

10   least—notice.  See Wright, 981 F.3d at 727. At base, the Due Process Clause encompasses a

11   promise of fair procedure. See, e.g., Zinermon v. Burch, 494 U.S. 113, 125 (1990).

12   Constitutionally secured property interests do not extend from the Constitution

13   itself.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576–78 (1972); Roybal v.

14   Toppenish Sch. Dist., 871 F.3d 927, 931 (9th Cir. 2017); Nozzi v. Hous. Auth. of L.A., 806 F.3d

15   1178, 1191 (9th Cir. 2015). In the context of procedural due process claims, it is not a deprivation

16   itself that is unlawful. See Zinermon, 494 U.S. at 125. Rather, as implied above, what becomes

17   unconstitutional is deprivation of a liberty or property interest with sufficient due process.  See

18   id.; see also S.B. by and through Kristina B. v. Cal. Dep't of Educ., 327 F. Supp. 3d 1218, 1247

19   (E.D. Cal. 2018). The violation actionable under § 1983 is thus not complete at the time of a

20   deprivation, but when the State fails to provide due process.  See Zinermon, 494 U.S. at 126.

21   Thus, in order to establish a procedural due process claim, plaintiffs must show (1) a protected

22   liberty or property interest (2) that the government deprived (3) without adequate "process." E.g.,

23   Hotop v. City of San Jose, 982 F.3d 710, 718 (9th Cir. 2020); Shanks v. Dressel, 540 F.3d 1082,

24   1090 (9th Cir. 2008); Brewster v. Board of Educ., 149 F.3d 971, 983 (9th Cir. 1998). Once the

25   Court determines that a protected interest has been deprived, the question becomes what

26   procedures satisfy "due process of law." E.g., Lavan v. City of Los Angeles, 693 F.3d 1022, 1031

27   (9th Cir. 2012); Brewster, 149 F.3d at 983; see Shinault v. Hawks, 782 F.3d 1053, 1057 (9th Cir.

28   2015).

14

1           Notice is critical because it facilitates an opportunity for individuals to be heard.

2   See Wright, 981 F.3d at 727. When notice is due, mere gestures are not due process.  See Nozzi,

3   806 F.3d at 1194. Notice must be reasonably calculated to apprise all interested parties of an

4   impending action and afford them an opportunity to present their objections.  See Id.; see also

5   Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314 (1950). In turn, a meaningful

6   opportunity to be heard minimizes unfair, erroneous deprivations.  See Wright, 981 F.3d at 727.

7   While due process requirements are flexible with the circumstances, the opportunity to be heard

8   must be provided at a meaningful time and in a meaningful manner. See Gilbert v. Homar, 520

9   U.S. 924, 930–31 (1997); Yagman v. Garcetti, 852 F.3d 859, 864; Brewster, 149 F.3d at 984.

10          In the context of utility services, a vested property interest exists if plaintiffs can

11  establish a "legitimate claim" to continued service.  See Memphis Light, Gas & Water, 436 U.S.

12  at 9–12; Autotek, Inc. v. County of Sacramento, No. 2:16-cv-01093-KJM-CKD, 2020 WL

13  4059564, at *17 (E.D. Cal. July 20, 2020).  The extent of that right is defined and shaped by state

14  and local law. See Memphis, 436 U.S. at 11–12; Parks v. Watson, 716 F.2d 646, 656 (9th Cir.

15  1983); Autotek, 2020 WL 4059564, at *17. Nevertheless, where state and local rules limit public

16  utilities' power to discontinue service, customers of that utility have a protected interest in

17  continued service.  See Memphis, 436 U.S. at 11–12; Autotek, 2020 WL 4059564, at *17.

18          Here, Defendants concede that they terminated Olson's water service. Further, by

19  their own admission, they also did not attach a flow regulator to Olson's meter prior to doing so.

20  HCSD's regulations and notices sent to Olson indicate that attachment of a flow regulator

21  precedes discontinuation of service. See ECF No. 26, pgs. 12-15 (Ex. C) and 21 (Ex. F).

22  Puckett's testimony suggests that installation of flow restrictors is a necessary step before HCSD

23  can terminate service completely.  Based on Olson's pleadings and the evidence adduced at the

24  hearing, the Court finds that HCSD failed to adhere to several of the District's own procedures.

25          Among the applicable District procedures that were compromised here was the

26  required observance of a time period following issuance of notice of impending termination of

27  service, during which period the recipient of the notice has the opportunity to act before the

28  threatened termination takes place. When that time period is properly respected, HCSD is not

15

1    supposed to discontinue service until time has expired. The Defendant District is bound by the

2    limitations recognized in California in regard to the authority of public water providers to

3    discontinue residential water services, such as for nonpayment and use violations.[9] See e.g., Cal.

