**FILED**

Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669

SEP 2 9 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,                    )
                    Plaintiff,        )   Case No: 2:21-cv-1482 KJM DMC (PS)
                                      )
        vs.                           )
                                      )   **OBJECTIONS OF PLAINTIFF**
Robert Puckett, Sr., et al,           )   **KIMBERLY R. OLSON TO FINDINGS**
                                      )   **AND RECOMMENDATIONS ("F&Rs")**
        Defendants,                   )   **OF MAGISTRATE JUDGE (ECF #29);**
                                      )   **REQUEST FOR DISCOVERY**
                                      )   **(FRCivP 26(d)(1).)**
_____     )

        COMES NOW the Plaintiff, Kimberly R. Olson, and respectfully submits her Objections
to the findings and recommendations of the Honorable Dennis M. Cota, Magistrate Judge, issued
as ECF #29, arising from the hearing on Plaintiff's Motion for TRO/Preliminary Injunction, had
on September 14, 2021.
        Plaintiff submits that the Magistrate incorrectly permitted the submission of an unnoticed
surreply by Defendants Hornbrook Community Services District ("HCSD") and Puckett absent
any motion, and in violation of Local Rules 230 and 142(a)(2); incorrectly accepted inadmissible
evidence as probative of facts at issue in the case; improperly assumed jurisdiction over
administrative accusations and other internal matters of the HCSD; failed to consider relevant
evidence submitted by Plaintiff in the form of the Declaration of Randall Scheimer; conducted a
telephonic hearing using faulty equipment such that Plaintiff was unable to fully participate in
the hearing; and, failed to provide accommodation to Plaintiff as a disabled person pursuant to
the Americans with Disabilities Act as she requested in her ECF #16 request to the Court.  The
Magistrate also failed to analyze the notice/hearing Constitutional deprivational issues raised by
Plaintiff, did not examine the conduct, documentation, adopted Resolution 2021-02, and the
policies/acts of the Defendants in that context and against the requirements of *Memphis Light,
Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) - and so failed to make any findings of fact or law
as to those things on their face, and/or as applied to Plaintiff.
        All of these things led to a fundamental denial of due process, and of a full and fair
hearing for Plaintiff before the Court on September 14, 2021, as well as several mistakes of fact,
and of law, by the Magistrate, that further resulted in an Order that failed to grant Plaintiff fair
and effective relief, and purported to impose limits and constraints on Plaintiff that were outside
the jurisdiction of the Court due to being the purview of the administration of the HCSD.
        Plaintiff therefore seeks leave to submit corrective/responsive materials to the Court in
Reply to the surreply of the HCSD and Puckett, and for leave to conduct expedited discovery.

Dated: 9-27-21            By: _____
                              Kimberly R. Olson, Plaintiff Pro Se

                                                                          i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES                                                              ii

1.  OVERVIEW                                                                       1

2.  THE  ALLOWANCE OF A SUR-REPLY WAS PREJUDICAL ERROR                            4

3.  THE MAGISTRATE'S FINDING OF "NOTICE" TO PLAINTIFF BY THE
    HCSD WAS AN ERROR OF LAW OF CONSTITUTIONAL DIMENSIONS                          7

4.  THE HCSK FAILED TO FOLLOW ITS OWN BYLAWS, AND RULES AND
    REGULATIONS RELATING TO TERMINATING PLAINTIFF'S WATER
    SERVICE, AND SO ALSO THUS VIOLATED PLAINTIFF'S DUE PROCESS
    RIGHTS                                                                        11

5.  THE MAGISTRATE'S PROPOSED ORDER THAT PLAINTIFF ONLY BE
    GIVEN THE "PROCESS" THE HCSD CURRENTLY HAS IN PLACE FOR
    WATER CUSTOMERS IS AN ERROR OF LAW OF CONSTITUTIONAL
    DIMENSIONS                                                                     14

6.  THE MAGISTRATE'S PROPOSED ORDER IGNORES THE BURDEN OF
    PROOF OF THE HCSD'S OWN PURPORTED EMERGENCY ORDINANCE                          17

7.  THE MAGISTRATE'S IGNORING OF THE IMPLICATIONS OF THE
    DECLARATION OF RANDALL SCHEIMER WAS PREJUDICIAL ERROR                          18

8.  THE HCSD DEFENDANTS' ORIGINAL, AND  PUCKETT'S
    "SUPPLEMENTAL" DECLARATION AND ITS EXHIBITS, ARE NOT
    ADMISSIBLE EVIDENCE                                                            19

        A.  The Declarations Lack Facts Demonstrating Personal Knowledge         20

        B.  The Declarations Are Self-Serving, Conclusory, Speculative, and Hearsay   23

        C.  The Declarations Are Partly Demonstrably False Representations to this
            Court                                                                  25

9.  PLAINTIFF AND ALL OTHER HCSD CUSTOMERS ARE ENTITLED TO
    RELIEF                                                                         27

10. PLAINTIFF SHOULD BE GRANTED LEAVE TO OBTAIN EXPEDITED
    DISCOVERY FOR THE PRELIMINARY INJUNCTION HEARING                              28

11. CONCLUSION                                                                     30

# TABLE OF AUTHORITIES

**Cases**                                                         **Page**

*Adickes v. S. H. Kress & Co.*
(1970) 398 U.S. 144 ..............................................................................................5(fn 7)

*Alexander v. FBI,*
186 F.R.D. 71, 74 (D.D.C. 1998) ......................................................................6

*Argo v. Blue Cross & Blue Shield of Kan., Inc.,*
452 F.3d 1193, 1200 (10th Cir. 2006) ..............................................................20

*Beaudreau v. Superior Court,*
14 Cal.3d 448, 458 (1975) ................................................................................9

*Brooks v. Small Claims Court*
(1973) 8 Cal. 3d 661, 667 ................................................................................10

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
334 F.3d 390, 402 (4th Cir. 2003) ..................................................................29

*Crummey v. Social Sec. Admin.*
794 F.Supp.2d 46, 63 (D.D.C. 2011) ................................................................6

*Dilevon Lo, et al. v. County of Siskiyou, et al.,*
#2:21-cv-00999-KJM-DMC ............................................................................28

*Early v. Champion Int'l. Corp.,*
907 F.2d 1077, 1081 (11th Cir.1990) ..............................................................25

*El Deeb v. Univ. of Minn.,*
60 F.3d 423, 428 (8th Cir. 1995) ....................................................................20

*Evers v. General Motors Corp.,*
770 F.2d 984, 986 (11th Cir. 1985) ................................................................25

*Finley v. United States,*
109 S.Ct. 2003, 2008 (1989) ....................................................................17(fn 32)

*Goldberg v. Kelly*
(1970) 397 U.S. 254, 255-261 ........................................................................11

*Hill v. England,*
2005 WL 3031136, *1 (E.D.Cal. Nov. 8, 2005) ..........................................5, 25

## TABLE OF AUTHORITIES (continued)

**Cases**                                                                      **Page**

*Hinkle v. City of Clarksburg, W.Va.,*
81 F.3d 416, 426 (4th Cir. 1996) .............................................................................29

*Hobby Lobby Stores, Inc. v. Sebelius,*
723 F.3d 1114, 1146 (10th Cir. 2013) .......................................................................2

*In Re: Ball,*
2 Cal.App.2d 578, 579 (1934) ...............................................................8(fn 12), 17

*Kash Enterprises, Inc.* v. *City of Los Angeles*
(1977) 19 Cal.3d 294 .....................................................................14, 15, 16(fn 32)

*Kokkonen v.Guardian Life Ins. Co.,*
114 S.Ct. 1673, 1677 (1994) ..........................................................................17(fn 32)

*Lewis v. Rumsfeld,*
154 F.Supp.2d 56, 61 (D.D.C. 2001) .........................................................................5

*Livick v. The Gillette Co.,*
524 F.3d 24, 28 (1st Cir. 2008) ...............................................................................20

*Memphis Light, Gas & Water Div. v. Craft,*
436 U.S. 1 (1978) ...........1(fn 2), 2, 3(fn 4), 5(fn 7), 7, 9, 11(fn 21), 14, 16(fn 32), 27, 28

*New v. Consolidated Rock Products Co.*
(1985) 171 Cal.App.3d 681, 689 ............................................................................17

*Price v. Tennant Community Services Dist.,*
194 Cal.App.3d 491, 495-496 (1987) ...............................................................9(fn 14)

*Story v. Sunshine Foliage World, Inc.,*
120 F.Supp. 2d 1027, 1031-1032 (M.D. Fla. 2000) .........................................20

*U.S. v. Grey,*
959 F.3d 1166 (9th Cir. 2020) ................................................................................14

*US ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.,*
238 F.Supp.2d 270, 276 (D.D.C. 2002) .................................................................6

*Visser v. Packer Eng'g Assocs., Inc.,*
924 F.2d 655, 659 (7th Cir. 1991) .....................................................................20, 25

## TABLE OF AUTHORITIES (continued)

**Cases**                                                                    **Page**

*Williams v. Hager Hinge Co.,*
916 F.Supp. 1163, 1168 (M.D. Ala. 1995)  ........................................................25

**Federal Statutes**

42 U.S.C. § 1983.........................................................................................3(fn 4)
Federal Rules of Civil Procedure, Rule 5 ..................................................8(fn 13)
Federal Rules of Civil Procedure, Rule 26(d)(1) ...............................................29
Federal Rules of Civil Procedure, Rule 26(f) ....................................................29
Federal Rules of Civil Procedure, Rule 44 ........................................................23
Federal Rules of Evidence, Rule 602..................................................................20
Federal Rules of Evidence, Rule 902............................................................21, 23

**State Statutes**

Civil Code § 1010................................................................................................ 12
Civil Code § 1010.6 ..............................................................................8(fn 13), 12
Civil Code § 1882(e)....................................................................................13(fn 26)
Code of Civil Procedure § 417.10......................................................................8
Code of Civil Procedure § 1013..............................................................8(fn 13), 12
Code of Civil Procedure § 1013(a) ..........................................................8(fn 13)
Code of Civil Procedure § 1822.50 et seq. .............................................13, 14(fn 29)
Code of Civil Procedure § 1822.56.....................................................................13
Government Code § 61040(e)........................................................................19(fn 35)
Government Code § 61043(b) .......................................................................19(fn 35)
Government Code § 61045 ..............................................................................9(fn 14)
Government Code § 61050 ..............................................................................9(fn 14)
Government Code § 61051    .......................................................9(fn 14), 19(fn 35)
Government Code § 61069 .........................................................................13, 14(fn 29)
Health and Safety Code § 2053 ................................................................13, 14(fn 29)
Penal Code § 498(a)(6) ....................................................................................14(fn 29)
Water Code § 31144.1 ..............................................................................13, 14(fn 29)

**Other**

C. McMormick, Handbook of the Law of Evidence (1954) 395-405 ................................. 23
EDCA Local Rule, Rule 142(a)(2) ....................................................6(fn 9), 7, 30
EDCA Local Rule, Rule 230 ...........................................................................5, 7, 30

Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,                          )
        Plaintiff,                      )   Case No: 2:21-cv-1482 KJM DMC (PS)
                               )
        vs.                             )   **OBJECTIONS OF PLAINTIFF**
                               )   **KIMBERLY R. OLSON TO FINDINGS**
Robert Puckett, Sr., et al,                 )   **AND RECOMMENDATIONS ("F&Rs")**
                               )   **OF MAGISTRATE JUDGE (ECF #29);**
        Defendants,                     )   **REQUEST FOR DISCOVERY**
                               )   **(FRCivP 26(d)(1).)**

## 1. OVERVIEW

      This case is not about water. Although Plaintiff denies any wrongdoing, this case is also

not about determining any allegations and evidentiary disputes between the Defendants and the

Plaintiff regarding whether or not Plaintiff violated any of the local rules or ordinances about

water[1] of the Hornbrook Community Services District ("HCSD").

