1  Kimberly R. Olson, In Pro Per
   PO Box 243
2  Hornbrook, CA 96044
   530-475-3669

**FILED**

OCT - 6 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK



THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,                              )   Case No: 2:21-cv-1482-KJM-DMC (PS)
              Plaintiff,                        )
                                                )   **FIRST AMENDED COMPLAINT**
        vs.                                     )   **(JURY TRIAL REQUESTED)**
                                                )   ACTION AT LAW FOR CIVIL RIGHTS
Robert Puckett, Sr.; Clint Dingman; Michele     )   VIOLATIONS; VIOLATIONS OF THE
Hanson; Melissa Tulledo; Hornbrook             )   AMERICANS WITH DISABILITIES ACT;
Community Services District; Bruce's           )   PENDENT STATE CLAIMS
Towing/Radiator & Dismantling; John Does 1-    )
20                                              )   REQUEST FOR PRELIMINARY AND
              Defendants,                           PERMANENT INJUNCTIONS, AND FOR
                                                    DECLARATORY RELIEF

                                                    USC 42 §§1983, 1985, 1986, 1988, and 12131-
                                                    12134

## JURISDICTION

1. Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of the United States Code, as arising under the Constitution and laws of the United States, specifically Amendments 1, 4, 5, 6 and 14 of the United States Constitution; The Americans with Disabilities Act ("ADA"); and, sections 1983, 1985[1], 1986, 1988, and 12131-12134 of Title 42 of the United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff Kimberly R. Olson ("Plaintiff") by the Constitution and Laws of the United States. Supplemental jurisdiction (Section 1367) is asserted over Plaintiff's pendent state law claims for relief - including, but not limited to, common torts, violations of State laws, violations of the Hornbrook Community Services District Bylaws ("Bylaws"), and/or the Hornbrook Community Services' District's ("HCSD" or "District") operational policies,

---

[1] Concerning Plaintiff's federal claims, and her equal protections claims generally, Plaintiff asserts that she was singled out for disparate and discriminatory treatment by the defendants, who had no rational basis to do so other than their malicious intent to retaliate against Plaintiff as a "class of one" for bringing legal actions against the HCSD. See, generally, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs*, 101 F.3d 1179, 1181 (7th Cir. 1996) ("The equal protection clause does not speak of classes. A class, moreover, can consist of a single member."). Plaintiff also alleges discrimination and refusal to accommodate based upon her disabled status.

practices, and procedures specified on the District's website as "Rules and Regulations" at https://hornbrookcsd.specialdistrict.org/operation-policies[2]. This action is also brought in the name of all persons similarly situated to Plaintiff, as a Private Attorney General, and as provided by the HCSD Bylaws at Section A-9(26).[3]  Times material to this complaint, so far as is known to Plaintiff after reasonable investigation, are July 1, 2021, through and including the date of filing of this action, and ongoingly as specified.  All claims in this complaint are based upon conduct which occurred, or was discovered[4], during this time period, and within Siskiyou County, California.

## PARTIES

2. Defendants Robert Puckett, Sr. ("Puckett"), Clint Dingman ("Dingman"), Michele Hanson ("Hanson"), and Melissa Tulledo ("Tulledo") are citizens of Siskiyou County, California, and are the Directors and employees of Defendant Hornbrook Community Services District, a public entity providing domestic water to the community of Hornbrook, and operating wholly within the County of Siskiyou, a political subdivision of the State of California, created, and at all times material operating, as an independent special district[5] under the laws of California and of the United States, as well as its own duly adopted Bylaws and Policies, and subject to their jurisdiction. Defendant Bruce's Towing/Radiator & Dismantling ("Bruce's Towing") is a business operated and licensed within the City of Yreka, itself within the County of Siskiyou, California, which business acted knowingly, willfully, and recklessly by accepting the directions and instruction of Defendants Puckett, HCSD, Dingman, and the John Doe Siskiyou County Sheriff's Deputies[6], and agreeing to participate in, and aid those persons' wrongful conduct in trespassing onto Plaintiff's property located at 408 Henley-Hornbrook Rd., Hornbrook,

---

[2] The HCSD Bylaws, adopted on April 18, 2014, and the "Rules and Regulations" of the HCSD listed on its website as a PDF link at https://hornbrookcsd.specialdistrict.org/operation-policies are hereby incorporated herein to the extent necessary to make out any applicable claims and/or allegations, and/or any basis for relief sought.

[3] Among other sections thereof.  A true copy of the HCSD Bylaws as adopted and ratified on April 18, 2014, as well as the "Rules and Regulations" have been concurrently lodged.

[4] Under law, a cause of action for a claimed harm accrues on the date of its discovery by the Plaintiff. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.) "Claimed harm" refers to all of the elements of the cause of action, which must have occurred before the cause of action can be said to accrue, and the limitation period begins. (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1029.) Federal law applies a similar rule.  See *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998).

[5] Special Districts are primarily controlled by the provisions of California Government Code sections 61000, *et seq.*, and in this case, also the California Water Code.

[6] Some of the John Doe Defendants are Siskiyou County Sheriff's Department law enforcement Deputies. Their names and positions are unknown to Plaintiff at this time.

Complaint - 2

California[7] on or about July 19, 20, 21, 22, and/or July 23, 2021, then and there acting to unreasonably search, seize, and convert private property, and/or Plaintiff's property interests, absent any form of warrant, due process, or judicial order, and to otherwise violate Plaintiff's rights as described below.  Such action rendered Bruce's Towing a "joint actor" with the government agency defendants for purposes of the herein 42 USC §1983, and related claims.

3.  The HCSD was at times material to this complaint governed by a Board of Directors consisting in relevant part of President Robert Puckett, Sr., Secretary Michele Hanson, and Director Melissa Tulledo, who are collectively referred to herein as "the Board Defendants", with the agreement, assistance, ratification, and aid of employee Clint Dingman ("Dingman"[8]).  Some of the Defendant John Does are Deputies of the Sheriff of Siskiyou County, and employed by the Siskiyou County Sheriff's Department.

4.  Those Defendants herein identified as being employed by, or who are officers of, any public entity or public agency are also collectively referred to herein as "government entity" and/or "public officer/employee" Defendants.  Each of these persons engaged in wrongful (and sometimes unlawful) agreements, and joint actions towards their shared wrongful goals with each and all of the other Defendants, to violate Plaintiff's rights, and to harm her as otherwise specified, and also acted at all times material as agents of, and in joint action with, the HCSD, Board Defendants, Dingman, and of each other.

5.  Plaintiff alleges on information and belief that the Board Defendants and Dingman agreed, cooperated, and acted together, and with the other Defendants, to take the wrongful, illegal, and/or civil rights-violating actions against Plaintiff also as part of a scheme to retaliate against Plaintiff for filing governmental complaints and legal actions involving the HCSD, and because her doing so was threatening ~$6.5 million in various grants/fundings targeted to the HCSD via agencies of the State of California, and the USDA, that the Board Defendants hoped to wrongly profit from, as well as an "emergency grant" of some $1,600,000 for a new well and supporting infrastructure.

6.  As part of the scheme to falsely apply for, and wrongly profit from, the grants, the HCSD and Board Defendants, with the agreement and assistance of Dingman, created and perpetuated a false "water emergency" that deprived Plaintiff and the other customers of the

---

[7] The HCSD has no right of entry onto Plaintiff's land except by her express permission pursuant to contract, as it holds no easements thereon.
[8] In his individual, and official capacities as the HCSD's Systems Operator, shift operator, "acting general manager", watermaster, and/or water plant operator.

Complaint - 3

HCSD full and complete water service without any notice, hearing, or opportunity to contest the actions of the Board Defendants. The deprivations were imposed by the HCSD, and later maintained after full water system functionality was restored by the independent efforts of the HCSD's customers, because the Board Defendants were told they would not get funding otherwise - rather than on the basis of any true ongoing emergency. The Board Defendants and Dingman also created and perpetuated the false "water emergency", water shortage, and service deprivations to Plaintiff and other customers of the District by turning off the wells that supply water to the District's customers, and by adopting and imposing upon Plaintiff and the other customers of the District, HCSD "Resolution 2021-02" in manners contrary to law.

