**FILED**

**OCT 21 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,                          )
          Plaintiff,                     )   Case No: 2:21-cv-1482 KJM DMC (PS)
                              )
     vs.                                    )   **PLAINTIFF'S REPLY TO RESPONSE OF**
                              )   **HCSD DEFENDANTS (ECF #45) RE:**
Robert Puckett, Sr., et al,                 )   **FINDINGS AND RECOMMENDATIONS**
                              )   **(ECF #29)**
          Defendants,                    )

        Plaintiff Kimberly R. Olson does hereby Reply to the Response of the appearing

Defendants (ECF #45) to her Objections (ECF #40-42) to the Findings and Recommendations of

Magistrate Judge Dennis M. Cota, ("F&Rs", ECF #29) arising from the TRO/Injunction hearing

held on September 14, 2021, as follows:

**1. OBJECTION TO, AND REQUEST TO STRIKE, SCANDALOUS MATERIAL**

        Defendants indulge on pages 2-3 of their Response various irrelevant, unprofessional,

inflammatory, and unsupported personal attacks against Plaintiff's motivations and integrity (and

that of other, <u>non-parties</u> to this action).  Plaintiff respectfully requests the Court strike, and

refuse to consider, such scandalous material in the context of the review of the F&Rs.  In the

event the Defendants wish to make a proper motion to accuse Plaintiff of being a "vexatious

litigant" in the context of <u>federal</u> law, they are free to do so, and to (presumably) provide proper

briefing and evidentiary support therefore, rather than bare character assassination.

        Rule 12(f) provides, in pertinent part, that "[u]pon motion made by a party . . . the court

may order stricken from any pleading any . . . scandalous matter." Fed. R. Civ. P. 12(f); see 5C

C. Wright and A. Miller, Federal Practice and Procedure (Civil) 2d §1382, at 465 (2004)

("'Scandalous' matter is that which improperly casts a derogatory light on someone, most

typically on a party to the action.") (footnote omitted); 2 Moore's Federal Practice § 12.37[3] at

12-97 ("'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral

character of an individual or states anything in repulsive language that detracts from the dignity

of the court.") (footnote omitted).

        While motions to strike are generally disfavored, "the disfavored character of Rule 12(f)

is relaxed somewhat in the context of scandalous allegations and matter of this type often will be

stricken from the pleadings in order to purge the court's files and protect the person who is the

Plaintiff's Reply to Response by HCSD (ECF #44) to Findings and Recommendations (ECF #29) - 1

subject of the allegations."   5C C. Wright and A. Miller, Federal Practice and Procedure (Civil) 2d § 1382, at 466-67 (2004)[1]; see *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001) ("Generally, motions to strike are disfavored and usually granted only for scandalous material.") (citation omitted).

The striking of offensive material is particularly appropriate when the offensive material is not responsive to an argument but, rather, constitutes an inappropriate attempt to abuse the Court's process to attack an individual personally.  Se , e.g , *Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that "reflect adversely on the moral character of an individual who is not a  party to this suit" which were "unnecessary to a decision on the matters in question"); see also *Pigford v. Veneman* , 215 F.R.D. 2, 4-5 (D.D.C. 2003) (striking unfounded accusations that opposing counsel was racist); Murray v. Sevier, 156 F.R.D. 235, 258 (D. Kan.1994) (striking allegation  that defendant and his counsel "bought off" and paid "hush money" to prospective witnesses); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (striking allegation that  "defendants are '[l]ike vultures feeding on the dead'"); *Nault's Automobile Sale s, Inc. v. American Honda Motor Co.*, 148 F.R.D. 25, 29-34 (D.N.H. 1993) (noting that "[w]ith each passing  week the pleadings assumed a more hostile and accusatory tone" and striking scandalous assertions).  Here, such behaviour, an escalation of that found in the Opposition (ECF #17) to Plaintiff's request for TRO, should be nipped in the bud.

