1    **SPINELLI, DONALD & NOTT**
     A Professional Corporation
2    J. SCOTT DONALD, SBN: 158338
     JEFFREY C. CHIAO, SBN: 236781
3    601 University Avenue, Suite 225
     Sacramento, CA 95825
4    Telephone:  (916) 448-7888
     Facsimile:   (916) 448-6888
5
     Attorneys for Defendants
6    ROBERT PUCKETT, SR., CLINT
     DINGMAN, MICHELE HANSON,
7    MELISSA TUELLEDO and HORNBROOK
     COMMUNITY SERVICES DISTRICT
8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12   KIMBERLY R. OLSON,                    Case No.:  2:21-cv-1482-KJM-DMC (PS)

13          Plaintiff,                     **REQUEST FOR JUDICIAL NOTICE IN
                                           SUPPORT OF DEFENDANTS' MOTION
14          vs.                            TO DISMISS FIRST AMENDED
                                           COMPLAINT PURSUANT TO FED R.
15   ROBERT PUCKETT, SR., CLINT            CIV. PROC. 12(B)(6)
     DINGMAN; MICHELE HANSON;
16   MELISSA TUELLEDO; HORNBROOK
     COMMUNITY SERVICES DISTRICT;
17   BRUCE'S TOWING/RADIATOR &             Date:         January 5, 2022
     DISMANTLING; and DOES 1 through 20,   Time:         10:00 am
18   inclusive,                            Courtroom:    304, 3RD Floor
                                           Judge:        Hon. Dennis M. Cota
19          Defendants.

20                                         Complaint Filed: August 18, 2021
                                           FAC filed October 6, 2021
21                                         Trial Date:  TBD

22          Defendants ROBERT PUCKETT, SR., CLINT DINGMAN, MICHELE HANSON,

23   MELISSA TUELLEDO, and HORNBROOK COMMUNITY SERVICES DISTRICT, hereby

24   respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take

25   judicial notice of the following items in connection with Defendants' Motion to Dismiss Plaintiff's

26   First Amended Complaint pursuant to F.R.C.P. 12(b)(6).[1]

27   _____

28   [1] The attached exhibits are the same as the exhibits that were previously submitted with the Decl. of Jeffrey Chiao in support of Defendant Bynum's 12(b)(6) motion, filed with the court on October 20, 2021.  (ECF No. 47-2)

SPINELLI, DONALD
& NOTT

1.      On July 24, 2020, the Honorable William J. Davis declared Plaintiff Kimberly Olson to be a vexatious litigant California state court case Olson v. Hornbrook Comm. Serv. Dist., et al. SC-CV-PT 16-1089.  Attached as **Exhibit 1** is a true and correct copy of the Vexatious Litigant Prefiling Order filed with the Superior Court of California, County of Siskiyou.

2.      On October 4, 2004, Peter Harrell filed a lawsuit on behalf of himself and Kimberly Olson in Oregon U.S. District Court.  Attached as **Exhibit 3** is a true and correct copy of Plaintiff's Complaint.

3.      On March 30, 2005, Magistrate Judge Cooney recommended that Defendants' motion to dismiss on the ground that the court lacks personal jurisdiction over defendants should be granted, and for the action to be dismissed.  Attached as **Exhibit 4** is a true and correct copy of Magistrate Judge Cooney's Order and Findings and Recommendations.

4.      On or about October 21, 2008, Peter Harrell filed a lawsuit in Oregon U.S. District Court against Costco alleging civil rights claims under 42 U.S.C. §1983 and state law claims. Attached as **Exhibit 5** is a true and correct copy of Plaintiff's Complaint.

5.      Peter Harrell's case against Costco was eventually resolved on March 18, 2011, when the Ninth Circuit Court of Appeals affirmed the district court's decision granting summary judgment in favor of Defendants.  Attached as **Exhibit 6** is a true and correct copy of the Ninth Circuit.

6.      On September 15, 2006, Kimberly Olson filed a lawsuit in the Eastern District of California (*Olson v. Oreck,* CIV S-06-2064 MCE-CMK) alleging civil rights claims under 42 U.S.C. §1983 and state law claims against Siskiyou County Sheriff's Department and the United States of America.  Attached as **Exhibit 7** is a true and correct copy of Plaintiff's Complaint.

7.      On May 3, 2007, Peter Harrell filed a lawsuit in the Eastern District of California repeating in verbatim the same allegations from Olson's action.  (*Harrell v. Oreck*, CVS-07-847) Attached as **Exhibit 8** is a true and correct copy of Plaintiff's Complaint.

8.      *Olson v. Oreck* and *Harrell v. Oreck* were eventually resolved on March 5, 2009, when the Ninth Circuit Court of Appeals affirmed the district court's dismissal under FRCP 12(b)(6).  Attached as **Exhibit 9** is a true and correct copy of the Ninth Circuit ruling.

SPINELLI, DONALD
& NOTT

2
REQUEST FOR JUDICIAL NOTICE  IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT PURSUANT TO FED R. CIV. PROC. 12(B)(6)

9.      Peter Harrell filed a lawsuit in the Eastern District of California against Hornbrook Community Services District ("HCSD") titled *Harrell v. Hornbrook Community Services District,* 2:14-cv-01595 KJM-GGH on July 7, 2014 ("*Harrell I*").  Attached as **Exhibit 10** is a true and correct copy of Plaintiff's Complaint.

10.     On August 14, 2017, Hon. Gregory G. Hollows issued his Findings and Recommendations regarding Harrell's action.  Attached as **Exhibit 11** is a true and correct copy of Hon. Gregory G. Hollows' Findings and Recommendations.

11.     Peter Harrell filed another lawsuit in the Eastern District of California against HCSD titled *Harrell v. Dingman*, 2:19-cv-00031-KJM-AC (*Harrell II*).  Attached **Exhibit 12** is a true and correct copy of Plaintiff's Complaint.

12.     On May 29, 2019, Hon. Allison Claire issued her Findings and Recommendations regarding Harrell's action.  Attached as **Exhibit 13** is a true and correct copy of Hon. Allison Claire's Findings and Recommendations.

13.     On August 24, 2018, the Ninth Circuit concluded that Peter Harrell's appeal No. 17-17191 was frivolous and therefore revoked Harrell's in forma pauperis status for appeal No. 17-17191 and dismissed the appeal as frivolous.  Attached as **Exhibit 14** is a true and correct copy of the Ninth Circuit ruling.

Dated:  December 15, 2021                    SPINELLI, DONALD & NOTT


                                             By:   /s/ *Jeffrey Chiao*
                                                 JEFFREY C. CHIAO
                                                 Attorneys for Defendants

# EXHIBIT 1

**VL-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: (To be completed only if a party is making the motion) | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Robert D. Winston (SBN 80843)

FIRM NAME: Kirsher, Winston & Boston, LC

STREET ADDRESS: P.O. Box 177

CITY: Mount Shasta       STATE: CA   ZIP CODE: 96067

TELEPHONE NO.: 530-926-3444   FAX NO.: 530-926-3599

E-MAIL ADDRESS: RWINSTON@KWB-LAW.NET

ATTORNEY FOR (name): DISTRICT

☐ COURT OF APPEAL,       APPELLATE DISTRICT, DIVISION

☒ SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SISKIYOU

STREET ADDRESS: 311 Fourth Street, Room 206

MAILING ADDRESS:

CITY AND ZIP CODE: Yreka, CA  96097

BRANCH NAME:

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SISKIYOU
YREKA BRANCH

JUL 2 4 2020

BY:  ENDORSED- E. FISHER
DEPUTY CLERK

CASE NAME:
OLSON v. HORNBROOK COMM. SERV. DIST., et al.

| PREFILING ORDER—VEXATIOUS LITIGANT | CASE NUMBER: SC CV PT 16-1089 |
|---|---|

1. Name and address of each plaintiff or cross-complainant or other party subject to this prefiling order:
   KIMBERLY OLSON

2. This prefiling order is entered pursuant to a motion made by   ☐ the court   ☒ party (name):
   HORNBROOK COMMUNITY SERVICES DISTRICT

3. The person or persons identified in item 1, unless represented by an attorney, are prohibited from filing any new litigation in the courts of California without approval of the presiding justice or presiding judge of the court in which the action is to be filed.

4. The clerk is ordered to provide a copy of this order to the Judicial Council of California by fax at 415-865-4329 or by mail at the address below.

> Vexatious Litigant Prefiling Orders
> Judicial Council of California
> 455 Golden Gate Avenue
> San Francisco, California 94102-3688

Date:   JUL 2 4 2020

**WILLIAM J. DAVIS**

JUDICIAL OFFICER

Form Adopted for Mandatory Use
Judicial Council of California
VL-100 [Rev. September 1, 2018]

PREFILING ORDER—VEXATIOUS LITIGANT

Page 1 of 1

Code of Civil Procedure, § 391.7
www.courts.ca.gov

CEB®
ceb.com   Essential Forms®

# EXHIBIT 3

**Peter T. Harrell, Plaintiff Pro Se**
C/o PO Box 1731
Yreka. CA 96097

FILED '04 OCT 04 12:02 USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PETER T. HARRELL,** | ) |
| | ) |
| Plaintiff, | ) Case No. 04-3082-CO |
| | ) |
| vs. | ) **COMPLAINT** |
| | ) Jury Trial Requested |
| **GUST KEPREOS, BRUCE HULL, WILLIAM** | ) |
| **WARNER, "TODD" WARNER, KENNETH** | ) |
| **BOTTOMS, DAVID KIRCHUBEL, COVE** | ) |
| **MOBILE VILLA, AND JOHN DOES 1-3** | ) |
| | ) |
| | ) |
| Defendants. | ) |

Plaintiff alleges:

## <u>JURISDICTION</u>

Jurisdiction over this action arises pursuant to USC Title 28, Part IV, Chapter 85, Section 1332 as

Plaintiff invokes diversity of citizenship in the case of all named defendants.  Defendant Does one

through three are agents and/or actors of the other Defendants whose true names are unknown by

Plaintiff at this time, but who will be named as soon as Plaintiff is able to ascertain their true names

and relationships.  All natural person defendants are sued in their individual capacity, and also as actors

and agents of Defendant Cove Mobile Villa.

1.

At all times material, Defendant Cove Mobile Villa was a sole proprietorship existing and operated within the County of Siskiyou, within the State of California.  At all times material, the remaining Defendants were natural persons who were citizens of the United States, and residents of the State of California and subject to their jurisdiction.

2.

At all times material, Plaintiff was a citizen of the United States, and the State of Oregon and subject to their jurisdiction.  Plaintiff is an interstate exchange student attending College of the Siskiyous in Weed, California, via an agreement with Southern Oregon University.  During the school year, in exchange for housing, Plaintiff provides personal care and assistance to Kimberly Olson, a disabled person and resident of unit #50 in the Cove Mobile Villa mobilehome park located in Yreka, California.  All actions by the defendants giving rise to this Complaint occurred in or about this residence, and upon the property of Defendant Cove Mobile Villa.

3.

At all times material, Defendant Kepreos, in addition to acting as an individual, was also acting as the manager of the Cove Mobile Villa mobilehome park, and an agent of Defendant Cove Mobile Villa.

4.

At all times material, Defendants Bruce Hull, William Warner, "Todd" Warner, Kenneth Bottoms, David Kirchubel, and John Does 1-3, in addition to acting as individuals, were also acting as agents of Defendant Kepreos, of each other, and/or of Defendant Cove Mobile Villa.

## FIRST CLAIM FOR RELIEF

### Count - I
### Assault

5.

On or about June 7, 2004, on the common grounds of the Cove Mobile Villa mobilehome park, located

in Siskiyou County, California, Defendant Kepreos, in retaliation for Plaintiff's assistance to Kimberly

Olson regarding a wrongful eviction initiated by Kepreos against Ms. Olson, in an attempt to dissuade

Plaintiff from providing further assistance to Ms. Olson, and in an attempt to dissuade Plaintiff from

filing complaints with local authorities concerning Kepreos and the Cove Mobile Villa, did assault

Plaintiff by threatening him with physical injury while behaving in a physically menacing manner, and

with wrongful prosecution, and subjecting him to verbal abuse.

6.

The threats made by Defendant Kepreos were unreasonable, were initiated in retaliation for the lawful

exercise of Plaintiffs rights, were calculated to cause, and did so cause, fear and apprehension to

Plaintiff as well as extreme emotional distress and suffering.

7.

As a consequence of Defendants' unreasonable violation of his personal security, Plaintiff has been

caused to suffer extreme emotional and psychological pain and distress to his general and special

damage of $15,000.

8.

The conduct of Defendant as aforesaid was willful, wanton, and malicious, in violation of the park

rules contract as described in Count VIII, and beyond the bounds of conduct tolerated in a civil society,

and Plaintiff is thereby entitled to recover of Defendant Kepreos punitive damages in the sum of

$45,000.

**Count - II**
**Battery**

9.

During the incident described in Count I, Defendant Kepreos did strike Plaintiff several times in his

chest, meanwhile stomping on his feet, and strangling him.  These acts by Defendant Kepreos caused

Plaintiff to suffer injury to his neck, feet, and legs, and damaged Plaintiff's shoes.


10.

As a consequence of Defendant Kepreos' actions as aforesaid, Plaintiff has been caused to suffer

lasting physical pain and distress, apprehension, fear, violation of his personal security, damage to his

personal property, and extreme emotional and psychological pain and distress to his general and special

damage of $25,000.

11.

The conduct of Defendant Kepreos as aforesaid was willful, wanton, malicious, and undertaken with

reckless disregard and wanton indifference to the health, safety, and personal security of the Plaintiff,

in violation of the contract as described in Count VIII, and beyond the bounds of conduct tolerated in a

civil society, and Plaintiff is thereby entitled to recover of Defendant Kepreos punitive damages in the

sum of $100,000.


**Count III**
**Intereference With Civil Rights**

12.

The conduct of Defendant Kepreos, as set forth in Count I, above, was intended to dissuade and

prevent Plaintiff from engaging in lawful conduct, in availing himself of due process of law, and the

free exercise of his civil rights, to his general and special damages of $5,000.

13.

The conduct of Defendant Kepreos as aforesaid was willful, wanton, malicious, and undertaken with

reckless disregard and wanton indifference to the health, safety, and personal security of the Plaintiff,

in violation of the contract as described in Count VIII, and beyond the bounds of conduct tolerated in a

civil society, and Plaintiff is thereby entitled to recover of Defendant Kepreos punitive damages in the

sum of $20,000.

### Count IV
### Vandalism

14.

On or about June 3, 2004, Defendant Hull did "key" plaintiff's vehicle on the driver's side, and

continuing onto the rear panel, causing some $800.00 in damage.

15.

As a consequence of Defendant Hull's actions, plaintiff incurred damage to his personal property,

suffered fear, apprehension, anger, and extreme emotional and psychological pain and distress, to his

general and special damage of $5,000.

16.

The conduct of Defendant Hull as aforesaid was willful, wanton, malicious, and undertaken with

reckless disregard and wanton indifference to the personal security and emotional well-being of the

Plaintiff, in violation of the contract as described in Count VIII, and beyond the bounds of conduct

tolerated in a civil society, and Plaintiff's right to be free of unreasonable destruction of his personal

property, and Plaintiff is thereby entitled to recover of Defendant Hull punitive damages in the sum of

$25,000.

//////////////////////////////

//////////////////////////////

//////////////////////////////

**Count V**
**Interference With Contractual Obligations**

17.

Defendants, from the period of April 28, 2004, through and including the current date, did engage in a

pattern of harassment, intimidation, verbal abuse, abuse of process, and breaches of contract (the Cove

Mobile Villa rental agreement and "park rules") against Kimberly Olson, Plaintiff's disabled charge,

with the intent to cause her emotional and psychological pain and distress and to attempt to get her to

move from her home in Cove Mobile Villa.  Ms. Olson has indeed suffered emotional and

psychological pain and distress as a result of defendants' actions, and Plaintiff, as Olson's contracted

Caregiver, has thereby been forced to expend additional effort and resources to fulfill his contract with

Ms. Olson as described in item two (2) above, to his general and special damages of $2,500.

18.

Further, the actions of the defendants as aforesaid were willful, malicious, and undertaken by them

with reckless disregard and wanton indifference to Plaintiff's right to engage unhindered in contractual

obligations, in violation of the contract as described in Count VIII, and beyond the bounds of conduct

tolerated in a civil society, and Plaintiff is thereby entitled to recover of Defendants, and each of them,

punitive damages in the sum of $10,000.

**Count VI**
**Willful Negligence**

19.

Defendant Cove Mobile Villa, in spite of repeated complaints and notices by Plaintiff, Plaintiff's

charge, Kimberly Olson, and tenants of the park concerning the violent and improper behavior of

Defendant Kepreos, refused to discipline or replace him as manager of the trailer park. This lack of

action being a proximate cause of Plaintiff's injuries as set forth herein.  Defendant Cove Mobile Villa

is therefore liable for all of the acts of its managing agent, Defendant Kepreos, as well as the acts

compelled, instigated, or encouraged by him as set forth in this Complaint, to Plaintiff's general and

special damages of $91,500.

## Count VII
### Willfully Maintaining a Nuisance

20.

Defendants Cove Mobile Villa and Gust Kepreos, in an effort to annoy and harass plaintiff and his charge, Ms. Olson, have refused to provide sufficient trash dumpsters at the Cove Mobile Villa for the refuse generated by the tenants, and have repeatedly failed to keep said dumpsters in a sanitary and cleanly manner as required by California Civil Code 1941.1(g) which has led to highly offensive smells, as well as infestations of flies, bees, and other vermin attracted to them.  Further defendants have willfully located the dumpsters within 35' of space number 50 in Cove Mobile Villa where Plaintiff resides during the school year, and this proximity creates excessive traffic and noise from people using the dumpsters at all hours of the day and night.  The dumpsters for the entire park are located next to #50 instead of being distributed about the park, or located on the common ground at the front of the park.

21.

Defendants have refused all entreaties to relocate the dumpsters, in spite of being cited for violation by the State of California Department of Housing and Community Development, and are therefore willfully maintaining this nuisance to Plaintiff's general and special damages of $1,500.

22.

Further, the acts of Defendants Cove Mobile Villa and Gust Kepreos as aforesaid were willfull, wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the health, safety, and quiet enjoyment of the premises by the Plaintiff, in violation of the contract as described in Count VIII, and beyond the bounds of conduct tolerated in a civil society, and Plaintiff is thereby entitled to recover of these two defendants, and each of them, punitive damages in the amount of $5,000.

## Count VIII
## Breach of Contract

23.

Plaintiff, pursuant to the rental contract of Kimberly Olson and Cove Mobile Villa, executed by

agent/manager Gust Kepreos, and the "park rules" incorporated therein, is a "guest" at the park, and is

required to abide by all rules and contractual conditions in the same manner as any other resident.

Plaintiff is therefore entitled to the protections and benefits afforded him by that status under the

contract.

24.

The actions of Defendants Kepreos and Cove Mobile Villa as set forth in this Complaint are direct

violations of that contract and the covenant of habitability in that Cove Mobile Villa and Gust Kepreos

have failed to properly maintain the grounds and services, have allowed nuisances to exist unabated,

have engaged in behavior that poses a direct threat to the health, safety, and security of the Plaintiff,

have failed to enforce the rules of the park in regards to the other defendants and in general, have

harassed, annoyed, assaulted, badgered, intimidated, tormented, threatened, and initiated baseless legal

proceedings against Plaintiff, to his general and special damages of $20,000.

25.

Further, the acts of Defendants Cove Mobile Villa and Gust Kepreos as aforesaid were willfull,

wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the

health, safety, personal security, and quiet enjoyment of the premises by the Plaintiff, and Plaintiff is

thereby entitled to recover of these two defendants, and each of them, punitive damages in the amount

of $60,000.

/////////////////////////////////

/////////////////////////////////

/////////////////////////////////

### Count IX
### Breach of Contract
26.

Defendants Bruce Hull, William Warner, Todd Warner, David Kirchubel, Kenneth Bottoms, and Does 1-3, by engaging in harassment of, threats to, and willful annoyance of the Plaintiff, destruction of Plaintiff's property, and disruption of Plaintiff's quiet enjoyment of the premises described as #50 of the Cove Mobile Villa trailer park, are in substantial breach of the park rules, and thus are in breach of the contract embodying them.

27.

This breach has caused Plaintiff annoyance, aggravation, apprehension, fear, upset, loss and destruction of his personal property, dissipation of resources, lack of sleep, and extreme emotional and psychological pain and distress to his general and special damages of $5,000.

28.

Further, the actions of the defendants as aforesaid were willful, malicious, and undertaken by them with reckless disregard and wanton indifference to Plaintiff's privileges under the contract, plaintiff's right to quiet enjoyment of the premises, and beyond the bounds of conduct tolerated in a civil society, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $20,000.

### Count X
### Vandalism
29.

On or about August 22, 2004, as a result of a conspiracy between Defendants Gust Kepreos, Kenneth Bottoms, and David Kirchubel, Plaintiff's car was sprayed with noxious chemicals, which ate into and destroyed the paint job over the majority of the surface of the vehicle, causing approximately $2000 in damage.

30.

As a consequence of Defendants' actions, plaintiff incurred damage to his personal property, suffered fear, apprehension, anger, and extreme emotional and psychological pain and distress, to his general

and special damage of $7,500.

31.

The conduct of Defendants as aforesaid was willful, wanton, malicious, and undertaken by

them with reckless disregard and wanton indifference to the personal security and emotional well-being

of the Plaintiff, and Plaintiff's right to be free of unreasonable destruction of his personal property, in

violation of the contract as described in Count VIII, and beyond the bounds of conduct tolerated in a

civil society, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive

damages in the sum of $35,000.

**Count XI**
**Malicious Prosecution**

32.

On or about June 22, 2004, Defendant Kepreos did file an accusation in the Siskiyou County Superior

Court against Plaintiff seeking a restraining order.  This accusation and application for a restraining

order was without merit, frivolous, and initiated by Defendant Kepreos to force Plaintiff to expend

resources in order to appear and defend against it, to dissuade Plaintiff from engaging in legal conduct

and assisting Ms. Olson in her issues with Cove Mobile Villa, and to inflict extreme emotional and

psychological pain and distress upon Plaintiff.

33.

At a hearing was conducted on the matter on Seprember 10, 2004, and Kepreos' application for a

restraining order against Plaintiff was denied.

34.

As a result of Defendant Kepreos' actions as aforesaid, Plaintiff was made to suffer extreme emotional

and psychological pain and distress, fear, anger, anxiety, apprehension, and economic loss, to his

general and special damages of $5,000.

35.

Further, the conduct of Defendant Kepreos as aforesaid was willfull, wanton, malicious, and

undertaken by him with reckless disregard and wanton indifference to the emotional well-being of the

Plaintiff, and Plaintiff's right to be free of baseless and false legal actions, and Plaintiff is thereby

entitled to recover of Defendant Kepreos punitive damages in the sum of $25,000.

## Count XII
## Assault

36.

On or about June 28, 2004, while engaged in late-night disruption of the peace of the Cove Mobile

Villa mobilehome park, defendants William Warner and Todd Warner, after banging the lids and sides

of the dumpsters located adjacent to #50, did make numerous threats to cause Plaintiff physical injury,

meanwhile acting in a physically menacing manner, and to file baseless criminal charges against him.

37.

The threats made by these two Defendants were unreasonable, were initiated in retaliation for the

lawful exercise of Plaintiffs rights, were calculated to cause, and did so cause, fear and apprehension to

Plaintiff as well as extreme emotional distress and suffering.

38.

As a consequence of Defendants' unreasonable violation of his personal security, Plaintiff has been

caused to suffer fear, anxiety, apprehension, expenses to ensure his personal security, and extreme

emotional and psychological pain and distress to his general and special damage of $15,000.

39.

The conduct of Defendants as aforesaid was willful, wanton, and malicious, in violation of the park

rules contract as described in Counts VIII and IX, and beyond the bounds of conduct tolerated in a civil

society, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages

in the sum of $45,000.

### Count XIII
### Criminal Threats (Willful Infliction of Emotional Distress)

40.

On September 29, 2004, while walking beside #50 of Cove Mobile Villa, Defendant Bottoms did make

threats against the Plaintiff through the open window of the dwelling, to whit: "I'm gonna hurt that

motherfucker". Defendant Bottoms then enlisted the aid of Defendant Kirchubel, who proceeded to

#50 and confronted Plaintiff in the front yard of the residence, stating: "You'd better watch your ass,

because it's going to get hurt".

41.

These threats were made in order to intimidate Plaintiff, to dissuade him from further assisting Ms.

Olson with her legal matters, to dissuade him from seeking due process of law, and were calculated to

cause Plaintiff fear, apprehension, upset, and extreme emotional and psychological pain and distress.

42.

As a result of these two Defendants' conduct as aforesaid, Plaintiff has been made to suffer fear,

apprehension, anxiety, and extreme emotional and psychological pain and distress to his general and

special damages of $1,500

43.

The conduct of these two Defendants as aforesaid was willful, wanton, and malicious, in violation of

the park rules contract as described in Counts VIII and IX, and beyond the bounds of conduct tolerated

in a civil society, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive

damages in the sum of $4,500.

//////////////////////////

//////////////////////////

//////////////////////////

//////////////////////////

**WHEREFORE**, Plaintiff now prays for judgment against Defendants for his damages as specified hereinabove, for his reasonable attorney fees, and for his reasonable costs and disbursements herein.

**DATED** this _30th_ day of September, 2004

*Peter T. Harrell*

Peter T. Harrell, Plaintiff Pro Se
C/o PO Box 1731
Yreka, CA 96097

# EXHIBIT 4

# WESTLAW CLASSIC

2005 WL 730639
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

**Harrell v. Kepreos**
United States District Court, D. Oregon. | March 30, 2005 | Not Reported in F.Supp.2d | 2005 WL 730639 *(Approx. 7 pages)*

v.

Gust KEPREOS; et al., Defendants.

No. Civ.04–3082–CO.

March 30, 2005.

## Attorneys and Law Firms

Peter T. Harrell, Yreka, CA, pro se.

James A. Wallan, Hornecker Cowling Hassen & Heysell, Medford, OR, for Defendants.

ORDER AND FINDINGS AND RECOMMENDATION

COONEY, Magistrate, J.

***1** Plaintiff brings this action against defendants alleging claims for assault, battery, vandalism, breach of contract, and malicious prosecution, among other claims. Plaintiff seeks general and special damages, punitive damages, and reasonable attorney's fees and costs. This court may have jurisdiction pursuant to 28 U.S.C. § 1332. Before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), and request for sanctions (# 12), to which plaintiff has responded. The court held an evidentiary hearing, and the parties submitted supplemental briefing allowed by the court Subsequent to the hearing, plaintiff filed a motion for hearing (# 30) and a motion for discovery (# 31), to which defendant objects.

*DISCUSSION*

Defendants move to dismiss on the grounds of lack of personal jurisdiction over defendants and lack of diversity jurisdiction. The court will first address defendants' argument that the court lacks subject matter jurisdiction before considering whether personal jurisdiction exists over defendants. See *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 588, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

*Motion to dismiss for lack of subject matter jurisdiction*
In his complaint, plaintiff invokes diversity jurisdiction, 28 U.S.C. § 1332. He alleges that all defendants were residents of California; and

> At all material times, Plaintiff was a citizen of the United States, and the State of Oregon and subject to their jurisdiction. Plaintiff is an interstate exchange student attending College of the Siskiyous in Weed, California, via an agreement with Southern Oregon University. During the school year, in exchange for housing, Plaintiff provides personal care and assistance to Kimberly Olson, a disabled person and resident of unit # 50 in the Cove Mobile Villa mobilehome park located in Yreka, California. All actions by the defendants giving rise to this Complaint occurred in or about this residence, and upon the property of Defendant Cove Mobile Villa.

(Compl.¶ 2.) Defendants "deny" that plaintiff is a legal resident of Oregon. (Mot. at 3.) They submit declarations in support of their contention that plaintiff has been a tenant of Cove Mobile Villa in Yreka, California, since at least July, 2000. (See Kepreos Decl. ¶ 4.)

**SELECTED** TOPICS

Federal Courts

Venue
   Burden of Proof of Prima Facie Case of Personal Jurisdiction

**Secondary Sources**

**§ 1069. Modern Principles of Personal Jurisdiction**

4A Fed. Prac. & Proc. Civ. § 1069 (4th ed.)

...As described in an earlier section, a state court may assert personal jurisdiction over a defendant only if both (1) jurisdiction is authorized by state law, such as by its long-arm statute, and (2) as...

**§ 1069.8. Application of Modern Jurisdictional Principles—Illustrative Cases**

4A Fed. Prac. & Proc. Civ. § 1069.8 (4th ed.)

...In an attempt to provide something in the nature of a summary of the contents of the preceding sections and to give the reader source material for purposes of research, a number of cases that sustain p...

**§ 1067.2. Minimum Contacts, Fair Play, and Substantial Justice**

4 Fed. Prac. & Proc. Civ. § 1067.2 (4th ed.)

...This section explores the Supreme Court's treatment of minimum contacts, fair play, and substantial justice as necessary due process requirements of any assertion of personal jurisdiction over a defend...

See More Secondary Sources

**Briefs**

**Brief for the United States as Amicus Curiae Supporting Petitioner**

2017 WL 943980
BNSF RAILWAY CO., petitioner, v. Kelli TYRRELL, Special Administrator for the Estate of Brent T. Tyrrell, Deceased, et al.
Supreme Court of the United States
Mar. 06, 2017

...This case involves a state court's assertion of general personal jurisdiction over an out-of-state corporation to adjudicate a cause of action under the Federal Employers' Liability Act (FELA), 45 U.S....

**Respondents' Brief in Opposition**

2016 WL 7011423
BNSF RAILWAY COMPANY, Petitioner, v. Kelli TYRRELL, as Special Administrator for the Estate of Brent T. Tyrrell, and Robert M. Nelson, Respondents.
Supreme Court of the United States
Nov. 28, 2016

...In 1908, Congress adopted FELA in recognition "of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year." Consol. Rail Corp. v. Gottshall, 512 U.S...

**Brief for Petitioner**

2017 WL 818312
BNSF RAILWAY COMPANY, Petitioner, v. Kelli TYRRELL, as Special Administrator for the Estate of Brent T. Tyrrell; and Robert M. Nelson, Respondents.
Supreme Court of the United States
Feb. 27, 2017

Case 2:21-cv-01482-KJM-DMC Document 54 Filed 12/15/21 Page 22 of 166

For [federal courts] to [exercise diversity jurisdiction] [matter in controversy must exceed] the sum or value of $75,000, and the action must be between United States citizens who are citizens of different states. 28 U.S.C. § 1332(a). "Citizenship" is equated with the individual's "domicile," rather than "residence." *Napletana v. Hillsdale College,* 385 F.2d 871, 872 (6 th Cir.1967); *see Burkhardt v. Bates,* 296 F.2d 315, 315–16 (8 th Cir.1961). "Domicile" is judicially defined to require that a natural person (1) establish a fixed habitation or abode in a particular place; and (2) intend to remain there permanently or indefinitely. *Lew v. Moss,* 797 F.2d 747, 749–50 (9th Cir.1986). To establish the requisite intent, "There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently....' To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least." ' ' *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 701 (1st Cir.1979) (quoting Restatement (Second) Conflict of Laws § 18 (1971)); *Granite Trading Corp. v. Harris,* 80 F.2d 174, 176 (4th Cir.1935). It is the intention at the time of arrival at the new residence which is significant. *Gallagher v. Philadelphia Transp. Co.,* 185 F.2d 543, 546 (3d Cir.1950). If there exists a concurrence "even for a moment" of physical presence at a dwelling place and the intention to make it a home, a change of domicile takes place. *Corrs v. Inter–American Univ.,* 217 F.Supp. 755, 756 (D.P.R.1963). The intent to remain permanently is not required. *Chaney v. Wilson–Benner, Inc.,* 165 F.Supp. 64, 66 (M.D.Pa.1958). "The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long as the subsequent doubt or circumstance of the leaving does not indicate that the intention to make the place the plaintiff's home never existed." *Gallagher,* 185 F.2d at 546. "A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." *Hawes,* 598 F.2d at 701 (quoting *Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915)); *Granite Trading Corp.,* 80 F.2d at 176. A person's declaration as to his intention regarding his domicile is entitled to full and fair consideration, but it "cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct." *Korn v. Korn,* 398 F.2d 689, 691 & n. 4 (3d Cir.1968); *Webb v. Nolan,* 361 F.Supp. 418, 421 (M.D.N.C.1972), *aff'd,* 484 F.2d 1049 (1973).

**\*2** A person has only one domicile at a time, *Williamson v. Osenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *Janzen v. Goos,* 302 F.2d 421, 424–25 (8th Cir.1962), although he may have several residences. Domicile continues even though a person resides elsewhere, and continues until a new domicile is acquired. *See Noreiga v. Lever Bros. Co.,* 671 F.Supp. 991, 993–94 (S.D.N.Y.1987). "A change in domicile requires the confluence of (a) a physical presence at the new location with (b) an intent to remain there indefinitely." *Lew,* 797 F.2d at 750. Residence does not require any intent to remain. However, residence is prima facie evidence of domicile. *Anderson v. Watts,* 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir.1994); *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954).

A party's declaration as to where he is domiciled is significant but is not conclusive. " " '[S]tatements of intent are entitled to little weight when in conflict with facts." " ' *Lew,* 797 F.2d at 750 (quoting *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 556 (5th Cir.1985)). Manifestation of a person's intent is determined by objective factors, such as: current residence; length of residence; place of employment; place of exercise of political rights; location of real property; location of personal property; location of bank and investment accounts; voting registration and voting practices; driver's license; address shown on driver's license; car registration; payment of state taxes; and memberships in fraternal organizations, clubs, and church. *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 12 (1st Cir.1991); 13B Charles Alan Wright et al., Federal Practice and Procedure § 3612 (1984).

