**FILED**

1

Kimberly R. Olson
PO Box 243, Hornbrook, CA 96044

2

kimberlyrenee@yahoo.com (email not for service)
(530) 475-3669

**DEC 17 2021**

3

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

4

## THE UNITED STATES DISTRICT COURT

5

### IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

6

Kimberly R. Olson,                          )
                                            )   Case No: 2:21-cv-1482 KJM DMC (PS

7

        Plaintiff,                          )
                                            )   OPPOSITION TO RULE 12(b) MOTION TO

8

        vs.                                 )   DISMISS BY ROBERT PUCKETT, ET AL
                                            )

9

Robert Puckett, Sr., et al,                 )   Date: January 5, 2022
                                            )   Time: 10:00 a.m.

10

        Defendants,                         )   Place: Redding Courthouse
_____

11

Comes now the Plaintiff, Kimberly R. Olson ("Plaintiff" or "Olson"), and Opposes the

12

Rule 12(b) Motion to Dismiss ("Motion"), ECF #47, filed by Defendants Clint Dingman

13

("Dingman"), Michelle Hanson ("Hanson"), Hornbrook Community Services District ("HCSD",

or "District"), Robert Puckett, Sr. ("Puckett"), Melissa Tulledo ("Tulledo"), collectively, "the

14

HCSD Defendants". In making Opposition to the Rule 12(b) Motion, Plaintiff incorporates, as if

15

fully set forth, all legal argument and citations, and all references to the HCSD Bylaws, and its

Rules and Regulations (ECF #34-35), as set forth in her previously-filed Objections (ECF #40).

16

## 1. STANDARD OF REVIEW FOR RULE 12(b) MOTIONS

17

The case against these Defendants is not particularly complex, and involves actions they

18

took - and in some cases failed to take - as part of their official and/or mandatory duties, as

19

directing/supervisory Officers of the HCSD; a small, poorly-run, governmental agency and

20

independent special water district in upper Northern California. By law, such agencies are

required to appoint a "General Manager" (Gov. Code §61050[1]). It is then the General Manager's

21

responsibility and duty to implement the policies , and oversee *all* daily operations, of the district

22

he is employed by (Gov. Code §61051), while of course also following the many dictates of state

23

law as enshrined in the Government Code, the Water Code, and the Health and Safety Code.

24

Unfortunately, the HCSD tends to ignore laws (and Constitutional provisions) that it

finds inconvenient, and so the individual Board Members often assert themselves as personally

25

_____

[1] This section also prohibits members of the board of directors of a district from acting as the general
manager thereof.

1   wielding the powers of the general manager, or of the Board as a whole (c.f., Govt. Code

2   §61045). This was the circumstance concerning the events of July, 2021, when Clint Dingman

3   and Robert Puckett, both while acting in their official capacities as employee and President of the

    Board of Directors, respectively, illegally trespassed onto Plaintiff's driveway, seized Plaintiff's

4   water service, and private property, without proper, Constitutionally adequate notice, without a

5   warrant, and without affording Plaintiff any pre-deprivation hearing concerning their actions.

6   See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12-16 (1978).

7       The Defendants are not presenting this Court with a proper 12b Motion. Instead, they are

    attempting to challenge the facts of the complaint, and to assert facts, by declarations and

8   improper judicial notice[2], of matters outside the pleadings that would tend to establish what are

9   actually affirmative defences - a process forbidden in a 12b motion.

10      It is well-established that where a party moves to dismiss under Federal Rule of Civil

11  Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and matters

    outside the pleadings are presented to, and not excluded by, the court, the motion is to be treated

12  as if it were a motion for summary judgment under Rule 56. *Murphy v. Inexco Oil Co.*, 611 F.2d

13  570 (5th Cir. 1980); C. Wright, Law of Federal Courts, 3d ed. § 66 (1976). Most courts view

14  "matters outside the pleading" as including any written or oral evidence in support of or in

15  opposition to the pleading that provides some substantiation for the pleadings. 5 C. Wright A.

16  Miller, Federal Practice and Procedure §1366 (1969).

17      In the case at bar, once one wades through the first six pages of irrelevant discussion

    concerning other persons in other actions to which Plaintiff Olson was <u>not</u> a party[3], the

18

19  [2] Defendants have larded the 12b Motion with over half a ream of "exhibits" attached to the Declaration
20  of Counsel Jeffery Chaio. Initially, Plaintiff objects to the Chaio Declaration as being conclusory,
    hearsay, speculation, and lacking recitation of facts establishing personal knowledge. Plaintiff further
21  objects to the "exhibits" as being unauthenticated, and, insofar as they appear to actually be presented for
    the purpose of judicial notice, Plaintiff objects to failure to follow the FRCivP and Local Rules
22  concerning such notice. Finally, asking this Court to accept the "exhibits" for the truth of their contents as
    part of the argument in a 12b motion to dismiss is improper under the jurisprudence of this Circuit. See
23  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018): "If defendants are permitted to
    present their own version of the facts at the pleading stage – and district courts accept those facts as
    uncontroverted and true – it becomes near impossible for even the most aggrieved plaintiff to
24  demonstrate a sufficiently 'plausible' claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (articulating standard for 'plausible' claim for
25  relief at pleading stage). Such undermining of the usual pleading burdens is not the purpose of judicial
    notice...." Instead, all of the extraneous material of the Motion should be disregarded by this Court.
    [3] See Motion, pp.1-6. It is thus completely improper via a 12b motion to try to establish, via a multitude
    of long ago cases and alleged external facts, the issue of "privity" (presumably as to each cause of action,
    and as to each case in this large stack), and how that somehow relates to the allegations of the current

