**SPINELLI, DONALD & NOTT**
A Professional Corporation
J. SCOTT DONALD, SBN: 158338
JEFFREY C. CHIAO, SBN: 236781
601 University Avenue, Suite 225
Sacramento, CA 95825
Telephone: (916) 448-7888
Facsimile: (916) 448-6888

Attorneys for Defendants
ROBERT PUCKETT, SR., CLINT DINGMAN, MICHELE HANSON, MELISSA TUELLEDO and HORNBROOK COMMUNITY SERVICES DISTRICT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KIMBERLY R. OLSON,

Plaintiff,

vs.

ROBERT PUCKETT, SR., CLINT DINGMAN; MICHELE HANSON; MELISSA TUELLEDO; HORNBROOK COMMUNITY SERVICES DISTRICT; BRUCE'S TOWING/RADIATOR & DISMANTLING; and DOES 1 through 20, inclusive,

Defendants.

Case No.: 2:21-cv-1482-KJM-DMC (PS)

**DECLARATION OF JEFFREY CHIAO IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. PROC. 12(B)(6)**

Date: January 5, 2022
Time: 10:00 am
Courtroom: 304, 3RD Floor
Judge: Hon. Dennis M. Cota

Complaint Filed: August 18, 2021
FAC filed October 6, 2021
Trial Date: TBD

I, Jeffrey Chiao, declare as follows:

1. I am an attorney duly licensed to practice law before all of the Courts for the State of California and am an associate in the law firm Spinelli Donald & Nott, attorneys of record for Defendants ROBERT PUCKETT, SR., CLINT DINGMAN, MICHELE HANSON, MELISSA TUELLEDO and HORNBROOK COMMUNITY SERVICES DISTRICT. I have direct and personal knowledge of the facts set forth herein and, if called and sworn as a witness, I could and

would competently testify to the same.

2. On or about February 1, 2017, Roger Gifford filed a Second Amended Complaint in the Eastern District of California (*Gifford v. Puckett, Sr.*, et al., 2:16-cv-0955-TLN-AC) alleging civil rights claims under 42 U.S.C.§1983, etc. Attached as **Exhibit 1** is a true and correct copy of Plaintiff's Second Amended Complaint.

3. On or about May 13, 2019, Peter Harrell filed a Second Amended Complaint in the Eastern District of California (*Harrell v. Dingman*, et al., 2:19-cv-00031-KJM-AC) alleging civil rights claims under 42 U.S.C. §1983, etc. Attached as **Exhibit 2** is a true and correct copy of Plaintiff's Second Amended Complaint.

4. On or about July 22, 2019, Kimberly Olson filed a Third Amended Complaint in the Eastern District of California (*Olson v. Hornbrook Community Services District*, et al., 2:15-cv-0646-MCE-CMK) alleging civil rights claims under 42 U.S.C.§1983, etc. Attached as **Exhibit 3** is a true and correct copy of Plaintiff's Third Amended Complaint.

5. On December 20, 2021, Roger Gifford filed a Second Amended Complaint in the Eastern District of California (*Gifford v. Kampa*, et al., 2:17-cv-2421-TLN-DMC) alleging civil rights claims under 42 U.S.C.§1983, etc. Attached as **Exhibit 4** is a true and correct copy of Plaintiff's Second Amended Complaint.

6. On August 15, 2017, Magistrate Judge Gregory Hollows issued Findings and Recommendations recommending that Plaintiff Harrell's Second Amended Complaint in *Harrell v. Hornbrook Community Services District, et al*., 2;14-cv-01595-KJM-GGH, be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim. Attached as **Exhibit 5** is a true and correct copy of Magistrate Judge Hollows' Findings and Recommendations.

7. On August 17, 2017, Magistrate Judge Gregory Hollows issued Findings and Recommendations recommending that Plaintiff Gifford's Second Amended Complaint in *Gifford v. Puckett, Sr.*, et al., 2:16-cv-0955-KJM-GGH, be dismissed on res judicata grounds to the extent that the claims therein pre-date June 15, 2015. Magistrate Judge Hollows further recommended that Plaintiff Gifford's Second Amended Complaint be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim. Attached as **Exhibit 6** is a true and correct copy of Magistrate

SPINELLI, DONALD & NOTT

2

DECLARATION OF JEFFREY CHIAO IN SUPPORT OF REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. PROC. 12(B)(6)

Judge Hollows' Findings and Recommendations.

8. On March 27, 2018, Chief U.S. District Court Judge Kimberly Mueller adopted Magistrate Judge Hollows' Findings and Recommendations dismissing portions of Plaintiff Gifford's Second Amended Complaint that pre-date June 15, 2015, on res judicata grounds, and dismissing the balance of Plaintiff Gifford's Second Amended Complaint with prejudice based on Rule 12(b)(6). Attached as **Exhibit 7** is a true and correct copy of Chief U.S. District Court Judge Kimberly Mueller's Order Adopting Findings and Recommendations in *Gifford v. Puckett, Sr*., et al., 2:16-cv-0955-KJM-GGH.

9. On May 10, 2018, Magistrate Judge Gregory Hollows issued an Order pointing out the similarities between Peter Harrell's pleading in *Harrell v. Hornbrook Community Service District*, 2:14-cv-01595-KJM-GGH**,** and Roger Gifford's pleading in *Gifford v. Puckett, Sr*., et al., 2:16-cv-0955-KJM-GGH. Attached as **Exhibit 8** is a true and correct copy of Magistrate Judge Hollows' Order.

10. On August 24, 2018, the Ninth Circuit dismissed Plaintiff-Appellant Gifford's appeal as frivolous, under 28 U.S.C. §1915(e)(2). Attached as **Exhibit 9** is a true and correct copy of the Ninth Circuit's Order in *Gifford v. Puckett, Sr*., et al., 2:16-cv-0955-KJM-GGH.

11. On May 29, 2019, Magistrate Judge Allison Claire recommended that Plaintiff Harrell's Second Amended Complaint in *Harrell v. Dingman, et al*., 2:19-cv-00031-KJM-AC, be dismissed for failure to comply with Rule 8. Attached as **Exhibit 10** is a true and correct copy of Magistrate Judge Claire's Findings and Recommendations.

12. On September 25, 2019, Chief U.S. District Court Judge Kimberly Mueller adopted Magistrate Judge Claire's recommendations in full, dismissing Plaintiff Harrell's Second Amended Complaint with prejudice. Attached as **Exhibit 11** is a true and correct copy of Chief U.S. District Court Judge Kimberly Mueller's Order Adopting Findings and Recommendations in *Harrell v. Dingman, et al*., 2:19-cv-00031-KJM-AC.

13. On July 23, 2020, the Ninth Circuit affirmed the district court's dismissal of Plaintiff-Appellant Harrell's action with prejudice due to Harrell's failure to comply with Rule 8. Attached as **Exhibit 12** is a true and correct copy of the Ninth Circuit's Order in *Harrell v.*

*Dingman, et al.*, 2:19-cv-00031-KJM-AC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 29, 2021

SPINELLI, DONALD & NOTT

By: /s/ *Jeffrey Chiao*
JEFFREY C. CHIAO
Attorneys for Defendants

SPINELLI, DONALD & NOTT

4

DECLARATION OF JEFFREY CHIAO IN SUPPORT OF REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. PROC. 12(B)(6)

# EXHIBIT 1

Roger Gifford, In Pro Per
15226 Hornbrook Rd.
Hornbrook, CA 96044

FEB 01 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Roger Gifford,

Plaintiff,

vs.

Robert Puckett, Sr.; Patricia Slote; Lee Buckley; Melissa Peterson (a.k.a. Melissa Tulledo); Robert Winston; Julie Bowles; Clint Dingman; Ernest Goff; Hornbrook Community Services District (a.k.a. "HCSD"); Hornbrook Community Bible Church Inc.(a.k.a. "HCBC"); Kirsher, Winston, & Boston, L.C., Basic Laboratory, Inc. ("Basic Labs"); Murphy, Pearson, Bradley & Feeney, Inc.; William Munoz; Michele Hanson, Duke Martin, James Soares, and, John Does 6-20

Defendants,

Case No: 2:16-cv-0955-TLN-AC (PS)

**SECOND AMENDED COMPLAINT**

**(JURY TRIAL REQUESTED)**

ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; VIOLATIONS OF FEDERAL SAFE DRINKING WATER ACT, FAIR LABOR STANDARDS ACT, and CLEAN WATER ACT; PENDENT STATE CLAIMS

REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS; DECLARATORY RELIEF

USC 42 §§1983, 1985, 1986, and1988; USC 18 §1513(e).

## I. JURISDICTION

1. Jurisdiction over this action arises pursuant to Sections 1331, 1342, and 1343 of Title 28 of the United States Code, as an action arising under the Constitution and laws of the United States, specifically Amendments 1, 4, and 14 of the United States Constitution, the Clean Water Act[1] ("CWA"); the Safe Drinking Water Act[2] ("SDWA"); the Fair Labor Standards Act, Title 18 sections 1513(e) and 1846 of the United States Code; and sections 1983, 1985, 1986, and 1988, of Title 42 United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff by the Constitution and Laws of the United States from the period between December 4, 2015 through the current date, and ongoingly as specified.

[1] At Section 505 thereof.

[2] See generally 42 USC § 300j. Plaintiff also had a statutory right to be free of retaliatory actions by the Board Defendants concerning his complaints to the Board and other governmental entities of violations of the Act pursuant to 42 USC § 300j-9(i).

Supplemental jurisdiction (Section 1367) is asserted over Plaintiff's pendent state law claims for relief concerning violations of California statutes, its Constitution, and the Hornbrook Community Services District ("HCSD") Bylaws as duly adopted on April 18, 2014. Concerning Plaintiff's pendent state claims herein, Plaintiff certifies that beginning on or about March 23, 2016 he timely and properly provided written notice of his claims to the HCSD in full compliance with all requirements of the California Government Tort Claims Act, Government Code sections 905, 910, and 915. The HCSD never responded in any way to Plaintiff's tort claims notice(s). Plaintiff additionally presented to the HCSD and Board Defendants multiple other notices, letters, claims, and other documents concerning the improper and wrongful acts alleged in this complaint, as well as personally attending almost every meeting of the HCSD Directors during the period beginning December 4, 2015, and continuing thereafter, and ongoingly, for the purpose of making each of the Defendants herein aware of the wrongful conduct being undertaken, and/or that was ongoing. Because the Defendants were thus notified, and refused to cease, mitigate the harm of, or conform to the laws, Plaintiff has alleged malicious, oppressive, and knowing conduct as to any specific Defendant as set forth in their respective Section, and in the "Counts" sections of this complaint. Regarding Plaintiff's pendent State claims, this action is also brought in the name of all persons similarly situated to Plaintiff, as a Private Attorney General, as otherwise provided by California statutory authority, and as provided by the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030.[3] Plaintiff, at all times material, was, and is, a resident, elector and taxpayer of the Hornbrook Community Services District, the County of Siskiyou, and the State of California. From the period of January 2014, through December 3, 2015, Plaintiff was also a member of the Board of Directors of the Hornbrook Community Services District, and entitled to all of the rights and duties of that elected office, and as a public officer of a political subdivision of the State of California.

2. Defendant Hornbrook Community Services District ("HCSD" or "District" herein) is a public agency lying completely within the County of Siskiyou, in the State of California, that was created, and, at all times material, operating as a municipal corporation and an independent

[3] Among other sections thereof. A true copy of the HCSD Bylaws as adopted and ratified by the Board of Directors on April 18, 2014 has been previously lodged, and are incorporated herein as if fully set forth as to those sections referenced herein. Plaintiff believes, however, that the Clerk inadvertently failed to note such lodging on the docket.. Provisions of the Bylaws have the force of law, and violation of the provisions thereof is a misdemeanor crime, as well as being therefore a nuisance *per se*. See California Government Code 61064(a).

special district[4] under the laws of the State of California and of the United States, as well as its own duly adopted Bylaws, and subject to their jurisdiction. The HCSD is a political subdivision of the State of California, and is governed by a five member Board[5] as provided in California Government Code sections 61000, *et seq*. As such, the HCSD is specifically mandated to follow all of the provisions of the Brown Act, Health and Safety Code, all provisions of it's own Bylaws, and the California Public Records Act in conducting its operations[6]. As a public service district providing potable water, the HCSD is also subject to various provisions of the Water Code, including section 71616 thereof, mandating rates sufficient for the upkeep, improvements, and expansion of the water production and treatment facilities. Plaintiff is a taxpayer, elector, property owner, and citizen of the HCSD, and resides within its boundaries. Each of the named individual person/entity Defendants are alleged to have been agents, employees, co-conspirators, aiders and/or abettors, and/or ratifiers of the wrongful conduct undertaken by the HCSD, and/or its Directors, employees, and/or agents as alleged herein, and are thus specifically alleged to be "state actors" for purposes of liability.

3. The unincorporated community of Hornbrook lies just south of the Oregon border, and is marked by an aging, declining population, poverty, and lack of education.[7] The boundaries of the HCSD completely encompass Hornbrook. The HCSD itself has a long history of systemic and chronic administrative and operational dysfunction, as well as inadequate facilities (and untrained, uncertified staff) that violate Clean Water Act[8] and Safe Drinking Water Act[9] requirements. Plaintiff, and others acting in conjunction with him, with his direction and assistance, and/or on his behalf, have repeatedly noticed the HCSD and each of the other Defendants herein of their violations of State and Federal laws, the HCSD Bylaws, and of his

[4] Special Districts are primarily controlled by California Government Code sections 61000, *et seq*.

[5] Defendants Patricia Slote; Lee Buckley; Melissa Peterson; and Robert Puckett, Sr. are all members of the Board of Directors of the HCSD, and are referred to collectively as "the Board Defendants" hereinafter. As Directors of a political subdivision of California, the Board Defendants are all "state actors" for purposes of §§1983, 1985, 1986, and 1988 claims. Since the original version of this complaint was filed, Buckley has resigned.

[6] Because the HCSD produces and distributes drinking water to the community of Hornbrook, it must also follow the Federal mandates set forth in the Clean Water Act, and the Safe Drinking Water Act, among other federal laws.

[7] See census data contained at: http://en.wikipedia.org/wiki/Hornbrook,_California Also see snapshot data with links to CA data at: http://www.klamathalliance.org/information/the-human-toll-in-siskiyou-county/

[8] 33 USC §§1251, et seq. One of the HCSD wells contains high levels of salts and boron, and flows unfiltered or restrained into Rancheria Creek, thus into Cottonwood Creek, and then into the Klamath River.

[9] 42 USC Chapter 6A; 40 CFR 141-143

rights, but each of the Defendants have refused to cease their wrongful conduct as set forth, and failed to conform their conduct to State and Federal laws, and the HCSD Bylaws.

4. All claims made herein are brought against the natural person defendants in their individual, as well as their official capacities to the extent permitted by law, and the circumstances of each of the claims made against them[10].

5. By naming the Board Defendants and the HCSD as co-Defendants, Plaintiff has intended to comply with the provisions of California Government Code 815.3 throughout each applicable cause of action herein, whether specifically set forth, or implied in the recitation of factual allegations. The term "Defendants", when used herein, means all of the named defendants, and each of them, unless otherwise specified in limiting language (i.e. "each of the Defendants named in this paragraph", "these Defendants" within a section talking about some specifically named defendants, or similar language).

6. At all times material relevant to the claims made herein as to each, or any group of them, it is alleged that each of the Defendants, individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, managing agents, owners, masters and servants, ostensible agents, principals, co-conspirators and/or partners of one another as to that specific act, plan, coordinated action, conspiracy, or joint venture as set forth in the section headed by that particular Defendant's name and contact information, and that each knew of the wrongful nature of the actions taken (and/or those taken by others on their behalf) and willingly agreed to participate in such wrongful conduct, and that each intended the reasonably foreseeable outcome thereof. Furthermore, all defendants, in addition to any actions committed in their individual, derivative, and/or official capacities in engaging in the conduct that is generally described herein, acted pursuant to policies, customs, and practices of the HCSD as adopted (officially, unofficially, or by ex parte and/or non-public consensus) by the Board Defendants, the HCSD, its administrators or other directors, operators, employees, contractors, and/or agents, and were at all times acting with the knowledge, consent, approval, encouragement, aid, and/or subsequent ratification of each of the remaining co-Defendants. (See also *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978);

---

[10] For example, Defendants Crittenden, HCBC, Martin, and Basic Labs, are only alleged to be "state agents" for USC 42 Section 1983 liability due to concerted and coordinated planning and action undertaken with the actual officers and employees of the HCSD, and acting under color of law of the HCSD officers/employees positions as public officers and employees in engaging in the improper conduct benefiting those defendants (i.e. improper fee waivers, circumventing votes of electors as provided in the HCSD Bylaws, false claims made to the HCSD, etc).

California Government Code section 815.3.) This is a Federal question, civil rights, state common law, statutory, and tort-claims action arising from unconstitutional, unlawful, and/or wrongful actions taken by the named Defendants in their individual, and official capacities, in violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, various federal laws as listed above and set forth herein, and numerous State statutory rights. On this basis, this paragraph is specifically incorporated into each of the following individual Sections relating to conduct alleged against each Defendant as if fully set forth.

7. Each of the Defendants caused and is responsible for the herein-described unlawful and/or tortious conduct and resulting injuries by, among other things: personally participating in the unlawful conduct or acting jointly, aiding, abetting, or conspiring with others who did so; by authorizing, ratifying, encouraging, agreeing with, acquiescing in, or setting in motion, policies, plans, or actions, that led to the unlawful conduct, or, although lawful in and of itself, was in furtherance of other, unlawful and/or tortious conduct; by failing to take action to prevent the unlawful and/or wrongful conduct described in the complaint; by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the laws of the United States, the State of California, and/or the HCSD Bylaws; and, by failing to initiate and maintain adequate training and supervision; and, by ratifying the unlawful conduct that occurred by themselves, as well as any agents, employees, contractors, and/or officers under their direction and control, including failing to take remedial and/or disciplinary action once they became aware of civil rights, statutory, and/or HCSD Bylaw violations being committed by one or more of the other Defendants. On this basis, this paragraph is specifically incorporated into each of the following individual Sections relating to each Defendant as if fully set forth.

8. In doing the acts alleged herein, the Board Defendants; Winston; Bowles; Goff; Dingman; Crittenden; Hanson; Munoz; Murphy, Pearson, Bradley & Feeney, Inc.; Basic Laboratory, Inc.; Kirsher, Winston, & Boston, L.C.; Hornbrook Community Bible Church; Soares, and, John Does 6 through 20, - and each of them, were acting in their official capacity as elected officials and/or employees, or as a direct agent[11] of an elected official or District officer, and/or was "jointly engaged" with a public officer or official while engaging in the conduct

[11] Plaintiff intends the term "direct agent" to also apply to HCSD customers or property owners within the District boundaries who were participants in, and erstwhile beneficiaries of, illegal conduct of the Board Defendants, Dingman, and/or Bowles by having had their water fees, rates, assessments, and water usage and/or other fees and charges wrongfully reduced, redetermined, waived, unbilled, unrecorded (e.g. by failure to read water meters), falsely billed, or rescheduled by one or more of the Board Defendants, Dingman, and/or Bowles.

alleged herein[12], and thus also the HCSD as an entity itself, or were acting in their individual capacity under color of such authority as HCSD employees, officers, or agents thereof - even during those periods when their acts or such employment were unlawful, or in excess of their authority or the provisions of law, and/or so technically not part of their official duties, or recognized as part of their official duties or areas of responsibility. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213-21; *White v. County of Orange* (1985) 166 Cal.App.3d 566, 571-72; Government Code section 815.3.) Although reference is made in this Second Amended Complaint to events and circumstances occurring at purportedly public meetings of the Hornbrook Community Services District ("HCSD"), and/or concerning Defendant Robert Winston's alleged illegal[13], and/or otherwise wrongful purported: authoring of HCSD documents; purported representation in legal actions of the HCSD, Board Defendants, Bowles, Dingman, and/or Goff without lawful Board approval; and, Winston's instructions to, and conspiracies with, the Board Defendants; Dingman; Hanson; Goff; Munoz; Murphy, Pearson Bradley & Feeney; and/or Bowles, occurring in part at any private, or purportedly "closed session" public meeting of the HCSD Board (and including ex parte, "daisy chain" and/or "spoke and wheel" meetings by these Defendants held in violation of the Brown Act); it is not Plaintiff's intention to base any state law, or common-law tort, cause of action, or request for relief, upon any actual filing or statement in a court of law, or before any other lawfully convened tribunal or Board; or, upon any statement or other expression of First Amendment rights occurring by any person or entity at any purportedly public proceeding, or meeting of any public entity (including the HCSD), or judicial proceeding. Plaintiff does, however, assert that some such statements and/or expressive conduct (including pleadings, motions, and/or purportedly official writings, etc), although perhaps not actionable themselves, may be evidence of other bases for causes of action[14]. Further, the events and statements made at any particular meeting may in fact be

---

[12] See, e.g., *United States v. Classic*, 313 U.S. 299, 326 (1941); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Lugar v. Edmondson Oil Co., Inc.* 457 U.S. 922 (1982)

[13] That is, in violation of Bus. & Prof. Code §§6104, 17200, the Rules of Professional Conduct, and/or other laws and regulations.

[14] For instance, Winston's appearing in Court as the purported "attorney of record" for the HCSD and/or its employees and Directors without any approval of the Board acting in compliance with Government Code section 61045 is a violation of California Business and Professions Code section 6104, and thus a violation of California's Unfair Competition Law, Business and Professions Code section 17200 - rather than an expression of Winston's First Amendment Rights to free speech and/or petition. Likewise, such specifically prohibited conduct is not permitted by the exemption generally created at Civil Code section 47, and does not involve any "communication" by Winston - merely his unauthorized appearance. Protected conduct that is mere evidence of what the defendant is actually being sued for also does not

actionable if it is determined at any point that said meeting was in fact not a lawful public meeting (generally of the HCSD), and/or that the action taken, document(s) produced, etc were unlawful, fraudulent, or otherwise improper or *ultra vires*. This disclaimer does not apply to Plaintiff's Constitutional and other Federal claims, which are not subject to California's "SLAPP" statutes (Code of Civil Procedure section 425.16, etc).

8a. All Defendants are sued in their individual and official capacities as applicable. Plaintiff specifically alleges that each of the regular, special, biweekly, and/or monthly meetings of the HCSD Board, as well as those ex parte meetings[15] between some or all of the Board Defendants and Winston, Bowles, Hanson, Murphy, Pearson Bradley & Feeney, Kirsher, Winston & Boston, Crittenden, Munoz, HCBC, Martin, and/or any John Does, held between the dates of December 4, 2015, the present date, and ongoingly, were defective as to notice, description of agenda items, content of agenda items, opportunity for public comment, and other deficiencies of process at those meeting such that each meeting resulted in multiple violations of the Brown Act, and/or the CPRA, and that such violations deprived Plaintiff of his right to access to, and be informed as to government actions, his rights to be heard and to petition the government and/or the courts for redress, and, that the various Board Defendants and the other persons and entities they met with at any particular meeting, engaged in such violations knowingly and willfully, and with the intent that their actions and plans be concealed from the public, and from Plaintiff, in order for various statutes of limitations and other restrictions on legal actions to lapse in their favor, and to prevent Plaintiff from seeking redress before the courts and government agencies for the wrongs done by these Defendants.

**THE "BOARD DEFENDANTS"**

8b. Defendants Robert Puckett, Sr., ("Puckett"), Patricia Slote ("Slote"), Lee Buckley ("Buckley"), and Melissa Peterson/Tulledo ("Peterson" or "Peterson/Tulledo") are referred to collectively herein as "the Board Defendants", even though these persons, while being sued in their official capacities as to the HCSD, are also sued herein in their individual capacities as to some causes of action as circumstances call for, and as the law permits. Insofar as the "Board Defendants" took actions in their official capacities, and/or under color of law of their positions

---

qualify for the protections of California Code of Civil Procedure section 425.16. (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214-1215.)

[15] The term "meetings" also encompasses the use of telephones, email, "spoke and wheel" and "daisy chain" methodologies, and any other form of communications amongst the participants intended to engender a collective concurrence as to any particular action, policy, etc by the Board Defendants, whether ever officially voted on, or not.

as "Directors" and/or Officers of the HCSD, enacting , promulgating, and/or enforcing the customs, policies, and practices thereof (written and unwritten), they are also the "HCSD" itself for liability purposes when the agency itself is accused of a violations of statute, constitutional right, or tort, and it is Plaintiff's intention to state causes of action against the HCSD so far is recognized under the law when stating facts and claims as set forth below as to each and any of the Board Defendants.

8c. The Board Defendants (and the HCSD) had, and have, a wrongful policy of violating the HCSD Bylaws, California State law, and the California Constitution, by providing for the indemnification and legal defense, using public funds of the HCSD treasury, of persons and agencies who are not entitled thereto under the provisions of <u>Government Code</u> §995, or any other provision of law, and have wrongfully awarded these benefits to the recipients without any due process of law as set forth herein, and as unlawful gifts of public funds. Such conduct, while being specifically prohibited under the constitution and laws of the State of California, are also a waste of taxpayer funds, and so subject to injunction, recoupment, and other relief via Plaintiff's action herein as contemplated by <u>Code of Civil Procedure</u> section 526a.

8d. The Board Defendants - particularly when acting as "the HCSD", further failed to supervise, train, and/or control, HCSD employees, and/or contractors, Bowles, Goff, Winston, MPB&F, Munoz, Kirsher, Winston & Boston, and Dingman, so that violations of law, and violation of Plaintiff's statutory and/or constitutional rights, and other torts, by those persons/entities, would not occur. Each and all of the Board Defendants (and thus the HCSD itself) also took concerted action to: knowingly and willfully fail and refuse to set and collect water rates in conformance with California Water Code sections 31007 and 71616, the HCSD Bylaws, and HCSD Resolution #14-025; failed and refused to collect the HCSD "standby fee" as to taxable parcels within the District boundaries as required by HCSD Bylaws, policies, and procedures; failed and refused to impose and collect all due fees and charges from all customers and accounts; failed to undertake or require of customers, statutorily-mandated yearly inspection and certification of cross-check devices attached to the HCSD's distribution system; and, disregarded, *de facto* rescinded, and/or altered multiple mandatory sections of the Bylaws without a vote of the electors, when those sections specifically provide that they cannot be amended without the vote of the electors of the District[16]. The Board Defendants (and thus the

---

[16] All of this conduct, and each item thereof, was the result of agreement, cooperative acts, planning, and ratification - undertaken for their own benefit and that of their associates and family members, without any notice to the public or to Plaintiff, and without any due process, thus also depriving Plaintiff of the

HCSD) also planned, agreed, conspired, ratified the conduct of, and acted with, Defendant Robert Winston to wrongfully and illegally abdicate their statutory and fiduciary duties to the District, the public, and Plaintiff, by purportedly "reaffirming" various fraudulent, false, invalid, unlawful, and/or void purported resolutions and contracts which effectively (as well as impermissibly and illegally) delegated their Legislative authority to Winston concerning his pay, the power to incur debt in the HCSD's name, and appointment to legal matters for the District.[17] The violations and torts complained of herein, and actions by the defendants as set forth, all occurred between the dates of December 4, 2015 through the current date, and/or were/are ongoing as noted. If a date of occurrence is within this range, it will therefore generally not be specified in the factual recitations.

**II. DEFENDANT ROBERT PUCKETT, SR . 15009 Oregon Rd./P.O. Box 435, Hornbrook, CA 96044 (530) 475-3856.**

9. At all times material, Defendant Robert Puckett, Sr. ("Puckett") was a citizen of Siskiyou County, California, a Director of the HCSD, and President of the Board of Directors thereof. Puckett, beginning on or December 4, 2015, agreed and conspired with, aided, and abetted the other Board Defendants (and thus the HCSD), and Defendant Winston, in acting to: hold illegal, wrongful, and/or improper meetings of the HCSD Board[18], and then and there

---

equal protections of the laws, and his right to vote on certain changes to the Bylaws of the HCSD. Essentially, positions on the Board of the HCSD are used as a platform for a local "spoils system".

[17] Winston was never hired as "general counsel" for the District. By purportedly allowing Winston to "self-create" contracts with his firm and the HCSD for legal services and administrative proceedings without any prior review or approval by the Board, nor any cap on expenditures for any matter that he thereafter "self-assigned" to, the Board Defendants violated the jurisprudence of this State, as well as statutory and Constitutional guarantees of Plaintiff and the public against delegation of Legislative authority. See Government Code §61045; *Slavich v. Walsh* (1947) 82 Cal.App.2d 228, 235; *People's Fed. Sav. & Loan Ass'n v. State Franchise Tax Bd.* (1952) 110 Cal.App.2d 696, 700; *Birkenfeld v City of Berkeley* (1976) 17 Cal.3d 129, 167; *Wilke & Holzheiser, Inc. v. Dep't of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 369.

[18] That is, the meetings were held in violation of various provisions of the Brown Act and/or the HCSD Bylaws, and/or that actions taken at the meetings also violated the Brown Act, other State laws, and/or the HCSD Bylaws by (including, but not limited to) giving improper (and/or often no) notice, and/deficient notice as to the meetings and/or items to be considered or acted upon at those meetings; by failing to take actions required by law; and, by taking actions prohibited by State law and/or the Bylaws. This includes the improper, unlawful, wrongful; acts of waiving past due fees, penalties, and/or other charges for some persons (without any due process); considering and promoting to other Board members outside of public meetings various proposals with the intent to form a collective consensus as to later Board action; backdating privately-dictated legal services agreements with Defendants Winston, and Kirsher, Winston, & Boston, L.C., as well as ex post facto Board action of approval of Winston's appearances before the Siskiyou Superior Court as the purported counsel of the HCSD in violation of Bus. & Prof. Code §6104; having Winston ghostwrite HCSD resolutions and other documents without lawful authority, and ex post facto directing Winston to undertake actions in the Siskiyou County Superior Court

engage in purportedly official conduct which actually violated State law, and/or the HCSD Bylaws; retaliate against Plaintiff for his complaints to governmental agencies and the courts[19]; deprive Plaintiff of his right to due notice, access to and to petition the government for grievances; conspire[20], attempt, and act, to: violate the Brown Act and California Public Records Act; improperly and wrongfully divert HCSD funds to his associate, Defendant Julie Bowles, and to Defendant Robert Winston[21]; wrongfully and improperly reduce the proper monthly charges assessed HCSD customers (by failing to assess commercial rates as to commercial properties; failing to assess proper rates for multiple "dwellings" on parcels; by unlawfully reducing the minimum monthly charge for each residence from $45.00 per month to $39.00 per month; and, failing to collect past due, penalty charges, and other fees); ignoring and *de facto* erasing/nullifying multiple provisions of the HCSD Bylaws without any public meeting or action of the HCSD Board in compliance with the Bylaws to make those changes[22]; wrongfully and improperly waiving and/or failing to collect past due accounts for certain persons/entities within the District; wrongfully divert HCSD funds as payments and services in excess of (and/or absent any) contract to Clint Dingman, Robert Winston, MPB&F, Munoz, and Julie Bowles (and including payments for services not actually rendered by any and/or all of them); wrongfully conspiring and acting with the other Board Defendants, Defendant Clint Dingman, and Defendant Julie Bowles to avoid having his water meter read from the time he assumed office until the present date, and ongoingly, so that proper fees and charges would not be assessed on him, and instead he received only the minimal monthly charge (which minimal charge was also

---

(and otherwise) all of which actions were not previously authorized by the HCSD Board in compliance with Govt. Code 61045.

[19] By, among other ways: failing to timely and fully (if at all) respond to Plaintiff's tort claims notices, California Public Records Act requests, requests for indemnification and due process of that request pursuant to Govt. Code 995, and/or other complaints and grievances as required by law - while also discussing, and conducting business relating to, items that were not described (and/or which were incorrectly or inadequately described) on the agendas for said meetings.

[20] With the other Board Defendants, Winston, Bowles, Dingman, and Goff.

[21] By, among other acts taken in coordination, agreement, and ratification with Defendants Slote and Peterson/Tulledo, wrongfully "reaffirming" multiple, non-existing and/or void contracts, and/or "backdating" purported contracts with Winston and/or Kirsher, Winston, & Boston, L.C.- which was also done with the intent of "covering up" for Winston's previous unauthorized appearances in superior court purportedly on behalf of the HCSD in violation of Bus. and Prof. Code 6104. Plaintiff incorporates, so far as is relevant to Defendant Puckett, that information set forth below as to Robert Winston, consisting of paragraphs 53 through 65. Such purported contracts allowing Winston to appear in any and all legal and/or administrative matter without prior HCSD Board approval were also wrongful, illegal, and impermissible delegation of Legislative authority, and were thus void.

[22] Such action(s) also deprived Plaintiff, and other electors within the District, of the right to vote on changes to the Bylaws as provided by multiple sections thereof, constituting a violation of 42 USC 1985.

additionally wrongfully partially waived for him by Bowles and the Board Defendants), and which minimum charge was therefore produced each month as a fraudulent and false official document (multiple months of billing) by Defendants Bowles, the "HCSD", and the Board Defendants on his behalf, and with his concurrence and ratification. Additionally, Puckett, with the ex parte assistance, concurrence, encouragement, and aid of Defendants Patricia Slote and Robert Winston, refused and failed to indemnify Plaintiff as a public officer and director of the HCSD when Plaintiff was sued in Federal Court in his official capacity and for actions undertaken by Plaintiff as part of his official duties as a Director of the HCSD. Plaintiff alleges that Puckett and the Board Defendants (and thus the HCSD), failed to act on, or respond properly to, or provide due process for, Plaintiff's request for indemnification pursuant to <u>Government Code</u> §810 et seq, and section 995, concerning legal actions filed against Plaintiff in his official capacity, and pertaining to acts and duties undertaken by him in his official capacity as Director of the HCSD. Furthermore, Plaintiff was treated in this manner, and his indemnification rejected out of hand, in retaliation for Plaintiff's participation in legal matters involving the HCSD, because Plaintiff served legal papers on the HCSD and/or Board Defendants, and for Plaintiff's filing of Brown Act and CPRA notices and complaints with the HCSD and the Courts.

9a. Plaintiff made the requests for his indemnification in compliance with <u>Government Code</u> 995 to Puckett, Slote, Peterson/Tulledo, and the HCSD. The refusal to respond as required by law, and to provide Plaintiff a noticed hearing and opportunity to be heard, to be advised of any facts or information concerning his request, and to cross-examine witnesses and evidence against him as presented by Puckett, Slote, Peterson/Tulledo, and/or the HCSD, as well as his right to a written determination of the indemnification request, including notice of his right to seek judicial review of any denial, while also being held to a different standard for indemnification than that applied to other Directors, employers and contractors of the HCSD, deprived Plaintiff of his due process and equal protection[23] rights, and Plaintiff's property interest in the indemnification. Puckett and the other Board Defendants (and thus the HCSD as well) not only failed to abide by the provision of statute, but also treated Plaintiff differently regarding his indemnification requests than were other persons similarly situated, and requesting indemnification by the HCSD. Plaintiff can, and hereby does, seek relief in the form of a writ of mandate from this court concerning the willful failure to perform required administrative actions

[23] The HCSD, and Board Defendants routinely approved indemnification requests for themselves, and for their co-conspirators on agendas - even when such indemnifications had not been requested in writing. The HCSD, Board Defendants, and Winston also routinely approved indemnifications for themselves and/or their co-conspirators without any public notice or meetings at all.

of the HCSD and Board Defendants relative to his indemnification request, as well as seeking compensation and other relief for the due process and equal protection violations engaged in by the HCSD and Board Defendants in acting to wrongfully, and without basis in law, deny Plaintiff's due process and equal protection rights generally, and as to his indemnification request specifically, absent any findings of fact, and without providing due process relating thereto. (See *Mata v. City of Los Angeles* (1993) 20 Cal. App.4th 141 at 147-49; also *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999).) As a consequence of these Defendants' acts as set forth herein, Plaintiff has been caused to suffer undue and unfair seizure and termination of the benefits of his employment and elected position as Director of the HCSD and a public officer without any opportunity to be heard[24], interference with and violation of his statutory rights to indemnification and to be defended, violations of his rights to due process of law, and the equal protections of the laws in his official and individual capacities.

9b. From the period of December 4, 2015, through the current date, and ongoingly, Puckett and the other Board Defendants, along with Dingman, Goff, Bowles, Hanson, and Winston, specifically conspired and acted[25] to have Dingman work on, repair, and operate (including by the addition of chemicals) the HCSD water production, treatment, and distribution facilities without any license to do so, all in violation of Health and Safety Code sections 106875, and 106885, and 22 California Code of Regulations sections 63765 and 63770. Puckett and these same defendants, at that time and ongoingly, conspired and acted to wrongfully thwart all attempts by Plaintiff, and other members of the public, to monitor, report, and/or correct the nuisance caused by such acts and actions, and actively maintained the threat to public safety created thereby by: hiding records of the operation of the water production and treatment facilities; instructing Dingman and Goff not to create the required daily logs at the HCSD's facilities; and, instructing Dingman and Goff to not provide required monthly reports concerning

[24] As a public employee working for a political subdivision of the State of California at the times alleged in the complaint against him, Plaintiff asserts that, in addition to other administrative due process, he was entitled to the benefit of a noticed full hearing pursuant to Govt. Code 995 concerning any allegations against him related to his job and/or job functions, to be provided written findings of fact relating thereto, and, in fact, to be fully indemnified as to all claims in the particular instances giving rise to his 995 requests of Defendants HCSD, Puckett, and Slote.

[25] By, among other things, instructing Dingman to do so; and, for Dingman to bill for hours of pay in excess of his contract, for which he did not work, and/or for duties that had not been approved by the HCSD Board in compliance with Govt. Code 61045. These Defendants were fully aware at that time of Dingman's lack of licensure.

those facilities[26] to the Board Defendants and/or to the State of California Water Control Board.

9c.  From the period of December 4, 2015, through the current date, and ongoingly, Puckett and the other Board Defendants, along with Defendants Ernest Goff, Julie Bowles, William Munoz, and Murphy Pearson, Bradley & Feeney, have conspired, agreed, and acted in concert to use the authority of the Board Defendants to wrongfully and improperly divert public funds to the non-contractual defense of independent contractors Bowles and Goff when such was not required by law, or any agreement between the HCSD, Bowles and/or Goff.  Such diversion of funds constitutes an impermissible gift of public funds under the laws and Constitution of California, and also a waste of public funds under Code of Civil Procedure §526a.

9d.  Beginning on December 4, 2015, and thereafter, Puckett, acting as HCSD President, conspired to, and did, engage in improper *ex-parte* contact with Julie Bowles, Patricia Slote, Steven Crittenden ("Crittenden") and Hornbrook Community Bible Church, Inc. ("HCBC" or "the Church"), to improperly, illegally, wrongfully, willfully, and corruptly act to violate the Constitution and laws of the State of California[27], and the HCSD Bylaws[28], by granting a gift of public funds on that date (and ongoingly) to the Hornbrook Community Bible Church, Inc., a "Tier 2" commercial[29] customer of the HCSD,  in the form of greatly reduced water fees, waiver of water fees to the additional residence on the Church's property, and waiver of late charges and other fees to the HCBC in perpetuity.

9e.  Beginning in about June of 2016, and continuing on thereafter to the present date, and ongoingly, Puckett, in agreement. cooperation, coordination, and conspiracy with Slote, Dingman, and Goff, has wrongfully, improperly, and illegally permitted the diversion of HCSD funds and other resources to Defendant Clint Dingman in the form of gifts of electricity, water, and property of the HCSD for Dingmans personal and private use by permitting Dingman to install various personal appliances, and to actually reside, inside the water plant of the HCSD[30] - all without any actual formal HCSD Board action at any public meeting purporting to permit such gifting and/or arrangements with Dingman.  Defendant Goff, the erstwhile Chief Operator

---

[26] The purpose of this instruction was to place those records putatively beyond the reach of CPRA requests by Plaintiff and other members of the public.
[27] Cal. Const., Art. XVI, section 6; Government Code section 8314.
[28] See HCSD Bylaws, Sections A-2(11), A-9(1), 1-5.010, 1-5.030 [pp.27-28].
[29] The Siskiyou County Code requires "Rural Neighborhood Commercial" (C-R), or "Neighborhood Commercial" (C-U) zoning for churches at Title 10, Chapt. 6, Art. 41.
[30] Such an arrangement violates numerous provisions of the Health and Safety Code, the Siskiyou County Code, zoning laws, and the HCSD Bylaws.  The water plant, as a normally "unattended operations facility" does not have any sewer, or proper plumbing facilities.  Chlorine and other toxic chemicals are also stored at the facility.

of the HCSD, Dingman's direct supervisor, and person tasked under law with assuring that the facilities of the HCSD are operated in conformance with all State and Federal laws, aided, abetted, and ratified this wrongful conduct by failing and refusing to take corrective action relating thereto, and failing to report the conduct to the State Water Resources Control Board.

10. Puckett has also, for the past two years, and ongoingly, in conjunction with other members of his family and various associates[31], at 15009 Oregon Rd., in Hornbrook, Siskiyou County California, maintained public, private, and *per se* nuisances[32] in the forms of: an unpermitted and improperly altered septic system; improperly stored radiator antifreeze, oil, and other chemicals; improperly and in violation of County ordinance maintained multiple derelict vehicles which leak toxic oils and fluids - allowing such oils and fluids - along with other contaminants - to drain into the ground (and thus also percolate into the groundwater of the area), to wash onto the public street where Plaintiff drives to reach his own property, to wash into the gutters which flow past and over nearby properties, including Plaintiff's, as well as into the nearby creeks and Klamath River[33], all of which waterways are populated with various species of protected trout, steelhead, and salmon; maintained multiple decrepit sheds, lean-tos, outbuildings, trailers, fifth wheels and the like in manner that harbors rodents and other vermin, while also containing unsafely-stored and/or applied pesticides, rodentcides, and fungicides, and which trailers and RVs Puckett stores, and permits people to live in, all in violation of County ordinance; maintained a fire hazard in the form of overloaded and modified residential electrical system for the residence (including extension cords and other hazardous conditions), and by having more people living in the residence than its rated capacity; maintained large collections of debris, containers of toxic materials, derelict items containing toxic materials, refuse, and garbage that harbor rodents and other vermin which breed and disburse therefrom to nearby properties, including Plaintiff's; and, maintained the residence and grounds of the property in an unsightly condition, and in such a manner that trash, petrochemicals, pesticides, rodentcides, sewer water, contaminants, poisoned animal carcasses, and other debris disburse from that property into the gutters leading to, and into the nearby creeks and river, and also onto the public roadway where Plaintiff drives to and from his own nearby property, the local mini-mart, and the

---

[31] These John Does will be named and amended into the complaint as soon as Plaintiff can determine their identities.
[32] In fact, the Siskiyou County Health Department has purportedly received over 150 complaints concerning Puckett's property, but has taken no action due to "not having a code enforcement officer".
[33] The Klamath is also a navigable waterway, portions of which are designated "wild and scenic". Such discharges are therefore a violation of the Clean Water Act.

homes of his associates and neighbors. All of these actions by Puckett violate local and State laws, as well as being violations of the Clean Water Act, the Safe Drinking Water Act, and the Federal Insecticide, Fungicide, and Rodentcide Act - thus also constituting a public and private nuisance, and nuisance per se.

**III. DEFENDANT PATRICIA SLOTE 15217 Oregon Rd./P.O. Box 69, Hornbrook, CA 96044 (530) 475-3473.**

11. At all times material, Defendant Patricia Slote ("Slote") was a citizen of Siskiyou County, California, a Director of the HCSD, and Secretary of the Board thereof. Slote, beginning on or about December 4, 2015, and ongoingly thereafter, agreed, acted cooperatively with, conspired with, aided, and abetted the other Board Defendants (and thus the HCSD), and Defendant Winston[34], in acting to: hold multiple illegal, ex parte, improperly- and/or non-agendized, clandestine, wrongful, and/or improperly-conducted meetings of the HCSD Board, and then and there engage in purportedly official conduct which actually violated State law (and particularly the Brown Act, and CPRA), and/or the HCSD Bylaws; reach agreements to form a consensus of the Board in support of the various wrongful and/or unethical acts by the Defendants as set forth herein; retaliated against Plaintiff for his complaints to governmental agencies and the courts[35]; deprived Plaintiff of his right to due notice, access to and right to petition the government for grievances; conspire[36], attempt, and act, to violate the Brown Act and California Public Records Act; improperly and wrongfully divert HCSD funds to Defendant Julie Bowles, and to Defendant Robert Winston; wrongfully and improperly waive, reduce, and/or fail to collect water fees and charges, and/or due, past due accounts for certain persons/entities within the District[37]; wrongfully divert HCSD funds as payments and services in

---

[34] Plaintiff incorporates, so far as is relevant to Defendant Slote, that information set forth above as to Robert Puckett, Sr., consisting of paragraphs 9 through 9e; and, that set forth below as to Robert Winston, consisting of paragraphs 53 through 65.

[35] By, among other ways: failing to timely and fully (if at all) respond to Plaintiff's tort claims notices, California Public Records Act requests, requests for indemnification, and/or other complaints and grievances as required by law; instructing Winston to appear in various legal matters filed by Plaintiff and others without a vote of the Board at any public meeting;.

[36] With the other Board Defendants, Winston, Bowles, Munoz, Murphy, Pearson, Bradley & Feeney, Dingman, Kirsher, Winston & Boston, and Goff.

[37] This included failing to charge commercially-zoned/operated parcels at the commercial rates, failing to charge some accounts for multiple residences, failing to assess late fees, failing to assess (and charge for) residential usage above 14,000 gallons, failing to assess and collect the actual residential rate of $45/month; failing to require rental accounts be put in the property owner's name, etc - all as required by the HCSD Bylaws. Additionally, Slote, acting as Secretary of the HCSD failed to record all of these improper waivers and other such acts and actions, and facilitated the altered billing and other documentation by Bowles, that allowed this to happen, thus engaging in fraud upon the District and the

excess of (and/or absent any) contract to Clint Dingman and Julie Bowles (and including payments for services not actually rendered by either of them); wrongfully conspiring and acting with the other Board Defendants, Defendant Clint Dingman, and Defendant Julie Bowles to avoid having her water meter read from the time she assumed office for many months thereafter, so that proper fees and charges would not be assessed on her, and instead she received only the minimal monthly charge (which minimal charge was also additionally wrongfully partially waived for her by Bowles and the Board Defendants), and which minimum charge was therefore produced each month as a fraudulent and false official document (multiple months of billing) by Defendants Bowles, the "HCSD", and the Board Defendants on her behalf, and with her concurrence and ratification.

11a. Slote also, in both her personal and official capacities, assisted, aided, abetted, ratified, acted in concert with, and agreed to participate in, the improper and illegal conduct of Defendant Robert Puckett Sr. and others as set forth in paragraphs 9-9e (and the footnotes thereof), above, and also herself initiated, and also engaged in improper *ex parte* contacts with Winston herself for purposes of arranging for ghostwriting by Winston of purportedly official documents (including, but not limited to: resolutions; motions; letters concerning legal matters to which he had not been appointed; contracts; responses to public inquiries; replies/responses to cure and correct notices, Brown Act violation notices, and determinations), negotiating contracts, and arranging for common consensus and agreements to act of the Board members outside of any public meetings, and in ways that violated the Brown Act, Government Code 1090, and the HCSD Bylaws. Slote accomplished the instigation, aiding, abetting, coordination, cooperation, assisting, and ratification of the acts by her and the other Defendants by (among other methods) participating in non-agendized, non-public, Brown Act-violating, one-on-one, serial ("daisy-chain"), and/or "spoke and wheel" meetings with the other Board Defendants and Winston; by helping to falsify HCSD records/documents and/or create false, purportedly official HCSD documents (without Board action authorizing her to do so); and, by willfully refusing to provide copies of public records and documents in her control to when demanded via CPRA requests (as well as any other information about HCSD accounts, operations of the water production and treatment facilities, and/or her actions as "Secretary"), or involving Slote's non-public-meeting interactions with the other Board members. Slote did these things so that Plaintiff would be stymied, or at least impaired, in the exercise of his rights to be informed of, and to monitor the

public (and creating false public records). These failures to assess and collect fees, penalties, and other charges were also impermissible gifts of, and waste of, public funds under California law.

operations of, the HCSD and its employees/agents, and to petition for redress of any wrongful behavior by Slote, the HCSD, and/or the Board Defendants and their agents.

11b. Slote also wrongfully participated with Defendants Puckett and Robert Winston in denying Plaintiff due process relating to Plaintiff's request for indemnification pursuant to Govt. Code section 995, and the conduct culminating in deprivations of due process and equal protection of Plaintiff, and the factually baseless and wrongful refusal and failure to indemnify Plaintiff as a public officer and director of the HCSD when sued in his official capacity in Federal Court for actions undertaken by Plaintiff as part of his official duties as a Director of the HCSD, and as set forth in foregoing paragraph 9a. Slote additionally, beginning in December of 2015, and ongoingly thereafter, conspired with, aided, abetted, and acted in conjunction with, Defendants Michele Hanson and Clint Dingman in the scheme to pay Dingman a rate of pay in excess of his set and contracted rate of $10.00 per hour, and also for additional hours above those set forth in the contract (all without HCSD Board approval), while also assisting with the processing of, and ratification of, the false "timesheets" submitted by Dingman for payment to the HCSD and the Siskiyou County Auditor, and did so in part by creating false public documents (including an alleged waiver of right to sue by Dingman, and covenant not to sue) without any lawful authority to do so, and outside of any public meetings as required by the Brown Act. Slote also advanced the conspiracy to overpay Dingman, and defraud the HCSD via *ultra vires* exercise of her position as Secretary of the Board - including the solicitation and publication of false declarations and other false documents by Hanson and Hanson's associate Patricia Brown concerning Dingman's employment and pay history, with the intent that the Board, the public, and the courts rely on those false documents to their detriment, and in order to thwart: the interests of justice; Plaintiff's multiple complaints to the Board Defendants and others; Plaintiff's (and others') legal actions concerning wrongful conduct by Dingman and Hanson; and, Plaintiff's rights to honest services by his government officials and government employees. While engaging in such conduct, Slote created also false, fraudulent, and legally void "contracts", "waivers", and "agreements" with Dingman relating to alleged pay increases, working conditions, claims by Dingman to the Labor Board, purported deficiencies by the HCSD, and payment for purported work by Dingman for certain periods, when in fact no such contract, waiver, or agreements were authorized by the HCSD Board, nor ever the subject of any public meeting; and, acted ultra vires to her position as Director and Secretary of the HCSD, and absent any approval of the HCSD Board made pursuant to Govt. Code section 61045. These actions by Slote were undertaken with the intention that they would assist Hanson and Dingman

in the scheme to wrongfully overpay Dingman and defraud the HCSD, that false and fraudulent public records be created and promulgated as true records of the HCSD, that the false and fraudulent documents would be used by the HCSD, Board Defendants, and Winston in legal actions taken by Plaintiff and others (thus subverting the interests of justice, and denying due process in those proceedings), and were undertaken without due and proper notice to, and opportunity to be heard by, the Plaintiff and the public pursuant to the Brown Act and HCSD Bylaws.

11c. Beginning in about June of 2016, and continuing on thereafter to the present date, and ongoingly, Slote, in agreement. cooperation, coordination, and conspiracy with Puckett, Dingman, and Goff, has wrongfully, improperly, and illegally permitted the diversion of HCSD funds and other resources to Defendant Clint Dingman in the form of gifts of electricity, water, and property of the HCSD for Dingmans personal and private use by permitting Dingman to install various personal appliances, and to actually reside, inside the water plant of the HCSD - all without any actual formal HCSD Board action at any public meeting purporting to permit such gifting and/or arrangements with Dingman. Defendant Goff, the erstwhile Chief Operator of the HCSD, Dingman's direct supervisor, and person tasked under law with assuring that the facilities of the HCSD are operated in conformance with all State and Federal laws, aided, abetted, and ratified this wrongful conduct by failing and refusing to take corrective action relating thereto, and failing to report the conduct to the State Water Resources Control Board

**IV. DEFENDANT MELISSA PETERSON (a.k.a. Tulledo), 15009 Oregon Rd./P.O. Box 435, Hornbrook, CA 96044 (530) 475-3856**

12. At all times material, Defendant Melissa Peterson a.k.a. Tulledo ("Peterson" or "Peterson/Tulledo) was a citizen of Siskiyou County, California, and a Director of the HCSD Board. Plaintiff is informed and believes that Defendant Peterson, since the inception of this suit, has married, and now has an additional last name as indicated above, but will be referred to here as "Peterson" and "Peterson/Tulledo", since those are the names appearing on the HCSD documents Plaintiff has seen relating to this Defendant's conduct. Peterson, beginning on or about December 4, 2015, and ongoingly thereafter, agreed and conspired with, aided, and abetted the other Board Defendants, but particularly her father, Defendant Robert Puckett (and thus the HCSD), in acting to: hold illegal, wrongful, and/or improper meetings of the HCSD Board, and then and there engage in purportedly official conduct which actually violated State law (and particularly the Brown Act, and CPRA), and/or the HCSD Bylaws; retaliate against Plaintiff for his complaints to governmental agencies and the courts; deprive Plaintiff of his right to due

notice, access to and to petition the government for grievances; conspire[38], attempt, and act, to violate the Brown Act and California Public Records Act; improperly and wrongfully divert HCSD funds to Defendant Julie Bowles, and to Defendant Robert Winston; wrongfully divert HCSD funds as payments and services in excess of (and/or absent any) contract to Clint Dingman and Julie Bowles (and including payments for services not actually rendered by either of them); wrongfully conspiring and acting with the other Board Defendants, Defendant Clint Dingman, and Defendant Julie Bowles to avoid having her water meter read from the time she assumed office and for many months thereafter, so that proper fees and charges would not be assessed on her, and instead she received only the minimal monthly charge (which minimal charge was also additionally wrongfully partially waived for her by Bowles and the Board Defendants), and which minimum charge was therefore produced each month as a fraudulent and false official document (multiple months of billing) by Defendants Bowles, the "HCSD", and the Board Defendants on her behalf, and with her concurrence and ratification. Peterson also, in both her personal and official capacities, assisted, aided, abetted, and agreed to participate in, the improper and illegal conduct of Defendants Robert Puckett Sr. and others as set forth in paragraph 9-9e (and the footnotes thereof), above.

**V. DEFENDANT LEE BUCKLEY 15401 Hornbrook Rd, Hornbrook, CA 96044.**

13. At all times material, Defendant Lee Buckley ("Buckley") was a citizen of Siskiyou County, California, and a Director of the Board of the HCSD. Buckley, beginning on or about December 4, 2015, and ongoingly thereafter, agreed and conspired with, aided, and abetted the other Board Defendants (and thus the HCSD), in acting to: hold illegal, wrongful, and/or improper meetings of the HCSD Board, and then and there engage in purportedly official conduct which actually violated State law (and particularly the Brown Act, and CPRA), and/or the HCSD Bylaws; retaliate against Plaintiff for his complaints to governmental agencies and the courts; deprive Plaintiff of his right to due notice, access to and to petition the government for grievances; conspire[39], attempt, and act, to violate the Brown Act and California Public Records Act; improperly and wrongfully divert HCSD funds to Defendant Julie Bowles, and to Defendant Robert Winston; wrongfully divert HCSD funds as payments and services in excess of (and/or absent any) contract to Clint Dingman and Julie Bowles (and including payments for services not actually rendered by either of them); wrongfully conspiring and acting with the other Board Defendants, Defendant Clint Dingman, and Defendant Julie Bowles to prevent proper fees and

[38] With the other Board Defendants, Winston, Bowles, Dingman, and Goff.
[39] With the other Board Defendants, Winston, Bowles, Dingman, and Goff.

charges from being assessed as to the residential accounts of the HCSD, and the additional charges required by the HCSD Bylaws as to those customers that had multiple dwellings on their residences, and which minimum charge as to each account was therefore produced each month as a fraudulent and false official document (multiple months of billing) by Defendants Bowles, the "HCSD", and the Board Defendants, and with his concurrence and ratification. Buckley also, in both his personal and official capacities, assisted, aided, abetted, and agreed to participate in, the improper and illegal conduct of Defendants Robert Puckett Sr. and others as set forth in paragraph 9-9d (and the footnotes thereof), above.

**VI. DEFENDANT HORNBROOK COMMUNITY SERVICES DISTRICT P.O. Box 29, Hornbrook, CA 96044 (no physical offices or address)**

14. Defendant Hornbrook Community Services District ("HCSD" or "District" herein) is a public governmental agency lying completely within the County of Siskiyou, in the State of California, that was created, and, at all times material, was operating as a public agency municipal corporation, and an independent special district[40] under the laws of the State of California and of the United States, as well as its own duly adopted Bylaws, and subject to their jurisdiction.

15. The HCSD thus is a political subdivision of the State of California which is operated by a Board of Directors ("BOD") consisting of five, at-large positions chosen by the electors within the District boundaries as determined by LAFCO and the Siskiyou County Clerk. The unincorporated community of Hornbrook, which is fully encompassed by the HCSD boundaries, lies just south of the Oregon border, and is marked by an aging, declining population, poverty, and lack of education.[41]

16. The HCSD itself has a long history of systemic and chronic administrative and operational dysfunction, as well as dilapidated and inadequate facilities that violate Clean Water Act[42] and Safe Drinking Water Act[43] requirements. At all times material, the HCSD has

---

[40] Special Districts are primarily controlled by California Government Code sections 61000, *et seq.*

[41] See census data contained at: http://en.wikipedia.org/wiki/Hornbrook,_California. Also see snapshot with links to CA data at: http://www.klamathalliance.org/information/the-human-toll-in-siskiyou-county/

[42] 33 USC §§1251, et seq. The HCSD has for many years, and ongoingly, knowingly permitted outflow of one of its wells (#3) containing high levels of salts and boron. The outflow flows untreated into Rancheria Creek, thence to Cottonwood Creek, thence to the Klamath River. Each of those bodies contains protected fish and bird species. The HCSD has resisted all enforcement efforts concerning the well for many years. Plaintiff (and state agencies) has repeatedly advised the HCSD and Board Defendants of these issues.

[43] 42 USC Chapter 6A; 40 CFR 141-143. The HCSD's water production, treatment, and distribution equipment is obsolete, and does not meet the requirements of the Act, while the HCSD permits

willfully and knowingly failed and refused to set and collect water rates in conformance with California Water Code sections 31007 and 71616, the HCSD Bylaws, and/or HCSD Resolution #14-025; failed and refused to collect the HCSD "standby fee" as to taxable parcels within the District boundaries as is its duty under the Bylaws and Resolutions of the District; disregarded and/or altered multiple mandatory sections of the Bylaws which specifically provide that those sections cannot be amended without the vote of the electors of the District[44]; failed to provide for and/or conduct, yearly inspections and certification of every cross-check device connected to the HCSD Distribution system as required by law; and, knowingly and willfully failed and refused to abide by its own Bylaws as adopted on April 18, 2014 in every particular[45] - including relating to the collection of fees, late charges, and the like. The failure and refusal to collect due fees, penalties, and charges, and to provide for needed repairs and upgrades, has rendered the HCSD's system obsolete, and on the brink of collapse, and threatens Plaintiff's (and the Public's) safety, and property values. It is specifically alleged that all Board Defendants, as Directors of the HCSD (and thus the HCSD itself) should have been, were, and are, fully aware of their duties and responsibilities under the HCSD Bylaws, the Brown Act, the California Public Records Act ("CPRA"), Government Code, Water Code, Clean Water Act, the Safe Drinking Water Act, as well as other Federal and State drinking water-related laws, and their duties of notification to the public, and prudent financial stewardship of the District's resources (all true in part because Plaintiff has personally, repeatedly notified them in writing, and they have also been verbally so advised during public meetings), but that the HCSD and Board Defendants herein willfully and/or recklessly failed to comply with those laws and duties[46], and as set forth in the

---

uncertified and unlicensed (and/or deficiently certified/licensed) Operators, contractors, and other workers on its systems in violation of federal and State law. Plaintiff assisted in producing and filing a complaint to the EPA and CalEPA about Safe Drinking Water Act violations by the HCSD and then-Director Robert Puckett, Sr. on April 20, 2014, and to additional State agencies in mid-2015.

[44] All of this conduct, and each item thereof, was undertaken without any notice to the public or to Plaintiff, and without any due process, thus also depriving Plaintiff of the equal protections of the laws.

[45] And particularly as set forth in the HCSD Bylaws' "sunshine provisions" relating to public records, transparency of its operations, public bidding for contracts, changes to language requiring voter approval, etc. The HCSD, via various Board Members, and with the agreement, aid, abetting, assistance, and ratification of Defendant Winston, also willfully circumvented the voter approval portions of the Bylaws in a deliberate effort to deprive Plaintiff, and other electors within the District, of the right to vote on changes to the Bylaws as provided therein, constituting a violation of 42 USC 1985.

[46] The HCSD has also failed and refused to establish rates and charges meeting the requirements of Water Code sections 31007, and 71616, and failed to take any reasonable action to collect overdue accounts, while impermissibly attempting to delegate Legislative authority to Robert Winston and/or Kirsher, Winston & Boston, L.C. so that Winston and his firm might "self assign" to any and all legal and/or administrative matters, without any checks upon such authority or related expenses, and without prior approval by the Board as to any discreet or particular action as required by Govt. Code 61045. See See

aforementioned laws, and herein. Defendants Winston, Kirsher, Winston & Boston, Dingman, Goff, Munoz, Murphy, Pearson, Bradley & Feeney, and Bowles are alleged to have been aware of the duties of the HCSD and Board Defendants, and to have conspired, aided, and abetted the HCSD and Board Defendants in violating the Constitution and laws of the United States, and of the State of California, relating to the Brown Act, CPRA[47], Clean Water Act, Safe Drinking Water Act, the Health and Safety Code, the Water Code, the Government Code, the Public Contracts Code, Administrative Rules and Regulations relating to all of these laws, and the HCSD's own Bylaws, particularly as they apply to the operation of the HCSD and its employees, contractors, agents, and assigns. The HCSD further failed to supervise, train, and/or control, its Directors, as well as employees and contractors Bowles, Goff, Winston, and Dingman, so that violations of law, and Plaintiff's statutory and/or constitutional rights by those persons, would not occur.

17. Insofar as allegations in this complaint are made against the "Board Defendants", and/or the individual Board Defendants in their official capacities, it is also Plaintiff's intention to apply those allegations to the HCSD (to the extent permitted by any relevant law and/or claim), insofar as the Board Defendants, individually and collectively, promulgated, ratified, and enforced all of the (written and/or unwritten) customs, policies, and practices of the HCSD, as applied to the Board Defendants, as well as the HCSD's employees and agents, and acted as policy makers while exerting direct control over the HCSD entity at all times material to this complaint, and thus under color of law of their public offices as Directors thereof. The Board Defendants' acts (and those acts committed by any other Defendant at their individual or collaborative instruction) thus constituted the official policy, procedures, customs, practices, and acts of the HCSD itself as to each circumstance, allegation, cause of action, and claim for relief. On this basis, the allegations contained in the Sections pertaining to each of the Board Defendants, Dingman, Goff, Bowles, and Winston, are incorporated herein as if fully set forth.

17a. Beginning in about June of 2016, and continuing on thereafter to the present date, and ongoingly, the HCSD, via its Directors Slote and Puckett, in agreement, cooperation, coordination, and conspiracy with Dingman, and Goff, has wrongfully, improperly, and illegally

*Slavich v. Walsh* (1947) 82 Cal.App.2d 228, 235; *People's Fed. Sav. & Loan Ass'n v. State Franchise Tax Bd.* (1952) 110 Cal.App.2d 696, 700; *Birkenfeld v City of Berkeley* (1976) 17 Cal.3d 129, 167; *Wilke & Holzheiser, Inc. v. Dep't of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 369.

[47] Including, but not limited to, by: failing to provide access to public records during normal business hours; failing to search for and identify public records in response to requests for access to and copies of public records; failing to respond to public records requests; and, by falsifying compliance with public records requests.

permitted the diversion of HCSD funds and other resources to Defendant Clint Dingman in the form of gifts of electricity, water, and property of the HCSD for Dingmans personal and private use by permitting Dingman to install various personal appliances, and to actually reside, inside the water plant of the HCSD - all without any actual formal HCSD Board action at any public meeting purporting to permit such gifting and/or arrangements with Dingman. Defendant Goff, the erstwhile Chief Operator of the HCSD, Dingman's direct supervisor, and person tasked under law with assuring that the facilities of the HCSD are operated in conformance with all State and Federal laws, aided, abetted, and ratified this wrongful conduct by failing and refusing to take corrective action relating thereto, and failing to report the conduct to the State Water Resources Control Board.

**VII. DEFENDANT JULIE BOWLES 1615 Sandpiper Court, Yreka, CA 96097 (home) (530) 477-7417; 1289 S Main St./PO Box 27, Yreka, CA 96097 (Business) (530) 937-3279 sumitupacct@gmail.com.**

18. At all times material, Defendant Julie Bowles ("Bowles") was an independent contractor who held herself out as an officer, employee, and/or agent of the HCSD, was a citizen of Siskiyou County, California, and was also acting under the color of law and of her office as Bookkeeper of the HCSD (pursuant to a specific contract as "Sum it up Accounting"), save for those times and events she also or instead acted in her individual capacity as set forth herein.

19. Bowles agreed and conspired with, aided, abetted, and assisted the Board Defendants, Winston, Dingman, Goff, Puckett, Kirsher, Winston, & Boston, L.C., Munoz, and Murphy, Pearson, Bradley & Feeney, Inc. in the improper conduct alleged herein (but particularly in violations of the Brown Act, and by creating fraudulent public documents such as bills to customers, "checkstubs" for Clint Dingman, tax and other official filings, and other papers) by improperly meeting with them individually and serially (at her office in Yreka, CA and other places), as a group (or acting as the "hub" for "spoke and wheel" meetings, and/or a link in the "chain" of daisy-chain meetings thereof) via personal contact, telephone and/or email, for the purpose of discussing official HCSD-related "public business" (including how HCSD funds would be improperly diverted to Defendant Winston, as well as to Kirsher, Winston, & Boston, L.C.[48], and/or to Murphy, Pearson, Bradley & Feeney, Inc. and Munoz), in violation of

[48] Additionally, insofar as Defendants Winston and/or Kirsher, Winston, & Boston, L.C. acted to perform services prior to any lawful meeting of, and/or appointment by, the HCSD Board, in violation of any Rule of Professional Conduct (and thus also Bus. and Prof. Code sections 6104, and/or 17200, *et seq*) and/or entering a valid contract with the HCSD, and then billed for those services, Murphy, Pearson,

the HCSD Bylaws, Brown Act, and the California Constitution, and outside of any noticed, public meetings (including a failure to notice, or hold any such meetings in a proper closed session).

20. Beginning on or about December 4, 2015, continuing through the present date, and ongoingly, Bowles also specifically agreed and conspired with, aided, abetted, and assisted the Board Defendants, Hanson, and Dingman with the improper diversion of HCSD public funds to Dingman by issuing Dingman "paysheets" - calculations of amounts purportedly owed to Dingman the EDD, the State of California (for taxes), and the Federal Government (for taxes and Social Security, etc) by the HCSD as submitted by Dingman on "timecards". The paysheets generated by Bowles for the Board Defendants and Dingman were thus breakdowns of purported wages for services, but which services (as well as rate of pay, and number of hours claimed each month) had not officially been approved by the Board of the HCSD at any public meeting, and/or which services were not actually performed by Dingman, were performed in less time than claimed on the "timecards", and/or which ultimate paychecks were for amounts greatly in excess of the amounts called for by Dingman's employment contract with the District[49]. Plaintiff does hereby incorporate the information set forth in paragraphs 11b and 70gconcerning the conspiracy relating to Dingman's pay. Bowles also acted to conceal the improper amount of pay, increased hours, and Dingman's timesheets themselves, from Plaintiff beginning in June of 2014, and continuing during his term of office on the Board, which terminated on December 3, 2015. Thus Bowles denied Plaintiff access to public records, while granting such access to other Directors (notably here Defendant Hanson), but without any due process of law, or opportunity to be heard, and also in retaliation for his attempts to assert his rights to petition and seek review of grievances with the courts and governmental agencies concerning the actions of Bowles, Hanson, and Dingman.

21. Bowles also aided, abetted, assisted, encouraged, and ratified the wrongful acts and

---

Bradley & Feeney, Inc. also committed a false claim, in that it had no lawful basis for such actions and charges.

[49] No changes to Dingman's employment contract of 1/26/14 (ratified by the HCSD Board on 2/18/14), rate of pay, cap on hours to be worked, etc was ever publicly noticed, or approved by the HCSD Board (although some unilateral, improper, *ultra vires* action relating thereto was taken by Defendant Slote). Plaintiff asserts, on information and belief, that the extra money was a "payoff" to Dingman so that he would participate in, and assist the Board Defendants , Winston, Kirsher, Winston, & Boston, L.C., Hanson, and Goff in their illegal schemes as described in this complaint. As such, any payments in excess of Dingman's contractual agreement with the HCSD was not only a gift of public funds, but also a False Claim as defined in the California False Claims Act, and Plaintiff does hereby invoke his right to all remedies and damages under the Act. (Govt. Code sections 12650, et seq.)

goals of the Board Defendants to: improperly divert HCSD funds to themselves, their friends and acquaintances of the Board Defendants, by failing to properly impose fees and water charges as to themselves, and to certain customers[50] via the monthly billing and otherwise[51], as well as altering and falsifying the HCSD records under her control concerning those customers' accounts and other records as directed by Slote, Puckett, Dingman, and/or Winston in order to conceal the improper under billing, fee waivers, waiving of late fees, erasing of past due amounts, and other non-compliance fees, as well as by waiving or failing to even bill for actual (metered) water use for certain HCSD customers, and failing to impose and collect the "standby fee" as to each parcel in the District as provided by law and mandated by the HCSD Bylaws - while also overcharging and/or imposing discriminatory charging of some other customers as directed by Slote, Puckett, and/or Winston. Bowles also acted, aided, abetted, assisted, encouraged, agreed to, and ratified the acts of each of the individual, and group acts of the Board Defendants, Winston, Kirsher, Winston, & Boston, L.C ., Murphy, Pearson, Bradley & Feeney, Inc., Munoz, Dingman, and/or Goff in the common plan to wrongfully intimidate, coerce and deprive Plaintiff of his right to have the HCSD and its officers and employees operate the District in compliance with all laws (and the Bylaws of the HCSD).

22. Bowles accomplished the aiding, abetting, coordination, cooperation, assisting, and ratification of the acts by her and the other Defendants by (among other methods) participating in non-agendized, non-public, Brown Act-violating, one-on-one, serial and/or "spoke and wheel" meetings with the Board Defendants, Winston, Murphy, Pearson, Bradley & Feeney, Inc., and/or Munoz; by helping to falsify HCSD records/documents and/or create purportedly official HCSD documents (without Board action); and, by willfully refusing to provide copies of public records and documents in her control to when demanded via CPRA requests (as well as any other information about HCSD accounts or her actions as "bookkeeper"), or involving Bowles' interactions with the other Board members, so that Plaintiff might exercise his right to be

---

[50] Including Defendants Hornbrook Community Bible Church, Steven Crittenden, Duke Martin, James Soares, and John Does. This action would also thus be providing assistance to the Board Defendants in their common plan to ignore, and violate, the provisions of Water Code sections 31007, and 71616, and the HCSD Bylaws.

[51] For instance, Bowles would fail to charge commercially-zoned property at the commercial rate, and fail to charge customers for multiple habitable structures, or reduce the set rates for certain residential customers, upon the instruction of the Board Defendants acting as a group, or by Slote and/or Puckett individually, and/or would modify the billing for certain residential and/or commercial customers to wipe out past billing at the proper rate. Also, Bowles failed to initiate the processes called for in the Bylaws for collecting on delinquent, overdue, and/or tenant accounts - including liens, thus causing loss to the District of those funds.

informed of, and to police the operations of the HCSD and its employees/agents. Bowles also, in both her personal and official capacities, assisted, aided, abetted, and agreed to participate in, the improper and illegal conduct of Defendants Robert Puckett Sr. and others as set forth in paragraph 9-9d (and the footnotes thereof), above.

23. Because Bowles at all times material acted without any valid or applicable contract with the HCSD, her invoices (which themselves included false claims for work not actually performed) were improper, and resulted in payments in excess of contract, constituting a gift of, and waste of, public funds. (See Cal. Const., Art. XVI, § 6; Cal. Const., Art. IV, § 17; Govt. Code §8314.) These acts, and failures, by Bowles resulted in substantial lost income to the HCSD, and were a breach of her fiduciary duty, and Plaintiff is thus entitled to seek compensation therefore on behalf of the District pursuant to Code of Civil Procedure 526a, and the HCSD Bylaws at Section A-9(26), in addition to any other remedy in law.

24. All of these acts and interferences by Bowles in the proper operation of the HCSD threatened the health and safety of the Public, and of Plaintiff,; imperiled Plaintiff's real property values; and, reduced the marketability of his real property..

25. On information and belief, Plaintiff alleges that Defendant Bowles: knowingly and willfully conducted the foregoing conduct with full knowledge of its unlawfulness, impropriety, and/or that it violated the HCSD Bylaws; willfully and recklessly ignored the potential harm her actions (and that of the other Defendants) may have had upon the District, and Plaintiff; improperly and wrongfully aided, and abetted the other Defendants in committing the wrongful conduct herein alleged under the headings ascribed to each individual Defendant; conspired with, and encouraged each Defendants to commit the conduct alleged as to them; undertook acts in furtherance of the conspiracy(s) as set forth herein and otherwise; and, ratified the other Defendants' conduct in her position as bookkeeper of the HCSD via the manipulation of customer records and public documents, and/or to third parties, when such conduct was undertaken by another of the Defendants, and thereafter.

**VIII. DEFENDANT CLINT DINGMAN 13930 Bradley-Henley Rd./P.O. Box 381 Hornbrook, CA 96044 (530) 340-5243.**

26. At all times material, Defendant Clint Dingman ("Dingman") was an officer, employee, and/or agent of the HCSD, was a citizen of Siskiyou County, California, and was purportedly acting under the color of law and of his office as Systems Operator Trainee, Systems Operator, shift operator, general employee, Acting General Manager, and/or General Manager of the HCSD, save for those times and events he also acted in his individual capacity as set forth

herein.

27. From the period of December 4, 2015, through and including the present date, and ongoingly, Defendant Dingman, in furtherance of the mutual wrongful goals the Board Defendants, Bowles, Winston, and Goff, has: failed to comply with the Clean Water Act, the Safe Drinking Water Act, the Bylaws of the HCSD (and his employment contract with the District) relating to qualifications for employment in his position[52], and/or any other position within the District; failed to specifically comply with the duties and responsibilities imposed upon him by the HCSD Bylaws at Sections A-4, A-5-1, and A-7; has failed to take and complete training and college classes relating to water treatment and distribution; has failed to take and pass distribution[53] and treatment examinations offered, and required by, the California Department of Health, Drinking Water Program in order to lawfully operate any of the HCSD facilities; has failed to properly permit his supervision by Directors as required by the HCSD Bylaws; has refused and failed to permit inspection by Directors of the HCSD, and the public[54], of the records concerning water production and treatment during normal business hours (or at any other time, nor in response to written CPRA requests), as well as records of his time supposedly spent working for the HCSD (aka: "timecards", although the HCSD has no time-clock) kept at the HCSD facilities; has improperly and illegally interfered with the lawful authority of Board members, the Public, and Plaintiff, in order to prevent enforcement of the Bylaws, and State and Federal laws relating to water production, and the CPRA as to him; has failed to comply with State regulations relating to the recording of the production of water at HCSD facilities, and to file the required reports relating thereto; has failed to lawfully maintain and use the "creek diversion" of the HCSD and associated water rights - thus jeopardizing the HCSD's diversion rights with the State; and, in conspiracy with the Board Defendants, Julie Bowles, and some John Does, has failed to timely and accurately read the meters of the HCSD water customers each month so that due and proper fees and charges might be collected. Defendant Winston is specifically, via email, telephone contact, and letters, alleged to have aided, directed, and encouraged Dingman, and the Board Defendants, in all of this conduct, and to have ratified it after it occurred.

---

[52] Dingman, in operating the water production, treatment, and distribution facilities without proper certifications by the State of California, is acting in violation of Health and Safety Code sections 106875, and 106885, and 22 California Code of Regulations sections 63765 and 63770. His violations of the HCSD Bylaws is also a misdemeanor pursuant to California Government Code 61064(a).
[53] Dingman did finally take the test for, and obtain the "D-1" certification license from the State of California in November of 2015. That is not sufficient to apply chemicals to the water system, however.
[54] Pursuant to the California Public Records Act (CPRA).

28. The Board Defendants knew of, and willfully permitted, for the period beginning December 4, 2015, through the current date, and ongoingly, this failure of assigned and necessary duties by Dingman; his lack of qualification and training; and, the refusal of access, supervision, and inspections by the Directors of the HCSD, and refusal to produce public records and to file reports as required by the State of California. Further, the Board Defendants have failed to insist on training for him, and/or that he comply with any and all HCSD Bylaws, contractual obligations, and/or State laws concerning certification, and lawful and/or proper operation of the water treatment and distribution facilities, as well as the ongoing violation of the Clean Water Act represented by the discharge of well #3 into Rancheria Creek, and the failures to abide by the Clean Water Act perpetrated by his lack of appropriate training and licenses by the State of California, and have instead wrongfully rewarded Dingman for his violations of law by wrongfully diverting additional HCSD funds to Dingman, and by refusing to verify any of Dingman's purported working tasks, hours, or times as claimed in documents Dingman submitted to the HCSD and Bowles.

29. Additionally, in spite of these offenses and failures by Dingman, his lack of education, lack of licensure by the State, and lack of skill, Dingman conspired with Slote, Puckett, and one or more of the other the Board Defendants, and with the aid, assistance, and cooperation of Defendant Michele Hanson, acted to instead improperly, *ex parte*, without any public notice, opportunity to be heard by Plaintiff and the Public, or lawful action taken by a majority of the Board at any lawfully held and conducted public meeting of the HCSD, obtain a 50% pay increase above Dingman's contracted rate, as well as a large, but unspecific increase in the number of hours above those permitted by that contract, and also occasional additional hours authorized by Defendants Puckett and Slote ex parte, ultra vires, and without Board action pursuant to Government Code section 61045, to provide additional money payments to Dingman for the purpose of assuring his ongoing ratification of, and cooperation in, their schemes and conspiracies - including those directed against Plaintiff. In furtherance of this wrongful conduct, Dingman also conspired with, and assisted, abetted, ratified, and approved the creation of a false declaration by Defendant Hanson and Patricia Brown, as well as a false contract/waiver/release of liability with Defendant Slote, while intending that those documents would assist Slote and Hanson in the scheme to wrongfully overpay Dingman and defraud the HCSD. All such excessive payments constituted a wrongful, and impermissible gift of, and waste of, public funds under California law.

30. The improper and illegal pay increase, and extra hours, being additionally contrary to

the contract Dingman signed with the District, and an improper and impermissible gift of public funds to Dingman[55], was received by Dingman via the use of fraud and deceit, due to his not having the proper licensing to undertake any such duties, and his failure to undertake education and testing as he promised in order to obtain them; due to not actually working for the District for the number of hours he claimed in his time sheets and/or the amount of time he claimed for each task thereon (that is, he falsified his timecards), and the addition of time for unauthorized activities; due to failing to abide by the HCSD Bylaws and thus acting in violation of his contract; due to accepting his contract without any intent to perform under the terms thereof and willfully failing to abide by the plain language of his contract; due to failing to accomplish any upkeep or improvement of any District property or facilities - including such deficiencies as had been communicated to him by members of the Board, by and Plaintiff (in both his personal and official capacities); due to failing to abide by State law, the Safe Drinking Water Act, and the Clean Water Act while being in complete charge and control of the HCSD facilities; and, because he had actually agreed to a contract under a lesser rate of pay and fewer number of hours to be worked per month. These acts each also constitute a false claim under the California False Claims Act, and Plaintiff does hereby invoke all remedies thereunder.[56]

30a. Beginning in about June of 2016, and continuing on thereafter to the present date, and ongoingly, Dingman, in agreement. cooperation, coordination, and conspiracy with Puckett, Slote, the HCSD, and Goff (which persons have also been notified of this wrongful conduct, but have repeatedly ratified it, while assisting Dingman in committing the consequentant theft of district property and funds), has wrongfully, improperly, and illegally diverted HCSD funds and other resources to himself in the form of gifts of electricity, water, and use of the property of the HCSD for Dingmans personal and private use by installing various personal appliances, and actually illegally residing, inside the water plant of the HCSD - all without any actual formal HCSD Board action at any public meeting purporting to permit such gifting and/or arrangements with Dingman (which would be illegal regardless, as the water plant is not "residential").

31. Since about December 4, 2015, and ongoingly, Dingman, with the aid, encouragement, ratification, and assistance of the Board Defendants, Bowles, and Winston, has routinely, repeatedly, and ongoingly ignored the requirements of: the United States[57] and of the State of California, relating to certifications for water distribution and treatment; as well as the

---

[55] Cal. Const., Art. XVI, § 6; Cal. Const., Art. IV, § 17; Govt. Code §8314.
[56] See California Govt. Code 12650, et seq.
[57] E.g., the Safe Drinking Water Act.

requirements of the HCSD Bylaws, and has applied incorrect types and dosages of chemicals to the water treatment and distribution system. The HCSD as a body, and the Board Defendants particularly, have taken no affirmative action to properly train and supervise Dingman in the competent, safe, performance of his duties (in spite of full knowledge of Dingman's failures and violations of law), and in fact have acted to thwart any effort by Plaintiff, via complaints to the Board, complaints to the State Department of Health, and/or via the courts, to properly supervise or direct Dingman, or to seek redress for Dingmans violations of the HCSD Bylaws, his contract, and the State and Federal laws as aforesaid, and thus denied Plaintiff's rights to equal protection of the laws without any due process of law, and to be heard regarding those topics by refusing to address them at any public meetings as is their duty.

32. As a result of the aforementioned acts, as well as Dingman's wrongful, illegal, reckless, unsafe operation of the water production, treatment, and distribution facilities of the HCSD[58] from the period of on or about December 4, 2015, and ongoingly, in conspiracy with, and at the behest and control of the Board Defendants, and/or Defendant Goff, has been willfully negligent, unlawful, a nuisance *per se*[59], with necessary and urgent maintenance ignored such that critical infrastructure of the HCSD water production and distribution system are idle and/or failing, and the health and safety of the public (and Plaintiff), along with property values in the boundaries of the District, including Plaintiff's, are imminently threatened.

33. Plaintiff alleges that any compensation, benefits, legal representation, indemnification, or other pecuniary and/or non-pecuniary benefit conferred to Dingman by the Board Defendants and/or the HCSD, which were not contractually specified, and/or which were granted by Slote, Bowles, Winston, and/or any other Defendant outside of a lawful, agendized, open and public meeting of the Board of Directors of the HCSD held in compliance with the Brown Act and/or Government Code section 61045, were, and are, an impermissible gift of public funds as well as being void as *ultra vires*.

**IX. DEFENDANT ERNEST GOFF, 21340 Lakeshore Dr./P.O. Box 717, Lakehead, CA 96051 (530) 238-2336 (residence); 21340 Lakeshore Dr, Lakehead, CA 96051 (business).**

34. Beginning in about December 4, 2014, and at all times material, Defendant Ernest Goff ("Goff") was purportedly a consultant for the HCSD and Board Defendants, an independent contractor for the position of the Chief Systems Operator for the HCSD via his shell corporation,

---

[58] See 22 California Code of Regulations §§63765, and 63770; California Health and Safety Code §§106875, and 106885.

[59] See California Civil Code section 3479; Code of Civil Procedure section 731.

"CR Water Treatment, Inc.[60]", an employee and/or agent of the HCSD and the Board Defendants, the purported supervisor of Defendant Dingman, and acting under color of authority of those offices. On information and belief, Plaintiff alleges Defendant Goff is a resident and citizen of Lake County, California.

35. Earnest Goff, in purportedly acting as the "Chief Operator" and "Operator of Record" for the water treatment facilities of HCSD, had, and has, a duty to regularly inspect, oversee, supervise, perform, and directly control the daily operation of the water treatment plant and distribution system as provided by Federal and State laws[61], and the HCSD Bylaws, and particularly the actions and conduct of Defendant Dingman as to Dingman's operation of the HCSD water production, treatment, and distribution facilities. In spite of this duty, Goff has consistently failed to actually perform the duties of the "Chief Operator" as set forth in State and Federal laws, in the HCSD Bylaws at Section A-5-1, pursuant to the contract he has with the HCSD, has failed to maintain and use the "creek diversion" of the HCSD and associated water rights, thus jeopardizing the HCSD's diversion rights with the State, and thus also failed to conform his conduct to that required by Federal and State law in regards to operation of the HCSD water treatment and distribution facilities[62] - meanwhile falsely billing the HCSD for those services. In reality, Goff is almost never present at any HCSD facility, or even within Siskiyou County. Goff has also, since about June of 2016, permitted and ratified the conduct of Dingman in the latter's diversion and conversion of public funds and facilities by Dingman's unlawful residence in the water plant, consequent use of electricity and other utilities, and other wrongful use of property and materials of the HCSD for Dingman's personal use.

36. During the period of Goff's employment as an independent contractor with the HCSD, which was initiated purportedly pursuant to written contract[63], continued through the present date, Goff was obligated to, and promised to, obey the Federal and State laws relating to water treatment and distribution, and the HCSD Bylaws. The HCSD, each Director thereof, and

---

[60] Registered with the CA Secretary of State as entity #C2968976.

[61] See Federal Clean Water Act (33 USC §§1251, et seq), and Safe Drinking Water Act (42 USC 300f, et seq); State of California laws implementing same (e.g. Health and Safety Code Sections 116270 et seq, 116375, 116385, and 116395; California Code of Regulations Title 22, Sections 63765, and 63770).

[62] Goff, in failing to operate the HCSD's water system from its main appropriative right (surface) water source, Rancheria Creek, and has instructed Dingman to improperly and constantly draw the HCSD's water supply from the three HCSD wells (contrary to the instruction of the HCSD's Public Engineer, Jim Bray), causing over pumping, degraded water quality, increasing costs, and potentially damaging the aquifers thereof.

[63] Plaintiff has not yet obtained a signed copy of this contract, but apparently no actual contract existed until the early part of 2016.

each property owner, elector, and water customer of the District relied upon Goff's representation concerning legal operations of the HCSD facilities, that Goff would be in "direct charge" of those facilities, and that he would only permit licensed "shift operators" to work on the HCSD water system - all as required by law.

37. Goff has since that time, and ongoingly, knowingly and willfully failed and refused to abide by the terms of his contract, his promises, and state law, and continues to willfully and knowingly fail and refuse to do so, meanwhile billing the district for his alleged services in spite of such past and ongoing failure. Goff has also thus billed for, and/or received payment for services which he did not actually perform. Finally, Goff has been provided with legal services by the Board Defendants and Defendant Winston[64] which are not part of Goff's contract, and/or which were never authorized by any lawful action of the Board of the HCSD. Payments and/or benefits to Goff outside of contract, and/or for services not actually performed, are fraudulent, impermissible gifts of public funds, and are also false claims, constituting a violation of the California False Claims Act, California Government Code Section 12650, *et seq*, and so Plaintiff, in addition to any other standing or claims made herein, also brings this action *qui tam* pursuant to Government Code Section 12651(c)[65] insofar as money had and received by Goff from the HCSD. Goff also, in both his personal and official capacities, assisted, aided, abetted, and agreed to participate in, the improper and illegal conduct of Defendants Robert Puckett Sr. and Robert Winston as set forth in paragraph 9-9d (and the footnotes thereof), above.

38. At all times relevant herein, Goff acted in agreement and conspiracy with the Board Defendants (and thus the HCSD itself), Bowles, Winston, and Dingman to extract improper payments of money and benefits from the HCSD to himself; to create and distribute false public documents and reports concerning the operation of the HCSD and its facilities; to operate the HCSD in a manner contrary to state and federal law and thus causing a nuisance per se to Plaintiff and other members of the public who are served by the HCSD, and/or consume the

[64] The Board Defendants, upon the instruction, assistance, and encouragement of Winston, corruptly and wrongfully conspired, agreed, and acted with each other, and Goff to indemnify Goff from multiple legal actions in Siskiyou County Superior Court, but outside of any lawful, public meeting of the HCSD BOD and to bill the HCSD for such representation without any lawful authorization, or other formal action by the HCSD Board. As of this date, no purported Agenda (or minutes) for any HCSD BOD meeting references any indemnification of Defendant Goff in any legal matter.

[65] Although the requirements of *qui tam* submission of the complaint to the Court "in camera", and delay of service thereof upon the defendants directly conflict with the Federal Rules of Civil Procedure, Plaintiff will serve a copy of the complaint upon the Attorney General as provided in Section 12651(c)(3), once it has been screened and accepted for filing by this Court if so ordered (which arguably would also meet the *in camera* filing requirement if it applied). Thus, if the "prosecuting authority" for the HCSD wishes to intervene on this particular claim of the Complaint, it may do so.

drinking water it produces; to wrongfully and unlawfully prevent inspections and oversight of Dingman and the HCSD facilities; and, to deny Plaintiff and other members of the public the equal protection and due process of the laws relating to the lawful and safe operation of the HCSD facilities by engaging in the foregoing acts.

38a. Beginning in about June of 2016, and continuing on thereafter to the present date, and ongoingly, Goff, in agreement. cooperation, coordination, and conspiracy with Puckett, Dingman, and Slote, has wrongfully, improperly, and illegally permitted the diversion of HCSD funds and other resources to Defendant Clint Dingman in the form of gifts of electricity, water, and property of the HCSD for Dingmans personal and private use by permitting Dingman to install various personal appliances, and to actually reside, inside the water plant of the HCSD - all without any actual formal HCSD Board action at any public meeting purporting to permit such gifting and/or arrangements with Dingman.

39. At all times material, Goff has failed to supervise and directly control the operations of the HCSD water facilities, and failed to directly control the actions of Clint Dingman (who holds no Treatment Operator certificate, and up until November of 2015, no Distribution Operator certificate from the State of California) in the lawful and proper operation of the HCSD treatment and distribution facilities, and instead, in agreement and conspiracy with Dingman, and Winston, and further with the assistance, affirmation, and ratification of all of the Board Defendants, instructed Dingman to illegally, wrongfully, and improperly[66] assert dominion and control over the treatment and distribution systems of the HCSD - even to the exclusion of Directors from inspecting the facilities at any point[67]. All of these acts by Goff and Dingman, in addition to any other torts, also thus constitute a public and private nuisance, are willfully negligent, and nuisances *per se*[68].

40. At all times material, Defendant Goff has willfully failed to generate the documentation and logs concerning the HCSD's system[69], and water testing required by Federal and State laws, and the HCSD Bylaws, and make those test results and logs available to the

[66] See California Code of Regulations Title 22, Sections 63770(b)(5), 63770(c)(1)-(2), 63770(d)(1)-(2).
[67] Plaintiff asserts that wrongful intimidation of , and obstruction by the Board Defendants, Goff, and Dingman of access to the facilities and records of the HCSD pursuant to the CPRA implicates the violation of his liberty interests, due process rights, rights to petition, and equal protection rights, both individually, and as a taxpayer and property owner within the HCSD boundaries, and that this violation was achieved by the Board Defendants, and Defendants Dingman and Goff, without any due process, or legitimate authority, and in direct conflict with the HCSD Bylaws.
[68] See also California Civil Code Section 3479; HCSD Bylaws, Section A-9(26).
[69] This would include the failure to utilize, and document, the HCSD's surface water diversion permitted by the State of California.

Directors of the HCSD, the State, the public, and the water consumers of the District[70].

41. During the period of December 4, 2015, through the current date, and ongoingly, the actions of Goff were known to, encouraged, ratified, aided, and abetted, by the Board Defendants and Defendant Dingman, each of whom was tasked with enforcing the provisions of the federal Safe Drinking Water Act, and the related California statutes[71] concerning Goff's activities in order to protect the health and safety of the Public, and of Plaintiff as a District water consumer. Each of these individuals failed to enforce those laws as applied to Goff, and the HCSD, and in spite of multiple, direct complaints (verbal and written) by the Public, and Plaintiff.

42. The failure by the Board Defendants, Dingman, and Goff to comply with the federal and state laws applicable to the HCSD, Dingman, Goff, and the Board Defendants, and to assist and facilitate each other in so doing, created a public and private nuisance per se, while the policy, custom, and practice of not requiring the HCSD and its Officers, agents, and employees, to abide by, and/or obey their duty to enforce, State and Federal drinking water laws violated Plaintiff's rights to due process and equal protection of the laws. Plaintiff is therefore entitled to a writ of mandate compelling the compliance by the HCSD, its Directors, employees, contractors, and agents, with the federal Clean Water Act and Safe Drinking Water Act's provisions.[72]

**X. DEFENDANT HORNBROOK COMMUNITY BIBLE CHURCH, INC., 430 Henley Hornbrook Rd., P.O. Box 287, Hornbrook, CA 96044 (530) 475-0236.**

43. At all times material, Defendant Hornbrook Community Bible Church, Inc. ("HCBC") was a corporation duly registered with the Secretary of State of California, doing business within the community of Hornbrook, Siskiyou County California, and receiving water service from the HCSD. The HCBC operates pursuant to a conditional use permit issued by the County of Siskiyou, as its operations are normally required to be operated on property zoned as a type of "commercial". The HCBC is alleged to have conspired with, and sought, via its agent Steven Crittenden, and via improper, *ex parte* meetings and other improper, corrupt[73] conduct with the Board Defendants, and Defendant Bowles, to obtain legally impermissible gifts of public funds to the benefit of the HCBC, from the period of December 4, 2015 and ongoingly, in the form of wrongfully, improperly, and illegally reduced and/or waived water rates, fees, and

[70] This would also be a violation of the California Public Records Act.

[71] E.g., Health and Safety Code Sections 116270 et seq, 116375, 116385, and 116395; California Code of Regulations Title 22, Sections 63765, and 63770).

[72] See also California Government Code section 815.6.

[73] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

charges, and waiver of required certification of its cross-check device, all in violation of State law and the HCSD Bylaws. The conspiracy, and acts of the participants therein to achieve the common goal of illegal gifting of public funds to the HCBC, necessarily violated the laws of the State of California, and the Bylaws of the HCSD, while such violations constituted not only denial of the equal protection of the laws as to Plaintiff and the public, but also the denial of due process as to Plaintiff as a citizen and elector of the District- since the provisions of the Bylaws violated by the conspirators included the mandates of public notice, opportunity to attended mandated public meetings, and the right to vote in an election on the waiver of fees and other means of gifting the HCBC.

44. The HCBC did, and has, in fact received its sought after gift of public funds, benefited, and continues to do so ongoingly, thus further ratifying the wrongful conduct of Crittenden, the Board Defendants, and the HCSD. Defendant HCBC is aware of the wrongfulness of its conduct, and those of its agent, Steve Crittenden, and the wrongfulness and illegality of the goal of obtaining gifts of public funds and other wrongful benefits from the HCSD, but the HCBC refused and failed, and continues to refuse to accept the illegal and wrongful gift of public funds in the form of reduced and waived water fees and charges, and exemption from Bylaws, by the HCSD. Plaintiff further incorporates the relevant information concerning zoning, fees, and charges regarding the HCBC, and its property within the HCSD boundaries which is found in the following section relating to Defendant Steven Crittenden (paragraphs 45 - 51). Furthermore, all of these goals were, and are, achieved by willfully concealing from the public that any such gifting is going on, and while denying the electors of the District, including Plaintiff, the right to vote - all in violation of 42 USC §1985.

**XI. DEFENDANT STEVEN CRITTENDEN, 104 Main St., Hornbrook, CA 96044 (530) 475-0373.**

45. At all times material Defendant Steven Crittenden ("Crittenden") was an individual residing in the community of Hornbrook, Siskiyou County, California and a citizen thereof, was (and is) also a resident of the HCSD, maintains at least one rental within the boundaries of the HCSD[74]. Crittenden is alleged on information and belief to also be an employee, agent, and/or

[74] Crittenden, although noticed by the HCSD, failed and refused to comply with the HCSD Bylaws, as well as Government Code 61100 and Water Code 71618, by not putting the water service for his rental into his own name after prior tenants left without paying their past due bill. In addition to his other bases for claims, Plaintiff has standing to obtain an injunction, and civil action for Crittenden to pay any fees lost by the HCSD, as to Crittenden's failure to obey the HCSD Bylaws pursuant to Section A-9(26) thereof.

Board member of Defendant Hornbrook Community Bible Church, Inc. during those times he is alleged to have had improper, *ex parte* "spoke and wheel" and other improper meetings, and other wrongful, corrupt, conduct with the Board Defendants[75], in order to conspire with them to obtain legally impermissible gifts of public funds to the benefit of the HCBC in the form of wrongfully and illegally reduced and/or waived water rates, fees, and charges.

46. Over the course of some months beginning about December 4, 2015, and ongoingly, Defendants Steven Crittenden ("Crittenden") and Hornbrook Community Bible Church, Inc. ("HCBC" or "the Church") conspired to, and did, engage in improper *ex-parte* contact with Slote and/or Puckett, and, outside of any publicly-noticed and agendized meetings of the HCSD Board of Directors, improperly, illegally, and corruptly, influenced them, and ultimately the other Board Defendants, and Defendant Bowles, to agree to, enter into a conspiracy - and actually act, to violate the Constitution and laws of the State of California[76], and the HCSD Bylaws[77], by granting a gift of public funds ongoingly to the Hornbrook Community Bible Church, Inc., a customer of the HCSD, in the form of greatly reduced water fees, a months-long failure to read the HCBC's water meter and impose relevant fees, waiver of water fees, waiver of duty to inspect and certify its cross-check device, and waiver of late charges and other fees in perpetuity. The conspiracy, and acts of the participants therein to achieve the common goal of illegal gifting of public funds to the HCBC, necessarily violated the laws of the State of California, and the Bylaws of the HCSD, while such violations constituted not only denial of the equal protection of the laws as to Plaintiff and the public, but also the denial of due process as to Plaintiff as a citizen and elector of the District- since the provisions of the Bylaws violated by the conspirators included the mandates of public notice, opportunity to attended mandated public meetings, and the right to vote in an election on the waiver of fees and other means of gifting the HCBC.

---

[75] All of which also deprived this Plaintiff of his First and Fourteenth Amendment rights to free speech, access to government and the right to petition, and equal protection of the laws - all without due process of law - by excluding him (and the Public) from said meetings and official business, by failing to publicly notice said meetings, conducting said meetings in violation of the Brown Act, and laws prohibiting the gift public funds. These acts also violated the HCSD Bylaws, and particularly those section requiring a vote fo the electors of the District (including Plaintiff), and thus were undertaken for the express purpose of violating those provisions, and the right to vote of Plaintiff.

[76] Cal. Const., Art. XVI, section 6; Government Code section 8314.

[77] See HCSD Bylaws, Sections A-2(11), A-9(1), 1-5.010, 1-5.030 [pp.27-28]. The circumvention and/or outright nullification of large portions of the HCSD Bylaw provisions by the conspirators also deprived Plaintiff and the other electors of the District of the right to vote on the fee changes and/or waivers as obtained by the HCBC as provided in the Bylaws, and thus their conduct also violated 42 USC 1985.

47. The Church is a commercially-operated[78] building with a large footprint, high water consumption, and falls under Tier 2 of the water rates set by the HCSD in the Bylaws of April 18, 2014[79] ($225.00/mo). Additionally, there is a "parsonage" - which is a separate residence, on the property (rate set at $45.00/mo).

48. As a result of the conspiracy with Crittenden, the HCBC, and Bowles, the Board Defendants have continually made an improper gift of public funds since December 4, 2015 by reducing the entire charge for the HCBC property to a single-residence residential fee per month, and then conspired with Bowles to assure continuation of the setting that rate in the monthly billing to the HCBC. Furthermore, all of these goals were, and are, achieved by willfully concealing from the public that any such gifting is going on, and while denying the electors of the District, including Plaintiff, the right to vote - all in violation of 42 USC §1985.

49. Crittenden also, beginning on or about December 4, 2015, and continuing through the current date, corruptly conspired with, and corruptly influenced the Board Defendants, and Bowles, outside of agendized, public, and lawfully-held meetings of the HCSD Board, to arrange for (and for the official billings of the HCSD to reflect) wrongfully reduced, and/or waived water and other fees due the HCSD for his personal home, and for his rental house; for improper "refunds" of fees; and further conspired with Bowles and the Board Defendants to wrongfully keep the account for his rental house in the name of his tenants in violation of the HCSD Bylaws at Section A-9(14), and Water Code section 71618, after having been previously notified by the HCSD of the determination that he must place the rental water service into his own name pursuant to those sections.

50. Action by this Plaintiff against Crittenden, the HCBC, Bowles, and the Board Defendants concerning the gift of public funds is appropriate under California Code of Civil Procedure Sections 526a, 1021.5, and 1084-85, in addition to other theories of judicial relief, and/or liability to Plaintiff individually. The conspiracy between Bowles, the Board Defendants, Crittenden, and the HCBC also thus acted to violate Plaintiff's rights to: due process of law; the equal protection of the laws; right to free speech and to full access and opportunity for

---

[78] The Siskiyou County Code requires "Rural Neighborhood Commercial" (C-R), or "Neighborhood Commercial" (C-U) zoning for churches at Title 10, Chapt. 6, Art. 41.

[79] The sections of the Bylaws dealing with rates and charges, and multiple structures served by one meter - along with a prohibition on the Board and/or its members waiving fees and charges, are part of the Bylaws which cannot be amended without voter approval. See Bylaws, pp. 10, Section A-9(1); 28, Section 1-5.030.

participation in HCSD Board meetings as provided by law[80]; to be informed about, and to have his elected officials all fully consider and decide issues in a public forum as required by law; to have such meetings in a public manner that is not corrupt, not unlawful, not held *ex parte*, and/or improperly influenced; adhesion to the laws by his elected officials and/or their agents prohibiting the unlawful gifting of public funds and resources; and, Plaintiff's right to petition (by failing to notify the Public, and Plaintiff of the *ex-parte* meetings between the Board Defendants and Crittenden and/or of the planned gift of funds to the HCBC); suppressing due and proper notice of the meeting and planned action; and, other acts which will be detailed upon further discovery.

51. Plaintiff does hereby allege that the conspiracy regarding the gifting of public funds, and the denial and infringement of Plaintiff's rights, between Steven Crittenden, in his individual, and official capacity as an agent and officer of the HCBC, and the HCBC itself, with Defendant Bowles, the HCSD, and the Board Defendants, constituted a corrupt conspiracy with public officials and a public entity (the HCSD) such that Crittenden and the HCBC took on the mantle of state agents for the purposes of making out claims against them under Title 42, Sections 1983 and 1985 of the Untied States Code for violations of rights as set forth herein.

## XII. DEFENDANT KIRSHER, WINSTON, & BOSTON, L.C., 205 N. Shasta Blvd. #400, P.O. Box 177, Mt. Shasta, CA 96067 (530) 926-3444.

52. At all times material, Defendant Kirsher, Winston, & Boston, L.C. was a private corporation registered with the Secretary of State in California, and was acting as an independent contractor, employee, and/or agent of the Board Defendants, Bowles, Dingman, and Goff, and wrongfully sanctioned, ratified, encouraged, aided, and abetted those individuals, along with Defendant Robert Winston, in agreeing and conspiring to, and acting to, plan and complete the conduct set forth in this Complaint. Further, Defendant Robert Winston was at all relevant times, and is, an officer of this corporation - being its Secretary and Treasurer, and exerted control and dominion over the corporation relating to the acts set forth herein, and was acting within the scope of his employment as to the firm[81], and also as to his employment by the Board Defendants, and/or the HCSD at all times material. Winston was so acting on behalf of the firm,

---

[80] This includes the rightful participation of the Public and Plaintiff, who were deliberately excluded by the Board Defendants, Crittenden, and Bowles from any discussion and/or decision concerning the gift of funds to the HCBC.

[81] See also *Hutchison v. Brookshire Brothers, Ltd.*, 284 F.Supp.2d 459,472, 473 (E.D.Texas 2003); *Cortlessa v. County of Chester*, No. Civ.A. 04-1039, 2006 WL 1490145, at *3, *4 (E.D. Pa. May 24, 2006) for discussion as to entity liability on respondent superior basis.

in addition to his own behalf, when he executed various documents, letters, emails, purported public records, contracts, etc involving the HCSD, its Directors, employees, and/or contractors.

52a. It is the policy, custom, and practice of this law firm, acting under the direction and control of Defendant Winston, and otherwise, to fail to properly train, oversee, and to permit the attorneys working for it to engage in acts that violate the laws (in relevant part as set forth in the sections of this complaint dealing with Defendant Robert Winston, Defendants Puckett, Slote, Peterson, Hanson, and Buckley, and in the other sections relating to conduct by other Defendants involving Robert Winston), the constitutional rights of its opponents, and the Rules of Professional Conduct with impunity, lack of any review, and/or discipline (thus ratifying those acts).

52b. The ability of Winston to wrongfully execute improper documents in conspiracy with Slote, Puckett, Hanson, the HCSD, and/or the other Defendants, to misrepresent those *ultra vires* and otherwise void documents to government agencies, the courts[82], and/or third parties as lawful and truthful public records created with due process, and to engage in the unethical, tortious, and criminal conduct set forth herein indicates that the law firm has failed to adequately and properly train its employees, and to supervise them, such that Plaintiff was made to suffer torts, statutory, and constitutional violations, by one of its own corporate officers - who is also its employed attorney. Such conduct is also an unfair business practice, as that term is used in California jurisprudence, and particularly Business and Professions Code sections 17200, et seq, and has resulted in unlawful and wrongful enrichment of this Defendant, and the concurrent waste of public funds. To the extent relevant, Plaintiff incorporates the information and accusations set forth below in the Section detailing with his claims against Robert Winston (paragraphs 53 through 65), and as set forth in the individual Sections of the Board Defendants' pertaining to Robert Winston.

**XIII. DEFENDANT ROBERT WINSTON, 205 N. Shasta Blvd. #400, P.O. Box 177, Mt. Shasta, CA 96067 (530) 926-3444 (office)**

53. At all times material, Defendant Robert Winston ("Winston") was a citizen of Siskiyou County, California, an attorney with Defendant law firm "Kirsher, Winston & Boston Law Corporation" as well as being the Secretary/Treasurer therefore[83], and a purported

---

[82] Thus also conspiring, and acting, to deny Plaintiff due process, and to interfere with his right to petition.

[83] Winston, as an officer of the law corporation, created, promulgated, imposed, and enforced its contracts, policies, customs, and practices - which generally consisted of whatever Winston wanted to do, and ratifying however he did it, insofar as this case is concerned. In essence, the LC exists as a sock

contractor, and agent of the Board Defendants, Bowles, Dingman, Goff, Hanson, and HCSD[84] - who (outside of any noticed, public meetings or other lawful proceedings), beginning on or about December 4, 2015, and continuing through the present date, and ongoingly, in addition to engaging in wrongful conduct himself as set forth herein, agreed to, and actually did, knowingly, and corruptly[85], act, agree and conspire with, direct, assist, aid, abet, and failed to take affirmative action to prevent or cure, the Board Defendants', Dingman's, and Goff's acts in violating the HCSD Bylaws[86], the California Brown Act, the California Political Reform Act, California Government Code section 1090[87], The Rules of Professional Conduct, the California Business and Professions Code, the federal Safe Drinking Water Act, the Clean Water Act, the California Health and Safety Code, Water Code, Government Code 61000 *et seq*, and in chilling, and violating Plaintiff's statutory and Constitutional rights as set forth herein. In making out the claims against Defendant Winston, Plaintiff incorporates the allegations involving Winston as set forth in the preceding Sections dealing with Defendants Puckett, Slote, and Hanson as if fully set forth at this point.

54. As Winston is an attorney, he also at all times knew that the goals and acts of his co-

---

puppet of Winston and his collaborators simply to shield Winston et al from the legal and ethical consequences of their acts, for tax purposes, etc., and has no independent existence.

[84] Under general rules of agency, one who contracts to act on behalf of another and is subject to the other's control, may be both an agent and an independent contractor. See Restatement of Agency Second §§ 2, 14N; *Harby v. Saadeh*, 816 F.2d 436, 439 (9th Cir.1987). Accordingly, employers may be liable for the acts of independent contractors when an agency relationship is demonstrated. See *Sugimoto v. Exportadora De Sal. S.A. De C.V.*, 19 F.3d 1309, 1311-12 (9th Cir.1994). An attorney is an agent even if employed for a single transaction and as an independent contractor. See Restatement (Second) of Agency § 1.

[85] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (holding that private parties who corruptly conspired with a state judge acted "under color of law")

[86] Winston also, without legal authority to do so, aided, abetted, assisted, and ratified actions by the HCSD and the Board Defendants which were calculated to subvert, circumvent, and nullify the voter control provisions of the HCSD Bylaws. Such action(s) also deprived Plaintiff, and other electors within the District, of the right to vote on changes to the Bylaws as provided therein, constituting a violation of 42 USC 1985. The HCSD Bylaws also specifically require bidding as to any services provided to the HCSD (such as by attorneys), and the conduct of the Board Defendants and Winston in purporting to appoint him to cases (or his self assignment thereto) without undergoing that process violated those provisions without due process.

[87] Plaintiff specifically alleges on information and belief that the acts of aiding and abetting, along with conspiring, and acting in furtherance of the conspiracy(s), to commit the breaches alleged herein, all happened during private, and serial, meetings between Winston and one or more of the Board Defendants - including by telephone and email, and did not occur during, nor were the subject of, proper open public meetings of the HCSD Board as would be required by the Brown Act and the HCSD Bylaws. Contracts in violation of section 1090 are void, not merely voidable, and never have legal effect. Furthermore, contracts that are contrary to express statutes or to the policy of express statutes (including the HCSD Bylaws, in this case), are illegal contracts. (Civ. Code, § 1667, subds. (1), (2).) Any such illegality voids the entire contract. (*Loving & Evans v. Blick* (1949) 33 Cal. 2d 603, 609.)

Defendants, and his own actions, were contrary to law, and/tortious as specified. Furthermore, each and every act by Winston, as well as his agreement, aid, encouragement, and ratification of the wrongful acts of the other Defendants as described herein, was taken within the scope of his purported employment by and with Defendant HCSD, the Board Defendants, Bowles, Dingman, Hanson, Goff, and/or Kirsher, Winston, and Boston L.C.. These actions, along with the others undertaken by Winston as set forth herein, also violate the provisions of the California Business and Professions Code, Sections 6067, 6068[88], 6104, and 17200, as well as Winston's affirmative duties thereunder. Winston is sued herein in his individual capacity, as a state actor/agent of the Board Defendants, and in his capacity as an employee of, and the Secretary/Treasurer of, Defendant Kirsher, Winston & Boston L.C., which is itself sued as a state-actor/agent of the Board Defendants and the HCSD. Insofar as Winston acted as an officer of the law corporation every time he took any of the actions described in this action, it is also Plaintiff's intent that such actions also be attributed to Kirsher, Winston, & Boston, L.C. for purposes of making out causes of action, and for liability.

55. It is alleged on information and belief that Winston, and thus Kirsher, Winston, & Boston, L.C. ratified, agreed with, and acted in furtherance of the conspiracy with the Board Defendants, HCSD, Bowles, Hanson, Goff, and Dingman to violate the laws, Bylaws, and Rules as aforesaid by: wrongfully assisting in holding, and instructing the Board Defendants when to hold, non-, incompletely, and/or improperly-noticed "Board meetings"; what to place on agendas (and what not to place on agendas, and/or discuss at public meetings), while knowing that such instructions (as well as the actual acts urged by Winston, and his purported appointment(s) to cases and/or for services without any bidding process) violated the Brown Act, the HCSD Bylaws, and/or other laws; what actions the Board Defendants should actually take at meetings; by drafting proposed resolutions, proposed Bylaws, self-serving and/or conflicted contracts, notices, letters, invoices, demands, and other documents without any lawful authorization that he do so, and for use at those improperly-held meetings and at other times under color of law of the Board Defendants' offices[89]; by unlawfully usurping the Legislative authority of the HCSD's

---

[88] Additionally, in violation of section 6104, and in furtherance of the conspiracy with the Board Defendants to circumvent the Brown Act and HCSD Bylaws, and to divert HCSD funds to Winston without public knowledge, Winston appeared, purportedly on behalf of the HCSD at the instruction of Board Defendants, but without any actual appointment by the Board, in multiple legal proceedings in the Siskiyou County Superior Court, as well as actions pending before the Third District Court of Appeals of California.

[89] Occasionally one or more of the Board Defendants has falsely claimed that a document ghostwritten by Winston was instead created by them.

Board[90], by failing to provide proper, complete, and timely billing statements for services allegedly rendered to the HCSD and/or certain Directors of the HCSD when asked in order to advance the wrongful conspiracy to conceal his improper billing and diversion of public funds to himself by the Board Defendants, and/or Bowles; and, by arranging for, and holding, private, illegal meetings[91] with the Board Defendants, Defendants Bowles, Hanson, Goff, and/or Dingman at his Yreka office, and other places, and by telephone and email, for the purpose of: advancing the goals of the agreed-upon conspiracy; to conceal, and exclude the public (and Plaintiff) from what should have been publicly-noticed and agendized meetings; all in order to (among other wrongful goals) to intimidate, harass, annoy, and coerce Plaintiff into abandoning the exercise of his statutory and constitutional rights (particularly free speech, petitioning, and right to vote) in his attempts to report to governmental agencies; bring superior court actions; vote concerning reclassification of HCSD customers and other wrongful fee waivers; to engage in peaceful assembly in order to generally stand against the wrongful acts of the Board Defendants and their conspirators; and, to provide documents and other resources for use by the Board Defendants in furtherance of the conspiracy(s) and its various goals as set forth in this complaint. Plaintiff alleges specifically that the actions of Winston as aforesaid resulted in a waste of taxpayer funds[92], financial loss to the District, and to Plaintiff insofar as the degradation of the District's infrastructure depresses the value of his property within the District

56. On information and belief, Defendant Winston is alleged herein to have willfully and maliciously, during the period beginning December 4, 2015, through and including the present date, and ongoingly, agreed to, assisted, encouraged, aided, and abetted the Board Defendants, HCSD, Dingman, Goff, and Bowles, and thereafter ratified their conduct, in violating Plaintiff's rights to due process, equal protection of the laws, and right to vote as provided in the Bylaws, as well as Plaintiff's statutory rights under the laws of the United States, State of California, and the HCSD Bylaws by: assuming a position of authority and control over the HCSD finances that he

[90] Winston was never hired as "general counsel" for the District. By purportedly allowing Winston to "self-create" contracts with his firm and the HCSD for legal services without any review or approval by the Board, nor any cap on expenditures for any matter that he thereafter "self-assigned" to, the Board Defendants and Winston violated the jurisprudence of this State, as well as statutory and Constitutional guarantees of Plaintiff and the public. See *Slavich v. Walsh* (1947) 82 Cal.App.2d 228, 235; *People's Fed. Sav. & Loan Ass'n v. State Franchise Tax Bd.* (1952) 110 Cal.App.2d 696, 700; *Birkenfeld v City of Berkeley* (1976) 17 Cal.3d 129, 167; *Wilke & Holzheiser, Inc. v. Dep't of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 369.

[91] Insofar as those involving the Board Defendants, in violation of the Brown Act, conflict of interest laws, and the HCSD Bylaws.

[92] Plaintiff invokes his right to bring an action for recovery thereof as contemplated by Code of Civil Procedure section 526a.

was not entitled, or lawfully authorized to; failing to undergo the bidding process for his services as required by the HCSD Bylaws; refusing to provide, and concealing, public records of the HCSD from Plaintiff[93]; without authorization from the Board of the HCSD, drafting, and providing language (in the form of dictations, letters, email, forms, resolutions, contracts, and telephone communications), *ex parte* to the Board Defendants for uses that were wrongful, improper, illegal, and/or violative of the HCSD Bylaws, including; resolutions, agenda items, "findings", letters, proposed Bylaws, purported contracts, and other documents actually used by the Board Defendants to violate the provisions of Federal, State, and Local laws relating to public meetings, and operation of the HCSD administration and facilities, and right to vote as provided in the Bylaws. Winston also during this same time period furthered the goals of the conspiracies, and acted to improperly and wrongfully divert public funds to his own benefit, by asserting himself as purported "counsel for the District" in numerous legal matters in Siskiyou Superior Court (and the Third District Court of Appeals) - for which matters no HCSD Board action had been taken to appoint him in compliance with Government Code section 61045, and for which no bidding process as required by the Bylaws had been undertaken. Also, after so "self-appointing" to those matters, Winston thereafter falsely billed the HCSD for various services pertaining to his self-appointment, and conspired with the Board Defendants, and particularly Defendants Slote and Puckett, to prepare various resolutions and legal services agreements via *ex parte*, non-public conversations and emails for later submission and after-the-fact approval by the HCSD Board - all in violation of the Brown Act, and Government Code 1090, as well as the HCSD Bylaws, which require bidding and other public process for retention of contracted services.

57. Winston assisted, aided, abetted, encouraged, and advised the Board Defendants, Dingman, and Goff[94] in operating the HCSD water production, treatment, and distribution facilities in a manner contrary to federal and state law, and the HCSD Bylaws, by agreeing to, and providing, assistance as described herein, and thus committed at the time, and ongoingly, a public and private nuisance. Winston also, on multiple occasions from the period of December

[93] During this same period, Plaintiff made numerous California Public Record Act requests of the HCSD relating to the relationship of Winston to the HCSD, and to its employees and contractors, as well as payments claimed by and/or made to Winston, among other categories.

[94] The Board Defendants, along with Dingman and Goff, were instructed by Winston to continue to operate the HCSD facilities in spite of Winston's personal knowledge of their operation being in violation of the Health and Safety Code due to Dingman's status as an "unlicensed operator". Winston also instructed the Board Defendants, along with Dingman and Goff to refuse access to HCSD records relating to the operation of the water production and treatment facilities.

4, 2015 through and including the present date, and ongoingly, knowingly committed false personation as counsel of the District for the HCSD[95]; and, violating the California State Bar Rules of Professional Conduct, including, but not limited to, those relating to knowing and informed waivers of conflicts of interest, improper conduct, as expressed in Rules 3-100 - 3-310[96], acceptance of concurrent and serial representation of entity clients at Rule 3-600(E)[97], and other Rules relating to conflicts of interest, and informed waivers, all for the purpose of improperly diverting public funds from the HCSD to his own enrichment[98], and in order to himself engage in, and to facilitate the Board Defendants', in realizing and enacting those Constitutional deprivations and torts against Plaintiff as set forth herein.

58. All of the foregoing actions were taken by Winston outside of any lawfully-noticed and agendized public meeting of the Board of Directors of the HCSD, and were not undertaken

---

[95] By "false personation as counsel...", Plaintiff is referring to the fact that Winston has acted towards Plaintiff, or with third parties, at times purportedly on behalf of the HCSD, or one or more of its Directors, employees or agents (and outside of any formal court or administrative processes), without lawful authorization to do so, via corrupt and improper usurpation of Legislative authority, and also that Winston knowingly, and without any due or proper lawful authority, and/or at other times under an illegal and void grant of authority by the Board Defendants, or often just Slote and/or Puckett under the assumed purported authority of "President of the HCSD" (in violation of Business and Professions Code section 6104), appeared in numerous legal actions purportedly on behalf of the HCSD, its Directors, employees, etc without any lawful authorization by the HCSD. Winston is also not a member of the Siskiyou County Counsel's office, nor was he ever hired as "general counsel" for the HCSD. While it is true that Winston has also engaged in some, supposedly authorized, court process on behalf of the HCSD and/or the Board Defendants, such actions would only be mentioned herein as evidence concerning the violation of Plaintiff's civil rights, violation of State laws, and violation of the Rules of Professional Conduct, and so any actions actually taken in furtherance of litigation are not intended to be themselves the basis for any of Plaintiff's State causes of action herein. However, Plaintiff's federal §§1983, 1985, 1986, and 1988 claims preempt the litigation privilege(s) in all respects. See, e.g. *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553 (1980) (holding that a 42 U.S.C. § 1983 claim preempts the state litigation privilege); *Johnson v. JP Morgan Chase Bank DBA Chase Manhattan, et al.*, 536 F.Supp.2d 1207 (E.D. Cal. 2008). Winston has also, in agreement, ratification of, and conspiracy with the Board Defendants, acted as counsel in matters in Siskiyou County Superior Court, as well as actions pending before the Third District Court of Appeals of California, without lawful appointment by the HCSD Board, and/or pursuant to the illegal (and thus void) delegation of Legislative authority purportedly made by the board, which is a violation of the Rules of Professional Conduct, Business and Professions Code section 6104, violates California's UCL (Bus. amd Prof. Code 17200), and is grounds for disbarment.
[96] However, Plaintiff does not allege any violation of Rule 3-120.
[97] Plaintiff complains that Winston is also thus essentially engaging in legal malpractice on the basis of dual representation. The provisions of the HCSD Bylaws at Section A-9(26) are deliberately expansive enough to grant standing to Plaintiff to raise such issues.
[98] The State Bar's guidelines also provide that fees received by an attorney while that attorney is violating the Rules are inherently excessive, and unconscionable, and thus improper/illegal themselves. Finally, the Fees charged by Winston to the HCSD could not have been procured by informed consent of that entity, as he failed to comply with Rule 3-600(E). (See Rule 4-200(B)(11); *In Re Marriage of Wickander* (1986) 187 Cal.App.3d 1364 [contract which violates the Rules is unenforceable].) Such actions are hereby alleged to constitute "false claims" on Winston's part per CA Govt. Code 12650.

before any tribunal, or directly in connection with any litigation. All of these acts were undertaken by Winston in furtherance of the conspiracy between himself and the other Defendants to violate California law as set forth herein, to retaliate against Plaintiff for his complaints and legal actions against the HCSD and other Defendants as discussed throughout the complaint, to attempt to chill and/or coerce Plaintiff into abandoning his complaints with agencies and his legal actions, and to otherwise deny, violate, and subvert Plaintiff's rights as granted under the First and Fourteenth Amendments, including Plaintiff's right to vote as provided by the HCSD Bylaws.

59. Insofar as Winston acted at any time to wrongfully claim representation of the HCSD in violation of the Rules of Professional Conduct, and/or state law, and when such were actually undertaken by him for his improper motive, his own benefit, the improper motives and benefit of his individual Board Defendant clients[99], Dingman, Goff, Bowles, and/or Hanson, and/or in furtherance of the torts and Constitutional violations set forth herein, such acts were a direct violation of his legal, ethical, and fiduciary duties generally, as counselor and attorney at law[100], and also as such for the HCSD[101], is operating under a conflict of interest and is thus not entitled to any fees. It generally is held in such cases that an attorney who commits a violation of ethical standards has not "earned" any fee for the services which were performed after the conflict arose, or which were tainted by the misconduct, whether or not the conflict or misconduct caused any damage. (See, *Anderson v. Eaton* (1930) 211 Cal. 113, 116; *Goldstein v. Lees* (1975) 46 Cal.App.3d 614; *Jeffry v. Pounds* (1977) 67 Cal.App.3d 6). All fees collected by Winston from the HCSD, whether or not paid on its own behalf, or as the result of the improper "indemnification" by the Board Defendants of themselves, Julie Bowles, Clint Dingman, Ernest Goff, and/or others[102], are thus all improper, unconscionable, and must be disgorged by Winston. An attorney may be required to disgorge profits derived from conduct which is an ethical breach. (See, e.g., *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884).

---

[99] This violation of duty(s) to the HCSD as an entity also applies in the case of Winston's conflicted representation of Julie Bowles and Clint Dingman. See, i.e., CalBar Rules 3-300, 3-310, 3-600(E).

[100] See particularly California Rule of Professional Conduct 3-200.

[101] Insofar as Defendant Winston may have claimed in any particular instance to have been acting as an employee <u>or agent</u> of the District, or in the capacity of "Counsel for the District" or otherwise, he was also then bound to obey the HCSD Bylaws to the same extent as any other employee, agent, or private contractor.

[102] Any "indemnification" of Bowles, Goff, and/or Dingman, which is in excess of, or in addition to, any contract for services, or which was undertaken by him without the express authorization of the HCSD Board pursuant to Govt. Code §61045, is also an impermissible gift of public funds to the recipient of the indemnification services, while additionally being a false claim and waste of taxpayer funds as to payments made to Winston therefor.

60. Winston was at all times relevant herein, when engaged in the wrongful conduct described in this complaint, was (and is, and ongoingly) thus also acting in violation of California's Business and Professions Code sections 6000, *et seq*, incorporating and applying the Rules of Professional Conduct, and thus in turn violating the State's unfair business practices laws, Business and Professions Code section 17200, et seq[103], in addition to any underlying and/or additional wrongs and causes of action as set forth herein. The monies billed to the HCSD, and/or actually received by Winston for Hanson's private legal matters, for those legal matters to which he was never lawfully appointed (including as to any individual plaintiffs or defendants in any particular case), for excessive hours billed as to any matter or action, and for matters in which he appeared prior to any authorization by the HCSD, are also "false claims" pursuant to the California False Claims Act and so Plaintiff, in addition to any other standing or claims made herein, also brings this action *qui tam* pursuant to Government Code Section 12651(c)[104] insofar as amounts billed to, and/or money had and received by from the HCSD by Winston.

61. Further, Winston's instructions to the Board Defendants[105] concerning, encouraging, and ratification of, his Board Defendant clients' illegal actions relating to improper meetings, resolutions, "ratifications" of alleged prior HCSD Board contract/actions, and/or other official actions taken prior to, after, and at, various purported meetings of the HCSD called in violation of the Brown Act and HCSD Bylaws, were knowing and informed acts which also sought to bring to fruition the common plan of all the defendants herein (but particularly the Board Defendants), which plan was the unlawful conduct of the business of the HCSD, improper

---

[103] See *People Ex Rel. Herrera v. Stender* (2012) 212 Cal. App. 4th 614, 631-632, which discussion by the Court of Appeals is incorporated herein at this point.

[104] Although the requirements of *qui tam* submission of the complaint to the Court "in camera", and delay of service thereof upon the defendants directly conflict with the Federal Rules of Civil Procedure, Plaintiff will serve a copy of the complaint upon the Attorney General as provided in Section 12651(c)(3), once it has been screened and accepted for filing by this Court if so ordered (which arguably would also meet the *in camera* filing requirement if it applied). Thus, if the "prosecuting authority" for the HCSD wishes to intervene on this particular claim of the Complaint (and the other similar situations which apply herein), it may do so.

[105] Such instructions generally taking the form of *ex-parte* submissions of resolutions, etc that Winston wanted enacted; communications with one or more of the Board Defendants, and/or Dingman and/or Goff (concerning the illegal and improper operation of the HCSD water treatment and distribution facilities), all outside of even a closed session, and/or otherwise properly noticed public meetings - which on each such occasion was engaged in for the purpose of ultimately formulating a consensus for action by the HCSD Board, and thus was a direct violation of law by all concerned, as well as being calculated to deprive the public (and Plaintiff) of his right to attend such meetings, and to participate therein, all in violation of his First and Fourteenth Amendment rights. See Govt Code section 54954.5(c-d); 54956.9; and, 54959.

diversion of public funds, and actions and retaliation against Plaintiff for his exercise of his Constitutional right to speak freely and to petition the government and courts, and to deny Plaintiff his rights to due process and equal protection of the laws as set forth herein. Winston's conduct in so doing was not undertaken by him during the (lawful) representation by him of the HCSD, and/or the Board Defendants, does not involve conduct relating to the prosecution of any current or past legal action and/or the actual representation of any of his purportive clients in a court of law (or at any public meeting of the Board of the HCSD), and it is not Plaintiff's intention to attempt to make out a cause of action, or any state claims for relief against Winston, based upon actions (or statements) Winston may have actually (lawfully) undertaken in a Court of law such as filing any particular (or generally) document and/or pleadings in any such case, nor in preparation therefore, although such conduct may clearly be evidence for other claims made.

62. At all times material, Defendant Winston had an independent legal duty to Plaintiff, to the residents, property owners, and taxpayers of the District, and to the HCSD as an individual entity, to at all times conform his conduct to the Constitution and laws of the United States and the State of California, as well as the California State Bar Rules of Professional Conduct, the Brown Act[106], and the HCSD Bylaws, yet he failed to do so, and encouraged, agreed with, colluded, aided, abetted, and assisted others in failing to do so, as set forth herein. In spite of multiple demands that he do so, Winston has specifically failed and refused to provide records, documents, billing statements. writings, or other papers relating to Winston's purported employ by, and/or activities relating to, the HCSD in any capacity, and thus acted in violation of the Rules of Professional Conduct of the California State Bar (see also Government Code section 6252.5, and the CPRA). Winston's actions in violation of the laws and Rules of Professional Conduct as set forth herein mean that he is not lawfully entitled to monies had from the HCSD, is in violation of California's Unfair Competition Law, and so his claims for payment relating to the HCSD in any capacity, as well as payments purportedly made by the HCSD to Winston on behalf of the Board Defendants, constitute false claims under the California False Claims Act, and Plaintiff does hereby invoke all remedies thereunder.[107]

---

[106] Insofar as he advised the Board Defendants concerning meetings, the adoption of resolutions, purported contracts, and/or relating to himself and his law firm, etc.

[107] See California Govt. Code 12650, et seq. Plaintiff is entitled to triple damages thereunder, and so Plaintiff brings this action *qui tam* pursuant to Government Code Section 12651(c) insofar as money had and received by Winston from the HCSD.

63. As to the facilitation, encouragement, assistance, direction, abetting, agreement, ratification, and aid by Winston of the conduct alleged against each of the Board Defendants, Dingman, Goff, and Bowles, California has long adopted the view that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person. (*Greenwood v. Mooradian* (1955) 137 Cal. App. 2d 532; *Atchison, T. & S. F. Ry. Co. v. Hildebrand* (1965) 238 Cal. App. 2d 859; *Warner v. Roadshow Attractions Co.* (1942) 56 Cal. App. 2d 1; see also, *Daly v. Smith* (1963) 220 Cal. App. 2d 592.) This concept applies herein to the described interactions between Winston and the Board Defendants, Bowles, Hanson, and Dingman insofar as communications, "agreements" concerning the exercise of official authority by the HCSD and/or Board Defendants, and planning for contracts and representation in various legal matters (and other acts), were discussed and agreed upon outside of any noticed and/or lawfully conducted held public meetings.

64. All of these acts were undertaken by Winston (a licensed attorney for over 30 years) with full knowledge of their illegality, impropriety, and wrongfulness, and that the undertakings were not only wrongful and/or unethical, and criminal in many respects, but that the plan and actions also served to deprive the Public, and Plaintiff, of their rights to access and petition the government (in the form of the HCSD Board) at open and public meetings as required by law, and that Plaintiff's right to access to government, to representation, to petition, to vote as provided by the HCSD Bylaws and otherwise, and that Plaintiff's (and the public's) rights to due process and equal protection of the laws would thus be violated (in addition to normal tort and statutory violations against Plaintiff).

65. Finally, Defendant Winston, by participating, aiding, abetting, encouraging, instructing, sanctioning, and acting in and in furtherance of each and every act that was itself in furtherance of the conspiracy with the Board Defendants, Bowles, Hanson, Goff, and/or Dingman to violate the Rules of Professional Conduct, the federal, state, and local laws, as well as Plaintiff's statuory and Constitutional rights as set forth herein, did so while acting maliciously, without probable cause, in a deliberate attempt to harass, annoy, and oppress Plaintiff, and without proper, lawful, authorization of the HCSD itself, beginning on or about December 4, 2015, ongoingly since, and as set forth herein, and as such similar conduct as may be amended into the complaint in the future.

/////////

**XIV. DEFENDANT BASIC LABORATORY, INC., 2218 Railroad Ave., Redding, CA 96001 (530) 243-7234.**

66. At all times material, defendant Basic Laboratory, Inc. ("Basic Labs") was a corporation operating in California, and registered with the Secretary of State, while also being an independent contractor to, and agent of, the HCSD and the Board Defendants.

67. On or after December 4, 2015, Defendant Basic labs did resubmit a false claim for "water testing", invoice #1509553 in the amount of $3,592.00, to the HCSD and Board Defendants, which contained billing for alleged sampling and testing of four drinking water sources within the HCSD water production system.

68. The alleged testing was carried out without notice to the public, the then-Board members, and/or the HCSD, and without any valid written authorization, contract, action, or approval at any public meeting by the HCSD Board, and was also undertaken in direct violation of the terms of the previous contract and/or authorization the HCSD had with Basic Labs.

69. After December 4, 2015, Defendant Dingman conspired with, aided, and abetted Defendant Basic Labs in its false claim for money from the HCSD by falsely stating at a public meeting of the HCSD Board that he had granted the company's representatives access to the HCSD facilities for the testing, and authorized and assisted them in performing the tests. Dingman's statements were made with the intent that the false billing by Basic Labs be paid in full, even though there was no way the creek that is the primary source of the HCSD's water could have been tested, as it was dry due to drought at the time the tests were alleged to have occurred (August-September of 2015). Furthermore, although several HCSD Board members had contacted Basic Labs prior to December 4, 2015 in an attempt to gain additional information about the claimed testing, charges, authorization therefore, etc, Basic Labs, having communicated with Defendant Michele Hanson and being informed that the "new" Board would be coming into office on December 4, 2015[108], willfully refused and failed to provide documentation, contact information, or even to discuss the claim with some of the HCSD Board members in office during the period of October 1, 2015[109] through December 3, 2015. Basic

---

[108] Hanson also during that time period engaged in ex parte meetings with Defendants Puckett and Slote (which meetings violated the Brown Act) concerning a plan to reach a consensus of the incoming Board for the approval of payments to Basic Labs once the latter assumed office.

[109] This included Plaintiff. Thus, the conspiracy by Hanson, Basic Labs, Dingman, and the incoming Board Defendants was also undertaken for the purpose of depriving Plaintiff of the rights and privileges of his office with the HCSD, and as a Legislator, in addition to rights possessed as an individual, to due process of law, and the equal protection of the laws.

Labs thereafter conspired with Dingman as aforesaid, with Michele Hanson, and with the Board Defendants to have the false claim(s) for testing approved, and all of the foregoing conduct ratified, even though there was no valid contract therefore, and the conduct of Basic Labs violated the clear terms of the previous contract with the HCSD.

69a. Sometime after December 4, 2015, Defendant Hanson conspired with, aided, and abetted Defendant Basic Labs in its false claim for money from the HCSD by creating a false public document, which was an incomplete authorization for testing and sampling of the HCSD water system, which she then placed into the public records of the HCSD and turned over to the Board Defendants herein, and particularly Defendant Slote for the purpose of facilitating the false claims for payments made by Basic Labs to the HCSD. Hanson did this outside of any lawful process, or public meeting of the HCSD, without lawful authority to do so, and without any notice to any HCSD Board member, the public, or to Plaintiff.

70. The monies billed to the HCSD, and/or actually received by Basic Labs for matters in which it acted to conduct tests prior to any lawful notification to, and authorization by, the HCSD, and/or which were undertaken without any valid contract or were in violation of the terms of any contract purportedly in effect at the time of the claims, are also a waste of taxpayer funds, and "false claims" pursuant to the California False Claims Act and so Plaintiff, in addition to any other standing or claims made herein, also brings this action *qui tam* pursuant to <u>Government Code</u> Section 12651(c)[110] insofar as amounts billed to, and/or money had and received by from the HCSD by Basic Labs.

**<u>XIVa. DEFENDANT MURPHY, PEARSON, BRADLEY & FEENEY, INC. (former John Doe #1), 520 Capitol Mall, Suite 250, Sacramento, CA 95814 (916) 565-0300.</u>**

70a. At all times material, Defendant Murphy, Pearson, Bradley & Feeney, Inc. ("MPB&F") was a private corporation registered with the Secretary of State in California, takes the place of former John Doe #1, and was acting as an employee and/or agent of the HCSD, Board Defendants, Bowles, Winston, Dingman, and Goff, and improperly aided and abetted those individuals, along with Defendant William Munoz, in conspiring to, and acting to, conduct purportedly official HCSD business, and in creating contracts with the HCSD in which it had a

[110] Although the requirements of *qui tam* submission of the complaint to the Court "in camera", and delay of service thereof upon the defendants directly conflict with the Federal Rules of Civil Procedure, Plaintiff will serve a copy of the complaint upon the Attorney General as provided in Section 12651(c)(3), if so ordered (which arguably would also meet the *in camera* filing requirement if it applied). Thus, if the "prosecuting authority" for the HCSD wishes to intervene on this particular claim of the Complaint (and the other similar situations which apply herein), it may do so.

conflict of interest, at unlawful meetings held during about March and April of 2014 in violation of the Brown Act, the HCSD Bylaws, and the Public Records Act, all of which also deprived this Plaintiff (in both his official, and individual capacities) of his First and Fourteenth Amendment rights to free speech, to access and petition the government, and equal protection of the laws - all without due process of law - by excluding the Public, Plaintiff (and his then-fellow elected Representative on the Board of the HCSD, Director Kimberly Olson) from notice and/or opportunity to attend said meetings and official business, and refusing to provide Plaintiff (and/or Olson) documentation relating to said business and meetings. Defendant Murphy, Pearson, Bradley & Feeney, Inc. was also, at all times material, the employer of Defendant William Munoz, and directed, encouraged, aided, and abetted Munoz's wrongful conduct as set forth herein. Because of the fraudulent acts of the defendants as described above, and their deliberate concealment of those acts from the public, and Plaintiff as a fellow Board member at the time, Plaintiff only recently (in fall of 2016), learned of the wrongful plans, agreements to violate the laws (and the HCSD Bylaws), and concerted actions in furtherance of the wrongful plans of these Defendants.

70b. Although the HCSD purported to have a meeting on May 6, 2015 to lawfully appoint the law firm, the circumstances of the meeting itself suffered from procedural and legal deficiencies, including failures of notification; while the creation and purported adoption of the contract suffered from conflicts of interest, and violations of the Rules of Professional Conduct, additionally calling the legality of that contract into question, and rendering it void. Moreover, the agenda and minutes from the meeting reveal that the Board of the HCSD only appointed the law firm to the defense of the "district", and failed to appoint the law firm to represent any of the individual defendants. The law firm and its agents are therefore since that time, and ongoingly, certainly appearing in federal court as to Michele Hanson, Patricia Brown, Sharrel Barnes, Bowles, Dingman, and Goff, illegally, corruptly, and wrongfully, while illegally being paid and retaining taxpayer funds outside of any lawful contract with the HCSD, and resulting in improper and wrongful payments outside of the terms of any contract, and pursuant to a void contract. The law firm also assisted, aided, abetted, agreed to participate in, and ratified, the improper and illegal conduct of Defendants Robert Puckett Sr. and Robert Winston as set forth in paragraph 9-9d (and the footnotes thereof).

70c. Such improper, unlawful meetings, and the actions relating thereto (including the process to reach consensus to agree to hire Monoz and Murphy, Pearson, Bradley & Feeney, Inc., and the terms of such representation) - all without any notice, or other due process of law -

deprived this Plaintiff, in his official and individual capacities, of his First and Fourteenth Amendment rights to free speech, to access participate in and petition the governing body of the HCSD, and the equal protection of the laws[111] by failing to notice, and excluding, the Public, Plaintiff (and his elected Representative on the Board of the HCSD, Director Kimberly Olson) from said meetings and official business, and refusing to provide him (and/or Olson) documentation relating to said proposed business and meetings - including letters and other communications sent personally to the Board members who were slated to approve the proposed/purported legal services contract.

70d. The non-agendized and non-public, illegal, and improper meetings between Murphy, Pearson, Bradley & Feeney, Inc., Munoz, the HCSD, Bowles, Winston, Dingman, and Goff, resulted in the improper, wrongful, unlawful filing of documentation by Munoz in a US District Court matter entitled *Peter T. Harrell v. Hornbrook Community Services District, et al*, on or about April 22, 2015 without any lawful authority that he do so, in violation of the Calbar Rules of Professional Conduct, FRCivP Rule 11(a), and also Business and Professions Code sections 6067, 6068, and 6104. Any fees charged by Murphy, Pearson, Bradley & Feeney, Inc. to the HCSD as a result of those actions are improper, excessive, cannot be lawfully, collected and so must be disgorged, and, as payments made outside of lawful contract, are also "false claims" pursuant to the California False Claims Act and so Plaintiff, in addition to any other standing or claims made herein, also brings this action *qui tam* pursuant to Government Code Section 12651(c)[112] insofar as money had and received by Murphy, Pearson, Bradley, and Feeney, Inc. from the HCSD. The offenses by these Defendants are also a waste of taxpayer funds under California law, and Plaintiff's reserves his right to bring a cause of action herein relating thereto under Code of Civil Procedure §526a.

**XIVb. DEFENDANT WILLIAM MUNOZ (former John Doe #2) 520 Capitol Mall, Suite 250, Sacramento, CA 95814 (916) 565-0300 (business address).**

70e. Plaintiff incorporates the facts and allegations set forth in Section XIVa, above,

[111] Including Govt. Code section 1090, which prohibits as a conflict of interest a contractor to a public agency from assisting in the preparation of documents/contracts for itself for the public agencies governing Board to be voting on; the Brown Act; Govt Code section 61045, and the HCSD Bylaws.

[112] Although the requirements of *qui tam* submission of the complaint to the Court "in camera", and delay of service thereof upon the defendants directly conflict with the Federal Rules of Civil Procedure, Plaintiff will serve a copy of the complaint upon the Attorney General as provided in Section 12651(c)(3), if so ordered (which arguably would also meet the *in camera* filing requirement if it applied). Thus, if the "prosecuting authority" for the HCSD wishes to intervene on this particular claim of the Complaint, it may do so.

pertaining to Defendant Murphy , Pearson, Bradley & Feeney, Inc., and alleges that Munoz at all times agreed with, participated in, assisted, abetted, ratified, and arranged the cooperation of the other participating Defendants in, that conduct. At all times material, Defendant William Munoz ("Munoz"), an employee and controlling agent of Defendant Murphy, Pearson, Bradley & Feeney, Inc., was acting as an employee and/or agent of the HCSD, Board Defendants, Bowles, Dingman, Goff, and Murphy, Pearson, Bradley & Feeney, Inc., takes the place of former John Doe #2, and in April of 2015, conspired with each and all of the fore-listed Defendants to, and did, improperly encourage, aid, and abet those individuals in repeatedly conducting purportedly official HCSD business in violation of the Brown Act, the HCSD Bylaws, and the Public Records Act, concerning expenditure of HCSD funds for legal services[113], all of which also deprived this Plaintiff (in both his official and individual capacities) of his First and Fourteenth Amendment rights to free speech, petition, and equal protection of the laws - all without due process of law - by excluding him, and the Public, from said meetings and official business, and refusing to provide either his fellow Legislative Representative[114] or him notice in his official capacity as a Director of the HCSD, and/or documentation relating to said business and meetings. Insofar as this conduct has been, and/or is ongoing, such deprivations are alleged in Plaintiff's individual capacity only after December 4, 2015.

70f. The illegal and improper meetings between Munoz and the HCSD, Winston, Bowles, Dingman, Goff, and Murphy, Pearson, Bradley & Feeney, Inc. resulted in the filing of documentation in the USDC - EDCA by Munoz (as an agent for MPB&F), *prior to the existence of any lawful contract with the HCSD and other defendants*, stating that he and his firm were engaged in contractual negotiations and completion of arrangements and payments for services in a US District Court matter entitled *Peter T. Harrell v. Hornbrook Community Services District, et al*. The filings by Munoz and another agent of the law firm, Robert Lucas, on or about April 22, 2015 without any lawful grant of authority by the HCSD that they do so, in violation of the Calbar Rules of Professional Conduct, FRCivP Rule 11(a), and also Business and Professions Code sections 6067, 6068, and 6104, included a declaration by Robert Lucas, as an

[113] These services were performed for the Board Defendants, Bowles, Goff, Dingman, and the HCSD without any approval of the HCSD BOD, and without a valid contract having been entered into with the HCSD by Munoz. Arguably this means the services, and billing(s) therefore, also ran afoul of the provisions of the California Constitution at Art. 4, section 17; and, Art. 6, Section 6. Action by this Plaintiff against Munoz, the HCSD, the Board Defendants, Bowles, Goff, and Dingman is also thus appropriate under California Code of Civil Procedure Sections 526a, 1021.5, and 1084-85, in addition to other theories of judicial relief, and/or liability to Plaintiff individually.

[114] HCSD Director Kimberly Olson.

agent of Defendants Munoz, as well as of Murphy , Pearson, Bradley & Feeney, Inc., indicating that he and William Munoz of MPB&F had been in ex-parte contact with all of the above-named defendants relating to engagement in the Federal Court matter. In fact, Lucas and MPB&F were not even purportedly officially retained by action of the HCSD Board until May 6, 2015.

70g. Any fees charged by Munoz and/or Murphy, Pearson, Bradley & Feeney, Inc. to the HCSD as a result of those actions are improper, excessive, cannot be lawfully, collected and so must be disgorged, and, as payments made outside of lawful contract, are also "false claims" pursuant to the California False Claims Act and so Plaintiff, in addition to any other standing or claims made herein, also brings this action *qui tam* pursuant to Government Code Section 12651(c)[115] insofar as money had and received by Munoz and/or MPB&F from the HCSD. Plaintiff is not bringing any state claims on the basis of any actual court filings by this defendant, although clearly some of the state law violations, and thus the dependent violations of Business and Professions Code 17200, are triggered by the improper "appearance" of counsel (e.g., Business and Professions Code section 6104; Calbar Rule 3-600(E), etc.).

**XIVc. DEFENDANT MICHELE HANSON (former John Doe #3), 15824 Hornbrook Rd./P.O. Box 13, Hornbrook, CA 96044 (530) 475-3353.**

70h. At all times material, Defendant Michele Hanson ("Hanson") was a citizen and resident of Siskiyou County, California, was acting as an agent of and/or pursuant to an agreement with; and in conspiracy, conjunction, and concerted action with: the HCSD; Board Defendants; Julie Bowles; Ernest Goff; Robert Winston; and, Clint Dingman - who in turn were acting under the color of law and of their offices as Directors, employees, officers, and/or agents of the HCSD, save for those times and events she also acted as an individual as set forth herein.

70i. Hanson aided, abetted, supported, encouraged, and assisted Defendants Puckett, Slote, Winston[116], Puckett, Munoz, MPB&F, Goff, and Dingman in planning, and carrying out

[115] Although the requirements of *qui tam* submission of the complaint to the Court "in camera", and delay of service thereof upon the defendants directly conflict with the Federal Rules of Civil Procedure, Plaintiff will serve a copy of the complaint upon the Attorney General as provided in Section 12651(c)(3), once it has been screened and accepted for filing by this Court if so ordered (which arguably would also meet the *in camera* filing requirement if it applied). Thus, if the "prosecuting authority" for the HCSD wishes to intervene on this particular claim of the Complaint, it may do so.

[116] Winston is the Secretary/Treasurer of Defendant Kirsher, Winston, and Boston, L.C., exerts dominion and control over actions supposedly taken on that entity's behalf, and created (ghostwrote) and/or executed several agreements and other documents with Hanson, the Board Defendants, and occasionally other Defendants in that capacity which contained numerous falsehoods, unethical, improper, and illegal provisions, along with other notices, letters, resolutions, declarations, etc purportedly authored by its Directors and agents for the benefit of the HCSD - all of which were used in furtherance of the conspiracy to operate the HCSD illegally, to wrongfully divert and/or gift HCSD funds to Winston, to subvert the

Brown Act, CPRA[117], and HCSD Bylaw violations at each of the improper meetings held between the time the Board Defendants took office on December 4, 2015, and the current date, and ongoingly, as described in this complaint; and, in the common plans to violate the Federal, State, and local laws (the HCSD Bylaws) relating to the operations of the HCSD; to retaliate against Plaintiff (in both his official/employee, and his individual capacities) for his protected conduct in making complaints to government agencies and the courts, by specifically interfering with and/or denying Plaintiff's rights to due process of law, and to vote - such retaliation including, but not being limited to, the wrongful refusal by the Board Defendants of indemnification of Plaintiff.[118]

70j. Hanson, subsequent to the taking office by the Board Defendants on December 4, 2015, and ongoingly, has assisted Defendants Clint Dingman and, indirectly, Patricia Slote, in false claims to the HCSD by their preparation and submission to the HCSD and thus also the Siskiyou County Auditor, of false timesheets containing a demand for a rate of pay, and for an amount of hours, in excess of Dingman's contract with the HCSD, and in excess of the $10.00 per hour rate he was to receive (and when such excess and/or increases were never approved by any action of the HCSD Board, nor via any agreement between the HCSD Board and Dingman), The "timesheets" prepared by Hanson and Dingman, and ratified by Slote, also containing falsified claims for hours that Dingman did not actually work, was not authorized to work, and/or for time in excess of that which Dingman actually took to complete the listed tasks. The timesheets also included on some occasions additional claimed hours for "meetings" and other tasks that had never been approved for such additional payment by the HCSD Board in conformance with Government Code section 61045, and which were outside of Dingman's assigned duties and job description. When Plaintiff confronted the Board about some of Dingman's false claims after December 4, 2015, Hanson shortly thereafter created a false Declaration for use by Defendant HCSD Secretary Patricia Slote to promulgate as a supposed public record, that Declaration stating that Hanson and other prior Board members had agreed to

---

interests of justice, to deny Plaintiff's rights to due process and petition by undermining the legitimacy of legal process, to generally deprive Plaintiff of his Constitutional and Statutory rights, and to retaliate against Plaintiff for his protected conduct in petitioning government agencies and the courts.

[117] California Public Records Act. In this case, Plaintiff is informed and believes that Hanson maintains a large store of HCSD documents and equipment at her home so that Puckett and Slote can claim that they "don't have possession" of those records in response to CPRA requests by Plaintiff, and/or other members of the public.

[118] Again, Plaintiff does <u>not</u> base any <u>state claim</u>, or <u>common-law tort claim</u> against any Defendant for any protected petitioning conduct or speech (even in writing) at any official proceeding or in a court of law.

increase Dingman's pay and hours during the summer of 2014 as part of a lawful action of the HCSD Board. That statement was false because no such action was ever agendized, or actually taken at any public meeting of the HCSD Board, and Dingman was never approved by the HCSD for any such increase in pay and/or increase in number of hours to be worked per month over those specified in his contract. Hanson created this false declaration with the intent that it be published and made part of the official HCSD public records by Defendant Slote (which it was), and relied upon by the current HCSD Board, the public, Plaintiff, and the courts, and thus to subvert the interests of justice, and due process rights of the public, and of Plaintiff, in seeking to expose and correct such fraud by Dingman, as well as intending that it would assist Slote and Dingman in the scheme to wrongfully overpay Dingman and assist him in the plan to defraud the HCSD. Hanson also assisted, aided, abetted, and agreed to participate in (and ratify), the improper and illegal conduct of Defendants Robert Puckett Sr. and Robert Winston as set forth in paragraph 9-9d (and the footnotes thereof), above.

70k. After the assumption of office of the Board Defendants on December 4, 2015, and on several occasions thereafter, Hanson and Winston arranged, agreed, aided, and assisted each other in the creation of false and fraudulent "legal services agreements", which they then independently and/or jointly ratified, for use by the HCSD, Board Defendants, Dingman, and Goff, which purported to permit Winston to act on behalf of the HCSD, and/or any Director, officer, or employee thereof, without any formal approval by the HCSD Board as to any specific action to be taken by Winston in any legal matter, or even as to any particular case or event in any court or "administrative proceeding"[119]. Winston and Hanson also attempted to create an additional provision in some of the documents also effectively annulling Government Code §61045 to the extent that of granting the "President" of the HCSD authority to pay Winston without further Board action. At the time they created the purported "Legal Services Agreement(s)", and related resolutions, minutes, and other documents, both Hanson and Winston knew that Hanson was without any lawful authority to do so, that Winston was prohibited by law from exercising such self-serving authority, and their intent was to fraudulently and wrongfully use the created documents as justification for later improper, unethical, and legally void "amendments" and "reaffirmations" of those purported agreements by the HCSD, Winston, and Board Defendants; to wrongfully divert public funds to Winston; and, to impermissibly and

[119] Such a purported assignment would be an illegal and wrongful (and thus void) delegation of Legislative authority by the Board.

unlawfully delegate Legislative authority[120] to Winston in order to permit Winston to appear without formal Board action in numerous and various other legal proceedings (including private legal matters of Hanson's) - including the courts of appeal; and, to appear in court on behalf of independent contractors to the HCSD that were wrongfully "indemnified" by the HCSD and/or the Board Defendants in violation of Government Code 995[121] (and without provision for indemnification by the HCSD appearing in any contract with those independent contractors), and all in violation of the HCSD's own Bylaws. Plaintiff avers that the purported contract(s) between Winston, the HCSD, and/or Board Defendants, Dingman, Goff, Bowles, and/or any other employee or agent of the HCSD, are void as a matter of law, and that all others arising therefrom, actions taken to "affirm", "reaffirm", and/or modify any contracts and/or related documents are also unlawful and void, as are all actions by any Defendant purportedly attributed to any reliance thereon.

701. Hanson agreed with, assisted, adopted, aided, abetted, encouraged, and ratified the common plan by Winston, the Board Defendants, Bowles, Dingman, and Goff, to operate the HCSD in violation of Federal, State, and local laws as set forth herein[122], to: create and institute policies, customs, and practices violative of the Brown Act and California Public Records Act (CPRA), and to act on those policies by wrongfully and illegally failing to respond to CPRA requests by Plaintiff and the public (many of which requests related directly to the illegal, ultra

[120] By purportedly allowing Winston to "self-create" contracts with his firm and the HCSD for legal services without any review or approval by the Board, nor any cap on expenditures for any matter that he thereafter "self-assigned" to, etc. See *People's Fed. Sav. & Loan Ass'n v. State Franchise Tax Bd.* (1952) 110 Cal. App. 2d 696, 700; *Birkenfeld v. City of Berkeley* (1976) 17 Cal. 3d 129, 167; *Wilke & Holzheiser, Inc. v. Dep't of Alcoholic Beverage Control* (1966) 65 Cal. 2d 349, 369, etc.

[121] Or sometimes, not even formally indemnified at all. Instead, Winston and the Board Defendants simply collaborated to have Winston begin filing papers on behalf of whomever it was.

[122] This included the plan to have Winston (without any lawfully-granted authority) "ghost write" numerous purportedly official documents of the HCSD, along with various notices, resolutions, bylaws, declarations, letters, and other documents (including some supposedly written by Hanson in her former position of authority as an HCSD Director) in order to submit those (false) records/documents to the HCSD Board, the courts, and to others as supposed official public records, and to have the Board Defendants wrongfully and improperly "reaffirm" and/or otherwise ratify those false records/documents. Hanson also often ratified, adopted, abetted, and aided the wrongful acts of her co-conspirators in furtherance of the common goals of creating false public records, violating the laws, and Plaintiff's constitutional rights, by direct signature of the numerous false and/or fraudulent documents thus created, and forgery of the signature of Sharrel Barnes (former HCSD vice-president), among other means. Hanson also created, signed, and/or certified these purportedly official documents without ever even bringing them to an allegedly properly-held meeting of the HCSD Board, until after she had finished their creation, and was passing them off falsely as "official records". Hanson also assisted, aided, abetted, ratified, and agreed to participate in, the improper and illegal conduct of Defendants Robert Puckett Sr. and Robert Winston as set forth in paragraph 9-9d (and the footnotes thereof), above.

vires, and/or unethical acts of the Defendants herein); undercharge certain customers; wrongfully waive fees and/or charges for certain customers; fail to impose and collect the "standby fee" as to each parcel in the District as provided by law and mandated by the HCSD Bylaws and prior Resolution of the HCSD Board; fail to generally impose and collect sufficient fees and charges to maintain and replace/improve the HCSD facilities as required by law[123] - all in order to financially benefit herself, her acquaintances, and co-conspirators.  By so doing, in relation to those sections of the Bylaws relating to voter approval of fee waivers, reclassifications of customers, rate reductions, etc, Hanson's intent was also to deprive Plaintiff, and the other electors within the District, of the right to vote as provided in the HCSD Bylaws - thus violating 42 USC §1985.

70m.  Beginning after the Board Defendants' assumption of office on December 4, 2015, Hanson, in order to further the various wrongful acts and goals of herself and her co-conspirators, further conspired with the HCSD, Board Defendants, and Winston to *ex post facto* and unilaterally purportedly approve[124] Winston's intervention in several Siskiyou County Superior Court matters being prosecuted by Plaintiff and other persons, as well as matters being heard in the Third District Court of Appeals of California by other persons, all which matters Winston and Hanson had failed to obtain any BOD approval for prior to Winston's appearing on behalf of the HCSD[125], and/or Directors and/or employees and contractors thereof.  The goal of this plan was to wrongfully and corruptly divert additional public funds from the HCSD to the benefit of Winston and Hanson, and to harass, annoy, oppress, and deprive Plaintiff (and select other persons) of his constitutional and statutory rights, insofar as Plaintiff sought relief from, and enforcement concerning, his complaints and grievances as submitted to the HCSD and other

---

[123] See California Water Code, sections 31007 and 71616.

[124] Hanson did this after Winston crafted various purported resolutions, contracts, and other documents granting her such authority, which she then filled in, certified herself, and placed into the HCSD's records as a purported lawful resolution of the HCSD (the resolutions themselves also failed to abide by Govt. Code 61045, among other defects) - in turn to be wrongfully utilized by Defendants Slote and Puckett to ratify, encourage, aid, and abet Winston's improper and wrongful appearances in multiple ongoing legal matters before the Superior Court, and Courts of Appeal.  Plaintiff is informed and believes and on that basis alleges that no actual vote by the Board Defendants was ever taken to grant Hanson such unilateral authority, particularly after her leaving of office, and that she had no authority at any time to speak as to the intent of any other Board member (past or present).

[125] Each of the appearances without BOD approval constituted a violation of Business and Professions Code section 6104.  Hanson ratified a "Resolution" drafted and submitted to her by Winston that purported to grant Hanson full authority as "President" to appoint to, and pay Winston for, services connected with "any administrative or court action" all "with or without further action by the Board".  The resolution only contains writing by, and the signature of Hanson, and is not attested to by any other Board member or Officer.  Such a provision violates Government Code Section 61045, and is thus void.

government agencies, and in various courts of law. The usurpation of authority by Hanson, and its utilization as a justification by Winston to conduct wrongful acts in reliance thereon, is ongoing, with the participation and ratification by the Board Defendants in each of the falsely created and inserted documents and records via various "ratifications" and other resolutions, purported contracts, and other documents ghostwritten by Winston, provided ex parte to the Board Defendants, and then purportedly approved at various wrongfully-conducted, and improperly/insufficiently agendized meetings. During this time, Hanson and Winston specifically conspired to wrongfully conceal records of these acts from the Public, and Plaintiff, in violation of the CPRA - in spite of multiple requests for those documents and records of the communications relating thereto.

**XIVd. DEFENDANT DUKE MARTIN (former John Doe #4), 2125 Copco Rd., P.O. Box 431, Hornbrook, CA 96044 (530) 475-0639.**

70n. At all times material, Defendant Duke Martin ("Martin"), who takes the place of former John Doe #5 herein, was a resident of Siskiyou County, a water customer of the HCSD (and subject to its Bylaws), and owned and operated a business, Crossroads Mini Storage, on his personally-owned and commercially-zoned property within the boundaries of the HCSD (upon which, in addition to the business, sits a rental house, and an occupied fifth-wheel travel trailer), as well as an adjoining residential property containing a rental house which also receives water service from the HCSD via a separate service connection, and sits within its boundaries.

70o. At all times material, Defendant Martin received water services from the HCSD to his commercial property, the rental house thereon, the fifth wheel, and the adjoining property containing another rental unit. Martin had caused the tenants in both rental houses to put the water bills in their own names, and while the rental unit on the commercial property was current, no fee was being paid for the fifth wheel as required by the HCSD Bylaws (at the rate of $45.00 per month), Martin refused to pay the commercial property charges ($225.00 per month) assessed against him by the HCSD pursuant to the Bylaws (and was many months late in so paying as of December 4, 2015, and ongoingly), while the second parcel with the rental had a late owing account totaling about $500 as of December 4, 2015. The Acting General Manager of the HCSD had noticed the renter on the second, residential property of the overdue account, and, having no received no proper response or payment, "locked out" the meter thereto in May of 2014. Such action not only imposed additional fees on that account per the HCSD Bylaws, but also triggered the duty by Martin to pay the bill to his rental property to reestablish service thereto, and to then place the account for that meter and residence into his own name pursuant to

the provisions of the HCSD Bylaws at Section A-9(14), and Water Code section 71618, and Martin was noticed by the Acting General Manger, and the prior HCSD Secretary, of that duty, of his past due commercial charges, and of the intent of the HCSD to lien his property for failing to pay his bills.

70p. Beginning sometime in December of 2015, and continuing thereafter, Defendant Martin wrongfully and *ex parte* corruptly influenced, and conspired with, Defendant HCSD, Julie Bowles, Clint Dingman, and the Board Defendants to have his water fees reduced from the commercial rate to the residential rate (or even less), to waive the fees required under the bylaws for the second-residence fifth-wheel on his property, to avoid the requirement of annual inspections/certifications of his cross-check device[126], and to have all of his past due fees and charges, as well as those attributed to the renter on the second parcel, which he lawfully owed to the HCSD (totaling some thousands of dollars) erased - all outside of any public meeting of the HCSD Board, or any due process of law, or even any notification to the public, or to Plaintiff. This being a successful attempt by Martin, Bowles, HCSD, Dingman, and the Board Defendants to willfully interfere with and impede Plaintiff's statutory and Constitutional rights to be informed of, and to monitor in the operation and function of the HCSD, to debate and speak on matters of public importance, to prevent corrupt acts by public officers/officials, to monitor and maintain the fiscal health of the HCSD, and to vote concerning issues of fees, waivers, reclassifications, and other related items as provided in the HCSD Bylaws. By so doing, in relation to those sections of the Bylaws relating to voter approval of fee waivers, reclassifications of customers, rate reductions, etc, Martin's intent was also to deprive Plaintiff, and the other electors within the District, of the right to vote as provided in the HCSD Bylaws - thus violating 42 USC §1985.

70q. The Board Defendants and Bowles thereafter, as part of the conspiracy with Martin and in furtherance of the wrongful common goal that Martin should not pay the commercial rate, his duly assessed, billed, and pending, charges, late fees, and other amounts as dictated by the Bylaws as to each and all of his properties lying within the District, and thus deprive the HCSD of its due funds, willfully acted to conceal from the Public and Plaintiff, all of their actions taken in regards to Martin's fees and charges, by refusing to answer any questions by Plaintiff or the public concerning billing of HCSD customers, refusing to provide copies of

[126] A cross-check device is required by state law to be installed on water lines to parcels that have a well, or other water source. It prevents inadvertent contamination of the District's supply system. There is a fee for annual inspection and certification of the device (which is also required by law).

relevant documents when asked to do so, by refusing to permit Plaintiff, and/or the Public any access to the billing and payment records of the HCSD upon written demand, and (in conspiracy with, and with the aid, assistance, and ratification of Hanson) by wrongfully destroying public records of their acts and Martin's former billing - all in violation of the California Public Records Act, and Plaintiff's statutory and Constitutional rights.

70r. The conspiracy regarding the gifting of public funds, and the denial and infringement of Plaintiff's statutory and Constitutional rights, between Defendant Duke Martin, and Defendants Bowles and Hanson, constituted a corrupt conspiracy with public officials and a public entity (the HCSD) such that Martin, by relying upon the authority and office of the Board Defendants and Bowles to commit these wrongs, took on the mantle of a "state agent" for the purposes of making out claims against him under Title 42, Sections 1983 and 1985 of the Untied States Code, in addition to any other statutory and/or tort claims Plaintiff may have.

**XIVe. DEFENDANT JAMES SOARES (former John Doe #5), 15624 Hornbrook Rd, Hornbrook, CA 96044**

70s. At all times material Defendant James Soares ("Soares") was an individual residing in the community of Hornbrook, Siskiyou County, California and a citizen thereof, was (and is) also a resident of the HCSD, and maintains at least one rental within the boundaries of the HCSD[127].

70t. As a result of an agreement to disregard the HCSD Bylaws and applicable State law, Soares, in conspiracy with the HCSD, Bowles, and the Board Defendants, has continually received an improper gift of public funds from the HCSD, Board Defendants, and Bowles since December 4, 2015, and every month thereafter, by their reducing the fees and charges for Soares' properties to less than the HCSD Bylaws-mandated residential fee per month; by failing to regularly and properly read water meters controlled by Soares; by wrongfully, and without due process of law, waiving the fee for the second dwelling at his residence (a trailer); and, by waiving the requirement that Soares have his cross-check device inspected and certified annually as required by state law and the HCSD Bylaws.

70u. Soares, beginning on or about December 4, 2015, and continuing through the current date, corruptly conspired with, and corruptly influenced the Board Defendants, the HCSD, and

[127] Soares, although noticed by the HCSD, failed and refused to comply with the HCSD Bylaws, as well as Government Code 61100 and Water Code 71618, by not putting the water service for his rental into his own name after prior tenants left without paying their past due bill. In addition to his other bases for claims, Plaintiff has standing to obtain an injunction, and civil action for Soares to pay any fees lost by the HCSD, as to Soares' failure to obey the HCSD Bylaws pursuant to Section A-9(26) thereof.

Bowles, outside of agendized, public, and lawfully-held meetings of the HCSD Board, to arrange for (and for the official billings of the HCSD to reflect) the wrongfully reduced, and/or waived water and other fees due the HCSD for his personal residence within the District, and for his rental house; for improper "refunds" of fees; and, further conspired with the HCSD, Bowles, and the Board Defendants to wrongfully keep the account for his rental house in the name of his tenants in violation of the HCSD Bylaws at Section A-9(14), and Water Code section 71618, after having been previously notified by the HCSD of the determination that he must place the rental water service into his own name pursuant to those sections.

70v. Action by this Plaintiff against Soares, the HCSD, Bowles, and the Board Defendants concerning the corruption of official power resulting in the gift of public funds is appropriate under California Code of Civil Procedure Sections 526a, 1021.5, and 1084-85, in addition to other theories of judicial relief, and/or liability to Plaintiff individually. The conspiracy between Bowles, the Board Defendants, Soares, and the HCSD to gift public funds to Soares, to waste public funds as outlined above, and to violate State and local laws, also acted to violate Plaintiff's rights to: due process of law; the equal protection of the laws; right to free speech and to full access and opportunity for participation in HCSD governance and Board meetings as provided by law[128]; to be informed about, and to have his elected officials all fully consider and decide issues in a public forum as required by law, and to follow the laws in exercising their duties; to have such meetings in a public manner that is not corrupt, not unlawful, not held *ex parte*, and/or improperly influenced; adhesion by his elected officials and/or their agents to the laws prohibiting the unlawful gifting of public funds and resources; and, Plaintiff's right to petition (by failing to notify, and actively concealing the plans and conduct above from the Public, and Plaintiff, and particularly as to the *ex-parte* meetings between the Board Defendants and Soares and/or of the planned gift of funds so that he might challenge those decisions in court and/or as provided by law); suppressing due and proper notice of the meeting and planned action; and, other acts which will be detailed upon further discovery.

70w. Plaintiff does hereby allege that the entering into of the conspiracy between Soares, Defendant Bowles, the HCSD, and the Board Defendants as set forth herein, and the affirmative acts in furtherance thereof - particularly those in violation of the HCSD Bylaws and State law - regarding the gifting of public funds, misuse and corruption of official power, and the resulting

[128] This includes the rightful participation of the Public and Plaintiff, who were deliberately excluded by the Board Defendants, Soares, and Bowles from any discussion and/or decision concerning the gift of funds to the HCBC.

denial and infringement of Plaintiff's rights, constituted a corrupt conspiracy with public officials and a public entity (the HCSD) such that Soares took on the mantle of a state agent for the purposes of making out claims against them under Title 42, Sections 1983, and 1985[129] of the Untied States Code for violations of rights as set forth herein.

## XV. DEFENDANT JOHN DOES

71. At all times material, remaining defendant John Does 6-20 were board members, policy makers, employees, independent contractors, instructors, rule enforcers, assistants, co-conspirators, confidants, beneficiaries of the acts of, beneficiaries of violations of the HCSD Bylaws by any Defendant, and otherwise actors and/or agents of the HCSD, the named natural person defendants, the Board Defendants, and/or of each other; as well as executors, recipients of water services by the HCSD, and/or customers of the HCSD, as well as being the beneficiaries of improper gifts of public funds in the form of wrongfully and improperly: unassessed, waived, unimposed, reduced, altered, avoided, and/or uncollected due fees, assessments and charges, of the HCSD.

72. The true names and capacities of these John Doe defendants is uncertain to Plaintiff at this time, but will be substituted by amendment to this Complaint as they are definitely determined and/or discovered. Defendant John Does are alleged to have acted in concert and/or cooperation with the other named defendants in promulgating, enforcing, administering, and/or assisting in the administration of the rules, regulations, policies, and/or conduct complained of herein, and/or to have agreed, acted, aided, abetted, encouraged, and conspired with each other and/or the named defendants to acquire improper and illegal gifts of public funds, to violate Federal, State and/or local laws, and to deprive Plaintiff of his Constitutional and/or statutory rights, as well as participated in, and/or ratified the tortuous conduct of the Board Defendants, Winston, Bowles, Dingman, Winston, Hanson, the HCSD, and/or Goff, and committed other acts in furtherance of the conspiracy as set forth in this Complaint, and which await discovery.

## XVI. DUTY OF HCSD BOARD MEMBERS, CONTRACTORS, AND EMPLOYEES

73. At all times material, Defendants, each had a duty to the District, and to the residents and property owners of the District, to follow and enforce all Federal[130], State, and Local laws[131], - particularly relating to the preservation, safeguarding, testing, and conservation of the source of

---

[129] Insofar as the acts of Soares, HCSD, Bowles, and Board Defendants were willfully undertaken to circumvent the right of Plaintiff, and the other electors of the District to vote on such matters as specifically provided in the HCSD Bylaws.
[130] In this context, the Safe Drinking Water Act, 42 USC 300f, and the Clean Water Act.
[131] That is, the HCSD Bylaws. See California Government Code 61064(a).

the HCSD's water, and the treatment and distribution of the water to protect the health and safety of the water consumers of the District, including Plaintiff. Further, the duty to follow all laws applicable to healthful and safe drinking water production, treatment, and distribution encompassed the provision for ongoing maintenance and operation of the water treatment facilities and distribution system of the HCSD[132], and included the proper training and supervision of all contractors and employees involved in any duties related to those operations of and by the HCSD, as well as the provision of proper and adequate funding for maintenance and improvements to the water production, treatment, and distribution systems of the HCSD (and as required by State law).

74. The duty to follow all laws also applies to the duty of the agency and State-actor Defendants to refrain from violating the rights of the public, the residents, electors, customers, taxpayers, property owners, ratepayers, Plaintiff, and employees of the HCSD, both in the individual capacity of the Board Defendants, and also in their official capacity, insofar as they acted as the decision-makers for the HCSD by creating, enacting, and ratifying the purported policies, customs, and practices effected and imposed by them which are complained of herein, including, but not limited to; planning to, and actually having, improperly-agendized and improperly-noticed (and including non- noticed and agendized) meetings; taking action on items that were improperly and/or incompletely described on agendas, or not described at all; failing to conform their conduct, and operations of the HCSD to various mandates of State law relating to public meeting laws, ethical laws, and other statutes; acting to retaliate against employees (including fellow Board members, and Plaintiff in his official, and individual, capacities) in violation of law and/or public policy; making improper gifts of public funds; acting in an ethically-conflicted manner, and/or a manner giving at least the appearance of ethical conflict; failing to recuse themselves from matters in which they have a legal, moral, and/or ethical conflict of interest; and, diverting public funds to their own use. The HCSD, Clint Dingman, Ernie Goff, and the Board Defendants specifically failed in their affirmative duty to obey the laws, and to not assist others in violating the laws, and knowingly permitted, conspired with, aided, and abetted each other, to maintain, and operate, the HCSD water facilities in a manner that was contrary to federal and state law.

75. At all times material, and by virtue of their offices as public employees of the HCSD, each of the Directors of the HCSD (the "Board Defendants"), as well as Defendant Bowles as

[132] And thus this duty applied to Defendants Dingman and Goff as well.

Bookkeeper, and/or Treasurer, owed a fiduciary duty[133] to the District, and to each property owner and water customer in the District[134] to: maintain the District's finances in a solvent and efficient manner; to correctly and completely bill for and collect all charges and fees due to the District[135] as well as those fees and charges previously billed but unpaid; to apply for and obtain grants and other funding available for the maintenance, upgrading and repair of the Districts facilities[136], wells, and system; to establish, set, and collect, rates, charges, and fees sufficient for the ongoing proper operations, maintenance, repair, and expansion of the HCSD's facilities, wells, and system; and, to maintain the entire water production, treatment, and distribution system in good repair, all in a manner that would provide for the necessary upgrades and new facilities as required by law.

76. Plaintiff contends that as acting as set forth herein, and ongoingly, that the HCSD and Board Defendants have acted in breach of their fiduciary duties to the District (and to Plaintiff), and that the Board Defendants, with the aid and assistance of Defendant Julie Bowles[137] have corruptly and improperly reduced, waived, refunded, and/or or failed to assess various properly-due HCSD fees and charges for certain customers *ultra vires*[138], outside of any public meetings, and/or without voter approval as required by the HCSD Bylaws, and in a manner that contravenes the mandates of California Water Code sections 31007, 71614, and 71616.

## XVII. OVERVIEW OF ALLEGATIONS; AGENCY.

77. This case is primarily a Federal question, civil rights, and state common law,

---

[133] The fiduciary duty of the Directors of the HCSD as a special district providing water is additionally enshrined in State law at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. The HCSD Bylaws provides that qualified persons may bring an action on behalf of that fiduciary duty at Section A-9(26). The Bylaws also provide that charges may not be waived, and rates may not be reduced from those set in the Bylaws without voter approval, and that any Director(s) attempting to do so are personally liable for the lost income to the District (Bylaws, p. 10, Section A-9(1); p. 23-25, Section 1-3.010).

[134] See HCSD Bylaws at A-9(26); Water Code sections 31007, and 71616.

[135] Including the $39 per parcel "standby fee" previously imposed in the 1996 Bylaws, and ratified as Section A-9(13) in the April 18, 2014 Bylaws. Plaintiff specifically alleges that the Board Defendants during the period of December 4, 2015 through the current date, and ongoingly, took improper and ex parte/ultra vires action(s) to nullify, and/or failed to take necessary official action to initiate, the collection of the standby fee. The failure to assure the collection of the fee was in order to financially benefit themselves and their acquaintances as property owners within the District who would normally be subject to the fee.

[136] See also HCSD Bylaws at Section A-7.

[137] As the Bookkeeper, Bowles was (and is) able to generate improper under-billing and other documents for select customers at the instruction of the Board Defendants.

[138] That is, one or more of the Board Defendants acted individually, and outside of any lawful process, to change the billing for certain favored customers.

statutory, and tort-claims action arising from various unconstitutional, unlawful, and/or wrongful actions taken by the named Defendants in their individual, and official capacities (as applicable), in violation of Plaintiff Gifford's First, Fourth, and Fourteenth Amendment rights, as well as in violation of Federal law[139], State law, the Hornbrook Community Services District ("HCSD") Bylaws, and common law. The Supreme Court has stated that "the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press." (*Mine Workers v. Illinois Bar Assn.* (1967) 389 U.S. 217, 222; see also *Thomas v. Collins* (1945) 323 U.S. 516, 530; *De Jonge v. Oregon* (1937) 299 U.S. 353, 364). The primary thrust of this action is that these defendants - particularly the "Board Defendants"[140], as part of an ongoing plan to manage the tiny[141] HCSD as a sort of private fiefdom, spoils system, and cash cow[142], acted to wrongfully stifle, deny, suppress, and act against, Plaintiff Gifford's Due Process and Equal Protection rights by generally ignoring statutory and Constitutional mandates concerning public business of the HCSD, meetings of the Board of Directors of the HCSD, speech and petitioning (and attempted petitioning), freedom of assembly and/or association, and activity concerning protected conduct and matters of public importance by the public and Plaintiff, and a general failure while operating the HCSD to follow the laws.

---

139 Insofar as various of the Defendants acted to violate the Clean Water Act ("CWA"), the Safe Drinking Water Act ("SDWA"), various mandatory provisions of the Acts, related laws, and administrative (EPA) rules concerning to staffing and operation of a public water system (as well as State implementation laws of those things).

140 HCSD Directors Patricia Slote, Robert Puckett, Sr., Lee Buckley, and Melissa Peterson. Purportedly official acts and actions taken by these persons under color of law and their authority as Directors gives rise to claims against the "HCSD", as the Board Defendants represented their actions as officially done by the HCSD, and/or pursuant to its policies, customs, and practices (or new ones they created themselves).

141 The HCSD serves about 130 water customers, covers about a square mile, and lies about 6 miles south of the Oregon border in an extremely rural area. The HCSD also maintains the fire hydrants in town. The HCSD has no offices, no staff (other than Defendant Clint Dingman), no website, and only a PO Box.

142 After ten years of observation, it appears to Plaintiff that the goal of most of the locals who get on the Board is to maintain the water rates at ruinously low levels (now only $39/mo with the first 12K gallons free, and only $1.75 per 1K gallons after that), with <u>no meter reading whatever for some 6 months of the year</u>), to prevent any costs/expenditures for upgrades, maintenance, or expansion that would require even a small tax, to direct what projects and few jobs there are to their friends and acquaintances, and to wrongfully give favored customers discounts, fee waivers, etc (while many locals jockey for those discounts, waivers, and "free water"; Defendants HCBC, and Crittenden, are such customers). The HCSD's own data has shown for many years that the cost of producing water can be often up to ~$5 per 1K gallons - and not adjusting for inflation. The HCSD plant and facilities are also woefully obsolete.

78. Beginning on or about December 4, 2015, through and including the current date, and ongoingly, the Board Defendants[143] along with the aid, assistance, agreement, encouragement, and/or ratification of the other named defendants, as detailed herein, "called" and/or engaged in meetings as the Board of the HCSD (or simply exercising the powers thereof in an *ultra vires* manner), but in violation of multiple provisions of the Brown Act, as well as the specific requirements of their own Bylaws, and then and there also improperly and wrongfully took action and implemented policies and procedures in violation of the Bylaws of the District, and State laws[144], and public policy, - and often in a manner that was specifically calculated to obstruct and deny Plaintiff and the public, the rights to assemble, petition, and/or speech on matters of public concern, to vote, and other actions which willfully or recklessly violated the First, Fourth, and Fourteenth Amendment rights of the Plaintiff, and/or deprived him of those rights, as detailed herein.

79. The Board Defendants have willfully and wrongfully failed to timely and consistently appoint a qualified General Manager[145] for the District as required by the Federal Safe Drinking Water Act, the Government Code and Health and Safety Code of the State of California, and the HCSD Bylaws; and the corrupt, wrongful, manipulation of unqualified Defendant Clint Dingman as a "puppet" General Manager by the Board Defendants (themselves unqualified to direct or control the operation of water treatment and/or Distribution facilities), has directly threatened and impaired Plaintiff's property interests, as well as his health and safety insofar as he consumes drinking water provided by the District (was thus a nuisance per se), and also deprived Plaintiff of the equal protection of the laws enjoyed by other residents, public officers, electors, and property owners within special districts, and taxpayer-citizens.

80. Beginning on December 4, 2015, and ongoingly the Board Defendants, with the assistance of Defendants Julie Bowles and Clint Dingman, agreed, conspired, and acted, to wrongfully, improperly, and/or illegally waive various fees and charges (as well as proper rates)

---

[143] Plaintiff is informed and believes that some of the supposedly official acts, including assignment of executive, and/or *ex parte/ultra vires* power to Puckett and/or Slote, authorization to Winston for various duties and acts relating to "legal assistance", and other matters, were actually unilaterally taken by Slote and/or Puckett at Winston's instruction, urging, and assistance, outside of any meetings - for the purpose of concealing such unilateral acts from the public, and Plaintiff, and denying them their associated rights. Such acts would also specifically violate the provisions of the Brown Act, and Govt. Code section 61045.

[144] Notably Government Code sections 61045 and 1090, the Health and Safety Code, and the Safe Drinking Water Act, among others.

[145] As required by Government Code section 61050. The General Manager is the Chief Executive branch officer of the District as provided by law (see also Govt Code section 61051).

to certain of the HCSD customers[146], and to fail to assess properly due fees and charges to certain HCSD customers. The Board Defendants also colluded and acted to: operate the HCSD's water treatment and distribution center without properly trained and licensed staff; wrongfully permit the illegal, improper, uncertified, and unsafe "repair" of an HCSD fire hydrant by CalFire without any required inspection, engineering, or prior approval; wrongfully, illegally, and in violation of the HCSD Bylaws, held multiple, purportedly public meetings (about two each month), the agendas for which contained deceptive and/or inadequately/inaccurately-described items, or which gave no actual notice of proposed actions to be taken by the Board Defendants; wrongfully, illegally, and in violation of the HCSD Bylaws, agreed to, and took action forbidden by state law and/or the Bylaws; wrongfully act to disenfranchise the property owners, residents, and electors of the District (including Plaintiff) by taking action that actually required voter approval, and by attempting to nullify voter approval requirements as to other actions[147]; agreeing and acting to illegally and wrongfully backdate contracts and other documents[148] relating to Defendants Winston and/or Kirsher, Winston, & Boston, L.C.; illegally, wrongfully, and in violation of the HCSD Bylaws assign Defendant Puckett to single-handedly act in certain matters in a manner violating Government Code section 61045 by signing contracts, appointing Winston and/or Kirsher, Winston, & Boston, L.C.to various legal and/or other matters without Board approval; illegally, wrongfully, and in violation of the HCSD Bylaws attempting to legitimize and/or "reaffirm" previous improper, *ultra vires*, and/or void acts of the prior Board of the HCSD at the instruction of, and with the collusion, agreement, encouragement and aid of, Defendant Winston; fail to impose, and collect, sufficient fees and charges in violation of Water Code Sections 31007 and 71616; and, to wrongfully prevent the supervision and inspection of the water production and treatment facilities (and Defendant Dingman as an employee of the HCSD) by the Public, and Plaintiff - meanwhile permitting Defendants Slote and/or Puckett to

---

[146] The Board Defendants, and Dingman, in furtherance of this conspiracy, also distributed to new customers, a false application for water services which was other than that previously created by the General Manager, and which wrongfully reduced water fees and charges due the HCSD in violation of State law, and the HCSD Bylaws. All of these acts deprived Plaintiff of his right to vote on those topics as provided by the Bylaws.

[147] This occurred both at purportedly public meetings, and outside of public meetings - when the Board Defendants, Winston, Bowles, and Dingman would have meetings (or a series of communications) dealing with HCSD business in violation of the Brown Act, in addition to any other laws, and/or the HCSD Bylaws.

[148] Plaintiff also alleges such contracts, resolutions relating thereto, and other documents were created by Defendant Winston (without formal action by, or instruction from, the HCSD Board to do so) as a result of conspiracy with Slote and Puckett to do so, and that such actions violate Govt. Code 1090, the Brown Act, and the Rules of Professional Conduct, and the HCSD Bylaws, as well as other provisions of law.

wrongfully and unlawfully act as supervisor to Clint Dingman[149], the Systems Operator, and as the *de facto* executive administrator of HCSD administration, facilities, and system, in violation of the Separation of Powers doctrine, and State laws prohibiting such conduct (and doing so absent due process of law). These acts harmed Plaintiff by rendering the water produced by the HCSD potentially unsafe and unmonitored, by wasting taxpayer funds, by preventing the proper and legally-required upgrades and repairs to the HCSD system, and by starving the HCSD of its due and proper revenue.

81. During the same period, the Board Defendants, along with Defendants Robert Winston, Kirsher, Winston, & Boston, L.C., Ernest "Ernie" Goff, and Julie Bowles, agreed, conspired, and acted to wrongfully provide indemnification and other expenses to Goff and Bowles, who are independent contractors, and not public employees of the HCSD, when such indemnification and other expense was not any term of the contract(s) for those persons (and/or their businesses) with the HCSD. Finally, the Board Defendants, and Defendant Winston, agreed and conspired to have Winston appear in various (rather numerous) legal actions in Siskiyou County Court, purportedly on behalf of the HCSD, the Board Defendants, and/or various employees and/or contractors, without any valid contract, proper public notice and/or hearings, in violation of the Brown Act, Government Code 1090, and the Rules of Professional Conduct, in violation of the Public Contracts Code and/or the HCSD Bylaws, and without any valid appointment thereto by the HCSD Board of Directors in compliance with Government Code 61045, and/or the specific requirements of the HCSD Bylaws dealing with contracting for services at Section A-2(8) thereof[150].

82. In undertaking the foregoing wrongful conduct, the Board Defendants engaged the agreement, assistance, and cooperation of Defendants Julie Bowles, Robert Winston, Clint Dingman, Ernest Goff, and Kirsher, Winston & Boston, L.C., in: planning and conducting illegal meetings[151] and purportedly official acts of the HCSD that were actually wrongful, illegal,

---

[149] The Board Defendants, Bowles, and Dingman also conspired to pay Dingman excess hours above those permitted by his contract with the HCSD, and at the rate of $15 per hour, rather than the $10 provided for in that contract - all without any formal Board action, or other lawful authorization. The Board Defendants further conspired (outside of public meetings or process) to have Slote wrongfully and without lawful authority, generate a "report" justifying Dingman's pay in excess of contract, and a waiver executed by Slote (purportedly on behalf of the HCSD) and Dingman, about the wrongful pay and hours increases to Dingman.

[150] To the extent Plaintiff references specific sections of the Bylaws, and/or to the extent the Court may find it necessary, Plaintiff incorporates those relevant sections herein.

[151] Including series, "spoke and wheel", "daisy chain", and other sorts of meetings as described in the Brown Act, and by the California Attorney General in his opinions and publications relating thereto.

improper, and/or *ultra vires*; improperly reducing and waiving fees, past fees, late fees, and/or other due and proper charges for certain customers[152]; failing to impose and collect properly due water fees[153]; failing to themselves pay properly due water fees; drafting and attempting to wrongfully implement various resolutions, minutes, letters, notices, and other purportedly official documents of the HCSD; improperly ratifying allegedly official HCSD actions in the face of conflicts of interest and/or in a manner contrary to law and the Bylaws of the HCSD; improperly (and in some cases, illegally - see Government Code section 1090) entering into contracts purportedly on behalf of the HCSD[154]; and/or, generally taking actions with the aim of illegally consolidating all legislative and administrative power into the hands of HCSD Board President, (see Government Code sections 61040, 61045, 61050, 61052, and 61053, as well as Water Code section 71340, and 71362).

83. During the period beginning on or about December 4, 2015, and continuing through April 20, 2016, and ongoingly, the Board Defendants, along with Defendants Winston, Kirsher, Winston, & Boston, L.C., Bowles, and Dingman, also acted, individually, and/or in concert, with the common aim to deny access by Plaintiff and others to public records subject to disclosure under the California Public Records Act ("CPRA"), and other applicable laws[155].

84. Each of the Defendants, in acting to violate federal and/or state law, and/or the HCSD Bylaws as set forth herein, in addition to any other statutory basis for their violations, and common-law/tort violations as to Plaintiff, have thereby created and maintained a public and private nuisance *per se,* as defined by the HCSD Bylaws, Section A-9(26). Defendants and their actions in regards to such violations are also therefore in violation of California Civil Code

[152] Plaintiff has described this process herein as it relates to Defendants Duke Martin, Steven Crittenden and Hornbrook Community Bible Church, Inc., but believes there are additional parties that will be named after some rudimentary discovery of the HCSD's Billing records - particularly customers of commercial use types, and/or mixed-use commercially zoned property, as is the case with Defendant Duke Martin. Such acts also deliberately repressed, and denied, the right of Plaintiff and other electors within the District to vote on such actions as required by the HCSD Bylaws.

[153] This includes by the process of willfully failing to read the water meters and charge customers the charges for water they used as those charges are set forth in the Bylaws, and HCSD Resolution #14-025. This act applies to Defendant Robert Puckett Sr. herein as alleged, but Plaintiff also anticipates additional parties will be identified after discovery commences. Also, some commercial customers were not charged the proper rates, and/or some customers were not charged for multiple units using water from one meter. (Bylaws, Sec.A-9(1)).)

[154] And did so without soliciting bids, and/or "shopping for the best deal" - doing so absent any factual findings or otherwise - as required by the Public Contracts Code, the HCSD Bylaws, and/or their fiduciary duty to the District.

[155] This is also a due process violation in that the HCSD and Board Defendants failed to follow the notice and/or other requirements of the CPRA, and/or secreted, and/or destroyed, public records to frustrate their disclosure to Plaintiff and the Public - all without proper public Board action/authorization.

Section 3479 and 3480.

85. The Board Defendants, in acting as set forth herein, and thereby also the HCSD as an entity insofar as they claim to be acting on its behalf, are alleged to have violated the provisions of California Government Code Sections 1090, 61000, et seq, and 87100; the Public Records Act; Water Code Sections 71000, et seq - particularly Section 71616, and other Federal, State, and Local laws as set forth herein under the headings associated with each named Defendant, and in the "counts" of the First and Second Claims for Relief below. In so doing, they have necessarily breached their fiduciary and other duties to the property owners, residents, electors, taxpayer, and water consumers of the District (and including Plaintiff), as well as injured the property and economic viability of the District, and caused injury to, and/or waste of, its financial resources[156]. Additionally, the water production and distribution facilities of the HCSD have become severely decayed due to lack of proper funding and expenses on maintenance, general (and often willful) neglect, and the various acts of the Defendants as described herein, such that failure of the system is imminent, and represents a public and private nuisance, as well as an immediate hazard to public health and safety.

86. Plaintiff is informed and believes and on that basis alleges that the Board Defendants, along with Dingman, Bowles, Goff, and Winston, in agreeing, conspiring, and acting, to violate the provisions of the Brown Act, Safe Drinking Water Act, the Clean Water Act, the Health and Safety Code, the Government Code, the Water Code, the Public Contracts Code, and the HCSD Bylaws as set forth above (and hereafter), did so in order to wrongfully financially benefit themselves, their friends, and their acquaintances by acting to: ignore the provisions of Water Code Sections 31007 and 71616; waive District fees and/or charges for their friends and neighbors without any lawful basis therefore; fail to impose and collect the "standby fee" as to each parcel in the District as provided by law and mandated by the HCSD Bylaws; improperly adjust accounts; fail to collect overdue accounts; fail to impose penalties on overdue accounts; fail and refuse to shut off water to overdue accounts as provided by the Bylaws; fail to lien property as provided by State and local law; fail to properly assess and/or impose fees and charges; fail to impose properly assessed and/or mandated charges; violate and/or ignore provisions of the Brown Act and the California Constitution relating to open government; failing

[156] See Government Code section 815.6; CACI #423 "Public Entity Liability for Failure to Perform Mandatory Duty"; Sources and Authority. Such conduct also constitutes a waste of public funds, and Plaintiff invokes his right as a taxpayer of the District to bring action relating to such conduct pursuant to California Code of Civil Procedure 526a, in addition to any other remedies. See also *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482.

to expend money necessary to maintain and upgrade the HCSD's infrastructure to comply with demand and the various laws[157]; and, to circumvent hearings and review processes as provided by State laws, and the Bylaws of the District.

87. Plaintiff's information and belief as to some of the wrongful conduct and actions of the Board Defendants, Winston, Kirsher, Winston, & Boston, L.C., Bowles, Dingman, and Goff, is based in part upon the recording of self-serving acts by the Board Defendants at their purported meetings (and otherwise) in the form of notes and typed "minutes" (which do not accurately and fully reflect the proceedings they supposedly record), purported resolutions, letters, and the actual and attempted ignoring of, and *de facto* elimination of, the HCSD Bylaws duly adopted on April 18, 2014; along with the concurrent purported passage of various incarnations of "restated bylaws", resolutions, policies, customs, and practices, and other documents, which Plaintiff alleges are invalid as not being passed in a manner conforming to the HCSD Bylaws, the Brown Act, and/or State statutory and decisional law relating to the operation of government entities, and special districts particularly.

88. Although reference is made in this Complaint to acts by the Defendants, events, and circumstances occurring at purportedly public meetings of the HCSD, and/or concerning Defendant Robert Winston's alleged illegal, and/or otherwise wrongful: authoring of HCSD documents; false representation in legal actions of the HCSD, Board Defendants, Bowles, Dingman, and/or Goff; and, Winston's instructions to, and conspiracies with, the Board Defendants, Dingman, Goff, and/or Bowles occurring in part at any private, or purportedly "closed session" public meeting of the HCSD Board; it is not Plaintiff's intention to base any state law, or common-law tort, cause of action, or request for relief, upon any actual filing or statement in a court of law, or before any other lawfully convened tribunal; or, upon any statement or other expression of First Amendment rights occurring by any person or entity at any purportedly public proceeding, or meeting of any public entity (including the HCSD). Plaintiff does, however, assert that some such statements and/or expressive conduct (including purportedly official writings, etc), although perhaps not actionable themselves, may be evidence of other bases for causes of action. Further, the events and statements made at any particular meeting may in fact be actionable if it is determined at any point that said meeting was in fact not a lawful public meeting (generally of the HCSD), and/or that the action taken, document(s)

[157] Thus permitting the HCSD to instead divert funds to Winston and/or Kirsher, Winston, & Boston, L.C., and to "refunds", fee waivers/reductions, non-collection of past due accounts (and failure to collect interest on past due amounts), and other mechanisms by which acquaintances of the Board Defendants improperly gifted public funds to some customers of the HCSD.

produced, etc were unlawful, fraudulent, or otherwise improper or *ultra vires*. This disclaimer does not apply to Plaintiff's Constitutional and other Federal claims. All Defendants are sued in their individual and official capacities as applicable.

89. All the events and circumstances described in this Complaint which give rise to liability against any Defendant occurred between the dates of December 4, 2015, through April 20, 2016, and ongoingly as specified.

90. Concerning Plaintiff's pendent state claims herein, Plaintiff certifies that he timely and properly provided written notice of his claims to the HCSD in full compliance with all requirements of the **California Government Tort Claims Act**, Government Code sections 905, 910, and 915. The HCSD never responded in any way to Plaintiff's claims notice. Plaintiff additionally submitted "supplemental" notices, all of which were also ignored by the HCSD, and the Board Defendants. Finally, as to each and every Brown Act violation that occurred at each of the illegal meetings conducted by the Board Defendants of which Plaintiff was aware[158], timely written "cease and desist" and "cure and correct" notices were provided to the HCSD, Defendant Patricia Slote (as Secretary of the HCSD), and to Defendant Robert Puckett, Sr. (as President of the HCSD), pursuant to the Brown Act. The Board Defendants, and the HCSD as an entity, failed to properly respond to these notices thereafter, and failed to cease their wrongful and illegal conduct under the Brown Act as to meetings of the Board.

91. Plaintiff is informed and believes, and on that basis alleges, that the primary purpose of these meetings by the Board Defendants and their agents was not to take legitimate, lawful, and/or beneficial legislative action to benefit the District, but was instead undertaken by them in agreement to further the conspiracies with, and amongst, all of the Defendants; to take improper action in violation of the Brown Act, the Political Reform Act, State and Federal Laws, and the HCSD Bylaws; to "reaffirm" previous, illegal, and/or void contracts and/or otherwise wrongful acts of the Board of the HCSD (particularly those relating to themselves, the HCSD, and/or their co-conspirators/co-Defendants); to wrongfully grant Secretary Slote and/or President Puckett to exercise authority purportedly on behalf of the HCSD when such grant and/or exercise would be in conflict with State, Federal, or local laws; to fail to set rates and fees in compliance with Water Code Sections 31007 and 71616, and to thwart anyone attempting to compel them, and/or the HCSD to comply with those (and other) statutes (including Plaintiff); to wrongfully and

[158] Clearly Plaintiff could not timely know of those illegal meetings between the Board Members, Winston, Bowles, Dingman, and/or Goff which were never agendized to the public, and/or information concerning which was otherwise willfully withheld and/or concealed.

improperly maintain the gifts of public funds to certain customers of the HCSD in the form of wrongfully/illegally/improperly reduced charges and fees; to improperly and illegally drain the District funds; to retaliate against Plaintiff and other persons for filing complaints with various government agencies and the courts or otherwise acting in opposition to the plans and actions of the Defendants; to violate the HCSD Bylaws relating to public records, bidding for services, employee retention and recruitment, collections of fees and charges, and other provisions thereof; to block attempts to force the District to comply with state and/or federal laws; and, to improperly divert District funds to their own benefit, the benefit of their co-conspirators, and to the benefit of those individuals and entities receiving improper gifts of public funds in the form of reduce/uncharged/uncollected District fees and charges as aforesaid.

92. Plaintiff is informed and believes and on that basis alleges that at all times material, both Defendant Bowles, and Defendant Winston, prepared documents[159], forms, billing, "timecards", and/or records to be used by the Board Defendants in furtherance of the various wrongful, shared goals of the Defendants, and for use at some or all of the statutorily and constitutionally defective meetings. Defendant Robert Puckett, Sr. specifically acted pursuant to a policy, custom, and practice of the Board Defendants, and the HCSD, to organize and facilitate statutorily and constitutionally defective meetings by using his influence to contact persons known to be sympathetic to the goals of the Board Defendants to encourage them to come to meetings to intimidate and harass those standing in opposition to the Board Defendants' plans, and also by failing to contact, and to exclude, members of the public that were not "approved" by himself and the other Defendants to attend those supposedly public meetings.

93. Further, the Board Defendants, in acting as set forth herein, have acted, in their official capacities, on matters of public concern in which they have a direct conflict of interest, in violation of Government Code Sections 1090, and 87100, and 2 Cal. Code Regs. Section 18700, and have failed to act as mandated by the HCSD Bylaws, pursuant to Sections A-1.4, A-2.2, A-2.6, A-2.10; A-3.3; A-3.8; A-5-1; A-6.1; A-6.4; A-7; A-9.1; A-9.3; A-9.14; 1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; and, 1-4.040. On information and belief, Plaintiff alleges that Defendant Winston improperly directed, aided, assisted, encouraged, agreed to participate in, and/or abetted the Board Defendants in committing the wrongful conduct herein alleged, and ratified their conduct when such conduct was undertaken, and thereafter. Essentially, positions on the Board of the HCSD are used as a platform for a local "spoils system", and each

[159] Such as, but not limited to, resolutions, motions, letters, findings, agendas and agenda items, proposed bylaws, purportedly official letters of the HCSD, terms of employments, etc.

conspirator participated in the various wrongs herein in order to benefit from that system using the authority of the Board Defendants, and/or the HCSD itself.

94. At all times material, each of the Directors of the HCSD (the "Board Defendants" herein) owed a fiduciary duty[160] to the District, and to each property owner and water customer in the District[161] to: maintain the District's finances in a solvent and efficient manner; to collect all charges and fees due to the District[162]; to apply for and obtain grants and other funding available for the upgrading and repair of the Districts facilities[163], wells, and system; to establish, set, and collect rates, charges, and fees sufficient for the proper operations, maintenance, repair, and expansion of the HCSD's facilities, wells, and system; to employ and maintain competent, licensed employees and other persons; and, to maintain the entire water production, treatment, and distribution system in good repair, all in a manner that would provide for the necessary upgrades and new facilities as required by law. Plaintiff contends that as acting as set forth herein, and ongoingly, that these Defendants have acted in breach of their fiduciary duties to the District, and that the Board Defendants have improperly reduced and waived various fees and charges for certain customers without voter approval, have misclassified customers and failed to properly impose multiple dwelling fees as required by the HCSD Bylaws and without voter approval, and are thus liable for all such lost income as an impermissible gift of public funds, and also individually, pursuant to the provisions of the HCSD Bylaws at Sections A-9(1) and A-9(26), in addition to any other basis for liability.

## XVIII. Civil Conspiracy of the Defendants.[164]

95. Although civil conspiracy is not a stand-alone tort, or cause of action, it does exist as a "rider" to other causes of action, and makes each of the tortfeasors liable for the acts of every

[160] The fiduciary duty of the Directors of a special district providing water is additionally enshrined in State law at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. The HCSD Bylaws provides that qualified persons may bring an action on behalf of that fiduciary duty at Section A-9(26). The Bylaws also provide that rates may not be reduced from those set in the Bylaws without voter approval, and that any Director(s) attempting to do so are personally liable for the lost income to the District (Bylaws, p. 10, Section A-9(1); p. 23-25, Section 1-3.010).

[161] See HCSD Bylaws at A-9(26).

[162] Including the "standby fee" previously imposed in the 1996 Bylaws, and ratified as Section A-9(13) in the April 18, 2014 Bylaws. Plaintiff specifically alleges that the Board Defendants took action to nullify, and/or failed to take necessary action to initiate, the collection of the standby fee, in order to wronfully benefit themselves, their co-conspirators, and their friends and associates owning property within the HCSD boundaries.

[163] See also HCSD Bylaws at Section A-7.

[164] This section should be read in conjunction with those titled sections describing the conduct of each named defendant. This section is intended to comply with the heightened pleading standards required for civil conspiracy, and "aiding and abetting" theories of liability.

other, as well as the ultimate goals of the conspiracy. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.) This is true even if one (or some) of the tortfeasors would not normally owe an independent duty to the Plaintiff relative to the tort or statutory claim made. See *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303; CACI 3600. This is also true "irrespective of whether or not he was a direct actor and regardless of the degree of his activity. [Citations.]" ( *Mox Incorporated v. Woods* (1927) 202 Cal. 675, 677-678.) As the Supreme Court has reaffirmed, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), and Circuits have held, *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002), and *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir.2002), there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions (inapplicable to this case) listed in Rule 9. Hence it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with. Other federal courts to consider this issue have merely required the plaintiff to plead the basic elements of the conspiracy. See *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir.2004) (requiring "alleg[ations] [of] specific facts showing an agreement and concerted action" for civil conspiracy claim) (internal quotation marks and citation omitted). These standards have been met herein.

96. Beginning on about December 4, 2015, and ongoingly, the Board Defendants, with the assistance of Defendants Julie Bowles and Clint Dingman, agreed, conspired, and acted, to wrongfully, in violation of the Brown Act, (and in violation of the HCSD Bylaws), without any public notice or due process, waive various fees and charges (as well as proper rates as to type of customer) to certain of the HCSD customers, and to fail to assess properly due fees and charges to certain HCSD customers, via the mechanisms of: deliberately improper/incorrect billing; failure to read meters; failure to asses charges for zoning, number of residences, late fees, and actual water use; failing to collect overdue accounts; failing to impose due and proper late fees and other charges relating to non-payment of bills and/or tampering with meters and equipment; failing to require rentals units' water services be placed in the property owner's name as required; changing the classification of some customers without any due process in order to charge those

customers lesser amounts than were actually due the HCSD for services; and other means, as well as by wrongfully altering official HCSD records and documents. Some of the wrongfully-benefiting customers included Defendants Hornbrook Community Bible Church, Steven Crittenden, and Duke Martin, who also conspired with the Board Defendants, Bowles, and Dingman in the foregoing actions in order to wrongfully receive the refunds, reductions, waivers, and other gifts of public funds from the HCSD described in more detail, as to their individual sections herein, *ante*. These acts were undetaken with full knowledge by the participants that they were in violation of provisions of the HCSD Bylaws requiring voter approval, and they actively sought to deny and suppress for their own pecuniary benefit those voting rights of Plaintiff and the other electors of the District in violation of 42 USC §1985.

97. Beginning on or about December 4, 2015, and continuing thereafter, the Board defendants wrongfully, improperly, and/or illegally enlisted the agreement and aid of Robert Winston, and Kirsher, Winston, & Boston, L.C., to intentionally promote, accomplish, assist with, legitimize, aid in, and ratify each of the wrongful acts and goals of the Board Defendants (and Bowles, Dingman, and Goff) as set forth in the preceding paragraphs, and throughout this Complaint, including the acts of Winston taken in violation of the Rules of Professional Conduct, and thus the "catch-all" provisions of the Business and Professions Code concerning unlawful conduct (section 17200, et seq[165]). Winston, with full knowledge of the wrongfulness, and/or unlawfulness of these goals, plans, acts, and methodologies, did in fact agree to, and thereafter acted to, aid, abet, assist in planning and execution, conspire with, and ratify the Board Defendants' wrongful conduct (as well as that of Defendants Bowles, Dingman, and Goff) by: producing (ghostwriting) various purportedly official documents of the HCSD[166]; instructing the Board Defendants in actions they should take to wrongfully obstruct and oppose Plaintiff and

[165] Otherwise known as California's "Unfair Competition Law"or "UCL". A business practice may be found "unfair" or fraudulent," even if not "unlawful" and vice versa. (See *Cel-Tech Communications & Cel-Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) The California Supreme Court has explained that "[a] business practice is unlawful 'if it is forbidden by any law . . . .'" *Olszewski v. Scripps Health* (2003) 30 C4th 798 (including Federal laws). It is also settled law that violations of the Rules of Professional Conduct can form the basis for a UCL claim. (*People ex rel. Herrera v. Stender* (2012) 212. Cal.App.4th 614, 631-634.)

[166] Including "revised" bylaws, motions, resolutions, letters, statements, announcements, official communications, etc. Winston at no time was ever officially and/or lawfully authorized or directed by the HCSD Board of Directors at any public meeting, or by any other lawful means, to prepare any such documents at all, and instead such instruction (on those occasions he did not act on his own initiative) came from Slote, Puckett, or one or more of the other Board Defendants - all of whom had as one of their goals the malicious denial of the right to vote by Plaintiff and the other electors of the District as provided in the Bylaws.

Plaintiff's complaints to the Courts, and government agencies; using various of his ghostwritten documents in official proceedings (and/or to create false public records in the HCSD) while knowing they were false, inaccurate, misleading, and or improperly "ratified" or otherwise acted upon by the Board Defendants and/or the HCSD; and, the best means to frustrate the lawful goals of, and to retaliate against, Plaintiff. Winston also actively participated in the conspiracy(s) by taking many various actions - supposedly as "legal counsel" for the HCSD and/or the individual Board Defendants - for which he had not actually be granted any authority or contract by the HCSD Board to do[167].

98. Plaintiff, based upon information and belief, alleges that during the period of on or about December 4, 2015, through the current date, and ongoingly, Defendant Winston acted, outside of public meetings and in violation of State law, in conspiracy with the Board Defendants and Bowles, to arrange for the improper diversion of HCSD funds to pay Winston for purported legal work[168] and other actions supposedly on behalf of the Board Defendants, the HCSD itself, Bowles, Goff, and Dingman; all in violation of State law, the CalBar Rules of Professional Conduct, the HCSD Bylaws, and the California Constitution as an improper gift of public funds. Winston, in furtherance of the conspiracy to violate the Federal, State, and local laws by the Board Defendants, the HCSD, and Defendants Bowles, Dingman, and Goff as described in this complaint, aided and abetted those defendants by creating (without Board approval that he do so, or any authority under law), and providing, various documents, letters, invoices, billings, notices, and messages for use by the Board Defendants at illegal meetings and in communications with HCSD customers, government officials, Plaintiff, and others[169], as well as by suggesting and

[167] This usually took the form of simply "self-assigning" himself to cases filed by Plaintiff and other persons (in superior court, and the Third District Court of Appeals) without notice to, and/or permission of, the HCSD Board (and/or even of individual clients), but also involved making major decisions and actions in litigation without consulting his "clients", and/or getting approval prior to engaging in "scorched earth", excessive litigation tactics.

[168] This "legal work" often pertained to cases to which Winston had never been legally appointed by any action of the BOD of the HCSD, but rather undertaken at the request of individual Board members outside of any public meeting, and/or on Winston's own initiative as part of the conspiracy with the Board Defendants to violate the laws, to illegally delegate the Legislative authority of the Board to Winston concerning legal matters, and to act against Plaintiff. The "legal work" also pertained to unauthorized actions within cases to which he had been appointed (including making unnecessary and wasteful motions and pleadings, and appearing on appeals without any notice to, or action by, the HCSD BOD).

[169] Plaintiff is not including documents, etc that may have been created by Winston as part of actual pleadings for any ongoing legal action in which Winston was duly appointed to represent the HCSD or any Director or employee; rather, Plaintiff refers to internal documents of the HCSD, as well as to purported notices, agendas, minutes, bylaws, resolutions, declarations, etc which were supposedly drafted by Defendant Patricia Slote, or the other Board Defendants, but were actually ghostwritten by Winston.

instructing the Board Defendants, Dingman, Goff, and Bowles, in specific acts and actions they could take to promote the goals of the various conspiracies set forth herein generally.

99. On information and belief, Plaintiff alleges that Winston instructed the Board Defendants, and also Bowles and Dingman, in specific actions to take in furtherance of the conspiracy(s) - including the submission of knowingly false certifications for "warrant requests" to the Siskiyou County Auditor during the period of about December 4, 2015, through the current date, and ongoingly, - some of which contained requests for payment to Winston, and in amounts in the thousands of dollars.

100. Plaintiff's allegations of conspiracy, aiding, abetting, ratifying, agreeing to, and/or directly participating in any portion of the conspiracies concerning State laws or common torts detailed in this complaint as to any Defendant also relies upon the general liability as to them independent of any supposed "duty", and focuses on the facts of instances of "substantial assistance" between the various Defendants concerning the numerous actions undertaken by each and all of them in regards to "wrongful conduct"; either their own, or that of one or more of another of the Defendants as is described herein, and as to each one. See *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303.

**XVIIIa. Additional General Allegations.**

100a. Each of the Defendants, in acting to violate federal and/or state law, and/or the HCSD Bylaws as set forth herein, in addition to any other statutory basis for their violations, and for relief as to Plaintiff, have created and maintained a public and private nuisance *per se,* as defined by the HCSD Bylaws, Section A-9.26. Defendants and their actions in regards to such violations are also therefore in violation of California Civil Code Section 3479 and 3480, and subject to injunction by this Court in addition to any other remedies.

100b. The acts of the Board Defendants, and as purporting to act as the HCSD, as set forth herein, are null and void due to being *ultra vires*, due to criminality[170], due to being a nuisance *per se*[171], due to Brown Act violations[172], due to being in violation of the mandated

---

Winston had no legal authority to create any such documents pursuant to any Board action, nor was he "general counsel" for the HCSD at any time.

[170] See Govt. Code Sections 54959, 61064(a), 91003(b); Civil Code Section 3369.

[171] Both due to being violations of the HCSD Bylaws, and/or federal. and/or State law. See also Civil Code Section 3479-80, 3491; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988-89. In *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, a case involving injuries alleged to have been suffered by the plaintiffs by virtue of the defendant's operation of an airport near the plaintiffs' properties, the California Supreme Court stated that section 3479 of the Civil Code provided a viable statutory basis for governmental liability, avoided a defense of sovereign immunity, and concluded that "section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are

procedures and policies of the HCSD as expressed in the April 18, 2014 Bylaws and related Resolutions, and/or due to having been undertaken in violation of the Political Reform Act while a conflict of interest existed regarding the issue or action undertaken.[173]

100c. The Board Defendants, in acting as set forth herein, and thereby also the HCSD as an entity insofar as they claim to be acting on its behalf, have violated the provisions of California Government Code Sections 1090, 61000, et seq, and 87100; the Public Records Act; , Water Code Sections 71000, et seq - particularly Section 71616, and other Federal, State, and Local laws as set forth herein. They have also committed unreasonable dissipation, damage to, and waste of District resources, property, and taxpayer funds. In so doing, they have breached their fiduciary and other duties to the property owners, residents, electors, taxpayers, and water consumers of the District (and including Plaintiff), as well as injured the property and economic viability of the District, and caused injury to, and/or waste of, its financial resources[174].

100d. Plaintiff is informed and believes and on that basis alleges that the Board Defendants, along with Dingman, Bowles, Goff, and Winston, in conspiring, and acting, to violate the provisions of the Safe Drinking Water Act, the ADA as to Plaintiff, the Health and Safety Code, the Government Code, the Water Code, and the HCSD Bylaws as set forth above, did so in order to wrongfully financially benefit themselves, their friends, and acquaintances by acting to position themselves to: ignore the provisions of Water Code Sections 31007 and 71616; waive District fees and/or charges for their friends and favored neighbors without any lawful basis therefore; improperly adjust accounts (and particularly outside of any public process); fail to collect overdue accounts; fail to impose penalties on overdue accounts; fail and refuse to shut off water to overdue accounts as provided by the Bylaws; fail to lien property as provided by State and local law (and to vacate notices of lien as to some accounts without any public process); fail to impose properly assessed and/or mandated charges; to circumvent the authority of the Acting General Manager; and, to circumvent hearings and review processes as provided by State laws, and the Bylaws of the District.

---

founded on section 3479 of the Civil Code or other statutory provision that may be applicable." (*Id*, at p. 937; see also Code of Civil Procedure section 731.) California law defines a nuisance, in part, as "[a]nything which is injurious to health ... or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property...." Cal. Civ.Code § 3479. The HCSD Bylaws provide at Section A-9(26) that any violations thereof are a nuisance per se, and authorizes suit for injunctive or other relief for violations.
[172] See Govt Code Sections 54953(a) and (c); 54960.1(d).
[173] See Govt Code Section 87100; 91003(b).
[174] See Government Code section 815.6; CACI # 423 "Public Entity Liability for Failure to Perform Mandatory Duty"; Sources and Authority.

100e. By failing to comply with the provisions of California law, Federal laws, and the Bylaws of the HCSD as set forth herein and above, each of the Defendants exceeded their lawful authority and jurisdiction, acted against public policy, and all of the acts undertaken by these Defendants herein have caused a significant amount of waste, are illegal as specifically set forth, and/or have caused injury to, the funds and property of the HCSD, and so relief is requested (in addition to any other available relief) to enjoin and nullify the acts of the HCSD; Board Defendants; Bowles; Dingman; Goff; Murphy, Pearson, Bradley & Feeney, Inc.; William Munoz; Robert Winston; and, Kirsher, Winston, & Boston, LC, so far as is practical, pursuant to the provisions of California Code of Civil Procedure, Section 526a. See *Blair v. Pitchess* (1971) 5 Cal.3d 258, 268:

> "Moreover, we have not limited suits under section 526a to challenges of policies or ordinances adopted by the county, city or town. If county, town or city officials implement a state statute or even the provisions of the state Constitution, an injunction under section 526a will issue to restrain such enforcement if the provision is unconstitutional. (*Lundberg v. County of Alameda* (1956) 46 Cal. 2d 644, app. dism. (1956) 352 U.S. 921; *Vogel v. County of Los Angeles, supra*, 68 Cal. 2d 18.) Indeed, it has been held that taxpayers may sue state officials to enjoin such officials from illegally expending state funds. (*Ahlgren v. Carr* (1962) 209 Cal. App. 2d 248, 252-254; *California State Employees' Assn. v. Williams* (1970) 7 Cal. App. 3d 390, 395) We have even permitted taxpayers to sue on behalf of a city or county to recover funds illegally expended. (*Osburn v. Stone* (1915) 170 Cal. 480, 482.

100f. Plaintiff contends the acts of the HCSD, and the Board Defendants as set forth herein are arbitrary and capricious and imposed without full and complete disclosure and notice to Plaintiff, and/or to the citizens, ratepayers, members of the public, residents, and property owners of the Hornbrook Community Services District.

100g. Plaintiff alleges that each act complained of herein and taken by the District and/or Board Defendants[175] was undertaken by them in furtherance of, and/or pursuant to, a policy, decision, custom, or practice either officially, or unofficially, promulgated and adopted by them (and thus the HCSD), and executed, using the authority granted to them under State Law. Further, the HCSD, Board Defendants, Bowles, Dingman, Goff, and Winston, received multiple notices from Plaintiff and others that their conduct as set forth herein was illegal and violated Constitutional rights, and yet they all continued to act wrongfully, illegally, and in violation of various laws and Plaintiff's rights as set forth herein, thus demonstrating willfulness, reckless disregard for any harm that might have befallen others - including Plaintiff, and actual malice.

[175] Including those that were part of the conspiracies with Winston and/or Bowles as specified.

100h. Based on the Board Defendants', Bowles', and the HCSD's, ongoing violation of the constitutional provisions, statutes, and Bylaws as set forth herein, Plaintiff seeks recovery, reimbursement, and disgorgement of all water-related fees and charges wrongfully and illegally waived by them, and/or avoided by any person or entity within the District, and/or improperly gifted[176] by the Board Defendants, Bowles, and/or the HCSD, up to the date of final judgment in this action as a result of their actions contrary to the HCSD Bylaws and/or State laws, along with all other relief authorized by the HCSD Bylaws at Sections A-9.1; A-9.13; and, A-9.26 . As to Defendants Winston; Kirsher, Winston & Boston, LC; and, Lucas, and Murphy, Pearson, Bradley & Feeney, Inc., disgorgement is sought of all fees paid to each and any of them as the result of the purported contracts created with the HCSD in violation of the Rules of Professional Conduct, 3-600(E), appearances in violation of Business and Professions code sections 6104, and/or those contracts created by these defendants and the Board Defendants in their official capacities, in violation of Government Code 1090[177].

100i. An actual controversy has arisen and now exists between Plaintiff and Defendants relative to their respective rights and duties in that Plaintiffs contend that the acts of the Defendants in violation of the Constitution and laws of the United States, the statutes of the State of California, and the Bylaws of the HCSD, and, are invalid and unenforceable, both on their face, as applied to Plaintiff, and as construed by Defendants. Defendants dispute Plaintiffs' contentions and contend that their acts, and their application to the District, District customers, District employees and volunteers, and to Plaintiff, are valid.

100j. Plaintiff desires a declaration of the rights of the parties, and also as to the validity of the acts of these Defendants, past and future - and all proceedings relating thereto[178], both on their face and as applied to the District, Plaintiff, and all citizens of the HCSD. A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and duties in execution of his office as Director of the HCSD as applied to the events and circumstances herein, as a property owner within the District, and as provided by California law.

100k. A timely declaration by this court is urgent for the following reasons:

---

[176] Taking the form of improperly reduced rates, failure to impose proper charges (such as the multiple dwelling service assessment, proper determination of customer type [e.g. "commercial", "governmental"], etc), failure to collect all past and current fees and charges due, failure to lien property as provided by law, improper "payment plans" in violation of the HCSD Bylaws, and so forth.
[177] All such conduct by the attorneys and law firms would also thus constitute an unlawful business practice in violation of Business and Professions code section 17200, et seq.
[178] Including all purported public meetings, agendas, resolutions, acts taken, official and/or informal policies and practices, etc.

**A.** Defendants had a clear, present, fiduciary, and ministerial duty to refrain from acting in the manner set forth herein, and to act in compliance with laws imposing a mandatory duty upon any, each, and/or all of them;

**B.** Plaintiff has a clear, present, and beneficial right to be free of such interference, retaliation, harassment, unlawful acts, Constitutional deprivations, common torts, and public shaming;

**C.** Plaintiff has a clear, present, and beneficial right to have these Defendants operate within the laws of the United States, the State of California, and within the provisions of the Bylaws of the HCSD, which have the force of law. As the Supreme Court stated in *United States v. Classic*, 313 U.S. 299, 326 (1941), "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law.'"[179] Plaintiff specifically alleges that the acts complained of herein were customs, policies, and practices which were implemented by the Board Defendants (with the assistance, encouragement, aid and ratification of Defendants Winston, Bowles, Dingman, Goff, Hanson, Munoz, and MPB&F) while acting in their official capacities as decision-makers for the HCSD, and that other of the Defendants (Goff; Dingman; Bowles; Morris; Munoz; Crittenden; Martin; HCBC; Murphy, Pearson, Bradley & Feeney, Inc.; and Winston), then used the official *imprinteur* of the Board Defendants as justification to act in violation of Federal, State, and local laws (the Bylaws) as set forth herein.

## XIX. INCORPORATION OF FACTUAL ALLEGATIONS INTO COUNTS.

101. In making out the following "Counts" against one or more Defendants in the following First and Second Claims for Relief, Plaintiff, in addition to incorporating the factual allegations found in the preceding generalized sections and paragraphs, hereby specifically incorporates those Sections corresponding to each Defendant named in the specific Count. That is, if a Count lists "Puckett", then the reader should refer to Section II on page 9 for additional details of his conduct, and other factual allegations, that apply to the Count. If the Count lists the

[179] And this also applies to Defendant Winston, despite his protestations that he is simply an "independent contractor" doing work for the HCSD and/or the Board Defendants. He is clearly cloaked in their authority when doing their bidding, when planning/instructing what they should do next in their official capacities, when he is engaged with them and others in Brown Act-violating meetings, and when providing them pre-written documents and other resources to do so, and so he shares their liability as well, and would do so even a putatively "litigation" scenario. See e.g. *Edmondson v. Leesville Concrete Company*, 500 U.S. 614, 624-25 (1991) (holding that a private attorney exercising peremptory challenges in a civil jury trial to excuse African Americans from the panel was a "state actor" given that the peremptory challenge could only exist in the judicial context.)

"HCSD", one would refer to Section VI at page 20, etc. The "Board Defendants" are defined as Puckett, Buckley, Slote, and Peterson/Tulledo at page 7, and so reference to them would incorporate each of their individual sections as well. The term "these Defendants" as used in any particular Count, shall only mean the Defendants which are specifically named within that count, and is not intended to apply to all the "Defendants" generally. When Plaintiff intends something to apply to all the Defendants in this action within in a Count, he will state "all Defendants" specifically. Further, in the event Plaintiff states a claim or cause of action that only permits injunctive or other relief, but has inadvertently asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as otherwise provided by law, and Government Code section 814.

## FIRST CLAIM FOR RELIEF

### Count I - VIOLATIONS OF PLAINTIFF'S RIGHT TO FREEDOM OF ASSEMBLY, SPEECH AND PETITION

Plaintiff realleges and incorporates by reference all of the applicable paragraphs above.

102. Plaintiff asserts that each discreet illegal meeting held by the Board Defendants (and thus the HCSD) as aforesaid, and the assistance with those meetings, and the matters dealt with at those meetings given by Winston, Bowles, and/or Dingman, was itself a violation of his First Amendment Rights, as was each discreet improper act taken at each illegal meeting, or arising from each such meeting (and/or at any other times), as such acts were intended to, and actually did, violate and/or interfere with Plaintiff's constitutional rights by: denying him notice and opportunity to appear and/or exercise his State and Federal statutory and Constitutional rights at such meetings[180] (including his right to access to government, to assembly at such meetings, free association with other members of the public, electors, residents, and property owners of the District, concerning the functions thereof, and to petition relating thereto); and, to register or file complaints concerning those wrongful actions with the HCSD and/or any other relevant government entity. Liability for these acts also attaches to their aiders, abettors, and conspirators as previously described.

103. The Supreme Court has held that the right of petition protects the freedom to seek redress from all three of the coordinate branches of government, and has specifically ruled that the right of petition encompasses attempts to obtain redress through the institution of

[180] See also Cal. Const. Art. I, Sec. 3; The Brown Act (Govt. Code 54950, et seq). This charge also applies to Plaintiff's right's in his official capacity as a Director of the HCSD in relation to the acts of the Munoz, and of MPB&F as discussed in those Sections.

administrative and judicial proceedings, as well as through political means. The court declared: "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is but one aspect of the right of petition." (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510. By holding illegal and improper meetings, and by taking wrongful actions, the Board Defendants (with the assistance of Winston, Bowles, and Dingman) advanced the general scheme of preventing Plaintiff's knowledge of their actions, and kept Plaintiff from obtaining evidence and records of their actions, so that he could effectively address them via legal action or other means.

104. Plaintiff alleges that because the Board Defendants (and thus the HCSD), Winston, Bowles, and Dingman, in acting as set forth herein in manners adverse to the Public good, and Plaintiff's rights, have done so willfully, with the intent to deprive, interfere with, and coerce Plaintiff into abandoning, his exercise of statutory and constitutional rights to speak and petition, and have done so due to: Plaintiff's exercise of his right to petition the government for redress of grievances; a common plan to impede, hinder, chill, harass, discriminate against, and act in retaliation for, Plaintiff's exercise of his right to speak, to speak freely, and to petition at the public meetings of the Board of the HCSD; the individual Board Defendants as elected officials; the Superior Court of the State of California in and for the County of Siskiyou; and/or various Government agencies (or to assist other members of the public, HCSD volunteers, and/or employees in doing so) - including (but not limited to) the California Labor Commissioner, the Fair Political Practices Commission, the California Department of Fair Employment and Housing, CalOSHA, and the EEOC - concerning dangerous working conditions, illegal and improper acts of these Defendants, and unfair and unreasonable administrative and employment practices, that these Defendants have thus violated Plaintiff's rights under the First Amendment to the United States Constitution to speak freely, and to petition for redress of grievances without being retaliated or discriminated against, and/or harassed, intimidated, or chilled in doing so.

106. Plaintiff alleges that as a result of the actions and acts of these Defendants as aforesaid, he has been made to suffer humiliation, upset, embarrassment, worry, reduction of his property values, personal physical danger, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

107. Moreover, the acts of these defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted

to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $150,000.00

**Count Ia - VIOLATIONS OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH AND PETITION**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

107a. Plaintiff alleges that because the Board Defendants (and thus the HCSD), Winston, Bowles, Goff, Hanson, and Dingman, in acting as set forth herein in manners adverse to Plaintiff have done so willfully, with the intent to interfere with and coerce Plaintiff into abandoning his exercise of statutory and constitutional rights; and have done so due to Plaintiff's exercise of his right to petition the government[181], and courts, for redress of grievances; and to impede, hinder, and act in retaliation for, Plaintiff's exercise of his right to speak, to speak freely, and to petition at the public meetings of the Board of the HCSD, and/or to the individual Board Defendants as elected officials; in retaliation for Plaintiff's exercise of his right to petition to the Superior Court of the State of California in and for the County of Siskiyou; to petition various Government agencies (or to assist other HCSD volunteers and/or employees in doing so) - including (but not limited to) the California Labor Commissioner, the Fair Political Practices Commission, the California Department of Fair Employment and Housing, CalOSHA, and the EEOC - concerning dangerous working conditions, illegal and improper acts of these Defendants, and unfair and unreasonable administrative and employment practices. These Defendants have thus violated Plaintiff's rights under the First Amendment to the United States Constitution to speak freely, and to petition for redress of grievances, and to be free of retaliation and harassment for doing so.[182] The Supreme Court has held that the right of petition protects the freedom to seek redress

---

[181] This includes the HCSD Board itself when Plaintiff submitted "cure and correct" notices per the Brown Act; when he submitted CPRA requests; when he submitted requests to be indemnified pursuant to Govt. Code section 995; when Plaintiff filed actions in court or testified in proceedings as a witness; and, when Plaintiff made complaints to various Federal and State agencies (and/or assisted others to complain to those agencies), about the Defendants. It also applies to Plaintiff's objections to denial of his right to vote on HCSD matters as provided in the Bylaws, and his attempts to force the HCSD Board into honoring those rights.

[182] Insofar as the recently-discovered conduct relating to Defendants Munoz and MPB&F concerning filing documents in violation of Rule 11 and entering into "verbal agreements" and other obligations supposedly on behalf of the HCSD and others without any formal Board action, this also relates to Plaintiff's official, as well as individual, capacity, as he was a Director of the HCSD at the times those events occurred. See *Bond v. Floyd*, 385 U.S. 116, 137 (1966) (Georgia legislature's disqualification of elected representative on account of statements about the Vietnam war violated representative's right of

from all three of the coordinate branches of government, and has specifically ruled that the right of petition encompasses attempts to obtain redress through the institution of administrative and judicial proceedings, as well as through political means. The court declared: "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is but one aspect of the right of petition." (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510.) In order to commit the afore-described acts against Plaintiff, and to interfere with, and/or deprive Plaintiff of his rights under the United States Constitution as aforesaid, Defendants interacted, agreed to, conspired with one another, and acted in concert, to harass, retaliate against, and discriminate against Plaintiff, in both his individual and official capacities, for his political views, notice(s) of violations of laws, and petitions regarding grievances made to the Board of the HCSD, other official agencies and the courts.

107b. Plaintiff alleges that as a result of the actions and acts of these Defendants as aforesaid, he has been made to suffer humiliation, upset, embarrassment, worry, suppression of his right to free speech and petition in both his individual and official capacities[183], reduction of his property values, personal physical danger, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

107c. Moreover, the acts of these defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $150,000.00

///////

free expression under First Amendment). As the Court stated in Bond, " [t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.* at 135-36.

[183] In relation to the acts committed by the HCSD, Hanson, Munoz, and MPB&F relating to their actions as non-, and/or illegally-appointed "counsel" for the HCSD and/or any employee or agent thereof. As an official holding elective office and a public employee, Plaintiff had a duty to interact and express his views in service to his constituents, and the public good, as well as an individual right to do so. Plaintiff is also protected as to retaliation in that respect, and concerning his wrongfully-denied request to the Board Defendants for indemnification under Govt. Code 995, by the State of California's statutory scheme in Government Code Section 12940(h); and, Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, 6310, and 6399.7.

**Count II - DEPRIVATIONS OF RIGHTS TO THE EQUAL PROTECTION OF THE LAWS, AND TO DUE PROCESS OF LAW.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

108. Plaintiff alleges that the HCSD, Board Defendants, Winston, Goff[184], and Dingman, did wrongfully, improperly and illegally agree, conspire to, and actually did, violate, and refuse to follow the mandate of: multiple provisions of the Federal Safe Drinking Water Act; State laws that implement the Federal laws, and/or relating to drinking water facilities and operation thereof; and, the HCSD Bylaws[185], and by doing so, with the assistance, affirmation, and ratification of each other, permitted Dingman to operate the water treatment and distribution facilities of the HCSD without State-required certifications (which certifications are also an expression of Federal laws), and instructed Dingman to wrongfully, illegally and improperly[186] assert dominion and control over the treatment and distribution systems of the HCSD even to the exclusion of the public, and Plaintiff, from inspecting the facilities (and documents associated therewith) at any point from on or about December 4, 2015, and ongoingly.

109. All of these acts by the Board Defendants, Winston, Goff, and Dingman, also thus deprived Plaintiff of his protections, rights, and privileges under Federal and State law, and the HCSD Bylaws; and denied Plaintiff the right to be free of improper, illegal, and unsafe operation of the facility providing drinking water to the community, his real property, and his livestock; and, the right to have his elected Representatives and public officers fulfill their legal duty to monitor and supervise the operations of the HCSD facilities and employees - including the proper and timely creation and retention of records; all without due process of law.

110. Plaintiff alleges that as a result of the actions and acts of the Defendants as aforesaid, he has been made to suffer humiliation, upset, embarrassment, worry, reduction of his property values, personal physical danger, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

111. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him

[184] As the independently-contracted Chief Systems Operator of the HCSD, Goff had additional and distinct duties to Plaintiff, and the public, via State and Federal drinking water laws that were, and are, independent and additional to his duties as a HCSD employee, which were violated as set forth.

[185] E.g. Sections A-3(7-8).

[186] See California Code of Regulations Title 22, Sections 63770(b)(5), 63770(c)(1)-(2), 63770(d)(1)-(2).

under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

**Count IIa - DEPRIVATIONS OF RIGHT FREE SPEECH AND PETITION, TO DUE PROCESS, AND TO EQUAL PROTECTION OF THE LAWS; UNLAWFUL SEIZURE**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

111a. Plaintiff alleges that in conspiring and acting as aforesaid to violate State law and the HCSD Bylaws, to censure Plaintiff's protected speech, and to retaliate against him for making it (inclusive of acting to *de facto* nullify Plaintiff's appointment to, and occupation of, the position of HCSD Director concerning the negotiations with, hiring, and/or appointment of Defendants Munoz and MPB&F - as well as all privileges and duties attendant thereto[187]), the HCSD, Hanson, Winston, Bowles, Dingman, and Goff, along with Defendants Munoz, and MPB&F, violated California and Federal laws relating to proper notice and due process at administrative hearings for employees, including a *Skelly* hearing, and/or as provided by the HCSD Bylaws at Section A-4(3), and thus also the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the US Constitution, as Plaintiff was treated differently, and more adversely, than other directors and similarly-situated employees of the HCSD.

111b. These Defendants further failed to give Plaintiff timely (or, most often, any) personal notice of circumstances, events, documents, communications, and/or the meetings he was then entitled to participate in and/or attend to as a Director, and Legislator of the HCSD, or of the multiple adverse actions they took against him (both at purportive public meetings, privately amongst themselves, and/or at other sorts of unofficial meetings of these Defendants), and also failed to: permit Plaintiff to access or inspect any HCSD facilities, or documents in their possession on the many occasions when he demanded they do so - meanwhile granting such access and copies thereof to themselves, their co-conspirators, and other "approved persons"; permit Plaintiff to be heard concerning any charges, denials of indemnification, and/or adverse

---

[187] For instance, the HCSD, Winston, Bowles, and Dingman (at all times material) all repeatedly refused Plaintiff's then-current demands to provide access to, and/or copies of, or permit Plaintiff to inspect, the records in their possession and/or control relating to the operation, function, and acts of the HCSD, its employees, contractors (including lawyers), billing, bills, etc. See California Public Records Act at sections 6252.5, and 6252.7. Further, Plaintiff was excluded by all of these Defendants as to all proposals for contracts, and all other communications by MPB&F and/or Munoz, as well as the event of their retention - nor was he ever even consulted, much less permitted to vote, as to any actions those attorneys should take once hired.

actions taken against other Board members, employees of the HCSD, and/or he himself[188]; and, failed to hold employment-, and litigation-related hearings and actions concerning other Directors, employees, proposed legal services contracts, and/or Plaintiff in closed session and/or pursuant to a noticed public hearing and agendized item; thus violating Plaintiff's First Amendment rights to speak and petition at these meetings (in both his individual and official capacities), unreasonably exposing Plaintiff to liability, and violating Plaintiff's privacy, due process, and confidentiality rights.

111c. These deprivations resulted in substantial prejudice to Plaintiff, unlawful impedance and interference with his job duties as Director of the HCSD, and otherwise substantially violated the due and proper application of Federal, State, and local laws to, and the protected rights of, Plaintiff to act as a Legislator, Director, as specifically provided by the First and Fourteenth Amendments to the United States Constitution. All of these acts resulted in a *de facto* seizure of Plaintiff's powers, rights, and duties without any due process of law, and in deprivation of Plaintiff's protections of law.

111d. More fundamentally, Plaintiff was thus also denied his Federal constitutional rights to due process and equal protection of the laws relating to adverse administrative hearings and actions against him by a government agency and actor(s), including those private persons acting as agents of the Board Defendants, and/or pursuant to the Board Defendants' authority as state actors.

111e. The Fourteenth Amendment of the United States Constitution also protects individuals from deprivation (or adverse impact) of property interests by the government without procedural due process. Due process is violated where there exists: (1) a constitutionally protected property interest; (2) the government's deprivation of said interest; and (3) a lack of process. See *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Plaintiff additionally asserts that his employment with the HCSD as Director, and Secretary (and as a public officer generally), and her interest in the lawful, safe operation of the HCSD, the resultant safety and marketability of his interest in real property, and personal property (including crops and livestock) lying within the HCSD boundaries are such property interests. The Defendants, in acting without legal notice, and in violation of the laws of the State of California and the United States as aforesaid, created risk that Plaintiff will not receive benefit and enjoyment of his personal and real property interests, that the water system will fail, and that Plaintiff's property

[188] This includes the fact that by Denying Plaintiff any communications, he was not even aware for many months that he had been named in his official capacity as a defendant in a federal suit.

and/or values will be destroyed. Further, the conspiracy against him by these specified Defendants acted as an unreasonable and unlawful seizure of Plaintiff's authority as a Director of the HCSD, and a de facto removal of him from that position - all of which constitute a violation of the Fourth Amendment to the US Constitution.

111f. Plaintiff alleges that due process was further denied him by the actions of these defendants, insofar as the acts complained of are specific violation by these Defendants of California Government Code Section 12940(h), and Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, 6310, and 6399.7.

111g. Plaintiff asserts that each discreet illegal meeting held by the Board Defendants[189] and/or any of their agents concerning these acts and actions was itself a violation of his First Amendment rights to speak freely as a Director of the HCSD, as an individual, and as a Legislator; to freely associate with the constituents of the District at purported meetings of the HCSD Board; to petition and be heard (in all his capacities) by the properly-convened HCSD Board; and, as to Plaintiff's Fourteenth Amendment Rights to due process and equal protection of the laws, each discreet improper meeting, and each discreet improper act taken at each illegal meeting (and at any other times) were intended, and/or actually did, violate and/or interfere with Plaintiff's constitutional rights. Liability for these acts also attaches to their aiders, abettors, and conspirators as previously described.

111h. Plaintiff alleges that as a result of the actions and acts of the Board Defendants, along with Defendants Hanson, Munoz, MPB&F, Winston, Bowles, Dingman, and Goff as aforesaid (and each agent thereof who participated in any way as to any such meetings), he has been made to suffer humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $250,000.00

111i. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $500,000.00

[189] Along with any of their co-conspirators who may have participated in any particular meeting, including "spoke and wheel", "daisy chain", and/or any other sort of meeting.

**Count III - DEPRIVATIONS OF RIGHTS TO THE EQUAL PROTECTION OF THE LAWS, TO DUE PROCESS OF LAW; AND FIRST AMENDMENT RIGHTS.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

112. Plaintiff alleges that the HCSD and Board Defendants, with the agreement, aid, assistance and ratification of Dingman, Winston, HCBC, Crittenden, Martin, Soares, and Bowles, in conspiring and acting to wrongfully, improperly and illegally alter and/or waive the rates and fees of the HCSD, and billings thereof, to benefit their friends and associates outside of public meetings, without required voter approval, and to permit the operation of the HCSD facilities by an uncertified operator, all in contradiction of the Bylaws and applicable State and Federal laws, also wrongfully failed to charge each commercial (of both tiers), governmental, and/or residential customers the proper rates, fees, and/or charges associated with each particular account, while further failing to comply with Water Code sections 31007 and 71616, thus greatly endangering the fiscal health of the HCSD (and rendering it unable to operate the surface water intake system, and expand its water production capacity in the face of drought, among other evils), and so deprived Plaintiff of the equal protection of the laws (inclusive of those laws providing for his right to vote), and did so without any due process of law. Furthermore, by using illegal, non-public, unagendized meetings to accomplish these goals, with the deliberate intent that their actions not be discovered by Plaintiff and the general Public, these Defendants denied Plaintiff, the Public, and others the right to attend those meetings, to freely assemble and speak about the proposed actions, and/or to protest/petition for correction of any illegal acts - all such opportunity being required by the California Constitution at Article I, Section 3, as well as the Brown Act. Further, the right to vote on many (if indeed not all) such matters is enshrined in the HCSD's own Bylaws, and this right was repeatedly denied by these Defendants.

113. Such action by the Board Defendants was part of the common plan of all the Defendants herein, via improper actions by the Board Defendants, to wrongfully benefit themselves as well as their friends and associates at the expense of the District and the Public[190], while the known beneficiaries of such impropriety as to billing and charges includes the Board Defendants, HCBC, and Crittenden (and John Does), who are all wrongfully benefiting therefrom, and continue to do so, are liable for all such wrongfully-obtained credits or other

[190] And to do so while also denying the electors of the District (including Plaintiff) the right to vote on these issues as required by the HCSD Bylaws.

funds obtained by them, and must disgorge them to the HCSD in an amount to be determined at trial.

114 The Board Defendants, Bowles, and Dingman, in acting wrongfully as described herein, without legal notice and/or due process, in violation of the HCSD Bylaws, and in violation of the laws of the State of California and the United States as aforesaid, have created an immediate and substantial risk that the HCSD will become insolvent, that the water system will fail, that the water system will fail to provide sufficient, and safe, water for the needs of the community, the Public, and/or Plaintiff, that Plaintiff will not receive the benefit and enjoyment of his real property, and that Plaintiff's property values will be destroyed.

115. As a result of the actions and acts of these Defendants as aforesaid, Plaintiff has been made to suffer humiliation, upset, embarrassment, worry, devaluation of his real property and threat of total loss of the use of that property, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

116. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $150,000.00

**Count IV - DEPRIVATIONS OF RIGHT TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Gifts of Public Funds - as to Defendants HCBC, Crittenden, HCSD, and the Board Defendants.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

117. Defendants Hornbrook Community Bible Church, Inc., and Steven Crittenden wrongfully and improperly conspired with, influenced, and engaged in corrupt, wrongful activity with the HCSD, and the Board Defendants, in order to utilize the Board Defendants' authority under color of State law, to receive gifts of public funds from December 04, 2015, and thereafter, in the form of reduced water charges, attribution of service[191], and waived fees[192] for each

[191] In the case of Crittenden, who wrongfully and improperly arranged for water service to his rental house in a tenant's name instead of his own after his former tenant "skipped out" without paying several hundred dollars in water fees. Crittenden also had the past fees incurred by his former tenant wrongfully waived by the Board Defendants without any public process.

[192] These acts are additionally a violation of the HCSD Bylaws.

dwelling or building, and based upon the zoning and/or use thereof, that would be otherwise due by each of them, and that this activity was deliberately concealed from the public in violation of the California Constitution, the Brown Act, the HCSD Bylaws, and other applicable laws, and accomplished without any due process under law. At the time the conspiracy and wrongful acts were undertaken, each of these Defendants knew that their plan and actions violated State law, and the HCSD Bylaws, including the provisions therein for notice, opportunity to be heard, and opportunity for redress by Plaintiff an the Public, and so concealed their actions.

118. By so doing, and particularly by acting in secret prior to, and then at any purported public meeting, these defendants acted: in violation of Plaintiff's due process rights to attend, speak[193], and protest/petition the planning of, and act(s) of, illegal gifting of public funds; in conspiracy to deliberately deprive Plaintiff of his right to due process; and, his rights to the equal protection of the laws prohibiting such conduct.

119 The Church, Crittenden, HCSD, and Board Defendants, are therefore liable, in their individual, as well as official capacities, for support of the common plan to violate Plaintiff's rights, and to wrongfully and/or illegally act as aforesaid, and to gift public funds to the Church, and Defendant Crittenden, contrary to the HCSD and Board Defendants' public duty, the HCSD Bylaws, the California Constitution, and statutory laws.

120. Plaintiff alleges that as a result of the actions and acts of Defendants Crittenden, HCBC, and the Board Defendants as aforesaid, the HCSD, the Public, and Plaintiff have been denied the proper payments of fees and charges to the HCSD necessary for its proper operations and upkeep, and so he is entitled to an injunction by this Court rescinding the gift of public funds and ordering the disgorgement and payment by the HCBC and Defendant Crittenden to the HCSD of all wrongfully waived and/or reduced fees, and that the HCBC and Crittenden immediately commence paying the proper rates, as provided in the Bylaws and Resolution #14-025 (adopted April 18, 2014), to the HCSD for water service for all buildings on their property, or under their control.

121. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer impairment and degradation of the value of his property interests within the District, and the use and enjoyment of his property; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort

[193] The Brown Act specifically requires that all actions by a public body be conducted at noticed public meetings, and the public body must provide an opportunity for speech by members of the public in attendance; both as to items on the agenda, and also as to any topic within the jurisdiction of the body.

in addressing the wrongful actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

122 Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $150,000.00

**Count V - DEPRIVATIONS OF RIGHT TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Gifts of Public Funds to Clint Dingman**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

123. Plaintiff alleges that Defendant Clint Dingman wrongfully and improperly conspired with, influenced, and engaged in corrupt activity with Defendant Michele Hanson, HCSD Secretary Patricia Slote, and the other Board Defendants, all public officers, and with the agreement, aid, encouragement, assistance, and ratification of Defendant Bowles, in order to utilize their authority under color of State law, and grant to Dingman gifts of public funds beginning in December of 2015, and thereafter, in the form of pay in excess of his rate (and amount of hours) as set by the Board of the HCSD, and/or Dingman's public contract with the District[194] that would be otherwise due. The HCSD, Hanson, Board Defendants, Dingman and Bowles each and all knew at all times that Dingman falsely and fraudulently billed the District for services and alleged activities which he was not entitled to undertake, or claim payment for, and/or that he did not perform, at rates in excess of his contract, established rate of pay, and permitted number of hours, while also failing to perform those duties and activities required of him by his contract and the HCSD Bylaws; and, that this activity was deliberately concealed from the Public, and Plaintiff, and then illegally ratified by these Defendants in violation of the Constitution and laws of the State of California, the Brown Act, the HCSD Bylaws, and other applicable laws. Each of these Defendants also participated in the creation of false public records and other documents in furtherance of the conspiracy to gift public funds to Dingman.

124. By so doing, and particularly by acting in secret prior to, and then later at, the improperly-held meetings in furtherance of the conspiracy to improperly divert and gift public funds to Dingman, these Defendants acted in violation of Plaintiff's due process rights to attend

[194] These acts are additionally a violation of the HCSD Bylaws.

and protest the illegal act of gifting public funds; improperly and illegally seized, diverted, and gifted, public funds in conspiracy to deliberately deprive Plaintiff of his right to due process; and, his rights to the equal protection of the laws prohibiting such conduct. Each of these Defendants are therefore liable for the their acts in support of the common plan to violate Plaintiff's rights, and illegally act as aforesaid, and to gift public funds to Dingman contrary to: the Board Defendants' public duties under law and as fiduciaries of the District; the HCSD Bylaws; the California Constitution; and otherwise in violation of the laws.

125. Plaintiff alleges that as a result of the actions and acts of these defendants as the HCSD treasury all of the improperly-made payments to him which are in excess of proper rate of pay, for excess hours not approved by the Board, and/or are in contravention of his contract; and, Plaintiff has been made to suffer impairment and degradation of the value of his property interests within the District, and the use and enjoyment of his property; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the wrongful actions of the defendants, all of which has caused him general and special damages in the amount of $125,000.00

126 . Moreover, the acts of these defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

**Count VI - DEPRIVATIONS OF RIGHT TO VOTE, DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Illegal Modification/Voiding of the HCSD Bylaws**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

127. Beginning on December 4, 2015, and ongoingly, the Board Defendants, and thus the HCSD, at the instruction of, and with the agreement, aid, abetting, ratification, and encouragement of Defendants Winston, Hanson, Bowles, Dingman, and Goff, wrongfully, in violation of State law, the HCSD Bylaws, and Plaintiff's rights under the United States Constitution, acted to nullify, ignore, alter, and to countermand, the provisions of the Bylaws of the HCSD requiring votes of its electors, and did so without any notice to, opportunity to be heard, or vote by the electors of the District as required.

128. By so doing, and particularly by acting in secret prior to, and then later at, various improperly-held meetings in furtherance of the conspiracy to improperly divest the Public, and

Plaintiff, of his rights under the Bylaws of the HCSD[195], these Defendants acted in violation of Plaintiff's rights, without due process of law, and in order to deliberately deprive Plaintiff of his rights to vote, and the equal protection of the laws prohibiting such conduct, and the due process of law provided under federal and state law, and as set forth in the HCSD Bylaws.

129. The acts by these Defendants were arbitrary, irrational, capricious, and undertaken by them for an improper purpose - including the furtherance of the various conspiracies and improper goals/acts described *ante*; were adopted and executed as an official custom, policy, and practice of the HCSD; and, were *ultra vires* and void, so must be enjoined by this Court, as must any other act or circumstance arising therefrom.

130. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer loss of income, humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the wrongful actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

131. Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

**Count VII - Violation of 42 USC §1985 as to HCSD, Board Defendants, MPB&F, Munoz, Bowles, Winston, and Dingman - Official Capacity.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

132. Plaintiff alleges that in conspiring to, and performing, the acts as complained of *ante*, and particularly by acting to deny Plaintiff proper, timely, (or, more often, any) notice or opportunity to be heard, all as required by law, concerning HCSD meetings and business, the exercise by Plaintiff of his rights and Duties as a Director[196], the HCSD itself, with the

[195] The Bylaws have been separately lodged. One of the main provisions therein, set forth in multiple places, is the requirement of voter approval to make changes to most of the Bylaws, and also that any resident or property owner within the District has an array of legal rights and recourse concerning improper acts by the HCSD Board, its employees, etc. The primary goal of the Board Defendants and their co-conspirators in this instance was to remove those provisions, so that their actions could go unchecked and unchallenged - particularly by Plaintiff.

[196] Pertaining to the concealment of the meetings and proposed/purported contracts with Defendant MPB&F, and Munoz; as well as Plaintiff's request for indemnity from suit pursuant to Govt. Code §995.

agreement, aid, ratification, encouragement, and assistance of the Board Defendants, and Defendants MPB&F, Munoz, Dingman, Bowles, and Winston, willfully acted in a manner calculated to: thwart, interfere with, intimidate, coerce, and retaliate against Plaintiff because of his reports to the HCSD Board, OSHA, various policing and governmental agencies of the United States and State of California, and Plaintiff's actions in the Siskiyou County Superior Court[197] concerning violations of Federal and State laws, and the HCSD Bylaws, by the HCSD, the Board Defendants, Winston, Bowles, Dingman, Goff, and other employees, agents, and contractors, thereof; including by wrongfully refusing Plaintiff access to HCSD facilities and records; and, to punish and oppress Plaintiff for engaging in Constitutionally and/or statutorily protected activities, while depriving him of the remedies afforded by the HCSD Bylaws - including the right to vote on changes thereto as a Director.

133. Because these adverse actions taken against Plaintiff by the Board Defendants, HCSD, Hanson, MPB&F, Munoz, Dingman, Bowles, and Winston, were a united effort with some of the ultimate goals thereof being to: interfere with; intimidate into abandoning; impede; and, attempt to prevent Plaintiff from exercising, his Federal, State, and local rights, duties, and authority as a member of the Board, the public, an elector, and resident within the District, and specifically to interfere with, and prevent on multiple occasions plaintiff's exercise of his right to vote as a public officer and Director on matters as provided under State law, and established on April 18, 2014 by the HCSD Bylaws, these Defendants also thus violated the provisions of 42 USC §1985.

134. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer actual impairment and interference with his statutory and constitutional rights, humiliation, upset, oppression, embarrassment, worry, loss of income, loss of employment, and ongoing severe psychological pain and distress; while also having to expend time, money, and effort in addressing the wrongful actions of these Defendants, all of which has caused him general and special damages in the amount of $150,000.00

135. Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

[197] This included actions filed by Plaintiff himself, as well as Plaintiff's filing of declarations, and service of documents, in support of legal actions filed therein by other persons.

**Count VIIa - Violation of 42 USC §1985 as to HCSD, Board Defendants, Hanson, MPB&F, Munoz, Bowles, Winston, and Dingman - Individual Capacity.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

132a. Plaintiff alleges that in conspiring to, and performing, the acts as complained of *ante*, and particularly by acting to deny Plaintiff proper, timely, (or, more often, any) notice or opportunity to be heard, all as required by law, concerning HCSD meetings and business, the exercise by Plaintiff of his rights as an elector within the District under State law and the HCSD Bylaws (and particularly acting in concert to circumvent, repeal and/or modify without a public vote, and/or ignore the Bylaws in contravention of the provisions thereof), the Board Defendants, and thus the HCSD itself, with the agreement, aid, ratification, encouragement, and assistance of Defendants MPB&F, Munoz, Hanson, Dingman, Bowles, and Winston, willfully acted in a manner calculated to: thwart, interfere with, intimidate, coerce, and retaliate against Plaintiff because of his reports to the HCSD Board, OSHA, various policing and governmental agencies of the United States and State of California, and Plaintiff's actions in the Siskiyou County Superior Court[198] concerning violations of Federal and State laws, and the HCSD Bylaws, by the HCSD, the Board Defendants, Winston, Bowles, Dingman, Goff, and other employees, agents, and contractors, thereof; including by wrongfully refusing Plaintiff access to HCSD facilities and records; and, to punish and oppress Plaintiff for engaging in Constitutionally and/or statutorily protected activities, while depriving him of the remedies afforded by the HCSD Bylaws - including the right to vote on changes thereto as an elector of the District.

132b. Because these adverse actions taken against Plaintiff by the Board Defendants, HCSD, Hanson, MPB&F, Munoz, Dingman, Bowles, and Winston, were a united effort with some of the ultimate goals thereof being to: interfere with; intimidate into abandoning; impede; and, attempt to prevent Plaintiff from exercising, his Federal, State, and local rights, duties, and authority as a member of the public, an elector, and resident within the District, and specifically to interfere with, and prevent on multiple occasions plaintiff's exercise of his right to vote as an elector within the District as established on April 18, 2014 by the HCSD Bylaws, these Defendants also thus violated the provisions of 42 USC §1985.

132c. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer actual impairment and interference with his statutory and constitutional

[198] This included actions filed by Plaintiff himself, as well as Plaintiff's filing of declarations, and service of documents, in support of legal actions filed therein by other persons.

rights, humiliation, upset, oppression, embarrassment, worry, loss of income, loss of employment, and ongoing severe psychological pain and distress; while also having to expend time, money, and effort in addressing the wrongful actions of these Defendants, all of which has caused him general and special damages in the amount of $150,000.00

132d. Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

**Count VIII - Violation of Right to Due Process; Equal Protection of the Laws as to HCSD, Board Defendants, Dingman, Winston, Bowles, Hanson, and Goff - CPRA.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

136. Plaintiff alleges that during the period of December 4, 2015, through the current date, and ongoingly, the Board Defendants, the HCSD, and the HCSD's employees and agents (Dingman, Goff, Bowles, and Winston), had, and operated under, policies, customs, and practices of willfully and wrongfully violating the California Public Records Act (CPRA) by: withholding disclosable agency and public records from the Public and Plaintiff in order to conceal the various improper, illegal, and/or wrongful actions of the Board Defendants, and/or Defendants Winston, MPB&F, Munoz, Dingman, Bowles, Goff, Hanson, Basic Labs, Martin, HCBC, Crittenden, and Soares; failing to respond as required by law to CPRA requests made by Plaintiff, or to produce for inspection public records requested by Plaintiff; failing to maintain a place open to the public during normal office hours for inspection of public records of the HCSD as required by law; wrongfully and improperly ignoring, and/or resisting, lawful public records requests by Plaintiff, and the Public, without any response thereto being made as required by law, and without any opportunity to be heard as to the requests[199]; via the *ultra vires* assistance of Defendants Winston, Bowles, Dingman, and/or Goff, and by other improper means - all without due process of law.

137. Each such act of wrongful, illegal, improper, or unethical conduct to violate the CPRA by the HCSD, the Board Defendants, Dingman, Bowles, and/or Goff as to Plaintiff, was aided, abetted, encouraged, and ratified by Defendant Winston, who: gave instructions and

[199] Under the CPRA (Govt. Code §6250, et seq), a requestor is entitled to notice within 10 days of a response to the request, as well as a response setting forth in detail certain findings. Requestors are also entitled to access to records, and to assistance by the agency in locating records. The HCSD Byaws also specifies that certain records are public records that must be disclosed upon request.

drafted letters and other documents for use by the Board Defendants, HCSD, Bowles, Dingman, and Goff in support of the conspiracy to, and customs, policies, and practices of, violating the CPRA, and particularly as relating to Plaintiff's requests made per that law; appeared in various CPRA actions brought against the Board and the HCSD without lawful authorization, and while misrepresenting his authority and agency to do so, thus acting in violation of State law, the Rules of Professional Conduct, and the HCSD Bylaws; and, billed the HCSD for all of these improper and/or illegal efforts, thus engaging in false claims against the HCSD.

138. All of the acts in violation of the CPRA as to Plaintiff undertaken by these Defendants are wrongful and illegal as set forth herein, are a nuisance, and violate Plaintiff's right to not be denied the benefit and protection of the laws without due process of law.

139. The acts of the HCSD, Board Defendants, Dingman, Goff, Winston, and Bowles, in failing to abide by the CPRA as provided by law, and mandated by the Bylaws, and conspiring and acting to maintain, and operate under, policies, customs, and practices which violated the CPRA, and to have Winston act in support of the violations of the CPRA while billing the District for such wrongful acts, breached the fiduciary duty of these Defendants to the District and the Public, are a false claim to the HCSD by Winston (assisted thereby by the other Defendants named here), and constitute a violation of Government Code sections 12650, et seq.

140. All of these acts by the Board Defendants, Winston, Bowles, Goff, and Dingman, also thus deprived Plaintiff of his protections, rights, and privileges under Federal and State law, and the HCSD Bylaws; and denied Plaintiff the right to be free of improper, wrongful, illegal, and unethical acts by these Defendants, and their deliberate attempt to assert his right to monitor and petition concerning the functions of the HCSD, its Directors, and employees/agents; and, the right to have his elected Representatives fulfill their legal duty to access records of the HCSD in order to monitor and supervise the operations of the HCSD facilities and employees; all without due process of law.

141. Plaintiff alleges that as a result of the actions and acts of the Defendants as aforesaid, he has been made to suffer violation of his constitutional and statutory rights, humiliation, upset, embarrassment, worry, reduction of his property values, personal physical danger, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

142. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him

under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $100,000.00

**Count VIIIa - DEPRIVATION OF 4th AMENDMENT RIGHTS; RIGHTS TO DUE PROCESS, EQUAL PROTECTION, PETITION, and ASSOCIATION: HCSD and Board Defendants; Winston.**

142a. Plaintiff alleges that the Board Defendants (and thus the HCSD), with the aid, assistance, encouragement, and ratification of Defendant Robert Winston, wrongfully failed to act on, or respond properly to Plaintiff's request for indemnification pursuant to Government Code 810 et seq, and section 995, concerning a legal action filed in US District Court against him in his official capacity, and pertaining to acts and duties undertaken by him in his official capacity as Director of the HCSD. Plaintiff further alleges that these failures arose from the desire to, and acts to, retaliate against Plaintiff for his exercise of rights to free speech, petitioning, assembly, and association.

142b. Plaintiff made the requests for indemnification in compliance with Government Code 995 to the HCSD, and Board Defendants, and the refusal to respond as required by law, and to provide Plaintiff a noticed hearing and opportunity to be heard by the HCSD deprived Plaintiff of his due process and equal protection[200] rights, insofar as those defendants not only failed to abide by the provision of statute, but also (in part based upon the advisement and instruction of Winston) treated Plaintiff differently regarding his indemnification requests than other persons who have requested indemnification by the HCSD. Plaintiff can, and hereby does, seek relief in the form of a writ of mandate from this court concerning the willful failure to perform required administrative actions of the HCSD and Board Defendants relative to his indemnification request, as well as seeking compensation and other relief for the due process and equal protection violations engaged in by the HCSD and Board Defendants in acting to *de facto* deny Plaintiff's indemnification request absent any findings of fact, without any notice of his

---

[200] The HCSD, and Board Defendants routinely placed (and approved) indemnification requests for themselves, and for their co-conspirators on agendas - even when such indemnifications had not been requested in writing. The HCSD, Board Defendants, and Winston also routinely approved indemnifications for themselves and/or their co-conspirators without any public notice or meetings at all. In fact, in regards to Defendant Hanson, Winston repeatedly told HCSD Board members and others that the HCSD had "no choice" but to indemnify a Director acting in any official capacity, and that such indemnification did not even require an act by the Board, but was rather "automatic" under the law. Winston did this in order to falsely bill the HCSD for services he performed for Hanson in a civil harassment action. The Board Defendants thereafter ratified and approved that conduct (and the billing) by payments for those services without any review.

right to judicial review, and without providing due process relating thereto; and, while basing that denial upon Plaintiff's protected conduct in associating with persons engaged in legal actions against the HCSD and various of its employees and agents (and filing and prosecuting such legal actions himself), serving documents associated with such legal actions, and for making truthful declarations in such legal actions. (See *Mata v. City of Los Angeles* (1993) 20 Cal. App.4th 141 at 147-49; also *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999).)

142c. As a consequence of these Defendants' acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy; undue, wrongful, and unfair suspension and termination of the benefits of his employment and elected position without any opportunity to be heard[201], interference with and violation of his statutory rights to indemnification and to be defended; seizure of a protected property interest arising from his employment and status as a Director of the HCSD without due process of law; violations of his rights to association, petition, due process of law, and the equal protections of the laws in his official and individual capacities; threats during performance of his duties; interference with the performance of his duties; retaliation for the exercise of his protected rights of association, free speech, and petitioning (in both his official, and individual capacities); extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, intimidation, oppression, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general, personal, and special damage of $150,000.00.

142d. The conduct of the HCSD, Board Defendants, and their conspirator, Winston, as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages, in the sum of $300,000.00.

**<u>Count IX - Retaliation in Employment by HCSD, Board Defendants; 42 USC §300j-9(i)</u>**

142e. Plaintiff's complaints to the Board of the HCSD, to the Courts, and to State and Federal agencies concerning the violations of the Clean Water Act by the HCSD, the Board

---

[201] As a public employee working for a political subdivision of the State of California, Plaintiff asserts that, in addition to other administrative due process, he is entitled to the benefit of a full hearing pursuant to Govt. Code 995 concerning any allegations against him related to his job and/or job functions, and, in fact, to be fully indemnified as to all claims in the particular instances giving rise to his 995 requests of the Board Defendants and HCSD.

Defendants, Goff, Bowles, Winston, and Defendant Dingman entitle him to protection from retaliation in employment pursuant to 42 USC § 300j-9(i). The Board Defendants, Winston, Bowles, Dingman, and Goff, by agreeing, participating, conspiring, ratifying, and taking part in coordinated actions calculated to retaliate against Plaintiff for his acts of protected speech and petitioning made while a public officer and elected official in the form of reports and complaints by: refusing to provide indemnity to him upon his request as a public officer on the same terms and conditions, and via the same procedural process, as all other similarly-situated Directors, former Directors, and/or employees of the HCSD; impeding and/or *de facto* eliminating his ability to exercise his statutory authority and rights as a Director of the HCSD[202]; refusing to provide notice, opportunity to be heard, and other due process associated with his Government Code 995 claim for indemnification; creating and ratifying at illegal meetings various wrongful, procedurally and statutorily-deficient resolutions and motions directed against Plaintiff, as well as refusing to provide notice, opportunity to be heard, and other due process associated with his Government Code 995 indemnification request[203]; creating and ratifying at illegal meetings various resolutions, motions, and ultra vires acts by individual Directors directed against Plaintiff; failing and refusing to provide Plaintiff a timely written notification concerning his indemnification request along with notice concerning his right to judicial review of the denial; and, refusing to permit Plaintiff access to District records as required by the California Public Records Act, thus violated that law, to Plaintiff's general and special damage.

142f. Plaintiff alleges that as a result of the actions and acts of these Defendants as aforesaid, he has been made to suffer humiliation, upset, intimidation, denial of and interference with his statutory and constitutional rights, coercion, oppression, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time, money, and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

142g. Moreover, the acts of these Defendants were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

---

202 In regards to Plaintiff's request for indemnification in his official capacity.

203 And, in fact, denying Plaintiff's 995 indemnification request on the basis of Plaintiff's exercising of his right to association with persons engaged in legal actions against the HCSD, its Board, and/or HCSD employees/agents, as well as his acting as a witness and serving documents in such proceedings.

**Count X - Retaliation by HCSD and Board Defendants; Winston -18 USC, section 1513(e)**

142h. Plaintiff's complaints, and assistance to others in making complaints, to the Board of the HCSD, and to State and Federal law enforcement agencies concerning the violations of the Safe Drinking Water Act, the Clean Water Act by the HCSD and the Board Defendants (in conspiracy and collusion with Defendant Winston), entitle him to protection from retaliation in any manner, including employment and as to the benefits of his former position as a public officer, and Director, of the HCSD, pursuant to 18 USC §1513(e).

142i. The HCSD, via and in conspiracy with, the Board Defendants, and Winston, by participating in the actions as described in this complaint, also undertook such acts in a manner calculated to retaliate against Plaintiff for: his political speech, reports, and complaints to the HCSD and/or government agencies about the HCSD; association with persons bringing legal actions against the HCSD, its Directors, employees, and/or agents; service of papers relating to suits against the HCSD and its Directors, employees, and/or agents; truthful testimony in suits brought by other persons against the HCSD, its Directors, employees, and/or agents; and, by agreeing and encouraging the Board Defendants to use their official positions to eliminate Plaintiff's right to be indemnified for his actions undertaken in good faith as part of his former duties as Director of the HCSD, all to Plaintiff's detriment and injury.

142j. Plaintiff alleges that as a result of the actions and acts of theses defendants as aforesaid, he has been made to suffer humiliation, coercion, oppression, intimidation, upset, embarrassment, worry, loss of employment, loss of income, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

142k. Moreover, the acts of these defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

**Count XI - Violation of Clean Water Act by Robert Puckett, Sr.**

142l. The acts of Defendant Robert Puckett, Sr. as described in paragraph 10, above, permitted toxic chemicals, poisons, petrochemicals, sewage, trash, plastic, contaminated water, and other pollutants to enter the , roadways, drainage ditches, streams, and creeks in the community of Hornbrook, and thus into the Klamath River without any permit to do so issued by the Environmental Protection Agency.

142m. These acts by Puckett were undertaken by him with willful indifference to the laws, and to the threat to the environment, the public, and to Plaintiff, which would result from his actions as aforesaid. Plaintiff alleges that as a result of the actions and acts of the Defendant as aforesaid, the environment of Hornbrook, including the public roadway traveled by Plaintiff to go to and from her home, as well as the riparian areas, streams, and river near Defendant Puckett's house, have become degraded and contaminated, while Plaintiff has been made to suffer impairment and degradation of the value of her property interests, and the use and enjoyment of her property; humiliation, upset, embarrassment[204], worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the actions of the Defendant.

142n. Moreover, the acts of Defendant Puckett as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States to be free of toxic pollution of his local environment, and Puckett relied upon his agency as a public officer under State law to thwart any corrective action against him personally by the HCSD, including making sure that no agenda item concerning his conduct, or the condition of his property, ever appeared on any HCSD agenda.

142o. Plaintiff is entitled to an injunction from this Court commanding that Defendant Puckett immediately clean up the subject property by removing: all derelict and/or leaking vehicles; rodent-infested RVs; garbage; refuse; debris piles; improperly stored or leaked petrochemicals; contaminated soil and water; non-permitted and/or improperly modified septic systems; unsafe and/or unsanitary outbuildings; rodentcides; pesticides; trash; litter; and any excessive number of persons. Plaintiff is also entitled to an award of attorney fees and costs he may incur as a result of bringing this action. The Court is further requested to impose appropriate statutory penalties for the long-ongoing violations of the Clean Water Act by Puckett, as is provided by law.

**Count XII - Violation of Safe Drinking Water Act by Robert Puckett, Sr.**

142p. The acts of Defendant Robert Puckett, Sr. as described in paragraph 10, above, permitted toxic chemicals, petrochemicals, sewage, trash, plastic, contaminated water, and other pollutants to enter the groundwater table, streams and creeks in the community of Hornbrook,

[204] Plaintiff is often asked, for instance, who lives in the "dumpy A-frame with all the cars and trash around it" when it is learned she is from Hornbrook, or when people visit her from other areas.

and thus into the Klamath River without any permit to do so issued by the Environmental Protection Agency.

142q. These acts by Puckett were undertaken by him with willful indifference to the laws, and to the threat to the environment, the public, and to Plaintiff, which would result from his actions as aforesaid, and Puckett relied upon his agency as a public officer under State law to thwart any corrective action against him personally by the HCSD, including making sure that no agenda item concerning his conduct, or the condition of his property, ever appeared on any HCSD agenda. Plaintiff alleges that as a result of the actions and acts of the Defendant as aforesaid, the environment of Hornbrook, including the public roadway, riparian areas, streams, and river near Defendant Puckett's house, have become degraded and contaminated, while Plaintiff has been made to suffer impairment and degradation of the value of his property interests, and the use and enjoyment of his property; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the actions of the Defendant. Moreover, the acts of Defendant Puckett as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States.

142r. Plaintiff is entitled to an injunction from this Court commanding that Defendant Puckett immediately clean up the subject property by removing: all derelict and/or leaking vehicles; rodent-infested RVs; garbage; refuse; debris piles; improperly stored or leaked petrochemicals; contaminated soil and water; non-permitted and/or improperly modified septic systems; rodentcides; pesticides; trash; litter; and any excessive number of persons. Plaintiff is also entitled to an award of attorney fees and costs he may incur as a result of bringing this action.

142s. Finally, Plaintiff is entitled under the Act to request this Court assess statutory penalties against Defendant Puckett, and does so request those penalties be assessed.

**Count XIII**

**Violation of Federal Insecticide, Fungicide and Rodentcide Act by Robert Puckett, Sr.**

142t. The acts of Defendant Robert Puckett, Sr. as described paragraph 10, above, permitted toxic insecticides, rodentcides, and/or fungicides, contaminated water, and other pollutants to enter the groundwater table, roadways, drainage ditches, streams and creeks in the community of Hornbrook, and thus into the Klamath River without any permit to do so issued by the Environmental Protection Agency.

142u. These acts by Puckett were undertaken by him with willful indifference to the laws, and to the threat to the environment, the public, and to Plaintiff, which would result from his actions as aforesaid. Plaintiff alleges that as a result of the actions and acts of the Defendant as aforesaid, the environment of Hornbrook, including the riparian areas, streams, and river near Defendant Puckett's house, have become degraded and contaminated, while Plaintiff has been made to suffer impairment and degradation of the value of her property interests, and the use and enjoyment of his property; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the actions of the Defendant. Moreover, the acts of Defendant Puckett as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to her under the Constitution and laws of the United States.

142v. Plaintiff is entitled to an injunction from this Court commanding that Defendant Puckett immediately clean up the subject property by removing: all derelict and/or leaking vehicles; rodent-infested RVs; garbage; refuse; debris piles; improperly stored or leaked petrochemicals; contaminated soil and water; non-permitted and/or improperly modified septic systems; rodentcides; pesticides; trash; litter; and any other source of trace amounts of insecticide, fungicide, and rodentcide; and any excessive number of persons contributing to such pollution. Plaintiff is also entitled to an award of attorney fees and costs she may incur as a result of bringing this action. The Court is further requested to impose appropriate statutory penalties for the long-ongoing violations of the Act by Puckett, as is provided by law.

**Count XIV - Violations of the California Public Records Act; HCSD Bylaws as Due Process/Equal Protection Violations**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

142z. Beginning on December 4, 2015, and ongoingly, the Board Defendants, at the instruction of, and with the agreement, aid, abetting, ratification, and encouragement of Defendants Winston, Hanson, Bowles, Dingman, and Goff, wrongfully, in violation of State law and the HCSD Bylaws, acted to nullify, ignore, alter, and to countermand, the provisions of the California Public Records Act (CPRA), and Bylaws of the HCSD, without due process of law.

142aa. By so doing, and particularly by acting in secret prior to, and then later at, various improperly-held meetings in furtherance of the conspiracy to improperly divest the Public, and

Plaintiff, of his rights under the CPRA and Bylaws of the HCSD[205], these Defendants acted in violation of Plaintiff's rights, without due process of law, and in order to deliberately deprive Plaintiff of his rights under the CPRA and the HCSD Bylaws, and the equal protection of the laws prohibiting such conduct, and the due process of law provided under state law, and as set forth in the HCSD Bylaws.

142bb. The acts by these Defendants were arbitrary, irrational, capricious, and undertaken by them for an improper purpose - including the furtherance of the various conspiracies and improper goals/acts described *ante*; were adopted and executed as an official custom, policy, and practice of the HCSD; and, were *ultra vires* and void, so must be enjoined by this Court, as must any other act or circumstance arising therefrom.

142cc. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer loss of income, humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the wrongful actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

142dd. Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $250,000.00

**Count XV - DEPRIVATIONS OF RIGHT TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Gifts of Public Funds - as to Defendants James Soares, HCSD, and the Board Defendants.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

142ee. Defendant James Soares wrongfully and improperly conspired with, influenced, and engaged in corrupt, wrongful activity with the HCSD, and the Board Defendants, in order to utilize the Board Defendants' authority under color of State law, to receive gifts of public funds from December 04, 2015, and thereafter, in the form of reduced water charges, attribution of service[206], and waived fees[207] that would be otherwise due, and that this activity was deliberately

[205] The Bylaws have been separately lodged.

[206] Including waiver of the fees and costs associated with annual inspection/certification of Soars' cross-check device. Soares also wrongfully and improperly arranged for water service to his rental house in a

concealed from the public in violation of the California Constitution, the Brown Act, the HCSD Bylaws, and other applicable laws. At the time the conspiracy and acts were undertaken, each of these Defendants knew that their plan and actions violated State law, and the HCSD Bylaws.

142ff. By so doing, and particularly by acting in secret prior to, and then at any purported public meeting, these defendants acted: in violation of Plaintiff's due process rights to attend, speak[208], and protest/petition the planning of, and act(s) of, illegal gifting of public funds; in conspiracy to deliberately deprive Plaintiff of his right to due process; his right to vote as provided by the HCSD Bylaws; and, his rights to the equal protection of the laws prohibiting such conduct.

142gg. The HCSD, Soares, and Board Defendants, are therefore liable, in their individual, as well as official capacities, for support of the common plan to violate Plaintiff's rights, and to wrongfully and/or illegally act as aforesaid, and to gift public funds to Defendant Soares, contrary to the HCSD and Board Defendants' public duty, the HCSD Bylaws, the California Constitution, and statutory laws.

142hh. Plaintiff alleges that as a result of the actions and acts of Defendants Soares, HCSD, and the Board Defendants as aforesaid, the HCSD, the Public, and Plaintiff have been denied the proper payments of fees and charges to the HCSD necessary for its proper operations and upkeep, and so he is entitled to an injunction by this Court rescinding the gift of public funds and ordering the disgorgement and payment by Defendant Soares to the HCSD of all wrongfully waived and/or reduced fees, and that Soares is to immediately commence paying the proper rates, as provided in the Bylaws and Resolution #14-025 (adopted April 18, 2014), to the HCSD for water service for all buildings under his control.

142ii. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer impairment and degradation of the value of his property interests within the District, and the use and enjoyment of his property; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the wrongful actions of the defendants, all of which has caused him general and special damages in the amount of $150,000.00

---

tenant's name instead of his own after his former tenant "skipped out" without paying several hundred dollars in water fees. Soares also had the past fees incurred by his former tenant wrongfully waived by the Board Defendants without any public and/or due process.
[207] These acts are additionally a violation of the HCSD Bylaws.
[208] The Brown Act specifically requires that the public body provide for an opportunity for speech by members of the public in attendance; both as to items on the agenda, and also as to any topic within the jurisdiction of the body.

142jj. Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, the state of California, and the HCSD Bylaws, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $150,000.00

**SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

143. In making out each of the following "Counts" in this Second Claim for Relief against one or more Defendants, Plaintiff, in addition to incorporating the factual allegations found in the preceding generalized sections and paragraphs, hereby specifically incorporates those Sections corresponding to each Defendant named in the specific Count. That is, if a Count lists "Puckett", then the reader should refer to Section II on page 9 for additional details of his conduct, and other factual allegations, that apply to the Count. If the Count lists the "HCSD", one would refer to Section VI at page 20, etc. The "Board Defendants" are defined as Puckett, Buckley, Slote, and Peterson-Tulledo on page 7, and so reference to them would incorporate each of their individual sections as well. The term "these Defendants" as used in any particular Count, shall mean only the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants of this action in a Count, he will state "all Defendants" specifically.

144. Plaintiff also asserts that at all times material, the Board Defendants particularly, but also all other Defendants, each had a duty to refrain from violating the law, and/or to perform certain acts under the laws as aforesaid in the sections pertaining to each of them (and generally), and breached those duties while engaging in the conduct set forth in this Complaint.[209] Further, in the event Plaintiff states a claim or cause of action that only permits injunctive or other relief, but has inadvertently asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as otherwise provided by law, and Government Code section 814.

**Count – I, Violations of HCSD Bylaws**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

---

[209] See also California Government Code section 815.6; CACI # 423 "Public Entity Liability for Failure to Perform Mandatory Duty"; Sources and Authority.

145. Plaintiff, as provided by Section A-9(26) of the HCSD Bylaws[210], does hereby allege that while engaging in the conduct described *ante*, the HCSD, Board Defendants, Bowles, Dingman, Goff, Winston, and Kirsher, Winston, & Boston, L.C., did wrongfully and illegally agree and conspired to, and actually did, violate, and/or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws[211], and by doing so: wrongfully purportedly "eliminated" provisions of the Bylaws of the HCSD[212] in order to facilitate the wrongful acts attributed to them in the foregoing sections, and to defeat the beneficial public purpose of the Bylaws; created false public documents; wrongfully created void public contracts that they held out as being valid; wrongfully diverted HCSD funds to their own use; held meetings and conducted purportedly official HCSD business which goals and process were not in compliance with the Bylaws and State laws, and so void; failed to properly train and supervise Dingman, Goff, and Bowles in compliance with the Bylaws and require them to conform their conduct thereto; corruptly and wrongfully used their official positions to perform improper, illegal, and unethical acts as described in the foregoing sections and herein; improperly waived fees; failed to impose and collect the proper amount of fees that were due; failed to impose and collect the "standby fee" as to eligible parcels within the District, thereby depriving the HCSD of necessary funds; failed to shut off service to overdue, delinquent, and/or abandoned accounts; failed to timely and properly collect late fees and other service penalties from customers; wrongfully granted fee reductions and waivers to certain of their friends and acquaintances without due process and/or in violation of the Bylaws; failed to properly levy the rates set for businesses, commercially-zoned properties, and multiple dwelling customers as provided in the Bylaws; failed to require landlords to put water service for rentals into their name as provided in the Bylaws and the Water Code- all without voter approval as to any of those actions as required by the April 18, 2014 Bylaws of the HCSD. The Board Defendants also failed to provide, impose, and collect rates and other charges sufficient for the proper funding of the operations, upkeep, and repairs to the District infrastructure and facilities (as mandated by California Water Code Sections 31007, 61100, 71616 to the detriment of the operation and function of the District; and, acted generally to the detriment of the District all in violation of their duty of loyalty and good faith.

---

[210] The Bylaws have been previously lodged. Plaintiff believes, however, that the Clerk inadvertently failed to note such lodging on the docket.

[211] Violation of the HCSD Bylaws is also a misdemeanor crime pursuant to Government Code section 61064.

[212] Particularly, insofar as Plaintiff claims denial of his right to vote, and to petition, those provisions of the multiple sections of the Bylaws requiring voter approval for changes.

146. The Board Defendants, as well as Bowles, Dingman, Goff, and Winston, during the period of on or about December 4, 2015 (and ongoingly as specified), have failed to act as mandated by the HCSD Bylaws, as set forth in Sections A-1(4); A-1(6); A-1(7); A-1(10); A-2(3); A-2(10); A-2(11); A-3.3; A-3(7-8); A-4(3); A-5-1; A-7; A-9(1); A-9(3); A-9(13); A-9(14); "MEETINGS" at p.15, #1;1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; 1-4.040, and, 1-5.030. The Board Defendants are therefore personally liable for damages to the HCSD, as well as to Plaintiff, and/or acting on behalf of the public and/or the HCSD, as provided in HCSD Bylaws Sections A-9(1); A-9(13); A-9(26); and, 1-5.030. Pursuant to the Bylaws, each violation thereof is a nuisance *per se*, regardless of any other considerations normally attendant to nuisance.

147. The Board Defendants are therefore also liable for all monies that were lost to the Hornbrook Community Services District as a result of the Board Defendants', and/or their conspirators' actions as set forth herein, and should be made to pay all of the revenue lost as a result of their actions directly to the District. Moreover, pursuant to the provisions of the HCSD Bylaws at Section A-9(26), the Board Defendants are liable to Plaintiff for all costs of any sort associated with bringing this action, and are also liable for any attorney fees Plaintiff may ultimately incur - proof of which shall be established at trial. The Board Defendants are also subject to a writ of mandate by the Court that they abide by all Federal, State, and local laws.

148. Additionally, and as a consequence of the Board Defendants, Bowles, Dingman, Goff, Winston, and Kirsher, Winston, & Boston, L.C.'s acts as aforesaid, Plaintiff has been caused to suffer devaluation of his interest in real property within the District, loss of use of property, loss of enjoyment of property, threats to his person and property, personal damages, and to suffer, and has actually suffered; lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $150,000.00.

149. The conduct of the Board Defendants, Bowles, Dingman, Goff, Winston, and Kirsher, Winston, & Boston, L.C. as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, the State of California, and the Bylaws of the HCSD, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages, in the sum of $100,000.00.

**Count II Willful Negligence, and Negligence**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

150. Plaintiff alleges that in performing the acts as complained of herein, each and all of the Defendants acted negligently, recklessly, and with wanton indifference and disregard for any possible harm that may have befallen the HCSD, the Public, and/or Plaintiff as a result of their failures to abide by the Constitution and laws of the United States, the State of California, and the Bylaws of the HCSD, and other acts as complained of herein in the section(s) devoted to each particular Defendant. (See also, generally, California Civil Code, section 1714.)

151. As a consequence of these Defendants' willfully negligent, and/or negligent acts as aforesaid, Plaintiff has been caused to suffer general and special damages, devaluation of his property interests, inconvenience, annoyance, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, to him general and special damage of $150,000.00.

**Count III - Nuisance, and Nuisance Per Se by Robert Puckett, Sr.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

151a. The acts of Defendant Robert Puckett, Sr. as described in paragraph 10, and in Counts XI through XIII in Plaintiff's First Claim for Relief, were a nuisance, and nuisance per se to Plaintiff, to the Federal and State waterways, and to the Public in and about the community of Hornbrook.

151b. These acts by Puckett were undertaken by him with willful indifference to the laws, to the threat to the environment, the public, and to Plaintiff, which would result from his actions as aforesaid. Plaintiff alleges that as a result of the actions and acts of the Defendant as aforesaid, he has been made to suffer impairment and degradation of the value of his property interests, the use and enjoyment of his property and the public roads in his community, and the creeks and streams nearby; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the actions of Defendant Puckett, all of which has caused him general and special damages in the amount of $25,000.00

151c. Moreover, the acts of Defendant Puckett as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted

to him under the Constitution and laws of the United States, and the State of California, and so he is entitled to punitive damages against the defendant, in the amount of $50,000.00

**Count IV - Nuisance by HCSD, Board Defendants, Dingman, and Goff.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

151d. Plaintiff, does hereby allege that each and all of the Board Defendants, as well as Defendants Dingman, and Goff have, repeatedly and continuously since December 4, 2015, acted negligently, recklessly, wantonly, and/or willfully to violate the Safe Drinking Water Act, the Clean Water Act, the California Health and Safety Code, Water Code[213], and the HCSD Bylaws, in their administration of the HCSD, and the operation of the HCSD water production, treatment, and/or distribution facilities, and thereby created, assisted in creating, and/or ratified the acts of the other specified Defendants in creating, annoying and/or unsafe conditions relating to the proper and lawful operation of the HCSD water facilities[214], and distribution of water to the public and to Plaintiff. These Defendants also failed to follow state and local laws relating to the proper administration and operation of the HCSD, all of which acts were thus a nuisance and/or nuisance *per se* to the Public, and to Plaintiff, all to his general and special damage of $50,000.00

**Count V - Violations of Government Code Section 1090 and 87100 - Self Dealing**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

151e. Plaintiff alleges that the HCSD, each and all of the Board Defendants, along with Defendants Winston; Bowles; Dingman; Goff; Murphy, Pearson, Bradley & Feeney, Inc.; Munoz; and, Kirsher, Winston, & Boston, L.C., in planning for, and acting at meetings held in violation of the HCSD Bylaws, and/or the Brown Act (and otherwise), for the purpose of creating various consensus between the Board Defendants to purportedly violate and/or ignore the HCSD Bylaws[215]; act upon Plaintiff's request for indemnification; divert District funds to

---

[213] Specifically sections 31007 and 71616, mandating rates sufficient to provide for maintenance, repair, upkeep, and necessary improvements to the HCSD's water production, treatment, and distribution facilities.

[214] This would include the conduct of Clint Dingman actually residing at the water plant beginning about in June of 2016.

[215] The HCSD Bylaws provide specifically that Board members will be held personally liable for improperly waiving fees, failing to collect fees, etc, while Plaintiff has specifically alleged these Defendants acted together to accomplish this goal in regards to themselves, their friends, contractors, co-conspirators, and associates. The Board Defendants additionally thus voted on issues in which they have a direct financial conflict of interest. See HCSD Bylaws at Sections A-2(10), A-9(1), A-9(10-11), A-

create illegal (written or verbal) contracts with the various other defendants herein outside of public process, and without any lawful procedures, regardless of the facts or circumstances of such need for, or actually performed work; to hire the various lawyer and law-firm Defendants; and so voting on such matters while having a conflict of interest in the subject of the contract(s) and related matters under consideration, and so acting in conflict with the provisions of California Government Code at sections 1090, and 87100 (and Rules of Professional Conduct at 3-600(E), as well as Business and Professions Code sections 6104, 17200, etc) on each such occasion, all the while operating in secret amongst themselves, and without notice to, or opportunity to be heard by Plaintiff, the public, and/or the electors of the District.

151f.  These acts violated these Defendants' duties as public officers, employees, and/or agents of public officers and/or employees, and also, particularly, the fiduciary duty to the District[216]. The consecutive, and concurrent representation of HCSD employees, District officers, and the HCSD itself by MPB&F, also violated the Rules of Professional Conduct, at 3-600(E)[217], among others, and such contracts are also thus void as illegal on that basis.

151g.  Also, because the HCSD and Board Defendants' contracts with Winston; Bowles; Goff; Murphy, Pearson, Bradley & Feeney, Inc.; Munoz; and, Kirsher, Winston, & Boston, L.C., insofar as they were created by the Board Defendants purportedly on behalf of the District, and/or to divert District funds to them, are in violation of sections 1090 and 87100, this Court should declare them void (and particularly including any agreement to grant carte blanche to Winston to represent the HCSD and "certain District officers" on just the say-so of a single Director, or himself, even before any action has been filed, without any formal Board action being taken, all in violation of Govt. Code section 61045).  Because the contracts with Winston; Bowles; Goff; Murphy, Pearson, Bradley & Feeney, Inc.; Munoz; and, Kirsher, Winston, & Boston, L.C.,  were void, Plaintiff seeks disgorgement of all fees paid to them by the District, in that those fees should be paid to Plaintiff in order that they ultimately be returned to the District's treasury.  The actual amount of such fees will have to await further discovery, and/or trial to be determined.

---

9(13), A-9(14), and, A-9(26).  The Bylaws also provide in numerous sections that they cannot there be modified (including "revoking" them) without voter approval.
[216] By engaging in this conduct for their personal gain, and taking wrongful and/or unlawful advantage of the Board Defendants' offices as Directors of the HCSD as alleged herein.
[217] No permission or waivers under that Rule were ever sought, or obtained by any of the lawyer or law firm defendants prior to undertaking conflicted simultaneous representation in any of the numerous legal matters they involved themselves in. (CalBar Rule 3-600(E).)  In fact, Plaintiff was never even informed by the HCSD, Munoz, or MPB&F that any negotiations for appointment as counsel were underway

151h. These Defendants, and the Board Defendants especially, are also liable for all costs incurred by the District as a result of their actions, and should be made to pay those costs. Plaintiff has standing to bring this cause of action, and to act to have the damages paid to the District by Defendants Winston; Bowles; Dingman; Goff; Murphy, Pearson, Bradley & Feeney, Inc.; Munoz; and, Kirsher, Winston, & Boston, L.C., and these Board Defendants, pursuant to the provisions of the California Government Code, the Private Attorney General Doctrine, and the HCSD Bylaws at Section A-9(26). Additionally, Defendants are liable to Plaintiff personally for all costs of any sort associated with bringing this action, and are also liable for any attorney fees Plaintiff may ultimately incur - proof of which shall be established at trial.

**Count VI - Retaliation in Employment and Termination in Violation of Public Policy**

151i. Plaintiff alleges that in performing the acts as complained of herein, and particularly by acting to deny Plaintiff any notice or opportunity to be heard concerning allegations, charges, and/or complaints regarding his positions and employment[218], the HCSD and Board Defendants, along with Defendant Winston, also conspired to, helped plan, and ratified the actions of the Board Defendants acts under color of law, and willfully acted themselves, in a manner calculated to impede, hinder, oppress, and retaliate against Plaintiff in his employment as a Director of the HCSD because of Plaintiff's own, and assistance to others in making out: reports to the HCSD Board of safety, Clean Water Act, and Safe Drinking Water Act (and related State laws) violations by the HCSD and its employees Directors and managers; reports of violations to OSHA and Cal-OSHA; and, reports to various agencies of the State of California concerning violations of Federal and State laws, and the HCSD Bylaws, by the HCSD and some of the individual Directors thereof. These same Defendants also conspired, and acted to (via the authority and office of the Board Defendants) to deny Plaintiff any lawful or other benefit of his position. These acts by these Defendants violated the statutes and public policy of the State of California that employees not be terminated from any right of employment, and Public Officers not be *de facto* removed from privileges of office (particularly without any due process), and in retaliation for undertaking lawful and protected speech, association, and/or petitioning activities.

151j. These same Defendants also acted to create a hostile work environment for

[218] This includes the opportunity for a Skelly notice and hearing (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194) regarding any adverse action relating to Plaintiff's position as Director of the Board, as may be related to excluding him from participation in meetings and solicitation of MPB&F and Munoz, as well as the denial of his indemnification request per Govt. Code 995. See also California Government Code 19574.

volunteers and employees of the HCSD, including Plaintiff, and otherwise conspired and acted to corruptly impede and interfere with the performance of Plaintiff's duties as a public officer and Director of the HCSD; and, to punish, intimidate and oppress Plaintiff for engaging in protected activities as aforesaid. Because the majority of the adverse actions taken against Plaintiff by these Defendants occurred or were initiated almost immediately following Plaintiff's protected reports and other activities (and ongoingly), the adverse actions taken by the Defendants against Plaintiff are *presumed* retaliatory adverse actions that establish a *prima facie* case for retaliatory adverse employment action in violation of public policy and the Constitutional Rights of Free Speech, and to Petition, as provided by both the United States' and the California Constitutions. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 164 *Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 21 F.3d 493, 507; *Pickering v. Board of Education* (1968) 391 U.S. 563; *Board of County Commissioners v. Umbher* (1996) 518 U.S. 668 also see generally whistleblower protections as public policy in <u>Labor Code</u> sections 98.6, 1019, and 1102.5; <u>Health and Safety Code</u> 6310, 6400).

151k. As a consequence of Defendants' acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy; undue and unfair conditions of employment without any opportunity to be heard[219], threats during performance of his duties, impediment and interference with the performance of his duties, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general, personal, and special damage of $150,000.00.

151l. The conduct of Defendants as aforesaid was also willful, wanton, reckless, malicious, oppressive, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $300,000.00.

**<u>Count VII - Failure to Indemnify Public Employee - State Law</u>**

151m. Plaintiff alleges that the Board Defendants (and thus the HCSD), failed to properly and legally respond to Plaintiff's requests for indemnification concerning legal actions filed against him in his official capacity, and pertaining to acts and duties undertaken by him in

[219] As a public employee working for a political subdivision of the State of California, Plaintiff asserts that, in addition to other administrative due process, he is entitled to a Skelly Hearing and that process set forth in the HCSD Bylaws concerning any allegations against him related to his job and/or job functions.

his official capacity as Director of the HCSD. Plaintiff made the requests for indemnification in compliance with Government Code 995, but the Board Defendants failed to approve the request pursuant to state law, and HCSD policy, instead acting arbitrarily, in a manner that was unsupported by substantial evidence, absent any findings of fact that would permit such denial, and in retaliation for Plaintiff's testifying in legal proceedings, service of papers in legal proceedings by others, and for associating with those citizens bringing legal proceedings against the HCSD and/or Board Defendants (and/or HCSD employees and contractors). Plaintiff can, and hereby does, seek relief in the form of a writ of mandate from this court concerning the administrative actions of the Board Defendants relative to his indemnification request, as well as seeking compensation and other relief for the due process and other statutory and constitutional violations engaged in by the HCSD and Board Defendants in acting to deny Plaintiff's indemnification request. (See *Mata v. City of Los Angeles* (1993) 20 Cal. App.4th 141 at 147-49; also *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999).)

151n. As a consequence of these Defendants' acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy; undue and unfair termination of the benefits of her employment without any opportunity to be heard[220], interference with and violation of his statutory right to indemnification, threats during performance of his duties, interference with the performance of his duties, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, intimidation, oppression, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general, personal, and special damage of $150,000.00 - and all legal and other expenses Plaintiff might incur as a result of the unfair, unlawful, arbitrary, capricious, and unreasonable refusal by the HCSD and Board Defendants to indemnify him as required by Government Code section 995.

151n. The conduct of Defendants as aforesaid was also willful, wanton, reckless, malicious, oppressive, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being retaliatory, and calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to

[220] As a public employee working for a political subdivision of the State of California, Plaintiff asserts that, in addition to other administrative due process, he is entitled to the benefit of a full hearing pursuant to Govt. Code 995 concerning any allegations against her related to his job and/or job functions, and, in fact, to be fully indemnified as to all claims in the particular instances giving rise to her 995 requests of Defendants HCSD, Hanson, and the Board Defendants.

recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $300,000.00.

**Count VIII - Gifts of Public Funds as to HCBC, Crittenden**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

152. Defendants Hornbrook Community Bible Church, Inc., and Steven Crittenden, wrongfully and improperly conspired with, influenced, and engaged in corrupt activity with the Board Defendants, Bowles, and the HCSD in order to wrongfully and illegally receive gifts of public funds[221] in the form of wrongfully reduced, vacated, waived, and/or not-imposed fees and charges, from on or about December 04, 2015, and ongoingly, and that this activity was deliberately concealed from the public, and Plaintiff, in violation of the Brown Act, and other applicable laws. These defendants therefore are liable for the amount of public funds gifted, and must disgorge all such improperly obtained gifts of public funds (in an amount to be determined at trial), as well as pay to Plaintiff herein any and all attorney fees and cost incurred in obtaining judicial relief from the improper acts relating to the gifts of public funds. Plaintiff additionally invokes herein the strictures and remedies of California Code of Civil Procedure Sections 526a, 1021.5, and 1084.

**Count IX - Gifts of Public Funds; False Claims, and Fraud as to Clint Dingman**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

153. During the period of December 4, 2015, through the current date, and ongoingly, Defendant Clint Dingman improperly conspired with, influenced, and engaged in corrupt activity with the Board Defendants and Bowles in order to receive gifts of public funds, in the form an unagendized, and unformalized[222], "pay increase" to $15.00 per hour, and for almost double his original number of hours (regardless of Dingman's actual hours worked), which violated the contract Dingman signed with the HCSD agreeing to a $10.00 per hour rate of pay and cap of 35 monthly hours (all such excess rate of pay, and hours thus being payment in excess of contract, which is also an impermissible gift of public funds[223]).

[221] Cal. Const. Art. XVI, Section 6; Cal. Govt. Code section 8314.
[222] That is, the Board of the HCSD never ratified or approved any such changes to Dingman's contract, or his rate of pay and number of hours to be worked each month otherwise, at a public meeting, and/or in conformance with Govt. Code 61045 and/or the HCSD Bylaws.
[223] Cal. Const. Art. XVI, Section 6; Cal. Const. Art. IV, Sec. 17; Cal. Govt. Code section 8314.

154. Since the wrongful increase in pay and hours, Dingman has also fraudulently claimed to have performed all of the duties applicable to his position(s) within the HCSD, and to have worked 30 hours (or sometimes more) exactly every two weeks on those tasks, when in fact he did not faithfully actually complete those tasks, and/or work those claimed hours to the benefit of the District. Dingman falsely claimed these hours on a "timesheet" he submitted to Bowles and the Board Defendants. Dingman further failed to use the log in/out sheet at the water plant, or permit any supervision of his time working at any HCSD facility in order to conceal the fact that he was not actually working specific hours at specific times, and/or not completing certain tasks as he claimed. All of these acts were undertaken by Dingman in order to collect money from the HCSD to which he was not entitled. The Board Defendants, Dingman, and Bowles further conspired, and acted, to wrongfully and deliberately conceal from the Public, and Plaintiff, the wrongfully inflated pay and hours, and the false claims of work performed. Further, Dingman illegally and wrongfully performed operations at the water plant (addition of chlorine and other chemicals), for which he is not licensed and/or certified, in violation of State law, with the full ratification, encouragement, and assistance of the Board Defendants, Bowles, and Winston.

154a. After December 4, 2015, Dingman, along with Defendants Slote and Hanson, conspired to create a false Declaration by Hanson for use by Defendants HCSD, and Slote to promulgate as a supposed public record, that Declaration stating that Hanson and other prior Board members had agreed to increase Dingman's pay and hours during the summer of 2014 as part of a lawful action of the HCSD Board. That statement was false because no such action was ever agendized, or actually taken at any public meeting of the HCSD Board, and Dingman was never approved by the HCSD for any such increase in pay and/or increase in number of hours to be worked per month over those specified in his contract, or otherwise. Hanson, Dingman, and Slote conspired and acted to create this false declaration with the intent that it be published and made part of the official HCSD public records by Defendant Slote (which it was), and relied upon by the current HCSD Board, the public, Plaintiff, and the courts, in order to subvert the interests of justice; corruptly and wrongfully divert and waste public funds by overpaying Dingman; in order to violate the due process rights of the public, and of Plaintiff, to be noticed and informed as to the actions of the HCSD Board and its officers so that they might speak and/or petition relating thereto while seeking to expose and correct such fraud by Dingman and his co-conspirators/joint actors; and, intending that the false documents would assist Slote and Dingman in the scheme to wrongfully overpay Dingman and to defraud the HCSD.

155. Dingman also fraudulently agreed to a certain rate of pay, and certain cap on hours, in his contract that he signed on January 26, 2014, in order to induce the HCSD, and the Directors thereof, to enter into and ratify the contract Dingman had and has with the District in reliance on the terms therein, when Dingman did not intend to be bound by those terms. Dingman also falsely promised the HCSD, the Directors thereof, the Public, Plaintiff, and others, that he would abide by the terms of that contract, obtain education, and proper water treatment and distribution operator certificates from the State of California, but has willfully failed to do so since signing the contract[224]. The HCSD, the Public, Plaintiff, and Plaintiff relied on Dingman's false promises, false claims of work performed, false number of hours submitted for payment, and false agreements with the Board Defendants created outside of public meetings, all to the damages as set forth in this Complaint, and in an amount to be determined at trial. Finally, since about June of 2016, Dingman has wrongfully diverted HCSD funds and other resources to his own use by installing various personal electrical appliances at the HCSD water plant, storing personal items there, and actually (illegally) residing there without any compensation paid by him for any of those acts. Moreover, Dingman, with the assistance and ratification of the Board Defendants, and Goff, have acted to fraudulently conceal these wrongful acts from the public and Plaintiff by "covering" for Dingman, and allowing Dingman to conceal his presence and actions at the water plant facility, thus constituting a gift of public funds in the form of free electricity and use of the HCSD's property and facility without compensation made by Dingman.

156. Dingman and the Board Defendants therefore are liable for the amount of public funds gifted to Dingman in excess of the specific terms of his contract, and/or which were falsely claimed during any time period, and Dingman must disgorge all such fraudulently obtained, and/or improperly obtained gifts of public funds, as well as pay to Plaintiff herein damages, and any and all attorney fees and cost incurred in obtaining judicial relief from the improper acts relating to the gifts of public funds. Plaintiff invokes herein the strictures and remedies of California Code of Civil Procedure Sections 526a, 1021.5, and 1084, as well as Government Code sections 12650, et seq and the triple damages provisions therein. The Court is thus requested to review this complaint in camera as part of its review prior to approval for filing and service, and to also advise Plaintiff of any duty to serve a copy of the Complaint on the Attorney

[224] Dingman did eventually get a "D-1" certificate and license from the State of California in November of 2015, but that is legally insufficient to add chemicals, or otherwise operate the "treatment" portion of the HCSD's facilities.

General of the State of California, or the Siskiyou County Counsel, pursuant to Government Code sections 12650, et seq, or otherwise.

157. Damages under the foregoing provisions are to be established at trial, but are in the minimum amount of $76,000.00 to the HCSD, and Plaintiff is entitled to triple the final damages determined, as well as fees and costs, as provided by the California False Claims Act.

**Count X - Gifts of Public Funds as to Ernest Goff and Julie Bowles**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

158. Defendants Julie Bowles and Ernest Goff improperly agreed and conspired with, influenced, and engaged in corrupt activity with, the Board Defendants herein, along with the agreement, aid, assistance, and encouragement of Defendant Winston, in order to falsely claim payment(s) for services they did not actually render, and to receive gifts of public funds beginning on or about December 4, 2015, continuing through the present date, and ongoingly, in the form of lawyer fees, service fees, payments, other forms of indemnification in legal actions, and other benefits not mandated by any contract they had with the HCSD.

159. Such excess pay and false claims granted by the Board Defendants constitute a gift of public funds to Bowles and Goff, and the Board Defendants, Bowles, and Goff are therefore liable for the amount of public funds gifted to Bowles, and Goff in excess of the specific terms of their contract, and/or which were falsely claimed during any time period, and Bowles and Goff must disgorge all such improperly obtained gifts of public funds, as well as pay to Plaintiff herein damages, and any and all attorney fees and cost incurred in obtaining judicial relief from the improper acts relating to the gifts of public funds. Plaintiff invokes herein California Code of Civil Procedure Sections 526a, 1021.5, and 1084; Cal. Const. Art. XVI, Section 6; Cal. Const. Art. IV, Sec. 17, as well as Government Code sections 8314, and 12650, et seq and the triple damages provisions therein. The Court is thus requested to review this complaint in camera as part of its review prior to approval for filing and service, and to also advise Plaintiff of any duty to serve a copy of the Complaint on the Attorney General of the State of California, or the Siskiyou County Counsel, pursuant to Government Code sections 12650, et seq, or otherwise.

160. Damages under the foregoing provisions are to be established at trial, but are alleged in the minimum amount of $76,000.00 each. Plaintiff additionally reserves the right to seek punitive damages of these Defendants. Plaintiff is also entitled to a preliminary injunction, and permanent injunction, prohibiting the HCSD from spending any more public funds as to

Bowles and Goff in defense of legal claims against them, or in any other manner not provided by contract.

**Count XI - Gifts of Public Funds as to John Does; HCSD, Board Defendants, Bowles.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

161. Any and all John Does who, as customers and/or accounts of the HCSD had their water rates wrongfully and improperly changed; fees and/or charges payable to the HCSD reduced and/or waived (or not imposed at all due to failure to read meters, or other reasons; property not liened when they had a large and long-term outstanding balance with the HCSD as set forth in the Bylaws thereof; whose accounts were never collected on, or who were otherwise gifted with public funds by any action of the HCSD, Board Defendants, and/or Bowles at any time from the period of about December 4, 2015 through the current date, and/or ongoingly, received such fee and charge waivers, reductions, changes, reclassifications, etc in violation of Cal. Const. Art. XVI, Section 6, and Government Code section 8314.

162. Such gifts of public funds to John Does are improper, wrongful, and prohibited by operation of law (and the HCSD Bylaws), and the HCSD, Board Defendants, and Bowles are therefore are liable for the amount of public funds gifted to John Does during any time period material, and any John Does receiving such gifts of public funds must disgorge all such wrongfully gifted and/or obtained public funds, as well as pay to Plaintiff herein damages, and any and all attorney fees and cost incurred in obtaining judicial relief from the improper acts relating to the gifts of public funds. Plaintiff invokes herein the strictures and remedies of California Code of Civil Procedure Sections 526a, 1021.5, and 1084; Cal. Const. Art. XVI, Section 6.

163. Damages under the foregoing provisions are to be established at trial, but are alleged in the minimum amount of $50,000.00. Plaintiff additionally reserves the right to seek punitive damages of the Board Defendants, and of Bowles for willfully and corruptly participating in the scheme to waste and wrongfully divert/gift public funds. Plaintiff is also entitled to a preliminary injunction, and permanent injunction, prohibiting the HCSD from engaging in any conduct constituting such gifts of public funds to any person.

**Count XII - Violation of Article 1, section 3, of the California Constitution**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

164. The Board Defendants, with the aid, assistance, agreement, and encouragement of Bowles, Dingman, Goff, and Winston, have during the period of about December 4, 2015, through the current date, and ongoingly, agreed, conspired, and acted, to wrongfully conceal from the public, and from Plaintiff, numerous public records, and also have acted to falsify other public records, in furtherance of the wrongful conduct undertaken by them individually and/or jointly as described *ante*, such actions being in violation of Article 1, section 3, of the California Constitution, and the California Public Records Act.

165. As a consequence of these Defendants' acts, Plaintiff has been caused to suffer violation of wrongful, arbitrary, capricious, undue and unfair interference with, denial of, and/or termination of, his State statutory and Constitutional rights without any notice or opportunity to be heard, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general, personal, and special damage of $150,000.00.

166. The conduct of the HCSD, Board Defendants, Winston, Dingman, Goff, and Bowles as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and extreme and lasting emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages, in the sum of $100,000.00.

**Count XIII - Violation of Article 1, section 2, of the California Constitution**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

167. *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, allows a tort action for damages for violation of the free expression clause of Article I, Section 2, of the California Constitution. Unlike the United States Constitution, which couches the right to free speech as a limit on congressional power (see U.S. Const., 1st Amend.), the California Constitution gives "[e]very person" an affirmative right to free speech (Cal. Const., art. I, § 2, subd. (a)). Accordingly, California's free speech clause is "more definitive and inclusive than the First Amendment. . . ." (*Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658, 119 Cal.Rptr. 468, 532 P.2d 116.)

168. In conspiring and acting as aforesaid to violate State law and the HCSD Bylaws, and to retaliate against Plaintiff for exercising his rights of free speech, association, and petition,

the Board Defendants, Winston, and Bowles thus also agreed, conspired , and acted, to violate Plaintiff's right to free expression under the California Constitution[225].

169. As a consequence of the Board Defendants', Winston's, and Bowles' acts as set forth ante, Plaintiff has been caused to suffer violation of his rights to free speech, association, and petition; extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress; all to his general, personal, and special damage of $150,000.00. Plaintiff also seeks mandamus relief prohibiting such unlawful conduct by these Defendants.

170. The conduct of these Defendants as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages, in the sum of $200,000.00.

**Count XIV - Unfair Business Practices as to Julie Bowles and Board Defendants**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

171. The individual Board Defendants, and Defendant Bowles[226], in performing the acts as complained of herein have since on or about December 4, 2015, and ongoingly, under the assumed mantle of Directors, public employees and/or agents of the HCSD, in violating, and agreeing and conspiring to violate, the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, have also thus agreed to, conspired to, aided and abetted each other, and actually did, violate California's unfair business practices legislation, found at California Business and Professions Code 17200, et seq.

172. Put simply, a business act or practice is "unlawful" if it violates some other law. Explaining the "unlawful" prohibition under Section 17200, the California Supreme Court has stated that Section 17200 "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Section] 17200. (*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).)

---

[225] This would also additionally apply to Plaintiff in his official capacity concerning those events related to his status as a Director of the HCSD, and/or a public officer occurring during the period he was in office.

[226] Bowles operates an accounting and billing service called "Sum it Up Accounting", using that business to provide services to the HCSD/Board Defendants.

173. "Unlawful" claims under Section 17200 have been upheld when predicated on numerous laws and regulations existing at various levels of government, including: federal statutes[227];federal regulations; state statutes[228]; state regulations; local ordinances[229]; prior case law; and standards of professional conduct.

174. As a consequence of the Board Defendants' and Defendant Bowles' acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy, as well as retaliation, oppression, intimidation, and coercion by her and the Board Defendants, and has suffered: economic loss; extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage; extreme ongoing emotional and psychological pain and distress, all to his general, personal, and special damage of $150,000.00.

175. The conduct of the Board Defendants and Defendant Bowles as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages, in the sum of $100,000.00.

**Count XV - Nuisance, and Nuisance Per Se by Board Defendants, Dingman, and Goff.**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

176. The Board Defendants, as well as Defendants Dingman, and Goff acted negligently, recklessly, wantonly, and/or willfully to violate the Safe Drinking Water Act, Clean Water Act, the California Health and Safety Code, Civil Code 3479, and the HCSD Bylaws, in their administration of the HCSD, and the operation of the HCSD water production, treatment, and/or distribution facilities, and thereby created, assisted in creating, and/or ratified the acts of each other in creating, annoying and/or unsafe conditions relating to the proper and lawful operation of the HCSD water facilities, and distribution of water to the public and to Plaintiff, and which

---

[227] See, e.g., *Ballard v. Equifax Check Serv., Inc.*, 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001)
[228] Various state law violations, ranging from criminal statutes to the California Vehicle Code, have served as the underlying bases for "unlawful" claims. See, e.g., *Midpeninsula Citizens for Fair Housing v. Westwood Investors* , 221 Cal. App. 3d 1377, 1390, 1393 (1990) (enforcing Unruh Civ il Rights Act); *Quelimane*, 19 Cal. 4th at 42-43 (violations of the Cartwright Act); *Hewlett v. Squaw Valley Ski Corp.* , 54 Cal. App. 4th 499, 520-25 (1997) (violations of the Forest Practices Act)
[229] See, e.g., *Consumers Union of United States, Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 967 (1992) (county ordinance regulating the sale of raw milk products); *People v. Thomas Shelton Powers, M.D., Inc.*, 2 Cal. App. 4th 330, 334, 336 (1992) (city subdivision code) (overruled on other grounds).

actually caused harm to plaintiff in the form of water shortages, and improperly treated drinking water that he consumed - resulting in ill physical effects, interference with the enjoyment of his property, interference with the enjoyment of the land he resides upon located within the District, and devaluation of his property values. These Defendants also knew of, but failed to follow, state and local laws relating to the proper administration and operation of the HCSD pursuant to its Bylaws, all of which acts were thus a nuisance and/or nuisance *per se* to the Public as provided by in those Bylaws, and to Plaintiff, all to his general and special damage of $50,000.00

**<u>Count XVI - Failure to Impose Standby Fee - Collect Due Fees and Taxes.</u>**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

177. The acts of the Board Defendants and Bowles, in failing to impose, levy, and collect the "standby fee" as provided by law, and mandated by the Bylaws, as to the eligible parcels in the District was a violation of the HCSD Bylaws, breached the fiduciary duty of these Defendants to the District and the Public, and constitutes an injury to the fiscal health of the HCSD, and a waste of public funds as contemplated by <u>Code of Civil Procedure</u> section 526a. Plaintiff is entitled to the remedy of a Court order instructing the HCSD to refrain from failing to collect the "standby fee" from eligible parcels, and/or immediately take all necessary steps to impose and collect the "standby fee", and to do so henceforth.

**<u>Count XVII - Unfair Business Practices as to Board Defendants and Ernest Goff</u>**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

178. Plaintiff alleges that the individual Board Defendants, and Defendant Goff[230], in performing the acts as complained of herein *ante*, have since on or about December 4, 2015, and ongoingly, under the assumed mantle of employees and/or agents of the HCSD, in violating, and agreeing and conspiring to violate, the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, have also thus agreed and conspired to, aided and abetted each other, and actually did, violate California's unfair business practices legislation, found at California <u>Business and Professions Code</u> 17200, et seq.

179. As a consequence of the Board Defendants' and Defendant Goff's acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy, as well as retaliation, oppression, intimidation, and coercion by him and the Board Defendants, and has suffered:

[230] Goff operates a shell corporation called "CR Water Treatment, Inc." that he controls completely, and which is in reality his alter ego.

economic loss; extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage; extreme ongoing emotional and psychological pain and distress, all to his general, personal, and special damage of $150,000.00.

180. The conduct of the Board Defendants and Defendant Goff as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages, in the sum of $200,000.00.

**Count XVIII - Unfair Business Practices as to Robert Winston and Board Defendants**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

181. The individual Board Defendants, and Defendant Winston, in performing the acts complained of herein *ante*, and against Plaintiff and contrary to the public good under the assumed mantle of employees and/or agents of the HCSD, in violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, California Rules of Professional Conduct, and/or the HCSD Bylaws as set forth herein, have also conspired to, and actually did, violate California's unfair business practices legislation, found at California Business and Professions Code 17200, et seq. This violation also arises from the improper contracting, and/or retention(s) of the Board Defendants of Winston *ex post facto*, and retroactively, and/or outside of noticed public meetings, any and all acts in violation of the Brown Act, conflict of interest laws, HCSD Bylaws, various of the Rules of Professional conduct, and especially Rule 3-600(E). Winston has also, in agreement, ratification of, and conspiracy with, Defendants Slote and Puckett (in both their official and individual capacities), wrongfully acted as counsel in multiple matters in Siskiyou County Superior Court and the Third District Court of Appeals, without appointment by the HCSD Board - which is a violation of the Rules of Professional Conduct, Business and Professions Code section 6104, and grounds for disbarment.

182. Put simply, a business act or practice is "unlawful" if it violates some other law. Explaining the "unlawful" prohibition under Section 17200, the California Supreme Court has stated that Section 17200 "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Section] 17200. (*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).) Thus, "unlawful" claims under Section 17200 have been upheld when predicated on numerous laws

and regulations existing at various levels of government, including: federal statutes[231];federal regulations; state statutes[232]; state regulations; local ordinances[233]; prior case law; and standards of professional conduct.[234]

183. As a consequence of the Board Defendants' and Defendant Winston's acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy, interference with, and denial of his rights to petition and due process, as well as retaliation by these Defendants, and has suffered: economic loss; extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage; extreme ongoing emotional and psychological pain and distress, all to his general, personal, and special damage of $150,000.00.

184. The conduct of the Board Defendants and Defendant Winston as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $200,000.00.

**Count XIX - Unfair Business Practices and False Claims as to Robert Winston**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

185. Defendant Winston, in acting as set forth *ante*, has improperly (and illegally) written and disseminated, and knowingly continues to write and disseminate, documents of all sorts claiming that action taken by the Board Defendants, (as well as Dingman, Bowles, and Goff) in their official capacities, and prior to any ratification by the Board of the HCSD, is the expression of valid and lawful authority of the HCSD Board of Directors while knowing that such claims are false, and that there was no lawful process as expressed in the purported documents, and any actions described by Winston otherwise. Winston has also wrongfully,

---

[231] See, e.g., *Ballard v. Equifax Check Serv., Inc.*, 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001)

[232] Various state law violations, ranging from criminal statutes to the California Vehicle Code, have served as the underlying bases for "unlawful" claims. See, e.g., *Midpeninsula Citizens for Fair Housing v. Westwood Investors* , 221 Cal. App. 3d 1377, 1390, 1393 (1990) (enforcing Unruh Civ il Rights Act); *Quelimane*, 19 Cal. 4th at 42-43 (violations of the Cartwright Act); *Hewlett v. Squaw Valley Ski Corp.* , 54 Cal. App. 4th 499, 520-25 (1997) (violations of the Forest Practices Act)

[233] See, e.g., *Consumers Union of United States, Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 967 (1992) (county ordinance regulating the sale of raw milk products); *People v. Thomas Shelton Powers, M.D., Inc.*, 2 Cal. App. 4th 330, 334, 336 (1992) (city subdivision code) (overruled on other grounds).

[234] See, e.g., *Saunders v. Superior Court* , 27 Cal. App. 4th 832, 839-41 (1994)

unlawfully, and in violation of the Rules of Professional Conduct, appeared in various legal actions supposedly on behalf of the HCSD and/or one or more of the Board Defendants, and/or other HCSD employees without authorization, in violation of Business and Professions Code section 6104. Such assertions and acts constitute fraud, and also false claims[235], in that he has billed, and continues to bill, the HCSD for services relating to actions he claims to have been lawfully appointed to by the HCSD Board, when in fact he was not, and is not entitled to any payments therefor.

186. Winston, in acting as set forth herein, has since, also falsely and fraudulently billed the HCSD for legal services that were never approved by the HCSD BOD, and/or for which Winston had no valid contract, which were undertaken in violation of the laws and of the RUles of Professional Conduct, and/or which he did not actually perform. Winston also, during that same period "padded" his invoices, and unreasonably over billed the HCSD for alleged legal services he provided on its behalf, and/or on behalf of HCSD employees and/or agents[236], and Dingman. As a result, Winston is not entitled to any payments by the HCSD to him for any such conduct, and is liable to the HCSD, and to Plaintiff, for all such monies as false claims.

187. Winston has thus acted to, and actually did, violate California's unfair business practices legislation, found at California Business and Professions Code 17200, et seq as to his conduct as set forth herein, and also as to any specific conduct being in violation of the CalBar Rules of Professional Conduct. (See *People Ex Rel. Herrera v. Stender* (2012) 212 Cal. App. 4th 614, 631-632.)

189. Winston has thus acted to, and actually did, violate California's False Claims Act legislation, found at California Government Code sections 12650, et seq.

190. Winston is therefore liable for the amount of public funds gifted to Winston in excess of the specific terms of any actually existing, legal contract, and/or which were falsely claimed as to any action in which he had not been legally and properly appointed to represent the HCSD, any Director or employee, and/or any independent contractor, during any time period described herein, and Winston must disgorge all such improperly obtained gifts of, and/or falsely claimed, public funds, as well as pay to Plaintiff herein damages, and any and all attorney fees and cost incurred in obtaining judicial relief from the improper acts relating to the gifts of public funds, and/or false claims by Winston. Plaintiff invokes herein California Code of Civil

---

[235] See California False Claims Act, Government Code sections 12650, et seq.
[236] For example, Goff and Bowles are not entitled to be defended or indemnified by the HCSD, as they are independent contractors. See Govt Code sections 810.2; 995.

Procedure Sections 526a, 1021.5, and 1084, as well as Government Code sections 12650, et seq and the triple damages provisions therein. The Court is thus requested to review this complaint in camera as part of its review prior to approval for filing and service, and to also advise Plaintiff of any duty to serve a copy of the Complaint on the Attorney General of the State of California, or the Siskiyou County Counsel, pursuant to Government Code sections 12650, et seq, or otherwise. Damages under the foregoing provisions are to be established at trial, but are in the minimum amount of $250,000.00

**Count XIXa - Unfair Business Practices as to MPB&F and Board Defendants**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

190a. The individual Board Defendants, and Defendant Murphy, Pearson, Bradley & Feeney, in performing the acts complained of herein *ante*, and against Plaintiff and contrary to the public good under the assumed mantle of employees and/or agents of the HCSD, in violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, Federal Rules, California Rules of Professional Conduct, and/or the HCSD Bylaws as set forth herein, have also conspired to, and actually did, violate California's unfair business practices legislation, found at California Business and Professions Code §§ 6104, and 17200, et seq. This violation also arises from the improper contracting, and/or retention(s) of the Board Defendants of MPB&F *ex post facto*, and retroactively, and/or outside of noticed public meetings, any and all acts in violation of the Brown Act, conflict of interest laws, HCSD Bylaws, various of the Rules of Professional conduct, and especially Rule 3-600(E). MPB&F has also, in agreement, ratification of, and conspiracy with, Defendants Slote and Puckett (in both their official and individual capacities), wrongfully acted as counsel in actions in this Court without lawful appointment by the HCSD Board - which is a violation of the Rules of Professional Conduct, Business and Professions Code section 6104, and grounds for disbarment.

190b. Put simply, a business act or practice is "unlawful" if it violates some other law. Explaining the "unlawful" prohibition under Section 17200, the California Supreme Court has stated that Section 17200 "'borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Section] 17200. (*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).) Thus, "unlawful" claims under Section 17200 have been upheld when predicated on numerous laws

and regulations existing at various levels of government, including: federal statutes[237];federal regulations; state statutes[238]; state regulations; local ordinances[239]; prior case law; and standards of professional conduct.[240]

190c. As a consequence of the Board Defendants' and Defendant MPB&F 's acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy, interference with, and denial of his rights to petition and due process, as well as retaliation by these Defendants, and has suffered: economic loss; extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage; extreme ongoing emotional and psychological pain and distress, all to his general, personal, and special damage of $150,000.00.

190d. The conduct of the Board Defendants and Defendant MPB&F as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $200,000.00.

**Count XIXb - Unfair Business Practices and False Claims as to William Munoz**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

190e. Defendant Munoz, in acting as set forth *ante*, has improperly (and illegally) written and disseminated, and knowingly continues to write and disseminate, billings, and documents and of all sorts claiming that action taken by the Board Defendants, (as well as Dingman, Bowles, and Goff) in their official capacities, and prior to any purported ratification by the Board of the HCSD of Munoz's appointment as counsel for any of those persons, is the expression of valid and lawful authority of the HCSD Board of Directors while knowing that such claims are false, and that there was no lawful process to appoint Munoz as counsel for any

---

[237] See, e.g., *Ballard v. Equifax Check Serv., Inc.*, 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001)

[238] Various state law violations, ranging from criminal statutes to the California Vehicle Code, have served as the underlying bases for "unlawful" claims. See, e.g., *Midpeninsula Citizens for Fair Housing v. Westwood Investors* , 221 Cal. App. 3d 1377, 1390, 1393 (1990) (enforcing Unruh Civ il Rights Act); *Quelimane*, 19 Cal. 4th at 42-43 (violations of the Cartwright Act); *Hewlett v. Squaw Valley Ski Corp.* , 54 Cal. App. 4th 499, 520-25 (1997) (violations of the Forest Practices Act)

[239] See, e.g., *Consumers Union of United States, Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 967 (1992) (county ordinance regulating the sale of raw milk products); *People v. Thomas Shelton Powers, M.D., Inc.*, 2 Cal. App. 4th 330, 334, 336 (1992) (city subdivision code) (overruled on other grounds).

[240] See, e.g., *Saunders v. Superior Court* , 27 Cal. App. 4th 832, 839-41 (1994)

of these defendants in any legal matter and/or as expressed in the purported documents, and any actions described by Munoz otherwise. Munoz has also wrongfully, unlawfully, and in violation of the Rules of Professional Conduct, appeared in various legal actions supposedly on behalf of the HCSD and/or one or more of the Board Defendants, and/or other HCSD employees without lawful authorization, in violation of Business and Professions Code section 6104. Such assertions and acts constitute fraud, and also false claims[241], in that he has billed, and continues to bill, the HCSD for services relating to actions he claims to have been lawfully appointed to by the HCSD Board, when in fact he was not, and is not entitled to any payments therefor.

190f. Munoz, in acting as set forth herein, has since, also falsely and fraudulently billed the HCSD for legal services that were never approved by the HCSD BOD, and/or for which Munoz had no valid contract, which were undertaken in violation of the laws and of the Rules of Professional Conduct, and/or which he did not actually perform. Munoz also, during that same period "padded" his invoices, and unreasonably over billed the HCSD for alleged legal services he provided on its behalf, and/or on behalf of HCSD employees and/or agents[242], and Dingman. As a result, Munoz is not entitled to any payments by the HCSD to him for any such conduct, and is liable to the HCSD, and to Plaintiff, for all such monies as false claims.

190g. Munoz has thus acted to, and actually did, violate California's unfair business practices legislation, found at California <u>Business and Professions Code</u> 17200, et seq as to his conduct as set forth herein, and also as to any specific conduct being in violation of the CalBar Rules of Professional Conduct. (See *People Ex Rel. Herrera v. Stender* (2012) 212 Cal. App. 4th 614, 631-632.)

190h. Munoz has thus acted to, and actually did, violate California's False Claims Act legislation, found at California <u>Government Code</u> sections 12650, et seq.

190i. Munoz is therefore liable for the amount of public funds falsely obtained by, and/or otherwise gifted to Munoz in excess of the specific terms of any actually existing, legal contract, and/or which were falsely claimed as to any action in which he had not been legally and properly appointed to represent the HCSD, any Director or employee, and/or any independent contractor, during any time period described herein, and Munoz must disgorge all such improperly obtained gifts of, and/or falsely claimed, public funds, as well as pay to Plaintiff herein damages, and any and all attorney fees and cost incurred in obtaining judicial relief from the improper acts relating

[241] See California False Claims Act, <u>Government Code</u> sections 12650, et seq.

[242] For example, Goff and Bowles are not entitled to be defended or indemnified by the HCSD, as they are independent contractors. See <u>Govt Code</u> sections 810.2; 995.

to the gifts of public funds, and/or false claims by Munoz. Plaintiff invokes herein California Code of Civil Procedure Sections 526a, 1021.5, and 1084, as well as Government Code sections 12650, et seq and the triple damages provisions therein. The Court is thus requested to review this complaint in camera as part of its review prior to approval for filing and service, and to also advise Plaintiff of any duty to serve a copy of the Complaint on the Attorney General of the State of California, or the Siskiyou County Counsel, pursuant to Government Code sections 12650, et seq, or otherwise. Damages under the foregoing provisions are to be established at trial, but are in the minimum amount of $250,000.00

**Count XX - Negligence as to Robert Winston and the Board Defendants**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

191. Plaintiff alleges that the individual Board Defendants, and Defendant Winston owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, and the State of California, as well as the HCSD Bylaws, but that in performing the acts as complained of *ante*, and against Plaintiff under the assumed mantle of employees and/or agents of the HCSD, breached that duty in violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, California Rules of Professional Conduct, and/or the HCSD Bylaws as set forth herein, and did also thus create a nuisance and harm to Plaintiff. As a result of their acts, Plaintiff was forced to expend an unreasonable amount of time and effort responding to, and dealing with their improper acts in the community of Hornbrook, courts of law and otherwise; while also expending money to buy paper, toner, printers, computer equipment, postage, gasoline, and other expenses.

192. Plaintiff has incurred damages from the foregoing negligent acts of Winston and the Board Defendants as set forth herein, has been caused to suffer violation of his privacy, as well as retaliation by Winston and the Board Defendants, and has suffered: economic loss; extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage; extreme ongoing emotional and psychological pain and distress, all to his general, personal, and special damage of $150,000.00.

193. The conduct of the Board Defendants and Defendant Winston as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of the

Board Defendants and Defendant Winston exemplary and punitive damages, in the sum of $100,000.00.

**Count XXI - Unfair Business Practices as to HCBC**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

194. The acts of Defendants Steven Crittenden, Hornbrook Community Bible Church, and the individual Board Defendants, in corruptly conspiring to, acting to, and actually accomplishing, the gift(s) of public funds to the HCBC in the form of wrongfully waived and/or reduced water fees as set forth herein and ongoingly, have also violated California's unfair business practices legislation, found at California Business and Professions Code 17200, et seq.

195. The gift of public funds to the HCBC has directly harmed Plaintiff in that his real property value decreased, and his health and safety as a water consumer, was put at risk because the HCSD thus failed to prevent the dissipation and waste of public funds in a manner that is also Contrary to the California Constitution at Art. XVI, § 6, and also Govt. Code §8314, and thus also failed to apply and collect adequate and proper fees and charges, that the HCSD may comply with the provisions of Water Code sections 31007 and 71616. As a direct result of the conspiracy to receive the illegal gift of public funds, and other corrupt acts of the HCBC and its representative, Crittenden, the HCSD has failed to maintain the District's water production, treatment, and distribution networks in a manner consistent with the requirements of the Federal Safe Drinking Water Act, related State laws, and the HCSD Bylaws.

196. As a consequence of the HCBC's acts as set forth herein, it has wrongfully benefited from its unfair business practices in an amount to be determined at trial, while Plaintiff has been caused to suffer general and special damages in an amount to be determined at trial. Further, as the actions of Defendants Crittenden, HCBC, and the Board Defendants were willful, wanton, and oppressive, Plaintiff reserves his right to seek punitive and exemplary damages herein as to each and all of these Defendants.

**Count XXII – Willful and/or Negligent Infliction of Emotional Distress**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

197. Plaintiff alleges that the Board Defendants, as well as Defendants Winston, Bowles, Puckett, and Dingman, in performing each and every of the acts complained of herein as to any particular one of them, or identified group of them, did so while acting negligently, recklessly, wantonly, and/or willfully to vex, harass, oppress, and annoy Plaintiff, and/or to subject him to

lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, financial loss, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

198. These acts were part of a systematic and ongoing pattern of events that were calculated by these Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, to interfere with Plaintiff's enjoyment and use of his property, and/or to interfere with Plaintiff's personal and financial well-being.

199. As a consequence of these Defendants' willfully negligent, and/or negligent acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $150,000.

200. The conduct of these Defendants in willfully inflicting emotional distress as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages in the sum of $100,000.00

**Count XXIII Purported Official Acts of the Board Defendants Are Void**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

202. The acts of the Board Defendants, and as purporting to act as the HCSD, as well as all actions taken by Defendants Winston; Kirsher, Winston and Boston, L.C.; Bowles; Dingman; and, Goff, done in reliance upon any purported act, instruction, direction, or act of the Board Defendants and/or the HCSD as set forth *ante*, and that are in conflict with any federal or state stature, act, constitutional provision, or HCSD Bylaw, are each null and void due to being *ultra vires*, due to criminality[243], in excess of their jurisdiction and/or authority, due to being a nuisance *per se*[244], due to Brown Act violations[245], due to being taken in violation of Plaintiff's

---

[243] See Govt. Code Sections 54959, 61064(a), 91003(b); Civil Code Section 3369.

[244] Both due to being violations of the HCSD Bylaws, and/or federal. and/or State law. See also Civil Code Section 3479-80, 3491; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988-89. In *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, a case involving injuries alleged to have been suffered by the plaintiffs by virtue of the defendant's operation of an airport near the plaintiffs' properties, the California

due process and/or substantial due process rights, due to being in violation of the mandated procedures and policies of the HCSD as expressed in the April 18, 2014 Bylaws and related Resolutions, and/or due to having been undertaken in violation of the Political Reform Act while a conflict of interest existed regarding the issue or action undertaken.[246] Additionally, all purported acts taken by the BOD of the HCSD, occurring when a conflict of interest actually existed as to one or more of the Board Defendants (and/or as to Winston concerning purported contracts), and in which the conflicted Board Defendant participated, are void, and Plaintiff is entitled to a declaration by this Court to that effect, and as to each such action.

**Count XXIV Improperly Unbilled Fees and Charges - Gifts of Public Funds**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

203. The Board Defendants, with the assistance, aiding and abetting, and ratification of Defendants Dingman and Bowles, have conspired and acted from the period of on or about December 4, 2015 through the current date, and ongoingly, to: improperly bill, falsely bill, fail to bill, fail to impose, and fail to collect, all due and payable fees for water service and other charges as set forth in the HCSD Bylaws and Resolutions from residential, commercial, and governmental accounts of the HCSD; have, in order to financially benefit themselves, their political allies, and their associates, failed to regularly, consistently, timely, and properly read the meters of the customers of the HCSD so that proper and accurate charges and fees may be imposed; failed to impose and collect the "standby fee" as to each eligible parcel in the District as adopted in Bylaws of 1996, and April 18, 2014 and mandated therein; and, in so doing, they have injured the property and economic viability of the District, and caused injury to, and/or waste of, its financial resources, as well as water shortages, and/or are an impermissible gift of public funds. Plaintiff does therefore, in addition to Code of Civil Procedure section 526a, and any other legal remedy available, invoke those provisions of the HCSD Bylaws[247] making the Board Defendants named herein personally liable for all lost, uncollected, and/or improperly

---

Supreme Court stated that section 3479 of the Civil Code provided a viable statutory basis for governmental liability, avoided a defense of sovereign immunity, and concluded that "section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable." (*Id*, at p. 937; see also Code of Civil Procedure section 731.) The HCSD Bylaws provide at Section A-9(26) that any violations thereof are a nuisance per se, and authorizes suit for injunctive or other relief for violations.

[245] See Govt Code Sections 54953(a) and (c); 54960.1(d).

[246] See Govt Code Section 87100; 91003(b).

[247] Including, but not limited to, Section A-9(26).

unbilled, fees and charges, such amounts to be determined by proof at trial, and payable to the HCSD treasury.

204. Further, all of the acts undertaken by these Defendants herein have caused a significant amount of waste, are wrongful and illegal as set forth herein, and/or have caused injury to, the funds and property of the HCSD, and so relief is requested (in addition to any other available relief) to enjoin and nullify these acts of the Defendants which are contrary to law so far as is practical, pursuant to the provisions of California Code of Civil Procedure, Section 526a. (See *Blair v. Pitchess* (1971) 5 Cal.3d 258, 268.)

205. As these acts also constitute a wrongful gift of public funds[248], Plaintiff is entitled to an injunction ordering the HCSD to immediately determine and bill for all properly due amounts as to each customer from the period of December 4, 2015 and ongoingly to the present date.

**Count XXV Waste of Public Funds by the Board Defendants and/or the HCSD**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

206. Plaintiff alleges that each act of wrongful, illegal, improper, illegal, and/or unethical conduct by the Board Defendants, and/or the HCSD as set forth herein, as well as any and all such conduct in violation of the HCSD Bylaws, additionally constituted a waste, and illegal expenditure of, taxpayer funds pursuant to the provisions of California Code of Civil Procedure 526a. Further, conduct of the nature ascribed to the Board Defendants and/or the HCSD herein is ongoing, and will result in irreparable harm to Plaintiff and other, similarly-situated taxpayers via rapid depletion of the HCSD's limited funds, inability to make timely and proper repairs and/or expansions of the water system, and so Plaintiff is entitled to an injunction as to all such actions by the HCSD and/or Board Defendants to prevent the continuation of illegal policies and practices as set forth in this Complaint, and the harms associated with the concurrent waste of taxpayer funds.

**Count XXVI Violation of the CPRA as a Waste of Public Funds by the Board Defendants and/or the HCSD**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

207. Plaintiff alleges that during the period of about December 4, 2015, the Board Defendants, and the HCSD had, and operated under, policies, customs, and practices of willfully

[248] Cal. Const. Art. XVI, Section 6; Cal. Govt. Code section 8314.

and wrongfully violating the California Public Records Act (CPRA) by: withholding agency and public records from the public, and Plaintiff in particular, in order to conceal the various improper, illegal, and/or wrongful actions of the Board Defendants, Winston, Dingman, Bowles, and/or Goff; failing to respond as required by law to CPRA requests made by Plaintiff, or to produce for inspection public records requested by Plaintiff; failing to maintain a place open to the public during normal office hours for inspection of public records of the HCSD; and, wrongfully and improperly resisting lawful public records requests by Plaintiff, and the Public, via the *ultra vires* assistance of Defendant Winston, and by other improper means.

208.  Each such act of wrongful, illegal, improper, or unethical conduct to violate the CPRA by the HCSD, the Board Defendants, Dingman, Bowles, and/or Goff were agreed upon, aided, abetted, encouraged, and ratified by Defendant Winston, who: drafted letters and other documents for use by the Board Defendants, HCSD, Dingman, and Goff in support of the conspiracy to, and customs, policies, and practices of, violating the CPRA; appeared in various CPRA actions brought against the Board and the HCSD without lawful authorization, and while misrepresenting his authority and agency to do so, thus acting in violation of State law, the Rules of Professional Conduct, and the HCSD Bylaws; and, billed the HCSD for all of these improper and/or illegal efforts, thus engaging in false claims against the HCSD.

209.  All of the acts in violation of the CPRA undertaken by these Defendants have caused a significant amount of waste of public funds, are wrongful and illegal as set forth herein, are a nuisance, and/or have caused injury to, the funds and property of the HCSD, and so relief is requested (in addition to any other available relief) to enjoin and nullify these policies, customs, practices, and related acts of these Defendants so far as is practical, pursuant Code of Civil Procedure section 526a.

210.  The acts of the HCSD, Board Defendants, Dingman, Goff, Winston, and Bowles, in failing to abide by the CPRA as provided by law, and mandated by the Bylaws, and to maintain, and operate under, policies, customs, and practices which violated the CPRA, and to have Winston act in support of the violations of the CPRA while billing the District, breached the fiduciary duty of these Defendants to the District and the Public, are a false claim to the HCSD by Winston (assisted thereby by the other Defendants named here), constitutes an injury to the fiscal health of the HCSD, and a waste of public funds as contemplated by Code of Civil Procedure section 526a.  Plaintiff is entitled to the remedy of a Court order declaring such policies, customs, and practices, unlawful, and instructing these Defendants to refrain from expending public funds to promulgate, enforce, operate under, and/or have Winston intercede

concerning, such policies, customs, and practices relating to violations of the CPRA. In making out this claim and request for relief, Plaintiff invokes the findings and analysis of the learned court in *County of Santa Clara v. Superior Court (Naymark)* (2009)171 Cal.App.4th 119.

**Count XXVII Violation(s) of the Covenant of Good Faith and Fair Dealing**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

402. Plaintiff alleges that in engaging in the conduct set forth in this complaint, the Board Defendants, and thus the HCSD, acted dishonestly, and in bad faith in their dealings with Plaintiff, including in regards to his employment as a public officer, as a Director of the HCSD (and his rights, duties, and immunities as provided by law), and in regards to his status as an elector and citizen of the District. Plaintiff alleges that Defendants Dingman, Gifford, and Bowles were aware of, but failed to take any action to prevent, or report, the wrongful conduct described herein, and so are jointly liable for this conduct with the Board Defendants and the HCSD

403. As a consequence of the acts of Dingman, Bowles, and the Board Defendants' as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered interference and impediment of his statutory and constitutional rights (in his official, as well as individual capacities), oppression, coercion, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to her general and special damage of $150,000.

404. The conduct of these Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause oppression, intimidation, and unreasonable emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages in the sum of $300,000.00

**Count XXVIII - FAILURE TO SET RATES IN COMPLIANCE WITH WATER CODE 31007 AND 71616; HCSD and Board Defendants**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

404a. Plaintiff alleges that during the period of about December 4, 2015, through and including the current date, and ongoingly, the Board Defendants and the HCSD had, and operated under, policies, customs, and practices of willfully and wrongfully violating the

California Water Code, sections 31007 and 71616, such that rates were not set in a manner that provided for necessary maintenance, upkeep, and/or improvements of all of the HCSD's water production, treatment, and distribution facilities, and that, as a result, the facilities have fallen into disrepair and obsolescence; are in violation of State and Federal standards; and, jeopardize the health and safety of the public, and of Plaintiff, while being in danger of imminent collapse.

404b. Plaintiff is entitled to a writ of mandate of this Court directing the HCSD and Board Defendants to immediately take all prudent actions necessary to set proper rates in conformance with the laws, and to apply those funds to effect the maintenance, repairs, upgrades, and improvements necessary to render the entire HCSD system fully functional, reliable, safe, and in compliance with all state and federal laws

**Count XXIX Exemplary Damages (Punitive Damages)**

Plaintiff realleges and incorporates by reference all of the paragraphs above, prior to his First Claim for Relief.

419. Plaintiff does hereby allege that the conduct of each Defendant, by doing the acts set forth in this complaint as to each Defendant, or specified group of Defendants in their respective Sections, acted willfully, and maliciously, in that they intended to: vex, annoy, oppress, coerce, and cause harm to Plaintiff and the public; to interfere with and/or impede the exercise of statutory and/or constitutional rights by Plaintiff in his individual and/or official capacities; to violate his Constitutional and statutory rights; to intimidate and/or retaliate against Plaintiff for his exercise of constitutional and statutory rights, and/or acted recklessly, with willful or wanton indifference to the harm that may have befallen to Plaintiff. Plaintiff further alleges that while committing each discreet act of which Plaintiff complains herein as to each named Defendant, those defendants understood the consequences and risks of harm of their actions to Plaintiff, but consciously disregarded those risks.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff now prays for judgment against Defendants for his damages as specified hereinabove, for his reasonable attorney fees (if and when such fees are actually incurred), and for his reasonable costs and disbursements herein, as well as:

1. Declaration of the respective rights and duties of the parties under the acts of these Defendants in question, and as may arise subsequent to the filing of this Complaint, but which are a part of or of similar nature to the events and circumstances relating thereto or arising therefrom; and, that each and all of the purported acts by the Board Defendants at the purported public meetings of the HCSD held on from December 4, 2015, through January, 2017, and

ongoingly, and any other purportedly official acts occurring during, or outside of any purportedly agendized and/or noticed meetings, complained of herein and arising therefrom (save the payment of regular, recurring, lawful, accurately-billed, and customary expenses), are invalid and void on their face or as applied to Plaintiff and/or the public, for being repugnant to the Constitution and Laws of the United States, and/or the State of California, including, but not limited to: the HCSD Bylaws, the Safe Drinking Water Act, the Clean Water Act, the California Health and Safety Code, the Brown Act; Code of Civil Procedure section 526a, Government Code section 1090, and/or the Political Reform Act (and the regulations arising therefrom promulgated by the California Fair Political Practices Commission);

2. For general, special, economic, and exemplary damages as set forth, and as determined at trial;

3. Disgorgement by Defendants Winston; and, Kirsher, Winston, and Boston L.C., of all fees collected supposedly for services or other work done on behalf of, or the direction of, the HCSD, the Board Defendants, and/or any of their employees or agents, that occurred in violation of the HCSD Bylaws requirement of bids for services; Rule 3-600(E) or any other Rule or law, and/or for which no valid, lawful contract existed at the time of such service, as well as a declaration concerning the validity as to any (and each) purported contract with any of these law firms and/or the lawyers employed by them;

4. Disgorgement of all gifts of public funds by Defendants Julie Bowles, Clint Dingman, Ernest Goff[249], Hornbrook Community Bible Church, Steve Crittenden, James Soares, Basic Labs, and any other entity, agency, or individual receiving such; and also including, but not limited to, those individuals, entities, and/or agencies who had water charges and/or fees of any sort improperly or illegally uncharged, reduced, or waived in violation of the HCSD Bylaws by Dingman, Bowles, the HCSD, and/or the Board Defendants herein;

5. For attorney fees and/or costs of suit herein, to the extent such are actually incurred by the Plaintiff, and as which may be permitted by any provision of Federal and/or State laws, and/or the HCSD Bylaws as cited herein as a basis for any cause of action;

6. An Order commanding the HCSD and the Board Defendants to immediately identify those individual, entities, or agencies who received a gift of public funds by having had water charges and/or fees of any sort reduced or waived, including by failure to read the water meter for any customer, in violation of the HCSD Bylaws, the Water Code, Cal. Const. Art. 16, Sec. 6,

[249] In the case of Goff, Dingman, and Bowles, this includes the cost of their purported indemnification by the HCSD and Board Defendants, insofar as such legal expense was not specified in their contracts.

or any other regulation or statute, beginning in December 2015, and continuing through the present date, by the HCSD, Bowles, and/or Board Defendants herein, and for the HCSD to immediately (within 60 days) rebill every improperly reduced and/or waived fee, including late fees and penalties for that period, and further for a preliminary injunction and a permanent injunction, each enjoining Defendants HCSD, Clint Dingman, Julie Bowles, and Ernest Goff, as well as any later-named John Doe defendants, along with his/their agents, servants, and employees, and all persons acting under, in concert with, or for him/them, from changing, waiving, reclassifying, reducing, or failing to charge, any fee, penalty, or other charge due the HCSD in any month without a vote of the electors of the District as provided in the HCSD Bylaws;

7. Restitution by the Board Defendants for losses incurred to the HCSD occasioned by any and all gifts of public funds which arose from fees and charges wrongfully or improperly waived, reduced, or otherwise not collected during all times material herein, and/or overpayments of public funds to any person or entity that were made in excess of contract, all as provided by HCSD Bylaws Section A-9(26) or by any other law, and which are not collected by the HCSD within a time certain as set by the Court;

8. An Order commanding the HCSD to immediately (within 45 days) commission, and undertake, a study by a public engineering firm to determine the optimum amount of fees and charges required for the HCSD to comply with the provisions of Water Code sections 31007 and 71616, for the purposes of: qualifying for all reasonably available grants and to begin funding of necessary maintenance, repairs, and improvements to each part of the HCSD water production, treatment, and distribution systems sufficient to assure full compliance with all Federal and State laws (including the Surface Water Treatment Rule), while also considering and including the recommendations and specifications contained in the 1998 report by Hardey Engineering; hiring of properly qualified and certified employees to operate and maintain, and to create a plan for improvements to, the HCSD's water production, treatment, and distribution systems; and, for the HCSD to thereafter impose such fees as may be necessary, under Water Code sections 31007 and 71616, soon as possible, and to maintain them at the determined optimum rate, or higher, thereafter;

9. An Order commanding the HCSD to immediately (within 15 days) hire certified treatment and/or distribution operators for any and all duties involving the operation and/or repair of any water production, treatment, and/or distribution device and/or facility belonging to

the HCSD, including the "creek intake"[250], and to henceforth maintain only operators certified by the State of California, in compliance with existing law, in those capacities hereafter, and which certified operators shall specifically comply with the State law requiring them to be in immediate, personal control, and in "direct charge" of the facilities;

10. An Order commanding the HCSD, Clint Dingman, and/or Ernest Goff, to immediately provide each Director of the HCSD with unrestricted access to all HCSD equipment, property, and facilities, and to all documents and records, wherever kept, so long as he or she remains a Director of the HCSD, and to also provide all documents relating to water production and treatment by the HCSD to the public in response to any CPRA request, and as provided thereby;

11. An Order determining that the refusal by the HCSD and Board Defendants to comply with the provisions of the CPRA is a violation of statute and of public policy, and that henceforth the HCSD shall comply promptly and timely with all provisions of the CPRA; and, declaring that the policies, customs, and practices of the HCSD, Board Defendants, Winston, Bowles, Dingman, and Goff which violate the CPRA are null and void, and shall not henceforth be enforced or employed;

12. A declaration that the operation of the water production, treatment, and/or distribution facilities of the HCSD by Clint Dingman, an uncertified operator, was, and is, a nuisance *per se*, both as to this Plaintiff, and to the public generally, and so ordering that operation of any HCSD treatment and/or distribution facility by Dingman immediately cease, and be enjoined for so long as he does not have a valid Operator Certification issued by the State of California for either treatment, or distribution, tasks, or both[251] as required by law;

13. For preliminary injunctions and a permanent injunctions, each enjoining Defendants Clint Dingman, the Board Defendants, and Ernest Goff, as well as any later-named John Doe defendants, along with his/their agents, servants, and employees, and all persons acting under, in concert with, or for him/them, from failing to provide means of access to any and all District records, property and facilities by any Director of the HCSD;

14. For a preliminary injunction and a permanent injunction, each prohibiting Defendant

[250] Operation of which is necessary to maintain the surface water diversion rights of the HCSD with the State of California, to permit the community wells to "recharge", and to prevent damage to the well aquifers caused by over-pumping.

[251] Plaintiff acknowledges that Dingman received a "D-1" distribution certificate in November, 2015, but that certificate does not permit "treatment" of the water by adding chlorine and other chemicals, which Dingman continues to do on a daily basis.

Clint Dingman, the Board Defendants, and/or Defendant Goff, as well as any later-named John Doe defendants, along with his/their agents, servants, and employees, and all persons acting under, in concert with, or for him/them, from failing to immediately provide to each of the Directors on the Board of the HCSD as Goff and Dingman's direct supervisors pursuant to the HCSD Bylaws, a complete set of keys to all locks on District gates, doors, and/or other property, as well as free access to all such property and facilities at any reasonable hour;

15. For a preliminary injunction and a permanent injunction, each enjoining Defendants Murphy, Pearson, Bradley & Feeney, Inc.; Kirsher, Winston, & Boston, L.C.; and, Robert Winston, along with their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in any legal, administrative, or other proceeding as a representative of the HCSD, or any employee of, any contractor for, and/or any official thereof, without the express written consent of a resolution of the Board of Directors of the HCSD, or a valid, lawful contract, adopted at a public meeting of the Board in full compliance with all laws, and the Bylaws of the HCSD, identifying the specific action and plaintiffs/defendants they/he is to represent therein, and further Ordering that any such representation be also in full compliance with the provisions of Rule of Professional Conduct 3-600(E) and all other laws;

16. For a preliminary injunction and a permanent injunction, each prohibiting Defendant HCSD and any Director thereof, from providing gifts of public funds, and/or payments in excess of any contract with an independent contractor, in the form of funding a legal defense and/or indemnification (pursuant to Government Code 995) of any person or entity that is not an actual employee and/or public officer of the HCSD, or that is specifically mandated by contract with the HCSD, at the time of the conduct for which they seek indemnification from the HCSD as required by that section (or who were otherwise improvidently granted such benefit without any formal request), including any later-named John Doe defendants - as well as immediately nullifying any such improper indemnification agreements and payments therefor;

17. For a preliminary injunction and a permanent injunction, each enjoining Defendant Robert Puckett, Sr., along with his agents, servants, and employees, and all persons acting under, in concert with, or for him, from maintaining the property located at 150009 Oregon Road in Hornbrook, California, as well as any vehicles, the residence, septic facilities, outbuildings, and the grounds of that property, in any manner that contravenes Federal, State, and/or local laws; and, said injunctions further ordering Defendant Puckett to immediately (within 60 days) remove all derelict vehicles, trailers, RVs, refuse, debris, improperly-stored petrochemicals, contaminated soil, pesticides, rodentcides, and trash from the premises;

18. For a preliminary injunction and a permanent injunction, each enjoining Defendant HCSD, Clint Dingman, and Defendant Goff, as well as any later-named John Doe defendants, along with his/their agents, servants, and employees, and all persons acting under, in concert with, or for him/them, from operating any of the HCSD's treatment or distribution equipment or facilities in any manner contrary to any Federal, State, or local law;

19. For a preliminary injunction and a permanent injunction, each enjoining the HCSD, Board Defendants, Bowles, and Winston to refrain from undertaking any administrative duty of the General Manager, Acting General Manager, General Manager Assistant Trainee, and/or Treasurer of the HCSD;

20. A determination that the HCSD Bylaws of April 18, 2014 are the only true, effective Bylaws of the District; that they have never been lawfully altered, rescinded, or revoked, by any valid action of the HCSD Board, or by the electors of the District; and, that certain sections thereof may not be altered without voter approval, regardless;

21. An Order declaring each purported act and/or action of the Board Defendants, Winston, Bowles, Dingman, Goff, and/or the HCSD, taken in violation of the Brown Act, the HCSD Bylaws, and/or any other law as set forth herein to be *ultra vires,* and/or void otherwise;

22. An Order declaring that all "restated bylaws", any and all resolutions, and any other document purportedly altering, rescinding, and/or replacing without voter approval any portion of the HCSD Bylaws adopted on April 18, 2014 to be null and void;

23. An Order declaring that any and all purported Resolutions, Motions, contracts, and/or policies of the HCSD, and/or purportedly adopted by any configuration of the HCSD Board, as well as any later or concurrent associated "reaffirmations", "readoptions" and the like, and which purport to grant Defendants Winston, and/or Kirsher, Winston & Boston, L.C. authority to appear in any legal or administrative matter without prior HCSD Board approval (that is, to "self-assign" to such matters without prior consent of the HCSD), are void as violations of Government Code section 61045, and impermissible delegations of Legislative authority, and so are voided - having no further legal or substantive effect or authority;

24. For a preliminary injunction and a permanent injunction, each enjoining Defendant HCSD, Clint Dingman, and Defendant Goff, as well as any later-named John Doe defendants, along with his/their agents, servants, and employees, and all persons acting under, in concert with, or for him/them, from contracting for any service, construction, or purchase of equipment, t in any manner contrary to the HCSD Bylaws, and/or any Federal, State, or local law;

25. For an order that any person or entity receiving gifts of public funds, and/or payments in excess of any contract with an independent contractor, in the form of funding a legal defense and/or indemnification (pursuant to Government Code 995) of any person or entity that is not an actual employee and/or public officer of the HCSD, or that is specifically mandated by contract with the HCSD, at the time of the conduct for which they sought indemnification from the HCSD as required by that section (or were otherwise improvidently granted such benefit without any formal request), including any later-named John Doe defendants disgorge all such improper indemnification benefits and payments by the HCSD therefor;

25. For costs of suit herein incurred; and,

26. For such other and further relief as the court may deem proper.

Respectfully submitted this 31st day of January, 2017

Roger Gifford, Plaintiff Pro Se
15226 Hornbrook Rd,
Hornbrook, CA 96044 530-340-1395

# EXHIBIT 2



Peter T. Harrell, In Pro Per
PO Box 131,
Ashland, OR 97520
peterharrell@yahoo.com (do **NOT** use for service)

FILED

MAY 1 3 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Peter T. Harrell,<br><br>Plaintiff,<br><br>vs.<br><br>Clint Dingman; Peter Kampa; Michele Hanson; Robert Winston; Hornbrook Community Services District ("HCSD"); Patricia Slote; Robert Puckett, Sr.; Ernest ("Ernie") Goff; Kevin Dixon; and John Does 5-30,<br><br>Defendants, | Case No: 2:19-cv-00031 KJM AC (PS)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)**<br>ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; VIOLATIONS OF SAFE DRINKING WATER ACT and CLEAN WATER ACT; PENDENT STATE CLAIMS - REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF<br>USC 42 §§1983, 1985, 1986, and 1988.<br>USC 18 §§1346, 1513(e). |

**I. Jurisdiction.**

1. Jurisdiction over this action arises pursuant to Sections 1331, 1332, 1342, and 1343 of Title 28 of the United States Code, as an action arising under the Constitution and laws of the United States, specifically Amendments 1, 4, and 14 of the United States Constitution, the Clean Water Act[1] ("CWA"), the Safe Drinking Water Act[2] ("SDWA"), Title 18 sections 1513(e) and 1846 of the United States Code, and sections 1983, 1985[3], 1986, and 1988 of Title 42 the United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff by the Constitution and Laws of the United States. Plaintiff asserts pendent claims under the statutes and Constitution of California, and the Bylaws of the Hornbrook Community Services District ("HCSD"). Factual assertions, events, and claims set forth in this Complaint all occurred **ONLY** from December 28, 2016, through and including April 6, 2019[4], and ***all*** claims set forth herein below accrued during that timeframe, which is incorporated by reference into each Roman-numbered Section, allegation, and "count", hereinafter.

---

[1] At Section 505 thereof.
[2] See generally 42 USC § 300j. Plaintiff's right to be free of retaliation is at 42 USC § 300j-9(i).
[3] Specifically, it is alleged that various defendants specifically conspired with each other, in their individual capacities, and/or as public officers, to violate Plaintiff's Constitutional rights.
[4] That is, the claims made herein do ***not*** relate to any prior interactions between the parties.

2. Plaintiff Peter T. Harrell is a citizen of the State of Oregon, as well as being a (real and personal) property owner[5], taxpayer-citizen, and water consumer within the boundaries of the HCSD. This action is also brought for the public benefit, and as provided by the HCSD Bylaws[6] at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030. When quoting statutes and/or decisional law herein, Plaintiff's intent is to incorporate provisions and mandates of those laws as articulated by the Legislature, Attorney General, and/or the Courts in alleging wrongful conduct by these Defendants, and the basis for liability of the Defendants. When Plaintiff states that an action of a Defendant(s) is "illegal", or "improper", he means contrary to provisions of law.[7]

3. While reference in this complaint may be made to acts, events, and statements made at purportedly public meetings of the HCSD Board, and/or that are tangentially related to litigation, it is not Plaintiff's intention to base any state law, or common-law tort, cause of action on any expression of First Amendment rights occurring by any person or entity at any such proceeding.

4. Plaintiff timely provided written notices of the basis for all his state claims as set forth herein to the HCSD in full compliance with all requirements of California Government Code sections 905, 910, and 915. The HCSD failed to respond to these notices in any way

5. Defendant HCSD (also "District") is a government agency lying fully within Siskiyou County, created and operating as a municipal corporation and special district[8] under the laws of the State of California, the United States, and its own Bylaws[9], and subject to their jurisdiction. The HCSD exists to produce potable water to the public via its 130 service connections (and several fire hydrants) lying within the town of Hornbrook, is governed by a Board of Directors (the "Board"), and is a political subdivision of the State of California, diverse to Plaintiff.

6. At all times material, Defendants Clint Dingman ("Dingman"); Michele Hanson ("Hanson"), Peter Kampa ("Kampa"), Patricia Slote ("Slote"), Robert Puckett, Sr. ("Puckett"),

---

[5] Plaintiff owns a small residential lot in Hornbrook, CA with a service connection to the HCSD water system. Plaintiff's real property has a mobilehome (used to store personal property), with vegetable gardens, fruit trees, and livestock on it. The property depends on the HCSD system for water and fire protection. Plaintiff is thus entitled to honest services of the HCSD and its officers, and compliance with the provisions of Water Code §§31007, 71614, and 71616, mandating proper administration and upkeep of the HCSD facilities. Plaintiff's quiet enjoyment, use, and value of his property has been harmed by the acts of these Defendants, and he has suffered violations of his statutory and Constitutional rights by them.

[6] The HCSD Bylaws include numerous specific voter control requirements.

[7] See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 283 (An illegal act is one that is forbidden by law.) Generally, Plaintiff has also specified which laws are being violated, and by whom.

[8] Special Districts such as the HCSD are controlled by California Govt Code sections 61000, *et seq.*

[9] The HCSD's Bylaws will be referred to as "the Bylaws", or "Bylaws" hereinafter.

Robert Winston ("Winston"), Ernest Goff ("Goff"), Kevin Dixon ("Dixon"), and John Does, were Directors, officers, employees, contractors, and/or agents of the HCSD, and/or of each other, and acting under color of law and of the offices of their official positions and/or employment with the HCSD, as well as the offices of Defendants Slote and Hanson as Directors and Secretary of the HCSD. All natural person Defendants named herein were, and are, citizens of the State of California, and subject to its jurisdiction. All person Defendants in this action are thus diverse to Plaintiff. For purposes of this Complaint, Defendants Slote, Hanson, and Puckett, as voting Directors of the HCSD, shall also be referred to as "the Board Defendants".

**II. Duties of the Defendants.**

7. It is the California Legislature's avowed public policy that public agency enterprises like the HCSD be operated efficiently, economically, and in good repair and working order, (Govt. Code §§ 54513, 54516), at the lowest cost consistent with sound economy, prudent management and security of bond holders (Govt. Code § 54514), and that the rates and charges be set at levels sufficient to pay debt service, meet bond covenants, and pay current maintenance and operation expenses of the water system. (Govt. Code §54515.) Other laws expressing this policy include: Water Code §§31007, 43006, and 71616; Public Utility Code §12809; and, Public Utility Code §16467. Health and safety are of primary concern.

8. The HCSD, and each of the Public Officer Defendants, thus owes a fiduciary duty[10] to the District, and to each property owner, water customer, and/or elector in the District[11]: to maintain the District's finances in a solvent and efficient manner; to correctly bill for and collect all charges and fees due to the District[12]; to apply for and obtain grants and other funding available for the maintenance, upgrading and repair of the Districts facilities[13]; to establish, set, and collect, rates, charges, and fees sufficient for the ongoing proper and safe operations,

---

[10] This duty of the HCSD Directors is also enshrined in State law at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. This action, by claiming waste of taxpayer funds, is also authorized by Code of Civil Procedure Section 526a. The HCSD Bylaws additionally provide that qualified persons may bring an action on behalf of that duty at Section A-9(26); that certain charges may not be waived; that certain rates and charges may not be changed without voter approval, and that any Director(s) wrongly acting to do so are liable for lost income to the District (Section A-9(1); 1-3.010).

[11] HCSD Bylaws at A-9(26); Water Code sections 31007, and 71616.

[12] Including a $39 per parcel "standby fee" per the 1996 Bylaws, ratified as Section A-9(13) in the April 18, 2014 Bylaws, and as resolution 14-022. Defendants took wrongful action(s) to nullify, and failed to initiate collection of the fee as mandated; imposed improper rate changes and residential rate increases without the procedures dictated by the Bylaws and/or Prop 218; and, *de facto* or *per se* altered portions of the Bylaws without the required voter approval, depriving Plaintiff of due process and equal protection.

[13] Also as provided by the HCSD Bylaws at Section A-7.

maintenance, repair, and expansion of the HCSD's facilities; to operate the HCSD water production, treatment, and distribution systems in full compliance with the CWA and SDWA, as well as all State laws and regulations, and by the use of only State-certified personnel[14]; to refrain from waste of, and wrongful diversions of, public moneys to themselves, their friends, and/or to co-conspirators; and, to maintain the water production, treatment, and distribution system in good repair and safe operation - per Civil Code §1714(a), and as provided by law.

9. These Defendants acted counter to public policy and law by recklessly and/or knowingly failing in these duties, or acting contrary thereto, while agreeing and planning amongst themselves to do so, and taking actions to further those plans. These failures resulted in lost funds, damage to wells, water shortages, poor water quality, harmful water chemistry, and threats to the health and safety of Plaintiff, the public, and the environment. Each of the wrongful actions of the Defendants threatened and impaired the reliability and safety of the water supply to Plaintiff's real property (thus reducing its value); damaged his personal property (including trees, plants, and livestock) via unsafe and over-Chlorinated water; and, threatened and harmed Plaintiff's (and the Public's) health and safety when consuming District water.

10. Plaintiff seeks injunctive and declaratory relief concerning wrongful, illegal, and/or improper acts of Defendants, recoupment to the public fisc of wrongfully diverted and wasted taxpayer funds, as well as general, special, and exemplary damages as appropriate.

11. In pursuing this litigation, besides personal damages, Plaintiff seeks declaratory and injunctive relief to compel the HCSD to cease its various illegal/wrongful, monetarily wasteful activities, and its system of patronage; to bring the water system up to modern standards; and, to undertake needed repairs and expanded capacity - all as required by law. Plaintiff also seeks to have entities and people who wrongfully benefited from malfeasance of the Board Defendants, *et al*, repatriate any ill-gotten gains to the HCSD's public treasury.

**III. Status and Agency of the Defendants, Basis for Conspiracy Allegations & Liability.**

12. All claims are brought against the natural person Defendants their individual, as well as any official capacities to the extent permitted by law.

13. Each of the Defendants, individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, managing agents, owners, masters and servants, ostensible agents, principals, and/or co-conspirators of one another. Plaintiff is informed, and reasonably believes, each Defendant

[14] As required by Health and Safety Code §§106878 and 106885.

was at all times acting with the knowledge, consent, approval, aid, agreement, and/or subsequent ratification of the remaining co-Defendants, and under the color of law of their positions as public officers of the HCSD, while also failing to initiate and maintain adequate training and supervision over agents, contractors and/or employees under their direction and control.

14. The acts of the Defendants and their agents described in this complaint were part of a systematic and ongoing pattern of negligence, malfeasance/nonfeasance, and acts that were calculated to, and actually did: wrongfully enrich the Defendants; damage the ability of the HCSD to provide safe, potable water to the public and to Plaintiff; injure Plaintiff financially, physically, and emotionally; interfere with Plaintiff's enjoyment and use of his property; damage and reduce Plaintiff's real property values; and, damage, seize, and/or convert Plaintiff's personal property without due process - all with reckless indifference to Plaintiff's legal rights.

**IV. Allegations Common to HCSD Public Officer Defendants.**

15. Defendants Slote, Hanson, Puckett, Kampa, Goff, Dixon, and Dingman, are "public officers" and "public employees" of the HCSD as defined in California law, and for purposes of Plaintiff's federal "under color of law" claims. In addition to the allegations in the later sections devoted to each Defendant, these Defendants have each agreed to, assisted, acted in concert with each other; and, ratified certain wrongful conduct common among themselves as follows:

**A)** As to Slote, Hanson, and Puckett; arranging to wrongfully divert HCSD funds to Hanson[15], Dingman[16], and Winston[17], which diversion prevented adequate water system maintenance, repairs, and upgrades - damaging Plaintiff's health, safety, and property;

**B)** Wrongfully and improperly reclassifying, waiving, undercharging, and/or failing to collect the proper fees, charges, assessments, and past due accounts for certain persons/entities within the District[18], while failing to impose and collect the "standby fee" as to each parcel in the District as provided by law and the HCSD Bylaws - thus depriving the HCSD of resources

---

[15] By paying Hanson's private legal fees in Siskiyou County Superior Court Case #SCSCCVHA 15-204/205/206, and without any application for indemnification by her, nor formal action to indemnify her.

[16] As payments and services in excess of (and/or absent any) contract or legal obligation to Dingman, as well as payments for services not actually rendered, and/or that were claimed by Dingman for services he was barred by operation of law from performing due to not having proper State certification.

[17] By paying Winston for services and fees he charged the HCSD that he never actually performed, had never been approved by any action of the Board, and/or via contracts void for being made in violation of conflict of interest statutes (including Govt. Code §1090), and/or the HCSD Bylaws.

[18] Additionally, Slote and Hanson, violating their duty as Secretary of the HCSD, failed to record all such acts and actions as required by Govt. Code §61045(e), and facilitated the altered billing and other documentation that allowed this to happen, thus engaging in fraud and creating false public records.

necessary to maintain and properly operate the water system - causing shortages, undrinkable water, unreported toxic water events, and subsequent harm to Plaintiff and his property interests.

**C)** As to Slote, Hanson, Puckett, Kampa, and Winston; denying due process to Plaintiff concerning, as well as aiding and abetting the "cover up" of Dingman's August 10, 2017 attack on Plaintiff, and Dingman's wrongful destruction, seizure and conversion of Plaintiff's cameras.

**D)** As to Slote, Hanson, and Puckett, and Winston; acting to wrongfully and corruptly have the HCSD divert public funds to Winston for Hanson's private legal fees in Superior Court Case #SCSCCVHA 15-204/205/206. The diversion prevented system maintenance and repairs.

**E)** Each retaliated against Plaintiff for complaints to government agencies and courts[19];

**F)** As to Slote, Hanson, Puckett, and Kampa; failing to comply with Water Code, §§31007 and 71616 mandating adequate fees for maintaining and upgrading domestic water systems be collected and spent on such maintenance and upgrades to protect public health;

**G)** As to Slote, Hanson, Puckett, and Kampa; wrongfully increasing residential water fees without the voter approval required by the Bylaws, and/or without following those procedures mandated by Proposition 218 - and wrongfully, contrary to the provisions of state law and the Bylaws, diverting the increased fees to expenditures other than water production costs, system maintenance, and water system capital improvements, thus impairing the water supply;

**H)** Agreeing, and acting to have Dingman wrongfully work on, repair, and operate (including by the addition of chemicals to the water) HCSD water production, treatment, and distribution facilities without proper and/or any certification, or license to do so, thus violating the provisions of Health and Safety Code §§106877, 106878, and 106885, as well as 22 California Code of Regulations §§ 63765, 63770, and 64534(b)(3). These Defendants also agreed and acted to wrongfully fail to disclose those actions via required reports to the State Water Control Board, and by wrongfully destroying and/or falsifying those public records.

**I)** As to Dingman, Slote, Kampa, Puckett, and Hanson: planning, agreeing, and acting to: ratify, assist, and aid Dingman's conduct in assaulting Plaintiff, destroying Plaintiff's PL210 camera, and seizing and converting Plaintiff's trail cameras without due process of law.

## INDIVIDUALLY-NAMED DEFENDANTS

## V. DEFENDANT PATRICIA SLOTE.

16. Defendant Patricia Slote is a citizen of Siskiyou County, California, as well as a

[19] By failing to timely and fully (if at all) respond to Plaintiff's tort claims notices, Brown Act notices, California Public Records Act requests, and/or other complaints and grievances as required by law.

Director of the HCSD, and Secretary of the Board thereof from the period relevant to this complaint through December 5, of 2017, so was obliged to keep true records of all official acts by Government Code §§61044, and 61045(e), and the Bylaws.

17. Slote, by controlling, creating, and altering the records and documents of the HCSD, acted as part of an agreement and plan between her, Hanson, Winston, Dingman, and Kampa, to permit Dingman to falsely claim additional pay that he was not entitled to, and to claim extra hours on his "timesheet" that he did not actually work. Dingman did in fact claim extra pay and hours worked each month during the period specified in ¶1 above, harming the District, and wasting public funds. During those times, Slote, Hanson, and Kampa also willfully failed to supervise Dingman to verify any claimed work done, or any actual hours worked; willfully failed to require Dingman to acquire and/or maintain proper water treatment/distribution certifications from the State[20]; and, wrongfully acted to prevent Plaintiff and other persons from investigating these circumstances, and/or bringing any actions or petitions to correct them by withholding public records, failing to document operations of the HCSD, and failing to respond to citizen complaints (including Plaintiff's) as required by State law, and the Bylaws.

18. During her time in public office, Slote, in agreement and cooperation with Puckett Kampa, and Dingman, knowingly permitted and encouraged the wrongful, unsanitary, illegal operation[21], and wrongful occupation as his residence, by Dingman of the water treatment facility, threatening the health and safety of Plaintiff and the public, and gifting public funds.

19. When Plaintiff was attacked, and his PL210 camera destroyed by Dingman on or about August 10, 2017, Slote acted to assist Dingman's seizure and conversion of Plaintiff's property by ratifying that conduct in all respects, and by failing to take any action to address Dingman's actions, compensate Plaintiff for his destroyed property after he complained of it, or to place the issue on any HCSD agenda. Dingman <u>was actually paid</u> by the HCSD (via actions of Slote, Kampa, and Puckett) for the attack upon Plaintiff and destruction of his camera.

## VI. DEFENDANT MICHELE HANSON.

20. Defendant Michele Hanson is a citizen of Siskiyou County, California, and an HCSD Board member, as well as the Secretary of the Board beginning in December of 2017, continuing

---

[20] Operation of, <u>or</u> permitting the operation of, any water treatment or distribution facility without the proper certification(s) from the State of California is a misdemeanor, and imposes civil liability, pursuant to the provisions of Health and Safety Code §§ 106878, and 106885. Dingman did not have those certifications, which are essentially a license to do certain water-related duties.

[21] That is, when Slote knew that Dingman did not have the certifications required by law for Dingman to conduct operations relating to water treatment, and/or of the HCSD treatment plant.

in that capacity through the current date. As Secretary, Hanson, along with Kampa, controlled the content of all HCSD agendas for Board meetings, and was required to keep true records of all official acts by Government Code §§61044, and 61045(e), and the Bylaws.

21. Hanson participated in the common plan, agreed to, adopted, aided, abetted, encouraged, and ratified by Dingman, Slote, Puckett, Kampa, Goff, Dixon, Winston[22], and the HCSD, to create, institute, and enforce policies, customs, and practices of the HCSD that were in violation of law, and the Bylaws; and, to wrongfully, and illegally[23] permit Dingman to operate the water facilities of the HCSD without proper State of California certifications.

22. Hanson encouraged and knowingly permitted Dingman to wrongfully bill the HCSD extra hours for work that Dingman did not actually perform, which was performed in less time than claimed on Dingman's "time sheets", and/or to perform tasks for the HCSD which he was not lawfully permitted to perform[24].

23. These actions harmed Plaintiff before and during the Klamathon Fire of July 2018 due to the lack of water in the Hornbrook distribution system to fight the fire, and also thereafter, due to no funds being available to complete proper repairs of the Hornbrook water system, poor - often dangerous- water quality occasioned by the destruction, and the incompetent, incomplete repairs and operations on and of the system undertaken by Kampa, Dixon, and Dingman, thereafter - including, but not limited to, occasions of water rendered "mildly" poisonous by improperly regulated chlorine exceeding the "maximum contaminant levels" permitted by the State, which damaged Plaintiff's health, crops, trees, and livestock, and property value.

24. Thereafter, Hanson, Puckett, Winston, Dingman, Kampa, and Dixon, agreed, acted, and conspired to wrongfully allow Dingman to move his travel trailer, inoperable vehicles, and other items onto the lot where the water treatment plant sits, and assisted Dingman to do so, so that Dingman could occupy that trailer, the lot, and the water plant building for his personal uses free of charge[25]. These benefits and payments to Dingman (as well as payments for work Dingman was prohibited by law from performing) were unlawful gifts of public funds, and

---

[22] Including by having Winston (without any lawful authority) ghostwrite purportedly official documents of the HCSD, along with various notices, resolutions, bylaws, declarations, contracts, and letters.

[23] That is, contrary to the provisions of California Health and Safety Code §§106878, and 106885.

[24] Dingman's wrongful operation of the water treatment plant and other facilities without the required certifications in violation of the provisions of Health and Safety Code §§106878, and 106885 rendered his employment contract, and claims for payment of services, as to those duties void for being illegal *per se*.

[25] Allowing Dingman to live in the water plant, and/or in his travel trailer, and to store old, non-registered, non-operational vehicles on the lot of the water treatment plant is contrary to the provisions of the Siskiyou County Code as a threat to health and safety, and so also a nuisance *per se*.

wrongful diversion of public funds. Illegal parking of derelict vehicles, and occupation of Dingman's travel trailer at the HCSD water treatment facility in violation of the Siskiyou County Code (Title 3, Section 17.01(b)) was thus also allowed as a sort of "underground regulation", policy, or practice. The Code prohibits such acts due to health and safety concerns - of even more urgency at a water distribution center - and is a nuisance, and nuisance *per se*.

25. As part of the agreement and plan to wrongfully divert HCSD funds to the private benefit of Hanson and Winston; Hanson, Winston, and Kampa agreed and acted to *ex post facto* and unilaterally (*ultra vires*) purportedly approve[26] intervention by Winston and/or his legal firm in several Siskiyou County Superior Court matters, as well as matters in the Third District Court of Appeals, but without any Board approval prior to actions relating thereto or appearances therein[27]. These diversions harmed Plaintiff by starving the HCSD treasury of funds needed for the maintenance, improvements, and safe operation of the HCSD facilities, as required by law.

26. Hanson, Puckett, Dingman, and Kampa agreed, planned, and acted to retaliate against Plaintiff for conducting investigation, and surveillance of Dingman and the HCSD facilities[28], by encouraging Dingman to attack Plaintiff and destroy his camera on or about August 10, 2017; by aiding, abetting, and ratifying Dingman's conduct (by failing to take action to return Plaintiff's property after he complained of its seizure, or to make any record of that complaint); and, by having Dingman later use HCSD tools and equipment to wrongfully seize, and convert, Plaintiff's trail cameras between October 13, and December 10, 2017.

## VII. DEFENDANT ROBERT PUCKETT, SR

27. At all times material to this Complaint, Defendant Robert Puckett, Sr. ("Puckett") was a citizen of Siskiyou County, California, a Director of the HCSD, and President of the Board of Directors thereof. Puckett, agreed and conspired with, aided, and abetted the other Defendants (and thus the HCSD), to engage in that conduct set forth in the sections pertaining to Hanson, Slote, Dingman, Kampa, the HCSD, Goff, Dixon, and Winston.

## VIII. DEFENDANT HORNBROOK COMMUNITY SERVICES DISTRICT

28. Plaintiff incorporates the facts contained in paragraphs 1-27, and 35-68, as if fully set forth at this point.

---

[26] That is to say Hanson did so without any corresponding lawful authorization or direction by the HCSD Board to do so pursuant to the requirements of Govt. Code 61045.

[27] Each act, and/or appearance without Board approval was a violation of Bus. & Prof. Code §6104.

[28] Plaintiff is informed and reasonably believes that Hanson and the other Defendants also knew at this time that Plaintiff intended to use his photos and the results of his investigation to file complaints with the State Water Board and other agencies, and to bring legal actions.

29. The HCSD has inadequate facilities that violate Clean Water Act[29] and Safe Drinking Water Act[30] requirements. The HCSD has failed to maintain and operate the HCSD facilities in the manner required by State and Federal laws by: ignoring notices and warnings from the State Water Resources Control Board ("SWRCB") concerning specific deficiencies and breaches; allowing cross-contamination and backflow risks to go unaddressed[31]; by failing to staff the water treatment plant and distribution system with State-certified personnel as required by Health and Safety Code §§106878 and 106885; and, by failing to upgrade and maintain its equipment - particularly relating to surface water diversion facilities. Each of the Defendants have agreed to institute, instituted, and continued an institutional policy, custom, and practice of the HCSD of willfully failing to address these deficiencies[32].

30. The HCSD and other Defendants were, at all times material, aware of , and responsible for, the operation of HCSD's "well 3", which frequently, in violation of State law and the CWA, permits outflow of water containing toxic Boron and salt levels into Rancheria Creek, which flows into the (wild and scenic) Klamath River without any permit granted by any agency to the HCSD allowing it to do so. The HCSD has failed to correct this ongoing nuisance.

31. During the times material to the Complaint, the HCSD purported to enact rate and customer classification changes, waivers of fees and charges for certain customers, various classification rate reductions, and residential rate increases purportedly in compliance with the provisions of California's Prop 218 and/or the HCSD Bylaws, but in fact it failed to comply therewith - rendering those rate changes and procedures void and/or voidable.

32. During the times material to this Complaint, the HCSD, Hanson, and Kampa, acted willfully and wrongfully to particularly deprive Plaintiff, and other property owners within the HCSD boundaries, proper notice of the proposed rate increases as required by Prop 218 and/or the Bylaws, and also failed to permit the electors of the HCSD to vote on each or any of the rate

---

[29] 33 USC §§1251, et seq.
[30] 42 USC Chapter 6A; 40 CFR 141-143. The HCSD's water production, treatment, and distribution equipment is obsolete, and does not meet the requirements of the Act, while the HCSD permits uncertified and unlicensed Operators, contractors, and other workers on its systems in violation of law.
[31] This includes by way of simply ignoring the State requirements (and repeated directions) relating to testing of backflow and/or "check-valve" devices connected to the HCSD distribution system.
[32] For example, the HCSD has failed and refused to establish and collect rates and charges as required by Water Code §§ 31007, and 71616; failed to properly staff its facilities in violation of the Health and Safety Code; failed to maintain and upgrade the wells and surface water facilities to current engineered standards, all in violation of federal and state law, and resulting in water shortages, poor water quality, and safety hazards to Plaintiff and the public. Plaintiff's personal property, real property value, and use and enjoyment of his property were harmed by these acts.

increases and/or changes and waivers of fees undertaken by the Defendants as required by the HCSD Bylaws, while also wrongfully diverting the improperly increased residential water fees to purposes other than to pay for water production costs, and upkeep, as is required by law.

33. These acts harmed Plaintiff by rendering the water produced by the HCSD unsafe and unmonitored; by wasting taxpayer funds; by preventing proper and legally-required upgrades, maintenance, staffing, and repairs to the HCSD system[33]; by harming Plaintiff's plantings and livestock, and, by devaluing Plaintiff's property without due process of law.

34. Under Government Code section 61045(a), "A majority of the total membership of the board of directors shall constitute a quorum for the transaction of business", while under section 61045(b), "[t]he board of directors shall act only by ordinance, resolution, or motion." In addition, under the Ralph M. Brown Act, Government Code section 54950 *et seq.*, "`action taken' means a collective decision made by a majority of the members of a legislative body . . . ." (Gov. Code, § 54952.6.) All acts by the HCSD described in this Complaint and/or discovered during litigation (i.e., fee waivers, etc), and/or those taken by any of the Defendants as officers, employees, and/or agents of the HCSD in contradiction to these provisions are void, against public policy, and subject to declaratory and injunctive relief.

## IX. DEFENDANT PETER KAMPA

35. Defendant Peter Kampa ("Kampa") is a citizen of California, and the HCSD contracted General Manager. Kampa is also the direct supervisor of Defendants Goff, Dixon, and Dingman (see ¶¶46-63, below), and is responsible for "day to day operations" of the HCSD per Government Code §61051, and Water Code §71362. Kampa is thus bound by his contractual and statutory duty to oversee daily operations of the HCSD, supervise its employees and finances, and effect those policies mandated by law, the Bylaws, and as directed by the Board.

36. At no time has Kampa actually performed his General Manager duties within the boundaries of the HCSD, instead ignoring those duties in favor of phonecalls to the HCSD Board meetings, and *ex parte* communications via phone and email to the individual Board members, Hanson, Goff, Dixon, Dingman, and/or Winston in violation of the Brown Act, and to plan and/or facilitate State law, CWA, SDWA, and/or Bylaws violations by the other Defendants.

37. Kampa, while acting as the General Manager for the HCSD, wrongfully proposed a

[33] The HCSD, Puckett, Slote, Hanson, and Kampa also failed and refused to abide by the provisions of the Public Contracts Code, and Uniform Construction Costs Accounting Act after adopting them, so Plaintiff and the public were deprived of competent repairs, required upgrades, etc, by responsible bidders and licensed contractors without any due process of law.

new, additional contract to the HCSD to *also* pay him for "consulting", "facilitating", and other services related to acquiring grants and loans - at significant cost to the HCSD, while personally enriching Kampa[34], and wrongfully diverting funds that should have been used to maintain and repair the HCSD water system. Kampa does not have a business license for County of Siskiyou, or any "contractor's" license, and has been engaged in unfair business practices on that basis, and due to the wrongful conduct set forth herein, as defined in Bus.& Prof. Code §17200, *et seq*.

38. In purportedly acting as the General Manager for the HCSD, including the water production, treatment, and distribution facilities, Kampa had, and has, a duty to regularly inspect, oversee, supervise, and provide for the direct control by properly State-certified personnel, the daily operation of the HCSD's water treatment plant and distribution system as provided by Federal and State laws[35], and the HCSD Bylaws.

39. Kampa has consistently failed to actually perform his duties by: failing to maintain and provide for the use of the "creek diversion" of the HCSD and associated water rights, thus jeopardizing the HCSD's diversion rights, and thus the water supply to Plaintiff's property; failing to supervise and direct Dingman concerning maintenance and safety of the water plant and grounds; failing to timely and properly respond to deficiency notices by the State Water Board; and, has failed to conform his conduct at all times to that required by Federal and State law in regards to operation of the HCSD water treatment and distribution facilities[36].

40. Kampa agreed with, assisted, aided, abetted, facilitated, and participated in the wrongful conduct described in Section IV, and the sections relating to Hanson, Slote, Puckett, Goff, Dixon, the HCSD, Dingman, and Winston, while also being responsible for that wrongful conduct and harms to Plaintiff by virtue of his position as General Manager of the HCSD.

41. Kampa ignored and/or failed to take corrective action regarding: maintenance of the building and grounds of the HCSD water plant leading to its destruction by fire and loss of water to Plaintiff's property; the multiple failures by Dingman to properly regulate Chlorine in the HCSD distribution system resulting in over-Chlorination toxic water events which then went

---

[34] Thus made in violation of Govt. Code §1090, with the agreement, assistance, and ratification of Hanson and Puckett, and Plaintiff seeks a declaration the contract is void, and to claw back any gains therefrom.

[35] See Federal Clean Water Act (33 USC §§1251, et seq), and Safe Drinking Water Act (42 USC 300f, et seq); State of California laws implementing same (e.g. Health and Safety Code Sections 116270 et seq, 116375, 116385, and 116395; California Code of Regulations Title 22, Sections 63765, and 63770).

[36] Kampa instructed Dingman to improperly and constantly draw the HCSD's water supply from the three HCSD wells (contrary to the design and instruction of the HCSD's Public Engineer), causing over pumping, degraded water quality, increasing costs, and potentially damaging the aquifers thereof, all of which reduces the water quality and supply to Plaintiff's property.

unreported to the State and the public[37]; failed to maintain proper logs and documentation of water use and/or the water treatment and distribution system of the HCSD; failed to provide for and undertake testing of the hazardous "cross-connections" to the HCSD distribution system as required by law; and, permitted Dingman to conduct water treatment and distribution operations while knowing Dingman did not have certifications required by the State of California to do so - threatening the health and safety of Plaintiff, the public, and the environment.

42. Kampa approved payments to Dingman for Dingman's wrongful operation of the water treatment plant and other facilities in violation of the provisions of California Health and Safety Code §§106877, and 106878, despite knowing that Dingman did not have the required certifications and so was illegal *per se*. These acts were also a nuisance (as specified in Health and Safety Code §116670, and Civil Code §3479), directly threatened the health and safety of Plaintiff, and of the public, harmed Plaintiff's property, and diminished his real property value.

43. When Plaintiff reported Dingman's attack upon his person and destruction of his PL210 camera, and the later unlawful seizure, conversion, and destruction of Plaintiff's trail cameras and accessories to Kampa, Kampa failed to prevent or cure the wrongful acts by Dingman, and also agreed and acted with Dingman to approve, ratify, and abet Dingman's wrongful actions by refusing to return any property, and refusing to put the issue of the property on any agenda for the HCSD Board of Directors - further depriving Plaintiff of due process.

44. In the latter part of 2018, Kampa, while employed as the general Manager for the HCSD, drafted and proposed an additional contract to himself for "consulting services" which violated the self-dealing provisions of Government Code section 1090, and wrongfully diverted funds to Kampa that should have been used to maintain and repair the HCSD water system.

45. All of these actions by Kampa were for his wrongful personal gain, caused waste of public funds, unlawful gifts of public funds, loss of use by Plaintiff of his property, loss of enjoyment of Plaintiff's property, damage to Plaintiff's property, and damage to Plaintiff.

**X. DEFENDANTS ERNEST ("Ernie") GOFF AND KEVIN DIXON.**

46. During the period material to this Complaint, Defendants Ernie Goff and Kevin Dixon were officers, employees, and agents of the HCSD, and (at different times during the period in ¶1) were each the "operator of record" of the HCSD's water production, treatment, and

---

[37] Plaintiff alleges on information and belief that the wrongful, excess Chlorination of the system by Dingman occurred over one dozen times during the period material to this complaint, with some events lasting as long as a week at a time. The excess Chlorine in the system harmed Plaintiff by causing acute, severe, and lasting gastrointestinal distress, and by damaging and killing Plaintiff's garden crops and trees.

distribution facilities as that term is defined in California State laws and regulations, acting under color of law and of those offices, and bound by the duties thereof to promote public safety.

47. Goff and Dixon each entered into contracts with the HCSD for their "operator of record" positions, but wrongfully failed to actually perform duties of an operator of record on any regular basis at the HCSD facilities. Both these Defendants also wrongfully sought additional payments from the HCSD which were outside the terms of their respective contracts, excessive, and without being subject to any competitive bidding or other process. Neither Defendant at any time material to the Complaint had any business license to operate in the County of Siskiyou as required by law. These actions constituted unfair business practices.

48. Goff and Dixon engaged in the conduct above, and concerning the improper and/or unlawful operations of the HCSD water facilities with the agreement, ratification, and assistance of Hanson, Slote, Puckett, Dingman, and Kampa, and also agreed to engage in, participated in, aided, abetted, and ratified the wrongful conduct set forth in the sections relating to Slote, Hanson, Puckett, the HCSD, Kampa, and Dingman (except that they are not alleged to have participated in the assault on Plaintiff, nor the seizure and conversion of his cameras).

49. Goff and Dixon each failed to maintain proper daily and monthly logs of citizen complaints and documentation of water use and/or the water treatment and distribution system of the HCSD; failed to provide for and undertake testing of the "cross-connections" to the HCSD distribution system; failed to give notice to Plaintiff, the public and to the State concerning the multiple occasions Dingman caused the Chlorine to exceed the maximum contaminant level thereof as set by the State of California; - all as are required by law, and which failures led to the unsafe water conditions, and lack of sufficient water suffered by Plaintiff at his property.

50. Both Defendants, while each was purportedly in "direct charge" of the HCSD water treatment facilities, also knowingly permitted and encouraged Dingman to operate the HCSD facilities without the certifications for him to do so as required by law, and acted with Dingman and Kampa to wrongfully fail to create, maintain, and file with the State, various required records, testing and treatment logs, reports, HCSD customer complaints, and other documents[38]. Each and all of the failures to comply with health and safety practices for water were a nuisance, damaged Plaintiff and his property, and wasted public funds.

**XI. DEFENDANT CLINT DINGMAN.**

51. At all times material, Defendant Clint Dingman ("Dingman") was an officer,

[38] All as required by California Code of Regulations ("CCR") §22-64470, and otherwise.

employee, and agent of the HCSD, acting under color of law and of those offices. Dingman's duties include operation of the HCSD's wells, water treatment plant, and water distribution system. Dingman also reads meters[39], conducts water testing, and logs/reports system data.

52. At no time during the times relevant to this Complaint has Dingman held any Water Treatment Operator certification with the State of California. Pursuant to the provisions of Health and Safety Code §106876, §106878, and §106885, a valid, unexpired Water Treatment Operator Certificate is required to operate any water treatment facility, or to undertake any action that alters the chemistry of water provided to the public.

53. On October 1, 2018, Dingman's Water Distribution Operator certification issued by the State of California expired, and as of April 6, 2019, had not been renewed. Pursuant to the provisions of Health and Safety Code §106878 and §106885, a valid, unexpired Water Distribution Operator Certificate is required to operate any water distribution system.

54. Since January 1, 2017, Dingman's operation of the HCSD production, treatment, and distribution facilities has been designated by California as unlawful, and a criminal act subject to civil liability as provided by Health and Safety Code §106876, §106878 and §106885.

55. At all times material, Dingman wrongly billed for, and received payment for, hours which he did not actually work, and/or for which he had already been paid, or for hours and at a rate of pay in excess of his contract terms[40], and/or for alleged labor he was prohibited by law from undertaking[41] - all in violation of the California False Claims Act, and which wrongful payments are also wrongful diversion, and/or gifts, of public funds[42].

56. Other wrongful acts by Dingman include, but are not limited to: improperly regulating Chlorine in the HCSD distribution system[43]; failing to give notice to Plaintiff, the public and to the State concerning times Dingman caused Chlorine to exceed the maximum contaminant level determined by the State of California; failing to maintain logs and records of

---

[39] Or not, as he may be instructed by one of the other Defendants as part of the plan that certain customers were to be given "breaks" as to fees and charges - in part achieved by not reading their meters.
[40] Cal. Const., Art. IV, § 17.
[41] Dingman's wrongful, illegal operation of the water treatment plant and other facilities rendered his employment contract, and/or all payment as to those duties void for being illegal *per se* pursuant to the provisions of Civil Code §1608 and §1667, and payments to him may be enjoined. See *Mitsui Manufacturers Bank v. Texas Commerce Bank-Fort Worth (9184)* 159 Cal.App. 3d 1051, 1057-1058.
[42] Cal. Const., Art. XVI, § 6; Govt. Code §8314.
[43] That is, Dingman on multiple occasions permitted the Chlorine levels of the HCSD water system to exceed the maximum contaminant levels as set by the State of California, at Title 22 of the California Code of Regulations, §64533.5 (of 4.0 milligrams per liter) thus causing a threat to the health and safety of the public, and of Plaintiff, and damaging Plaintiff's plants, crops, and other property.

operations of the HCSD water systems as required by law; over-pumping the HCSD wells contrary to engineering specifications, causing excessive mineralization and turbidity as well as damaging the wells themselves; and, hiding those events from the public, and the State.

57. Dingman, Kampa, and the HCSD, also wrongfully failed to create, maintain, and file with the State various required records, testing and treatment logs, and other documents, with the intent that Dingman and Kampa wrongfully enrich themselves by diverting and wasting public funds, while not actually performing the work and duties necessary to make the HCSD system safe and functional for the public, and for Plaintiff - resulting in lack of water capacity, poor water quality, incorrectly treated water, and over-Chlorinated, toxic water in the system.

58. Dingman's wrongful, illegal operation of the water production, treatment, and distribution facilities of the HCSD[44] as set forth, in conspiracy with, and at the behest of the HCSD, Hanson, and Kampa, has been willfully negligent, unlawful, and a nuisance *per se*[45].

59. On or about August 10, 2017, while Plaintiff was standing on public land lawfully taking photos of the HCSD water treatment facility, Dingman reached over the fence of that facility and grabbed Plaintiff's Samsung PL210 camera, damaging it, and rendering it inoperable. Dingman then opened the gate to the facility and attacked Plaintiff, injuring him, and stated that his reason for doing so was that Plaintiff had filed "lawsuits" against Dingman and the HCSD. Dingman's acts were without lawful basis, violated Plaintiff's rights to be free of unlawful seizure, and violated California's Bane Act (Civil Code §52.1).

60. Between the period of October 13, 2017, and December 10, 2017 Dingman vandalized, seized and converted to his own use, Plaintiff's property consisting of two Browning Trophy Cam Essential E2 12 Mega pixel trail cameras, which were mounted in trees on public property, immediately adjacent to and overlooking the HCSD water plant. The cameras were mounted ~10' above the ground, on screw-in, swivel type mounting posts, and secured by Master Lock Python 3/16", black locking cables. Each camera had eight (8) AA Lithium batteries, and a 32 GB SD card. In order to seize the cameras and related equipment, Dingman used the HCSD's tools and equipment to access them during business hours, and to cut the locking cables.

61. Plaintiff reported the theft of the cameras to the Siskiyou County Sheriff's Department. When confronted about the theft of the cameras, Dingman claimed that they were

---

[44] See 22 California Code of Regulations §§63765, and 63770; California Health and Safety Code §§106875, 106876, 106878, and 106885.

[45] See California Civil Code section 3479; Code of Civil Procedure section 731. Health and Safety Code §116670.

on "private property" while also illegally placed and operated since they overlooked the HCSD water treatment facility, thus it was lawful for him to take them down and keep them.

62. Plaintiff also contacted Kampa, as Dingman's direct supervisor, concerning the return of the property, but instead of arranging for that return, or any due process concerning Dingman's seizure of the property, Kampa and Dingman (and later, Slote, Puckett, Hanson, and Winston) agreed and acted to convert the property instead, and to "cover up" the event by refusing to return the property, refusing to answer Plaintiff's tort claims, and refusing to place the issue as a discussion item on any agenda of the HCSD Board so it could be duly acted upon thereby - thus ratifying Dingman's conduct, and depriving Plaintiff of any due process concerning his property.

63. Dingman, in agreement, cooperation, and coordination with Hanson, Puckett, Slote, and Kampa, has wrongfully, corruptly, and illegally: interfered with the rights of Plaintiff to document, speak out, and take legal action concerning violations by these persons of the HCSD Bylaws as well as State and Federal laws concerning operation of the HCSD by: attacking Plaintiff and seizing and/or breaking his cameras; acting against Plaintiff using physical violence, intimidation, and other means for Plaintiff's exercise of his rights to Free Speech and access to the courts; and, failed to properly operate the HCSD water facilities - thus subjecting Plaintiff and the public to severely impaired, unsafe water quality, and a shortage of water.

**XII. DEFENDANT ROBERT WINSTON.**

64. Defendant Robert Winston ("Winston") is a citizen of Siskiyou County, and an agent of the HCSD, Slote, Hanson, Puckett, and Kampa - who knowingly, and corruptly[46], while acting under color of law and in a position equivalent to that of a public employee and officer, agreed with, directed, assisted, aided, abetted, and failed to take affirmative action to prevent or cure, his own and the other Defendants' acts in wrongfully wasting and diverting public funds by violating the HCSD Bylaws, Brown Act, the Political Reform Act, Government Code § 1090, the SDWA, the CWA, the Health and Safety Code, Water Code, Government Code §61000 *et seq*, and in chilling, and violating Plaintiff's statutory and Constitutional rights, as set forth herein and in the sections detailing the conduct of the other Defendants which specifically mention Winston.

65. Plaintiff is informed and believes that Winston knew the purpose, intent, and goals concerning the acts of his co-Defendants, and agreed to assist them in accomplishing their wrongful goals and plans. During the times material to this complaint, Winston also thus engaged in unprofessional conduct contrary to the provisions of Business and Professions Code,

---

[46] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)

at §§6067, 6068, and 6104[47], an unfair business practice per Bus. & Prof. Code §17200, *et seq*.

66. Plaintiff is not pursuing State tort claims or causes of actions (nor any personal damages) against Winston for any actions taken relating to the actual filing of any pleadings, any actual *lawful* representation of any party in any legal or administrative action, and/or any act or testimony before a tribunal[48]. As to his State claims and causes of action against Winston, Plaintiff seeks *only* injunctive and declaratory relief to the benefit of the HCSD public fisc.

67. On information and belief, Plaintiff alleges that Winston agreed to, ratified, and acted in furtherance of the conspiracy with the other Defendants to violate the laws, Bylaws, and Rules as aforesaid by drafting proposed resolutions, proposed Bylaws, notices, letters, invoices, contracts, demands, and other documents for use at improperly-held meetings and at other times ("ghostwriting"); and, by failing to provide honest, truthful, and complete billing statements for services allegedly rendered to the HCSD - all under color of law of the positions of the Board Defendants, but without any actual, lawfully-granted authority by the HCSD Board to do so.

68. Winston wrongfully committed false personation as counsel for the HCSD[49]; proposed and submitted contracts to the HCSD granting him Legislative authority and ex post facto approval of "self assignments" to administrative and legal matters in violation of the self-dealing provisions of Government Code §1090; and, agreed and acted with the other Defendants to wrongfully divert public funds from to himself and Hanson, thus also wasting those funds.

## XIII. DEFENDANT REMAINING JOHN DOES

69. At all times material, defendant John Does 5-30 were: board members, policy makers and/or executors; recipients of water services provided by the HCSD[50]; employees, independent contractors, instructors, rule enforcers, assistants, confidants, and otherwise actors and/or agents of the HCSD; and/or parties to, aiders, and/or abettors of the conduct of the named natural person defendants, the Board Defendants, and/or of each other. True names and capacities of the Doe defendants is uncertain to Plaintiff, but will be substituted as discovered.

---

[47] Plaintiff does not bring any cause of action arising from these violations directly, but does so as a violation of Business and Professions Code §17200, *et seq* in order to seek injunctive relief.

[48] This includes any statements by Winston, or submission by him of documents, occurring at any lawfully-held meeting of the HCSD Board.

[49] By "false personation as counsel...", Plaintiff means that Winston has acted at times as some sort of *de facto* officer or agent of the HCSD, purportedly on behalf of the HCSD, or one or more of its Directors, employees or agents (and/or outside of any formal court or administrative processes), without any appointment, or other lawful authorization to do so by the Board, then billed for those "services".

[50] Plaintiff only intends to name as defendants to this action those HCSD customers who wrongfully benefited from the actions of the named Defendants by having water fees, rates, charges, and/or past due amounts wrongfully reduced or waived by the HCSD, Hanson, Slote, Puckett, Dingman, and/or Kampa.

**XIV. SPECIFIC COMPLAINTS OF WRONGDOING MADE BY PLAINTIFF**

70. Plaintiff, in setting forth herein the wrongful conduct of these Defendants, Slote, Hanson, Kampa, Goff, Dixon, Winston, and Dingman also thereby agreed to, conspired to, aided, encouraged, and abetted each other to, and acted to, intimidate and retaliate against Plaintiff for making the following specific complaints to Government Agencies:

**A)** The HCSD Board, and Kampa (as to each subject, on multiple occasions), concerning their violations of the Brown Act, California Public Records Act, and HCSD Bylaws. Plaintiff additionally complained about the numerous defects and deficiencies concerning maintenance and operation of the HCSD water production, treatment, and distribution systems;

**B)** California Department of Water Resources/State Water Resources Control Board concerning the lack of compliance by the HCSD, Kampa, and Dingman with the Clean Water Act and the Safe Drinking Water Act; the unsafe and unsanitary conditions at the HCSD water treatment facility occasioned by Defendant Clint Dingman's living at the plant and operating the HCSD wells, water treatment plant, and distribution system, without certification by the State;

**C)** The Siskiyou County Superior Court as to the conduct of the Defendants, regarding violations of the Brown Act and CPRA.

**D)** The California Fair Political Practices Commission concerning violations of the Brown Act, Political Reform Act, Government Code section 1090;

**E)** The US EPA, and Cal-EPA concerning the failures by the HCSD to comply with the Clean Water Act, and Safe Drinking Water Act.

**F)** The Siskiyou County Code Enforcement Division concerning Dingman's occupations and use as a residence of the HCSD water treatment plant and lot.

*******FIRST CLAIM FOR RELIEF (Federal Counts)*******

71. In making out each of the following "Counts" in this First Claim for Relief against one or more Defendants, Plaintiff, in addition to incorporating the information and factual allegations found in paragraphs 1 through 15, specifically incorporates the factual allegations in those Sections corresponding to each Defendant named *in the specific Count*. That is, if a Count lists "Hanson", then the reader should refer to Section VI, pages 7-9, paragraphs 20-36, for details of her conduct, and other factual allegations, that apply to the Count. The term "these Defendants" as used in any particular Count, shall mean only the Defendants which are *specifically* named in that Count, and not to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants, he will state "all Defendants". As to allegations made on information and belief, Plaintiff does so in good faith, after reasonable inquiry.

72. If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has asserted any claim for damages, Plaintiff reserves his right to non-monetary relief as provided by law. Plaintiff has been generally and specially harmed by the acts of Defendants.

73. The acts by the specified Defendants in each "count" deprived Plaintiff of rights and privileges under federal and/or State law, and the HCSD Bylaws, damaged his personal property, and his real property value, all without notice, opportunity to be heard, or due legal process.

**Count I. VIOLATION OF RIGHT TO FREEDOM OF SPEECH AND PETITION**

74. Plaintiff alleges that the all the Defendants, in acting as set forth above in manners adverse to Plaintiff, did so wrongfully, willfully, with intent to interfere with, impede, coerce Plaintiff into abandoning, and in retaliation for, the exercise of statutory and constitutional rights to speak freely; petition the government and courts for redress of grievances; and that in so doing, they violated Plaintiff's First Amendment rights.

**Count II. DEPRIVATIONS OF, DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS; UNLAWFUL SEIZURE**

75. In agreeing and acting to: violate United States laws; California laws; censure Plaintiff's protected speech by retaliating against him for making it; and, by damaging, destroying, seizing, and converting Plaintiff's PL210 and trail cameras without due process of law, Defendants Hanson, Slote, Dingman, Kampa, and the HCSD violated Plaintiff's rights under the 1st, 4th, and 14th Amendments to the US Constitution.

76. These deprivations also resulted in unlawful impedance and interference with Plaintiff's rights to investigate conduct by public officials, and petition for redress of grievances.

**Count III. VIOLATION OF THE CLEAN WATER ACT BY HCSD.**

77. The permitting and agreement by Defendants HCSD, Kampa, Slote, Puckett, Hanson, and Dingman of the HCSD's "well #3", containing high levels of toxic Boron and salts, to flow artesian and unchecked into the waterways feeding the Klamath River, without a permit to do so by the Environmental Protection Agency ("EPA") violates the Clean Water Act.

**Count IV. VIOLATION OF THE SAFE DRINKING WATER ACT BY HCSD, HANSON, SLOTE, PUCKETT, KAMPA, AND DINGMAN**

78. The permitting and agreement by Defendants HCSD, Kampa, Slote, Puckett, Hanson, and Dingman of operation of the HCSD water production treatment, and/or distribution systems, without Dingman being properly certified to conduct such operations by the State of California, and/or in violation of the SDWA implementing statutes of California, constituted a

violation of the SDWA on each such occasion, and is subject to declaratory relief, injunction, and civil penalty by this Court pursuant to the provisions of 42 USC § 300j.

**Count – V: DEPRIVATIONS OF RIGHTS TO EQUAL PROTECTION OF THE LAWS.**

79. The HCSD, Hanson, Slote, Kampa, and Dingman, did wrongfully agree to, and actually did, violate, and refuse to follow: the mandate of: the Federal Safe Drinking Water Act and Clean Water Act; State laws relating to drinking water facilities and operation thereof (including, but not limited to, the Health and Safety Code); and, the HCSD Bylaws[51], by allowing Dingman to operate the water treatment and distribution facilities of the HCSD without State-required certifications, and permitting Dingman to illegally and improperly utilize the water treatment plant and grounds for his (unsanitary) personal residence and general use.

**Count – VI: DEPRIVATION OF EQUAL PROTECTION, AND DUE PROCESS.**

80. The HCSD, Hanson, and Kampa, by improperly and wrongfully: altering rates and fees of the HCSD without voter approval[52]; diverting the proceeds of user fees and rate increases to expenditures other than water production and/or production facility improvements; permitting operation of HCSD facilities by Dingman as an uncertified operator; failing to charge each commercial, governmental, and/or residential customer proper rates, fees, and/or charges as set forth in the HCSD Bylaws; and, by failing to comply with Water Code sections 31007 and 71616, - all without any public process, and in contradiction of the HCSD Bylaws and State laws, harmed Plaintiff's real property interests, deprived Plaintiff of the equal protection of the laws, and denied Plaintiff's right to the due process of law.

**Count -VII: DEPRIVATIONS OF RIGHT TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Gifts of Public Funds to Clint Dingman**

81. Defendant Dingman, outside of any public meetings, conspired with, influenced, and engaged in corrupt activity with Hanson and Kampa , in order to wrongfully utilize their authority, to receive gifts of public funds in the form of: pay in excess of his contract with the District; pay to which he was not entitled for engaging in unlawful, and/or criminal acts for the purported service(s); pay for claimed hours that Dingman did not actually work; and, claims for work time which exceeded the actual time spent by Dingman doing the work referenced on his "time sheets". Dingman, with the aid, assistance, ratification, and agreement of the HCSD, Hanson, Slote, and Kampa, thus fraudulently billed the District for services and activities which

---

[51] E.g. Sections A-3(7-8).

[52] As required by the HCSD Bylaws.

he was not entitled to, and/or he did not perform, and failed to abide by his contract and the HCSD Bylaws.

82. By so doing, these Defendants acted in violation of Plaintiff's rights to equal protection of the laws, and to due process of law to attend their non-publicly-held meetings and protest the illegal gifting public funds; and, to deliberately deprive Plaintiff of the rights to due process, free speech, and petitioning rights against corrupt and unlawful activity.

**Count VIII: DEPRIVATIONS OF RIGHT TO DUE PROCESS, EQUAL PROTECTION**

83. Defendant Winston wrongfully improperly conspired with, agreed, influenced, and engaged in corrupt activity with the HCSD, Hanson, Kampa, and Dingman, in order to wrongfully utilize their authority under color of State law to: hold various unagendized, unnoticed, and non-public meetings of HCSD officers and employees in violation of the Brown Act, Rules of Professional Conduct, and Government Code §1090; to reach consensus on hiring (and execution of contracts, payment vouchers, etc), and to creation of self-dealing contracts as to Defendant Winston outside of public meetings and without notice to Plaintiff and the public[53]. As a result of these acts, Winston wrongfully, and fraudulently billed the HCSD for services and alleged activities he was not entitled and/or authorized to payment for, and/or that he did not lawfully perform. All this activity was concealed from Plaintiff and the public who were also excluded from those meetings undertaken in violation of the Brown Act, the California Public Records Act, and the HCSD Bylaws - thus depriving Plaintiff of due process, equal protection of the laws, and his right to petition for redress of grievances, while also depriving the HCSD of funds for maintenance and repair of the water production, treatment, and distribution systems.

*****SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS*****

84. In making out each of the following "Counts" in this Second Claim for Relief against one or more Defendants, Plaintiff incorporates the information and factual allegations found in paragraphs 1 through 15 of the complaint, and specifically incorporates those Sections corresponding to each Defendant named *in the specific Count*. That is, if a Count lists "Hanson", then the reader should refer to Section VI, pages 7-9, ¶¶ 20-36, for details of her conduct, and other factual allegations, that apply to the Count. The term "these Defendants" as used in any particular Count, shall mean only the Defendants which are *specifically* named in that Count, and is **not** intended to apply to "all Defendants" generally unless the term "all" is used.

---

[53] Plaintiff also alleges that some meetings concerning potential employment of Winston, and the terms thereof, were improperly held in closed session, when such were actually required to be "open" session.

85. If Plaintiff states a cause of action only permitting injunctive or other relief, but asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as provided by Government Code §814. The acts by the specified Defendants in each "count" deprived Plaintiff of rights and privileges under State law, and the HCSD Bylaws, damaged his personal property, and his real property value, all without notice, opportunity to be heard, or due legal process.

**Count – I, Violations of HCSD Bylaws; State Laws; and Due Process**

86. All of the Defendants, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and illegally, agree and conspire to, and actually did, violate or wrongfully refuse to follow the mandate of, the HCSD Bylaws by: improperly altering and/or waiving fees and charges for certain customers without voter approval; failing to shut off service to overdue accounts; failing to properly levy the rates set for businesses, commercially-zoned properties, and multiple dwelling customers without voter approval; making improper and wrongful Bylaws changes in ways prohibited thereby; diverting proceeds of user fees and rate increases to legal fees instead of water production and/or production facility improvements; permitting operation of HCSD facilities by Dingman as an uncertified operator; failing to charge each commercial, governmental, and/or residential customer proper rates, fees, and/or charges; failing to comply with Water Code sections 31007 and 71616; and, by failing to require landlords to put water service for rentals into the landlord/property owner's own name. These Defendants also thus failed to comply with the requirements of the Water Code at §§31007, 61100, and 71616. These wrongful acts occurred without public process, in contradiction of the Bylaws and State laws, so deprived Plaintiff of the equal protection and due process of law.

**Count II Willful Negligence; Negligence**

87. In doing the acts complained of herein, each and all of the Defendants acted negligently, recklessly, wantonly, and/or willfully, and in disregard for any harm that may have befallen Plaintiff and/or the public as a result. (See California Civil Code, section 1714.)

**Count III - Violations of Government Code Section 1090- Self Dealing**

88. Slote, Puckett, Winston, Dingman, Kampa, Hanson, and the HCSD, in planning, and acting to wrongfully delegate any Legislative authority to Kampa, and/or Winston; to "backdate" contracts and agreements; acting to divert public funds to Hanson's private legal matters; and, to approve Kampa's self-promoted "consultant" contract, did so in contradiction to the provisions of Government Code §1090, and Public Contract Code §§20682 and 22050, so any such

delegations, contracts arising therefrom, and/or undertaken by them, are void[54], and funds wrongfully expended subject to being clawed back by this action.

**Count IV - Gifts of Public Funds - Board Defendants; Fraud as to Dingman**

89. Defendant Clint Dingman wrongfully, improperly, and illegally colluded with, influenced, agreed to, and engaged in corrupt activity with, Defendants Hanson, Slote, and Kampa to receive wrongful payments in money and benefits to which he was not properly, and/or lawfully entitled, and/or for which he fraudulently billed the HCSD on his "time sheets".

90. Such wrongful, and/or excess pay and/or benefits are the result of fraud, and/or are wrongful gifts of public funds as to Dingman. Plaintiff invokes the provisions of Code of Civil Procedure Sections 526a, 1021.5, and 1084, and declaratory/injunctive relief as remedy.

**Count V -Violation of the Bane Act (Civil Code §52.1) by Dingman**

91. The conduct of Defendant Dingman of attacking and injuring Plaintiff, and destroying Plaintiff's PL210 camera because of Plaintiff's investigative efforts as to Dingman and the HCSD violated California's Bane Act. Plaintiff is entitled to damages under Civil Code §52.

**Count VI - Gifts of Public Funds as to John Does**

92. The improper billing, waiver of fees and charges, improper changes to classifications, failure to read meters, and other mechanisms whereby the HCSD, Slote, Hanson, Kampa, and Dingman, failed to collect all due charges, fees, penalties, and other monies due the HCSD at times material to this Complaint, were improper gifts (and waste[55]) of public funds.

93. Defendants HCSD, Slote, Puckett, Hanson, Kampa, and Dingman have conspired and acted at all times material to this Complaint to: improperly bill, fail to bill, falsely bill, fail to impose, improperly waived or reduced, and failed to collect, all due and payable fees for service and other charges as set forth in the HCSD Bylaws and Resolutions from residential, commercial, and governmental accounts of the HCSD; and so caused injury to the funds and property of the HCSD, which in turn threatens the water supply to Plaintiff's property.

94. The John Does who had their water rates, fees and/or charges payable to the HCSD reduced and/or waived, property not liened when due, or who otherwise wrongfully benefited from any action of the HCSD, Hanson, Kampa, and/or Dingman are in violation of Cal. Const.

---

[54] California Civil Code §1608 codifies the doctrine of illegality and provides that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Under Civil Code §1667 , "unlawful" is broadly defined as contrary to a provision of law; policy of express law, though not expressly prohibited; or, contrary to good morals.

[55] See Code of Civil Procedure §526a.

Art. XVI, Section 6, and Govt Code section 8314, and those monies recouped to the public fisc as provided by Code of Civil Procedure, Section 526a.

**Count VII - Unfair Business Practices**

95. Defendants Hanson, Puckett, Winston, Kampa, Goff, Dixon, and Dingman, in performing the acts complained of herein, in violating, and conspiring to violate, the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, have also thus agreed to, aided and abetted each other, and actually did, individually violate California's Unfair Competition Law, Bus. & Prof. Code §17200, et seq.

**Count VIII - False Claims as to Winston; Kampa; Goff; Dixon; Dingman.**

96. Plaintiff incorporating herein the information contained in general portions of this Complaint, and in the sections relating specifically to Winston, Kampa, Goff, Dixon, and Dingman, allege that those Defendants have thus conspired and acted to violate California's False Claims Act, Government Code sections 12650, et seq.

**Count IX – Intentional Infliction of Emotional Distress**

97. All of the Defendants, in wrongfully acting as set forth herein concerning Plaintiff's property, did so deliberately, and/or while disregarding foreseeable risk, and acted recklessly, wantonly, and/or willfully to vex, harass, oppress, and annoy, Plaintiff, and/or to subject him to lasting fear, anger, upset, anxiety, humiliation, outrage, financial loss, and emotional distress.

**Count X Negligence and Nuisance**

98. Defendants HCSD, Slote, Puckett, Hanson, Kampa, Goff, Dixon, and Dingman, owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, of California, and the HCSD Bylaws, but acted negligently, recklessly, and wantonly, to violate the SDWA, the California Health and Safety Code, and the HCSD Bylaws in their operation of the HCSD water production, treatment, and/or distribution facilities without Dingman possessing the proper Water Certifications from the State of California and otherwise; by permitting Dingman to reside at and/or in the water treatment plant, thereby creating annoying, unsafe, and/or illegal conditions of the water facilities, and distribution of water to Plaintiff and the public.

**Count XI - Violation(s) of the Bane Act; Dingman, Hanson, Puckett, Slote, and Kampa.**

99. Defendants Dingman, Slote, Hanson, Puckett, and Kampa, conspired to ratify and approve Dingman's conduct of threats, physical assault, and the destruction of Plaintiff's PL210 camera on August 10, 2017, to intimidate, oppress, and coerce Plaintiff into abandoning his exercise of rights to monitor local government, and petition for redress of grievances.

**Count XII Violation of Public Contract Code**

100. The conduct of the HCSD, Hanson, Slote, Puckett, Kampa, Dingman, Goff, and Dixon, as set forth in their sections, constituted a violation(s) of the California Public Contract Code, §§20682, and/or 22050, and Plaintiff is therefore entitled to all remedies thereunder.

**Count XIII Public Entity Liability for Failure to perform Mandatory Duty**

101. The conduct of the HCSD, Hanson, Slote, Puckett, Kampa, Dingman, Goff, and Dixon, concerning: failure to properly maintain and staff the water production, treatment, and distribution facilities of the HCSD; to abide by the provisions of the HCSD Bylaws relating to fees and charges, and voter control; to comply with the Clean Water Act and/or Safe Drinking Water Act; to comply with the CPRA and CTA; and, to create, maintain, and/or file with the State all necessary and/or required logs, information, documents, and/or reports, constituted a failure to perform mandatory duties, and so these Defendants are subject to declaratory, injunctive, and other just relief as granted by this Court.

**Count XIV Exemplary Damages (Punitive Damages)**

102. The conduct of each Defendant, or specified group of Defendants as set forth above, was willful, malicious, with intent to: vex, annoy, oppress, and cause harm to Plaintiff; or was undertaken with reckless, willful, or wanton indifference to the harm that may have befallen Plaintiff and the public. Plaintiff has been harmed by each act of these Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff now prays for judgment against the Defendants, and:

1. A declaration that all acts by any and/or all of the Defendants, or undertaken by any HCSD officer in any manner contrary to law, and/or the Bylaws to be *ultra vires* and void,

2. Award to Plaintiff: on his Federal claims of general, and special damages of $250,000; exemplary damages of $100,000 as to these Defendants; applicable statutory damages, and, reasonable attorney fees, costs and disbursements; **and**, an award of damages according to proof for **State** pendent claims against Slote, Hanson, Puckett, Goff, Dixon, Dingman, and the HCSD - but not as to Winston, as to whom *only* relief to the benefit of the HCSD public fisc is sought;

3. An Order vacating as void all improper, and/or "backdated" contracts, including without limitation those entered into or created in violation of Government Code §1090, and for disgorgement by Defendants Winston, Kampa, and/or Dingman of all benefits, monies, charges, and/or fees contracted for, billed, and/or collected in violation thereof and/or the Bylaws;

4. Disgorgement of all gifts of public funds by the HCSD and/or any of its agents to any entity, water customer, or individual receiving such, including, but not limited to, those who had charges and/or fees of any sort wrongfully uncharged, reduced, reclassified, and/or waived;

7. Restitution by Slote, Puckett, and Hanson to the HCSD according to proof;

8. An Order declaring conduct of the HCSD, Hanson, Puckett., Dingman, Goff, Dixon, and Kampa, in failing to bring all water facilities of the HCSD into compliance with the CWA and SDWA to be a violation of those laws, and enjoining such failures in the future;

9. An Order, applicable to the time specified in ¶1 of the complaint, vacating as void each and every waiver or alteration of rates, classifications, charges, and/or fees imposed generally, or as to any specific customer or account, which wrongfully undertaken by the without voter approval as required by the HCSD Bylaws, and/or had in violation of Prop 218;

10. An order enjoining the HCSD from diverting funds from water fees and rates for any purpose other than to fund operations of the HCSD, the production of potable water to the customers of the HCSD, or for repair or improvements to facilities that produce potable water;

11. An injunction prohibiting Dingman from storing vehicles, personal belongings, and/or Dingman's trailer on the lot of the HCSD water treatment plant, or from living therein;

12. An injunction prohibiting any Defendant from allowing any further *uncontained* outflow from well #3 into Rancheria Creek in violation of the Clean Water Act;

13. An Order for preliminary and permanent injunctions ordering Defendants to remedy all nuisances, violations of law, and/or violations of any administrative rule alleged in the complaint, and that the HCSD immediately collect all properly due and payable fees and charges from any customer who had water charges and/or fees of any sort wrongfully uncharged, reduced, reclassified, and/or waived during the period set forth the complaint;

14. An injunction prohibiting any Defendant from undertaking, or permitting, the operation of the HCSD water treatment and/or distribution facilities by any person (including Dingman) who does not have the water operator certificate(s) required by the State of California;

15. That false claims by Dingman concerning tasks purportedly accomplished, hours worked, and/or excess time beyond what was actually taken to complete any task, were frauds on the HCSD, and a waste of public funds which should be disgorged to the HCSD; and,

16. For such other and further relief as the court may deem proper.

Respectfully submitted this 11th day of May, 2019

Peter T. Harrell

Peter T. Harrell, Plaintiff Pro Se

# EXHIBIT 3

Kimberly R. Olson
PO Box 243, Hornbrook, CA 96044
kimberlyrenee@yahoo.com (email not for service)
(530) 475-3669

FILED
JUL 22 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,

Plaintiff,

vs.

Hornbrook Community Services District ("HCSD"); Michele Hanson; Patricia Brown; Sharrel Barnes; Roger Gifford, Robert Winston; Kirsher, Winston, & Boston, L.C.; Julie Bowles; Clint Dingman; Ernest Goff; Hornbrook Community Bible Church Inc.; Steven Crittenden; Robert Puckett, Sr.; Basic Laboratory, Inc.; Duke Martin, Murphy, Pearson, Bradley & Feeney, Inc.; Robert Lucas; Kenneth King, and John Does 9-50,

Defendants,

Case No: 2:15-cv-0646-MCE-CMK

**THIRD AMENDED COMPLAINT**

**(JURY TRIAL REQUESTED)**
ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; VIOLATIONS OF SAFE DRINKING WATER ACT and CLEAN WATER ACT; ADA; STATE CLAIMS

REQUEST FOR INJUNCTIONS; DECLARATORY RELIEF

USC 42 §§1983, 1985, 1986, and 1988.
USC 18 §§1346, 1513(e).

**I. Jurisdiction.**

1. Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of the United States Code; an action arising under the Constitution and laws of the United States, Amendments 1, 4, and 14 of the United States Constitution; the Clean Water Act[1] ("CWA"); the Safe Drinking Water Act[2] ("SDWA"); the Fair Labor Standards Act, Title 18 sections 1513(e) and 1846 of the United States Code; Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C.§§ 12131-12165, and its implementing regulations at Title 28 CFR Chapt.1, Part 35; and, sections 1983, 1985[3], 1986, 1988, and 2000e of Title 42 the United States Code, as an action

[1] At Section 505 thereof.

[2] See generally 42 USC § 300j, and 42 USC 300j-8(e). Plaintiff also had a statutory right to be free of retaliatory actions by the Board, and other Public Officer Defendants concerning her complaints of violations of the Act pursuant to 42 USC § 300j-9(i).

[3] That is, the various defendants specifically conspired with each other, and/or the "Board Defendants", to violate Plaintiff's Constitutional rights to vote as a Legislator, and as an elector of the local District. The right to vote is granted under the Fifteenth, Nineteenth and Twenty-fourth Amendments to the United

seeking redress of grievances for violations of rights and privileges secured to Plaintiff in her individual, and official capacities. Supplemental jurisdiction by this Court is requested over Plaintiff's pendent state law claims for relief.

2. Plaintiff Kimberly R. Olson is a citizen of the State of California, and resident, property owner[4], elector, taxpayer, and water customer of the Hornbrook Community Services District ("HCSD" or "District"), as well as a member of, and the Secretary[5] of, the Board of Directors of the HCSD at all times material. When quoting statutes[6] and/or decisional law herein, it is Plaintiff's intent is to incorporate provisions and mandates of those laws and principles articulated thereby by the Legislature, Attorney General, and/or the Courts in alleging wrongful conduct by these Defendants, and to articulate in this Complaint the basis for liability of the Defendants. When Plaintiff states in this Third Amended Complaint that some action of a Defendant(s) is "illegal", she means it is contrary to the provisions of law.[7] This action is also brought as provided by the HCSD Bylaws ("Bylaws") at §§A-9(1); A-9(13); A-9(26); and, 1-5.030.[8] Plaintiff is a disabled person as defined by Federal and State laws.

3. While reference is made to acts, events, and statements made at purportedly public meetings of the HCSD Board of Directors ("Board"), and/or that are tangentially related to litigation, it is not Plaintiff's intention to base any state law, or common-law tort, cause of action on any expression of First Amendment or Petitioning rights occurring by any Defendant relating

---

States Constitution, free of certain burdens (*Ex parte Yarbrough* (1884) 110 U.S. 651, 664-665; *Williams v. Rhodes* (1968) 393 U.S. 23, 29).

[4] Plaintiff's home depends on the HCSD system for water and fire protection. Plaintiff is thus entitled to honest services of the HCSD and its officers, and compliance thereby with the provisions of Water Code §§31007, 71614, and 71616, mandating proper administration, upgrades, and upkeep of the facilities. Plaintiff's quiet enjoyment, use, and value of her property was harmed by the acts of these Defendants.

[5] "Secretary" is an Officer position on the Board of Directors of the HCSD created by that agency pursuant to Government Code section 61043(c). Powers of the Secretary are set forth in the Bylaws.

[6] I.e., California Civil Code Sections 3479, 3494; Code of Civil Procedure Sections 526a (waste and/or improper gift of public funds), and 731; Civil Code §§52 and 52.1; Govt Code Sections 815.3 1090, 54953(a) and (c), 54960.1(d), 12900, and 87100; California Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, and 6399.7; California Public Records Act ("CPRA"); Tom Bane Civil Rights Act ("Bane Act")

[7] See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 283 (An illegal act is one that is forbidden by law.) Also, "illegal" includes anything "unlawful", and also includes any violation of the HCSD Bylaws. Generally, Plaintiff has also specified which laws are being violated, and by whom.

[8] Among other sections thereof. A true copy of the HCSD Bylaws as adopted and ratified on April 18, 2014 has been previously lodged (but was improperly labeled by the Clerk as an "attachment" to a prior version of this Complaint [ECF #1, Att. #4]), and are incorporated herein as if fully set forth to the extent necessary for the Court and Parties to make sense of causes of action, and requested relief. Plaintiff also incorporates by reference the "California Public Records Act", "Brown Act", and the "Community Services District Law" (Government Code §§6252.5, and 6252.7; 54950-54963; and, §§61000-61850).

to actual litigation acts, nor in preparation for, or at, such proceedings; nor at any ***lawful*** meeting or proceedings of the Board of Directors of the HCSD. Events described in this Complaint occurred beginning April 1, 2014, and continued through December 3, 2015, and so that timeframe is "material" to this action.

5. Plaintiff timely provided written notices of the basis for all her state claims to the HCSD in full compliance with all requirements of Government Code sections 905, 910, and 915, but the HCSD failed to respond to these notices in any way. Additionally, Plaintiff timely notified the HCSD, and Board Defendants, of each of their violations of the Brown Act, California Public Records Act, and other law violations in writing (so far as she is aware - events concealed from Plaintiff and the Public await discovery). In the case of Brown Act violations, Plaintiff timely and properly complied with all "cure and correct" requirements thereof, and timely instituted litigation as required thereby. Concerning Plaintiff's "false claims act" claims herein, Plaintiff has served a copy of this complaint on the California Attorney General.

6. This is a Federal question, civil rights, and state common law, statutory, and tort-claims action arising from unconstitutional, unlawful, and/or wrongful actions taken by each named Defendants in their official capacities, using their official positions, or by acting as an agent of a public officer/official/employee who themselves acted under the color of State law.

7. Defendant HCSD (also "District") is a governmental agency lying completely within the County of Siskiyou, created and operating as a municipal corporation and special district[9] under the laws of the State of California, the United States, and its own Bylaws[10], and subject to their jurisdiction. The HCSD produces potable water to the public via its ~135 service connections and fire hydrants lying within the town of Hornbrook, is governed by a Board of Directors ("Board" or "BOD")[11], and is a political subdivision of the State of California, which is not subject to regulation by the Public Utilities Commission, nor the subject of any action

---

[9] Special Districts such as the HCSD are controlled by California Govt Code sections 61000, *et seq*. The HCSD is thus required to abide by the Brown Act (§61044), and to record all its actions (§61045(e)).

[10] The HCSD's Bylaws will simply be referred to as "the Bylaws", or "Bylaws" hereinafter. The Bylaws of the HCSD attempt to specifically mandate the rights and responsibilities, and the duties of the Board, each Officer, each employee, and the customers and property owners of the District. The Bylaws cannot be amended without voter approval in many respects, and any violation of the Bylaws is a nuisance *per se*, actionable by any resident or property owner within the District [§A-9.26; see also California Government Code 61064(a)]. The Bylaws require that all meetings, including closed meetings, be recorded, and reduced to minutes, and that all official acts of the Board of Directors of the HCSD be certified by the Secretary of the Board, or they are "void". Acts in violation of any provision of the HCSD Bylaws, by a Director or the entire Board thereof, are *ultra vires*, and void.

[11] The HCSD also has Officer positions of the Board; President, Vice-President, and Secretary.

thereof. The HCSD, and its Public Officer/management-level employees and agents (the "Public Officer Defendants"), are subject to the Americans with Disabilities Act (42 USC §§12131-12134), and failed to make reasonable accommodations for Plaintiff to: affirmatively exercise her powers and Duties as a Director and the Secretary of the Board; be noticed of, and attend, meetings of the Board held in full compliance with the Brown Act and HCSD Bylaws; access, inspect, and record district facilities, equipment, and documents; and, regarding possession, safekeeping, use, and transportation of District property, all while treating her differently and less favorably than other Directors, and which also resulted in denying her right to exercise her powers and duties, and/or to vote, as a Director and/or Secretary of the HCSD.

**II. "Board Defendants" and "Public Officer Defendants" Defined.**

8. At all times material, Defendants Clint Dingman ("Dingman"); Sharrel Barnes ("Barnes"), Roger Gifford ("Gifford"), Michele Hanson ("Hanson"), Patricia Brown ("Brown"), Ernest Goff ("Goff"), and Julie Bowles ("Bowles") were Directors, public officers, public employees, contractors, and/or agents of the HCSD, and/or of each other, acted at all times during the commission of the acts described in this complaint under color of law and of the offices of their official positions of, and/or employment with, the HCSD, as well as the office of Defendants Barnes, Brown, Hanson, and Gifford as Directors (and/or Officers) of the HCSD. All natural person Defendants named herein were, and are, citizens of the United States, the State of California, and of the HCSD, and subject to their jurisdiction. For purposes of this Complaint, Defendants Barnes, Hanson, Brown, and Gifford, as voting Directors of the HCSD, shall also be referred to as "the Board Defendants". The Board Defendants are also Plaintiff's elected officials and Representatives by virtue of her residence within the District's boundaries. The "Board Defendants" took wrongful actions in their official capacities as public officials and officers, and/or under color of law of their official positions, powers, and authority; and, failed to properly supervise, train, and/or control, the HCSD, and its employee and contractor Defendants, all as set forth herein. Defendants Bowles, Goff, Dingman, and Winston shall be referred to throughout this complaint as "the Public Officer Defendants". By naming the Board Defendants and the HCSD as co-Defendants, Plaintiff has intended to comply with the provisions of California Government Code 815.3 throughout each applicable cause of action herein, whether specifically set forth, or implied in the recitation of factual allegations.

9. Defendant Goff, although acting in an official employment capacity for the HCSD as its "Chief Operator", "Watermaster", and/or "Operator of Record", wrongfully sought to insulate himself from county, state, and/or federal withholding taxes, licensure fees, and legal liability by

agreeing with the HCSD and Board Defendants to be called an "independent contractor". Goff did not have a valid business license with the County of Siskiyou at any time material.

**III. Other Defendants.**

10. At all times material, Defendants Robert Winston ("Winston"); Kirsher, Winston, & Boston, L.C. ("KWB"); Julie Bowles ("Bowles"); Murphy, Pearson, Bradley & Feeney, Inc. ("MPB&F"); Robert Lucas ("Lucas"), William Munoz ("Munoz"), Kenneth King ("King"), Robert Puckett, Sr. ("Puckett"), Hornbrook Community Bible Church Inc. ("HCBC"); Steven Crittenden ("Crittenden"); Robert Puckett, Sr.("Puckett"); Basic Laboratory, Inc. ("Basic Labs"); Duke Martin ("Martin"); and, remaining John Does 9-50, were employees, contractors, co-conspirators, and/or agents of the HCSD, of the Board Defendants, and/or of each other, and acting under color of law and of the offices of the Board Defendants, or their own employment with the HCSD. Defendant John Does also include those persons or entities wrongfully receiving waived or reduced fees, charges, rates, or water rate classification changes by the action of the HCSD, or Board Defendants, in any manner that circumvents the operation of the Bylaws, or State laws. The true names and capacities of these John Doe defendants is uncertain to Plaintiff at this time, but will be substituted by amendment as discovered.

11. By law, any independent contractors to the HCSD (such as lawyers, general managers, supervisors, etc) who serve in advisory or managerial-level positions to a public agency frequently or traditionally held by public officers and employees are subject to the Brown Act, and conflict of interest laws, including Government Code §1090 regarding the making of contracts. Specifically, "independent contractors whose official capacities carry the potential to exert considerable influence over the contracting decisions of a public agency may not have personal interests in that agency's contracts." (*Hub City Solid Waste Services, Inc. v. City of Compton* (2010) 186 Cal.App.4th 1114, 1124-1125; see also *California Housing Financing Agency v. Hanover* (2007) 148 Cal.App.4th 682 [concluding that an independent contractor who performed a public function by participating in the making of contracts was an "employee" for purposes of inclusion under section 1090].)

12. The California Attorney General has stated "[i]t seems clear that the Legislature in later amending section 1090 to include 'employees' intended to apply the policy of the conflicts of interest law ... to independent contractors who perform a public function and to require those who serve the public temporarily the same fealty expected from permanent officers and employees." (46 Ops.Cal.Atty.Gen 74 (1965).) This concept has been specifically applied to

lawyers in *Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533 [contract city attorney]; also 70 Ops.Cal.Atty.Gen. 271 (1987) [contract city attorney].)

13. The policies of the law, liability, and legal considerations implied by, and set forth in, ¶¶11-12 above apply to Winston; Goff; "KWB"; Bowles; MPB&F; Lucas; and, Munoz.

**IV. Duty of HCSD Board Members, Contractors, and Employees.**

14. It is the California Legislature's avowed public policy that public agency enterprises be operated efficiently, economically and in good repair and working order, (Gov't Code §§ 54513, 54516), at the lowest cost consistent with sound economy, prudent management and security of bond holders (Gov't Code § 54514), and that the rates and charges be set at levels sufficient to pay debt service, meet bond covenants, and pay current maintenance and operation expenses and other obligations of the water system. (Gov't Code §54515.) Other laws expressing this policy include, for example: Water Code §§31007, 43006, and 71616; Public Utility Code §12809; and, Public Utility Code §16467.

15. The HCSD, and each of the Board and Public Officer Defendants, also owe a fiduciary duty[12] to the District, and to each property owner, water customer, and/or elector in the District[13]: to maintain the District's finances in a solvent and efficient manner; to correctly bill for and collect all charges and fees due to the District[14]; to apply for and obtain grants and other funding available for the maintenance, upgrading and repair of the Districts facilities[15]; to establish, set, and collect, rates, charges, and fees sufficient for the ongoing proper and safe operations, maintenance, repair, and expansion of the HCSD's facilities; to operate the HCSD

---

[12] The fiduciary duty of HCSD Directors is enshrined in State law at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. This action, by claiming waste of taxpayer funds, is also authorized by Code of Civil Procedure Section 526a. As to any and all of Plaintiff's claims relating to improper waste, and/or gifts of public funds set forth in this complaint; in each such incident or claim alleged, Plaintiff means that such conduct was undertaken in a corrupt manner, and that those funds were being improperly expended without any rational relationship to any beneficial public purpose. The HCSD Bylaws provide that qualified persons may bring an action on behalf of that duty at Section A-9(26); provide that certain charges may not be waived; that certain rates and charges may not be changed without voter approval, and that any Director(s) doing so are liable for the lost income to the District (Section A-9(1); 1-3.010).

[13] HCSD Bylaws at A-9(26); Water Code sections 31007, and 71616.

[14] Including a $39 per parcel "standby fee" imposed by the 1996 Bylaws, and ratified as Section A-9(13) in the April 18, 2014 Bylaws, along with a $20 per inactive connection "water availability fee". The Board and Public Officer Defendants took wrongful action(s) to nullify, and/or failed to initiate, the collection of the fees as mandated by the Bylaws, imposed improper rate changes and residential rate increases without the procedures and due process dictated therein, and *de facto* or *per se* altered portions of the Bylaws without the required voter approval, or permitting Plaintiff's participation, thus depriving Plaintiff of due process and equal protection in both her official, and individual capacities.

[15] See also HCSD Bylaws at Section A-7.

water production, treatment, and distribution systems in full compliance with the CWA and SDWA, as well as all State laws and regulations, and by the use of only State-certified personnel[16]; to refrain from waste of, and wrongful diversions of, public moneys to themselves, their friends, and/or to co-conspirators; to act in good faith with and/or towards their fellow Directors and other Officers of the HCSD, to the public, and to the people of the District; to produce required and adequate records of the operation of the HCSD and particularly its water production, treatment, and distribution systems; to maintain a proper and adequate program on inspection and maintenance of cross-contamination devices (i.e., "check valves" and the like); and, to maintain the water production, treatment, and distribution system in good repair and safe operation in a manner that provides for necessary upgrades and new facilities as required by law - per Civil Code §1714(a), and as otherwise required and/or provided by law[17].

16. These Defendants acted counter to public policy, recklessly and/or knowingly failed in these duties, and/or acted willfully contrary thereto[18], while agreeing and planning amongst themselves to do so, and taking actions to further those plans - including adoption of policies and procedures of the HCSD which were contrary to express statutes and Bylaws provisions, and/or which were calculated to deprive, and/or impair, interfere with, and curtail Plaintiff's exercise of her authority and duties as a public officer and of her Constitutional and/or statutory rights. These actions have also threatened the reliability, quality, and safety of the water supply to Plaintiff's real property (thus reducing its value), damaged her personal property (including trees, plants, and livestock), and threatened and harmed Plaintiff's (and the Public's) health and safety when consuming water within the District. Plaintiff seeks injunctive and declaratory relief concerning the acts of Defendants, recoupment to the public fisc of wrongfully diverted, uncollected, and/or wasted taxpayer funds, as well as general, special, and exemplary damages as

---

[16] As required by the Safe Drinking Water Act and Health and Safety Code §§106877, 106878, 106878(b), 106885, and 116555, along with those sections' implementing regulations promulgated by the California Department of Health in title 22 of California Code of Regulations, sections 64401 et seq.. Also, at all times material to the Complaint, the Board Defendants and Public Officer Defendants agreed and cooperated in order to permit Clint Dingman to engage in water treatment and/or distribution duties without being properly certified by the State of California, assisted him in those improperly-undertaken duties, and/or ratified his wrongful conduct thereafter.

[17] See also Health and Safety Code §116670; "Anything done, maintained, or suffered as a result of failure to comply with any primary drinking water standard is a public nuisance dangerous to health, and may be enjoined or summarily abated in the manner provided by law. Every public officer or body lawfully empowered to do so shall abate the nuisance immediately."

[18] These failures and contrary actions resulted in multiple violations of federal and state drinking water standards.

appropriate. This nonfeasance, and/or malfeasance also deprived Plaintiff, as a water user, elector, and taxpayer within the HCSD boundaries, of the right to honest services by the Defendants as elected officials and/or public officers (USC 18, §1346). As to any Defendant's violation of <u>any</u> Constitutional provision(s), law, statute, administrative rule, or Bylaw, Plaintiff also brings action pursuant to the broad reach of California's "Unfair Competition Law" ("UCL"), Business and Professions Code §17200, *et seq*.

17. By this action, in addition to general, special, and exemplary damages as specified, Plaintiff also seeks injunctive and declaratory relief concerning the wrongful and improper[19] acts of Defendants, recoupment to the public fisc of wrongfully diverted and wasted taxpayer funds, as well as other relief as appropriate.

18. On May 27, 2014, during an open and public meeting of the Board, HCSD Acting General Manager Peter Harrell ("Harrell") advised Plaintiff and the Board Defendants that the main water facility had numerous design deficiencies, failed to meet standards of the Safe Drinking Water Act and related California laws, safety hazards - including a potentially fatal buildup of chlorine gas, and violated OSHA regulations[20]. Harrell further advised the Board of a long-running problem with "well 3", which permitted the constant outflow of water containing high Boron and salt levels into Rancheria Creek, in violation of maximum contaminant level ("MCL") mandates imposed by State law, and the CWA. Harrell advised the Board of complaints of that flow of toxic water into the creek, the lack of any permit to the HCSD by any federal or state agency allowing the flow of "well 3" to the creek, and of Notice(s) to the HCSD from the California Department of Health concerning the illegal flow of contaminated water from "well 3". The HCSD and Board Defendants refused to correct the violations.

19. Plaintiff assisted Harrell in the investigations and diagnosis of problems at the HCSD facilities, and on June 14, 2014, Harrell again notified the HCSD Board of Directors of the ongoing problems (including potentially fatal buildup of chlorine gas) resulting in OSHA violations at the water plant. The HCSD and Board Defendants refused to correct the violations.

20. On June 18, 2014 and again on July 23, 2014[21], the HCSD, and the Board Defendants purported to have a meeting of the HCSD BOD (but in violation of the Bylaws and

---

[19] The United States Supreme Court has defined improper "action taken 'under color of' state law" to mean "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law...." (*United States v. Classic* (1941) 313 U.S. 299, 326.)

[20] Plaintiff eventually assisted Harrell in filing a complaint to Cal-OSHA concerning the safety problems.

[21] However, the BOD meeting was not timely and properly noticed to Plaintiff as required by law.

the Brown Act), and, as part of their agreement and coordinated plan with Winston to improperly and wrongfully operate the HCSD to their own benefit, appointed unlicensed, uncertified Systems Trainee, Defendant Clint Dingman[22] to the positions of Watermaster/Systems Operator and Acting General Manager of the HCSD[23] even though he had not followed the application process, applied for that position, nor was qualified. Later, the HCSD and Board Defendants also improperly and wrongfully denied Plaintiff's written request per Government Code §995 for indemnification for allegations against her for acts taken in her official capacity as Director and/or Secretary of the Board. Plaintiff was not given any notice of the section 995 hearing, nor opportunity to appear or be heard, while other persons' indemnifications were routinely granted, including by means of *ex parte* communications between Hanson and Winston. On June 25, 2014, at the instruction of, and with the assistance of, Winston, the Board Defendants purported to hold a public meeting (but which was defective per the Brown Act) at which they purportedly removed Plaintiff from her position as Secretary in order to impair, impede, and nullify Plaintiff's Constitutional and statutory rights, powers, authority and duties as a public official.

**V. The Status and Agency of the Defendants; Basis for Allegations of Civil Conspiracy.**

21. All claims are brought against Defendants in their individual, and official capacities, as appropriate to each and to any extent permitted by law, and/or the HCSD Bylaws.

22. Each of the Defendants, individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, managing agents, owners, masters and servants, ostensible agents, principals, co-conspirators and/or partners of one another. In engaging in the conduct described, Plaintiff is informed, and so reasonably believes, that each Defendant was at all times acting with the knowledge, consent, approval, encouragement, aid, agreement, and/or subsequent ratification of each of the remaining co-Defendants, and under the color of law of the position and authority of the Board Defendants and/or other HCSD employees and/or contractors as public officers.

23. Each of the Defendants caused and is responsible for the herein-described wrongful, unlawful, and/or tortious conduct and resulting injuries by: personally participating in the

---

[22] Dingman's unlicensed operation of the water facilities of the HCSD is directly prohibited by the State of California's statutory scheme implementing the Safe Drinking Water Act, and particularly the provisions of California Health and Safety Code §§106877, 106878, 106878(b), and 106885; and 22 California Code of Regulations §§63765, and 63770. This conduct also thus violates the Federal Safe Drinking Water Act itself.

[23] The meetings were willfully held by these Defendants in violation of the Brown Act, without the required proper, timely, or personal notice to Plaintiff as a member of the Board of Directors.

unlawful conduct or acting jointly, aiding, abetting, or conspiring with others who did so; by knowingly authorizing, ratifying, encouraging, agreeing to, aiding, acquiescing in, or setting in motion, policies, plans or actions that led to the unlawful conduct or, although lawful in and of itself, was in furtherance of other, unlawful, wrongful, and/or tortious conduct; by failing to take action to prevent the unlawful and/or wrongful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the laws of the United States, the State of California, and/or the HCSD Bylaws; by failing to provide access to Plaintiff to District records in the same manner as other Board members in violation of the equal access provisions of the CPRA; by failing to reasonably accommodate Plaintiff's disability in providing equal access to HCSD meetings and records; and, by failing to initiate and maintain adequate training and supervision; and, by ratifying the wrongful or unlawful conduct that occurred by themselves, as well as any agents and officers under their direction and control.

24. The acts of the Board Defendants, the HCSD, and their agents, as described herein, were part of a systematic and ongoing pattern of events that were calculated by these Defendants to: interfere with, obstruct, and deprive Plaintiff's exercise of her Constitutional and statutory rights; cause Plaintiff to be shunned, subject to ridicule, and despised; wrongfully waste, and/or divert public funds to their own benefit; to injure Plaintiff financially, and economically; to interfere with Plaintiff's enjoyment and use of her the powers and duties of her Offices with the HCSD; to deprive her of her rights to vote as a Board member and/or as an elector of the HCSD; to discriminate against Plaintiff on the basis of her disability; and, to impair her enjoyment and use of, and the value of, her real and personal property, all without the due process of law, and while denying her the equal protection of the laws.

**VI. Illegal Meetings of Board Defendants; June 13, 2014 through November 3, 2015.**

25. In addition to conducting numerous hidden, secret, "daisy chain" and/or "spoke and wheel" meetings in violation of the Brown Act, the Board Defendants, with the aid and assistance of Defendants Puckett, Bowles, and Winston, purported to hold public meetings of the HCSD Board on June 13, 25, and 27[24], 2014, July 01[25], 02 and 23, 2014, August 5, 2014, September 3, 2014, October 1, 2014, November 05, 2014, December 03 and 17, 2014, January

---

[24] The second half of this meeting was illegally held as a "closed meeting" at Defendant Robert Winston's office in Yreka, CA, outside the boundaries of the HCSD, while Winston was not counsel for the District. Plaintiff's fellow Legislator and Representative, Roger Gifford, attempted to attend, whereupon he was ejected by Winston, who threatened Gifford with trespassing charges.

[25] This meeting of the Board Defendants and Winston was not agendized, occurred at the Courthouse in Yreka, was not noticed to Plaintiff Olson and was not publicly posted.

07 and 21, 2015, February 04, 2015, March 04, 2015, April 08, 2015, May 06, 2015, June 03 and 17, 2015, July 01 and 03[26], 2015, August 5, 2015, September 2, 2015, October 7, 2015[27], October 15, 2015[28], and November 4, 2015. Each of these meetings and acts was taken in violation of the Brown Act (by deficiency of notice, item descriptions, posting requirements, and also for failing to timely [and/or at all] notice Directors Kimberly Olson and/or Roger Gifford of such meetings), the California Government Code, the HCSD Bylaws, and the California Constitution, and were planned in a manner calculated to interfere with and violate, Plaintiff's First Amendment rights (individually, and as a Legislator) to access and participation in the governmental workings of the HCSD, to exercise her powers and duties as Secretary and/or Director of the HCSD, to vote on those issues, and to make a record of all proceedings as she was entitled (and required) to do by law and the Bylaws.

26. In response to these events, Plaintiff assisted others in submitting, and submitted herself, multiple timely "cure and correct", tort claims, and "cease and desist" letters to the HCSD concerning the Brown Act and other violations committed by the Defendants.

27. After wrongfully acting to purportedly remove Plaintiff from her position as Secretary of the Board on June 25, 2014, and upon Hanson and Brown's usurpation of Plaintiff's authority, duties, and powers of office, Plaintiff submitted requests for indemnification, and other matters to be placed on the Agenda for meetings of the HCSD - all of which were refused by Defendants Hanson and Brown. The denial of properly processing, and holding a noticed hearing and making findings of fact concerning Plaintiff's request(s) for indemnification deprived Plaintiff of a property interest without any due process. Meanwhile indemnification claims - even made verbally - by the Board Defendants, Bowles, Dingman, and/or Goff were

---

[26] This meeting was purportedly "called" as an official HCSD meeting by the Board Defendants, but actually conducted with the aid and assistance of Defendant Robert Puckett, Sr. as an "invitation only" event. Notably the purportedly official "meeting" was held without any posted notice, or notice of any kind to Plaintiff and/or Director Roger Gifford - all in violation of the Brown Act.

[27] This meeting was purportedly "called" as an official HCSD meeting by Defendant Sharrel Barnes, but actually conducted with the aid and assistance of Defendant Robert Puckett, Sr. as an "invitation only" event without a quorum, any posted notice, or any notice to Plaintiff.

[28] This meeting of the Board Defendants and Winston was not agendized, occurred in the halls of the Siskiyou County Courthouse in Yreka, was not noticed to Directors Gifford and/or Olson, was not posted to the public, and concerned ongoing billing disputes with Dingman and Winston, as well as Winston's self-assignment to undertake various acts and to exert purported official authority concerning legal matters. At that meeting the Board Defendants agreed to, and did, create a falsely certified public document - a "warrant request" instructing the County Auditor to disburse funds. The warrant request certification falsely stated that the requests were all approved by legal Board action.

routinely granted[29] by the Board Defendants themselves - often outside of any public meeting, and despite conflicts of interest.

28. On each occasion of a purported meeting of the Board of Directors occurring beginning on or about June 13, 2014, and continuing through December 3, 2015, the Board Defendants, deliberately failed and refused to accommodate Plaintiff's known disabilities by refusing to provide required, timely notice and information concerning the proposed meetings for access thereto, while at the meeting of June 25, 2014, the Board Defendants (and HCSD) agreed, conspired, collaborated, and acted, with the ratification, aid, assistance, direction, and encouragement of Winston, to illegally[30] "remove" Plaintiff from her office as Secretary of the Board while knowing Plaintiff was not informed of the attempt to do so, and would not be able to attend the meeting to cross examine witness, and to be heard as to any charges, due to her disability and lack of transportation. Plaintiff's disability, and her exercise of free speech and right to petition were motivating factors in Hanson's acts to improperly, wrongfully, and illegally remove Plaintiff as Secretary, while Hanson also usurped all of Plaintiff's duties and authority.

**VII. Acts Common to all Illegal Meetings of the HCSD, and Board Defendants.**

29. The Board Defendants, in acting to hold improper meetings that violated the provisions of the Brown Act concerning notice to the public and to Plaintiff, and plan, and to influence and act in their official capacities on matters of public concern, and/or in which they have a direct conflict of interest, violated Government Code Sections 1090, and 87100, and 2 Cal. Code Regs. Section 18700, and have failed to act as mandated by the HCSD Bylaws, pursuant to Sections A-1.4, A-2.2, A-2.6, A-2.10; A-3.3; A-3.8; A-5-1; A-6.1; A-6.4; A-7; A-9.1; A-9.3; A-9.14; 1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; and, 1-4.040. On information and belief, Plaintiff alleges that Defendant Winston improperly directed, aided, agreed to, encouraged, assisted, and/or abetted the Board Defendants in committing that wrongful conduct as herein alleged[31], and ratified their conduct (by, among other acts, concealing the improper or

---

[29] In other words, the HCSD and Board Defendants routinely approved their own indemnifications and retentions of counsel (as well as those involving their co-conspirators), but prohibited Plaintiff, in her capacity as Director, and Plaintiff's Representative, Director Roger Gifford, from even voting on any requests for indemnification by anyone - often by conducting these proceedings outside of public meetings required by the Brown Act, and/or without any formal request for indemnification or defense being made. Furthermore, such wrongful acts were the result of conspiracy with, the agreement of, and the aid and encouragement of, Defendant Winston.

[30] In contradiction to the provisions of Govt. Code §61043, and the Bylaws.

[31] By telephone, emails, letters, personal meetings (outside of lawful public meetings), and by creating - without any legal authority to do so - various documents for the HCSD and/or Board Defendants to use,

illegal nature thereof) when undertaken by refusing Plaintiff's attempt to inspect records, thus violating the CPRA's provisions of equal access to records by Board members.

## VIII. DEFENDANT MICHELE HANSON.

30. HCSD Board member and "President" Michele Hanson ("Hanson") is a citizen of Siskiyou County and the HCSD, and instituted Brown Act and HCSD Bylaw violations at each of the meetings she called and conducted during June 11, 2014, through December 3, 2015[32] with the intent to intimidate, impede, deny due process to, and retaliate against Plaintiff (in both official, and individual capacities) for Plaintiff's protected conduct in making complaints to government agencies and the courts[33], and attempts to exercise statutory authority and duties, and right to vote, as a Director of the HCSD. Such acts (with the agreement, assistance, and ratification of Brown, Barnes, Bowles, and Winston) included, but were not limited to: instructing Bowles to bar Plaintiff from access to all HCSD customer and billing/payment records; instructing Dingman to bar Plaintiff from all HCSD facilities and records; the wrongful purported termination of Plaintiff as Secretary of the HCSD on June 25, 2014 in violation of the HCSD Bylaws (at Sections A-2(4), and A-3(1)), and Govt. Code §61043; and *de facto* impairment, interference with, obstruction, and/or usurpation of all of Plaintiff's Constitutional and statutory powers and duties as Director and/or Secretary, including her right to timely notice of board meetings and other functions, and to access records and documents of the HCSD as provided by California Government Code §6252.5 - all in order to deny Plaintiff opportunity to vote on issues before the Board, or to exercise her official duties and authority concerning agendas, meetings, and certification of Board actions as granted Plaintiff in the Bylaws, and/or

---

purportedly in their official capacity (and to be represented as having been created by one or more of the Board Defendants themselves).

[32] The violations were: lacking proper and timely notice to Plaintiff as a Director; timely notice to, and proper descriptions as to agenda items and actions taken at the meetings to the public; and, by undertaking additional actions outside of public meetings. In holding "Board meetings" this way, Hanson failed to follow HCSD Bylaws requirements that the Secretary create and post the Agendas, and violated the Brown Act. By deliberately failing to contact, notice, and consult with Plaintiff concerning the meetings, Hanson also disregarded, and refused to make any accommodation for Plaintiff's disability, which further resulted in the wrongful exclusion of Plaintiff.

[33] Plaintiff filed her first legal action against Hanson, Brown, and Bowles On June 2, 2014. Those Defendants, with the aid and encouragement of Winston, then immediately began holding a series of "special meetings" to purportedly take official actions to remove Plaintiff as Secretary; to "unwrite" the Bylaws that Plaintiff and the other Board members had just passed two months before; to remove Plaintiff's authority to pick up HCSD mail at the post office, to remove Plaintiff as a signer on the HCSD's bank accounts; to violate the CPRA's provisions of equal access to records by Board members; and, to otherwise interfere with and impede Plaintiff's exercise of her Constitutional rights.

State law. These actions by Hanson, the other Board Defendants, and Winston, also were calculated to interfere with, block, and eliminate, the right to vote of the electors of the District as provided in the HCSD Bylaws.[34] As a public officer of the HCSD, Hanson had a fiduciary duty to the District, and was required to abide by all laws and the Bylaws concerning the operation of the HCSD and its water production, treatment, and distribution facilities, but violated her duty by failing to do so during the times material to the complaint, and as set forth in Sections IV and V, above.

31. On or about June 18, 20, 25, and 27, 2014, Hanson, Brown, Barnes, and Defendant Winston, utilizing "spoke and wheel", and/or "daisy-chain" methods to circumvent the Brown Act's meeting requirements[35], cooperatively arranged for, and held Brown Act- and Bylaws-violating, improperly-conducted meetings at Winston's Yreka office (and by telephone and/or email) for the purpose of planning these wrongful actions against Plaintiff, while failing to timely and properly notify Plaintiff of those purported Board meetings, so that those Defendants might take wrongful actions under the *imprinteur* of the HCSD. The Board Defendants thereafter regularly held other, purportedly lawful meetings of the HCSD that were improperly held in closed session, held outside of the District, held other than by noticed public meetings, and/or without at least 24 hours personal notice to Plaintiff. In setting and holding these defective Board meetings while failing and refusing to follow the HCSD Bylaws requirement that the Secretary create and post the Agendas, and by deliberately failing to notice and consult with Plaintiff concerning the meetings, Hanson willfully interfered with and subverted Plaintiff's authority and duties as a public officer, while refusing to make any accommodation for Plaintiff's disability, which resulted in wrongful exclusion of Plaintiff from such meetings. Hanson also did so to prevent Olson's voting at meetings.

---

[34] Those sections granting electors the right to vote also prohibit the Board from making any changes to those sections without voter approval. Plaintiff as an elector was thus also disenfranchised.

[35] "When a person acts as the hub of a wheel (member A) and communicates individually with the various spokes (members B and C), a serial meeting has occurred." (California Attorney General's Office, "The Brown Act: Open Meetings for Local Legislative Bodies 11 (2003).) This centralized network system allows one person to coordinate messages and create a concerted plan to engage in public business through a series of communications that violates the Brown Act. The daisy- chain meeting occurs when one member calls another to discuss business and the second member calls a third to discuss the conversation, and so on. "For example, a chain of communications involving contact from member A to member B who then has communications with member C would constitute a serial meeting in the case of a five-person body." (California Attorney General's Office, *supra*, fn20 at 11.) This sequence of relaying information (or seeking/consummating an agreement to act or vote a certain way) violates the Brown Act.

32. In furtherance of those acts, Hanson had Winston (outside of meetings of the Board, and without any direction or approval from the Board) wrongfully draft, and had Hanson sign (also without any lawful Board action or approval), multiple unlawful, false, purportedly official contracts and other documents, while their intent was to fraudulently and wrongfully use the documents in various legal, administrative, and other proceedings[36] (including private legal matters of Hanson's); to wrongfully appear in court on behalf of independent contractors to the HCSD that were wrongfully (or never) "indemnified" by Hanson and/or the Board Defendants in violation of Government Code 995[37], and/or without contractual provision for indemnification by the HCSD. Hanson and Winston both knew that Hanson was without any lawful authority to do these acts, or to execute documents without specific approval and authority granted by the full Board of the HCSD pursuant to Government Code §61045, and their intent was to fraudulently and wrongfully use the documents as justification for later "amendments" and "reaffirmations" of wrongful agreements and contracts with Winston, and actions by Winston "self assigning" to administrative and legal proceedings (including private matters of Hanson's); to appear in court on behalf of independent contractors to the HCSD that were wrongfully "indemnified" by Hanson and/or the Board Defendants in violation of Government Code 995[38] (and without provision for indemnification by the HCSD appearing in any contract with those independent contractors), and, to do those things in a manner that violated the Bylaws. Plaintiff avers that these documents, contracts, agreements, and action by Hanson and Winston regarding purported contracts are void as a matter of law, and that all other agreements and acts arising therefrom, purportedly official actions taken to "affirm", "reaffirm", and/or modify them, are also void, as are all actions by any Defendant purportedly attributed to any reliance thereon.

---

[36] No State or tort-based cause of action is intended herein to be considered as being based upon any actual filings, statements (either written or oral), or acts before any lawful tribunal, or lawful meeting of the HCSD BOD; however, these preliminary acts, occurring as they do outside of such proceedings, do constitute evidence of intent, of wrongful conduct, and of other causes of action. The Defendants also acted to prevent Plaintiff's access to these documents while they were being created, and afterwards, in violation of California Government Code §6252.5, in order to prevent Plaintiff from exercising her rights, powers, and duties of elected office as Secretary and/or Director of the Board of the HCSD.

[37] Or sometimes, not even formally indemnified at all (as is the case with at least one legal action involving Ernest Goff - besides the action herein). Instead, Winston and Hanson simply collaborated to have Winston begin drafting various documents, and/or filing papers on behalf of whomever it was, and to bill the HCSD thereafter - all without any proper action by the HCSD Board in compliance with the Brown Act, and/or other lawful process..

[38] Or sometimes, not even formally indemnified at all (as is the case with at least one legal action involving Ernest Goff - besides the action herein). Instead, Winston and Hanson simply collaborated to have Winston begin filing papers on behalf of whomever it was.

33. Hanson initiated, and recruited the agreement, aid, support, encouragement, assistance, and ratification of, Brown, Barnes, Winston, Bowles, Dingman, and Puckett in carrying out the common plan to knowingly, in bad faith, and falsely, accuse Plaintiff of destruction, theft and/or "conversion" of District money and property[39] by each of those Defendants, claiming at various times[40] that property either was in Plaintiff's possession when it was not (and in some cases never had been in Plaintiff's possession, but was rather in the possession of Hanson, Puckett, Bowles, Dingman, or stored in HCSD facilities), and/or that it had not been returned by Plaintiff to the HCSD when in fact it had been returned (and/or that there was no legal basis for its return), and/or that Hanson had demanded such property be turned over to her, when in fact she had never made any such demand (nor had been granted authority to make any such demand by lawful action of the HCSD Board), and/or that Plaintiff had "refused" to release HCSD property in her possession to Hanson, when in fact Plaintiff (who is disabled, and does not own a car - both facts known to Hanson) had not ever made any such refusal. Hanson also falsely stated that Plaintiff Olson (in substance) had "withdrawn all of the HCSD's money from the bank, and closed the accounts", and that "[Hanson] didn't know why", when the truth was, and was known to Hanson to be at the time the statements were made, that the bank had closed the accounts due to litigation involving Plaintiff, Hanson, and the HCSD, then issued cashier's checks made out to the HCSD for the funds therein, and that it was the Bank that had requested Olson pick up those checks as a signer on the account and Secretary of the HCSD[41]. Further, Hanson, absent any direction from the Board to do so, instructed Defendant Winston[42] to threaten Plaintiff with "physical jeopardy", and to contact the Siskiyou County Sheriff's Department to falsely report that Olson had closed the HCSD accounts, and embezzled the money. Winston thereafter did so via telephone and email[43].

---

[39] And although Hanson and her co-conspirators claimed Plaintiff did these things while acting in her official capacity, they also acted to deprive her of her right to indemnification (or even a proper hearing thereon) pursuant to Govt. Code section 995.

[40] These false statements were made to various members of the public from the community of Hornbrook, as well as to some Siskiyou County government officials such as the Auditor and Treasurer (who have no investigative or enforcement authority whatever).

[41] The HCSD Bylaws, and Resolution #14-019 adopted March 18, 2014, require the President and Secretary to cooperatively undertake bank changes, but Hanson refused and failed to do those things, and acted with Brown and Winston to threaten, intimidate, and coerce Plaintiff instead.

[42] Winston was not at that time even the purported counsel of/for the HCSD in any matter/capacity.

[43] No state claims are made herein relating to the reports by Winston to law enforcement, or his actual acts of filings or statements in any court, although such are evidence of the plan to deprive Plaintiff of her equal protection and due process rights, and to falsely claim he had been duly authorized to do so in order

27. Hanson initiated the common plan, agreed to, adopted, aided, abetted, encouraged, and ratified by Brown, Bowles, Barnes, Winston, Dingman, and Goff, to operate the HCSD, and to create, institute, and enforce policies, customs, and practices, all in violation of Federal, State, and local laws as set forth herein[44], and to act on those policies by changing, undercharging, "adjusting", reclassifying, and/or waiving, fees and/or charges for certain customers[45]; by failing to impose and collect the "standby fee" as to each parcel in the District as provided by law and the HCSD Bylaws; by acting to create, institute, and enforce policies, customs, and practices violative of the California Public Records Act ("CPRA"), and to act on those policies by wrongfully and illegally failing to respond to CPRA requests by the public, Plaintiff, and her Representative Roger Gifford[46] (many of which requests related directly to the illegal, *ultra vires*, and/or unethical acts of the Defendants herein); by failing to comply with California Water Code, sections 31007 and 71616; to wrongfully delegate legislative authority of the HCSD Board to Winston; and, permitting Hanson to exert supervisory functions[47] as to Dingman in order to sign off on Dingman's timesheets (containing requests for hours he did not actually work and/or for duties not authorized per his contract), for a rate of pay ($15/hr) in excess of his contracted rate ($10/hr). These wrongful, excess payments to Dingman amounted to "bribes" to go along with Hanson's plans and goals, and thus were a corrupt act. All of these failures resulted in multiple, repeated, violations of federal and state drinking water standards.

28. Hanson, Winston, the other Board Defendants, Goff, and Dingman, agreed to, planned, and acted, to deprive Plaintiff of her First Amendment and statutory rights as a

---

to then wrongfully bill the HCSD. The reports made to non-enforcement entities and persons are defamatory, however, and were made with malice, with intent to harm and oppress Plaintiff.

[44] This included the plan to have Winston (without lawful authority granted by the HCSD Board) ghost write purportedly official documents of the HCSD, along with various notices, resolutions, bylaws, declarations, contracts, and letters, all supposedly written by Hanson. Hanson created, signed, and certified these documents without bringing them to any properly-held meeting of the HCSD Board, or showing them to anyone prior. Hanson also on some occasions presented certain drafts of documents at meetings, and then substituted other documents created by Winston into the record later via her own "certification", or using that of her accomplice and co-conspirator, Defendant Patricia Brown.

[45] Without voter approval as required in the Bylaws, or even by action by the Board at a public meeting in conformance with Govt. Code §61045.

[46] Plaintiff Olson, and Roger Gifford, as public official on the same Board as Hanson, also had additional statutory rights to access to records above and beyond those of a member of the public. Hanson and her co-Defendants, Brown, Bowles, Barnes, Winston, Dingman, and Goff, in acting to block Plaintiff's access under these conditions, also treated her differently than other, favored Directors - all of whom had full access to all records.

[47] This also included telling Dingman which meters to read and which to ignore, etc. A director may not act in an executive authority, or as the "general manager" of a District per Govt. Code §61040(e).

Legislator to attend and speak at meetings of the HCSD BOD, to access to the HCSD records and documents, due process, and to the equal protection of the laws relating thereto by engaging in the foregoingly-specified conduct, and by having numerous ex parte, non-public, and non-agendized, non-noticed (to Plaintiff) meetings amongst one another concerning official HCSD business[48]; by concealing from Plaintiff the fact that these meetings were planned and/or held, acting to prevent Plaintiff's access to documents while they were being created, and afterwards, in violation of the CPRA at Government Code §6252.5, and also as to a Labor Board Hearing at which the Board Defendants and Winston appeared; by meeting on multiple occasions in violation of the Brown Act with the other Board Defendants, and with Winston concerning the labor hearing (but deliberately excluding Plaintiff - even on the day of the hearing) to plan, agree on, and take, official action concerning the labor complaint. Additionally, after the hearing, Hanson and Winston agreed, acted, and aided each other to undertake wrongful (and malicious) actions[49] against Plaintiff for her testimony, production and/or certification of public records, and "assistance" at the Labor hearing[50] in an effort to chill Plaintiff's first amendment rights; to retaliate against her for being a witness and certifying papers used at the hearing; and in order to prevent and retaliate against Plaintiff's exercising her rights, powers, and duties of elected office as Secretary and/or Director of the Board of the HCSD.

29. Hanson agreed, planned, and acted with Winston to *ex post facto* and unilaterally purportedly approve[51] Winston's intervention in several Siskiyou County Superior Court matters being prosecuted by Plaintiff and other persons, as well as matters in the Third District Court of Appeals, without any BOD approval prior to Winston's appearing therein[52]. The goal of this plan was to waste and divert public funds of the HCSD to benefit Winston and Hanson. Winston,

---

[48] Such actions violate the Brown Act, and probably Government Code 1090, insofar as any such meetings had to do with "retaining" Winston and/or his law firm for various acts.

[49] No cause of action is asserted against any Defendant at this time concerning any bringing of wrongful and/or malicious civil prosecutions. Plaintiff does assert that wrongful discriminatory and/or retaliatory actions, including bringing legal actions against Plaintiff based upon her lawful, protected conduct, constituted violations of her Constitutional and federal statutory rights.

[50] The hearing involved claims by a former employee for failing to pay wages and compensation for mileage, as well as unsafe working conditions at the water plant.

[51] Hanson did this on or about November 5, 2014 after Winston (on or about October 17, 2014) crafted a purported resolution granting her such authority (#14-038), which she then filled in, certified herself, and placed into the HCSD's records as a purported lawful resolution of the HCSD (the resolution itself fails to abide by Govt. Code §61045, and was not actually approved by the Board).

[52] Each appearance without BOD approval constituted a violation of Bus. & Prof. Code §6104.

Bowles, and Hanson then acted to falsify and conceal records and documents of these acts[53].

30. From June of 2014, through December 3, 2015, Hanson, the Board Defendants, Dingman, Goff, Bowles, and Winston, specifically agreed, conspired, and acted to have Dingman work on, repair, and operate (including by the addition of chemicals to the water supply) the HCSD water production, treatment, and distribution facilities without any certification, or license to do so, all in violation of the provisions of Health and Safety Code sections 106875, and 106885, and 22 California Code of Regulations sections 63765 and 63770. Hanson and these same defendants, at that time and thereafter, conspired and acted to wrongfully thwart all attempts by Plaintiff, Director Roger Gifford[54], and other members of the public, to monitor, report, and/or correct the nuisance(s) *per se* caused by their acts and actions. During this same period, Hanson acted *ultra vires*, and outside of any lawful process, to ratify improper, wrongful, and unauthorized pay increases, hours, and payments to Dingman which were not in compliance with the terms of his contract with the HCSD, and which changes/additional pay/hours increases had never been authorized by the HCSD Board, and in order for Hanson to wrongfully exert supervisory functions[55] for Dingman in order to sign off on Dingman's timesheets - those timesheets containing requests for hours he did not actually work (and/or for duties not authorized as paid hours per his contract), for a rate of pay ($15/hr) which was in excess of his contracted rate ($10/hr), and for excessive hours of work not authorized by his contract (capped at 35 hrs/mo), all without any notice to the public, or official HCSD BOD action and approval. Hanson, Brown, Dingman, and Bowles agreed, and acted, to keep this information from the public, Directors Kimberly Olson and Roger Gifford, and even Defendant Barnes, so that nobody would know of, and/or question the excess payments going to Dingman. The excess payments to Dingman also constituted "bribes" so that Dingman would continually go along with Hanson's plans and goals, and thus, in addition to being a false claim by Dingman, and a gift of public funds, were a corrupt act on the part of Dingman and Hanson as public officers.

---

[53] This included destruction of public records, and acts in violation of the CPRA, such as refusing Plaintiff the same access to records as was enjoyed by other HCSD Board members.

[54] As Plaintiff is a resident within the boundaries of HCSD District, which elects its representatives "at large" she is still entitled to the right of having benefit of representation via the other elected Directors.

[55] This also included telling Dingman which meters to read and which to ignore, what forms to use for customers, what to do or say in response to contacts by Plaintiff, Acting General Manager Peter Harrell, and Roger Gifford, etc, and to prevent access to HCSD facilities and documents by Plaintiff.

30. Defendant Michele Hanson, in furtherance of these wrongful agreements, goals, plans, and actions, also specifically created and instructed Dingman to give to new customers, a false application for water services which was other than that previously created by the General Manager, had not been adopted by any action of the HCSD Board, and all of which wrongfully reduced water fees and charges due the HCSD. Hanson also distributed and used the false and incorrect application for water services as to new customers herself.

31. On February 15, 2015, Defendants Hanson, Dingman, and members of Hanson's family, absent any Board authorization, wrongfully destroyed a tree on HCSD property with a value of $15,000, and attacked Plaintiff's elected Representative, Director Roger Gifford, as he attempted to document those activities. Later Winston agreed to, encouraged, aided, abetted, and ratified this wrongful conduct by (via *ex parte* communication) telling Hanson: she could do so without BOD approval being necessary; that Hanson was thus acting in her official capacity and within the scope of her employment as an agent of the HCSD; that Hanson could engage in such acts without action or approval by the Board; and, that the HCSD was "required" to indemnify and defend her (via Winston) without any request by Hanson for it to do so, nor any Board vote. In furtherance of this plan, Winston specifically instructed Hanson not to talk about or request indemnification at any Board meeting concerning the tree incident.

32. Hanson, on or about March 4, 2015, agreed, conspired, and acted with Winston to wrongfully and corruptly have the HCSD divert public funds to Winston for Hanson's private legal fees in Siskiyou County Superior Court Cases #SCSCCVHA 15-204/205/206, those funds being improperly expended without any rational relationship to any beneficial public purpose.

33. On or about October 8th and 9th, 2015, Hanson collaborated with, and acted with, Defendants Patricia Brown and Clint Dingman to violate the Brown Act, HCSD Bylaws, and Government Code §61045, by attempting to illegally contract with Meek and Jones Pump Company without any Board meeting, and/or notification to the public. Hanson, Brown, and Dingman also attempted to conduct repairs to HCSD well #4 without being properly licensed.

34. On October 15, 2015, while at the Siskiyou County Courthouse in Yreka, California, the Board Defendants engaged in an un-noticed, non-public meeting, and then and there agreed to falsify a public document, to whit, a warrant request to the Siskiyou County Auditor, and falsely certifying the request was the result of a lawfully-held public meeting of the Board.

35. On or about July 4, 2014, Plaintiff submitted a written request to the HCSD for indemnification concerning lawsuits filed against Plaintiff for acts taken in her official capacity as Secretary, and Director. Hanson, the Board Defendants, and the HCSD, at the direction and

urging of Winston, thereafter failed and refused to provide Plaintiff any notice, or hearing, with findings of fact, to properly process and grant or deny Plaintiff's requests in conformance with Government Code §§995, et seq, in the same manner, and on the same criteria, applied to other directors, employees and contractors.

36. Once Hanson, the other Board Defendants, and Winston had wrongfully agreed and acted to dispossess Plaintiff of her authorities and duties of elected office in order to assume those powers and duties for themselves, those Defendants then further agreed and acted with Defendant Bowles to bill Plaintiff a different residential water rate and fees than those set forth in the HCSD Bylaws and Resolutions in effect at the time, and/or fees which differed from those they imposed on their friends and associates during the same time period.

37. In furtherance of the various wrongful plans, agreements, and actions in concert with the other Defendants set forth above, Hanson used a copy machine to forge the signature of Defendant Barnes on multiple documents and records, and submitted those - as well as other false documents, at HCSD Board meetings; to administrative proceedings before the Labor Commissioner, and in Superior Court, all without authorization by the HCSD Board to do so. In order to accomplish these acts, Hanson utilized the usurped powers and authority of Plaintiff's office as Secretary of the Board of the HCSD.

**IX. DEFENDANT ROBERT PUCKETT, SR (Former John Doe #1).**

38. Defendant Robert Puckett, Sr. ("Puckett") was a citizen of Siskiyou County, California[56]. Beginning on or about June 3, 2014, and continuing to December 3, 2015, Puckett agreed to assist, aided, and abetted the Board Defendants in acting as set forth in the Sections attributed to them herein; to improperly and wrongfully divert HCSD funds to his long-time associate, Defendant Bowles, and also to Winston, by assisting the Board Defendants in organizing and executing meetings held in violation of the Brown Act and HCSD Bylaws at the Hornbrook Grange, and granting them access thereto. Insofar as Puckett was not a public official at any time during the times material to this Complaint, any agreement between him, the HCSD, and/or the Board Defendants to provide him any defense or indemnification herein is wrongful, and a gift of public funds that provides no reasonable public benefit.

---

[56] However, although Puckett was also a member of the Board of Directors of the HCSD until May 7, 2014 (at which time he resigned), he did *not* engage in the meetings at Hanson's home, or the other events complained of during the March-May, 2014 period, and so no action is brought herein in his official capacity for that time period, and he is sued only in his individual capacity, as an agent of the Board Defendants, Dingman, and/or Bowles for his later conduct as set forth herein.

39. Puckett additionally aided and abetted the Board Defendants by (upon their instruction) organizing and encouraging select persons to attend such meetings, but excluding others and the general public; by harassing persons that attended the purported HCSD Board meetings, but who were not on the "approved list"; and, arranging with the Board Defendants and Defendant Bowles to not have his water meter read to prevent proper fees and charges being assessed on him, instead produced as fraudulent billing (false record) by Bowles and Hanson.

40. Puckett also, from June 3, 2014 through December 3, 2015, attended meetings held by the Board Defendants in violation of the Brown Act and other statutes, and there cooperatively agreed and planned to advance their wrongful goals as set forth herein.

**X. DEFENDANT HORNBROOK COMMUNITY SERVICES DISTRICT**

41. The HCSD has inadequate and obsolete facilities that violate Clean Water Act[57] and Safe Drinking Water Act[58] requirements. Each of the Board Defendants, Bowles, Goff, Dixon, Dingman, and the HCSD have, during the times material to this complaint, undertaken and continued an institutional policy, custom, and practice of the HCSD of willfully failing to comply with laws and duties[59], as set forth in Sections IV and V above, and herein, which failures resulted in violations of federal and state drinking water standards. Defendants Winston, Dingman, Goff, and Bowles have been aware of the duties of the HCSD and Board Defendants, and have agreed with, aided, and abetted the HCSD and Board Defendants in violating the laws of the United States, and State of California, relating to the Clean Water Act, Safe Drinking Water Act, the Health and Safety Code, the Water Code, the Government Code, the Labor Code, and the HCSD Bylaws. In return, the HCSD, via the Board Defendants, has refused to supervise and restrain the actions of, and instead agreed to and ratified, improper, wrongful, and/or tortious conduct, and/or that contrary to statute, engaged in by Goff, Dingman, Winston, and Bowles.

42. Insofar as allegations in this complaint are made against the "Board Defendants" in

---

[57] 33 USC §§1251, et seq. The HCSD, Board Defendants, Dingman, Goff, and Dixon, knowingly permitted outflow of one of its wells containing high levels of salts and boron into Rancheria Creek, thence to Cottonwood Creek, thence to the Klamath River, which is designated as "wild and scenic".

[58] 42 USC Chapter 6A; 40 CFR 141-143. The HCSD's water production, treatment, and distribution equipment is obsolete, and does not meet the requirements of the Act, while the HCSD permits uncertified and unlicensed Operators, contractors, and other workers on its systems in violation of law.

[59] The HCSD has failed and refused to establish rates and charges as required by Water Code §§ 31007, and 71616; failed to maintain and upgrade the wells and surface water facilities to engineered standards; and, failed to impose and collect sufficient charges to fund necessary improvements, and diverted water charges away from system operations to private legal representation (instead of using County Counsel) - all in violation of federal and state laws, resulting in water shortages, degraded water quality, toxic water events, nuisances *per se*, and hazards to Plaintiff and the public.

their official capacities, it is also Plaintiff's intention to apply those allegations to the HCSD. Each of the actions taken by any of the Board Defendants, as described in their respective sections, was ratified by each of them, and also by the Public Officer Defendants, and so adopted and implemented as a custom, policy, or practice of the HCSD, and became the "standard operating procedure(s)" thereof.

## XI. DEFENDANTS ROGER GIFFORD, SHARREL BARNES, AND PATRICIA BROWN

43. At all times material, Defendants Roger Gifford ("Gifford"), Sharrel Barnes ("Barnes"),  and Patricia Brown ("Brown") were officers, employees, Directors, and/or agents of the HCSD, Hanson, Winston, and each other, and were acting under color of law of those public offices. Each knew of, agreed to participate, participated in, and failed to take any action to correct, violations of the laws and Bylaws herein described, and the deprivations and/or interference with statutory and Constitutional rights of Plaintiff by the HCSD, Public Officer Defendants, and particularly Hanson and Winston. Each agreed with, and assisted Hanson and Winston in those acts pertaining to them as set forth in this Complaint, and in Sections IV and V, and ratified their conduct afterwards. As public officials of the HCSD, Gifford, Barnes, Hanson, and Brown had a fiduciary duty to the District, and were required to abide by all laws and the Bylaws concerning the operation of the HCSD and its water production, treatment, and distribution facilities, but failed to do so during the times material to the complaint.

## XII. DEFENDANT JULIE BOWLES

44. Defendant Julie Bowles ("Bowles") was an independent contractor and officer, employee, and/or agent of the HCSD, acting under the color of law of her office as Bookkeeper[60] and/or Treasurer of the HCSD[61]. No agreement exists to indemnify Bowles pursuant to Govt. Code §995 in her contract. Bowles is a long-time resident of Hornbrook, and friend of Hanson.

45. Bowles collaborated with, agreed to participate in, aided, abetted, and assisted the Board Defendants, Winston, Dingman, Goff, (and, much later, Murphy, Pearson, Bradley & Feeney, Inc., and Robert Lucas) in the improper conduct of illegally non- and/or improperly agendized, and/or non- public meetings on the dates alleged herein; by improperly meeting with them individually and serially, as a group (or portions thereof) via personal contact (at her office and otherwise), by telephone and/or email, during 2014 and 2015, for the purpose of discussing official HCSD-related "public business", including how HCSD funds would be (improperly)

---

[60] As such, Bowles has access to, and control over, customer billing for the HCSD.
[61] The position of "Treasurer" was transferred to the Siskiyou County Auditor sometime in late 2014.

diverted to Winston, Bowles, and Dingman; which HCSD customers should get (wrongfully) reduced and/or waived fees and charges and how to alter the billing to affect and conceal those reductions and waivers; and, how to submit time sheets and "pay stubs" for Dingman that were in excess of his contracted rate of pay and hours - (and how to prevent all those documents, and the associated timesheets, from being revealed to Plaintiff, and/or some of her co-Legislators).

46. Bowles agreed to, collaborated with, aided, abetted, and assisted the Board Defendants, Goff, Dingman, and Winston, with the Board Defendants' wrongful conduct herein (as set forth in their individual paragraphs, and in Sections IV and V, above), and in wasting, gifting, and diverting HCSD public funds to friends and acquaintances[62] by: failing to properly impose fees and water charges to certain customers[63] via billing and otherwise[64] as well as altering and falsifying the records concerning those customers' accounts (by deletion of past due amounts, penalties, certain fees, etc); by refusing to provide Plaintiff with information concerning, or access to the records of the HCSD in the same manner as other Board members, and particularly the bookkeeping records created and maintained by Bowles; and, willfully refusing instructions by Plaintiff Olson to provide copies of customer records, and concealing and destroying public records.

47. These acts by Bowles in the operation of the HCSD was part of the conspiracy with the Board Defendants to cause disruption and upset of the operation of the HCSD, and interference, obstruction, and denial of Plaintiff's Constitutional and statutory rights as an individual, and relating to Plaintiff's position and duties as a Director and Secretary[65] (including the right to vote). These acts were undertaken in part as retaliation for Plaintiff's complaints to the HCSD Board and government agencies about violations of law concerning the HCSD's operations participated in by Bowles, and Bowles' lack of competence.

48. In 2015, Bowles submitted a fraudulent and false claim for payment for services to the HCSD for September, October, and November billing and payroll work for $2,250.00, when

---

[62] Those funds were thus being improperly expended without any rational relationship to any beneficial public purpose.
[63] This action would also thus be providing assistance to the Board Defendants in their common plan to ignore, and violate, the provisions of Water Code sections 31007, and 71616.
[64] Bowles would fail to charge commercially-zoned property at the commercial rate upon the instruction of the Board Defendants acting as a group, or by Hanson, and/or would modify the billing for certain commercial customers to wipe out past billings at the proper rate.
[65] When Plaintiff acted to file Brown Act actions and administrative complaints against Hanson, Brown, and Barnes, Bowles had Winston prepare a "resignation" letter for her. Bowles and Winston then contacted Hanson *ex parte* to arrange for Winston to represent Hanson, Brown, Barnes and the HCSD, at which time Bowles resumed her bookkeeping duties without formal action by the Board to reinstate her.

there was no contract for such work, and when in fact she had not completed such work. Also, the Board Defendants' actions to incur costs to the HCSD to indemnify Bowles for any California Superior Court suits, US District Court suits, and/or administrative actions against her regarding her billing and other bookkeeping acts was an impermissible gift of public funds[66], and payment in excess of contract[67].

## XIII. DEFENDANT CLINT DINGMAN.

49. At all times material, Defendant Clint Dingman ("Dingman") was an officer, employee, and agent of the HCSD, acting under color of law and of those offices, as well as his positions of "System Operator", "Watermaster", "System Trainee", "Acting General Manager", "General Manager", and/or "Shift Operator" with the HCSD. As a public officer of the HCSD, Dingman had a fiduciary duty to the District, and was required to abide by all federal and state laws and the Bylaws concerning the operation of the HCSD and its water production, treatment, and distribution facilities, but failed to do so during the times material to the complaint, andas set forth in Sections IV and V, above, which failures resulted in frequent and recurring violations of federal and state drinking water standards. Despite specific requirements under the Health and Safety Code concerning certifications by the State of California regarding persons operating water treatment facilities, Dingman during times material to this complaint, failed to obtain and maintain those certifications required of a water treatment and/or distribution operator.

50. In addition to participating in, and assisting in that conduct set forth in Sections IV and V above, Dingman, the Board Defendants, and Bowles, conspired, agreed, and acted to: wrongfully provide compensation, benefits, indemnification, and/or other pecuniary and/or non-pecuniary benefits to Dingman which were not contractually specified; arrange payments to Dingman for "work hours" which Dingman did not actually undertake or perform; wrongfully provided other pecuniary and/or non-pecuniary benefits to Dingman amounting to gifts of public

---

[66] The Board Defendants purportedly indemnified Bowles in a USDC case entitled *Harrell v. Hornbrook Community Services District, et al* only after they, Bowles, Winston, Pearson, Bradley & Feeney, Inc., and Robert Lucas had a series of unagendized, unnoticed, and non-public meetings ("spoke and wheel", "series", "hub", and/or other types of meetings in violation of the Brown Act Govt. Code 1090), either in person, by phone, or via email and letter), and that the common goal, and result of these meetings was the improper diversion of funds outside of any public meeting for payment of Bowles' legal fees therein (along with those of the Board Defendants, Dingman, and Goff). Notably, Attorney Robert Lucas filed documents in that case on behalf of the Board Defendants, Goff, and Bowles on April 22, 2015, yet no public meetings of the HCSD BOD concerning Lucas, or Pearson, Bradley & Feeney, Inc., occurred until May 6, 2015 (and even those meetings are improperly described on the purported agendas, and were not held in compliance with the Brown Act due to inadequate/no notice to Plaintiff.)

[67] See Cal. Const., Art. XVI, § 6; Cal. Const., Art. IV, § 17; Govt. Code §8314.

funds; wrongfully pay Dingman for alleged labor he was prohibited by law from undertaking[68]; agree to assign Dingman to tasks and make additional payments to Dingman which were granted outside of an agendized, public meeting of the Board of the HCSD; increase Dingman's rate of pay and number of hours for which he would be paid each month; and, allow Dingman to reside[69], with his dog, at the HCSD water plant, while also utilizing that facility for his personal purposes (including as a dog run - permitting the animal to defecate all over the property without Dingman cleaning it up), to store belongings, etc., without any payment by Dingman for those uses - all outside of any public meeting of the Board, and without any lawful action in compliance with Government Code §61045.

51. On or about October 8th and 9th, 2015, Dingman conspired, agreed, and acted with, Defendant Hanson to wrongfully and illegally contract with Meek and Jones Pump Company to replace the well pump in HCSD well #4 without any Board meeting, or public notice/process.

52. On October 9, 2015, Dingman attempted to stop Plaintiff from contacting the workers for Meek and Jones Pump Company at HCSD wellhead #4, inspecting the wellhead, and inspecting the electrical facilities for the well. Dingman called 911 in an attempt to have Olson arrested for "trespassing", meanwhile knowing Olson was a member of the Board of the HCSD, and had a right to be present on the property (and was Dingman's supervisor per the Bylaws). Dingman's report to the police was knowingly false, and violated Penal Code section 148.5.

53. On or about August 26, 2014, Dingman, upon the instruction of, and in agreement with the Board Defendants[70], improperly acted to change the locks on, and then refused to provide the keys to, the water treatment facility, and the wellheads for the HCSD to Plaintiff, and/or to Director Gifford.

54. During the times material to the complaint, Dingman's repeated intimidation and

---

[68] For example, Dingman's wrongful operation of the water treatment plant and other facilities in violation of the provisions of California Health and Safety Code section 106878, including by his addition of chemicals to the water sent to the public, also rendered his employment contract, and/or all claims for payment as to those duties void for being illegal *per se* pursuant to Civil Code §1608 and §1667.

[69] That is, Dingman actually occupied the water treatment plant of the HCSD as a residence (despite it not having any bathroom, shower, kitchen, bedroom, etc, nor being zoned for residential use), as well as using that facility for storage and use of Dingman's personal appliances and other property without payment of any compensation or payment for utilities used, and using the water treatment facility yard to store inoperative vehicles and other personal items. Dingman's residence at the water plant was also at all times material in violation of Siskiyou County Code §17.01(b).

[70] Hanson attempted to intimidate and harass Plaintiff's Legislative Representative, Director Roger Gifford, and seize Gifford's HCSD-facility keys in order to prevent him from conducting inspections and oversight of Dingman, and the HCSD property and facilities (including well #3).

coercion of[71], impedance of, and wrongful exclusion of Olson from HCSD property interfered with and prevented actions in her official capacities to enforce compliance by the HCSD and Dingman with the Clean Water Act by monitoring well #3 flows into Rancheria Creek, and to conduct general investigations to provide information to State and Federal agencies, including the EPA and CalEPA. On or about September 4, 2014, Dingman, as directed by Hanson and Goff, again prevented an inspection of HCSD facilities by Plaintiff.

55. Dingman failed to comply with the Bylaws of the HCSD (and his contract) relating to qualifications for employment[72]; wrongfully refused to permit inspection by Plaintiff of the records concerning water production and treatment, and records of his time supposedly spent working for the HCSD; wrongfully, corruptly, and illegally interfered with the lawful authority of Plaintiff to enforce the HCSD Bylaws as well as State and Federal laws concerning operation of the HCSD; failed to use the "creek diversion" of the HCSD and associated water rights, thus jeopardizing those rights; and, failed to read the meters of the HCSD so due and proper fees would be collected. Defendants Hanson, Goff, and Winston aided, directed, and encouraged Dingman in this conduct, and were granted access to HCSD facilities and records by Dingman.

56. On or about September 27, 2014, Dingman caused the Chlorine levels in the drinking water system of the HCSD to rise to a level of over 6.0 mg/L. The maximum Chlorine levels permitted by law in California is 4.0 mg/L. Also in violation of law, no report concerning the elevated Chlorine levels was made by Dingman, Goff, or the Board Defendants to the public, or the State. Because of the failure by Dingman to properly administer the water treatment operations , and failed to warn water consumers as to the Chlorine levels as required by law, persons within the District, including Plaintiff, consumed highly chlorinated water, and suffered gastric distress. Each of these events and actions by these Defendants was a violation of the Maximum Contaminant Level protocols (and primary drinking water standards) established by the Safe Drinking Water Act, and California's statutory implementation thereof[73].

---

[71] This included threats to call the Siskiyou County Sheriff and FBI to "trespass", and to file false reports against Plaintiff.

[72] Dingman, in operating the water production, treatment, and distribution facilities without proper certifications by the State of California, was acting in violation of Health and Safety Code sections §§106885, 106877, 106878, 106878(b), 106885, and 116555,, and 22 California Code of Regulations sections 63765 and 63770. His violations of the HCSD Bylaws is also a misdemeanor pursuant to California Government Code 61064(a).

[73] The State of California has set a "maximum contaminant level" ("MCL") for Chlorine of 4.0 mg/L. See 22 CCR §64533.5. Over this level, the responsible agency is supposed to notify the public, and the State, of the over-Chlorination due to potential gastrointestinal and other medical harm to vulnerable persons.

57. On February 15, 2015, Dingman wrongfully impeded, and denied access to the water treatment plant, wellheads, and distribution facilities of the HCSD to Director Roger Gifford, and refused to provide Gifford with logs and information concerning operation of the water production works. Dingman threatened to "arrest" Gifford if Gifford attempted entry to the water plant and records, and thus deprived Plaintiff of the representation and exercise of lawful powers of, and the honest services of, her elected representative.

58. On February 15, 2015, Dingman, with Defendant Hanson, and members of Hanson's family, destroyed a large tree on HCSD property with an approximate value of $15,000.00. While Hanson, et al were destroying the tree, Director Gifford, present to supervise Dingman, and to inspect water records[74], attempted to document the destruction, whereupon Hanson and members of her family attacked Gifford, with Dingman's encouragement and acquiescence.

59. Dingman fraudulently billed for, and as a result wrongfully received payment for, hours which he did not actually work, and/or for which he had already been paid, or for hours and rate of pay in excess of his contract terms[75], all also in violation of the California False Claims Act, and such wrongfully-received payments are also gifts of public funds[76].

60. On October 7th, 2015, Dingman negligently caused the pump in Well #4 of the HCSD system to overload and fail. Olson, as Secretary, the next day posted notices throughout Hornbrook concerning the main well being out of service, and requesting residents to conserve water, but Dingman and Hanson agreed and acted to wrongfully remove those notices[77]. As a result of Dingman's destruction of the pump in Well #4, Dingman began over-pumping other wells, damaging them. These facts were known to Dingman and the Board Defendants by reports of a civil engineer concerning well capacity, and the threat of overuse of the wells.

61. Dingman's wrongful, illegal operation of the water production, treatment, and

---

See also Health and Safety Code §116670; "Anything done, maintained, or suffered as a result of failure to comply with any primary drinking water standard is a public nuisance dangerous to health, and may be enjoined or summarily abated in the manner provided by law. Every public officer or body lawfully empowered to do so shall abate the nuisance immediately."

[74] Dingman again wrongfully refused to permit Gifford to supervise him, allow access to the water plant, or to allow Gifford to inspect the logs concerning the water flow rates, production, treatment, and testing results. Gifford failed to take any action to correct Dingman's wrongful acts.

[75] Cal. Const., Art. IV, § 17.

[76] Cal. Const., Art. XVI, § 6; Govt. Code §8314.

[77] Dingman also wrongfully charged the HCSD on his "timesheet" for hours spent tearing down Plaintiff's notices posted in her official capacity as Secretary in an attempt to suppress Plaintiff's free speech rights in her official and individual capacities, none of which is part of Dingman's job duties.

distribution facilities of the HCSD[78] as set forth, in conspiracy with, and at the behest of the Board Defendants, and/or Goff, has been willfully negligent, unlawful, and a nuisance *per se*[79].

## XIV. DEFENDANT ERNEST GOFF.

62. At all times material, Defendant Ernest Goff ("Goff") was a purported "independent contractor" employed as the Chief Operator and/or Operator of Record for the HCSD's water production, treatment, and distribution systems, via his solely-owned alter ego, "CR Water Treatment, Inc.[80]", an agent of the HCSD and Board Defendants, and direct supervisor of Dingman. Goff is a citizen of Lake County. Goff has consistently failed to actually perform the duties of the "Chief Operator" of the HCSD's public water system as set forth in state law and the Bylaws, and thus failed to conform his conduct to that required by Federal and State law in regards to operation of the HCSD water production, treatment, and distribution facilities[81], resulting in frequent and recurring violations of federal and state drinking water standards. The HCSD, each Director thereof, each property owner, elector, and water customer of the District, and Plaintiff, relied upon Goff's representations concerning his competency, qualifications, and legal operation of the HCSD facilities.

63. In addition to participating in, and assisting in that conduct set forth in Sections IV and V above, Goff, in purportedly acting as the "Chief Operator" and "Operator of Record" for the water treatment facilities of HCSD, was a public officer of the HCSD, and had a duty to regularly inspect, oversee, supervise, perform, and directly control the daily operation of the water production wells, treatment plant, and distribution system as provided by Federal and State laws, and the HCSD Bylaws. Goff failed to do so by never actually being "on site", instead purporting to exert controls and authority via telephone, so claiming falsely and fraudulently that he was in fact exercising daily supervision over Dingman, and in daily direct control of the water production, treatment, and distribution system of the HCSD in order to wrongfully collect payments from the HCSD, when the truth was he was not in such control of the facilities, or supervising Dingman. Additionally, the position of Chief Operator is classified as an employee

---

[78] See 22 California Code of Regulations §§63765, and 63770; California Health and Safety Code §§106877, 106878, 106878(b), and 106885;.

[79] See Civil Code section 3479; Code of Civil Procedure §731; Health and Safety Code §116670.

[80] A LLC registered with the CA Secretary of State as entity #C2968976.

[81] See, e.g., Federal Clean Water Act (33 USC §§1251, et seq), and Safe Drinking Water Act (42 USC 300f, *et seq*); State of California laws implementing same (e.g. Health and Safety Code Sections 116270 et seq, 116375, 116385, 116395, §§106877, 106878, 106878(b), and 106885; California Code of Regulations Title 22, Sections 63765, and 63770, etc).

position by the California Department of Labor, but Goff agreed, conspired, and acted jointly with the Board Defendants, Dingman, and Bowles, to falsely claim "independent contractor" status so that he, and the HCSD, could avoid proper payment of various taxes, workers compensation insurance, and other charges that would normally be lawfully due as a result of his hire[82]. These frauds and failures constitute unfair business practices under California's Unfair Competition Law ("UCL"). During this time, Goff was aware of, agreed to, aided, abetted, and ratified the conduct of the Board Defendants and Dingman as set forth in their respective sections, and did so to further the common purpose of operating the HCSD in violation of the laws, and the Bylaws for the personal gain of these Defendants with reckless disregard for potential harm to the health and safety of the public, and/or of Plaintiff. Goff also failed to obtain the proper certifications for Dingman and/or for the water treatment facilities of the HCSD from the State of California relating to drinking water treatment which would allow operation of the HCSD's water system from its main appropriative right water source, Rancheria Creek, and instead instructed Dingman to improperly and constantly draw the HCSD's water supply from the three operational HCSD wells in a manner contrary to the recommendations of the engineer who installed and certified the wells, causing over pumping, increasing costs, poor water quality, and potentially damaging the aquifers thereof.

64. Goff additionally agreed to, assisted, aided, abetted, and acted in concert with the Board Defendants, Bowles, and Dingman to: extract improper payments from the HCSD for services he did not provide and/or for which he was not otherwise entitled to by contract; create and distribute false public documents and reports to state enforcement agencies concerning the operation of the HCSD and its facilities; operate, and allow the operation of the HCSD and its facilities in a manner that was unsafe and contrary to law, and so causing a nuisance *per se* to Plaintiff and the public; wrongfully prevent inspections and oversight of the HCSD facilities and associated on-site documents and records by Plaintiff in her official capacity while allowing such access by the Board Defendants and Dingman; and, hinder, interfere with, and thwart Plaintiff's exercise, and attempts to exercise, Constitutional and statutory powers and duties as Director and Secretary - including voting on issues before the Board concerning Goff and the operation of the HCSD's water facilities, and specifically inclusive of preventing Plaintiff from exercising any of her Constitutional and statutory rights pertaining to such votes, and facilities. Goff also ratified acts of those other Defendants made in furtherance of those agreements and wrongful goals.

---

[82] Additionally, Goff did so without having any business license issued by the County of Siskiyou.

65. In furtherance of the conspiracy with the Board Defendants, Dingman, and Winston to operate the HCSD in violation of the laws and Bylaws, and in order to prevent Plaintiff from assuring compliance with the laws and Bylaws via inspections or other exercises of her powers and duties as Director of the HCSD[83], Goff agreed with, aided, abetted, and assisted the Board Defendants, upon the instruction of Winston, to wrongfully indemnify Goff regarding investigations and legal actions by Plaintiff outside of lawful meetings. The indemnifications were sought by Goff, approved *ultra vires* by Hanson, and then ratified by the other Board Defendants[84] in order to interfere with and thwart the exercise of the powers and duties of Plaintiff as provided by law, and the HCSD Bylaws: to supervise the operations of the water systems by Goff and Dingman; to hold them accountable for wrongdoing; to make them comply with state and federal laws concerning water quality and safety; and, to bring administrative and legal actions as necessary to correct their nonfeasance and malfeasance. As a public officer of the HCSD, Goff had a fiduciary duty to the District, and was required to abide by all laws and the Bylaws concerning the operation, proper maintenance, and upgrading, of the HCSD and its water production, treatment, and distribution facilities, but failed to do so during the times material to the complaint, and as set forth in Sections IV and V, above. Furthermore, Goff failed to supervise the actions of Dingman in the lawful and proper operation of the treatment and distribution facilities, and instead, with the assistance, aid, affirmation, and ratification of the Board Defendants, instructed Dingman to illegally and improperly[85] assert dominion and control over the water production, treatment, and distribution systems of the HCSD - even to the extent of instructing and assisting Dingman to exclude Plaintiff, and her elected Representative, Roger Gifford, from inspecting the facilities at any point[86]. Goff also agreed with, aided, abetted, participated in, and/or ratified, that wrongful conduct by the other Defendants involving the operation of the HCSD water facilities as set forth in the Sections dealing with Hanson, Brown, Gifford, Barnes, and Dingman, and those allegations are incorporated at this point as if fully set

---

[83] This included Goff's instructions to Dingman to refuse to permit Plaintiff access to HCSD facilities and records in the same manner that was granted to Hanson, Brown, and/or Barnes, and thus also failed and refused to accommodate Plaintiff's equal access to HCSD facilities and records pursuant to the ADA.

[84] Except in Siskiyou Superior Court case #SCCVPT 15-0044, wherein Winston began representing Goff without any appointment or ratification <u>by anyone at all</u>. Winston billed the HCSD for the representation.

[85] See California Code of Regulations Title 22, Sections 63770(b)(5), 63770(c)(1)-(2), 63770(d)(1)-(2).

[86] Plaintiff asserts that lack of ADA accommodation, and outright obstruction of her access to the HCSD facilities also implicates violation of her liberty interests, both individually, and as a Director/Legislator of the HCSD, and that this violation was achieved by Defendants Dingman and Goff without any due process, or legitimate authority, and in direct conflict with the HCSD Bylaws at Sections A-3(7-8).

forth to the extent he is mentioned therein.

**XV. DEFENDANT HORNBROOK COMMUNITY BIBLE CHURCH, INC.**

66. Defendant Hornbrook Community Bible Church, Inc. ("HCBC" or "the Church") was a corporation, doing business, and located, within Siskiyou County California, and receiving water service from the HCSD. The HCBC operations are considered as a type of "commercial". The HCBC, via its agent Steven Crittenden, conspired with, by *ex parte* meetings and other corrupt[87] conduct with the Board Defendants, and Bowles, to obtain improper gifts of public funds[88], beginning on or about March 04, 2015, in the form of wrongfully, improperly, and illegally reduced and/or waived water rates, fees, and charges.

67. The HCBC received its sought gift of public funds, and benefited therefrom through at least December 3, 2015. Plaintiff incorporates the relevant information concerning zoning, fees, and charges to the HCBC, found in the following section relating to Defendant Crittenden. Plaintiff does not seek any personal or exemplary damages against the HCBC, but only the recoupment of gifted and/or wasted public funds to the benefit of the HCSD treasury, and an injunction prohibiting such wrongful gifts and waste henceforth.

**XVI. DEFENDANT STEVEN CRITTENDEN.**

68. Defendant Steven Crittenden ("Crittenden") was a resident of Hornbrook, Siskiyou County, California and a citizen thereof, a resident of the HCSD, and maintains a rental within the boundaries of the HCSD[89]. Crittenden is alleged on information and belief to be an employee, agent, and/or Board member of Defendant HCBC, and was acting on HCBC's behalf. Crittenden engaged in improper, *ex parte* "spoke and wheel", "daisy chain" meetings, and other wrongful, corrupt, conduct with Defendant Hanson[90], in order to agree and act in conjunction with her to obtain legally impermissible gifts of public funds to the benefit of the HCBC, and himself, in the form of illegally and wrongfully reduced and/or waived water rates, fees, and charges beginning in September of 2014.

---

[87] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

[88] Wrongful gifts of public funds are also a "waste" thereof as defined by Code of Civil Procedure §526a.

[89] Crittenden, although noticed by the HCSD to do so, failed and refused to comply with the HCSD Bylaws, as well as Government Code 61100 and Water Code 71618, by not putting the account of his rental into his own name after prior tenants left a past due bill.

[90] All of which deprived Plaintiff of her Federal First and Fourteenth Amendment rights (as well as Article 1, Sec.2 of the California Constitution) to free speech, access to government and the right to petition, equal protection of the laws, and her right to vote, all without due process, by deliberately excluding her from said meetings and official business, by failing to publicly notice said meetings, and/or to give any notice to her as a member of the Board and elected official of such meetings.

69. Beginning in about August of 2014, Crittenden and HCBC agreed, acted, and did, engage in improper *ex-parte* contact with Defendant Hanson, and, outside of any publicly-noticed and agendized meetings of the HCSD Board, improperly, illegally, and corruptly, influenced Hanson, and the other Board Defendants, and Defendant Bowles (via false billing), to violate laws of the State of California[91], and the HCSD Bylaws[92], by granting gifts of public funds to himself, and the HCBC in the form of greatly reduced water fees, waiver of water fees, and waiver of late charges and other fees in perpetuity; all without the required voter approval, and accomplished in a manner calculated by Crittenden, the Board Defendants, Bowles, and the HCBC to interfere with and thwart plaintiff's exercise of her Constitutional and statutory rights to free speech, petition, and right to vote in both her official and individual capacities.

70. The HCBC Church is a large building on commercial use[93] property with high water consumption, and falls under Tier 2 of the water rates listed by the HCSD in the Bylaws of April 18, 2014[94] ($225.00/mo). Additionally, there is a "parsonage" - which is a separate residence, on the property (rate set at $45.00/mo).

71. As a result of the conspiracy of Crittenden, Hanson, Bowles, and the HCBC, the HCSD and Board Defendants on or about March 4, 2015, wrongfully reduced the entire charge for the HCBC property to a single-residence residential fee per month (or less), and erased all of the past due, regular, proper rates and penalties associated with the HCBC's failure to timely pay its water bills. Notice of the March 04, 2015 meeting was never provided to Plaintiff as required by law, no vote of the electors concerning these waivers was had as required by the Bylaws, and no agenda for the HCSD was ever created and posted concerning notice of any such fee waivers.

72. Crittenden also, beginning about August of 2014, and continuing through December 3, 2015, corruptly conspired with, and influenced Hanson, and Bowles, to arrange for (and for official billings to reflect) wrongfully reduced, and/or waived water and other fees for his home, his rental house, for improper "refunds" of fees, and to wrongfully keep the account for his rental in the name of his tenants in violation of the HCSD Bylaws at §A-9(14), and <u>Water Code</u> section 71618; all in a manner to deprive Plaintiff of her right to vote thereon as a Director and elector.

---

[91] Cal. Const., Art. XVI, section 6; Government Code section 8314.
[92] See HCSD Bylaws, Sections A-2(11), A-9(1), 1-5.010, 1-5.030 [pp.27-28].
[93] The Siskiyou County Code requires "Rural Neighborhood Commercial" (C-R), or "Neighborhood Commercial" (C-U) zoning for churches at Title 10, Chapt. 6, Art. 41.
[94] The sections of the Bylaws dealing with rates and charges, and a prohibition on the Board and/or its members waiving fees and charges, are parts of the Bylaws which cannot be amended without voter approval. See Bylaws, pp. 10, Section A-9(1); 28, Section 1-5.030.

73. Action against Crittenden, HCBC, Bowles, and the Board Defendants, is brought also under California Code of Civil Procedure Sections 526a, 1021.5, and 1084-85.

**XVII. DEFENDANT BASIC LABORATORY, INC. (former John Doe #2).**

74. At all times material, Defendant Basic Labs was an independent contractor to, and agent of, the HCSD and Defendant Hanson, located in Redding, California, but also doing business pursuant to contract with the HCSD (and otherwise) within Siskiyou County, but without any valid, county-issued business license to do so.

75. On or about October 2, 2015, Defendant Basic labs submitted a wrongful and false claim to the HCSD Board for "water testing", invoice #1509553 in the amount of $3,592.00, which contained billing for alleged sampling and testing of four HCSD drinking water sources[95]. The purported sampling and testing was done without notice to the HCSD (nor to Plaintiff as a Board member thereof), and without any valid contract, prior permission, written authorization, action taken by, nor approval made by, the HCSD Board. When Plaintiff contacted Basic Labs in her official capacity to demand documentation and information concerning the charges, Basic labs, as part of a agreed upon, concerted plan with Hanson, refused to provide proof of the work allegedly done, any valid contract, any record of communications and approvals with any HCSD officer or agent concerning the alleged services, or any authorization for the testing it billed for from the HCSD Board. Moreover, Basic Labs communicated *ex parte* with Hanson for the purpose of reaching an agreement with Hanson to wrongfully: have Hanson and Winston create false, purportedly "official" documents and records of the HCSD without any official authorization from, and outside of lawful meetings of the Board and/or in compliance with Government Code §61045, that purportedly permitted Basic Labs to undertake, and be paid for, the water sampling and testing that formed the basis for its Invoice #1509553; refuse to speak with Plaintiff, or to substantially respond to her inquiries concerning the "testing", charges, billing, purported contracts, and its contact with other HCSD Board members, until such time as Plaintiff's term of office ended, and the "new Board", comprised of Hanson sympathizers, could take office[96]; and, reach an agreement with Hanson and the "new Board" members that once the

---

[95] This included three wells, and the seasonal creek feeding the HCSD water plant. The charge for the creek was false due to the fact that at the time of the alleged testing (late summer), the creek was dry, there was no contract, approval, or supervision by the HCSD of any such testing, and the testing didn't occur as billed.

[96] All of these acts also constituted an attempt to interfere, and actual interference with, Plaintiff's exercise of her Constitutional and statutory rights as a public officer and an individual, as well as her powers and duties of office.

"new Board" took office, all payments requested by Basic Labs would be made without any question or review. Hanson also communicated with Winston concerning these events in order to elicit his aid, agreement, and cooperation in the scheme, since Hanson knew (and communicated to Basic Labs) that Winston would continue on as "counsel" to the HCSD and herself concerning the various pending matters they had engendered during Hanson's term of office, and that Winston would create documents, resolutions, approvals, and other things to ratify and "legitimize" the various improper agreements with Basic Labs, including the "backdating" of any records, contracts, or agreements as necessary to carry out the plans. On information and belief, Plaintiff alleges that Basic labs also communicated and collaborated with Winston concerning these events and plans.

76. Defendant Dingman agreed with, collaborated with, aided, and abetted Basic Labs in its false claims as contained on the invoice, and demand for money, by agreeing to, and then falsely stating, the he had granted Basic Labs employees access to HCSD facilities for testing, and authorized and assisted them in performing the tests, when the truth was none of those things occurred. Defendant Hanson agreed with, aided, and abetted Basic Labs by *ex post facto*, and *ultra vires* creating a false authorization for testing and sampling of the HCSD system, which she placed into public records of the HCSD, prior to December 3, 2015. Hanson did so outside of lawful process, any public meeting of the HCSD Board, without lawful authority to do so, and without notice to Plaintiff.

77. In addition to other torts and wrongs identified in the forgoing paragraphs, the monies wrongfully and/or falsely charged and billed to the HCSD, and/or actually received by Basic Labs are wrongful payments constituting waste of public funds as contemplated by Code of Civil Procedure Sections 526a, a fraud on the public fisc of the HCSD, were generated, made, demanded, and paid in violation of the HCSD Bylaws, and also constitute "false claims" pursuant to the California False Claims Act.

**XVIII. DEFENDANT DUKE MARTIN (former John Doe #3.**

78. At all times material, Defendant Duke Martin ("Martin") was a resident of Siskiyou County, a water customer of the HCSD (and subject to its Bylaws), and owned and operated commercially-zoned property within the HCSD (upon which also sits a rental house, and occupied fifth-wheel travel trailer), as well as an adjoining property containing a rental house.

79. Martin received water services from the HCSD to his commercial property, the rental house thereon, the fifth wheel, and the adjoining property. Martin had caused the tenants in both rental houses to put the water bills in their own names, and while the rental unit on the

commercial property was current, no fee was being paid for the fifth wheel as required by the HCSD Bylaws ($45.00 per month), while Martin refused to pay the commercial property charges ($225.00 per month) assessed against him by the HCSD. The second parcel with the rental had a late owing account totaling about $500 as of June 2014. The HCSD had noticed the renter on the second, residential property of the overdue account, and, "locked out" the meter in May of 2014. Such action triggered the duty by Martin to pay the bill to his rental property to reestablish service thereto, and place the account for the residence into his own name pursuant to the Bylaws at Section A-9(14), and <u>Water Code</u> section 71618. Martin was noticed of that duty, of his past due charges, and of the intent of the HCSD to lien his property by Plaintiff as Secretary.

80. In June of 2014, Defendant Martin wrongfully and *ex parte* corruptly influenced, and collaborated with, Defendants Hanson and Bowles to have all his water fees reduced from the commercial rate to the residential rate (or less), and all of his duly owed past due fees and charges (totaling some thousands of dollars) erased - all outside of any public meeting of the HCSD BOD, or any notification to the public, or to Plaintiff, who opposed all such waivers. These acts by Martin, Bowles, and Hanson deliberately interfered with Plaintiff's statutory and Constitutional rights to participate as a Director in the operation and function of the HCSD, to execute her authority and duties, to prevent corrupt acts, and to vote, as Secretary and an elector, on changes to fees and charges, as well as any proposed waivers as provided by law and the Bylaws. Hanson and Bowles thereafter, in furtherance of the wrongful common goal that Martin should not pay his due fees, charges, and other due amounts, denied Plaintiff any access to the billing and payment records, and wrongfully destroyed public records of their acts[97].

**<u>XIX. DEFENDANT KIRSHER, WINSTON, & BOSTON, L.C. (former John Doe #4).</u>**

81. Defendant Kirsher, Winston, & Boston, L.C. ("KWB" hereinafter) was a corporation in California, an independent contractor, employee, and agent of the Board Defendants, Bowles, Dingman, and Goff, and wrongfully sanctioned, ratified, aided, and abetted those individuals, along with Defendant Winston, in conspiring to, and acting to, plan and complete the wrongful conduct set forth in this Complaint, particularly the violations of the Brown Act and Government Code 1090, and as more particularly set forth in the section below dealing with Robert Winston. Defendant Winston was the Secretary and Treasurer of this corporation, and exerted control and dominion over it as to the acts set forth herein, and was acting within the scope of his

[97] All of these acts also constituted an attempt to interfere, and actual interference with, Plaintiff's exercise of, her powers and duties of office, and of her Constitutional and statutory rights.

employment with the firm[98], and also as to the HCSD and Hanson.

82. It is the policy, custom, and practice of this firm, acting under the direction and control of Defendant Winston, and otherwise, to fail to properly train, or supervise; and, to permit the attorneys working for it to engage in acts that violate the laws (as to Business and Professions Code sections 6068, and as set forth in the sections of this complaint dealing with Defendant Winston, and other sections relating to conduct by other Defendants involving Winston), the constitutional rights of its opponents, and the Rules of Professional Conduct, thus also engaging in unfair business practices.

**XX. DEFENDANT ROBERT WINSTON.**

83. Defendant Robert Winston is a citizen of Siskiyou County, California, an attorney with Defendant law firm "Kirsher, Winston & Boston L.C." as well as being the Secretary/Treasurer thereof[99], and an agent of the Board Defendants, Bowles, Dingman, Goff, and HCSD - who, beginning on or about June 17, 2014, through December 3, 2015[100] agreed to, and actually did, knowingly, and corruptly[101], agree with, direct, assist, aid, abet, and fail to take affirmative action to prevent or cure, the HCSD's (and thus the Board Defendants') acts in violating the HCSD Bylaws, Brown Act, the Political Reform Act, Government Code §1090, the SDWA, the CWA, the Health and Safety Code, Labor Code, Water Code, Government Code §61000 *et seq*, and in chilling, and violating Plaintiff's statutory and Constitutional rights, all as set forth herein, and in those sections detailing each Defendant's conduct which specifically mention Winston's involvement.

84. Plaintiff is informed and believes that Winston knew the wrongful purpose, intent, and goals concerning the acts of himself and his co-Defendants, agreed to assist them in accomplishing their wrongful goals and plans, and (as to the Board Defendants) sought to have them wrongfully delegate their legislative authority to him. During the times material to this complaint, Winston also thus engaged in unprofessional conduct contrary to the provisions of

---

[98] See also *Hutchison v. Brookshire Brothers, Ltd.*, 284 F.Supp.2d 459,472, 473 (E.D.Texas 2003); *Cortlessa v. County of Chester*, No. Civ.A. 04-1039, 2006 WL 1490145, at *3, *4 (E.D. Pa. May 24, 2006) for discussion as to entity liability on respondent superior basis.

[99] Winston, as an officer of the law corporation, created, promulgated, imposed, and enforced its contracts, policies, customs, and practices - which were whatever Winston wanted to do, and how.

[100] At no time during this period was Winston ever "general counsel" for the HCSD

[101] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)

Business and Professions Code, at §§6067, 6068[102], and 6104[103], an unfair business practice per Bus. & Prof. Code §17200, *et seq*.

85. When the HCSD's bank accounts were closed by the bank in June of 2014, Winston and Hanson agreed and acted to illegally hold meetings and plan action to remove Plaintiff from her authority and office as Secretary and Director of the HCSD, and to then have Winston send threatening email to Plaintiff, stating that she had been removed from her position as Secretary of the Board of Directors of the HCSD, and was in "personal jeopardy", while any failure to turn the bank's cashier's checks (which were made out to the HCSD) over to Winston or Hanson would result in "swift and serious" consequences against Plaintiff[104].

86. Beginning in early June of 2014, Winston and the Board Defendants agreed to, and thereafter cooperatively engaged in, a series of non-public meetings, held by telephone, email, letter, in Winston's Yreka office, and other places outside of the District boundaries, and all otherwise in violation of the Brown Act and/or Government Code §61045, to purportedly hire Winston to wrongfully engage in suits against other Board members of the HCSD, including Plaintiff, for petitioning the courts and government agencies. The suits are not State causes of action herein, but circumstance of their initiation, the planning therefore, the creation of the false allegations, the various documents and acts relating thereto prior to the suits, and the use of suits as an element of intimidation and retaliation against Plaintiff for protected conduct, are.

87. The circumstances of the undertaking of these suits, and/or "self assigning" to

---

[102] Additionally, in violation of section 6104, and in furtherance of the conspiracy(s) with the Board Defendants, Winston appeared, purportedly on behalf of the HCSD at the instruction of Defendant Hanson, but without any actual appointment by the Board, in multiple legal proceedings in the Siskiyou County Superior Court (i.e. #SCCVPT 15-0982, and #SCCVPT 15-0847, etc), as well as actions pending before the Third District Court of Appeals of California (i.e. #C078371, and # C079103), and wrongfully billed the HCSD for such unapproved "services" - specifically including a private legal matter of Hanson's. Plaintiff does not intend to state any personal state law, or pendent tort-based cause of action based on Winston and/or KWB's actual participation in any legal proceedings, but does claim that such are evidence of violations of Bus. & Prof. Code §6104, and §17200, *et seq*. Moreover, as to Plaintiff's State claims, no personal damages are sought by Plaintiff against KWB or Winston, and Plaintiff instead seeks ***only*** disgorgement of all wrongfully billed and/or collected fees by these defendants to the benefit of the public fisc of the HCSD (along with appropriate declaratory and/or injunctive relief to the benefit of herself and to the public equally).

[103] Plaintiff does not bring any cause of action for these violations directly, but does so as a violation of Business and Professions Code §17200, *et seq* in order to seek injunctive relief, and return of funds.

[104] All of these acts also constituted an attempt to interfere, and actual interference with, Plaintiff's exercise of, her powers and duties of office, and of her Constitutional and statutory rights of as a public officer and an individual - and achieved via the use of threats of violence, and other intimidation.

administrative[105] or legal matters pursuant to improper contracting activities by Winston, Hanson, and Brown also violated the conflict of interest provisions of Government Code §1090, and other State laws, so such contracts are void and unenforceable, while any monies accumulated by Winston or his law firm arising from those contracts must be returned to the public fisc.

88. Winston and Hanson agreed and acted to improperly, wrongfully, corruptly, and unethically "indemnify" the Board Defendants[106] from various legal actions, and simultaneously grant Winston purportive authority to jointly represent the Board Defendants, and/or the HCSD itself, for Winston to "self-assign" to cases, and to assume various improper (Legislative) authority in contradiction of the requirements of Govt. Code §61045 and without prior action of the Board of the HCSD, instead often relying on *ultra vires* action by Hanson alone.

89. Winston thereafter specifically agreed and acted with Hanson and Brown to engage in bad faith, expensive, pointless legal bickering over CPRA and Brown Act cases in order to attempt to harm Plaintiff, and to divert huge amounts of HCSD funds to him and his law office without any corresponding benefit to the HCSD or the public in doing so. Winston created and submitted to Hanson multiple contracts concerning this activity which were approved by her, and then falsified as public records, or for which votes were falsified and false records created, or which were improperly submitted and debated in non-public meetings, or in closed sessions, all held in violation of the Brown Act.

90. On information and belief, Winston agreed to, ratified, and acted in furtherance of the conspiracy with the Board Defendants, HCSD, Bowles, Goff, and Dingman to violate the laws, Bylaws, and Rules as aforesaid by wrongfully engaging in *ex parte*, "daisy-chain", and

---

[105] That is, in furtherance of the various improper, wrongful, and/or illegal plans, goals and acts of the Board and Public Officer Defendants, Winston would often create motions, resolutions, contracts, waivers, findings, and other documents for the use of Hanson and others, outside of any lawful Board requests, action, permission, nor pursuant to any agreement to do so, then charge the HCSD for such self-created "services". Winston specifically created a large packet of such items in furtherance of the plan between Hanson and Basic Labs to secure payment to Basic Labs of the false and fraudulent invoice #1509553 in the amount of $3,592.00, and to "hand off" various plans and goals of Hanson and Winston to Hanson sympathizers when Hanson's term of office ended so that they might be wrongfully "reaffirmed" thereby, and so ratify, and continue those wrongful plans and acts of Winston and Hanson.

[106] The Board Defendants never submitted any written request to the HCSD for indemnification, never held a noticed public hearing concerning their indemnifications (instead acting during secret meetings, or simply on the individual authority of Hanson in conspiracy with Winston to circumvent all lawful processes), permitting only themselves to be indemnified in any legal actions, and each subsequent purported appointment(s) of Winston (either on Hanson's *ultra vires* say-so, or Winston's unlawful "self-appointment") to HCSD-related events and actions, thus depriving Plaintiff of her rights to vote as a Legislator on those issues, and individually as an elector of the District as provided in the Bylaws.

"spoke and wheel" contacts with the Board Defendants in order to: instruct the Board Defendants when to hold non-, incompletely, and improperly-noticed "Board meetings"[107]; what to place on agendas (and what not to place on agendas, and/or discuss at public meetings); what actions the Board Defendants should actually take at meetings (inclusive of those actions inimical to Plaintiff, and Plaintiff's offices of Secretary and/or Director of the Board of the HCSD; by (without authorization by the HCSD Board made in compliance with Govt. Code §61045) drafting and/or "ghostwriting" proposed motions, findings, resolutions, Bylaws, notices, letters, invoices, demands, contracts, agreements, and other documents for use at those improperly-held meetings[108] and at other times - all under color of law of the Board Defendants' offices; by failing to provide proper, complete, and timely billing statements for services allegedly rendered to the HCSD and/or certain Directors of the HCSD[109] when asked in order to wrongfully conceal his improper billing and diversion of public funds by Hanson, and/or Bowles; by refusing direct instructions from Directors Olson and Gifford for copies of purported contracts between Winston and the HCSD and/or the Board Defendants, as well as billing records associated therewith while providing those records to other directors and HCSD employees; by arranging for, and holding, private, illegal meetings[110] with the Board Defendants, Defendant Bowles, Defendant Goff, and/or Defendant Dingman at his Yreka office, and other places, and by telephone and email, for the purpose of advancing the wrongful goals of the conspiracy; to wrongfully exclude the public (and Plaintiff), as well as Director Gifford (Plaintiff's elected Representative) from what should have been publicly-noticed and agendized meetings concerning agreements and planned action relating to public business of the HCSD; and, to intimidate, harass, annoy, interfere with, impede, and coerce Plaintiff into abandoning, statutory and constitutional rights in her attempts to report to governmental agencies, and stand against, wrongful acts of the Defendants.

91. On June 25, 2014, Winston sent an (officially unauthorized) email on behalf of Hanson, Brown, and Barnes, threatening Olson with "physical jeopardy", and that action against her would be "swift and sure" unless Winston received checks belonging to the HCSD which

---

[107] And how to avoid giving adequate and timely notice of the meetings to Plaintiff and Director Gifford.
[108] The (thus far) known dates of these meetings are set forth in paragraph 25 of this complaint.
[109] Plaintiff's Legislative Representatives on the HCSD Board, Directors Sharrel Barnes and Roger Gifford - as well as Plaintiff herself. Such refusals also violate the CPRA.
[110] Insofar as those involving the Board Defendants, in violation of the Brown Act, conflict of interest laws, and the HCSD Bylaws.

Plaintiff had in her possession, or unless Plaintiff delivered them to Defendant Hanson[111]. Winston thereafter made good on his threat against Olson by, with the aid, assistance, and ratification of Hanson, by wrongfully and improperly filing (false) legal complaints against Plaintiff without lawful HCSD Board approval made in compliance with the Brown Act and Government Code §61045, and filing false reports of theft and embezzlement with the Siskiyou County Sheriff - all without following the administrative procedures of the HCSD Bylaws.

92. In March of 2015, Winston wrongfully and corruptly agreed, and conspired with Defendant Hanson, to divert $1,500.00 of public District funds to Hanson's personal legal bills in Siskiyou County Court Case #SCSCCVHA 15-204/205/206, and instructed Hanson via email to conceal the diversion of HSCD funds for her private legal matter from the public. Hanson and Winston acted to continue to wrongfully divert funds for that case thereafter.

93. On information and belief, Defendant Winston, during the period of about June 11, 2014, through and including December 3, 2015, agreed to, encouraged, aided, and abetted the Board Defendants, Dingman, Goff, and Bowles in violating Plaintiff's rights by: refusing to provide, concealing, falsifying, and/or destroying public records of the HCSD as to Plaintiff[112] and Plaintiff's elected Representatives when they sought them; drafting, "ghostwriting", and providing language (in the form of dictations, proposed resolutions, letters, email, forms, and telephone communications), to the Board Defendants for uses that were wrongful, improper, illegal, in violation of the Rules of Professional Conduct, state laws, and/or the HCSD Bylaws, including; resolutions, agenda items, "findings", letters, proposed Bylaws, contracts, and other documents actually used by the Board Defendants to commit the wrongful acts relating to public meetings and operation of the HCSD, and to further the joint goal of retaliation against Plaintiff for her complaints (and for assisting others in filing complaints) to the HCSD Board, the courts, and governmental agencies concerning matters of public health, worker safety, and for violations of the Labor Code.

94. Winston agreed with, assisted, aided, abetted, encouraged, and advised the Board Defendants, Dingman, and Goff in operating the HCSD water production, treatment, and

---

[111] This was technically extortion. Plaintiff Olson was a signer on the HCSD's accounts, and required by the HCSD Bylaws and Resolutions to open new bank accounts as necessary with the President. Rather than do so, Hanson and Winston conspired to threaten, and to intimidate and harass Olson - all without lawful authority by the HCSD. Plaintiff has a right to go about official functions free of such acts.

[112] During this same period, Plaintiff made numerous California Public Record Act requests of the HCSD and Hanson relating to the relationship of Winston to Hanson, the HCSD, and to its employees and contractors, as well as payments claimed by and/or made to Winston, among other categories.

distribution facilities in a manner contrary to law; wrongfully committed false personation as counsel for the HCSD[113]; and, violated the Rules of Professional Conduct, including, but not limited to, waivers of conflicts of interest, and improper conduct, as expressed in Rules 3-100 - 3-310, and improper concurrent and serial representation at Rule 3-600(E); all in order to improperly divert public funds from the HCSD to himself[114].

95. Winston, in furtherance of the agreements and conspiracies set forth herein, but only in respect to Co-Defendants Hanson, Brown, Dingman, Goff, and Bowles, acted to threaten, and attempt to extort payments to him and his law firm, from Plaintiff's elected representative, HCSD Vice-President Sharrel Barnes, via email on August 10, 2015, a letter on August 26, 2015, and another email on August 30, 2015, and also sent Barnes another threatening letter on or about December 18, 2017, indicating that Winston would have the Siskiyou County District Attorney bring perjury charges against Barnes for truthfully stating in a declaration that Winston had never been authorized to represent Barnes in Appeals #C07871 and #C079103[115].

96. Winston, on or about June 17, 2014, and continuing through December 3, 2014 further agreed, and conspired with Hanson to wrongfully *ex post facto* (that is, after Winston had already filed papers or otherwise appeared) purportedly approve Winston's intervention in Siskiyou County Court, and the Third District Court of Appeals. Hanson and Winston also sought to improperly delegate Legislative authority to Winston to "self-assessing" to various tasks involving the other Defendants. The goal of this plan was to corruptly divert additional public funds from the HCSD to the benefit of Winston and Hanson, and to further the goal of wrongful actions and retaliation against Plaintiff. The general law of California prohibits a municipality

---

[113] By "false personation as counsel...", Plaintiff is referring to the fact that Winston has acted towards Plaintiff, or with third parties, at times purportedly on behalf of the HCSD, or one or more of its Directors, employees or agents (and outside of any formal court or administrative processes), without lawful authorization to do so. This also means that Winston often billed the HCSD for purported legal work (or "cases") for which he was not appointed, and/or never actually represented the HCSD (including one or more in which he was a co-defendant). While it is true that Winston has also engaged in some, supposedly authorized, court process on behalf of the HCSD and/or the Board Defendants, any actions actually taken in furtherance of litigation are not intended to be the basis for any State causes of action herein, although violations of the provisions of the California Bus. & Prof. Code concerning attorney conduct are certainly evidence of various wrongful acts by Winston. Plaintiff is not, and does not intend to, bring any actions against Winston on the basis of "giving legal advice" or other communicative acts concerning matters in which he had been lawfully retained, or which he presented at any lawful meeting of the HCSD Board, or at any meeting with any individual client of his. Plaintiff does seek injunctive relief to the benefit of the public as appropriate, and return of wrongfully billed funds to the HCSD.

[114] The State Bar's guidelines also provide that fees received by an attorney while that attorney is violating the Rules are inherently excessive, and unconscionable, and thus improper/illegal themselves.

[115] Such a threat violates CalBar Rule 5-100.

(or its Officers) from delegating legislative powers unless expressly authorized by the Legislature (see *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 167), from contracting away, or otherwise delegating its powers (*City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 929) , and/or by trying to circumvent such prohibitions by means of some sort of clever legal contortions. (See 71 Ops.Cal.Atty.Gen. 266, 275 (1988).)

97. Winston had an independent legal duty to Plaintiff, to the residents, property owners, and taxpayers of the District, and to the HCSD, to at all times conform his conduct to the Constitution and laws of the United States and the State of California, as well as the Rules of Professional Conduct, the Brown Act[116], and the HCSD Bylaws, yet he failed to do so.

98. Plaintiff is not pursuing State tort claims or causes of actions (nor any personal damages of any sort) against Winston for any actions taken relating to the actual filing of any pleadings, any actual *lawful* representation of any party in any legal or administrative action, any act or testimony before a tribunal[117], nor as to any other act in furtherance of his First Amendment rights. Thus, as to her State claims and causes of action against Winston, Plaintiff seeks *only* injunctive relief to the benefit of the public, and the HCSD public fisc.

**XXI. MURPHY, PEARSON, BRADLEY & FEENEY, INC. (former John Doe #5).**

99. Defendant Murphy, Pearson, Bradley & Feeney, Inc. ("MPB&F") was a private corporation operating in California, and was acting as an employee and/or agent of the Board Defendants, Bowles, Dingman, and Goff, and improperly aided and abetted those individuals, through, and along with its agent, Defendant Robert Lucas, in conspiring to, and acting to, conduct purportedly official HCSD business at non-public meetings held on or about March and April of 2015 without notice to Plaintiff, or Director Roger Gifford, in violation of the provisions of the Brown Act, the HCSD Bylaws, Government Code §1090, and the Public Records Act.

100. Those illegal and improper meetings between Murphy, Pearson, Bradley & Feeney, Inc., Lucas, the Board Defendants, Bowles, Dingman, and Goff, which occurred prior to their retention for this matter, resulted in the appearance by Lucas in the USDC[118] without any lawful grant of authority by the HCSD that he, and/or MPB& F do so; and, without the express permission of Plaintiff and Roger Gifford as members of the Board, in violation of the Rules of

[116] Insofar as he collaborated *ex parte* with the Board Defendants concerning meetings, the adoption of resolutions and/or contracts relating to himself and his law firm, provided "official" documents to use, etc.

[117] This includes any statements by Winston, or submission by him of documents, occurring at any lawfully-held meeting of the HCSD Board. Those acts may be *evidence* of other claims, however.

[118] MPB&F, via it's agent, Lucas, also then filed a false Declaration concerning service of process attributed to Barnes, but that she did not actually sign.

Professional Conduct 3-600(E), FRCivP 11(a), and Business and Professions Code §§ 6067, 6068, and 6104[119]. MPB&F and its agents also filed false (and in some cases forged) documents concerning service and other matters on behalf of the HCSD, Hanson, Brown, and/or Barnes with the USDC for the Eastern District of California, and billed for that wrongful conduct.

101. Although the Board Defendants purported to have a meeting on May 6, 2015 to lawfully appoint the firm, the law firm was only appointed to the defense of the "district", and not to represent any of the individual defendants, yet it did so anyway, and billed therefor.

102. Plaintiff is not pursuing State tort claims or causes of actions (nor any personal damages of any sort) against MPB&F for any actions taken relating to the actual filing of any pleadings, any actual *lawful* representation of any party in any legal or administrative action, and/or any act or testimony before a tribunal[120]. Thus, as to her State claims and causes of action against MPB&F, Plaintiff seeks *only* injunctive and other relief to the benefit of the public fisc.

**XXII. DEFENDANT ROBERT LUCAS, (former John Doe #6).**

103. At all times material, Defendant Robert Lucas ("Lucas"), was an attorney employed by, and acting as an agent of, Murphy, Pearson, Bradley & Feeney, Inc., as well as an agent of the Board Defendants, Bowles, Goff, Dingman, and the HCSD. Lucas improperly agreed to, and acted, aided and abetted those individuals, in conspiring to, and acting to, engage in the conduct set forth in the foregoing section dealing with Defendant MPB&F, which is incorporated herein.

104. Plaintiff is not pursuing State tort claims or causes of actions (nor any personal damages of any sort) against Lucas for any actions taken relating to the actual filing of any pleadings, any actual *lawful* representation of any party in any legal or administrative action, and/or any act or testimony before a tribunal[121]. Thus, as to her State claims and causes of action against Lucas, Plaintiff seeks *only* injunctive and declaratory relief to the benefit of the HCSD public fisc. Plaintiff also is not, and does not intend to, bring any actions against Lucas on the

---

[119] Such would also constitute a violation of Business and Prof. Code §17200, et seq. Plaintiff seeks no personal damages or recovery from MPB&F for any pendent state statutory or tort-based claims, however, and only seeks public-benefit annulment of improper contracts/acts, and return of wrongfully obtained funds to the HCSD's public fisc. Plaintiff also is not, and does not intend to, bring any pendent claims against MPB&F on the basis of "giving legal advice" or other communicative acts concerning matters in which it had been lawfully retained, or which were presented at any lawful meeting of the HCSD Board, before any court, or at any meeting with any individual client.

[120] This includes any statements by MPB&F, or submission by it of documents, occurring at any lawfully-held meeting of the HCSD Board.

[121] This includes any statements by Lucas, or submission of documents, occurring at any lawfully-held meeting of the HCSD Board, or in any court.

basis of "giving legal advice" or other communicative acts concerning matters in which he had been lawfully retained, or which he presented at any lawful meeting of the HCSD Board.

**XXIII. DEFENDANT KENNETH KING (former John Doe #7).**

105. At all times material, Defendant Kenneth King ("King"), was a citizen of California; was operating as "Inline Fence Construction" in Siskiyou County, and acting as an employee or agent of the Board Defendants, Dingman, and Goff; and, in March of 2015, conspired with each of those Defendants to, and did, aid, and abet those individuals in conducting purportedly official HCSD business outside of any lawful process in violation of the Brown Act, the HCSD Bylaws, and the Public Records Act, concerning expenditure of HCSD funds by the placement of a chain link fence and gate without any Board authorization to do so.

106. King corruptly met, agreed, and conspired with; assisted, encouraged, and influenced Defendant Hanson[122] in violating the Brown Act, Government Code §1090, and the Bylaws of the HCSD for the purpose of wrongfully receiving a "no bid" contract, and of public funds concerning the fence. While placing the fence, King negligently drilled into, and damaged the HCSD distribution system, yet he, Hanson, and Dingman conspired to "cover up" that destruction by failing to report it to Plaintiff, the Board, or Director Gifford, and instead had a local plumber come out and repair the damage at a cost in excess of $500.00[123].

107. While King was installing the fence, he was notified in person, and in writing by Plaintiff and Director Gifford that his conduct in arranging to do so, and the contract concerning it, were legally in question, and to stop work pending review, but King refused to do so.

**XXIV. SPECIFIC COMPLAINTS OF DANGEROUS CONDITIONS, VIOLATIONS OF LAW, AND OTHER WRONGDOING MADE BY PLAINTIFF**

108. Plaintiff, in setting forth herein the wrongful conduct of these Defendants, specifically alleges that in so doing, the Board Defendants, Winston, and Dingman also agreed to, conspired to, aided, encouraged, and abetted each other to, and acted to, intimidate and retaliate against Plaintiff, in her employment and her official public office as Director and/or Secretary, for Plaintiff's, and Plaintiff's assistance to other persons in making, complaints

---

[122] The actions of Hanson as detailed in this section were themselves ratified, encouraged, and aided by Defendant Winston, who told Hanson that no bid was required for the fence project, among other actions.

[123] This destruction, hire of the plumber, and the payment thereof, were all undertaken by Hanson and Dingman without any notice to Plaintiff, or the Board - nor were those events agendized or approved prior to undertaking and/or execution.

regarding matters of personal and public concern[124] to each of:

A) The HCSD Board, and the Board Defendants (as to each subject, on multiple occasions, and ongoingly), concerning: their violations of the Brown Act and HCSD Bylaws by having private meetings as a quorum, for the purpose of discussing public business; specific deficiencies in purported agenda item descriptions and content of agendas for public meetings; and, the failure to properly and timely notice Directors Olson and Gifford (and to provide them with "agenda packets") of meetings called by Hanson and/or the Board Defendants. Plaintiff also complained of various acts by Defendant Hanson to impermissibly exercise administrative authority over the day-to-day operations of the HCSD in a manner contrary to the provisions of Government Code sections 61040(e), 61045, 61050, and 61051 (among others);

B) The California State Department of Health concerning the lack of compliance by the HCSD and the Board Defendants with the Safe Drinking Water Act; the unsafe conditions at the HCSD water treatment facility including excessive buildup of chlorine gas, lack of ventilation, lack of proper (and required by law) record keeping, and unsafe storage of toxic chemicals; the failure by Defendant Clint Dingman, while operating the HCSD wells, water treatment plant, and distribution system, to complete education, training, and certification by the State as required by his contract and the Health and Safety Code; and, the failure by the HCSD and the Board Defendants to properly maintain the water production, treatment, and distribution facilities;

C) The California Department of Industrial Relations (Labor Commissioner) concerning the failure by the HCSD, and Board Defendants, to pay Peter Harrell and Plaintiff for expenses they incurred relating to employment and office with the HCSD, the amount of wages promised Harrell by Directors of the HCSD, or even State minimum wages he was due, and for penalties arising from the failure to pay those minimum wages and expenses;

D) The California Department of Industrial Relations ("Cal-OSHA") concerning the unsafe working conditions at the HCSD water treatment plant, the failure and refusal by the Board Defendants to address them, and the violation of Labor Code section 6310;

E) The California Dept. of Fair Employment and Housing ("DFEH") concerning denial of a workplace free of discrimination and/or retaliation; actual discrimination and retaliation[125]

---

[124] Plaintiff began making and assisting in making, these reports in April of 2014, with the majority completed by June 1, 2014.

[125] At one point, the Board Defendants each made comments to the effect that Plaintiff was unsuited to be a Director of the HCSD due to that Plaintiff wanted everyone in the HCSD to follow all the rules and laws and that the Board Defendants didn't want to follow laws they disagreed with.

practiced in employment by the HCSD and Board Defendants;

F) The United States Equal Employment Opportunity Commission ("EEOC") concerning discrimination and retaliation in employment, and failure to hire and/or promote based upon age, perceived genetic information, sexual orientation, place of origin, and for engaging in protected conduct of filing complaints with governmental agencies and the courts;

G) United States Occupational Safety and Health Administration ("OSHA") concerning violations of worker safety at the HCSD facilities, and retaliation by the Board Defendants.

H) The Siskiyou County Superior Court (in both Plaintiff's individual, and official capacities as a Legislator, Director, and Secretary of the HCSD), as to the conduct of the Board Defendants, and Dingman and Goff regarding violations of law.

I) The California Fair Political Practices Commission concerning violations of the Brown Act, Political Reform Act, Government Code section 1090, and conspiracy to violate those, and other ethics-related laws by the Board Defendants , Winston, and Bowles;

J) The California State Bar concerning the Board Defendants' and Winston's conspiracy to violate the Rules of Professional Conduct, including Rule 3-600(E), and Business and Professions Code section 6104[126];

K) US Dept. Of Labor (Wage and hour Division) Complaint as to the HCSD and the Board Defendants for failure to pay wages properly, and a "whistleblower complaint" for unsafe working conditions, and retaliation in employment for engaging in protected conduct; and,

L) The US EPA, and Cal-EPA concerning the failures by the HCSD, its Directors, contractors, and/or employees (and Puckett as a private citizen) to comply with the Clean Water Act, and Safe Drinking Water Act.

109. Notice of, and a copy of, each of the foregoing complaints made to each agency was provided to the HCSD and the Board Defendants.

110. Once the Board Defendants learned of these complaints, they (with the assistance of Winston), acted in violation of Title 18 USC §1513(e), and public policy by instituting a program to intimidate, coerce, and retaliate against Plaintiff for making them by purportedly removing her from the positions of Director and Secretary of the HCSD. Such retaliation

---

[126] Winston appeared, without any authorization by the Board of Directors of the HCSD, but in conspiracy with Defendant Hanson, in multiple Siskiyou County Court cases, including, but not limited to; #SCCVPT 15-0847, #SCCVPT 15-0982, #SCCVPT 15-1392 , #SCCVPT 15-1393 - as well as some in the Third District Court of Appeals.

violates the Labor Code[127]; the Tom Bane Civil Rights Act ("Bane Act"); the public policy of the United States and State of California, Plaintiff's right to speak and write freely[128], and to petition for redress of grievances - without retaliation for so doing. Plaintiff's offices were thus wrongfully seized absent due process.

*******FIRST CLAIM FOR RELIEF (Federal Counts)*******

111. In making out each of the following "Counts" in this First Claim for Relief against one or more Defendants, Plaintiff, in addition to incorporating the information and factual allegations found in the preceding generalized sections and paragraphs (Sections I-VII, ¶1-29; and, Section XIV, ¶108) , hereby also specifically incorporates those Sections corresponding to each Defendant named *in the specific Count*. For example, if a Count lists "Hanson", then the reader should refer to Section VIII, beginning on page 12 (paragraphs 30-37) for details of her conduct, and other factual allegations, that apply to the Count. If the Count lists the "HCSD", one would refer to Section I, pages 3-4, paragraph 7; and, Section X at page 22 (paragraphs 41-42), and so forth. "Board Defendants" are defined as Hanson, Brown, Gifford, and Barnes at Section II on page 4, so reference in a Count also incorporates each and all of their individual sections. The term "these Defendants" as used in any particular Count, means only the Defendants which are *specifically* named therein, and is not intended to apply to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants, she will state "all Defendants", specifically.

112. The Board Defendants particularly, and all other Defendants, had a duty to perform certain acts under the laws as aforesaid in the sections pertaining to each of them (and generally), and breached those duties while engaging in the conduct set forth herein. If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has asserted any claim for damages, Plaintiff reserves her right to non-monetary relief as provided by law. Plaintiff has been physically, emotionally, economically, and specially harmed by the acts of Defendants. In the event Plaintiff has erroneously requested damages for any claim herein that only allows for declaratory and/or injunctive relief by law, Plaintiff reserves her right to such relief, even if misstated in this complaint.

---

[127] See foregoing citations, and particularly Section 1102.5. Violations of the HCSD Bylaws are a misdemeanor as provided by California Government Code 61064(a).

[128] Both as an individual, and as a public officer.

## I. VIOLATIONS OF RIGHT TO FREEDOM OF SPEECH AND PETITION

113. Plaintiff alleges that the Board Defendants (thus the HCSD), Winston, and Dingman, in acting as set forth above in manners adverse to Plaintiff, did so willfully, with intent to interfere with, impede, coerce Plaintiff into abandoning, and in retaliation for, her exercise of statutory and constitutional rights to speak freely, petition the government, and courts, for redress of grievances[129]; and that in so doing, they violated Plaintiff's First Amendment rights to speak freely (individually, and as a legislator), petition for redress of grievances, and to be free of retaliation.[130] Plaintiff asserts that each discreet illegal meeting held by the Board Defendants and/or any of their agents as aforesaid was itself a violation of her rights to speak freely as a Director and Secretary of the HCSD, as an individual, and as a Legislator; to freely associate with the constituents of the District at purported meetings of the BOD; to petition and be heard (in all her capacities) by the properly-convened HCSD Board, and to vote on HCSD business.

## II. DEPRIVATIONS OF, DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS; UNLAWFUL SEIZURE

114. In conspiring and acting as aforesaid to violate State law and the HCSD Bylaws[131], to censure Plaintiff's protected speech, and to retaliate against her for making it by denying Plaintiff indemnification under Govt. Code 995, the HCSD and Board Defendants, with the agreement, cooperation, assistance, aid, and ratification of Winston, Bowles, Dingman, and Goff, violated California and Federal laws relating to proper notice, confrontation, and due process at administrative hearings for employees, and/or as provided by the Bylaws at Section A-4(3), as Plaintiff was arbitrarily treated differently, and more adversely, than other directors and employees of the HCSD who sought and obtained indemnification and defense from the HCSD.

115. These deprivations resulted in substantial harms to Plaintiff, and were an unlawful impedance and interference with her rights and duties as Director and/or Secretary of the HCSD.

## Count -III. DEPRIVATION OF RIGHT TO VOTE AS A LEGISLATOR AND CITIZEN: HCSD, BOARD DEFENDANTS, and WINSTON (42 USC 1985)

116. Plaintiff alleges that the Board Defendants (thus the HCSD), between July of 2014, and December 3 of 2015 affirmatively acted to thwart Plaintiff's rights to vote as a Legislator by: failing to abide by the requirements of the Brown Act concerning notice to her of meetings and

[129] Inclusive of acting wrongfully and illegally to *de facto* nullify Plaintiff's appointment to, and occupation of, the position of HCSD Director, and/or Secretary.
[130] In Plaintiff's official, as well as individual, capacity. See *Bond v. Floyd*, 385 U.S. 116, 137 (1966)
[131] E.g. Sections A-3(7)-A-3(10), among others.

public business of the HCSD, and by failing to abide by the HCSD Bylaws relating to the powers and duties of Plaintiff's offices as Director and Secretary of the Board; and by refusing and failing to reasonably accommodate Plaintiff's disability to attend meetings, put matters on the agendas, and vote on issues before the Board. Further, these same Defendants acted to deny and interfere with Plaintiff's rights as a citizen of the HCSD to vote on various matters as provided by the HCSD Bylaws by wrongfully and/or illegally forming agreements, and acting, to wrongfully alter, erase, and/or evade the voting requirements thereof. Defendant Winston knew of, aided, abetted, ratified, and agreed with those acts, by providing motions, resolutions, emails, and other documents to Hanson for wrongful use at illegally conducted meetings and otherwise.

**Count IV. Violation of Clean Water Act by HCSD, Board Defendants, Goff and Dingman.**

117. The permitting of the HCSD's "well #3", containing high levels of toxic Boron and salts, to flow artesian and unchecked into the waterways feeding the Klamath River, without a permit to do so by the Environmental Protection Agency ("EPA") violates the Clean Water Act. The HCSD, Board Defendants, and Public Officer Defendants knew of this pollution, yet refused and failed to take any action to correct or mitigate it, even when admonished by State agencies.

**Count V: DEPRIVATION OF RIGHTS TO DUE PROCESS; EQUAL PROTECTION II:**

118. Plaintiff alleges that the Board Defendants (thus the HCSD), the Public Officer Defendants, and Basic Labs[132], between July 2014, and December 3 of 2015 failed to act on, or respond in any way to Plaintiff's multiple requests to them for statutorily-mandated[133] equal access to the books, papers, and records of the HCSD relating to its ongoing operations, and pertaining to acts and duties undertaken by her in her official capacity as required by the Public Records Act, and that the denial of access to records by the HCSD, Public Officers, Hanson, and Brown, while allowing themselves full access thereto, without any notice or hearing as to Plaintiff for such deprivation, deprived Plaintiff of her rights to due process and equal protection[134].

///////

[132] Only so far as is relevant to the issue of the allegations and documents concerning the wrongful charges, billing, and payments associated with the "water sampling and testing" described in paragraphs 74-77. In this respect, Basic Labs' agreement and cooperation with Hanson constituted "state action".

[133] See California Public Records Act, Govt. Code sections 6252.5, and 6252.7.

[134] The Board Defendants distributed records routinely amongst themselves, placed (and approved) items on agendas, and controlled all communications to the HCSD from government agencies and customers.

**Count – VI: DEPRIVATIONS OF RIGHTS TO THE EQUAL PROTECTION OF THE LAWS, TO DUE PROCESS OF LAW, AND LIBERTY INTERESTS.**

119. The Board Defendants, Winston, Goff, and Dingman, did improperly and illegally conspire to, and actually did, wrongfully violate, and refuse to follow, the mandate of: the Federal Safe Drinking Water Act and Clean Water Act; State laws relating to drinking water facilities and operation thereof (including, but not limited to, the Health and Safety Code); and, the HCSD Bylaws[135], with the assistance, affirmation, and ratification of Defendants Bowles, Winston, and Dingman by allowing and encouraging Dingman to operate the water treatment and distribution facilities of the HCSD without State-required certifications, and instructing Dingman to illegally and improperly[136] exclude Director Roger Gifford and Plaintiff Director and Secretary Kimberly Olson from inspecting facilities at any point, and/or records kept therein.

120. All of these acts by the Board Defendants, Goff, Winston, Bowles, and Dingman, also thus deprived Plaintiff of her rights and privileges under federal and State law, and the HCSD Bylaws (in both her individual, and official capacities), and diminished her real property value, without notice, opportunity to be heard, or other due legal process.

**Count – VII: DEPRIVATIONS OF RIGHTS TO EQUAL PROTECTION OF THE LAWS, TO DUE PROCESS OF LAW; AND RIGHT TO VOTE**

121. The Board Defendants and Bowles, by improperly and wrongfully altering rates and fees of the HCSD to benefit their friends without voter approval[137], and permitting operation of HCSD facilities by Dingman as an uncertified operator (who wrongfully prevented Plaintiff from accessing the facilities, and records relating thereto), by failing to charge each commercial, governmental, and/or residential customer proper rates, fees, and/or charges, while also not complying with Water Code sections 31007 and 71616, all in contradiction of the Bylaws and State laws, also deprived Plaintiff of the equal protection of the laws, and Plaintiff's right to the due process of law insofar as she, as a Director and/or elector of the District, was denied the right and opportunity to vote on fee reductions and waivers at meetings, and as granted in the Bylaws.

**Count–VIII: VIOLATION OF DUE PROCESS, HCSD, HCBC and CRITTENDEN**

122. Defendants HCBC and Crittenden, improperly conspired with, influenced, and engaged in corrupt activity with the HCSD and Board Defendants, in order to utilize their authority under color of State law, to receive wrongful, illegal gifts of public funds on March 04, 2015, to December

---

[135] E.g. Sections A-3(7-8).

[136] See California Code of Regulations Title 22, Sections 63770(b)(5), 63770(c)(1)-(2), 63770(d)(1)-(2).

[137] As required by the HCSD Bylaws at Section A-9(1), among others.

3, 2014, in the form of reduced water charges and wrongfully waived fees[138] that would be otherwise due, and this activity was deliberately concealed from the public, and Plaintiff, without notice.

**Count - IX: Violation of Rights to Due Process, Equal Protection, Free Speech and Petition, and Liberty Interests as to HCSD, Board Defendants, Winston, and Dingman.**

123. In performing the acts as complained of herein, and acting to deny Plaintiff proper, timely, (or, more often, any) notice or opportunity to be heard concerning HCSD meetings and business, as well as to be heard as to any allegations, charges, and/or complaints regarding her position and employment, and concerning the exercise by Plaintiff of her rights and Duties under State law and the HCSD Bylaws as a Director, and/or Secretary thereof, each and all of the Board Defendants, and thus also the HCSD itself, with the aid, ratification, encouragement, and assistance of Bowles, Dingman, and Winston[139], willfully acted in a manner calculated to: thwart, impede, interfere with, intimidate, coerce, and retaliate against Plaintiff in her employment as a Director, and/or Secretary of the HCSD and her exercise of the rights and duties attendant to those offices, because of her reports, and assistance to others in making reports, to the HCSD Board, OSHA, and various agencies of the United States and State of California concerning violations of Federal and State laws, and the HCSD Bylaws, by the these named Defendants; and, to create a hostile work environment for Plaintiff.

124. Because the majority of the adverse actions taken against Plaintiff by the Board Defendants and the HCSD occurred or were initiated shortly after Plaintiff's protected reports and other activities, the actions against Plaintiff are *presumed* retaliatory adverse actions in violation of public policy and Rights of Free Speech, and to Petition, as provided by the United States' and California Constitutions. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 164 *Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 21 F.3d 493, 507; *Pickering v. Board of Education* (1968) 391 U.S. 563; Labor Code sections 98.6, 1019(b)(1)(C), 1019(c), 1102.5; Health and Safety Code 6310, 6400; and, 42 USC §300j-9(i).

[138] HCBC and Crittenden communicated privately with Hanson to obtain the gift of public funds. Hanson thereafter met serially and/or in "daisy chain" fashion with Brown and Barnes to agree on the reductions, reclassification(s), and waivers. These acts are additionally a violation of the HCSD Bylaws.

[139] Dingman was told by the other Defendants to change locks on all of the District's facilities to keep Plaintiff out, and to physically block Plaintiff's entry into HCSD facilities, and by refusing Plaintiff access to any documents or records - while Winston provided the Board Defendants (and the HCSD) forms, documents, resolutions, notes, motions, letters, declarations, and other things to use in furtherance of the wrongful conduct herein described.

**Count -X: DEPRIVATIONS OF RIGHT TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAWS - Gifts of Public Funds to Clint Dingman**

125. Defendant Dingman, outside of any public meetings, conspired with, influenced, and engaged in corrupt activity with Hanson, Brown and Bowles, in order to wrongfully utilize their authority, to receive gifts of public funds on beginning in July of 2014, in the form of an unauthorized rate of pay increase, extra work hours, and pay in excess of his contract with the District[140]. Dingman, with the aid, assistance, ratification, and agreement of the HCSD, Board Defendants, and Bowles, fraudulently billed the District for services and activities which he was not entitled to, and/or he did not perform, and failed to abide by his contract and the HCSD Bylaws. This activity was further deliberately concealed from the public in violation of the Brown Act, the California Public Records Act, and the HCSD Bylaws.

126. By so doing, these Defendants acted in violation of Plaintiff's due process rights as a Legislator to attend their meetings and protest the illegal gifting public funds; and, to deliberately deprive Plaintiff of her right to due process, free speech, and petitioning rights to protest and act against corrupt and unlawful activity; her rights to the equal protection of the laws prohibiting such conduct and her right to vote concerning them as a Legislator while other Board members were afforded those rights; and, her right to due process concerning all these acts.

**Count XI - Violation of Title VII of the Civil Rights Act - Unlawful Retaliation.**

127. The acts of the HCSD and Board Defendants, in having illegal meetings concerning Plaintiff (and without notice and/or opportunity to be heard at those meetings); in taking improper and/or wrongful adverse employment action at meetings concerning Plaintiff; in purportedly *de facto* removing, wrongfully and oppressively impeding, and interfering with Plaintiff's powers and authority as a Legislator and public officer; Plaintiff's exercise of the duties and rights attendant to employment as Director, and/or Secretary of the HCSD; by encouraging and assisting Dingman and Bowles in defying Plaintiff's authority, duty, and privileges of office as a Director and/or Secretary of the HCSD; and, acting to retaliate against Plaintiff because of her complaints (and assistance to others in making out complaints) to the Board, State and Federal agencies, and the Courts, violated the provisions of Title VII of the Civil Rights Act of 1964, and the public policy of the United States. See *Burlington, N. & S. F. R. Co. v. White* 548 U.S. 53 (2006); and, *Robinson v. Shell Oil Company*, 519 U.S. 337 (1997). Further, these acts and actions of the Board Defendants were arbitrary, and capricious.

---

[140] These acts are additionally a violation of the HCSD Bylaws.

**Count XII - Violation of 1st, 4th, and 14th Amendment Rights: Board Defendants**

128. The submission by the Board Defendants on October 15, 2015 of a falsely-certified warrant request to the Siskiyou County Auditor violated the provisions of Government Code §61045[141], the Brown Act, Code of Civil Procedure §526a, and was a gift of public funds to Dingman, all in violation of Cal. Const. Art. XVI, Secs. 6 and17; and, Govt. Code section 8314.

129. The submission of the wrongful and false warrant request also deprived Plaintiff of any notice of the (illegal) meeting by the Board Defendants as to the request, and/or any opportunity to speak, or to exercise authority and duty to vote on it as Director of the HCSD, and constituted the unlawful nullification, seizure, and usurpation of Plaintiff's authority as a member of the HCSD Board of Directors, and a Legislator.

**Count XVI - Retaliation in Employment by HCSD, Board Defendants; 42 USC §300j-9(i)**

130. Plaintiff's complaints to the Board, and to State and Federal agencies of violations of the Clean Water Act by the HCSD, Board Defendants, Goff, and Dingman entitle her to protection from retaliation in her employment as a Director and the Secretary pursuant to 42 USC § 300j-9(i). The Board Defendants, Winston, Bowles, Dingman, and Goff, by agreeing, participating, conspiring, ratifying, and taking part in coordinated actions calculated to intimidate, interfere with, coerce, and retaliate against Plaintiff for her reports and complaints, by impeding and/or *de facto* eliminating her ability to exercise her authority and duties as a Director and/or Secretary of the HCSD with out any due process; refusing to provide notice, opportunity to be heard, or due process concerning her Govt Code 995 request; creating and ratifying at illegal meetings various wrongful resolutions and motions against Plaintiff; and, refusing to permit Plaintiff access to District records in the same manner and on the same terms as the Board Defendants, also violated that law, and damaged Plaintiff.

**Count XVII: Retaliation by HCSD and Board Defendants; 18 USC, section 1513(e); Violation of Due Process**

126. Plaintiff's complaints, and assistance to others in making complaints, to the Board, and to State and Federal enforcement agencies of violations of the SDWA, the CWA, discrimination and retaliation in employment, and unsafe working conditions by the HCSD and

[141] Due to the warrant request not being generated as the result of exercise of BOD authority at any public meeting in approving the payments on the warrant request, when they thus actually had no legal authority to do so.

the Board Defendants, entitle her to protection from retaliation in any manner from them, including employment as Director, and/or Secretary of the HCSD, per 18 USC §1513(e).

127. The HCSD, by and with the Board Defendants, undertook the acts set forth herein to retaliate against Plaintiff for her reports and complaints about them by wrongfully using their official positions to eliminate Plaintiff's effective authority as a public officer; and *de facto* removing her as a Director and Secretary in a manner contrary to law and the Bylaws, to interfere with, prevent, and render her unable to exercise her rights and duties of her offices - all without any notice, due process, opportunity to be heard, or to confront witnesses against her.

**Count-XVIII:Violation of 42 USC§1985: HCSD,Board Defendants, Bowles, Winston, Dingman.**

128. In agreeing to, and performing, the acts as complained of herein, by acting to deny Plaintiff proper, timely, notice or opportunity to be heard concerning (and to vote on) HCSD meetings and business, as well as allegations, charges, and/or complaints regarding her positions and employment[143], and/or exercise by Plaintiff of her rights and duties as Director and/or Secretary, each of the Board Defendants, and thus the HCSD, with the aid, ratification, and agreement of Defendants Dingman, Bowles, Goff, and Winston[144], acted in a manner calculated to: thwart, interfere with, intimidate, coerce, and prevent Plaintiff from voting in her capacity as a Director and/or Secretary of the HCSD; and did so due to her reports to the HCSD Board, OSHA, agencies of the United States and State of California; her declarations to the Superior Court; and, testimony before the Labor Commissioner. These Defendants thus created a hostile work environment for Plaintiff. These Defendants took the actions they did, and violated voter-control provisions of the Bylaws, intending to prevent Plaintiff, and other electors of the District, from voting on those actions as applicable. The actions against Plaintiff were a united effort with the ultimate goals being to: interfere with; intimidate into abandoning; impede; and, attempt to prevent Plaintiff from exercising, her Constitutional and statutory rights, duties, and authority, including voting on matters relating to their acts, violating 42 USC §1985.

/ / / / /

---

[143] This includes the opportunity for a Skelly notice and hearing (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194), and a public hearing at a duly called meeting of the HCSD regarding any adverse action.

[144] Dingman was told by Hanson to change locks on the District's facilities to keep Plaintiff out; physically blocked Plaintiff's entry to HCSD facilities; and, refused Plaintiff access to documents or records (while threatening Plaintiff). Winston provided the Board Defendants forms, documents, resolutions, motions, letters, declarations, and other things to use in furtherance of the wrongful conduct - including an email threatening Plaintiff over her exercise of lawful authority under statute and Bylaws.

**Count XIX: Violations of the ADA as to the HCSD, Board Defendants, and Winston.**

129. The Board Defendants (and thus the HCSD), with the agreement, assistance, and ratification of Defendant Winston, in acting as set forth herein in manners adverse to Plaintiff in regards to her disability[145], particularly by failing to accommodate her disability by giving her adequate and proper notice of meetings, assistance with storing and moving HCSD property, equal and reasonable accommodation for access to documents associated with her offices in the HCSD, and reasonable accommodation for equal access to the water facilities and treatment records, have done so willfully, with the intent to retaliate against, interfere with, and coerce Plaintiff into abandoning her demands for accommodation; and to impede, hinder, and act in retaliation for Plaintiff's exercise of her rights as a disabled person to speak freely, enforce her rights, and have the same access to HCSD facilities, meetings, records, and benefits of employment (and of her office as Director and/or Secretary), as enjoyed by non-disabled Directors, officers, and employees. These Defendants engaged in this conduct, and enforced these policies in a way that treated Plaintiff differently and less favorably than other Directors, and interfered with, and denied her right to vote as a Director.

**Count XX: Deprivations of Right to Due Process and Equal Protection.**

130. Plaintiff alleges that Defendants Winston; Kirsher, Winston & Boston, L.C.; Lucas; and, MPB&F, Inc, jointly and severally, between the period of about June 13, 2014 through December 3, 2015, wrongfully, agreed with, influenced, collaborated with, and engaged in actions and activity with, the HCSD, Board Defendants, Bowles, Dingman, and Goff, in their capacities as public officers, in order to corruptly, illegally, and wrongfully utilize their authority under color of State law, to: hold various unagendized and non-public meetings and form plans and agreements in violation of the Brown Act, Rules of Professional Conduct 3-600(E), and Government Code §1090; to reach consensus on hiring (and execution of contracts, payment vouchers, etc), as to Defendants Winston; Kirsher, Winston & Boston, L.C.; Lucas; and, MPB&F, Inc.; to reach consensus on courses of action relating to the operation of the HCSD and/or in dealing and interacting with Plaintiff - all outside of public meetings and without notice to Plaintiff. Each of these Defendants also conspired, agreed, and acted in concert to fail to give notice of any such meetings, proposed employment, contracts, etc, as required by law, or to seek the approval and signed waivers of Plaintiff Olson and Director Gifford required by Rule 3-600(E). In spite of these failures, Defendants Winston; Kirsher, Winston & Boston, L.C.; Lucas;

---

[145] In making this Count, Plaintiff also specifically incorporates paragraphs 1, 2, 7, 17-23, and 28.

and, MPB&F, Inc., knowingly, wrongfully, and fraudulently billed the District for services and alleged activities which they were not entitled to payment for, and/or that they did not lawfully perform. All this activity was concealed from Plaintiff and the public in violation of the Brown Act, the California Public Records Act, and the HCSD Bylaws.

**Count XXI - Violation of Sixth Amendment Right to Confrontation.**

131. The acts of the HCSD and Board Defendants, in having illegal meetings concerning Plaintiff (and without notice and/or opportunity to be heard at those meetings); in taking improper and/or wrongful adverse employment action at meetings concerning Plaintiff; in purportedly *de facto* removing, wrongfully and oppressively impeding, and interfering with Plaintiff's powers and authority as a Legislator and public officer; in thwarting Plaintiff's lawful exercise of the duties and rights attendant to employment as Director, and/or Secretary of the HCSD; by encouraging and assisting Dingman and Bowles in defying Plaintiff's authority, duty, and privileges of office as a Director and/or Secretary of the HCSD; and, acting to do these things as a means to punish Plaintiff, but without granting Plaintiff any notice, opportunity to be heard, or opportunity to confront the charges and witnesses against her at such illegal meetings, violated Plaintiff's rights to Confrontation of her accusers as provided by the Sixth Amendment.

**Count XXII: Violations of the ADA by Goff, Dingman, and Hanson.**

129. Dingman and Goff, in their official capacities, while exerting direct control over all HCSD water production, treatment, and distribution facilities, with the agreement, assistance, aid, and ratification of Defendant Hanson, in acting as set forth herein in manners adverse to Plaintiff in regards to her disability, and particularly by failing to accommodate her disability by giving her equal and reasonable accommodation for equal access to the water facilities and their water-related records, have done so willfully and maliciously, with the intent to retaliate against, interfere with, and coerce Plaintiff into abandoning her demands for accommodation; and to impede, hinder, and act in retaliation for Plaintiff's exercise of her rights to have the same access to HCSD facilities, records, and benefits of employment (and use of her powers and duties of office as Director and/or Secretary), as enjoyed by non-disabled Directors, officers, and employees who access those facilities and utilize similar authority and powers. These Defendants engaged in this conduct, and enforced these policies in a way that treated Plaintiff differently and less favorably than other Directors.

*****SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS*****

132. In making out each of the following "Counts" in this Second Claim for Relief against one or more Defendants, Plaintiff, in addition to incorporating the information and

factual allegations found in the preceding generalized sections and paragraphs (Sections I-VII, ¶1-29; and, Section XIV, ¶108), hereby also specifically incorporates those Sections corresponding to each Defendant named *in the specific Count*. For example, if a Count lists "Hanson", then the reader should refer to Section VIII, beginning on page 12 (paragraphs 30-37) for details of her conduct, and other factual allegations, that apply to the Count. If the Count lists the "HCSD", one would refer to Section I, pages 3-4, paragraph 7; and, Section X at page 22 (paragraphs 41-42), and so forth. "Board Defendants" are defined as Hanson, Brown, Gifford, and Barnes at Section II on page 4, so reference in a Count also incorporates each and all of their individual sections. The term "these Defendants" as used in any particular Count, means only the Defendants which are *specifically* named therein, and is not intended to apply to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants, she will state "all Defendants", specifically.

133. The Board Defendants particularly, and all other Defendants, each had a duty to perform certain acts under the laws as aforesaid in the sections pertaining to each of them (and generally), and breached those duties while engaging in the conduct set forth in this Second Amended Complaint. If Plaintiff states a claim or cause of action that only permits injunctive or other relief, but inadvertently asserted a claim for damages, Plaintiff reserves her right to non-monetary relief as otherwise provided by law, and Government Code section 814. Plaintiff has been physically, emotionally, economically, and specially harmed by the acts of Defendants, but, as to Defendants KWB, Winston, MPB&F, and Lucas, no personal damages or benefits are sought by Plaintiff for any state and/or common-law torts or claims, and instead seeks ***only*** disgorgement of all wrongfully billed and/or collected fees by these defendants to the benefit of the public fisc of the HCSD, along with appropriate declaratory and/or injunctive relief to the benefit of herself and to the public equally. In the event Plaintiff has erroneously requested damages for any claim herein that only allows for declaratory and/or injunctive relief by law, Plaintiff reserves her right to such relief, even if misstated in this complaint.

**Count I Waste of Public Funds by the Board Defendants and/or the HCSD**

134. Each act of wrongful, illegal, improper, or unethical conduct by the Board Defendants, and/or the HCSD as set forth herein (along with those of their conspirators participating in those acts and/or benefiting therefrom[146]), as well as any and all such conduct in

[146] Including, but not limited to, Defendants Winston, KWB, MPB&F, Goff, HCBC, Crittenden, Lucas, and those John Doe customers of the HCSD wrongfully receiving reduced or waived fees, charges, etc.

violation of the HCSD Bylaws, constituted a waste, and illegal expenditure of, taxpayer funds pursuant to California Code of Civil Procedure §526a, also on the basis that all of these funds were improperly expended without any rational relationship to any beneficial public purpose.

135. CCP §526a, provides in pertinent part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

136. "The primary purpose of this statute, originally enacted in 1909, is to „enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts ...."[Citation.] [¶] California courts have consistently construed section 526a liberally to achieve this remedial purpose." (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268; accord, *Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Assn. of Governments* (2008) 167 Cal.App.4th 1229, 1236; *Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1308.) Thus, "under section 526a, no showing of special damage to the particular taxpayer [is] necessary " for the taxpayer to prevent injury to the public. (*White v. Davis* (1975) 13 Cal.3d 757, 764, quoting *Crowe v. Boyle* (1920) 184 Cal. 117, 152.) However, and more generally, suits under section 526a "provide a general citizen remedy for controlling illegal governmental activity." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29.).

**Count – II, Violations of HCSD Bylaws**

137. Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that the Board Defendants, and the Public Officer Defendants, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and illegally, conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws by: denying access to HCSD facilities, records, processes, powers, and duties granted Plaintiff as Director and/or Secretary of the HCSD; wrongfully and improperly waiving all sorts of fees and charges for certain customers; failing to collect overdue accounts and shut off non-paying accounts; failing to impose the standby fee of $39 per year; failing to impose the $20 availability fee; failing to properly levy the rates set for businesses, commercially-zoned properties, and multiple dwelling customers without voter approval for such failure; wrongfully and illegally diverted water fees and charges to expenses other than water production and system maintenance and/or capital

improvements; repeatedly ignoring and/or otherwise violating provisions of the Bylaws; making improper and wrongful Bylaws changes in ways prohibited thereby; and, failing to require landlords to put water service for rentals into their name. These Defendants thus failed to impose, and/or to collect, rates and charges sufficient to fund the operations, upkeep, upgrades, and repairs to the District infrastructure mandated by the Water Code at §§ 31007, 61100, 71616, and wrongfully interfered with Plaintiff's own duties relating thereto as set forth in the Bylaws.

134. The Board Defendants, Bowles, Dingman, Goff, and Winston, from about April 1, 2014 through December 3, 2015, failed to comply with the HCSD Bylaws, at Sections A-1(4); A-1(6); A-1(7); A-1(10); A-2(3); A-2(10); A-2(11); A-3.3; A-3(7-8); A-4(3); A-5-1; A-7; A-9(1); A-9(3); A-9(13); A-9(14); "MEETINGS" at p.15, #1;1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; 1-4.040, and, 1-5.030.

**Count III Willful Negligence; Negligence**

138. In doing acts complained of herein, the Board and Public Officer Defendants acted negligently, recklessly, wantonly, and/or willfully, and in disregard for any harm that may have befallen Plaintiff and/or the public as a result. (See also California Civil Code, section 1714.)

**Count IV - Violations of Government Code Section 1090- Self Dealing**

139. The HCSD, Winston; Bowles; Dingman; Goff; MPB&F, Inc, Lucas; and, Kirsher, Winston, & Boston, L.C., in planning, and acting at meetings held in violation of the HCSD Bylaws, and/or Brown Act, so the HCSD (via acts of the Board Defendants) would purportedly act to: "revoke and rescind" the HCSD Bylaws[147]; act on or arrange for indemnifications for certain Board members without proper application or hearings - but thwart comments and votes by Plaintiff concerning same; create, and make improper changes to, service contracts; enter into wrongful, unlawful, and/or illegal contracts with Goff, Bowles, Winston, MPB&F, Inc, Lucas, and, Kirsher, Winston, & Boston, L.C., outside of public process, without notice or lawful procures, and/or in a manner designed to subvert the lawful process of public meetings[148]; to hire

---

[147] The Bylaws forbid certain modifications without voter approval, and make Board Members personally liable for improperly waiving fees, failing to collect fees, etc regardless of the method used to do so. These Defendants improperly waived fees and charges (generally *ex parte*, in private meetings amongst themselves, and with direction to Bowles) to benefit themselves, their friends, contractors, co-conspirators, and associates, and thus acted on issues in which they have a direct financial conflict of interest. See HCSD Bylaws at Sections A-2(10), A-9(1), A-9(10-11), A-9(13), A-9(14), and, A-9(26). .

[148] This includes the custom, policy, and procedure of the HCSD and Board Defendants allowing Winston, MPB&F, Inc, Lucas, and, Kirsher, Winston, & Boston, L.C., to assign themselves to work (or to have Hanson assign them to work *ultra vires* and *ex parte*) on matters that have had no review, hearing, or

lawyer Defendants as personal attorneys, but also to simultaneously allow those lawyers to represent the "District", and so acting while having a conflict of interest in the contract(s) and related matters, acting in violation of the provisions of Government Code §§1090 (and Rules of Professional Conduct at 3-600(E), and Business and Professions Code sections 6104, 17200, etc) on each such occasion.

**Count V - Retaliation in Employment and Termination by Board Defendants**

140. By denying Plaintiff any notice or opportunity to be heard concerning allegations, charges, and/or complaints regarding her positions and employment[149]after Plaintiff had engaged in protected conduct by filing complaints, legal actions, and testifying as a witness, and because she did so, the Board Defendants, and HCSD acted to wrongfully oppress, punish, intimidate and retaliate against, and terminate Plaintiff in her position as Director and Secretary. Plaintiff's conduct, and assistance to others, in making reports to: the Board, of safety, CWA, and SDWA (and State law) violations; OSHA and Cal-OSHA; actions in Superior Court; and, reports to enforcement agencies of California about violations of Federal and State laws, and Bylaws, by the Board Defendants. The Board Defendants (and HCSD) acted to create a hostile work environment for Plaintiff, all without any due process, for engaging in protected activities as aforesaid. The Board Defendants and HCSD violated whistleblower protections as public policy found in Labor Code sections 98.6, 1019, and 1102.5; Health and Safety Code 6310, 6400).

**Count VI - Failure to Indemnify Public Employee - State Law**

141. The Board Defendants (and HCSD), failed to properly and legally respond to Plaintiff's requests for indemnification in compliance with Government Code 995 as pertaining to acts and duties undertaken by her in her official capacities. The Board Defendants refused to approve the request as required by state law, and HCSD policy, instead denying Plaintiff any hearing or other due process, acting absent any findings of fact that allowed denial, while being arbitrary and capricious. Plaintiff seeks a writ of mandate, as well as compensation and other relief. (See *Mata v. City of Los Angeles* (1993) 20 Cal.App.4th 141 at 147-49; *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999).)

//////

action taken by the HCSD Board, and then "backdate" contracts for that work as directed and agreed by Hanson and/or Winston at later meetings of the Board.

[149] Including a Skelly notice and hearing (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194) about Plaintiff's position as Director and/or Secretary of the Board. See also Government Code 19574.

**Count VII - Gifts of Public Funds as to HCBC**

142. Defendants Hornbrook Community Church, Inc., and Steven Crittenden, wrongfully, illegally, corruptly, and improperly conspired with, influenced, and engaged in corrupt activity with HCSD President Michele Hanson, and the other Board Defendants, in order to illegally receive gifts of public funds[150] on or about March 04, 2015, through December 3, 2015, while this activity was deliberately concealed from Plaintiff, and the public, in violation of the Brown Act, and other applicable laws. Plaintiff seeks relief as provided via California Code of Civil Procedure Sections 526a, 1021.5, and 1084.

**Count VIII - Gifts of Public Funds - Board Defendants; False Claims & Fraud as to Dingman**

143. Defendant Clint Dingman wrongfully, improperly, and illegally colluded with, influenced, agreed to, and engaged in corrupt activity with, the Board Defendants and Bowles to receive wrongful payments from about July, 2014 and continuing through December 3, 2015, in the form of an unagendized, non-Board approved "pay increase" to $15.00 per hour, and open-ended number of hours Dingman could claim on his timesheets, which violated the contract between Dingman and the HCSD of $10.00 per hour rate of pay, and capped hours per week.

144. Dingman fraudulently agreed to that pay rate, and hours cap, to induce the HCSD, and Plaintiff as a Director, to enter into the contract. Dingman promised he would abide by the contract, obtain education and proper water operator certificates from the State, but did not. Plaintiff relied on Dingman's false promises. Such excess pay is also a gift of public funds to Dingman. Plaintiff invokes herein Code of Civil Procedure Sections 526a, 1021.5, and 1084, as well as Government Code sections 12650, et seq and the triple damages provisions therein.

**Count IX - Gifts of Public Funds as to Ernest Goff and Julie Bowles**

145. Defendants Julie Bowles and Ernest Goff, both independent contractors to the HCSD, improperly, wrongfully, and illegally conspired with, influenced, and engaged in corrupt activity with the Board Defendants and Defendant Winston, in order to falsely claim payment(s) for services they did not actually render, and to receive gifts of public funds, in the form of indemnification, fees, and other benefits neither was entitled to by contract, and Govt. Code 995. Those funds thus being improperly expended without any rational relationship to any beneficial public purpose.

---

[150] Cal. Const. Art. XVI, Section 6; Cal. Govt. Code section 8314. Those funds being improperly expended without any rational relationship to any beneficial public purpose.

**Count X - Gifts of Public Funds as to John Does; Waste of Public Funds**

146. The improper billing, waiver of fees and charges, improper changes to classifications, failure to read meters, and other mechanisms whereby the Board Defendants and HCSD, along with Defendants Bowles, and Dingman, failed to collect all due charges, fees, penalties, and other monies due the HCSD for the period of July 2014, through December 3, 2015, were improper gifts of public funds, those funds being improperly expended without any rational relationship to any beneficial public purpose. The John Does who had their water rates, fees and/or charges payable to the HCSD reduced and/or waived, property not liened when due, or who otherwise wrongfully benefited from any action of the HCSD, Board Defendants, and/or Bowles are in violation of Cal. Const. Art. XVI, Section 6, and Govt Code section 8314. Such gifts are also a waste of public funds subject to claw back as contemplated by CCP §526a.

**Count XI - Violation of Article 1, section 2, of the California Constitution**

147. *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, allows a tort action for damages for violation of the free expression clause of Article I, Section 2, of the California Constitution. The California Constitution gives "[e]very person" an affirmative right to free speech (Cal. Const., art. I, § 2, subd. (a)). In acting as aforesaid to violate State law and the HCSD Bylaws, and to commit wrongs against Plaintiff, the Board Defendants, Winston, Bowles, and Dingman acted to violate her right to free expression under that section. Plaintiff is entitled to declarative relief from this court recognizing the wrongfulness of this conduct, and injunctive relief against the Defendants prohibiting its reoccurrence.

**Count XII - Unfair Business Practices as to Julie Bowles and Board Defendants**

148. Plaintiff alleges that the individual Board Defendants, and Defendant Bowles, in performing the acts complained of herein through December 3, 2015, as employees and/or agents of the HCSD, in violating, and conspiring to violate, the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, have also thus conspired to, aided and abetted each other, and actually did, violate California's unfair business practices legislation, found at California Business and Professions Code 17200, et seq.

**Count XIII - Unfair Business Practices as to Ernest Goff and Board Defendants**

149. Plaintiff alleges that the individual Board Defendants, and Defendant Goff, in performing the acts as complained of herein through December 3, 2015, as employees and/or agents of the HCSD, in violating, and conspiring to violate, the Constitutional provisions, Acts,

laws, statutes, regulations, codes[151], and/or HCSD Bylaws provisions as set forth herein, have also thus conspired to, aided and abetted each other, ratified each other's conduct, and actually did, violate California's unfair business practices legislation, Business and Professions Code 17200, et seq.

**Count XIV - Unfair Business Practices as to Kenneth King and Board Defendants**

150. Plaintiff alleges that the individual Board Defendants, and Defendant King, in performing the acts as complained of in ¶158-159, committed unfair business practices.

**Count XV - Unfair Business Practices; Robert Winston; Kirsher, Winston & Boston, L.C.;**

151. The (individual) Board Defendants, Robert Winston, and Kirsher, Winston & Boston, L.C., by acting as complained of herein against Plaintiff as employees and/or agents of the HCSD, in violating, and conspiring to violate, the various Constitutional provisions, Acts, laws, statutes, regulations, codes, Rules of Professional Conduct, and/or the HCSD Bylaws as set forth herein, thus conspired to, agreed to, and actually did, commit unfair business practices as defined in Business and Professions Code 17200, et seq.

152. The Board Defendants' wrongful hiring of Winston, and/or Kirsher, Winston & Boston, L.C., as their personal lawyer(s), and then also in their official capacities on behalf of the HCSD violated Rule of Professional Conduct 3-600(E), and was an unfair business practice.

153. Winston, and Kirsher, Winston & Boston, L.C., in acting as set forth herein, have since June 17, 2014, through December 3, 2015, falsely and fraudulently billed the HCSD for services that were not approved by the HCSD BOD, and/or for which they had no valid contract, including matters in Siskiyou County Court, and the Third District Court of Appeals.

**Count XVI - False Claims as to Robert Winston; Kirsher, Winston & Boston, L.C.**

154. Plaintiff incorporating herein the information contained in Count XV above, alleges that Winston, and Kirsher, Winston & Boston, L.C., have thus acted to violate California's False Claims Act legislation, found at California Government Code sections 12650, et seq.

**Count XVII- Negligence as to Robert Winston, Board Defendants, and Bowles**

155. The Board Defendants, Bowles, Dingman, and Defendant Winston owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, of California, and the Bylaws, but in acting wrongfully as complained of herein, and against Plaintiff, breached that

---

[151] Including, but not limited to, the Siskiyou County Code, and provisions thereof requiring a business license.

duty in violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, California Rules of Professional Conduct, and/or the HCSD Bylaws as set forth herein.

**Count XVIII - Unfair Business Practices as to HCBC**

156. Defendants Crittenden, Hornbrook Community Bible Church, and the Board Defendants, by corruptly colluding to grant gift(s) of public funds to the HCBC as wrongfully waived and/or reduced water fees, thus violated California's unfair business practices laws.

**Count XIX - Unfair Business Practices and False Claims as to MPB&F, and Lucas**

157. The Board Defendants, Defendant Lucas, and Defendant MPB&F, Inc., in performing the acts as complained of herein, and *as set forth above in the paragraphs above relating to them*, thus conspired to, and did, violate California's unfair business practices laws, Business and Professions Code 17200, et seq.[152] Finally, by billing the HCSD for improperly and illegally rendered "services", Defendants MPB&F and Lucas made False Claims.

**Count XX - Unfair Business Practices, Fraud, and False Claims as to Basic Labs**

158. Defendant Basic Labs knowingly and corruptly agreed, planned, and acted (outside of public meetings held in compliance with the Brown Act, and in violation of the provisions of Govt. Code §61045) with the Board Defendants, the HCSD, and Dingman to jointly act to create false billing, to falsify approval, authorizations and other purported records of the HCSD, and to make false claims to the HCSD for unapproved, purported "water testing" in the amount of $3,592.00 as set forth herein. Basic Labs made the fraudulent and False Claims for such payment to the HCSD intending that the HCSD rely on its false, unauthorized, and unapproved billing, all in order to wrongfully and corruptly extract public funds from the HCSD, and it did so while failing to have the required valid business license issued by Siskiyou County. The HCSD relied upon the false, improper, and unapproved billing from Basic Labs to grant improper and wrongful payments of public funds to Basic Labs. Basic Labs was the beneficiary of the wrongful charges and billing to the HCSD, and the resulting payments made to Basic Labs. In engaging in this conduct, as well as the other violations of law (and the HCSD Bylaws) as set forth in this Complaint, Basic Labs also violated California's unfair business practices legislation, Business and Professions Code 17200, et seq.

---

[152] Plaintiff's claims do not involve any of the actual filings or appearances made in any court, at any lawful meeting of the Board of Directors of the HCSD, or before any tribunal, but do reflect the prohibitions by statute, and Rules of Professional conduct relating to making unauthorized "appearances" on another's behalf (e.g., Business and Professions Code 6104; FRCivP Rule 11) as a basis for finding a violation of Business and Professions Code §17200, et seq.

**Count XXI - Civil Conspiracy for Deprivation of Rights**

159. The Board Defendants, Winston, Dingman, Goff, and Bowles, acted in concert, and by agreement amongst themselves, to: recklessly, wantonly, and/or willfully violate the HCSD Bylaws and Federal and State laws as aforesaid; harass, oppress, coerce, intimidate, annoy Plaintiff, and to impair, impede, and violate her constitutional and statutory rights (and especially due process) as set forth herein; and, to retaliate against her for exercise of her rights.

**Count XXII – Intentional and/or Negligent Infliction of Emotional Distress**

**(Board Defendants, Winston, Bowles, Puckett, Dingman, and Gifford)**

160. The Board Defendants, Winston, Bowles, Puckett, and Dingman, in acting as set forth herein as to any of them, or identified group of them, did so while disregarding foreseeable risk to Plaintiff, and acted negligently, recklessly, wantonly, and/or willfully to vex, harass, oppress, and annoy, Plaintiff, and/or to subject her to lasting fear, anger, upset, anxiety, humiliation, outrage, financial loss, and extreme ongoing emotional and mental pain and distress.

**Count XXIII Labor Code Violations: Board Defendants, HCSD**

161. The Board Defendants and thus the HCSD, acted negligently, recklessly, wantonly, and/or willfully to: harass, oppress, coerce, intimidate, and annoy Plaintiff; to deny her due HCSD-related reasonable expenses as a Director of the HCSD as promised by them; to wrongfully impede and deny her rights and duties in her offices public offices; to retaliate against her; to deny her due process in review of her requests for indemnification and reasonable expenses guaranteed by her employment with the HCSD; and, also thereby violated Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, 2699 et seq, and 6399.7.[153]

**Count XXIV Nuisance - CCP§3479; Health and Safety Code §116670**

162. Each and all of the Board Defendants, Dingman, Goff and the HCSD acted to violate the Safe Drinking Water Act, the California Health and Safety Code, and the HCSD Bylaws in their operation of the HCSD water production, treatment, and/or distribution facilities, and thereby created annoying and/or unsafe conditions relating to the proper and lawful operation of water facilities, and distribution of water to the public and to Plaintiff.

**Count XXV Violation(s) of the Covenant of Good Faith and Fair Dealing**

163. Plaintiff alleges that in engaging in the conduct set forth in this complaint, the Board Defendants, and thus the HCSD, acted dishonestly, and in bad faith towards her.

---

[153] Plaintiff is also entitled to penalties and damages as provided by Labor Code section 2699, et seq.

**Count XXVI - Violation(s) of the Bane Act; Board Defendants, Winston, Bowles.**

164. While engaging in each instance of the wrongful conduct set forth in this complaint concerning improper/illegal meetings, those held without notice (or upon improper notice), and those actions taken *ultra vires* or *ex parte* purportedly on behalf of the HCSD, but which were without any lawful action of the Board made pursuant to the brown Act and/or Government Code §61045, the Board Defendants, along with Winston and Bowles, agreed, planned, acted, and assisted each other to retaliate against Plaintiff in the exercise of her Constitutional and statutory rights, and did so while engaged in coercion, misrepresentation, intimidation, refusal of access to HCSD documents, customer billing and communications, and other records. These Defendants undertook those and other wrongful acts to intimidate, oppress, and coerce Plaintiff into abandoning her duties and authorities as an elected officer, and Secretary of the HCSD, and from exercising her protected rights in both her individual and official capacities as granted to her under the Constitution of the United States and the State of California - all in violation of the Bane Act. Plaintiff requests statutory damages under §51, and §52.1(b) thereof.

**Count XXVII Purported Official Acts of the Board Defendants Are Void**

165. The acts of the Board Defendants as purporting to act as the HCSD, as set forth herein, occurring at each of the improper and/or unlawful meetings described in Section V, are null and void due to being *ultra vires*, due to criminality[154]; due to being taken in violation of constitutional and statutory rights of the Public and Plaintiff; due to being a nuisance *per se*[155]; due to Brown Act violations[156]; due violating mandated procedures of the HCSD as expressed in the April 18, 2014 Bylaws and related Resolutions; due to having been falsely certified by Hanson[157]; and/or due to having been undertaken while a conflict of interest existed regarding the issue or action undertaken. Plaintiff, in addition to any other relief authorized by law, is therefore entitled to a declaration by the Court that such acts were void on those bases, and enjoining these Defendants from such wrongful conduct in the future.

**Count XXVIII Improperly Unbilled Fees and Charges - Gifts/Waste of Public Funds**

166. The Board Defendants, with the assistance, aiding and abetting, and ratification of

---

[154] See Govt. Code Sections 54959, 61064(a), 91003(b); Civil Code Section 3369.

[155] E.g., operation of the water plant in violation of the CWA, the SDWA, and Health and Safety Code.

[156] See Govt Code Sections 54953(a) and (c); 54960.1(d).

[157] Plaintiff is saying that she is informed and reasonably believes that Hanson never actually took, or received, actual votes on some of the purported resolutions and other actions purportedly taken by the Board Defendants at various public and non-public meetings, but instead falsified such votes as to the resolutions, motions, appointments, etc.

Dingman and Bowles, have conspired and acted from the period on or about June 18, 2014 through December 3, 2015 to: improperly bill, fail to bill, falsely bill, fail to impose, improperly waived or reduced, and failed to collect, all due and payable fees for service and other charges as set forth in the HCSD Bylaws and Resolutions from residential, commercial, and governmental accounts of the HCSD, those funds being improperly expended without any rational relationship to any beneficial public purpose; and so caused injury to the funds and property of the HCSD. Relief is requested pursuant to the provisions of California Code of Civil Procedure Section 526a as to each individual or entity receiving such wrongful gifts and waste of public funds.

**Count XXIX Gifts of Public Funds; Board Defendants and Duke Martin**

167. The Board Defendants, with the assistance, aiding and abetting, and ratification of Defendants Bowles, Dingman, and have wrongfully acted from the period on or about June 18, 2014 through December 3, 2015, to improperly bill, fail to bill, falsely bill, fail to impose, fail to collect, and have improperly waived and reduced previously-, and lawfully-imposed commercial rates and charges for water service and other charges relating to parcels owned by Defendant Duke Martin, with those funds thus being improperly expended without any rational relationship to any beneficial public purpose. This conduct also constituted a waste, and illegal expenditure of, taxpayer funds pursuant to the provisions of California Code of Civil Procedure §526a.

**Count XXX Exemplary Damages (Punitive Damages)**

168. The conduct of each Defendant, or specified group of Defendants as set forth herein, was willful, malicious, with intent to: vex, annoy, oppress, coerce, and cause harm to Plaintiff; to interfere with and/or impede exercise of statutory and/or constitutional rights by Plaintiff, or undertaken with willful or wanton indifference to the harm that may have befallen to Plaintiff. Plaintiff has been harmed by each act of Defendants, all as alleged herein.

**Count XXXI Void Acts by Board Defendants, Warrant of Oct 15, 2015**

169. Submission by the Board Defendants on October 15, 2015 of a falsely-certified warrant request to the Siskiyou County Auditor violated the provisions of Government Code section 61045[158], the Brown Act, and constituted a gift of public funds to Clint Dingman as payment in excess of his contract with the HCSD, all in violation of Cal. Const. Art. XVI, Secs. 6, and 17; and, Govt. Code §8314.

//////

[158] Due to the warrant request not being the result of exercise of BOD authority at any public meeting.

**Count XXXII Breach of Fiduciary Duty by Board Defendants, Goff, Bowles.**

170. The Board Defendants, Goff, and Bowles, as Officers of the HCSD, owed it, the public, and Plaintiff duties of care, to account, and in good faith and fair dealing in conducting the business of the HCSD, and with Plaintiff (as a fellow Director, as Secretary, and/or as an elector, property owner/taxpayer, and water customer), yet each failed in these duties as specified in this Complaint. The Board Defendants also failed in their duty of loyalty to the HCSD by acting contrary to its interests by diverting and/or wasting public funds, as well as improper use of their positions, and the resources of the HCSD via the various mechanisms set forth in those sections pertaining to their conduct.

**Count XXXIII Failure to Perform Mandatory Duty by HCSD and Board Defendants**

171. Plaintiff alleges that the conduct of the HCSD, Hanson, Brown, Barnes, Gifford, Dingman, and Goff, concerning: failure to properly maintain and staff the water production, treatment, and distribution facilities of the HCSD; to abide by the provisions of the HCSD Bylaws relating to fees and charges, and voter control; to comply with the Clean Water Act and/or Safe Drinking Water Act; to comply with the Health and Safety Code, CPRA and CTA; and, to create, maintain, and/or file with the State all necessary and/or required logs, information, documents, and/or reports, also constituted a failure to perform mandatory duties, and so these Defendants are subject to declaratory, injunctive, and other just relief as granted by this Court.

**Count XXXIV - Violation of Bane Act by Hanson and Winston**

172. The actions by Hanson and Winston taken against Plaintiff concerning the planning and execution of the threatening email, and that intimidating, harassing, coercing, and wrongful conduct related thereto, which was calculated to, and did, interfere with Plaintiff's rights duties, and powers of office as Secretary and Director of the HCSD, and her rights under the Constitutions of the United State and the State of California, in both her individual and official capacities - all in violation of the Bane Act. Plaintiff requests statutory damages under §51, and §52.1(b) thereof.

**Count XXXV - Waste of Public Funds as to Basic Labs**

173. The payments made to Basic Labs arising from the purported "water sampling and testing", and in the amounts represented by invoice #1509553, were improper, wrongful, arose from misrepresentation and the use of deceit, were charged without notice concerning them, and without any lawful authorization of the HCSD Board, and so constituted a waste, and illegal expenditure of, taxpayer funds absent a reasonable public benefit pursuant to the provisions of California Code of Civil Procedure §526a, and its associated jurisprudence.

**Count XXXVI - Violation of Equal Protection/Due Process; Hanson, HCSD, and Bowles**

174. The agreement and actions by the HCSD, Hanson, and Bowles to charge Plaintiff different rates and fees relating to water service than those charged to themselves and/or their friends and associates, without any notice or opportunity to be heard, and without any rational governmental or other lawful reason for doing so, violated Plaintiff's rights to be treated equally under the law, and to due process of law.

**Count XXXVII - Violation of Bane Act by Hanson, Winston, Goff, and Dingman**

175. The agreement, planning, undertaking, and ratification of actions by Hanson, Winston Goff, and Dingman concerning the exclusion of Plaintiff from any access to the HCSD water facilities and/or the documents produced and/or stored there, by means of intimidation and coercion by Dingman and Winston, was calculated to, and did, intimidate and coerce Plaintiff from exercising, and interfered with Plaintiff's exercise of, her rights duties, and powers of office as Secretary and/or Director of the HCSD, and her rights under the Constitutions of the United State and the State of California, which was a violation of the Tom Bane Civil Rights Act. Plaintiff seeks statutory damages under §51, and §52.1(b) thereof.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff now prays for judgment against the Defendants, and:

1. A declaration that all acts by the Board Defendants at each non-public and/or improperly noticed and/or conducted meeting, or that were taken by any individual or group of them *ex parte* were *ultra vires* and void, as well as in violation of the HCSD Bylaws, and so void on that basis as well;

2. A declaration that any acts by the Board Defendants, collectively or individually, including any "agreements" or contracts, done or made in violation of any State or Federal law, the Bylaws, and/or of Plaintiff's Constitutional rights as a Director and/or the Secretary of the HCSD, or that were an improper delegation of Legislative authority, were *ultra vires* and void;

3. An Order declaring that all acts by the Board Defendants as set forth in paragraphs 25-29 were in violation of the Brown Act, were also void, and enjoining such conduct in the future as provided by California Government Code §54960, and §54960.1;

4. As to Plaintiff's Federal claims: an award for general, special, and economic, damages of $450,000; and, exemplary and punitive damages in the sum of $300,000, as to those causes of action for which monetary relief is authorized (only) and jointly and severally against the Defendants herein; as to Plaintiff's State pendent claims, an award for general, special, and

economic, damages of $450,000; exemplary and punitive damages in the sum of $300,000; except, that as to Defendants KWB, Winston, MPB&F, and Lucas, no personal damages are sought by Plaintiff who instead seeks ***only*** disgorgement of all wrongfully billed and/or collected fees by these defendants to the benefit of the public fisc of the HCSD (along with appropriate declaratory and/or injunctive relief to the benefit of herself and to the public equally); and, any actually incurred reasonable attorney fees, costs and disbursements herein;

5. Disgorgement to the HCSD by Defendants Winston; Kirsher, Winston & Boston, L.C.; Lucas; and, Murphy, Pearson, Bradley & Feeney, Inc. of all fees collected based on contracts or "self assignments" made in violation of: Government Code §1090; Business and Professions Code §6104; Professional Conduct Rule 3-600(E); Government Code §61045; any other Rule or law of the United States and/or the State of California, of the Bylaws; and/or, which were derived from improper delegation of legislative authority by the Board Defendants;

6. Disgorgement of all gifts of public funds by the HCSD and/or the Board Defendants (or any of their agents) as to Bowles, Dingman, Goff[159], HCBC, Crittenden, Puckett, and any other entity, independent contractor, agency, water customer, or individual receiving such, including, but not limited to, those who had water charges and/or fees of any sort improperly or illegally uncharged (by any mechanism, including failure to read the meters), reduced, or waived in violation of the HCSD Bylaws;

7. Restitution by the Board Defendants as provided by HCSD Bylaws Section A-9(26);

8. An Order commanding the HCSD, Clint Dingman, and/or Ernest Goff (and/or their successors) to bring all water facilities of the HCSD into compliance with the CWA and SDWA, and to repair and operate the surface water facilities at all times, in conformance with all laws;

9. An Order prohibiting operation of the HCSD water production, treatment, and/or distribution facilities by any person not holding the proper certifications issued by the State of California, and prohibiting Defendant Dingman from continuing to do so without a Treatment Operator certification, or in violation of any provision of the Health and Safety Code[160];

10. A declaration that the HCSD, and each of its Board and Public Officer Defendants herein, has permitted ongoing violations of the Clean Water Act, and Safe Drinking Water Act, and imposing an appropriate civil penalty against each Defendant determined responsible;

---

[159] In the case of Goff and Bowles, this includes the cost of any purported indemnification or defense by the HCSD and/or Board Defendants, insofar as such was not specified in their purported contracts.
[160] As defined in Health and Safety Code §106876 and/or as otherwise provided by law.

11. An injunction prohibiting the gifting of public funds, by wrongfully provided indemnification or defense; excess pay or pay for illegal conduct or object of contract; wrongful waiver or reclassification of any fee or charge; or, by provision of any benefit not required by law, by any of the Defendants to themselves, to each other, or to any John Doe or third party;

12. An injunction prohibiting any Defendant from undertaking, or permitting, the operation of the HCSD water treatment and/or distribution facilities by any person (including Dingman) who does not have the water operator certificate(s) required by the State of California;

13. A finding and declaration that the HCSD Board never took action in compliance with Government Code §61045 to amend Dingman's employment contract, terms thereof, number of hours to be worked, nor rate of pay, and so any changes to Dingman's pay or hours worked beyond any required by wage laws were unlawful gifts of public funds which should be disgorged by Dingman and returned to the HCSD;

14. A finding and declaration that any false claims by Dingman occurring during the times material to this complaint, concerning tasks purportedly accomplished which were not, hours worked which were not, and/or excess time beyond what was actually taken to complete any task, were frauds on the HCSD, and a waste of public funds which should be disgorged by Dingman to the HCSD according to proof;

15. An order enjoining the HCSD from diverting funds from water fees and rates for any purpose other than to fund actual operations of the HCSD, the production of potable water to the customers of the HCSD, or for repair or improvements to facilities that produce potable water;

16. An injunction prohibiting the HCSD, Board Defendants, Goff, and/or Dingman from allowing any further *uncontained* outflow from well #3 into Rancheria Creek in violation of the Clean Water Act, but allowing the flow from well #3 to be captured and stored for fire suppression or other lawful use;

17. An Order for preliminary and permanent injunctions ordering the HCSD, Board Defendants, Goff, and/or Dingman to remedy all nuisances, violations of law, and/or violations of any administrative rule alleged in the complaint concerning the operation of water production, treatment, and distribution by the HCSD;

18. An Order for preliminary and permanent injunctions ordering the HCSD, Board Defendants, Goff, and/or Dingman to immediately cease any failure to properly read meters, and to immediately collect all properly due and payable fees and charges from any customer who had water charges and/or fees of any sort wrongfully uncharged, reduced, reclassified, and/or waived during the period set forth the complaint;

19. An injunction prohibiting the HCSD, Board Defendants, Goff, and/or Dingman from allowing Dingman to perform any water treatment duties at the HCSD water treatment plant, including by the addition of any chemical to the water flowing in the HCSD system, until such time as Dingman (or his successor) obtains a Water Treatment Operator certification from the State of California;

20. Statutory damages under the Bane Act in the amount of $25,000 against the Board Defendants, Winston, Goff, and Dingman, and for each discreet act by each of these Defendants; and,

21. For such other and further relief as the court may deem proper.

Respectfully submitted this 19th day of July, 2019

Kimberly R. Olson

Kimberly R. Olson, Plaintiff Pro Se

Kimberly R. Olson
PO Box 243, Hornbrook, CA 96044
kimberlyrenee@yahoo.com (email not for service)
(530) 475-3669

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kimberly R. Olson,<br>Plaintiff,<br>vs.<br>Hornbrook Community Services District ("HCSD"), et al, and John Does 9-50,<br>Defendants, | Case No: 2:15-cv-0646-MCE-CMK<br>CERTIFICATION OF SERVICE |

PROOF OF SERVICE - I affirm under penalty of perjury under the laws of the United States that I served all appearing parties a true copy of the Third Amended Complaint document via US Mail to the appearing parties in this action, or their counsel of record, at the address(es) below, on July 19, 2019 as follows:

Colin M. Bogener
1600 West St.
Redding, CA 96001

Subscribed and sworn this 19th day of July, 2019, at Hornbrook, California.

Kimberly R. Olson, Plaintiff Pro Se

# EXHIBIT 4

FILED
DEC 20 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY CLERK

Roger Gifford, In Pro Per
15226 Hornbrook Rd.
Hornbrook, CA 96044
530-340-1395, gunsnhorses@yahoo.com

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Roger Gifford,

Plaintiff,

vs.

Peter Kampa; Robert Puckett, Sr.; Patricia Slote; Melissa Tulledo; Julie Bowles; Clint Dingman; Ernest Goff; Hornbrook Community Services District (a.k.a. "HCSD"); Hornbrook Community Bible Church Inc.(a.k.a. "HCBC"); Steven Crittenden, Duke Martin, James Soares, and, John Does 1-20

Defendants,

Case No: 2:17-CV-2421-TLN-DMC PS

**SECOND AMENDED COMPLAINT**

**(JURY TRIAL REQUESTED)**

ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; PENDENT STATE CLAIMS

USC 42 §§1983, 1985, 1986, and1988; USC 18 §1513(e).

## I. Jurisdiction.

1. Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of the United States Code; an action arising under the Constitution and laws of the United States, Amendments 1, 4, and 14 of the United States Constitution; and, sections 1983, 1985[1], 1986, 1988, and 2000e of Title 42 the United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff. Supplemental jurisdiction is asserted over Plaintiff's pendent state law claims for relief, and so also as provided by the HCSD Bylaws as adopted on April 18, 2014 at §§A-9(1); A-9(13); A-9(26); and, 1-5.030.[2]

---

[1] That is, the various defendants specifically agreed, acted, and conspired with each other, and/or the "Board Defendants", to violate Plaintiff's Constitutional rights, and the right to vote as an elector of the local District as provided by the HCSD Bylaws and State law, without due process.

[2] Among other sections thereof. The HCSD Bylaws as adopted and ratified on April 18, 2014 were lodged with this Court as ECF #64, along with HCSD Resolutions #14-023, 14-024, 14-025. Each of these documents are incorporated herein, to the extent necessary for the Court and Parties to make sense of causes of action and requested relief. The HCSD Bylaws do not have any "administrative remedies" requiring exhaustion by a citizen of the District, nor do the Bylaws themselves require exhaustion of any administrative remedies prior to bringing action thereunder. Plaintiff also incorporates by reference the "California Public Records Act", "Brown Act", and the "Community Services District Law" as to the language therein applying to his claims in this SAC. (Government Code §§6252.5, and 6252.7; 54950-54963; and, 61000-61850).

2. Plaintiff Roger Gifford is a citizen of the State of California; a licensed contractor who is also bonded, qualified to bid upon, and undertake, Public Works[3]; and a resident, elector, taxpayer, and water consumer of the Hornbrook Community Services District ("HCSD" or "District"), at all times material. This action is brought Plaintiff is an active community member who has, over the past several years, challenged by petitioning to the HCSD and its Board Members, and to the Courts, the improper conduct of these Defendants concerning operations of the HCSD, including their violations of the Brown Act, California Public Records Act, Health and Safety Code, Government Code, and the HCSD Bylaws. Each of the Defendants is aware of these actions, because they were either defendants in those actions as well, because they attended regular and/or special meetings of it's Board of Directors while Plaintiff was present, or because they reviewed monthly billing submitted by attorney Robert Winston[4] ("Winston") to the HCSD. Plaintiff is also a former Director of the Board of the HCSD, and has personally inspected every part of the HCSD's water production and treatment facilities, and its distribution system, most of which is observable from public vantage points.

3. While reference is made herein to acts, events, and statements made at purportedly public meetings of the HCSD Board, and/or that are tangentially related to litigation, it is not Plaintiff's intention to base any state law, or common-law tort, cause of action on any expression of First Amendment rights by any person at any ***lawful*** meeting, or any official proceedings.

4. Events described in this Complaint occurred in and about the town of Hornbrook, California, beginning on or about February 15, 2017 and continued through November 29, 2017. Plaintiff brings actions based only upon claims that accrued within that timeframe, and shall herein refer to that time period as being "material" to this SAC. No cause of action, expressed or implied, is brought herein based upon **any** other time period, or any previous interaction between the parties. Plaintiff learned of the facts underlying his allegations in this SAC by: personal observation and investigation; conversations, communications, and other interactions with the Defendants; attending meetings of the Board of Directors of the HCSD; reviewing customer billing, flyers, notices, and other documents created and distributed by the HCSD throughout the

[3] See California Civil Code section 3100.

[4] The monthly billing states the case names on it, and so features Plaintiff's name prominently throughout. The billing, as of the time material to this complaint, totaled well over $150,000 (see example dated "May 19, 2017" attached to this SAC), does not include the amounts already paid out for lawyer fees, and demands a monthly payment of $1,500.00. Each of the Defendants (with the exception of the HCBC) has repeatedly expressed anger, frustration, and resentment towards Plaintiff over the billing at Board meetings, and in conversations with others in the community, and also expressed an agreement and shared goal amongst themselves of seeking ways to "stop" Plaintiff from being able to bring legal actions against the HCSD and its officers, employees, and agents.

community of Hornbook, California; conversations with customers of the HCSD who are acquaintances of Plaintiff; review of court and other public records; and, communications to and from the California State Water Resources Control Board.

5. Plaintiff timely provided written notices of the basis for all state claims to the HCSD in full compliance with all requirements of the California Tort Claims Act, Government Code sections 905, 910, and 915. The HCSD failed to respond to Plaintiff's notices in any way. Plaintiff is under no administrative remedies exhaustion requirement as to any of his claims.

6. This is a Federal question, civil rights, and state common law, statutory, and tort-claims action arising from unconstitutional, unlawful, and/or wrongful actions taken by each named Defendants in their official capacities, using their official positions, or acting as an agent of a Defendant public officer/official/employee themselves acting under the color of State law.

7. Defendant HCSD is a public agency within the County of Siskiyou, created, and operating as a special (water) district[5] under laws of California[6], the United States, and its own Bylaws[7], and subject to their jurisdiction[8]. The borders of the HCSD, and all its water-related facilities, lie in and about the tiny town of Hornbrook, California. Insofar as allegations in this complaint are made against the "Board Defendants", or management-level employees of the HCSD in their official capacities, it is Plaintiff's intent to apply those allegations to the HCSD.

**II. "Board Defendants" Defined; Contractor and/or Employee Defendants.**

8. Defendants Robert Puckett ("Puckett"), Melissa Tulledo ("Tulledo"), and Patricia Slote ("Slote") were Members of the HCSD's Board of Directors ("BOD" or "Board"), and/or Officers of the HCSD, and are referred to collectively herein as "the Board Defendants". The "Board Defendants" took wrongful actions in their official capacities as public officials and officers, and/or under color of law of their positions as described herein, and also failed to properly supervise, train, and/or control, the HCSD employee and contractor Defendants, all as set forth below. Julie Bowles ("Bowles"), Clint Dingman ("Dingman"), Ernest Goff ("Goff"),

---

[5] Special Districts are primarily controlled by California Government Code sections 61000, *et seq.*

[6] Including requirements of only conducting business via public meetings as prescribed by the Brown Act (see Government Code §61044; see also §61045), Public Records Act; and, other statutes as cited herein.

[7] The HCSD Bylaws ("Bylaws"), enacted on April 18, 2014, created strict voter approval requirements for certain types of action by the District, and the Board - all of which provisions specified that they may not be revoked or altered without a vote of the electors of the District. No such votes have ever been had.

[8] As with a municipality and its local charter, the Bylaws of a district are its "constitution" of policies for operation of the district - which are required by law. See Govt. Code §§61040(a), 61045(g); *Domar Electric, Inc. v. City of Los Angeles*, 885 P.2d 934, 938 (Cal. 1994) ("[T]he charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state constitutions and to preemptive state law.") The HCSD and it officers must therefore comply with their own Bylaws

and Peter Kampa ("Kampa") were employees, managers, contractors, officers, and/or agents of the HCSD/Board Defendants, and also "public employees" and/or "public officers". All causes of action against the Defendants specifically named in this paragraph are brought against them in their official and individual capacities, each to the extent permitted by law.

**III. Duties of Defendants; Breaches of Duty.**

9. Each of the Board Defendants, and each HCSD employee and/or contractor, owed a fiduciary duty[9] to the District and its constituents, and was under mandatory duties imposed by state laws and the HCSD Bylaws as to each property owner, elector, water consumer, and water customer in the District[10] to: maintain the District's finances in a solvent and efficient manner; to bill for and collect all charges and fees due to the District[11] as well as those fees and charges previously billed but unpaid; to apply for and obtain grants and other funding available for the maintenance, upgrading and repair of the Districts facilities[12]; to establish, set, and collect, rates, charges, and fees sufficient for the ongoing proper operations, maintenance, repair, and expansion of the HCSD's facilities; to comply with its own Bylaws as enacted on April 18, 2014 - including all of the voter control provisions thereof; to operate the HCSD water production, treatment, and distribution systems in full compliance with the federal Clean Water Act[13] ("CWA"), and the Safe Drinking Water Act[14] ("SDWA"); as well as all State laws and

[9] The fiduciary duty of the Directors of the HCSD is enshrined in State law at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. The HCSD Bylaws provide qualified persons may bring an action on behalf of that duty at Section A-9(26), and also provide charges may not be waived, and rates may not be reduced without voter approval, and that any Director(s) doing so without the required voter approval are liable for the lost income to the District (Section A-9(1); 1-3.010).

[10] See HCSD Bylaws at A-9(26); Water Code sections 31007, and 71616.

[11] Including a $39 per parcel "standby fee" by the 1996 Bylaws, and ratified as Section A-9(13) in the April 18, 2014 Bylaws. The Board Defendants took unlawful action(s) to nullify, and/or failed to initiate, the collection of the standby fee as required thereby. The Bylaws and the Resolution(s) of the HCSD concerning mandatory collections of these fees and charges do not provide for any changes or waivers thereof *without voter approval*. Plaintiff, as an elector, therefore has a vested right, granted by the HCSD itself, to vote on each instance of **any** fee waiver, change, reduction, reclassification, etc. (HCSD Bylaws, Sections A-9(1); A-9(13); A-9(26); Chapter 3, Section 1-3.010; Chapter 5, Sections 1-5.010, and 1-5.030.) When governmental agencies purport to establish rules, administrative procedures, notice and hearing rights (including the right to vote on certain subjects), and/or other property interests in the services or benefits they provide to the public, they may not take away any of the interests they create without procedural and substantial due process, the fundamental form of which is *proper* notice, and a predeprivation hearing. See *Goldberg v. Kelly* (1970) 397 U.S. 254, 255-261. None such occurred here.

[12] See also HCSD Bylaws at Section A-7.

[13] At Section 505 thereof.

[14] See generally 42 USC § 300j. Although no cause of action is directly set forth in this SAC for violations of the CWA and/or SDWA per Court Order, Plaintiff still asserts he was unlawfully retaliated against by the Defendants for exercise of his free speech and petitioning rights concerning his reports to government agencies, and actions in the courts, of their violations of these federal laws, and that their violation thereof constituted negligence, and resulted in harm.

regulations, and by the use of only lawfully certified personnel[15]; to refrain from waste and wrongful diversions of public moneys to themselves, their friends, and/or co-conspirators; to obey the provisions of the Uniform Construction Costs Accounting Act ("UCCAA", Public Contract Code ["PCC"] sections 22000 *et seq*)[16]; and, to maintain the entire water production, treatment, and distribution system in good repair and safe operation - per Civil Code §1714(a) and as otherwise provided and/or required by law.  These Defendants willfully failed, and/or recklessly and/or knowingly failed to perform those mandatory duties, and/or acted contrary thereto, while agreeing and planning amongst themselves to do so, which caused harm to Plaintiff, including impairment and loss of his statutory and Constitutional rights, along with personal damages.  All of the harms, claims, and damages alleged in the Complaint were thus also reasonably foreseeable to each of these Defendants, and yet, despite their ability to do so, they failed to take any action to prevent, or cure, the harms and damages inflicted upon Plaintiff.

10.  Plaintiff also seeks injunctive and declaratory relief concerning the acts of Defendants, recoupment to the public fisc of wrongfully diverted, uncollected, and/or wasted taxpayer funds, as well as general, special, and exemplary damages.  With respect to duty, a defendant "owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which made the conduct unreasonably dangerous." *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399.  Breach of the standard of care means a failure to act as a reasonably careful person in the same situation (i.e., CACI 401).  Causation means that the harm would not have occurred but-for the negligence of Defendants. (CACI 430.)

11.  Based on their shared resentment of the lawyer fees they incurred from defending against Plaintiff's actions in Court, his assistance to others with their legal actions against the District (by serving papers, appearing as a witness, and the like), as well as Plaintiff's criticisms of their actions regarding the HCSD that Plaintiff expressed at Board meetings, in emails and letters to the HCSD and its Officers, and by complaints to government agencies, the Board Defendants, the HCSD, and HCSD employee Defendants herein each and all stated, and/or agreed with statements made by individual Board Defendants, to the effect that they would

---

[15] Any person performing water treatment and/or distribution services for any entity providing potable water to the public must, by law, obtain and maintain certifications issued by the State of California.  See Health and Safety Code §§106875, and 106885; 22 California Code of Regulations, §§63765 and 63770.
[16] The HCSD adopted these provisions as part of its rules and regulations for operation of the District in June of 2017 (a copy of the text of the Resolution doing so is attached hereto).  The HCSD Bylaws also require competitive bids at Section A-2(8).  It is thus under additional mandatory duties to comply therewith, and there is no compelling government interest in not so complying with the Bylaws.

exclude Plaintiff from any opportunity to participate in, or bid on, and public works for the HCSD "because of the lawsuits" he had filed against the HSCD, its officers, and employees.

12. During the times material to the complaint, the Board Defendants and Kampa, via personal meetings, phone calls, and emails, agreed amongst themselves, and thereafter acted in a coordinated manner, to discriminate against Plaintiff by refusing to grant him information about, and access to, contractor and bidding lists for public works jobs and services needed and/or undertaken by the HCSD, and also discriminated against him by preventing him from participating in bidding and job applications to the HCSD[17], meanwhile allowing other local contractors (including some who were not even properly licensed and bonded for public works jobs) to do so[18]. Additionally, although Plaintiff repeatedly requested of the HCSD that he be permitted to do so, Plaintiff was not permitted to hook up the property upon which he resides, nor residences for which he provides contracting services, to the HCSD water system on the same terms and conditions as all of the other parcels with connections to the water mains in the District, instead having his many requests to do so completely ignored, and with no opportunity to be heard on the issue. Finally, despite multiple demands to the HCSD, Plaintiff was denied, without any opportunity for a hearing, his right to consideration of, and to actual indemnification of, his medical costs and associated damages incurred for injuries he sustained while undertaking duties as a Director of the HCSD on the same terms and conditions as indemnifications routinely granted for all other Directors, and/or former Directors, of the HCSD[19]. The disparate treatment against Plaintiff concerning refusal to indemnify his medical costs, in refusing to permit him to

---

[17] This is "constructive disbarment" - a procedural due process claim under §1983.

[18] Prior to awarding a contract, the public entity must verify that the bidder is appropriately licensed to perform the work designated in the prime contract. (Pub. Cont. Code §6100.) Lists of qualified contractors must be created and maintained. (Pub. Cont. Code § 22034.) Despite these requirements, these Defendants agreed and acted together to prevent Plaintiff from registering for the "list", and to deny him notice of any projects or public works by the HCSD. See Domar Elec., Inc. v. City of Los Angeles, 9 Cal.4th 161, 175-76 (1994) (stating that "bidding requirements must be strictly adhered to in order to avoid the potential for abuse in the competitive bidding process"). As stated by one court, the "importance of maintaining integrity in government and the ease with which policy goals underlying the requirement for open competitive bidding may be surreptitiously undercut, mandate strict compliance with bidding requirements." Ghilotti Constr. Co. v. City of Richmond, 45 Cal.App.4th 897, 907-08 (1996). Given these policies underlying the competitive bidding laws, the California Constitution and case law prohibit any payment on a contract made in violation of those laws. Cal. Const. art. XI, § 10; Miller v. McKinnon, 20 Cal.2d 83 (1942); Reams v. Cooley, 171 Cal. 150 (1915); Zottman v. San Francisco, 20 Cal. 96 (1862). There is no legitimate governmental interest in failing to obey the laws.

[19] During times material to the SAC, the medical bills were also reported as delinquent to Plaintiff's credit report, and repeatedly caused damage thereto, resulting in excessive costs of credit and bonds, harassment by collection agents, and other financial and psychological/emotional harms to Plaintiff.

hook up his own, and others' residences to the HCSD water system, and in refusing Plaintiff any hearing or response on those issues, served no legitimate or reasonable governmental purpose.

13. Plaintiff is therefore informed, and reasonably believes, that this disparate, discriminatory, and harmful treatment of him by these Defendants is based upon his Constitutionally-protected conduct in filing legal actions, making CPRA requests, reports to government agencies, testifying as a witness, serving legal papers, and assisting other people to do these things. These acts of the Defendants were thus arbitrary and capricious; were without notice, or any other due process; were recklessly undertaken against Plaintiff without concern for any harms they inflicted on him; were calculated to injure Plaintiff personally and/or financially; and/or, were undertaken with intent to damage, seize, and obstruct his property interests (including his right to indemnification as a government officer, to hook up to the water system, and to be noticed, and to bid on, public works and other jobs with the HCSD - all to the same degree and extent as other persons, and other contractors, who did not engage in Free Speech and/or Petitioning against the HCSD or its officers, employees, and agents[20] were allowed to).

**IV. Capacities for Suit of the Defendants; Allegations of Civil Conspiracy.**

14. All claims are brought against Defendants their individual, <u>and</u> official capacities.

15. Each of the Defendants, individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, managing agents, owners, masters and servants, ostensible agents, principals, co-conspirators and/or partners of one another. In engaging in the conduct described, Plaintiff is informed, and so reasonably believes, that each Defendant was at all times acting pursuant to a joint agreement with the other Defendants to do so, with the knowledge, consent, approval, encouragement, aid, and/or subsequent ratification of each of the other co-Defendants, and under the color of law of the position and authority of the Board Defendants and/or the other HCSD employees, who are each supervisory-level public officers.

16. Each of the Defendants caused and is responsible for the herein-described wrongful, unlawful, and/or tortious conduct and resulting injuries by: agreeing with the other Defendants to take wrongful acts and/or achieve the wrongful goals associated with each claim herein; personally participating in the wrongful and/or unlawful conduct, and/or acting jointly, aiding, abetting, or conspiring with others who did so; by benefiting from the wrongful conduct; by knowingly authorizing, ratifying, encouraging, agreeing to, aiding, acquiescing in, or setting in

[20] This is one of several occasions when Plaintiff was treated less favorably than other, similarly-situated contractors in the area as a "class of one" per Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)

motion, policies, plans or actions that led to the wrongful or unlawful conduct or, although some of the conduct may have been lawful in and of itself, was in furtherance of other, unlawful, wrongful, and/or tortious conduct; by failing to take action to prevent the unlawful and/or wrongful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the laws of the United States, the State of California, and/or the HCSD Bylaws; and, by failing to initiate and maintain adequate training and supervision of employees d officers of the HCSD such as to prevent the (foreseeable) wrongful and/or illegal conduct from occurring; and, by ratifying the wrongful or unlawful conduct that occurred by themselves, as well as any agents and officers under their direction and control.

## FACTS AND ALLEGATIONS

### V. DEFENDANT ROBERT PUCKETT, Sr.

17. HCSD Board member and President Robert Puckett is a citizen of Siskiyou County and the HCSD. During the period material to this complaint, about February 15, 2017 and continuing through November 29, 2017, while in Hornbrook, California, Puckett initiated the common plan, agreed to, adopted, aided, abetted, encouraged, and ratified by Tulledo, Kampa, Dingman, and Goff, to administer and operate the HCSD in an unsafe manner which failed to comply with Federal, State, and Local laws; and to create, institute, promulgate, and enforce policies, customs, policies and practices, that were in violation of Federal, State, and local laws as set forth herein[21], and to act on those policies by wrongfully, and in manner contrary to the HCSD Bylaws: undercharging and waiving fees and/or charges for certain customers; failing to impose and collect the "standby fee" as to each parcel in the District as provided by law and the HCSD Bylaws[22]. Puckett also propounded and ratified the policy and procedures of the HCSD

---

[21] This included the plan to have attorney Robert Winston (without being hired to do so by the Board, or via other lawful authority) ghost write purportedly official documents of the HCSD, along with various notices, agendas (or sections thereof) resolutions, bylaws, declarations, contracts, and letters, all supposedly written by Puckett, Slote, and/or Kampa. The purported official documents contained false statements of fact, false findings by the Board, and false declarations and/or "ratifications" of purported prior (also usually unlawful) HCSD acts.

[22] On information and belief after reasonable investigation of HCSD documents, records, and after attending meetings of the Board of Directors to interact directly with the Board Defendants, Plaintiff alleges that these improper actions of undercharging and waiving of fees and charges of the HCSD by Puckett and the other Defendants occurred several times each month during the time period material to this complaint, which is on or about February 15, 2017 and continuing through November 29, 2017. Under the provisions of the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); Chapter 3, Section 1-3.010; Chapter 5, Sections 1-5.010, and 1-5.030, Plaintiff and the other electors of the District were entitled to vote on each such undercharge, waiver, reclassification, etc that occurred, but Puckett and the other Defendants agreed to act, and acted, to prevent any such votes from taking place - without notice to Plaintiff, without any hearings, and without opportunity for judicial review of their actions to do so.

resulting in the Defendants' wrongful acts in failing to comply with each of the provisions of California Water Code, sections 31007 and 71616; and, permitting Kampa to sign off on Dingman's timesheets (containing requests for hours Dingman did not actually work, and/or for duties not authorized by the Board), but without any supervision of Dingman occurring by Kampa, nor any actual verification by Kampa of any of Dingman's claims, activities, or duties. These over-payments to Dingman for the falsified portions of his timesheets were a corrupt act, an improper gift of public funds, and waste of taxpayer funds that served no legitimate governmental purpose.

18. Puckett, while in Hornbrook, California, further conspired with other of the Board Defendants to *ultra vires*, *ex post facto* and/or unilaterally purportedly approve attorney Robert Winston's ("Winston") intervention in several HCSD administrative, and/or Siskiyou County Superior Court, matters being prosecuted by Plaintiff and other persons, as well as in the Third District Court of Appeals, without any BOD approval at a public meeting held in compliance with the Brown Act and Government Code §61045 prior to Winston's appearing therein. The goal of this plan was to divert public funds of the HCSD to benefit Puckett, Slote, Tulledo, Kampa, and those customers of the District getting wrongfully reduced and/or waived water fees and other charges by essentially giving them free legal services paid for by public funds without any public action being taken by the Board. Puckett, Bowles, and Slote thereafter conspired to conceal all records and documents of these acts[23].

19. At all times material, the Board Defendants, Kampa, Dingman, and Goff agreed, conspired, and acted to have Dingman work on, and operate (including by the addition of chemicals to the water supply) the HCSD water production, treatment, and distribution facilities without any certification to do so, in violation of the provisions of Health and Safety Code sections 106875, and 106885, and 22 California Code of Regulations sections 63765 and 63770. These same Defendants agreed, conspired, and acted to allow Dingman to p ark a travel trailer upon, to occupy, and to utilize as his residence, the building and grounds of the HCSD's "water treatment plant", in violation of county ordinance[24], free of charge, without compensation for the costs incurred to the HCSD and the public by his doing so, and without a compelling and/or legitimate public/governmental interest to do so, which is an improper gift of public funds.

---

[23] This included destruction of public records, and violations of the CPRA.

[24] In Siskiyou County, residence in travel trailers and the like is forbidden by ordinance on parcels that do not have a permitted residence, or an active permit to build a residence. The water production facilities and parcels of the HCSD which were occupied by Dingman and his trailer did not have any permitted residences, nor any active permits to build any residences.

20. During times material to this complaint, Puckett initiated the common plan and actively solicited and obtained agreement with the other Board Defendants to wrongfully ignore and *de facto* deny without any hearing, Plaintiff's repeated requests to hook up property upon which he resides, and residences for which he provides contracting services, to the HCSD water system on the same terms and conditions as all of the other connections in the District. The agreement Puckett engendered was further that Plaintiff would be denied, without any opportunity for a hearing, his right to consideration of, and to actual indemnification of, medical costs incurred by Plaintiff for injuries sustained while undertaking duties as a Director of the HCSD. At the time Puckett undertook to create and implement this plan, and to recruit the other Defendants therein by obtaining their agreements to do so, Puckett knew that the disparate treatment against Plaintiff concerning refusal to indemnify his medical costs, and in refusing to permit him to hook up his own and others' residences to the HCSD water system, served no legitimate governmental purpose, and so acted arbitrarily, capriciously, and recklessly, without any concern for harms that might befall Plaintiff. Puckett thereafter used his position as President of the HCSD to control the agendas of the Board's meetings to make sure that the objects of the agreement were achieved by assuring that Plaintiff's issues never came before the Board of Directors at any public meeting, and by refusing to allow any discussion on Plaintiff's issues when he raised them himself at public meetings of the Board.

**VI. DEFENDANT PATRICIA SLOTE.**

21. Defendant Patricia Slote ("Slote") at all times material to this complaint, was a citizen of Siskiyou County, California, as well as a Director and resident of the HCSD, and Secretary of the Board[25] thereof at all times material to this complaint.

22. At all times material to this compliant, Slote was subject to and/or undertook that conduct set forth in Sections III and IV, above. Slote also, via meetings held in Hornbrook California, by telephone, and email with the other Defendants, agreed, acted in concert with, aided, and abetted the other Defendants (and thus the HCSD), to act in concert to engage in that conduct set forth in the sections pertaining to Defendants Puckett, Tulledo, Dingman, Kampa, the HCSD, Goff, and Bowles. Slote undertook that collusion, in part, also by acting with the other Board Defendants to hold unlawful, non-public meetings of the HCSD Board in violation of the provisions of Government Code §§54950 *et seq*, 61044, and 61045(b)-(e) (i.e., via "daisy chain" and/or "spoke and wheel" meetings by way of phone, email, and/or personal meetings), and then and there engage in purportedly official conduct which actually violated State law (and

[25] Secretary is one of the three "officer" positions of the Board of Directors of the HCSD.

particularly the Brown Act, and CPRA), and/or the HCSD Bylaws; plan to, and/or actually create false public records and documents - including "backdated" contracts for Winston, Dingman, and others; determine and act to retaliate against Plaintiff for his complaints to governmental agencies and the courts[26]; determine and act to deprive Plaintiff of his rights to due notice, access to, and to petition the government for grievances[27]; wrongfully and unlawfully delegate Legislative authority and duty to Kampa and/or Winston; act to violate the Brown Act and California Public Records Act (and Plaintiff's due process under those laws) by refusing to respond timely (or often at all) to Plaintiff's requests and notices presented to Slote and/or the HCSD under those laws; destroy records of the HCSD without compliance with the provisions of Government Code section 61200; wrongfully and improperly waive and fail to collect past due accounts for certain persons/entities within the District[28]; and, wrongfully divert HCSD funds as payments and services in excess of (and/or absent any) contract to Clint Dingman - including payments for services not actually rendered, and/or for which Dingman was not properly certified or licensed to legally perform.

23. Each and all of these acts also wasted public funds absent any legitimate and rational public purpose, and Plaintiff seeks disgorgement to the public fisc of those wasted monies, and an injunction prohibiting such conduct.

24. While acting under color of law of her position as HCSD Secretary, Defendant Slote wrongfully acted without action of the Board (so *ultra vires*), and outside of any lawful process, to ratify improper, wrongful, and unauthorized pay increases, hours, and payments to Dingman which were not in compliance with the terms of his contract with the HCSD, and which changes/additional pay/hours increases had never been approved by the HCSD Board in compliance with Government Code §61045. Slote undertook this wrongful conduct by creating and engaging in an unofficial, non-Board-authorized "review" of those increases of pay and hours to Dingman, various documents she collected (but which she would not provide to Plaintiff

[26] By, among other ways: failing to timely and fully (if at all) respond to Plaintiff's tort claims notices, California Public Records Act requests, and/or other complaints and grievances as required by law.

[27] By holding other than open and public meetings, the Board Defendants deprived Plaintiff of notice of, and opportunity to attend, those meetings by his elected officials, and to speak for or against each of the actions they took. They also thus deprived him of the right to association, free speech, and petition by concealing the fact of each unlawful meeting they held, and so plaintiff was <u>also</u> deprived of any due process associated with those curtailments/infringements/eliminations of his rights.

[28] Additionally, Slote, violating her duty as Secretary of the HCSD, failed to record all such acts and actions, and facilitated the altered billing (co-produced by Bowles) and other documentation that allowed this to happen, thus engaging in fraud upon the District and the public (and creating false public records).

to the public in response to CPRA requests), and some payments made to Dingman, but presenting her research and conclusions relating thereto as official acts of the HCSD itself.

25. These actions by Slote resulted in Dingman, during the time material to this complaint, wrongfully being paid excessive wages, false claims for hours purportedly - but not actually - worked, and other payments that were not part of his contract for employment. These improper payments served no legitimate or reasonable public/governmental purpose.

26. Slote also admitted in her "review" of Dingman's pay/employment that the records of the HCSD disclosed there was <u>no</u> action ever taken by the Board at any public meeting in compliance with Government Code §61045 to make any changes to Dingman's employment contract, to increase his hours worked, or to increase his rate of pay, but that she would proceed to act on her own to ratify this wrongful conduct, and obtain a "Release of Liability" from Dingman - regardless of if the process violated any laws, or if any taxpayers/citizens of the District objected to her process, conclusions, and/or the "settlement" she had signed with Dingman *ex parte* and *ultra vires*. Slotes acts thus violated the provisions of Government Code §§54950 *et seq*, 61044, and 61045(b)-(e), deprived Plaintiff of the opportunity to attend a lawful meeting by his elected officials concerning those issues, and to speak for or against each of the actions relating to Slote's unilateral decisions - all without notice. Slote also deprived him of the right to association, free speech, and petition by concealing the fact of each action contemplated and undertaken by Slote in her official capacity, by not giving any notice prior to doing so, and so Plaintiff was also deprived of any due process associated with that curtailment of his rights.

27. Slote's wrongful acts as described above were also part of an agreement and plan between her, Puckett, Tulledo, Dingman, and Kampa, to take joint action to permit Dingman to falsely claim additional pay that he was not entitled to, and to claim extra hours on his "timesheet" that he did not actually work - and to engage in these acts outside of open and public meetings, without compliance with the requirements of Government Code §§54950 *et seq*, 61044, and 61045(b)-(e), and without any notice or opportunity to be heard granted to Plaintiff, and to the public concerning that lack of compliance. Dingman did in fact claim extra and/or false pay rates and hours worked each month thereafter and during the period material to this complaint, harming the District, and wasting public funds. During those times, Slote, Puckett, Tulledo, and Kampa also failed to supervise Dingman to verify any claimed work done, or any actual hours worked, willfully failed to require Dingman to acquire or maintain proper water

treatment/distribution certifications from the State[29], actively acted to prevent Plaintiff and other persons from investigating these circumstances, and/or bringing any actions to correct them by withholding public records, failing to document HCSD operations, and failing to respond to Plaintiff's complaints, CPRA requests, and notices as required by law, and the Bylaws.

28. Slote, in cooperation, agreement, and conjunction with Puckett, Tulledo, and Kampa, additionally permitted and encouraged the wrongful, unsanitary, and unlawful operation[30] of, as well as occupation as a residence, and personal use by, Dingman of the water treatment facility and grounds without payment for its use, or for the utility costs associated therewith. Slote also wrongfully, and without any Board authorization to do so, in support of Dingman's unlawful occupation and use of the water treatment plant as a residence, took Dingman food and supplies there, so also encouraged rodents and unsanitary conditions constituting public nuisance.

29. Slote, in cooperation and agreement with the other Board Defendants, and Kampa, acted to wrongfully deny Plaintiff access to, or inclusion on, the list of contractors for jobs relating to upkeep, expansion, and/or repair of the HCSD water system, and other public works jobs, pursuant to provisions of the Public Contracts Code, and Uniform Construction Costs Accounting Act as adopted by the HCSD. Slote did so because of Plaintiff's protected actions in filing legal actions in the Courts; because of complaints Plaintiff made to various State of California agencies concerning improper administration and operation of the HCSD; and, because of Plaintiff's outspoken opposition to the actions and conduct of the Board and HCSD employees he expressed to Slote and the other Board Members at open and public meetings of the HCSD Board of Directors. Plaintiff knows this is so because Slote, at one public meeting, specifically stated angrily that Plaintiff would "never" be allowed to do any work for the HCSD "because of all the lawsuits" Plaintiff has filed against the District. When Slote made that statement, the other Board Defendants present at the meeting indicated their agreement.

**VII. DEFENDANT HORNBROOK COMMUNITY SERVICES DISTRICT**

30. The HCSD is an aging, unkempt, low-budget entity with deteriorating, inadequate

---

[29] Operation of, or permitting the operation of, any water treatment or distribution facility without the proper certification(s) from the State of California is a misdemeanor, and imposes civil liability, pursuant to the provisions of Health and Safety Code §§ 106878, and 106885.

[30] That is, when Slote knew that Dingman did not have the certifications required by law for Dingman to conduct operations relating to water treatment, and/or operation of the HCSD treatment plant.

facilities that violate Clean Water Act[31] and Safe Drinking Water Act[32] requirements. Each of the Board Defendants, Kampa, Goff, Dingman, and the HCSD have, during the times material to this complaint, created, promulgated, undertaken, and continued underground institutional policies, customs, and practices of the HCSD of willfully failing to comply with laws and duties[33] as set forth in Section III above, and herein. Defendants Dingman, Goff, Kampa, and Bowles were at all times aware of the duties of the HCSD and Board Defendants, and agreed with, aided, and abetted the HCSD and Board Defendants in violating the laws of the United States, and State of California, relating to the Clean Water Act, Safe Drinking Water Act, the Health and Safety Code, the Water Code, the Government Code, the Labor Code, and the HCSD Bylaws. In return, the HCSD and Board Defendants, agreed to refuse to supervise and restrain the actions of, and instead ratify, unlawful, improper, wrongful, and/or tortious conduct by Goff, Dingman, Kampa, and/or Bowles so that they would wrongfully benefit therefrom.

31. The HCSD, by and through the Board Defendants and Kampa, unlawfully diverted certain wrongfully altered, reduced, and/or waived residential water, "standby", rates, charges, and other fees to their friends and acquaintances absent any legitimate or reasonable public purpose, and diverted those and other funds to legal services rather than water system maintenance and production costs as is required by law. These acts harmed Plaintiff by rendering the water produced by the HCSD insufficient, unsafe, and unmonitored, by wasting taxpayer funds, by preventing proper and legally-required upgrades, maintenance, staffing, and repairs to the HCSD system[34], and by devaluing Plaintiff's use of his residence and personal

---

[31] 33 USC §§1251, et seq. The HCSD, Board Defendants, Kampa, Dingman, and Goff, at the times material to this complaint, knowingly permitted outflow of one of its wells containing high levels of salts and boron into Rancheria Creek, thence to Cottonwood Creek, thence to the Klamath River, which is designated as "wild and scenic". Plaintiff utilizes all of these watersheds on a regular basis for recreation, hunting, and fishing. Although Plaintiff does not bring statutory claims under the Act in this complaint, the factual recitation is still relevant to some of his state law claims.

[32] 42 USC Chapter 6A; 40 CFR 141-143. The HCSD's water production, treatment, and distribution equipment is obsolete, and does not meet the requirements of the Act, while the HCSD permits uncertified and unlicensed Operators, contractors, and other workers on its systems. Although Plaintiff does not bring statutory claims under the Act in this complaint, the factual recitation is still relevant to some of his First Amendment retaliation, and state law claims.

[33] The HCSD and Board Defendants failed and refused to establish rates and charges as required by Water Code §§31007, and 71616; failed to maintain and upgrade wells and surface water facilities to engineered standards, all in violation of federal and state law, resulting in water shortages and safety hazards - as well as an inability to properly supply firefighting efforts, particularly in an emergency and/or disaster situation.

[34] The HCSD, Puckett, Slote, and Kampa failed and refused to abide by the provisions of the Public Contracts Code, and Uniform Construction Costs Accounting Act after adopting them, so Plaintiff and the public were deprived of competent repairs, required upgrades, etc, by responsible bidders and licensed contractors without any due process of law - while also wrongfully denying Plaintiff due process, equal

property, while also denying Plaintiff due process of law, and the equal protection of the laws, insofar as these actions were part of these Defendants' policy of refusing to permit Plaintiff to connect to the water system on the same terms and conditions as other residents, and/or customers of the HCSD, and to deny him any hearings on the refusals.

32. The HCSD, and HCSD-agent Defendants were, at all times material, aware that "well 3", intermittently and in violation of State law and the CWA, permits outflow of water containing toxic Boron and salt levels into Rancheria Creek, which flows into Cottonwood Creek, and thence into the Klamath River, without any permit granted by any federal or state agency to do so. Those high levels of salt and Boron are toxic to fish, amphibians, birds, and other animals, and harmful to plants. Plaintiff utilizes Rancheria Creek, Cottonwood Creek, the Klamath River, and their associated drainages for fishing, hunting, falconry, and recreational purposes, and so has been negatively impacted by these unlawful releases from "well 3".

33. During the times material to the Complaint, the HCSD and Board Defendants acted to wrongfully and improperly, in manners contrary to provisions of law and the HCSD's Resolutions and Bylaws, reclassify, waive, undercharge, and/or fail to collect all of the proper water fees, charges, assessments, and past due accounts for some persons/entities within the District, while failing also to impose and collect the "standby fee" as to each parcel in the District as provided by law, the HCSD Bylaws[35], and the Resolutions of the District, without any legitimate or reasonable public purpose to do so, thus wrongly depriving the HCSD of resources necessary to safely maintain and operate the water system, as well as causing water shortages, risk of fire, undrinkable water, and unreported toxic water events.

34. During times material to the SAC, the HCSD purported to enact or enforce rate and customer classification changes, waivers of fees and charges for certain customers, rate reductions, and residential rate changes purportedly in compliance with the provisions of California's Prop 218 and/or the HCSD Bylaws, but in fact it failed to so comply - rendering those proposed changes and procedures void, and without any legitimate or reasonable public purpose. Further, <u>during the times material to this Complaint,</u> the HCSD, Board Defendants, and Kampa, agreed and acted to deprive Plaintiff of due and proper notice of each proposed rate change as required by Prop 218 and/or the Bylaws, and failed to permit Plaintiff as an elector of the HCSD to vote, as mandated by the HCSD Bylaws, on <u>each</u> of the rate increases, changes,

---

protection, and the same opportunity for economic gain that other licensed contractors who were on the list, and/or utilized for public works projects, received from the HCSD.

[35] Including, but not limited to, those section requiring voter approval of the electors of the District to permit or make such changes, waivers, etc to rates, fees, and assessments.

waivers, reclassifications, and/or waivers of fees/charges as undertaken by the Defendants.

35. The general law of California prohibits a municipality from delegating legislative powers unless expressly authorized by the Legislature (see *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 167), from contracting away, or otherwise delegating its powers (*City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 929) , and/or by trying to circumvent such prohibitions by means of some sort of clever legal contortions. (See 71 Ops.Cal.Atty.Gen. 266, 275 (1988).) During times material to the SAC, the HCSD purportedly enacted several resolutions (as well as "underground" policies and practices) wrongfully delegating the authority of its Board to contract, and to expend public funds, to Kampa and/or Winston - contrary to public policy, and provisions of the Constitution and laws of the State of California, and so such delegations were/are void, as were each of the actions taken by Kampa and/or Winston under such purported authority[36]. These wrongful actions also resulted in the significant waste of the HCSD's public funds. Plaintiff seeks declaratory and injunctive relief concerning these actions, return of those funds wasted, and damages as allowed by law.

36. Under Government Code section 61045(a), " A majority of the total membership of the board of directors shall constitute a quorum for the transaction of business", while under section 61045(b), "[t]he board of directors shall act only by ordinance, resolution, or motion." In addition, under the Ralph M. Brown Act, Government Code section 54950 et seq., all acts of the Board must be taken at open public meetings, while "`action taken' means a collective decision made by a majority of the members of a legislative body . . . ." (Gov. Code, § 54952.6.) All acts by the HCSD, and/or those taken by any of the Defendants as its officers, employees, and/or agents which are in contradiction to these provisions are void on that basis, and as against public policy, so Plaintiff is entitled to declaratory and injurctive relief from all such acts as they are set forth herein, and/or discovered during litigation.

37. The Defendants, during the period material to this complaint each and all engaged in violations of the law as a means to advance their wrongful and/ unlawful goals, plans, and torts as set forth herein - including by using serial meetings held in-person, by phone, and by email in violation of the Brown Act. In general, a serial meeting in violation of the Brown Act occurs through a (1) "hub - spoke" or (2) "daisy-chain."

38. "When a person acts as the hub of a wheel (member A) and communicates individually with the various spokes (members B and C), a serial meeting has occurred."

[36] Some of these acts were also undertaken in violation of the Public Contracts Code by non-compliance with the requirements of sections 20682, and 22050, and violated the HCSD Bylaws at Section A-2(8).

(California Attorney General's Office, "The Brown Act: Open Meetings for Local Legislative Bodies 11 (2003).) This centralized network system allows one person to coordinate messages and create a concerted plan to engage in public business through a series of communications that violates the Brown Act. The daisy- chain meeting occurs when one member calls another to discuss business and the second member calls a third to discuss the conversation, and so on. "For example, a chain of communications involving contact from member A to member B who then has communications with member C would constitute a serial meeting in the case of a five-person body." (California Attorney General's Office, *supra*, fn20 at 11.) This sequence of relaying information violates the Brown Act.

39. The Board Defendants have violated the Brown Act using the foregoing mechanisms for the purpose of reaching the agreements detailed in this Complaint, and advancing the wrongful goals and plans set forth herein. That conduct effectively denied Plaintiff the right to due process of law as to notice of and opportunity to attend public meetings, and the decisions made which affected his property and other interests. The meetings held in violation of the Brown Act, by excluding Plaintiff and the public, also violated Plaintiff's First Amendment rights to assembly, to associate, to speak at public meetings, and to petition his local government for redress of grievances. Plaintiff is informed and believes that these Defendants held the wrongful meetings with the specific intention that no speech and/or petitioning could thus occur. Plaintiff seeks declaratory and injunctive relief, and damages, for these acts.

**VIII. DEFENDANT JULIE BOWLES.**

40. Defendant Julie Bowles ("Bowles") was an independent contractor and officer, employee, and/or agent of the HCSD, acting under the color of law of her office as Bookkeeper[37] and/or Treasurer of the HCSD. No agreement exists to indemnify Bowles pursuant to Govt. Code §995 (or otherwise) in her contract with the HCSD.

41. Bowles collaborated with, agreed to participate in, aided, abetted, and assisted the Board Defendants, Dingman, Goff, and Kampa in the wrongful conduct of unlawfully non- and/or improperly-agendized, and/or non-public meetings by meeting with them on multiple occasions individually and/or serially, and/or as a group, via personal contact (at her office, the residences of the Board Defendants, and otherwise), and by telephone and/or email, for the purpose of discussing and reaching consensus concerning official HCSD "public business", including (but not limited to) how HCSD funds would be (improperly) diverted to Winston Bowles, and Dingman; which HCSD customers should get unlawful reclassifications, reduced

[37] As such, Bowles has access to, and control over, creation of customer billings for the HCSD.

and/or waived fees and charges; how to alter the billing and other records to affect and conceal those reclassifications, reductions, and waivers; and, how to submit time sheets and "pay stubs" for Dingman that were in excess of his contracted rate of pay and hours, and/or which contained false claims for hours and/or jobs worked (and how to prevent all those documents, and the associated timesheets, from being revealed to Plaintiff, and the public).

42. Bowles agreed to, collaborated with, aided, abetted, and assisted the Board Defendants, Goff, Dingman, and Kampa, with the Board Defendants' wrongful conduct herein, and in diverting HCSD funds to friends and acquaintances by: failing to properly impose fees, assessments[38], and charges to certain customers[39] via billing and otherwise[40] as well as altering and falsifying records concerning those customers' accounts (including deletion of past due amounts, penalties, fees, etc); and, willfully concealing and destroying those public records. All of this conduct was performed without any legitimate or reasonable public purpose.

45. These acts by Bowles in the operation of the HCSD was part of the conspiracy with the Board Defendants to cause disruption, impairment, and/or nullification of the exercise of protected rights by Plaintiff, and was undertaken in part as retaliation for Plaintiff's legal actions, and complaints to the HCSD Board and government agencies about violations of law concerning the HCSD's operations.

43. Bowles was provided indemnification without formal process by the HCSD in various legal actions when there was no provision in her contract for such indemnification.

## IX. DEFENDANT CLINT DINGMAN.

44. At all times material, Defendant Clint Dingman ("Dingman") was an officer, employee, and agent of the HCSD, acting under color of law and of those offices, as well as being the purported "Systems Trainee" and "Shift Operator" of the HCSD water production, and treatment facilities, and having the duties associated with those positions as set forth in the Bylaws - inclusive of reading customer water meters for billing purposes.  Despite specific requirements under the Health and Safety Code concerning certifications by the State of California regarding persons operating water treatment facilities, Dingman at all times material failed to obtain and maintain those certifications required of a water treatment operator.

---

[38] Including the $39 "standby fee" assessment duly imposed by the HCSD Board on April 14, 2014.
[39] This action would also thus be providing assistance to the Board Defendants in their common plan to ignore, and violate, the provisions of Water Code sections 31007, and 71616.
[40] For instance, Bowles would fail to charge commercially-zoned property at the commercial rate upon the instruction of the Board Defendants, or by Puckett, and/or would modify the billing for certain commercial customers to wipe out past billings at the proper rate.

45. Dingman, the Board Defendants, Kampa, and Goff, conspired, agreed, and acted to wrongfully provide compensation, benefits, indemnification, and/or other pecuniary and/or non-pecuniary benefits to Dingman which were not contractually specified, and/or which were granted outside of an agendized, public meeting of the Board of the HCSD, including allowing Dingman to reside[41], with his dog, at the HCSD water plant, while using that facility for personal purposes (including as a dog run - permitting the animal to defecate all over the property), to store vehicles and belongings, etc - all without any payment by Dingman for those uses.

46. Dingman, Kampa, and Slote, conspired, agreed, and acted to wrongfully provide compensation, pecuniary and/or non-pecuniary benefits, and/or other benefits to Dingman amounting to gifts of public funds by arranging and falsely certifying payments to Dingman for "work hours" Dingman did not actually perform; arranging payments to Dingman which were not contractually specified; and, arranging payments to Dingman granted outside of an agendized, public meeting of the Board of the HCSD. As such, these excess payments constituted gifts of public funds that did not have a legitimate or reasonable public purpose.

47. During the time material to this complaint, in furtherance of that conspiracy, Dingman wrongly (and fraudulently) billed for, and received payment for, hours which he did not actually work, and/or for which he had already been paid, or for hours and rate of pay in excess of his contract terms[42], and/or for alleged labor he was prohibited by law from undertaking[43] - all of which payments represented the gifts of public funds[44].

48. The statutory duty failures by Dingman included improperly regulating Chlorine in the HCSD distribution system[45]; treating the water without the required certifications to legally do so; failing to give notice to Plaintiff, the public and to the State concerning those times Dingman caused the Chlorine to exceed the maximum contaminant level thereof as set by the

[41] That is, Dingman actually occupied the water treatment plant of the HCSD as a residence (despite it not having any bathroom, shower, kitchen, bedroom, etc, nor being zoned for residential use), as well as using that facility for storage and use of Dingman's personal appliances and other property without payment of any compensation, or payment for utilities used, and using the water treatment facility yard to store inoperative vehicles and other personal items.

[42] Cal. Const., Art. IV, § 17.

[43] Dingman's wrongful operation of the water treatment plant and other facilities in violation of the provisions of California Health and Safety Code section 106878, including by his addition of chemicals to the water distributed to the public, also rendered his employment contract, and/or all claims for payment as to those duties void for being unlawful *per se* pursuant to Civil Code §1608 and §1667.

[44] Cal. Const., Art. XVI, § 6; Govt. Code §8314.

[45] That is, during the times material to the Complaint, Dingman on multiple occasions negligently permitted the Chlorine levels of the HCSD water system to exceed the maximum contaminant levels as set by the State of California, thus causing a threat to the health and safety of the public, and of Plaintiff. (22 CCR §64533.5(a).)

State of California; failing to maintain proper logs and records of operations of the HCSD production, treatment, and distribution systems at those facilities and otherwise; and, hiding those events from the public, Plaintiff, and from the State Water Resources Control Board.

49. At all times relevant herein, Dingman agreed to, assisted, aided, and abetted, Goff, Kampa, Board Defendants', and HCSD's common plan to create, file with the State Water Board, and distribute, false public records, documents, logs, and reports concerning the operation of the HCSD and its facilities. Kampa, Dingman, and the HCSD, also wrongfully failed to create, maintain, and file with the State, various required records, testing and treatment logs, and other documents, while not actually performing the work and duties mandated by law to make the HCSD system safe and functional, - all of which resulted in lack of water capacity, poor water quality, incorrectly treated water, and water that was toxic due to Chlorine.

50. Dingman's wrongful operation of the water production, treatment, and distribution facilities of the HCSD[46], in manners contrary to law, and while not having the proper Treatment Operator's Certificate from the State of California, in conspiracy with, and as directed by the Board Defendants, Kampa, and Goff, was willfully negligent, unlawful, and a nuisance *per se*[47].

**X. DEFENDANT ERNEST GOFF**

51. At all times material, Defendant Ernest Goff represented himself as an independent contractor, as the sometimes Chief Systems Operator(s) for the HCSD, as an agent of the HCSD and Board Defendants, and supervisor of Dingman. At some times material to this complaint, Goff was the "operator of record" of the HCSD's water production, treatment, and distribution facilities, acting under color of law and of those offices, and bound by the duties thereof.

52. Goff is a citizen of California, but not of Siskiyou County, or the District. Goff acted as an independent contractor to the HCSD without having any business or other license issued by the County of Siskiyou to do so, and so violated California's Unfair Competition Law ("UCL").

53. Goff, by purportedly acting as the "Chief Operator" and "Operator of Record" for the water treatment facilities of HCSD, had a duty to regularly inspect, oversee, supervise, perform, and directly control the daily operation of the water treatment plant and distribution system as provided by Federal and State laws[48], and the HCSD Bylaws, but failed to do so, while claiming

[46] See 22 California Code of Regulations §§63765, and 63770, California Health and Safety Code §§106875, and 106885.

[47] See California Civil Code section 3479; Code of Civil Procedure section 731; Health and Safety Code section 116670; 22 CCR §64533.5(a). Also see Stage 2 Disinfectants and Disinfection Byproducts Rule (Stage 2 DBPR) 71 FR 388, January 4, 2006, Vol. 71, No. 2.

[48] See Federal Clean Water Act (33 USC §§1251, et seq), and Safe Drinking Water Act (42 USC 300f, et seq); State of California laws implementing same (e.g. Health and Safety Code Sections 116270 et seq,

falsely and fraudulently that he was exercising daily supervision over Dingman, and was in daily, direct control of the water production, treatment, and distribution systems of the HCSD.

54. The position of Chief Operator is classified as an employee position by the California Department of Labor, but Goff agreed, conspired, and acted jointly with the Board Defendants, Kampa, and Bowles, to falsely claim "independent contractor" status so that he, and the HCSD, could avoid due payment of various taxes, workers compensation insurance, and other charges that would normally be due as a result of their hire. These frauds and failures constitute additional unfair business practices under the UCL.

55. During times material to this complaint, Goff acted in concert with the Board Defendants, Bowles, Kampa, and Dingman to extract improper payments from the HCSD for duties he was supposed to perform but did not; to create ana distribute false public documents and reports to state enforcement agencies concerning the operation of the HCSD's water facilities; to operate the HCSD facilities in a manner contrary to law and thus causing a nuisance *per se* to Plaintiff and the public; and, to wrongfully prevent inspections and oversight of the HCSD facilities, while also failing to supervise Dingman's operation of the water treatment plant and addition of Chlorine and other chemicals to the water in the HCSD system. Goff, despite his insistence at being classified an "independent contractor" to the HCSD, also wrongfully obtained indemnification, defense, and other expenses of public money from the HCSD to which he was not entitled by contract of California Government Code §995, et seq, and which were thus gifts of public funds without a legitimate or rational public purpose.

56. Goff engaged in the wrongful and/or fraudulent conduct described above with the agreement, ratification, and assistance of Slote, Puckett, Kampa, and the HCSD, and also agreed to engage in, participated in, aided, abetted, and ratified the wrongful conduct set forth in the sections relating to the HCSD, each Board Defendant, Kampa, and Dingman, including failing to comply with the CPRA, and Plaintiff's due process rights regarding that Act.

57. Goff knowingly permitted Dingman to operate the HCSD water production, treatment, and distribution facilities in an unsafe manner, and in a way that was contrary to Federal, State[49], and local laws. Goff failed to actually supervise or direct Dingman during the performance of any of the tasks Dingman performed for the HCSD. Goff failed to maintain proper logs and documentation of water use and/or the water treatment and distribution system of

116375, 116385, and 116395; California Code of Regulations Title 22, Sections 63765, and 63770).

[49] Goff, at all time material, knew that Dingman did not have a valid Water Treatment Operator's certification issued by the State of California, but permitted and instructed him to add chemicals to the water, and otherwise operate the water production and treatment facilities of the HCSD anyway.

the HCSD; failed to provide for and undertake testing of the "cross-connections" to the HCSD distribution system as required by law; failed to give notice to Plaintiff, the public and to the State concerning multiple occasions Dingman caused Chlorine to exceed the maximum contaminant level as set by the State of California while also assisting Dingman in hiding those events from the public and from the State Water Resources Control Board; and, knowingly permitted Dingman to conduct water treatment and distribution activities/operations at the HCSD water plant and otherwise, while Dingman did not have certifications required by the State.

58. Goff, while purportedly in "direct charge" of the HCSD water treatment facilities was not actually in such "direct charge" - instead being hundreds of miles away[50], while knowingly permitting and encouraging Dingman to operate the HCSD facilities without direct supervision, and/or the certifications for Dingman to do so as required by law; and, acted in agreement and concert with the Board Defendants, Dingman, and Kampa, to wrongfully fail to create, maintain, and file with the State, various required records, testing and treatment logs, reports, HCSD customer complaints, and other documents[51]. Each and all of these failures to comply with health and safety practices for water production acts were a nuisance, and also wasted public funds, so Plaintiff seeks declaratory and injunctive relief concerning that conduct.

**XI. DEFENDANT PETER KAMPA.**

59. At all times material, Defendant Peter Kampa was the General Manager of the HCSD, and the direct supervisor of Dingman, and Goff. Kampa was thus bound by contractual and statutory duty (per Govt. Code 61051 and otherwise) to respond to CPRA requests; accept communications directed to the HCSD and/or its Board; to oversee day-to-day operations of the HCSD's facilities and finances; to supervise HCSD employees and contractors; to effect policies mandated by law, the Bylaws, and as directed by the Board; and, to deal with customer concerns. However, Kampa did not actually perform any of those duties, instead simply using the phone from his residence in Southern California to make calls to HCSD Board meetings, the individual Board members, Goff, and Dingman. During the time material to this complaint, Kampa did not have a valid business license to operate as an independent contractor within the County of Siskiyou, where the HCSD facilities are located.

60. Kampa agreed with, assisted, aided, and abetted, Slote, Puckett, Goff, Dingman, and the HCSD in the common plan to create, file with the State Water Board, and distribute, false

[50] In fact, it was this sort of conduct, engaged in with several other small water districts in addition to the HCSD, that led to Goff losing his T2 Water Treatment Operator's Certification with the State.
[51] All as required by California Code of Regulations section 22-64470, and otherwise. These failures present an immediate threat to the publics, and Plaintiff's, health and safety.

public records, consisting of documents, logs, and reports concerning the operation of the HCSD and its facilities. Kampa, Slote, Goff, Dingman, and the HCSD, also agreed and acted to wrongfully fail to create, maintain, and/or file with the State, various mandatory records, water testing and treatment logs, reports, HCSD customer complaints, and other documents Plaintiff seeks an injunction prohibiting such conduct in the future, and mandating compliance by these Defendants with all laws applicable to the operation of the HCSD's water facilities.

61. Kampa ignored his General Manager obligations and duties in favor of phone calls to the HCSD Board meetings, as well as *ex parte* communications via phone and email to the individual Board members, Goff, Dingman, and/or Winston in violation of the Brown Act[52], and to plan, and/or facilitate the wrongful and/or unlawful acts by the other Defendants as set forth in ¶¶ 9, 12, 13, and 15-58, and in certain of the "Counts" of the First and Second Claims for Relief.

62. As the General Manager for the HCSD, Kampa had a mandatory duty imposed by law to regularly inspect, oversee, supervise, and provide for the direct control by properly State-certified personnel, the daily operation of the water treatment plant and distribution system as mandated by Federal and State laws[53], and the HCSD Bylaws. Kampa failed to perform those duties by: failing to maintain and provide for the use of the "creek diversion" of the HCSD and associated water rights, thus jeopardizing the HCSD's diversion rights with the State[54]; failing to supervise and direct Dingman concerning the maintenance and safety of the water plant and surrounding area; failing to require that Dingman obtain and maintain Water Treatment and/or Distribution Operator certifications from the State of California while Dingman was operating the HCSD's facilities as was required by law; failing to timely and properly respond to deficiency notices by the State Water Board; and, failing to timely, and/or properly (or, sometimes, at all) respond to CPRA requests by Plaintiff in the manner provided by law concerning the public records of the HCSD's operations. Kampa also charged the HCSD for supposed "General Manager" services relating to these duties, but without actually providing them as promised.

[52] Plaintiff does not mean to imply that Goff, Dingman, and/or Winston are directly subject to the Brown Act. Rather, they were used as "hubs" or "links in a "daisy chain" arrangement with the Board Defendants to circumvent the Brown Act's provisions. Winston is not a Defendant herein.

[53] See Federal Clean Water Act (33 USC §§1251, et seq), and Safe Drinking Water Act (42 USC 300f, et seq); State of California laws implementing same (e.g. Health and Safety Code Sections 116270 et seq, 116375, 116385, and 116395; California Code of Regulations Title 22, Sections 63765, and 63770).

[54] Kampa failed to operate the HCSD's water system from its main appropriative surface water right, and historical main water source, Rancheria Creek, instead instructing Dingman to improperly and constantly draw the HCSD's water supply from the three HCSD wells (contrary to the design of the HCSD's system, and the instruction of the HCSD's Public Engineer), causing over pumping, degraded water quality, greatly increased pumping costs, premature failure of the well pumps, and damaging the aquifers thereof, all of which reduces the water quality and quantity to the system, and causing water shortages.

**XII. DEFENDANT HORNBROOK COMMUNITY BIBLE CHURCH, INC.**

63. Defendant Hornbrook Community Bible Church, Inc. ("HCBC" or "the Church") was a corporation, doing business, and located, within Siskiyou County California, and receiving water service from the HCSD. The HCBC operations are considered as a type of "commercial". The HCBC, via its agent Steven Crittenden, conspired with, by *ex parte* meetings and other corrupt[55] conduct with the Board Defendants, and Bowles, to obtain improper gifts of public funds, in the form of wrongfully, improperly, and unlawfullyly reduced and/or waived water rates, fees, and charges during the times material to this complaint.

64. The HCBC received its wrongfully sought and obtained gift of public funds. Plaintiff incorporates the relevant information concerning zoning, fees, and charges to the HCBC, found in the following section relating to Defendant Crittenden.

**XIII. DEFENDANT STEVEN CRITTENDEN.**

65. Defendant Steven Crittenden ("Crittenden") was a resident of Hornbrook, Siskiyou County, California and a citizen thereof, a resident of the HCSD, and maintains a rental within the boundaries of the HCSD[56]. Crittenden is alleged on information and belief to be an employee, agent, and/or Board member of Defendant HCBC. Crittenden engaged in improper, *ex parte* "spoke and wheel", "daisy chain" meetings, and other wrongful, corrupt, conduct with Puckett and Slote, and through them Bowles and Dingman, in order to agree and act with them to obtain legally impermissible gifts of public funds to the benefit of the HCBC, and himself, in the form of unlawfully reduced and/or waived water rates, fees, and charges.

66. The HCBC Church is a large building on commercial[57] property with high water consumption, and falls under Tier 2 of the water rates listed by the HCSD in the Bylaws of April 18, 2014[58] ($225.00/mo). Additionally, there is a "parsonage" - which is a separate residence, on the property (rate set at $45.00/mo).

67. As a result of the conspiracy of Crittenden, Puckett, Slote, Bowles, Dingman, and the HCBC, the Board Defendants, during the times material to the complaint, wrongfully reduced the entire charge for the HCBC property to a single-residence residential fee per month (or less),

[55] See *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

[56] Crittenden, although noticed by the HCSD to do so, failed and refused to comply with the HCSD Bylaws, as well as Government Code 61100 and Water Code 71618, by not putting the account of his rental into his own name after prior tenants left a past due bill.

[57] The Siskiyou County Code requires "Rural Neighborhood Commercial" (C-R), or "Neighborhood Commercial" (C-U) zoning for churches at Title 10, Chapt. 6, Art. 41.

[58] The sections of the Bylaws dealing with rates and charges, and a prohibition on the Board and/or its members waiving fees and charges, are parts of the Bylaws which cannot be amended without voter approval. See Bylaws, pp. 10, Section A-9(1); 28, Section 1-5.030. (ECF #64.)

and erased all of the past due, regular, proper rates and penalties associated with the HCBC's failure to pay, and to timely pay, its proper water bills.

68. Crittenden also corruptly conspired with, and influenced Puckett, Slote, and Bowles, to arrange for (and for official billings to reflect) wrongfully reduced, and/or waived water and other fees for his home, his rental house, for improper "refunds" of fees, and to wrongfully keep the account for his rental in the name of his tenants in violation of the HCSD Bylaws at §A-9(14), and Water Code section 71618 during the times material to the complaint; all in a manner calculated to deliberately deprive Plaintiff of his right to vote thereon as an elector of the District and as provided in the Bylaws.

69. Action against Crittenden, HCBC, Bowles, Puckett, Slote, and Board Defendants, is brought also under the HCSD Bylaws, and California Code of Civil Procedure Sections 526a, 1021.5, and 1084-85.

## XIV. DEFENDANT DUKE MARTIN

70. At all times material, Defendant Duke Martin was a resident of Siskiyou County, a water customer of the HCSD (and subject to its Bylaws), and owned and operated a business, Crossroads Mini Storage, on his personally-owned and commercially-zoned property within the boundaries of the HCSD (upon which, in addition to the business, sits a rental house, and an occupied fifth-wheel travel trailer), as well as an adjoining residential property containing a rental house which also receives water service from the HCSD via a separate service connection, and sits within its boundaries.

71. At all times material, Defendant Martin received water services from the HCSD to his commercial property, the rental house thereon, the fifth wheel, and the adjoining residential property containing another rental unit. Martin has wrongfully refused to pay the commercial property charges ($225.00 per month) assessed against him by the HCSD pursuant to the Bylaws, as well as the correct residential fee, and late charges associated with his properties.

72. Defendant Martin wrongfully and *ex parte* corruptly influenced, and conspired with, Defendant HCSD, Kampa, Bowles, Dingman, and the Board Defendants to have his water fees reduced from the commercial rate to the residential rate (or even less), to waive the fees required under the bylaws for the second-residence fifth-wheel on his property, to avoid the requirement of annual inspections/certifications of his cross-check device[59], and to have all of his past due

[59] A cross-check device is required by state law to be installed on water lines to parcels that have a well, or other water source. The device prevents inadvertent contamination of the District's supply system.

fees and charges, as well as those attributed to the renter on the second parcel, which he lawfully owed to the HCSD (totaling some thousands of dollars) erased - all outside of any public meeting of the HCSD Board, or any due process of law, or even any notification to the public that such acts were being considered. This being a successful attempt by Martin, Bowles, HCSD, Dingman, and the Board Defendants to willfully interfere with and impede Plaintiff's right to vote concerning issues of fees, waivers, reclassifications, and other related items as provided in the HCSD Bylaws. By so doing, in relation to those sections of the Bylaws relating to voter approval of fee waivers, reclassifications of customers, rate reductions, etc, Martin's intent, in conjunction, cooperation, and agreement with the Board Defendants, Bowles, and Dingman, was also to deprive Plaintiff, and the other electors within the District, of the right to vote on the fee waivers and charges as provided in the HCSD Bylaws - thus violating 42 USC §1985.

73. The Board Defendants and Bowles thereafter, as part of the conspiracy with Martin and in furtherance of the wrongful common goal that Martin should not pay the commercial rate, his duly assessed, billed, and pending, charges, late fees, and other amounts as dictated by the Bylaws as to each and all of his properties lying within the District, and thus deprive the HCSD of its due funds, willfully acted to conceal from the Public, all of their actions taken in regards to Martin's fees and charges, by wrongfully destroying public records of their acts and Martin's former billing - all in violation of the California Public Records Act, and Plaintiff's statutory and Constitutional rights.

74. The conspiracy regarding the gifting of public funds, and the denial and infringement of Plaintiff's rights, between Defendant Duke Martin, Bowles, Dingman, and the Board Defendants, constituted a corrupt conspiracy with public officials and a public entity (the HCSD) such that Martin, by relying upon the authority and office of the Board Defendants and Bowles to commit these wrongs, took on the mantle of a "state agent" for the purposes of making out claims against him under Title 42, Sections 1983 and 1985 of the Untied States Code, in addition to any other statutory and/or tort claims Plaintiff may have.

**XV DEFENDANT JAMES SOARES**

75. At all times material Defendant James Soares ("Soares") was a citizen and resident of Siskiyou County, California and of the HCSD, and maintains at least one rental within the boundaries of the HCSD[60].

---

There is a fee for annual inspection and certification of the device (which is required by law).

[60] Soares has failed and refused to comply with the HCSD Bylaws, as well as Government Code 61100 and Water Code 71618, by not putting the water service for his rental into his own name after prior tenants left without paying their past due bill. Plaintiff has standing to obtain an injunction, and civil

76.  As a result of an agreement to disregard the HCSD Bylaws and applicable State law, Soares, in conspiracy with the HCSD, Bowles, Dingman, and the Board Defendants, has continually received an improper gift of public funds from the HCSD, Board Defendants, Dingman and Bowles during the times material to this complaint, by their reducing the fees and charges for Soares' properties to less than the HCSD Bylaws-mandated residential fee per month; by failing to regularly and properly read water meters controlled by Soares; by wrongfully, and without due process of law, waiving the fee for the second dwelling at his residence (a trailer); and, by waiving the requirement that Soares have his cross-check device inspected and certified annually as required by state law and the HCSD Bylaws.

77.  Soares corruptly conspired with, and corruptly influenced the Board Defendants, the HCSD, Dingman, and Bowles, outside of agendized, public, and lawfully-held meetings of the HCSD Board, to arrange for (and for the official billings of the HCSD to reflect) the wrongfully reduced, and/or waived water and other fees due the HCSD for his personal residence within the District, and for his rental house; for improper "refunds" of fees; and, to wrongfully keep the account for his rental house in the name of his tenants in violation of the HCSD Bylaws at Section A-9(14), and Water Code section 71618,.

78.  Action by this Plaintiff against Soares, the HCSD, Bowles, and the Board Defendants concerning the corruption of official power resulting in the gift of public funds is appropriate under the HCSD Bylaws, California Code of Civil Procedure Sections 526a, 1021.5, and 1084-85, in addition to other theories of judicial relief, and/or liability to Plaintiff individually. The conspiracy between Bowles, the Board Defendants, Dingman, Soares, and the HCSD to gift public funds to Soares, to waste public funds as outlined above, and to violate State and local laws, also acted to violate Plaintiff's rights to: due process of law; right to free speech and to full access and opportunity for participation in HCSD governance and Board meetings as provided by law[61]; to be informed about, and to have his elected officials all fully consider and decide issues in a public forum as required by law, and to follow the laws in exercising their duties; to have such meetings in a public manner that is not corrupt, not unlawful, not held *ex parte*, and/or improperly influenced; adhesion by his elected officials and/or their agents to the laws prohibiting the unlawful gifting of public funds and resources; and, Plaintiff's right to petition

---

action for Soares to pay any fees lost by the HCSD, as to Soares' failure to obey the HCSD Bylaws pursuant to Section A-9(26) thereof.

[61] This includes the rightful participation of the Public and Plaintiff, who were deliberately excluded by the Board Defendants, Soares, Dingman, and Bowles from any discussion and/or decision concerning the gift of funds to the HCBC, and the opportunity to vote thereon as provided in the Bylaws.

(by failing to notify, and actively concealing the plans and conduct above from the Public, and Plaintiff, so that he might challenge those decisions in court and/or as provided by law); and, suppressing due and proper notice of the meetings and planned actions.

79. The entering into of the conspiracy between Soares, Bowles, the HCSD, and the Board Defendants, and Dingman as set forth herein, and the affirmative acts in furtherance thereof - particularly those in violation of the HCSD Bylaws and State law - regarding the gifting of public funds, misuse and corruption of official power, and the resulting denial and infringement of Plaintiff's rights, constituted a corrupt conspiracy with public officials and a public entity (the HCSD) such that Soares took on the mantle of a state agent for the purposes of making out claims against them under Title 42, Sections 1983, and 1985[62] of the USC.

## XVI. DEFENDANT REMAINING JOHN DOES

80. At all times material, remaining defendant John Does 1-20 were board members; HCSD policy makers and/or executors; recipients of water services by the HCSD assisting and/or participating in the wrongful conduct complained of herein; customers of the HCSD who obtained improper wavers, changes in classification, reductions, or return of water charges, assessments, and/or fees; employees, independent contractors, instructors, rule enforcers, assistants, confidants, and otherwise actors and/or agents of the HCSD; and/or aiders and abettors of the conduct of the natural person and/or Board Defendants, and/or of each other. The true names and capacities of these John Doe defendants is uncertain to Plaintiff at this time.

## XVII. SPECIFIC COMPLAINTS OF DANGEROUS CONDITIONS, VIOLATIONS OF LAW, AND OTHER WRONGDOING MADE BY PLAINTIFF

81. Plaintiff, in setting forth herein the wrongful conduct of these Defendants, alleges that by so doing, the HCSD, Board Defendants, Kampa, and Dingman deliberately furthered an agreement and plan amongst themselves to conspire, aid, encourage, act jointly, and abet each other in intimidating, oppressing, and retaliating against Plaintiff by arbitrarily and capriciously: denying his rights to register for the "list" of contractors to be notified of public works/projects of the HCSD, to bid on those public works of the HCSD, and to apply for those public works and other jobs and as positions of employment therewith; to have his residence, and other properties under his control, or on which he performed construction services connected to the HCSD's water distribution system on the same terms and conditions as other residents and customers of the District; to be indemnified by the HCSD for medical expenses and other costs associated

[62] Insofar as the acts of Soares, HCSD, Bowles, and Board Defendants were willfully undertaken to circumvent the right of Plaintiff, and the other electors of the District to vote on such matters as specifically provided in the HCSD Bylaws.

with his duties as a public officer of the HCSD on the same terms and conditions as all other Directors and former Directors of the HCSD; to deny Plaintiff access to the public records of the HCSD, and to fail to respond to his CPRA requests in the manner mandated by law - meanwhile granting other persons full access to records and information concerning operation of the District; and, to vote on those issues falling under the voter control provisions of the Bylaws[63], and instead undertaking and asserting unlawful actions *ultra vires* in violation thereof - all on the basis of, and in retaliation for, the protected conduct of Plaintiff in making out complaints to:

A) The HCSD Board, and the Board Defendants (as to each subject, on multiple occasions, and ongoingly), concerning: their violations of the Brown Act and HCSD Bylaws by having private meetings as a quorum (in person, via telephone, and/or email), for the purpose of discussing public business; specific deficiencies in purported agenda item descriptions and content of agendas for public meetings; and, the failure to properly and timely notice the public of meetings and all actions to be taken (and to provide full and complete "agenda packets") of meetings called by the Board Defendants;

B) The California State Department of Health concerning the lack of compliance by the HCSD and the Board Defendants with the Safe Drinking Water Act; the unsafe conditions at the HCSD water treatment facility including excessive buildup of chlorine gas, lack of ventilation, lack of proper (and required by law) record keeping, and unsafe storage of toxic chemicals; the failure by Defendant Clint Dingman, while operating the HCSD wells, water treatment plant, and distribution system, to complete education, training, and certification by the State as required by his contract and the Health and Safety Code; and, the failure by the HCSD and the Board Defendants to properly maintain the water production, treatment, and distribution facilities;

C) The California Department of Industrial Relations (Labor Commissioner) concerning the failure by the HCSD, and Board Defendants, for violation of the Uniform Construction Costs Accounting Act, and for failing to properly permit open applications for employment, and instead to make individual phone calls to solicit a non-local person to fraudulently claim to be an independent contractor for an "employee"-type position;

D) The California Department of Industrial Relations ("Cal-OSHA") concerning the unsafe working conditions at the HCSD water treatment plant, the unsafe conditions of Dingman's residence at the water plant; and the refusal by the HCSD to address them;

E) The California Dept. of Fair Employment and Housing ("DFEH") concerning denial

---

[63] At Sections A-9(1); A-9(13); A-9(26); Chapter 3, Section 1-3.010; Chapter 5, Sections 1-5.010, and 1-5.030.

of a workplace free of discrimination and/or retaliation; actual discrimination and retaliation[64] practiced in employment by the HCSD and Board Defendants;

F) United States Occupational Safety and Health Administration ("OSHA") concerning violations of worker safety at the HCSD facilities, and retaliation by the Board Defendants.

G) The Siskiyou County Superior Court, as to the conduct of the Board Defendants, Winston, Dingman, Bowles, and Goff regarding violations of law.

H) The California Fair Political Practices Commission concerning violations of the Brown Act, Political Reform Act, Government Code section 1090, and conspiracy to violate those, and other ethics-related laws by the Board Defendants, and Bowles;

I) The California State Bar concerning the Board Defendants' and Winston's agreement to violate the Rules of Professional Conduct, including Rule 3-600(E), and Business and Professions Code section 6104[65];

J) The US EPA, and Cal-EPA concerning the failures by the HCSD (and Puckett as a private citizen) to comply with the Clean Water Act, and Safe Drinking Water Act; and,

K) The United States District Court for the Eastern District of California as to wrongful and unlawful conduct by the HCSD and various incarnations of its Board of Directors.

82. Once the Board Defendants learned of these complaints, they acted in violation of Plaintiff's rights and public policy by agreeing amongst themselves to recruit the other Defendants herein as specified, to institute a program of actions intended to intimidate, coerce, and dissuade Plaintiff from making further complaints, and to retaliate against Plaintiff for making them (as set forth in ¶81, above), all without any legitimate or reasonable public purpose. Such retaliation using the powers of governmental offices violates the Bane Act; the public policies of the United States and the State of California; Plaintiff's rights to due process, to speak freely, to association with other electors, and to petition for redress of grievances - and to do each and all of these things without retaliation.

[64] At one point, after Plaintiff asked to be considered for an open position on the Board, the Board Defendants each made comments to the effect that Plaintiff was unsuited to be a Director of the HCSD due to that Plaintiff wanted everyone in the HCSD to follow all the rules and laws, and that he harassed the District by "filing lawsuits" about the Brown Act and CPRA.

[65] Winston appeared, and or billed for "services" concerning, without any authorization by the Board of Directors of the HCSD, in multiple Siskiyou County Court, and other cases - including several in which he was actually a co-Defendant. The Defendants' diversion of public funds to him for such instances of improperly-assumed representation were a waste of those funds without a legitimate or reasonable governmental interest. Although Winston himself is not a Defendant herein, Plaintiff is still entitled to declaratory and injunctive relief concerning the improper gifting of public money by the HCSD to Winston for charges incurred in cases that he did not actually do work as Counsel for the HCSD and/or its officers, was not appointed to, and/or in which he appeared as a co-defendant.

## XVIII. BASIS FOR PLAINTIFF'S FIRST AMENDMENT CLAIMS OF RETALIATION.

83. Plaintiff has brought several claims herein alleging that the various defendants, at various times, and in various circumstances, acted to interfere with, and to retaliate against him for, protected exercise of speech and/or petitioning rights. These claims are generally brought pursuant to the criteria outlined by the 9th Circuit Court of Appeals in *Mendocino Environmental Center v. Mendocino County*, 192 F. 3d 1283, 1300-1301 (9th Cir. 1999), which states:

> "In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.' *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing *Mendocino Env'l Ctr*., 14 F.3d at 464). **While this statement might be read to suggest that a plaintiff must demonstrate that his speech was actually inhibited or suppressed, our description of the elements of a First Amendment claim in *Mendocino*, which *Sloman* cited for its standard, requires only a demonstration that defendants 'intended to interfere with Bari and Cherney's First Amendment rights.' Mendocino Env'l Ctr., 14 F.3d at 464** (emphasis added). Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, we conclude that the proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir.1996), vacated on other grounds, 520 U.S. 1273, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997) (internal quotation marks and citation omitted).
>
> Intent to inhibit speech, which 'is an element of the claim,' *Mendocino Env'lCtr*., 14 F.3d at 464, can be demonstrated either through direct or circumstantial evidence. See *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir.1997) (circumstantial evidence of intent is sufficient to survive summary judgment motion). For example, in *Hines v. Gomez*, 108 F.3d 265 (9th Cir.1997), we held that circumstantial evidence that an inmate had a reputation for filing grievances and had told a guard that he planned to file a grievance, combined with the jury's rejection of the guard's purported reason for punishing the inmate, 'warrants the jury's finding that [the guard] filed the disciplinary report in retaliation for [the prisoner's] use of the grievance system.' 108 F.3d at 268." (*Id*., footnotes omitted, **bolding** emphasis added.)

## *****FIRST CLAIM FOR RELIEF (Federal Counts)*****

84. In making out each of the following "Counts" in this First Claim for Relief against one or more Defendants, Plaintiff incorporates the forgoing factual allegations as to each named defendant (only) specified in the "count". When setting forth a count, when Plaintiff refers to "these Defendants" (or similar language), he means only the Defendants specifically named in that individual count, and not all of the Defendants in the action generally. When Plaintiff

intends something to apply to all the Defendants in this action, he will so specify. Each particular Count is assumed to incorporate associated relevant facts in the foregoing sections of the Complaint, a claim of harm, and requests for general, special, and punitive damages[66].

85. The Board Defendants, Bowles, Kampa, Goff, and Dingman particularly, but also all other Defendants generally, had a mandatory duty to perform certain acts under the laws, and to refrain from violations of the laws, as aforesaid in the sections pertaining to each of them (and generally), as well as a duty to prevent the harms to Plaintiff alleged herein, and each of the Defendants breached those duties while engaging in the conduct set forth herein. If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has inadvertently asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as provided by law. Plaintiff has been physically, mentally, emotionally, economically, and specially harmed by the wrongful, unlawful, and/or negligent acts of each, and all, of the Defendants.

## I. VIOLATIONS OF RIGHT TO FREE SPEECH, ASSOCIATION, AND PETITION

86. Plaintiff alleges on information and belief that the Board Defendants (thus the HCSD), Kampa, and Dingman, in acting as set forth above in manners adverse to Plaintiff[67], did so willfully, with intent to interfere with, impede, chill[68], intimidate, deprive of, retaliate against, and coerce Plaintiff into abandoning, his statutory and constitutional rights to speak freely, and/or to petition the government[69] and the courts for redress of grievances; and, that by so doing, they intended to, and also did, violate Plaintiff's First Amendment rights to speak freely, to petition for redress of grievances, and to be free of retaliation therefor[70].

---

[66] Both compensatory and punitive damages are available in Section 1983 actions. (*Carey v. Piphus*, 435 U.S. 247, 254-257 (1978); *Carlson v. Green*, 446 U.S. 14, 22 (1980).

[67] See, i.e., ¶¶9-13, 20, 22, 29, 31, 33-34, 81-82.

[68] Plaintiff alleges the conduct of these Defendants against him as set forth, taken without any legitimate or reasonable governmental purpose, would chill the exercise of rights by the average person due to the threats of economic harm, interference with the right to contract, interference with prospective economic advantage, and social ostracism represented by the Defendants' statements and actions. Certainly Plaintiff's rights to vote on matters as provided in the Bylaws was completely "chilled" by the acts of these Defendants, to the point he was not able to exercise those rights on any occasion.

[69] Inclusive of, but not limited to, by repeatedly engaging in waivers and/or reductions in fees and charges of the HCSD to certain customers, and/or reclassifications of customers, while refusing to permit Plaintiff to vote on those issues as permitted him by right in the Bylaws at Sections A-2(11), A-9(1); A-9(11), A-9(13); A-9(26); Chapter 3, Section 1-3.010, and Section 1-5.030 (ECF #64). The improper fee waivers, reductions, reclassifications, etc, were also unlawfully accomplished by these Defendants by being undertaken outside of public meetings, and without any formal vote of the Board, which kept Plaintiff from being able to have his say to these public officers concerning their actions.

[70] In this case, the retaliation was implemented in part by refusing to allow Plaintiff to be placed onto the list of available contractors for public works jobs of the HCSD, and to be notified of those jobs and/or other (usually emergency) events requiring the assistance of a licensed, bonded, public works contractor. Retaliation (and attempt to inhibit Plaintiff's speech and petitioning) was also implemented against

87. By violating the HCSD Bylaws' provisions concerning mandatory voting[71], and denying Plaintiff his right to vote arising therefrom on each of the waivers of fees and charges, changes in customer classifications, and water rates undertaken or applied by these Defendants during those times material to this complaint, these same Defendants also violated Plaintiff's rights speak freely by way of the ballots he was entitled to cast under local law; to freely associate with the other electors of the District concerning those issues upon which a right to vote is granted by the Bylaws; to petition and be heard by the HCSD Board via his votes; and, to actually engage in the protected act of voting on HCSD business as an elector on certain subjects as provided in the Bylaws. "[E]ach and every citizen has an inalienable right to full and effective participation in the political process...." Reynolds v. Sims, 377 U.S. 533, 565 (1964).

88. The conduct of these Defendants in undertaking these wrongful actions was arbitrary and capricious, injured Plaintiff, and served no legitimate or reasonable public purpose.

**Count -II. DEPRIVATIONS OF RIGHT TO DUE PROCESS OF LAW:**

**HCSD, Board Defendants, Bowles, Kampa, and Dingman**

89. The HCSD Bylaws vested certain voting rights to Plaintiff as an elector of the District, creating a liberty and property interest[72], and also mandated that those rights could not be modified or eliminated save by a vote of the electors of the District (thus establishing the process that was due regarding those rights). Plaintiff alleges that the Board Defendants (thus the HCSD), along with Kampa, and Dingman, affirmatively acted to, and did, deny his due process rights to notice, opportunity for hearing concerning the applicability of the Bylaws to potential actions of the Board, and to participate in the numerous elections required to be held before the electors of the HCSD, concerning each and all of the fee and/or charge(s) waivers, reductions, reclassifications, and other failures relating to fees and charges due the HCSD which actions were undertaken, and/or committed in violation of the Bylaws by these Defendants during the timeframe set forth in the complaint. Those same Defendants further violated the due process afforded Plaintiff by, and as required by, the Bylaws by *de facto* altering the application of, and violating the provisions of, those sections requiring voter approval in order for the Board of the HCSD to do so by not holding open, noticed, public meetings on those subjects, and/or not allowing Plaintiff t vote on those actions.

---

Plaintiff by refusing to process, and/or respond as required by law, to Plaintiff's requests to connect residences to the water system, to have his medical bills indemnified, and requests made per the CPRA.

[71] At Sections A-9(1); A-9(13); A-9(26); Chapter 3, Section 1-3.010; Chapter 5, Sections 1-5.010, and 1-5.030. (ECF #64.)

[72] See HCSD Bylaws at Sections A-2(11), A-9(1); A-9(11), A-9(13); A-9(26); Chapter 3, Section 1-3.010, and Section 1-5.030. (ECF #64.)

90. By doing so, these same Defendants on each such occasion acted arbitrarily and capriciously, and intentionally interfered with and thwarted Plaintiff's due process right to notice of: a matter falling under one or more of the provisions of the Bylaws entitling him to a vote; a vote on each of those matters; the fact that these Defendants intended to refuse to abide by the requirements of the HCSD Bylaws relating to granting Plaintiff the right as a citizen and elector of the HCSD to vote on those matters; the fact that the Board intended to take action(s) *de facto* altering the provisions of the Bylaws to remove Plaintiff's voting rights therefrom without voter approval[73]; and, these Defendants' agreement, and planned action, to wrongfully alter, erase, and/or evade the voting requirements thereof relating to District fees and charges, and/or the alter the voter control sections of the Bylaws without any notice, or hearing, and/or compliance with the methodology to do so required by those sections (that is, by voter approval). Once a government agency grants rights or property interests, as the HCSD did when it adopted the sections of the Bylaws requiring voter approval for certain actions and changes, it cannot take them away without notice and hearing - and indeed, in this instance, the Bylaws themselves strip the Board of the authority to eliminate those provisions. See *Goldberg v. Kelly* (1970) 397 U.S. 254, 255-261. Voting rights are also a "liberty interest[74]", and a "property interest", so cannot be denied or revoked without due process of law on that basis as well. The multiple occasions of summary denial, chilling, and destruction of Plaintiff's voting rights by these Defendants, particularly in the manner by which those were accomplished, and in violation of the Bylaws, harmed Plaintiff, and did not serve any legitimate or reasonable government interest.

91. It is well established that the right to vote in both Federal and State elections is guaranteed by the United States Constitution. See *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). See also *Swift v. Registrars of Voters of Quincy*, 281 Mass. 271, 276-277 (1932). Defendant HCSD is a subdivision California, while certain sorts of elections are mandated by its Bylaws.

92. The broad Constitutional protection of voting rights - however derived - also runs the gamut of election administration. Primaries, local elections, and referendums are **all** encompassed within these constitutional protections. (See *Smith v. Allwright*, 321 U.S. 649,

[73] See Sections A-2(11), A-9(1); A-9(11), A-9(13); A-9(26); Chapter 3, Section 1-3.010, and Section 1-5.030. Thus, these Bylaws sections further create and define the "due process" the HCSD must grant to Plaintiff and the other electors of the District before taking any of the prohibited actions concerning fees and charges, etc, but also regarding any changes to the mandates to the Board that are contained in those sections (such as violations by not holding elections when required).

[74] Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993)

661–62 (1944) (primary election); *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 209 (1970) (local tax bond); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 628–29 (1969) (local tax bond); *United States v. Classic*, 313 U.S. 299, 319–20 (1941) (primary election). )

93. The Board Defendants, Bowles, Kampa, and Dingman, acted wrongfully, improperly, and without any legitimate or reasonable governmental purpose by: failing to read meters; waiving various fees and charges; altering rates and fees of the HCSD to benefit their favored friends and associated; changing billing and billing records to ratify and conceal these improprieties; and, failing to charge each commercial, governmental, and/or residential customer proper rates, fees, and/or charges - all in contradiction of the Bylaws and the <u>mandatory</u> voter control provisions thereof[75]. Each and every of these actions also deprived Plaintiff of the right to the due process of law insofar as he, as a elector of the District, was denied the right to notice of, and opportunity to vote on, each of those fee reductions, waivers, and fee/charge reclassifications on each occasion they took place, as granted to him in the HCSD Bylaws - and he was denied those rights <u>each</u> time without any notice, or opportunity to be heard on the denial.

**<u>III. VIOLATION OF PROCEDURAL DUE PROCESS (Constructive Debarment):</u>**

94. The HCSD, by and through its Board of Directors, adopted the provisions of the Public Contract Code, and the criteria promulgated by the California Uniform Construction Cost Accounting Commission, on June 27, 2017. The Bylaws of the HCSD also require work to be put out for bids at Section A-2(8). The HCSD, Board Defendants, and Kampa thereafter - with out notice and/or opportunity to be heard - refused to apply the Bylaws, Public Contract Code, and the criteria, to Plaintiff, while allowing other contractors similarly-situated to Plaintiff to participate therein, and excluded him from any and all opportunity to register for notice of, and/or to bid on, any public works or other jobs with the HCSD. Moreover, Plaintiff was informed by Defendant Slote at a meeting of the HCSD Board of Directors, that he would never be permitted to work for the HCSD because of his filing lawsuits against the HCSD and/or its officers and employees. When making statement, the other Defendants present agreed with her.

95. The UCCAA requires that public agencies such as the HCSD comply with certain informational notice, bidding and accounting procedures set forth in the California Uniform Construction Cost Accounting Commission's Cost Accounting Policies and Procedures Manual. This includes the creation and maintenance of a Qualified Contractors List (PCC §22034(a)(1)).

---

[75] ECF #64 Bylaws at §§A-2(11), A-9(1); A-9(11), A-9(13); A-9(26); Chapter 3, §1-3.010, and §1-5.030.

96. Agencies may not decide who to notify of projects once they enroll in this program, and instead (should they choose to disregard their list) must follow the provisions of §22034(a)(2), which provides for notifications to construction trade journals and exchanges in lieu of sending notifications to contractors on an informal bidders list. These procedures were not followed by the HCSD, Board Defendants, and Kampa during the timeframe specified in the complaint, nor in relation to Plaintiff, and by deliberately refusing to do so, these defendants acted to stifle, interfere with, and retaliate against Plaintiff for his speech and petitioning activity.

97. Because the adverse actions against Plaintiff by the Board Defendants, including repeatedly refusing Gifford's requests as a licensed contractor to be placed on the list of available local contractors to be notified of, and/or bid on, public projects, and failing to provide any hearings or other due process to Plaintiff prior to their actions, occurred or were initiated by the Board Defendants after protected reports and other activities, the immediate temporal proximity of the Defendants' adverse actions establish a prima facie case for retaliatory adverse employment action in violation of public policy and the Constitutional Rights of Free Speech, and to Petition, as provided by both the United States' and the California Constitutions. (See Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 164; Passantino v. Johnson & Johnson Consumer Products, Inc. (9th Cir. 2000) 21 F.3d 493, 507; Pickering v. Board of Education (1968) 391 U.S. 563.) (also see generally whistleblower protections as public policy in Labor Code sections 98.6, 1019(b)(1)(C), 1019(c), and 1102.5; Health and Safety Code 6310, 6400).

98. To establish a claim for wrongful termination in violation of public policy, a party must show that (1) the plaintiff was employed by the defendant, (2) the defendant discharged the plaintiff, (3) a violation of public policy was a motivating reason for the discharge, and (4) the discharge harmed the plaintiff. (See Haney v. Aramark Uniform Services, Inc. (2004) 121 Cal.App.4th 623, 641; CACI No. 2430.) In wrongful termination jurisprudence, the courts apply the same analysis to "adverse employment actions", inclusive of pre-employment treatment, such as those applied to Plaintiff Gifford by these Defendants (e.g. failure to permit any opportunity to apply for work, and/or to bid on public works projects) in order to create a basis for the present suit. (Garcia v. Rockwell Internat. Corp. (1986) 187 Cal.App.3d 1556, at pp. 1561-1562.)

99. Plaintiff's right to contract - particularly as provided by statute - is recognized as a "liberty interest" for purposes of due process and equal protection. See *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). Plaintiff also has a right <u>to petition the HCSD **for**</u> contracts.

100. The Supreme Court has held that the right of petition protects the freedom to seek redress from all three branches of government: "Certainly the right to petition extends to all

departments of the Government. The right of access to the courts is but one aspect of the right of petition." (California Transport v. Trucking Unlimited (1972) 404 U.S. 508, 510.) In acting to refuse and fail to register Plaintiff Gifford as an available contractor, and/or to grant him access to the public works "list", and/or information about other jobs of the HCSD, the Board Defendants and Kampa denied Plaintiff's right to petition them for contracts and work, enacting the shared agreement and plan amongst them to use official power to deny Plaintiff his statutory and constitutional rights, and to do so in retaliation against Plaintiff for petitioning conduct concerning them via administrative processes, and the courts.

101. The HCSD, Board Defendants, and Kampa had no legitimate purpose for refusing to add Plaintiff Gifford's name to the list of available contractors, and contractors to be notified when the HCSD had available work/projects. Rather than serving any rational public purpose, these acts were done arbitrarily, capriciously, and in retaliation for Plaintiff's communications to the HCSD Board, the courts, and other governmental agencies about potentially improper, unlawful, unsafe, and/or improper conduct by these Defendants. This is not permitted. See generally Government Code §12940(h); Labor Code §§98.6-.7, 1101, 1102, 1102.5, 6310, and 6399.7 (c.f., SAC, pp. 30-31). Board of County Commissioners v. Umbher (1996) 518 U.S. 668.)

102. The (potential) employer does not have the right to take adverse actions (or create policies of its own) in violation of state laws, or public policy. (Guz v. Bechtel National Inc. (2000) 24 Cal.4th 317, 335; see also Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889-890; Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 169-170.) .

103. "'The retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.' "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" (Morgan v. Regents of University of California (2000) 88 Cal.App.4th at 69-70.)

104. In the realm of Federal claims, two options exist to establish a *de facto* debarment claim: 1) by an agency's statement that it will not award the contractor future contracts; or 2) by an agency's conduct demonstrating that it will not award the contractor future contracts. *CRC Marine Serv., Inc. v. United States*, 41 Fed.Cl. 66, 84 (1998). *TLT Constr. Corp. v. United States*, 50 Fed.Cl. 212, 215-216 (Fed. Cl. 2001). Both of those contentions have been pled here.

105. Plaintiff was informed by Defendant Slote at a meeting of the HCSD Board of Directors, that he would never be permitted to contract with or to perform work for the HCSD because of his filing lawsuits against the HCSD and/or its officers and employees. When Slote made that statement, the other Board Defendants present agreed with her. The HCSD and Board Defendants thereafter refused all requests by Gifford to be put on the list, and did so without any hearings, or even bothering to reply to his requests in any way. The Supreme Court has held that the right of petition protects the freedom to seek redress from all three branches of government: "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is but one aspect of the right of petition." (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510. In acting to deny any opportunity to Plaintiff to be heard by the Board or Kampa concerning the refusal and failure to register Plaintiff Gifford as an available contractor, failing to grant him access to the public works "list", and failing to allow him to bid on, and/or perform any work for the HCSD, the Board Defendants undertook actions in furtherance of the common plan of retaliation against Plaintiff for seeking redress via administrative process and the courts. They also denied his right to petition the HCSD itself

**Count IV: DEPRIVATION OF RIGHTS TO DUE PROCESS AND EQUAL PROTECTION**

106. The HCSD, Board Defendants, and Kampa failed to act on, or respond in any way as required by law, to Plaintiff's multiple requests to them for statutorily-mandated[76] access to: the books, papers, and records of the HCSD relating to its ongoing operations; records and reports to the State Water Board; its duties and obligations under the Health and Safety Code, the Bylaws, and Water Code; and, its duties and obligations under the Public Contract Code and Uniform Construction Costs Accounting Act, including the bidding process, creation and maintenance of lists of available bidders and parties interested in public works (and/or actually bidding thereon), notifications to contractors/potential bidders and applications for contracting for public works - all while allowing other similarly-situated persons access to those documents and procedures - and denying Plaintiff's access thereto without any notice or hearing for Plaintiff.

---

[76] See California Public Records Act; Cal. Const., Art.1, §3(b)(1) and §3(b)(7). Also see FEC v. Akins, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); Envt'l Def. Fund v. EPA, 922 F.3d 446, 452 (D.C. Cir. 2019) ("The law is settled that a denial of access to information qualifies as an injury in fact" when disclosure of that information is required by statute.); Hajro v. U.S. Citizenship & Immigr. Servs., 811 F.3d 1086, 1102–05 (9th Cir. 2016) (holding that informational injuries satisfy Article III's "injury-in-fact" requirement).

107. These actions by the HCSD, Board Defendants, and Kampa deprived Plaintiff of his right to due process of law, and equal protection of the laws, by subjecting him to deprivation of his statutory rights to access governmental records and processes by outright refusals, and failures to comply with the statutory procedures dictated by the CPRA, Public Contract Code, Uniform Construction Costs Accounting Act, and the Bylaws and policies of the HCSD concerning public information - but meanwhile treating with other persons and contractors in compliance with those sate and local laws. Furthermore, this disparate treatment against Plaintiff served no legitimate or reasonable governmental purpose, and instead was calculated to dissuade him from, interfere with, and/or intimidate him into cessation of, his legal actions - and any future legal actions or other petitioning conduct involving these Defendants.

**Count – V: DEPRIVATIONS OF RIGHT TO DUE PROCESS; HCBC, Crittenden.**

108. Defendants HCBC and Crittenden, improperly conspired with, influenced, and engaged in corrupt activity with the HCSD and Board Defendants[77] and Bowles, in order to utilize their authority under color of State law, to receive gifts of public funds, in the form of reduced water charges and wrongfully waived fees[78] that would be otherwise due, and that this activity was deliberately concealed from the public, without any notice and due process afforded Plaintiff concerning it, and/or Plaintiff being given notice of, and the right to vote thereon, as to each such waiver, and/or reduction - all as are granted to Plaintiff in the HCSD Bylaws.

**Count -VI: DEPRIVATIONS OF RIGHT TO DUE PROCESS**

**- Gifts of Public Funds to Clint Dingman**

109. Defendant Dingman, outside of any public meetings, conspired with, influenced, and engaged in corrupt/unlawful activity with the Board Defendants, Kampa, and Bowles, in order to wrongfully utilize their authority to receive gifts of public funds in the form of free electricity and use of HCSD public facilities for his personal use. Dingman also, with the aid, assistance, ratification, and agreement of the HCSD, Board Defendants, Kampa, and Bowles,

[77] The Church and Crittenden communicated privately with the Board Defendants in order to obtain the gift of public funds, and the Board Defendants thereafter met serially and/or in "daisy chain" fashion (in violation of the Brown Act) to agree and plan to give the unlawful reductions and waivers. The wrongful conduct here by HCBC, Crittenden, the HCSD, Board Defendants, and Bowles, constituted "joint action" for purposes of 42 USC §1983. see Adickes v. S.H. Kress & Co., 398 U.S. 144, 170 (1970). One way the "joint action" test is satisfied is if a "conspiracy" is shown. See Adickes, 398 U.S. at 152, (quoting Price, 383 U.S. at 794). In Adickes and Price, the Court explained that this last test is met where "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting `under color' of law for purposes of [42 U.S.C. § 1983] .... It is enough that [the private party] is a willful participant in joint activity with the State or its agents," Adickes, 398 U.S. at 152; Price, 383 U.S. at 794; Accord, Dennis v. Sparks, 449 U.S. 24, 27-29 (1980); Sykes v. California, 497 F.2d 197, 200 (9th Cir.1974)

[78] These acts are additionally a violation of the HCSD Bylaws, so were "unlawful". (CCP §526a.)

fraudulently billed the District for services and activities which he was not entitled to, and/or he did not perform, and/or which violated the HCSD Bylaws. This activity was further deliberately concealed from Plaintiff and the public in violation of the Brown Act, the California Public Records Act, and the HCSD Bylaws, and thus Plaintiff had no notice, nor any due processes of law and other rights as granted by those state statutes, and/or by the HCSD Bylaws. Furthermore, these gifts to Dingman served no legitimate or rational public purpose.

110. By so doing, these Defendants acted in violation of Plaintiff's due process rights to notice of, and opportunity to attend their meetings concerning the gifts to Dingman, and while so attending, be given opportunity for hearing concerning the unlawful gifting public funds; and, deprived Plaintiff of his right to free speech, and petitioning rights to speak at those meetings to these public officers in protest against corrupt and unlawful activity, which rights were specifically provided Plaintiff by state laws, HCSD Bylaws, and HCSD Rules and Regulations.

**Count VII: 1st Amendment Retaliation by HCSD, Board Defendants, and Kampa**

111. Plaintiff's complaints/petitions to, and assistance to others in making submitting, and/or serving complaints/petitions to, the HCSD Board, State and Federal enforcement agencies, and to the Courts of violations by the HCSD, Board Defendants, and Kampa of: the SDWA and the CWA; state laws relating to administration of the HCSD and the operation of its water production and distribution facilities; the HCSD Bylaws; the Brown Act; the CPRA; and, the Board Defendants', Kampa's, and HCSD's discrimination against Plaintiff (a qualified bidder and contractor) in potential employment and contracting for public works, were all protected conduct under the Constitutions and laws of the United States, and the State of California.

112. Plaintiff's actions listed above were all known to the HCSD, Board Defendants, and Kampa, and resulted in immediate retaliation on the basis of that protected conduct by the HCSD, Board Defendants, and Kampa during the period beginning on or about February 15, 2017, and continuing through November 29, 2017. The retaliation for Plaintiff's protected conduct consisted in part of an agreement between each and all of these Defendants, and coordinated acts and action in furtherance of that agreement, to: summarily exclude Plaintiff from the "list of contractors" to be notified of, and considered for, public works and other jobs needed or undertaken by the HCSD while allowing other, similarly-situated persons and contractors to perform public works and other jobs for the HCSD; refuse to allow Plaintiff to hook up the property upon which he resides, and/or any residences for which he provides contracting services, all of which lie within the current boundaries of the District, to the HCSD

water system on the same terms and conditions as all of the other connections in the District (and without any opportunity for a hearing on any applications, nor as to any denials); and, despite multiple demands, denied Plaintiff, without any opportunity for a hearing, his right to consideration of, and to actual indemnification of, his medical costs incurred for injuries he sustained while undertaking duties as a Director of the HCSD on the same terms and conditions as indemnifications routinely granted for all other HCSD Directors, and/or former Directors.

113. All the disparate treatment against Plaintiff concerning: summary refusal to place him on the list of contractors for public works; summary refusal to indemnify his medical costs; and, summary refusal to permit Plaintiff to hook up his own and others' residences upon which he performed contractor jobs to the HCSD water system, served no legitimate or reasonable governmental purpose, and instead was calculated to cause economic, mental, emotional, and social, harm to Plaintiff, and to his Constitutional and statutory rights, did cause such harm, and was undertaken to punish Plaintiff for his privileged/protected speech/petitioning conduct.

**Count-VIII: Violation of 42 USC§1985: HCSD, Board Defendants, Kampa.**

114. While undertaking the conduct incorporated into, and/or alleged by, Counts I-IV, and VII, Defendants HCSD, Board Defendants, and Kampa wrongfully and unlawfully used their positions of authority and powers as public officers to deny Plaintiff various liberty and property interests without any due process, and also treated him more harshly than other similarly-situated persons on the basis of his protected speech and petitioning conduct relating to them. Furthermore, each incident of this mistreatment of Plaintiff, and the repeated denials of his statutory and Constitutional rights was arbitrary and capricious, served no legitimate or reasonable governmental purpose, and instead each of these acts was calculated to dissuade him from, intimidate him into cessation of, and/or to interfere with his maintaining or undertaking of, legal actions, acts of assisting other persons in engaging in petitioning conduct (and specifically legal actions involving these Defendants, such as by serving legal papers and appearing as a witness), and future petitioning conduct, so constituted abuse of power by the HCSD, Board Defendants, and Kampa against Plaintiff for unlawful ends, all in violation of 42 USC §1985(2).

**Count-IX:Violation of 42 USC§1985: HCSD, Board Defendants, Kampa, Dingman, Bowles.**

115. In agreeing to, and performing the wrongful acts of: improper billing; failing to impose and collect all due fees and charges contained in the Bylaws and Resolutions of the HCSD, and related conduct as complained of herein; and, by acting to deny Plaintiff proper, timely, notice or opportunity to be heard concerning (and to vote on) HCSD meetings and business as provided in the Bylaws as to these subjects, each of the Board Defendants, the

HCSD, Dingman, Kampa, and Bowles, acted contrary to the direct voting provisions of the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); Chapter 3, Section 1-3.010; Chapter 5, Sections 1-5.010, and 1-5.030 in a manner that was calculated to: thwart, interfere with, intimidate, coerce, and prevent Plaintiff from exercising his Constitutional and statutory rights of voting in his capacity as an elector of the HCSD on each such occasion of those acts and actions by these Defendants; and they did so due to his reports to the HCSD Board, OSHA, agencies of the United States and State of California; his declarations to the Superior Court; and, serving of legal papers for other persons. These Defendants took the actions they did, while violating voter-control provisions of the Bylaws, to prevent Plaintiff from exercising the vested right to vote on each of those actions. The actions against Plaintiff by were a united effort by the Board Defendants, the HCSD, Dingman, Kampa, and Bowles with the ultimate goals being to: interfere with; intimidate into abandoning; impede; and, attempt to prevent Plaintiff from exercising, his state and federal Constitutional and statutory rights (as well as his rights as granted by the HCSD Bylaws), including voting on matters relating to their acts, and so violating 42 USC §1985.

**Count X - Civil Conspiracy to Violate Civil Rights**

116. 42 USC Section 1983 will support a cause of action against all the members of a conspiracy for acts in furtherance of the conspiracy and which under color of state law deprive the plaintiff of due process of law. *Hoffman v. Halden*, 268 F.2d 280 (9th Cir. 1959). The HCSD, Board Defendants, Dingman, Kampa, and Bowles, when committing the wrongful acts alleged in this complaint, acted in concert, and by agreement amongst themselves, to: recklessly, wantonly, and/or willfully violate the HCSD Bylaws and Federal and State constitutions and laws; to harass, oppress, coerce, intimidate, and annoy Plaintiff; to impair, impede, and violate Plaintiff's constitutional and statutory rights (especially due process); and, to retaliate against Plaintiff for exercise of his speech and petitioning rights.

*****SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS*****

117. The term "these Defendants" as used in any particular Count, shall mean only the Defendants which are *specifically* named therein, and is not intended to apply to all "Defendants" generally. When Plaintiff intends something to apply to all the Defendants in this action, he will so specify. Each particular Count is assumed to incorporate associated relevant facts in the foregoing sections of the Complaint, a claim of harm, and requests for general, special, and punitive damages.

116. The Board Defendants, Bowles, Kampa, Goff, and Dingman particularly, but also all other Defendants, each had a mandatory duty to perform certain acts under the laws, and/or to

refrain from violating the laws as aforesaid in the foregoing sections, as well as a duty to prevent the harms to Plaintiff alleged herein, and each of the Defendants breached those duties while engaging in the wrongful conduct alleged in this Complaint. If Plaintiff states a claim or cause of action that only permits injunctive or other relief, but inadvertently asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as otherwise provided by law, and Government Code section 814. As to each of the "Counts", Plaintiff has been physically, mentally, emotionally, economically, and specially harmed by the wrongful, unlawful, and/or negligent acts of each, and all, of the Defendants.

118. Concerning Plaintiff's state law claims regarding "unlawful" acts or contract provisions by any Defendant, and for gifting of public funds, he hereby incorporates the following jurisprudence of the State of California:

As stated by the Supreme Court of California in Wirin v. Parker, 48 Cal. 2d 890, 894 (1957):

> "The Code of Civil Procedure, section 526a, provides that plaintiff may maintain an action to restrain the expenditure of public funds for illegal purposes. It is immaterial that the amount of the illegal expenditures is small or that the illegal procedures actually permit a saving of tax funds. (Mines v. Del Valle, 201 Cal. 273, 279-280 [257 P. 530]; Crowe v. Boyle, 184 Cal. 117, 121 [193 P. 111]; Osburn v. Stone, 170 Cal. 480, 484 [150 P. 367]; Santa Rosa Lighting Co. v. Woodward, 119 Cal. 30, 34 [50 P. 1025]; Barry v. Goad, 89 Cal. 215, 222-223 [26 P. 785]; Winn v. Shaw, 87 Cal. 631, 637 [25 P. 968]; Terry v. Bender, 143 Cal.App.2d 198, 208 [300 P.2d 119]; Trickey v. City of Long Beach, 101 Cal.App.2d 871, 881 [226 P.2d 694]; Wirin v. Horrall, 85 Cal.App.2d 497, 504-506 [193 P.2d 470]; Brown v. Boyd, 33 Cal.App.2d 416, 418 [91 P.2d 926]; see Simpson v. City of Los Angeles, 40 Cal.2d 271, 276 [253 P.2d 464].) [3] It is elementary that public officials must themselves obey the law. [4] It has been expressly held in this state that expediency cannot justify the denial of an injunction against the expenditure of public funds in violation of the constitutional guarantees here involved. (Wirin v. Horrall, supra, 85 Cal.App.2d 497, 504-506.)"

The definition of "unlawful" found in California Civil Code §1667:

> "That is not lawful which is:
> 1. Contrary to an express provision of law;
> 2. Contrary to the policy of express law, though not expressly prohibited; or,
> 3. Otherwise contrary to good morals."

The provision of law concerning violations of law as objects of a contract found in California Civil Code §1668:

> "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

**Count – I, Violations of HCSD Bylaws**

119. Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that the Board Defendants, Bowles, Dingman, Kampa, and Goff, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and unlawfully, conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws by: denying access to HCSD facilities, and records; improperly waiving all sorts of rates, classifications, fees and charges for certain favored customers; failing to shut off service to overdue accounts; failing to properly levy the rates set for businesses, commercially-zoned properties, and multiple dwelling customers - all without voter approval; making improper and wrongful Bylaws changes in ways prohibited thereby without the required voter approval; and, failing to require landlords to put water service for rentals into their name. The Defendants thus failed to impose and collect rates and charges sufficient to fund the operations, upkeep, and repairs to the District infrastructure and facilities as mandated by the Water Code at §§ 31007, 61100, 71616, and as set forth in the Bylaws.

120. The Board Defendants, Bowles, Dingman, and Goff, thus failed to comply with the HCSD Bylaws, at Sections A-1(4); A-1(6); A-1(7); A-1(10); A-2(3); A-2(10); A-2(11); A-3.3; A-3(7-8); A-4(3); A-5-1; A-7; A-9(1); A-9(3); A-9(13); A-9(14); "MEETINGS" at p.15, #1;1-2.020; 1-2.090; 1-2.100; 1-3.010; 1-4.010; 1-4.040, and, 1-5.030.

**Count II Willful Negligence; Negligence**

121. In doing each of the wrongful acts complained of herein, each and all of the Defendants also acted negligently, recklessly, and/or willfully, and in disregard for any harm that may have befallen Plaintiff as a result. (See California Civil Code, section 1714.)

**Count III - Retaliation in Employment by Board Defendants, Kampa, HCSD**

122. By denying Plaintiff any notice or opportunity to be heard concerning any allegations, charges, and/or complaints regarding: Plaintiff's requests to be placed on the list of contractors and considered for public works and other jobs by the HCSD per the Uniform Construction Costs Accounting Act and the HCSD Bylaws at §A-2(8); and, Plaintiff's requests for indemnification of his medical billing associated with his employment with the HCSD as a Director - after Plaintiff had engaged in protected conduct by filing complaints with governmental agencies, initiating legal actions, serving legal papers for other persons upon the Defendants, and testifying as a witness; the Board Defendants, Kampa, and HCSD thereby acted to wrongfully and unlawfully oppress, punish, intimidate, and retaliate against Plaintiff without due process, and without any legitimate or reasonable public purpose.

123. By so retaliating against Plaintiff concerning contracting and/or employment with the HCSD, and by refusing to grant Plaintiff his right to indemnification of medical bills incurred when he was an employee of the HCSD, the Board Defendants, Kampa, and HCSD, acted to create a hostile work environment for Plaintiff. The Board Defendants, Kampa, and HCSD also thereby violated public policy, and whistleblower protections as public policy found in Labor Code sections 98.6, 1019, and 1102.5; and, Health and Safety Code 6310, 6400. Normally to establish a claim for wrongful termination in violation of public policy, a party must show that (1) the plaintiff was employed by the defendant, (2) the defendant discharged the plaintiff (or took other hostile action), (3) a violation of public policy was a motivating reason for the discharge, and (4) the discharge (or other adverse action) harmed the plaintiff. (See *Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641; CACI No. 2430.) However, in wrongful termination jurisprudence, and as applicable to this case, the courts **also** apply the same analysis to "adverse employment actions" inclusive of **pre**-employment treatment, such as that applied to Plaintiff Gifford by these Defendants (e.g. failure to permit any opportunity to apply for work, and/or to bid on public works projects) in order to create a basis for the present suit. (*Garcia v. Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556, at pp. 1561-1562.)

**Count IV - Gifts of Public Funds as to HCBC**

124. Defendants Hornbrook Community Church, Inc., and Steven Crittenden, wrongfully, unlawfully, corruptly, and improperly conspired with, influenced, and engaged in corrupt activity with the Board Defendants, Bowles, Kampa, and Dingman in order to unlawfully receive gifts of public funds[79], while this activity was deliberately concealed from Plaintiff, and the public, in violation of the Brown Act, and other applicable laws. Plaintiff seeks relief as provided via California Code of Civil Procedure Sections 526a, 1021.5, and 1084.

**Count V - Gifts of Public Funds - Board Defendants; False Claims & Fraud as to Dingman**

125. Defendant Clint Dingman wrongfully, improperly, and unlawfully colluded with, influenced, agreed to, and engaged in corrupt, unlawful activity with, the Board Defendants and Bowles to submit false "timesheets", and receive wrongful payments, for work he did not do, and/or for work he was not authorized to do by the General Manager or the Board[80]. Such excess pay is a false claim, and a gift of public funds to Dingman which were thus expended without

[79] Cal. Const. Art. XVI, Section 6; Cal. Govt. Code section 8314. These funds were thus expended without any legitimate or reasonable public purpose.

[80] As part of this wrongful conduct. Dingman also undertook certain extra duties assigned to him *ultra vires* by individual Board Defendants, without their compliance with Government Code §61045, for which he then billed the HCSD.

any legitimate or reasonable public purpose. Plaintiff invokes herein Code of Civil Procedure Sections 526a, 1021.5, and 1084.

**Count VI - Gifts of Public Funds as to Ernest Goff and Julie Bowles**

126. Bowles and Goff, both independent contractors to the HCSD, improperly, wrongfully, and unlawfully conspired with, influenced, and engaged in corrupt activity with the Board Defendants in order to falsely claim payment(s) for services they did not actually render, and to receive gifts of public funds, in the form of indemnification, legal representation, fees, and other benefits, to which neither was entitled by contract with the HCSD, nor the provisions of Govt. Code 995, so expending those funds without any legitimate or reasonable public purpose.

**Count VII - Gifts of Public Funds as to John Does**

127. The improper billing, waiver of fees and charges, improper changes to classifications, failure to read meters, and other mechanisms whereby the Board Defendants, HCSD, Bowles, and Dingman, failed to collect all due charges, fees, penalties, and other monies due the HCSD for the period material to this complaint, were improper gifts of public funds to those persons who wrongfully received/retained those monies. Along with those Defendants, the John Does who had their water rates, fees and/or charges payable to the HCSD unlawfully reduced and/or waived, property not liened when due, or who otherwise wrongfully benefited from any action of the HCSD, Board Defendants, and/or Bowles, are in violation of Cal. Const. Art. XVI, Section 6, and Govt Code section 8314, and those funds were thus expended without any legitimate or reasonable public purpose. Because these Defendants have acted to conceal this conduct, the specifics concerning which HCSD John Doe customers received benefits from the malfeasance of these Defendants, and to what degree, must await discovery.

**Count VIII - Violation of Article 1, section 2, of the California Constitution**

128. *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, allows a tort action for damages for violation of the free expression clause of Article I, Section 2, of the California Constitution. The California Constitution gives "[e]very person" an affirmative right to free speech (Cal. Const., art. I, § 2, subd. (a)). In acting as aforesaid to violate State law and the HCSD Bylaws, and to commit wrongs against Plaintiff, the Board Defendants, Bowles, and Dingman acted to violate his right to free speech and/or expression under that section, and Plaintiff seeks declaratory and injunctive relief as to their conduct against him.

**Count IX - Unfair Business Practices as to Julie Bowles**

129. Plaintiff alleges that Defendant Bowles, in performing the acts complained of herein, as employees and/or contracted agent of the HCSD, in violating, agreeing, and conspiring

to violate the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, also thus conspired to, aided and abetted each such act, and did thereby violate California's unfair business practices law, Bus. and Prof. Code 17200, et seq.

**Count X - Unfair Business Practices as to Goff**

130. Plaintiff alleges that Goff, in performing the acts as complained of herein, including the false representation of Goff as an "independent contractor" for a properly-classified employee position, and operating without any license or permit to do so within the County of Siskiyou, as an employee and/or agent of the HCSD, and by acting to agree to, conspire to, and act to, violate the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, also thus agreed, conspired, aided and abetted the other Defendants' wrongful conduct, and did thereby violate California's unfair business practices legislation, Business and Professions Code 17200, et seq.

**Count XI - Unfair Business Practices as to Kampa**

131. Plaintiff alleges that Kampa, in performing the acts as complained of herein, including the false representation of Kampa as an "independent contractor" for a properly-classified employee position, operating as an employee and/or agent of the HCSD without any license or permit to do so within the County of Siskiyou, and by acting to agree to, conspire to, and act to, violate the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth herein, also thus agreed, conspired, aided and abetted the other Defendants' wrongful conduct, and did thereby violate California's unfair business practices legislation, Business and Professions Code 17200, et seq.

**Count XII- Negligence**

132. The HCSD, Board Defendants, Kampa, Goff, Bowles, and Dingman, owed a duty to Plaintiff as a citizen and elector of the District to reasonably conform their conduct, and the operation of the HCSD's water production and treatment systems, to the mandates of the Constitutions and laws of the United States, the State of California, and the HCSD Bylaws, but in acting wrongfully as complained of herein, and/or against Plaintiff, breached those duties, and their associated standards of reasonable care, by violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Bylaws as set forth in this SAC.

133. The breaches of duty, and violations of the associated standards of reasonable care, were each a failure to act as a reasonably careful person would in the same situation. These acts harmed Plaintiff in each instance, and caused him damages in amounts to be determined at trial.

**Count XIII - Unfair Business Practices as to HCBC**

134. Defendants Crittenden, Hornbrook Community Bible Church, Board Defendants, Kampa, Dingman, and Bowles, by corruptly colluding to grant gift(s) of public funds to the HCBC as wrongfully waived and/or reduced water fees, thus each and all violated California's unfair business practices laws to wrongfully benefit the HCBC.

**Count XIX - Civil Conspiracy**

135. The Board Defendants, Dingman, Goff, and Bowles, when committing the wrongful acts set forth in this complaint, acted in concert, and by agreements amongst themselves as described in the foregoing sections of the SAC, to recklessly, wantonly, and/or willfully: violate the HCSD Bylaws, Federal and State constitutions and laws; harass, oppress, coerce, intimidate, and annoy Plaintiff; impair, impede, and violate Plaintiff's constitutional and statutory rights; and, to retaliate against Plaintiff for exercise of his speech and petitioning rights.

**Count XX Violations of the CPRA By HCSD, Board Defendants, and Kampa**

136. At all times material, the HCSD, Board Defendants, and Kampa agreed, and acted, to wilfully fail and refuse to comply with the California Public Records Act by not responding to the many record requests made by Plaintiff in the manner required by law (or at all), by concealing and destroying responsive public records, and by failing to allow access to public records kept at offices and facilities of the HCSD during normal business hours.

**Count XXI Purported Official Acts of the Board Defendants Are Void**

137. The acts of the Board Defendants in purporting to act as the HCSD, as set forth herein, occurring at each of the secret, non-public, improper and/or unlawful meetings described, or later to be found to have occurred, are null and void due to being *ultra vires*, due to criminality[81] or unlawfulness; due to being taken in violation of constitutional and statutory rights of the Public and Plaintiff; due to being a nuisance *per se*[82]; due to Brown Act violations[83]; due to violating mandated procedures of the HCSD as expressed in the April 18, 2014 Bylaws and related Resolutions; and/or due to having been falsely certified or ratified.

**Count XXII Improperly Unbilled Fees and Charges - Gifts/Waste of Public Funds**

138. The HCSD and Board Defendants, with the agreement, assistance, aid, abetting, and ratification of Kampa, Dingman and Bowles, have conspired and acted at all times material to: improperly bill, fail to bill, falsely bill, fail to impose, improperly waive or reduce, and/or fail to collect, all due and payable fees for service and other charges as set forth in the HCSD Bylaws

---

[81] See Govt. Code Sections 54959, 61064(a), 91003(b); Civil Code Section 3369.

[82] E.g., operation of the water plant in violation of the CWA, the SDWA, and Health and Safety Code.

[83] See Govt Code Sections 54953(a) and (c); 54960.1(d).

and Resolutions from residential, commercial, and governmental accounts of the HCSD; and so caused injury to the funds and property of the HCSD. These funds were thus expended without any legitimate or reasonable public purpose. Relief is requested pursuant to the provisions of California Code of Civil Procedure, Section 526a.

**Count XXIII Gifts of Public Funds; Board Defendants, Martin, Bowles, and Soares**

139. The Board Defendants, with the assistance, aiding and abetting, and ratification of Defendants Bowles, Kampa, and Dingman, and have wrongfully acted from the period February 2017 through the current date, to improperly bill, fail to bill, falsely bill, fail to impose, fail to collect, and have improperly waived and reduced previously-, and lawfully-imposed commercial rates and charges for water service and other charges relating to Defendants Martin and Soares absent any legitimate or reasonable public purpose.

**Count XXIV Violation of the Bane Act; HCSD, Board Defendants, Kampa**

140. The acts of each and all of the Board Defendants, and as purporting to act as the HCSD, and of Kampa, as set forth in this complaint, were reckless, willful, and deliberate acts intended to interfere with, impede, deny, violate, and/or erase Plaintiff's contractual, statutory, Bylaw-granted, and/or Constitutional rights via the misuse of governmental power and authority entrusted to them. These acts were intended to cause interference with, and/or violations of, Plaintiff's rights, and to threaten, intimidate, and/or coerce him into abandoning rights provided to him by the Constitutions and laws of the United States, and the State of California, as well as the HCSD Bylaws. In so doing, the Board Defendants, HCSD, and Kampa violated California's Bane Act. See, e.g., Moreno v. Town of Los Gatos, 267 F. App'x 665, 666–67 (9th Cir. 2008).

**Count XXV State Law Claims; Exemplary Damages (Punitive Damages)**

141. The conduct of the Board Defendants, Kampa, Dingman, Goff, and Bowles as set forth herein, was willful, malicious, undertaken individually, and/or by mutual agreements between them, with intent to use official powers to vex, annoy, oppress, coerce, and harm Plaintiff; to interfere with and impede his exercise of statutory and/or constitutional rights; and/or was undertaken with willful or wanton indifference to harm that may have befallen Plaintiff. Plaintiff has been harmed by each act of these Defendants, all as alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff now prays for judgment against the Defendants, and:

1. A declaration that all acts by the Board Defendants at each non-public, unnoticed, and/or unlawfully conducted meeting, and any purportedly official actions taken outside of

public meetings by any of the Board Defendants (individually, or as a group) were *ultra vires* and void, as well as in violation of the HCSD Bylaws;

2. An award to Plaintiff on his Federal claims of general, special, and economic damages of $450,000; exemplary/punitive damages of $300,000 as to the Defendants, and *each* of them, as well as applicable statutory damages, and, reasonable attorney fees, costs and disbursements herein; **and**, as to Plaintiff's pendent state-law and common-law claims, an award of general, special, and economic damages according to proof, as well as punitive damages in the amount of $100,000 against Slote, Tulledo, Puckett, Goff, Dingman, and Bowles;

3. Disgorgement of all fees/charges/wages/contracts/benefits paid to, or for, Dingman, Kampa, Goff, or Bowles for conduct undertaken in violation of any law, or the HCSD Bylaws;

4. Disgorgement of all gifts of public funds made by the HCSD and/or the Board Defendants (or any of their agents) to Bowles, Dingman, Goff, Kampa, Hornbrook Community Bible Church, Steve Crittenden, Duke Martin, James Soares, and any other entity, independent contractor, agency, water customer, or individual receiving such, including, but not limited to, those who had water charges and/or fees of any sort improperly or unlawfully uncharged (including by failure to read their meters), reduced, or waived in violation of the HCSD Bylaws;

7. Restitution by the Board Defendants as provided by HCSD Bylaws Section A-9(26);

8. An Order commanding the governmental Defendants to immediately repair, and operate, the water plant surface water facilities at all times, and in conformance with all laws;

9. An injunction prohibiting the HCSD, Board Defendants, Kampa, and/or Dingman (or their successors) from: maintaining or storing Dingman's vehicles, trailers, and any personal property in or at the HCSD water treatment facility, or upon the lot on which the HCSD water treatment plant is located; and/or, from residing in the water treatment plant or on the lot upon which the water plant rests, instead permitting Dingman to be at, or use, the water treatment facility only when performing duties as a HCSD employee, or related thereto;

10. An injunction prohibiting the HCSD from permitting operation of any water facilities by any person without a current water operator certificate as required by the State of California;

11. A finding and declaration that the HCSD Board never took action in compliance with Government Code §61045 and the Brown Act to amend Dingman's employment contract, terms thereof, number of hours to be worked, nor rate of pay, and so any changes to Dingman's pay or hours worked beyond any required by wage laws were unlawful gifts of public funds without a rational public purpose, and which should be disgorged by Dingman and returned to the HCSD;

12. A finding and declaration that any false claims by Dingman occurring during the times material to this complaint, concerning tasks purportedly accomplished which were not, hours worked which were not, and/or excess time beyond what was actually taken to complete any task, were frauds on the HCSD, and a waste of public funds without legitimate or rational public purpose, and which should be disgorged by Dingman to the HCSD according to proof;

13. An order enjoining the HCSD from diverting funds from water fees and rates for any purpose other than to fund actual operations of the HCSD, or for repair or improvements;

14. For costs of suit, and such other and further relief as the court may deem proper.

Respectfully submitted this 16th day of December, 2021

Roger Gifford, Plaintiff Pro Se

**VERIFICATION**

I, Roger Gifford, declare under penalty of perjury of the United States that:

1) I am the Plaintiff in this action, appearing Pro Se, and know the contents of this SAC;

2) That each allegation contained herein is truthful to the best of my knowledge, is factual, and can be supported by additional facts and evidence;

3) That as to those matters alleged on information and belief, they are so alleged after diligent investigation, and so I reasonably believe them to be true.

Date: 12/16/2021

Roger Gifford, Plaintiff Pro Se

**CERTIFICATION OF SERVICE BY MAIL**

I, Roger Gifford, the undersigned Plaintiff in this matter, do hereby affirm that I served the foregoing documents by US Mail upon the appearing parties via their attorney at the address below, and on the date listed.

Ryan Matthews
2020 W. El Camino Ave., Ste. 700
Sacramento, CA 95833

December 16th, 2021

Roger Gifford, Plaintiff Pro Se

# INFORMAL BIDDING ORDINANCE

AN ORDINANCE OF THE BOARD OF DIRECTORS OF THE HORNBROOK COMMUNITY SERVICES DISTRICT TO PROVIDE INFORMAL BIDDING PROCEDURES UNDER THE UNIFORM PUBLIC CONSTRUCTION COST ACCOUNTING ACT (Section 22000, et seq. of the Public Contract Code)

The Board of Directors of the Hornbrook Community Services District do hereby ordain as follows:

SECTION 1

1. This Ordinance is hereby added to the District Policies and Procedures Manual to provide as follows:
2. Informal Bid Procedures. Public projects, as defined by the Act and in accordance with the limits listed in Section 22032 of the Public Contract Code, may be let to contract by informal procedures as set forth in Section 22032, et seq., of the Public Contract Code.
3. Contractors List. A list of contractors shall be developed and maintained in accordance with the provisions of Section 22034 of the Public Contract Code and criteria promulgated from time to time by the California Uniform Construction Cost Accounting Commission.
4. Notice Inviting Informal Bids. Where a public project is to be performed which is subject to the provisions of this Ordinance, a notice inviting informal bids may be mailed to all contractors for the category of work to be bid, as shown on the list developed in accordance with Section 3, and shall be mailed to all construction trade journals as specified by the California Uniform Construction Cost Accounting Commission in accordance with Section 22036 of the Public Contract Code. Additional contractors and/or construction trade journals may be notified at the discretion of the department/agency soliciting bids, provided however:
    a. If there is no list of qualified contractors maintained by the District for the particular category of work to be performed, the notice inviting bids shall be sent only to the construction trade journals specified by the Commission.
    b. If the product or service is proprietary in nature such that it can be obtained only from a certain contractor or contractors, the notice inviting informal bids may be sent exclusively to such contractor or contractors.
5. Award of Contracts. The General Manager is authorized to award informal contracts pursuant to this Section.

SECTION 2

This Ordinance shall take effect and be in full force thirty (30) days from the date of its passage and before the expiration of fifteen (15) days after its passage, it or a summary of it, shall be published once, with the names of the members of the Board of Directors voting for and against the same in the Siskiyou Daily News, a newspaper of general circulation published in the County of Siskiyou.

PASSED, APPROVED and ADOPTED by the Board of Directors of the Hornbrook Community Services District, this 27th day of June 2017, by the following vote:

AYES:

NOES:

ABSENT:



WEED OFFICE
150 Alamo, Suite 103
(530) 938-3438

YREKA OFFICE
216 Lane St.
(530) 842-3552

www.kwb-law.net

KWB
EST. 1970

KIRSHER, WINSTON & BOSTON
LAW CORPORATION

WRAY E. KIRSHER (1922-2003)
U.S. Magistrate Judge, Retired

ROBERT D. WINSTON
ROBERT B. BOSTON

Attorneys' Assistants:
SARA E. COLLINS
AMY S. HALL

**Please Respond To:**

205 N. Mt. Shasta Blvd., Suite 400
P.O. Box 177, Mt. Shasta, CA 96067
(530) 926-3444, Fax (530) 926-3599

To: Hornbrook Community Services District Board of Directors
From: Robert Winston, Special Legal Counsel
Date: May 19, 2017
Re: Account Summaries through *4/30/17*; Request for Payment

For your information, here are the **approximate and unaudited** balances accrued and due on each HCSD account as of *April 30th*, after applying payments received and posted on or before that date:

| Account | |
|---|---|
| Harrell v. HCSD (#671) | $24,727.42 |
| Olson v. HCSD (#672) | 7,494.36 |
| HCSD v. Olson & Harrell (#797) | 42,645.45 |
| Gifford v. Dingman (#044) | 17,419.19 |
| Gifford v. Hanson (#206) | 5,718.27 |
| Harrell v. HCSD (#847) | 15,913.98 |
| Harrell v. Hanson (#982) | 4,556.86 |
| Gifford v. HCSD (#1392) | 11,333.10 |
| Olson v. HCSD (#1393) | 11,677.40 |
| Gifford v. HCSD (#1088) | 4,902.60 |
| Olson v. HCSD (#1089) | 8,551.53 |
| Gifford v. HCSD (#1292) | 8,473.96 |
| Olson v. HCSD (#1293) | 6,684.53 |
| Gifford v. HCSD (#323) | 261.60 |
| Hanson v. HCSD (#327) | 29.40 |
| HCSD - Misc. (incl. admin. proceed.) | 21,318.65 |

**We are requesting a payment by the District in May in the minimum amount of $1,000.00**, which we shall apply to any or all of these accounts in our discretion unless you instruct us otherwise.

This report is **not** intended to be confidential; it is to be considered to be a public record. Itemized statements for these accounts would, however, be confidential. They will be prepared for viewing at our office only upon request of the GM or disinterested members of the District's Board of Directors.

R. Winston

RDW/

# EXHIBIT 5

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. HARRELL,<br><br>Plaintiff,<br><br>v.<br><br>HORNBROOK COMMUNITY SERVICES DISTRICT, et al.,<br><br>Defendants. | No. 2:14-cv-01595 KJM GGH<br><br>FINDINGS AND RECOMMENDATIONS |

*INTRODUCTION AND SUMMARY*

Management of judicial resources is the quintessential zero sum game.[1] Time spent on one litigant's case necessarily means that other litigants will stand in line waiting for their turn. When a litigant unnecessarily bogs down the judicial process, all others suffer because less thoughtful time is spent on their cases, or as is more likely the case, the court simply places their concerns on the back burner while dealing with the litigant whose incessant, voluminous and prolix filings bespeak a litigation narcissism.

The instant case is an example of a purposeful overloading of the court with pleadings which take up more than warranted judicial attention, but which simultaneously demonstrate a

---

[1] In economic or game theory, a zero sum game is a situation in which one person or group can gain something only by causing another person or group to lose it. See Meriam-Webster.com, Meriam Webster n.d., 9 August 2017.

desire to wage a war of attrition on the opposing parties. There seems to be no desire on plaintiff's part to ever reach the merits of a viable claim; rather, there seems to be much desire to use the litigation process per se as an end in itself.

Plaintiff filed his complaint in this matter on July 7, 2014, ECF No. 1, and requested to proceed in forma pauperis on the same day. ECF No. 2. The court granted in forma pauperis status on August 6, 2014 and directed service of the complaint by the U.S. Marshal. ECF No. 3. Now, just a few days short of three years later, the action has not gone beyond the complaint phase; indeed, no viable complaint has yet been provided, and plaintiff now refuses to provide one.

*THE PARTIES*

Plaintiff was at one time the acting Manager of the defendant Hornbrook Community Services District ("District"), and now a former and disgruntled, to say the least, ex-employee of the District. The action began in part as a suit alleging that he was terminated from his employment as retaliation for his exercise of his First Amendment rights, but has since morphed into a muddied and muddled conglomeration of claims, both federally and state law based, challenging the manner in which the district is run in general, its hiring practices, its failure to adhere to the State's opening meeting law, and its claim to operate as a water company in violation of nearly every law and regulation applicable to such an enterprise.

Defendant includes the District itself, and nearly everyone currently, or perhaps ever, associated with the District all of whom he alleges have acted unwisely or criminally in the operation of the District and, for a while, any lawyer who attempted to represent it. The District, which according to information on the web page of the State Water Resources Control Board, Division of Drinking Water, serves only a population of approximately 280 people and 141 water connections.[2] It is tiny indeed.

Although the court has laid out the procedural history of this case in several earlier orders, it will do so here again, to assure that all of the salient facts are collected in one place and so that

---

[2] Under Federal Rule of Evidence 201(b) the Court takes judicial notice of this information as the accuracy of the Board's postings cannot reasonably be questioned.

the impact of plaintiff's actions in this case, his contumacious conduct, and his probable vexatious intent, are clear. It will also note other allied cases associated with this case[3], which add to the inference that plaintiff and his allies desire to achieve through the *process* of litigation what they apparently cannot receive through democratic procedures.

*PROCEDURAL HISTORY*[4]

7/07/14 Plaintiff files his original complaint which comprises 24 pages with an additional 57 pages of material appended.[5] The First Claim includes two "counts," purportedly grounded in federal law: Freedom of Speech and Due Process. The Second Claim comprises eight counts grounded in state law – Slander, Willful Negligence, Negligence, False Light, Civil Conspiracy, Intentional and Negligent Infliction of Emotional Distress, Labor Code Violations, Nuisance and a plea for punitive damages. The named defendants include the District, Michele Hanson, Patricia Brown, Sharrel Barnes, Robert Winston (District counsel) and Does 1-20. ECF No. 1. The Complaint is accompanied by a Motion to Proceed In Forma Pauperis. ECF No. 2

8/6/14 Order grants in forma pauperis status and directs service of the Complaint by the United States Marshal. ECF No. 3.

8/21/14 Before any defendant has answered, plaintiff files a Motion to Amend his Complaint. ECF No. 6

---

[3] One of the defendants in this case, Roger Gifford, and another plaintiff have filed complaints of that are, in principal part, a mirror of the instant matter. See Olson v. Hornbrook CSD, et al., 2:15-cv-646 MCE CMK, Amended Complaint dismissed with leave to amend not to exceed 25 pages. ECF No. 9 (5/18/17); Gifford v. Hornbrook CSD, et al., 2:cv-15-1274 MCE AC, Appeal to Ninth Circuit Court of Appeals dismissed for failure to file the opening brief after and Order and Judgment pursuant to F.R.Civ.P 41(b), ECF Nos. 14-20 (6/8/17); Gifford v. Puckett, et al., 2:16-cv-955 (Related to instant case, ECF No. 45 (3/29/17) and Second Amended Complaint dismissed without prejudice and permission to file Third Amended Complaint not to exceed 25 pages ECF 55 (4/7/17).

[4] Not all elements of this procedural history are directly relevant to the court' decision here, but they are necessary to demonstrate the burden the case has wrought on both the court's docket and the defendants' pocketbooks to this stage of the proceedings.

[5] It is important to note that his most recent, and every successive pleading submitted by plaintiff, fail to follow Local Rule of Eastern District of California No. 130(c) which calls for consistent double spacing of text. Instead plaintiff varies between single spacing on documents such as Declarations, and 1-1/2 spacing for pleadings, thus greatly increasing the word quantity found on each page of these documents which understates the number of pages actually filed if done so in conformity to the Rule.

8/29/14 Order denies the Motion to Amend without prejudice to its refiling accompanied by the proposed Amendment. ECF No. 7.

10/9/14 Order to Show Cause within 21 days of the date of the Order why the matter should not be dismissed for failure to serve. ECF No. 8.

10/30/14 Motion to Amend the Complaint and Response to the Order to Show Cause, ECF No. 9, and the First Amended Complaint, ECF No. 10, are filed by plaintiff. His response to the Order to Show Cause indicates he needed to wait until some "final 'official acts'" were taken by some of the Defendants.

The Amended Complaint comprised 93 pages – a 38 page Complaint with 55 pages of District Board Minutes and related documents appended, and added state claims for Violation of District Bylaws, Government Code violations, Employment Discrimination, Unfair Business Practices, and Violation of the Covenant of Good Faith and Fair Dealing, some claims split into several counts. It also added two additional District officials to the defendant list. ECF No. 10.

12/5/14 Order discharging the Order to Show Cause and denying the Motion to Amend as unnecessary. In addition the Order identified the defendants upon whom service of the Original Complaint was appropriate[6] and directed the Clerk to issue and the U.S. Marshal to serve process within 90 days of the Order. ECF No. 11. The Amended Summons was issued on the same day. ECF No. 12.

12/29/14 Plaintiff filed a Memorandum regarding the service documents indicating he had filled out all necessary forms and provided copies of all required documents to the U. S. Marshal for service on December 21, 2014. ECF No. 13.

2/23/15 Defendant Robert Winston files a Motion to Dismiss and to Strike state claims under California's SLAPP law pursuant to Federal Rule of Civil Procedure 12(b)(6) and California Code of Civil Procedure Section 425.16 and sets a hearing for April 16, 2015. ECF No. 14.

---

[6] The service list included defendants District, Hanson, Brown, Barnes, Winston, Bowles, Dingman and Goff, thus covering all defendants named in both Complaints – the operative Original Complaint and the draft Amended Complaint.

3/18/15    Order directs plaintiff to file a statement providing the street addresses for defendants District and Ernest Goff and plaintiff's telephone number within 14 days and warns failure to comply may result in dismissal of the Complaint.  ECF No. 17.

3/25/15    Plaintiff files objections to the Motion to Dismiss or, in the alternative, for an extension of 45 days in which to file an Opposition.  ECF No. 18.

3/26/16    Plaintiff provides information called for in the Court's 3/18/15 Order.  ECF No. 19.

4/1/15    Order grants plaintiff 30 days from the date of the order in which to oppose the Motion to Dismiss, and direct defendant to reply within 7 days thereafter, takes the matters under submission and vacates the calendar for resetting if a hearing is necessary.  ECF No. 20.

4/22/15    All defendants, sans Robert Winston, file a Motion for Extension of Time to Answer the Complaint to May 22, 2015.  ECF No. 23.[7]

4/24/15    Order grants extension of time to Answer to May 22, 2015.  ECF No. 24.

4/28/15    Plaintiff files a letter to the Office of the Clerk of the Court objecting to the appearance of Robert Lucas as not properly qualified to represent the defendant and therefore contending that no defendant other than Winston has answered his Complaint timely.  ECF No. 26.    On the same date plaintiff files a Request for Entry of Default as to defendants Sharrel Barnes, Julie Bowles, Patricia Brown, Clint Dingman, Michele Hanson and the District based on his contention that attorney Lucas cannot legally appear on behalf of these defendants, ECF No. 27, Objections to these defendants' application for additional time to Answer,  ECF No. 28, his Opposition to defendant Winston's Motion to Dismiss, ECF No. 29, and a Request for Judicial Notice of LAFCO documents establishing the District as a recognized Community Services District effective December 13, 1977.  ECF No. 30.  Collectively, plaintiff filed 128 pages of briefing and appended documents.

4/30/15    Plaintiff files an objection to the Court's Order granting defendants additional

---

[7]  Attorney Robert W. Lucas files this document under a special appearance due to the conflict that disallows Robert Winston, the District's counsel, from doing so in light of his status as a defendant in the lawsuit.

time to respond to the Complaint on the ground that attorney Robert Lucas, who specially appeared on behalf of the individual defendants, could not do so and noting that the effect was to put these defendants in default. ECF No. 31.

5/8/15 Defendant Robert Winston files a Reply Memorandum in support of his Motion to Dismiss the original Complaint. ECF No. 33.

5/22/15 The individual defendants file a Motion to Dismiss the Amended Complaint for failure to state a cognizable claim. ECF No. 35.

6/2/15 Plaintiff files a request for permission to engage in written discovery to assist him in his preparation of opposition to defendant Winston's Motion to Dismiss and related SLAPP issues, ECF No. 38, which defendant Winston opposes on 6/4/15. ECF No. 39. This opposition is joined by the individual defendants on 6/12/15. ECF No. 40.

6/19/15 Plaintiff files a Reply related to his request for discovery. ECF No. 41.

7/13/15 Plaintiff seeks a 45 day extension of time to oppose defendants' Motion to Dismiss now set for hearing on August 6, 2015. ECF No. 42.

7/22/15 The court issues an Order extending time for plaintiff's opposition to August 13, 2015 and defendants' Reply to August 20, 2015 which also vacates the hearing set for August 6, 2015 and takes the matter under submission subject to further scheduling. ECF No. 43.

8/12/15 Plaintiff files his Opposition Memorandum and Declarations from two current District Board Members, Roger Gifford, who is also a defendant in the case, and Kimberly Olson. ECF Nos. 46-48. This submission totaled 95 pages, again single or 1-1/2 spaced pleadings, the last of which contained 92 footnotes. ECF Nos. 46-48.

8/20/15 Defendants Reply and matter is submitted. ECF No. 49.

9/10/15 Court files an Order and Findings and Recommendations denying plaintiff's Motions for early discovery and to amend the complaint and recommends the Motions be dismissed in part and denied in part. ECF No. 50. Plaintiff is granted leave to amend and provided guidance on proper pleading under Federal Rule of Civil Procedure 8 in this Order which also directs that "any amended complaint should **not exceed twenty-five pages.**" (Emphasis in Original). ECF No. 50.

9/11/15 Defendants filed objections to the foregoing Order on the ground that it gives plaintiff permission to add Robert W. Lucas as a defendant in any amended complaint which they claim to be improper insofar as he is general counsel to the District, and Jason J. Sommer, who is identified as counsel for defendant Winston. ECF Nos. 51-52.

9/10/15 Plaintiff filed a "Memorandum" concerning the 9/15 Order claiming he had not received the Order timely and seeking additional time to file objections. ECF No. 53.

[8] 9/24/15 Plaintiff filed Objections to the Order. ECF No. 54.

3/22/16 District Court Judge Kimberly J. Mueller entered an Order addressing the Magistrate Judge's Findings and Recommendations in which she granted defendants motion to dismiss with leave to amend but denied the right to name attorneys Lucas and Sommers as defendants, and denied defendants' strike motion without prejudice to renewal after plaintiff amends the First Amended Complaint. ECF No. 55.

3/28/16 The Magistrate Judge enters an Order granting plaintiff 30 days from the date of the Order to file a Second Amended Complaint that complies with the Federal and Local Rules. ECF No. 56.

4/22/16 Plaintiff seeks a 30 day extension of time to file his Second Amended Complaint, ECF No. 57, which request is granted on 5/2/16. ECF No. 58.

5/31/16 Plaintiff files his Second Amended Complaint consisting of 164 pages, still not properly double spaced, and 325 footnotes, ECF No. 59, along with a Table of Contents that is in and of itself 5 pages long. ECF No. 62.

6/9/16 By Order defendants are directed to file a response to the Second Amended Complaint within 20 days of its issuance. ECF No. 64.

6/29/16 Defendants file Motions to Dismiss under Federal Rules 12(b)(6) and 41(b), the latter predicated upon plaintiff's failure to adhere to the 25 page limitation placed on him in the Court's Order of September 10, 2015, and Motions to Strike based on the Anti-SLAPP statute to be heard on August 4, 2016. ECF Nos. 66-70.

[8] The court's docket indicates that the Clerk of the Court served the Order by mail on September 10, 2015.

7/12/16 Plaintiff moves for a Preliminary Injunction and Appointment of a Receiver based upon purported failures of the District to operate in conformity with the law. The entire submission amounts to 104 pages including argument, Declarations[9] and other attachments. ECF No. 71.

7/19/16 Plaintiff moves to stay all proceedings until all defendants named in the Second Amended Complaint have filed responses so all motions can be heard simultaneously. ECF No. 75.

7/21/16 Defendants file Oppositions to plaintiff's motions for Preliminary Injunction and Appointment of a Receiver along with supporting Declarations and a Request for Judicial Notice. ECF Nos. 77-82.

7/22/16 Order removing plaintiffs Motions for Preliminary Injunction and Appointment of Receiver from the court's hearing calendar as not conforming to the Local Rules. ECF No. 83.

7/22-7/28/16 All defendants file Reply Memoranda. ECF Nos. 84-86, 90-91.

7/27/16 Plaintiff requests a rescheduling of the hearing scheduled on the pending motions and a 90 day extension of time to Oppose defendants' Motions to Dismiss and Strike,. ECF No. 88, and files an objection to the Court's Order of July 22, 2016. ECF No. 89.

7/28/16 and 8/1/16 Defendants object to plaintiff's filings found at ECF No. 88 and 89. ECF Nos. 92, 96.

8/1/16 Order removes all pending matters from the court's calendar and takes them under submission, also directing that no further motions are to be filed without pre-approval by the court. ECF No. 95.

8/2/16 Plaintiff files new Motions for Preliminary Injunction and Appointment of Receiver, with Declarations from the same declarants as appeared in the earlier motion pleading, with hearing scheduled for September 22, 2016. ECF Nos. 97-100.

---

[9] One of the attached Declarations is signed by *defendant* Gifford, who filed his own lawsuit against the same cast of characters as found in this case, on May 5, 2016. See Gifford v. Puckett, 2:16-cv-955, ECF No. 1, which was declared related to this case by District Judge Mueller on 3/29/17. ECF No. 45.

8/15/16 Plaintiff seeks postponement of hearings until all defendants are served and joined, ECF No. 103, and files objections to the Court's 8/1/16 Order. ECF No. 103. Defendants oppose any further delay. ECF Nos. 105, 106.

9/12/16 The court issues an Order to Show Cause why plaintiff should not be held in contempt of court for failing to obey the Court's order of August 1, 2016 by filing Motions found at ECF Nos. 97-100 and 103, without first receiving permission from the court and holding these Motions will not be calendared for hearing or considered on the merits at this time. ECF No. 107.

9/20/16 The court files Findings and Recommendations recommending that plaintiff's Second Amended Complaint be dismissed with prejudice and judgment be entered pursuant to Federal Rule of Civil Procedure 41(b) for plaintiff's persistence in filing Complaints far exceeding the 25 page limit placed on such by the court and further failing to follow the court's instructions re content based on the elements of Federal Rule of Civil Procedure 8. ECF 108. The prolixity of this amended pleading was found to make deciphering all the issues an impossibility, made ever fashioning reasonable discovery a nightmare, and would lead to an inevitable slew of motions both on the merits and in discovery.

(It should be noted here that this the pleading on which plaintiff now professes a desire to rest. See infra.).

9/21/16 Plaintiff responds to the court's Order to Show Cause explaining that he wasn't receiving his mail timely as it takes 10-14 days for USPS to deliver mail to his P. O. Box,[10] and sometimes not at all, and thus he had not been aware of the "no filing" Order when he filed new motions. ECF No. 109.[11]

10/3/16 Plaintiff and two of the *defendants* – Sharrel Barnes and Roger Gifford –file Objections to the court's Findings and Recommendations. The filing defendants both contend that, although they are not responsible for any of the derelictions levied against them by plaintiff,

---

[10] The court has never heard of such inordinate delays in mail deliveries nor has it ever received a similar complaint by any pro se litigant residing in distant locations and receiving court served documents by mail.

[11] Plaintiff has never requested to serve and receive filings through the court's ECF system but indicates in ECF No. 109 that even gaining permission to use the ECF system will not solve his problem since access to internet services is "intermittent" in Oregon.

they believe his claims against the District and its other officers are true and correct and should be litigated, ECF Nos. 110-112. Plaintiff Harrell's Objections are found in a 39 page filing that attacks every aspect of the Order as not within the scope of controlling law, attributable to the court's inability to grasp the gravamen of his arguments, and the assertion that he has been "prevented" from opposing various motions brought by defendants among other things. ECF No. 111.

10/21/16-11/30/16 – Attorneys for defendant Sharrel Barnes seek to withdraw from representation in light of defendant Barnes's joinder in motions by plaintiff Harrell and defendant Gifford that create a conflict in their representation which is opposed by Barnes, Harrell and Gifford in a flurry of filings. ECF Nos. 115-123.

11/30/16 Motion to withdraw is granted in an Order by the Magistrate Judge and a counter-motion to disqualify all attorneys representing defendants by Sharrel Barnes, ECF No. 124, is calendared for hearing. ECF No. 126.

12/6/16-1/13/17 - Another flurry of briefing by all of the foregoing parties and notice of hearing on the counter-motion ensues. ECF Nos. 128-137.

12/29/16 Order directs parties to be prepared to discuss whether severance of defendants Gifford and Barnes into a separate action will resolve pending disqualification issues. ECF No. 131.

1/19/17 Hearing on disqualification issue attended only by counsel for defendants. ECF No. 138.

3/29/17 District Judge enters an Order adopting Findings and Recommendations in ECF No. 108, but grants plaintiff leave to file a third amended complaint <u>not to exceed 25 pages</u>, including attachments, and plaintiff is warned that failure to adhere to the court's orders will render amended complaint subject to immediate dismissal with prejudice. ECF No. 139.

4/7 and 4/14/17 – Time for filing of Third Amended Complaint set for April 26, 4017. ECF Nos. 141, 144.

4/12/17 Plaintiff Harrell and defendant Gifford file a stipulation for a Good Faith Settlement Order and Judgment. ECF No. 142. On May 1, 2017 the court enters and Order

striking the filing on grounds that the form of the application does not allow other defendants to claim indemnity against defendant Gifford if held liable, there is an unanswered question regarding the use of the state good faith settlement law in the context of this mixed federal/state action, and the absence of an operative complaint to assist in a determination of the effect of any good faith settlement ruling. ECF No. 150.

4/26/17 Plaintiff files a "Response and Objections" to District Judge Order re amendment, ECF No. 139. ECF No. 148.

5/1/17 Order to show cause why Complaint should not be dismissed for failure to file Third Amended Complaint in conformity with orders of Magistrate and District Judge with notice that failure to respond will result in dismissal with prejudice. ECF No. 149.

5/2/17 Plaintiff's Objections to striking of Stipulation for Settlement. ECF No. 151.

5/3/17 District Judge construes the Response and Objections in ECF No. 148 as a Motion for Reconsideration which is denied. ECF No. 152.

5/11/17 Plaintiff and defendant Gifford object to ECF No. 150 striking stipulation for settlement and entry of judgment. ECF Nos. 154, 155.

5/23/17 Plaintiff responds to the 5/1/17 Order to Show Cause by stating that he has declined to amend his complaint pursuant to Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004). ECF No. 156 and thus is not in violation of the Court's Order re amendment.

*DISCUSSION*

*A. Dismissal Under Federal Rule of Civil Procedure 41(b)*

This case has been before the court for over three years and has yet to produce a settled complaint. Nonetheless, the docket is weighted with 156 entries, most of them involved with contentions that ultimately have no bearing on the merits of the litigation and advance the matter not at all. One defendant in this case, Roger Gifford, also has his own suit which mirrors both the style and, in many cases, the language and approach taken by the plaintiff here. As the procedural history shows defendant Gifford often joins with plaintiff in resisting actions by his co-defendants, which is in itself more than suspicious of litigation game playing. The two cases together are redolent with the suggestion that the point is not to bring this matter to trial, but

rather to burden the principal defendant, Hornbrook Community Services District [Hornbrook], with heavy defense costs. As the District is unusually small, see n. 1 and accompany text, supra, it is reasonably apparent that the defense costs are burdensome.

Based on the foregoing, the natural inclination of the court is to deal with this matter pursuant to Federal Rule of Civil Procedure 41(b) to dismiss with prejudice. The jurisprudence in this circuit makes clear that when the burden on both the court in terms of its effect on the court's docket and on other litigants, who must stand in line behind the constant attention required to deal with the vexatious case, would support that action. See, e.g., Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981)(Dismissal justified where reasonable alternatives were offered to plaintiff to address the defects of verbosity, confusion, and conclusory nature of pleading); Bittaker v. Rushen, 978 F.2d 714, *1 (9th Cir. 1982)(concurrence on grounds); Phenylpropanolamine (PPA) Products Liability Litigation, 40 F.3d 1217, 1224, 1252 (9th Cir. 2006)(non-compliance with court management orders where court's expectations were clearly stated renders dismissal the most viable option); California Coalition for Families and Children v. San Diego County Bar Assoc., 657 Fed.Appx. 675, 677-678 (9th Cir. 2016) (two complaints with 1,200 and 1,600 pages with attachments dismissed under 41(b)). The United States Supreme Court has supported the rationale of the foregoing cases, albeit in a dismissal under Federal Rule of Civil Procedure 37, where the plaintiff shows a "callous disregard" of his responsibilities to follow court orders. National Hockey League v. Metropolitan Hockey Club, Inc., 47 U.S. 639, 639-640 (1976). The situation here mirrors that in the Fifth Circuit case of Barnes v. Tumlinson, 598 Fed.Appx. 798 (5th Cir. 2015). There, the emphasis was on the contumacious conduct by the plaintiff, id. at 798, with plaintiff complaining any page limit imposed by the court was arbitrary and not required by Rule 8, especially in his case where he deemed it "impossible" to fit everything into a "short and plain" pleading, thereby displaying the same kind of stubbornness and contumaciousness displayed by plaintiff here. Id. at 798-799.

Going through the factors pertinent to dismissal for failure to obey a court order leads to the inescapable conclusion that the standards have been met.

////

Case 2:14-cv-01595-KJM-GGH Document 61-17 Filed 08/15/17 Page 13 of 16

> Under our precedents, in order for a court to dismiss a case as a sanction, the district court must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir.1998) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986)). We "may affirm a dismissal where at least four factors support dismissal, ... or where at least three factors 'strongly' support dismissal." Id. (quoting *Ferdik*, 963 F.2d at 1263). "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors and we may review the record independently to determine if the district court has abused its discretion." *Ferdik*, 963 F.2d at 1261

Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999).

Of course, the progress of this case has obviously been anything but expeditious (factor 1), and the court's need to manage its docket has been thoroughly explained, supra (factor 2). There is no risk of prejudice to the genuine defendants in this case (factor 3); the reasons for the previous dismissals were to prevent the prejudice which would occur if the claims are not understandably stated, and discovery would be boundless and uncontrollable without a myopic supervision of the case and adjudication of the countless, inevitable motions. The court has striven to have the claims understandably defined so that the case could proceed to its merits, but to no avail (factor 4). And, at this point, with plaintiff refusing to amend further, there is no alternative sanction (factor 5).

In the instant case, however, plaintiff has injected a new twist into his resistance of the court's authority that renders Rule 41(b) a possibly less correct means of dealing with his behavior.

*B. Dismissal under Rule 12(b)(6)*

In plaintiff's objections to and request for reconsideration of Judge Mueller's Order permitting amendment but limiting the plaintiff to 25 pages of less in so doing, he claims his right to "stand on his complaint," and cites to the Ninth Circuit's decisions in Yourish v. California Amplifier, supra, 191 F.3d 983, 986 (9th Cir 1999), and Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004). ECF No. 148 at 9:23-10:7. Plaintiff sees the actions of this court to

be arbitrary and capricious and invoked purely because he is proceeding *pro se*, and emphasizes his right to proceed as he sees fit by citing to Faretta v. California, 422 U.S. 806, 813 (1975), an inapt criminal case to these civil proceedings. Id. at 10:11-11:5. By invoking this right to "stand," and citing to Yourish and Edwards, plaintiff invites dismissal under Rule 12(b)(6).

In WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc), the court made clear that a plaintiff who had his complaint dismissed with leave to amend could not immediately appeal that decision since it was not final, but if "a plaintiff files in writing a notice of intent not to file an amended complaint, . . . filing of such a notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, [an order] that is clearly appealable." 104 F.3d at 1135 (quoting Lopez v. City of Needles 95 F.3d 20 (9th Cir. 1996). The case cited by plaintiff, Edwards, supra, reiterated this holding that a plaintiff "may obtain an appealable final judgment by 'fil[ing] in writing a notice of intent not to file an amended complaint.'" 356 F.3d at 1064.

Thus, when a plaintiff clearly communicates his choice to stand on his complaint he may not have disobeyed the court's Order in such a way as to invite a Rule 41(b) dismissal, but he has transformed the court's threat dismissal for disobedience of its order into a "final, appealable judgment." Id. at 1064. In so holding the court noted that there is more than a formal difference between a dismissal under Rule 41(b) and one under Rule 12(b)(6) insofar as the former is deemed a sanction for disobedience while the latter "carries no such stigma," but permits appellate review directly upon the question of whether the plaintiff has stated a claim upon which relief can be granted. Id. at 1065.

There is some question in the undersigned's mind whether Edwards et al., fit the situation here. In the cases cited, the plaintiff had received a ruling on the merits of the claims, albeit some of the claims had been dismissed for failure to allege facts with specificity, but because of the perceived error of law on the merits, plaintiff was desirous of receiving a final ruling on the legal issues from the court of appeal. Here, plaintiff contests, not dismissal of his claims on the merits, but the Magistrate Judge's and District Judge's conclusion that the Second Amended Complaint was a hopeless mish-mash of verbose narrative, prolix claims which were entwined with the

narrative, even in some of the hundreds of footnotes, as well as the order to keep his pleading to a succinct 25 pages—a procedural ruling and not a ruling on the legal merits of claims. It is difficult to conceive that such becomes a determination that specific claims lacked a legal basis, a point at which the court has been unable to arrive. The point of the previous dismissal with leave to amend was that the prolixity denied defendants a fair opportunity to identify and respond to the claims.

But perhaps the rule conundrum is now a distinction without a difference. If plaintiff receives a Rule 41 final dismissal, it is appealable; if he receives a Rule 12 dismissal, it is appealable. Although the standards for review of the different dismissals are different, the facts and rulings germane to the appeal do not change simply because a different rule number is applied to decide them in this court.

*CONCLUSION*

But for plaintiff's invocation of Edwards, et al., this court has no doubt that the contumacious behavior of plaintiff would meet all the criteria for a Rule 41(b) dismissal. Edwards, however, may require a dismissal pursuant to Rule 12(b)(6) which will allow the Ninth Circuit to review the entirety of the record and determine whether plaintiff may proceed with this litigation. The best way to resolve this case is to issue alternative rulings.

In light of the foregoing, IT HIS HEREBY FOUND AND RECOMMENDED that:

1. Plaintiff's Second Amended complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to obey a court order, or in the alternative pursuant to Rule12(b)(6) for failure to state a claim;

2. Judgment should be enter and the Clerk of the Court should close this file.

This Findings and Recommendations is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, the parties may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified

/////

time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

DATED: August 14, 2017

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 6

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER GIFFORD,

Plaintiff,

v.

ROBERT PUCKETT SR., et al.,

Defendants.

No. 2:16-cv-0955 KJM GGH

FINDINGS AND RECOMMENDATIONS

This matter is a *second* case filed by plaintiff Roger Gifford alleging various claims against several defendants, some common to both actions, principal among which is the Hornbrook Community Services District (District). See 2:15-cv-1274 MCE AC PS. The additional defendants are various members of the District's Board, lawyers who have represented the District and its board members in this case as well as a related case -- Harrell v. Hornbrook Community Services District, et al., 2:14-cv-1595 KJM GGH.

This Order will address the history of the both the present and the earlier case and for the reasons stated herein will recommend that the matter be dismissed with prejudice pursuant to *res judicata*, in part, Federal Rules of Civil Procedure 8, 41(b) and 12(b)(6) because, of its internal deficiencies, and because it fails to address the orders and warnings given in connection with the earlier case that led to its dismissal on those grounds.

////

*PROCEDURAL HISTORY*[1]

**6/15/15 A verified complaint is filed in <u>Gifford v. Hornbrook, etc.</u>, Civ. 2:15-1274 is filed and alleges several Claims as follows:**

**First Claim, Count 1, for violations of plaintiff's federal constitutional rights to freedom and speech and petition; Count II, for deprivation of rights to free speech and petition due process and equal protection of the laws' Count III, for rights to due process and equal protection; Count IV, for deprivation of rights to equal protection, due process and liberty; Count V, for deprivation of rights to equal protection due process of law, and first amended right of petition; Count VI, for deprivation of rights to due process and equal protection related to Gifts of District public funds; Count VII, for violation of rights to due process, equal protection, free speech and petition, and liberty interests; and, Count VIII, for deprivations of right to due process and equal protection – gifts of public funds to Clint Dingman.**

**Second Claim: Pendent State Claims: Count 1, for violations of District by-laws; Count II, for willful negligence, negligence; Count III, Violations of Government Code sections 1090 and 87100 – Self Dealing; Count IV, Retaliation in Employment; Count V, Failure to Indemnify Public Employee; Count VI, violation of the Public Records Act; Count VIII, gifts of public funds false claims and fraud as to Clint Dingman; Count IX, for violation of Article I, section 2, of the California Constitution; Count X – Unfair Business Practices as to Robert Winston, California Business and Professions Code section 17200 et seq; Count XI, Unfair Business Practices as to HCBC [defendant Hornbrook Community Bible Church] (alleged to have resulted in violations of the California Water Code and the federal Safe Drinking Water Act); Count XII, Unfair Business Practices as to Murphy, Pearson, Bradley & Feeney, Inc. and Attorney Robert Lucas; Count XIII, for civil**

---

[1] The chronological procedural histories of both the instant matter and its predecessor, <u>Gifford v. Hornbrook Community Services District, et al</u>., Civ. 2:15-cv- 1274 MCE-AC will be included here. This exercise is necessary to demonstrate the burden the case has wrought on both the court and the defendants' pocketbooks and therefore becomes necessary as context for the recommendation this court will make to dismiss this case. To distinguish between the two cases, the referenced pleadings in the earlier case appear in bold-faced type.

Case 2:16-cv-02955-JAM-GGH Document 61 Filed 10/27/17 Page 3 of 13

**conspiracy by defendants to violate plaintiff's constitutional and statutory rights and in retaliation; Count XIV, for Willful and/or Negligent Infliction of Emotional Distress; Count XV, for California Labor Law Violations; Count XVI for nuisance; Count XVII, for violations of the contractual covenant of good faith and fair dealing; Count XVIII, for Punitive Damages.**

**Each of the foregoing incorporates "facts"[2] stated in paragraphs 1 through 189 and 191.**

**Plaintiff prays for damages, both compensatory and punitive, declaratory relief, disgorgement of attorney fees paid to defendant attorneys and gifts of public funds, attorneys' fees, mandates to disclose recipients of gifts of public funds, to require Board members to engage an engineering firm to determine proper water delivery fees, to employ certified operators of all district facilities, to provide plaintiff with unrestricted access to all District equipment, property, facilities and all books and records it maintains; a declaration that defendant Dingman is an uncertified operator and thus a nuisance per se and as such he must cease any operational activities and enforcement of that cessation by injunction, and injunctions prohibiting refusing to provide keys to all District locks to plaintiff and all other directors, preventing defendants and those acting in concert with them from operating the District facilities until they acquire licenses and from acting outside federal state or local law, disallowing Board Defendants from undertaking administrative duties of officers and employees, mandating Board Defendants to abide by District by-laws, and declarations of each act previously taken by the Board defendants in violation of the Broad Act, the District Bylaws and any other law identified in the Complaint and identifying all such actions to be *ultra vires* and void.**

**Altogether this Complaint ran to 114 pages and was accompanied by 219 pages of attachment exhibits. ECF No. 1.**

**////**

---

[2] The "facts" purportedly stated are often better described as legal conclusions.

**9/22/15 Magistrate Judge Clair grants plaintiff IFP status and dismisses the complaint pursuant to Federal Rule of Civil Procedure 8 and based upon its "shotgun pleading" nature, explaining actions must be taken to bring the complaint within the scope of the dictates of Rule 8 and the Local Rules of the District. Plaintiff is given 30 days to amend if he chooses to do so. ECF No. 3.**

**1/21/16 After being given two 90 day extensions of time to replead, ECF Nos. 5, 7, plaintiff files his First Amended Complaint. This amendment runs to 143 pages plus a 3 page Table of Contents, but has no accompanying Attachments or Exhibits. ECF No 8.**

**1/26/16 Magistrate Judge Claire issues Findings and Recommendations recommending the Amended Complaint be dismissed without leave to amend for a continuing violation of Rule 8 and replication of the first "shotgun pleading." The Order finds that plaintiff has acted in bad faith, has repeated to fail to cure deficiencies by the amendment allowed, has prejudiced the defendants by his actions, and concludes that further amendment would be futile. ECF No. 9.**

**2/12/16 Plaintiff files objections to the Magistrate Judge's Findings and Recommendations on the grounds, *inter alia,* that the court has misread the requirements of Rule 8, violated the holdings of Twombly and Iqbal, overlooked the complexity of the issues he has raised which prevents a "short and plain" presentation, and failed to meaningfully assess the complaint as a whole. ECF No. 10.**

**3/30/16 District Judge adopts Findings and Recommendations, ECF No. 9, dismisses Amended Complaint without leave to amend, and orders the file closed. ECF No. 11.**

**4/21/16 Plaintiff files a Notice of Appeal. ECF No. 13, and seeks in forma pauperis status in appellate court. ECF Nos. 13, 15.**

5/5/16 Plaintiff files the Complaint in the instant matter, Civ. 2:16-cv-955, containing 85 pages of allegations and 40 pages of exhibits, ECF No. 1, and seeks in forma pauperis status. ECF Nos. 2. The Complaint, attempting to state claims that have been dismissed against the District, et. al., and otherwise, sets forth the following claims:

First Claim, Count I – Violations of rights to freedom of assembly, speech and petition; Count II – Deprivations of rights to equal protection and due process; Count III – Deprivations of rights to equal protection due process and First Amendment rights; Count IV – Deprivations of due process and equal protection for gifts of public funds to named parties; Count V – Deprivations of rights to due process and equal protection for gifts of public funds to defendant Clint Dingman; Count VI – Deprivations of due process and equal protection for illegal modification to and ignoring of District by-laws by ; Count VII – Violation of 42 U.S.C. section 1985; Count VIII – Violation of rights to due process, equal protection by defendants District, Bowles, Winston, Dingman and Goff; Count IX – Violation of due process and equal protection by defendants Board, Dingman and Goff.

Second Claim, Count 1 – Violation of State Law for failing to follow by-laws; Count II – Willful Negligence and Negligence; Count III – Gifts of Public Funds; Count IV – Gifts of Public Funds, False Claims and Fraud against defendant Dingman; Count V – Gifts of Public Funds to defendants Ernest Goff and Julie Bowles through false claims; Count VI – Gifts of Public Funds to John Does; Count VII – Violation of Article 1, section 3, of the California Constitution; Count VIII – Violation of Article 1 section 2 of the California Constitution; Count IX – Unfair Business Practices by Julie Bowles and Board defendants; Count X – Nuisance and Nuisance Per se by Dingman and Goff; Count XI – Failure to Impose Standby Fee and Collect Due Fees and Taxes; Count XIII – Unfair Business Practices by Robert Winston and Board defendants; Count XIV – Unfair Business Practices and False Claims by Robert Winston; Count XV – Neligence by Robert Winston and Board defendants; Count XVI – Unfair Business Practices by the District; Count XVII – Willful and/or Negligent Infliction of Emotional Distress; Count XVIII – Nuisance by Board Defendants, Dingman and Goff; Count XIX – Official Acts of Board Defendants are Void; Count XX – Improperly Unbilled Fees and Charges (gifts of public funds); Count XXI – Waste of Public Funds; Count XII Violation of the California Public Records Act.

The prayer seeks declarations of rights, general, special, economic and exemplary damages, disgorgement of wrongfully attained payments; disgorgement of gifts of public funds; attorney fees and costs of suit; mandate disclosure of recipients of public funds; restitution of

losses incurred by the District; mandate a study by a public engineering firm re reasonable, compliance with Water Code provisions, funding of necessary maintenance and repairs, hiring of properly qualified and certified employees and mandate all directors be given unrestricted access to District equipment, facilities, documents and records; declaration re effect of failure to comply with the California Public Records Act and mandate future compliance, and expunge prior void policies, customs and practices of the District; several preliminary injunctions to restrict the actions of defendants including prevention of lawyer defendants from representing District or its employees and agents without a specific resolution adopted at a public meeting that, taken together, would have the impact of a granting a receivership over the District. ECF No. 1.

5/26/16 Magistrate Judge Claire grants informa pauperis status in Civ. 2:16-cv-955 and dismisses the Complaint with thirty days leave to amend again citing to the requirements of Rule 8, the Local Rules of the District, and the "shotgun pleading" approach used by plaintiff, ECF No. 3.

6/15/16 Plaintiff files objections to ECF No. 3, citing Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002).[3] ECF No. 7.

Plaintiff files First Amended Complaint.

6/20/16 Magistrate Judge dismisses First Amended Complaint with 30 days leave to amend with Rule 8 instructions repeated, and limits any amendment to 25 pages

8/24/16 Magistrate Judge enters an Order granting plaintiff 30 days from date of issuance to file an amended complaint not to exceed 25 pages, directs it be in the proper form under Local Rule 130, and cannot incorporate attachments or exhibits as a means to expanding beyond the page limit. ECF No. 8.

9/12/16 Plaintiff files objections to Order, ECF No. 8, arguing the page limit imposed is arbitrary and the Order did not assess the sufficiency of the claims *per se*, failed to

[3] Plaintiff interprets Swierkiewicz to stand for the proposition that length, complexity, repetitiveness, and the like cannot be a basis for dismissal. Actually, the case overrules a 2nd Circuit requirement that a plaintiff must plead in accordance with the evidentiary structure found in the Court's holding in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), instead iterating the standard to be used to judge a complaint is found in Rule 8's call for a "short and plain" pleading.

identify what could be stricken as "unnecessary," and cites to Davis v. Ruby Foods, Inc., 269 F.3d 818 (7th Cir. 2001)[4] which held that the mere inclusion of some extraneous material in a complaint is not sufficient to merit dismissal. ECF No. 9.

9/20/16 Plaintiff requests withdrawal of IFP status and pays filing fee. ECF No. 10.

**10/3/16 Ninth Circuit Court of Appeals issues an Order dismissing the appeal in 2:15-cv-1274 for failure to file the opening brief on appeal. ECF No. 18.**

12/5/16 Magistrate Judge Claire issues an Order withdrawing IFP status and directing that plaintiff must file a Second Amended Complaint within 30 days of the date of the Order. ECF No. 11.

**5/17/17 Ninth Circuit Court of Appeals issues a memorandum ordering the decision of the District Court in 2:15-cv-1274 is affirmed. ECF No. 19.[5]**

**6/8/17 Ninth Circuit Court of Appeals issues a formal mandate regarding Appeal pursuant to Federal Rule of Appellate Procedure 41(a).**

12/29/16 Plaintiff moves for a 30 day extension of time to file a Second Amended Complaint ECF No. 12, which motion is granted on 12/29/16. ECF No. 13.

2/1/17 Second Amended Complaint of 148 pages filed. ECF No. 14.

3/21/17 Motion to Dismiss by defendants Bowles, Dingman, District, Puckett, Slote, by attorney Salazar raises failure to obey the Order of 6/26/16 directing amendment not to exceed 25 pages, and failure to state a claim insofar as claims are not tied to facts sufficient to demonstrate any permissible action in any rational way. ECF No. 28.

Motion to Dismiss by Hornbrook Community Bible Church, Inc. in which defendant's attorney Salazar mirrors grounds found in ECF No. 28. ECF 32.

---

[4] Plaintiff fails to note that the Davis court identified the pleading under to review to be 20 pages long and distinguished it from a 3rd circuit case that dismissed a complaint containing 240 pages on the same grounds used to dismiss plaintiff's complaint here, finding it exceptional compared to the complaint it was addressing. 269 F.3d at 821.

[5] The undersigned is confused why, having dismissed the appeal for failure to file an opening brief and having the dismissal stand as the mandate of the court, the Ninth Circuit, without reopening the appeal, issued a substantive decision on the merits of the district court's dismissal.

Motions to Dismiss in ECF Nos. 28 and 36 joined by defendant Ernest Goff, pro se. ECF No. 34.

3/22/17 Plaintiff requests Entry of Default against District, Martin Puckett and Slote. ECF No. 38.

3/24/17 Request for Entry of Default, ECF No. 38, declined. ECF No. 39.

3/27/17 Plaintiff requests Entry of Default against Hornbrook Community Bible Church, Inc. ECF No. 44.

3/29/17 Under the caption for Harrell v. Hornbrook Community Services District, et al., 2:14-1595 KJM GGH, District Judge Mueller enters an order that reassigns this case to herself and to the undersigned, and dismisses the Harrell case with leave to amend in 25 pages or less. ECF No. 45.

3/29/17 Motion to Dismiss by attorney defendants Kirsher, Winston & Boston, L.C. and Robert Winston filed by attorney Sommer. ECF No. 46.

3/30/17 Plaintiff moves for a 60 day extension of time to file an opposition to the Motions to Dismiss and seeks permission for early discovery. ECF No. 48.

3/31/17 Plaintiff request for Entry of Default against Lee Buckley, Robert Winston, and Kirsher, Winston & Boston, LLC. ECF. 52.

Hearing on Motion to Dismiss scheduled for 5/18/17 at 10:00 a.m. reset for 9:00 a.m. ECF N. 49.

4/3/17 Request for Entry of Default against Hornbrook Community Bible Church, Inc., ECF No. 44, declined. EC No. 51.

Request for Entry of Default against Kirshner, Winston & Boston, LLC and Robert Winston, ECF declined. ECF No. 54.

4/6/17 Letter from plaintiff to Clerk of the Court questioning whether a hearing was ever noticed for 5/18/17, claiming no notice. ECF No. 56.

Plaintiff files Opposition to Hornbrook Community Services District's Motion to Dismiss. ECF No. 57.

////

4/7/17 Magistrate Judge Hollows' Order denies extension of time to respond to Motion to Dismiss for mootness as no operative complaint exists, and denies request for early discovery. ECF No. 55.

Plaintiff Objects to Judge Mueller's Order of March 29, 2017 on grounds it is factually incorrect, opines that assignment to the undersigned Magistrate Judge is prejudicial to him in light of Orders entered in the related Harrell case and asks that her Order be withdrawn. ECF No. 59.

4/10/17 Basic Laboratory, Inc. files a Joinder in the Motion to Dismiss filed by District, Puckett, Slote, Bowles and Dingman, ECF No. 28. ECF No. 58.

4/12/17 Plaintiff requests 60 day extension of time to Oppose Kirsher, Winston & Boston, LC and Robert Winston Motion to Dismiss. ECF No. 60.

Plaintiff requests reconsideration of Order entered on 4/7/17 on the ground that Judge Mueller's Order in ECF No. 45, having been entered under the Harrell caption, did not bind him, and that Magistrate Claire's imposition of a page limitation no longer applied. ECF. 61.

4/25/17 Motion to Dismiss found in ECF No. 33 is vacated from Magistrate Claire's 4/26/17 calendar and if parties seek to reschedule they should contact Judge Hollows' Courtroom Deputy in light of the assignment change ordered by Judge Mueller on 3/29/17.

5/2/17 Magistrate Judge issues an Order to Show Cause why plaintiff should not be sanctioned for failing to follow the District Judge's Order of March 29 2017, ECF No. 45, to file a Third Amended Complaint no later than April 28, 2017. ECF No. 63.

5/19/17 District Judge Mueller denies plaintiff's Motion to Reconsider, ECF No. 61, and clarifies that Judge Claire's 25 page-limit on any amended complaint was preserved in ECF Nos. 10 and 11. ECF No. 74.

Plaintiff responds to the Order to Show Cause, repeats arguments found in ECF No. 74, and clearly states, at page 6, lines 7 through page 7, line 1, that he refuses to amend his Second Amended Complaint and chooses instead to stand on that pleading. ECF No. 65.

////

5/25/17 Plaintiff files Objections to and seeks Reconsideration of the Order found in ECF No. 74. Here, he discloses his belief that once he withdrew from IFP status, the magistrate judge was no longer either required or entitled to require the brevity which she had ordered earlier in the case and that she indicated her belief this was true in her withdrawal order which gave him more time to amend and pointed out that such was appropriate since he was no longer proceeding IFP. EC No. 66.

6/2/17 Judge Mueller overrules plaintiff's objections and warns that future unauthorized filings may result in sanctions, including dismissal. ECF No. 67.

*DISCUSSION*

This duplicative case has been on the court's docket for a year and three months at this point, and it is no closer to resolution today than it was on the day if was filed. The docket shows 68 entries which reflect significantly more activity requiring the attention of the court and the parties than is normally seen at this point in a litigation. Today, there is no litigable complaint on file. Defendants have filed multiple Motions to Dismiss, surely at no small expense. Plaintiff has objected to every action taken by the court, no matter how de minimus, requiring multiple orders to be written only to draw another round of the same circular movement of paperwork. The time has come to address a means of bringing this matter to a conclusion.

The court has considered three possible potential analytic models in addressing this case:

(1) *Res judicata* implications of the first filed complaint with regard to the present one;

(2) Applicability of Federal Rules of Civil Procedure 41(b) based on the contumaciousness of plaintiff, and his failure to accept the court's Orders regarding application of Rule 8 standards; and

(3) Applicability of Rule 12(b)(6) and how it could or should be applied in this case.

*A.* <u>*Res Judicata*</u>

Because of the fact that many of the claims and a majority of the defendants sued for and by plaintiff in both this case and 2:15-cv-01274 KJM GGH are one and the same, the court must

consider whether entry of the first matter upon dismissal with prejudice, and exhaustion of plaintiff's appeal rights, dictates that this matter should be dismissed under the doctrine of *res judicata*. The Supreme Court has adopted the view that application of *res judicata* serves the "public policy [that] dictate[s] that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and, that matters once tried shall be considered forever settled as between the parties." Federated Department Stores, Inc. v., Moitie, 452 U.S. 394, (1981) *quoting* Baldwin v. Traveling Men's Assn., 283 U.S. 522, 525 (1981). And even in cases where the party that lost in the trial court failed to appeal, or as in this case failed to pursue an appeal once filed, so long as the party made a calculated choice to act as it did, even a suspect trial ruling will be upheld under the doctrine in service to the public policy. Id. at 401. The Ninth Circuit has concurred in this philosophy of rigid enforcement of the doctrine. In Main v. HEW, Health Care Financing Agency 769 F.2d 590, 594 (9th Cir. 1985) the court held that a party who does not appeal, or as in this case fails to perfect his appeal, has "accepted the court's final rejection of is claims in one instance without appealing, [and] he can claim no fairness requirement that he be allowed to continue to litigate the same claims in a different courtroom."

Neither should a trial court, such as this one, shrink from enforcement of the policy because of the waiver, either express or by silence, of the defense. Rather it may, and perhaps should, in an appropriate case raise the bar on its own motion. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 232 (1995) *citing* Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833. 851 (1986). See also Bragg v. Flint Brd of Education, 570 F.3d 775, 777 (6th Cir. 2009); Simmons v. Chatham Nursing Home, 93 F.Supp.2d 1265, 1267 (S.D.Ga. 2000).

Further, the doctrine applies in those cases that are dismissed before the merits of the action are reached such as is the case here. In In re Schimmels, 127 F3d. 874, 884 (9th Cir. 1997), the Ninth Circuit clearly held that in the context of a similar dismissal under Rule 41(b), *res judiciata* applied insofar as "[a]n involuntary dismissal generally acts as a judgment on the merits for purposes of *res judicata* regardless of whether the dismissal result from a *procedural* error or from the court's considered examination of the plaintiff's substantive claims." (Emphasis added.) Even if the dismissal under 41(b) was said to be "without leave to amend," rather than under the

more decisive sounding term "with prejudice," the Circuit has held that the dismissal is presumed to be with prejudice unless otherwise stated for purposes of applying *res judicata*. Stewart v. U.S. Bancorp, 297 F.3d 953 956 (9th Cir. 2002). This court therefor determines that if the doctrine of *res judicata* is applicable in this case it must be applied to dismiss the matter, at least with respect to the defendants in the previous case who are defendants in this case.

*Res judicata* dictates dismissal of claims previously litigated to a dismissal on the merits, as well as *claims that could have been brought* in the original complaint. See Whole Woman's Health v. Hellerstedt, ___ U.S. ___, 136 S.Ct. 2292, 2303 (2016) *citing* Whole Womens Health v. Cole 790 F.3d 453 (*per curiam)* modified 790 F.3d 598, (5th Cir. 2015). The elements necessary to establish *res judicata* are "(1) an identity of claims (2) a final judgment on the merits, and (3) privity between the parties." Hells Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 686 (9th Cir. 2006). Therefore, in order to determine which defendants would be protected by the application of the doctrine and which wouldn't due to an absence of the "privity" requirement of the doctrine would require that the new plaintiffs who were not sued in the first complaint be shown to have been jeopardized by the retrying of the claims of the first complaint against them thus entitling them to protection through the application of *res judicata*.

"Privity" covers several relationships. Of greatest applicability here is the privity that "has been found where there is a "substantial identify" between the party and nonparty." In re Schimmels, 127 F.3d 874, 881 (9th Cir. 1997). The test is whether all of the parties to the instant parties were either parties, or were intended by all concerned to be constrained by the ultimate judgment in the action. Nevada v. U.S., 463 U.S. 11, 120 (1983). See also U.S. v. ITT Rayonier, Inc., 627 F.2d 995, 1001 (9th Cir. 1980)(bar as to prosecution of successive partners), id. at1003, (or bearing a relationship "of substantial identity" to earlier party) *citing* Chicago, R.I. & P. R. Co. v. Schendel, 270 U.S. 611 621 (1980). Establishing "privity" in this case would, therefore, engage the court in a prolonged analysis of the individual defendants sued in this case and those sued in the original case to determine the degree of relationship each bears to the earlier named defendants who are not named in the 2015 complaint.

////

Assessing the applicability of this doctrine under the remainder of the standard in the present case is somewhat difficult given the verbosity and organization of the plaintiff's complaints in the two cases. Nonetheless, it is clear that there is significant overlap in the substance of the two Complaints disclosed in the captions, each of which identifies the overall claims being brought. In the original Complaint the actions are characterized as "Action at Law for Civil Rights Violations; Violations of Federal Safe drinking Water Act and Clean Water Act; Pendent State Claims," and "Request[s] for Preliminary and Permanent Injunctions; Declaratory Relief." 2:15-cv-01274-MCE-AC. In the newer Complaint the actions are characterized substantially identically, except the second action adds a claim for relief pursuant to the Fair Labor Standards Act in addition to those listed above. 2:16-cv-965-KJM-GGH.

Thus, on its face, with the caveats discussed below, the two complaints share an identity of claims, and again, claims which could have been brought in the original case but weren't are barred by *res judicata* as well. However, the present complaint dates many of its claims, but not all, from December 4, 2015, which post-dates the filing of the first action by several months. *Res judicata* could not apply to "new" claims no matter how similar to the old claims, i.e, these claims could not have been brought in the earlier action. Accordingly, *res judicata* will only apply to those claims which were or could have been brought as of the filing date of the first action—June 15, 2015.

Further, although there is clearly an overlap of some parties to the two actions, not all defendants that appear in the 2015 complaint are named in the 2016 complaint. Based on the statements of plaintiff in his objections to this court's prior orders, the Board membership changed between the first action and the present one, and the court can also see that he has added lawyers who have taken on responsibilities with regard to various defendants that were not sued in the first case and apparently eliminated lawyers who represented now abandoned defendants.

The defendants common to both actions are the Hornbrook Community Services District, Hanson, Winston, Bowles, Dingman, Goff, Hornbrook Community Bible Church, Crittenden, and the law firm Murphy, Pearson, etc. Because the matter of *res judicata* is being raised sua sponte by the court, and due to the lack of facts on record, the undersigned will not attempt to determine

if the uncommon defendants in the second action could bring a *res judicata* argument based on privity of parties. Accordingly, *res judicata* is limited to the defendants common to both actions.

In this case, especially when comparing plaintiff Gifford's pleadings, with those of another "disgruntled ex-employee of the district, Peter T. Harrell, see docket in Harrell v. Hornbrook Community Services District, 2:14-c-01595 KJM GGH, still pending, one is left with a deep conviction that these two plaintiffs are working together to destroy this District although to what end can only be speculated. Perhaps they hope to be the saviors who pick up the pieces after the dust of their twin litigations clears, and then they can run the District as they believe it should be run. Comparing both the optics and the content of the two sets of complaints shows a remarkable, almost carbon copy, likeness between the claims made by these plaintiffs, the format they use, and the arguments they make. And, both of them are equally committed to ignore the Rules laid out by this court and Magistrate Judge Allison Claire who was responsible for rulings in this case before it was related to the undersigned to the point of insisting that these Rules are not being properly interpreted. In any event, the feeling of collusion that is raised by these similarities cannot be ignored.

Accordingly, to the extent that plaintiff's claims in his second action pre-date June 15, 2015, and are applicable to the parties listed as common to both actions, *res judicata* bars plaintiff's second action.

*B. Federal Rule of Civil Procedure 41(b)*

Analyzing the complaint purely under Rule 41(b), there are more than sufficient grounds to dismiss the Second Amended Complaint with prejudice under the Rule. The court previously ordered plaintiff to reduce his complaint to 25 pages, and plaintiff has refused to do so. The discussion starts, however, with an iteration of the reasons why plaintiff was ordered to limit his complaint to 25 pages.

In McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996) the Circuit Court affirmed a dismissal under Federal Rules 8, 12 and 41 after plaintiff had been given three opportunities to draft a complaint that comported to the foregoing Rules as they had been explained in prior court orders dismissing with leave to amend. 84 F.3d at 1176. The issue there was the massive inclusion of

irrelevant factual information in a complaint that was prolix and confusing but not nearly as egregiously so as the one being analyzed here. The original complaint in McHenry was thirty-five pages long but was never served. Instead it was preplaced by an Amended Complaint that was thirty-seven pages long and was "mostly an extended narrative of the details of the various activities of plaintiff McHenry," and failed to distinguish between defendants who played roles in each of his two claims for relief and included conspiracy allegations involving numerous players in Mr. McHenry's drama. Id. at 1174. The trial court dismissed this complaint with instructions regarding the content of any second amended complaint. Id. at 1175. The second amended complaint "contained identically argumentative and prolix allegations which now required fifty-three pages to complete and "mixed allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way." Id. at 1175. The trial court gave plaintiff one more chance to formulate a satisfactory complaint this time suggesting he would be "well advised to edit or eliminate [the] twenty-six page introduction and focus on linking . . . factual allegations to actual legal claims. The purpose of the court system is not after all, to provide a forum for storytelling or political griping, but to resolve legal disputes." Id. at 1176. Mr. McHenry, however, eschewed the court's advice and filed a third amended complaint which "still read[] like a magazine story instead of a traditional complaint," and the pleading now stretched to fifty-three pages. Id. After receiving analysis from a magistrate judge the court finally dismissed this last effort without leave to amend under Rule 41(b) for plaintiff's violation of its last order. Id. at 1177.

Many courts have followed the reasoning of McHenry to rid the system of complaints like the instant one.[6] In Polk v. Beard, 2014 WL 4765611 (C.D.Cal. June 20, 2014), the Central District of California was faced with a situation similar to the one here in that each time a new pleading was filed it exceeded the one before it , id. at *1-3, with little or no attention paid to the orders of the court, id. at *4, and, after applying the standard set out in Ferdick v. Bonzelet, 963

[6] See headnote 8 to the McHenry case which reflects that 286 cases have cited the opinion regarding the obligation of the court to consider the rights of litigants awaiting their turn to have their matters heard in a situation such as the one addressed here.

F.2d 1258-1250-1261 (9th Cir. 1992), which will be discussed below, dismissed the complaint

with prejudice, noting that "judges are not like pigs hunting for truffles buried in briefs." Id. at

*5, *quoting* U.S v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)(*per curiam).*[7]  In Gottschalk v. City

and County of San Francisco, 964 F.Supp. 2d 1147 (N.D.Cal. 2013), the court dealt with a

complaint that violated Rule 8 insofar as it consisted of incomprehensible rambling, id. at 1154,

largely conclusionary allegations and generalized political grievances or conspiracy.  Id. at 1155.

While the undersigned acknowledges that sheer length of a complaint standing alone may not

warrant the dismissal of a complaint under McHenry, and the Ninth Circuit so held in Hearns v.

San Bernardino Police Dept., 530 F.3d 1124, 1131 (9th Cir. 2008), where the complaint was

characterized as "intelligible" and "logically organized," albeit overly detailed, id, it has also

acknowledged that it has not held and knows "of no authority supporting the proposition—that a

pleading may be of unlimited length and opacity."  Carfasso, U.S. ex rel. v. General Dynamics C4

Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011)(distinguishing Hearns).  In so acting, the Court

pointed to the fact that the amended complaint in Carfasso ran to 733 pages, nine times longer

than the 81 page complaint in Hearns, thus providing the district court with "ample discretion" to

deny further amendment.  Id. at 1059.

Accordingly, there was more than sufficient justification for ordering the limitation of

pages as directed by the court addressing this matter.  Nevertheless, the justification of the prior

limitation order is not the end of the analysis.  Several factors need to be considered before

dismissal of a case for failure to obey court orders.  An application of the Ferdick, supra,

standards easily supports the dismissal of this Complaint. 963 F.2d at 1261.

    1.    The Public's Interest in Expeditious Resolution of Litigation

This interest would not be compromised if the court exercised its inherent power to

dismiss this case that has been through two iterations spanning a year and continues to

incorporate over 100 paragraphs of precatory facts into each of the 27 Counts of the first action

and the 31 Counts of the second.  How the court and the parties are to structure discovery

---

[7]  The Ninth Circuit very recently affirmed the dismissal in an unpublished decision found at
2017 WL 2839502 (9th Cir. July 3, 2017).

proceedings that will clarify the application of facts to law in a reasonable way, especially in light of plaintiff's adamant refusal even to attempt to truncate the seemingly endless pleading now on file, is an unreasonable requirement for the undersigned, even with its 28 years of experience on the bench, unreasonable to any judge and presumably unreasonable to any opposing attorney. This element, therefore, supports the court's determination to dismiss the Second Amended Complaint with prejudice under Rule 41(b).

2. The Court's Need to Manage its Docket

The docket sheet in this case as produced 20 filings by the parties and the court in the fourteen months it has been pending, and is still in the pleading phase and 68 docket entries overall. None of the various briefs and arguments that have ensued have been successful in moving the case even to the point where it is at issue and can begin to be prepared for trial. Many other litigants compete for the court's attention in order to reach "the just, speedy and inexpensive determination of every action and proceeding" that Federal Rule of Civil Procedure 1 makes clear is the point of the federal system. Plaintiff's goal, on the other hand, seems exactly the opposite of that purpose insofar as he has moved through a series of actions that appear designed to make it ever more impossible to reach that goal.[8] This element favors the court's inclination to dismiss with prejudice.

3. The Risk of Prejudice to the Defendants

There is no risk of prejudice to defendants should this case be dismissed with prejudice. As the procedural history of the case demonstrates, they have briefed both iterations of this case multiple times getting nothing for their efforts but another expenditure of resources. This element favors the court's inclination to recommend dismissal without leave to amend, and with prejudice.

4. The Public Policy Favoring Disposition of Cases on Their Merits

Obviously, the action the court contemplates would arrest this case short of resolution on the merits, but should not weigh heavily enough to deny the application of that action. The chances of this case reaching disposition in any estimable amount of time is, given its posture

[8] Exemplary of this tactic is the fact that each attorney who appears in these matters ultimately ends up with being named as a defendant or subjected to motions to disqualify.

now and the obvious stubbornness and contumacious behavior of the plaintiff, are abundantly clear, i.e., there is no realistic chance of reaching the true merits of this lawsuit whatever they are.

5. The Availability of Less Drastic Alternatives

The less drastic alternative available here is to dismiss the complaint without prejudice and allow plaintiff to amend one more time. However, if this were required it is obvious at this point that the amended complaint would not be Rule 8 compliant nor comply with the court order limiting the complaint to 25 pages. Moreover, Plaintiff has made clear in his objections to various of the court's rulings that he would not amend even if given the opportunity, for he has chosen to stand on the present complaint on the ground that the court does not correctly interpret Rule 8, is prejudiced against *pro se* plaintiffs, and is generally focused on getting rid of such plaintiffs at every opportunity. Thus, the normal less drastic alternative is not available here, nor is it appropriate at this juncture in any event.

Although this court believes that Rule 41(b) is the best basis for dismissing this Complaint without leave to amend and with prejudice as it not only gets the case to the appellate court to resolve finally, but it also makes clear to those who write complaints that they *must* follow the Rules to proceed with litigation and they must obey court orders. On the other hand, the Ninth Circuit has made a recent ruling that suggests the matter should be resolved pursuant to Rule 12(b)(6).

*C. Federal Rule of Civil Procedure 12(b)(6)*

As did Mr. Harrell earlier, see Case 2:14-cv-01595 KJM GGH, Docket entry ECF No. 148 at 9:22-11:7, plaintiff here has elected to "stand on his complaint." ECF No. 66:18-23. In so doing he cites Edwards v. Marin Park, Inc., 356 F.3d 1058 (9th Cir. 2004).

The Ninth Circuit Court of Appeals addressed the issue of whether a complainant whose Complaint was dismissed without prejudice could nontheless appeal the Order in Lopez v. City of Needles, Cal., 95 F.3d 20 (9th Cir. 1996). In Lopez the plaintiff's complaint had been dismissed with leave to amend and plaintiff filed an appeal of the decision. 95 F.3d at 22. The court held that whereas "[o]rdinarily an order dismissing a complaint but not dismissing the action is not appealable under section 1291 the [appellant] is not required to amend in order to preserve his

right to appeal" and could render the Order immediately appealable if she "files in writing a notice of intent not to file an amended complaint." Id. Whereas Lopez did not give such a written notice leading to dismissal of her appeal for lack of jurisdiction, plaintiff here has given such notice in writing.

In WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc), the court again made clear that a plaintiff who had his complaint dismissed with leave to amend could not immediately appeal that decision since it was not final, but if "a plaintiff files in writing a notice of intent not to file an amended complaint, . . . filing of such a notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, [an order] that is clearly appealable." 104 F.3d at 1135 *quoting* Lopez. The case cited by plaintiff, Edwards, *supra*, iterated this holding stating that a plaintiff "may obtain an appealable final judgment by 'fil[ing] in writing a notice of intent not to file an amended complaint.'" 356 F.3d at 1064.

Thus, when a plaintiff clearly communicates his choice to stand on his complaint he has not disobeyed the court's Order in such a way as to invite a Rule 41(b) dismissal, but he has transformed the court's threat of dismissal for disobedience of its order into a "final, appealable judgment." Id. at 1064. In so holding the court noted that there is more than a formal difference between a dismissal under Rule 41(b) and one under Rule 12(b)(6) insofar as the former is deemed a sanction for disobedience while the latter "carries no such stigma," but permits appellate review directly upon the question of whether the plaintiff has stated a claim upon which relief can be granted. Id. at 1065.

There is some question in the undersigned's mind whether Edwards, *et al*, fit the situation here. In that case cited for the proposition of permitting appeal in the pleading stage, the plaintiff had received a ruling on the merits of the claims albeit some of the claims had been dismissed for failure to allege facts with specificity, but because of the perceived error of law on the merits, plaintiff was desirous of receiving a final ruling on the legal issues from the court of appeal. Here, plaintiff contests not dismissal of his claims on the merits but rather the Magistrate Judge's and the District Judge's conclusions that the Second Amended Complaint was a hopeless mish-

mash of verbose narrative and prolix claims which were entwined with the narrative, including some of the many footnotes, and ordering that he limit his pleading to a succinct 25 pages – a procedural ruling and not a ruling on the legal merits of the claims. It is difficult to conceive that such becomes a determination that specific claims lacked a legal basis -- a point at which this court has been unable to arrive. The point of the previous dismissal with leave to amend was that the prolixity denied defendants a fair opportunity to identify and respond to the claims.

But perhaps the rule conundrum is now a distinction without a difference. If plaintiff receives a Rule 41 final dismissal, it is appealable; if he receives a Rule 12 (b) dismissal, it is appealable. Although the standards for review of the different dismissals differ, the facts and rulings germane to the appeal do not change simply because a different rule number is applied to decide them in this court.

*CONCLUSION*

But for the plaintiff's invocation of Edwards, et al., this court has no doubt that the contumacious behavior of plaintiff would meet all the criteria for a Rule 41(b) dismissal. Edwards, however, may require a dismissal pursuant to Rule 12(b)(6) which will allow the Ninth Circuit to review the entirety of the record and determine whether plaintiff may proceed with this litigation. The best way to resolve this case is, therefore, to issue alternate rulings with respect to a Rule 41(b) and Rule 12(b)(6) dismissal.

In light of the foregoing, IT IS HEREBY FOUND AND RECOMMENDED that:

1. The Second Amended Complaint be dismissed on *res judicata* grounds to the extent that the claims therein pre-date June 15, 2015, and are stated against the defendants common to both actions identified previously;

2. Plaintiff's Second Amended complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b); or, in the alternative, that:

3. Plaintiff's Second Amended complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

4. The Clerk of the Court should close this file.

////

These Findings and Recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these Findings and Recommendations, the parties may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

Dated: August 17, 2017

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 7

Case 2:16-cv-00955-KJM-GGH Document 73 Filed 10/30/18 Page 1 of 2

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER GIFFORD,

Plaintiff,

v.

ROBERT PUCKETT, SR., et.al.,

Defendants.

No. 2:16-cv-00955-KJM-GGH

ORDER

Plaintiff is proceeding pro se with the above-entitled action.

On August 17, 2017, the magistrate judge filed findings and recommendations, which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within 30 days of their issuance. ECF No. 69. Plaintiff filed objections on September 15, 2017. ECF No. 70.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this court has conducted a de novo review of this case. Having reviewed the file, the court finds the findings and recommendations to be supported by the record and by the proper analysis. Plaintiff has declined to file a third amended complaint despite being given ample opportunity to do so. In his response to an order to show cause, he essentially has objected to the suggestion that he needs to file a third amended complaint in order for this case to proceed. In this same response he cites to *Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004), suggesting he plans to stand on

the Second Amended Complaint and reserves the right to appeal the court's determination that the case cannot proceed on that complaint. *See* ECF 65 at 6. Given plaintiff's citation to *Edwards*, in considering the alternative recommendations made by the magistrate judge in part, the court determines dismissal should be based on Federal Rule of Civil Procedure 12(b)(6), with prejudice. Additionally, the court declines to adopt as part of its own order the paragraph in the findings and recommendations at page 14, lines 3 through 15; this paragraph is not material to the core analysis conducted and recommendations made by the magistrate judge.

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed August 17, 2017 are adopted as set forth herein.

2. To the extent the Second Amended Complaint contains claims based on activity pre-dating June 15, 2015 and stated against the defendants common to plaintiff's prior case discussed in the findings and recommendations, *Gifford v. Hornbrook Community Services District*, Case No. 2:15-cv-1274 MCE AC (E.D. Cal.), those portions of the Second Amended Complaint are dismissed on res judicata grounds.

2. The balance of plaintiff's Second Amended Complaint is dismissed based on Federal Rule of Civil Procedure 12(b)(6), with prejudice.

3. The Clerk of the Court shall CLOSE this file.

**IT IS SO ORDERED**.

DATED: March 27, 2018.

UNITED STATES DISTRICT JUDGE

# EXHIBIT 8

Case 2:16-cv-00955-KJM-GGH Document 81 Filed 05/09/18 Page 1 of 3

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER GIFFORD,

Plaintiff,

v.

ROBERT PUCKETT, SR., et al.,

Defendants.

No. 2:16-cv-00955-KJM-GGH

ORDER

On May 8, 2018 the Ninth Circuit Court of Appeals referred this matter, to which it has assigned case number 18-15779, to this court "for the purpose of determining whether in forma pauperis status granted in this court should continue for the plaintiff's appeal" filed on April 27, 2018 (ECF No. 75).[1] See ECF No. 80. The standard to be applied by this court in rendering a decision on this issue is found in 28 U.S.C. section 1915(a)(3) which states that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith," or as the Court of Appeals stated: whether the appeal was taken in bad faith.

On August 17, 2017 this court issued Findings and Recommendations ECF No. 69, the substance of which was adopted by the district court in an Order signed on March 28, 2018. ECF No. 73. In the Findings and Recommendations the undersigned recommended that the plaintiff's

[1] Plaintiff filed two appeals in this case, but the undersigned will reference only the first appeal.

Second Amended Complaint be dismissed on res judicata grounds. He also recommended that the complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) or, in the alternative Federal Rule of Civil Procedure 12(b)(6). The court further pointed out that plaintiff's pleadings, when compared with those found in Harrell v. Hornbrook Community Service District, 2:14-cv-01595-KJM-GGH, now also pending before the Circuit Court as case number 17-17209, left this court with "a deep conviction that these two plaintiffs are working together to destroy the [Hornbrook Community Services District] insofar as the two complaints show a remarkable, almost carbon copy, likeness between them including the format they use and the arguments they make. Both plaintiffs had consistently refused to follow rules laid out by the judges in the two cases. In sum, the feeling of collusion raised by those similarities could not be ignored. In addition, plaintiff Gifford herein was named as a defendant in the Harrell case, but he has appealed his dismissal in that case (an odd thing for a defendant to do) further demonstrating the collusive nature of the suits.[2]

This case seriously interfered with the court's need to manage its docket and thereby burdened both the court and the defendants who were required to brief the case multiple times getting nothing for their efforts but another repetitive pleading and therefore another expenditure of resources. Neither could the contumaciousness of the plaintiff be ignored. In essence, the purpose for the complaints was suspect, the intent to ever bring the matter to a conclusion through trial was suspect, and the entire exercise to which the court and the defendants was the product of a frivolous action. Both cases demonstrate the abuse of in forma pauperis status where for no cost to plaintiffs, and in which plaintiffs litigate from afar, defendants have to obtain counsel and expend significant resources defending an action with multitudinous and voluminous claims—claims which take tens or even hundreds of pages to state.

Ultimately the district court dismissed elements of the Second Amended Complaint on res judicata grounds and the remainder under Federal Rules of Civil Procedure 41(b), 12(b)(6), with

////

[2] Moreover, in the Harrell case, defendant Gifford and plaintiff Harrell purported to "settle" the case as to those two individuals.

Case 2:16-cv-00295-JAM-GGH Document 81 Filed 05/10/18 Page 3 of 3

prejudice, thereby supporting this court's earlier determination that the entire matter was frivolous from inception.

In light of the foregoing it is HEREBY ORDERED that:

1. The Clerk of the Court shall forward this Order to the Ninth Circuit Court of Appeals in response to its Referral Notice, ECF No. 80, for application in Case No. 18-15779;

2. The Clerk is advised that this Order also resolves ECF No. 79.[3]

Dated: May 10, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

[3] ECF No. 79 is a Motion to Proceed In Forma Pauperis filed by plaintiff in this court on May 2, 2018. Because the same motion is pending in the Ninth Circuit, the undersigned simply makes the finding of bad faith at the district court level.

# EXHIBIT 9

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 04 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROGER GIFFORD,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>ROBERT PUCKETT, Sr.; et al.,<br><br>Defendants - Appellees. | No. 18-15779<br><br>D.C. No. 2:16-cv-00955-KJM-GGH<br>U.S. District Court for Eastern California, Sacramento<br><br>**MANDATE** |

The judgment of this Court, entered August 24, 2018, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Nixon Antonio Callejas Morales
Deputy Clerk
Ninth Circuit Rule 27-7

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 24 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROGER GIFFORD,

Plaintiff-Appellant,

v.

ROBERT PUCKETT, Sr.; et al.,

Defendants-Appellees.

No. 18-15779

D.C. No. 2:16-cv-00955-KJM-GGH
Eastern District of California, Sacramento

ORDER

Before: FARRIS, BYBEE, and N.R. SMITH, Circuit Judges.

A review of the district court's docket reflects that the magistrate judge certified that this appeal is not taken in good faith and denied appellant's motion to proceed in forma pauperis. The magistrate judge lacked authority to deny appellant's in forma pauperis status, *see Tripati v. Rison*, 847 F.2d 548, 549 (9th Cir. 1988), but this court may determine sua sponte whether in forma pauperis status should continue on appeal under 28 U.S.C. § 1915(e)(2).

On May 11, 2018, the court ordered appellant to explain in writing why this appeal should not be dismissed as frivolous. *See id.* (court shall dismiss case at any time, if court determines it is frivolous or malicious).

Upon a review of the record and responses to the court's May 11, 2018

order, we conclude this appeal is frivolous. We therefore deny appellant's motion to proceed in forma pauperis (Docket Entry No. 4), and dismiss this appeal as frivolous, under 28 U.S.C. § 1915(e)(2).

Appellees Robert Winston and Kirsher, Winston & Boston, LLC's request for judicial notice (Docket Entry No. 13) is denied as unnecessary.

All other pending requests are denied.

**DISMSSED**.

# EXHIBIT 10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. HARRELL,<br>Plaintiffs,<br>v.<br>CLINT DINGMAN, et al.,<br>Defendants. | No. 2:19-cv-00031 KJM AC (PS)<br><br><u>FINDINGS AND RECOMMNEDATIONS</u> |

Plaintiff is proceeding in this action pro se. This matter was accordingly referred to the undersigned by Local Civil Rule 302(c)(21). Plaintiff was previously granted leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915. ECF No. 3. The undersigned rejected plaintiff's initial complaint on screening, finding portions of the complaint were likely barred by the doctrine of res judicata, and that the remainder of plaintiff's complaint did not comply with Federal Rule of Civil Procedure 8. ECF No. 8. The undersigned then rejected plaintiff's First Amended Complaint ("FAC"), finding that it also failed to comply with Rule 8 due to the quantity of disjointed allegations. ECF No. 13. The FAC was dismissed with leave to file a Second Amended Complaint ("SAC") that complied with Rule 8. <u>Id.</u> The SAC, ECF No. 17, is now before the undersigned for screening.

////

////

## I. Screening

A determination that a plaintiff qualifies financially for IFP status does not complete the inquiry required by the statute. The federal IFP statute requires federal courts to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Plaintiff must assist the court in determining whether or not the complaint is frivolous, by drafting the complaint so that it complies with the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). Plaintiff's claims must be set forth simply, concisely and directly. Fed. R. Civ. P. 8(d)(1).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). In reviewing a complaint under this standard, the court will (1) accept as true all of the factual allegations contained in the complaint, unless they are clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the plaintiff, and (3) resolve all doubts in the plaintiff's favor. See Neitzke, 490 U.S. at 327; Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011).

The court applies the same rules of construction in determining whether the complaint states a claim on which relief can be granted. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (court must accept the allegations as true); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (court must construe the complaint in the light most favorable to the plaintiff). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation of the elements of a cause of action does not suffice

to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez v. Smith, 203 F.3d 1122 (9th Cir.2000)) (en banc).

**II. Analysis of the Complaint**

Plaintiff's SAC seeks relief against the same defendants named in the FAC: the Hornbrook Community Services District; eight named individuals, all employees or officials of the District; and "John Does 5-30." ECF No. 17 at 1, 2-3. The SAC contains 22 of the 28 causes of action asserted in the FAC and described in this court's previous screening order, including numerous alleged constitutional violations, claims purporting to arise under the Safe Drinking water Act and the Clean Water Act, and numerous pendant state law claims. ECF No. 17 at 1 and *passim*. The underlying dispute appears to involve the quality and quantity of water provided by the District to plaintiff's property in Siskiyou County, which is alleged to have injured his trees, plants, livestock, and the value of his property. Id. at 4.

Comparison of the SAC and the FAC reveals that plaintiff has changed the phrasing of certain claims, split large paragraphs into shorter ones, and condensed or deleted certain paragraphs. The most significant improvement to the SAC is the addition of a section containing allegations common to certain defendants. Id. at 5-6. However, despite these changes, the SAC still largely replicates the overly complex and disjointed language of the FAC.

Upon review, plaintiff's SAC still does not contain a "short and plain" statement setting forth, in a clear and understandable manner, the basis for plaintiff's claims, plaintiff's entitlement to relief, or the relief that is sought, even though those things are required by Rule 8(a)(1), (3).

Case 2:19-cv-00631-JAM-AC Document 19 Filed 05/29/19 Page 4 of 5

The exact nature of what happened to plaintiff remains obscured by the complaint, which—although shorter than the FAC—still describes disconnected events and allegations involving multiple defendants, and is written in such an overly complex and disjointed manner that it is difficult to understand exactly what plaintiff's claims are and whether the facts alleged provide a basis for those claims. While plaintiff has made various edits and deletions, the majority of the SAC's allegations are identical to those found to be deficient in the FAC and the initial complaint. Compare, ECF Nos. 1, 11, 17. The sheer quantity of factual allegations and legal assertions in plaintiff's complaint makes it impossible for the court, and therefore for defendants, to determine whether any cognizable claim is presented, what legal wrong may have been done to plaintiff, by whom and when, or how any alleged harm is connected to the relief plaintiff seeks.

Plaintiff's SAC does not meet the pleading standard of Rule 8, and fails to plainly identify any claim(s) that would entitle plaintiff to relief. Because plaintiff has had multiple opportunities to submit a viable complaint and has failed to do so, it is clear to the undersigned that granting further leave to amend would be futile. Noll, 809 F.2d at 1448.

## III. Pro Se Plaintiff's Summary

The undersigned is recommending that your case be dismissed because your SAC suffers from the same pleading defects found in your previous complaints. You have been given two opportunities to amend your complaint, and the court will give you no additional opportunities. The recommendation will go to the District Judge assigned to this case. You have 21 days, as discussed below, to object to these recommendations.

## IV. Conclusion

Accordingly, for the reasons set forth above, the undersigned recommends that plaintiff's Second Amended Complaint (ECF No. 17) be DISMISSED with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure

to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: May 28, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 11

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. HARRELL,<br>Plaintiff,<br>v.<br>CLINT DINGMAN, et al.,<br>Defendants. | No. 2:19-cv-00031 KJM AC (PS)<br><br>ORDER |

Plaintiff is proceeding in this action in pro per. The matter was referred to a United States Magistrate Judge as provided by Local Rule 302(c)(21).

On May 29, 2019, the magistrate judge filed findings and recommendations, which were served on plaintiff and which contained notice to plaintiff that any objections to the findings and recommendations were to be filed within twenty-one (21) days. ECF No. 19. Plaintiff has filed objections to the findings and recommendations. ECF No. 21.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this court has conducted a de novo review of this case. Having reviewed the file, the court finds the findings and recommendations to be supported by the record and by proper analysis.

/////

/////

/////

Case 2:19-cv-00631-KJM-AC Document 22 Filed 09/25/19 Page 2 of 2

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed May 29, 2019, are adopted in full;

2. Plaintiff's Second Amended Complaint (ECF No. 17) is DISMISSED with prejudice; and

3. The clerk of court is directed to close this case.

DATED: September 24, 2019.

UNITED STATES DISTRICT JUDGE

# EXHIBIT 12

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PETER T. HARRELL,

             Plaintiff - Appellant,

  v.

CLINT DINGMAN; et al.,

             Defendants - Appellees.

No. 19-17116

D.C. No. 2:19-cv-00031-KJM-AC
U.S. District Court for Eastern
California, Sacramento

**MANDATE**

The judgment of this Court, entered July 23, 2020, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Rhonda Roberts
Deputy Clerk
Ninth Circuit Rule 27-7

**NOT FOR PUBLICATION**

FILED

JUL 23 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER T. HARRELL,<br>Plaintiff-Appellant,<br>v.<br>CLINT DINGMAN; et al.,<br>Defendants-Appellees. | No. 19-17116<br>D.C. No. 2:19-cv-00031-KJM-AC<br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Submitted July 14, 2020**

Before: CANBY, FRIEDLAND, and R. NELSON, Circuit Judges.

Peter T. Harrell appeals pro se from the district court's judgment dismissing his 42 U.S.C. § 1983 action alleging federal and state law claims. We have jurisdiction under 28 U.S.C. § 1291. We review for an abuse of discretion a dismissal for failure to comply with Federal Rule of Civil Procedure 8. *McHenry*

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). We affirm.

The district court did not abuse its discretion by dismissing Harrell's action with prejudice because Harrell failed to comply with Rule 8's requirement of a short and plain statement of the claims, despite multiple warnings and opportunities to do so. *See* Fed. R. Civ. P. 8(a)(2); *McHenry v. Renne*, 84 F.3d at 1177 (district court did not abuse discretion in dismissing with prejudice on the basis of Rule 8, where the complaint was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (dismissal under Rule 8 was proper where the complaint was "verbose, confusing and conclusory").

The district court did not abuse its discretion by denying Harrell leave to amend a third time because he failed to comply with the district court's previous orders. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (setting forth standard of review and explaining that leave to amend may be denied if amendment would be futile); *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (citation and internal quotation marks omitted)).

We reject as without merit Harrell's contention that his due process rights were violated by the magistrate judge's decision to vacate a portion of a previous order without prior notice or that the district court erred by failing to rule on his request for an intra-district transfer.

**AFFIRMED.**