Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669

FILED

MAR 2 1 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kimberly R. Olson,<br>   Plaintiff,<br><br>vs.<br><br>Robert Puckett, Sr., et al,<br><br>   Defendants, | Case No: 2:21-cv-1482 KJM DMC (PS)<br><br>PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR CIVIL CONTEMPT (ECF #69, and Attachments.)<br><br>**Date: May 2, 2022 (submission due)**<br>**Time: Set by Judge Cota as ECF #71**<br>**Location: Redding Federal Courthouse** |

## 1. OVERVIEW

Defendants Robert Puckett, Sr. ("Puckett"), Michele Hanson ("Hanson"), Melissa Tulledo ("Tulledo"), Clint Dingman ("Dingman"), and Hornbrook Community Services District ("HCSD"), (collectively "Defendants" hereinafter) opposed Plaintiff Kimberly R. Olson's ("Plaintiff" or "Olson") Complaint, and related petition to this Court for a TRO and Preliminary Injunction concerning the actions of the HCSD Defendants in terminating her domestic water service, purportedly pursuant to the HCSD's Rules and Regulations, as undertaken by them without any pre-deprivation notice meeting the <u>specific</u> requirements of such notice as found to be mandatory by the US Supreme Court in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) ("*Memphis*"), and also without <u>any</u> hearing for opportunity by Plaintiff to contest allegations against her, as required to afford basic due process.

   The Magistrate at the time of making the initial Findings and Recommendations granting the TRO/Preliminary Injunction against Defendants did <u>not</u> analyze the *sufficiency* of any of the unsigned notices purportedly "given" to Plaintiff by way of email, nor of those processes and procedures of the HCSD relating to termination of water service to Plaintiff in the context of those required by *Memphis*[1]. The Magistrate did note when issuing the Findings and

---

[1] In *Memphis*, the Supreme Court held that a municipal utility's failure to include in a notice of termination of service, notice of "the availability of a procedure for protesting a proposed termination of

Plaintiff's Reply to Opposition to Motion for Civil Contempt Sanctions - 1

Recommendations that the HCSD had failed to follow at least some of <u>its own</u>, internal procedures in terminating Plaintiff's water service, however. (ECF #29, pp. 2:2-3, 11:18-22, 15:8 - 16:16.)

The ultimate version of the Preliminary Injunction that was entered against the Defendants by Chief Judge Kimberly J. Mueller on December 6, 2021 as ECF #52 provided in relevant part that:

> "2.  Plaintiff's motion for injunctive relief, ECCF No. 3, is granted to the extent HCSD must provide Olson with water in compliance with internal rules and all other applicable state and local laws;
> 3.  Within 10 days of the date of this order, HCSD is ordered to return Olson's water meter and attach a flow restrictor to it, limiting Olson to 200 gallons of water per day, or whatever <u>generally applicable</u> use restrictions HCSD enacts in order to conserve water;
> 4.  HCSD shall provide all required time periods between any notice of violation and any adverse action not covered by the order granting injunctive relief;
> 5.  HCSD is permitted to take regular readings of Olson's water meter and undertake any routine or emergency maintenance necessary;
> ...
> 7.  This order shall remain in place during the pendency of this case.
> Additionally, plaintiff's request to conduct expedited discovery is referred back to the magistrate judge.  See ECF No. 40 at 1. " (ECF #52, p.2 - emphasis in original.)

Since the time of the issuance of ECF #29 and ECF #52, Plaintiff has herself fully complied with the Court's orders, and has received no notices or other contacts from the Defendants indicating any allegations by them of any violation of HCSD Rules and Regulations, Resolutions, Bylaws, Motions, or ordinances which might have triggered any disruptions of regular water service to Plaintiff's home.  Despite her compliance, the Defendants themselves failed to comply with the Court's Order since it was entered on September 17, 2021, and then through the date of February 20, 2022 by failing to fully and properly connect Plaintiff's water

