Kimberly R. Olson
PO Box 243, Hornbrook, CA 96044
kimberlyrenee@yahoo.com (email not for service)
(530) 475-3669



**FILED**

**JUL 1 1 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
          DEPUTY CLERK

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Kimberly R. Olson,

        Plaintiff,

  vs.

Robert Puckett, Sr., et al,
        Defendants,

)
)
)
)
)
)
)
)
)
)

Case No: 2:21-cv-1482 KJM DMC (PS)

PLAINTIFF'S REPLY AND OBJECTIONS
TO DEFENDANTS' "STATEMENT OF
DISPUTED FACTS" IN SUPPORT OF
OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT;

Date: July 10, 2022 (submission due)
Time: Set by Judge Cota as ECF #101
Location:  Redding Federal Courthouse

Plaintiff Kimberly R. Olson ("Plaintiff" or "Olson"), does hereby submit these

Reply/Rebuttal Facts in Response to the HCSD Defendants' "Opposing Party's Statement of

Disputed Facts" (ECF #87-3) as to Plaintiff's claims which are the subject of her Motion for

Summary Judgment ("Motion", ECF #68). Plaintiff has also incorporated her objections to the

(improperly inserted[1]) arguments and assertions of fact therein:

    **Plaintiff's Undisputed Fact #1**:  The HCSD is an entity of local government, operating

as a political subdivision of the State of California, and a Special District subject to the

provisions of Government Code Section 61000 *et seq*, that provides water to the community of

Hornbrook, California, and to Plaintiff's home (ECF #4, p.1:16-18; #44, p.2.)

                **HCSD's Response to Fact #1:**  Undisputed for purposes of this motion.

              <u>PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #1:</u>  Undisputed.

---

[1] That is, if the Defense wants the Court to consider finding facts on its behalf, or in its favor, it should
have filed its own "statement of undisputed facts" with full evidentiary support - to which Plaintiff could
then file opposition. The current document is confusing in both content and procedural effect, and
continues the theme of the Opposition P&As., which is to create straw men and distract from the real, and
limited, issues Plaintiff raised in her Motion.

1

**Plaintiff's Undisputed Fact #2**: The HCSD maintains a copy of its currently-effective

2   Rules and Regulations which govern its operations, as an enactment of a government entity, and

3   a public record, on its website, located at : https://hornbrookcsd.specialdistrict.org/operation-

policies   A true copy of those Rules and Regulations was Lodged with this Court as ECF #34.

4

5            **HCSD's Response to Fact #2:** Undisputed for purposes of this motion.

6            PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #2:  Undisputed.

7

**Plaintiff's Undisputed Fact #3**: Defendants Puckett and Dingman are officers and

8

employees of the HCSD (ECF #17-1, p.1; #17-5, p.1; #36, pp.18:2-7; #41, p.2:19-22.)

9

10           **HCSD's Response to Fact #3:** Undisputed for purposes of this motion.

11           PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #3:  Undisputed.

12

**Plaintiff's Undisputed Fact #4**: At some point, on or about July 20-23, 2021, Plaintiff's

13

water service to her home was terminated by the direct actions of the HCSD, Puckett, and

14   Dingman - culminating in the removal of Plaintiff's water meter.  (ECF #4, p.2:5-8; #26, p.3:15-

15   21; #29, pp.11:18-22; #36, pp.19:1-24; #41, pp.2:20 - 3:11; #44, pp.2-3.)

16

            **HCSD's Response to Fact #4:**  Disputed.  Plaintiff has not presented any
17   admissible evidence in support of her undisputed fact.
            On July 14, 2021, the Siskiyou County Office of Emergency Services sent out an
18   "urgent message" asking all customers of the district to conserve water due to a finding that the
     storage tanks were nearly empty and that the current level of water usage was beyond the
19   available supply to adequately replenish the system.  This notice was posted on the district
     website and distributed to all customers by hand. Decl. Puckett ¶2, Exh. B
20           On July 16, 2021, HCSD passed and adopted through its board of directors Resolution
     No. 2021-02 "Declaration of Water Shortage Emergency".  Under the terms of this resolution,
21   which was enacted as a response to an extreme water shortage brought about by the drought and
22   determined necessary under the California  Water Code to address a determination that the
     ordinary demands and requirements of water consumers within the district could not be satisfied
23   without depleting the water supply of the district to the extent that there would be insufficient
     water for human consumption, sanitation and fire protection.  In furtherance of the ordinance, the
24   district's customers were restricted to 200 gallons per household per day during the emergency.
     Decl. Puckett ¶3, Exh. C
25           On July 17, 2021, a public notice declaring an emergency water use reduction and boil
     water notice was issued and hand delivered to all customers and posted at business and on the
     district website.  At that time, all meters were read to keep an eye on water usage. Decl. Puckett
     ¶4

Reply to HCSD's Statement of Disputed Facts for Plaintiff's Partial MSJ - 2

On July 19, 2021the water meter for Kimberly Olson could not be accessed because a car had been parked on top of the meter making it impossible for the meter to be read. Decl. Puckett ¶5, Exh. D

It was also observed and Plaintiff Olson was cited for violating Resolution 2021-02 for outdoor watering. Decl. Puckett ¶5, Exh. E

On July 20, 2021, a second notice of violation for tampering and obstruction of the water meter siting Government Code Section 61064 and District Rules & Regulations 4.11 and 4.12 were issued to Kimberly Olson. Decl. Puckett ¶6, Exh. F

On July 22, 2021, Ms. Olson's meter was read and it was shown that she was significantly exceeding the water use restriction of 200 gallons per day. At that time, she was ordered to immediately cease and desist exceeding the allotting amount and that a result of a violation of her meter would be the removal and discontinuance of service. Decl. Puckett ¶7, Exh. G

On July 23, 2021, Ms. Olson was issued another violation for obstruction and outside watering and at that time the sheriff was called out to have her remove the obstruction which she refused to do. It was explained to her that if she did not remove the car which she had again parked on top of the meter, that it would be towed away by the sheriff's office. When she refused again, her car was towed. Her car was retrieved that same day and again parked back on the meter along with a van and a very large water tank, all of which obstructed the reading of her meter. Decl. Puckett ¶9

