1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KIMBERLY OLSON,                            No.  2:21-CV-1482-KJM-DMC

12                    Plaintiff,

13        v.                                     FINDINGS AND RECOMMENDATIONS

14   ROBERT PUCKETT, SR., et al.,

15                    Defendants.

16

17            Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

18   Court are the following motions and associated filings:

19            Defendants' Motion

20            ECF No. 47    Defendants' motion to dismiss.
             ECF No. 54    Request for judicial notice in support of motion to dismiss.
21            ECF No. 56    Plaintiff's opposition.
             ECF No. 58    Plaintiff's memorandum in support of opposition.
22            ECF No. 62    Defendants' reply.
             ECF No. 63    Plaintiff's opposition to Defendants' request for judicial notice.
23
              Plaintiff's Motion
24
              ECF No. 67    Plaintiff's motion for civil contempt and injunctive relief.
25            ECF No. 69    Defendants' opposition.
             ECF No. 73    Plaintiff's reply.
26            ECF No. 74    Plaintiff's objections to Defendants' opposition.

27   Both motions have been submitted on the record without oral argument.

28   / / /

                                              1

1    Plaintiff's third motion for injunctive relief, ECF No. 72, which is not directly

2    related to either the prior motion or pending motion, will be addressed separately.

3

4                                    **I. BACKGROUND**

5         A.    **Procedural History**

6              Plaintiff initiated this action with a pro se complaint filed on August 18, 2021.  See

7    ECF No. 1.  With her complaint, Plaintiff filed a motion for a temporary restraining order and

8    declaration in support thereof.  See ECF No. 3 and 4.  On August 20, 2021, the District Judge

9    issued a minute order referring Plaintiff's motion for a temporary restraining order to the

10   undersigned.  See ECF No. 5.

11             On August 23, 2021, the undersigned issued orders granting Plaintiff's application

12   for leave to proceed in forma pauperis and directing Plaintiff to effect service of her motion for a

13   temporary restraining order on the named defendants.  See ECF Nos. 6 and 7.  The Court also

14   issued an order directing that the original complaint be served on the named defendants by the

15   United States Marshal.  See ECF No. 8.

16             Following compliance with the Court's order directing service of Plaintiff's

17   motion for a temporary restraining order, the Court issued an order directing Defendants to show

18   cause why Plaintiff's motion should not be granted.  See ECF No. 12.  A briefing schedule was

19   established, and the matter was set for hearing before the undersigned in Redding, California on

20   September 14, 2021.  See id.  On September 8, 2021, the Court denied Defendants' request for

21   additional time and confirmed that the hearing remained on calendar for September 14 as

22   originally scheduled.  See ECF No. 18.

23             Following the September 14 hearing, Plaintiff's motion for a temporary restraining

24   order was taken under submission.  See ECF No. 24 (hearing minutes).

25   / / /

26   / / /

27   / / /

28   / / /

On September 17, 2021, the undersigned issued findings and recommendations that Plaintiff's motion for a temporary restraining order be construed as a motion for preliminary injunctive relief and, so construed, be granted.  See ECF No. 29.  Specifically, the undersigned recommended as follows:

     1.    Plaintiff's motion for injunctive relief be granted to the extent Defendant Hornbrook Community Services District (HCSD) must provide Olson with water in compliance with internal rules and all other applicable state and local laws.

     2.    HCSD be ordered to return Olson's water meter and attach a flow restrictor to it, limiting Olson to 200 gallons of water per day, or whatever generally applicable use restrictions HCSD enacts in order to conserve water.

     3.    HCSD provide all required time periods between any notice of violation and any adverse action not covered by the order granting injunctive relief.

     4.    HCSD be permitted to take regular readings of Olson's water meter and undertake any routine or emergency maintenance necessary.

     5.    Olson be ordered not to tamper with or obstruct her water meter or the attached flow regulator, except to the extent an emergency situation requires maintenance of the meter. Olson should further be ordered to comply with all lawful directives from law enforcement, including orders to remove illegal obstructions to her water meter. Olson should further be ordered not to interfere with HCSD officials undertaking lawful, routine duties concerning her water meter.

     6.    Olson be ordered to comply with all HCSD restrictions, including usage limits and restrictions on outdoor watering via the HCSD water system.

     7.    That the order last during the pendency of this case.

Id. 19-20.

Despite the claimed exigence of the water issue and urgent need for injunctive relief, and despite the Court's findings and recommendations in her favor, on September 29, 2021, Plaintiff filed objections to the Court's findings and recommendations.  See ECF No. 40. This triggered a further 14-day period within which Defendants could respond to Plaintiff's objections, which Defendants did on October 14, 2021.  See ECF No. 45.  On October 21, 2021, Plaintiff filed a reply to Defendants' response to Plaintiff's objections.  See ECF No. 49.  On December 6, 2021, the District Judge adopted the September 17, 2021, findings and

1  recommendations in full.  See ECF No. 52.

2          During the time Plaintiff's motion for injunctive relief was being litigated and

3  decided, Plaintiff filed a first amended complaint on October 6, 2021.  See ECF No. 44.

4  Defendants filed their motion to dismiss Plaintiff's first amended complaint on October 20, 2021.

5  See ECF No. 47.  Plaintiff filed her motion for civil contempt, sanctions, and renewed request for

6  injunctive relief on February 4, 2022.  See ECF No. 67.  Both motions are fully briefed and have

7  been submitted for decision without oral argument.

8          **B.      Plaintiff's Allegations**

9          1.      Parties

10          The action currently proceeds on Plaintiff's first amended complaint.  See ECF

11  No. 44.  As with the original complaint, Plaintiff names the following defendants: (1) Clint

12  Dingman, (2) Robert Puckett, Sr., (3) Michele Hanson, (4) Melissa Tulledo, and (5) the

13  Hornbrook Community Services District (HCSD).  See id. at 1.  Defendants Puckett, Dingman,

14  Hanson, and Tulledo are "the Directors and employees of Defendant Hornbrook Community

15  Services District."  Id. at 2.  Specifically, Defendants Puckett, Hanson, and Tulledo are

16  respectively President, Secretary, and Director of the HCSD board, and are sometimes referred to

17  as the "Board Defendants."  Id. at 3.  Defendant Dingman is "the HCSD's Systems Operator, shift

18  operator, . . . and/or water plant operator."  Id. at 3, n.8.  The HCSD is "a public entity providing

19  domestic water to the community of Hornbrook."  Id. at 2.  Plaintiff alleges that she is a "water

20  customer of the HCSD, which supplies the only source of potable water" to her home.  Id.  She

21  also states that she is disabled, suffering from "mobility and other disabilities as a result of spinal

22  damage."  Id.

23          2.      Factual Allegations

24          Plaintiff alleges that between July 19-23, 2021, there was no "usable water" in the

25  distribution system on her block, and "no water flowing from the taps" in her home.  Id. at 5.  She

26  states that during this time, Defendants trespassed onto her land, and cut her home off from the

27  HCSD water system.  Id.  According to Plaintiff, they also plugged and locked off a "residence

28  side" supply pipe, which was Plaintiff's personal property, in order to prevent her from accessing

4

any alternative water supply.  Id. at 5-6.  She claims that in the process of shutting off her water supply, officials took her "water meter, a utility van belonging to a plumbing contractor[1] . . . and a 2001 Honda CR-V belonging to [her] Personal Caregiver."  Id. at 5 n.11.  "Defendants also destroyed some of Plaintiff's landscaping and bushes."  Id.  At the time of the alleged seizure of property, HCSD and Defendant Puckett told Plaintiff that no one could use certain portions of her driveway, and that any vehicles parked in those sections would be seized.  Id. at 6.

Plaintiff wrote to the HSCD on August 4, 2021, asking for explanation, the return of any seized property, and the restoration of her water service.  See id.  She did not receive a response.  See id.  Her billing statement from HCSD after the "discontinuation of water service [did] not show any fines," or other reason for the shut-off.  Id. at 7.

As a result of the water shut-off, Plaintiff claims that she "has had to borrow and expend substantial sums in constructing a system of temporary pumps, . . . and storage for potable water."  Id.  She has also spent money to "have potable water delivered by truck."  Id.  Plaintiff also states that this system only currently works because temperatures remain above freezing.  Id. at 7, n.16.