4    Health & Safety Code § 116908; see Autotek, 2020 WL 4059564, at *17; Perez v. City of San

5    Bruno, 27 Cal. 3d 875, 894 (1980) ("California law does not permit the termination of utility

6    service to a customer without good cause[.]"); see also ECF No. 26, pgs. 12-15 (Ex. C) and 21

7    (Ex. F).  The controlling rules suggest that HCSD does not have the power to unilaterally

8    terminate water service at-will.

9            The HCSD's authority to disconnect service is circumscribed. See Cal. Health &

10   Safety Code § 116908; Perez, 27 Cal. 3d at 894; see also ECF No. 3, pg. 7 (describing HCSD's

11   policies on disconnection of service); ECF No. 26, pgs. 12-15 (Ex. C) and 21 (Ex. F).  Indeed,

12   termination of a utility may only be for cause.  See Perez, 27 Cal. 3d at 894. Olson thus had a

13   protected property interest in continued water service. See Autotek, 2020 WL 4059564, at *17.

14   And because she had a property interest, Plaintiff had a right to due process. See Memphis, 436

15   U.S. at 10–12; Wright, 981 F.3d at 727; Autotek, 2020 WL 4059564, at *17–18.

16           HCSD did not comply with the District's own rules for the termination procedure.

17   However, it is also evident that despite such deficiencies, HCSD sent Olson several general and

18   personal notices. Puckett Suppl. Decl. ¶ 1–2, 4–8, 10–11. Olson's contentions that she was not

19   aware of any of those notices or corresponding e-mails lacks credibility given the evidence before

20   the Court. As such, there are serious questions going to the merits of her due process claims.

21   Given the issues with the merits of Plaintiff's claim, injunctive relief is available here only if the

22   balance of hardships tip sharply toward her.  See Cottrell, 632 F.3d at 1131–35. As discussed

23   below, the Court believes it does.

24   / / /

25   / / /

26   / / /

---

27         [9]      Some limitations on discontinuation of service, such as for nonpayment, do not
28   apply where termination is due to the unauthorized actions of a customer.  See e.g., Cal. Health &
     Safety Code § 116926.

1              2.       Irreparable Harm

2              Irreparable harm is harm that cannot be redressed by legal or equitable remedies.

3    See Cutera, Inc. v. Lutronic Aesthetics, Inc., 44 F. Supp. 3d 1198, 1208 (E.D. Cal. 2020).

4    Irreparable injury must be *likely* in the absence of an injunction.  See Disney 869 F.3d at 856.

5    Typically, economic injury, which can be ameliorated by monetary damages, is not an irreparable

6    harm.  See Id.  Deprivation of constitutional rights is irreparable harm.  See Melendres v. Arpaio,

7    695 F.3d 990, 1002 (9th Cir. 2012); Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466,

8    472 (9th Cir. 1984) ("An alleged constitutional infringement will often alone constitute

9    irreparable harm.").

10             The continued deprivation of Olson's constitutionally protected property interest in

11   the absence of appropriate notice is an irreparable harm satisfying this element of the

12   considerations for injunctive relief. See Melendres, 695 F.3d at 1002. In a more material sense,

13   Defendant's termination of water service also *could* give rise to irreparable harm in the event that

14   Plaintiff is left with inadequate water to protect against loss by fire or permanent injury to her

15   health. While some questions remain as to the *probability* of that harm, at this stage Olson has

16   shown that she is likely to suffer irreparable harm in the absence of injunctive relief sufficient to

17   restore her access to water.

18             3.       Balance of the Hardships

19             The balance of equities leans sharply toward Olson. Ostensibly, HCSD continues

20   to have access to its water supply, and is able to supply its other customers. Olson, on the other

21   hand, is disabled, and her physician has identified the risk a lack of water poses to her health and

22   safety.  See ECF No. 4, pg. 8. Without a reliable water supply, Plaintiff is at risk of loss or injury

23   due to fire. Plaintiff's available remedy of expending her limited resources on an expensive

24   alternative, albeit limited, supply of water poses still further hardship.