      What the case **is** about, is if the local water agency, when it accused Plaintiff of violations

and subsequently terminated her water service, began its quest by failing to provide her

Constitutionally proper and complete notice of: the allegations against her; the name of a

responsible employee within the agency for her to contact about the alleged violations; and, of

her right to a pre-deprivational hearing to contest *each* allegation before a neutral fact-finder[2].

      The case is also about if the local water agency terminated Plaintiff's water service with

all of the Constitutionally-required elements of those notices actually being given (and served in

the proper manner); a hearing being had prior to the termination; and if it acted in all of these

particulars in conformance with the United States and California Constitutions and statutory

---

[1] Rather, such disputes should have been resolved at the administrative level of the water agency, and
only then been subject to further judicial review in state court as necessary or desired by the parties.
[2] See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12-16 (1978). Unfortunately, Magistrate
Cota never analyzed Plaintiff's due process notice claims properly, because he did not: look at the content
of the HCSD's purported "notices"; determine whether unsigned and undated "notices" from a
governmental agency accusing someone of wrongful conduct are even legally effective; and, did not
consider the *mandatory* other half of Plaintiff's due process claims - the right to be told of an opportunity
for, and actually to be given, a pre-deprivation hearing before an impartial tribunal.

laws, as well as the HCSD's **own** policies and procedures, when it <u>did</u> act against her, and ultimately terminated her water service. (HCSD President Puckett admitted they had not.)

An additional issue is if the failure by the water agency to respond to Plaintiff's demands for information, a hearing, and reconnection of her service on August 4, 2021, after the termination[3], also violated Plaintiff's rights. Finally, an allegation is made by Plaintiff that she is treated differently, and more harshly, than the 119 or so other HCSD customers, and that this disparate, retaliatory treatment is due to the resentment by the Defendants of her prior legal actions, and exercise of other protected petitioning rights, against the agency - some of which they repeatedly complain about in their pleadings, while also blaming Plaintiff for other actions in which she is <u>not</u> a party. See, i.e., ECF #17, p.2; #17, Attch. 5, p.2; #30/31, Memo of P&As at p.2. Thus, Plaintiff's claims sound primarily in denial of due process, but also equal protection.

In this regard, and as it pertains to the requested extraordinary relief, Plaintiff alleged in her Verified Complaint, and the Defendants failed to deny, that these Defendants, by shutting off Plaintiff's water using the processes and actions they did, also sought to "deprive Plaintiff of meaningful access to, and right to petition, the government for redress of her grievances before an unbiased tribunal; and, to maliciously inflict harms on Plaintiff by shutting off her domestic water supply <u>and not permitting any method by which that shut off might be challenged, appealed, stayed, or rescinded.</u>" Complaint, ECF #1, ¶16, emphasis added. See *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (stating allegations in a verified complaint not contested can be deemed admitted for purposes of a preliminary injunction). Defendants have ignored Plaintiff's plea for a hearing, and/or restoration of service, for <u>57+ days.</u>

Plaintiff Kimberly R. Olson, a severely disabled individual appearing before this Court Pro Se, sought a TRO and Preliminary Injunction from this Court concerning the seizure of her property rights, and termination of her water service to her home, without the proper notice, without proper *service* of notice, <u>and without due process concerning a hearing and opportunity to challenge any basis therefore alleged by the HCSD,</u> as required by the Supreme Court's conclusions in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) ("*Memphis*"). Plaintiff initially, by way of TRO/Injunction, seeks of Defendants the complete restoration of her water service, protection from further arbitrary and capricious denials of water service by them, and the right to use her own driveway without fear of further seizures of vehicles absent warrant

---

[3] See Declaration of Kimberly R. Olson, ECF #4, item #7, Exhibits 3-4.

or (full and correct) notices and other due process. There was no counter-motion filed, or request for relief from the Defendants other than that Plaintiff's contemplated injunctions be denied.

The parties briefed the issues for the TRO/Injunction hearing[4]. On September 8, 2021 the Defendants were **denied** their request for a continuance and additional briefing, and Magistrate Cota confirmed a hearing date of September 14, 2021 at ECF #18.

Prior to the hearing, and because Magistrate Cota had indicated in his order for hearing that Plaintiff Olson would be contacted over the phone by the Court for the hearing, Plaintiff filed an "ADA Request" as ECF #16, seeking to inform the Court of certain particulars of her disability, and to request certain accommodations. As part of that filing, Plaintiff specifically asked that if the Court intended to permit any oral testimony, that she be given sufficient notice to properly prepare, and informed the Court as to *why* she needed such minimal and reasonable accommodations to fully and fairly participate in any oral hearing. (ECF #16, p.2:8-13.) However, it does not appear that the Magistrate had read, and properly considered the impact of, that Request when he conducted the hearing, because it is not mentioned in the F&Rs, and the Court did not notify Plaintiff prior to the hearing that it was considering the allowance of any additional documentary evidence or oral testimony by either party, nor that Olson herself would be called upon to testify as to any particulars. Magistrate Cota also became annoyed with Plaintiff's flailing efforts to regain equilibrium on a couple of occasions during the hearing.

At the hearing, Defendants, absent any prior motion, or even any notice, went ahead and introduced a "supplemental" Declaration by Defendant Robert Puckett, Sr. (ECF #26), and then put him on the witness stand. The allowance of the entry of the "supplemental" declaration, in violation of the Court's previous ECF #18 Order, and the sudden production of live testimony, acted as "sandbagging" and an impermissible sur-reply. Furthermore, Plaintiff was suddenly subjected to what amounted to direct and cross-examination by Magistrate Cota himself, without any opportunity to gather information, make notes, or otherwise prepare. Plaintiff objected to this procedure as being "ambushed", and because of lack of opportunity to prepare and rebutt.

The prejudice to Plaintiff by these actions due to her medical conditions (ECF #16), the lack of opportunity to prepare questions of the witness and her own statements in rebuttal,

---

[4] Plaintiff at ECF #3, 4, 20, 21, and 22; Defendants at ECF #17. Neither party requested that the EDCA assert jurisdiction over the HCSD's allegations of wrongdoing against Plaintiff which were its claimed basis for terminating her water service - particularly in the first instance. There is also no provision in *Memphis* for an agency to substitute TRO/Injunction proceedings in federal court (particularly as a defendant in a 42 USC §1983 action) for complete notice, and a predeprivation hearing, requirements.

subpoena evidence[5], call witnesses (or at least submit declarations) in reply, and due to the technical problems with the phone connection during the hearing[6], cumulatively deprived Plaintiff of her rights to directly confront and cross-examine the only witness against her, procedural and substantial due process, and ultimately a full and fair hearing, resulting in errors in fact and law by the Magistrate in his Findings and Recommendations (ECF #29).  Plaintiff therefore requests that the Court accept the evidence and rebuttal testimony that Plaintiff should have been permitted to supply prior to the hearing, or at the hearing if she'd been given reasonable notice of the new evidence, and of the possibility of live testimony.

## 2. THE ALLOWANCE OF A SUR-REPLY WAS PREJUDICAL ERROR

The improper allowance by the Magistrate of the filing of the "supplemental" Declaration of Robert Puckett (ECF #26), and Puckett's live testimony, at the hearing of September 14, 2021 amounted to an unnoticed, improperly filed, sur-reply by the Defendants and their Counsel.  This filing and testimony was without good cause, and procedurally improper - particularly without any prior notice to Plaintiff, opportunity to be heard in opposition, or opportunity for submission of a proper written response by Plaintiff supported by evidence to rebut the sur-reply.

What is more, the "supplemental" declaration, and Puckett's testimony, commandeered and converted the TRO hearing into an unnoticed, administrative confrontational hearing where the Defendants claim to have "proved" Plaintiff's alleged violations of their various rules and procedures - something they were obliged to do *before* even shutting Plaintiff's water off in the

---

[5] For instance, many of the things claimed in Puckett's "supplemental" Declaration surely would have generated records if they were true, and since the police were involved, certainly at least the reports would be readily available, if not the officers themselves.  Perhaps some photos were taken?  If not, why not?  Plaintiff's water meter itself would no doubt be a good item of evidence, also, as would meter reads.
[6] The phone was cutting out on the Court end occasionally during the hearing; that is, Plaintiff could hear the Court, but they could not hear her.  Indeed the Court had to hang up and call Plaintiff again whenever it realized that was happening, but it is clear to Plaintiff from reading the ECF #29 Order that the Magistrate did not hear several important statements by Plaintiff.  For example, at ECF #29, pp.10-11, the Court apparently did not hear Plaintiff say (after categorizing the unsubstantiated allegation of her using 6200 gallons per day as "insane") that it wasn't even possible because no water was coming out of her taps, and nobody on the block had any water at all during the days of the HCSD "notices".  She also explained at one point that outdoor watering was occurring because of a private agricultural well supplying irrigation water to three parcels on the block, of which hers was one, as they are all part of a USDA-registered farm.  These statements are consistent with the Declaration of Randall Scheimer (ECF #22), which Declaration seems to have been overlooked by the Magistrate as well, as it is unremarked anywhere in the Order.  Meanwhile, Puckett himself testified that people were without water, or "just had enough to fill their toilets", and that he personally never looked at Plaintiff's water meter.

first place. By doing so, they also impermissibly shifted the burden of proof to Plaintiff[7] in via subversion of the TRO/Injunction hearing, and stripped any trappings of meaningful due process from such a proceeding by simply putting in a very objectionable, vague and misleading, single Declaration without fair opportunity for Plaintiff to respond, impeach, or rebut. This should not have been allowed at a TRO/Injunction hearing.

A sur-reply, or surreply, is an additional reply to a motion filed after the motion has already been fully briefed. USLegal.com, http://definitions.uslegal.com/s/sur-reply/ (last visited September 19, 2021). The EDCA Local Rules provide for a motion, an opposition, and a reply, and the last briefing of the sequence is to be completed "[n]ot less than seven (7) days preceding the date of hearing" (EDCA L.R. 230) in order to give all parties and the Court time to prepare to address the briefings at the hearing, so that the hearing is full and fair as the Constitution requires. Allowing <u>additional</u> briefing and live testimony via ambush at the time of the hearing, *without* any prior application or notice, completely short-circuits the goals of Rule 230, and in this instance, when coupled with the technical problems at the hearing, and Plaintiff's disabilities, rendered the hearing anything but full and fair, and thwarted the interests of justice[8].

Neither the Local Rules nor the Federal Rules provide the right to file a surreply. A district court may allow a surreply to be filed, <u>but only by way of noticed motions</u>, and "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, 2005 WL 3031136, *1 (E.D.Cal. Nov. 8, 2005).

Surreplies are meant to provide the non-moving party to the original motion with the opportunity to respond to matters that could not have been raised in the non-movant's opposition brief. *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C. 2001) ("The standard for granting a leave to file a surreply is whether the party making the [sur-reply] motion would be unable to contest matters presented to the court for the first time in the opposing party's reply"). A surreply is only appropriately granted where there is a "new matter" introduced in the reply briefing of a

---

[7] A summary TRO proceeding should not be transformed into a method by which the HCSD may avoid the necessity for proving its allegations of local Rule/Resolution violations at a predeprivation hearing, nor a clever procedural gambit whereby an accuser can shift to his adversary his burden of proof on one or more issues. (*Adickes v. S.H. Kress Co.* (1969) 398 U.S. 144.) To obtain a judgment in favor of an accuser pursuant to his complaint, counterclaim, or cross-claim, the party must offer evidence sufficient to support a finding upon every element thereof. A party who has failed to produce such evidence on one or more essential elements of his case, or who <u>never gave the adversary customer a hearing</u> as required in *Memphis* which would generate an administrative record containing such evidence, is not entitled to any Orders by this Court supporting adverse actions against Plaintiff. (C.f., F&Rs, ECF #29, p.19:15-17.)
[8] Generally, this term means the search for the truth, and fair determination of the issues before the Court.

motion. *US ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.*, 238 F.Supp.2d 270, 276 (D.D.C. 2002). "A surreply is most appropriate where the new matter introduced is factual." *Id.*; *Alexander v. FBI*, 186 F.R.D. 71, 74 (D.D.C. 1998). Obversely, "[w]here the movant's reply does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate." *Crummey v. Social Sec. Admin*. 794 F.Supp.2d 46, 63 (D.D.C. 2011) (denying motion to file a surreply where the arguments in the reply fell within the scope of the matters raised in the original motion and opposition).