7. Plaintiff Kimberly R. Olson ("Olson") is a taxpayer, elector, property owner, resident, and citizen of Siskiyou County, California, and of the HCSD, and a water customer of the HCSD, which supplies the only source of potable water to Plaintiff's home, and has done so pursuant to contract since 2006. Plaintiff is also a disabled person under State and Federal laws who suffers from mobility and other disabilities as a result of spinal damage and associated surgeries, and who is entitled to reasonable accommodations by the governmental Defendants, their agents, and employees under Title II of the Americans with Disabilities Act ("ADA") - including in regards to the quantity of water she uses in her home, and the provision of notice and other due process rights as provided by federal, state, and local laws. The Defendants ignored Plaintiff's status, refused to consider or accommodate her disabilities in structuring the amount of water plaintiff was permitted to use, and they failed and refused to accommodate Plaintiff so far as providing her with notice and opportunity for hearing to contest their adverse allegations and actions in ways reasonably calculated to actually get to her - e.g., telephone and USPS Mail (which forms of notice are also required by the HCSD Rules and Regulations).

8. This action is also brought in the name of all persons similarly situated to Plaintiff, as a Private Attorney General where permitted by law, and as provided by the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030. Concerning Plaintiff's pendent state claims herein, Plaintiff timely and properly provided written notice(s) of her state-law claims to the public employee, entity, and agency Defendants (HCSD, Dingman, Board Defendants) in full compliance with all requirements of the **California Government Tort Claims Act**, Government Code sections 905[9], 910, and 915[10]. The HCSD, Board Defendants, and its

---

[9] The HCSD took no action on the claims (incorporated herein), failing to respond to the claims notice (see CA Govt. Code 910.8; 911; *Martinez v. County of Los Angeles*, 78 Cal.App.3d 242, 245 (1978)).

1  employees failed to respond to Plaintiff's claims.

## OVERVIEW AND BASIS FOR CLAIMS/ACTION

9. On or about July 19, 20, 22, and/or 23, 2021, during a period when there was no usable water in the distribution system to any of the homes along Plaintiff's block, and no water flowing from the taps of Plaintiff's home; the HCSD, Puckett, Dingman, Bruce's Towing, and the John Doe public officer/agent Defendants, while acting under color of law, and of their offices as public officer/employees, agreed and acted as participants of an ongoing wrongful agreement and plan engendered by the HCSD, Puckett, and Dingman to wrongfully, without any lawful authority, due cause, proper notice, warrant, or due process, trespass onto Plaintiff's land in order to seize (and ultimately convert) Plaintiff's property, that of her overnight guests, and service contractors[11]. While doing so on or about July 19, 20, 21, 22, and/or 23, 2021, these Defendants[12], without lawful authority, due cause, notice, or due process of law[13], wrongfully **cut off the domestic water supply to Plaintiff's home** from the HCSD system, and prevented Plaintiff from getting alternative water service by seizing (by plugging, and locking off) the residence side of the water supply *piping* to Plaintiff's home, which piping is wholly on

---

[10] Plaintiff notes that no compliance with the Tort Claims Act is required as to Bruce's Towing, nor for her Federal and/or Constitutional claims against these Defendants, nor as to those against the Siskiyou County agents/officers. Tort claims notices relating to any later-amended pendent state claims as to the Siskiyou County public officer Defendants (as well as any later-discovered state agency John Does) will be timely presented and processed.

[11] This property included Plaintiff's water meter, a utility van belonging to a plumbing contractor hired by Plaintiff, and a 2001 Honda CR-V belonging to Olson's Personal Caregiver (actually seized twice). The Defendants also destroyed some of Plaintiff's landscaping and bushes while unlawfully seizing property. The Defendants also actually seized a portion of Plaintiff's driveway by declaring that neither she, nor any of her guests, could use it without their vehicles being towed without warning or other due process. Seizures of property without a warrant or determination by a Court are *per se* unreasonable under the Fourth Amendment, and it is the burden of the government agency undertaking the seizure to prove its legitimacy in every respect. See, i.e., *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)

[12] Plaintiff is informed and believes that some supposedly official acts, including assertion and/or assignment of executive, and/or *ex parte* and/or *ultra vires* power to Puckett and/or Dingman alleged herein, were actually unilaterally taken by Dingman and/or Puckett with the agreement, encouragement, and ratification of Hanson and Tulledo **outside** of any official, properly noticed, and/or or agendized Board meetings, and without compliance with Gov. Code §61045 - for the purpose of concealing such unilateral acts from the public, and Plaintiff, and to prevent opposition to those wrongful acts via direct petitioning activities, and the provisions of the HCSD Bylaws and Policies. All such acts also violate the provisions of Govt. Code section 61045, among other laws, and so are void in the legal sense of the term.

[13] See, i.e., *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12-16 (1978). Plaintiff was not given **any** information on how to challenge the actions taken against her, or how to pay any amounts necessary (or take any other actions required) to restore service, despite her later written demand for information on how to do so. It is plain that the Defendants' goal is to permanently deprive Plaintiff of any domestic water service.

Plaintiff's land, and is her personal property - all in violation of the Constitutions of the United States and California, and the HCSD own Resolutions, Rules and Regulations, and Bylaws. The HCSD and Board Defendants also threatened Plaintiff with, and brought against her, baseless administrative and criminal prosecutions based upon their claims of Plaintiff's violation of HCSD Rules and Regulations, but then refused to afford Plaintiff any proper notice thereof[14], hearing, trial, opportunity to confront witnesses and evidence against her, or access to counsel before they *de facto* convicted her *in absentia*, and then imposed punishments upon her.

10. Further, the HCSD and Puckett thereafter stated that neither Plaintiff, nor her agents, contractors, nor overnights guests could use certain portions of Plaintiff's driveway upon pain of further unlawful (and without notice) seizures of vehicles - thus committing a government taking of Plaintiff's land. All these actions inflict serious, ongoing harm to Plaintiff, and left her without means to redress those wrongful acts other than by injunction, and/or TRO. **Plaintiff therefore seeks declaratory relief, and an injunction of this Court to fully restore her water service and property rights.** These acts by the HCSD and Puckett, undertaken without any lawful authority, using assumed police powers and imposing punishments for alleged administrative and criminal violations, also constituted malicious prosecution(s) of Plaintiff, and deprived her of liberty and property interests without due process of law, the opportunity to confront and cross examine witnesses and evidence against her, and without opportunity to consult with, or be represented by, counsel at any HCSD proceedings.

11. Since the dates of the above actions, despite Plaintiff's written request of August 4, 2021 for an explanation of the termination, return of her property, and for restoration of her water service, as well as notification on or about August 10, 2021 to the HCSD by Plaintiff that she is a person coming under the protection of Health and Safety Code §116910, Defendants HCSD, Puckett, Hanson, Tulledo, and/or Dingman have refused and failed to comply with any constitutionally-adequate notice or other due process, and/or the proper notice, means of service of notice, grace periods to correct/comply with any alleged violations, and other processes provided for in the HCSD's own Rules and regulations, Policies, and Bylaws, or to otherwise provide Plaintiff Olson with any specific written information on the basis for the seizures and water shut off consistent with those applicable HCSD Rules, Bylaws, and/or policies. These

---

[14] Defendant Puckett claimed that he gave notice to Plaintiff of allegations against her via email, and by "taping them to the fence" surrounding Plaintiff's property. Neither of these methods is accepted as proper service in the 9th Circuit, or the State of California - or even under the HCSD's own Rules and Regulations, and Puckett knew this at the time.

1  same Defendants have further failed, and refused, to provide Plaintiff any notice of, or

2  instruction concerning, the availability of any means to challenge allegations against her, hearing

3  rights, fees required, or other any other means by which she may have her water service (fully)

   restored - meanwhile providing some or all of these rights and benefits to other customers of the

4  HCSD besides Plaintiff.

5      12.  The monthly billing Plaintiff received from the HCSD after the seizures and

6  discontinuation of water service does not show **any** fines, surcharges, or other information that

7  would permit Olson to determine the process to challenge accusations against her, or by which to

   fully reinstate her water service. The inaction and disregard by the Defendants for Plaintiff's

8  rights and safety is aggravated by the Declaration of Disaster for Siskiyou County, issued August

9  5th, 2021 by Governor Newsom on the basis of the fires sweeping the area[15], and the fact that

10 Heat Warnings, with temperatures exceeding 105 degrees, predominated in the area surrounding

11 and encompassing Plaintiff's home for most of July and August. As a result of Defendants'

12 actions, Plaintiff, who subsists on a fixed income, has had to borrow and expend substantial sums

   in constructing a system of temporary pumps, plumbing, and storage for potable water to her

13 home, and have potable water delivered by truck on a regular basis at great cost[16].