## 2.  THE *UNNOTICED* LIVE TESTIMONY, AND SURREPLY DECLARATION OF ROBERT PUCKETT WAS PREJUDICIAL

On the day of the hearing, Plaintiff had previously advised the Court of her requirement for advance notice of any potential for live testimony via the filing of her Request for Accommodation as ECF #16.  That filing specified why the accommodation was necessary and reasonable to the fair and full conduct of the proceedings.  What is more, the information presented by Puckett, both as live testimony, and the accompanying Declaration (ECF #26), were things that could have, and *should* have, been produced by September 3, 2021 in conformance with the Court's prior orders to do so (ECF #12), and they were specifically submitted contrary to the Order of September 8, 2021 (ECF #18).

As to the "proper notice" issue, because of total sandbagging and derailment of the proceedings brought on by the late-presented material of Puckett, the Magistrate never even

---

[1] Indeed, the relief provided for in Rule 12(f) need not be granted only upon motion of a party; consistent with the Court's inherent powers to protect the decorum of proceedings

addressed the issue of if <u>the content of the notices</u> supposedly provided to Plaintiff (via emails, and "taping to the fence"), and the HCSD's actions relating to seizure of property and termination of Plaintiff's water service, even met the standards of the United States (and California ) Constitution as set forth in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12-16 (1978), and *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306-312[2].

The Magistrate also completely ignored the issue of **when** such "notices" might have been <u>received</u>[3], and he also ignored the issue of the <u>hearings</u> that were due Plaintiff <u>by Puckett and the HCSD</u> *prior* to their taking any actions against her to impair or terminate her water service - all of which occurred within a few days. (*Id.*)  Finally, Defendants' claim that this sort of tactical maneuver is permitted by L.R. 230(h) ignores the concurrent requirements of L.R. 230(c-d), and L.R. 142(a)(2).  Counsel has demonstrated no good cause for these prejudicial methods.  Counsel also pretends again that Plaintiff has somehow been convicted of HCSD violations despite the lack of any hearings.  (Response, pp.5:4-5 and 26-27; 6:26-27.)

Opposing Counsel's attempt to embarrass Plaintiff aside (Opp., p.4:22),  Plaintiff provided the Court with an explanation as to why she needed opportunity to prepare for any contemplated live testimony via ECF #16 <u>over two weeks</u> **prior** to the hearing[4].  Counsel' parsimonious attitude towards Pro Se litigants is also not the policy of the Courts, who generally understand that untrained persons need more time to evaluate, and to do at least *some* focused legal research when (suddenly) presented with legal filings besides just a minute or two in the midst of a hearing.  Plaintiff urges the Court to listen to the actual recording of the hearing, rather than just read the transcript, because the transcript cannot convey the confusion Plaintiff was undergoing, the long pauses as she struggled to think, had difficulty hearing (Transcript, ECF

---

[2] The <u>methodology</u> of notices was not at issue in those cases, since the utilities there simply (and sensibly) included them in the customers' bills, and/or mailed them, along with additional means of notice.
[3] The Magistrate strongly implied that, contrary to both federal and state law, email and fence-taped "notice" was proper when dealing with legal matters, and that Plaintiff was remiss for not checking her email on a regular (daily?) basis - which is at least somewhat unfair, given Plaintiff's extremely rural location, and poverty.  See also FRCivP 5; California <u>Code of Civil Procedure</u> (CCP) §§1010.6, and 1013. More to the point, the HCSD's own written Rules and Regulations **require** notice of violations to be "served" by (actual) personal delivery or USPS mail at Sections 2.10, 4.03, and 4.15 (ECF #34). C.f., Transcript (ECF #36), pp.28:11-13; 28:23 - 29:1; 30:11-14.
[4] Plaintiff also did so in a manner that attempts to shield at least some of her medical privacy as well, while the very nature of her disabilities interfered severely with the ability to even <u>make</u> the objections that trained, healthy, presumably unmedicated, Opposing Counsel says she should have made on the fly during the TRO hearing. Regardless, while Plaintiff was reviewing the material at the hearing and needed a moment to organize herself to do so, she was chastised by the Magistrate, who also "shut down" Plaintiff's examination of the witness. (Transcript, pp.31-32; c.f., Response [ECF #45], p.4.)