The burden is on the party asserting jurisdiction to plead and prove facts of diverse citizenship by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see Bautista v. Pan Am. World Airlines, Inc.,* 828 F.2d 546, 552 (9th Cir.1987). However, there is a heavier burden on a party trying to show a change of domicile than on a party trying to show retention of an existing or former domicile. 13B Charles Alan Wright et al., Federal Practice and Procedure § 3612 (1984). In determining domicile, it is presumed that a person's current residence is also his domicile; that voting in a state raises a presumption of citizenship in that state, although this factor carries less weight after recent Supreme Court decisions regarding residency requirements for voting registration; and that an established domicile is favored as against a newly acquired one, i.e., a domicile once established continues unless and until a new domicile is acquired. 13B Charles Alan Wright et al., Federal Practice and Procedure §

Court of [...] Supreme Court of Montana (Pet. App. 1a-33a) is reported at 373 P.3d 1. The Supreme Court of Montana entered its judgment on May 31, 2016, accompanied by an opinion deciding the feder...

See More Briefs

**Trial Court Documents**

**Lindley Contours, LLC v. AABB Fitness Holdings, Inc.**

2011 WL 5632681
LINDLEY CONTOURS, LLC, and Norman Lindley, Plaintiffs, v. AABB FITNESS HOLDINGS, INC., f/k/a Countours Express, Inc., Contours Express, LLD, Thomas D. Christopoul, William G. Helton, Jr., Paul M. McNicol, Andrew Russell, May S. Stuntz, Jr., Daren Carter, Michael Widener, Clinton C. Cooper, Mary Schard, Pilot Group LLC, Pilot Group L.P., and PGCE Inc., Defendants.
Circuit Court of Oregon
Oct. 13, 2011

...Hearing Date: September 19, 2011 Nature of Proceeding: Motion to Dismiss This matter came regularly before the Court on September 19, 2011 for hearing on the filing of two Motions to Dismiss by several...

**State v. Cigtec Tobacco LLC**

2003 WL 25906341
State of Oregon, v. CIGTEC TOBACCO LLC.
Circuit Court of Oregon
Oct. 03, 2003

...October 3, 2003 P. Rebecca Kamitsuka Assistant Attorney General Department of Justice 1162 COURT ST NE SUITE 100 SALEM OR 97310 James L. Buchal Attorney at Law 1500 SW FIRST AVE #1135 PORTLAND OR 97201...

**Man AKTIENGESELLSCHAFT, Man Nutzfahrzeuge Aktiengesellschaft, Plaintiffs, v. FREIGHTLINER LTD., Daimlerchrysler North American Holding Corp., Daimlerchrysler North American Finance Corp., Defendants.**

2006 WL 4605368
Man AKTIENGESELLSCHAFT, Man Nutzfahrzeuge Aktiengesellschaft, Plaintiffs, v. FREIGHTLINER LTD., Daimlerchrysler North American Holding Corp., Daimlerchrysler North American Finance Corp., Defendants.
Circuit Court of Oregon
June 09, 2006

...The above-captioned matter having been heard before the Honorable Kathleen M. Dailey, Circuit Court Judge, upon Plaintiffs' Motion for Relief from Judgment, on April 28, 2006, Rick Stone, Bruce Cahn an...

See More Trial Court Documents

3612 Charles Alan Wright & Arthur R. Miller, emphasizing the *usual* and temporary character of their residence at school only for the duration of school and solely for the purpose of receiving an education. Therefore, they are presumed to lack the intention to remain in the state indefinitely that is required for acquisition of a new domicile, and to retain their prior, established domicile while attending school. A student's intention to change domicile to the situs of his school must be supported by objective evidence. State rules for determining how a student may acquire resident status for tuition purposes have no relevance for determining citizenship for diversity purposes. 13B Charles Alan Wright et al., Federal Practice and Procedure §§ 3612, 3619 (1984). A person's domicile is determined at the time the lawsuit is filed. *Lew,* 797 F.2d at 750; In re *Haw. Fed. Asbestos Cases,* 960 F.2d 806, 809–10 (9th Cir.1992); *Co–Efficient Energy Sys. v. CSL Indus., Inc.,* 812 F.2d 556, 557 (9th Cir.1987). Once jurisdiction is established, it is unaffected by subsequent events. In re *Haw. Fed. Asbestos Cases,* 960 F.2d at 809–10; *Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52, 54 (5th Cir.1970) (per curiam). The issue is a mixed question of law and fact. *Lew,* 797 F.2d at 750.

**\*3** Diversity must be complete, that is, each plaintiff must be a citizen of a different state than each defendant. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Wisconsin Dept. of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). Accordingly, there is no federal subject matter jurisdiction on the basis of diversity of citizenship if a nondiverse defendant is sued. *See Bowman v. White,* 388 F.2d 756 (4th Cir.1968); *Russell v. Basila Mfg. Co.,* 246 F.2d 432 (5th Cir1957) (per curiam).

Answering questions posed by the court and testifying on his own behalf, plaintiff testified at the hearing that: he lives in Brookings, Oregon; in fall 2000, he arranged to be a caregiver for an individual in Yreka, California, while attending school; continuing to the present, he stays in Yreka during fall and spring semesters, and during the summer he is at home in Brookings, except for times he helps his sister in her business in the Medford, Oregon, area; he will be qualified to attend law school and may attend school in Eugene or Salem, Oregon, or he may continue with his bachelor's degree; he has had a California driver's license; he has had an Ashland P.O. box to receive mail; he currently has an Oregon driver's license with his Brookings address and an Ashland P.O. box; and he has not continuously maintained an Oregon driver's license because at times he did not drive. He testified that his permanent address is Brookings and his temporary address is Yreka. In addition to registration receipts for College of the Siskiyous showing payment of non-resident tuition; property tax receipts from Curry County, Oregon, with Oregon addresses; Oregon driver's license issued October 2002 with Ashland address; and Oregon vehicle registration with Ashland address, submitted with his written materials, plaintiff offered an Oregon Trail card used for public assistance; a Chetco community public library card; a Ray's Food Place card used for video rentals in Brookings; and a voter registration precinct memorandum card and voter history, which were received by the court.

On this record, the court finds that plaintiff is domiciled in Oregon and is a citizen of Oregon for purposes of diversity jurisdiction. Defendants' motion to dismiss on the ground of lack of subject matter jurisdiction should be denied.

*Motion to dismiss for lack of personal jurisdiction over defendants*
Defendants also contend that plaintiff can establish neither general nor specific jurisdiction over them. Plaintiff addressed this argument at the hearing and was allowed to file a supplemental brief on this issue following the hearing.

Where defendant raises the defense of lack of personal jurisdiction by a motion to dismiss, plaintiff bears the burden of proving a prima facie case that jurisdiction exists over defendant. *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389 (9th Cir.1984); *Data Disc. Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1284–85 (9th Cir.1977). Allegations in a pleading are to be taken as true, unless contradicted by affidavit. *Data Disc,* 557 F.2d at 1285.

**\*4** Federal courts may exercise personal jurisdiction over a nonresident defendant where 1) the state has a rule or statute which potentially confers personal jurisdiction over defendant, and 2) the assertion of jurisdiction accords with constitutional principles of due process. *Id.* at 1286. Because Oregon law confers jurisdiction over an out-of-state defendant which is coextensive with due process, the court need only analyze whether the exercise of jurisdiction comports with due process. *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 & n. 1 (9th Cir.1990) (per curiam) [applying Oregon law]; *Newman v. Comprehensive Care Corp.,* 794 F.Supp. 1513, 1518–19 (D.Or.1992). Due process limitations in this context

have addressed its friendly himself defendant been in the nmber contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Data Disc, 557 F.2d at 1287.*

Where defendant's contacts are "substantial" or "continuous and systematic," general jurisdiction may be established over defendant in causes of action unrelated to defendant's contact with the forum. *Id.; Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 414 (9th Cir.1977).* Limited or specific jurisdiction may be established based on a purposeful single contact generally where:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc, 557 F.2d at 1287; Wells Fargo, 556 F.2d at 415–16; Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 n. 1 (9th Cir.1986).* However, jurisdiction may be exercised over a defendant whose only contact with the forum state is the purposeful direction of a foreign act with effect in the forum state. *Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1189 n. 2 (9th Cir.2002); Haisten, 784 F.2d at 1396* (and cases cited).

Once purposeful availment between defendant and the forum state is established, it is presumptively reasonable for the court to exercise jurisdiction over defendants. *Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir.1990); Haisten, 784 F.2d at 1396.* The burden is on defendant to present a "compelling case" why the exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz, 471 U.S. 462 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Shute, 897 F.2d at 386; Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1481 (9th Cir.1986).*

In his supplemental brief, plaintiff states that his assertion at the hearing that, based upon § 1332, he has a free and unfettered choice of forum is in error. However, plaintiff contends that the court has personal jurisdiction over defendants because they made a general appearance before this court by requesting relief in the form of Rule 11 sanctions. Defendants contend in their supplemental brief that, in choosing to contest jurisdiction by motion to dismiss, they should not be deprived of the opportunity to seek Rule 11 sanctions based upon plaintiff's baseless claim of federal jurisdiction. They assert that, had plaintiff made reasonable inquiry as required by Rule 11, he would have determined prior to filing that this court lacked jurisdiction; instead, plaintiff filed the complaint which caused them to retain counsel to seek dismissal for lack of jurisdiction. Defendants contend that plaintiff's argument would leave this court with no manner of insuring compliance with the Federal Rules of Civil Procedure and no method of addressing noncompliance.

**\*5** The court finds that defendants' request for sanctions related to their motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction does not constitute a general appearance before the court so as to confer personal jurisdiction over defendants. This court lacks personal jurisdiction over defendants; defendants' motion to dismiss on this ground should be granted.

*Request for Rule 11 sanctions*
Defendants request sanctions pursuant to Rule 11 in the amount of $1,505 to reimburse defendants for the cost of retaining counsel to defend against plaintiff's frivolous lawsuit. In his supplemental brief, plaintiff contends that his filing of this action and advancing his position of law at the hearing does not rise to the level of sanctionable conduct pursuant to Rule 11. He contends that there is no basis for a finding of "frivolousness" in this case, and the court may consider his pro se status.

Rule 11 sanctions are generally based on the "frivolousness clause" and/or the "improper purpose clause." *Fed.R.Civ.P. 11(b).* [1] *Rule 11* contains a "safe harbor" provision, *Fed.R.Civ.P. 11(c)(1)(a):*

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court

under the circumstances, the court may impose an appropriate sanction...if the...
contention, allegation, or denial is not withdrawn or appropriately corrected....

Under this provision, only if the opposing party does not take advantage of the safe
harbor allowed by the provision may the motion be filed. The twenty-one day safe harbor
period "is meant to give litigants an opportunity to remedy any alleged misconduct before
sanctions are imposed." *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146,
1151 (9 th Cir.2002). The safe harbor provision is mandatory. Rule 11(c)(1)(A) and
advisory committee's notes; *Truesdell*, 293 F.3d at 1151–52 (citing *Barber v. Miller*, 146
F.3d 707, 710–11 (9 th Cir.1998)).

Here, defendants' motion for sanctions was not filed as a separate motion and the
mandatory twenty-one day safe-harbor period was not afforded before the motion to
dismiss and request for sanctions was filed with the court. [2] In any event, on the record
before the court, the court finds that Rule 11 sanctions are not warranted in this case.
Defendants' request for Rule 11 sanctions is denied.

### ORDER

Defendants' request for Rule 11 sanctions (# 12) is denied. Plaintiff's motion for discovery
(# 30) and motion for hearing (# 31) are denied as untimely. [3]

### RECOMMENDATION

Based on the foregoing, it is recommended that defendants' motion to dismiss (# 12) be
granted in part and denied in part: defendants' motion to dismiss on the ground that this
court lacks subject matter jurisdiction should be denied, and defendants' motion to dismiss
on the ground that this court lacks personal jurisdiction over defendants should be granted,
and this action be dismissed; and that judgment be entered dismissing this action.

**\*6** This recommendation is not an order that is immediately appealable to the Ninth Circuit
Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
Procedure, should not be filed until entry of the district court's judgment or appealable
order. The parties shall have ten days from the date of service of a copy of this
recommendation within which to file specific written objections with the court. Thereafter,
the parties have ten days within which to file a response to the objections. Failure to timely
file objections to any factual determinations of the Magistrate Judge will be considered a
waiver of a party's right to de novo consideration of the factual issues and will constitute a
waiver of a party's right to appellate review of the findings of fact in an order or judgment
entered pursuant to the Magistrate Judge's recommendation.

### All Citations

Not Reported in F.Supp.2d, 2005 WL 730639

| Footnotes |
| --- |

1     Federal Rules of Civil Procedure Rule 11 provides in pertinent part:

(b) Representations to Court. By presenting to the court (whether by
signing, filing, submitting, or later advocating) a pleading, written motion, or
other paper, an attorney or unrepresented party is certifying that to the best
of the person's knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass, or
to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted
by existing law or by a nonfrivolous argument for the extension,
modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support
or, if specifically so identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if
specifically so identified, are reasonably based on a lack of information or
belief.

Case 2:21-cv-01482-KJM-DMC   Document 54   Filed 12/15/21   Page 26 of 166

2    The certificate of service indicates that the motion was served on the same
     date that it was filed with the court.

3    Nor did plaintiff's motions comply with Local Rule 7.1, which requires that a
     moving party certify in the first paragraph of every motion that, "(A) The
     parties made a good faith effort through personal or telephone conference to
     resolve the dispute, and have been unable to do so; or (B) The opposing
     party wilfully refused to confer...."

---

**End of**                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.
**Document**

Westlaw. © 2021 Thomson Reuters  |  Privacy Statement  |  Accessibility  |  Supplier Terms  |  Contact Us   1-800-REF-ATTY (1-800-733-2889)   **Improve Westlaw**       THOMSON REUTERS

# EXHIBIT 5

FILED 08 AUG 21 11:41 USDC-ORM

Peter T. Harrell, In Pro Per
PO Box 131
Ashland, OR 97520

THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

Peter T. Harrell,                            )   Case No:   08 - 3092 - PA
                                             )
              Plaintiff,                     )   COMPLAINT
                                             )
     vs.                                     )   (Action at Law for Civil Rights Violations and
                                             )   Pendent State Claims)
COSTCO, Jay Moscatelli, Guy Berry, Peter     )
                                             )   Jury Trial Requested
Otoski, Renee Russell, "Bob" Froschauer, City)
                                             )
of Medford, Officer Sartain, and  John Does 1-
                                             )
20,
                                             )
              Defendants,

_____

## **JURISDICTION**

Jurisdiction over this action arises pursuant to Section 1343 of Title 28 of the United

States Code, as an action arising under the Constitution and laws of the United States,

specifically Amendments 1, 4, and 14 of the United States Constitution, and sections 1983, 1985,

1986, and 1988 of Title 42 of the United States Code, as an action seeking redress of grievances

for violations of rights secured to Plaintiff by the Constitution of the United States.  Pendent

jurisdiction is asserted over Plaintiff's state law claims for relief.

Plaintiff specifically communicated to Defendant COSTCO, and to Defendant City of

Medford, that the actions and acts by the defendants as complained of herein where in violation

of Plaintiff's clearly established Constitutional and statutory rights.  In spite of this

communication, the Defendants acted individually and in concert to deprive Plaintiff of his

Constitutional and statutory rights, and in the case of the City of Medford and its officers and

agents, failed to take any action to prevent, or aid in preventing the deprivation of Plaintiff's

rights as set forth herein.

At all times material, Defendant City of Medford was acting under color of law, and its

official capacity as a political subdivision of the State of Oregon and the County of Jackson, and

was also subject to their jurisdiction.

Complaint - 1

At all times material, Defendant Officer Sartain was a City of Medford Police Officer, and was acting under color of law and in his official capacity thereof, but also as an agent of Defendant Costco, and at its direction and that of Costco's agents.

At all times material, Defendants Jay Moscatelli, Guy Berry, Peter Otoski, Renee Russell, and "Bob" Froschauer were agents and/or employees of Defendant Costco, and residents and citizens of the State of Oregon and of the United States, and subject to their jurisdiction. It is alleged that these defendants conspired with Defendant City of Medford (and its agents), as well as Defendant Costco, and acted on that conspiracy (in their own capacities, but additionally as agents of both those entity defendants and/or of each other), to deprive Plaintiff of his constitutional rights and to commit other torts against him as set forth herein.

At all times material, Defendant Costco was a business entity operating in the City of Medford, the State of Oregon, and the United States, and subject to their jurisdiction.

At all times material, defendant John Does were administrators, managers, policy makers and/or executors, decision makers, rule enforcers, and otherwise actors and/or agents of COSTCO Wholesale, The City of Medford, the named natural person defendants, and/or of each other. The true names and capacities of these John Doe defendants is uncertain to Plaintiff at this time, but will be substituted by amendment to this Complaint as they are definitely determined and/or discovered. Defendant John Does are alleged to have acted in concert and/or cooperation with the other named defendants in promulgating, enforcing, administering, and/or assisting in the conduct complained of herein, and/or to have conspired with each other and/or the named defendants to deprive Plaintiff of his Constitutional and/or statutory rights, as well as participated in tortuous conduct as set forth in this Complaint.

All claims made herein are brought against the natural person defendants in their individual, as well as their official capacities, and as agents of each other, as well as agents of Costco and/or City of Medford. All defendants, in addition to any actions committed in their individual and/or official capacities, are alleged to have acted pursuant to a policy, custom, directive, and/or practice promulgated or encouraged by COSTCO Wholesale, and/or its administrators or other directors and/or operators, and/or to have acted pursuant to a policy, custom, directive, and/or practice promulgated or encouraged by The City of Medford and/or its agents acting in their official capacity (and/or under color of law).

At all times material, Plaintiff was a citizen of the State of Oregon, and of the United States, and subject to their jurisdiction.

In regards to his claims herein, Plaintiff has complied with the requirements of the Oregon Tort Claims Act (ORS 30.275) by properly notifying Defendant City of Medford.

## FACTUAL OVERVIEW

On February 18, 2007, Plaintiff and a companion, Kimberly Olson, attempted to exchange a defective drill set at the Costco warehouse in Medford, Oregon pursuant to the "no questions asked" policy of that company. The purchase price of the drill set was $39.49. The customer service representative at the store refused to exchange the defective drill set because some of the parts to the set were missing, and so indicated that a new set would have to be purchased. Ms. Olson, who was an authorized user of both Plaintiff Harrell's Costco account, and his American Express credit card account (the only credit card accepted by Costco), presented her Costco membership card and credit card as requested by the customer service representative for payment, and then executed a charge slip which indicated on its face that the drill set was being paid for pursuant to the cardmember agreement. The Costco customer service representative kept the defective drill set.

After completing their shopping, Plaintiff and his companion went through the check-out line where the teller attempted to charge Plaintiff again for the new drill set. Plaintiff and his companion insisted that the charge be removed. Plaintiff eventually left the store with the drill set, pausing at the "door checker" who inspected and approved Plaintiff, his companion, and the items leaving the store.

A few days later, Plaintiff received written notice from Defendant Jay Moscatelli, then-manager of the Medford Costco, that Plaintiff's membership privileges were being terminated for an unspecified "incident". Plaintiff responded to this letter, and made inquiry to the specifics of Moscatelli's claims. Rather than inform Plaintiff of any details regarding his actions, Moscatelli, in order to "complete this transaction", sent Plaintiff a refund of his Executive Membership fee, along with his dividend payment under the Executive Membership program of 2% of Plaintiff's expenditures for the past year. The check totaled $217.39, and contained no offset or deductions of any kind.

Plaintiff thereafter received an email from Officer Sartain of the Medford Police Department indicating that Costco representatives had made a report on February 26, 2007 of theft concerning the drill set against Plaintiff (eight days after the alleged "incident"). After Plaintiff's further attempts to communicate in good faith with Costco and resolve the issues regarding the drill set proved fruitless, Plaintiff presented himself on March 22, 2007 at the

Medford Police department with his copies of the receipts relating to the drill set, and where (in spite of prima facie evidence that the drill set had been paid for) he was issued a summons and complaint alleging "Theft III" (Theft in the Third Degree) by Officer Sartain, and which complaint was later signed by Defendant "Bob" Froschauer on behalf of Costco.

Plaintiff appeared in response to the summons and complaint, was appointed counsel, and prepared for trial. During the pretrial procedures, the City Attorney communicated Costco's terms regarding the withdrawal of criminal charges, which terms required Plaintiff to sign a waiver of civil liability relating to Costco and its agents, and to tender $39.49. Plaintiff agreed to tender the disputed amount in good faith, but refused to sign a waiver of liability. As a result of Plaintiff's refusal to immunize Costco and its agents against civil liability relating to the drill set incident, Defendants Costco and City of Medford pressed forward with the criminal case against Plaintiff in an attempt to insulate themselves from any civil claims Plaintiff might ultimately raise, and in retaliation for Plaintiff's statements that he would file civil action against Costco, and organize protests at the store.

Plaintiff was eventually tried on the theft charge, which resulted in a mistrial. During the trial, several of Costco's agents made false statements under oath which contradicted in part other, written statements they had provided police, and the actual events at the store on the date of the incident. The purpose of the false statements was to misrepresent the facts, subvert the justice process, deprive Plaintiff of a fair trial, and further the goals of Costco and the City of Medford relating to their power and authority in relation to Plaintiff.

Rather than retry Plaintiff, the City of Medford Attorney, over Plaintiff's objections, dismissed the third degree theft charge, and instituted a new charge of "attempted theft", a violation, in order to deprive Plaintiff of his court-appointed counsel, his requested jury trial, and to lower the burden of proof necessary to convict Plaintiff (from "beyond a reasonable doubt" to "preponderance of the evidence" – the standard for violations).

Prior to the trial on the amended charge, Plaintiff wrote to the City Attorney and complained that prosecuting him for refusing to sign a civil waiver was a violation of Plaintiff's constitutional rights as discussed in Macdonald v. Musick, 425 F.2d 373 (9th Cir. 04/20/1970), and that if the City persisted, Plaintiff would seek civil damages in the event he prevailed. During trial on the amended charge, over Plaintiff's objection as to relevance, the City Attorney elicited testimony from Plaintiff concerning his plans to file suit against Costco and/or the City of Medford if he were to be acquitted. During the second trial, the same Costco agent witnesses

that appeared at the first trial made substantially similar false representations, and for the same reasons, as at the first trial.

In spite of the machinations by Defendant City of Medford, Costco, and its agents, Plaintiff asserted the "claim of right" defense authorized by ORS 164.035, prevailed in the case, and was acquitted of the attempted theft charge on May 20, 2008 (415 days after Plaintiff's arrest and presentation to him of the criminal summons and complaint). In acquitting Plaintiff, the presiding judge opined that "the [People's] witnesses sounded coached", that "the People haven't even come close to proving their case", and that he was "very troubled by the fact that Costco has made such a big deal out of this case, but then shredded the check that was sent to them for payment for the drill set".

## FIRST CLAIM FOR RELIEF

### Count – I, Malicious Prosecution

Plaintiff, incorporating all of the information set forth in the Factual Overview, as well as the First and Second Claims for Relief as if fully set forth herein, alleges that:

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

In this case, the refusal by Costco to communicate in good faith concerning the status of the disputed drill set, the eight day delay between the initial incident and the report of the incident as a "theft", and the insistence by Costco of a criminal prosecution if Plaintiff refused to waive his right to seek civil redress in the courts, all give rise to a reasonable inference of a lack of probable cause, wanton disregard for Plaintiff's rights, bad faith, and improper motive on the part of Costco, the City of Medford, and their agents.

What is more, the City of Medford (and its agents) had been provided with all of the relevant communications between Plaintiff and Costco, and yet not only used its position of authority and power to communicate Costco's improper demands, but also assisted this large corporate entity in its persecution of Plaintiff knowing the case was unreasonable, without a basis in probable cause, and that the actions by Plaintiff would not constitute criminal acts in the mind of a reasonable person. City of Medford's actions (as well as those of its agents) in this

matter, coupled with statements by the City Attorney during Plaintiff's trials (i.e. that requiring civil liability waivers to the benefit of merchants who insist on criminal prosecutions is "common practice"), indicate a policy, custom, or practice of violating the rights of persons accused of crimes by big taxpayers operating within the city limits in order to extort civil liability waivers, and by refusing to exercise proper independent judgment relating to the viability of any criminal accusations, and those against Plaintiff in particular.

Although in this case Plaintiff only faced minor misdemeanor and violations charges, and so did not undergo a preliminary hearing, among the ways that a plaintiff can rebut any prima facie finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith.

Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings. Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir. 1981). However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation, or continuation, of legal proceedings. See Galbraith, 307 F.3d at 112627 (holding that plaintiff's allegations that a coroner's knowingly or recklessly false statements led to his arrest and prosecution were sufficient to state a § 1983 claim); Harris v. Roderick, 126 F.3d 1189, 1198 (9th Cir. 1997) (holding that a probable cause determination "that is 'tainted by the malicious actions of the government officials [involved]' does not preclude a claim against the officials involved." (quoting Hand v. Gary, 838 F.2d 1420, 1426 (5th Cir. 1988)). See also 5 Witkin, Summary of Cal. Law, Torts § 418 (9th ed. 1998) ("One who procures a third person to institute a malicious prosecution is liable, just as if he instituted it himself."). Additionally, an individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence. Heck, 512 U.S. at 484-85.

In particular, Plaintiff herein contends that the defendants conspired to deprive him of: (1) His First Amendment free speech rights by unlawfully interfering with, and in retaliation for his anticipated exercise of his right to petition the courts for redress of grievances, and right to speak freely and to protest; (2) His right to equal protection of the laws, and to due process of law under the Fourteenth Amendment by intentionally causing Officer Sartain and the City of

Medford Attorney to bring an unfounded criminal action against him due to animus towards Plaintiff, and Plaintiff's statements that he intended to bring legal action against Costco and to ridicule the company in the press and by protest in front of the Medford store, while Costco was and is an important taxpayer and revenue source for the City of Medford; (3) His right to equal protection of the laws and to due process of law when City of Medford, and/or its agent(s), insisted that the assistant city attorney who ultimately prosecuted the case do so regardless of any reservations he may have had regarding the matter, and/or the probable cause issues relating thereto.  See generally Macdonald v. Musick, 425 F.2d 373 (9th Cir. 04/20/1970):

> "It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a
> civil proceeding by the defendant against policemen, even where the civil case arises from the
> events that are also the basis for the criminal charge. We do not mean that the prosecutor
> cannot present such a criminal charge. What he cannot do is condition a voluntary dismissal
> of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil
> case. The situation is made no better by the fact that here the record indicates that it was the
> court that asked MacDonald whether he would stipulate. Rather, it makes it worse. It brings
> the court to the aid of the prosecutor in coercing the defendant into agreeing to what amounts
> to a forfeiture of his civil rights. Nor can the prosecutor, because of failure to obtain the
> demanded stipulation, then introduce another charge in the hope of defeating the possible
> civil action of the defendant."

In this circuit, nothing prevents Plaintiff from bringing both malicious prosecution and direct First and Fourteenth Amendment claims in the same § 1983 action. In Poppell, for instance, the Court analyzed the adult business operator's claim of malicious prosecution with the intent to deprive him of specific constitutional rights separately from his claim that he was prosecuted "on account of his exercise of the same rights he invoked in his malicious prosecution theory." 149 F.3d at 961. And in Freeman, the plaintiff's failure to prevail on her § 1983 claim of malicious prosecution did not serve to bar her claim that she was prosecuted in violation of her Fourteenth Amendment equal protection rights and in retaliation for exercising her First Amendment "associational" rights. 68 F.3d at 1185-88. Instead, as in Poppell, the Court analyzed each claim on its own merits.

As a consequence of Defendants' actions as aforesaid, Plaintiff has been caused to suffer violation of his personal security and privacy in his person, and has suffered fear, anger, upset, embarrassment, public humiliation, outrage, anxiety, economic loss, inconvenience, and extreme emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard

and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $1,000,000.

### Count – II, Violation of First Amendment Rights

Plaintiff, incorporating all of the information set forth in the Factual Overview, as well as the First and Second Claims for Relief as if fully set forth herein, alleges that the criminal proceedings against him were initiated on the basis of bad faith, false accusations, and conspiratorial conduct by several City of Medford, and Costco officials (and ultimately along with the other named defendants) who sought to deprive him of his First, Fourth, and Fourteenth Amendment rights, and that this deprivation arose out of a policy, custom, and/or practice of the City of Medford to use its position and authority to suppress civil claims against large taxpayers, and thus to also discriminate against individuals asserting their rights to sue large commercial entities within the City, and/or those persons who refuse to compromise in the face of bogus criminal charges, and thus petition the Courts for redress of grievances.

The defendant City of Medford, pursuant to its policy, custom, and/or practice, made false accusations and/or otherwise unlawfully conspired with the other defendants against Plaintiff, with the result that criminal proceedings were wrongfully initiated; (1) in order to discourage Plaintiff's legal, political, and other protected First Amendment conduct as a citizen; and (2) on account of his specific political and social views regarding Costco and the City of Medford, all in violation of his Fourteenth Amendment right to equal protection of the laws.

To establish that his First Amendment rights were violated, Plaintiff must prove that chilling his political speech was a substantial or motivating factor in the defendants' wrongful conduct. Sloman v. Tadlock, 21 F.3d 1462, 1469-70 (9th Cir. 1994); see also Karam v. City of Burbank, 352 F.3d 1188, 1194-95 (9th Cir. 2003); Butler v. Elle, 281 F.3d 1014, 1027-28 (9th Cir. 2002). Plaintiff is not merely claiming a "speculative chill due to generalized and legitimate law enforcement initiatives." Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994) (internal quotation marks and citation omitted). His complaint contains specific allegations that the defendant public, and Costco, officials knowingly made false accusations and engaged in other wrongful, concerted conduct that resulted, as they had intended, in the institution of an unfounded criminal charge, and substantially infringed his First Amendment rights to speak out against the actions of Costco, and the City of Medford, and to seek redress concerning them in the courts. These allegations are sufficient to state a claim under § 1983 for violation of his First Amendment rights.

As a consequence of Defendants' actions as aforesaid, Plaintiff has been caused to suffer violation of his personal security and privacy in his person, and has suffered fear, anger, upset, embarrassment, public humiliation, outrage, anxiety, economic loss, inconvenience, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $2,000,000.

### Count – III, Violation of 14th Amendment Rights

Plaintiff, incorporating all of the information set forth in the Factual Overview, as well as the First and Second Claims for Relief as if fully set forth herein alleges that:

A conspiracy formed between the defendants to use unconstitutional and illegal means to prosecute Plaintiff when Plaintiff indicated he would bring legal action against Costco and its agents concerning the drill set, and because Plaintiff refused to sign any agreement that would waive liability of Costco (and/or its agents) and preclude him from bringing civil action against it in the courts. The use of false accusations to initiate a criminal proceeding, and/or perjured testimony at trial constitutes a denial of due process.

"[M]alicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights is cognizable under § 1983." Poppell v. City of San Diego, 149 F.3d 951, 961 (9th Cir. 1998) (citing Usher, 828 F.2d at 562); see also Galbraith, 307 F.3d at 1126-27; Cabrera v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998); Freeman, 68 F.3d at 1189.

In Albright, the plurality suggested that the plaintiff in that case might have set forth a proper § 1983 claim had he argued that the state's pretrial deprivations of his personal liberty violated the Fourth Amendment. Id. at 271, 274-75. Albright v. Oliver, 510 U.S. 266 (1994)

In particular, Plaintiff contends that the defendants conspired to, and ultimately did, deprive him of his right to equal protection and to due process of law under the Fourteenth Amendment by intentionally causing Officer Sartain and the City Attorney to bring an unfounded criminal action against him because of animus towards Plaintiff and his political, social, and legal views and statements.

As a consequence of Defendants' actions as aforesaid, Plaintiff has been caused to suffer violation of his personal security and privacy in his person, and has suffered fear, anger, upset, embarrassment, public humiliation, outrage, anxiety, economic loss, inconvenience, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $2,000,000.

### Count IV – Fourth Amendment Violation

Plaintiff, incorporating all of the information contained in the Factual Overview and the First and Second Claims for Relief as if fully set forth herein alleges that the command by Officer Sartain of the Medford Police department, that Plaintiff travel to the Medford City Police Department and submit himself to confinement in a small room for interrogation by Officer Sartain, and be issued a criminal summons and complaint, all at the direction of Costco, the City of Medford, and/or their agents, and without reasonable or probable cause to believe a crime had actually been committed, thus caused Plaintiff to be falsely arrested, unlawfully detained, and falsely imprisoned in violation of his Fourth Amendment rights, and that this arrest was perpetrated by the defendants in retaliation for Plaintiff's exercise of his First Amendment rights against Defendant Costco.

As a consequence of Defendants' actions as aforesaid, Plaintiff has been caused to suffer violation of his personal security and privacy in his person, and has suffered fear, anger, upset, embarrassment, public humiliation, outrage, anxiety, economic loss, inconvenience, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $2,000,000.

////////

## SECOND CLAIM FOR RELIEF – PENDENT STATE LAW CLAIMS

### Count – I, Malicious Prosecution

Plaintiff, incorporating the information in the Factual Overview, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants Costco, Jay Moscatelli, Guy Berry, Peter Otoski, Renee Russell, "Bob" Froschauer, City of Medford, and Officer Sartain, without basis in probable cause, did improperly and illegally conspire to, and actually did, bring a criminal action against Plaintiff without a basis in probable cause, and in bad faith, which criminal action was ultimately terminated in Plaintiff's favor, and that such improper and illegal prosecution of Plaintiff was undertaken willfully, wantonly, and/or with malicious motive.

These acts were part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be denied the equal protection of the laws, and to due process of law, as previously stated. Further, the acts by Defendant City of Medford, and/or its agents were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants City of Medford, and Costco.

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction and/or subversion of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $2,000,000.

### Count – II, Retaliatory Prosecution

Plaintiff, incorporating the information in the Factual Overview, Points and Authorities, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants Costco, Jay Moscatelli, Guy Berry, Peter Otoski, Renee Russell, "Bob" Froschauer, City of Medford, and Officer Sartain, without basis in probable cause, did improperly and illegally conspire to, and actually did, bring a criminal action against Plaintiff, and that such

improper and illegal prosecution of Plaintiff was undertaken willfully, wantonly, and/or with malicious motive.