defendants have raised several affirmative defenses (which they could not possibly prevail on via motion for summary judgment given the clear issues of disputed fact raised in the FAC), including that of *res judicata* in the form of the exhibits above mentioned. (Motion, pp. 7-9.) *Res judicata*, however, is not a defense permitted to be raised under Rule 12(b); it is an affirmative defense that should be raised under Rule 8(c). *Moch v. East Baton Rouge Parish School Board,* 548 F.2d at 596 n. 3;  *Guam Investment Co. v. Central Building, Inc.,* 288 F.2d 19, 24 (9th Cir. 1961).   The Defendants' 12b Motion should be denied, and they should Answer.

The simplest fact to point out that completely destroys the assertions of the first portion of the Motion, is that the Complaint before this Court <u>only</u> deals with events and circumstances within the time frame that is specified on page two of the First Amended Complaint, which is <u>July 1, 2021 and thereafter</u>, and **not** any other timeframe. Indeed, it simply would not be possible to have previously litigated any claims arising from conduct occurring in the period specified in the FAC, because they had not happened yet so far as prior actions are concerned, and so could not have "accrued" in the legal sense[4].  The July 1, 2021 time frame of the FAC also informs the **actual** allegations against the Defendants at issue - rather than the many pages of colorful story-telling engaged in by Counsel in the preamble of the Motion at pages 1-6.

All of that material is completely inappropriate in this context, as a Rule 12(b)(6) motion does not consider matters outside the pleadings, instead only testing <u>legal</u> issues appearing on the face of the complaint, and not matters of fact.   The attempted presentation of what is essentially testimony by Counsel throughout the Motion, as well as the attempts to submit (without even a proper request for judicial notice[5]) a plethora of documents and records, are attempting to

---

action. The "privity" issue should be a completely separate motion with proper evidentiary support (not mere argument and "say so" of Counsel), and/or made in Answer, as an element of an affirmative defense.
[4] Although it is true that the HCSD has long-standing habits and policies of inept, unprofessional, improper, unlawful, tortious, Constitution-violating, behaviors as an entity, and as practiced by its Officers, each separate incident (that is, those separated by time, space, or both) is an <u>independent</u> tort giving rise to a <u>new</u> cause of action. See *Howard  v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017)"We now confirm that for purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint."
[5] And the implication is actually that Defense Counsel expects this Court to accept at face value not only the <u>contents</u> of all of those records, but also his conclusory narrative, and interpretations thereof.  This is entirely improper. See *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983) (stating general rule that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it");  A court cannot take judicial notice of the veracity of arguments or disputed facts of other proceedings or cases, either - including recitations in rulings, minute orders, and/or opinions. See, e.g. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein ). The HCSD

convert these proceedings to a sort of defectively-pled, bastardized, Rule 56(a) motion - in which case Plaintiff is entitled to a proper pleading by Defendants, competent evidence, to conduct discovery, and to refute their pleadings and "evidence" with her own. (FRCivP 56.) Thus, unless the Court converts the Rule 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint (e.g., purported "facts" presented in briefs, affidavits, or discovery materials). *Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

Another issue with the Motion is that it seems to task Plaintiff for not pleading additional and extensively detailed facts concerning each claim (although there are plenty already pled - including as to the proper elements of conspiracy - agreement between the Defendants, and specific actions they took in furtherance thereof). Rather simplified notice pleading standards rely on liberal discovery and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002). By contrast, a 12(b)(6) motion cannot require fact-pleading or presentation of evidence - it merely "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

Indeed, courts have found that if information decried as "missing" from a complaint, or that if sought by motion, would be obtainable through discovery, the motion should be denied. See, e.g., *Towers Tenant Ass'n v. Towers Ltd. P'ship,* 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded"). By Ninth Circuit precedent, for the limited purposes of a 12(b) motion, the Court must also assume that general allegations embrace the necessary, specific facts to support them. See *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir. 1994). See also *Sagan v. Apple Computer Inc.,* 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted.")

Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than a plethora of detailed evidentiary facts. Accordingly, Defendants' Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' and not where a complaint suffers for 'lack of detail.'" *Epos Tech. Ltd. v.*

Defendants are clearly presuming that this court take judicial notice of the truth of the (disputed) facts asserted in the documents offered, and particularly of the excerpts therefrom quoted in the 12b Motion.