---

utility service as unjustified", and <u>specifically including</u> the contact information for a "designated employee" who is empowered to handle the complaint, did not "comport with constitutional requirements" of due process. (*Memphis* at pp. 12-16.) *Memphis* also requires that a utility <u>provide an actual hearing</u> *prior* to any disconnection.  Notably, the *Memphis* Court's decision does not at any point hold that use of unsigned "notices" by a utility, or use of "email" for such notice is permitted, while in this Circuit such use is in abrogation of FRCivP 5, California Code of Civil Procedure (CCP) §§1010.6, and 1013; the HCSD's Rules and Regulations requiring notice of violations to be "served" by (actual) personal delivery or USPS at Sections 2.10, 4.03, 4.15, and 13.01 (specifically referencing a "notice of termination"); and, the HCSD Bylaws at Sections A-9(15), and 1-6.020 (requiring <u>five days</u>' "written notice").  C.f., Declaration of Puckett, ECF #26, p.3, #11, and Exhibits D-G.  See also *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306-309.

supply[2]; by restricting Plaintiff's water use to dramatically less than 200 gallons per day; by reducing pressure and flow of water to Plaintiff's residence to the point that it no longer complied with State laws pertaining to minimum pressure in drinking water distribution systems[3], and plumbing codes[4]; and, by failing to repair a supply-side valve on Plaintiff's water meter that they broke when reinstalling her water meter on or about September 20-21, 2021.

Despite Plaintiff's repeated contacts over several months to the HCSD and its President, Robert Puckett, Sr., no response was had to Plaintiff's notices that Defendants were, and are, in violation of the Court's Preliminary Injunction, and no improvement/changes to the statutorily-deficient water flow to her home occurred until February 20, 2022, while the broken valve has been ignored completely. See letters from Plaintiff to the HCSD from the months of September, 2021 through January, 2022 attached to the Declaration of Plaintiff in support of this Motion collectively as Exhibit "C" thereto. (ECF #67, pp.16-20.)

The Defendants eventually (after the filing of this Motion) altered Plaintiff's water service to a fully usable state on February 20, 2022, but by means of a confused, uninformative, and arbitrary process directed by Puckett. Since this circumstance is not reflected in either the Opposition, nor the Declaration of Defendant Puckett (despite the fact that those documents were submitted on February 23, 2022). Plaintiff has provided this Court a summary of those events, and written communications dealing therewith in Plaintiff's Declaration in Support of Objections to the Declaration of Robert Puckett, Sr., at item #5, and its Exhibit E.

This Court "retains the power to modify the terms of its injunction in the event that changed circumstances require it." *United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985) (citations omitted). Plaintiffs' motion for civil contempt sanctions is made pursuant to the inherent authority of the Court on the ground that Defendants were, and are presently, violating

---

[2] When the Defendants initially reconnected Plaintiff's water meter to the system and turned it (partially) back on, they broke the control valve on the "supply side" to the meter, rendering it impossible to make any adjustments or changes to the meter concerning service conditions until it is repaired. The HCSD, via President Puckett, was notified of this problem on September 21, 2021, and provided a photo of the damage, but Plaintiff never received any response, and the meter connection has not been repaired. (See photo as Exhibit "B" hereto, noting broken valve at top of meter.)
[3] See 22 CCR §64602(a): "Each distribution system shall be operated in a manner to assure that the minimum operating pressure in the water main at the user service line connection throughout the distribution system is not less than 20 pounds per square inch at all times."
[4] See California Plumbing Code §608.1 (requiring minimum 15 psi unless fixtures and fitting require higher pressure, in which case, such higher pressure shall be provided); §610.3 (requiring certain flow measured in gallons per minute; noting showerheads at 2.0 gpm, "water closet" at 2.5 gpm, and sinks at 1.5 gpm minimum).

Plaintiff's Reply to Opposition to Motion for Civil Contempt Sanctions - 3

this Court's Findings and Recommendations issuing and implementing a Preliminary Injunction, and its Order adopting the Findings and Recommendations, and granting the Preliminary Injunction, filed on September 17, 2021 and December 06 2021, as ECF #29, and #52, respectively. See *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 & n.9 (9th Cir. 1992).

Additionally, and/or in the alternative, Plaintiff requests that this Court issue a further preliminary injunction, ordering Defendants to pay for the immediate repair of the water control valve on the "supply side" of Plaintiff's water meter which was broken by Dingman and Puckett; to make such adjustments to the meter, and any other devices connected thereto, as may be necessary to provide minimum constant water pressure of 20 psi[5], and a flow rate of at least 2 gallons per minute as measured at Plaintiff' bathroom showerhead, and 1.5 gallons per minute at Plaintiff's sink when both are being operated; and, further, that Defendants refrain from making any changes to Plaintiff's water service that will render it at any time in violation of State law pertaining to the minimum rate of flow, and psi requirements found at California Plumbing Code §§608.122, 610.3, and CCR §64602(a) except as may be necessary for maintenance, or in event of emergency.