For the month of July, and while a restriction on use was in place for households to limit their use to 200 gallons per day, Ms. Olson was utilizing 6,200 gallons per day. In addition to utilizing motor vehicles to block her meter from being read, Ms. Olson poured kitty litter over it and placed the board over it. Decl. Puckett ¶10

Due to the multiple violations and overuse of water and after being placed on notice that her water would in fact be turned off if she continued such actions. On July 23, 2021, Ms. Olson was issued with another violation to remove an obstruction of her water meter and placed on notice that if the obstruction was not removed that her water would be disconnected and her meter removed. Due to her refusal to the district, the sheriff's department was called out and after she refused to comply with the sheriff's request and remove the obstruction, the vehicles obstructing the meter were towed away and her water was disconnected and meter removed. Decl Puckett ¶11

Pursuant to HCSD Rules and Regulations 4.06, as an alternative method of enforcing the provisions of this or any other Resolution, resolution rule or regulation of the District, the District shall have the power to disconnect the user or subdivision water service from the water mains of the District.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #4: Disputed. Plaintiff included admissible citations to the record, and the verified FAC is also admissible. Moreover, the response by the Defendants asserts multiple immaterial facts, but it raises no dispute of the proposed fact.

Plaintiff objects that the alleged "violations" that are being presented as evidence of determined facts do not actually provide admissible evidence for the facts claimed (i.e., alleged water usage amounts; supposed "meter reads"; alleged acts by Plaintiff that were not witnessed by any Defendant; alleged interactions with Plaintiff that never happened due to her not being

present; etc) because they are not the result of any findings by a competent tribunal - instead simply being accusations leveled against her by Puckett, and Dingman, without any action being taken thereon by the Board of Directors per Gov. Code §61045. The HCSD and its Counsel, therefore, are misleading this Court as to "HCSD's Response to Fact #4" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021.

Plaintiff also objects that the "violations" issued by the HCSD do not have the force of law (none of them were adopted as ordinances, instead being mere "rules" and/or "bylaws"), and that because the HCSD has never provided Olson any hearing on the allegations in the notices (and refused her several requests for hearings), they remain mere unadjudicated accusations at this point[2]. Despite the Defense's presumptions to the contrary, Plaintiff enjoys the presumption of innocence[3] until such time as she is "convicted" of those alleged violations. (Pen. Code §1096; c.f., i.e., ECF #42, pp.4, 6, and 7; ECF #67, Exhibit C letters requesting hearings; ECF #72-1, pp.8, and 10.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #4, were not adopted as ordinances, nor were they adopted in conformance with the language of Government Code §25132, nor that of §61064(c), and/or §61060.

Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle "on top of HCSD's meter". (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

Plaintiff asserts the additional undisputed fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in

---

[2] "The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, (1976).

[3] "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law" (*Coffin v. United States*, 156 U.S. 432, 453 [1895]).

Reply to HCSD's Statement of Disputed Facts for Plaintiff's Partial MSJ - 4

Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of <u>the Defendants</u> as issues of law.

Plaintiff Objects that the Declaration of Robert Puckett, Sr., ECF #87-1 is not admissible as evidence to contradict Plaintiff's undisputed facts, or to establish those assertions listed in "HCSD's Response #4", and does not address the issues she has raised in her Motion at all.  The Puckett Declaration does not state facts demonstrating personal knowledge of the declarant for each claimed "fact"; there is a lack of foundation for many of the assertions made therein, thus rendering them conclusory, and/or speculative; some statements are impermissibly argumentative; and, on the basis that some statements contain, or are completely themselves, hearsay of various levels.  Puckett's Declaration is also consistently vague and misleading by failing to define and lay foundation for the terms used, and/or objects/items discussed (i.e. "refused"); and lacks authoritative, competent explanation(s) based upon personal knowledge ("foundation")[4].  Puckett also impeached himself at the 09/14/2021 hearing (ECF #36, pp.29-30).

Moreover, none of the statements contain any indication that Puckett, himself, engaged in <u>any</u> of the actions alleged (e.g., reading meters, distributing flyers "to all customers [of the District] by hand"[5], or that he <u>personally</u> saw or heard Plaintiff say or do anything.  "Bald conclusions, opinions, and hearsay without supporting specific facts are not admissible...." *Williams v. Hager Hinge Co.*, 916 F.Supp. 1163, 1168 (M.D. Ala. 1995) (citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).  "An affidavit must be stricken when it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge." *Story v. Sunshine Foliage World, Inc.*, 120 F.Supp. 2d 1027, 1031-1032 (M.D. Fla. 2000).  Furthermore, declarations "asserting personal knowledge <u>must include enough</u>

---

[4] <u>All</u> matters set forth in declarations must be based on <u>personal knowledge</u> and statements in a declaration are inadmissible unless the declaration itself affirmatively demonstrates that the declarant has personal knowledge of <u>each</u> those facts. *Love v. Commerce Bank of St. Louis, N.A.*, 37 F.3d 1295, 1296 (8th Cir. 1994); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315-16 (6th Cir. 1989) (holding that statements in affidavits that are not based on personal knowledge and personal observation do not contain facts that are admissible evidence for summary judgment purposes); *El Deeb*, 60 F.3d at 428 (affidavits "shall be made on personal knowledge" <u>and must include specific facts</u> "to show the affiant possesses that knowledge.") *Dibble*, 429 F.2d at 602. *Mitchell*, 964 F.2d at 585 (holding that "conclusory allegations and subjective beliefs ... are wholly insufficient evidence...."); *O'Shea v. Detroit News*, 887 F.2d 683 (6th Cir. 1989) (holding that conclusory allegations are not admissible evidence). Puckett's ECF #87-1 Declaration consists almost entirely of hearsay, conclusions, and speculation, while also lacking statements of foundational fact demonstrating competency to testify as to the statements made therein.
[5] Clearly that did not happen with Plaintiff, anyway, since Puckett complains throughout his pleadings, and testified at the hearing of September 14, 2021 that Plaintiff never comes outside her home - even when people are at her fence line yelling at her house, so he instead "tapes" documents "to the fence". (ECF #36, pp.26, 29-30.)

**factual support** to show that the [declarant] possesses that knowledge." *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995) (citations omitted, all emphasis added); and furthermore, the "requisite personal knowledge must concern **facts** as opposed to conclusions, assumptions, or surmise." *Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) (emphasis added).  No such factual support is found in Puckett's Declaration.