On September 17, 2021, this Court issued findings and recommendations granting Plaintiff's motion for preliminary injunction and ordering that her water service be restored.  See id. at 29.  As outlined above, the findings and recommendations provided that HCSD return Plaintiff's water meter and limit her water usage in accordance with whatever "generally applicable" use restrictions would apply.  See id. at 19.  It was further recommended that Plaintiff be ordered not to tamper with or obstruct her water meter, and "not to interfere with HCSD officials undertaking lawful, routine duties concerning her water meter."  Id.

Plaintiff addresses the Court's recommendations in her first amended complaint, which was filed before the findings and recommendations were adopted in full by the District Judge.  According to Plaintiff, the HCSD did not restore service for several days.  See ECF No. 44, pg. 7.  When Defendants did return water service to Plaintiff, they installed a flow restrictor,

---

[1]    This van is likely that of Roger Gifford, Plaintiff in case no. 2:21-CV-1726-KJM-DMC.  His complaint rests on many of the same factual allegations as this one.

1  which limited her to the use of "~1/6 of a gallon each minute, and about 4 gallons per day." Id.

2  "Plaintiff notified the HCSD, and its President, Robert Puckett," of the alleged issues with the

3  water supply. Id. at 8.  The only change was that the flow of water was increased to "1/2 gallon

4  each minute." Id.

5        She alleges that all of this activity was in retaliation for numerous lawsuits she has

6  commenced "against the HCSD and its officers for violations of the Brown Act" and for allowing

7  a water leak to continue, leaking 25,000 gallons of water per day. Id. at 8, n.17.

8        Plaintiff also alleges ongoing actions by Defendants.  Plaintiff claims that

9  following this, "HCSD, Puckett, and Dingman . . . fabricate[d], and submit[ted], false evidence"

10  to this Court. Id. at 9.  She also states the "HCSD Board Defendants" used their official positions

11  to "gain access to Plaintiff's personal information as contained in her water account" and to

12  provide that information to third parties to engender ill-will towards Plaintiff, though she does not

13  provide additional factual specificity. Id.  Furthermore, Plaintiff claims that HCSD and Board

14  Defendants held improperly noticed Board meetings to coordinate creation and application of

15  rules against Plaintiff, and to falsify records. Id. at 10.

16        Plaintiff also states that the HCSD, Board Defendants, and Dingman deliberately

17  mis-operated water facilities and did not repair them. Id. at 11.  This was "to create the false

18  perception of an 'emergency' so as to wrongfully acquire public funds" while also retaliating

19  against Plaintiff. Id.

20        3.    Legal Theories

21        Plaintiff alleges various federal and state law claims as follows:

22        Federal Claims

23            Count I      Fourth and Fifth Amendment violations by unreasonable

24  seizure, and deprivation of property without due process by shutting off Plaintiff's water, and restricting driveway use

25  by the HCSD, Board Defendants, Dingman, and Doe defendants. Id. at 18

26            Count II     Violation of 42 U.S.C. 1983 by conspiring to violate

27  Plaintiff's rights, and retaliate for protected speech by the HCSD, Board Defendants, Dingman, and Doe Defendants. Id. at 18-19.  This also includes generation of false

28  evidence that was submitted to this Court. Id. at 19.

| | | |
|---|---|---|
| Count III | | Violation of Due Process and Equal Protection by not giving Plaintiff a way to re-establish the right to use her driveway, or to get water service turned back on by the HCSD, Dingman, and Board Defendants.  Id. |
| Count IV | | Deprivation of Equal Protection and Due Process by terminating Plaintiff's water service by the HCSD, Board Defendants, Dingman, Doe defendants, and Bruce's Towing.  Id. at 19-20. |
| Count V | | Retaliation against Plaintiff for administrative and legal actions against the HCSD by the HCSD, Board Defendants, and Dingman.  Id. at 20. |
| Count VI | | Violations of the ADA and Title II of the Civil Rights Act by failing to accommodate her disability in terms of notice of water shut-off, or access to HCSD facilities.  Id. at 20-21.  This count is alleged against the HCSD and Board Defendants.  Id. |
| Count VII | | Violations of 42 U.S.C. 1985 by making a plan to prevent Plaintiff from continuing to pursue administrative and legal action by the HCSD, Board Defendants, and other public officer defendants.  Id. at 21. |
| Count VIII | | Violations of 42 U.S.C. 1986 for the same acts as described in Count VII, but alleged against the HCSD, Board Defendants, and Dingman.  Id. at 21-22. |

State Law Claims

| | | |
|---|---|---|
| Count I | | Violations of HCSD bylaws and regulations in denying Plaintiff access to HCSD facilities and water supply by the HCSD, Board Defendants, and Dingman.  Id. at 22. |
| Count II | | Negligence in failing to consider potential harm to the Plaintiff, or in failing to conform with California law against the HCSD, Board Defendants, Dingman, and Bruce's Towing.  Id. at 22-23. |
| Count III | | Trespassing and nuisance for coming onto Plaintiff's property by Puckett, the HCSD, Dingman, and Bruce's Towing.  Id. at 23. |
| Count IV | | Waste or gifts of public funds by giving Dingman extra hours and pay, alleged against Dingman, Puckett, Hanson.  Id. 23-24. |
| Count V | | Violations of Plaintiff's rights under California Constitution Article I Sections 1, 7, 26, 3(a)-(b)(1), 13, 17, and 19(a).  Id. at 24. |

/ / /

| | | |
|---|---|---|
| Count VI | | Willful or negligent infliction of emotional distress by damaging Plaintiff's property by the HCSD, Board Defendants, Dingman, and Bruce's Towing.  Id. |
| Count VII | | Violation of California Government Code sections 61045, 61050, and 61051 by virtue of the HCSD failing to appoint a general manager against Hanson, Puckett, the HCSD and Board Defendants.  Id. at 24-25. |
| Count VIII | | Conversion of Plaintiff property by the HCSD, Board Defendants, and Dingman.  Id. at 25. |
| Count IX | | Violation of Plaintiff's right to privacy under the California Constitution Article I, Section 1.  Id.  This is alleged against the Board Defendants for taking Plaintiff's personal information contained in her water account and providing it to third parties to "engender ridicule."  Id. |
| Count X | | Violation of the California Public Records Act and California Civil Code section 1798.34 and 1798.77 by not allowing Plaintiff to access records by the HCSD, Dingman, and Board Defendants.  Id. |

## II.  APPLICABLE LEGAL STANDARDS

### A.   Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

8

1  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

2  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

3  allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The

4  complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at

5  570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

6  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

7  Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but

8  it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

9  Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

10  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

11  to relief." Id. (quoting Twombly, 550 U.S. at 557).

12         In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

13  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

14  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

15  documents whose contents are alleged in or attached to the complaint and whose authenticity no

16  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

17  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

18  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

19  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

20  1994).

21         Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

22  amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

23  curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

24         **B.    Preliminary Injunctive Relief**

25         The primary purpose of a preliminary injunction is preservation of the status quo.

26  See, e.g., Ramos v. Wolf, 975 F.3d 872, 887 (9th Cir. 2020). More specifically, the purpose of a

27  preliminary injunction is preservation of the Court's power to render a meaningful decision after a

28  trial on the merits. See, e.g., Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Barth v.

1   <u>Montejo</u>, No. 2:19-cv-1874-DB-P, 2021 WL 1291962, at *1 (E.D. Cal. Apr. 7, 2021). It is meant

2   to maintain the relative positions of the parties and prevent irreparable loss of rights before a trial

3   and final judgment. <u>See, e.g.</u>, <u>Camenisch</u>, 451 U.S. at 395; <u>Ramos</u>, 975 F.3d at 887; <u>Doe #1 v.</u>

4   <u>Trump</u>, 957 F.3d 1050, 1068 (9th Cir. 2020). A preliminary injunction may assume two forms.

5   <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 878 (9th Cir. 2009).

6   Prohibitory injunctions prevent a party from acting, thus maintaining the status quo. <u>Id.</u> A

7   mandatory injunction directs some responsible party to act. <u>Id.</u> at 879.

8           The legal principles applicable to requests for injunctive relief, such as a

9   temporary restraining order or preliminary injunction, are well established. To prevail, the

10  moving party must show that irreparable injury is *likely* in the absence of an injunction. <u>See</u>

11  <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing <u>Winter v. Nat. Res. Def.</u>

12  <u>Council, Inc.</u>, 555 U.S. 7, 20–22 (2008)); <u>see also</u> <u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d

13  1127, 1131 (9th Cir. 2011). To the extent that prior Ninth Circuit cases suggest a lesser standard

14  by focusing solely on the *possibility* of irreparable harm, such cases are "no longer controlling, or

15  even viable." <u>Am. Trucking Ass'ns, Inc. v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir.