25              By contrast, the Defendant District faces hardship, in that a renewal of water

26   supply to Plaintiff burdens the District's already limited availability of water. Further, HCSD will

27   have to spend money and effort to restore water service to Olson. But a mandatory injunction will

28   otherwise merely require HCSD to do what its own resolutions and restrictions indicate it should

17

1  have done—install a flow restrictor limiting Olson's water supply.  By orders of magnitude,

2  Olson's hardships surpass HCSD's.

3              4.    Public Interest

4              In exercising discretion, courts of equity must pay particular attention to the public

5  consequences in utilizing the extraordinary remedy of an injunction.  See Winter, 555 U.S. at 24.

6  The Court must balance competing claims of injury and consider the effect of granting or

7  withholding relief on each party.  See id.  Plaintiff Olson bears the initial burden of showing an

8  injunction is in the public interest.  See Stormans, 586 F.3d at 1127.  The Court need not consider

9  public consequences that are "highly speculative."  See id. But the Court "should weigh the

10  public interest in light of the *likely* consequences of the injunction." Id. Those consequences must

11  not be too remote, insignificant, or hypothetical and must be supported by evidence.  See id.

12              Olson makes little argument on the public interest factor.  See ECF No. 3.  But she

13  does argue that vindication of constitutional rights is in the public interest.  See id. at 3. In that,

14  the Ninth Circuit agrees.  See Melendres, 695 F.3d at 1002. "[I]t is always in the public interest to

15  prevent the violation of a party's constitutional rights." Id. (citation omitted). The public interest

16  favors vindication of Olson's due process rights. See id.

17              There is also little public consequence to the granting of an injunction under

18  limited terms. Restoration of water service subject to a flow restrictor, in a manner consistent with

19  the procedures ordinarily imposed by the District, does not detract from water service of other

20  HCSD customers, and thus is not contrary to public interest.

21

22                          **IV.  CONCLUSION**

23              The undersigned United States Magistrate Judge recommends granting Olson's

24  motion for injunctive relief, ECF No. 3, as modified below. The hearing on the motion has, for

25  the Court, raised significant concerns as to Olson's credibility and the merits of her case. The

26  Court is concerned that there is evidence suggesting Olson purposely obstructed her meter.

27  Nevertheless, Puckett admitted that HCSD did not follow its practice, clearly identified in

28  violation notices, of attaching a flow restrictor to water meters before discontinuing service. It is

1    also unsettled whether HCSD provided the requisite period of notice between the violation

2    warning that Olson's service would be terminated and the actual termination of her service.

3            The Court recognizes that HCSD's water supply is under extreme strain, and that

4    Olson apparently contributed to that strain through excessive use of water.  Had HCSD followed

5    its procedures, however, it could have restricted Olson to the 200 gallons per day per household

6    of water that it allows for all other customers. The wholesale termination of Olson's water service

7    places disproportionate hardship on her as a disabled person, and during a period of considerable

8    risk of fire. The consequence to HCSD is minimal if ordered to do what it would have done

9    otherwise. The public interest similarly evens out if Olson is restricted to the same usage as

10   everyone else.

11           The undersigned thus recommends that:

12           1.      The motion for injunctive relief, ECF No. 3, be granted to the extent HCSD

13   must provide Olson with water in compliance with internal rules and all other applicable state and

14   local laws.

15           2.      HCSD be ordered to return Olson's water meter and attach a flow restrictor

16   to it, limiting Olson's household to 200 gallons of water per day, or whatever generally applicable

17   use restrictions HCSD enacts in order to conserve water.

18           3.      HCSD provide all required time periods between any notice of violation

19   and any adverse action not covered by the order granting injunctive relief.

20           4.      HCSD be permitted to take regular readings of Olson's water meter and

21   undertake any routine or emergency maintenance necessary.

22           5.      Olson be ordered not to tamper with or obstruct her water meter or the

23   attached flow regulator, except to the extent an emergency situation requires maintenance of the

24   meter. Olson should further be ordered to comply with all lawful directives from law

25   enforcement, including orders to remove illegal obstructions to her water meter. Olson should

26   further be ordered not to interfere with HCSD officials undertaking lawful, routine duties

27   concerning her water meter.

28   / / /

1        5.     Olson be ordered to comply with all HCSD restrictions, including usage

2    limits and restrictions on outdoor watering via the HCSD water system.

3        6.     That this order takes the form of a Preliminary Injunction, in force until

4    such time as the District Court addresses the applicability of a permanent injunction, or

5    alternatively, denies further injunctive relief.

6            These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

8    after being served with these findings and recommendations, any party may file written objections

9    with the Court.  Responses to objections shall be filed within 14 days after service of objections.

10   Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

11   Ylst, 951 F.2d 1153 (9th Cir. 1991).

12

13   Dated:  September 17, 2021

14                           DENNIS M. COTA

15                           UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28