Here, there was not even any notice of intent to file in additional documentary evidence, much less a noticed motion to the Court to file a surreply by the Defendants via Puckett's "supplemental" Declaration (ECF #26)[9]. Moreover, those submissions were the exact things they were ***supposed*** to file <u>by September 3</u>, 2021 with their Opposition (ECF #17) to Plaintiff's Motion for a TRO and its supporting documents (ECF #3,4)so that she could properly Reply to them, and cannot be properly categorized as being something responsive to Plaintiff's Reply. See Order to Show Cause of this Court issued on 8/26/2021 as ECF #12.

This was particularly offensive to the interests of justice, due process considerations (especially after the Court's initial denial of Defendants' request for additional briefing on September 8, 2021 as ECF #18), and was extremely prejudicial to Plaintiff, given that she had the burden of persuasion in these proceedings[10], and <u>had no opportunity whatsoever</u> to counter any defense argument or evidence presented by: having any witnesses of her own at the ready; opportunity for discovery or to present any impeachment evidence she had during (what was only for her) a <u>telephonic</u> hearing; due to her medical conditions and the circumstances of participating in the hearing; and, her prior *specific* request to the Court for at least <u>some</u> notice in order to prepare for any live testimony proposed to be given. (ECF #16.)  Trying to juggle a raft of new evidence, cross-examine a witness, and organize some sort of responsive testimony with

---

[9] As another example of the expression of the policy of full and fair hearings before the Court, EDCA Local Rule 142(a)(2) also requires that declarations relating to the opposition of a motion must be filed with that opposition "unless accompanied by an affidavit of counsel purporting to show good cause for the separate filing thereof". (*Id.*) No such affidavit was filed here.

[10] And this is yet another evil arising from Puckett's surreply, "supplemental" Declaration; that it shifted the burden of proof from the HCSD to establish, <u>prior</u> to terminating water service, its claims by at least a preponderance of the evidence at a fully noticed and briefed (and locally held, so witnesses at hand, etc) administrative hearing - the standard attendant to any violation of its water rules by Plaintiff - to instead making it <u>her</u> burden to prove that she was "innocent" of all the unsubstantiated accusations made by Puckett, et al at the hearing before Magistrate Cota, but without means to put on opposing evidence (documents are impossible to shove through a telephone by hand, and Plaintiff had no chance to have any witnesses appear). This is another denial of due process rights.

no opportunity to prepare would be taxing to even a fully trained lawyer - much less a disabled Pro Se party under the effects of powerful medications.

Plaintiff, via additional declarations and attached exhibits that have been concurrently filed[11] with these Objections, has created what is essentially an offer of proof to this Court concerning some of the evidence that she could have, and would have presented at the hearing if she had been given notice of, and fair opportunity to respond to, the suddenly-submitted "supplemental" Declaration and live testimony of Robert Puckett, Sr. Plaintiff respectfully requests that in the interests of justice, and in order to afford Plaintiff due process, the Court either strike all of the ECF #26 surreply materials (as well as Puckett's testimony at the hearing) from the record as being made in violation of Local Rules 230 and 142(a)(2), and judge the case *de novo*, or that it consider the Defendants' surreply materials as part of the Opposition (ECF #17), and Plaintiff's concurrently filed materials as part of Plaintiff's Reply (ECF #20 and #21).

## 3. THE MAGISTRATE'S FINDING OF "NOTICE" TO PLAINTIFF BY THE HCSD WAS AN ERROR OF LAW OF CONSTITUTIONAL DIMENSIONS

Under the Constitution of the United States, and that of the State of California, a local government agency that provides domestic utility services is not empowered to cobble together on paper any sort of grammatically garbled, cryptic, factually unsupported claim it wishes, and then label that document a "notice" complying with due process.

Although Magistrate Cota never analyzed the <u>actual substance</u> of the "notices" alleged by Puckett to have been provided to Plaintiff to see if they meet minimum Constitutional Standards under *Memphis*, and the California constitution, he states in the F&Rs that he feels Plaintiff received her "notices" because Robert Puckett claims he "personally delivered" them <u>by taping them to Plaintiff's fence</u>[12], and by emailing them to her[13]. However, insofar as the HCSD Rules

---

[11] The Declarations are from Plaintiff herself, and Marci Buttram, Plaintiff's next-door neighbor to the east who was an eye witness to the actions of Puckett and law enforcement at Plaintiff's home.
[12] Puckett specifically states that his definition of "personally delivered" HCSD notices and other documents means (at least in Plaintiff's case) <u>taping them to a fence</u> because Plaintiff keeps her gates locked (see Puckett "supplemental" Declaration, ECF #26, at #11). Such a form of "personally delivery" is not recognized as valid by any State or Federal jurisdiction within the Ninth Circuit. This is similar to the mischaracterized claims by Puckett in his "supplemental" Declaration at items #8 and #10, concerning Olson's supposedly <u>personal</u> interactions with the police, the vehicles (Plaintiff does not own a car, something she has informed this Court of many times when requesting extensions of time to file papers in her pending cases), and her alleged "refusals". During the hearing, Puckett admitted that he made these statements based upon Plaintiff's purported refusal to come out of her house and talk with him and the police even when they yelled at her house through a bullhorn, but when asked directly if he knew if Plaintiff was even inside at that time, he said "no". In short, Puckett did not engage in, and did not see or

at Section 4.03, also required that Plaintiff actually be "<u>served</u>" any notices, Puckett's

Declaration, and his testimony at the hearing, did not set forth the facts required by CCP

§417.10. The Magistrate acknowledged at ECF #29, page 11:13-14 that when asked at the

hearing, Puckett also admitted that he had never called Plaintiff, and never sent her any notices

or other documents in the US Mail about the allegations of "violations" that he said justified

sudden termination of her water service. Neither did he point to any provisions in Resolution

2021-02, or the HCSD's Rules and Regulations, that permit treating any particular violation as

being "more severe" than any other, or degrees of violations permitting increasing severity of

punishment - particularly without proper notice and due process.

For her part, Plaintiff testified at the hearing (or attempted to do so) that she was saying

she did not get any of Puckett's notices until "after the fact" (of removal of the meter) because

she cannot regularly access the internet (or her fence), and submitted arguments in her briefing

and via declaration (ECF #4), and that she <u>never</u> got **the "full" sort of notice she was entitled

to receive under the US and California Constitutions,** and the HCSD Rules and Regulations

as maintained at: https://hornbrookcsd.specialdistrict.org/operation-policies, because the

purported "notices" did not identify: the time of any alleged violation and/or who "observed" it;

any responsible employee[14] to complaint to; how to contest the allegations or obtain a hearing

---

hear <u>any</u> such actions by Plaintiff himself, and did not identify who he alleges did so.  To effect true
"personal service" in California, one must be within normal speaking distance from a person - not
standing at a gate or fence outside of the person's home, at the edge of the property while yelling at a
house without any personal knowledge of it anyone is home or not.  See *In Re: Ball*, 2 Cal.App.2d 578,
579 (1934) where the court found a requirement of actual physical presence for service, but that that
"[w]e take it that when men are within easy speaking distance of each other and facts occur that would
convince a reasonable man that personal service of a legal document is being attempted, service cannot be
avoided by denying service and moving away without consenting to take the document in hand."
[13] Aside from the not inconsequential issue of not determining <u>when</u> the notices were supposedly
received, emailing notices or other documents to people as "service" or due notice thereof is only
permissible in California, and the Ninth Circuit, if a party has given written permission that it will accept
such documents via those means.  See FRCivP 5; California <u>Code of Civil Procedure</u> (CCP) §§1010.6,
and 1013.  The HCSD's own written Rules and Regulations require notice of violations to be "served" by
(actual) personal delivery or USPS mail at Sections 2.10, 4.03, and 4.15.  The HCSD's Rules also state at
Section 13.01 that a "notice of termination", triggering a "Right to Meet" and contest actions of the
District, will be provided <u>by mail</u> - yet that is not even *alleged* by the HCSD/Puckett to have happened in
this case.  Service by mail under California law is accomplished as provided in CCP §1013(a).  The
HCSD own adopted policies and procedures thus <u>do not</u> allow for notice by email, nor fence-taping, and
it ignored those restrictions in its dealings with Plaintiff - as did Magistrate Cota to Plaintiff's prejudice.
[14] Indeed, the purported "notices" were not even signed and dated by anyone at all (see Puckett
"supplemental" Declaration, Exhibits D through G).  Only certain persons may enforce district rules,
regulations, policies, or procedures - and it is not individual members of the Board such as HCSD

regarding the allegations; and/or how to restore her water service once it had been terminated[15].

Moreover, when Plaintiff sent a written request for information and a demand for restoration of water service on August 4, 2021, she never got any response (ECF #4, Exhibit 03). Magistrate Cota makes **no** mention in the F&Rs of the requirement incumbent upon the HCSD as a governmental entity providing utility services of informing a customer of the availability of a predeprivation hearing as a required component of true "notice", nor of the due process the HCSD was required to afford Olson **before** terminating her water service.[16]

Because, on their face, and substantially, none of the HCSD's purported "notices"[17] to Plaintiff meet the specific minimum requirements under the Constitution as set forth by the Supreme Court in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) at pages 12-16, they are not "notices" at all in the eyes of the law, and Magistrate Cota erred by determining that they were for any purpose. In fact, Magistrate Cota did not analyze if any (much less each and all) of the "notices" Puckett purports to have given Plaintiff were Constitutionally adequate in any way - despite this being one of the main thrusts of Plaintiff's Complaint, and arguments to the Court, and the fact that Puckett repeatedly admitted he acted without warrants or hearings..

Furthermore, as specifically found by the court in *Beaudreau v. Superior Court*, 14 Cal.3d 448, 458 (1975), a post-deprivation injunction hearing/remedy is not a substitute for due process associated with the **initial** seizure of a property right - yet this is exactly what was allowed to happen at the September 14, 2021 hearing before Magistrate Cota.

---

President Puckett. See Government Code sections 61045, 61050, 61051; *Price v. Tennant Community Services Dist.*, 194 Cal.App.3d 491, 495-496 (1987); HCSD Rules and Regulations, Section 4.3.

[15] There are no provisions under State law, nor in the Bylaws, nor the Rules of the HCSD, to permanently deprive someone of water service, although they frequently make mention of payments as a condition for restoration of service. No such opportunity was afforded Plaintiff for 55 days, even after she sent a letter with her water bill payment demanding an opportunity to do so (ECF #4, at item #7 and Exhibit 3). This refusal to provide any way to restore service was not addressed by Magistrate Cota in the F&Rs.

[16] There was also no substantial evidence before Magistrate Cota as to any use of the front gates and/or fence by Plaintiff personally, and apparently he just sort of assumed that Plaintiff uses those structures on a daily basis. The reality is that Plaintiff can no longer access her gates due to her disabilities.

[17] See Puckett "supplemental" Declaration, ECF #26, at Exhibits D through G. The Magistrate also overlooked that in two instances of the "supplemental" Declaration, at items #8, and again at #10, Puckett claims that Olson was "issued a violation" and "issued another violation" - both on August 23, 2021 - yet there are no corresponding emails, "violations", or notices attached as Exhibits to that Declaration that are dated July 23, 2021. There is thus no evidence at all to support any finding by the Magistrate that Olson was given any - much less Constitutionally adequate - notice (and/or a pre-deprivational hearing) for any actions by Defendants taken on July 23, 2021 - which is the day Puckett states he took Plaintiff's water meter, towed vehicles, and discontinued Plaintiff's water service. (*Id.* C.f., F&Rs at p.16:16-20.)