14     13.  After a Preliminary Injunction hearing held on September 14, 2021, the US District

15 Court for the Eastern District of California ("EDCA" hereinafter) Ordered Plaintiff's water meter

16 returned, that Plaintiff's water service be restored, and that Plaintiff be permitted to freely utilize

   200 gallons of water use per day (or whatever all other customers of the HCSD were permitted to

17 use). Despite the Order, the Board Defendants and the HCSD failed to restore water service to

18 Plaintiff for several days, and when they finally did, they installed a "flow restrictor" absent any

19 notice of violations, without the due process afforded by the HCSD's Bylaws, and Rules and

20 Regulations, and in a manner that was without the time to make corrections to any violations that

   is routinely afforded to HCSD water customers other than Plaintiff. The "flow restrictor" only

21 allowed Plaintiff the use of ~1/6th of a gallon each minute, and about 4 gallons per day.

22

23

24 [15] Olson is a survivor of the Klamathon fire of 2018. Her home was saved only due to the quick action of
   her Caregiver and neighbors, who saved an entire block of homes using only garden hoses. Sadly, that
25 protection is not now available to Olson thanks to the wrongful actions of these Defendants in terminating
   her water service. Governor Newsom has also issued Executive Order N-42-20 which set a (currently
   effective, and ongoing) moratorium on the shut off of water service to customers.
   [16] Additionally, use of this temporary system is only possible because the outside temperatures are
   currently above freezing, and Plaintiff's lack of income and funds means she has no way to keep
   contracting for deliveries, so no dependable domestic water supply with her service cut off..

14. Plaintiff notified the HCSD, and its President, Robert Puckett, of this failure to provide the Ordered water service by telephone on the day the meter was installed, and then by letter several days later, but the only changes in water service that occurred (over a week later) was to increase the flow of water to Plaintiff's home to (purportedly) 1/2 gallon each minute (but the actual flow was somewhat less), and no further compliance with the Order was forthcoming. From the time of the hearing, and since her water meter was returned and water service was partially restored to Plaintiff, she has not been notified of any violations by her of any HCSD Rules and Regulations, Bylaws, Resolutions, ordinances, policies, customs, or practices of the HCSD, and no hearing on the issue of any alleged violations by Plaintiff has been afforded her by the HCSD and Puckett, so no lawful authority, or basis for the initiation of seizure of Plaintiff's water service via the "flow restrictor", and/or the continued denial of full water service to Plaintiff, exists.

15. On information and belief, Plaintiff alleges that the HCSD, Board Defendants, and Dingman engaged in the foregoing described acts as part of an agreement and coordinated plan amongst them to oppress Plaintiff, as well as to act maliciously, with reckless disregard for Plaintiff's rights and any harms that may befall her as a result of their actions.

16. The HCSD, Board Defendants, and Dingman engaged in enforcing and/or implementing written and unwritten policies, customs, or practices of the HCSD under color of law and of their official positions with the HCSD, and in cooperation and agreement with the Siskiyou County Sheriff's Department John Doe Deputies (as applicable), that advanced these wrongful goals and actions that were in violation of the Constitution and laws of the United States, the State of California, the HCSD Rules and Regulations, and/or its Bylaws. Further, in doing so, they acted to treat Plaintiff differently, and more harshly, than other customers of the HCSD, and for an improper purpose.

17. Further, in regards to the HCSD, Board Defendants, and Dingman, the wrongful acts were additionally calculated to retaliate against Plaintiff for her political and legal activity in opposition to them[17], all with deliberate indifference to Plaintiff's statutory and Constitutional

---

[17] Over the past several years, Plaintiff has brought multiple legal actions against the HCSD and its officers for violations of the Brown Act (prevailing on many in both the trial court, and the Third District Court of Appeals of California), filed complaints concerning its operations with multiple government agencies, and has assisted others in doing those things as well, much to their angst and irritation. In fact, Puckett seized the opportunity while he was on local television to complain about some of that litigation. See news story on the Channel 10 Medford, OR station at: https://ktvl.com/news/local/amid-water-crisis-small-community-takes-matters-into-its-own-hands  The leak featured on the news story was caused by a

rights. These Defendants also thus jointly acted to systematically and wrongfully stifle, deny, suppress, and thwart, Plaintiff Olson's rights under the federal and State constitutions, her statutory rights[18], those rights as provided in the HCSD's Bylaws, Rules and Regulations, and its customs, policies, and practices, and specifically inclusive of her First, Fourth, and Fourteenth Amendment procedural and substantial due process rights, and her Equal Protection rights[19], partly in order to maliciously and vindictively retaliate against Olson for exercising those, and other statutory rights in opposition to their operations, wrongdoing, and political undertakings.

18. These Defendants agreed, and acted to do so by acting as stated above, but also by agreeing and acting to wrongfully and willfully ignoring any applicable statutory or Constitutional mandates, and the requirements of the HCSD's Rules and Regulations, and/or the Bylaws' provisions of certain aspects of HCSD operations regulating their actions involving, and conduct towards, Plaintiff. Defendants HCSD, Puckett, and Dingman further agreed and acted to use their official statuses as a public entity and public officers to willfully and knowingly fabricate, and submit, false evidence to the US District Court for the Eastern District of California, in order to corrupt the legal process Plaintiff had initiated in that Court, and to deny her due process. (See, i.e., *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).)

19. Finally, the HCSD Board Defendants corruptly misused their official positions and authority to gain access to Plaintiff's personal information as contained in her water account with the HCSD, and provided that information to third parties without Plaintiff's consent to engender ridicule and ill-will towards Plaintiff, violating her right to privacy, and the Information Practices Act of California.

20. The HCSD and Board Defendants have also failed and refused to respond as required by the United States and California Constitutions, and/or State and local laws, to any of Plaintiff's demands for proper notice, due process, statements of account, demands to confront evidence and witnesses, CPRA requests, Civil Code §1798.34 requests, and other inquiries related to the official actions taken against her by the Defendants; as well as for immediate return

1/2" hole in the water main, which at 60-70 PSI of water pressure lost 25,000 gallons per day for many weeks or months, during which time the HCSD and Board Defendants did nothing to find or fix the leak.
[18] Including, but not limited to, Water Code §106.3.

[19] The governmental entity/agent Defendants specifically plotted, and agreed to take action in furtherance of, the plans to bring baseless, wrongful, unconstitutional governmental and other actions against Plaintiff - but without utilizing the same tactics or actions against any other customers of the HCSD besides Plaintiff - leading to the reasonable inference that every supposedly official "emergency" act during the month of July was (at least in part) a ruse/pretext abusing governmental power to provide "cover" for adverse actions taken against Plaintiff in that same month.

of her property, and for full restoration of her domestic water supply service.

21. During the month of July, 2021, the HCSD and Board Defendants along with the aid, assistance, encouragement, and/or ratification of those other named defendants as detailed herein, and as part of the agreed plan to take the wrongful actions against Plaintiff detailed herein, including, but not limited to, terminating her water service without any lawful authority, any due process, wrongfully agreed, planned, and acted to violate the provisions, requirements, and restrictions upon them imposed by: the Constitutions of the United States and of the State of California, and the statutes of California, including, but not limited to, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the US Constitution; the California Constitution at: Article 1, Section 1; Article I, section 7(a); Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I, section 17; and Article I, section 19(a); the Brown Act; Water Code Sections 350-357; Government Code Sections 53069.4, 61045, 61050, and 61051; the HCSD Bylaws; and, the HCSD Rules and Regulations.

22. The HCSD and Board Defendants engaged in the wrongful conduct set forth in this Complaint in part by means of: holding non- or improperly-noticed Board meetings at which they purportedly took various official actions; taking and/or adopting certain wrongful and/or illegal (and often pretextual) resolutions, motions, ordinances, policies, customs, and practices; engaging in those, and other actions in ways that did not meet the statutory and/or administrative procedural requirements for them to do so; unofficially and illegally designating individual Board members to take *ultra vires* actions in their "official capacity" to enforce and prosecute alleged violations of HCSD Rules, customs, policies, and/or practices against Plaintiff; and, by falsifying official public records, documents, grant applications, and evidence against Plaintiff.

23. The HCSD and Board Defendants undertook the foregoing wrongful actions in a manner that was on each occasion arbitrary and capricious, without lawful and/or lawfully-invoked authority, while also failing to make proper administrative findings supported by any substantial evidence for those purported actions[20]; and adopted policies customs and practices that acted to, and ratified all acts of Puckett and Dingman to, falsely accuse Plaintiff of violations of the law and of HCSD Resolutions, Bylaws, and/or Rules and Regulations - and without

---

[20] As well as creating definitions for words which are in direct conflict with existing definitions throughout the Codes of California, and making findings and actions that are not reasonable extensions of the evidence before the Board. Further, those action occurred without any proper notice or opportunity to be heard by Plaintiff, nor any of the other electors of the HCSD, or the public. Plaintiff further alleges some of the HCSD and Board Defendants' actions violated Government Code §§25120, 25123(d), 25124, 25131, and 25132.