Plaintiff's Reply to Response by HCSD (ECF #44) to Findings and Recommendations (ECF #29) - 3

#36, p.21:23), and the prodding by the Magistrate during the proceedings which tended to derail Plaintiff's lines of thought as she examined material.

Plaintiff had been weeks without water. She had expended all her savings and gone into debt, all of which facts were known to Opposing Counsel while he waited until the last second to provide the Court Puckett's "supplemental declaration". The Magistrate also, despite objections and other protests Plaintiff <u>did</u> make at the hearing, discouraged Plaintiff from "holding open" the record in order to address the materials, and he did so in part by assuring Plaintiff she would have the opportunity to present her oppositions via the Objections to his Order, so long as she did so within 14 days[5]. Plaintiff has done so, while Opposing Counsel in the Response has ignored almost all of the substantive legal arguments and citations raised by Plaintiff therein.

## 3. THEIR IS NOTHING "CONTRADICTORY' ABOUT THE HCSD'S LACK OF CONSTITUTIONALLY ADEQUATE NOTICE TO PLAINTIFF AS TO ALLEGATIONS AGAINST HER, AND OPPORTUNITY FOR A PRE-DEPRIVATION HEARING

As stated on <u>all</u> of Plaintiff's filings with this Court for the past decade, she has a P.O. Box as a mailing address. This is the same P.O. Box that the HCSD uses to send her monthly water bills. (ECF #4, Exhibit 03; ECF #42, p.3:1-3, and Exhibit 1.). Blatant inadequacy of the notices aside[6], any good faith effort to "give notice" to a customer would reasonably include mailing that notice to the address on file with the agency - yet this was not done, and the Defendants admitted that. Their "efforts" to give notice (which efforts, and the notices

---

[5] Plaintiff notes that the transcript on page 39 does include her reference to her earlier statement (which was apparently unheard by the Court or the transcriptionist due to the phone issues) about the "6000 gallons" of use alleged by the HCSD being insane <u>due to there being no water coming from the taps</u>, which tends to call into question the F&Rs conclusion at p.10:17-20. The lack of water on Plaintiff's block was also substantiated by the Declaration of Randall Scheimer (ECF #22), and now by Marci Buttram (ECF #41). Neither do the statements in Puckett's "Supplemental Declaration" (ECF #26), nor its exhibits, contain **any** actual "meter readings" as incorrectly found by the Magistrate in the F&Rs at pp.10-11. The Magistrate also failed to note on pages 10-11 the contradiction between ECF #26, and Puckett's testimony at Transcript (ECF 36), pp.26, and 28-30 talking about how Olson's "refusals" were actually Puckett's perception that Olson would not come out of her house - even though he possessed no personal knowledge if she was in there or not. Thus, for these and other reasons, the F&Rs are not supported by substantial evidence.

[6] Plaintiff also notes that the Defendants failed to make any effort to explain why other customers are given specific meter readings and other information concerning purported violations on their "notices" (which are then hand-delivered to them), as well as <u>weeks</u> of time to comply with any alleged violations, while Plaintiff's water was shut off within just a few days. C.f., ECF #26, Exhibits D-G; ECF #41 and Exhibit; ECF #42, Exhibits 6-8. However, given the false statements concerning "misappropriating funds" in their initial offerings to this Court (ECF #17 and attachments), and Plaintiff's rebuttal thereto (ECF #21), malice by the HCSD towards Plaintiff can be reasonably inferred.

Plaintiff's Reply to Response by HCSD (ECF #44) to Findings and Recommendations (ECF #29) - 4

themselves, do not meet the requirements of either federal or state law), are thus irrelevant to the true, Due Process[7] Constitutional issues before the Court.

However, neither was any of this material (the purported notices, the supposed ordinance relied on by the HCSD to disconnect water service, etc) even brought before the Court until the _moment_ that the September 14, 2021 hearing began - a grave disserve to Plaintiff and to the Court, since nobody had any opportunity to brief the issues. There was no good reason for that delay, either, since, as is apparent from their face, all the documents were created, and relevant events occurred, in *July* - well before the Defendants' briefing was due in opposition to the TRO on September 3, 2021. (ECF #12; ECF #18, ECF #26 and Exhibits.)