These acts were part of a systematic and ongoing pattern of events that were calculated by all of the Defendants to retaliate against Plaintiff by causing Plaintiff to be punished for his exercise of free speech against Costco and for planning to petition the courts for redress of grievances relating to Costco and/or its agents, to be denied the equal protection of the laws, and to be deprived of due process of law, as previously stated. Further, Defendants' acts were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants City of Medford, and Costco.

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction and/or subversion of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $2,000,000.

### Count – III, Willful Negligence

Plaintiff, incorporating the information in the Factual Overview, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants negligently, recklessly, and/or willfully in that they violated the Constitution and laws of the United States, and of the State of Oregon in order to improperly deprive Plaintiff of his personal freedom, to defame, harass, oppress, and annoy Plaintiff, and to subject him to retaliatory/malicious prosecution, as well as commit other torts against him as stated herein, knowing full well the likely injury to Plaintiff in so doing.

Plaintiff further alleges that these actions arose from the policy, practice, custom, and resulting willful negligence of the Defendants in failing to establish policies relating to the proper and sufficient training and supervision of Costco managerial staff (in the case of Costco and its defendant agents), City of Medford attorneys, City of Medford assistant attorneys, and City of Medford Police Officers (all in the case of Defendant City of Medford), particularly

regarding reasonable determinations concerning potentially criminal events, civil liability and torts, and instruction in constitutional and statutory laws necessary for officers and/or agents in the field to make informed and proper evaluations of the circumstances under which detention, arrest, seizure, and/or the filing of a criminal complaint are proper, this willful failure being a proximate cause of the injuries suffered by Plaintiff.

See generally Prosser, Law of Torts 842, ? 119 (4th ed 1971): "When a reasonable person would investigate further before beginning the prosecution, he may be liable for a failure to do so." Also see Lampos v. Bazar, Inc., 270 Or 256, 527 P2d 376 (1974): "If defendant had a duty to make a further investigation before having plaintiff arrested, it would follow that in doing so without further investigation defendant acted without probable cause."

As a consequence of Defendants' willfully negligent policies, training, actions, and supervision resulting in the seizure of his person and ultimate criminal prosecution without basis in reasonable suspicion, probable cause, or due process of, law as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $2,000,000.

### Count IV - False Arrest

Plaintiff, incorporating the information in the Factual Overview, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants, acting under color of law, and without warrant, reasonable suspicion, or probable cause, did falsely cause Plaintiff to be detained, arrested, and imprisoned during the detention, interrogation, and issuance of the criminal summons and complaint at the Medford City Hall by Officer Sartain on March 22, 2007.

Further, Defendants' acts were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants City of Medford and Costco, and that this act was part of an ongoing series of acts intended to result in the denial of Plaintiff's rights to

freedom of speech, right to petition the courts for redress of civil grievances, the equal protection of the laws, and to due process of law.

As a consequence of Defendants' false arrest and seizure of his person without basis in reasonable suspicion, probable cause, or due process of law as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction and/or subversion of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $2,000,000.

## Count V - False Imprisonment

Plaintiff, incorporating the information in the Factual Overview, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants without warrant, reasonable suspicion, or probable cause, did detain, arrest, and cause the imprisonment of Plaintiff during issuance of the summons and complaint at the Medford City Hall by Officer Sartain on March 22, 2007.

These acts were also part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be denied the equal protection of the laws, and to due process of law, as previously stated.  Further, Defendants' acts were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants City of Medford and Costco.

As a consequence of Defendants' detention, arrest, and imprisonment of his person without basis in, or due process of, law as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, incurred economic losses, has suffered fear, anger, upset, embarrassment, public humiliation, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of Oregon, and was

executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $2,000,000.

### Count VI – Negligent and/or Willful Infliction of Emotional Distress

Plaintiff, incorporating the information in the Factual Overview, and his First and Second Claims for Relief as if fully set forth herein, alleges that the conduct of Defendants as described was willful, wanton, and/or negligent in that it was undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of Oregon, was executed by abusing a position of authority and control over the Plaintiff, was calculated to cause, and in fact caused, intimidation, humiliation, economic loss, and extreme emotional and psychological pain and distress to Plaintiff, such negligent and/or willful acts being a proximate cause of Plaintiff's damages.

Defendants owe a duty of care to Plaintiff in that they must conform their conduct to the laws of the United States and the State of Oregon, and to not cause harm to Plaintiff by failing to properly investigate and evaluate circumstances before engaging in malicious and/or reckless acts in probable violation of those laws where there is a reasonably foreseeable chance of harm.

See generally Prosser, Law of Torts 842, ? 119 (4th ed 1971): "When a reasonable person would investigate further before beginning the prosecution, he may be liable for a failure to do so." Also see Lampos v. Bazar, Inc., 270 Or 256, 527 P2d 376 (1974): "If defendant had a duty to make a further investigation before having plaintiff arrested, it would follow that in doing so without further investigation defendant acted without probable cause."

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction and/or subversion of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $2,000,000.

### Count VII – Slander/Libel

Plaintiff, incorporating the information in the Overview, Points and Authorities, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants individually, and additionally in conspiracy with one another, did utter false and malicious statements against Plaintiff in furtherance of their plan to deprive Plaintiff of his rights and privileges under the Constitution and laws of the United States and the State of Oregon as aforesaid.  In addition, the Defendants also issued false and malicious statements concerning Plaintiff that had been reduced to writing, and distributed those writings to third parties with the intent that those written falsehoods would cause injury to Plaintiff in one or more particulars as aforesaid.

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction and/or subversion of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $2,000,000.

### Count VIII – Defamation of Character

Plaintiff, incorporating the information in the Overview, Points and Authorities, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants individually, and additionally in conspiracy with one another, did utter false and malicious statements against Plaintiff in furtherance of their plan to deprive Plaintiff of his rights and privileges under the Constitution and laws of the United States and the State of Oregon as aforesaid.  In addition, the Defendants also issued false and malicious statements concerning Plaintiff that had been reduced to writing, and distributed those writings to third parties with the intent that those written falsehoods would cause injury to Plaintiff in one or more particulars as aforesaid.  All of these acts disparaged and defamed Plaintiff's character and reputation.

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, anxiety, public

humiliation, embarrassment, outrage, and extreme emotional and psychological pain and distress to his general and special damage of $207,500.

The conduct of Defendants as aforesaid was willful, wanton, malicious, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of Oregon, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and was calculated to cause the obstruction and/or subversion of justice, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $2,000,000.

**WHEREFORE**, Plaintiff now prays for judgment against Defendants for his damages as specified hereinabove, for his reasonable attorney fees, and for his reasonable costs and disbursements herein.

Respectfully submitted this 20th day of August, 2008

Peter T. Harrell, Plaintiff Pro Se
PO Box 131
Ashland, OR 97520

# EXHIBIT 6

Case 1:08-cv-03092-PA Document 35-1 Filed 08/22/11 Page 1 of 8
Case: 10-35068 03/18/2011 ID: 7668535 DktEntry: 4-1 Page: 1 of 3
Case 2:21-cv-01482-KJM-DMC Document 54 Filed 12/15/21 Page 46 of 166 (1 of 8)

FILED

**NOT FOR PUBLICATION**

MAR 18 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER T. HARRELL, | No. 10-35068 |
| Plaintiff - Appellant, | D.C. No. 1:08-cv-03092-PA |
| v. | |
| COSTCO; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, District Judge, Presiding

Submitted March 8, 2011[**]

Before: FARRIS, O'SCANNLAIN, and BYBEE, Circuit Judges.

Peter T. Harrell appeals pro se from the district court's summary judgment
in his 42 U.S.C. § 1983 action alleging that defendants unlawfully accused him of
theft. We have jurisdiction under 28 U.S.C. § 1291. We review de novo. *Olsen v.
Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). We may affirm on any

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

ground supported by the record, *Thompson v. Paul*, 547 F.3d 1055, 1058-59 (9th Cir. 2008), and we affirm.

The district court properly granted summary judgment on the 42 U.S.C. § 1983 claims because defendants' complaint to the police and execution of the sworn criminal complaint, without more, did not convert them into state actors. *See Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989).

Summary judgment was properly granted on the malicious prosecution claim because Harrell failed to raise a genuine issue of material fact as to whether the prosecutors' decisions were influenced by any information misreported or withheld by defendants. *See Richer v. Poisson*, 903 P.2d 932, 935 (Or. Ct. App. 1995).

Summary judgment was properly granted on the false arrest and false imprisonment claims because Harrell failed to raise a genuine issue of material fact as to whether he was unlawfully confined. *See Hiber v. Creditors Collection Serv. of Lincoln Cnty., Inc.*, 961 P.2d 898, 901 (Or. Ct. App. 1998).

The district court properly granted summary judgment on the slander, libel, and defamation claims because Harrell failed to raise a genuine issue of material fact as to whether defendants' statements were not privileged. *See DeLong v. Yu Enters., Inc.*, 47 P.3d 8, 10 (Or. 2002).

10-35068

The district court properly granted summary judgment on the intentional infliction of emotional distress claim because Harrell failed to raise a genuine issue of material fact as to whether defendants engaged in outrageous conduct. *See House v. Hicks*, 179 P.3d 730, 736-37 (Or. Ct. App. 2008).

The district court properly granted summary judgment on the negligence claims because Harrell failed to raise a genuine issue of material fact as to whether defendants' conduct "foreseeably pose[d] an unreasonable risk of harm" to him. *Cain v. Rijken*, 717 P.2d 140, 145 (Or. 1986).

We are unpersuaded by Harrell's remaining contentions, including his contention that the district court abused its discretion by denying him further discovery.

Harrell's "Objection and Motion to Strike" is granted in part as to pages 141-42 of the supplemental excerpts of record and footnotes 4-5 on page 23 of the answering brief. The "Objection and Motion to Strike" is otherwise denied.

**AFFIRMED.**

3                                                        10-35068

Case 1:08-cv-03092-PA Document 95-1 Filed 08/22/11 Page 4 of 8
Case 2:01-cv-03748/2019 Document 063835 LteDewWay/41-2 Page 49 of 5 (4 of 8)
Case 2:21-cv-01482-KJM-DMC   Document 54   Filed 12/15/21   Page 49 of 166

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings
(December 2009)

**Judgment**
- •     This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- •     The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- •     A party should seek panel rehearing only if one or more of the following grounds exist:
  - ►     A material point of fact or law was overlooked in the decision;
  - ►     A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ►     An apparent conflict with another decision of the Court was not addressed in the opinion.
- •     Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- •     A party should seek en banc rehearing only if one or more of the following grounds exist:

> ►    Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
> ►    The proceeding involves a question of exceptional importance; or
> ►    The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)**    **Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3)**    **Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)**    **Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at   under *Forms*.
- You may file a petition electronically via the appellate ECF system.  No paper copies are required unless the Court orders otherwise.  If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper.  No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at   under *Forms*.

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at  under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► West Publishing Company; 610 Opperman Drive; PO Box  64526; St. Paul, MN 55164-0526 (Attn: Kathy Blesener, Senior Editor);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** Case 3:21-cv-01482-KJM-DMC Document 54 Filed 12/15/21 PageID 52 of 166 *(Rev. 12-1-09)*

# United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[blank field] v. [blank field] 9th Cir. No. [blank field]

The Clerk is requested to tax the following costs against: [blank field]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| Excerpt of Record | | | $ | $ | | | $ | $ |
| Opening Brief | | | $ | $ | | | $ | $ |
| Answering Brief | | | $ | $ | | | $ | $ |
| Reply Brief | | | $ | $ | | | $ | $ |
| Other** | | | $ | $ | | | $ | $ |
| | | | TOTAL: | $ | | | TOTAL: | $ |

\* Costs per page may not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* Other: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page.*

**Form 10. Bill of Costs Continued**

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                    ]

Name of Counsel: [                    ]

Attorney for: [                    ]

---

(To Be Completed by the Clerk)

Date [                    ]          Costs are taxed in the amount of $ [                    ]

Clerk of Court

By: [                    ] , Deputy Clerk

# EXHIBIT 7




Kimberly R. Olson, Pro Se
PO Box 1731
Yreka, CA 96097

SEP 1 6 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIMBERLY R. OLSON,** | )  **2:06 - CV - 2064 WCE/MKPS** |
| Plaintiff, | ) Case No. |
| vs. | ) **COMPLAINT** |
| **ADAM ORECK, CHRIS SCHACK,** | ) |
| **RICK RIGGINS, SISKIYOU** | ) **Action at Law for Civil Rights Violations** |
| **COUNTY SHERIFF'S DEPT.,** | ) (Jury Trial Requested) |
| **GREGORY WESTON, MARK** | ) |
| **MONTGOMERY, AND JOHN** | ) |
| **DOES 1-5** | ) |
| Defendants. | ) |

Plaintiff alleges:

## JURISDICTION

Jurisdiction over this action arises pursuant to Section 1343 of Title 28 of the United States Code, as an action arising under the Constitution and laws of the United States, specifically Amendments 4 and 14 of the United States Constitution, and sections 1983, 1985, and 1988 of Title 42 of the United States Code, as an action seeking redress of grievances for violations of rights secured to Plaintiff by the Constitution of the United States. Pendent jurisdiction is asserted over Plaintiff's state law claims for relief.

Complaint - 1

1.

At all times material, Defendant Adam Oreck was an officer, employee, and agent of Siskiyou County Sheriff's Department and Siskiyou County, and was acting under the color of law and of his office as a Deputy Sheriff and Detective.

At all times material, Defendant Chris Schack was an officer, employee, and agent of Siskiyou County Sheriff's Department and Siskiyou County, and was acting under the color of law and of his office as a Deputy Sheriff and Detective.

At all times material, Defendant Rick Riggins was an officer, employee, and agent of Siskiyou County Sheriff's Department and Siskiyou County, and was acting under the color of law and of his office as Sheriff of Siskiyou county, and the direct supervisor of Defendants Oreck and Schack.

At all times material, Defendant Gregory Weston was an officer, employee, and agent of the Siskiyou County District Attorney's Office, and was acting under the color of law and of his office as an assistant district attorney.  Since the acts by Weston as outlined in this Complaint were taken by him after the dismissal of any criminal case he may have been advocating for, were part of the conspiracy with other named defendants to interfere with and deprive Plaintiff of her Constitutional rights, and/or were taken in violation of a direct order of the Superior Court, Weston's acts are not covered by prosecutorial immunity.

At all times material, Defendant Mark Montgomery was an officer, employee, and agent of the Federal Bureau of Investigation, and was acting under the color of law and of his office as a Special Agent.

John Doe defendants are actors, agents, co-conspirators, and/or officers of the other named defendants whose identity and capacities are unknown to Plaintiff at this time, but who will be named as soon as this information becomes available to Plaintiff.

At all times material, Defendant Siskiyou County Sheriff's Department was a law enforcement agency, and a department and entity operating within Siskiyou County, within the State of California. Suit is brought against this agency pursuant to Streit v. County of Los Angeles, 236 F.3d 552, 236 F.3d 552 (9th Cir. 01/12/2001).

All natural person defendants, in addition to having suit brought against them in their official capacity, are also sued as individuals for the torts set forth herein.

2.

At all times material, Plaintiff was a citizen of the United States, and the State of California and subject to their jurisdiction.

**OVERVIEW**

Plaintiff contends:

Plaintiff Kimberly R. Olson is a disabled adult within the meaning of State and Federal law. Plaintiff became disabled as a result of injuries sustained in a car accident as a teenager, and subsequent numerous spinal surgeries. As a result of these injuries and surgeries, Plaintiff suffers extremely limited mobility, chronic and severe episodes of muscle spasticity, chronic pain, and depression. In order to provide for her personal care and other necessities of life, Plaintiff, during the period relevant to this Complaint, had contracted with Peter Harrell to provide in-home care and assistance to her in exchange for his room and board during those times he was present in Yreka to attend school at the local college.

On or about October 28, 2004, Defendants Adam Oreck and Chris Schack arrived at Plaintiff's abode, located at 6431 Old Hwy. 99, #50, in Yreka, CA, County of Siskiyou with a purported legal warrant to search the premises. Plaintiff, although not named anywhere in the warrant, or in the supporting affidavit, was not allowed to leave the residence.

The defendants searched everywhere and everything in the home without regard to any limitations imposed by the warrant, legal authority, probable cause, or who may have owned the property subject to their ministrations, and seized items of Plaintiff's personal property that were

not even described in the illegal, general warrant.  Much property belonging to Plaintiff's caregiver, Peter Harrell was also searched and seized.  Although some of the property seized clearly belonged to Plaintiff Olson, and indeed, this is even noted at one place on the search warrant receipt, only Harrell was asked by the defendants to sign the search warrant receipt, or given a receipt for the items seized by the defendants.

On March 30, 2005, in the Superior Court of California, Siskiyou County case #MCYKCRF 04 (the State action against Harrell arising as a result of the fruits of the search warrant) was dismissed by motion of the People of the State of California.

On April 22, 2005, Peter Harrell filed a motion regarding the October 28, 2004 search and seizure to "traverse/quash search warrant and for return of property illegally seized" in Siskiyou County Superior Court case MCYKCRF 04-2507.  This motion was granted on May 11, 2005 by Judge Roger Kosel of the Superior Court, County of Siskiyou pursuant to Penal Code section 1538.5.

Rather than obey the order of the Court, Defendants Weston, Schack, John Does, and Montgomery conspired to illegally transfer physical custody of the seized property via a subpoena to Defendant Montgomery for transport to a Sacramento holding facility, thus attempting to deprive the State Court of any further jurisdiction, while also depriving the Plaintiff and Harrell of the property that had been ordered returned.

Harrell subsequently filed in the United States District Court, Eastern District of California, a FRCrimP 41(e) motion for return of this property in case CIV S-05-1784 DFL CMK, which morphed into a motion to suppress when an indictment was issued six months later against Harrell (case number CR S-05-475 LKK).  Finding that the affidavit and warrant did not meet constitutional standards, and that no reasonable reliance upon the warrant could have been made by the officers, Federal Judge Lawrence K. Karlton granted the motion to suppress on July 25, 2006.

### FIRST CLAIM FOR RELIEF

**(Violation of Civil Rights, 42 U.S.C.  Section 1983)**

**Count - I**

**Fourth Amendment Violations**

3.

On or about October 28, 2004, in Yreka, California, Defendants Adam Oreck and Chris Schack, acting under color of law in their positions as Detectives with the Siskiyou County Sheriff's Department, without a proper, legal, warrant or any reasonable basis in probable cause, did search Plaintiff's home and effects, and cause the seizure and imprisonment of Plaintiff. During this process, Plaintiff's effects were searched without Plaintiff's consent, and several personal items illegally seized.

Further, the acts of Defendants Oreck and Schack as aforesaid were the result of, and in furtherance of, a policy, practice or custom endorsed and promulgated by these Defendants, as well as Rick Riggins, and Siskiyou County Sheriff's Department. It is also alleged that these defendants recklessly, negligently and/or willfully failed to properly train and supervise Defendants Oreck and Schack, and that this failure to properly train and supervise these defendants was a proximate cause of the injuries suffered by the Plaintiff.

4.

The seizure of Plaintiff's person, the subsequent search of her person and effects, and the subsequent seizure of her personal items, absent legal warrant or probable cause to believe she had committed a crime, was unreasonable, and reckless, and thereby violated Plaintiff's rights as secured to her under the Constitution and laws of the United States not to have her property and person subjected to unreasonable searches and seizures.

5.

As a consequence of Defendants' seizures as aforesaid, Plaintiff has been caused to suffer violation of her personal security and privacy in her effects, and has suffered fear, anger, upset, embarrassment, outrage, economic loss, and extreme emotional, physical, and psychological pain

and distress to her general and special damage of $225,000.

6.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and the State of California, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $500,000.

**Count - II**

**Fourteenth Amendment Violations**

7.

Incorporating the information set forth in the Overview and Count I as if fully set forth herein, Plaintiff alleges that the arrest and/or seizure of Plaintiff by Defendants Oreck and Schack, seizure of Plaintiff's effects (and later "re-seizure" by Defendant Montgomery), and the subsequent search of her and effects, absent proper, legal warrant or probable cause to believe she had committed a crime, was willful, reckless, unreasonable, deliberately indifferent to plaintiff's Constitutional Rights, and thereby violated Plaintiff's rights as secured to her under the Constitution and laws of the United States, and the State of California not to have her property and person subjected to searches and seizures without due process of law.

The acts and actions of the all of the Defendants in conspiring to deprive Plaintiff of her rights to due process and equal protection of the laws relating to the seizure and search of her property, and actually attempting to circumvent the lawful orders of a Superior Court judge relating to the return of property by transferring property via a "subpoena" to the custody of Defendant Montgomery, deprived Plaintiff of her right not to be deprived of her property without due process of law, and to the equal protection of the laws.

Further, the acts of Defendants Oreck and Schack, and later Schack and Weston, were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Rick Riggins, Gregory Weston, and the Siskiyou County Sheriff's Department. It is also alleged that defendants Rick Riggins and Siskiyou County Sheriff's Department recklessly, negligently and/or willfully failed to properly train and supervise Defendants Oreck and Schack, and that this failure to properly train and supervise these defendants was a proximate cause of the injuries suffered by the Plaintiff.

8.

As a consequence of Defendants' unreasonable search and seizure of Plaintiff and Plaintiff's property without due process as aforesaid, the conspiracy by the defendant's to deny and interfere with Plaintiff's Constitutional rights as aforesaid, Plaintiff has been caused to suffer violation of her privacy and personal security, has suffered fear, anger, upset, embarrassment, outrage, economic loss, and extreme emotional, physical, and psychological pain and distress to her general and special damage of $225,000.

9.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution of the United States, and the State of California, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $500,000.

10.

This claim for relief seeks redress for violation under color of law of rights secured to Plaintiff by the Constitution of the United States, and Plaintiff is thereby entitled, upon prevailing in any particular in this claim for relief, to recover of Defendants, pursuant to 42

U.S.C section 1988 her reasonable costs, disbursements, and attorney fees upon this claim for relief.

## SECOND CLAIM FOR RELIEF

### ( State Law Pendent Claims )

### Count I –Willful Negligence

11.

Plaintiff, incorporating the information in her first claim for relief as if fully set forth herein, does hereby allege that Defendants negligently, recklessly, and willfully violated the Constitution and laws of the United States, and of the State of California in order to improperly deprive Plaintiff of her personal freedom, to deprive her of her rights under the Constitution and laws of the United States and the State of California, to seize her person and personal property, and to inflict physical, emotional, and psychological injury upon her.

Plaintiff further alleges that these actions arose from the policy, practice, custom, and willful negligence of the Defendants in failing to establish policies and practices, or having inadequate policies and practices, relating to the proper and sufficient training and supervision of Deputy Sheriffs and Detectives, particularly regarding instruction in constitutional and statutory laws necessary for officers in the field to make informed and proper evaluations of the circumstances under which arrest and seizure are proper, this reckless and/or willful failure being a proximate cause of the injuries suffered by Plaintiff.

12.

As a consequence of Defendants' willfully negligent acts, policies, training, and/or supervision resulting in the seizure of her person and property, and deprivation of due process of law as aforesaid, Plaintiff has been caused to suffer violation of her privacy and personal security, has suffered physical injury, fear, anger, upset, embarrassment, outrage, economic loss,

and extreme emotional, physical, and psychological pain and distress to her general and special damage of $125,000.

13.

The conduct of Defendants as aforesaid was willful, wanton, reckless, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $375,000.

### Count II - False Arrest

14.

Plaintiff, incorporating the information in her first and second claims for relief, does hereby allege that on or about October 27, 2004, in Yreka, California, Defendants Oreck and Schack, acting under color of law in their position as Detectives with the Siskiyou County Sheriff's Department, without proper, legal warrant or basis in probable cause, did arrest and cause the imprisonment of Plaintiff. During this process, Plaintiff's person and effects were searched and seized without proper, legal warrant and without Plaintiff's consent. As Plaintiff was detained during the search and seizure of her property, and was not free to leave, she suffered arrest at the hands of these defendants without warrant or probable cause to believe she had committed any crime.

Further, the acts of Defendants Oreck and Schack as aforesaid were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Rick Riggins, and Siskiyou County Sheriff's Department.

15.

As a consequence of Defendants' seizure of her person without basis in, or due process of, law as aforesaid, Plaintiff has been caused to suffer violation of her privacy and personal security, has suffered fear, anger, upset, embarrassment, outrage, and extreme emotional, physical, and psychological pain and distress to her general and special damage of $50,000.

16.

The conduct of Defendants as aforesaid was willful, wanton, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $175,000.

### Count III - False Imprisonment
17.

Plaintiff, incorporating the information in her first and second claim for relief, does hereby allege that on or about October 28, 2005, in Yreka, California, Defendants Oreck and Schack, acting under color of law of their position as Detectives with the Siskiyou County Sheriff's Department, without proper, legal warrant or probable cause, did arrest and cause the imprisonment of Plaintiff within her residence during the entire period of time during which these defendants searched and seized Plaintiff's effects and home.

Further, Defendants' acts as aforesaid were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Siskiyou County Sheriff's Department and Rick Riggins.

18.

As a consequence of Defendants' imprisonment of her person without basis in, or due process of, law as aforesaid, Plaintiff has been caused to suffer violation of her privacy and personal security, incurred economic losses, has suffered fear, anger, upset, embarrassment, outrage, and extreme emotional, physical, and psychological pain and distress to her general and special damage of $50,000.

19.

The conduct of Defendants as aforesaid was willful, wanton, reckless, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $275,000.

## Count V
### Negligent and/or Willful Infliction of Emotional Distress

23.

The conduct of Defendants as described in Plaintiff's First and Second Claims for Relief was willful, wanton, reckless, and/or negligent in that it was undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, was executed by abusing a position of authority and control over the Plaintiff, was calculated to cause, and in fact caused, intimidation, physical injury and pain, and extreme emotional and psychological pain and distress to Plaintiff.

24.

As a consequence of Defendants' negligent and/or willful infliction of emotional distress as aforesaid, Plaintiff has been caused to suffer violation of her privacy and personal security, incurred economic losses, has suffered fear, anger, upset, embarrassment, outrage, and extreme emotional and psychological pain and distress to her general and special damage of $125,000.

25.

The conduct of Defendants as aforesaid was willful, wanton, reckless, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause, and in fact causing, intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $300,000.

WHEREFORE, plaintiff now prays for Judgment against Defendants as specified hereinabove, and for her reasonable attorney's fees pursuant to her First and Second Claims for Relief, and for her reasonable cost and disbursements herein.

Dated this _12th_ day of _September_ 2006

Kimberly R. Olson, Plaintiff Pro Se

# EXHIBIT 8

**FILED**

MAY  **3** 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

Peter T. Harrell, Pro Se
C/o PO Box 1731
Yreka, CA 96097

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PETER T. HARRELL,** | ) |
| Plaintiff, | ) Case No. CVS 07- 847 LEB JFm  PS |
| vs. | ) **COMPLAINT** |
| **ADAM ORECK, CHRIS SCHACK,** | ) **Action at Law for Civil Rights Violations** |
| **RICK RIGGINS, RANDY BIGLER,** | ) |
| **SISKIYOU COUNTY SHERIFF'S** | ) (Jury Trial Requested) |
| **DEPT., GREGORY WESTON,** | ) |
| **MARK MONTGOMERY, AND** | ) |
| **JOHN DOES 1-5** | ) |
| Defendants. | ) |

Plaintiff alleges:

## JURISDICTION

Jurisdiction over this action arises pursuant to Section 1343 of Title 28 of the United

States Code, as an action arising under the Constitution and laws of the United States,

specifically Amendments 4 and 14 of the United States Constitution, and sections 1983 and 1988

of Title 42 of the United States Code, as an action seeking redress of grievances for violations of

rights secured to Plaintiff by the Constitution of the United States. Pendent jurisdiction is

asserted over Plaintiff's state law claims for relief.

1.

At all times material, Defendant Adam Oreck was an officer, employee, and agent of

Siskiyou County Sheriff's Department and Siskiyou County, as well as an individual citizen of

the State of California, and was acting under the color of law and of his office as a Deputy Sheriff and Detective.

At all times material, Defendant Chris Schack was an officer, employee, and agent of Siskiyou County Sheriff's Department and Siskiyou County, as well as an individual citizen of the State of California, and was acting under the color of law and of his office as a Deputy Sheriff and Detective.

At all times material, Defendant Rick Riggins was an officer, employee, and agent of Siskiyou County Sheriff's Department and Siskiyou County, and was acting under the color of law and of his office as Sheriff of Siskiyou county, and the direct supervisor of Defendants Oreck and Schack.

At all times material, Defendant Randy Bigler was an officer, employee, and agent of Siskiyou County Sheriff's Department and Siskiyou County, as well as an individual citizen of the State of California, and was acting under the color of law and of his office as a Deputy Sheriff and Detective Sergeant of Siskiyou county, and as a supervisor of Defendants Oreck and Schack.

At all times material, Defendant Gregory Weston was an officer, employee, and agent of the Siskiyou County District Attorney's Office, as well as an individual citizen of the State of California, and was acting under the color of law and of his office as an assistant district attorney. Since the acts by Weston as outlined in the Complaint were taken by him after the dismissal of any criminal case he may have been advocating for, occurred while there was no criminal action pending against the Plaintiff, and were additionally taken in violation of a direct order of the Superior Court, Weston's acts are not covered by prosecutorial immunity.

At all times material, Defendant Mark Montgomery was an officer, employee, and agent of the Federal Bureau of Investigation, as well as an individual citizen of the State of California, and was acting under the color of law and of his office as a Special Agent.

John Doe defendants are actors, agents, co-conspirators, and/or officers of the other named defendants whose identity and capacities are unknown to Plaintiff at this time, but who will be named as soon as this information becomes available to Plaintiff.

At all times material, Defendant Siskiyou County Sheriff's Department was a law enforcement agency, and a department and entity operating within Siskiyou County, within the State of California. Suit is brought against this agency pursuant to Streit v. County of Los Angeles, 236 F.3d 552, 236 F.3d 552 (9th Cir. 01/12/2001).

All natural person defendants, in addition to having suit brought against them in their official capacity, are also sued as individuals for the torts set forth herein.

2.

At all times material, Plaintiff was a citizen of the United States, and the State of Oregon and subject to their jurisdiction.

**OVERVIEW**

Plaintiff contends:

Kimberly R. Olson is a disabled adult within the meaning of State and Federal law. Ms. Olson became disabled as a result of injuries sustained in a car accident as a teenager, and subsequent numerous spinal surgeries. As a result of these injuries and surgeries, she suffers extremely limited mobility, chronic and severe episodes of muscle spasticity, chronic pain, and depression. In order to provide for her personal care and other necessities of life, Ms. Olson, during the period relevant to this Complaint, had contracted with Plaintiff Peter Harrell to provide in-home care and assistance to her in exchange for his room and board during those times he was present in Yreka to attend school at the local college.

On or about October 28, 2004, Defendants Adam Oreck and Chris Schack arrived at Ms. Olson's abode, located at 6431 Old Hwy. 99, #50, in Yreka, CA, County of Siskiyou with a purported legal warrant to search the premises. Although there was no information in the warrant or supporting affidavit linking Plaintiff to this particular residence, and no arrest warrant for Plaintiff was ever proffered by Oreck and Schack, Plaintiff was not allowed to leave the residence.

The defendants searched everywhere and everything in the home without regard to any limitations imposed by the warrant, legal authority, probable cause, or who may have owned the property subject to their ministrations, and seized items of Plaintiff's personal property that were not even described in the illegal, general warrant. Much property belonging to Plaintiff's charge, Ms. Olson, was also searched and seized. Although some of the property seized clearly belonged to Olson, and indeed, this is even noted at one place on the search warrant receipt, only Harrell was asked by the Defendants to sign the search warrant receipt, or given a receipt for the items seized by the defendants.

On March 30, 2005, in the Superior Court of California, Siskiyou County case #MCYKCRF 04-2507 (the State action against Harrell arising as a result of the fruits of the search warrant) was dismissed by motion of the People of the State of California.

On April 22, 2005, Plaintiff Peter Harrell filed a motion regarding the October 28, 2004 search and seizure to "traverse/quash search warrant and for return of property illegally seized" in Siskiyou County Superior Court case MCYKCRF 04-2507. This motion was granted on May 11, 2005 by Judge Roger Kosel of the Superior Court, County of Siskiyou pursuant to Penal Code section 1538.5.

Rather than obey the order of the Court, Defendants Weston, Bigler, Schack, John Does, and Montgomery conspired to illegally evade the order of Judge Kosel, and instead transfer physical custody of the seized property via an improper subpoena to Defendant Montgomery for transport to a Sacramento holding facility, thus attempting to deprive the State Court of any further jurisdiction, while also depriving the Plaintiff Harrell of the property that had been ordered returned. The actual transfer of Plaintiff's property in violation of the State Court's

Order, and without due process of law, was accomplished by Defendants Schack and Montgomery on or about May 23rd, 2005. Plaintiff notes that the acts by the Defendants in this instance may indicate conspiracy to abuse, and actual abuse of the Grand Jury process, as well as other, potentially criminal acts. Plaintiff further notes that subpoenas are not warrants, and do not authorize the search and seizure of property.

Harrell subsequently filed in the United States District Court, Eastern District of California, a FRCrimP 41(e) motion for return of this property in case CIV S-05-1784 DFL CMK, which morphed into a motion to suppress when an indictment was issued six months later against Harrell (case number CR S-05-475 LKK). In December of 2005, Plaintiff was again arrested on the basis of the actions of the Defendants, this time being held without any hearing or other process for a period of approximately five days while being transported to Sacramento, at which time he was finally arraigned in U. S. District Court, and released.

Finding that the affidavit and warrant did not meet constitutional standards, and that no reasonable reliance upon the warrant could have been made by the officers, Federal Judge Lawrence K. Karlton granted the motion to suppress in case CR S-05-475 LKK on July 25, 2006, and dismissed the indictment against Plaintiff on December 6, 2006.