*Pegasus Techs., Ltd.,* 636 F. Supp. 2d 57 (D.D.C. 2009)at p.63 (citations omitted).  Rule 12(b)(6) provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S.319, 327 (1989); *Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).   It is the duty of the Court to seek "substantial justice" between the parties as well. (Fed.R.Civ.P. 8(f); *Taylor v. Uniden Corp. of America*, 622 F.Supp. 1011, 1013 (E.D. Mo. 1985)

To survive a Rule 12(b) motion, a Plaintiff is only required to plead claims in language that is set forth clearly enough to give defendants fair notice of the type of claim being pursued. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. *Swierkiewicz v. Sorema N.A.*, 534U.S.506, 514, (2002).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true, construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of the plaintiff. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Similar to the mandate of FRCivP 8, as to any claim by the Defendants that the FAC's state claims are insufficiently pled, <u>Code of Civil Procedure</u> section 452 provides: " 'In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties.'  This rule of liberal construction means that the reviewing court draws inferences favorable to the plaintiff, not the defendant." (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1238.)

Some of Plaintiff's claims may also be mislabeled, but so long as a proper legal claim is made (or implied), the Court should construe it as adequately set forth regardless of its label. (*Swierkiewicz v. Sorema N.A., supra*, 534 U.S.506, 514.)

Furthermore, in this case, Plaintiff is Pro Se, and so this Court is obliged to construe her pleadings liberally and must afford Plaintiff the benefit of any doubt. *Bretz v. Kelman,* 773 F.2d1026, 1027 n.1 (9th Cir. 1985) (en banc); *Haines v.  Kerner* 404 U.S. 519 (1972); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)), and this is of particular concern in §1983 cases, when allegations are made against the government (and/or its minions), due to the drastic imbalance of power between it and the citizenry.

In detailing some arguments against the Motion, it is not Plaintiff's intent to waive opposition to any particular arguments against any of her claims, but instead to apply the

oppositional arguments of this Opposition to **all** of her causes of action as is appropriate, but without going down the same redundant list of recitations and arguments proffered by Defendants. However, in addition to the previous objections concerning the impropriety of the Defendants' use of outside matter, and raising affirmative defenses in their 12b Motion rather than by Answer, Plaintiff will, without waiving those objections, additionally address the impropriety of the "res judicata" argument at pages 7-9 of the Motion.

## 2.  RES JUDICATA OF OTHER PERSONS' SUITS CANNOT APPLY TO PLAINTIFF

The Complaint now before this Court only deals with events and circumstances within the time frame that is specified on page two of the First Amended Complaint (ECF #44), which is July 1, 2021 and thereafter, and not **any** other timeframe.  No other materials relating to any other timeframe - particularly decades ago - are relevant.  Indeed, it is not possible to have previously litigated any claims arising from conduct occurring in the period specified in the FAC, since those events and actions of the Defendants had not yet occurred, so could not "accrue" as to Plaintiff in the legal sense[6].  The 12b Motion does not address this issue.

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata.".  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748, (2001), emphasis added.  "Very same" means in time, location, parties, and rights.

The Defendants also seem to be arguing for the general application of collateral estoppel to the current action.  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir.1995).  Under both California and federal law, collateral estoppel applies only where it is established that:  (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. (*Younan v. Caruso*, 51 Cal.App.4th 401,

---

[6] Each separate incident alleged against a defendant is a new claim giving rise to a new cause of action. See *Howard  v. City of Coos Bay, supra*, 871 F.3d 1032, 1040: "We now confirm that for purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint."  Thus, even when the **same** defendants are sued by the **same** plaintiff for the **same** conduct - but the occasion of that conduct re-occurs **after** the first event that triggered the suit, then those same defendants can be sued by that same plaintiff *again* - without invoking the *res judicata* doctrine.

406-07 (1996); see also *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996). Furthermore, "[t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Offshore Sportswear, Inc. v. Vuarnet International, B.V.*, 114 F.3d 848, 850 (9th Cir.1997). This cannot be done by way of a 12b Motion.

*Res judicata* "treats a judgment, once rendered, as the full measure of relief to be accorded between the parties on the same 'claim' or 'cause of action.'" *Robi v. Five Platters Inc.*, 838 F.2d 318, 321 (9th Cir.1988) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.1978), emphasis added). An action is only barred under *res judicata* where (1) the prior litigation involved the same parties or their privies, (2) the prior litigation was terminated by a final judgment on the merits, and (3) the prior litigation involved the same "claim" or "cause of action" as the later suit. See *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 323-324 (1971).

A person who was not a party to a prior suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit, and cannot be barred from later litigating them herself - even if other persons have litigated their own, similar claims against the same defendants. The attempt by the Defendants to apply (unspecified) claim and issue preclusion of the suits undertaken by Gifford and/or Harrell to nonparties such as Plaintiff Olson is forbidden as running up against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson County*, 517 U.S. 793, 798, (1996). Indicating the strength of that tradition, the Supreme Court has often repeated the general rule that "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). See also, e.g., *Martin v. Wilks*, 490 U.S. 755, 761 (1989); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

Additionally, "privity" is much more than mere association outside of the courtroom. Rather, it is "a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *United States v. Schimmels*, 127 F.3d 875, 881 (9th Cir.1997) (internal quotation marks omitted). Because the concept of privity extends the reach of a judicial decision to nonparties and thereby deprives them of their own day in court, due process considerations make adequacy of representation in any action a prerequisite to privity in that specific action. Privity is traditionally limited to several well-defined categories of relationships, including co-owners and co-tenants of property, assignors and assignees, and indemnitors and indemnities. See

*Headwaters Inc.* v. U.S. Forest Serv., 399 F.3d 1047, 1053 (9th Cir. 2005). There is no legal support for a claim that some sort of generalized, ongoing, legal privity can arise between persons from simply sharing a mailing address (or residence), credit cards, or being merely mentioned in a lawsuit by a plaintiff, and Defendants have offered none. (Motion, p.9.)