Interestingly, the Opposition (ECF #69, and #69-1) does not challenge any of Plaintiff's factual allegations. Instead, Defendants simply assert that because they allowed a slight flow of water through Plaintiff's pipes, they were in full compliance with the preliminary injunction since Plaintiff thereby had "potential" access to more than 200 gallons per day so long as Plaintiff "allows her water to run nonstop for an entire day" (ECF #69, p.4:19-21). No evidence is presented in support of any of the various arguments and assertions in the Opposition save for the Declaration of Defendant Puckett, to which Plaintiff has separately-filed Objections due to Puckett's complete lack of personal knowledge as to almost all facts asserted, his general lack of training and education relating to the subjects at hand - and his failure to provide this Court with relevant information concerning the actions of himself and Dingman on February 17-20, 2022.

Dated: March _____, 2022

_____
Kimberly R. Olson, Plaintiff Pro Se

---

[5] See 22 CCR §64602(a). A true copy of this Section is provided for the convenience of the Court and Opposing Counsel as Exhibit "F" to Plaintiff's Motion.

Plaintiff's Reply to Opposition to Motion for Civil Contempt Sanctions - 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### A. Defendants Admit They Are In Contempt Of This Court's Preliminary Injunction

### 1. Contempt standard

The Court may issue a contempt order if Defendants "(1) [ ] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A district court "has wide latitude in determining whether there has been a contemptuous def[ianc]e of its order." *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (internal quotation marks omitted).

The moving party must demonstrate by clear and convincing evidence that the alleged contemnor violated "a specific and definite order of the court." *Id.* at 856 n.9.  The burden then shifts to the opposing party to demonstrate that "they took every reasonable step to comply." *Id.* The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck,* 10 F.3d at 695.

Here, the Defendants admit (and do not deny the factual allegations of Plaintiff's Motion) that they did not comply with this Court's Orders.  1) They did not restore Plaintiff's water service to a fully functional state, and refused to do so for some six months after the Orders were issued, and Plaintiff notified them of that failure; and, 2) They failed to "maintain" the water service to Plaintiff's home by breaking her supply valve (by use of unqualified personnel) , and then refusing to repair it, or to allow Plaintiff to repair it via licensed contractor.

### 2.  Defendants Failed to Provide *Usable* Water Service to Plaintiff as Ordered.

This Court ordered restoration of Plaintiff's water service on the same "generally applicable" terms as all other customers of the district, subject to "internal rules", **and in compliance with** all "state and local" laws (ECF #29, and #52, p.2).  However, apparently a lack of clarity in the language of Resolution 2021-02 generally, its Section 6(k), and of the representations of the Defendants to the Court concerning what a "flow restrictor" is[6], and how it would function, allowed Defendants to disingenuously claim in response to Plaintiff's filing of the current Motion, that due to the provisions of Resolution 2021-02, they were complying with the Court's order by installing a device by that name - but one that rendered Plaintiff's water

---

[6] The Court also referred to the expected device as a "flow regulator" at ECF #52, p.2:14-15.

service <u>effectively unusable</u> for most things on a **continual** basis (and in a manner that rendered Plaintiff's water supply in violation of several California laws) - rather than a device operating by simply not allowing any use of water beyond 200 (now 300[7]) gallons each day. (See ECF #67; c.f., ECF #69, pp.3:27-4:22.)  The fact that the provisions of the HCSD's Resolutions allow and encourage such *ad hoc*, arbitrary, and capricious interpretation and application against customers (and without any sort of hearing, appeal, etc being allowed) demonstrates yet again the unConstitutional nature of the actions of these Defendants, and of the policies and procedures of the HCSD generally[8].

In the example here, clearly it was the expectation of the Court in issuing its ECF #52, p.2 Orders (and of Plaintiff at the time), that the HCSD would in good faith comply therewith by simply "attaching" a device that would allow Plaintiff to actually <u>use</u> her water service in the same manner as other customers do, but which would also automatically (and temporarily) restrict the flow of water to Plaintiff's service on any day in which the 200/300 gallon per day "limit" had been reached, - and then that water service would thereupon not resume until the next day's allotment became available.