The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the vehicle allegedly parked "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee.

**Plaintiff's Undisputed Fact #5**:  All of the "notices" concerning alleged "violations" by Plaintiff Olson that are the subject of this action were created by the HCSD and its President, Defendant Puckett, and were only transmitted to Plaintiff by means of email and/or by taping them to the fence (or gate) surrounding Plaintiff's home and property.  Further, at no time prior to the removal of Plaintiff's water meter, and termination of the water service to Plaintiff's residence, did the HCSD or Puckett attempt to provide any of those "notices", or information about their contents, to Plaintiff Olson via the US Post Office, or by telephone.  (ECF #26, p.3:22-25, and pp.16-25; #36, pp.9:11-12, 26:15 - 27:25, 28:10-18.)

**HCSD's Response to Fact #5:**  Disputed.  Plaintiff has not presented any admissible evidence in support of her undisputed fact.
Defendant Puckett made attempts to personally service notices to Plaintiff Olson, but she will not answer or door or come outside to receive service. Therefore, Mr. Puckett taped the notice to the front of Plaintiff Olson's gate facing her house. Mr. Puckett also served notice via email. Chiao Decl. Exh. I, Hrg. Transcript ppp. 26, lns 17-21

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #5:  Disputed.  Plaintiff included admissible citations to the record, and the verified FAC is also admissible.  Moreover, the response asserts multiple immaterial facts, but it raises no dispute of Plaintiff's proposed fact(s).

Plaintiff asserts the additional undisputed fact that the HCSD Rules and Regulations <u>do not provide</u> for service of notices concerning water service, nor of "violations", from the HCSD by means of email, or by taping the subject documents to a fence.  Instead, **only** USPS mailing, and/or personal delivery is permitted by those Rules.  (ECF #34 at Sections 2.10, 4.03, and 4.15.)

Further, under the laws of the State of California, and the Federal Courts, emailing notices or other documents to people as "service" or due notice thereof is only permissible and lawful if a party has given written permission that it will accept such documents via those means. See FRCivP 5(b)(2)(E); CCP §§1010.6, and 1013, while the mere posting of a notice on the fence surrounding a property is not valid service under any California law.

Plaintiff objects that the asserted facts that Plaintiff "will not answer the door or come outside" are <u>irrelevant</u>, and are not supported by any admissible evidence that Plaintiff has been present in her home at any time any representative of the HCSD attempted to physically bring her a document, "notice", or "violation" rather than simply mailing it; nor is there any admissible evidence presented for Counsel's (irrelevant[6]) accusation that Plaintiff has "refused" to open the door of her home for any HCSD representative.  Furthermore, Plaintiff has no duty to make herself available for personal service to the HCSD - particularly when the alternative means of service by US Mail is available to it per HCSD Rule 2.10.  Finally, Puckett does not have any lawful authority to ignore the provisions in the HCSD Rules and Regulations pertaining to service of notices, and may not create his own (valid) substitute procedures.

Plaintiff asserts the additional undisputed fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of <u>the Defendants</u> as issues of law.  The HCSD and its Counsel, therefore, are <u>misleading this Court</u> as to "HCSD's Response to Fact #5" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021. See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #6**:  Two of the "notices" created and sent to Plaintiff Olson by the HCSD and its President, Defendant Puckett, stated that Plaintiff was accused of criminal

---

[6] Plaintiff <u>does **not**</u> seek to adjudicate ***the method of delivery*** of the "notices" as a constitutional violation in her Motion for Partial Summary Judgment, and indeed specified that this was so at ECF #68, page 17, fn.20.  Plaintiff <u>does</u> seek to have summary judgment granted as to her State law claim of violation of the HCSD Rules and Regulations, and the fact that the HCSD Rules and Regulations, at Sections 2.10, 4.03, and 4.15, **require** that "notice" be given to a customer by the HCSD <u>only</u> by way of USPS, or personal delivery - and that "email", and/or "taping to the fence" of a customer's property is <u>not</u> authorized by **any** of the those Rules and Regulations.  (C.f., Motion, ECF #68, pp.33-36; ECF #34, at Sections 2.10, 4.03, and 4.15; ECF #34 is also maintained on the HCSD's public website at: https://hornbrookcsd.specialdistrict.org/files/f42f22423/Rules+and+Regulations.pdf

Reply to HCSD's Statement of Disputed Facts for Plaintiff's Partial MSJ - 7

1  conduct, and that certain actions would be taken against her on that basis. (ECF #26, pp.2:21-23,

2  22, and 25.)

3      **HCSD's Response to Fact #6:**  Disputed.  Plaintiff has not presented any admissible evidence in support of her undisputed fact.

4      HCSD's notice stated "Parking a vehicle over a district water meter and willfully refusing

5  to move it so the district can read the meter is a violation of District Rule 4.11.  You are in violation of District Rule 4.11 if you refuse to move the vehicle you would also be subject to a

6  misdemeanor under Government Code section 61064 and Penal Code section 19 and the Sheriff will be called to issue a misdemeanor violation and your car will be towed away at your expense

7  if you refuse to move it.  If the meter is obstructed again your water will be shut off per district rules." Decl. Robert Puckett, Sr. Paragraph 6-7, Exh.  F & G

8

9      PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #6:  Disputed as to "not

10  presented...evidence".  Plaintiff included admissible citations to the record, and the verified FAC is also admissible.  Undisputed as to the partial statement of contents of the purported notice.

11      Moreover, the response asserts an immaterial fact, but it raises no dispute of Plaintiff's

12  proposed fact(s).  Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their

13  Response to Fact #4, were not adopted as ordinances, nor were they adopted in conformance

14  with the language of Government Code §25132, nor that of §61064(c), and/or §61060.

15      Plaintiff asserts the additional undisputed fact that the substance of the allegations against

16  Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in

17  Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of the Defendants

18  as issues of law. See also Plaintiff's Reply to HCSD's Response to #4, above, which is

19  incorporated at this point as if fully set forth.

20      Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited

21  by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex*

22  *post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle on top

23  of a meter subject to Rules of the HCSD.  (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

24      The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the vehicle

25  allegedly parked "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee.