16  2009); <u>see</u> <u>Cottrell</u>, 632 F.3d at 1132; <u>Stormans</u>, 586 F.3d at 1127. Instead, a party must

17  demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in

18  the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is

19  in the public interest. <u>E.g.</u>, <u>Winter</u>, 555 U.S. at 20; <u>Cottrell</u>, 632 F.3d at 1131; <u>Stormans</u>, 586 F.3d

20  at 1127.

21           The Ninth Circuit evaluates the above factors under a sliding scale. <u>Cottrell</u>, 632

22  F.3d at 1131–35. A stronger showing on one factor may offset a weaker showing on another. <u>Id.</u>

23  at 1132. But a plaintiff must make some showing on all four factors. <u>Id.</u> at 1135. Under the scale,

24  if the balance of hardships tips *sharply* towards the plaintiff, the plaintiff need only show "serious

25  questions going to the merits" provided that the plaintiff also satisfies the other two factors. <u>Id.</u> at

26  1131–35. Thus, when there are serious questions going to the merits and a balance of hardships

27  tips sharply towards the plaintiff, a preliminary injunction may issue if the plaintiff also shows

28  that there is a likelihood of irreparable injury, and that the injunction is in the public interest. <u>Id.</u>

1   　　　　A preliminary injunction is an extraordinary remedy that is not awarded as of

2   right. <u>Winter</u>, 555 U.S. at 24; <u>Cottrell</u>, 632 F.3d at 1131. The burden to achieve injunctive relief is

3   particularly high when a party seeks a mandatory injunction. <u>See</u> <u>Garcia v. Google, Inc.</u>, 786 F.3d

4   733, 740 (9th Cir. 2015). Mandatory injunctions go beyond an injunction preventing a party from

5   acting, and thus beyond mere maintenance of the status quo. <u>See id.</u> They require a party to act.

6   <u>Id.</u> District courts must deny requests for mandatory injunctions unless the law and facts clearly

7   favor a moving party. <u>Id.</u> The Court will not grant such requests in doubtful cases. <u>Id.</u>

8

9   　　　　　　　　　　　　　　**III. DISCUSSION**

10   　　　　Before the Court are two motions – Defendants' motion to dismiss, ECF No. 47,

11   and Plaintiff's motions for civil contempt and injunctive relief, ECF No. 67.

12   　　　**A.**　　**<u>Motion to Dismiss</u>**

13   　　　　In their motion to dismiss, Defendants argue that the first amended complaint

14   should be dismissed because: (1) it is foreclosed under the doctrine of res judicata; (2) the first

15   amended complaint does not comply with Federal Rule of Civil Procedure 8; and (3) the first

16   amended complaint fails to state any federal claims upon which relief can be granted.  <u>See</u> ECF

17   No. 47, pg. 7.

18   　　　　　　**1.**　　<u>Res Judicata</u>

19   　　　　In support of their argument that the current action is foreclosed by the doctrine of

20   res judicata, Defendants offer a summary of prior similar actions filed by Plaintiff Kimberly

21   Olson as well as Peter Harrell and Roger Gifford.  <u>See id.</u> at 4-6.  According to Defendants:

22   　　　　　　. . .Olson, Harrell, and Gifford have been waging a private war
　　　　against HSCD by filing numerous lawsuits naming the District, its board
23   　　　　members, employees, contractors, consultants and even its former legal
　　　　counsel Robert Winston. (See C.A.E.D. Dkts. 2-14-cv-01595-KJM-GGH,
24   　　　　2:15-cv-1274-MCE-AC-PS, 2:16-cv-0955 KJM-GGH, 2:19-cv-00031-
　　　　KJM-AC).
25   　　　　　　In *Harrell v. Hornbrook Community Services District,* 2:14-cv-
　　　　01595 KJM-GGH (*Harrell I*), Plaintiff alleged that HCSD was in violation
26   　　　　of constitutional law, was not operating "within the bounds of the laws",
　　　　and HCSD's water plant had numerous safety hazards in violation of Cal
27   　　　　OHSA regulations and the Water Code. (*Harrell I*, ECF No. 1, p. 5)
　　　　Additionally, Plaintiff alleged that HCSD interfered with "the Duties of
28   　　　　Kimberly Olson ("Olson") as Secretary of the HCSD, as mandated by the

　　　　　　　　　　　　　　　　11

HCSD Bylaws" and amongst wrongful actions, acted illegally to "revoke HCSD rates and charges and policies". (*Harrell I*, ECF No. 1, p. lns. 1-13) (See Decl. of J. Chiao, ¶11).

In his Findings and Recommendations on August 14, 2017, Hon. Gregory G. Hollows, U.S. Magistrate Judge of the Eastern District of California, stated that while "the action began in part as a suit alleging that he was terminated from his employment in retaliation for his exercise of his First Amendment rights, [it] has since morphed into a muddied and muddled conglomeration of claims, both federally and state based, challenging the manner in which [HCSD] is run in general, its hiring practices, its failure to adhere to the State's opening meeting law, and its claim to operate as a water company in violation of nearly every law and regulation applicable to such an enterprise." (*Harrell I*, ECF No. 157, p. 2) The Court further noted that "[t]he instant case is an example of a purposeful overloading of the court with pleadings which take up more than warranted judicial attention, but which simultaneously demonstrate a desire to wage a war of attrition on the opposing parties. There seems to be no desire on plaintiff's part to ever reach the merits of a viable claim; rather, there seems to be much desire to use the litigation process per se as an end in itself." (*Harrell I,* No. 157, pp. 1-2) Based on the "contumacious behavior of plaintiff", the Court recommended that Plaintiff's Second Amended complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to obey a court order, or in the alternative pursuant to Rule 12(b)(6) for failure to state a claim." (*Harrell I*, ECF No. 157, p. 15) (See Decl. of J. Chiao, ¶12).

Peter T. Harrell and Roger J. Gifford appealed the Eastern District's adverse rulings against them, including the decision in *Harrell I.* The Ninth Circuit concluded that Peter Harrell's appeal No. 17-17191 was frivolous and therefore revoked Harrell's in forma pauperis status for appeal No. 17-17191 and dismissed the appeal as frivolous. The Ninth Circuit also dismissed cross-appeals No. 17-17209 and 17-17313 as frivolous and denied Roger Gifford's motion to proceed in forma pauperis. (*See Harrell v. Hornbrook Community Services District*, 2018 WL 6039097, Decl. of J. Chiao, ¶15)

In *Harrell v. Dingman*, 2:19-cv-00031-KJM-AC (*Harrell II*), Plaintiff again sought relief against HCSD for constitutional violations, including deprivation of due process, equal protection, and unlawful seizure, violations of the Clean Water Act, deprivations of right to due process and equal protection regarding gifts of public funds, and pendent state claims, including violations of HCSD bylaws, self-dealing, gifts of public funds, improperly unbilled fees and charges, and waste of public funds. (*Harrell II*, ECF No. 1 and 17) (See Decl. of J. Chiao, ¶13) In her Findings and Recommendations on May 29, 2019, Hon. Allison Claire noted that the Court had rejected prior iterations of Plaintiff's complaint on the basis of res judicata and failure to comply with Rule 8, and that the underlying dispute appears to involve the quality and quantity of water provided by the District to plaintiff's property in Siskiyou county. (*Harrell II*, ECF No. 19, pp.1 and 3) The Court found that the majority of Plaintiff's Second Amended Complaint was identical to the First Amended Complaint and initial complaint, and stated that "[t]he sheer quantity of factual allegations and legal assertions in plaintiff's complaint makes it impossible for the court, and therefore for defendants, to determine whether any cognizable claim is presented, what legal wrong may have been done to plaintiff, by whom and when, or how any alleged harm is connected to the relief plaintiff seeks. (Harrell II, ECF No. 19, p.4)

1    Accordingly, Magistrate Judge Claire recommended that Plaintiff's
     Second Amended Complaint be dismissed with prejudice. (See Dec. J.
2    Chiao, ¶14).
         This case filed by Plaintiff Olson on August 18, 2021, is simply a
3    continuation of prior litigation efforts against HCSD. Like *Harrell I* and
     *Harrell II*, Plaintiff' First Amended Complaint alleges that HCSD is
4    willfully, negligently, recklessly, and dangerously "failing to undertake
     diagnostics needed to competently operate the water facilities, and to
5    make needed and necessary repairs to the HCSD water production,
     storage, and distribution systems- in part to create the false perception of
6    an "emergency" so as to wrongfully acquire public funds in the form of
     grants from California and USDA…" (ECF No. 44, p. 11, ¶24) Plaintiff
7    filed a Motion for Temporary Restraining Order on August 18, 2021 (ECF
     No. 3) A hearing was held with Magistrate Judge Dennis Cota on
8    Plaintiff's Motion on September 14, 2021, and Judge Cota issued Findings
     and Recommendations on September 17, 2021. (ECF No. 29) Predictably,
9    Plaintiff filed Objections to Judge Cota's Findings and Recommendations.
     (ECF No. 40) Defendants filed a Response to Plaintiff's Objections
10   accordingly. (ECF No. 45).