Instead of that hearing being about how the HCSD notices (regardless of how they are alleged to have been delivered, or when they may have been actually received), policies, customs, and practices are facially, and as applied to Plaintiff, Constitutionally deficient; and, that the seizure of vehicles, the water meter, and water service absent notice of how to challenge those seizures and/or to contest the allegations against her at a fair hearing were all Constitutional violations <u>admittedly</u> committed against Plaintiff Olson, the hearing instead became about if and how often Olson checks her email; if she ever walks out to her fence to see if anyone has taped any documents there[18]; how much water she allegedly used; if she parked a car over the meter box in her own driveway; if she argued with the police; and, if she "poured kitty litter" over her meter or not.  <u>None</u> of those things have **anything** to do with the Constitutional analysis of the actions of Puckett and the other government agency Defendants at issue, and which were before the Court for the TRO/Injunction hearing, and raising them as purported "argument" amounts to nothing more than classic victim blaming.

Even the fact that the individual deprived of a property right may later recover the property if she prevails at a post-deprivation hearing (which sort of hearing is not even an option under the HCSD's Resolution 2021-02, Section 6(k)), such a process does not satisfy constitutional requirements because even "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment, and ... must be <u>preceded</u> by a fair hearing." (*Brooks v. Small Claims Court* (1973) 8 Cal. 3d 661, 667, emphasis added.) None was afforded here, and Plaintiff's post-deprivation request for restoration of her water service, dated August 4, 2021 was deliberately ignored.  See Declaration of Kimberly R. Olson, ECF #4, at item #7, and Exhibits 3-4.

Because <u>no predeprivation hearings ever took place</u> on the allegations against Olson by the HCSD concerning the purported bases for termination of her water service, no administrative

---

[18] As Magistrate Cota repeatedly noted throughout the F&Rs, and as was not contested by the Defendants, Plaintiff Olson is severely disabled.  It is unreasonable to expect someone in such circumstances to make, what are for them, risky regular trips to the edge of their property simply to look for improperly-served documents.  By contrast, State and Federal law (as well as the HCSD Rule and Regulations) generally <u>require</u> service of documents to be via in-person delivery, or US Mail, so the onus is properly on Puckett and the HCSD to assure timely and proper delivery/receipt of their notices - it is not the responsibility of the recipients.  That aside, it is difficult to credence any claim by Defendants that they made any good faith effort to notice Plaintiff of anything, given that they admittedly (via Puckett's testimony at he Sept 14 hearing; see F&Rs at p.11:13-14) failed to undertake the most rudimentary forms of official communication - regular USPS mail to a customer's billing address, and/or calling her on the phone at the phone number she's had on file with that agency for over a decade.  Puckett did not testify that he didn't know Plaintiff's address or phone number, or that they weren't in the HCSD records.

findings of fact, based on substantial evidence adduced after a full and fair hearing before a neutral fact-finder, *ever* occurred. Because of this, Magistrate Cota's deference to Puckett's claimed determined facts in the "supplemental" Declaration (ECF #26) is not only wrong as an issue of law, but is itself a violation of Olson's due process because it wrongly[19] ratifies the HCSD's refusal to provide Olson the hearing(s)[20] to which she was entitled.

## 4. THE HCSD FAILED TO FOLLOW ITS OWN BYLAWS, AND RULES AND REGULATIONS RELATING TO TERMINATING PLAINTIFF'S WATER SERVICE, AND SO ALSO THUS VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS

When governmental agencies purport to establish rules, administrative procedures, notice and hearing rights, and/or property interests in the services or benefits they provide to the public, they may not take away any of the interests they create without procedural and substantial due process, the fundamental form of which is *proper* notice, and a predeprivation hearing. See *Goldberg v. Kelly* (1970) 397 U.S. 254, 255-261.

Although Magistrate Cota found in the F&Rs that the HCSD and Puckett failed to follow their own shut-off procedures as identified in the "notices" provided to Plaintiff by not attaching a "flow restrictor" to Plaintiff's meter prior to termination of her water service, he completely ignored all of the many other procedural and substantial due process violations that also occurred, invalidating all actions they took. (F&Rs, ECF #29, pp.11, 15, and 18.) Compliance with **all** due process, as set forth in *Memphis*, and also as provided in the HCSD's Rules and Bylaws, is a requisite to impose any punishment upon Plaintiff **at all** - including the installation of a "flow restrictor"[21], and as that never happened, there is no lawful basis for the sanction.

Here, the repeated allegations by Puckett are essentially that Plaintiff Olson violated various sections of Resolution 2021-02 between July 19 and 23 by using too much water; by "irrigation"; and, by "blocking access" to her water meter by allegedly parking vehicles[22] over it

---

[19] The EDCA, as a court of limited jurisdiction, also does not have jurisdiction to hear and determine accusations of violations by a customer of the local ordinances, rules, or policies of the HCSD. Particularly without any notice that it intends to attempt to do so.

[20] Since there were several individual violations, with different ones allegedly occurring on different dates, Olson is entitled to a hearing on each of them under the HCSD Rules.

[21] Because a flow restrictor severely limits the water service to a person's home, it is a significant interference with a consumer's property interest in water utility service as discussed in *Memphis*, and may not be imposed absent proper agency notice and hearing. The TRO hearing is not a substitute therefor, and so Magistrate Cota's Order that the HCSD could attach a flow restrictor also violated Plaintiff's rights.

[22] No substantial evidence that Olson owns any vehicles, or personally "parked" any, was presented by the Defendants. Indeed, the "car " referenced by Puckett in his ECF #26 "supplemental" Declaration at #8 and #10 is not even described in any way. C.f., Declaration of Marci Buttram, concurrently filed.

(ECF #26, items #5-8, and 10[23]). Resolution 2021-02, Section 6(m), defines "water waste" as, among other things, irrigating (per Section 6(c)), or using water in excess of 200 gallons per day (per Section 6(a)). See ECF #26, item #3, Exhibit C, pp.3-4. So far as excessive or "wasteful" use of water goes, the HCSD Bylaws provide as follows:

> **Section A-9(15):** "Where water is wastefully or negligently used on a customer's premises, and/or seriously affecting the general service, the District may discontinue the service if such conditions are not corrected <u>within five days after giving the customer written notice</u>." (emphasis added)

> **Section 1-6.020. Wastage.**
> No customer shall knowingly permit leaks or otherwise waste water. If the System Operator, General Manager, or any Director determines that water is being wastefully or negligently used on a customer's premises, and such use detrimentally affects the general service, <u>written notice shall be given to the customer to correct the conditions within five (5) days</u>. (emphasis added).

Similarly, the HCSD Rules and Regulations, at Section 4.15, entitled "Waste of Water", requires notice procedures "as provided in Section 4.03". Section 4.03 requires in pertinent part that "any person" who is allegedly in violation of any resolution of the HCSD, "shall be <u>served</u> ... with written notice" (emphasis added). Service is defined in this instance, and certain processes of accomplishing it are mandated by, California law at <u>Civil Code</u> sections 1010 and 1010.6, as well as <u>Code of Civil Procedure</u> section 1013. Taping notices to a fence is not permitted service.

Because Resolution 2021-02 also does not define "notice", nor the means and/or timing of how notices must be given, the HCSD must apply the provisions of its Rules and Regulations[24] at Sections 2.10, 4.03, 12.11, and the entirety of Sections 13 and 14[25], which it did not do. Moreover, there was no evidence presented to Magistrate Cota - even via the untimely surreply Declaration of Robert Puckett (ECF #26) - that it even <u>attempted</u> to comply with any of the foregoing, much less that it actually did so. Also, there was absolutely no time given, much

---

[23] There are no facts set forth in Puckett's Declaration ECF #26 that lay foundation for any conclusion that Plaintiff's alleged violations were so egregious that it excused the refusal to afford her a warning, followed by time to correct, then "notice" of a "violation" - then <u>more</u> time to correct, then a violation imposing a flow meter restriction **as is the process afforded other customers,** and instead appears to be more of a consequence of "contempt of Puckett". C.f., F&Rs, ECF #29, item #10. This is also strongly suggested by Puckett's tolerance of other customers' violations for weeks on end; some of whom exceeded usage limits by over 1000 gallons per day. (See concurrently-filed Olson Declaration at Exhibit 7.)

[24] As posted on its website at: https://hornbrookcsd.specialdistrict.org/operation-policies

[25] Section 13 actually lays out a sort of due process hearing right for customers - but one which is only triggered by "the <u>mailing</u> of the notice of termination" by the HCSD (emphasis added). There is <u>no</u> authorization in either the Bylaws, nor the Rules and Regulations, for the provision of "notice" to a customer by means of email, or "taping to the fence" of the customers property.

less the "five days" specified in the Bylaws, nor the "not less than...two days" specified in the Rules and Regulations at Section 4.03, for Plaintiff to correct any alleged violations prior to being sanctioned in any way - which periods are all routinely granted to other HCSD customers, with the flow restrictor only threatened to be applied after some weeks of repeated violations and notices. C.f., ECF #26, Exhibits E-G; concurrently-filed Declaration of Marci Buttram at #12, and attached exhibit; concurrently-filed Declaration of Kimberly R. Olson, at Exhibits 6, 7, 8.

Furthermore, Resolution 2021-02 does not purport to make parking a vehicle over a water meter a violation subject to warning or termination of water service, nor does it authorize the towing of vehicles to access water meters[26]. However, the Rules and Regulations, at Section 4.29, "Access to Meters", indicates that if an employee cannot access a meter, then the customer is supposed to be billed "based upon the last year's consumption". Thus, because he didn't obey his own Rules, Puckett's decision to tow vehicles, remove Plaintiff's water meter, and terminate her service was completely arbitrary and capricious - as was the refusal to reinstate it later.

Generally speaking, the HCSD and its minions have no police powers. If they believe that a violation of their rules, or a threat to public health, exists on a customer's property, they are required to get consent to come onto the property, or seek an "inspection warrant" prior to accessing the property and conducting any inspection. See, i.e, California Government Code §61069; Code of Civil Procedure §1822.50, et seq; Water Code §31144.1; Health and Safety Code §2053. Notably, "inspection" warrants (which may not even be executed after 6pm and before 8am per Code of Civil Procedure section 1822.56[27]) do not allow for seizure of any items or property, and Puckett's involvement of the police does not magically transform the HCSD's investigative efforts into a legitimate expedition for evidence to support a criminal complaint[28], and their actions attempting to do so are clearly illegal under the precedent of the Ninth Circuit.

---

[26] There is no mention whatsoever of "obstructing" a water meter, nor any definition of that term as used by Puckett in his submissions, and he didn't provide any of the emails as exhibits he claims to have sent Plaintiff. Neither is there any support (in the Rules, Bylaws, or State law) for the contention by Puckett that he (or anyone else at the HCSD) can, particularly unilaterally, interpret the Rules and Regulations at Section 4.11 as a car being parked over the meter constituting "tampering" with a water meter. "Tampering", for purposes of utility service, is defined by State law (and so preempting a local definition if one existed) at Civil Code §1882(e), and does not include parking a vehicle near, or over a meter.
[27] The restrictions against forcible entry of this section also apply to vehicles.
[28] The Defendants admit that as part of their actions relating to seizing vehicles and terminating Plaintiff's water service, they threatened to, and then actually did, file a criminal complaint against Plaintiff on August 31, 2021. See Declaration of Robert Puckett, ECF #17, Attach. 5, Exhibit A; "supplemental" Declaration of Robert Puckett, ECF #26, Exhibits F and G. At the hearing of September 14, when Magistrate Cota asked Puckett if Plaintiff had cut locks or damaged the meter, or if she had put anything between the meter and her house, Puckett stated that he never looked at it himself.

1   C.f., F&Rs, ECF #29, page 8:9-11; *U.S. v. Grey,* 959 F.3d 1166 (9th Cir. 2020) (upholding

2   suppression ruling by District Court relating to exceeding scope of inspection warrant).