Complaint - 10

providing due and proper notice, any opportunity for, or any actual hearing(s) to contest their allegations and adverse actions; and, by fabricating false records, testimony, declarations, and other evidence against Plaintiff in federal court.

24. The HCSD, Board Defendants, and Dingman also operated the HCSD in a willfully negligent, reckless, and dangerous manner by failing to undertake diagnostics needed to competently operate the water facilities, and to make needed and necessary repairs to the HCSD water production, storage, and distribution systems - in part to create the false perception of an "emergency" so as to wrongfully acquire public funds in the form of grants from California and the USDA while also using wrongfully self-awarded emergency powers to harass and retaliate against Plaintiff by shutting off Plaintiff's domestic water supply absent proper notice and without any pre-, or post-deprivation hearing; stealing and converting Plaintiff's water meter; seizing portions of Plaintiff's real property without compensation; failing to create and/or post on the HCSD website those documents they were required to create and post thereon and in the manner required by law[21]; and, taking and/or adopting certain actions, individual resolutions[22], motions, and/or ordinances that were legally defective on the basis of conflict with the Constitutions and laws of the United States and/or the State of California, and so void also on that basis both on their face, and as applied to Plaintiff Olson, such that they are each and all unenforceable.

25. All claims made herein are brought against the natural person defendants in their individual, as well as their official capacities to the extent permitted by law, and the circumstances of each of the claims made against them.

26. By naming the Board Defendants and the HCSD as co-Defendants, Plaintiff has intended to comply with the provisions of California Government Code 815.3 throughout each applicable cause of action herein, whether specifically set forth, or implied in the recitation of

---

[21] The statutorily deficient HCSD website is located at: https://hornbrookcsd.specialdistrict.org/
[22] In example: On July 16, 2021, the HCSD and Board Defendants purported to pass an urgency ordinance, but failed to give proper notice thereof, falsely claimed that no public hearing was required, did not read the entire ordinance at their Board meeting prior to its adoption, failed to make the required findings in the minutes (and based upon substantial evidence), and failed to publish the ordinance after its purported adoption; The HCSD and Board Defendants on or about July 19, 2021appointed Clint Dingman as acting general Manager of the District, which is the head executive officer position per Government Code sections 61050 and 61051. On or about September 20, 2021, the HCSD and Board Defendants adopted purported Resolution 004, illegally bypassing bidding, and other public works requirements, while appointing Defendant Puckett as the person in charge of contracting, hiring, etc, while failing to make the required findings in the minutes (and based upon substantial evidence) - all of which is a violation of Public Contracts Code §22050(b), among other State laws, as well as the HCSD Bylaws.

factual allegations.  The term "Defendants", when used herein, means all of the named defendants, and each of them, unless otherwise specified in limiting language (i.e. "each of the Defendants named in this paragraph", "these Defendants", or similar language in a paragraph).

27.  At all times material, each of the Defendants (including John Does), individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, ostensible agents, principals, co-conspirators and/or partners of one another as to any specific act, plan, agreement, coordinated action, conspiracy, or joint venture as described herein, and that each agreed with, and intended the reasonably foreseeable outcome thereof, while acting in reckless disregard for any reasonably foreseeable harms that could have befallen Plaintiff.  All Defendants acted pursuant to policies, customs, and practices of the HCSD, as adopted and/or ratified by the Board Defendants, their administrators or other directors, operators, employees, contractors, and/or agents.  (See also California Govt. Code §815.3.)

28.  Each of the Defendants caused and is responsible for the herein-described wrongful, unlawful, and/or tortious conduct resulting injuries by: personally agreeing to and participating in the wrongful conduct; acting jointly, aiding, abetting, or conspiring with others who did so; by authorizing, ratifying, encouraging, agreeing with, or acquiescing in wrongful conduct and goals; setting in motion, policies, plans, or actions, that led to the wrongful conduct; or, engaging in actions which although lawful themselves, were in furtherance of other, unlawful, wrongful, and/or tortious conduct while knowing the ultimate goals of the conduct and agreements to do so were wrongful and/or violated Plaintiff's rights; by failing to take action to prevent the unlawful, wrongful, and/or tortious conduct described in this complaint; and, by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the Constitutions and laws of the United States, the State of California, and/or the HCSD Bylaws and its Rules and Regulations.

29.  In doing the acts alleged herein, the Board Defendants, Dingman, Bruce's Towing, and John Does 1 through 20, were acting in their official capacity as elected officials and/or public employees/officers, or as a direct agent of an elected or public official or public officer, and/or were "jointly engaged" with a public officer or official while engaging in the alleged wrongful conduct, and/or were acting under color of law, and of such authority as public agency employees, officers, or agents thereof.

30.  Although reference is made herein to events and/or circumstances occurring at purported (legal and illegal) meetings of the Hornbrook Community Services District ("HCSD"),

by its Board, and/or concerning any Defendant's wrongful purported: authoring of HCSD documents; communications to or with government officials; representations concerning legal actions against the HCSD, Board Defendants, and/or Dingman; and, instructions to, and/or agreements with, the Board Defendants (individually or as a group) and Dingman, occurring in part at any private, or purportedly "closed session" public meeting of the HCSD Board; it is not Plaintiff's intention to base any state law, or common-law tort, cause of action or request for relief, upon any actual filing or statement in a court of law, before any lawfully convened tribunal, or to any enforcement agency; or, to base any such claims upon any statement or other expression of First Amendment rights occurring by any person at any public proceeding, interaction with an enforcement agency, court proceeding, or lawful meeting of any public entity.

# ADDITIONAL ALLEGATIONS AGAINST BOARD DEFENDANTS AND AGENTS

## A. Additional Specific Allegations Against Board Defendants

30. At all times material, the Board Defendants, Puckett, Hanson, and Tulledo, were Directors of the HCSD and citizens and residents thereof, and of Siskiyou County, California. Each of the Board Defendants, during the times material to this Complaint, agreed with, aided, and abetted the other Defendants, in planning to, and actually take actions in furtherance of the foregoingly-described wrongful conduct and the wrongful goals of the Defendants, as well as to: engage in purportedly official conduct in violation of the provisions of State laws, the HCSD Bylaws, and/or the HCSD's Rules and Regulations. The Board Defendants failed to properly maintain, and/or to investigate, defects, failures, obsolescence of equipment, and allegations of violations of, the HCSD's distribution system, and maintained water meters to the home of customers, including Plaintiff, which lacked any check valves on the "supply side" of the meter.

31. The Board Defendants also used their positions of trust and as public officers to: create, or cause to be created, and to mail and/or email, false/forged/altered government documents to Plaintiff and others; to prevent scrutiny and accountability for the HCSD, Board Defendants, and their agents in a manner that violated State and local laws' due process requirements (and so also Plaintiff's rights under the US Constitution); deprive Plaintiff of her right to procedural and substantive due process as granted by the Constitutions and laws of the United States, the State of California, and by the HCSD Bylaws and Rules and Regulations; deprive Plaintiff of meaningful access to and right to petition the government for redress of her grievances before an unbiased tribunal; refuse to respond to Plaintiff's hearing, notice, evidentiary, ADA accommodation, and CPRA requests, and/or to comply with the provisions of the CPRA; and, to oppressively inflict harms on Plaintiff by shutting off her domestic water

supply and not permitting any method by which that shut off might be challenged, appealed, stayed, rescinded, or cured.

32. The actions against Plaintiff by the Board Defendants were also taken maliciously, vexatiously, oppressively, and/or arbitrarily and capriciously, and singled out Plaintiff for additional, and more harsh, actions and punishments than any that were imposed upon other similarly-situated customers of the HCSD, and/or without the same notice given to other customers[23], thus depriving Plaintiff of the equal protection of the laws as a "class of one".

33. The Board Defendants took these various wrongful actions under color of law , and of their official capacities as public officials and officers of the HCSD, and also failed to properly supervise, train, and/or control, the other HCSD employee, Board Member, agent, and/or contractor Defendants so that reasonably foreseeable harm would not befall Plaintiff. At all times material, none of the Board Defendants had any authorization or authority, created by any Board action pursuant to Government Code §61045, to single-handedly interpret, institute, investigate, apply, or enforce any State laws, nor violations of the HCSD Bylaws, Rules and Regulations, resolutions, ordinances, customs, policies, practices, or motions. On the occasions that any individual Board Defendant did so, although they purported to do so while acting under color of law of their position with the HCSD, and pursuant to its various local laws and rules, they were actually acting outside of the lawful parameters of their "job" as a Board member. Despite this, the HCSD and Board Defendants individually and collectively ratified, aided, and abetted such wrongful conduct by individual Board Members on each occasion it occurred.