The references in the Response at page 5 to page 38 of the hearing transcript, and to Plaintiff's good-faith letter to Opposing Counsel are also misleading, in that in the first case, there is no reference there to electronic filing by Plaintiff (and indeed, the Court can see for itself via the Docket that Plaintiff cannot use the electronic filing system, and has never done so), while in the second case, the letter is clear that Plaintiff's access to email will be limited, and explains why. Regardless, none of the Defendants' procedures, or "notices" were "proper" in any way. See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12-16 (1978).

## 4.  THE HCSD DOES NOT OWN PLAINTIFF'S METER, NOR HER METER BOX, AND MAY NOT SEIZE THEM BY DEEMING THOSE ITEMS ITS PROPERTY

The water district cannot grant itself "rights" in conflict with the US Constitution, and/or the laws of the State of California relating to notice, service of legal documents, due process, and/or access to private property, nor may it seize Plaintiff's personally-owned meter and meter box (nor any portion of her driveway) simply by passing a local rule saying that meters suddenly all belong to the HCSD. Instead, even if it does properly follow procedures to confiscate private property for its own use, it must compensate the owner thereof as provided by the 5th Amendment to the US Constitution. (*Armstrong v. United States*, 364 U.S. 40, 48-49 (1960).)

Moreover, as the Response points out in this section on page 6, the HCSD's Rules and Regulations were passed in June of **2013** - so some seven (7) years after Plaintiff acquired her home, and at least five (5) years after Plaintiff purchased and installed her meter and meter box due to the decrepitude of the then-existing ones. Further, Plaintiff did so as a result of statements

---

[7] However, even considering their late submissions, the Defendants admit that they did not give Olson any opportunity for a hearing as to any allegations against her - much less actually hold any hearing - prior to disconnecting her water supply. This issue was not addressed by the Magistrate at all.

Plaintiff's Reply to Response by HCSD (ECF #44) to Findings and Recommendations (ECF #29) - 5

and representations by then-President of the HCSD, Mary Ryce. (ECF #4, at item 3.) As the Response admits at page 6:7-9, only those items "installed by the District" are subject to its Rules and Regulations, and its control. Since Plaintiff's meter and meter box were not "installed by the District" it would have no right of control over them even if she had not purchased them herself. Also, the HCSD never obtained any easement for use of Plaintiff's land, so it has <u>no</u> "rights" to use Plaintiff's driveway except by her permission, no matter what it might claim.

All of this argument aside, however, there is nothing here allowing the HCSD to forgo (proper) notice to property owners before it takes <u>any</u> action[8], nor may it resort to warrantless seizure of vehicles and the like to enforce the self-created "rights" set forth in the Rules and Regulations without following basic due process principles. It is astounding that the HCSD would even make an entire page of argument that seems to claim it is its own little kingdom, and that it can simply ignore Constitutional and statutory provisions in favor of its own local "rules".

## 5. THE F&RS BY MAGISTRATE COTA FAILED TO ADJUDICATE *ANY* OF THE CONSTITUTIONAL CLAIMS MADE BY PLAINTIFF ABOUT HER WATER SERVICE

The Magistrate turned Plaintiff's case about <u>constitutionally adequate</u> notice, hearings, and seizure of property interests into an unnoticed administrative hearing about whether or not the HCSD decided Olson had violated its water rules. Worse, this administrative hearing was an improper subject outside of the Court's jurisdiction as a mundane civil "cross complaint" that was not presented to Plaintiff beforehand so she could lodge her objections, or prepare therefor.