Because the motion to suppress in CR S-05-475 LKK (and the Plaintiff's Reply to the government's Opposition to that motion) contains arguments of law, statements of fact, and exhibits relative to, and supportive of, this Complaint, Plaintiff requests judicial notice of, and incorporates his motion to suppress in that case, and his reply to the opposition of that motion, as if fully set forth herein.

Plaintiff duly noticed the governmental entity Defendants of his pending claims against them as required by the California Government Code, and additionally submitted a supplemental claim to them on or about May 1, 2007, encompassing additional tortuous acts and damages by the Defendants occurring after the first notice.

## FIRST CLAIM FOR RELIEF

### (Violation of Civil Rights, 42 U.S.C. Section 1983)

**(Conspiracy to Violate Civil Rights, and/or Deprive Plaintiff of Civil Rights)**

**Count - I**

**Fourth Amendment Violations**

3.

Plaintiff, incorporating the information set forth in the Overview, and in his First and Second claim for relief as if fully set forth herein, does allege that on or about October 28, 2004, in Yreka, California, Defendants Adam Oreck and Chris Schack, acting under color of law in their positions as Detectives with the Siskiyou County Sheriff's Department acting with negligence, willful negligence, reckless disregard for the truth, without a proper, legal warrant or any reasonable basis in probable cause, did search Plaintiff's effects, did search an area in which he had a reasonable expectation of privacy, and cause the seizure and imprisonment of Plaintiff. During this process, Plaintiff's effects were searched without Plaintiff's consent, and several personal items illegally seized.

Further, the acts of Defendants Oreck and Schack as aforesaid were the result of, and in furtherance of, a policy, practice or custom endorsed and promulgated by these Defendants, as well as Rick Riggins, Randy Bigler, and Siskiyou County Sheriff's Department. It is also alleged that these defendants recklessly, negligently and/or willfully failed to properly train and supervise Defendants Oreck and Schack, and that this failure to properly train and supervise these defendants was a proximate cause of the injuries suffered by the Plaintiff.

4.

The seizure of Plaintiff's person, the subsequent search of his person and effects, and the subsequent seizure of his personal items, absent a proper, legal warrant based upon complete and truthful facts, or probable cause to believe he had committed a crime, was in furtherance of and the fruit of a conspiracy between several of the Defendants to violate Plaintiff's Constitutional rights as more fully described throughout this Complaint, was unreasonable, negligent, willfully

negligent, and reckless, and thereby violated Plaintiff's rights as secured to him under the Constitution and laws of the United States not to have his property and person subjected to unreasonable searches and seizures.

5.

As a consequence of Defendants' seizures as aforesaid, Plaintiff has been caused to suffer violation of his personal security and privacy in his effects, and has suffered fear, anger, upset, embarrassment, outrage, humiliation before the community, economic loss, and extreme emotional, physical, and psychological pain and distress to his general and special damage of $250,000.

6.

The conduct of Defendants as aforesaid was willful, wanton, reckless, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and the State of California, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $750,000.

### Count - II

### Fourteenth Amendment Violations

7.

Incorporating the information set forth in the Overview and his First and Second Claims for Relief as if fully set forth herein, Plaintiff alleges that the arrests and/or seizures of Plaintiff by Defendants Oreck and Schack, seizure of Plaintiff's effects (and later illegal "re-seizure" by Defendant Montgomery pursuant to a subpoena as a result of the conspiracy of the Defendants to violate Plaintiff's civil rights), and the subsequent searches of his and effects, absent proper, legal warrant or probable cause to believe he had committed a crime, was willful, wanton,

reckless, negligent, willfully negligent, unreasonable, and deliberately indifferent to plaintiff's Constitutional Rights, and thereby violated Plaintiff's rights as secured to him under the Constitution and laws of the United States, and the State of California not to have his property and person subjected to searches and seizures without due process of law, and to be free of conspiracies by these Defendants to violate his rights as aforesaid.

The acts and actions of the all of the Defendants in conspiring to, and actually acting in furtherance of a plan to circumvent the lawful orders of a Superior Court judge relating to the return of property, by misusing the Grand Jury process, by improperly and illegally using a subpoena to search and seize Plaintiff's property, and otherwise conspiring to violate the due process and equal protection rights of Plaintiff, deprived Plaintiff of his right not to be deprived of his property without due process of law, and to the equal protection of the laws.

Further, the acts of Defendants Oreck and Schack were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Rick Riggins, Randy Bigler, Gregory Weston, and the Siskiyou County Sheriff's Department. It is also alleged that these defendants recklessly, negligently and/or willfully failed to properly train and supervise Defendants Oreck and Schack, and that this failure to properly train and supervise these defendants was a proximate cause of the injuries suffered by the Plaintiff.

8.

As a consequence of Defendants' unreasonable searches and seizures of Plaintiff and Plaintiff's property without due process as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, embarrassment, outrage, economic loss, humiliation before the community, and extreme emotional, physical, and psychological pain and distress to his general and special damage of \$275,000.

9.

The conduct of Defendants as aforesaid was willful, wanton, reckless, negligent, willfully negligent, deliberately indifferent to plaintiff's Constitutional Rights, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution of the United States, and the State of California, and Plaintiff is thereby entitled to recover of Defendants, and each of them, punitive damages in the sum of $500,000.

10.

This claim for relief seeks redress for violation under color of law of rights secured to Plaintiff by the Constitution of the United States, and Plaintiff is thereby entitled, upon prevailing in any particular in this claim for relief, to recover of Defendants, pursuant to 42 U.S.C section 1988 his reasonable costs, disbursements, and attorney fees upon this claim for relief.

## SECOND CLAIM FOR RELIEF

### ( State Law Pendent Claims )

### Count I – Willful Negligence, Negligence

11.

Plaintiff, incorporating the information in his first claim for relief as if fully set forth herein, does hereby allege that Defendants negligently, recklessly, and willfully violated the Constitution and laws of the United States, and of the State of California in order to improperly deprive Plaintiff of his personal freedom, to deprive him of his rights under the Constitution and laws of the United States, and of the State of California, to seize his person and personal property, and to inflict physical, emotional, and psychological injury upon him.

Plaintiff further alleges that these actions arose from the policy, practice, custom, and willful negligence of the Defendants in failing to establish policies and practices, or having inadequate policies and practices, relating to the proper and sufficient training and supervision of Deputy Sheriffs and Detectives, particularly regarding instruction in constitutional and statutory

Complaint - 9

laws necessary for officers in the field to make informed and proper evaluations of the circumstances under which applications for search warrants, arrest, seizure, and prosecution of criminal charges are proper, and the proper content of such applications, this reckless and/or willful failure being a proximate cause of the injuries suffered by Plaintiff.

12.

As a consequence of Defendants' willfully negligent acts, policies, training, and/or supervision resulting in the seizure of his person and property, and deprivation of due process of law as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered physical injury, fear, anger, upset, embarrassment, outrage, economic loss, humiliation before the community, and extreme emotional, physical, and psychological pain and distress to his general and special damage of \$250,000.

13.

The conduct of Defendants as aforesaid was willful, wanton, reckless, and undertaken by them with reckless disregard and wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause intimidation, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of \$375,000.

## Count II - False Arrest

14.

Plaintiff, incorporating the information in his first and second claims for relief, does hereby allege that on or about October 27, 2004, in Yreka, California, Defendants Orcck and Schack, acting under color of law in their position as Detectives with the Siskiyou County

Complaint - 10

Sheriff's Department, without proper, legal warrant or basis in probable cause, did arrest and cause the imprisonment of Plaintiff. During this process, Plaintiff's person and effects were searched and seized without proper, legal warrant and without Plaintiff's consent. As Plaintiff was detained during the search and seizure of his property, and was not free to leave, he suffered arrest at the hands of these defendants without warrant or probable cause to believe he had committed any crime.

Plaintiff was again subject to false arrest as a result of the acts and actions of Defendants in December of 2005 arising from the actions of Defendants Oreck, Schack, Riggins, Bigler, and Does in filing information in the search warrant and charging request affidavit that was made with reckless disregard for the truth, was false, and/or by withholding crucial information from the search warrant and/or charging request that bore on the issue of probable cause and would have tended to exonerate Plaintiff of any claimed criminal activity. Additionally, while knowing of the omitted, false, and exonerating information regarding Plaintiff as described above, these Defendants did conspire, along with Defendant Weston, to circumvent the lawful orders of a Superior Court Judge, to abuse the Grand Jury process, and to illegally transfer Plaintiff's property via a subpoena to another jurisdiction in order to deprive Plaintiff of his rights to due process and equal protection of the laws, and in order to maliciously prosecute him in that other jurisdiction. All of these acts denied Plaintiff's rights to due process of law, and to equal protection of the laws, and his right to be free of malicious and baseless prosecutions. These acts were also in furtherance of, and the fruits of, the participating Defendants' plan to deny Plaintiff the due process of law and equal protection of the laws as aforesaid.

Further, the acts of Defendants Oreck and Schack as aforesaid were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Rick

Riggins, Randy Bigler, and Siskiyou County Sheriff's Department.

15.

As a consequence of Defendants' seizure of his person without basis in, or due process of, law as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, has suffered fear, anger, upset, embarrassment, outrage, and extreme emotional, physical, and psychological pain and distress to his general and special damage of $250,000.

16.

The conduct of Defendants as aforesaid was willful, wanton, negligent, willfully negligent, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause, and in fact causing, economic harm, social harm, intimidation, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $275,000.

## Count III - False Imprisonment
17.

Plaintiff, incorporating the information in his first and second claim for relief, does hereby allege that on or about October 28, 2005, in Yreka, California, Defendants Oreck and Schack, acting under color of law of their position as Detectives with the Siskiyou County Sheriff's Department, without proper, legal warrant or probable cause, did arrest and cause the imprisonment of Plaintiff within the residence of Kimberly Olson during the entire period of time during which these defendants searched and seized Plaintiff's effects. Plaintiff was again falsely imprisoned on 12/22/04 as a result of the actions of Defendants Oreck, Schack, Riggins,

Bigler, and Does in filing information in the search warrant and charging request affidavit that was made with reckless disregard for the truth, was false, and/or by withholding crucial information from the search warrant and or charging request that bore on the issue of probable cause and would have tended to exonerate Plaintiff of any claimed criminal activity.

Further, Defendants' acts as aforesaid were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Oreck, Bigler, Siskiyou County, Siskiyou County Sheriff's Department and/or Rick Riggins.

18.

As a consequence of Defendants' imprisonment of his person without basis in, or due process of, law as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, incurred economic losses, has suffered fear, anger, upset, embarrassment, outrage, humiliation before the community, and extreme emotional, physical, and psychological pain and distress to his general and special damage of \$250,000.

19.

The conduct of Defendants as aforesaid was willful, wanton, reckless, negligent, willfully negligent, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause, and in fact causing, economic harm, social harm, intimidation, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of \$375,000.

## Count V
### Negligent and/or Willful Infliction of Emotional Distress

23.

Complaint - 13

The conduct of Defendants as described in Plaintiff's First and Second Claims for Relief was willful, wanton, reckless, negligent, and/or willfully negligent in that it was undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, was executed by abusing a position of authority and control over the Plaintiff, was calculated to cause, and in fact caused, intimidation, embarrassment, humiliation before the community, and extreme emotional and psychological pain and distress to Plaintiff.

24.

As a consequence of Defendants' reckless, negligent and/or willful infliction of emotional distress as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, incurred economic losses, has suffered fear, anger, upset, embarrassment, outrage, humiliation before the community, and extreme emotional and psychological pain and distress to his general and special damage of $250,000.

25.

The conduct of Defendants as aforesaid was willful, wanton, reckless, negligent, willfully negligent, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause, and in fact causing, economic harm, social harm, intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $350,000.

## Count VI

### Malicious Prosecution

26.

Plaintiff, incorporating the information in his first and second claim for relief as if fully set forth, does hereby allege that in January, 2005, in Yreka, California, Defendants Oreck and Schack, acting under color of law of their position as Detectives with the Siskiyou County Sheriff's Department, without proper, legal warrant or probable cause, did file a charging request containing false information, and/or information presented with reckless disregard for the truth, and that withheld crucial information that would tend to exonerate Plaintiff of any alleged criminal activity in order to falsely and maliciously prosecute Plaintiff. As a result of these acts, Plaintiff was in fact subject to malicious prosecution in absence of probable cause. Plaintiff was again subject to malicious prosecution as a result of the acts and actions of Defendants in December of 2005 as a result of the actions of Defendants Oreck, Schack, Riggins, Bigler, and Does in filing information in the search warrant and charging request affidavit that was made with reckless disregard for the truth, was false, and/or by withholding crucial information from the search warrant and/or charging request that bore on the issue of probable cause and would have tended to exonerate Plaintiff of any claimed criminal activity. Additionally, while knowing of the omitted, false, and exonerating information regarding Plaintiff as described above, these Defendants did conspire, along with Defendant Weston, to circumvent the lawful orders of a Superior Court Judge, to abuse the Grand Jury process, and to illegally transfer Plaintiff's property via a subpoena to another jurisdiction in order to deprive Plaintiff of his rights to due process and equal protection of the laws, and in order to maliciously prosecute him in that other jurisdiction. All of these acts denied Plaintiff's rights to due process of law, and to equal protection of the laws, and his right to be free of malicious and baseless prosecutions. These acts were also in furtherance of, and the fruits of, the participating Defendants' plan to deny Plaintiff the due process of law and equal protection of the laws as aforesaid.

Further, Defendants' acts as aforesaid were the result of, and in furtherance of, a policy, practice, or custom endorsed and promulgated by Defendants Oreck, Bigler, Weston, Siskiyou County, Siskiyou County Sheriff's Department and/or Rick Riggins.

27.

As a consequence of Defendants' acts and actions as aforesaid, Plaintiff has been caused to suffer violation of his privacy and personal security, imprisonment, incurred economic losses, has suffered fear, anger, upset, embarrassment, outrage, humiliation before the community, and extreme emotional and psychological pain and distress to his general and special damage of $250,000.

27.

The conduct of Defendants as aforesaid was willful, wanton, reckless, negligent, willfully negligent, and undertaken by them with reckless disregard and wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, and was executed by abusing a position of authority and control over the Plaintiff, while being calculated to cause, and in fact causing, economic harm, social harm, intimidation, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, as provided by California Civil Code Section 3294, in the sum of $350,000.

WHEREFORE, plaintiff now prays for Judgment against Defendants as specified hereinabove, and for his reasonable attorney's fees pursuant to his First and Second Claims for Relief, and for his reasonable cost and disbursements herein.

Dated this _1st_ day of _May_, 2007

_Peter T. Harrell_

Peter T. Harrell, Plaintiff Pro Se

# EXHIBIT 9

**WESTLAW CLASSIC**

316 Fed.Appx. 653

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1
~~generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also~~

Harrell v. Oreck

United States Court of Appeals, Ninth Circuit.  |  March 5, 2009  |  316 Fed.Appx. 653  |  2009 WL 586112    *(Approx. 3 pages)*

United States Court of Appeals,

Ninth Circuit.

Peter T. HARRELL, Plaintiffs—Appellants,

v.

Adam ORECK; et al., Defendants—Appellees.

No. 08–15510.

|

Submitted Feb. 18, 2009. *

|

Filed March 5, 2009.

### Synopsis

**Background:** Action was brought against county sheriff department and deputies, alleging
violation of federal civil rights and state tort law. Defendants moved to dismiss. The United
States District Court for the Eastern District of California, Morrison C. England, J., 2008 WL
478416, granted motion. Appeal was taken.

**Holding:** The Court of Appeals held that state law tolling provision did not apply.

Affirmed.

---

### West Headnotes (1)

Change View

| 1 | **Limitation of Actions** 🔑 Pendency of Action on Different Cause or in Different Forum |
|---|---|
| | State tolling provisions tolling statute of limitations during period that charges were pending before superior court did not apply to personal injury action against county sheriff department and officers. 42 U.S.C.A. § 1983; West's Ann.Cal.C.C.P. § 335.1; West's Ann.Cal.Gov.Code § 945.3. |

---

### Attorneys and Law Firms

*\*654* Peter T. Harrell, Yreka, CA, pro se.

Kimberly R. Olson, Yreka, CA, pro se.

Philip Price, Price & Brown, Chico, CA, for Adam Oreck, Chris Schack, Rick Riggins, Randy
Bigler, Siskiyou County Sheriff's Department, Gregory Weston.

Ernest Robert Wright, Esquire, Assistant U.S., USSAC–Office of the U.S. Attorney,
Sacramento, CA, Mark Montgomery, United States of America.

Sylvia A. Quast, Assistant U.S., United States Attorney's Office Eastern District of
California, Sacramento, CA, for United States of America.

Appeal from the United States District Court for the Eastern District of California, Morrison
C. England, District Judge, Presiding. D.C. No. CV–07–08047–MCECMK.

Before: BEEZER, FERNANDEZ, and W. FLETCHER, Circuit Judges.

**SELECTED** TOPICS

Limitation of Actions

Computation of Period of Limitation
Government Action Statute of Limitations

**Secondary Sources**

**§ 35:13. Sherman Act—Statute of limitations**

Cal. Bus. Law Deskbook § 35:13

...A suit under the Sherman Act must be "commenced within four years after the cause of action accrued." Generally, the limitations period "commences on the date the cause of action accrues, that being, ...

**Miscellaneous Actions**

Cal. Prac. Guide Civ. Pro. Before Tr. Stat. of Limitations Ch. 4-J

...1. [4:1490] Legal Malpractice Actions1-Year/4-Year Limitations Period: Except as discussed below (¶ 4:1490.1), an action against an attorney for a wrongful act or omission (other than actual fraud) arises...

**§ 178. Statute of limitations—Tolling**

Federal Control of Business § 178

...The weight of cases indicate that section 4B of the Clayton Act is tolled by fraudulent concealment. However there has been some contrary opinion mostly in the district courts Even under the law prior ...

See More Secondary Sources

**Briefs**

**Petition for a Writ of Certiorari**

2017 WL 4251918
FERRELLGAS PARTNERS, L.P., et al., Petitioners, v. MORGAN-LARSON, LLC, et al., Respondents.
Supreme Court of the United States
Sep. 21, 2017

...Ferrellgas Partners L.P., Ferrellgas, L.P. (collectively, "Ferrellgas"), AmeriGas, Inc., AmeriGas Propane, L.P., AmeriGas Propane, Inc., and UGI Corporation (collectively, "AmeriGas") respectfully peti...

**Petitioners' Brief on the Merits**

1978 WL 206654
THE GREYHOUND CORPORATION and Greyhound Lines, Inc., Petitioners, v. MT. HOOD STAGES, INC., doing business as Pacific Trailways, Respondent.
Supreme Court of the United States
Feb. 22, 1978

...The opinion of the Court of Appeals is reported at 555 F.2d 687, and reproduced at page 108 of the Joint Appendix. The Court of Appeals' order denying Greyhound's Petition for Rehearing with Suggestion...

**Brief for Petitioners**

1965 WL 115641
Marc D. LEH, individually, and the Progress Company, a copartnership comprised of Marc D. Leh and David Brown, co-partners, Petitioners, v. GENERAL PETROLEUM CORPORATION, a corporation, Standard Oil Company of California, a corporation, Texaco Inc., a corporation, Richfield Oil Corporation, a corporation, Union Oil Company of California, a corporation, Tidewater Oil Company, a corporation, Respondents.
Supreme Court of the United States
Aug. 24, 1965

**MEMORANDUM***

****1** Peter T. Harrell appeals pro se from the district court's judgment dismissing his action alleging various federal civil rights and state tort law violations. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal under Federal Rule of Civil Procedure Rule 12(b)(6). *Holcombe v. Hosmer,* 477 F.3d 1094, 1097 (9th Cir.2007). We affirm.

The district court properly concluded that the federal claims were time-barred. *See* Cal. Civ. Proc. § 335.1 (providing a two-year statute of limitations for personal injury claims); *Jones v. Blanas,* 393 F.3d 918, 927 (9th Cir.2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions."); *Papa v. United States,* 281 F.3d 1004, 1009 (9th Cir.2002) ("Although federal law determines when a *Bivens* claim accrues, the law of the forum state determines the statute of limitations for such a claim."); *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (explaining that the statute of limitations begins to run when the plaintiff has a complete and present cause of action).

Contrary to Harrell's contentions, state tolling provisions do not bring the action within the two-year limitations period. *See* Cal. Gov't Code § 945.3 (tolling the statute of limitations during the period that charges are pending before a superior court); *Fink v. Shedler,* 192 F.3d 911, 916 (9th Cir.1999) (describing three conditions required to equitably toll a statute of limitations under California law); *see also* *Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir.1993) (explaining that dismissal will be upheld where it is evident from the face of the complaint that the ***655** plaintiff could not prevail on the equitable tolling issue as a matter of law).

The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the related state law claims once it had dismissed the federal claims. *See* 28 U.S.C. § 1367(c)(3); *see also* *Ove v. Gwinn,* 264 F.3d 817, 826 (9th Cir.2001) (holding that district court may decline to exercise supplemental jurisdiction over related state law claims once it has dismissed all claims over which it had original jurisdiction).

Harrell's remaining contentions are unpersuasive.

AFFIRMED.

**All Citations**

316 Fed.Appx. 653, 2009 WL 586112

| Footnotes | |
| --- | --- |
| * | The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). |
| ** | This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3. |

| End of Document | © 2021 Thomson Reuters. No claim to original U.S. Government Works. |
| --- | --- |

---

**Briefs** (right column, partial)

...tenor of that district Court, constituting its findings of fact and conclusions of law [R. 12091227], is reported at 208 F. Supp. 289 (1962). The opinion of the Ninth Circuit Court of Appeals [R. ...

See More Briefs

**Trial Court Documents**

**Fullerton Medical Group v. Sideman & Bancroft LLP**

2008 WL 8180965
FULLERTON MEDICAL GROUP, a, corporation, Plaintiff, v. SIDEMAN & BANCROFT LLP, a licensed California Limited Liability Partnership; Robert L. Leberman, an individual; Donald J. Putterman, an individual; Joseph M. Burton, an individual; Does 1 through 25, inclusive, Defendants.
Superior Court of California
Jan. 24, 2008

...Dept.: 514 Action Filed: February 9, 2004 Sideman & Bancroft LLP's and Robert Leberman's ("S&B") Motion For Summary Judgment Or, In The Alternative, Summary Adjudication was heard in Department 514 of ...

**COORDINATION PROCEEDINGS SPECIAL TITLE (Rule 1550(b)) Microsoft I - V Cases.**

2000 WL 35568182
COORDINATION PROCEEDINGS SPECIAL TITLE (Rule 1550(b)) Microsoft I - V Cases.
Superior Court of California
Aug. 29, 2000

...This is a coordinated proceeding brought by plaintiffs as representatives of two purported classes of California indirect purchasers of software products produced by defendant Microsoft Corporation. Th...

**Rambus Inc. v. Micron Technology, Inc.**

2010 WL 3207074
RAMBUS INC., Plaintiff, v. MICRON TECHNOLOGY, INC., et al., Defendants, And Related Cross-Claims.
Superior Court of California
Aug. 05, 2010

...Hearing Date: July 1 and July 6, 2009 Department: 304 Filing Date: May 5, 2004 Trial Date: March 16,2009 Defendants' Motion in Limine to Exclude Evidence of Liability or Damages Based on Alleged Acts O...

See More Trial Court Documents

Westlaw. © 2021 Thomson Reuters | Privacy Statement | Accessibility | Supplier Terms | Contact Us | 1-800-REF-ATTY (1-800-733-2889) | Improve Westlaw   THOMSON REUTERS

# EXHIBIT 10

Peter T. Harrell, In Pro Per
PO Box 131
Ashland, OR 97520

**FILED**

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

JUL −7 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Peter T. Harrell,                                )   Case No:
                                                 )
            Plaintiff,                           )   **COMPLAINT**
                                                 )
vs.                                              )   **2:14 - CV - 1595 KJM GGH PS**
                                                 )
                                                 )   **(JURY TRIAL REQUESTED)**
                                                 )
Hornbrook Community Services District,           )   ACTION AT LAW FOR CIVIL RIGHTS
                                                 )   VIOLATIONS; PENDENT STATE CLAIMS
Michele Hanson, Patricia Brown, Sharrel          )
                                                 )   REQUEST FOR PRELIMINARY AND
Barnes, Robert Winston, and John Does 1-20,      )   PERMANENT INJUNCTION;
                                                 )   DECLARATORY RELIEF
            Defendants,                           )
_____            )   USC 42 § 1983, 1985, 1986, and 1988

## JURISDICTION

Jurisdiction over this action arises pursuant to Sections 1342, and 1343 of Title 28 of the United States Code, as an action arising under the Constitution and laws of the United States, specifically Amendments 1 and 14 of the United States Constitution, and sections 1983, 1985, 1986, and 1988 of Title 42 of the United States Code, as an action seeking redress of grievances for violations of rights secured to Plaintiff by the Constitution of the United States. Pendent jurisdiction is asserted over Plaintiff's state law claims for relief.

Defendant Hornbrook Community Services District ("HCSD" or "District" herein) is a public agency lying completely within the County of Siskiyou, in the State of California, that was created, and, at all times material, operating as a municipal corporation and an independent special district under the laws of the State of California and of the United States, as well as its own duly adopted Bylaws[1], and subject to their jurisdiction.

At all times material, Defendant Michele Hanson ("Hanson") was an officer, employee, and agent of the HCSD, was a citizen of Siskiyou County, California, and was acting under the color of law and of her office as President of the District, save for those times and events she also acted as an individual as set forth herein.

_____

[1] A true and correct copy of the HCSD Bylaws are lodged concurrently herewith, and are incorporated herein as if fully set forth.

Complaint - 1

At all times material, Defendant Patricia Brown ("Brown") was an officer, employee, and agent of the HCSD, was a citizen of Siskiyou County, California, and was acting under the color of law and of her office as a Director of the District, save for those times and events she also acted as an individual as set forth herein.

At all times material, Defendant Sharrel Barnes ("Barnes") was an officer, employee, and agent of the HCSD, was a citizen of Siskiyou County, California, and was acting under the color of law and of her office as Vice-President, save for those times and events she also acted in her individual capacity as set forth herein.

At all times material, Defendant Robert Winston ("Winston")was a citizen of Siskiyou County, an agent of Defendants Hanson, Barnes, Brown, and HCSD who conspired with, directed, assisted, and abetted these Defendants in violating the California Brown Act, and the Political Reform Act, and who committed false personation as counsel of the District for the HCSD, as well as violating the California Bar Rules relating to representation of entity clients at Rule 3-600(E), and others.

At all times material, defendant John Does were board members, policy makers and/or executors, instructors, rule enforcers, assistants, confidants, and otherwise actors and/or agents of the HCSD, the named natural person defendants, and/or of each other, were citizens of Siskiyou County, California. The true names and capacities of these John Doe defendants is uncertain to Plaintiff at this time, but will be substituted by amendment to this Complaint as they are definitely determined and/or discovered. Defendant John Does are alleged to have acted in concert and/or cooperation with the other named defendants in promulgating, enforcing, administering, and/or assisting in the administration of the rules, regulations, policies, and/or conduct complained of herein, and/or to have conspired with each other and/or the named defendants to deprive Plaintiff of his Constitutional and/or statutory rights, as well as participated in tortuous conduct as set forth in this Complaint.

All claims made herein are brought against the natural person defendants in their individual, as well as their official capacities. All defendants, in addition to any actions committed in their individual and/or official capacities, are alleged to have acted pursuant to a policy, custom, directive, and/or practice promulgated or encouraged by the HCSD, and/or its administrators or other directors, operators, and/or agents. The term "Defendants", when used herein, means all of the named defendants, and each of them.

At all times material, Plaintiff was a citizen of the State of Oregon, and of the United States, and subject to their jurisdiction, as well as being a property owner within the boundaries of the District, and thus subject thereby to the HCSD Bylaws pursuant to Section A-9.26.

In regards to his pendent state claims herein, Plaintiff has complied with the requirements of the California Government Tort Claims Act (California Govt. Code section 905, et seq) by notifying Defendant HCSD, and HCSD President Michele Hanson, of his State law and Bylaw claims and assertions as set forth herein.

The Bylaws of the HCSD attempt to specifically mandate the duties of the Board, each Officer, and each employee of the District. The Bylaws cannot be amended without voter approval in many respects, and any violation of the Bylaws is a nuisance *per se* which is actionable by any resident or property owner within the District.[2] The Bylaws, among other things, require that all meetings, including closed meetings, be recorded, and reduced to minutes, and that all official acts of the Board of Directors of the HCSD be certified by the Secretary of the Board, or they are "void"[3]. A true and correct copy of the Bylaws is lodged concurrently herewith, and is incorporated herein as if fully set forth.

In addition to Plaintiff's rights to bring action herein on the basis of State[4] or Federal law, a private right of action concerning violation of the HCSD Bylaws by these Defendants is specifically created at Sections A-9.1; A-9.13; A-9.26, and 1-5.020 of the Bylaws. At all times mentioned, each of the Defendants, individually, jointly, and severally, were the agents, partners, joint venturers, employers and employees, officers, directors, board members, managing agents, owners, masters and servants, ostensible agents, principals, co-conspirators and/or partners of one another. Furthermore, in engaging in the conduct that is generally described herein, the Defendants and each of them, acted pursuant to policies, customs, and practices these Defendants adopted as purported official HCSD policies customs, and/or practices, and were at all times acting with the knowledge, consent, approval, and/or subsequent ratification of each of the remaining co-Defendants.

Each of the defendants caused and is responsible for the herein-described unlawful and/or tortious conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing,

---

[2] See HCSD Bylaws, A-9.26
[3] See HCSD Bylaws, Sections A-1.6, and A-3.3.9.
[4] [2] See e.g., California Civil Code Sections 3479, 3494; Code of Civil Procedure Section 731; **Error! Main Document Only.**Govt Code Sections 54953(a) and (c); 54960.1(d); 12900; and, 91003.

acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by themselves, as well as agents and officers under their direction and control, including failing to take remedial or disciplinary action.

In doing the acts alleged herein, Defendants, and each of them, were acting in their official capacity as elected officials and/or employees of an elected official or District officer, or were acting in their individual capacity under color of such authority as State officers. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213-21, 285 Cal.Rptr. 99; *White v. County of Orange* (1985) 166 Cal.App.3d 566, 571-72, 212 Cal.Rptr. 493).

## FACTUAL OVERVIEW AND ALLEGATIONS

This is a civil rights and state common law, statutory, and tort-claims action arising from unconstitutional and unlawful actions taken by the named Defendants in their individual, and official capacities. From the period of April 1, 2014, through and including May 31, 2014, Defendants Hanson and Brown, and later in that same period, Defendant Barnes, engaged in multiple meetings at the residence of Hanson, and there engaged in discussion of public business, and how they would vote on said business.

From the period of April 1, 2014, through and including May 31, 2014, Defendants Hanson and Brown, and later in that same period, Defendant Barnes, violated the Brown Act by engaging in multiple un-noticed/agendized meetings at the residence of Hanson, and there engaged in discussion of public business, and at that time attempted to influence how fellow Director (and Secretary of the Board), Kimberly Olson, would vote on said business.

From the period of April 18, through and including May 31, 2014, the Defendants each made multiple statements indicating that they would specifically act, both individually, and as a group, in their official capacities, in violation of Government Code Sections 61050, and 61051, by refusing to appoint a qualified General Manager for the District, and by instead attempting to themselves to exercise the authority and duties granted to the General Manager by statute.

From the period of April 18, through and including May 31, 2014, the Defendants each made multiple statements indicating that they would specifically act, both individually, and as a group, in their official capacities, in violation of Water Code Sections 71340, and 71362, by refusing to appoint a qualified General Manager for the District, and by attempting themselves to exercise the authority and duties granted to the General Manager by statute.

Complaint - 4

From the period of April 18, through and including May 31, 2014, the Defendants each made multiple statements indicating that they would specifically act, both individually, and as a group, in their official capacities, in violation of the HCSD Bylaws as set forth above, by refusing to appoint a qualified General Manager for the District, by interfering with the function and duties of the Acting General Manager[1], and by attempting themselves to exercise the authority and duties granted to the General Manager by the HCSD Bylaws, and statute.[5]

On May 27, 2014, during an open and public meeting of the Board of Directors of the HCSD, Plaintiff advised the Defendants that the main operational facility of the District, the water plant, had numerous safety hazards, including a potentially fatal buildup of chlorine gas, and was in violation of OSHA regulations. At that same meeting, Hanson, Brown, and Barnes took action to deny payment to Plaintiff of back wages, and denied him appointment to the position of General Manager, in part due to a stated perception concerning Plaintiff's citizenship, age, and marital status, but also in retaliation because of Plaintiff's desire that the District operate within the bounds of the laws.

As a result of the improprieties by the Defendants concerning meeting notices and other Brown Act, and Political Reform Act violations, Plaintiff, on May 30, 2014 submitted his first "cure and correct", and "cease and desist" letter to the HCSD concerning the Brown Act violations committed by Hanson, Brown, and Barnes. Thereafter, based upon the improprieties of the Defendants in that regard, Plaintiff initiated an action in the Superior Court for the County of Siskiyou for Declaratory and Injunctive relief on June 2, 2014. The present action in this Court seeks different and additional relief, and of additional defendants, than the Siskiyou County Superior Court Action.

Plaintiff additionally, from the period of May 28, 2014, through about June 11, 2014, filed complaints concerning the Defendants herein regarding violations of law committed thereby with: the California Department of Industrial Relations; the California Department of Fair Employment and Housing; Cal-OSHA; The United States Department of Labor; and, the United States Equal Employment Opportunity Commission.

On June 14, 2014, Plaintiff, via email, again notified the HCSD Board of Directors of the ongoing problems resulting in OSHA violations at the water plant.

---

[1]Plaintiff was the Acting General Manager at all times herein.
[5] See Govt. Code Sections 61050, and 61051.