In this instance, the Defendants engage in further misrepresentations to the Court by repeatedly referring to the irrelevant material in the 12b Motion's "exhibits" concerning all of the actions filed by Peter Harrell[7] and Roger Gifford as having been "filed" by, or certain actions taken therein by, "Plaintiff", when the truth is Plaintiff Olson was not a party to any of the actions filed by Roger Gifford or Peter Harrell[8], and never appeared in any of them in any capacity. See, i.e., Motion at pp. 4:19-24, 5:10-13, 5:21-28, 8:9-10, and 6:2-9;  Declaration of Jeffrey Chiao, #4. Since Plaintiff Kimberly R. Olson **was *not* a party** to any of those old actions brought by other persons, and not in privity as to any claims therein, she is **not** bound by any judgments therein, and res judicata *cannot* apply to **her** as to any of them as a matter of law.

Indeed, the Supreme Court has repeatedly emphasized that that even if the old cases raised by Defendants (that involved the HCSD) were somehow relevant to the claims in the current action, that would *still* not bar Plaintiff from bringing her own action(s) as to the very same issues because "it would violate the Due Process Clause . . . to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented." *Richards v. Jefferson County*, 517 U.S. 793, 794, (1996); *Hansberry v. Lee*, 311 U.S. 32, 37 (1940); see also *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("Some litigants - those who never appeared in a prior action - may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more

---

[7] Incredibly, Defendants also allege that Harrell, while appearing pro se, filed a lawsuit "on behalf of" Plaintiff herein, Kimberly R. Olson. (12b Motion, p.3:1-2.) However, review of Exhibit 4 to the Declaration of Jeffery Chiao reveals that this statement is untrue, and Plaintiff was not a party to that action. Although litigants in federal court have a statutory right to choose to act as their own counsel, see 28 U.S.C. § 1654, an individual who is not licensed as an attorney "may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998).  Generally, a plaintiff can only assert his own rights.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction ... can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.").  Therefore, "jurisdiction cannot be invoked solely on the basis of harms to a plaintiff's spouse." *Hui Yu v. U.S. Dep't of Homeland Sec.*, 568 F. Supp. 2d 231, 234 (D. Conn. 2008) (citing cases).  Alleged "privity" between Plaintiff and Gifford are also thus impossible.
[8] Counsel even goes so far as to occasionally rewrite the allegations in those other actions by "presuming" to interject facts not actually present, and that are clearly in dispute. See, i.e.,  Motion at p.2:24-26.

Plaintiff's Opposition to 12(b) Motion of HCSD Defendants - 8

existing adjudications of the identical issue which stand squarely against their position."
emphasis added). But, *none* of Olson's current claims against the HCSD Defendants in this
action have ever been litigated by Gifford or Harrell, and Defendants point to no cause of action
that they claim has been - nor produced admissible evidence in support of such an assertion.

Similarly wrong, some of the material seems to be an attempt to make out something of a
"virtual representation" argument by the Defendants concerning Peter Harrell's litigation against
the HCSD (12b Motion, pp. 8:26 - 9:9).  However, this legal fiction was specifically dismantled
by the Supreme Court in *Taylor v. Sturgell*, 128 S. Ct. 2161, 2167 (2008) ("We disapprove the
doctrine of preclusion by 'virtual representation'....")  Further, the mere fact that Plaintiff and
Harrell are associates, or have any other interactions outside of a court, is simply not relevant
to individual cases either of them may bring as pro se plaintiffs asserting their own rights[9].

The implied allegation that Plaintiff herein was aware of the litigation by Gifford and/or
Harrell and failed to intervene does not avail the Defendants' bizarre "argument", because such
knowledge cannot affect a court's collateral estoppel analysis. There is no duty of mandatory
intervention imposed upon nonparties (even if that were possible for a pro se), and a decision not
to intervene thus does not expose a nonparty to the earlier proceedings' preclusive effects. See
18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and
Procedure* § 4452, at 399 (2d ed.2002) ("Rules on intervention such as [Fed.R.Civ.P.] 24 have
not been drawn in compulsory terms. Intervention has been conceived as a device that permits a
nonparty to become a party when it wishes. . . ." (emphasis added)).