In stark contrast to such reasonable expectations, the ECF #69 explanation of Defendants' Counsel for the inability of Plaintiff to use her water as the Court intended for the last six months is - in essence - that <u>so long as water dribbles out of the tap</u> at a rate sufficient to within each 24 hour period meet the 200/300 gallon allotment (and theorizing that Plaintiff could/should leave her taps on constantly to accumulate that water somehow[9]), then the Defendants are in compliance with the Preliminary Injunction[10].

---

[7] See Puckett Declaration, ECF #69-1, p.2, lines 20, and 25.

[8] To leave what is essentially determinations of statutory construction of this, and each of the other provisions of the HCSD's water usage/punishment regulations, to an aggressive, inventive, or reckless functionary (and/or their hired counsel) "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis," thereby exposing a person subject to their power to "arbitrary and discriminatory application" of the statute and even potential criminal prosecution (c.f., ECF #26, pp.2:21-23, 22, 25). See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 (quoting *Grayned v. City of Rockford* (1972) 408 U.S. 104, 109). See *Smith v. Goguen* (1974) 415 U.S. 566, 574 ("Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law" by delegating to "policemen, prosecutors and juries" the authority "to pursue their personal predilections").

[9] This argument is even more bizarre in the face of Counsel's ECF #69, p.4 calculations concerning "potential" gallonage he theorizes is available to Plaintiff, insofar as he repeatedly claims that the Defendants actions actually are providing <u>more</u> "potential" water to Plaintiff than the Court's Orders require.  If that is so, then what is the purpose of deliberately making all of that "potentially" available water contingent upon doing so in a manner that renders the water effectively unusable to her?  Why not

It is a logical fallacy of epic proportions to equate the mere "availability" or "potential" of a certain quantity of water with <u>being able to actually **use**</u> household water the way most (if not all) civilized people expect, and in the manner that is specified in several State laws. (ECF #69, pp.4-5.) This section of argument in the Opposition does not even address the problem of minimum flow rates and pressure being needed to run shower heads and faucets, and instead ignores this exercise in basic physics as if it doesn't exist - even going so far as to defiantly claim on ECF #69, page 5:3-4 that "The court's Order did not mandate minimum water pressure, nor did it mention psi or flow rate" (see also #69, p.2:15-16). While that is true, it is no doubt because the Court did not expect Defendants and their Counsel to conduct themselves in any manner that might even remotely be construed as bad faith, and also because the laws of the State of California <u>already</u> specify those things - and indeed, the Court **did,** *specificially*, Order that the water service provided to Plaintiff's residence be done in a manner that is "in compliance with ... **all** <u>other applicable state</u> ... <u>laws</u>". (ECF #52, p.2, all emphasis added[11].)

Counsel's arguments in the ECF #69 Opposition that the HCSD <u>does not have to abide by</u> the Codes and Regulations of the State of California regulating pressure and flow of water in people's homes (despite the Court's clear order that it does at ECF #52, p.2:4-6). This is frankly an obviously improper argument[12] - particularly in the face of Plaintiff's <u>many</u> attempts **over six**

---

just attach the device the Defendants represented to this Court would simply limit the number of gallons flowing to Plaintiff's home each day?
[10] No mention is made in ECF #69, nor #69-1 of the failure to undertake "maintenance" (ECF 52, p.2, #5) of the water meter by repairing the valve that was broken by Dingman on or about September 20-21, 2021, (ECF #67, pp.2, 3 at fn3, 5, 8) so this issue is unopposed, and has been abandoned/admitted by the Defendants.
[11] The Court also specified that any water service restrictions applied must be for the purpose of being "in order to conserve water". (ECF #52, p.2:9.) Yet it is clear that delivering water to people in a way that makes it impossible for them to even use their showers is simply **punitive** - especially when coupled with testimony and argument by these Defendants that they are actually giving customers "access to" the "potential" of much more water than allowed by the restrictions in effect, but <u>not</u> giving anyone the ability to call for a hearing challenging "violations" forming the basis for water service impairment, nor any way to simply pay an administrative "fine" or other process to have service restored. That these Defendants think that they can just permanently strip people of their right to water without hearings and/or recourse is flat out unconstitutional, and their arbitrary and capricious actions should not be condoned by this Court.
[12] See, i.e., *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted). Indeed, "[e]ven if an attorney's arguments are meritorious, his conduct may be sanctionable if in bad faith." *Id.* (citation omitted). At least Puckett and his Counsel did not attempt to deny Plaintiff's sworn testimony that her shower cannot function at a flow of 2/3 gallon per minute, nor dispute her statement that the Defendants never came to Plaintiff's home <u>to see for themselves</u> that the fixtures therein would not work due to insufficient pressure and flow. They also did <u>not</u> deny that Puckett and Dingman broke <u>Plaintiff's</u> valve on **her** supply line to