**Plaintiff's Undisputed Fact #7**: None of the "notices" purportedly provided to Plaintiff by the HCSD and Defendant Puckett contain any notice of the date and time of any impending "hearing", nor do any of the notices contain any direction as to how Plaintiff might *request* a hearing, to contest the allegations of any "notice". The notices also do not provide the name of any employee of the HCSD. (ECF #26, pp.16-25.)

**HCSD's Response to Fact #7:** Disputed and immaterial. Plaintiff has not established that she is entitled to a hearing under the circumstances. Among other violations, Plaintiff parked a vehicle on top of the water meter, thereby making it impossible for her meter to be read. Plaintiff received notice that her actions were in violation of HCSD Rule 4.11 and warned that the vehicle may be towed and her water may be shut off if she continued to refuse to allow her meter to be read.   Decl. of Puckett ¶5-8, Exh. D-H.

### PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #7: Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s). Plaintiff objects that her "entitle[ment] to a hearing" concerning allegations and processes that may lead to termination of her water service is settled law under *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Schultz v. Town of Lakeport* (1936) 5 Cal. 2d 377, 381-382 and California Constitution article I, §7(a). Further, the alleged "violations" that are being misleadingly presented by the Defense as evidence of determined facts do not actually provide admissible evidence for the facts claimed (i.e., alleged water usage amounts; supposed "meter reads"; alleged "actions" by Plaintiff that were not witnessed by any Defendant; alleged interactions with Plaintiff that never happened due to her not being present; etc) because they are not the result of any findings by a competent tribunal at a contested hearing - instead simply being accusations leveled against her by Puckett, and Dingman, without action being taken thereon by the Board of Directors per Gov. Code §61045.

Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle on top of a meter subject to Rules of the HCSD. (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the vehicle allegedly parked "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated

any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee.

Plaintiff also objects that the "violations" issued by the HCSD do not have the force of law (none of them were adopted as ordinances, instead being mere "rules" and/or "bylaws"), and that because the HCSD has never provided Olson any <u>hearing</u> on the allegations in the notices (and refused her several requests for hearings), they remain mere <u>unadjudicated accusations</u> at this point[7]. Thus, despite the Defense's presumptions to the contrary, Plaintiff enjoys the presumption of innocence[8] until such time as she is "convicted" of those alleged violations. (Pen. Code §1096; c.f., i.e., ECF #42, pp.4, 6, and 7; ECF #67, Exhibit C letters requesting hearings; ECF #72-1, pp.8, and 10.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the language of <u>Government Code</u> §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with."
> (Cal. Gov. Code §61069.)

---

[7] "The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, (1976).

[8] "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law" (*Coffin v. United States*, 156 U.S. 432, 453 [1895]).

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #7, were not adopted as ordinances, nor were they adopted in conformance with the language of <u>Government Code</u> §25132, nor that of §61064(c), and/or §61060.

Plaintiff asserts the additional undisputed fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have <u>never</u> been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of <u>the Defendants</u> as issues of law. The HCSD and its Counsel, therefore, are <u>misleading this Court</u> as to "HCSD's Response to Fact #7" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021. See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #8**: At no time <u>prior</u> to the termination of her water service by the HCSD, Puckett, and Dingman, was Plaintiff ever given any hearing(s) by the HCSD and/or Puckett at which she had opportunity to put on evidence and otherwise contest the allegations of "violation(s)" set forth in the "notices" generated by the HCSD and Defendant Puckett. (ECF #26, pp.16-25; ECF #36.)

**HCSD's Response to Fact #8:** Disputed and immaterial. Plaintiff has not established that she is entitled to a hearing under the circumstances. Among other violations, Plaintiff parked a vehicle on top of the water meter, thereby making it impossible for her meter to be read. Plaintiff received notice that her actions were in violation of HCSD Rule 4.11 and warned that the vehicle may be towed and her water may be shut off if she continued to refuse to allow her meter to be read.    Decl. of Puckett ¶5-8, Exh. D-H.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #8: Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).

Plaintiff objects that her "entitle[ment] to a hearing" concerning allegations and processes that may lead to termination of her water service is settled law under *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Schultz v. Town of Lakeport* (1936) 5 Cal. 2d 377, 381-382 and California Constitution article I, §7(a). Further, the alleged "violations" that are being misleadingly presented by the Defense as

evidence of <u>determined facts</u> do not actually provide admissible evidence for the facts claimed (i.e., alleged water usage amounts; supposed "meter reads"; alleged acts by Plaintiff that were not witnessed by any Defendant; alleged interactions with Plaintiff that never happened due to her not being present; etc) because they are <u>not</u> the result of any findings by a competent, neutral tribunal at a contested hearing - instead simply being accusations leveled against her by Puckett, and Dingman, without action being taken thereon by the Board of Directors per <u>Gov. Code</u> §61045.

The HCSD and its Counsel, therefore, are <u>misleading this Court</u> as to "HCSD's Response to Fact #8" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021.

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the language of <u>Government Code</u> §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with."
> (Cal. Gov. Code §61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #8, were not adopted as ordinances, nor were they adopted in conformance with the language of <u>Government Code</u> §25132, nor that of §61064(c), ), and/or §61060.

Plaintiff asserts the additional undisputed fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) and have nothing to do with the issues

raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of the Defendants as issues of law.

Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle on top of a meter subject to Rules of the HCSD. (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the vehicle allegedly parked "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee.

See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #9**:  The normal policy and practice of the HCSD is to read the water meters of customers once each month, and to do so at or near the same day each month.  (HCSD Rules and Regulations, ECF #34, Section 12.07.)

**HCSD's Response to Fact #9:**  Disputed and immaterial.  HCSD declared a Water Shortage Emergency on July 16, 2021.   The Board of Supervisors finds and determines, pursuant to Water Code Section 351, that the District's water supply has failed and there exists an immediate emergency to the water supply of the District to the extent that there is insufficient water for human consumption, sanitation, and fire protection.
On July 17, 2021, a public notice declaring an emergency water use reduction and boil water notice was issued and hand delivered to all customers and posted at business and on the district website.  At that time, all meters were read to keep an eye on water usage. Puckett Decl. ¶ 3-4, Exh. C.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #9:  Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

Plaintiff asserts the additional undisputed fact in Reply that there is no admissible evidence proffered by the Defendants that the HCSD's water supply "has failed", and/or that any

"emergency" exists "to the extent that there is insufficient water for human consumption, sanitation, and fire protection".