11   ECF No. 47, pgs. 4-6.

12   Based on this background, Defendants conclude:

13           As demonstrated above, Plaintiff brings several claims that have
     already been litigated in the closed cases *Harrell v. Hornbrook*
14   *Community Services District,* 2:14-cv-01595 KJM-GGH (E.D. Cal.)
     (*Harrell I*) and *Harrell v. Dingman*, 2:19-cv-00031-KJM-AC (E.D.Cal.)
15   (*Harrell II*). Both *Harrell I* and *Harrell II*, were dismissed in its entirety,
     with prejudice, and the dismissals were affirmed by the Ninth Circuit.
16   (*Harrel I* at ECF NO. 157, 159, 207) (*Harrel II* at ECF No. 19, 29)
     Large portions of the current action overlap with the issues presented and
17   adjudicated in *Harrell I and II*, and are therefore barred by res judicata.

18   ECF No. 47, pg. 7.

19           Two related doctrines of preclusion are grouped under the term "res judicata."  See

20   Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161, 2171 (2008).  One of these doctrines – claim

21   preclusion – forecloses "successive litigation of the very same claim, whether or not relitigation

22   of the claim raises the same issues as the earlier suit."  Id.  Stated another way, "[c]laim

23   preclusion. . . bars any subsequent suit on claims that were raised or could have been raised in a

24   prior action."  Cell Therapeutics, Inc. v. Lash Group, Inc., 586 F.3d 1204, 1212 (9th Cir. 2009).

25   "Newly articulated claims based on the same nucleus of facts are also subject to a res judicata

26   finding if the claims could have been brought in the earlier action."  Stewart v. U.S. Bancorp, 297

27   F.3d 953, 956 (9th Cir. 2002).  Thus, claim preclusion prevents a plaintiff from later presenting

28   any legal theories arising from the "same transactional nucleus of facts."  Hells Canyon

                                            13

1    Preservation Council v. U.S. Forest Service, 403 F.3d 683, 686 n.2 (9th Cir. 2005).

2           The party seeking to apply claim preclusion bears the burden of establishing the

3    following: (1) an identity of claims; (2) the existence of a final judgment on the merits; and (3)

4    identity or privity of the parties.  See Cell Therapeutics, 586 F.3d at 1212; see also Headwaters,

5    Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052 (9th Cir. 2005).  Determining whether there is an

6    identity of claims involves consideration of four factors: (1) whether the two suits arise out of the

7    same transactional nucleus of facts; (2) whether rights or interests established in the prior

8    judgment would be destroyed or impaired by prosecution of the second action; (3) whether the

9    two suits involve infringement of the same right; and (4) whether substantially the same evidence

10   is presented in the two actions.  See ProShipLine, Inc. v. Aspen Infrastructure Ltd., 609 F.3d 960,

11   968 (9th Cir. 2010).  Reliance on the first factor is especially appropriate because the factor is

12   "outcome determinative."  Id. (quoting Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987

13   (9th Cir. 2005)).  As to privity of the parties, "privity . . . [arises] from a limited number of legal

14   relationships in which two parties have identical or transferred rights with respect to a particular

15   legal interest."  Headwaters, Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1053 (9th Cir. 2005).

16           "Issue preclusion . . . bars successive litigation of an issue of fact or law actually

17   litigated and resolved in a valid court determination essential to the prior judgment, even if the

18   issue recurs in the context of a different claim."  Taylor, 128 S. Ct. at 2171 (internal citation,

19   quotation omitted).

20           Defendants begin their analysis by comparing the allegations in Harrell I and

21   Harrell II and then state: ". . .While the allegations in each respective complaint (and amended

22   complaint) are difficult to parse, it is clear that Plaintiff's present complaint is at least partially

23   barred. (See also Harrell II, ECF No. 8, p. 5)."  ECF No. 47, pg. 8.  Defendants devote the

24   remainder of the res judicata argument to explaining why Olson and Harrell should be found to be

25   in privity.  See id. at 8-9.

26   / / /

27   / / /

28   / / /

14

The Court finds Defendants' res judicata argument unpersuasive. Specifically, though Defendants urge that the current amended complaint is "at least partially barred," Defendants do not specify which part are barred and which are not. Defendants have thus failed to adequately establish an identify of claims between the current action and prior actions. Nor does the Court find an identity of claims when comparing Harrell I or Harrell II to the present action. The current case does not arise out of the same transactional nucleus of facts. While the Court generally agrees with Defendants' characterization of the Harrell I and Harrell II cases, the Court does not agree that the current case is similar to either of the prior actions filed by Mr. Harrell. Specifically, unlike Harrell I or Harrell II, the current action concerns allegations that Defendants failed to adhere to their own policies when Plaintiff's water supply was disconnected in July 2021. Neither of the prior actions filed by Mr. Harrell involved the allegedly improper disconnection of water supply in July 2021, nor could they because they were both filed prior to that date. For this same reason, the prior Harrell actions and the current Olson action cannot involve the same evidence.

### 2. Rule 8

Defendants next argue that the amended complaint fails to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. They contend:

> Here, Plaintiff's twenty-nine (29) page First Amended Complaint alleges numerous constitutional violations of the 1st Amendment, 4th/5th Amendment Search and Seizure, Conspiracy under 42 USC §1983, violations of Due Process and Equal Protection, Unlawful Retaliation, as well as violations of the ADA. Plaintiff's fact allegations are general and conclusory, however, and Plaintiff does not provide specific supporting facts for each of these federal causes of action. For example, Plaintiff's First Amended Complaint alleges that Defendants participated in a scheme to retaliate against Plaintiff, and falsely apply for and wrongfully profit from government grants. (ECF No. 44, p. 3 ¶5-6) No facts are alleged in support of this purported scheme. Instead, despite the length of Plaintiff's First Amended Complaint, the exact nature of what happened to Plaintiff is obscured by several vague and disconnected events and allegations. Each of the Defendants cannot discern what legal wrong was done to Plaintiff, by whom and when, or how any alleged harm is connected to the relief Plaintiff seeks.

> ECF No. 47, pg. 10.

/ / /

15

1          Defendants' point is well-taken.  Rule 8's pleading requirements are not met by a

2     "complaint that contains conclusion or surmise and requires a court to decide whether events not

3     pleaded could be imagined in a plaintiff's favor."  Levin v. Miller, 763 F.3d 667, 671 (7th Cir.

4     2014).  Rather, in order to establish plausibility, allegations in a complaint "may not simply recite

5     the elements of a cause of action but must contain sufficient allegations of underlying facts to

6     give fair notice and to enable the opposing party to defend itself effectively."  Eclectic Props. E.,

7     LLC v. Marcus and Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014) (internal quotation and

8     citation omitted).  ". . .[T]he factual allegations that are taken as true must plausibly suggest an

9     entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

10    expense of discovery and continued litigation."  Id.  While pleadings of pro se litigants are held to

11    less rigid standards than those drafted by attorneys, see Haines v. Kerner, 404 U.S. 519, 520-522

12    (1972), even pro se pleadings "must meet some minimum threshold in providing a defendant with

13    notice of what it is that it allegedly did wrong," Brazil v. United States Dept. of Navy, 66 F.3d

14    193, 199 (9th Cir. 1995).