### 5. THE MAGISTRATE'S PROPOSED ORDER THAT PLAINTIFF ONLY BE GIVEN THE "PROCESS" THE HCSD CURRENTLY HAS IN PLACE FOR WATER CUSTOMERS IS AN ERROR OF LAW OF CONSTITUTIONAL DIMENSIONS

5          The F&Rs at pages 19-20 indicate that an Order should issue allowing the HCSD to

6   continue its current procedures and processes for water service violations, notice, termination of

7   service, etc, but such a recommendation as it relates to HCSD Resolution 2021-02, Section 6(k),

8   and specifically allowing the HCSD or Puckett to send Plaintiff the sort of "notices" it has been,

9   using improper methods such as email or by taping the documents to her fence, violates the US

10  Constitution per *Memphis, supra,* and the California Constitution as declared by the California

    Supreme Court in *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306-312.

11         Plaintiff has challenged the Constitutionality of the acts of the Defendants, as well as

12  their process (customs, policies, and practices) by which they entered onto and seized Plaintiff's

13  property and that of her guests from her driveway without a warrant[29], without Constitutionally

14  adequate notice and service of notice, then terminated Plaintiff's water service without any

    hearing (and actually refused to grant a hearing on, and/or reinstate service thereafter[30]).

15

16

_____

17  [29] In fact, water districts such as the HCSD have limited powers *even with* the "inspection" warrants they

18  are permitted to acquire, and those do not give them authority to order seizure of property on their own
    initiative without judicial review - whether the police are present or not. See, i.e, California Government

19  Code §61069; Code of Civil Procedure §1822.50, *et seq*; Water Code §31144.1; Health and Safety Code
    §2053. Regardless, the HCSD did not bother to apply for, and did not have, an "inspection warrant" when

20  it trespassed on Plaintiff's driveway, towed vehicles, took her water meter, and cut off her service.
    [30] Declaration of Kimberly R. Olson, ECF #4, at #7 and Exhibits 3-4. The F&Rs do not seem to address

21  this issue, although they demonstrate the prejudice to Plaintiff of allowing the admission of unnoticed,
    highly suspect additional materials of dubious evidentiary value at the hearing by stating at page 18:26

22  that; "there is evidence suggesting Olson purposely obstructed her meter", while ignoring the provisions
    of the HCSD's own Rules and Regulations at Sections 4.9, and 12.07. However, even if such a charge

23  were true, that does not give the HCSD, or the police, any right to trespass, or to seize property absent a
    warrant, or due notice and process of law, as required by the US and California Constitutions. It is also

24  debatable as a matter of definition if merely parking a car over a water meter "obstructs" the meter in any
    way, since such parking does not hinder, impair, or impede its function. Indeed, most meter covers and

25  the like are designed to be driven over. Regardless, the District alleges that it charged Plaintiff Olson
    with "tampering" with the meter in violation of Rule 4.11 (Puckett "supplemental" Declaration, ECF #26,
    page 2, #6 and Exhibit D), but there is no provision in the Rules defining "tampering" as merely parking
    vehicles over a meter that is in the driveway. Furthermore, "tampering", so far as water meters is
    concerned, is defined in the California Penal Code at section 498(a)(6), and does not include simply
    impairing *access* to a meter.

As presented in the "supplemental" Declaration of Robert Puckett (ECF #26) at Exhibit C, page 3, the HCSD's legal justification for doing so, Resolution 2021-02, Section 6(k), is so Constitutionally defective that Plaintiff is entitled to an outright injunction of this Court of its enforcement. This is because it purports to authorize the taking by <u>any</u> employee of the HCSD of a person's property interest in their water service <u>without</u> any notice of the opportunity for a hearing - much less an *actual* hearing - on the allegations of any violation purportedly allowing disconnection of service, either before <u>or</u> after the seizure. Indeed, the operative language in the HCSD's Resolution for the "process" by which the District or its minions determine it is necessary to terminate service is simply that this will occur when the District "observes" or "observed" any "wilful" violation.

In practice, as Plaintiff has demonstrated, the HCSD is enforcing these policies upon her under a *per se,* strict liability standard instead. (*Id.*) This is also objectionable because the HCSD clearly doesn't feel the need to *prove* any of its accusations against her - or even to collect evidence (photos, emails, and the like) regarding them. C.f., Olson Declaration, Exhibits 06-08.

HCSD Resolution 2021-02 is the same sort of local law that the California Supreme Court had before it in the case of *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306-309, where the ordinance was struck down because there was <u>no</u> provision for any notice of, and/or procedure for, a lawful pre-, or even a proper post-deprivational hearing concerning seized property interests. With this precedent at hand, this Court should make the same sort of detailed analysis and findings as did the *Kash Enterprises* court before enjoining the enforcement of HCSD Resolution 2021-02, Section 6(k) outright due to its blatant Constitutional infirmity, and arbitrary and capricious enforcement, pending further proceedings in this action.

In another area of error, after improperly (and without any legal explanation) allowing a flow restrictor on Plaintiff's service, the Magistrate's Order seems to authorize the towing (seizure) of vehicles parked in the driveway of Plaintiff's property that may be arbitrarily designated as "illegal obstructions"[31], while commanding vaguely that Plaintiff obey all "lawful

---

[31] There is no state or local law or Rule defining the mere, non-damaging, parking of a vehicle over a water meter as either "obstructing", or "tampering" with that water meter. Further, Puckett's "supplemental" Declaration fails to state that he ever attempted to contact Olson to let her know in advance that the HCSD was going to read the meters early that month, rather than on the 25th through the 30th, as is the usual practice. The unsigned, undated, "notices" attached to that Declaration do not give any date and time that access is going to be required in the future, and do not request vehicles to be moved. Instead they were simply towed away the same day that the HCSD (or Puckett unilaterally) decided they were in the way. See Puckett "supplemental" Declaration, #8 and 10, noting that at #11

orders" of police concerning items of private real and/or personal property, without any notice or hearing about any such "lawful orders" - seemingly a direct violation of Constitutional mandates. (ECF #29, p.19, #5)  Moreover, such actions violate the HCSD's own stated Rules and Regulations at Section 5.10, which self-limit its jurisdiction to events and circumstances occurring _off_ of private property (despite the actions of Puckett and Dingman to the contrary).

In her moving and Opposition papers, Plaintiff expressed her willingness to reasonably cooperate with lawful activities by the Defendants in administration of the water service to her home by requesting the Court simply order that she be given a minimum of 48 hours notice as to when the HCSD intended to read, or otherwise work on, her water meter so that she could arrange for moving of vehicles and/or other items as necessary - but _without_ the _de facto_ seizure of her property by the HCSD (which has no easement to Plaintiff's land, and no contest of that fact was even presented in the moving papers or at the hearing), and/or by any police agencies.

Any orders of this Court as to Plaintiff, if they are appropriate at all[32], should instead be

---

notices were supposedly placed on the car as it was in the process of being towed. As Puckett clarifies at #11, "hand-delivery" of the notices to Olson means to him only that they were taped to her fence. As Puckett testified at the hearing, all references at items #8 and #11 to Olson "refusing" commands or requests by the HCSD representatives, and/or the police, meant that Puckett claimed Olson was inside the house when he and the Police were outside yelling at her, and speaking over a bullhorn, but she "refused" to come outside, so that meant that she was "refusing" to obey the commands shouted at the house from the front of the property.  When asked if Puckett knew of his own knowledge if Olson was even home at the time, he admitted that he did not.  Thus, Plaintiff never had any actual contact by, or interaction with, anyone from the HCSD, or the police concerning any of these events.  Puckett further admitted at the hearing that he never tried to call Plaintiff by phone concerning any of the alleged violations, requests, or demands, and apparently the law enforcement officers did not do so either.  It also makes no sense that Puckett states at #7 that the meter was removed and service discontinued on July 22, yet he came back on July 23 to further issue violations, tow vehicles to again access to the meter, and to remove the meter (#8 and #11).  Plaintiff also notes that although Puckett's Exhibit G "notice" is dated "July 22, 2021", down at the bottom is the actual date of its creation, which is shown as "7/21/2021, 10:32 PM".  So, either the HCSD/Puckett removed the meter prior to the actual date of any alleged violation, or they created the violation prior to actually witnessing it - both (or either) of which should concern this Court.

[32] The Order's instruction to the HCSD to install a "flow restrictor" on Plaintiff's water meter - which is a punishment the HCSD purports to be able to impose under Resolution 2021-02, Section 6(k) after it has issued (and properly served) a warning, given time for corrections, etc, is not supported by any findings of fact, or legal analysis demonstrating lawful jurisdiction to do so.  The unConstitutionality of Resolution 2021-02 aside, it is inappropriate for the Court to step into the shoes of the HCSD and issue such punishment in the first instance (which is actually itself a "taking" of Plaintiff's property interest in her water service), without a predeprivation hearing by the agency, and without any current allegation of a violation by Plaintiff (who, after all, had service terminated for 55 days as of the hearing, and has not even had any means to commit any violations in that time).  See ECF #29, p.19, #2.  The US District Court is not an arm of the HCSD, and its proceedings are **not** a lawful substitute for the proper pre-deprivation notice and hearing the HCSD must provide under the US Constitution, which, among other benefits, allows for a showing of all adversarial evidence, and the opportunity to create an administrative record for judicial review. (_Memphis Light, Gas & Water Div. v. Craft_ (1978) 436 U.S. 1, 13-14; _Kash_

as minimally-infringing on Plaintiff's property and other rights as possible by simply requiring that the HCSD give advance notice (by other means than "taping to the fence") of when it intends to read meters, etc, and so giving Plaintiff a reasonable opportunity to cooperate.

Finally, the HCSD should be specifically ordered to give "notices" to Plaintiff exclusively in the manner allowed by law, and the HCSD Rules at Sections 2.10, and 4.03. Further, the Court should instruct that "personal service" means actually handing Plaintiff a copy of the document, or in conformance with the reasoning of *In Re: Ball*, 2 Cal.App.2d 578, 579 (1934), and does not include "taping it to the fence" of Plaintiff's property.

## 6. THE MAGISTRATE'S PROPOSED ORDER IGNORES THE BURDEN OF PROOF OF THE HCSD'S OWN PURPORTED EMERGENCY ORDINANCE.

Although Plaintiff's Complaint alleges that certain purported resolutions and ordinances passed in the month of July by the HCSD Board of Directors were not in conformance with the laws (Complaint, ¶9), this was not made part of the TRO proceedings. The submission of the "supplemental" Declaration of Robert Puckett (ECF #26), however, attached as "Exhibit C" one of these purported resolutions, numbered as 2021-02. Puckett claimed that this Resolution provided the basis for termination of Plaintiff's water service based on only "observed" violations (by someone; Puckett never states in his Declarations who it might have been - nor did he do so at the hearing) for which penalties were summarily imposed at the scene of Plaintiff's driveway.

However, examination of Section 6(k) on page 3 of Resolution 2021-02 reveals that it clearly states that the District must establish that any alleged violations are "wilfully" undertaken - which was not done here, not only because no notice of hearing, or any hearing was to be had in the first place, and because the "notices" provided by Puckett do not allege Plaintiff acted wilfully, but also because; "[t]he concept of willful misconduct has a well-established, well - defined meaning in California law. 'Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results.' " (*New v. Consolidated Rock Products*

*Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306-309.) Neither does the USDC have jurisdiction to adjudicate administrative allegations of HCSD customer violations of the Rules and Regulations, and/or violations of Resolution 2021-02 in the first place. Rather, federal courts are courts of limited jurisdiction and lack inherent or general subject matter jurisdiction. Federal courts can adjudicate only those cases authorized by the United States Constitution and Congress. Generally, those cases involve diversity of citizenship or a federal question, or cases in which the United States is a party. *Kokkonen v. Guardian Life Ins. Co.*, 114 S.Ct. 1673, 1677 (1994); *Finley v. United States*, 109 S.Ct. 2003, 2008 (1989). Federal courts are presumptively without jurisdiction over normal civil actions and controversies. *Kokkonen,* 511 U.S. at 377.

*Co.* (1985) 171 Cal.App.3d 681, 689.  The common dictionary definition of "willfully" is; "done deliberately; intentional".  Puckett makes clear he never considered this element of violations.