34. As a result of these failures and wrongful conduct, Plaintiff's Constitutional and statutory rights; her rights to the equal protection of the laws, and the due process of the laws; her right not to have her personal and real property seized without warrant, notice, predeprivation hearings, and/or any other due process; her rights to speak and petition the government for redress and without retaliation; her right to equal treatment under the laws by her local government; her right to confront witness and evidence against her; her right to notice, hearing, and/or a speedy and public trial of accusations against her by the HCSD or any of its officers; her right to counsel; and, her right to hearings in Court untainted by false evidence; were infringed,

---

[23] The notice to other customers, while still woefully insufficient under the US and California Constitutions relating to water service, was still much more complete than that purportedly sent to Plaintiff. Moreover, the delivery of these notices to other customers of the HCSD was properly accomplished by personal delivery, whereas notices to Plaintiff were illegally "served" by email, and/or taping them to the fence surrounding Plaintiff's property.

chilled, denied, and/or violated. On information and belief, Plaintiff alleges that some John Doe Defendants improperly directed, aided, agreed with, encouraged, assisted, and/or abetted the Board Defendants in committing that wrongful conduct, and/or ratified their conduct.

### B. Additional Specific Allegations Against Clint Dingman

35. At all times material, Defendant Clint Dingman acted as a public officer, employee, and/or agent of the HCSD and/or Board Defendants, while also acting under color of law of his offices as HCSD Systems Operator, shift operator, meter-reader, "acting general manager", watermaster, and/or water plant operator.

36. During all times material, Defendant Dingman, in agreement with the other Defendants, and in furtherance of mutual agreements and wrongful goals with the Board Defendants, has: acted against Plaintiff as specifically set forth in foregoing paragraphs 9-24; helped create and submit false government documents[24]; failed to comply with the duties and responsibilities imposed upon him by the HCSD Rules and Regulations, and the Bylaws at Sections A-4, A-5-1, and A-7; failed to obtain the approval of the General Manager or of the Board pursuant to Government Code §61045 prior to self-assigning or undertaking various random "duties" for which he has grossly increased the amount of hours for which he demands to be paid[25]; has falsified his timesheets to get paid for work he did not do, and for extra time it did not take him to do what he claims he did do; claimed time on his timesheets for "duties" and/or actions that were never approved by the HCSD Board at a noticed public meeting; agreeing to perform, aiding, abetting and ratifying the wrongful actions of the other Defendants (and particularly Puckett during the period of July 17-23, 2021) to retaliate against Plaintiff for protected conduct; and, claimed time for payment from the HCSD for taking illegal actions such as the seizure and conversion of Plaintiff's real and personal property (and that of her contractors and guests), and cutting off the supply of water to Plaintiff's home and property without notice, hearing, and/or opportunity for review.

---

[24] Including, but not limited to: those placed into the HCSD files; for use in prosecutions of Plaintiff, and in her civil case before this Court; and, to the SWRCB concerning HCSD water production, treatment, and distribution, as well as the grants and loans for which it has applied. Dingman has also falsified documents and records pertaining to Plaintiff's water service, as well as the events leading up to, and surrounding the termination of her service, and actions occurring, or purportedly occurring, thereafter.
[25] Including, but not limited to, extra rounds of meter reads, surveillance of customers, standing around watching the townspeople dig up and repair the main water line at he end of Henley-Hornbrook Rd., etc. This is technically theft, a waste of taxpayer funds, and a breach of Dingman's fiduciary duty to the District and its customers, and includes all of Dingman's assumed duties of "enforcement" related to HCSD Resolution 2021-02, and increase in frequency of reading water meters above once per month each..

37. The Board Defendants and HCSD knew of, agreed with, willfully permitted, ratified, and encouraged each instance of the aforementioned wrongful acts by Dingman. Further, the actions of Dingman were the result of the implementation of, and conduct conforming to, the written and unwritten official policy, custom, or practices of the HCSD as created and implemented by one or more of the Board Defendants, and/or the HCSD itself (although absent any lawful process to do so). Additionally, HCSD and Board Defendants have failed to insist on training for Dingman, and/or that he comply with any and all HCSD Bylaws and Policies, contractual obligations, and/or State laws concerning his operation of HCSD facilities, Plaintiff, and her water service. These actions directly harmed Plaintiff and have resulted in economic, general, and special damages to her in amounts to be proven at trial.

38. Dingman's wrongful, improper, and illegal pay increase, and extra hours, above and beyond those stated in his contract with the District, without any action by the Board of the HCSD approving such; along with the Board Defendants' and HCSD's ratification of Dingman's false claims of pay rate, extra "jobs" and self-assigned duties, extra duties wrongfully and illegally assigned by Puckett and/or other individual Board members - all undertaken without action being taken by the Board as whole in compliance with Government Code section 61045 - number of hours, and hours worked on each of his timesheets, are improper gifts of public funds[26], waste of public funds, and fraud.

## DEFENDANT JOHN DOES

39. At all times material, defendant John Does 1-20 were board members, policy makers, employees, independent contractors, public officials, public officers or agents, instructors, rule enforcers, assistants, co-conspirators, confidants, and otherwise actors and/or agents of the HCSD, the named natural person defendants, the governmental officer and/or agent Defendants, the Board Defendants, and/or of each other.

40. The true names and capacities of these John Doe defendants is uncertain at this time, but will be substituted to this Complaint as they are definitely determined and/or discovered.

## CIVIL CONSPIRACY BY THE DEFENDANTS

41. At all times material, the HCSD, Board Defendants, Dingman, and public officer/agent Defendants, wrongfully, improperly, and/or illegally solicited and enlisted the agreement and aid of the other Defendants to promote, accomplish, assist with, legitimize, aid in,

---

[26] Cal. Const., Art. XVI, §6; Cal. Const., Art. IV, §17; Govt. Code §8314.

Complaint - 16

and/or ratify each wrongful act and goal of the Board Defendants, the HCSD, and their employees and agents (inclusive of John Does) as set forth in the preceding paragraphs, with the ultimate goal being to vindictively, and maliciously, deprive Plaintiff of: her notice and hearing due process rights concerning allegations against her by the HCSD, any individual Board Defendant, and/or Dingman; opportunities to exercise her statutory and Constitutional 1st, 4th, 5th, 6th, and 14th Amendment rights; and, to retaliate against Plaintiff for exercising her right to speak and to petition concerning the HCSD, Board Defendants, and Dingman. Each of these Defendants, with full knowledge of the wrongfulness, and/or unlawfulness of these goals, plans, acts, and methodologies, did in fact agree to, and thereafter acted to, aid, abet, assist in planning and execution, conspire with, and ratify the Board Defendants' and their agents' wrongful conduct and ultimate goals as described in the Complaint.

42. Plaintiff's allegations of conspiracy, aiding, abetting, ratifying, and/or directly participating in any portion of the conspiracies concerning State laws or common torts detailed in this complaint as to any Defendant also relies upon the general liability as to them by focusing on instances of "substantial assistance" between the Defendants concerning actions undertaken by each and all of them in regards to agreed-upon common objectives  constituting "wrongful conduct"; either their own, or that of another of the Defendants. See *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303; *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006).

## FIRST CLAIM FOR RELIEF (Federal Causes of Action)

43. Plaintiff incorporates the foregoing statements of fact and allegations made in this Complaint in paragraphs 1-40 as if fully set forth. The term "these Defendants" as used in any particular Count, shall *only* mean the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" generally. If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has asserted a damages claim, Plaintiff reserves her right to all non-monetary relief. Plaintiff intends that her claims concerning animus, discrimination, and equal protection be brought on the basis of arbitrary and malicious governmental conduct without rational basis, as a "class of one"[27], and/or as a disabled person as is appropriate to the context of the claim. As to those causes of action involving the HCSD, Board Defendants,

---

[27] *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs*, 101 F.3d 1179, 1181 (7th Cir. 1996) ("The equal protection clause does not speak of classes. A class, moreover, can consist of a single member.").

and/or the employees or agents thereof, Plaintiff alleges that each instance of wrongful conduct or rights violation was also result of the implementation of, and conduct conforming to, official policy, custom, or practice of the HCSD as created and implemented by one or more of the Board Defendants, and/or the HCSD itself.