This fundamental error in focus totally deprived Plaintiff of adjudication of the main issues that her Complaint herein (and the request for injunction) is actually about, which are:

1. If the HCSD/Puckett constitutionally complied with all of the notice, hearing, and due process requirements set forth in *Memphis, supra* **prior** to terminating her water service;

2. If the <u>content</u> of the (unsigned by any official) "notices" purportedly sent to Plaintiff complied with the minimal standards set forth in *Memphis, supra*;

---

[8] In the case of reading the water meters, that happens once each month, and is normally not an issue. It became one here when the Defendants decided they needed to impose an <u>unreasonable</u> "right" of **24/7** , no advance notice, access to the meter box and meter in Plaintiff's driveway, and to tow cars without due process. Contrary to the speculative conclusion in the Response at page 6:27-28, it is unremarkable that vehicles would be parked in a driveway - even on a daily basis - and even **if** access to meters is incidentally blocked by such, that does not excuse the HCSD's unconstitutional actions and methods, particularly when such illegal methods are taken rather than the more reasoned course of making a simple phone call or sending a (USPS) letter advising customers of a change in "meter read day", or whatever.

Plaintiff's Reply to Response by HCSD (ECF #44) to Findings and Recommendations (ECF #29) - 6

3. If Plaintiff was given any opportunity for a hearing of the allegations against her by the HCSD prior to seizure of private property, and termination of her water service;

4. If the HCSD can turn someone's water off and then <u>never</u> permit them any hearing, opportunity to pay a charge, fine or fee, and so get the water turned back on by <u>any</u> means - even after a written demand by a severely disabled customer (ECF 4, Exhibits 2, and 3 at p.2);

4. If Plaintiff is treated the same as other customers of the HCSD so far as notice (and content of any notice), time and opportunity to correct alleged violations, and escalation of penalties imposed is concerned (equal protection as a "class of one");

5. If the HCSD violated its own Rules and Regulations, and/or Bylaws (due process) in its treatment of Plaintiff concerning notices of alleged violations, vehicle parking, time to correct alleged violations, method of delivery of notice of alleged violations, discontinuance of water service, and opportunity for reinstatement of water service[9];

6. If Puckett, as a Board Member of the HCSD, personally has any lawful authority to unilaterally enforce any HCSD regulations, and/or impose punishments (c.f., Govt. Code §§61045, 61050, 61051; ECF #36, §4.03), and if his acts violated Plaintiff's constitutional rights;

Correct examination of these issues reveals (independent of if Plaintiff was in violation of any HCSD rules or not), that the actions by Puckett and the HCSD totally failed at every juncture to comply with Constitutional norms of due process concerning notice and hearings prior to, during, and after, the seizure of Plaintiff's water service - so injunction to make them reinstate that service, and to give proper notice and opportunity for hearings henceforth is appropriate.

Moreover, now that the Court has been late-provided the alleged basis for the actions taken against Plaintiff, the HCSD's "Resolution 2021-02", Section 6(k) thereof (ECF #26, Exhibit C, p.3), the Court should evaluate that local regulation under the standards of *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), and *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, determine that it is unconstitutional on its face, and enjoin its enforcement pending further order of the Court. The Court should also order Olson's water service <u>fully</u> restored, and that the HCSD give her 48 hours notice by telephone and US Mail, of any need to read or inspect her meter on other than the 25th-30th of the month.

Dated:

By: _Kimberly R. Olson_
Kimberly R. Olson, Plaintiff Pro Se

10-19-21

---

[9] The requirement of notice "is not satisfied by actual knowledge without notification conforming to the statutory requirements" (*County of Alameda v. Lackner* (1978) 79 Cal.App.3d 274, 282.

## CERTIFICATION AND PROOF OF SERVICE

I, Kimberly R. Olson affirm under penalty of perjury under the laws of the United States that I served the appearing defendants in this action, a true copy of the following listed documents via US Mail to their attorney of record at the addresses below, on October 19, 2021, 2021 as follows:

1) J. Scott Donald
   601 University Ave., Ste. 225
   Sacramento, CA 95825

**PLAINTIFF'S REPLY TO RESPONSE OF HCSD DEFENDANTS (ECF #45) RE: FINDINGS AND RECOMMENDATIONS (ECF #29)**

Dated this ___19th___ day of October, 2021

Kimberly R. Olson, Plaintiff Pro Se