From the period of June 3, 2014, through and including the present date, Defendants Hanson, Brown, and Barnes, have acted to directly interfere with the lawful functioning of the District by interfering with the Duties of Kimberly Olson ("Olson") as Secretary of the HCSD, as mandated by the HCSD Bylaws at Section A-1.4 by acting to prevent Olson from recording a closed meeting of the Board on May 27, 2014, and creating minutes for said closed meeting; and, at Sections A-1.6, and A-3.3, by conspiring and acting to: prevent Olson from creating the lawful Agenda for the Board's meetings; by attempting to themselves improperly certify acts of the Board other than by means of Secretary signature; by creating false "Clerk of the Board" and "Chair" positions and authority within the HCSD outside of any legal process[1]; attempting to create and ratify contracts without noticed public meetings; by acting to revoke HCSD rates and charges and policies relating thereto[2]; blocking Olson's access to customer mail and payments to the District; and, by acting to block Olson's access to, and control over, the books and records of the District in the possession of Defendant Hanson beginning on or about May 31, 2014 and continuing to the present. The disruption of the ability of the Secretary to function also greatly impaired the ability of Plaintiff, as acting General Manager of the HCSD to perform his duties, and contributed to a hostile work environment.

On information and belief, Plaintiff alleges that Defendants Hanson, Brown, and Barnes, on or about June 11 and 12, 2014, did conspire to, and act to, violate the Brown Act by having an unagendized and/or publicly noticed meeting within the meaning of the Brown Act, and at that meeting ratified an approval in concept to have a special meeting on June 13, 2014 as set forth in Attachment 1, which is a true and correct copy of the purported "agenda" posted at three locations in Hornbrook, California on June 12, 2014. Plaintiff further asserts that this purported agenda itself contains multiple violations of the Brown Act apparent on its face. The purpose of this meeting by these Defendants was, in large part, to take action to thwart the legal action against them, and to retaliate against Plaintiff for filing it.

On June 12, 2014, Defendants Hanson, Brown, and Barnes, conspired to, and acted to violate the Brown Act, the HCSD Bylaws, Plaintiff's rights to due process, and Plaintiff's rights to the equal protection of the laws, by failing to have the Secretary of the Board create an

---

[1] Plaintiff alleges that this action was also in violation of the Brown Act, and the Political Reform Act.
[2] See HCSD Bylaws at Sections A-2.2, A-9.1, A-9.11, A-9.13, A-9.26, 1-3.010, 1-5.030. Plaintiff alleges that these actions were also a violation of the Brown Act, and the Water Code - insofar as the rates purportedly set by the Defendants are insufficient to provide for the operation of, and to maintain the water distribution system of, the HCSD. (Water Code Section 71616.)

Agenda, and by failing to personally give notice to the other members of the Board of Directors of the HCSD, Secretary Kimberly Olson and Director Roger Gifford, within 24 hours of the proposed special meeting of June 13, 2014.

On June 13, 2014, Defendants Barnes and Brown violated the Brown Act, and Plaintiff's rights to due process, and the equal protection of the laws, by conducting public business with less than a quorum of the Board present; hearing complaints and grievances against employees (including Plaintiff) without any notice, closed meeting agenda item, or opportunity to be heard; making policy statements and answering questions from the public; and, reading aloud a complaint letter regarding Plaintiff without any notice, agenda item, closed session, or opportunity to be heard thereby. Plaintiff alleges that the main purpose of airing the employee matters outside of closed session was to humiliate and retaliate against Plaintiff for his filing of complaints concerning working conditions and pay, and for filing the civil action on June 2, 2014.

On June 17, 2014, Plaintiff submitted the second "cure and correct" and "cease and desist" letter concerning Brown Act violations to the HCSD Board.

On information and belief, Plaintiff alleges that Defendants Hanson, Brown, and Barnes, on or about June 16 and 17, 2014, did conspire to, and act to, violate the Brown Act by having an unagendized and/or publicly noticed meeting within the meaning of the Brown Act, and at that meeting ratified an approval in concept to have a special meeting on June 18, 2014 as set forth in Attachment 2, which is a true and correct copy of the purported "agenda" created by Defendant Hanson, which was posted at three locations in Hornbrook, California on June 12, 2014. Plaintiff further asserts that this purported agenda itself contains multiple violations of the Brown Act apparent on its face. The purpose of this meeting by these Defendants was to take action to thwart the legal action against them, and to retaliate against Plaintiff for filing it.

On June 18, 2014, Defendants Hanson, Brown, and Barnes, did conspire to, and act to, violate the Brown Act, the Political Reform Act, the HCSD Bylaws, and Plaintiff's rights to due process, and the equal protection of the laws, by holding a purported open meeting of the HCSD Board, but failing to have the Secretary of the Board create and post an Agenda; failing to give notice of a special public meeting of the Board to all members thereof, or to Plaintiff, at least 24 hours prior to the meeting; conducting public business that was not listed on, and/or not

reasonably informatively described on, the purported agenda[1]; making discriminatory determinations as to familial status of Plaintiff, and of Peter Harrell as an employee of the HCSD (also while outside of closed session); hearing complaints and grievances against employees, and making decisions relating to the hiring, firing, or discipline of employees without any notice, agenda item, or opportunity to be heard by those employees (as well as while outside of closed session); making policy statements and answering questions from the public after the meeting had been called as adjourned by the "Chair"; taking actions in violation of the HCSD Bylaws (including waiving fees and assessments, reducing water fees and rates[6], and eliminating certain fees); and, taking purported action concerning the hiring, firing, or discipline of employees, including Plaintiff, without any notice, agenda item, closed session, or opportunity to be heard by those employees. As a result of this illegal meeting, Defendants Hanson, Brown, and Barnes, did conspire to, and act to, promulgate a pair of purported Resolutions reflecting some of their acts, a true copy of which is attached hereto as Attachment 3[7]. Additionally, Plaintiff alleges that the purpose of this meeting by these Defendants was to take action to thwart the legal action against them, and to retaliate against Plaintiff for filing it, and the multiple complaints and reports he had made to various governmental agencies concerning violations of laws by the HCSD and the Defendants. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

Additionally, Plaintiff alleges that Defendants Hanson, Brown, and Barnes, on or about June 18, 2014, did conspire to, and act to, violate the Brown Act, HCSD Bylaws, and Plaintiff's rights to due process, and the equal protection of the laws, by issue an edict claiming that Acting General Manager Peter Harrell had been removed from the employ of the HCSD by virtue of the illegal action(s) taken at the June 18, 2014 illegal meeting (and again, without any notice to, or opportunity to be heard by, Plaintiff Harrell). The edict further asserted that Clint Dingman and "Bill Eddie" (sic) were employees of the District, and so these Defendants further purported to have created and filled HCSD employment positions in violation of California Government Code section 61051, without an open and public meeting, advertisement of such open positions, and/or the receipt of any applications for these positions. Further, neither the meeting described herein,

---

[1]One of these actions was the purported "rescinding" of the HCSD Bylaws *in toto*. Another was "all officers to be eliminated as well". See Attachment #3.
[6] This action also violated Water Code Section 31007.
[7] Plaintiff asserts that these acts were void due to being taken in violation of the Brown Act, and for not being in conformance with the HCSD Bylaws at Sections A-1.6, and A-3.3.9. Once cannot make an illegal act legal by simply attempting to eliminate the laws in a way that is illegal in the first place.

nor any of the actions proposed to be taken, were communicated to the other members of the Board of Directors, Kimberly Olson and Roger Gifford, and those Directors were not provided any documentation, or permitted to vote. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

On June 19, 2014, Plaintiff submitted the third "cure and correct" and "cease and desist" letter concerning Brown Act violations to the HCSD Board.

On information and belief, Plaintiff alleges that Defendants Hanson, Brown, and Barnes, on or about June 20, 2014, did conspire to, and act to, violate the Brown Act, Government Code Section 61051, the HCSD Bylaws, and Plaintiff's rights to due process, and the equal protection of the laws, by issuing commands and instructions to Clint Dingman to incur expense to the District by using a charge account at Ace Hardware in Yreka, California to purchase supplies and materials to change the locks on the waterplant and facilities of the District, and by failing to provide the other members of the Board of Directors, Kimberly Olson and Roger Gifford, with new keys thereto, or even inform them of the instructions given to Mr. Dingman. These acts also unreasonably interfered with Plaintiff's duties as Acting General Manager, and created a hostile work environment. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

On information and belief, Plaintiff alleges that Defendants Hanson, Brown, and Barnes, on or about June 23 and 24, 2014, did conspire to, and act to, violate the Brown Act by having an unagendized and/or publicly noticed meeting within the meaning of the Brown Act, and at that meeting ratified an approval in concept to have a special meeting on June 25, 2014 as set forth in Attachment 4, which is a true and correct copy of the purported "agenda" created by Defendant Hanson, which was posted at three locations in Hornbrook, California on June 24, 2014. Plaintiff further asserts that this purported agenda itself contains multiple violations of the Brown Act, and Political Reform Act apparent on its face.[8] The purpose of this meeting by these Defendants was to take action in violation of the Brown Act and the Political Reform Act to thwart the legal action against them, improperly and illegally drain the District funds to pay for their own legal defense, and to retaliate against Plaintiff for filing complaints with various government agencies and the courts.

On information and belief, Plaintiff alleges that Defendants Hanson, Brown, and Barnes,

---

[8] See Govt Code section 87100, 91003(b), and also Govt Code section 1090.

Complaint - 9

on June 25, 2014, after the improper meeting relating to Attachment 4 was had, did conspire to, and act to, violate the Brown Act by having an unagendized and/or publicly noticed meeting within the meaning of the Brown Act, and at that meeting ratified an approval in concept to have a special meeting on June 27, 2014 as set forth in Attachment 5, which is a true and correct copy of the purported "agenda" created by Defendant Hanson, which was posted at three locations in Hornbrook, California on June 12, 2014. Plaintiff further asserts that this purported agenda itself contains multiple violations of the Brown Act apparent on its face. The purpose of this meeting by these Defendants was to violate the brown Act and the Political Reform Act, to take improper and illegal action to thwart the legal action against them, and to retaliate against Plaintiff for filing it. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

On June 25, 2014, Plaintiff submitted the fourth "cure and correct" and "cease and desist" letter concerning Brown Act violations to the HCSD Board.

On June 27, 2014, at approximately 2:00 p.m. at the Hornbrook Grange, the Defendants opened the meeting, and then, absent any agenda item, without any notice to Plaintiff, and outside of any closed session, proceeded to disburse inflammatory and untrue information to the public concerning the operation of the HCSD, the status of Secretary Kimberly Olson, and the status and authority of Plaintiff as Acting General Manager.

Immediately thereafter, Defendants drove to the Yreka office of Robert Winston, where they purported to have a closed session meeting as set forth in Attachment 5, but refused to provide Director Roger Gifford with a copy of the purported employment contract for legal services created at the June 25, 2014 meeting, or any other documents associated with that meeting, or the one being conducted. Further, the Defendants attempted to eject Director Gifford from the meeting, called the police, and, along with attorney Robert Winston, threatened Director Gifford with arrest, criminal charges, and civil actions. Since the positions in the HCSD are all "at large", Plaintiff asserts that the denial of Director Gifford's participation at a duly called meeting of the Board of the HCSD violated Plaintiff's rights to due process, the equal protection of the laws, and right to petition the government for redress of grievances. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

On information and belief, Plaintiff alleges that Defendants Hanson, Brown, and Barnes, on or about June 27, 2014, through and including July 1, 2014, after the improper meeting relating to Attachment 5 was had, did conspire to, and act to, violate the Brown Act by having an

unagendized and/or publicly noticed meeting within the meaning of the Brown Act, and at that meeting ratified an approval in concept to have a special meeting on July 2, 2014 as set forth in Attachment 6, which is a true and correct copy of the purported "agenda" created by Defendant Hanson, which was posted at three locations in Hornbrook, California on July 1, 2014. Plaintiff further asserts that this purported agenda itself contains multiple violations of the Brown Act and Political Reform Act apparent on its face. The purpose of this meeting by these Defendants was to take improper and illegal action to thwart the legal actions against them.

On July 2, 2014, Defendants Hanson, Brown, and Barnes, did conspire to, and act to, violate the Brown Act, the Political Reform Act, the HCSD Bylaws, and Plaintiff's rights to due process, and the equal protection of the laws, by holding a purported open meeting of the HCSD Board, but failing to have the Secretary of the Board create and post an Agenda; failing to give notice of a special public meeting of the Board to all members thereof, or to Plaintiff, at least 24 hours prior to the meeting; conducting public business that was not listed on, and/or not reasonably informatively described on, the purported agenda; improperly voting on issues in which these Directors had a direct conflict of interest within the meaning of Government Code Sections 1090 and 87100; taking actions in violation of the HCSD Bylaws; and, at the urging of attorney Robert Winston, improperly attempting to waive a conflict of interest concerning their personal, and the the District's representation in legal matters. Additionally, Plaintiff alleges that the purpose of this meeting by these Defendants was to take action to thwart the legal actions against them, and to permit them to retaliate against Plaintiff for filing his action, and making the multiple complaints and reports to various governmental agencies concerning the HCSD and the Defendants. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

Defendants Hanson, Brown, and Barnes, in acting as set forth herein, have acted, in their official capacities, on matters of public concern in which they have a direct conflict of interest, in violation of Government Code Section 87100, and 2 Cal. Code Regs. Section 18700, and have failed to act as mandated by the HCSD Bylaws, pursuant to Sections A-1.4, A-2.2, A-2.6, A-2.10; A-3.3; A-3.8; A-5-1; A-6.1; A-6.4; A-9.1; A-9.3; A-9.14; 1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; and, 1-4.040. On information and belief, Plaintiff alleges that Defendant Winston improperly directed and aided the other Defendants in committing the conduct herein alleged.

Defendants, in acting as set forth herein, have created and maintained a public and private nuisance *per se,* as defined by the HCSD Bylaws, Section A-9.26. Defendants and their actions

are also therefore in violation of California Civil Code Section 3479 and 3480.

The acts of Defendants Hanson, Brown, Barnes, and HCSD as set forth herein are null and void due to criminality[1], due to being a nuisance *per se*[2], due to Brown Act violations[3], and/or due to having been undertaken in violation of the Political Reform Act while a conflict of interest existed regarding the issue or action undertaken.[4]

Defendants, in acting as set forth herein, have violated the provisions of California Government Code Sections 61000, et seq, and 87100; and Water Code Sections 71000, et seq - particularly Section 71616.

Plaintiff is informed and believes and on that basis alleges that Defendants, in conspiring, and acting, to violate the provisions of the Government Code, the Water Code, and the HCSD Bylaws as set forth above, did so in order to financially benefit themselves, their friends, and acquaintances by acting to position themselves to: ignore the provisions of Water Code Sections 31007 and 71616; waive fees without any lawful basis therefor; improperly adjust accounts; fail to collect overdue accounts; fail to impose penalties on overdue accounts; refuse to shut off water to overdue accounts; fail to lien property as provided by law; fail to impose properly assessed charges; and, to circumvent the authority of the General Manager, and the hearings and review processes of the District.

Plaintiff is informed and believes and on that basis alleges that Defendants Hanson, Brown, and Barnes, as Members of the Board of Directors of the HCSD owe a fiduciary duty to the District, the residents and property owners of the District (inclusive of Plaintiff), and to their fellow Board members, and that in acting in violation of the Bylaws of the HCSD, and statutes of the State of California as set forth herein, these Defendants have additionally breached their fiduciary duties to the District, and all beneficially-interested person, including Plaintiff,, and have harmed the District and those beneficially-interested persons, by impairing the collection of fees and accounts, and rendered it unable to conduct normal business.

By failing to comply with the provisions of California law, and the Bylaws of the HCSD as set forth above, the Defendants exceeded their authority and jurisdiction, and any acts taken in relation thereto are therefore null and void.

---

[1] See Govt. Code Sections 54959, 61064(a), 91003(b); Civil Code Section 3369.
[2] See Civil Code Section 3479-80, 3491; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988-89.
[3] See Govt Code Sections 54953(a) and (c); 54960.1(d).
[4] See Govt Code Section 87100; 91003(b).

Plaintiff contends the acts of the Defendants as set forth herein are arbitrary and capricious and imposed without full and complete disclosure and notice to the citizens and property owners of the Hornbrook Community Services District.

Plaintiff alleges that each act complained of herein by the District and individual Defendants was undertaken by them in furtherance of, and/or pursuant to, a policy, decision, custom, or practice either officially, or unofficially, promulgated and adopted by them (and thus the HCSD), and executed using the authority granted to them under State Law. Further, these Defendants received multiple notices from Plaintiff and others that their conduct as set forth herein was illegal and violated Constitutional rights, and yet they all continued to act illegally.

Based on the Defendants' ongoing violation of the statutes and Bylaws as set forth herein, Plaintiff seeks recovery, reimbursement, and disgorgement of all fees and charges wrongfully and illegally waived by them, and/or avoided by and person or entity within the District up to the date of final judgment in this action as a result of their actions, along with all other relief authorized by the HCSD Bylaws at Sections A-9.1; A-9.13; and, A-9.26 .

An actual controversy has arisen and now exists between Plaintiff and Defendants relative to their respective rights and duties in that Plaintiffs contend that the acts of the Defendants in violation of the Bylaws of the HCSD, and the statutes of the State of California, are invalid and unenforceable, both on their face and as construed by Defendants. Defendants dispute Plaintiffs' contentions and contend that their acts, and their application to the District, District customers, District employees and volunteers, and to Plaintiff, are valid.

Plaintiff desires a declaration of the rights of the parties, and also as to the validity of the acts of these Defendants, past and future - and all proceedings relating thereto[9], both on their face and as applied to the District, Plaintiff, and all citizens of the HCSD. A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and duties in execution of his office as Acting General Manager of the HCSD, as a property owner within the District, and as provide by California law.

A timely declaration by this court is urgent for the following reasons:

A. Defendants had a clear, present, fiduciary, and ministerial duty to refrain from acting in the manner set forth herein;

B. Plaintiff has a clear, present, and beneficial right to be free of such interference, retaliation, harassment, and public shaming;

---

[9] Including all purported public meetings, agendas, resolutions, policies, etc.

C. Plaintiff has a clear, present, and beneficial right to have these Defendants operate within the laws of the United States, the State of California, and within the provisions of the Bylaws of the HCSD, which have the force of law. As the Supreme Court stated in *United States v. Classic*, 313 U.S. 299, 326 (1941), "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

## FIRST CLAIM FOR RELIEF

### Count - I

### VIOLATION OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH

Plaintiff, incorporating all of the information contained in the Factual Overview and Allegations as if fully set forth herein, does hereby allege additionally that because the Defendants, in acting as set forth herein in manners adverse to Plaintiff have done so due in part to: Plaintiff's exercise of his right to petition the government[10] for redress of grievances; in retaliation for Plaintiff's exercise of his right to speak freely at the public meetings of the Board, and to the individual Defendants concerning dangerous working conditions, and unfair and unreasonable employment practices, these Defendants have violated Plaintiff's rights under the First Amendment to the United States Constitution.

In order to commit the above-described acts against Plaintiff, Defendants communicated, interacted, and conspired with one another to harass, retaliate against, and discriminate against Plaintiff for his political views as expressed at public meetings of the Board, and in private to the individual Board members named as defendants herein, and to deprive Plaintiff of his rights under the United States Constitution as aforesaid.

Plaintiff alleges that as a result of the actions and acts of the Defendants, he has been made to suffer humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $250,000.00

Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the

---

[10] This includes the HCSD Board itself, as well as the court, and the various agencies Plaintiff complained to about the Defendants.

Complaint - 14

Constitution of the United States, and so he is entitled to punitive damages against these defendants **[AND EACH OF THEM]** in the amount of $50,000.00

## Count – II

DEPRIVATIONS OF RIGHT TO DUE PROCESS

Plaintiff, incorporating all of the information contained in the Factual Overview and Allegations, and Count I as if fully set forth herein, does hereby allege additionally that in acting to censure Plaintiff's protected speech, and to retaliate against him for making it, Defendants violated numerous California laws relating to proper notice and due process at administrative hearings for employees. Defendants further failed to give Plaintiff any personal notice of the multiple adverse employment actions they took against him, failed to grant Plaintiff any opportunity to be heard concerning any charges and/or adverse actions taken against him, and failed to hold the employment-related hearings and actions in closed session. This deprivation resulted in substantial prejudice to Plaintiff, unlawful interference with his job duties as Systems Operator and Acting General Manager of the HCSD, and substantially affected State and Federally protected rights of Plaintiff Harrell, as specifically provided by the Fourteenth Amendment to the United States Constitution.

More fundamentally, Plaintiff was denied his Federal constitutional rights to due process and equal protection of the laws relating to adverse administrative hearings and actions against him by a government agency and actor(s).

The Fourteenth Amendment of the United States Constitution also protects individuals from deprivation (or adverse impact) of property interests by the government without procedural due process. Due process is violated where there exists: (1) a constitutionally protected property interest; (2) the government's deprivation of said interest; and (3) a lack of process. See Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Plaintiff additionally asserts that his employment with the HCSD as Systems Operator and Acting General Manager, and his real property lying within the HCSD boundaries are such property interests. The Defendants, in action without legal notice, and in violation of the laws of the State of California as aforesaid, created risk that Plaintiff will not receive just and due compensation for his labor, that the water system will fail, and that Plaintiff's property value will be destroyed.

Plaintiff alleges that due process was further denied him by the actions of the defendants herein set forth, insofar as the acts complained of are specific violation by these Defendants of Government Code Section 12940(h), and labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, and 6399.7.

Plaintiff alleges that as a result of the actions and acts of the Defendants as aforesaid, he has been made to suffer humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $250,000.00

Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## SECOND CLAIM FOR RELIEF – PENDENT STATE LAW CLAIMS

### Count – I, Slander

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that Defendants did thereby improperly and illegally conspire to, and actually did, make false, unprivileged statements concerning Plaintiff, which were slanderous per se, injurious to his reputation and standing, and that such improper and illegal slander of Plaintiff was undertaken negligently, willfully, wantonly, and/or with malicious motive.

These acts were part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, and/or to interfere with Plaintiff's financial well-being.

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer, and has actually suffered; lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $150,000.00.

The conduct of Defendants as aforesaid was willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $30,000.00,

### Count – II, Willful Negligence; Negligence

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that in

performing the acts as complained of herein, each and all of the Defendants acted negligently, recklessly, wantonly, and/or willfully to harass, oppress, and annoy Plaintiff, and to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result of their acts as complained of herein.

These acts were part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, and/or to interfere with Plaintiff's financial well-being.

As a consequence of Defendants' willfully negligent acts as aforesaid, Plaintiff has been caused to suffer general and special damages, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $150,000.00.

The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $30,000.00.

## Count III - False Light

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that each and all of the Defendants, in performing the acts as complained of herein, did so to paint him in false light, and to so invade his privacy, and thus acted negligently, recklessly, wantonly, and/or willfully to harass, oppress, and annoy Plaintiff, and to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

These acts were part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, and/or to interfere with Plaintiff's financial well-being.

As a consequence of Defendants' willfully negligent acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered extreme and lasting fear, anger, upset,

anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $150,000.00,

The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $30,000.00.

### Count IV - Civil Conspiracy

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that each and all of the Defendants acted as complained of herein in concert, and by agreement amongst themselves, to recklessly, wantonly, and/or willfully harass, oppress, and annoy Plaintiff, by slandering, defaming, and painting Plaintiff in false light, to violate his constitutional and statutory rights, to retaliate against him for exercise of his rights, and thus to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton and willful indifference, and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

These acts were part of a planned, systematic, and ongoing pattern of events agreed to by the Defendants, that were calculated cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, and/or to interfere with Plaintiff's financial well-being.

As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $150,000.00.

The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $30,000.00.

## Count V – Negligent and/or Willful Infliction of Emotional Distress

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that each and all of the Defendants, in performing the acts complained of herein, acted negligently, recklessly, wantonly, and/or willfully to harass, oppress, and annoy Plaintiff, and to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

These acts were part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, and/or to interfere with Plaintiff's financial well-being.

As a consequence of Defendants' willfully negligent acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $150,000.

The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $30,000.00

## Count VI Labor Code Violations

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that each and all of the Defendants acted negligently, recklessly, wantonly, and/or willfully to harass, oppress, and annoy Plaintiff, to retaliate against him, and to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

Plaintiff further alleges that as part of their program of harassment, retaliation, slander, defamation, and false light against him as set forth herein, defendants also thereby acted in violation of California Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, and 6399.7, all to his general and special damage of $150,00.00.

The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $50,000.00.

## Count VII Nuisance

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that each and all of the Defendants acted negligently, recklessly, wantonly, and/or willfully to create annoying and/or unsafe conditions that were a nuisance and/or nuisance per se to Plaintiff, all to his general and special damage of $50,000.00

## Count VIII Exemplary Damages (Punitive Damages)

Plaintiff, incorporating the information in the Factual Overview and Allegations, and his First and Second Claims for Relief as if fully set forth herein, does hereby allege that the conduct of defendants, by doing the acts set forth in this complaint, acted willfully, and maliciously, in that they intended to cause harm to Plaintiff. Plaintiff further alleges that while committing each discreet act of which Plaintiff complains herein, the defendants understood the consequences and risks of harm of their actions to Plaintiff, but consciously disregarded those risks.

**WHEREFORE**, Plaintiff now prays for judgment against Defendants for his damages as specified hereinabove, for his reasonable attorney fees (if and when such fees are actually incurred), and for his reasonable costs and disbursements herein.

1. Declaration of the respective rights and duties of the parties under the acts of these Defendants in question, and as may arise subsequent to the filing of this Complaint, but which are a part of or of similar nature to the events and circumstances relating thereto or arising therefrom, and that the acts by the Defendants at the purported meetings held on June 13, 25, and 27, 2014, and July 2, 2014, complained of herein and arising therefrom, are invalid and void on their face or as applied to Plaintiff for being taken in violation of the Brown Act; and/or the Political Reform Act (and the regulations arising therefrom promulgated by the California Fair Political Practices Commission);

2. For general, special, economic, and exemplary damages as set forth herein, and as determined at trial

3. For reasonable attorney's fees pursuant to HCSD Bylaws Section A-9.26; Code of Civil Procedure Section 1021.5; Labor Code section 218.5; and, Govt. Code Section 54060.5.

4. For costs of suit herein incurred; and,

5. For such other and further relief as the court may deem proper.

Respectfully submitted this ___1st___ day of July, 2014

Peter T. Harrell, Plaintiff Pro Se
PO Box 131, Ashland, OR 97520

# HORNBROOK COMMUNITY SERVICE DISTRICT
## P.O. BOX 29, HORNBROOK, CA. 96044
## SPECIAL BOARD OF DIRECTORS MEETING
### JUNE 13, 2014 – 10:00 A.M. HORNBROOK GRANGE HALL
### MAIN ST. HORNBROOK, CA. 96044

## AGENDA

1.  10:00 a.m. Call to order
2.  Roll Call and establishment of quorum

3.  **New Business:**

    a.  Bylaws Resolution #14-023 Adopted April 18th 2014:  Discuss and possible action.

    b.  Rescind Resolution #14-015 Adopted March 2, 2014:  Discuss and possible action.

    c.  Post office Keys, discuss and possible action do to resignation of district bookkeeper.

4.  **CLOSED SESSION:**

    a.  Discuss and possible action:  Appoint/hire Systems Operator/General Manager per: Government Code, Section 54954.5 and Section 54957.

5.  **REPORT ON CLOSED SESSION:**

6.  **Public Comment:**

This is an opportunity for members of the public to address the Board on subjects within the jurisdiction of Board, whether or not on the agenda for this meeting. The Board reserves the right to reasonably limit the length of individual comments and/or the total amount of time allotted to public comments. Speakers may request their comments on agenda items to be heard during public comment instead of the later time when the item is to be acted upon by the Board. The Board may ask questions but may take no action on items addressed during the public comment period except to direct staff to prepare a report or to place the item on a future agenda. If you desire a written response, please provide the secretary with your mailing address.

7.  **BOARD COMMENTS AND QUESTIONS:**

At this time, members of the Board may ask questions of staff, request reports be made at a later date, or ask to place an item on a subsequent agenda on any subject within the Board's jurisdiction. In addition, the Board members may take this opportunity to make comments on any topic that is not on this agenda; however, no deliberation may be conducted and no decision made on such topics.

8.  **Adjournment:**

*#1*

**HORNBROOK COMMUNITY SERVICE DISTRICT**
**P.O. BOX 29, HORNBROOK, CA. 96044**
**SPECIAL BOARD OF DIRECTORS MEETING**
**JUNE 18, 2014 – 10:00 A.M. HORNBROOK GRANGE HALL**
**MAIN ST. HORNBROOK, CA. 96044**

**AGENDA**

1. 10:00 a.m. Call to order
2. Roll Call and establishment of quorum

3. **New Business:**

    a.   Bylaws Resolution #14-023 Adopted April 18th 2014:  Discuss and possible action.

    b.   Rescind Resolution #14-015 Adopted March 2, 2014:  Discuss and possible action.

    c.   Post office Keys, discuss and possible action do to resignation of district bookkeeper.

4. **CLOSED SESSION:**

    a.   Discuss and possible action:  Appoint/hire Systems Operator/General Manager per: Government Code, Section 54954.5 and Section 54957.

5. **REPORT ON CLOSED SESSION:**

6. **Public Comment:**

This is an opportunity for members of the public to address the Board on subjects within the jurisdiction of Board, whether or not on the agenda for this meeting. The Board reserves the right to reasonably limit the length of individual comments and/or the total amount of time allotted to public comments. Speakers may request their comments on agenda items to be heard during public comment instead of the later time when the item is to be acted upon by the Board. The Board may ask questions but may take no action on items addressed during the public comment period except to direct staff to prepare a report or to place the item on a future agenda. If you desire a written response, please provide the secretary with your mailing address.

7. **BOARD COMMENTS AND QUESTIONS:**

At this time, members of the Board may ask questions of staff, request reports be made at a later date, or ask to place an item on a subsequent agenda on any subject within the Board's jurisdiction. In addition, the Board members may take this opportunity to make comments on any topic that is not on this agenda; however, no deliberation may be conducted and no decision made on such topics.

8. **Adjournment:**

#2

## RESOLUTION 14-027, RESCIND RESOLUTION 14-023
## ADOPTION OF NEW BYLAWS ADOPTED ON
## APRIL 18, 2014

The Board of Directors of the Hornbrook Community Services District ("HCSD") does by this resolution, Revoke and Rescind the bylaws adopted on April 18, 2014, with the exception of (section A-9 General Regulation for Water Service, paragraph 1, 2, and 3 which will remain in affect). All officers to be eliminated as well pending adoption of new bylaws.

Ratified by resolution passed _6 - 18- 14_ , with _3_ Ayes, and _0_ Nays

## RESOLUTION 14-028, RESCIND RESOLUTION 14-015
## APPOINT GENERAL MANAGER ASSISTANT/TRAINEE
## ADOPTED ON MARCH 2, 2014

The Board of Directors of the Hornbrook Community Services District ("HCSD") does by this resolution, Revoke and Rescind Volunteer position of the General Manager Assistant/Trainee.

Ratified by resolution passed _6 · 18· 14_ , with _3_ Ayes, and _0_ Nays

Certified:

Director and Chair
Michele Hanson, HCSD

_6 -18 -14_
Date

Director and Board Clerk
Patricia Brown, HCSD

_6 -18 -14_
Date

#3

### HORNBROOK COMMUNITY SERVICES DISTRICT
### P.O. BOX 29, 29 HORNBROOK CA. 96044
### SPECIAL BOARD OF DIRECTORS MEETING
June 27, 2014 at 10:00 am. Hornbrook Grange Hall, Main St., Ca 96044

### AGENDA

1. **Call to order**
2. **Roll Call and establishment of quorum**
3. **Public Comment:**

This is an opportunity for members of the public to address the Board on subjects within the jurisdiction of Board, whether or not on the agenda for this meeting. The Board reserves the right to reasonably limit the length of individual comments and/or the total amount of time allotted to public comments. Speakers may request their comments on agenda items to be heard during public comment instead of the later time when the item is to be acted upon by the Board. The Board may ask questions but may take no action on items addressed during the public comment period except to direct staff to prepare a report or to place the item on a future agenda. If you desire a written response, please provide the secretary with your mailing address.

4. **NEW BUSINESS:**

    A. Approve minutes of 6-18-14.

    B. Restated Bylaws, discuss and possible action.

    C. Indemnification and Defense of directors Hanson, Brown, and Barnes, discuss and possible action.

    D. Approval of Legal Services Agreement, of directors Hanson, Brown and Barnes, discuss and possible action.

    E. Authorization to Pay Legal Expenses, of directors Hanson, Brown and Barnes, discuss and possible action.

    F. Appoint temporary bookkeeper, discuss and possible action.

    G. Appointment of officers of the Board, discuss and possible action.

    H. HCSD bank accounts, authorize signatures on all accounts, discuss and possible action.

    I. Appoint Bill Eddie to supervise Clint Dingman as needed, discuss and possible action.

5. **Board Comments and Questions:** AT this time, members of the Board may ask questions of the staff, request reports be made at a later date, or ask to place an item on a subsequent agenda on any subject within the Board's jurisdiction. Directors may take this opportunity to make comments on any topic not on this agenda but may not be acted on.

6. **Next Meeting**
7. **Adjournment**

#4

HORNBROOK COMMUNITY SERVICES DISTRICT
P. O. BOX 29 HORNBROOK, CA. 96044
SPECIAL BOARD OF DIRECTORS MEETING
JUNE 27, 2014 at 2:00 p.m.
AT THE HORNBROOK GRANGE MAIN ST. HORNBROOK, CA

1. **Call to order**
2. **Roll Call and establishment of quorum**
3. **Public Comment**

This is an opportunity for members of the public to address the Board on subjects within the jurisdiction of Board, whether or not on the agenda for this meeting. The Board reserves the right to reasonably limit the length of individual comments and/or the total amount of time allotted to public comments. Speakers may request their comments on agenda items to be heard during public comment instead of the later time when the item is to be acted upon by the Board. The Board may ask questions but may take no action on items addressed during the public comment period except to direct staff to prepare a report or to place the item on a future agenda. If you desire a written response, please provide the secretary with your mailing address.