---

[9] Moreover, all of the hearsay, claims, assertions, conclusions, and speculation made by Counsel in the
12b Motion is not evidence.  Res judicata, as an affirmative defense, is extremely fact-specific, and
requires a clear showing by competent evidence of each point asserted in support of the defense.  The
impropriety of raising this defense by way of a 12b motion is highlighted here by the fact that other than
offering speculation, and conclusions based on disputed facts in documents of which it is improper to take
judicial notice, Defendants have not presented any evidence that Plaintiff Olson "had significant interest
and participated in", "directed", or "controlled", any of the cited prior litigation by Gifford and/or Harrell,
nor that Olson has any "express or implied legal relationship" with them relating to those suits, or to the
interests and claims raised therein.  As pro se individuals, that is impossible anyway, since pro se parties
may choose to represent themselves, but are barred from adjudicating anyone's rights other than their
own.  See 28 U.S.C. §1654.  Thus, an individual who is not licensed as an attorney "may not appear on
another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998).  This
rule even extends to pro se plaintiffs who seek to raise claims on behalf of family members.  For example,
Second Circuit has held that a "non-attorney parent must be represented by counsel in bringing an action
on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc*., 906 F.2d 59, 61 (2d
Cir.1990);  see also *Harvey v. Chemung County*, No. 11–CV–6563T, 2012 WL 729714, at *5 (W.D.N.Y.,
Mar. 6, 2012) (pro se plaintiff prohibited from raising claims on her husband's behalf)

The case of *Martin v. Wilks*, 490 U.S. 755 (1989), illustrates the non-compulsory nature of intervention. There, a group of white firefighters brought suit challenging a city's affirmative action program, which had been implemented under a consent decree that terminated litigation in which the Martin plaintiffs had not participated. *Id.* at 758. Even though the white firefighters were aware of the prior suit and chose not to intervene, the Supreme Court held that they were not collaterally estopped by the earlier proceedings. *Id.* at 763. The Court explained that the law does not impose upon any person (even those who are absolutely entitled to a hearing) the burden of voluntary intervention in a suit to which he is a stranger. "Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights." *Id.* (internal quotation marks omitted; alteration in original). The Court concluded that "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree." *Id.* at 765.

Since Plaintiff Olson was not a party to any of the actions described in the Defendants' Motion, was never served any process concerning those actions by any party thereto, and did not "participate" in those litigations, she does not meet any of the exceptions requirements of the Supreme Court to be found as "in privity" with either Harrell or Gifford in any of their matters. The prior adjudications by Harrell and/or Gifford thus cannot be used against her to preclude any claims she may raise in this, or any other legal action - even if they did happen to raise the exact same claims that Gifford and/or Harrell did in the past (which this case certainly does not). (*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., supra*, 402 U.S. 313, 329.)

Furthermore, Defendants have produced no evidence of any legally-viable condition of "privity" between Plaintiff Olson and Roger Gifford or Peter Harrell as to any specific cause(s) of action in any particular prior litigation, and then correlated that prior litigation with any cause(s) of action set forth in the FAC herein (ECF #44). Regardless, even in cases where there is some sort of preclusion associated with one or more causes of action, that still does not dispose of the action as a whole. It is incumbent upon the party asserting res judicata to establish each and all of the elements thereto as to any particular cause(s) of action in a litigation before a court, and this simply cannot be done in the context of a 12b Motion, and should not be allowed here.

**3. SUFFICIENT FACTS ARE STATED TO SUPPORT ALL OF PLAINTIFF'S CLAIMS**

As discussed above, Plaintiff is not required to plead in exquisite detail all of the "facts" associated with each discreet act of each Defendant herein to survive a 12b motion. Contrary to the repeated refrain of the Motion (pp. 10-17), Plaintiff's recitations of facts at pages 2-16 of the

1   FAC (which are also supplemented in the "Counts") are sufficient at this stage of the litigation -

2   particularly when considered in light of the mandate of *Perez v. Golden Empire Transit Dist.,*

3   *supra,* 37 F.3d 517, 521, *Sagan v. Apple Computer Inc., supra,* 874 F. Supp. 1072, 1077, and

    *Peloza v. Capistrano Unified Sch. Dist., supra,* 37 F.3d 517, 521.

4
        Furthermore, when presented with a 12b motion, the court must accept as true all material

5   allegations in the complaint, as well as all reasonable inferences to be drawn from them. *NL*

6   *Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu,* 621

7   F.2d 1037, 1039 (9th Cir. 1980) (finding that the complaint must be read in the light most

    favorable to the plaintiff).   The Defendants can get any further facts they think they need in

8   discovery, and so the Motion should be denied in favor of commanding them to Answer.

9   **4. PLAINTIFF'S DUE PROCESS AND EQUAL PROTECTION CLAIMS**

10       Plaintiff has repeatedly alleged throughout the FAC that she was denied her rights of due

11  process (*proper*, Constitutionally adequate notice, and hearing(s) under *Memphis*), and treated

12  differently than all other customers of the District concerning: water billing; enforcement (or

    allegations of failure to abide by) HCSD rules, regulations, and Bylaws; CPRA requests; notices

13  and document provisions; tort claim notices; official notices and billing inserts; and, the uneven,

14  arbitrary enforcement of (or denial of) certain rights granted by various Constitutional, State law,

15  HCSD Rules and Regulations, and HCSD Bylaw provisions as to her.  She specifically alleged

16  that the Defendants did not subject anyone but her to summary seizure of personal property or

    water service.  These are quintessential equal protection claims under a "class of one" theory[10],

17
         Due process claims arise when either the US or California Constitutions, state laws, or

18  Rules and Regulations and/or Bylaws of the HCSD mandate certain procedures (particularly any

19  relating to notice and/or hearings, impairment or termination of services, etc[11]), and then those

20  procedures are ignored or circumvented by government officers acting under color of law.