**months** (some of that correspondence, but not all, appears at ECF #67, pp.16-20) to meet and confer with the HCSD about the water service issue before finally being forced, due to the complete lack of response by Defendants or their Counsel, to ask the Court to step in via the current Motion, ECF #67, filed on February 4, 2022.

Apparently that filing goaded the Defendants into action, as the water service <u>was</u> finally restored to a usable state on February 20, 2022 by the actions of Puckett and Dingman (also without any notice or explanation being given to Plaintiff), but <u>the HCSD declined to attach any type of device that would simply prevent any use beyond 300 gallons.</u> Instead, President Puckett is now removing and inserting "flow restrictors" into Plaintiff's water service at random, drastically changing the usability of that service, without any notice[13]. This seems to be a sort of "set up" of Plaintiff, so that the HCSD can once again arbitrarily inflict its unconstitutional customs, policies, procedures, and practices upon Plaintiff, while justifying all of those under the provisions of Resolution 2021-02 (ECF #69: #69-1, p.2, #2, and pp.5-8).

After this Court's issuance of the preliminary injunction, Defendants were aware that they had a duty to restore Plaintiff's water service to a usable state, in a manner that conformed to "all" laws, but the water service was <u>not</u> so restored until a couple of weeks after Plaintiff filed this Motion (six months after the Court's Order of ECF #29, and almost three months after ECF #52). Despite repeated requests for a hearing on the original allegations against her concerning her water service[14]; notices by Plaintiff of insufficient pressure and flow to her home; and, notices of, and demands for repair of the negligently broken water valve[15], the Defendants have refused to grant any hearing(s), or undertake any repairs, and have repeatedly tampered with the water meter without proper notice, and without cause, notice, nor any hearings - so they are

---

the house (and have not had it repaired by a licensed plumber) - and so it is interesting that they are not additionally arguing something along the lines of "the Court did not state in it's order that we couldn't break things while installing the meter, and/or refuse to repair stuff we broke".

[13] See Olson Declaration at #5, and Exhibit E thereto. Plaintiff notes that once water service <u>is</u> fully restored, it <u>cannot</u> be reduced/impaired/altered again by the Defendants absent the full panoply of due process as afforded by the US and CA Constitutions, and the HCSD's own Rules and Regulations, and yet this is just what Puckett did on the day of February 18, 2022 by unilaterally ordering Dingman to reinsert a "flow restrictor" into Plaintiff's meter. It is clear the Defendants do not adhere to any rules or rational criteria, and instead act recklessly, as well as completely arbitrarily and capriciously in regard to civil rights, property rights, and water service - especially in regards to Plaintiff.

[14] See *Memphis, supra,* at pp. 12-16.

[15] When Plaintiff's meter was replaced, the valve was not, because it did not need to be; it was in fine working condition from at least 2006 until Defendant Dingman broke it when reinstalling the meter on or about September 20-21, 2021.

continuing to act arbitrarily and capriciously concerning Plaintiff's water service, and so her constitutional (and property) rights.

Plaintiff believes that Defendants have acted in bad faith, and violated the clear terms of this Court's preliminary injunction, but nonetheless does not seek to punish them, but rather to be assured of proper and responsible full use of her water service without being singled out for harassment or interference, and to have her water valve repaired by someone who is an actual professional, possessing the proper tools and experience - one who won't make further breakage of her property part of the "cure".  Plaintiff therefore modifies her Request for Relief in the Motion as follows.

**B. Defendants Misstate Competent Evidence Before This Court**

The Opposition claims that no evidence support's claim of less than 20 PSI at #69, p.5, fn1, and yet Olson's Declaration at ECF #67, p.9 at #3 provides that evidence - along with a statement that Puckett never measured it because he never bothered to respond to Plaintiff's request for an appointment to do so.  (*Id.*, at #5.)  Obversely, Puckett's Declaration does not make any claim that Olson's service produces 20 psi or more - nor any number at all - since he clearly didn't test it, nor ask anyone else to do so.  Neither does Puckett claim that <u>any</u> HCSD Rules and Regulations say that pressure and flow are to be rendered unusable in any instance - just that people are limited to *using* (not "having available" or "potentially") 300 gallons of water each day.  (Puckett Declaration, ECF #69-1.)