Plaintiff asserts the additional undisputed fact in Reply that there is no admissible evidence proffered by the Defendants of any "hand delivery" of any "public notice" to Plaintiff; nor that that Plaintiff's (or anyone else's) meter was read at any specific date or time

**Plaintiff's Undisputed Fact #10**:  During the period of July 16, 2021, through July 23, 2021, no written notice was provided to any of the customers of the HCSD (including Plaintiff) that water meters would be read at any time other than the normal meter reading period (the 25th through the 30th of each month), and/or read in a manner contrary to HCSD Rules and Regulations, Section 12.07.  (ECF #4, #26, #36, #41, #44.)

**HCSD's Response to Fact #10:**  Disputed and immaterial.  HCSD declared a Water Shortage Emergency on July 16, 2021.   The Board of Supervisors finds and determines, pursuant to Water Code Section 351, that the District's water supply has failed and there exists an immediate emergency to the water supply of the District to the extent that there is insufficient water for human consumption, sanitation, and fire protection.

On July 17, 2021, a public notice declaring an emergency water use reduction and boil water notice was issued and hand delivered to all customers and posted at business and on the district website.  At that time, all meters were read to keep an eye on water usage. Puckett Decl. ¶ 3-4, Exh. C.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #10:  Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).

Plaintiff asserts the additional undisputed fact in Reply that there is no admissible evidence proffered by the Defendants that the HCSD's water supply "has failed", and/or that any "emergency" exists "to the extent that there is insufficient water for human consumption, sanitation, and fire protection".

Plaintiff asserts the additional undisputed fact in Reply that there is no admissible evidence proffered by the Defendants of any "hand delivery" of any "public notice" to Plaintiff; nor that Plaintiff's (or anyone else's) meter was read at any specific date or time.

**Plaintiff's Undisputed Fact #11**:  The HCSD does not hold any easements to any portion of  Plaintiff's real property in Hornbrook, CA for any purpose.  (ECF #4, p.2:20-22; #44.)

**HCSD's Response to Fact #11:** Disputed and immaterial.

Pursuant to HCSD Rules and Regulations 4.24 Ingress and Ingress: "Representatives from the District shall have the right of ingress and egress to the customer's premises at reasonable hours for may purpose reasonably connected with the furnishing of water service."

Additionally, Pursuant to HCSD Rules and Regulations 4.29: "The District reserves the right to enter upon the applicant's premises for the purpose of reading, repairing, or replacing the water service meter." Puckett Decl. ¶8, Exh. H.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #11: Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the limitations imposed by the Fourth and Fourteenth Amendments to the United States Constitution forbidding access to Plaintiff's home and its curtilage absent a warrant or consent; and, by the language of Government Code §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with."
> (Cal. Gov. Code §61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #11, were not adopted as ordinances, nor were they adopted in conformance with the language of Government Code §25132, nor that of §61064(c) and/or §61060.

Plaintiff asserts the additional undisputed fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated,

as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of <u>the Defendants</u> as issues of law.  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #12**:  The Findings and Recommendations issued by the Hon. Dennis M. Cota on 09/17/2021 as ECF #29 were adopted in full by the Hon. Kimberly J. Mueller, Chief Judge, on 12/06/2021 as ECF #52.

> **HCSD's Response to Fact #12:**  Undisputed.
> <u>PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #1:</u>  Undisputed.

**Plaintiff's Undisputed Fact #13**:  To any extent that they conflict with the provisions of the Constitution and laws of the State of California, any of the HCSD's, and/or Puckett's policies, procedures, customs, practices, and/or Rules and Regulations, are preempted by state laws and therefore violate Article XI § 7 of the California Constitution.  "Under article XI, section 7 of the California Constitution, 'a county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general state laws.' If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void. A conflict exists if the local legislation (1) duplicates, (2) contradicts, or (3) enters an area fully occupied by general law, either expressly or by legislative implication." *O'Connell v. City of Stockton*, 41 Cal.4th 1061, 1067 (2007) (citations and punctuation omitted, numbering added).

> **HCSD's Response to Fact #13:**  Disputed, immaterial, and legal argument.

> <u>PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #13:</u>  Disputed.  The provisions of the Constitution and laws of the United States, and the State of California, and the legal principles that govern the hierarchy of supremacy of those laws, are applicable to this action by virtue of the repeated invocation of "the HCSD Rules and Regulations" by the Defense as justification for violating Plaintiff's constitutional and statutory rights.  No evidence in opposition to this proposed fact is offered by Defendants.

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the limitations imposed by the Fourth and Fourteenth Amendments to the United States

Constitution forbidding access to Plaintiff's home and its curtilage absent a warrant or consent; and, by the language of Government Code §61069, which states:

"(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
(1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
(2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
(3) Determine if a notice to abate a public nuisance has been complied with.
(b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
(1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
(2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
(3) Determine if a notice to abate a public nuisance has been complied with."
(Cal. Gov. Code §61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, were not adopted as ordinances, nor were they adopted in conformance with the language of Government Code §25132, nor that of §61064(c) and/or §61060.

**Plaintiff's Undisputed Fact #14:** Plaintiff's water service, was during the period of the month of July 2021, and is, a Constitutionally-protected property interest; that the HCSD is prohibited from terminating that water service "at will"; and, that Due Process considerations attach to the actions of the HCSD, Puckett, and Dingman relating to: the provision of, interference with, notices concerning, and/or termination of, Plaintiff's water service to her home. (ECF #29, pp.14-16:15[9].)

**HCSD's Response to Fact #14:** Disputed, immaterial, and legal argument.

---

[9] The Court's analysis did not, however, contain any examination of the Constitutional sufficiency of the content of the notices purportedly provided to Plaintiff by the HCSD and Puckett, nor did it consider the Constitutional ramifications of **the complete absence of opportunity for a hearing** for Plaintiff (prior to any termination of water service) to meet and contest the accusations and evidence against her of the alleged "violations" and other material as was contained in the notices.