15          Although the Federal Rules adopt a flexible pleading policy, a complaint must give

16    fair notice and state the elements of the claim plainly and succinctly.  See Jones v. Community

17    Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at least some

18    degree of particularity overt acts which defendants engaged in that support Plaintiff's claims.  See

19    id.  The allegations must be short and plain, simple and direct, and describe the relief Plaintiff

20    seeks.  See Fed. R. Civ. P. 8(a); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002);

21    Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002).

22          Plaintiff has not complied with these requirements.  The amended complaint is

23    repetitive and argumentative, includes vague and conclusory allegations, and largely fails to

24    allege facts to support any claim against Defendants in their individual capacities.  This alone

25    justifies dismissal of her amended complaint.  See Schmidt v. Hermann, 614 F.2d 1221, 1223 (9th

26    Cir. 1980) (upholding the dismissal of a complaint where it was "impossible to designate the

27    cause of action or causes of action attempted to be alleged in the complaint."); In re Sagent Tech.,

28    Inc., 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because

1  plaintiffs do not indicate which individual defendant or defendants were responsible for which

2  alleged wrongful act."); see also McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996)

3  (affirming Rule 8 dismissal of complaint that was "argumentative, prolix, replete with

4  redundancy, and largely irrelevant" and providing an example of a properly pleaded claim, which

5  could be "read in seconds and answered in minutes").

6              3.      Failure to State a Claim

7        Defendants next present a series of arguments as to each federal cause of action

8  asserted in the pleading.  The Court addresses these arguments below.

9                  a.   First Amendment Retaliation

10        To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that

11  (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill

12  a person of ordinary firmness from continuing to engage in the protected activity, and (3) the

13  protected activity was a substantial or motivating factor in the defendant's conduct."  O'Brien v.

14  Welty, 818 F.3d 920, 932 (9th Cir. 2016) (quoting Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d

15  755, 770 (9th Cir. 2006)).

16        Plaintiff alleges Defendants retaliated against her because of her history of

17  engaging in protected activity.  She claims as follows:

18            Over the past several years, Plaintiff has brought multiple legal
              actions against the HCSD and its officers for violations of the
19            Brown Act (prevailing on many in both the trial court, and the
              Third District Court of Appeals of California), filed complaints
20            concerning its operations with multiple government agencies, and
              has assisted others in doing those things as well, much to their angst
21            and irritation.  In fact, Puckett seized the opportunity while he was
              on local television to complain about some of that litigation.  See
22            news story on the Channel 10 Medford, OR station at:
              https://ktvl.com/news/local/amid-water-crisis-small-community-
23            takes-matters-into-its-own-hands[.]  . . .

24        Am. Compl. ¶ 17, n. 17.

25        Defendants argue these allegations do not state a viable First Amendment claim.

26  They contend:

27            Here, Plaintiff has not established any of the foregoing
              elements. Instead, Plaintiff relies upon "shotgun pleading" and she
28            does not allege any facts in support of her retaliation claim.

17

1
2
3

> Without additional factual specificity, a retaliation is not cognizable. *See Iqbal*, 556 U.S. at 678 (a claim has the requisite facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

4   ECF No. 47-1, pg. 15.

5         Liberally construing the pleading, Plaintiff has adequately alleged that she engaged

6   in constitutionally protected activity and that Defendants' actions would chill a person of ordinary

7   firmness from continuing to engage in those activities.  The problem, however, arises with respect

8   to Defendants' motivation.  It is true that in rare cases will a plaintiff have direct evidence of

9   intent.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct evidence of

10  retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from

11  which retaliation can be inferred is sufficient to survive dismissal.").  Therefore, circumstantial

12  evidence is often critical in establishing the motive behind a defendant's conduct.  But here, the

13  only arguable suggestion of retaliatory motive is a news article wherein Defendant Puckett refers

14  to Plaintiff's litigation activity.  This link, however, is too tenuous to ascribe retaliatory intent to

15  Defendants as a whole or even to Defendant Puckett in particular.  Given this deficiency,

16  Plaintiff's First Amendment claim is subject to dismissal.

17                    b.   Fourth Amendment and Fifth Amendment Search and Seizure

18        The Fourth Amendment provides that "[t]he right of the people to be secure in

19  their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be not

20  violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

21  affirmation."  U.S. Const. amend. IV.  "To establish a viable Fourth Amendment claim, a plaintiff

22  must show not only that there was a search and seizure as contemplated by the Fourth

23  Amendment, but also that said search and seizure was unreasonable and conducted without

24  consent."  Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Rubio, 727 F.2d 786,

25  796–97 (9th Cir. 1983).

26  / / /

27  / / /

28  / / /

1             Generally, under the Fifth Amendment, a "plaintiff must establish two elements to

2 have a viable" takings claim.  In re Upstream Addicks and Barker (Texas) Flood-Control

3 Reservoirs, 146 Fed. Cl. 219, 246 (Fed. Cl. 2019).  First, a plaintiff "must establish that he or she

4 holds 'a property interest for purposes of the Fifth Amendment.' " Id. (quoting Caquelin v.

5 United States, 140 Fed. Cl. 564, 572 (2018)).  Second, " 'the court must determine whether the

6 governmental action at issue amounted to a compensable taking of that property interest.' " Id.

7 (quoting Amer. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004)).

8 When the government physically acquires private property for public use, a "physical taking" has

9 occurred.  Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2071 (2021).  If the government

10 imposes regulations that restrict a landowner's use of his or her own property, it might commit a

11 "regulatory taking." Id. at 2072.  A temporary interference with the use of property can be

12 considered a regulatory taking.  Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124

13 (1978); see also Bridge Aina Le'a, LLC v. Land Use Comm'n, 950 F.3d 610, 626 (9th Cir. 2020).

14             Plaintiff accuses Defendants of "trespassing onto Plaintiff's property, seizing her

15 property (including her property interest in her domestic water service from the HCSD) without

16 warrant or due process, and taking a portion of her driveway exclusively for governmental use

17 without due process or compensation."  Am. Compl. ¶ 44.  According to Plaintiff, the seized

18 property "included Plaintiff's water meter, a utility van belonging to a plumbing contractor hired

19 by Plaintiff, and a 2001 Honda CR-V belonging to [Plaintiff]'s Personal Caregiver (actually

20 seized twice)." Id. ¶ 9, fn. 11.

21             Defendants argue these allegations do not state either a Fourth or Fifth

22 Amendment claim:

23             Here it, is entirely incomprehensible how Plaintiff's vague
       and conclusory allegation regarding her property interest in her

24        domestic water service or the towing of vehicles (that obstructed
       from the reading of Plaintiff's water meter) constitutes a taking of

25        Plaintiff's driveway [or] constitutes an unreasonable search and
       seizure. As such, Plaintiff's unconstitutional search and seizure

26        claim is subject to dismissal.

27        ECF No. 47-1, pg. 12.

28 / / /

1        The Court agrees that some of Plaintiff's allegations are insufficient to proceed.

2   For example, any Fifth Amendment claim premised on Defendants' seizure of personal property

3   belonging to Plaintiff's plumbing contractor and/or personal caregiver fails because Plaintiff does

4   not allege that she herself has a property interest in those vehicles.   Nonetheless, liberally

5   construing the pleading, Plaintiff's allegations suffice to state Fourth and Fifth Amendment

6   claims that Defendants searched her property without a warrant, seized her water meter, and

7   prohibited her from using her own driveway, and that the act of cutting off water service

8   interfered with her property right in continued water service.   Cf. McMillan v. Goleta Water Dist.,

9   792 F.2d 1453, 1457 (9th Cir. 1986).   a

10                          c.   Fourteenth Amendment

11        "The Fourteenth Amendment's Due Process Clause protects persons against

12   deprivations of life, liberty, or property; and those who seek to invoke its procedural protection

13   must establish that one of these interests is at stake."   Wilkinson v. Austin, 545 U.S. 209, 221

14   (2005).   The due process clause of the Fourteenth Amendment confers both substantive and

15   procedural protections.   Albright v. Oliver, 510 U.S. 266, 272 (1994).

16        The substantive protections of the due process clause bar certain governmental

17   actions regardless of the fairness of the procedures that are used to implement them.   Cty. of

18   Sacramento v. Lewis, 523 U.S. 833, 840 (1998).   Therefore, the substantive protections of the due

19   process clause are intended to prevent government officials from abusing their power or

20   employing it as an instrument of oppression.   Lewis, 523 U.S. at 846.   The Supreme Court has

21   held that "the substantive component of the Due Process Clause is violated by executive action

22   only when it 'can properly be characterized as arbitrary, or conscience shocking, in a

23   constitutional sense.' "   Id. at 847.   "[O]nly the most egregious official conduct can be said to be

24   arbitrary in a constitutional sense."   Brittan v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006)

25   (quoting Lewis, 523 U.S. at 846).