## 7.  THE MAGISTRATE'S IGNORING OF THE IMPLICATIONS OF THE DECLARATION OF RANDALL SCHEIMER WAS PREJUDICIAL ERROR

Although Plaintiff duly submitted the declaration of one of her neighbours, Randall Scheimer (ECF #22), who is not a party to this action, the F&Rs make no mention whatsoever of this critical evidence establishing <u>no water service</u> was on Plaintiff's block during much of July.

Mr. Scheimer's Declaration states he had a conversation with Defendant Puckett about a week prior to the HCSD's seizure of Plaintiff Olson's water meter and service, and that although Puckett was aware a private agricultural well was feeding the irrigation of Olson's property, Puckett intended to "take her meter" anyway.  (Declaration of Randall Scheimer, ECF #22.)

Mr. Scheimer's Declaration further states that during the time relevant to the Motion for TRO/Injunction, he had <u>no</u> water service from the HCSD, and that neither did his neighbours on Henley Hornbrook Rd. (*Id.*)  Scheimer lives very close to Plaintiff Olson, and across the street. (*Id.*)  It's not reasonable to conclude without evidence that nobody had water <u>except</u> Plaintiff.

No reasonable contention can be made that the HCSD, or Puckett, have any right to control a private well on property that is not even connected to the District, or to punish (particularly without any hearing), a customer who utilizes <u>private well water</u> outside her home. Moreover, it is clear from Puckett's Declarations to the Court (ECF #17, and #26), that he makes no claims of any effort by him, or anyone else at the HCSD to determine where the water being used for the "observed" irrigation in Plaintiff's yard actually came from before he issued the "violations" of July, and indeed, he does not even state that the alleged use by Plaintiff of "6200 gallons per day" <u>was</u> actually HCSD water, nor how that number was  recorded or otherwise determined/calculated, or by whom[33].  (See Puckett "supplemental" Declaration, ECF #26, page 3, #9.)  Also, and oddly, <u>none</u> of the emails Puckett claims were sent are presented as exhibits.

Moreover, even going by Puckett's own timeline, nobody, Plaintiff or otherwise, was given any notice about the water restrictions by the HCSD until the earliest of July 17, 2021 (*id*,

---

[33] This is just one of numerous examples of the lack of foundation for, and conclusional nature of, Puckett's statements in his declaration. Unfortunately, Magistrate Cota misperceived/presumed this statement as having been the result of "finally [being] able to read the meter" at ECF #29, page 11:1-2, when there are no foundational facts stated for such a conclusion.

at #4[34]), although it appears from Mr. Scheimer's Declaration that Puckett stated an intent to terminate Plaintiff's water service at least a couple of days prior to that, and so long prior to July 19 (the date of the first "notice" of alleged violations to Plaintiff), since there is no mention of any notice relating to water use restrictions during Mr. Scheimer's interaction with Puckett.

By contrast, other persons who used wells for "irrigation" were not issued any "violations", and did not have any cars towed.  See Declaration of Marci Buttram in support of Objections to Findings and Recommendation of Magistrate Judge, filed concurrently herewith, at item #11.  Furthermore, other customers of the HCSD who receive "violations" from the HCSD get them signed by Puckett or another representative of the HCSD, and are given several opportunities over the course of weeks to correct any problems before even initial action is taken against them - much less actual removal of the meter.  (Id., at #12. See also Declaration of Kimberly R. Olson in support of Objections to Findings and Recommendation of Magistrate Judge, filed concurrently herewith, at items #10 and #11, and attached **Exhibits 06-08.**)

## 8. THE HCSD DEFENDANTS' ORIGINAL, AND PUCKETT'S "SUPPLEMENTAL" DECLARATION AND ITS EXHIBITS, ARE NOT ADMISSIBLE EVIDENCE

Although all the submitted Declarations by the HCSD Defendants in this matter are objectionable, both the original (ECF #17, attch.5), and the "supplemental" (ECF #26) Declarations of Defendant Robert Puckett, Sr. are completely unworthy of being considered as admissible evidence by this court primarily because they do not state facts demonstrating personal knowledge of the declarant for each claimed "fact", and contain hearsay[35].  Other items of the ECF #26 Declaration are clearly themselves hearsay, sometimes of multiple levels (see, i.e., item #2), while being consistently vague and misleading.  Plaintiff also objected to Puckett's (and the other HCSD Defendants') Declarations, and their failure to produce hard evidence, in

---

[34] And again, Puckett's ECF #26 "supplemental" Declaration only states *generally* that the notice of restrictions was "hand delivered to all customers", and that "all meters were read", yet fails to state that Puckett himself either "hand delivered" any such notice directly to Plaintiff (or even that it was just "taped to her fence" by him as per his statement #11), or that he (or anyone else he was watching) actually read the meter of Plaintiff. So, either this section is hearsay, or Puckett fails to state facts demonstrating any personal knowledge, but either way, it is inadmissible as evidence.
[35] Plaintiff objected to the original declarations of the Defendants on such grounds in her Reply (ECF #20), at page 3:17-18. Clearly Magistrate Cota simply relied on Puckett's status as the president of the HCSD to infer some sort of automatic knowledge of the details of its operations as might be in the case of a civilian business or corporation, but the law, that is not the case concerning the involvement and authority of the "President" of a local independent district - which is actually much more limited. See, i.e., California Government Code §§61040(e), 61043(b), 61051. So in truth, as provided by statute, a much more competent witness would have been the HCSD's General Manager, and one wonders why that individual was not produced instead of Puckett.

1   her oral statement that she read to the Court at the beginning of the hearing on September 14,

2   2021, a true copy of which is attached to her concurrently-filed Declaration as Exhibit 9.

## A. The Declarations Lack Facts Demonstrating Personal Knowledge

"An affidavit must be stricken when it is a conclusory argument rather than a statement

of fact, or when the affidavit is not based on personal knowledge." *Story v. Sunshine Foliage*

*World, Inc.*, 120 F.Supp. 2d 1027, 1031-1032 (M.D. Fla. 2000).  Furthermore, declarations

"asserting personal knowledge must include enough factual support to show that the [declarant]

possesses that knowledge." *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)

(citations omitted); and, the "requisite personal knowledge must concern facts as opposed to

conclusions, assumptions, or surmise." *Livick v. The Gillette Co.,* 524 F.3d 24, 28 (1st Cir. 2008)

(citation omitted).  Personal knowledge may include *basic* inferences <u>only as long as</u> they are

"grounded in observation or other first-hand personal experience" and are not "speculations,

hunches, intuitions, or rumors about matters remote from that experience."  *Visser v. Packer*

*Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (citations omitted).  Fed. R. Evid. 602

permits a witness to testify to a matter[36] "only if evidence is introduced sufficient to support a

finding that the witness has personal knowledge of the matter." See also *Argo v. Blue Cross &*

*Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (affidavits to be made on

personal knowledge; Fed. R. Evid. 602 may be relied on in striking offending part of affidavit).

Examination of the Declarations of Defendant Robert Puckett (ECF #17, attch.5, and

ECF #26) reveals that, with the exception of ECF #26 item #3 (because he signed the Resolution

at issue), Puckett makes a number of sweeping, vague, misleading generalizations about facts

outside of his personal knowledge, and does not state a single fact demonstrating (or even simply

claiming) that he, <u>personally,</u> took *any* of the actions described in the Declaration, performed

calculations (or what any numbers based on), or that he personally saw or heard someone

else do anything[37].  Neither does he establish **any** education, training, or investigations that

would qualify him to opine about anything - much less well outputs; the reason(s) for the

---

[36] This Rule thus also applies to Puckett's live testimony, which, like his Declarations ECF #26, failed to present facts demonstrating personal knowledge of the conclusions and assertions set forth in his testimony, and/or in the surreply Declaration (ECF #26).

[37] And other than the Exhibit C document that Puckett personally signed, none of the other documents attached to the ECF #26 Declaration are authenticated by him (or subject to evidence Rule 902), or bear his signature, while the purported "notices" presented as Exhibits D, E, F, and G are not signed or dated by anyone at all.  Neither does Puckett attach any photos, the emails he claims were sent, or other evidence demonstrating competence to testify as to any of the ECF #26 Declaration's purported facts, or that would tend to demonstrate the basis/truth of his asserted conclusions.

"emergency" of the HCSD system being (even in part) due to any alleged actions of Plaintiff[38]; the causes of any purported "failure" of any part of the HCSD water system (including wells); if in fact the HCSD system is even in any true "emergency" state and the causes therefore; etc.

Instead, Puckett refers to factually unsupported hearsay[39], various unauthenticated documents (and which are not self-authenticating under Federal Rule of Evidence 902), and repeatedly makes vague, foundationless statements that are absent of such things as specific facts or hard numbers[40], dates, and times. These statements thus also impermissibly require the reader to **infer** that he undertook the described actions himself. See ECF #26 at items #1-2, and 4-11.

In not a single one of these statements does Puckett *ever* use the pronoun "I". Likewise, he does not state therein that he was personally present during any event or "observation", or that he personally saw any act[41], or took the stated action; nor does he otherwise explain who actually took the alleged actions described (including making any "observation"[42], or calculations and the like - nor how those calculations were undertaken or what they were based upon). Indeed, the

---

[38] Plaintiff's pleadings and evidence, meanwhile demonstrate that the lack of water during July was caused by the HCSD's (and Puckett's) own negligence in failing to find and repair a leak that was allowing an uncontrolled escape of 25,000 gallons per day. See: Complaint, ECF #1, ¶7 at fn16: Motion for TRO, ECF #3, p.6 @fn8; Declaration of Randall Scheimer, ECF #22, at item #5; Declaration of Marci Buttram at item #10; news story featuring Robert Puckett at https://ktvl.com/news/local/amid-water-crisis-small-community-takes-matters-into-its-own-hands   Moreover, the evidence shows the alleged "water emergency" was not affected by discontinuing Plaintiff's service on July 23, but ended on July 27 after the leak was found and fixed by the local citizens of Hornbrook, while Puckett did nothing to help.
[39] Such as ECF #26, item #2 - stating that the Siskiyou County Emergency Services "sent out a flyer" that made statements which were somehow "based on a finding" (by somebody, but the foundational facts are missing) that "the current level of water usage" (which is not specified) was supposedly "beyond the available supply" (also unmeasured/unspecified) in order to "adequately replenish the system".
[40] Such as HCSD total water production generally; an alleged "extreme water shortage brought about by the drought" which is unsupported by any citation to an administrative record and/or substantial evidence therein; and/or the basis for conclusory statements such as "Ms. Olson was utilizing 6200 gallons per day" (or even the specific days thereof, as opposed to "during the month of July"). See also unsupported claim at Puckett Declaration, ECF #17, Attachment 4, p.2, at item #5; "Kimberly Olson has utilized District water at a rate that is close to the total of all of the other customers within the District including commercial and residential combined." No personal knowledge is demonstrated for these claims
[41] Particularly, but certainly not limited to, actions he attributes to Plaintiff, such as actually parking vehicles, arguing with police, or pouring "kitty litter" over the water meter (at item #9).
[42] Concerning the charge of "irrigation" against Plaintiff, Puckett does not state that he observed any "irrigation", or that he undertook any investigation about the water so used. In fact, Puckett does not actually assert (even baldly) that the water so used was HCSD water, while Plaintiff's evidence shows it was water from a private well, so not subject to HCSD control in any way. Further, there was no HCSD water service to Plaintiff's home, nor to anyone on Plaintiff's block at those times. See Declarations of Scheimer (as ECF #22), Olson, and Buttram (filed concurrently herewith).

ECF #26 Declaration fails to even make the customary rote statement that he has personal knowledge of the facts stated therein, and could and would competently testify to those facts[43].

Despite taking an extra 11 days to produce what he did at the September 14 hearing, (in violation of the Order of September 8, ECF #18) Puckett does not provide any evidence (such as photos, HCSD records, emails he supposedly sent Plaintiff, or police reports, of the alleged July 23 events) to support his assertions, conclusions, speculations, and assumptions, nor does he explain how he obtained any item of this supposedly factual information or why he is qualified to testify to these purported facts. (ECF #26.) Since Puckett's statements in paragraphs #1-2, and #4-11 of his "supplemental" Declaration (and items #2 and #5 of ECF #17, attch.5) are not demonstrably based on personal knowledge, they should be properly stricken by this Court.