## Count I  4th/5th Amendment Violations; Searches and Seizures Without Warrant

44. The HCSD, Board Defendants, Dingman, and John Does, by trespassing onto Plaintiff's property, seizing her property (including her property interest in her domestic water service from the HCSD) without warrant or due process, and taking a portion of her driveway exclusively for governmental use without due process or compensation, violated her rights under the 4th and 5th Amendments to the Untied States Constitution.

45. Further, these same Defendants did improperly and illegally agree and conspire to, and actually did, aid abet, assist each other, and participate in a mutual agreement to act wrongfully as set forth in this complaint, adversely to Plaintiff, and did so willfully, with the intent and common goal being to vindictively and maliciously interfere with, prevent, impede, and/or coerce Plaintiff into abandoning, and/or to punish her for, her exercise of statutory and constitutional rights: to speak freely; to assemble and/or associate with other citizens for the purpose of petitioning; and, to petition the government and courts for redress of grievances concerning the wrongful acts of the HCSD and its minions.  These acts by these Defendants also thus deprived Plaintiff of the protections of rights and privileges under federal and State law, as well as the Bylaws and Policies, without notice, opportunity to be heard, or other due process.

## Count II  Conspiracy for Deprivation of Rights: (42 USC 1983)

46. Plaintiff alleges that the Board Defendants, HCSD, Dingman, and John Does, during times material to this Complaint, knowingly and affirmatively agreed and acted on or about July 19, 20, 21, 22, and 23, 2021 to willfully and deliberately deny Plaintiff's rights to not have her property seized without any warrant, or without due process, and not to have her water service shut off without notice, opportunity for a hearing, and/or information on how to have the service restored; and, failing to abide by the rights and privileges granted by the Constitutions and laws of the United States, and the State of California, as well as the HCSD Rules and Regulations, and Bylaws' provisions relating to those notice, due process, property, and other rights - instead undertaking such actions and polices in direct contradiction with those provisions[28].  Further,

---

[28] In this case, the "due process" guaranteed by the HCSD Bylaws and Policies is that Plaintiff as a customer and elector of the District, would be protected by her contract for water service - and thereby

these same Defendants acted to deny and interfere with Plaintiff's rights as part of a concerted agreement and plan to retaliate against Plaintiff for her protected First Amendment conduct of filing complaints about the HCSD, the Board Defendants, and Dingman to governmental enforcement agencies, and in the courts. Finally, as part of the agreement to deprive Plaintiff of her rights, Defendants HCSD, Board Defendants, and Dingman created and submitted to the EDCA, false evidence in order to deprive Plaintiff of due process at hearings before the Court.

## Count III Deprivation of Due Process and Equal Protection

47. Plaintiff alleges that the Board Defendants, Dingman, and HCSD, during times material to this Complaint, failed to provide Constitutionally adequate notice, and other due process concerning, their accusations against her of violations of the resolutions, rules, policies, customs, and/or practices of the HCSD, as well as the actions the Defendants actually took against her purportedly on the basis of her having violated the resolutions, rules, policies, customs, and/or practices of the HCSD. These Defendants further failed in their duty to act on, or respond to, Plaintiff's multiple direct requests to them for statutorily-mandated opportunity to restore her private property rights in her driveway, and her water service after it was wrongly cut off. Acting as set forth herein, and ignoring Plaintiff's demands for an accounting and opportunity for restoration of her water service was a denial of procedural and substantive due process and equal protection on each occasion of that wrongful conduct by these Defendants. The denials by these Defendants of Plaintiff's right to be informed as to any charges; their imposition of punishment absent any hearings; and refusal to communicate the process by which her water service could be restored, without any notice or hearing to Plaintiff as to those denials was arbitrary, capricious, oppressive, malicious, vexatious, and deliberately deprived Plaintiff of her rights to due process, and also the equal protection of the laws[29].

## Count IV Deprivation of Equal Protection of the Laws, and to Due Process of Law

48. The HCSD, Board Defendants, Dingman, Bruce's Towing, and John Does; did improperly and illegally agree and conspire to, and actually did, aid abet, assist, and participate with each other to wrongfully and vindictively deny due process and equal protection of the laws to Plaintiff by aiding and abetting the HCSD, Puckett, Dingman, and Board Defendants to

benefit from laws governing operations/administration of the HCSD (particularly notice, service of notice, time for correction of alleged violations, hearing, and appeal), and that provisions in the Bylaws cannot themselves be amended or revoked by the HCSD Board without voter approval. See Bylaws at Sections A-2(11), A-9(1); A-9(11), A-9(13); A-9(26); Chapter 3, Section 1-3.010, Section 1-5.030.
[29] No other customer in the boundaries of the HCSD had their property summarily seized and/or water service shut off during the times material to this complaint.

terminate Plaintiff's domestic water service, and while doing so, to violate, and/or refuse to follow, procedural and other mandates of Federal law[30], State law, and the HCSD's own Rules and Regulations and Bylaws. They also did so by acting as described in this Complaint to vindictively, arbitrarily, and deliberately punish Plaintiff for protected conduct of making complaints to them[31] and other government agencies, and bringing legal actions against the HCSD and its minions. These Defendants also did these things without the notice, procedural and substantive due process, and other rights afforded by the Constitution of the United States, and the HCSD Bylaws, and/or Policies.

## Count V Unlawful Retaliation for Exercise of Constitutional Rights

49. Plaintiff's complaints (both administrative and via legal actions to the courts), assistance to others making complaints, and testimony to the HCSD, courts, and State and Federal enforcement agencies about violations of law, and Plaintiff's statutory and Constitutional rights, and wrongful denial and suppression of Plaintiff's rights granted under the HCSD Rules and Regulations, and Bylaws, entitle her to protection from retaliation by way of wrongful and/or discriminatory adverse action by the HCSD, Board Defendants, and Dingman, as well as those persons acting in agreement and/or joint action with them as government agents.

50. The HCSD, by and with the Board Defendants, and Dingman, along with the other government entity/officer/employee Defendants undertook the wrongful acts herein in part to retaliate against Plaintiff for her exercise of First Amendment rights to speak freely, and to petition for redress of grievances to government agencies, and to the Courts.

## Count VI Violations of the ADA, and Title II as to the HCSD, and Board Defendants

51. The Board Defendants (and thus the HCSD), in acting as set forth herein in manners adverse to Plaintiff, while knowing she was a disabled person, failed to accommodate her disability by giving her adequate and proper: notice of any adverse determinations or actions against her (including, but not limited to, seizures of her property, and/or shut off of her water service); and, access to HCSD facilities, programs, and records; while also not treating her in the same manner pertaining to these things that other, non-disabled water customers are treated, nor was she permitted to benefit from the same interactions, notices, time for corrections, and other

---

[30] As discussed in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), and otherwise. In addition to her procedural challenges, Plaintiff is also asserting a substantive due process claim as to the "official" and/or administrative acts of the HCSD, Board Defendants, and Dingman.
[31] Other citizens and electors from Hornbrook who complained to the HCSD and/or the SWRCB about the HCSD's operations and conduct were not subject to any retaliatory or adverse acts.

benefits as other non-disabled persons were given. These Defendants have done so willfully, with the intent to interfere with Plaintiff's use and enjoyment of their services and facilities in the same manner as non-disabled persons, and in an attempt to coerce Plaintiff into abandoning her demands for accommodation, and in retaliation for Plaintiff's legal actions against them.

52. At all times material, the Board Defendants, HCSD, and Dingman, with full knowledge of Plaintiff's status as a disabled person, operated under official policies, customs, and practices created and implemented by one or more of them of intentionally, willfully, and wrongfully violating the ADA by: repeatedly withholding access to the on-site facilities of the HCSD where public records concerning Plaintiff's water service account are stored; and, failing to maintain a place open to the public and accessible by Plaintiff during normal office hours for inspection of Plaintiff's account and other public records of the HCSD, so that she may have opportunity to pay or dispute any charges, or adverse actions, as is required by law - all in violation of the statutory due process required by law, or opportunity to be heard, with deliberate indifference to Plaintiff's statutory and constitutional rights, and with the discriminatory intent that Plaintiff's known disability would make it much harder, or even impossible, for her to obtain access to her file, any of the other records of the HCSD, or to obtain any administrative or other redress for adverse actions taken against her by any agent or employee of the HCSD.

## Count VII Violations of 42 USC 1985(2) and (3)

53. The vindictive, retaliatory, and oppressive "plan" by the government agency/officer/employee Defendants, and the acts of using official powers or positions ("force" and/or "intimidation") in furtherance thereof, to prevent and/or intimidate Plaintiff from initiating any, or continuing her then-pending, and/or contemplated administrative complaints and/or legal actions in federal and state courts, to deny her due process, to retaliate against her for her past legal actions, and to prevent, distract, and/or or dissuade her from filing new legal actions against the HCSD, its officers, and others, violated on each such occasion the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one".