5. **Closed Session:** Closed session at Yreka office of "Kirsher, Winston & Boston, LC" 216 Lane Street for the purpose of discussing pending litigation with legal counsel.

a. Harrell v. Hanson, et al., Siskiyou Co. case no. SCSCCVPT 14-0671
b. Olson v. Hanson, et al., Siskiyou Co. case no. SCSCCVPT 14-0672
c. Possible need to commence additional legal action.

4. **Adjournment:**

#5

**HORNBROOK COMMUNITY SERVICES DISTRICT**
P. O. BOX 29, HORNBROOK, CA. 96044
**SPECIAL BOARD OF DIRECTORS MEETING**
**July 2, 2014 – 11:00 a.m. Hornbrook Grange Hall**
**Main St. Hornbrook, Ca.96044**

1. **Call to Order:**
2. **Roll Call and establishment of quorum:**

3. **Public Comment:**

This is an opportunity for members of the public to address the Board on subjects within the jurisdiction of Board, whether or not on the agenda for this meeting. The Board reserves the right to reasonably limit the length of individual comments and/or the total amount of time allotted to public comments. Speakers may request their comments on agenda items to be heard during public comment instead of the later time when the item is to be acted upon by the Board. The Board may ask questions but may take no action on items addressed during the public comment period except to direct staff to prepare a report or to place the item on a future agenda. If you desire a written response, please provide the secretary with your mailing address

4. New Business:

   a. Discuss and possible action. Represent the HCSD as a defendant in the amended Olson v. Hanson case, along with directors Barnes, and Brown.
   b. Discuss and possible action. Represent Julie Bowles, who is sued in her official capacity, as a defendant in the amended Olson v. Hanson case, along with directors, Barnes and Brown.
   c. Discuss and possible action. Notice and Waiver re Joint Representation.
   d. Approve minutes of 6/27/2014
   e. Discuss and possible action. District bank accounts.

5. **Board Comments and Questions:** AT this time, members of the Board may ask questions      of the staff, request reports be made at a later date, or ask to place an item on a subsequent agenda on any subject within the Board's jurisdiction. Directors may take this opportunity to make comments on any topic not on this agenda but may not be acted on.

6. **Next Meeting:**

7. **Adjournment:**


#6

# EXHIBIT 11

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER T. HARRELL,                          No.  2:14-cv-01595 KJM GGH

12                  Plaintiff,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14   HORNBROOK COMMUNITY
     SERVICES DISTRICT, et al.,
15
                    Defendants.
16

17                          *INTRODUCTION AND SUMMARY*

18          Management of judicial resources is the quintessential zero sum game.[1]  Time spent on

19   one litigant's case necessarily means that other litigants will stand in line waiting for their turn.

20   When a litigant unnecessarily bogs down the judicial process, all others suffer because less

21   thoughtful time is spent on their cases, or as is more likely the case, the court simply places their

22   concerns on the back burner while dealing with the litigant whose incessant, voluminous and

23   prolix filings bespeak a litigation narcissism.

24          The instant case is an example of a purposeful overloading of the court with pleadings

25   which take up more than warranted judicial attention, but which simultaneously demonstrate a

26

27   _____
     [1]  In economic or game theory, a zero sum game is a situation in which one person or group can
     gain something only by causing another person or group to lose it.  See Meriam-Webster.com,
28   Meriam Webster n.d., 9 August 2017.

                                               1

1   desire to wage a war of attrition on the opposing parties.  There seems to be no desire on

2   plaintiff's part to ever reach the merits of a viable claim; rather, there seems to be much desire to

3   use the litigation process per se as an end in itself.

4        Plaintiff filed his complaint in this matter on July 7, 2014, ECF No. 1, and requested to

5   proceed in forma pauperis on the same day.  ECF No. 2.  The court granted in forma pauperis

6   status on August 6, 2014 and directed service of the complaint by the U.S. Marshal.  ECF No. 3.

7   Now, just a few days short of three years later, the action has not gone beyond the complaint

8   phase; indeed, no viable complaint has yet been provided, and plaintiff now refuses to provide

9   one.

10                                    *THE PARTIES*

11       Plaintiff was at one time the acting Manager of the defendant Hornbrook Community

12  Services District ("District"), and now a former and disgruntled, to say the least, ex-employee of

13  the District.  The action began in part as a suit alleging that he was terminated from his

14  employment as retaliation for his exercise of his First Amendment rights, but has since morphed

15  into a muddied and muddled conglomeration of claims, both federally and state law based,

16  challenging the manner in which the district is run in general, its hiring practices, its failure to

17  adhere to the State's opening meeting law, and its claim to operate as a water company in

18  violation of nearly every law and regulation applicable to such an enterprise.

19       Defendant includes the District itself, and nearly everyone currently, or perhaps ever,

20  associated with the District all of whom he alleges have acted unwisely or criminally in the

21  operation of the District and, for a while, any lawyer who attempted to represent it.  The District,

22  which according to information on the web page of the State Water Resources Control Board,

23  Division of Drinking Water, serves only a population of approximately 280 people and 141 water

24  connections.[2]  It is tiny indeed.

25       Although the court has laid out the procedural history of this case in several earlier orders,

26  it will do so here again, to assure that all of the salient facts are collected in one place and so that

27  _____

28  [2]  Under Federal Rule of Evidence 201(b) the Court takes judicial notice of this information as the
    accuracy of the Board's postings cannot reasonably be questioned.

                                          2

1    the impact of plaintiff's actions in this case, his contumacious conduct, and his probable

2    vexatious intent, are clear.  It will also note other allied cases associated with this case[3], which

3    add to the inference that plaintiff and his allies desire to achieve through the *process* of litigation

4    what they apparently cannot receive through democratic procedures.

5                                  *PROCEDURAL HISTORY[4]*

6              7/07/14        Plaintiff files his original complaint which comprises 24 pages with an

7    additional 57 pages of material appended.[5]  The First Claim includes two "counts," purportedly

8    grounded in federal law:  Freedom of Speech and Due Process.  The Second Claim comprises

9    eight counts grounded in state law – Slander, Willful Negligence, Negligence, False Light, Civil

10   Conspiracy, Intentional and Negligent Infliction of Emotional Distress, Labor Code Violations,

11   Nuisance and a plea for punitive damages.  The named defendants include the District, Michele

12   Hanson, Patricia Brown, Sharrel Barnes, Robert Winston (District counsel) and Does 1-20.  ECF

13   No. 1.  The Complaint is accompanied by a Motion to Proceed In Forma Pauperis.  ECF No. 2

14            8/6/14         Order grants in forma pauperis status and directs service of the Complaint by

15   the United States Marshal.  ECF No. 3.

16            8/21/14        Before any defendant has answered, plaintiff files a Motion to Amend his

17   Complaint.  ECF No. 6

---

18   [3]  One of the defendants in this case, Roger Gifford, and another plaintiff have filed complaints of
19   that are, in principal part, a mirror of the instant matter.  See Olson v. Hornbrook CSD, et al.,
     2:15-cv-646 MCE CMK, Amended Complaint dismissed with leave to amend not to exceed 25
20   pages. ECF No. 9 (5/18/17); Gifford v. Hornbrook CSD, et al., 2:cv-15-1274 MCE AC, Appeal to
     Ninth Circuit Court of Appeals dismissed for failure to file the opening brief after and Order and
21   Judgment pursuant to F.R.Civ.P 41(b), ECF Nos. 14-20 (6/8/17); Gifford v. Puckett, et al., 2:16-
     cv-955 (Related to instant case, ECF No. 45 (3/29/17)  and Second Amended Complaint
22   dismissed without prejudice and permission to file Third Amended Complaint not to exceed 25
23   pages ECF 55 (4/7/17).
     [4]  Not all elements of this procedural history are directly relevant to the court' decision here, but
24   they are necessary to demonstrate the burden the case has wrought on both the court's docket and
     the defendants' pocketbooks to this stage of the proceedings.
25   [5]  It is important to note that his most recent, and every successive pleading submitted by plaintiff,
26   fail to follow Local Rule of Eastern District of California No. 130(c) which calls for consistent
     double spacing of text.  Instead plaintiff varies between single spacing on documents such as
27   Declarations, and 1-1/2 spacing for pleadings, thus greatly increasing the word quantity found on
     each page of these documents which understates the number of pages actually filed if done so in
28   conformity to the Rule.

8/29/14    Order denies the Motion to Amend without prejudice to its refiling accompanied by the proposed Amendment.  ECF No. 7.

10/9/14    Order to Show Cause within 21 days of the date of the Order why the matter should not be dismissed for failure to serve.  ECF No. 8.

10/30/14    Motion to Amend the Complaint and Response to the Order to Show Cause, ECF No. 9, and the First Amended Complaint, ECF No. 10, are filed by plaintiff.  His response to the Order to Show Cause indicates he needed to wait until some "final 'official acts'" were taken by some of the Defendants.

The Amended Complaint comprised 93 pages – a 38 page Complaint with 55 pages of District Board Minutes and related documents appended, and added state claims for Violation of District Bylaws, Government Code violations, Employment Discrimination, Unfair Business Practices, and Violation of the Covenant of Good Faith and Fair Dealing, some claims split into several counts.  It also added two additional District officials to the defendant list.  ECF No. 10.

12/5/14    Order discharging the Order to Show Cause and denying the Motion to Amend as unnecessary.  In addition the Order identified the defendants upon whom service of the Original Complaint was appropriate[6] and directed the Clerk to issue and the U.S. Marshal to serve process within 90 days of the Order.  ECF No. 11.  The Amended Summons was issued on the same day.  ECF No. 12.

12/29/14    Plaintiff filed a Memorandum regarding the service documents indicating he had filled out all necessary forms and provided copies of all required documents to the U. S. Marshal for service on December 21, 2014.  ECF No. 13.

2/23/15    Defendant Robert Winston files a Motion to Dismiss and to Strike state claims under California's SLAPP law pursuant to Federal Rule of Civil Procedure 12(b)(6) and California Code of Civil Procedure Section 425.16 and sets a hearing for April 16, 2015.  ECF No. 14.

_____

[6] The service list included defendants District, Hanson, Brown, Barnes, Winston, Bowles, Dingman and Goff, thus covering all defendants named in both Complaints – the operative Original Complaint and the draft Amended Complaint.

4

1      3/18/15     Order directs plaintiff to file a statement providing the street addresses for

2 defendants District and Ernest Goff and plaintiff's telephone number within 14 days and warns

3 failure to comply may result in dismissal of the Complaint. ECF No. 17.

4      3/25/15     Plaintiff files objections to the Motion to Dismiss or, in the alternative, for an

5 extension of 45 days in which to file an Opposition. ECF No. 18.

6      3/26/16     Plaintiff provides information called for in the Court's 3/18/15 Order. ECF

7 No. 19.

8      4/1/15     Order grants plaintiff 30 days from the date of the order in which to oppose

9 the Motion to Dismiss, and direct defendant to reply within 7 days thereafter, takes the matters

10 under submission and vacates the calendar for resetting if a hearing is necessary. ECF No. 20.

11      4/22/15     All defendants, sans Robert Winston, file a Motion for Extension of Time to

12 Answer the Complaint to May 22, 2015. ECF No. 23.[7]

13      4/24/15     Order grants extension of time to Answer to May 22, 2015. ECF No. 24.

14      4/28/15     Plaintiff files a letter to the Office of the Clerk of the Court objecting to the

15 appearance of Robert Lucas as not properly qualified to represent the defendant and therefore

16 contending that no defendant other than Winston has answered his Complaint timely. ECF No.

17 26.     On the same date plaintiff files a Request for Entry of Default as to defendants Sharrel

18 Barnes, Julie Bowles, Patricia Brown, Clint Dingman, Michele Hanson and the District based on

19 his contention that attorney Lucas cannot legally appear on behalf of these defendants, ECF No.

20 27, Objections to these defendants' application for additional time to Answer, ECF No. 28, his

21 Opposition to defendant Winston's Motion to Dismiss, ECF No. 29, and a Request for Judicial

22 Notice of LAFCO documents establishing the District as a recognized Community Services

23 District effective December 13, 1977. ECF No. 30. Collectively, plaintiff filed 128 pages of

24 briefing and appended documents.

25      4/30/15     Plaintiff files an objection to the Court's Order granting defendants additional

26

27   [7]  Attorney Robert W. Lucas files this document under a special appearance due to the conflict that disallows Robert Winston, the District's counsel, from doing so in light of his status as a

28 defendant in the lawsuit.

1    time to respond to the Complaint on the ground that attorney Robert Lucas, who specially

2    appeared on behalf of the individual defendants, could not do so and noting that the effect was to

3    put these defendants in default.  ECF No. 31.

4          5/8/15     Defendant Robert Winston files a Reply Memorandum in support of his

5    Motion to Dismiss the original Complaint.  ECF No. 33.

6          5/22/15    The individual defendants file a Motion to Dismiss the Amended Complaint

7    for failure to state a cognizable claim.  ECF No. 35.

8          6/2/15     Plaintiff files a request for permission to engage in written discovery to assist

9    him in his preparation of opposition to defendant Winston's Motion to Dismiss and related

10   SLAPP issues, ECF No. 38, which defendant Winston opposes on 6/4/15.  ECF No. 39.  This

11   opposition is joined by the individual defendants on 6/12/15.  ECF No. 40.

12         6/19/15    Plaintiff files a Reply related to his request for discovery.  ECF No. 41.

13         7/13/15    Plaintiff seeks a 45 day extension of time to oppose defendants' Motion to

14   Dismiss now set for hearing on August 6, 2015.  ECF No. 42.

15         7/22/15    The court issues an Order extending time for plaintiff's opposition to August

16   13, 2015 and defendants' Reply to August 20, 2015 which also vacates the hearing set for August

17   6, 2015 and takes the matter under submission subject to further scheduling.  ECF No. 43.

18         8/12/15    Plaintiff files his Opposition Memorandum and Declarations from two current

19   District Board Members, Roger Gifford, who is also a defendant in the case, and Kimberly Olson.

20   ECF Nos. 46-48.  This submission totaled 95 pages, again single or 1-1/2 spaced pleadings, the

21   last of which contained 92 footnotes.  ECF Nos. 46-48.

22         8/20/15    Defendants Reply and matter is submitted.  ECF No. 49.

23         9/10/15    Court files an Order and Findings and Recommendations denying plaintiff's

24   Motions for early discovery and to amend the complaint and recommends the Motions be

25   dismissed in part and denied in part.  ECF No. 50.  Plaintiff is granted leave to amend and

26   provided guidance on proper pleading under Federal Rule of Civil Procedure 8 in this Order

27   which also directs that "any amended complaint should **not exceed twenty-five pages.**"

28   (Emphasis in Original).  ECF No. 50.

6

1        9/11/15    Defendants filed objections to the foregoing Order on the ground that it gives

2  plaintiff permission to add Robert W. Lucas as a defendant in any amended complaint which they

3  claim to be improper insofar as he is general counsel to the District, and Jason J. Sommer, who is

4  identified as counsel for defendant Winston.  ECF Nos. 51-52.

5        9/10/15    Plaintiff filed a "Memorandum" concerning the 9/15 Order claiming he had

6  not received the Order timely and seeking additional time to file objections.  ECF No. 53.

7  [8]     9/24/15    Plaintiff filed Objections to the Order.  ECF No. 54.

8        3/22/16    District Court Judge Kimberly J. Mueller entered an Order addressing the

9  Magistrate Judge's Findings and Recommendations in which she granted defendants motion to

10  dismiss with leave to amend but denied the right to name attorneys Lucas and Sommers as

11  defendants, and denied defendants' strike motion without prejudice to renewal after plaintiff

12  amends the First Amended Complaint.  ECF No. 55.

13        3/28/16    The Magistrate Judge enters an Order granting plaintiff 30 days from the date

14  of the Order to file a Second Amended Complaint that complies with the Federal and Local

15  Rules.  ECF No. 56.

16        4/22/16    Plaintiff seeks a 30 day extension of time to file his Second Amended

17  Complaint, ECF No. 57, which request is granted on 5/2/16.  ECF No. 58.

18        5/31/16    Plaintiff files his Second Amended Complaint consisting of 164 pages, still

19  not properly double spaced, and 325 footnotes, ECF No. 59, along with a Table of Contents that

20  is in and of itself 5 pages long.  ECF No. 62.

21        6/9/16    By Order defendants are directed to file a response to the Second Amended

22  Complaint within 20 days of its issuance.  ECF No. 64.

23        6/29/16    Defendants file Motions to Dismiss under Federal Rules 12(b)(6) and 41(b),

24  the latter predicated upon plaintiff's failure to adhere to the 25 page limitation placed on him in

25  the Court's Order of September 10, 2015, and Motions to Strike based on the Anti-SLAPP statute

26  to be heard on August 4, 2016.  ECF Nos. 66-70.

27

28    [8]  The court's docket indicates that the Clerk of the Court served the Order by mail on September 10, 2015.

7/12/16     Plaintiff moves for a Preliminary Injunction and Appointment of a Receiver based upon purported failures of the District to operate in conformity with the law.  The entire submission amounts to 104 pages including argument, Declarations[9] and other attachments.  ECF No. 71.

7/19/16     Plaintiff moves to stay all proceedings until all defendants named in the Second Amended Complaint have filed responses so all motions can be heard simultaneously.  ECF No. 75.

7/21/16     Defendants file Oppositions to plaintiff's motions for Preliminary Injunction and Appointment of a Receiver along with supporting Declarations and a Request for Judicial Notice.  ECF Nos. 77-82.

7/22/16     Order removing plaintiffs Motions for Preliminary Injunction and Appointment of Receiver from the court's hearing calendar as not conforming to the Local Rules.  ECF No. 83.

7/22-7/28/16   All defendants file Reply Memoranda.  ECF Nos. 84-86, 90-91.

7/27/16     Plaintiff requests a rescheduling of the hearing scheduled on the pending motions and a 90 day extension of time to Oppose defendants' Motions to Dismiss and Strike,.  ECF No. 88, and files an objection to the Court's Order of July 22, 2016.  ECF No. 89.

7/28/16 and 8/1/16     Defendants object to plaintiff's filings found at ECF No. 88 and 89.  ECF Nos. 92, 96.

8/1/16     Order removes all pending matters from the court's calendar and takes them under submission, also directing that no further motions are to be filed without pre-approval by the court.  ECF No. 95.

8/2/16     Plaintiff files new Motions for Preliminary Injunction and Appointment of Receiver, with Declarations from the same declarants as appeared in the earlier motion pleading, with hearing scheduled for September 22, 2016.  ECF Nos. 97-100.

---

[9]  One of the attached Declarations is signed by *defendant* Gifford, who filed his own lawsuit against the same cast of characters as found in this case, on May 5, 2016.  See Gifford v. Puckett, 2:16-cv-955, ECF No. 1, which was declared related to this case by District Judge Mueller on 3/29/17.  ECF No. 45.

8

8/15/16      Plaintiff seeks postponement of hearings until all defendants are served and joined, ECF No. 103, and files objections to the Court's 8/1/16 Order. ECF No. 103. Defendants oppose any further delay. ECF Nos. 105, 106.

9/12/16      The court issues an Order to Show Cause why plaintiff should not be held in contempt of court for failing to obey the Court's order of August 1, 2016 by filing Motions found at ECF Nos. 97-100 and 103, without first receiving permission from the court and holding these Motions will not be calendared for hearing or considered on the merits at this time. ECF No. 107.

9/20/16      The court files Findings and Recommendations recommending that plaintiff's Second Amended Complaint be dismissed with prejudice and judgment be entered pursuant to Federal Rule of Civil Procedure 41(b) for plaintiff's persistence in filing Complaints far exceeding the 25 page limit placed on such by the court and further failing to follow the court's instructions re content based on the elements of Federal Rule of Civil Procedure 8. ECF 108. The prolixity of this amended pleading was found to make deciphering all the issues an impossibility, made ever fashioning reasonable discovery a nightmare, and would lead to an inevitable slew of motions both on the merits and in discovery.

(It should be noted here that this the pleading on which plaintiff now professes a desire to rest. See infra.).

9/21/16      Plaintiff responds to the court's Order to Show Cause explaining that he wasn't receiving his mail timely as it takes 10-14 days for USPS to deliver mail to his P. O. Box,[10] and sometimes not at all, and thus he had not been aware of the "no filing" Order when he filed new motions. ECF No. 109.[11]

10/3/16      Plaintiff and two of the *defendants* – Sharrel Barnes and Roger Gifford –file Objections to the court's Findings and Recommendations. The filing defendants both contend that, although they are not responsible for any of the derelictions levied against them by plaintiff,

---

[10] The court has never heard of such inordinate delays in mail deliveries nor has it ever received a similar complaint by any pro se litigant residing in distant locations and receiving court served documents by mail.

[11] Plaintiff has never requested to serve and receive filings through the court's ECF system but indicates in ECF No. 109 that even gaining permission to use the ECF system will not solve his problem since access to internet services is "intermittent" in Oregon.

1    they believe his claims against the District and its other officers are true and correct and should be

2    litigated, ECF Nos. 110-112.  Plaintiff Harrell's Objections are found in a 39 page filing that

3    attacks every aspect of the Order as not within the scope of controlling law, attributable to the

4    court's inability to grasp the gravamen of his arguments, and the assertion that he has been

5    "prevented" from opposing various motions brought by defendants among other things.  ECF No.

6    111.

7         10/21/16-11/30/16 – Attorneys for defendant Sharrel Barnes seek to withdraw from

8    representation in light of defendant Barnes's joinder in motions by plaintiff Harrell and defendant

9    Gifford that create a conflict in their representation which is opposed by Barnes, Harrell and

10   Gifford in a flurry of filings.  ECF Nos. 115-123.

11        11/30/16     Motion to withdraw is granted in an Order by the Magistrate Judge and a

12   counter-motion to disqualify all attorneys representing defendants by Sharrel Barnes, ECF No.

13   124, is calendared for hearing.  ECF No. 126.

14        12/6/16-1/13/17 - Another flurry of briefing by all of the foregoing parties and notice of

15   hearing on the counter-motion ensues.  ECF Nos. 128-137.

16        12/29/16     Order directs parties to be prepared to discuss whether severance of

17   defendants Gifford and Barnes into a separate action will resolve pending disqualification issues.

18   ECF No. 131.

19        1/19/17     Hearing on disqualification issue attended only by counsel for defendants.

20   ECF  No. 138.

21        3/29/17     District Judge enters an Order adopting Findings and Recommendations in

22   ECF No. 108, but grants plaintiff leave to file a third amended complaint not to exceed 25 pages,

23   including attachments, and plaintiff is warned that failure to adhere to the court's orders will

24   render amended complaint subject to immediate dismissal with prejudice.  ECF No. 139.

25        4/7 and 4/14/17 – Time for filing of Third Amended Complaint set for April 26, 4017.

26   ECF Nos. 141, 144.

27        4/12/17     Plaintiff Harrell and defendant Gifford file a stipulation for a Good Faith

28   Settlement Order and Judgment.  ECF No. 142.  On May 1, 2017 the court enters and Order

10

1    striking the filing on grounds that the form of the application does not allow other defendants to

2    claim indemnity against defendant Gifford if held liable, there is an unanswered question

3    regarding the use of the state good faith settlement law in the context of this mixed federal/state

4    action, and the absence of an operative complaint to assist in a determination of the effect of any

5    good faith settlement ruling.  ECF No. 150.

6         4/26/17    Plaintiff files a "Response and Objections" to District Judge Order re

7    amendment, ECF No. 139.  ECF No. 148.

8         5/1/17    Order to show cause why Complaint should not be dismissed for failure to file

9    Third Amended Complaint in conformity with orders of Magistrate and District Judge with notice

10   that failure to respond will result in dismissal with prejudice.  ECF No. 149.

11        5/2/17    Plaintiff's Objections to striking of Stipulation for Settlement.  ECF No. 151.

12        5/3/17    District Judge construes the Response and Objections in ECF No. 148 as a

13   Motion for Reconsideration which is denied.  ECF No. 152.

14        5/11/17   Plaintiff and defendant Gifford object to ECF No. 150 striking stipulation for

15   settlement and entry of judgment.  ECF Nos. 154, 155.

16        5/23/17   Plaintiff responds to the 5/1/17 Order to Show Cause by stating that he has

17   declined to amend his complaint pursuant to Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065

18   (9th Cir. 2004).  ECF No. 156 and thus is not in violation of the Court's Order re amendment.

19                                    *DISCUSSION*

20   A.    *Dismissal Under Federal Rule of Civil Procedure 41(b)*

21        This case has been before the court for over three years and has yet to produce a settled

22   complaint.  Nonetheless, the docket is weighted with 156 entries, most of them involved with

23   contentions that ultimately have no bearing on the merits of the litigation and advance the matter

24   not at all.  One defendant in this case, Roger Gifford, also has his own suit which mirrors both the

25   style and, in many cases, the language and approach taken by the plaintiff here.  As the

26   procedural history shows defendant Gifford often joins with plaintiff in resisting actions by his

27   co-defendants, which is in itself more than suspicious of litigation game playing.  The two cases

28   together are redolent with the suggestion that the point is not to bring this matter to trial, but

                                            11

1    rather to burden the principal defendant, Hornbrook Community Services District [Hornbrook],

2    with heavy defense costs.  As the District is unusually small, see n. 1 and accompany text, supra,

3    it is reasonably apparent that the defense costs are burdensome.

4        Based on the foregoing, the natural inclination of the court is to deal with this matter

5    pursuant to Federal Rule of Civil Procedure 41(b) to dismiss with prejudice.  The jurisprudence in

6    this circuit makes clear that when the burden on both the court in terms of its effect on the court's

7    docket and on other litigants, who must stand in line behind the constant attention required to deal

8    with the vexatious case, would support that action.  See, e.g., Nevijel v. North Coast Life Ins. Co.,

9    651 F.2d 671, 674 (9th Cir. 1981)(Dismissal justified where reasonable alternatives were offered

10   to plaintiff to address the defects of verbosity, confusion, and conclusory nature of pleading);

11   Bittaker v. Rushen, 978 F.2d 714, *1 (9th Cir. 1982)(concurrence on grounds);

12   Phenylpropanolamine (PPA) Products Liability Litigation, 40 F.3d 1217, 1224, 1252 (9th Cir.

13   2006)(non-compliance with court management orders where court's expectations were clearly

14   stated renders dismissal the most viable option); California Coalition for Families and Children v.

15   San Diego County Bar Assoc., 657 Fed.Appx. 675, 677-678 (9th Cir. 2016) (two complaints with

16   1,200 and 1,600 pages with attachments dismissed under 41(b)).  The United States Supreme

17   Court has supported the rationale of the foregoing cases, albeit in a dismissal under Federal Rule

18   of Civil Procedure 37, where the plaintiff shows a "callous disregard" of his responsibilities to

19   follow court orders.  National Hockey League v. Metropolitan Hockey Club, Inc., 47 U.S. 639,

20   639-640 (1976).  The situation here mirrors that in the Fifth Circuit case of Barnes v. Tumlinson,

21   598 Fed.Appx. 798 (5th Cir. 2015).  There, the emphasis was on the contumacious conduct by the

22   plaintiff, id. at 798, with plaintiff complaining any page limit imposed by the court was arbitrary

23   and not required by Rule 8, especially in his case where he deemed it "impossible" to fit

24   everything into a "short and plain" pleading, thereby displaying the same kind of stubbornness

25   and contumaciousness displayed by plaintiff here.  Id. at 798-799.

26       Going through the factors pertinent to dismissal for failure to obey a court order leads to

27   the inescapable conclusion that the standards have been met.

28   ////

12

1   Under our precedents, in order for a court to dismiss a case as a sanction, the
2   district court must consider five factors: "(1) the public's interest in expeditious
    resolution of litigation; (2) the court's need to manage its docket; (3) the risk of
3   prejudice to the defendants; (4) the public policy favoring disposition of cases on
    their merits; and (5) the availability of less drastic alternatives." *Hernandez v. City*
4   *of El Monte*, 138 F.3d 393, 399 (9th Cir.1998) (quoting *Henderson v. Duncan*, 779
5   F.2d 1421, 1423 (9th Cir.1986)). We "may affirm a dismissal where at least four
    factors support dismissal, ... or where at least three factors 'strongly' support
6   dismissal." Id. (quoting *Ferdik*, 963 F.2d at 1263). "Although it is preferred, it is
7   not required that the district court make explicit findings in order to show that it
    has considered these factors and we may review the record independently to
8   determine if the district court has abused its discretion." *Ferdik*, 963 F.2d at 1261

9

10  Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999).

11      Of course, the progress of this case has obviously been anything but expeditious

12  (factor 1), and the court's need to manage its docket has been thoroughly explained, supra

13  (factor 2).  There is no risk of prejudice to the genuine defendants in this case (factor 3);

14  the reasons for the previous dismissals were to prevent the prejudice which would occur if

15  the claims are not understandably stated, and discovery would be boundless and

16  uncontrollable without a myopic supervision of the case and adjudication of the countless,

17  inevitable motions.  The court has striven to have the claims understandably defined so

18  that the case could proceed to its merits, but to no avail (factor 4).  And, at this point, with

19  plaintiff refusing to amend further, there is no alternative sanction (factor 5).

20      In the instant case, however, plaintiff has injected a new twist into his resistance of the

21  court's authority that renders Rule 41(b) a possibly less correct means of dealing with his

22  behavior.

23  B.      *Dismissal under Rule 12(b)(6)*

24      In plaintiff's objections to and request for reconsideration of Judge Mueller's Order

25  permitting amendment but limiting the plaintiff to 25 pages of less in so doing, he claims his right

26  to "stand on his complaint," and cites to the Ninth Circuit's decisions in Yourish v. California

27  Amplifier, supra, 191 F.3d 983, 986 (9th Cir 1999), and Edwards v. Marin Park, Inc., 356 F.3d

28  1058, 1065 (9th Cir. 2004).  ECF No. 148 at 9:23-10:7.  Plaintiff sees the actions of this court to

13

1    be arbitrary and capricious and invoked purely because he is proceeding *pro se*, and emphasizes

2    his right to proceed as he sees fit by citing to <u>Faretta v. California</u>, 422 U.S. 806, 813 (1975), an

3    inapt criminal case to these civil proceedings.  <u>Id.</u> at 10:11-11:5.  By invoking this right to

4    "stand," and citing to <u>Yourish</u> and <u>Edwards</u>, plaintiff invites dismissal under Rule 12(b)(6).

5         In <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997)(en banc), the court

6    made clear that a plaintiff who had his complaint dismissed with leave to amend could not

7    immediately appeal that decision since it was not final, but if "a plaintiff files in writing a notice

8    of intent not to file an amended complaint, . . . filing of such a notice gives the district court an

9    opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the

10   action, [an order] that is clearly appealable."  104 F.3d at 1135 (quoting <u>Lopez v. City of Needles</u>

11   95 F.3d 20 (9th Cir. 1996).  The case cited by plaintiff, <u>Edwards</u>, <u>supra</u>, reiterated this holding

12   that a plaintiff  "may obtain an appealable final judgment by 'fil[ing] in writing a notice of intent

13   not to file an amended complaint.'"  356 F.3d at 1064.

14        Thus, when a plaintiff clearly communicates his choice to stand on his complaint he may

15   not have disobeyed the court's Order in such a way as to invite a Rule 41(b) dismissal, but he has

16   transformed the court's threat dismissal for disobedience of its order into a "final, appealable

17   judgment."  <u>Id.</u> at 1064.  In so holding the court noted that there is more than a formal difference

18   between a dismissal under Rule 41(b) and one under Rule 12(b)(6) insofar as the former is

19   deemed a sanction for disobedience while the latter "carries no such stigma," but permits

20   appellate review directly upon the question of whether the plaintiff has stated a claim upon which

21   relief can be granted.  <u>Id.</u> at 1065.

22        There is some question in the undersigned's mind whether <u>Edwards</u> et al., fit the situation

23   here.  In the cases cited, the plaintiff had received a ruling on the merits of the claims, albeit some

24   of the claims had been dismissed for failure to allege facts with specificity, but because of the

25   perceived error of law on the merits, plaintiff was desirous of receiving a final ruling on the legal

26   issues from the court of appeal.  Here, plaintiff contests, not dismissal of his claims on the merits,

27   but the Magistrate Judge's and District Judge's conclusion that the Second Amended Complaint

28   was a hopeless mish-mash of verbose narrative, prolix claims which were entwined with the

14

1   narrative, even in some of the hundreds of footnotes, as well as the order to keep his pleading to a

2   succinct 25 pages—a procedural ruling and not a ruling on the legal merits of claims.  It is

3   difficult to conceive that such becomes a determination that specific claims lacked a legal basis, a

4   point at which the court has been unable to arrive.  The point of the previous dismissal with leave

5   to amend was that the prolixity denied defendants a fair opportunity to identify and respond to the

6   claims.

7         But perhaps the rule conundrum is now a distinction without a difference.  If plaintiff

8   receives a Rule 41 final dismissal, it is appealable; if he receives a Rule 12 dismissal, it is

9   appealable.  Although the standards for review of the different dismissals are different, the facts

10  and rulings germane to the appeal do not change simply because a different rule number is

11  applied to decide them in this court.

12                                    *CONCLUSION*

13        But for plaintiff's invocation of <u>Edwards</u>, et al., this court has no doubt that the

14  contumacious behavior of plaintiff would meet all the criteria for a Rule 41(b) dismissal.

15  <u>Edwards</u>, however, may require a dismissal pursuant to Rule 12(b)(6) which will allow the Ninth

16  Circuit to review the entirety of the record and determine whether plaintiff may proceed with this

17  litigation.  The best way to resolve this case is to issue alternative rulings.

18        In light of the foregoing, IT HIS HEREBY FOUND AND RECOMMENDED that:

19        1.       Plaintiff's Second Amended complaint be dismissed with prejudice pursuant to

20  Federal Rule of Civil Procedure 41(b) for failure to obey a court order, or in the alternative

21  pursuant to Rule12(b)(6) for failure to state a claim;

22        2.       Judgment should be enter and the Clerk of the Court should close this file.

23        This Findings and Recommendations is submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

25  being served with these findings and recommendations, the parties may file written objections

26  with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

27  and Recommendations."  The parties are advised that failure to file objections within the specified

28  /////

                                         15

time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

(9th Cir.1991).