    Plaintiff has made the requisite allegations of those violations, and specified the time period

21  during which they happened, so is not required to plead more details at this point.

22

23
    _____

24  [10]  See *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs,* 101 F.3d 1179, 1181 (7th Cir. 1996) ("The equal protection clause does not speak of classes. A class, moreover, can consist of a single member.").

25  [11]  See, i.e., *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 12-16 (1978) - which is specifically cited to in the FAC at p.5, fn13.  Plaintiff's water meter, her driveway, the piping on the residence side of the water meter connection (leading to Plaintiff's house), and her water service are all "property interests" of Plaintiff under the US Constitution, and cannot legally be seized absent a warrant, or notice and (pre-deprivation) hearing.  See, i.e., *Conner v. City of Santa Ana,* 897 F.2d 1487, 1490-92 (9th. Cir. 1990).

As to equal protection claims, the Defendants' Motion simply resorts to misrepresentation of the contents of the FAC (or perhaps Counsel didn't bother to read it), claiming on page 15 that Plaintiff did not allege certain elements of this claim, when she did in fact do so. See FAC, pages 1 at fn1, 7:17-21, 8:14-20, 9 at fn19, 14:2-6 and at fn23, 19 at fn29, and 20:21 - 21:4.

## 5. PLAINTIFF'S FOURTH AND FIFTH AMENDMENTS CLAIM

The FAC details numerous property interests of Plaintiff throughout, and alleged that the Defendants, as government actors, had Defendants Puckett and Dingman enforce the (wrongful) customs, policies, and practices of the HCSD by trespassing onto Plaintiff's land, then seizing vehicles, her privately-owned water meter, the piping to her home (by locking it off *after* the meter had been removed), and her water service - all without a warrant, and without any Constitutionally adequate notice(s) and pre-deprivation hearing(s) (or even any post-deprivation hearing(s), for that matter). Plaintiff is (supposedly) protected against such conduct by these government officers by the provisions of the 4th and 5th Amendments to the United States Constitution; the California Constitution at Article 1, Section 7(a)[12], and Article I, section 3(a)-(b)(1); by specific processes mandated in the HCSD's Rules and Regulations; and, by provision of the HCSD Bylaws. (See, e.g., Section A-1(9), A-3.3(6), page 16 #5.) These protections also manifest in Plaintiff's pendent State Law claims.

"The hallmark of property, the [US Supreme] Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except `for cause.' [Citations.] Once that characteristic is found, the types of interests protected as `property' are varied and, as often as not, intangible, relating `to the whole domain of social and economic fact.'" (*Logan v. Zimmerman Brush Co.* (1982) 455 U.S. 422, 430; see *Memphis Light, Gas & Water Div. v. Craft* (1978) 436 U.S. 1, 11; *Goldberg v. Kelly* (1970) 397 U.S. 254, 262-266; *Board of Regents v. Roth* (1972) 408 U.S. 564, 577. "`"A person's interest in a benefit is a `property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim

---

[12] Due process guaranteed under Article I § 7 of the California Constitution "presumes that when an individual is subject to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity." *People v. Ramirez*, 25 Cal.3d 260, 268-69 (1979). The principle that procedural due process protection is applicable to *all* adjudicatory action was affirmed in *Saleeby v. State Bar of California*, 39 Cal.3d 547, 563-64 (1985). The most important distinction to bear in mind is that due process under the California Constitution applies to <u>all</u> adjudicative actions, whereas due process under the United States Constitution is triggered only when liberty or property interests are at stake - as is indeed the case here.

1  of entitlement to the benefit. . . .'"" (*Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155,

2  169, quoting *Perry v. Sindermann* (1972) 408 U.S. 593, 601.)

3  **6. UNLAWFUL RETALIATION FOR FIRST AMENDMENT ACTIVITIES**

4         The Motion at page 15 claims that Plaintiff must "establish" certain elements to move

   forward on her claims for retaliation by the Defendants for Plaintiff's exercise of protected

5  speech and activities. That is incorrect, since Plaintiff's allegations in the FAC are taken as true

6  at this stage, and Plaintiff has pled sufficient details to make out a prima facie case for retaliation

7  (i.e., that she has filed several legal actions against these same defendants, that they are aware of

   those, and that they have reached agreement, and acted [in both their individual, and official

8  capacities], concerning certain matters to retaliate against Plaintiff therefor). See, i.e., FAC at

9  ¶¶5-6, 17-18, 24, 41, 46, and 51. As to the intent of the Defendants, Plaintiff is only required to

10  aver such in general terms (FRCP Rule 9(b)). Whether defendants were involved in an unlawful

11  conspiracy is generally a factual issue and should be resolved by the jury, "so long as there is a

12  possibility that the jury can `infer from the circumstances (that the alleged conspirators) had a

    `meeting of the minds' and thus reached a understanding' to achieve the conspiracy's objectives."