Along with the objections by Plaintiff to any testimony by Puckett about flow restrictors as lacking foundation, and on the basis that Puckett lacks competency to testify about them due to a complete lack of related education and training, Plaintiff also points out that there has been no production of any evidence demonstrating any competency by Defendant Dingman to be undertaking plumbing and/or pipefitting duties - and indeed the evidence is to the contrary, insofar as Dingman has been breaking things. (ECF #67, p.3, at #2, and Exhibit B thereto at p.14.  See also Olson Declaration in Support of Objections at #5, and Exhibit E thereto.)

**3. Modified Relief Requested**

As the Defendants have in fact, as of this date, restored Plaintiff's water service to a state that meets the minimum flow and pressure requirements of the State of California, Plaintiff request that the Court specify in a further injunction that:

(1) Plaintiff's water service shall be maintained, at a minimum, at the current pressure and flow rates, and shall not be tampered with by any Defendant except after constitutionally-adequate notice (and a hearing if a "violation" of HCSD Rules is alleged as the basis therefore),

Plaintiff's Reply to Opposition to Motion for Civil Contempt Sanctions - 9

or in the case of an emergency requiring immediate action by the HCSD, although any adjustments to water service that <u>increase</u> pressure and flow are permitted at any time;

(2) Plaintiff's supply valve connecting Plaintiff's meter to her water supply line to Plaintiff's residence, which was broken by these Defendants when the meter was reinstalled on or about September 20-21, 2021 (ECF #67, Exhibit B), shall be immediately repaired, by a plumber/pipe-fitter of Plaintiff's choice, who is professionally licensed by the state of California for that type of work, and who is also fully insured against mishap[16], so that the meter may be properly maintained and operated by the Defendants to provide water service in full compliance with the Court's Preliminary Injunction entered December 6, 2021 - Defendants are to pay the full costs of such repairs when presented with an invoice from said licensed and insured plumber/pipe-fitter; and

(3) Defendants should be made to clearly understand that they are ultimately responsible for insuring that they maintain the service connection to Plaintiff's water meter from the main, and that it is their duty to abide by the Preliminary Injunction (ECF #52, p.2) by assuring that Plaintiff's water service be <u>fully usable,</u> and in compliance with **<u>all</u>** federal, state, and local laws, and maintained in that state, while any permissible limitations on the amount of water use by Plaintiff be *only* those that are also <u>generally applicable</u> to <u>all</u> other customers of the District - which is at this time only a limit of using <u>9000 gallons per month</u> as described on the Defendants' website at: https://hornbrookcsd.specialdistrict.org/some-good-news-hcsd-declaration-of-water-shortage-emergency-amended-to-add-an-additional-100-gallons-of-water-per-household-per-day-as-a-result-all-water-users-shall-now-be-restricted-to-300-gallons-of-water-per-day-9-000-gallons-per-month

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court find that the Defendants have failed to act in good faith to obey the Preliminary Injunction issued to them, have failed to establish any good cause to deny Plaintiff's Motion, and that Plaintiff is entitled to further relief as requested.

Respectfully Submitted this 18th day of March, 2022. *Kimberly K Olson*

Kimberly R. Olson, Plaintiff Pro Se

---

[16] Although Plaintiff notes that since the valve, its connection, and the water line it connects the meter to are actually Plaintiff's own property, and on "her side" of the meter, she is willing to stipulate to the use of a plumber/pipe-fitter who is also qualified (and bonded) under State laws for undertaking Public Works.

Plaintiff's Reply to Opposition to Motion for Civil Contempt Sanctions - 10

## CERTIFICATION AND PROOF OF SERVICE

I, Kimberly R. Olson affirm under penalty of perjury under the laws of the United States that I served the appearing defendants in this action, a true copy of the following listed documents via US Mail to their attorney of record at the addresses below, on the date specified, as follows:

1) J. Scott Donald
   601 University Ave., Ste. 225
   Sacramento, CA 95825

Dated: 3-18-22

By: _Kimberly R Olson_
Kimberly R. Olson, Plaintiff Pro Se

1) Plaintiff's Reply to Defendants' Opposition