Plaintiff's water service was not terminated "at will".  In short, Plaintiff received multiple notices of violations.  Plaintiff repeatedly parked vehicles on top of the HCSD's meters to obstruct the HSCD from reading the meters.  When Plaintiff's meter was finally read, it showed that Plaintiff was utilizing 6,200 gallons of water per day, which is well over the allotted 200 gallons per day.  See also Disputed Fact #4.  Puckett Decl. ¶2-8. Exh. A-H. Chiao Decl. Exh. I, Hrg. Transcript ppp. 19, lns 7-24

<u>PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #14:</u>  Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).

Plaintiff also objects that the "violations" issued by the HCSD do not have the force of law, and that because the HCSD has never provided Olson any <u>hearing</u> on the allegations in the notices (and refused her requests for hearings), they remain mere <u>unadjudicated accusations</u> at this point.  Thus, despite the Defense's presumptions to the contrary, Plaintiff enjoys the presumption of innocence[10] until such time as she is "convicted" of those alleged violations. (Pen. Code §1096; c.f., i.e., ECF #42, pp.4, 6, and 7; ECF #67, Exhibit C letters requesting hearings; ECF #72-1, pp.8, and 10.)

Plaintiff further objects that although these assertions are immaterial to Plaintiff's proposed fact, there is also <u>no</u> admissible evidence presented by the Defense of Plaintiff: "utilizing 6,200 gallons of water per day"; "repeatedly parked vehicles on top of the HCSD's meters" <u>and</u> with the specific intent "to obstruct the HSCD from reading the meters".  There is also no admissible evidence presented that "[w]hen Plaintiff's meter was finally read, it showed that Plaintiff was utilizing 6,200 gallons of water per day", and Counsel's citation to the record is simply false in this regard, as there was never any testimony from Puckett that he read Plaintiff's meter and determined any such usage.  It does appear, however, that there was some kind of non-testimonial colloquially at the hearing of September 14, 2021 about such numbers, but they did not arise from any alleged "meter reading", and were not the result of actual examination of a witness at the hearing - nor does Puckett have <u>any</u> such a claim in his Declaration (ECF #87-1). (See Hearing Transcript, ECF #36, pp.36-39.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by

---

[10] "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law" (*Coffin v. United States*, 156 U.S. 432, 453 [1895]).

the limitations imposed by the Fourth and Fourteenth Amendments to the United States

Constitution forbidding access to Plaintiff's home and its curtilage absent a warrant or consent;

and, by the language of Government Code §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with
> Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the
> location which it covers and shall state its purposes. A warrant may authorize district
> employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority
> to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to
> abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of
> the United States Constitution and the California Constitution, employees of a district
> may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has
> the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to
> abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with."
> (Cal. Gov. Code §61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and

Regulations, as well as all policies and procedures invoked by the Defendants in their Response

to Fact #14, were not adopted as ordinances, nor were they adopted in conformance with the

language of Government Code §25132, nor that of §61064(c) and/or §61060.

Plaintiff asserts the additional undisputed fact in Reply that the HCSD has not presented

any admissible evidence that any final adjudication (via a contested hearing or otherwise) of any

of the "violations" alleged against Plaintiff by Puckett and the HCSD in July of 2021 has ever

occurred, while all of those allegations are immaterial and irrelevant to Plaintiff's Motion.  The

HCSD and its Counsel, therefore, are misleading this Court as to "HCSD's Response to Fact

#14" by claiming any final determination of fact as to the allegations against Plaintiff as

contained in the "notices" generated by Puckett and the HCSD in July of 2021.

Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited

by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her

current meter at her own expense, many years prior to that adoption, so the District does not *ex*

*post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle on top

of a meter subject to Rules of the HCSD.  (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the

vehicle(s) allegedly parked "over", and/or "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee.  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #15**:  Plaintiff's water service, was during the period of the month of July 2021, and is, a Constitutionally-protected property interest, and the HCSD is required, as a matter of law, to abide by its own Rules and Regulations, policies, practices, customs, Resolutions, and Bylaws in administering and delivering Plaintiff's water service to her.

**HCSD's Response to Fact #15:**  Disputed, immaterial, and legal argument. Plaintiff is not entitled to continuously violate HCSD's Rules and Regulations.  In short, Plaintiff received multiple notices of violations.  Plaintiff repeatedly parked vehicles on top of the HCSD's meters to obstruct the HSCD from reading the meters.  When Plaintiff's meter was finally read, it showed that Plaintiff was utilizing 6,200 gallons of water per day, which is well over the allotted 200 gallons per day.  See also Disputed Fact #4.  Puckett Decl. ¶2-8.  Exh. A-H.  Chiao Decl. Exh. I, Hrg. Transcript ppp. 19, lns 7-24

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #15:  Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).

Plaintiff also objects that the "violations" issued by the HCSD do not have the force of law, and that because the HCSD has never provided Olson any hearing on the allegations in the notices (and refused her requests for hearings), they remain mere unadjudicated accusations at this point.  Thus, despite the Defense's presumptions to the contrary, Plaintiff enjoys the presumption of innocence[11] until such time as she is "convicted" of those alleged violations. (Pen. Code §1096; c.f., i.e., ECF #42, pp.4, 6, and 7; ECF #67, Exhibit C letters requesting hearings; ECF #72-1, pp.8, and 10.)  The HCSD and its Counsel, therefore, are misleading this Court as to "HCSD's Response to Fact #14" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021, and as set forth above in "HCSD's Response to Fact #15".

_____

[11] "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law" (*Coffin v. United States*, 156 U.S. 432, 453 [1895]).

Plaintiff further objects that although these assertions are immaterial to Plaintiff's proposed fact, there is also <u>no</u> admissible evidence presented by the Defense of Plaintiff: "utilizing 6,200 gallons of water per day"; "repeatedly parked vehicles on top of the HCSD's meters" <u>and</u> with the specific intent "to obstruct the HSCD from reading the meters".  There is also no admissible evidence presented that "[w]hen Plaintiff's meter was finally read, it showed that Plaintiff was utilizing 6,200 gallons of water per day", and Counsel's citation to the record is simply false in this regard, as <u>there was never any testimony from Puckett that **he** had read Plaintiff's meter and determined any such usage</u>.  It does appear, however, that there was some kind of non-testimonial colloquially at the hearing of September 14, 2021 about such numbers, but they did not arise from any alleged "meter reading", and were not the result of actual examination of a witness at the hearing.  Puckett's claim in his Declaration (ECF #87-1) relating to this number completely lacks any foundation demonstrating personal knowledge or other explanation, instead being pure speculation/conclusion, so is inadmissible.  (See Hearing Transcript, ECF #36, pp.36-39.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the language of <u>Government Code</u> §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with."
> (<u>Cal. Gov. Code</u> §61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #15, were not adopted as ordinances, were not adopted as ordinances, nor were they

adopted in conformance with the language of <u>Government Code</u> §25132, nor that of §61064(c) and/or §61060.