26   / / /

27   / / /

28   / / /

20

1    "The requirements of procedural due process apply only to the deprivation of

2    interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd.

3    of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972). "[P]rocedural due process

4    claims are resolved by balancing tests, where differing interests can give rise to many differing

5    procedural requirements." Brittain, 451 F.3d at 1000. "[D]ue process is flexible and calls for

6    such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S.

7    319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

8    Defendants argue Plaintiff fails to state either a substantive or procedural due

9    process claim:

10            Here, Plaintiff has only alleged that Defendants wrongfully
11       cut off the domestic water supply to Plaintiff's home without
         alleging any of the facts or circumstances prior to the
12       discontinuation of her water service. "[C]onsideration of what
         procedures due process may require under any given set of
13       circumstances must begin with a determination of the precise nature
         of the government function involved as well as of the private
14       interest that has been affected by governmental action." Goldberg
         v. Kelly, 397 U.S. 254, 263 (1970). Merely stating that a due
15       process violation occurred is conclusory and does not suffice to
         state a valid claim.  [¶]  [S]imilar to Plaintiff's failure to allege
16       procedural due process, Plaintiff has also failed to allege facts in
         support of egregious official conduct that constituted an abuse of
17       power.  As such, Plaintiff's substantive due process claim likewise
         is subject to dismissal.

18    ECF No. 47-1, pg. 14.

19    The Court does not agree that Plaintiff has alleged only that a due process

20    violation occurred.  Nor is Plaintiff required, as Defendants contend, to set forth all the

21    circumstances underlying her claim.  Her allegations fall between these two endpoints, accusing

22    Defendants of failing to provide her with any written information "on the basis for the seizures

23    and water shut off" and further failing to provide "any notice of, or instruction concerning, the

24    availability of any means to challenge allegations against her, hearing rights, fees required, or

25    other any other [sic] means by which she may have her water service (fully) restored."  Am.

26    Compl. ¶ 11.  She then alleges that Defendants cut off her own water pipe, limited her access to

27    her own property, and placed her health and safety in danger.  Id. ¶ 12.  These allegations suffice

28    to state a due process claim, as discussed in detail in this Court's September 17, 2021, Findings

1  and Recommendations to grant in part Plaintiff's motion for injunctive relief, which the district

2  judge adopted in full.  ECF Nos. 29, 52.

3                                d.  Equal Protection

4            A plaintiff can state a claim for violation of the Equal Protection Clause by

5  showing "that the defendant acted with an intent or purpose to discriminate against him based

6  upon his membership in a protected class."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir.

7  2003).  "Intent" in this context means that the defendant acted, at least in part, because of the

8  plaintiff's membership in a protected class.  Id.  Alternately, the plaintiff can state a claim by

9  alleging that he was intentionally treated differently than similarly situated individuals and there

10  was no rational basis for the difference in treatment.  Thornton v. City of St. Helens, 425 F.3d

11  1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

12           Defendants argue:

13
14          Plaintiff has not included factual allegations that she was treated differently from other people with whom she was similarly situated and that there was no rational basis for the difference in treatment. Plaintiff has not alleged facts demonstrating irrational or

15  arbitrary actions on the part of Defendants. As such, Plaintiff has failed to present an Equal Protection claim sufficient to withstand a

16  motion to dismiss.

17          ECF No. 47-1, pg. 15.

18           The Court again disagrees with Defendants' reading of the pleading.  Plaintiff's

19  equal protection claim is premised on a "class of one."  Am. Compl. ¶ 32; Willowbrook v. Olech,

20  528 U.S. 562, 564 (2000).  A class of one claim arises when a plaintiff alleges that they have been

21  intentionally treated differently from other similarly situated people and that there is no rational

22  basis for different treatment.  Id.  This theory alleges that the defendants arbitrarily discriminated

23  against the specific plaintiff rather than against a group or protected class.  Lazy Y Ranch LTD v.

24  Behrens, 546 F.3d 580, 592 (9th Cir. 2008).  In this case, Plaintiff alleges that Defendants "acted

25  to treat Plaintiff differently, and more harshly, than other customers of the HCSD, and for an

26  improper purpose."  Am. Compl. ¶ 16.  They did this by providing other HCSD customers with

27  water and/or by complying with notice requirements.  See id. ¶¶ 11, 13.  Plaintiff also claims

28  Defendants brought "baseless, wrongful, unconstitutional governmental and other actions against

1   Plaintiff – but without utilizing the same tactics or actions against any other customers of the

2   HCSD besides Plaintiff." <u>Id.</u> ¶ 17, fn. 19.  Because Plaintiff alleges that there was no rational

3   basis for this differential treatment, she has stated a viable equal protection claim.

4                                                  e.   <u>Conspiracy</u>

5                   To state a claim for civil conspiracy, a plaintiff must plead "(1) the formation of a

6   group of two or more persons who agreed to a common plan or design to commit a tortious act;

7   (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." <u>City of</u>

8   <u>Indus. v. City of Fillmore</u>, 198 Cal. App. 4th 191, 212 (2d Dist. 2011), as modified (Aug. 24,

9   2011).  "Civil conspiracy is not an independent tort." <u>Id.</u>

10                  Defendants argue Plaintiff's conspiracy claim is too conclusory to state a claim:

11                          Here, Plaintiff's allegations regarding conspiracy are
                            entirely conclusory, lack facts, and lack the required specificity.
12                          Plaintiff failed to allege what each Defendant did to carry out any
                            overt acts in furtherance of the alleged conspiracy. Plaintiff also
13                          does not allege how the Defendants conspired together to commit
                            wrongful acts. Thus, Plaintiff fails to allege specific facts that are
14                          necessary to establish a §1985 claim, and Plaintiff's claim of
                            conspiracy fails to satisfy the pleading requirements.
15
                            Moreover, a racial, or other class-based, invidiously
16                          discriminatory animus is an indispensable element of a section
                            1985(3) claim. <u>Bray v. Alexandria Women's Health Clinic</u>, 506
17                          U.S. 263, 267-69 (1993). Plaintiff does not allege a racial or other
                            class-based invidiously discriminatory animus. Plaintiff's claim of
18                          conspiracy fails on this basis as well.

19                  ECF No. 47-1, pg. 13.

20                  Examination of the pleading confirms that Plaintiff's conspiracy claims brought

21   pursuant to 42 U.S.C. § 1983, § 1985, and § 1986 rest entirely on speculation.  Plaintiff alleges

22   only that Defendants "jointly acted to systematically and wrongfully stifle, deny, suppress, and

23   thwart, Plaintiff Olson's rights under the federal and State constitutions, her statutory rights, those

24   rights as provided in the HCSD's Bylaws, Rules and Regulations, and its customs, policies, and

25   practices, and specifically inclusive of her First, Fourth, and Fourteenth Amendment procedural

26   and substantial due process rights, and her Equal Protection rights. . . ."  Am. Compl. ¶ 17.  She

27   then alleges that this conduct "violated . . . the provisions of, and protections afforded Plaintiff by,

28   42 USC 1985(2) and/or (3) as a 'class of one', so each of those Defendants also violated 42 USC

                                                          23

1    §1986 by failing and/or refusing to take any action to stop, or prevent, the violation of Plaintiff's

2    constitutional rights." Id. ¶ 54.  There are no allegations, however, to indicate how and/or when

3    the alleged conspiracy occurred.  Without these necessary details, these claims fail.

f.    _Monell_ Liability

5        "In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme

6    Court held that a municipality may not be held liable for a § 1983 violation under a theory of

7    respondeat superior for the actions of its subordinates." Castro v. County of Los Angeles, 833

8    F.3d 1060, 1073 (9th Cir. 2016).  In this regard, "[a] government entity may not be held liable

9    under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a

10   moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d

11   892, 900 (9th Cir. 2011) (citing Monell, 436 U.S. at 694).

12       In order to allege a viable Monell claim, a plaintiff "must demonstrate that an

13   'official policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the

14   claimed injury.' " Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting

15   Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008)).  There are three ways a

16   "policy" can be established.  See Clouthier, 591 F.3d at 1249-50.  "First, a local government may

17   be held liable 'when implementation of its official policies or established customs inflicts the

18   constitutional injury.' " Id. at 1249 (quoting Monell, 436 U.S. at 708 (Powell, J. concurring)).