The evils of assuming the missing facts in Puckett's ECF #26 "supplemental" Declaration are exemplified by the erroneous statement by Magistrate Cota in the F&Rs (ECF #29) at page 11:1-2, finding that the 6200 gallon/day usage claimed by Puckett came from an actual meter read[44], and cites to item #9 of Puckett's Declaration. In reality, **there is no meter read information provided** by the HCSD at all, and the amount stated in #9 is not even *claimed* to have come from a meter reading. Neither is there *any* photographic evidence attached to the Declaration providing foundation for such a claim - as one would expect to result from any official investigation in these times (or at least a documentary record of the "meter reading"), and it is not contained in the "notices". Thus, this finding is a clear (and prejudicial) mistake of fact.

It is improper, and extremely prejudicial, for the court to assume important foundational facts (another here would be who read any meter, since Puckett does not state he did so) in order to admit what is otherwise clearly inadmissible testimony. It is also not Plaintiff's burden in these proceedings to "prove a negative". That is, she is **not** obliged to prove that she did not use "6200 gallons per day". Instead, that is a question of fact that is the burden of the HCSD - one

---

[43] Puckett never did proffer any testimony at the hearing of September 14, 2021 concerning any personal knowledge of much of anything other than confirming he was present at the July 23 towing event at Plaintiff's house, and that he and the police yelled at Plaintiff's home using a bullhorn, whereupon Puckett opined that Plaintiff's "refusal" of requests/commands to come outside justified summary towing of cars and removal of her meter. He also clarified that when he "personally delivered" notices to Plaintiff, he actually meant he had to tape notices to her fence because she has a locked gate. (ECF #26, items #8, 10, and 11.) Plaintiff notes that none of the "notices" attached as exhibits to Plaintiff's ECF #26 Declaration indicate that they were "taped to the fence", and Puckett did not attach any emails to his Declaration.
[44] No evidence was introduced that Plaintiff's meter revealed any specific reading at any of the times relevant to the "notices", nor that it was inspected, checked for proper function and/or accuracy during the period of the HCSD's low/no pressure event, or if such event fell outside of its design parameters.

1    that is supposed to be borne at a (noticed) <u>predeprivation</u> hearing where Plaintiff has the

2    opportunity to meet accusatory evidence produced by the HCSD of its allegations.

3        All the same, Plaintiff <u>did</u> provide evidence prior to the September 14 TRO hearing that

4    there was <u>no water</u> on her block during the time period encompassed by the HCSD's "notices" in

5    the form of the Declaration of Randall Scheimer (ECF #22), but the Magistrate did not consider

6    it[45].  Meanwhile, Puckett and the HCSD failed to provide evidence of inspection (or even of any

7    attempt to do so) of Plaintiff's HCSD-fed water system to determine if she indeed had **any** water

8    service during the period of July 19 - 23, <u>and</u> if there was sufficient pressure for "irrigation".[46]

9        Puckett also fails to state any competency to produce, and does not properly authenticate

10    or lay foundation for, the purportedly official documents attached to the ECF #26 "supplemental"

11    Declaration as exhibits (by stating he is the custodian of records for the HCSD, for instance, or

12    demonstrating self-authentication under Federal Rules of Evidence, Rule 902), that they are true

13    copies of official records or otherwise, that he created any of the "notices" himself, etc.

14        A writing is not authenticated simply by attaching it to an affidavit, even if the writing

15    appears on its face to have originated from some governmental agency and the affiant is a

16    government official as in this instance. The foundation is laid for receiving a document in

17    evidence by the testimony of a witness with personal knowledge of the facts who attests to the

18    identity and due execution of the document[47] and, where appropriate, its delivery. An official

19    record is authenticated by the testimony of a witness who knows and attests to the facts stated in

20    Rule 44 of the Federal Rules of Civil Procedure. ( *See, e.g.,* 5 Moore ¶ 44; C. McMormick,

21    Handbook of the Law of Evidence (1954) 395-405.) <u>None</u> of the exhibits here are admissible.

**B.  The Declarations Are Self-Serving, Conclusory, Speculative, and Hearsay.**

        Although this hearing was supposed to be about Constitutional due process, and not an

opportunity for the Defendants to try and prove that Plaintiff actually violated any of the HCSD's

local regulations, that is the main thrust of the ECF #26 Declaration.  It is misleading in the

extreme for Puckett to couch the claims in items #8 and #10 in such terms as to strongly imply

---

[45] Plaintiff also stated during the hearing that the bald claim/accusation of 6200 gallons/day use was "insane" <u>because there was no water coming from the taps during those times</u>, but apparently the Magistrate simply did not hear her full comment due to the technical difficulties with the phone system.
[46] It is common knowledge that something at least close to normal household pressure would be required to operate sprinklers, etc, and a that a trickle that was barely "enough to fill the toilet" would not be sufficient.  Regardless, Puckett does not define what he means by "irrigation" (nor do the purported notices to Plaintiff), and the alleged irrigation is not described in any way besides a conclusory fashion.
[47] Here, it is plain that neither Puckett, nor anyone else, ever "duly executed" the deficient "notices" purportedly provided, via email and/or "fence taping", to Plaintiff.  (ECF #26, Exhibits D through G.)

(although it is true he does not outright state) that Plaintiff was <u>actually physically present</u> and speaking/interacting with Puckett and law enforcement officers at her home on July 23, 2021, when the fact was, and as was reluctantly testified to by Puckett at the hearing of September 14, Plaintiff did not come out of her house at all, and that Puckett had no personal knowledge of if she was home or not (rendering his assumptions that she was inside, and the alleged "refusals" he attributes to her, completely speculative). Puckett also repeatedly refers to alleged ownership of vehicles by Plaintiff without foundation or statement of knowledge of any relevant facts - instead simply speculating that the vehicles allegedly present belonged to Plaintiff, as well as if "she" parked them, etc. No foundational documentation (such as registration information, or photos of Plaintiff) is attached to Puckett's ECF #26 Declaration - <u>nor are any of his allegedly-sent emails</u>.

Puckett also attempts therein to testify that Plaintiff actually "received" notices[48] because they were sent to her by email (by someone - he does not say who, and the "notices" are unsigned), or due to being "taped to her fence". Other objectionable material claims knowledge of Plaintiff's state of mind - something that Plaintiff repeatedly objected to at the hearing, along with the hearsay. See, i.e., the ECF #26 at items #8, 9, and 11. Speculation about the subjective intent of another party, and the specifics of any actions taken by anyone other than himself (such as supposed "explanations" or orders and "requests" of the police - which are also hearsay) are clearly outside of Puckett's personal knowledge, and, therefore, must be rejected as evidence.

Puckett's "supplemental" Declaration is also defective for what it does <u>not</u> state, and what is <u>not</u> attached to it. For instance, at item #7, rather than simply saying that he personally read the meter at Plaintiff's home on such-and-such a date and time (if he did), then giving the actual reading(s) of the meter as is done with ***other*** customers on <u>their</u> notices (see concurrently-filed Declaration of Kimberly R. Olson, Exhibits 6, 7, and 8). Puckett makes completely conclusory, and speculative (due to no facts demonstrating personal knowledge), statements that Plaintiff's "meter was read" and was found (by somebody not identified) to be "significantly exceeding" water use limits[49]. Where is a photo of the meter showing the readings that allowed

---

[48] Puckett does <u>not</u> claim, however, that Olson "received" these notices <u>prior to July 23, 2021</u>, which he states in his "supplemental" Declaration at item #10 is the date that vehicles were towed from Olson's driveway, and Olson's water service was terminated. However, Olson has alleged the removal of the meter occurred prior to that, and has submitted photographic proof herewith demonstrating the meter was in fact gone <u>no later than July 22, 2021</u>. This means there was no lawful basis for any July 23 actions.
[49] This term is not defined, but is not stated as "6200 gal/day", and <u>only</u> Plaintiff is summarily punished for doing so, since other customers get repeated warnings and time to correct violations - even those with usage <u>six times</u> the limit of 200 gal/day. See concurrently-filed Olson Declaration at Exhibits 6, 7, and 8.

such a calculation - or even just the written meter read logs for that day?  In fact, why is there <u>not</u> <u>a single photo</u>, nor **any** documents demonstrating that *any* of the events described in the Declaration are true - or ever happened - (much less that Puckett has personal knowledge concerning them) attached to Puckett's Declaration?  Equally objectionable material (and lack of documentary corroboration) appears in <u>every</u> item of the Declaration, save #3.

There are also nowhere any hard facts discussing the amount of water the HCSD produces, what the consumption rates are for the District (either collectively, by customer type, or individually), nor any support for the claim that any alleged specific water use by Plaintiff (if it indeed occurred) was either excessive, unnecessary, or wasteful - rendering such inflammatory claims completely speculative and conclusory.  See, i.e., Puckett's original Declaration at ECF #17, attachment #4, at item #5[50].  Such statements - that are not based on the declarant's observation of concrete facts - are inadmissible, because such statements, to be admissible evidence, must be grounded in <u>first-hand experience</u> and not based on hearsay or speculation. *Hill*, *supra*, 877 F.Supp.2d at 382; see also *Visser, supra* 924 F.2d at 659 (citations omitted).

These defects, particularly when the ECF #26 Declaration is suddenly coming before the Court in such a prejudicial manner, require strict scrutiny, and demonstrate powerfully that it was improper for the Magistrate to admit them, and then to also rely on the statements as competent evidence.  See e.g., *Early v. Champion Int'l. Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) (finding conclusory, self-serving, or uncorroborated allegations in an affidavit could not create issues of fact).  Further, "[b]ald conclusions, opinions, and hearsay without supporting specific facts are not admissible...." *Williams v. Hager Hinge Co.*, 916 F.Supp. 1163, 1168 (M.D. Ala. 1995) (citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

**C.  The Declarations Are Partly Demonstrably False Representations to this Court**

Puckett's "supplemental" Declaration (ECF #26), is also facially false in part.  At item #7, Puckett states that on July 22, 2021 Plaintiff was "ordered" to cease violating HCSD water restriction on the amount of water used[51], that her meter would be removed[52] and her service

---

[50] Notably, in this Declaration, Puckett makes the unsupported claim of extreme/excessive use by Plaintiff generally, and does <u>not</u> allege that it occurred illegally, or during any period of water restrictions as imposed on July 16, 2021, and allegedly noticed to District residents on July 17, 2021.  (See also "supplemental" Declaration, ECF #26, items #3 and 4.)  No investigative efforts are mentioned.
[51] Noting further that this allegation of excessive water use is the <u>first</u> such alleged violation, and that other violations, presumably having their own due process associated with them, were for "irrigation", and relating to vehicles.  The July 22 "notice" did <u>not</u> mention either irrigation, nor vehicles, and it did not

1   disconnected that same day. Item #7 cites to "Exhibit G", which is an unsigned, undated

2   document purporting to be a "Notice of Violation of Water Emergency Regulations". Although

3   there is a typed date of "July 22, 2021" in the body of the purported notice, the date in the lower

    right corner indicates it was actually created on July 21, 2021.

4       Despite the foregoing, Puckett's ECF #26 Declaration **then** goes on to claim at items #8

5   and #10 that additional violations were issued to Olson on July 23, 2021 as a result of various

6   events, that there were confrontations involving the Sheriff's Department and HCSD, and that

7   vehicles were ultimately towed for obstructing the meter at Olson's home - whereupon the meter

    was removed again (ECF #26, item #10). No documents dated July 23 are attached as exhibits.

8       This is bold fabrication without evidentiary support, since it cannot be both ways, and the

9   Court should be concerned that it was created, and "sprung" upon Plaintiff and the Court at the

10  hearing so as to get around any real scrutiny, and opportunity for impeachment. False evidence,

11  false testimony in particular, subverts the judicial process, and is prejudicial to say the least.