## Count VIII: Violations of 42 USC 1986

54. The deliberate "plan" by the HCSD, Board Defendants, and Dingman, and their acts of using official powers or positions ("force" and "intimidation") as described herein in furtherance thereof, to prevent and/or intimidate Plaintiff from continuing to make and prosecute her administrative complaints, and/or legal actions against them in federal court, to deny her procedural and substantial due process, to falsify evidence against her in this Court and for the purposes of their prosecution of her, to retaliate against her for her past legal actions in federal

and state courts, and to keep her from filing new legal actions in federal court as to the HCSD, and its officers, violated on each such occasion the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one", so each of those Defendants also violated 42 USC §1986 by failing and/or refusing to take any action to stop, or prevent, the violation of Plaintiff's Constitutional rights.

## \*\*\*SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS\*\*\*

55.  Plaintiff incorporates the foregoing statements of fact and allegations made in this Complaint at paragraphs 1-40 as if fully set forth.  In making out each of the following "Counts" in this Second Claim for Relief against one or more Defendants, the term "these Defendants" as used in any particular Count, shall mean only the Defendants which are *specifically* named therein, and is not intended to apply to all "Defendants" named in this action generally.  Plaintiff also specifically incorporates the disclaimer set forth in paragraph 15, above.

56.  If Plaintiff states a claim or cause of action that only permits injunctive or other relief, but inadvertently asserted a claim for damages, Plaintiff reserves her right to non-monetary relief as otherwise provided by law, and Government Code section 814.

## Count – I, Violations of HCSD Bylaws and Rules and Regulations

57.  Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that the Board Defendants, HCSD, and Dingman, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and illegally, conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws and its Rules and Regulations by: denying Plaintiff equal access to: HCSD facilities; rights to notice and hearings; the water supply; and the benefits and rights granted thereby.

## Count II - Negligence as to HCSD, Board Defendants, and Dingman

58.  In performing the acts complained of herein, each and all of the Board Defendants, Bruce's Towing, and Dingman failed to undertake any reasonable investigations, and acted negligently, recklessly, with wanton indifference and disregard for any possible harm that may have befallen Plaintiff as a result of their failures to abide by the Constitution and laws of the United States, the State of California, and the Rules and Regulations and Bylaws of the HCSD. (See also, generally, California Civil Code, section 1714.)

59.  Plaintiff alleges that the individual Board Defendants, Bruce's Towing, and Dingman, each owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, the State of California, and the HCSD Policies and Bylaws, but in performing the acts as complained of *ante*, and against Plaintiff under the assumed mantle of employees and/or

Complaint - 22

agents of the HCSD, each breached that duty in recklessly and negligently violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Rules and Regulations and Bylaws as set forth herein. As a result of their wrongful acts, Plaintiff suffered psychological and physical harm, economic loss, and general and special damages.

## Count III - Trespassing and Nuisance

60. Trespass onto private property by agents of the government without a  warrant is presumed to violate  the  Fourth Amendment's prohibition on unreasonable searches, but it is also a cause of action in and of itself under California law[32]. The HCSD, Puckett, Bruce's Towing, and Dingman, absent any right or permission to do so, trespassed onto Plaintiff's land on multiple occasions on and between the dates of July 19 and 23, 2021, and while there, damaged and interfered with Plaintiff's personal and real property, and her free use and enjoyment of her personal and real property.

## Count IV - Waste/Gifts of Public Funds, and Fraud as to Clint Dingman

61. At all times material to this Complaint, Defendant Clint Dingman improperly conspired with, influenced, and engaged in corrupt activity with the HCSD and Board Defendants, in order to receive gifts of public funds, in the form an unagendized, and unformalized[33], extra duties and extra paid hours granted/assigned by Puckett and/or Hanson, and payment for illegal actions by Dingman concerning Plaintiff and her water service (all such extra paid hours thus being a gift of public funds[34]).

62. Also, at all times material, Dingman, with the assistance of Hanson[35] has also fraudulently claimed to have performed all of the duties applicable to his position(s) within the HCSD, and to have worked various hours every two weeks on those tasks, when in fact he did not faithfully actually complete those tasks, and/or work those hours as he claimed. Dingman further failed to use the log in/out sheet at the water plant in order to conceal these facts and falsehoods. All of these acts were undertaken by Dingman in order to wrongfully collect money to which he was not entitled. The Board Defendants and Dingman further conspired, and acted,

---

[32] See CACI Nos. 2000, and 2101.

[33] That is, the Board of the HCSD never ratified or approved any such additional duties for Dingman at a public meeting, and/or in conformance with Govt. Code 61045 and/or the HCSD Bylaws.

[34] Cal. Const. Art. XVI, Section 6;  Cal. Const. Art. IV, Sec. 17; Cal. Govt. Code section 8314.

[35] Dingman consults with, and gets assistance from, Hanson to complete his timesheets, and she *ultra vires* and wrongfully approves them for payment prior to any Board Meeting in violation of Government Code §§61045, 61050, and 61051. Hanson and/or Puckett also unilaterally allow extra hours to Dingman.

1   to wrongfully and deliberately conceal from the Public, and Plaintiff, the wrongful extra hours
2   and pay, and the false claims of work performed.

3       63. Plaintiff invokes herein the strictures and remedies of California Code of Civil
    Procedure Sections 526a, 1021.5, and 1084.

## Count V - Violations of California Constitution

5       64. The actions of the HCSD, Board Defendants, and Dingman were additionally
6   violations of Plaintiff's rights under the California Constitution at: Article 1, Section 1; Article I,
7   section 7(a)[36]; Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I,
    section 17; and Article I, section 19(a).

## Count VI – Willful and/or Negligent Infliction of Emotional Distress

9       65. Plaintiff alleges that the HCSD and Board Defendants, Bruce's Towing, as well as
10  Defendant Dingman, in performing the acts complained of herein as to any particular one of
11  them, or identified group of them, did so while acting negligently, recklessly, wantonly,
12  vindictively, and/or willfully to vex, harass, oppress, and annoy Plaintiff, and/or to subject her to
    lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, financial loss,
13  destruction of her real and personal property, interference with the use and enjoyment of her
14  property, devaluation of her real property, and extreme ongoing emotional and psychological
15  pain and distress, all the while acting with wanton indifference and reckless disregard for
16  possible harm that may have befallen Plaintiff as a result.

## Count VII  Violation of Government Code §§61045, 61050, 61051

17      66. The HCSD was at all times material mandated by law to have a General Manager
18  whose duties are those set forth in Government Code §61050, and subject to section 61051. At
19  all times material, the HCSD and Board Defendants failed and refused to delegate duties to a
20  General Manager, and instead wrongfully operated the HCSD administration, as well as
    oversight of its finances and water facilities' day-to-day operations, directly themselves via
21  individual *ultra vires* acts by Defendants Puckett and/or Hanson in violation of Government
22

23

24  [36] Due process guaranteed under Article I § 7 of the California Constitution "presumes that when an
    individual is subject to deprivatory governmental action, he always has a due process liberty interest both
    in fair and unprejudiced decision-making and in being treated with respect and dignity." *People v.
25  Ramirez* , 25 Cal.3d 260, 268-69 (1979). The principle that procedural due process protection is
    applicable to all adjudicatory action was affirmed in *Saleeby v. State Bar of California*, 39 Cal.3d 547,
    563-64 (1985). The most important distinction to bear in mind is that due process under the California
    Constitution applies to all adjudicative actions, whereas due process under the United States Constitution
    is triggered only when liberty or property interests are at stake.

Code §61045, 61050, and 61051. Plaintiff's seeks a declaration that such acts by the Board Defendants, and/or each of them individually, are void, and an injunction of the Court prohibiting any individual acts of administration by any Board Defendant, or their successors.

## Count VIII Conversion

67. The wrongful seizure of Plaintiff's personal and real property by the HCSD, Board Defendants, and Dingman, and the conversion thereof to their own use, without any notice, or other due process, and without any payment of just compensation to Plaintiff, was wrongful, and constituted unjust conversion of Plaintiff's property, harming Plaintiff, and resulting in damages equivalent to the value of the property.

## Count IX Violation of Right to Privacy

68. The HCSD Board Defendants corruptly misused their official positions and authority to gain access to Plaintiff's personal information as contained in her water account with the HCSD, and provided that information to third parties to engender ridicule and ill-will towards Plaintiff, without Plaintiff's consent, violating her right to privacy under the California Constitution at Article 1, Section 1, as well as the Information Practices Act of California.