DATED:  August 14, 2017

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

16

# EXHIBIT 12

Peter T. Harrell, In Pro Per
PO Box 131,
Ashland, OR 97520
peterharrell@yahoo.com (do **NOT** use for service)



**FILED**

JAN 0 4 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Peter T. Harrell,      )
                       )   Case No: 2:19-CV-0031 KJM AC (PS)
        Plaintiff,     )
                       )   **COMPLAINT**
    vs.                )
                       )   **(JURY TRIAL REQUESTED)**
Clint Dingman; Peter Kampa; Michele    )   ACTION AT LAW FOR CIVIL RIGHTS
Hanson; Robert Winston; Hornbrook      )   VIOLATIONS; VIOLATIONS OF SAFE
Community Services District ("HCSD"); and )   DRINKING WATER ACT and CLEAN
John Does 1-30,        )   WATER ACT; ADA; STATE CLAIMS
        Defendants,    )
                       )   REQUEST FOR INJUNCTIVE AND
                           DECLARATORY RELIEF

                           USC 42 §§1983, 1985, 1986, and 1988.
                           USC 18 §§1346, 1513(e).

**I. Jurisdiction.**

1. Jurisdiction over this action arises pursuant to Sections 1331, 1332, 1342, and 1343 of
Title 28 of the United States Code, as an action arising under the Constitution and laws of the
United States, specifically Amendments 1, 4, and 14 of the United States Constitution, the Clean
Water Act[1] ("CWA"), the Safe Drinking Water Act[2] ("SDWA"), Title 18 sections 1513(e) and
1846 of the United States Code, and sections 1983, 1985[3], 1986, and 1988 of Title 42 the United
States Code, as an action seeking redress of grievances for violations of rights and privileges
secured to Plaintiff by the Constitution and Laws of the United States[4], and for retaliation against

---

[1] At Section 505 thereof.
[2] See generally 42 USC § 300j. Plaintiff also had a statutory right to be free of retaliatory actions by the
Board Defendants concerning his complaints of violations of the Act pursuant to 42 USC § 300j-9(i).
[3] Specifically, it is alleged that various defendants specifically conspired with each other, in their
individual capacities, and/or as public officers, to violate Plaintiff's Constitutional rights.
[4] Plaintiff also seeks relief as to the HCSD and the state-actor defendants pursuant to *Monell v. Dept. of
Social Services*, 436 US 658 (1978) as may be applicable.

Complaint for Civil Rights Violations; Pendent State Claims- 1

Plaintiff, and interference with the free exercise of his rights, by the Defendants. Supplemental jurisdiction is asserted over Plaintiff's pendent state law claims for relief. The factual assertions, events, and claims set forth in this Complaint are encompassed within the time period of December 28, 2016, through and including December 30, 2018, all occurred during that time period, and also refer to conduct which is ongoing as specified herein.

2. Plaintiff Peter T. Harrell is a citizen of the State of Oregon, so subject to its jurisdiction and laws, as well as being a property owner, taxpayer-citizen, and water consumer within the boundaries of the Hornbrook Community Services District[5]. This action is also brought in the name of all persons similarly situated to Plaintiff, and as a Private Attorney General where permitted by law, and as provided by the HCSD Bylaws[6] at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030. Each of the named individual Defendants is a citizen of the State of California, and subject to its jurisdiction and laws.

3. While reference in this complaint may be made to acts, events, and statements made at purportedly public meetings of the HCSD Board, and/or that are tangentially related to litigation, it is not Plaintiff's intention to base any state law, or common-law tort, cause of action on any expression of First Amendment rights occurring by any person or entity at any *lawful* meeting or proceedings.

4. Plaintiff timely provided written notices of the basis for all his state claims set forth herein to the HCSD in full compliance with all requirements of Government Code sections 905, 910, and 915. The HCSD failed to respond to these notices in any way

5. Defendant HCSD is a public agency within the County of Siskiyou, created, and operating as a municipal corporation and special district[7] under the laws of the State of California, the United States, and its own Bylaws, and subject to their jurisdiction. The HCSD is governed by a five member Board of Directors, which shall be referred to herein as "the Board".

6. At all times material, Defendants Clint Dingman ("Dingman"); Michele Hanson ("Hanson"), Peter Kampa ("Kampa"), and Robert Winston ("Winston"), and John Does, were officers, employees, contractors, and/or agents of the HCSD, and/or of each other, and acting under color of law and of the offices of their own official positions and/or employment with the HCSD, as well as the office of Defendant Hanson as Director and Secretary of the HCSD, and/or

---

[5] The Hornbrook Community Services District shall be referred to herein by the acronym "HCSD".
[6] The HCSD Bylaws, including numerous specific voter control requirements, were adopted by the Board of Directors on April 18, 2018.
[7] Special Districts are primarily controlled by California Government Code sections 61000, *et seq.*

Complaint for Civil Rights Violations; Pendent State Claims- 2

the offices of the other Directors on the Board of the HCSD. All natural person Defendants named herein were, and are, citizens and residents of the State of California, and subject to its jurisdiction.

## II. Duty of HCSD, and its Contractors, and Employees.

7. Each of the Defendants owed a fiduciary duty[8] to the District, and to each property owner and water customer in the District[9] to: maintain the District's finances in a solvent and efficient manner; to correctly bill for and collect all charges and fees due to the District[10] as well as those fees and charges previously billed but unpaid; to apply for and obtain grants and other funding available for the maintenance, upgrading and repair of the Districts facilities[11]; to establish, set, and collect, rates, charges, and fees sufficient for the ongoing proper operations, maintenance, repair, and expansion of the HCSD's facilities; to refrain from improper gifts of public funds and other wrongful diversions of public moneys to their friends, co-conspirators, and favored acquaintances; and, to maintain the entire water production, treatment, and distribution system in good repair and safe operation (inclusive of only hiring, and staffing facilities with, qualified and State-certified personnel) - all in a manner that provides for necessary upgrades and new facilities as required by law. These Defendants recklessly and/or knowingly failed in those duties, and/or willfully acted contrary thereto. This nonfeasance, and/or malfeasance also deprived Plaintiff of the right to honest services by elected officials, public officers, and public employees (Title 18, Section 1346 US Code).

## III. The Status and Agency of the Defendants.

8. All claims are brought against the natural person Defendants their individual, as well as any official capacities. It is Plaintiff's intent that this Complaint be read as a whole, but without unnecessary repetition, and so the specific factual allegations in any of its parts are intended to be applied to each Defendant as logic dictates or reasonably permits, as well as the reasonable inferences arising from any allegations - regardless of where such might appear in the

---

[8] The fiduciary duty of the Directors is enshrined in State law at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. The HCSD Bylaws provide qualified persons may bring an action on behalf of that duty at Section A-9(26), and also provide certain charges may not be waived, and rates may not be reduced without voter approval, and that any Director(s) doing so are liable for the lost income to the District (Section A-9(1); 1-3.010).

[9] HCSD Bylaws at A-9(26); Water Code sections 31007, and 71616.

[10] Including a $39 per parcel "standby fee" by the 1996 Bylaws, and ratified as Section A-9(13) in the April 18, 2014 Bylaws. The Defendants took wrongful action(s) to nullify, and/or failed to initiate, the collection of fee as mandated by the Bylaws, imposed improper rate increases without due process dictated therein, and changed portions thereof without the required voter approval.

[11] See also HCSD Bylaws at Section A-7.

Complaint for Civil Rights Violations; Pendent State Claims- 3

Complaint.

9. Each of the Defendants, individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, managing agents, owners, masters and servants, ostensible agents, principals, co-conspirators and/or partners of one another. In engaging in the conduct described, Plaintiff is informed, and so reasonably believes, that each Defendant was at all times acting with the knowledge, consent, approval, encouragement, aid, agreement, and/or subsequent ratification of each of the remaining co-Defendants, and under the color of law of the position and authority of the HCSD-agent Defendants and/or other HCSD Directors and employees as public officers.

10. Each of the Defendants caused and is responsible for the herein-described wrongful, unlawful, and/or tortious conduct and resulting injuries by: personally participating in the unlawful conduct or acting jointly, aiding, abetting, or conspiring with others who did so; by knowingly authorizing, ratifying, encouraging, agreeing to, aiding, acquiescing in, or setting in motion, policies, plans or actions that led to the unlawful conduct or, although lawful in and of itself, was in furtherance of other, unlawful, wrongful, and/or tortious conduct; by failing to take action to prevent the unlawful and/or wrongful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the Constitution and laws of the United States, the State of California, and/or the HCSD Bylaws; and, by failing to initiate and maintain adequate training and supervision over agents, contractors and/or employees; and, by ratifying the wrongful or unlawful conduct that occurred by themselves, as well as any agents and officers under their direction and control.

11. The acts of the Defendants and their agents, as described in this Complaint, were part of a systematic and ongoing pattern of events that were calculated by these Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to injure Plaintiff financially and physically, to interfere with Plaintiff's enjoyment and use of his property, and to seize and convert his personal property without due process or compensation - all with deliberate indifference to Plaintiff's Constitutional and statutory rights, and to the harms inflicted upon him..

## DEFENDANTS

## IV. DEFENDANT MICHELE HANSON.

12. Defendant Michele Hanson ("Hanson") is a citizen of Siskiyou County, California, and an HCSD Board member, as well as the Secretary of the Board - one of three "officer" positions.

Complaint for Civil Rights Violations; Pendent State Claims- 4

13. Hanson, acting under color of law and of her office as Director and Secretary of the HCSD, initiated the common plan, agreed to, adopted, aided, abetted, encouraged, and ratified by Dingman, Kampa, Winston, and the HCSD, to operate the HCSD, and to create, institute, and enforce policies, customs, and practices, all in violation of Federal, State, and local laws as set forth herein[12], and to act on those policies by undercharging and waiving fees and/or charges for certain customers; failing to impose and collect the "standby fee" as to each parcel in the District as provided by law and the HCSD Bylaws; failing to comply with California Water Code, sections 31007 and 71616; and, permitting Hanson to exert supervisory functions[13] as to Dingman. Hanson also encouraged and permitted Dingman to reside at the HCSD water treatment plant without cost to him, while the public paid for the dramatic increase in utility costs occasioned by Dingman's personal use of those facilities.

14. When Dingman's negligence led to destruction of part of the water plant in July of 2018, Hanson, Kampa, and Dingman all acted to "cover up" that negligence, and to have Kampa wrongfully usurp the contracting power of the Board, and to engage in self-dealing relating to the repairs to the HCSD facilities. Later, Hanson, Winston, Dingman, and Kampa conspired to allow Dingman to move his travel trailer, inoperable vehicle, and other items onto the lot where the water treatment plant sits so that Dingman could occupy that trailer, the lot, and the water plant building for his personal uses free of charge. These benefits and payments to Dingman were unlawful gifts of public funds, and amounted to "bribes" to go along with Hanson and Kampa's plans and goals, thus their grant and acceptance were corrupt acts.

15. Hanson further conspired with Kampa to *ex post facto* and unilaterally purportedly approve[14] intervention by certain lawyers and/or legal firms in several Siskiyou County Superior Court matters, as well as matters in the Third District Court of Appeals, without any BOD approval prior to appearances therein[15]. Hanson, Kampa, and Winston also conspired to have Winston submit claims for billing in cases were he was never approved for representation of the HCSD, and/or in which he never took any action in the case on behalf of the HCSD, yet

---

[12] This included the plan to have Winston (without lawful authority) ghost write purportedly official documents of the HCSD, along with various notices, resolutions, bylaws, declarations, contracts, and letters, all supposedly written by Hanson.
[13] This also included telling Dingman which meters to read and which to ignore, etc. A director may not act in an executive authority, or as the "general manager" of a District per Govt. Code §61040(e).
[14] That is to say Hanson did so without any corresponding lawful authorization to do so, nor any resolution of the HCSD pursuant to the requirements of Govt. Code 61045.
[15] Each appearance without BOD approval constituted a violation of Bus. & Prof. Code §6104.

Complaint for Civil Rights Violations; Pendent State Claims- 5

(fraudulently) billed it for tens of thousands of dollars anyway[16]. The goal of this plan was to divert public funds of the HCSD to benefit Hanson[17] and her conspirators. Hanson thereafter conspired with Kampa and Winston to conceal all records and documents of these acts[18].

16. From December 28, 2016, through and including December 30, 2018, Hanson, the HCSD, Dingman, and Kampa, specifically agreed, conspired, and acted to have Dingman work on, repair, and operate (including by the addition of chemicals to the water supply) the HCSD water production, treatment, and distribution facilities without any certification, or license to do so, all in violation of the provisions of Health and Safety Code sections 106877, 106878, and 106885, as well as 22 California Code of Regulations sections 63765 and 63770. Hanson and these same defendants, at that time and thereafter, conspired and acted to wrongfully thwart all attempts by Plaintiff, and other members of the public, to monitor, report, and/or correct the nuisance(s) *per se* caused by such acts and actions, including by failing to disclose their actions via the agendas of regular meetings of the Board of the HCSD, and by failing to timely and properly respond to requests made pursuant to the California Public Records Act ("CPRA" hereinafter).

## V. DEFENDANT HORNBROOK COMMUNITY SERVICES DISTRICT

17. Plaintiff incorporates the facts set forth in the foregoing paragraphs 12 - 16 as if fully set forth at this point.

18. The HCSD has inadequate facilities that violate Clean Water Act[19] and Safe Drinking Water Act[20] requirements. Each of the Defendants have agreed to institute, instituted, and continued an institutional policy, custom, and practice of the HCSD of willfully failing to address those known deficiencies, and failing to comply with laws and duties[21] as set forth in this

---

[16] This included at least two cases wherein Winston was a co-defendant of the HCSD, and so barred from representing it at all.
[17] During the period material to this Complaint, Hanson and Winston conspired to bill the HCSD for at least one private legal matter of Hanson's, and to have the HCSD actually make payments to that account.
[18] This included destruction of public records, and violation of the CPRA. when citizens came looking for records.
[19] 33 USC §§1251, et seq. The HCSD has for many years, and ongoingly, knowingly permitted outflow of one of its wells containing high levels of salts and boron into Rancheria Creek, thence to Cottonwood Creek, thence to the Klamath River, which is designated as "wild and scenic" under federal law.
[20] 42 USC Chapter 6A; 40 CFR 141-143. The HCSD's water production, treatment, and distribution equipment is obsolete, and does not meet the requirements of the Act, while the HCSD permits uncertified and unlicensed Operators, contractors, and other workers on its systems in violation of law.
[21] For example, the HCSD has failed and refused to establish rates and charges as required by Water Code §§ 31007, and 71616; failed to properly staff its facilities in violation of the Health and Safety Code; failed to maintain and upgrade the wells and surface water facilities to current engineered standards, all in

Complaint for Civil Rights Violations; Pendent State Claims- 6

Complaint.

⬛. Insofar as the allegations in this complaint are made against the named Defendants in their official capacities as persons with direct control over the creation and enforcement of policies, customs, and practices of the HCSD (whether written or unwritten), and the claims made herein arise under color of law and of the public offices of the Defendants, it is also Plaintiff's intention to apply those allegations, and claims arising therefrom, to the HCSD.

20. The HCSD and other named Defendants have for years been aware of a long-running problem with "well 3", which permits the constant outflow of water containing high Boron and salt levels into Rancheria Creek (a violation of State law, and the CWA). Plaintiff and others (inclusive of various governmental agencies) have notified the HCSD of this pollution, but no efforts to correct the violation (such as by gathering and storing the output for fire suppression purposes, or diverting the outflow for treatment and addition to the water supply), has been forthcoming by the HCSD or any of its officers.

21. During the times material to the Complaint, the HCSD purported to enact rate changes, waivers of fees and charges for certain customers, and rate increases allegedly in compliance with California's Prop 218 and the HCSD Bylaws, but in fact it failed to so comply. Further, the HCSD, Hanson, and Kampa, acted willfully to particularly deprive Plaintiff, and other property owners within the HCSD boundaries, proper notice of the proposed rate increases as required by Prop 218, and also failed to permit the electors of the HCSD to vote on the rate increases and/or changes and waivers of fees undertaken by the Defendants during the times material to the Complaint.

22. During the times material to the Complaint, the HCSD purportedly enacted several resolutions (as well as "underground" policies and practices) delegating the authority of its Board to contract, and to expend public funds, to Kampa and/or Winston - all of which were contrary to public policy, illegal, and void, as were each of the actions taken by Kampa and/or Winston under such purported authority. The general law of California prohibits a municipality from delegating legislative powers unless expressly authorized by the Legislature (see *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 167), from contracting away, or otherwise delegating its powers (*City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 929) , and/or by trying to circumvent such prohibitions by means of some sort of clever legal contortions. (See

violation of federal and state law, resulting in water shortages and safety hazards to Plaintiff and the public.

Complaint for Civil Rights Violations; Pendent State Claims- 7

71 Ops.Cal.Atty.Gen. 266, 275 (1988) [holding "[i]nasmuch as a school district may not delegate to a private person or entity the ultimate responsibility to contract on its behalf...."].)

23. The firmly established common law rule is "that legislative action is only valid if it has been approved by a majority of the members elected." (2 Martinez, Local Government Law (2008) Processes of Governance, § 11:9, p. 11-55.) This rule finds specific expression in the Government Code provisions relating to the boards of special districts such as the HCSD. Under Government Code section 61045(a), " A majority of the total membership of the board of directors shall constitute a quorum for the transaction of business", while under section 61045(b), "[t]he board of directors shall act only by ordinance, resolution, or motion."   In addition, under the Ralph M. Brown Act, Government Code section 54950 et seq., "`action taken' means a collective decision made by a majority of the members of a legislative body . . . ." (Gov. Code, § 54952.6. All acts by the HCSD, and/or those taken by any of the Defendants as its officers, employees, and/or agents which are in contradiction to this jurisprudence are void on that basis, and as against public policy, and Plaintiff is entitled to declaratory and injunctive relief from all such acts as they are set forth herein, and/or discovered during litigation.

24. Plaintiff also alleges that the Defendants each and all engaged in various violations of the law as a means to advance their wrongful goals, plans, and torts as set forth herein - including by using serial meetings in violation of the Brown Act. In general, a serial meeting in violation of the Brown Act occurs through a (1) "hub - spoke" or (2) "daisy-chain."

25. A hub-spoke distribution is a system of connections arranged like a wire wheel.  One individual member acts as the hub, or the center of the wheel and feeds and receives information to and from other members. "The hub-spoke version of a meeting occurs when one board member, or representative of a board member, individually contacts other members to discuss an item of business or transaction ." "When a person acts as the hub of a wheel (member A) and communicates individually with the various spokes (members B and C), a serial meeting has occurred." (California Attorney General's Office, "The Brown Act: Open Meetings for Local Legislative Bodies 11 (2003).) This centralized network system allows one person to coordinate messages and create a concerted plan to engage in public business through a series of communications that violates the Brown Act. "The daisy- chain meeting occurs when one member calls another to discuss business and the second member calls a third to discuss the conversation, and so on." (Mallett, *supra*, fn16 at p.1076) "For example, a chain of communications involving contact from member A to member B who then has  communications with member C would constitute a serial meeting in the case of a five-person body."  (California

Complaint for Civil Rights Violations; Pendent State Claims- 8

Attorney General's Office, *supra*, fn20 at 11.) This sequence of relaying information from one person to the next, like a chain link, is similar to the game of "telephone," and violates the Brown Act.

26. Independent contractors to public agencies (such as lawyers) who serve in advisory positions that are frequently held by public officers and employees, are subject to the Brown Act, and conflict of interest laws, including Government Code section 1090. Specifically, "independent contractors whose official capacities carry the potential to exert considerable influence over the contracting decisions of a public agency may not have personal interests in that agency's contracts." (*Hub City Solid Waste Services, Inc. v. City of Compton* (2010) 186 Cal.App.4th 1114, 1124-1125; see also *California Housing Financing Agency v. Hanover* (2007) 148 Cal.App.4th 682 [concluding that an independent contractor who performed a public function by participating in the making of contracts was an "employee" for purposes of inclusion under section 1090]; *Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533; *People v. Gnass* (2002) 101 Cal.App.4th 1271; *Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278, 291; *Terry v. Bender* (1956) 143 Cal.App.2d 198, 206-207; 70 Ops.Cal.Atty.Gen. 271 (1987).)

27. As the California Attorney General has stated "[i]t seems clear that the Legislature in later amending section 1090 to include 'employees' intended to apply the policy of the conflicts of interest law ... to independent contractors who perform a public function and to require those who serve the public temporarily the same fealty expected from permanent officers and employees." (46 Ops.Cal.Atty.Gen 74 (1965).) This concept has been specifically applied to lawyers in *Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533 [contract city attorney]; also 70 Ops.Cal.Atty.Gen. 271 (1987) [contract city attorney].) Plaintiff alleges that the Defendants herein (as well as any lawyers, contractors, or agents participating in, or facilitating the improper and/or illegally-closed meetings of the HCSD, Hanson, and/or Kampa) have violated the Brown Act using the mechanisms discussed in the foregoing authorities for the purpose of advancing the wrongful goals and plans set forth in the sections relating to the natural person Defendants, and so those factual assertions are incorporated herein at this point.

## VI. DEFENDANT PETER KAMPA

28. Defendant Peter Kampa ("Kampa") is a citizen of Tuolumne County, California, and the HCSD contracted General Manager via his solely-owned, shell corporation "Kampa Community Solutions". Kampa is also the direct supervisor of Defendant Dingman, and is responsible for "day to day operations" of the HCSD per Government Code section 61051. Kampa in that capacity is bound by his contractual and statutory duty to oversee the daily

Complaint for Civil Rights Violations; Pendent State Claims- 9

operations of the HCSD, to supervise its employees, to effect the policies mandated by law, the Bylaws, and as directed by the Board, and to deal with customer concerns.

29. At no time has Kampa actually done any of these things, instead simply using the phone from his residence in Southern California to make calls to the HCSD Board meetings, as well as *ex parte* communications via phone and email to the individual Board members, Dingman, and Winston (all in violation of the Brown Act, and to facilitate such violations by the other Defendants). Neither Kampa (nor Kampa Community Solutions) had, or have, a license to operate within the County of Siskiyou, where the HCSD facilities are located, and has thus also been engaged in unfair business practices on that basis (in addition to the other allegations set forth in this Complaint) as defined in California Bus. and Prof. Code section 17200, et seq.

30. Kampa agreed with, assisted, aided, abetted, facilitated, and participated in the wrongful conduct described in the sections relating to Hanson, Dingman, and Winston (each of which, to the extent relevant, is incorporated at this point as if fully set forth), while also being responsible for that wrongful conduct attributable to the HCSD by virtue of his official position as a controlling officer and General Manager within that agency.

31. In regards to Dingman's unlawful seizure, conversion, and destruction of Plaintiff's personal property (cameras and related equipment) without due process of law, Kampa failed to prevent or cure the wrongful acts by Dingman, and after being informed thereof, agreed and acted with Dingman to aid and abet Dingman's unlawful actions concerning that property.

32. Beginning on July 5, 2018, Kampa also agreed and acted with Defendants Hanson and Winston to have the HCSD wrongfully and unlawfully delegate Legislative authority of the Board to Kampa so that Kampa could engage in denial of assistance by volunteers, no-bid awards of contracts, and approval of grossly inflated charges by his associates in dealing with the aftermath of the Klamathon Fire. Kampa also drafted and proposed an additional contract for "consulting services" which baldly violated the self-dealing provisions of Government Code section 1090. All of these actions by Kampa were for the purpose of his wrongful personal gain, caused waste of public funds, unlawful gifts of public funds, loss of use by Plaintiff of his property, loss of enjoyment of Plaintiff's property, and extreme emotional distress to Plaintiff.

## VII. DEFENDANT CLINT DINGMAN.

33. At all times material, Defendant Clint Dingman ("Dingman") was an officer, employee, and agent of the HCSD, acting under color of law and of those offices.

34. Dingman, Kampa, and Hanson, conspired, agreed, and acted to: wrongfully provide compensation, benefits, indemnification, and/or other pecuniary and/or non-pecuniary benefits to

Dingman amounting to gifts of public funds[22]; arrange payments to Dingman for "work hours" which Dingman did not actually undertake or perform; arrange payments to Dingman which were not contractually specified; arrange payments to Dingman which were granted outside of an agendized, public meeting of the Board of the HCSD, and/or which constitute gifts of public funds; and, ratify, assist, and aid Dingman's conduct in assaulting Plaintiff and seizing and converting Plaintiff's property without due process of law.

35. On or about August 10, 2017, while Plaintiff was lawfully taking photos of the water treatment facility to document Dingman's wrongful use and occupation thereof, Dingman reached over the fence surrounding the facility and grabbed Plaintiff's Samsung PL210 camera, damaging it, and rendering it inoperable. Dingman then opened the gate to the facility and attacked Plaintiff, injuring him. During the attack, Dingman stated that one of his reasons for doing so was that Plaintiff has filed "lawsuits" against Dingman and the HCSD. Dingman's acts in so doing were without any lawful basis.

36. Between the period of October 13, 2017, and December 10, 2018 Dingman vandalized, seized and converted to his own use, Plaintiff's property consisting of two Browning Trophy Cam Essential E2 12 Mega pixel trail cameras, mounted in trees on public property alongside the freeway, and overlooking the HCSD water plant parking lot. The trail cameras were mounted with screw-in and swivel type mounting posts, and secured to the trees using Master Lock Python 3/16" black locking cables about 10' off the ground. Each camera had a full set (8) of AA Lithium batteries (primary cells - not rechargeable), as well as a 32 GB SD card. In order to seize the cameras and related equipment, Dingman used the HCSD's tools and equipment to access them, and to cut the locking cables.

37. When confronted about the theft of the cameras, Dingman claimed that they were on "private property" while also illegally placed and operated, so it was lawful for him to take them down and keep them. Plaintiff duly reported the theft of the cameras, including photos of their hand-painted designs and specific configurations, to the Siskiyou County Sheriff's Department, who determined that Dingman refused to return Plaintiff's property unless Plaintiff could provide the "serial numbers" - even though Plaintiff also had the keys to the Master Lock cables cut by

---

[22] Including, but not limited to: occupying the water treatment plant of the HCSD as a residence, and using that facility for storage and use of Dingman's personal appliances and other property without payment of any compensation or payment for utilities used by Dingman; using the water treatment facility yard to store inoperative vehicles and other personal items; and, allowing Dingman to place his travel trailer onto the water treatment facility lot rent-free and occupy it there in violation of Siskiyou County Ordinance.

Dingman.

38. Thereafter, Plaintiff contacted Kampa, as Dingman's direct supervisor, concerning the return of the property, but instead of arranging for that return, or any due process concerning Dingman's seizure of the property, Kampa and Dingman conspired to convert the property instead, and to "cover up" the event.

39. From on or about June 1, 2018, through and including July 5, 2018, Dingman conspired, agreed, and acted with, Defendants Hanson and Kampa to wrongfully and willfully fail to reasonably maintain the facilities of the HCSD water treatment plant in a safe manner by mowing and weeding around it. The willfully negligent failure by Dingman, Hanson, and Kampa to maintain the facility resulted in destruction of the facility by fire on July 5, 2018, and a resultant loss of water to Plaintiff and the entire community of Hornbrook for many days during a fire emergency, as well as weeks thereafter of contaminated water, and water shortages.

40. Dingman, in agreement, cooperation, and coordination with Hanson and Kampa, has wrongfully failed to comply with the Bylaws of the HCSD (and his contract) relating to qualifications for employment[23]; wrongfully, corruptly, and illegally interfered with the rights of Plaintiff to document, speak out, and take legal action concerning violations by these persons of the HCSD Bylaws as well as State and Federal laws concerning operation of the HCSD; retaliated against Plaintiff using physical violence, intimidation, and other means for Plaintiff's exercise of his rights to Free Speech and access to the courts; failed to use the "creek diversion" of the HCSD and associated water rights, thus jeopardizing those rights; and, failed to read the meters of each of the customers of the HCSD so due and proper fees would be collected.

41. Dingman has billed for, and received payment for, hours which he did not actually work, and/or for which he had already been paid, or for hours and rate of pay in excess of his contract terms[24], all in violation of the State False Claims Act, and which payments are also gifts of public funds[25].

42. Dingman's wrongful, illegal operation of the water production, treatment, and

---

[23] Dingman, in operating the water production, treatment, and distribution facilities without proper certifications by the State of California, was acting in violation of Health and Safety Code sections 106875, and 106885, and 22 California Code of Regulations sections 63765 and 63770. His violations of the HCSD Bylaws is also a misdemeanor pursuant to California Government Code 61064(a).
[24] Cal. Const., Art. IV, § 17.
[25] Cal. Const., Art. XVI, § 6; Govt. Code §8314.

Complaint for Civil Rights Violations; Pendent State Claims- 12

distribution facilities of the HCSD[26] as set forth, in conspiracy with, and at the behest of the HCSD, Hanson, and Kampa, has been willfully negligent, unlawful, and a nuisance *per se*[27].

## VIII. DEFENDANT ROBERT WINSTON.

43.   Defendant Robert Winston ("Winston") is a citizen of Siskiyou County, and an agent of the other Defendants, particularly the HCSD, Hanson, and Kampa - who knowingly, and corruptly[28], while acting under color of law and in a position equivalent to that of a public employee and officer, conspired with, directed, assisted, aided, abetted, and failed to take affirmative action to prevent or cure, the other Defendants' acts in violating the HCSD Bylaws, Brown Act, the Political Reform Act, Government Code section 1090, the SDWA, the CWA, the Health and Safety Code, Water Code, Government Code 61000 *et seq*, and in chilling, and violating Plaintiff's statutory and Constitutional rights, all as set forth herein and in the sections detailing the conduct of each of the other Defendants.   Winston knew the goals and acts of his co-Defendants, and his own, were contrary to law, and/or tortious, and agreed to assist them in accomplishing their goals and plans. During the times material to this Complaint, Winston also engaged in unprofessional conduct, and acts which were contrary to the provisions of the Business and Professions Code, at Sections 6067, 6068, and 6104.   Such activity also constituted and unfair business practice as described in California Business and professions Code section 17200, et seq.

44.   Winston and the Board Defendants agreed to, and thereafter cooperatively engaged in, , a series of non-public meetings, held by telephone, email, letter, in Winston's Yreka office, and other places outside of the District boundaries, and all otherwise in violation of the Brown Act[29], to improperly, wrongfully, corruptly, and unethically grant Winston purportive authority to jointly represent the Board Defendants, and/or the HCSD itself, and to "self-assign" to cases[30].

---

[26] See 22 California Code of Regulations §§63765, and 63770; California Health and Safety Code §§106875, and 106885.
[27] See California Civil Code section 3479; Code of Civil Procedure section 731.
[28] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)
[29] Insofar as the HCSD, Hanson as a Board member thereof, Kampa as General Manager, and Winston himself when acting as a public contractor and officer were subject thereto, and/or facilitated such violations by being part of a "daisy-chain" and/or "spoke and wheel" meeting violation by HCSD officials.   Plaintiff does not mean to imply that Winston himself, when acting as a private party, is subject to the Brown Act.
[30] Among other issues, this is an unlawful delegation of Legislative authority, and violates Govt. Code section 61045. However, Winston also actually claimed to the HCSD to be counsel for it in some matters where Winston was a co-defendant, or otherwise never took any action whatever on behalf of the HCSD, so in those instances, such acts are also false claims.

Complaint for Civil Rights Violations; Pendent State Claims- 13

However, any actions taken relating to the filing of pleadings, or any act or testimony before a tribunal in the cases do not relate to any of the State claims, or causes of action herein, but circumstance of their initiation, the planning therefore, the creation of the false allegations and public records, the false claims for payment for services, the submission to the HCSD of claims for payment for Hanson's personal legal matters, and the various documents and acts relating thereto prior to any such acts or testimony, are.

45. On information and belief, Plaintiff alleges that Winston agreed to, ratified, and acted in furtherance of the conspiracy with the other Defendants to violate the laws, Bylaws, and Rules as aforesaid by: wrongfully instructing the Board Defendants when to hold non-, incompletely, and improperly-noticed "Board meetings"; what to place on agendas (and what not to place on agendas, and/or discuss at public meetings); what actions the Board Defendants should actually take at meetings; by drafting proposed resolutions, proposed Bylaws, notices, letters, invoices, demands, and other documents for use at those improperly-held meetings and at other times - all under color of law of the HCSD's Director's (including Hanson's) offices; by failing to provide proper, complete, honest, truthful, and timely billing statements for services allegedly rendered to the HCSD and/or certain Directors of the HCSD when asked in order to wrongfully conceal his improper billing and diversion of public funds by the other Defendants; and, by arranging for, and holding, private, illegal meetings[31] with the Board Defendants, Kampa, Hanson, and/or Dingman at his Yreka office, and other places, and by telephone and email, for the purpose of: advancing the agreed-upon goals of the conspiracy; to wrongfully participate in improper "closed session" meeting held by the Board Defendants in violation of the provisions of the Brown Act; to wrongfully exclude the public (and Plaintiff), from what should have been publicly-noticed and agendized meetings; and to intimidate, harass, annoy, and coerce Plaintiff into abandoning his statutory and constitutional rights in his attempts to report to governmental agencies, and stand against, wrongful acts of the Defendants.

46. On information and belief, Defendant Winston, at all times material, agreed to, encouraged, aided, and abetted the other Defendants in violating Plaintiff's rights by: refusing to provide, and concealing, public records of the HCSD from Plaintiff; drafting, and providing language (in the form of dictations, proposed resolutions, letters, email, forms, and telephone communications), to the other Defendants for uses that were wrongful, improper, illegal, in

---

[31] Insofar as those involving the HCSD officers, in violation of the Brown Act, conflict of interest laws, and the HCSD Bylaws.

violation of the Rules of Professional Conduct, state laws, and/or the HCSD Bylaws, - including; resolutions, agenda items, "findings", letters, proposed Bylaws, contracts, and other documents actually used by the Defendants to commit the wrongful acts set forth in this Complaint, and to further the joint goal of retaliation against Plaintiff for his complaints to the HCSD (via Kampa and its Board), to State agencies concerning matters of public health, and Plaintiff's filings with the courts.