13  *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *reversed in part on other grounds,* 446

14  U.S. 754 (1980)) (quoting *Adickes v. Kress & Co.,* 398 U.S. 144, 158-159 (1970)).

15         Direct evidence of improper motive or an agreement among the parties to violate a

16  plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be

    necessary to infer such agreements from circumstantial evidence or the existence of joint action

17  (which is prevalent in this case). *See Magana v. Com. of the Northern Mariana Islands*, 107 F.

18  3d 1436, 1447 (9th Cir. 1997); *Kunik v. Racine County, Wis.*, 946 F. 2d 1574, 1580 (7th Cir.

19  1991); *Hampton v. Hanrahan*, 600 F. 2d 600, 620-621 (7th Cir. 1979). Moreover, "[q]uestions

20  involving a person's state of mind ... are generally factual issues inappropriate for resolution by

21  summary judgment." *Braxton-Secret v. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985). Clearly,

    the same logic applies even more strongly in the context of a 12b motion.

22         Moreover, unlike the plaintiff in the case cited by Defendants in the Motion (*Blair v.*

23  *Bethel School Dist.*, 608 F.3d 540 (9th Cir. 2010)), Plaintiff is not suing as being *herself* a public

24  employee, or a public figure, and so enhanced pleading and proof requirements do not apply to

25  her in this action. Rather, pleading requirements in this case more closely align with the

    principles discussed in the Opinion set forth in *Mendocino Environmental Center v. Mendocino*

    *County*, 192 F. 3d 1283, 1300-1301 (9th Cir. 1999), which states in relevant part:

"In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.' *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing *Mendocino Env'l Ctr.*, 14 F.3d at 464). While this statement might be read to suggest that a plaintiff must demonstrate that his speech was actually inhibited or suppressed, our description of the elements of a First Amendment claim in *Mendocino*, which *Sloman* cited for its standard, requires only a demonstration that defendants 'intended to interfere with Bari and Cherney's First Amendment rights.' Mendocino Env'l Ctr., 14 F.3d at 464 (emphasis added). Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, we conclude that the proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir.1996), vacated on other grounds, 520 U.S. 1273, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997) (internal quotation marks and citation omitted).

Intent to inhibit speech, which 'is an element of the claim,' *Mendocino Env'lCtr.*, 14 F.3d at 464, can be demonstrated either through direct or circumstantial evidence. See *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir.1997) (circumstantial evidence of intent is sufficient to survive summary judgment motion). For example, in *Hines v. Gomez*, 108 F.3d 265 (9th Cir.1997), we held that circumstantial evidence that an inmate had a reputation for filing grievances and had told a guard that he planned to file a grievance, combined with the jury's rejection of the guard's purported reason for punishing the inmate, 'warrants the jury's finding that [the guard] filed the disciplinary report in retaliation for [the prisoner's] use of the grievance system.' 108 F.3d at 268." (*Id.*, footnotes omitted.)

Of course, since this is a 12b motion, rather than summary judgment, "evidence" is not required- merely that Plaintiff plead some elements and facts relating to her retaliation claims - which she has done. It will be up to Defendants via <u>Answer</u> to assert any excuses as affirmative defenses and provide a statement of facts, and evidence, therefore.

## 7. PLAINTIFF'S ADA-BASED CLAIMS ARE SUFFICIENT

Under the ADA, an individual is considered to have a "disability" if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. In what appears to be another instance of Counsel not bothering to actually read the FAC, the Motion attempts to attack Plaintiff's ADA claims as being based upon "facilities" access, and <u>physical barriers</u> thereto. (Motion, p. 16.) Although it is true that the HCSD refuses to provide Plaintiff with <u>any</u> facility to inspect records or conduct other business (and so details of "barriers" to any facility

are not relevant), in reality, Plaintiff's claims relate to the reasonable accommodation portion of the ADA relating to participation in the HCSD's services and programs along with access to its records, and its applications of various rules, regulations, orders, polices, etc, without any corresponding consideration of Plaintiff's special needs and circumstances as a disabled person - despite her requests that it, and officers/employees/agents, do so.  See FAC, pages 4, 6, 20-21.

Under the ADA, "services, programs, and activities" are broadly construed by courts to cover virtually <u>everything</u> a public entity does. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (" Rather than determining whether each function of a city can be characterized as a service, program, or activity for purposes of Title II, however, we have construed 'the ADA's broad language [as] bring[ing] within its scope 'anything a public entity does.'" )  Additionally, local public entities are required to provide public notice about the ADA under 28 C.F.R. § 35.107(b) - something that the FAC alleges the HCSD does not do, even when asked.  The target audience for public notice includes applicants, beneficiaries, and other people interested in the state or local government's programs, activities, or services. The audience is expansive, and includes everyone who interacts, or potentially interacts, with the local agency .

Title II of the ADA prohibits public entities from discriminating on the basis of disability. 42 U.S.C. §12132.  To make out a prima facie case for a violation of Title II, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (citation omitted).  Therefore, in the context of a 12(b) motion, a plaintiff must merely <u>allege</u> those elements - as was done here[13].