Plaintiff asserts the additional undisputed Reply fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of <u>the Defendants</u> as issues of law.  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

Plaintiff asserts the additional undisputed fact in Reply that the HCSD has not presented any admissible evidence that any final adjudication (via a contested hearing or otherwise) of any of the "violations" alleged against Plaintiff by Puckett and the HCSD in July of 2021 has ever occurred, while all of those allegations are immaterial and irrelevant to Plaintiff's Motion.  The HCSD and its Counsel, therefore, are <u>misleading this Court</u> as to "HCSD's Response to Fact #15" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021.

Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle on top of a meter subject to Rules of the HCSD.  (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the vehicle(s) allegedly parked "over", and/or "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee.

**Plaintiff's Undisputed Fact #16**:  There are no provisions in the Rules and Regulations of the HCSD that permit the towing of otherwise lawfully-parked vehicles located over a customer's water meter.

**HCSD's Response to Fact #16:**  Disputed and immaterial.  The vehicle towed was unlawfully parked on top of HCSD's meter.
Pursuant to HCSD's Rules and Regulations 4.11: "no one, except an employee or

Reply to HCSD's Statement of Disputed Facts for Plaintiff's Partial MSJ - 22

representative of the District, shall at any time in any manner operate the curb cosk or valves, main cocks, gates or valves of the District's system; or interface with meters or their connections, street mains or other parts of the water system."

Pursuant to HCSD's Rules and Regulations 4.16: "All facilities installed by the District on private purpose for the purpose of rendering water service shall remain the property of the District and may be maintained, repaired or replaced by the Water Department without consent or interference of the owner or occupant of the property.  The property owner shall use reasonable care in the protection of the facilities."

Pursuant to HCSD's Rules and Regulations 4.25: "Meters will be installed in the parkway area, and shall be owned by the District."

Pursuant to HCSD's Rules and Regulations: 4.29: "The District reserves the right to enter upon the applicant's premises for the purpose of reading, repairing or  replacing the water service meter." Puckett Decl. ¶8, Exh. H

<u>PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #16:</u>  Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).  Plaintiff also objects that violation of a Rule and Regulation, or a Bylaw, is not "unlawful" in the sense of being criminal conduct, because they do not have the force of criminal law, and that parking over a water meter is not "unlawful" in California.

Moreover, although Puckett's Declaration cites to Gov. Code section 61064, he missed the part (§61064(c)) about how, in order to apply that section to a customer's conduct, the District must pass an ordinance, and also must have appointed "uniformed district employees" the power to issue citations.  Further, those citations may only be issued "when the violation is committed within the facility and in the presence of the employee".  See also Gov. Code §25132.

Plaintiff objects that the HCSD does not have any "rights" to "reserve" which *de facto* strip Plaintiff and other persons of their property and due process rights.

Plaintiff asserts as a responsive undisputed fact in Reply that the HCSD has not passed any ordinances that would allow the agency to issue citations. Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to state that a vehicle was "unlawfully parked on top of HCSD's meter". (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the limitations imposed by the Fourth and Fourteenth Amendments to the United States

Constitution forbidding access to Plaintiff's home and its curtilage absent a warrant or consent; and, by the language of Government Code §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with."
> (Cal. Gov. Code §61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #16, were not adopted as ordinances, nor were they adopted in conformance with the language of Government Code §25132, nor that of §61064(c) and/or §61060.

Plaintiff asserts the additional undisputed Reply fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the issues raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of the Defendants as issues of law.  The HCSD and its Counsel, therefore, are misleading this Court as to "HCSD's Response to Fact #16" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021.

Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle on top of "HCSD's meter".  (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

The HCSD has failed to establish (or allege) that Plaintiff owned or controlled the vehicle(s) allegedly parked "over", and/or "on top" of the water meter, and does not set forth any facts or admissible evidence in support of its assertions that Plaintiff ever "refused" anything from anyone; operated any vehicle(s); "poured kitty litter" over any meters; put any boards over any meter; and/or, spoke directly with any HCSD official or employee. See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #17**:  There are no provisions in the Rules and Regulations of the HCSD that permit the towing of otherwise lawfully-parked vehicles without a warrant.

**HCSD's Response to Fact #17:**  Disputed and immaterial.
The vehicle towed was unlawfully parked on top of HCSD's meter.
Pursuant to HCSD's Rules and Regulations 4.11:  "no one, except an employee or representative of the District, shall at any time in any manner operate the curb cosk or valves, main cocks, gates or valves of the District's system; or interface with meters or their connections, street mains or other parts of the water system."
Pursuant to HCSD's Rules and Regulations 4.16:  "All facilities installed by the District on private purpose for the purpose of rendering water service shall remain the property of the District and may be maintained, repaired or replaced by the Water Department without consent or interference of the owner or occupant of the property.  The property owner shall use reasonable care in the protection of the facilities."
Pursuant to HCSD's Rules and Regulations 4.25: "Meters will be installed in the parkway area, and shall be owned by the District."
Pursuant to HCSD's Rules and Regulations: 4.29:  "The District reserves the right to enter upon the applicant's premises for the purpose of reading, repairing or  replacing the water service meter." Puckett Decl. ¶8, Exh. H

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #17:  Disputed.

Moreover, the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).  Plaintiff also objects that violation of a Rule and Regulation, or a Bylaw, is not "unlawful" in the sense of being criminal conduct, because they do not have the force of criminal law (none of them were adopted as ordinances, instead being mere "rules" and/or "bylaws").  Moreover, although Puckett's Declaration cites to Gov. Code section 61064, he missed the part (§61064(c)) about how, in order to apply that section to a customer's conduct, the District must pass an ordinance, and also must have appointed "uniformed district employees" the power to issue citations.  Further, those citations may only be issued "when the violation is committed within the facility and in the presence of the employee".  See also Gov. Code §25132.