19   Second, plaintiff may allege that the local government is liable for a policy of inaction or

20   omission, for example when a public entity, "fail[s] to implement procedural safeguards to

21   prevent constitutional violations" or fails to adequately train its employees. Tsao, 698 F.3d at

22   1143 (citing Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992)); see also Clouthier, 591 F.3d

23   at 1249 (failure to train claim requires plaintiff show that "the need for more or different training

24   [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights,

25   that the policymakers ... can reasonably be said to have been deliberately indifferent to the need.")

26   (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)); Long v. County of Los Angeles,

27   442 F.3d 1178, 1186 (9th Cir. 2006) ("To impose liability against a county for its failure to act, a

28   plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2)

24

1    that the county has customs or policies that amount to deliberate indifference; and (3) that these

2    customs or policies were the moving force behind the employee's violation of constitutional

3    rights."). "Third, a local government may be held liable under § 1983 when 'the individual who

4    committed the constitutional tort was an official with final policy-making authority' or such an

5    official 'ratified a subordinate's unconstitutional decision or action and the basis for it.' "

6    Clouthier, 591 F.3d at 1250 (quoting Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir.

7    1992)).

8            However, a complaint alleging a Monell violation " 'may not simply recite the

9    elements of a cause of action, but must contain sufficient allegations of underlying facts to give

10   fair notice and to enable the opposing party to defend itself effectively.' " AE ex rel. Hernandez

11   v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216

12   (9th Cir. 2011)).  At a minimum, the complaint should "identif[y] the challenged policy/custom,

13   explain[ ] how the policy/custom was deficient, explain[ ] how the policy/custom caused the

14   plaintiff harm, and reflect[ ] how the policy/custom amounted to deliberate indifference[.]"

15   Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009); see also Little v. Gore,

16   148 F. Supp. 3d 936, 957 (S.D. Cal. 2015) ("Courts in this circuit now generally dismiss claims

17   that fail to identify the specific content of the municipal entity's alleged policy or custom.").

18           Plaintiff alleges that Defendant Dingman helped create and submit false

19   government documents, failed to comply with HCSD Rules and Regulations, claimed time for

20   duties and/or actions that were not pre-approved by the Board or General Manager, illegally

21   seized and converted Plaintiff's real and personal property, and cut off Plaintiff's water supply

22   without notice, hearing, and/or opportunity for review.  Am. Compl. ¶ 36.  Plaintiff alleges that

23   the Defendants were aware of and ratified this conduct and that it was the result of "the written

24   and unwritten official policy, custom, or practices of the HCSD as created and implemented by

25   one or more of the Board Defendants, and/or HCSD itself."  Id. ¶ 37.

26   / / /

27   / / /

28   / / /

25

1   Defendants argue simply that the amended complaint "fails to demonstrate that

2   HCSD had a 'policy or custom' of deliberately engaging in retaliation and violations of clearly

3   established constitutional rights."  ECF No. 47-1, pg. 17.  Although the Court is unimpressed with

4   the cursory nature of this argument, Defendants are correct.  Plaintiff alleges only that the Board

5   Defendants knew of Dingman's conduct and ratified it.  But this conclusory allegation fails to

6   specify the precise policy or custom at issue and fails to even identify how the Board became

7   aware of the conduct so as to ratify it.  The Court therefore finds that Plaintiff's vague and

8   conclusory allegations do not satisfy the pleading requirements to assert a <u>Monell</u> claim.

9   g.   <u>Americans with Disabilities Act</u>

10   Title II of the Americans with Disabilities Act (ADA) is designed to ensure that

11   qualified individuals with a disability are not excluded from participation in or denied the benefits

12   of a program, service or activity of any public entity, service or program receiving federal

13   financial assistance on the basis of their disability.  42 U.S.C. § 12132.  This statute also ensures

14   that public entities, services and programs receiving federal financial assistance do not otherwise

15   discriminate against an individual with a qualified disability based on such disability.  42 U.S.C. §

16   12132.

17   Defendants argue:

18   Here, Plaintiff uses only conclusory language in attempting
to state a claim under the ADA. Plaintiff does not set forth any non-
19   conclusory factual allegations that she was discriminated against
based upon her disabilities. Plaintiff has also failed to allege facts as
20   to what accessibility barriers Plaintiff encountered or to explain
how any alleged barriers relate to her particular disability.
21   Plaintiff's bare legal conclusions are insufficient to satisfy standing
and the ADA's pleading requirements. As such, Plaintiff's ADA
22   claim must be dismissed.

23   ECF No. 47-1, pg. 16.

24   The Court agrees that Plaintiff's allegations are insufficient to state an ADA claim.

25   She adequately alleges that she has a disability and that Defendants were aware of it, but she does

26   not indicate how she was discriminated against or denied services <u>based on</u> that disability.

27   Plaintiff alleges that she could not access the facility where HCSD stored its public records, <u>see</u>

28   Am. Compl. ¶ 52, but she does not specify what circumstances rendered the office inaccessible.

1    Moreover, while Plaintiff alleges that Defendants "failed to accommodate her disability by giving

2    her adequate and proper notice of any adverse determinations or actions against her," it is unclear

3    what type of accommodation she required because of her disability.  Am. Compl. ¶¶ 51-52.  This

4    claim thus fails as vague and conclusory.

5                                  h.   Jurisdiction

6                    Defendants next make a related arguments suggesting that this Court lacks

7    jurisdiction to provide the relief that Plaintiff seeks.  They argue:

8              The First Amended Complaint alleges that HCSD is a
        public entity operating wholly within the County of Siskiyou, a
9        political subdivision of the State of California. (ECF No. 1,
        Complaint, ¶2) The Complaint seeks injunctive and declaratory
10       relief that is equivalent to seeking mandamus relief, and this Court
        lacks mandamus jurisdiction to compel a state official to perform
11       his or her duties. The Court's mandamus power, as set forth in 28
        U.S.C. §1361, extends only to federal officials. *See Amisub (PSL),*
12       *Inc. v. Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 790 (10th Cir.
        1989) ("No relief against state officials or state agencies is afforded
13       by §1361."); *see also Williams v. Va. Supreme Court*, 457 Fed.
        Appx. 228, 229 (4th Cir. 2011) ("[F]ederal courts do not have
14       jurisdiction to grant mandamus relief against state officials").

15             This action also is barred by the Eleventh Amendment. The
        Eleventh Amendment bars courts from entertaining suits brought by
16       a private party against a state, an arm of the state, its
        instrumentalities, or its agencies. *Los Angeles Brach NAACP v. Los*
17       *Angeles Unified Sch. Dist.*, 714 F.2d 946, 950 (9th Cir. 1983). *In Ex*
        *Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a
18       limited exception to Eleventh Amendment immunity, permitting
        suits for prospective declaratory and injunctive relief against state
19       officers "who threaten and are about to commence proceedings" to
        enforce an alleged unconstitutional act. Here, the limited exception
20       does not apply since no such prospective proceedings are
        contemplated by HCSD.

21       ECF No. 47-1, pg. 18.

22

23             The Court finds these arguments unpersuasive.  As an initial matter, Defendants

24   cite to no authority for the proposition that Plaintiff's request for injunctive and declaratory relief

25   "is equivalent to seeking mandamus relief."  Notably, Plaintiff has not filed a writ of mandamus

26   and is not proceeding pursuant to 28 U.S.C. § 1361.[2]  Furthermore, it is axiomatic that

27   _____

28       [2]     This statute reads, "The district courts shall have original jurisdiction of any action
        in the nature of mandamus to compel an officer or employee of the United States or any agency

                                           27

1   "[c]ounties, municipalities, municipal agencies, and officers thereof, usually are not considered

2   arms of the state, and thus usually are not entitled to [Eleventh Amendment] immunity."  Wright

3   & Miller, 13 Fed. Prac. & Proc. Juris. § 3524.2 (3d ed.).  As a political subdivision of Siskiyou

4   County, HCSD is not an "arm of the state" for Eleventh Amendment purposes.  See Lake Country

5   Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979) (holding that suit

6   against a political subdivision is not barred by the Eleventh Amendment); Monell, supra, 436

7   U.S. 658.

8                                                  i.   State Law Claims

9                   Under 28 U.S.C. § 1367(a), in any civil action in which the district court has

10   original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims

11   that are so related to claims in the action within such original jurisdiction that they form part of

12   the same case or controversy under Article III of the United States Constitution," except as

13   provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are

14   dismissed before trial, ... the state claims should be dismissed as well."  United Mine Workers of

15   Am. v. Gibbs, 383 U.S. 715, 726 (1966).  Although the Court may exercise supplemental

16   jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under

17   federal law.  28 U.S.C. § 1367.