12      Moreover, Plaintiff was able to obtain the Declaration of Marci Buttram, a non-party eye

    witness to the events described by Puckett in ECF #26, items #8 and #10, as occurring on July

13  23, 2021. Ms. Buttram's Declaration has been concurrently filed with these Objections. Ms.

14  Buttram states therein that she saw everything that happened on that occasion as she was

15  standing just a few feet away in her own yard while it occurred (and at one point was contacted

16  by the police); that during the events there was no contact with Olson by either Puckett, Clint

    Dingman, or any of the police; that Olson never came out of her home and was not present at any

17  time during any of those events (so made no "refusals"); that the cars that were towed did not

18  belong to Plaintiff; that there was no "kitty litter" present at Plaintiff's meter box; and, that no

19  notices or other documents were left at the scene by Puckett and/or Dingman.

20      For her part, Plaintiff has a photograph attached to her concurrently-filed Reply

21  Declaration as **Exhibit 04**, which is dated July 22, 2021, and which is a true and accurate

    representation of her meter box contents on that date, and which shows that Plaintiff's meter was

22  already removed at that time, so clearly there was no way it could have been there on July 23.

23

24

25  specify any amount of gallons that Plaintiff supposedly used, nor did it set forth any factual basis for such
    a conclusion (such as actual meter readings, who took them, other investigation efforts, etc).
    [52] This is another violation of due process as well, since meter removal is another stage of punishment that
    is only supposed to be inflicted after the installation of a "flow restrictor", and then after locking off of the
    meter. At the hearing, Puckett admitted that Plaintiff had not cut any locks or done anything to her meter
    that would warrant that punishment, and that he "never looked" at Plaintiff's meter.

1   Since Plaintiff had been disconnected from the HCSD system no later than July 22, 2021,

2   there was also *no way* she could have been in violation of any HCSD Rules, Resolutions, or

3   Bylaws (particularly "obstructing" or "tampering" with the meter) on July 23 as Puckett claims.

4   This means cars were towed, violations were issued, etc, that not only occurred without any

    procedural due process, but also in violation of the 4th Amendment, and completely outside of

5   the jurisdiction of the HCSD, Puckett, and the Sheriff's Department officers.  Clearly, the parties

6   who "caught up" Bruce's Towing[53] into this action were these Defendants - not Plaintiff.

7   **9.  PLAINTIFF AND ALL OTHER HCSD CUSTOMERS ARE ENTITLED TO RELIEF**

        Relevant to the actual Constitutional deprivations and related issues raised by the

8   Complaint and Plaintiff's Motion for TRO/Injunction, Puckett's ECF #26 "supplemental"

9   Declaration demonstrates conclusively that:

10      i)  The "notices" allegedly given to Plaintiff did not conform to the minimum
        requirements set forth by the Supreme Court in *Memphis, supra*, 436 U.S. 1, at 12-16;

11

12      ii)  That vehicles were towed from Plaintiff's driveway without any warrant to do so, nor
        subject to any pre-deprivational hearing, and a day <u>after</u> the meter had been removed;

13      iii)  That Plaintiff's privately-owned water meter, and her water service, were seized by
        the Defendants without any warrant or pre-deprivational hearing per *Memphis*, and in

14      violation of the HCSD's own polices, procedures, and Rules and Regulations;

15      iv)  That the HCSD and Puckett relied on his Exhibit C Resolution 2021-02, and

16      specifically Section 6(k) thereof, to undertake facially and substantially UnConstitutional
        acts against Plaintiff, and other water customers of the HCSD; and,

17      v)  That HCSD Resolution 2021-02, and specifically Section 6(k) is unConstitutional on

18      its face, and as applied to Plaintiff (and the other customers of the HCSD), because it fails
        to provide the minimum requirements for notices, and a predeprivation hearing, described

19      and set forth by the Supreme Court in *Memphis*.

20      These established facts demonstrate that Plaintiff is entitled to an extraordinary remedy

21   by this Court that not only (fully) restores her water meter and water service, but also one which

22   prevents further arbitrary, capricious, manufactured, undocumented actions against her and her

23   property by the Defendants - particularly those which violate the HCSD's own Rules, policies,

    Bylaws, or regulations, or which are outside of its jurisdiction (such as penalizing Plaintiff for

24   her use of a private well for "irrigation" when that well is not part of the HCSD system).

25

---

[53] See F&Rs, ECF #29, p.6, fn4.  Plaintiff did not allege Bruce's Towing retaliated against her because she believes they were naively "doing the dirty work" of Puckett, Dingman, and the Sheriff's deputies. All the same, they had a duty not to remove vehicles from private property illegally, or without a warrant.

Further, due to the fact that HCSD Resolution 2021-02, Section 6(k) is unConstitutional on its face under *Memphis, supra*,[54] this Court should issue an Order enjoining the enforcement or use by the Defendants of Section 6(k) during the pendency of these proceedings - in a similar manner to the approach it recently took in another Siskiyou County case involving water use by the Hmong people in *Dilevon Lo, et al. v. County of Siskiyou, et al.*, #2:21-cv-00999-KJM-DMC.

Plaintiff, by way of her concurrently-filed offer of proof via her own Declaration (at #10 and 11) and attached Exhibits 06, 07. and 08; and the Declaration of Marci Buttram with its Exhibit, has provided the Court with additional examples of Constitutionally inadequate, *Memphis* non-conforming, "notices" by the Defendants. These notices, while much more informative and fact-based than those purportedly delivered to Plaintiff (raising again the issue of disparate treatment of Plaintiff), are still inadequate on their face to pass Constitutional muster, so it is clear that simply forbidding the application of Section 6(k) to Plaintiff will not be enough to protect the public from the unConstitutional acts of the Defendants.

Plaintiff specifically pled in her Verified Complaint on page 2 that she brought this action "in the name of all persons similarly situated to Plaintiff", and so this relief is appropriate.

## 10. PLAINTIFF SHOULD BE GRANTED LEAVE TO OBTAIN EXPEDITED DISCOVERY FOR THE PRELIMINARY INJUNCTION HEARING

Plaintiff has come forward with enough evidence to cast serious doubt on the veracity of the claims and testimony of the HCSD and Robert Puckett. She has also produced some hard evidence that Puckett and the HCSD treated her differently, more harshly, and with fewer rights, than they did other similarly-situated customers. There are significant discrepancies in Puckett's testimony, while objective facts and evidence in support of his claims are non-existent. It is also clear at this point that he has withheld important facts and evidence from the Court.

This Court should therefore exercise its powers to grant Plaintiff opportunity to obtain discovery of the Defendants, and particularly the HCSD and Puckett, for the period of May through September, 2021 consisting of its water well production records, as well as all power

---

[54] This issue was not even addressed by Magistrate Cota in the Findings and Recommendations, although to be fair, by the Defendants "hiding the ball" until the hearing as to what authority they allege they were acting under, the Plaintiff and the Court were denied proper briefing on those issues, and to incorporate into any request for relief. There was simply no reason for the Defendants not to have been able to provide to the Court, and to Plaintiff, by September 3 as Ordered, official HCSD materials and records that were generated between mid- and late July, and they never offered any explanation as to why they waited until the hearing of September 14 had commenced to submit these materials, although a reasonable inference can be made that it was a deliberate attempt to prevent Plaintiff from being able to rebut them.

bills for each of the three water wells; meter readings from the wells showing gallons pumped each day; meter readings from the HCSD water plant showing the number of gallons flowing through it on each day of that time period; records of flow rates and water usage into the town of Hornbrook; any and all evidence received by the Board of the HCSD relating to each and any "emergency" findings, and/or declarations by the HCSD; copies of all emails sent to any HCSD customer, or to "all customers of the HCSD" (about 120 in number) as mentioned by Puckett in his ECF #26 Declaration - including all headers and metadata; records of any and all inspections, meter lockouts or removals, meter readings, and "notices" produced by the HCSD during those months; all documents relating to any Board actions authorizing Robert Puckett, or any other person, to enforce Resolution 2021-02; <u>requirements for restoring water service</u>; and, all letters, notes, emails, texts, or other communications from customers seeking to complain about, challenge, or request a hearing for, any HCSD "notice", "violation", "warning", installation of a flow restrictor onto a water meter, locking out of a water meter, or removal of a water meter. The Court should also order that the Defendants produce the above-listed discovery to Plaintiff on a shortened timeframe of 15 days in anticipation of the preliminary injunction hearing.

Plaintiff contends that this hard evidence (or the inability of the Defendants to produce it) will demonstrate to the Court that not only was she singled out for harsh, unjust, unfair treatment in violation of the Constitution and HCSD Rules, but that there was no rational basis for that discrepancy, nor a factual basis for any of the official actions given by Puckett as basis for, or arising from, the "emergency" used as an excuse to persecute Plaintiff. As a result, Plaintiff is not only being irreparably harmed by her "flow-restricted" non-service[55], but she <u>still</u> has not been given any hearings by the HCSD, and clearly will not be granted her due process rights in the future - and is likely to be singled out for yet more wrongful acts.

District courts have broad discretion over discovery issues arising before them, *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir. 2003), including those related to the timing of discovery requests. *Hinkle v. City of Clarksburg, W.Va.,* 81 F.3d 416, 426 (4th Cir. 1996) ("District courts enjoy nearly unfettered discretion to control the timing and scope of discovery.") Fed. R. Civ. P. 26(d)(1) expressly provides that a party may obtain discovery before a Rule 26(f) scheduling conference "when authorized . . .by court order".

---

[55] See concurrently-filed Declaration of Kimberly R. Olson, at #12, describing how the Defendants used magistrate Cota's rather vague order to *de facto* continue the service disconnection to Plaintiff's home by only allowing <u>a flow of 1/6th</u> of a gallon each minute thereto. This is not a usable amount of water.

## 11. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court find that the Findings and recommendations by Magistrate Judge Cota (ECF #29) be **rejected in part** as not being supported by substantial evidence in several particulars; by failing to consider the Declaration of Randall Scheimer (ECF #22); in excess of jurisdiction as to any affirmance of the allegations of the HCSD against Plaintiff of its Rule violations; and, improper so far as ordering the placement of a "flow restrictor" on Plaintiff's meter, other restrictions upon Plaintiff of the use of her driveway, and interactions with the HCSD and/or law enforcement. If the HCSD wishes to allege any violations against Plaintiff while this action is pending, it should do so while following Constitutionally adequate procedures, and only inflict punishment upon Plaintiff after having done so in a manner that is consistent with the treatment of other, similarly-situated customers.

Further, Plaintiff requests that the Court find that the admission of the unnoticed surreply Declaration of Robert Puckett, ECF #26, as well as Puckett's unnoticed live testimony, was prejudicial error compounded by the lack of a noticed motion to do so - particularly when Plaintiff was appearing by phone per the Order of the Court, and in the face of the technical issues attendant to that phone connection - as well as her notice to the Court and Request for Accommodation as ECF #16. The Court should also find that the admission of the surreply declaration was specifically in violation of Local Rules 230 and 142(a)(2).

The Court should therefore, in the interests of justice, and to assure that Plaintiff receives full and fair due process in these proceedings, either strike the offending ECF #26 supplemental" Declaration, and testimony of Robert Puckett, or accept and consider Plaintiff's additional evidence, concurrently filed herewith, as being rebuttal to the ECF #26 Declaration and Puckett's testimony at the hearing - along with Plaintiff's objections and arguments herein against both.

Finally, Plaintiff requests the Court enjoin <u>any and all</u> enforcement by Puckett, Dingman, and the HCSD of Resolution 2021 Section 6(k) during these proceeding, and/or pending further Order of the Court; to immediately, fully, and completely restore Plaintiff's water service without a "flow restrictor"; and, that Defendants' interactions with Plaintiff as a water customer be compliant with <u>all</u> federal, state, and local due process requirements going forward.

Dated: 9-27-21          By: _Kimberly R. Olson_
                             Kimberly R. Olson, Plaintiff Pro Se