## Count X Violation of CPRA and Civil Code §§1798.34, 1798.77

69. Pursuant to the provisions of the CPRA, and as provided by Civil Code §1798.45, Plaintiff seeks declaratory and injunctive relief concerning the *de facto* denial (via the mechanism of simply ignoring them) by the HCSD, Board Defendants, and Dingman of her requests for documents and information concerning, but not limited to, her personal account with the HCSD, and the communications by the HCSD and its agents concerning her. Plaintiff further seeks statutory damages as provided in Civil Code §1798.48.

## The Actions of These Defendants Resulted in Damages to Plaintiff

70. Plaintiff alleges that the actions by the specified Defendants as set forth in each of the foregoing "counts" of her First and Second Claims for Relief, and as incorporating the factual allegations against each Defendant as specified in their respective Sections, caused general, special, and pecuniary damages to Plaintiff, in an amount to be proven at trial, but in no event less than $50,000.00 per event, circumstance, alleged tort, or statutory violation, and so no less than $500,000.00 in total. Plaintiff is also entitled in each instance to any additional statutory damages, civil penalties, and/or other relief provided by law.

## Punitive Damages Demand

71. The actions of each of the Defendants herein, as described in this Complaint in the First and Second Claims for Relief pertaining to any of them, were reckless, willful, wanton,

1    vindictive, and/or oppressive, and done with willful, or at least wanton and reckless, disregard

2    for Plaintiff's rights, and harm that may have befallen Plaintiff, while also being generally the

3    product of ill-will towards Plaintiff, and so Plaintiff hereby demands punitive and exemplary

4    damages as to each and all of these Defendants in the amount of $100,000.00 for each instance

     thereof as occurred on or about July 19, 20, 21, 22, and/or 23, 2021.

5                      **REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION**

6          72. Plaintiff requests that the Court grant a preliminary and permanent injunction against

7    the HCSD, Board Defendants, and Dingman that bars them from seizing her property, and/or the

     property of her guests and contractors, without a warrant, and/or proper notice and other due

8    process mandated by law, and also that the HCSD, Board Defendants, and/or Dingman

9    immediately restore Plaintiff's domestic water service, and not terminate that service during the

10   pendency of these proceedings, while permanently enjoining the HCSD, Board Defendants and

11   Dingman from acting to terminate or impair Plaintiff's water service without proper, and

     properly served, notice(s) and opportunity for hearing; from taking or using any portion of
12
     Plaintiff's land[37] without just compensation, easement, or her written permission - or from
13
     terminating Plaintiff's water service without complying with the provisions of the HCSD's Rules
14   and Regulations and/or Bylaws (including the provisions that service of notices be by personal

15   delivery or USPS mail - and specifically not via the mechanisms of email or "taping them to the

16   fence" of Plaintiff's real property), as well as all State laws, and the California and United States

     Constitutions hereafter.
17
                                        **PRAYER FOR RELIEF**
18
           **WHEREFORE**, Plaintiff now prays for judgment against Defendants, as well as:

19         1. Declaration of the respective rights and duties of the parties under the foregoing

20   authorities, and particularly a declaration that the purported official actions taken by the HCSD

21   and Board Defendants during the month of July were improperly and/or defectively noticed

     under the Brown Act and Water Code, were written and adopted in a statutorily, procedurally,
22
     and administratively defective manner that was arbitrary and capricious while also being not
23
     supported by a proper record and/or substantial evidence, and that those actions are void, while

24   the individual resolutions, motions, and ordinances adopted by them are legally defective

25   additionally on the basis of conflict with the Constitutions and laws of the United States and/or

_____

[37] Including by profiting from underground pipelines without any easement to do so, and/or by coming
onto Plaintiff's land other than in case of emergency, and to read the meter once each month.

Complaint - 26

the State of California, while the HCSD/Board Defendants' findings pertaining thereto are themselves not supported by substantial evidence, and/or are arbitrary and capricious, and so void additionally on those bases;

2. For general, special, economic, statutory, and exemplary damages determined at trial;

3. Disgorgement by Dingman of all wasted public funds, and/or gifts of public funds received by Dingman relating to any self-assigned additional duties, or those activities unilaterally and/or *ultra vires* assigned him by Puckett and/or Hanson without compliance with Government Code §61045;

4. An Order commanding the HCSD to immediately (within 30 days) hire a General Manager as required by Government Code §61050, who shall assume all duties as set forth in Government Code §§81050 and 61051, and to henceforth maintain the General Manager or his/her successors in those capacities hereafter without interference from, or direction by, any individual Board members, and/or directives being given other than as provided by Government Code section 61045;

8. For a preliminary injunction and a permanent injunction, each enjoining the HCSD, Board Defendants, and Dingman from damaging, or seizing Plaintiff's personal and/or real property without a warrant, or terminating her water service without complete notice and due process as provided in the HCSD's Bylaws, Rules and Regulations, and/or as mandated by the US and California Constitutions;

10. For preliminary and permanent injunctions, each requiring the immediate return to Plaintiff of all property seized by any of the Board Defendants, HCSD, and/or Dingman;

11. An Order declaring each purported act, agreement, motion, resolution, ordinance, and/or contract, of (and/or between) the Board Defendants, Dingman, and/or the HCSD, taken in violation of the HCSD's Rules and Regulations or Bylaws, Government Code §61045, and/or the provisions or requirements of any other State law, to be *ultra vires,* and/or void for illegality[38];

12. A declaration that the seizure of Plaintiff's property, and termination of water service to Plaintiff's home was done unlawfully, without proper notice and/or properly served notice, and without any procedural or substantial due process, in violation of State law, the California

---

[38] California Civil Code §1608 codifies the doctrine of illegality and provides that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Under Civil Code §1667 , "unlawful" is broadly defined as that which is contrary to an express provision of law; contrary to the policy of express law, though not expressly prohibited; or, otherwise contrary to good morals.

Constitution, the United States Constitution, and the HCSD's own Rules and Regulations and/or Bylaws; and, an Order that Plaintiff's water service immediately (within 24 hours of service upon the HCSD, a Board Defendant, or Dingman of an Order to do so) be fully restored and maintained hereinafter[39];

13. For statutory damages under 42 USC §1983 in the amount of $500,000.00 against each of the individual government agency/entity officer/employee Defendants (inclusive of John Does), the HCSD, Board Defendants, and Dingman;

14. An injunction prohibiting Puckett, Hanson, and/or Tulledo from taking individual *ultra vires* acts which attempt to usurp the authority of the HCSD and/or its Board as a body in violation of Government Code §§61045, 61050, and/or 61051 - inclusive of assigning duties to regular HCSD employees, certifying "timesheets", enforcing the Policies and/or Bylaws of the HCSD, initiating litigation, entering into contracts, ordering seizure of property, and/or shutting off the water service to customers of the HCSD;

15. For any attorney fees and costs of suit herein actually incurred; and,

16. For such other and further relief as the court may deem just and proper.

Dated this 4th day of October, 2021

Kimberly R. Olson, Plaintiff Pro Se

## Verification

I, Kimberly R Olson am the Plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Hornbrook, California.

Dated: 10-4-21

By: Kimberly R. Olson, Plaintiff

---

[39] A trial court may issue a writ of administrative mandate where an agency has deprived the petitioner of a fair hearing pursuant to Code of Civ. Proc., §1094.5, subd.(b).

Complaint - 28

1  Kimberly R. Olson, In Pro Per
   PO Box 243
2  Hornbrook, CA 96044
   530-475-3669
3

4
                    THE UNITED STATES DISTRICT COURT
5
              IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA
6  Kimberly R. Olson,                )
                Plaintiff,           )    Case No: 2:21-CV-1482 KJM DMC (PS)
7                                    )
                                     )    **PROOF OF SERVICE OF DOCUMENTS**
8      vs.                           )
                                     )
9  Robert Puckett, Sr., et al        )
                                     )
10             Defendants,           )
                                     )
11 _____  )

12              **CERTIFICATION AND PROOF OF SERVICE**

13        I, Kimberly R. Olson affirm under penalty of perjury under the laws of the United States
14 that I served the appearing defendants in this action, a true copy of the following listed
   documents via US Mail to their attorney of record at the addresses below, on October 4, 2021 as
15 follows:

16 1) J. Scott Donald
      601 University Ave., Ste. 225
17    Sacramento, CA 95825

18 **FIRST AMENDED COMPLAINT**

19

20     Dated this __4th__ day of October, 2021

21                                                    _Kimberly R. Olson_
                                                     Kimberly R. Olson, Plaintiff Pro Se
22

23

24

25