47. Winston agreed with, assisted, aided, abetted, encouraged, and advised Hanson, Dingman, Kampa, and the HCSD in operating the HCSD water production, treatment, and distribution facilities in a manner contrary to law; wrongfully committed false personation as counsel for the HCSD[32]; and, violating the Rules of Professional Conduct by, including, but not limited to, waivers of conflicts of interest, and improper conduct; proposing and submitting contracts to the HCSD in violation of the self-dealing provisions of Government Code section 1090; and, improperly diverting public funds from the HCSD to himself[33].

## IX. DEFENDANT REMAINING JOHN DOES

48. At all times material, remaining defendant John Does 1-30 were board members, policy makers and/or executors, recipients of water services by the HCSD, employees, independent contractors, instructors, rule enforcers, assistants, confidants, and otherwise actors and/or agents of the HCSD, or aiders and abettors of the conduct of the named natural person defendants, the Board Defendants, and/or of each other. The true names and capacities of these John Doe defendants is uncertain to Plaintiff at this time, but will be substituted by amendment..

## X. Illegal Meetings and Acts of the Defendants.

49. The Defendants, during the period of December 28, 2016, through and including December 30, 2018, conspired and acted to have the Board of the HCSD, and Kampa, hold improper meetings that violated the provisions of the Brown Act concerning notice to the public and to Plaintiff, and to then and there, as well as later at other, public meetings of the HCSD Board of Directors, to act in their official capacities on matters of public concern in which they

---

[32] By "false personation as counsel...", Plaintiff is referring to the fact that Winston has acted towards Plaintiff, or with third parties, at times purportedly on behalf of the HCSD, or one or more of its Directors, employees or agents (and outside of any formal court or administrative processes), without lawful authorization to do so. While it is true that Winston has also engaged in some, supposedly authorized, court process on behalf of the HCSD and/or the Board Defendants, any actions actually taken in furtherance of litigation are not intended to be the basis for any State causes of action herein.
[33] The State Bar's guidelines also provide that fees received by an attorney while that attorney is violating the Rules are inherently excessive, and unconscionable, and thus improper/illegal themselves.

Complaint for Civil Rights Violations; Pendent State Claims- 15

have a direct conflict of interest, violating Government Code Sections 1090, and 87100, and 2 Cal. Code Regs. Section 18700, and also failed to act as mandated by the HCSD Bylaws, pursuant to Sections A-1.4, A-2.2, A-2.6, A-2.10; A-3.3; A-3.8; A-5-1; A-6.1; A-6.4; A-7; A-9.1; A-9.3; A-9.14; 1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; and, 1-4.040.

## XI. SPECIFIC COMPLAINTS OF DANGEROUS CONDITIONS, VIOLATIONS OF LAW, AND OTHER WRONGDOING MADE BY PLAINTIFF

50. Plaintiff, in setting forth in this Complaint the wrongful conduct of these Defendants, specifically alleges that in undertaking that wrongful conduct, Hanson, Kampa, Winston, and Dingman also agreed to, conspired to, aided, encouraged, and abetted each other to, and acted to, intimidate and retaliate against Plaintiff for making complaints during the times material to the Complaint, regarding matters of personal and public concern as to each of:

**A)** The HCSD Board, and Kampa (as to each subject, on multiple occasions, and ongoingly), concerning: their violations of the Brown Act and HCSD Bylaws by having private meetings as a quorum, for the purpose of discussing public business; specific deficiencies in purported agenda item descriptions and content of agendas for public meetings; and, the failure to properly and timely notice the public (and to provide duly requested "agenda packets") of meetings called by the HCSD and/or its officers and agents. Plaintiff also complained concerning acts by Defendant Hanson of impermissibly exercising administrative authority over the day-to-day operations of the HCSD in a manner contrary to the provisions of Government Code sections 61040(e), 61045, 61050, and 61051 (among others);

**B)** The California Department of Water Resources/Water Control Board concerning the lack of compliance by the HCSD, Kampa, and Dingman with the Clean Water Act and the Safe Drinking Water Act; the unsafe and unsanitary conditions at the HCSD water treatment facility occasioned by Defendant Clint Dingman, while operating the HCSD wells, water treatment plant, and distribution system, without proper education, training, and certification by the State as required by his contract and the Health and Safety Code; and, the failure by the HCSD and the Defendants to properly maintain the water production, treatment, and distribution facilities;

**C)** The Siskiyou County Superior Court as to the conduct of the Defendants, regarding violations of law.

**D)** The California Fair Political Practices Commission concerning violations of the Brown Act, Political Reform Act, Government Code section 1090, and conspiracy to violate those, and other ethics-related laws by the Defendants;

**E)** The US EPA, and Cal-EPA concerning the failures by the HCSD to comply with the

Clean Water Act, and Safe Drinking Water Act.

## *****FIRST CLAIM FOR RELIEF (Federal Counts)*****

51. In making out each of the following "Counts" in this First Claim for Relief against one or more Defendants, Plaintiff, in addition to incorporating the information and factual allegations found in the preceding generalized sections and paragraphs, hereby specifically incorporates those Sections corresponding to each Defendant named *in the specific Count*. That is, if a Count lists "Hanson", then the reader should refer to Section IV on pages 4-6 (paragraphs 12-16) for details of her conduct, and other factual allegations, that apply to the Count. If the Count lists the "HCSD", one would refer to Section V, pages 6-7, paragraphs 17-20. The term "these Defendants" as used in any particular Count, shall mean only the Defendants which are *specifically* named therein, and is not intended to apply to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants, he will state "all Defendants", specifically. Plaintiff specifically reserves the right to amend this Complaint to properly state further claims as may have been alleged throughout, but which are not specified, or are specified incorrectly, in the First and/or Second Claims for Relief.

52. The wrongful acts of the Defendants and their agents, as described and alleged in this Complaint, were part of a systematic and ongoing pattern of events that were calculated by these Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to injure Plaintiff financially and physically, to interfere with Plaintiff's enjoyment and use of his property, and to seize and convert his personal property without due process or compensation - all with reckless or deliberate indifference to Plaintiff's Constitutional and statutory rights, and to the harms inflicted upon him.

53. The Defendants each and all had a duty to perform certain acts under the laws as aforesaid in the sections pertaining to each of them (and generally), and breached those duties while engaging in the conduct set forth herein. If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has asserted any claim for damages, Plaintiff reserves his right to non-monetary relief as provided by law. Plaintiff has been physically, emotionally, economically, and specially harmed by the acts of Defendants.

### I. VIOLATION OF RIGHT TO FREEDOM OF SPEECH AND PETITION

54. Plaintiff alleges that the all the Defendants, in acting as set forth above in manners adverse to Plaintiff, did so willfully, with intent to interfere with, impede, coerce Plaintiff into abandoning, and in retaliation for, the exercise of statutory and constitutional rights to speak freely; petition the government and courts for redress of grievances; and that in so doing, they

violated Plaintiff's First Amendment rights to speak freely, petition for redress of grievances, and to be free of retaliation.

## II.  DEPRIVATIONS OF, DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS; UNLAWFUL SEIZURE

55.  In conspiring and acting as aforesaid to violate California law; to censure Plaintiff's protected speech by retaliating against him for making it; and, by destroying, seizing, and converting Plaintiff's property without due process of law, Defendants Dingman, Kampa, and the HCSD violated Plaintiff's rights under the 1st, 4th, and 14th Amendments to the US Constitution.

56.  These deprivations resulted in substantial harms to Plaintiff, as well as unlawful impedance and interference with his rights to investigate corrupt conduct by public officials, and to petition for redress of grievances.

## Count III. VIOLATION OF THE CLEAN WATER ACT BY HCSD.

57.  The permitting by Defendants HCSD, Kampa, Hanson, and Dingman of the HCSD's "well #3", containing high levels of toxic Boron and salts, to flow artesian and unchecked into the waterways feeding the Klamath River, without a permit to do so by the Environmental Protection Agency ("EPA") violates the Clean Water Act.

## Count – IV: DEPRIVATIONS OF RIGHTS TO EQUAL PROTECTION OF THE LAWS.

58.  The HCSD, Hanson, Kampa, and Dingman, did improperly and illegally conspire to, and actually did, wrongfully violate, and refuse to follow, the mandate of: the Federal Safe Drinking Water Act and Clean Water Act; State laws relating to drinking water facilities and operation thereof (including, but not limited to, the Health and Safety Code); and, the HCSD Bylaws[34], by allowing Dingman to operate the water treatment and distribution facilities of the HCSD without State-required certifications, and permitting Dingman to illegally and improperly utilize the water treatment plant and grounds for his (unsanitary) personal use.

112.  All of these acts by these Defendants also thus deprived Plaintiff of rights and privileges under federal and State law, and the HCSD Bylaws, and diminished his real property value, without notice, opportunity to be heard, or other due legal process.

## Count – V: DEPRIVATIONS OF RIGHTS TO EQUAL PROTECTION OF THE LAWS, AND TO DUE PROCESS OF LAW.

---

[34] E.g. Sections A-3(7-8).

59.  The HCSD, Hanson, and Kampa, by improperly and wrongfully altering rates and fees of the HCSD without voter approval[35], and permitting operation of HCSD facilities by Dingman as an uncertified operator, by failing to charge each commercial, governmental, and/or residential customer proper rates, fees, and/or charges, while also not complying with <u>Water Code</u> sections 31007 and 71616, all without any public process and in contradiction of the HCSD Bylaws and State laws, also deprived Plaintiff of the equal protection of the laws, and Plaintiff's right to the due process of law.

### Count -VI: DEPRIVATIONS OF RIGHT TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Gifts of Public Funds to Clint Dingman

60.  Defendant Dingman, outside of any public meetings, conspired with, influenced, and engaged in corrupt activity with Hanson and Kampa , in order to wrongfully utilize their authority, to receive gifts of public funds in the form of: pay in excess of his contract with the District[36]; pay to which he was not entitled for being unauthorized by law to perform the purported service(s); pay for claimed hours that Dingman did not actually work; and. claims for work time which exceeded the actual time spent by Dingman doing the work referenced on his "time sheets".  Dingman, with the aid, assistance, ratification, and agreement of the HCSD, Hanson, and Kampa, thus fraudulently billed the District for services and activities which he was not entitled to, and/or he did not perform, and failed to abide by his contract and the HCSD Bylaws. This activity by these Defendants was further deliberately concealed from the public in violation of the Brown Act, the California Public records Act, and the HCSD Bylaws.

61.  By so doing, these Defendants acted in violation of Plaintiff's rights to equal protection of the laws, and to due process to attend their meetings and protest the illegal gifting public funds; and, to deliberately deprive Plaintiff of the rights to due process, free speech, and petitioning rights against corrupt and unlawful activity.

### Count VII: DEPRIVATIONS OF RIGHT TO DUE PROCESS, EQUAL PROTECTION

62.  Defendant Winston wrongfully improperly conspired with, agreed, influenced, and engaged in corrupt activity with the HCSD, Hanson, Kampa, and Dingman, all public officers, in order to corruptly and wrongfully utilize their authority under color of State law, to hold various unagendized and non-public meetings of HCSD officers and employees in violation of the Brown Act, Rules of Professional Conduct, and Government Code 1090; to reach consensus on

---

[35] As required by the HCSD Bylaws at Section A-9(1), among others.
[36] These acts are additionally a violation of the HCSD Bylaws.

Complaint for Civil Rights Violations; Pendent State Claims- 19

hiring (and execution of contracts, payment vouchers, etc), and to creation of self-dealing contracts as to Defendant Winston, outside of public meetings and without notice to Plaintiff and the public[37]. Each of these Defendants also conspired, agreed, and acted in concert to fail to give notice of any such meetings, proposed employment, contracts, etc, as required by law. In spite of these failures, Defendant Winston knowingly, wrongfully, and fraudulently billed the HCSD for services and alleged activities which he was not entitled and/or authorized to payment for, and/or that he did not lawfully perform. All this activity was concealed from Plaintiff and the public in violation of the Brown Act, the California Public Records Act, and the HCSD Bylaws.

## ***SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS***

63. In making out each of the following "Counts" in this Second Claim for Relief against one or more Defendants, Plaintiff, in addition to incorporating the information and factual allegations found in the preceding generalized sections and paragraphs, hereby specifically incorporates those Sections corresponding to each Defendant named in the specific Count. That is, if a Count lists "Hanson", then the reader should refer to Section IV on pages 4-6 (paragraphs 12-16) for details of her conduct, and other factual allegations, that apply to the Count. If the Count lists the "HCSD", one would refer to Section V, pages 6-7, paragraphs 17-20. The term "these Defendants" as used in any particular Count, shall mean only the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants, he will state "all Defendants", specifically.

64. The wrongful acts of the Defendants and their agents, as described and alleged in this Complaint, were part of a systematic and ongoing pattern of events that were calculated by these Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to injure Plaintiff financially and physically, to interfere with Plaintiff's enjoyment and use of his property, and to seize and convert his personal property without due process or compensation - all with reckless or deliberate indifference to Plaintiff's Constitutional and statutory rights, and to the harms inflicted upon him.

65. The Defendants each and all had a duty to perform certain acts under the laws as aforesaid in the sections pertaining to each of them (and generally), and breached those duties while engaging in the conduct set forth herein. If Plaintiff states a claim or cause of action only

---

[37] Plaintiff also alleges that some meeting concerning potential employment of Winston, and the terms thereof, were improperly held in closed session, when such were actually required to be "open" session.

permitting injunctive or other relief, but has asserted any claim for damages, Plaintiff reserves his right to non-monetary relief as provided by law, and Government Code section 814.

Plaintiff has been physically, emotionally, economically, and specially harmed by the acts of Defendants as set forth in this Complaint, and as detailed in the First and Second Claims for Relief.

### Count – I, Violations of HCSD Bylaws

66.  Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that all of the Defendants, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and illegally, agree and conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws by: improperly altering and/or waiving all sorts of fees and charges for certain customers without voter approval; failing to shut off service to overdue accounts; failing to properly levy the rates set for businesses, commercially-zoned properties, and multiple dwelling customers without voter approval; making improper and wrongful Bylaws changes in ways prohibited thereby; and, failing to require landlords to put water service for rentals into their name. These Defendants also thus failed to provide, impose, and collect rates and charges sufficient to fund the operations, upkeep, and repairs to the District infrastructure and facilities mandated by the Water Code at §§ 31007, 61100, and 71616.

67.  Each and all of the Defendants named herein failed to comply with the HCSD Bylaws, at Sections A-1(4); A-1(6); A-1(7); A-1(10); A-2(3); A-2(10); A-2(11); A-3.3; A-3(7-8); A-4(3); A-5-1; A-7; A-9(1); A-9(3); A-9(13); A-9(14); "MEETINGS" at p.15, #1;1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; 1-4.040, and, 1-5.030.

### Count II Willful Negligence; Negligence

68.  In doing acts complained of herein, each and all of the Defendants acted negligently, recklessly, wantonly, and/or willfully, and in disregard for any harm that may have befallen Plaintiff and/or the public as a result.  (See California Civil Code, section 1714.)

### Count III - Violations of Government Code Section 1090- Self Dealing

69.  Dingman; Kampa, Hanson, and the HCSD, in planning, and acting to violate the HCSD Bylaws, and/or other Constitutional and/or statutory provisions as set forth herein[38]; as

---

[38] The HCSD Bylaws make Board Members personally liable for improperly waiving fees, failing to collect fees, etc. These Defendants did so in regards to themselves, their friends, contractors, co-conspirators, and associates, and thus voted on issues in which they have a direct financial conflict of interest. See HCSD Bylaws at Sections A-2(10), A-9(1), A-9(10-11), A-9(13), A-9(14), and, A-9(26). The Bylaws also provide in several sections that they cannot be modified without voter approval.

Complaint for Civil Rights Violations; Pendent State Claims- 21

well as in acting to wrongfully delegate Legislative authority to Kampa, and/or Winston, did so in contradiction to the provisions of Government Code §§1090 and any such delegations, contracts arising therefrom, and/or contracts supposedly undertaken by Kampa and/or Winston under such circumstances, are all void, and public monies so wrongfully expended subject to being clawed back by this action.

**Count IV - Gifts of Public Funds - Board Defendants; False Claims & Fraud as to Dingman**

70. Defendant Clint Dingman wrongfully, improperly, and illegally colluded with, influenced, agreed to, and engaged in corrupt activity with, the other Defendants to receive wrongful payments in money and benefits to which he was not properly, and/or lawfully entitles, and/or for which he fraudulently billed the HCSD on his "time sheets".

71. Such wrongful, and/or excess pay and/or benefits are also a gift of public funds to Dingman. Plaintiff invokes herein Code of Civil Procedure Sections 526a, 1021.5, and 1084, as well as Government Code sections 12650, et seq and the triple damages provisions therein.

**Count V - Gifts of Public Funds as to Peter Kampa**

72. Defendant Kampa improperly, wrongfully, and illegally conspired with, influenced, and engaged in corrupt activity with the Hanson, the HCSD, and Winston, in order to falsely claim payment(s) for services he did not actually render, and/or which were part of his regular duties as General Manager of the HCSD, and to receive gifts of public funds, in the form of indemnification, fees, and other benefits he was not entitled to by contract, or otherwise.

**Count VI - Gifts of Public Funds as to John Does**

73. The improper billing, waiver of fees and charges, improper changes to classifications, failure to read meters, and other mechanisms whereby the HCSD, Hanson, Kampa, and Dingman, failed to collect all due charges, fees, penalties, and other monies due the HCSD for the times material to this Complaint, were improper gifts of public funds. The John Does who had their water rates, fees and/or charges payable to the HCSD reduced and/or waived, property not liened when due, or who otherwise wrongfully benefited from any action of the HCSD, Hanson, Kampa, and/or Dingman are in violation of Cal. Const. Art. XVI, Section 6, and Govt Code section 8314, and those monies should be collected, and/or otherwise returned to the public fisc.

**Count VII - Violation of Article 1, section 2, of the California Constitution**

74. *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, allows a tort action for damages for violation of the free expression clause of Article I, Section 2, of the California Constitution. The California Constitution gives "[e]very person" an affirmative

right to free speech (Cal. Const., art. I, § 2, subd. (a)).  In acting as aforesaid to violate State law and the HCSD Bylaws, and to commit wrongs against Plaintiff (including attacking Plaintiff and seizing his property because of "lawsuits" he had filed), the HCSD, Hanson, Kampa, and Dingman acted to violate Plaintiff's right to free expression under that section.

### Count VIII - Unfair Business Practices as to Peter Kampa

75.  Plaintiff alleges that Defendants Hanson, Kampa, and Dingman, in performing the acts complained of herein, as employees and/or agents of the HCSD, in violating, and conspiring to violate, the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, have also thus conspired to, aided and abetted each other, and actually did, violate California's unfair business practices legislation, found at California Business and Professions Code 17200, et seq.

### Count IX - False Claims as to Robert Winston; Peter Kampa; Clint Dingman.

76.  Plaintiff incorporating herein the information contained in general portions of this Complaint, and in the sections relating specifically to Winston, Kampa, and Dingman, allege that these Defendants have thus acted to violate California's False Claims Act legislation, found at California Government Code sections 12650, et seq.

### Count X- Negligence as to all Defendants

77.  All of the Defendants owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, of California, and the HCSD Bylaws, but in acting wrongfully as complained of herein, and against Plaintiff, negligently and recklessly breached that duty in violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, California Rules of Professional Conduct, and/or the HCSD Bylaws as set forth herein, resulting in harm and damages to Plaintiff.

### Count XI - Civil Conspiracy for Deprivation of Rights

78.  Each and all of the Defendants named herein acted in concert, and by agreement amongst themselves, to: recklessly, wantonly, and/or willfully violate the HCSD Bylaws and Federal and State laws as aforesaid; harass, oppress, coerce, intimidate, annoy Plaintiff, and to impair, impede, and violate her constitutional and statutory rights (and especially due process) as set forth herein; and, to retaliate against him for exercise of his rights.

### Count XXII – Willful and/or Negligent Infliction of Emotional Distress

79.  Each and all of the Defendants named herein, in acting as set forth herein as to any of them, or identified group of them, did so while disregarding foreseeable risk to Plaintiff, and acted negligently, recklessly, wantonly, and/or willfully to vex, harass, oppress, and annoy,

Plaintiff, and/or to subject him to lasting fear, anger, upset, anxiety, humiliation, outrage, financial loss, and extreme ongoing emotional and mental pain and distress.

### Count XII Nuisance

80. Defendants HCSD, Hanson, Kampa, and Dingman, acted negligently, recklessly, wantonly, and/or willfully to violate the Safe Drinking Water Act, the California Health and Safety Code, and the HCSD Bylaws in their operation of the HCSD water production, treatment, and/or distribution facilities, and thereby created annoying and/or unsafe conditions relating to the proper and lawful operation of water facilities, and distribution of water to the public and to Plaintiff.

### Count XIII - Violation(s) of the Bane Act; Hanson, Kampa, and Dingman

81. While engaging in each instance of the wrongful conduct set forth in this complaint, Defendants Hanson, Kampa, and Dingman, conspired to and did so in part to retaliate against Plaintiff, and used threats, physical assault, theft of property, and other acts to intimidate, oppress, and coerce Plaintiff into abandoning his legal claims, and from exercising his rights.

### Count XIV Improperly Unbilled Fees and Charges - Gifts/Waste of Public Funds

82. Defendants HCSD, Hanson, Kampa, and Dingman have conspired and acted at all times material to this Complaint to: improperly bill, fail to bill, falsely bill, fail to impose, improperly waived or reduced, and failed to collect, all due and payable fees for service and other charges as set forth in the HCSD Bylaws and Resolutions from residential, commercial, and governmental accounts of the HCSD; and so caused injury to the funds and property of the HCSD. Relief is requested pursuant to the provisions of the HCSD Bylaws, and California Code of Civil Procedure, Section 526a.

### Count XV Waste of Public Funds by the Board Defendants and/or the HCSD

83. Plaintiff alleges that each act of wrongful, illegal, improper, or unethical conduct by each and/or all of the Defendants as set forth herein, as well as any and all such conduct in violation of the HCSD Bylaws, additionally constituted a waste, and illegal expenditure of, taxpayer funds pursuant to the provisions of California Code of Civil Procedure 526a.

### Count XVI Exemplary Damages (Punitive Damages)

84. The conduct of each Defendant, or specified group of Defendants as set forth herein, was willful, malicious, with intent to: vex, annoy, oppress, coerce, and cause harm to Plaintiff; to interfere with and/or impede exercise of statutory and/or constitutional rights by Plaintiff, or undertaken with willful or wanton indifference to the harm that may have befallen to Plaintiff. Plaintiff has been harmed by each act of Defendants, all as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff now prays for judgment against the Defendants, and:

1. A declaration that all acts by any and/or all of the Defendants at each non-public and/or improperly noticed and/or conducted meeting were *ultra vires* and void, as well as in violation of the HCSD Bylaws,

2. For general, special, and economic, damages of $450,000; exemplary and punitive damages in the sum of $300,000; and, reasonable attorney fees, costs and disbursements herein;

3. Disgorgement by Defendants Winston, Kampa, and Dingman of all benefits, monies, charges, and/or fees collected in violation of any Rule or law of the United States and/or the State of California, or the HCSD Bylaws;

4. Disgorgement of all gifts of public funds by the HCSD and/or any of its agents to Julie Clint Dingman, Peter Kampa, Robert Winston, and any other entity, independent contractor, agency, water customer, or individual receiving such, including, but not limited to, those who had water charges and/or fees of any sort improperly or illegally uncharged (by any mechanism, including failure to read the meters), reduced, or waived in violation of the HCSD Bylaws;

7. Restitution by Hanson as provided by HCSD Bylaws Section A-9(26);

8. An Order commanding the HCSD, Michele Hanson, Clint Dingman, and/or Peter Kampa (and/or their successors) to bring all water facilities of the HCSD into compliance with the CWA and SDWA, and to operate the surface water facilities at all times, and in conformance with all laws;

9. For such other and further relief as the court may deem proper.

Respectfully submitted this 29th day of December, 2018

Peter T. Harrell, Plaintiff Pro Se

Complaint for Civil Rights Violations; Pendent State Claims- 25

# EXHIBIT 13

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PETER T. HARRELL,                              No.  2:19-cv-00031 KJM AC (PS)

12                    Plaintiffs,

13          v.                                       FINDINGS AND RECOMMNEDATIONS

14    CLINT DINGMAN, et al.,

15                    Defendants.

16

17          Plaintiff is proceeding in this action pro se.  This matter was accordingly referred to the

18   undersigned by Local Civil Rule 302(c)(21).  Plaintiff was previously granted leave to proceed in

19   forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915.  ECF No. 3.  The undersigned rejected

20   plaintiff's initial complaint on screening, finding portions of the complaint were likely barred by

21   the doctrine of res judicata, and that the remainder of plaintiff's complaint did not comply with

22   Federal Rule of Civil Procedure 8.  ECF No. 8.  The undersigned then rejected plaintiff's First

23   Amended Complaint ("FAC"), finding that it also failed to comply with Rule 8 due to the

24   quantity of disjointed allegations.  ECF No. 13.  The FAC was dismissed with leave to file a

25   Second Amended Complaint ("SAC") that complied with Rule 8.  Id.  The SAC, ECF No. 17, is

26   now before the undersigned for screening.

27   ////

28   ////

1

# I.      Screening

A determination that a plaintiff qualifies financially for IFP status does not complete the inquiry required by the statute.  The federal IFP statute requires federal courts to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Plaintiff must assist the court in determining whether or not the complaint is frivolous, by drafting the complaint so that it complies with the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief sought.  Fed. R. Civ. P. 8(a).  Plaintiff's claims must be set forth simply, concisely and directly.  Fed. R. Civ. P. 8(d)(1).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989).  In reviewing a complaint under this standard, the court will (1) accept as true all of the factual allegations contained in the complaint, unless they are clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the plaintiff, and (3) resolve all doubts in the plaintiff's favor.  See Neitzke, 490 U.S. at 327; Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011).

The court applies the same rules of construction in determining whether the complaint states a claim on which relief can be granted.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (court must accept the allegations as true); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (court must construe the complaint in the light most favorable to the plaintiff).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  A formulaic recitation of the elements of a cause of action does not suffice

1    to state a claim.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); Ashcroft v. Iqbal,

2    556 U.S. 662, 678 (2009).  To state a claim on which relief may be granted, the plaintiff must

3    allege enough facts "to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at

4    570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

5    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6    Iqbal, 556 U.S. at 678.

7         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

8    opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

9    Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as

10   stated in Lopez v. Smith, 203 F.3d 1122 (9th Cir.2000)) (en banc).

## II.       Analysis of the Complaint

12        Plaintiff's SAC seeks relief against the same defendants named in the FAC: the

13   Hornbrook Community Services District; eight named individuals, all employees or officials of

14   the District; and "John Does 5-30."  ECF No. 17 at 1, 2-3.  The SAC contains 22 of the 28 causes

15   of action asserted in the FAC and described in this court's previous screening order, including

16   numerous alleged constitutional violations, claims purporting to arise under the Safe Drinking

17   water Act and the Clean Water Act, and numerous pendant state law claims.  ECF No. 17 at 1 and

18   passim.  The underlying dispute appears to involve the quality and quantity of water provided by

19   the District to plaintiff's property in Siskiyou County, which is alleged to have injured his trees,

20   plants, livestock, and the value of his property.  Id. at 4.

21        Comparison of the SAC and the FAC reveals that plaintiff has changed the phrasing of

22   certain claims, split large paragraphs into shorter ones, and condensed or deleted certain

23   paragraphs.  The most significant improvement to the SAC is the addition of a section containing

24   allegations common to certain defendants.  Id. at 5-6.  However, despite these changes, the SAC

25   still largely replicates the overly complex and disjointed language of the FAC.

26        Upon review, plaintiff's SAC still does not contain a "short and plain" statement setting

27   forth, in a clear and understandable manner, the basis for plaintiff's claims, plaintiff's entitlement

28   to relief, or the relief that is sought, even though those things are required by Rule 8(a)(1), (3).

1    The exact nature of what happened to plaintiff remains obscured by the complaint, which—

2    although shorter than the FAC—still describes disconnected events and allegations involving

3    multiple defendants, and is written in such an overly complex and disjointed manner that it is

4    difficult to understand exactly what plaintiff's claims are and whether the facts alleged provide a

5    basis for those claims.  While plaintiff has made various edits and deletions, the majority of the

6    SAC's allegations are identical to those found to be deficient in the FAC and the initial complaint.

7    Compare, ECF Nos. 1, 11, 17.  The sheer quantity of factual allegations and legal assertions in

8    plaintiff's complaint makes it impossible for the court, and therefore for defendants, to determine

9    whether any cognizable claim is presented, what legal wrong may have been done to plaintiff, by

10   whom and when, or how any alleged harm is connected to the relief plaintiff seeks.

11         Plaintiff's SAC does not meet the pleading standard of Rule 8, and fails to plainly identify

12   any claim(s) that would entitle plaintiff to relief.  Because plaintiff has had multiple opportunities

13   to submit a viable complaint and has failed to do so, it is clear to the undersigned that granting

14   further leave to amend would be futile.  Noll, 809 F.2d at 1448.

### III.    Pro Se Plaintiff's Summary

16         The undersigned is recommending that your case be dismissed because your SAC suffers

17   from the same pleading defects found in your previous complaints.  You have been given two

18   opportunities to amend your complaint, and the court will give you no additional opportunities.

19   The recommendation will go to the District Judge assigned to this case.  You have 21 days, as

20   discussed below, to object to these recommendations.

### IV.    Conclusion

22         Accordingly, for the reasons set forth above, the undersigned recommends that plaintiff's

23   Second Amended Complaint (ECF No. 17) be DISMISSED with prejudice.

24         These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

26   after being served with these findings and recommendations, plaintiff may file written objections

27   with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document

28   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure

4

1   to file objections within the specified time may waive the right to appeal the District Court's

2   order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153,

3   1156-57 (9th Cir. 1991).

4   DATED: May 28, 2019

5

6                 ALLISON CLAIRE

                  UNITED STATES MAGISTRATE JUDGE

5

# EXHIBIT 14

Harrell v. Hornbrook Community Services District, Not Reported in Fed. Rptr. (2018)

Case 2:21-cv-01482-KJM-DMC   Document 54   Filed 12/15/21   Page 165 of 166

2018 WL 6039097
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Peter T. **HARRELL**, Plaintiff-Appellant,
v.

**HORNBROOK COMMUNITY**
SERVICES DISTRICT, a California
Municipal Corporation; et
al., Defendants-Appellees.
Peter T. **Harrell**, Plaintiff-Appellee,
v.

Roger Gifford, Defendant-Appellant.
Peter T. **Harrell**, Plaintiff-Appellee,
v.

Sharrel Barnes, Vice President,
**Hornbrook Community** Services
District, Defendant-Appellant.

No. 17-17191, No. 17-17209, No. 17-17313
|
Filed August 24, 2018

**Attorneys and Law Firms**

Peter T. **Harrell**, Ashland, OR, pro se.

Sharrel Barnes, Vice President, **Hornbrook Community**
Services District, Hornbrook, CA, pro se.

Roger Gifford, Hornbrook, CA, pro se.

William A. Munoz, Erik Peter Weiss, John Paul Girarde,
Esquire, Arthur Harris, Esquire, Murphy, Pearson, Bradley &
Feeney, Sacramento, CA, Gregory Gomez, Esquire, Deputy
Attorney General, Jason Jerrold Sommer, Esquire, Hansen,
Kohls, Sommer & Jacob, LLP, Roseville, CA, for Defendants-
Appellees.

Eastern District of California, Sacramento, D.C. No. 2:14-
cv-01595-KJM-GGH

Before: FARRIS, BYBEE, and N.R. SMITH, Circuit Judges.

**ORDER**

**\*1** A review of the district court's docket reflects that the
district judge denied Roger Gifford's motion to proceed in
forma pauperis for cross-appeal No. 17-17209, and denied
Sharrel Barnes's motion to proceed in forma pauperis for
cross-appeal No. 17-17313. A review of the district court's
docket also reflects that the magistrate judge attested that
the appeal filed by Peter T. **Harrell** No. 17-17191 was not
taken in good faith and revoked **Harrell's** in forma pauperis
status. *See* 28 U.S.C. § 1915(a). The magistrate judge lacked
authority to revoke **Harrell's** in forma pauperis status, *see*
*Tripati v. Rison*, 847 F.2d 548, 549 (9th Cir. 1988), but this
court may determine sua sponte whether in forma pauperis
status should continue on appeal for **Harrell** under 28 U.S.C.
§ 1915(e)(2).

On June 1, 2018, this court ordered the appellant in each
appeal to explain in writing why the appeals should not be
dismissed as frivolous. *See id.* (court shall dismiss case at any
time, if court determines it is frivolous or malicious).

We have reviewed the record and the parties' responses to the
court's June 1, 2018 order. We conclude that **Harrell's** appeal
No. 17-17191 is frivolous. We therefore revoke **Harrell's** in
forma pauperis status for appeal No. 17-17191 and dismiss
the appeal as frivolous under 28 U.S.C. § 1915(e)(2). We
also conclude that the cross-appeals No. 17-17209 and No.
17-17313 are frivolous. We therefore deny cross-appellants
Barnes's and Gifford's motions to proceed in forma pauperis
(Docket Entry Nos. 18 & 20 in Case No. 17-17191), and
dismiss cross-appeals No. 17-17209 and No. 17-17313 as
frivolous under 28 U.S.C. § 1915(e)(2).

Appellees Robert Winston and Kirsher, Winston & Boston,
LLC's request for judicial notice (Docket Entry No. 25 in No.
17-17191) is denied as unnecessary.

All other pending requests and motions are denied.

**DISMISSED**.

**All Citations**

Not Reported in Fed. Rptr., 2018 WL 6039097

**Harrell v. Hornbrook Community Services District, Not Reported in Fed. Rptr. (2018)**

Case 2:21-cv-01482-KJM-DMC   Document 54   Filed 12/15/21   Page 166 of 166

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.