---

[13] In a somewhat unusual circumstance, this Court also has before it some admissible statements by a Defendant it may consider by way of judicial notice of its own files in relation to the 12b Motion - those being made by Defendant Puckett while he was under oath and testifying before the Court on September 14, 2021.  In the transcript that appears in the record as ECF #36, Puckett expresses his disregard for Plaintiff's disabled status in regards to the issue of her inability to walk out to her fence line to check for random notices that may be affixed there at pp.26:15 - 27:4.  An unqualified government officer's "disputing" a person's disability is not an excuse to refuse accommodation under the ADA.  Furthermore, in regards to "notices" the HCSD and its Officers provide to Olson, ADA implementing regulations **require** public agencies to take appropriate steps to <u>ensure</u> communications with applicants, participants and members of the public with disabilities are as effective as communications with others. 28 C.F.R. §35.160(a).  Olson has properly alleged in the FAC that this was not done - particularly since the HCSD failed to even follow its own rules regarding written notice being given via USPS, and/or "in person".

Plaintiff's Opposition to 12(b) Motion of HCSD Defendants - 15

**8. ARGUMENT CONCERNING "MONEL CLAIM" (MOTION, p.16.)**

Defendant's 12b Motion contends at pages 16-17 that Plaintiff has failed to plead viable liability of the HCSD itself. However, this is incorrect because not only has Plaintiff actually pled the elements that the Motion insists are necessary, but also because the person's engaging in the wrongful conduct, and who have been named as Defendants, include not just only run-of-the-mill employees/agents, but the actual persons who control the operation of the District, and who create and implement its policies, procedures, customs, and practices (which are mostly just the arbitrary, capricious whims of those individuals, but also those which resulted in the alleged violations of Plaintiff's rights). Thus, the HCSD itself is also accused of acting to violate Plaintiff's rights, and failing to act to protect her rights. (FAC, pp. 2-3, 5-6, 8-12, 14, and 18-21.)

**9. ALL PERSON DEFENDANTS ARE SUED IN BOTH CAPACITIES**

The Motion again defies the plain language of the FAC, and incorrectly states on page 17 that Plaintiff has failed to lay claims against the Defendants as individuals, and instead did so only in their official capacity. The truth is that Plaintiff has clearly brought this actions against all participants in both their official and individual capacities, and as further provided by State law. See, i.e., FAC, pages 11, 13-14, 18-19, 21.

**10. THE 11TH AMENDMENT DOES NOT APPLY TO ANY DEFENDANT**

As the Defense admits, the HCSD is a political subdivision of the State of California. (Motion, p.17.) It is therefore clearly a bad faith argument to say that any of the Defendants in this action are state agencies or actors subject to 11th Amendment immunity from suit, as it is hornbook law that a political subdivision has no eleventh amendment immunity. See *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S.391, 401 (1979); ("[T]he Court has consistently refused to construe the [Eleventh]Amendment to afford protection to political subdivisions such as counties and municipalities ...").

As to declaratory and injunctive relief; this Court most certainly has the power and authority to command that a public agency or officer cease engaging in conduct that is a violation of civil rights, and/or which injures a party before it. Furthermore, Plaintiff's state law claims invoke California law for provisions of injunctive and declaratory relief - including, but not limited to, Code of Civil Procedure §1085.

**11. PLAINTIFF'S STATE LAW CLAIMS ARE ALL SUFFICIENTLY PLED**

Plaintiff responds to the unsubstantive argument of the Motion at page 18 concerning her state law claims by pointing out that her claims are well-grounded in the facts set forth in the FAC, and completely viable under California jurisprudence. Further, because the complaint

extensively references the HCSD Bylaws, and its Rules and Regulations (both of which have been lodged with the Court [ECF #34-35]), the Court may, and should, consider those materials incorporated into the FAC when making out viable claims, as should the references thereto contained in Plaintiff's ECF #40 Objections, which have themselves been incorporated herein.

## 12. CONCLUSION

A complaint need not be a model of clarity to survive an allegation that it is insufficiently pled. See *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). In the context of review of the FAC by this Court, "[a] complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Public Employees Ass'n v. Stout*, 946 F.Supp. 790, 804 (C.D. Cal. 1996). Similarly, "a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong*, 922 F.Supp. at 1461.

This case should move forward into discovery. If these Defendants wish to submit general denials, and/or affirmative defenses in response to the FAC, then they may. If they wish to assert affirmative defenses, however, then they will also be expected to (properly) come forth with not only assertions of fact to establish them, but also actual admissible evidence to support those defenses - rather than the bald narratives of Counsel, and questionably-presented materials of dubious relevancy thereto.

Respectfully submitted this ___10th___ day of December, 2021.

*Kimberly R Olson*
Kimberly R. Olson, Plaintiff Pro Se

## CERTIFICATION AND PROOF OF SERVICE

I, Kimberly R. Olson affirm under penalty of perjury under the laws of the United States that I served the HCSD Defendants a true copy of the foregoing document via US Mail to their counsel of record, at the address(es) below, on December ___10___, 2021 as follows:

Jeffrey Chiao
601 University Ave., Ste. 225
Sacramento, CA 95825

Dated this ___10th___ day of December, 2021.

*Kimberly R Olson*
Kimberly R. Olson, Plaintiff Pro Se

Plaintiff's Opposition to 12(b) Motion of HCSD Defendants - 17