Plaintiff asserts as a responsive undisputed fact that the HCSD has not passed any ordinances that would allow the agency to issue citations. Plaintiff also asserts as a responsive undisputed fact that the Rules and Regulations cited by the Defense were adopted in 2013, but that Plaintiff purchased her home, and installed her current meter at her own expense, many years prior to that adoption, so the District does not *ex post facto* own her meter, and it is thus also impossible to accuse her of parking a vehicle "on top of HCSD's meter".  (Olson Declarations, ECF #4-1, p.1; ECF #72-1, p.6.)

Plaintiff objects that the HCSD does not have any "rights" to "reserve" which *de facto* strip Plaintiff and other persons of their property and due process rights.

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants, are constrained by the limitations imposed by the Fourth and Fourteenth Amendments to the United States Constitution forbidding access to Plaintiff's home and its curtilage absent a warrant or consent; and, by the language of Government Code §61069, which states:

> "(a) A district may request an inspection warrant pursuant to Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. The warrant shall state the location which it covers and shall state its purposes. A warrant may authorize district employees to enter property only to do one or more of the following:
> (1) Inspect to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with.
> (b) Where there is no reasonable expectation of privacy and subject to the limitations of the United States Constitution and the California Constitution, employees of a district may enter any property within the district for any of the following purposes:
> (1) Inspect the property to determine the presence of public nuisances that the district has the authority to abate.
> (2) Abate public nuisances, either directly or by giving notice to the property owner to abate the public nuisance.
> (3) Determine if a notice to abate a public nuisance has been complied with." (§61069.)

Plaintiff asserts the additional undisputed fact in Reply that the HCSD Rules and Regulations, as well as all policies and procedures invoked by the Defendants in their Response to Fact #17, were not adopted as ordinances, nor were they adopted in conformance with the language of Government Code §25132, nor that of §61064(c) and/or §61060.

Plaintiff asserts the additional undisputed Reply fact that the substance of the allegations against Plaintiff in the "notices" concerning purported "violations" (which have never been adjudicated, as the HCSD refuses to provide Plaintiff any hearing) have nothing to do with the

issues raised in Plaintiff's Motion, which is focused on the unlawful and unconstitutional acts of the Defendants as issues of law.  The HCSD and its Counsel, therefore, are misleading this Court as to "HCSD's Response to Fact #17" by claiming any final determination of fact as to the allegations against Plaintiff as contained in the "notices" generated by Puckett and the HCSD in July of 2021.  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

**Plaintiff's Undisputed Fact #18**:  There are no provisions in the Rules and Regulations of the HCSD providing that any notices given to customers of an alleged "violation" contain information on how to request a hearing to contest any "violation".

**HCSD's Response to Fact #18:**  Disputed and immaterial.
HCSD Rules and Regulations Section 13 "Complaints and Disputed Bills" provides a dispute resolution process.   Puckett Decl. ¶8, Exh H.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #18:  Disputed.

Section 13 does not apply to the "Notices of Violation(s)" that the HCSD handed out to Plaintiff; does not provide for an opportunity to confront evidence against a customer before a neutral fact-finder; and, does not require that any proper, complete, notice and hearing occur as required by *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978)[12], *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Schultz v. Town of Lakeport* (1936) 5 Cal. 2d 377, 381-382 and California Constitution article I, §7(a).  Further, Plaintiff repeatedly, since just a few days after her water service was seized, and regularly since for many months, has requested a hearing to contest all of the "violations" charged against her by Puckett.  Despite those requests, Puckett and the HCSD refused (and continue to refuse) to provide her one - even of the sort contemplated by HCSD Rules and Regulations Section 13.  (ECF #42, pp.4, 6, and 7; ECF #67, Exhibit C letters requesting hearings; ECF #72-1, pp.8, and 10.)  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

---

[12] The Court held that the "notices" provided by the utility company **failed the due process test** because they did not provide any information about a hearing, nor how to obtain one.  The Court went on to specify that the "hearing" mandated by due process required, at a minimum, information and an "opportunity for a meeting with a responsible employee empowered to resolve the dispute." *Id*. at 14, 18.

Reply to HCSD's Statement of Disputed Facts for Plaintiff's Partial MSJ - 27

**Plaintiff's Undisputed Fact #19**: There are no provisions in the Rules and Regulations of the HCSD providing that any notices given to customers of an alleged "violation" contain information as to the name and phone number of an HCSD employee that the customer may call to discuss the notice, and/or any "violation", or to whom they can speak with directly to obtain information on contesting any "violation".

**HCSD's Response to Fact #19:** Disputed and immaterial.  Contact information of HCSD's board of directors can be found at: Schedule of board meetings can be found at: https://hornbrookcsd.specialdistrict.org/regular-board.
Plaintiff provides this website in her UMF #2.

PLAINTIFF OLSON'S REPLY TO HCSD'S RESPONSE #19:  Undisputed.

However, while the response asserts multiple immaterial, alleged facts, but it raises no dispute of Plaintiff's proposed fact(s).  Plaintiff asserts the additional undisputed fact in Reply that she (and all other customers of the HCSD) is entitled to be provided such information, as well as a hearing, concerning allegations and processes that may lead to termination of water service as provided by *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Schultz v. Town of Lakeport* (1936) 5 Cal. 2d 377, 381-382 and California Constitution article I, §7(a).  See also Plaintiff's Reply to HCSD's Response to #4, above, which is incorporated at this point as if fully set forth.

Respectfully submitted this 6th day of July, 2022.

Kimberly R. Olson, Plaintiff Pro Se

## **CERTIFICATION AND PROOF OF SERVICE**

I, Kimberly R. Olson affirm under penalty of perjury under the laws of the United States that I served the appearing Defendants a true copy of the foregoing document via US Mail to their counsel of record, at the address(es) below, on July 7th, 2022 as follows:

Jeffrey Chiao
601 University Ave., Ste. 225
Sacramento, CA 95825

Dated this 7th day of July, 2022.

Kimberly R. Olson, Plaintiff Pro Se