18                   Defendants seek dismissal of Plaintiff's state law claims as follows:

19                        Plaintiff's [sic] move to dismiss Plaintiff's state law claims
                         for failure to state a cause of action and noncompliance with Rule
20                       8(a). Alternatively, given that Plaintiff has failed to state a federal
                         law claim, Defendants request that the Court decline to exercise
21                       supplemental jurisdiction over Plaintiff's remaining state claims
                         pursuant to 28 U.S.C. § 1367(c)(3) (a district court may "decline to
22                       exercise supplemental jurisdiction" over state law claims if it "has
                         dismissed all claims over which it has original jurisdiction"); see
23                       also Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir.
                         2010).
24
                         ECF No. 47-1 at 18.
25

26   / / /

27   _____

28   thereof to perform a duty owed to the plaintiff."

                                                    28

1  / / /

2          Defendants fail to analyze any of Plaintiff's ten state law claims to determine

3  whether they state a cause of action, and the Court declines to conduct that analysis for them.  To

4  the extent Defendants argue that the Court should decline supplemental jurisdiction because

5  Plaintiff fails to state a federal cause of action, the Court has found that Plaintiff's allegations are

6  sufficient to state Fourth, Fifth, and Fourteenth Amendment claims.  Nevertheless, the Court will

7  recommend that supplemental jurisdiction be declined at this time because Plaintiff has not

8  complied with Rule 8's pleading requirements, as discussed <u>supra</u>.

9          **B.    <u>Motion for Contempt Sanctions or a Further Preliminary Injunction</u>**

10          Also pending before the Court is Plaintiff's motion for contempt sanctions or a

11  further preliminary injunction.  The Preliminary Injunction ordered Defendants to, among other

12  things, "provide Olson with water in compliance with internal rules and all other applicable state

13  and local laws."  ECF No. 52.  It further ordered Defendants "to return Olson's water meter and

14  attach a flow restrictor to it, limiting Olson to 200 gallons of water per day, or whatever <u>generally</u>

15  <u>applicable</u> use restrictions HCSD enacts in order to conserve water."  <u>Id.</u> (emphasis in original).

16          Plaintiff claims Defendants failed to comply with the Preliminary Injunction by

17  (1) failing to fully restore Plaintiff's water service to her home "in compliance with local rules,

18  and all other applicable state and local laws," (2) restricting her water use more severely than

19  other customers, (3) installing a "flow restrictor" that does not permit Plaintiff to use water up to

20  the then-limit of 200 gallons per day, and (4) failing to properly repair and maintain the

21  connection providing Plaintiff's water service.

22          In support of her motion, Plaintiff submits several letters she sent to Defendant

23  Puckett between September 29, 2021, and January 26, 2022, wherein she claimed that she had

24  only been able to use 1,200 to 1,600 gallons per month, despite other residents receiving

25  substantially more water, and that her water pressure was too low to take a shower or perform

26  other daily activities.  Pl.'s Decl. ¶ 3, Ex. C.  Plaintiff also submits copies of her water bills,

27  which reflect that she used 1,230 gallons of water in October 2021; 1,640 gallons in November

28  2021; and 1,160 gallons in December 2021.  Pl.'s Decl. Ex. D.  Concerning her water pressure,

1    Plaintiff attaches a copy of § 608.1 of the California Plumbing Code, which mandates a minimum

2    water pressure of 15 pounds force per square inch.  Pl.'s Decl. Ex. F.  Plaintiff contends that her

3    water pressure fell far short of this statutory minimum, as evidenced by her own measurements of

4    the flow rate in her home on an unspecified date.[3]  Pl.'s Decl. ¶ 3.

5            Defendants oppose Plaintiff's motion, arguing that she has not met the high burden

6    for sanctions or an amended preliminary injunction.  ECF No. 69.  They contend there is simply

7    no showing that they failed to comply with the Preliminary Injunction and that Plaintiff's issue

8    here stems from the water pressure, not the amount of water provided.  They further note that, by

9    the time the Preliminary Injunction went into effect, the 10-gallon per hour flow restrictor, which

10   had also been installed on five other HCSD customers' homes, had been replaced with a 90-

11   gallon-an-hour flow restrictor.  Decl. of Robert Puckett in Supp. of Defs.' Opp'n ¶¶ 3-6.  Still,

12   Plaintiff, like all other HCSD customers, was limited to 300 gallons per day pursuant to

13   resolutions passed by the HCSD Board Defendants.  Id. ¶ 6, Ex. 1.

14           A party seeking a civil contempt order must establish: (1) that the defendant

15   violated a court order, (2) beyond substantial compliance, (3) not based on a good faith and

16   reasonable interpretation of the order, (4) by clear and convincing evidence.  Labor/Community

17   Strategy Ctr. v. Los Angeles Cty. Metropolitan Transp. Authority, 564 F.3d 1115, 1123 (9th Cir.

18   2009).

19           District courts have "inherent power" to impose sanctions to manage their cases,

20   ensure the orderly administration of justice, and enforce compliance with orders.  ChromaDex,

21   Inc. v. Elysium Health, Inc., 535 F. Supp. 3d 906, 911 (C.D. Cal. 2021) (citing Int'l Union,

22   United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 831 (1994).  "That authority includes the

23   ability to fashion an appropriate sanction for conduct which abuses the judicial process."

24   Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017).  But a court imposing

25   sanctions pursuant to its inherent power may impose sanctions based only on a finding of either

26

27           [3]      Plaintiff's calculations were based on sequentially filling 3 one-gallon jugs from
     her kitchen tap.  Pl.'s Decl. ¶ 3.  According to Plaintiff, it took 88 seconds to fill the first jug, 96
28   seconds to fill the second jug, and 93 seconds to fill the third jug.  Id.

1    "a willful violation of a court order [or ...] bad faith."  <u>Am. Unites for Kids v. Rousseau</u>, 985 F.3d

2    1075, 1090 (9th Cir. 2021).

3            The Court finds that Plaintiff has not shown by clear and convincing evidence that

4    Defendants violated the Preliminary Injunction.  While she claims that she received less water

5    than other HCSD customers, her evidence shows only that she <u>used</u> less than 200 gallons of water

6    per day, not that Defendants <u>provided</u> less.  Turning to the water pressure, Defendants are

7    incorrect in claiming that it is not at issue here.  To the contrary, the Preliminary Injunction

8    specifically states that "HCSD must provide Olson with water in compliance with internal rules

9    <u>and all other applicable state and local laws</u>."  ECF No. 52 ¶ 2 (emphasis added).  This would

10   necessarily encompass the state's minimum requirements for water pressure.  In any event,

11   Plaintiff's evidence—measurements based on filling 3 one-gallon jugs on an unspecified date—is

12   insufficient to show that her water pressure fell below the state statutory minimum.  And finally,

13   Plaintiff readily admits in her Reply brief that Defendants "altered Plaintiff's water service to a

14   fully usable state on February 20, 2022."  ECF No. 73, pg. 3.  For these reasons, Plaintiff's

15   motion should be denied.[4]

16

17                              **IV.  CONCLUSION**

18           Based on the foregoing, the undersigned recommends that:

19           1.    Defendants' motion to dismiss, ECF No. 47, be granted with leave to

20   amend; and

21           2.    Plaintiff's motion for sanctions or, in the alternative, for a further

22   preliminary injunction, ECF No. 67, be denied.

23           These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

25   after being served with these findings and recommendations, any party may file written objections

26   _____

27        [4]      Plaintiff also claims that Defendants damaged and then failed to repair a control
     valve on the "supply side" of the water meter.  Pl.'s Decl. ¶ 2, ECF No. 67.  She seeks an order
     directing them to remedy this as soon as possible, but this issue exceeds the scope of the
28   Preliminary Injunction and is therefore not a proper basis to modify it.

with the Court.  Responses to objections shall be filed within 14 days after service of objections.

Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  August 30, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE