Kimberly R. Olson, In Pro Per
PO Box 243
Hornbrook, CA 96044
530-475-3669



**FILED**

DEC 2 0 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kimberly R. Olson,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>Robert Puckett, Sr., et al,<br><br>　　　　Defendants, | Case No: 2:21-cv-1482 KJM DMC (PS)<br><br>PLAINTIFF'S OBJECTIONS TO FINDINGS<br>AND RECOMMENDATIONS OF<br>MAGISTRATE JUDGE (ECF #109)<br><br>Date:<br>Time:<br>Place: |

　　　　Plaintiff Kimberly R. Olson hereby presents her Objections to the Findings and

Recommendations ("F&Rs"; ECF #109, dated August 30, 2022) concerning Defendants' Rule

12(b) Motion to Dismiss (ECF #47) addressed to the operative, First Amended Complaint

("FAC", ECF #44).  Pursuant to the Magistrate's later Order of November 21, 2022 (ECF #120),

Plaintiff does also hereby renew and incorporate as if fully set forth herein, her arguments,

citations to authority, factual/legal analysis/discussion, and assignment of "errors of fact and

law" in her "Motion for Clarification" (ECF #113)[1].

**1. The Magistrate did not Apply the Correct Standards to Review of the Pro Se Complaint**

　　　　While Plaintiff agrees that the FAC could use revisions, additional facts, and

clarification, it is also true that there are several viable causes of action presented.  Although the

Magistrate found at least four (4) viable federal claims[2], the Magistrate overlooked factual

pleadings supporting several critical elements of others he analyzed, while completely missing,

and/or misinterpreted some facts in the FAC, leading to improper conclusions of non-viability.

_____

[1] Plaintiff has also filed separate objections concerning the ECF #113 "Motion for Clarification".
[2] Probably more like six (6), because Plaintiff pled multiple instances of two-part claims such as; "Count I
4th/5th Amendment Violations", "Count III Deprivation of Due Process and Equal Protection", and
"Count IV Deprivation of Equal Protection of the Laws, and to Due Process of Law".

Additionally, the Magistrate seems to often (mis)interpret words[3], phrases, or fact-statements of the FAC in a manner that is adverse to Plaintiff (thus not "afford[ing] plaintiff the benefit of any doubt"), interprets statements of fact in a niggardly manner, and fails to link up (or flatly disregards) foundational facts presented (often quite plainly) in the Complaint to specific Defendants (and to the Claims/"Counts") despite clear associations by the pleading, and Plaintiff specifically labeling those Defendants individually in each (also clearly labeled) count.

These missteps have resulted in misstating the record, and reaching conclusions that defeat much of the pleading - rather than to "accept as true the allegations of the complaint"[4], "construe the alleged facts in the light most favorable to the plaintiff"[5], and "afford the pro se plaintiff the benefit of any doubt."[6]  Pleadings are also to be interpreted to "do substantial justice" (FRCivP 8(e)), and do not require any specific form (FRCivP 8(d)(1)), while the complaint must be read as a whole.[7]  Further, all Judges have the responsibility to respect and

---

[3] One example is when Plaintiff states that one or more Defendants (alleged early in the Complaint to be acting at all times material in their official capacity as a government officer) "approved" (or "ratified" - see CACI 3004) a wrongful act, event, policy, undertaking, etc.  That means the Defendant(s) actually permitted, allowed, and/or instructed that act, event, or policy be undertaken.  Thus, it is a statement of <u>fact</u> about an *action* by that person, or body politic; e.g., the Board of Directors of the HCSD, or one or more of the individual "Board Defendants" (FAC, pp.2-3) - not a "conclusion" about a state of mind.  See, i.e., FAC, pp.5-6, 8:11-28, 14.

[4] *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  See examples of later-disregarded "foundational" facts at FAC, ¶¶2, 5, 6, 9, 15-20, 31, 32, 34.  Plaintiff will address the individual failures to credit in the later sections of these Objections.
[5] *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).

[6] "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) (internal citation omitted).  The Ninth Circuit has repeatedly reaffirmed pro se litigants are entitled to pleadings leniency, particularly in civil rights cases as this one. See e.g., *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims ...."); *Pouncil v. Tilton*, 704 F.3d 568, 574–75 (9th Cir. 2012) (construing complaints liberally protects rights of pro se litigants to access to the courts, which is particularly important in civil rights cases), cert. denied, 571 U.S. 820, (2013).
[7] Wright and Miller, 5 Fed. Practice and Procedure, 657. The liberal construction rule requires that a judge give effect to the substance, rather than the form or terminology, of a self-represented litigant's papers. This means a judge should look beyond the label that a self-represented litigant attaches to a pleading and re-characterize it to correspond to the substance and underlying legal basis of the claim. (*Castro v. United States*, 540 U.S. 375, 382 (2003).) The same view must be taken of plaintiff's proof: "In cases such as this, plaintiff should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'" *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699, (1962).  And yet, it seems from looking at the F&Rs as if the Magistrate has no short-term memory at all when it comes to remembering facts pled in the FAC, as he fails to apply them to claims made throughout the complaint - the most egregious example of this perhaps being in the analysis of "Monell Liability" at F&Rs, pp.24-26; c.f., Monell analysis herein at pages 12-18, *ante*.

1   protect persons from violations of federal constitutional rights. *Gross v. State of Illinois*, 312

2   F.2d 257 (1963).

3   The F&Rs also contain instances of plain error that are not explained by the Magistrate

4   either in the context of the fact of the case, nor by legal analysis.  In some of these, the

Magistrate appears to have overlooked sections of Plaintiff's FAC that pled details the Magistrate

5   claimed in the F&Rs to be missing from the elemental allegations of some of Plaintiff's claims,

6   while in others, material quoted by the Magistrate talks about fatal defects arising from "Rule 8"

7   and otherwise in complaints that do not really seem to apply to Plaintiff's FAC, and there is no

explanation discussing if or what actual flaws raised in the citations do exist in the FAC so that

8   Plaintiff might correct them.

9   **A. Factual Allegations in Support of Claims Seem to be Ignored or Misinterpreted**

10   Plaintiff notes that to reach its conclusions concerning some aspects of the FAC and its

11   claims, the F&Rs overlooks well-pled statements of fact, and occasionally assumes at face value

12   various statements by the Defense that are at odds with the actual content of the FAC.

In one example, the F&Rs at page 15-16 purport to analyze Plaintiff's FAC in the context

13   of the application of "Rule 8", in response to a point raised by the Defense regarding allegations

14   of malfeasance of conduct by the HCSD and Board Defendants concerning their scheme to

15   falsely claim public funds; to do so by engaging in various illegal acts, and by deprivations of

16   due process and other rights of Plaintiff as well as the other electors and residents of the District;

and, Plaintiff's interference with those plans and resultant responsive acts/retaliation against her

17   by the Defendants for her doing so (pled by Plaintiff as evidence of motive of retaliation).

18   Instead of looking at the FAC as a whole, as one would expect (and to then realize that

19   this was a "background fact", and not a cause of action at all as misleadingly implied by Defense

20   Counsel), the Magistrate made no review whatsoever of the content of the FAC - nor even of the

21   two paragraphs of the FAC (5-6[8]) cited by the Defense, apparently unquestioningly accepting its

22

23

---

24   [8] Paragraph 6 is fairly substantive, but inexplicably is not analyzed by the Court in the F&Rs - particularly

25   in the context of later allegations of actual causes of action pertaining to due process violations,
conspiracy, and various state claims.  This paragraph states in pertinent part that: "The Board Defendants
and Dingman also created and perpetuated the false 'water emergency', water shortage, and service
deprivations to Plaintiff and other customers of the District by turning off the wells that supply water to
the District's customers, and by adopting and imposing upon Plaintiff and the other customers of the
District, HCSD 'Resolution 2021-02' in manners contrary to law."

conclusionary statement that "[n]o facts are alleged in support of this purported scheme"[9] - while also totally ignoring the clearly relevant factual allegations attendant to the "scheme"[10] found in paragraphs 21 through 24 (and fn22).  This non-analysis of a non-cause of action is then used as a basis to state that the entire compliant (!) also does not meet the requirement of "Rule 8".  Worse, the F&Rs do so by then launching on page 16 into a very generalized[11] section of pleading jurisprudence that fails to specifically discuss <u>any</u> part of the FAC, and/or *any* of Plaintiff's claims, <u>at all</u> - other than to baldly state that Plaintiff's FAC is subject to dismissal as a result.  (F&Rs, p.16:22-27)  This is unhelpful to the goal of providing Plaintiff information she needs to meaningfully and properly amend the FAC, and to not repeat the same errors of pleading[12], but it is also plain error because many of <u>the actual factual allegations</u> of the FAC appear to have been overlooked or ignored, and because the F&Rs find that there are at least four valid federal causes of action stated.  (See F&Rs at pp.20:4-9, 21:27-22:2, and 22:18-23:3).

## B.  First Amendment Retaliation Claim

The first consequence of the erroneous processing of the FAC concerning an actual claim/cause of action arises in the analysis of Plaintiff's retaliation claim[13] under the First Amendment, which lies at pages 17-18 of the F&Rs.  In essence, the Magistrate completely ignores the foregoing "Rule 8" issue, apparently considers only the content of Plaintiff's FAC page 8, at footnote 17 (but only the last part of the footnote - completely disregarding the first portion), and states therein his determination that:

> "But here, the only arguable suggestion of retaliatory motive is a news article wherein Defendant Puckett refers to Plaintiff's litigation activity.  This link, however, is too tenuous to ascribe retaliatory intent to Defendants as a whole or even to Defendant Puckett in particular.  Given this deficiency, Plaintiff's First Amendment claim is subject to dismissal." (F&Rs, p.18:12-16.)

---

[9] F&Rs, p.15:21-23.  See MODEL RULES OF PROF'L CONDUCT r. 3.3(a) ("[A] lawyer shall not knowingly … (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;".

[10] And here again, it is worth noting that "detailed facts" are not required to be pled at this stage of the case - particularly relating to facts that are closely held by the opposing parties.  Rather, simplified notice pleading standards rely on liberal discovery and summary judgment motions to define disputed facts and to dispose of unmeritorious claims.  See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  By contrast, a 12(b)(6) motion cannot require fact-pleading or presentation of evidence - it merely "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[11] That is, the content of pp.16:1 - 17:5, appears to be simply a sort of standardized, generic statement that is routinely pasted into pro se complaint analysis, but ***not*** explained/applied to any claims in the FAC.

[12] See *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987), superseded on other grounds by statute as stated in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)) (en banc).

[13] This claim appears as "Count V" on page 20 of the FAC, at paragraphs 49-50.

To reach that incorrect conclusion, not only did the Magistrate not determine fact in the light most in favor of the Plaintiff, but he also overlooked many of Plaintiff's plainly pled facts; including that she had previously filed several legal actions against these same Defendants; that they are aware of those; that Plaintiff's court actions were interfering with a plan to utilize the HCSD to obtain millions of dollars in grant money to be doled out (illegally) by Puckett via no-bid contracts at his sole discretion; and, that the Defendants have reached agreement, and acted (in <u>both</u> their individual, and official capacities[14]), to take actions in furtherance of their plan that would impair Plaintiff's ability to continue her legal activities - and so retaliate against Plaintiff therefor. See, e.g., FAC at ¶¶2, 5-6, 9, 15, 17-18, 21, 24 and at fn22, 41, 44-50, and 53-54.

"On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). ... A plaintiff need not allege '"specific facts"' beyond those necessary to state his claim and the grounds showing entitlement to relief.' *Twombly*, 550 U.S. at 570." (*Woods v. Cnty. of Tehama*, No. 2:18-cv-02918-TLN-DMC, 5 (E.D. Cal. Aug. 3, 2020).)

Liberal construction of Plaintiff's pleadings at this stage, coupled with the resolution of "any doubt" in Plaintiff's favor concerning them, as well as "reasonable inferences" ascertained from the pled facts, means that this material was more than sufficient to properly state a First Amendment claim for retaliation[15], and the claim, and associated "counts" should go forward.

---

[14] See FAC, p.11 at ¶25. C.f F&Rs at p.16:22-24, stating that the FAC "largely fails" to provide allegations sufficient to invoke personal capacity liability. This statement, unaccompanied by any legal analysis of any portion of the FAC at all, is somewhat astounding, considering that most of the Defendants are alleged to have <u>personally participated</u> in the coordinated, joint-actioned, illegal searches and seizures at Plaintiff's home in July of 2021 (at FAC, pp.2-3, 5-6, and recognized as a valid cause of action at F&Rs, p.20:4-9), and/or to have used their official positions with the HCSD to "ratify" (CACI 3004) that conduct by Puckett and Dingman insofar as neither the Vice President, the Secretary, nor any other Board member ever responded to Plaintiff's submissions of formal written requests for information on how to restore her water service, and for hearings on the allegations made against her by Puckett and Dingman. (FAC, p.5 at fn13; and, pp.6-7; c.f., ECF #35, pp.4-5.)

[15] The Magistrate also stated that Plaintiff failed to plead a "chronology of events from which retaliation can be inferred" at F&Rs, at p.18:9-16. Plaintiff <u>did</u> however do so (FAC, pp.5-9), while the only thing that Plaintiff must show at this stage as to motivation is the likelihood that the Defendants "intended to interfere with" Plaintiff's speech/petitioning - which Plaintiff may prove by circumstantial evidence, such as the joint actions of Puckett and the other Defendants against her, and the continued refusal of the Defendants, and the HCSD as an entity, to provide her with a hearing to challenge the "violations" alleged against her by Defendant Puckett in July, 2021. See *Mendocino Environmental Center v. Mendocino County*, 192 F. 3d 1283, 1300-1302 (9th Cir. 1999).

As to the intent of the Defendants, Plaintiff is only required to plead such in general terms anyway (FRCP Rule 9(b)). Whether defendants were involved in an unlawful conspiracy when they acted as alleged in the FAC is generally a factual issue and should be resolved by the jury, "so long as there is a possibility that the jury can `infer from the circumstances (that the alleged conspirators) had a `meeting of the minds' and thus reached a understanding' to achieve the conspiracy's objectives." *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *reversed in part on other grounds,* 446 U.S. 754 (1980)) (quoting *Adickes v. Kress & Co.,* 398 U.S. 144, 158-159 (1970)).

It is pretty straightforward to say that when Defendant Puckett, President of the HCSD, showed up at Plaintiff's house with Dingman, and several Siskiyou County Sheriff's Deputies in tow, that all those Defendants had "agreed" to do so. Further, they all acted without any warrants or other process from the Courts, and without having followed the HCSD's very own Rules and Regulations provisions concerning notice to Plaintiff - instead simply going about seizing cars, driveway spots, Plaintiff's water meter, and water pipes at the instructions and whim of Puckett, and thereafter refused to provide her any due process - meanwhile treating her much more harshly than any other customer of the District. (FAC at pp. 2-3, 5-6, 8-9, 14, 17-21.)

Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence, or the existence of joint action (which is prevalent in this case; i.e., FAC, pp.2-3, 5-6, 9-13, 19, 22-23, 46, 68). *See Magana v. Com. of the Northern Mariana Islands*, 107 F. 3d 1436, 1447 (9th Cir. 1997); *Kunik v. Racine County, Wis.*, 946 F. 2d 1574, 1580 (7th Cir. 1991); *Hampton v. Hanrahan*, 600 F. 2d 600, 620-621 (7th Cir. 1979). Moreover, "[q]uestions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment." *Braxton-Secret v. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985). The same logic should apply while analyzing a 12b motion.

A Plaintiff raising a First Amendment retaliation claim has the initial burden of pleading and proving that: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship

between the constitutionally protected activity and the adverse action[16]. Upon such a showing, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to <u>draw the reasonable inference</u> that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court **must** "draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Additionally, where, as here, a plaintiff proceeds pro se, the Court must "construe the pleadings liberally" and "afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The F&Rs are the result of a 12(b) Motion filed by the Defendants, ECF #47.

"[A]s a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, — S. Ct. —, No. 20-804, 2022 WL 867307, at *3 (U.S. Mar. 24, 2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (internal quotation marks omitted). See, i.e., *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986) (citizens targeted by law enforcement).

Courts may take "the evidence of the motive and the [defendant's wrongdoing] as sufficient for a circumstantial demonstration that the one caused the other." *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman*, 547 U.S. at 260). In assessing whether this causal element is met, courts have also given weight to circumstantial evidence such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action. See *Howard v. City of Coos Bay*, 871 F.3d 1032, 1045 (9th Cir. 2017) (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001)).

---

[16] Plaintiff pled facts pertaining to this element in the FAC at paragraphs 1 at fn1; 5-6; 11; 15; 17 and at fn17; 19; 31-32; 41; 45-54; and, 68-69. The Magistrate states in the F&Rs that Plaintiff **met her burden** as to items #1 and 2 even without this material (all of which he overlooked; c.f., F&Rs, pp.17-18).

In this instance, a preliminary injunction was issued by this Court against the Defendants because not only did they violate Plaintiff's due process rights concerning water service as stated by the Supreme Court in *Memphis Light, Gas & Water Div. v. Craft* (1978) 436 U.S. 1, but they also violated the HCSD's own Rules and Regulations (ECF #34; the Rules are incorporated into the FAC on p. 2, at fn2) - and did so while seizing the property of Plaintiff and other citizens (from Plaintiff's driveway) without any warrant or court orders to permit them to do so.

At this point, it is also worth mentioning that unlike private parties, governmental actors such as the HCSD, along with all its Officers and employees/agents are under an affirmative *ministerial duty*[17] to obey all State and Federal Constitutional provisions, statutes, and regulations - as well as the HCSD's own Rules and Regulations, and the Bylaws.

The Supreme Court (and 9th Circuit case law) has adopted a burden-shifting approach to §1983 claims of First Amendment retaliation; upon a prima facie showing of the three elements, "the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Hartman*, 547 U.S. at 260 (citing *Mt. Healthy*, 429 U.S. at 287).

The Supreme Court has defined "but for" causation as being "established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton Cnty.*,140 S. Ct. 1731, 1739 (2020). "In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.* Under this test, if the outcome (the adverse action) would not have occurred without the government official's retaliatory animus, then that animus was a but-for cause of the adverse action. See *id.*

Conversely, if the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech, then the officials' animus was not a but-for cause of the adverse action. See *id.* Thus, if the HCSD Defendants are claiming that they "would have taken those actions despite Plaintiff's First Amendment conduct", then they are admitting that they have policies, customs, and practices, executed by Puckett and Dingman, of willfully ignoring Plaintiff's constitutional rights; but, they

---

[17] "'Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion.' " (*Carrancho v. California Air Resources Board*, 111 Cal.App.4th 1255, 1267 (Cal. Ct. App. 2003), quoting *Great Western Sav. Loan Assn. v. City of Los Angeles* (1973) 31 Cal.App.3d 403, 413.); See also *Pozar v. Department of Transportation* (1983) 145 Cal.App.3d 269, 271.)

must also explain affirmatively why they did so in this instance, on each of the several occasions in July of 2021, and ongoingly thereafter. (See FAC, at ¶¶2, 9-12, 20, 31, and 47.)

### C. Civil Conspiracy for Deprivation of Rights

Another prejudicial episode of this "overlooking" of highly relevant facts by the Magistrate in the F&Rs actually included the entire paragraph of (clearly labeled as §1983 conspiracy claim) "Count" II (FAC, ¶46). The count contains detailed factual elements of the cause of action for conspiracy to violate rights, but is not mentioned in the Magistrate's analysis (appearing in the F&Rs at pages 23-24). Instead, the Magistrate declares that Plaintiff had failed to state a cause of action  - due to looking at/analyzing only the portions of the FAC (¶¶17 and 54) pointed to by Defense Counsel in the Defendants' 12(b) Motion. (F&Rs, pp.23:4-24:3; c.f., FAC, pp.18-19 at ¶46.)

On page 23:5-7 of the F&Rs, the Magistrate sets forth the elements of "conspiracy", so it is quite puzzling when, at the top of the next page (24), he adds two more elements; "[t]here are no allegations, however, to indicate **how** and/or **when** the alleged conspiracy occurred" (emphasis added), and that "without these necessary details, these claims fail." Plaintiff has no comprehension as to why the Magistrate did not consider FAC ¶9, and the actual claim itself (FAC, ¶46) before concluding the FAC "failed to plead facts" establishing a "conspiracy".

After incorporating the additional factual allegations of paragraphs 2, 5-6, 9-11[18], 15-18, and 30-34 of the FAC (by way of paragraph 43 per Rule 10(c)); and, the provisions of the HCSD's Rules and Regulations, and its Bylaws, via paragraph 1 and fn 2 (all of which should have been considered and analyzed as to this claim), Plaintiff's actual claim/cause of action for conspiracy for deprivation of rights is found at ¶46 of the FAC, and it (obviously) should have been included in any analysis by the Magistrate. Failure to do so is clear, prejudicial error.

Plaintiff's understanding of the applicable law is thus:  "To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999); *Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990). "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301; *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

---

[18] Those paragraphs discuss the warrantless trespassing, searches, and seizures at Plaintiff's home, unlawful termination of her water supply, and the locking of her water pipe by Puckett and Dingman.

The agreement/meeting of the minds may be inferred by circumstantial evidence, such as the actions of the defendants. See *Mendocino Envtl. Ctr.*, 192 F.3d at 1301; *Gilbrook*, 177 F.3d at 856. A showing <u>defendants committed acts "unlikely to have been undertaken without an agreement"</u> may support inference of a conspiracy. *Mendocino Envtl. Ctr.*, 192 F.3d at 1301 (emphasis added). Conspiracy participants must merely "'share the general conspiratorial objective.' *Hampton*, 600 F.2d at 621." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).

The F&Rs seemingly ignore, or at the least do not undertake to explain, how the actions of the Defendants alleged in paragraphs 1 (at fn1), 9-11, 19, 45, 46, and 48 of the FAC, alleged to have been *jointly* initiated and undertaken by Puckett and Dingman as to the trespass upon, warrantless search, destruction, and seizure of Plaintiff's real and personal (chattels) property, could be interpreted as <u>not</u> providing a reasonable inference of a "meeting of the minds" to commit those joint acts, and which the Magistrate already found violated Plaintiff's constitutional rights. (FAC, pp. 3-9; ECF #29, pp. 14-16; F&Rs, pp.20:4-9, 21:27-22:2, and 22:18-23:3.)

Normally, allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose," *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000); *Fioriglio v. City of Atlantic City*, 996 F.Supp. 379, 386 (D. N.J. 1998), and allegations that identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights," *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997), properly allege a conspiracy (as here).

The FAC alleges that the Defendants conspired and acted against Plaintiff in July of 2021 (FAC, ¶¶1, 2, 5-6, 9, 15-18, 27, 28, 30, 41-42, 45, 46, 48, 57); alleges the object(s) of the conspiracy (FAC, ¶¶2, 5-6, 9, 17, 23, 41, 45, 46), alleges coordinated, and joint conduct done in furtherance of the conspiracy by all Defendants (FAC, ¶¶2, 5-6, 9, 22, 23, 24 and fn22, 44, 46, 48); alleges how Plaintiff was harmed (FAC, ¶¶9-12, 17, 19, 44, 59, 60, 67, 68, 70), and so clearly identifies at least part of the time period of the conspiracy along with the "actions of the alleged conspirators taken to achieve" the purpose(s) of the conspiracy (FAC, ¶¶1, 2, 9, 21, 36, 46, 60; *Marchese v. Umstead, supra*, 110 F.Supp.2d at 371).

Given the number of persons alleged to have acted in conformity with a conspiracy to violate Plaintiff's rights concerning those claims found viable by the Magistrate in the F&Rs at pages 20:4-9, 21:27-22:2, and 22:18-23:3; the multiple joint actions of these Defendants in the FAC at ¶¶2, 9-10 (and as cited above) demonstrate facts sufficiently particular to allege a conspiracy under 42 U.S.C. §1983 against Puckett, the other Board Defendants, "HCSD", Dingman, and even the John Doe police officers, relating to the events in July of 2021 for

purposes of a 12(b)(6) motion, and Rule 8. See *San Diego Police Officers' Ass'n v. Aguirre*, 2005 U.S. Dist. LEXIS 38166 at \*26-\*27 (S.D. Cal. 2005); *Slade v. Gates*, 2002 U.S. Dist. LEXIS 20402 at \*7-\*9 (C.D. Cal. 2002).

Because the Magistrate's finding of lack of viability of Plaintiff's claim for conspiracy to violate protected rights (F&Rs, p.24:3) was based upon clearly erroneous perceptions and understanding of material facts as to what had actually been pled in the FAC, it must be rejected and overruled. "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004); also *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir.)(quotations/citations omitted), cert. denied, 116 S.Ct. 301 (1995).

### D. Because the Dismissals of the Claims for "Unlawful Retaliation for Exercise of Constitutional Rights", and "Conspiracy for Deprivation of Rights: (42 USC 1983)" Must be Overruled due to Clear Errors of Fact, Plaintiff is Also Entitled to Reinstatement of her 42 USC §1985, and 42 USC §1986 Claims[19]

As argued above in these Objections at pages 4-8 (First Amendment Retaliation Claim), and 9-10 (Civil Conspiracy for Deprivation of Rights), Plaintiff's claims were improvidently dismissed by the Magistrate on the basis of clear errors of fact, in that the Magistrate had simply overlooked the elements necessary to state prima fasciae causes of action.

On pages 23-24, the F&Rs briefly state the elements missing from Plaintiff's §1985 and §1986 causes of action (FAC, p.21) as: "There are no allegations, however, to indicate how and/or when the alleged conspiracy occurred. Without these necessary details, these claims fail." This is the exact same issue Plaintiff addressed in the two counts above, where she was able to readily demonstrate that this factual basis, as it pertains for those two counts, had simply been overlooked by the Magistrate. Because the facts were indeed in the FAC the entire time, the Court should reinstate these claims as well, because the overlooked facts, and legal argument applicable to the reinstatement of Plaintiff's Retaliation, and Conspiracy claims, present the missing element(s) for the 42 USC §1985, and 42 USC §1986 Claims as well. Plaintiff therefore respectfully requests that these claims also be reinstated on the basis of plain error in the F&Rs concerning the content of the FAC, and the facts actually pled.

//////

---

[19] These appear as "Counts" VII, and VIII on page 21 of the FAC.

## E. The Magistrate Committed Plain Error Analyzing HCSD's *Monell* Liability

### a.  Defendant HCSD President Robert Puckett, Sr. is a "Final Policy Maker"

In yet another instance of using incomplete, and/or the wrong facts in the FAC to measure a cause of action against, the F&Rs on pages 24-26 attempt to shoehorn a part of Plaintiff's state-claim gift/waste of public funds allegations against Defendant Dingman[20] into a federal Monell liability claim against the HCSD.  Dingman, who is described in the "Parties" section (FAC, pp.2-3), and at footnote 8 as being the HCSD's "Systems Operator, shift operator, 'acting general manager', watermaster, and/or water plant operator" is assumed by the Magistrate to be the basis for any "Monell" claim because Plaintiff alleged in the FAC at ¶37, that some of Dingman's wrongful actions;

> "were the result of the implementation of, and conduct conforming to, the written and unwritten official policy, custom, or practices of the HCSD as created and implemented by one or more of the Board Defendants, and/or the HCSD itself."

However, the FAC does not contain a separately-stated Monell claim at all.  Instead, the HCSD is simply named as a Defendant to most of the causes of action, while each of the Officers and employees of the HCSD who participated in the "raid" on Plaintiff's home, and other wrongful conduct (see FAC, pp.5-12), are sued in both their official, and individual capacities (FAC, ¶25).  Additional allegations are made concerning policies, customs, and practices, of both the HCSD and its officers in the body of the FAC.  Because the HCSD has only six (6) people operating it (the five Board members, and Dingman; FAC, p.3 ¶3), it is absolutely fair to say that any wrongful actions of those persons constitute the actions of the "HCSD" itself, and so give rise to Monell liability.

In this case, because the Defendants' 12(b) Motion was so sloppy, incomplete, and truncated on this subject (ECF #47, p.16-17) that it did not even bother to point to any specific portion of the FAC, it left the Magistrate (and Plaintiff) to guess as to the subject, and he simply guessed wrong.  (F&Rs, pp.24-26.)  What is more, he did not carefully read the FAC's foundational allegations (FAC, pp.2-3, and 5-6).  In fact, despite citing to paragraph 36 of the FAC which refers specifically to Dingman having;

> "acted against Plaintiff as specifically set forth in foregoing paragraphs 9-24", and;
> "agreeing to perform, aiding, abetting and ratifying the wrongful actions of the other
> Defendants (**and particularly Puckett during the period of July 17-23, 2021**) ... taking
> illegal actions such as the seizure and conversion of Plaintiff's real and personal property

---

[20] See FAC, State-Claims "Count - IV", pp.23-24, ¶¶61-63.

(and that of her contractors and guests), and cutting off the supply of water to Plaintiff's home and property without notice, hearing, and/or opportunity for review" (FAC, ¶36, emphasis added.)

the Magistrate rather grossly misstates the record at F&Rs 26:4-7, proposing that;

"Plaintiff alleges only that the Board Defendants knew of Dingman's conduct and ratified it. But this conclusory allegation fails to specify the precise policy or custom at issue and fails to even identify how the Board became aware of the conduct so as to ratify it."

Obviously if a worker (particularly when he is the *only* worker the agency has) is carrying out policy/task instructions from a supervisor, it is at least a "reasonable inference" that the supervisor is "aware" the worker is doing so, and unless the supervisor stops the worker, his order to the worker to undertake those efforts, and then his continued allowance of the worker to conduct the task ongoingly constitutes a form of "ratification".[21] Given the fact pleading at FAC page 3, ¶3 concerning the composition of the "staff" at the HCSD, it is also a "reasonable inference" that the Board members, and Dingman, all interact closely on a daily basis during "regular" times.

However, as specifically pled in the FAC at page 2, ¶2; page 3, ¶3; and, page 5, ¶9, Dingman and Puckett (who were alleged to be in contact with the other Board members), along with the police, all went together to Plaintiff's home one or more days in July, 2021 to jointly undertake warrantless searching and seizures for which they are now being sued. (FAC, ¶¶2, 5.)

Thus, and specifically here, the allegations as to Dingman are perfectly accurate in context, as they reflect the fact that when Dingman met Puckett at Plaintiff's house in July, 2021, HCSD President Puckett (the creator of "policies", "customs", and "practices" of the HCSD) ordered Dingman to assist Puckett and the police in cutting Plaintiff's shrubs; removing/seizing vehicles and parts of her driveway; removing/seizing her water meter; and, installing locks on her piping - all without any warrants, Court orders, exception to the warrant requirement, proper notice, and a pre-deprivation hearing as required by Due Process. (FAC, ¶¶2, 9-17.)

So it makes perfect sense to "reasonably conclude" that as a result of those adventures,

"[t]he Board Defendants and HCSD knew of, agreed with, willfully permitted, ratified, and encouraged each instance of the aforementioned wrongful acts by Dingman. Further,

---

[21] See CACI 3004; [[Name of official] "ratified" the decision if [he/she]knew the unlawful reason for the decision and personally approved it after it had been made.]" See also *Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him."

the actions of Dingman were the result of the implementation of, and conduct conforming to, the written and unwritten official policy, custom, or practices of the HCSD as **created and implemented by one or more of the Board Defendants**" (in this case, Puckett), (FAC, ¶37, all emphasis added.)

Because these events were undertaken by Dingman upon the orders of, and with the direct participation of, President Puckett, the highest ranking official of the HCSD, Plaintiff is relieved from having to attempt to articulate all of the specifics cited by the Magistrate in the F&Rs at pages 25-26 - due in no small part to the fact that they are pled in the FAC.  More, as cited therein, and applicable here in the case of Puckett and Dingman:

> "a local government may be held liable under §1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.' " *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (2010) (quoting  Gillette v. Delmore , 979 F.2d 1342, 1346–47 (9th Cir.1992))."

This concept is properly applied to the repeated invasions of Plaintiff's curtilage by Puckett, Dingman, and the Sheriff's Deputies in late July, 2021, as pled in the FAC's critical allegations at pages 2-3, and 5-8.  Among those foundational allegations are that Defendants Puckett and Dingman both, **personally** went to Plaintiff's home and then and there trespassed upon, seized, destroyed, and carried off without a warrant, various of Plaintiff and other citizens' property (including her water meter), and shut off the water supply to her home without proper notice and any pre-deprivation hearing.  (*Id.*)  The entire reason that Dingman and Puckett were at Plaintiff's residence was Puckett's intent to use his authority to have to police help him and Dingman "punish" Plaintiff for various "violations" of HCSD water regulations alleged against her by Puckett, but for which he and the other Board Defendants never granted Plaintiff any sort of hearing in compliance with due process.  (FAC, ¶¶2-6, 9-11, 15-18, 20-24.)

Additionally, because Puckett specifically instructed Dingman to undertake blatantly unconstitutional acts against Plaintiff and her guests, and then ratified and approved Dingman's conduct afterwards; that means that under *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir.1992) and its progeny, that Puckett was the one dictating policy for the HCSD, and so Monell liability is established against the HCSD to Plaintiff's benefit.

It all seems fairly obvious, and Plaintiff is somewhat startled that the Magistrate is having such difficulty finding, accepting, and processing the relevant facts in her complaint - particularly when Plaintiff specifically cites in her Opposition to the 12b Motion to those paragraphs that contain the critical information to make out her claims.

Regardless of why, however, Plaintiff objects to faulty, flawed, and incomplete Rule 12/Rule 8 evaluations that are prejudicially denying her a "fair shake" as a pro se litigant, and also denying her multiple valid causes of action in each case. A claim is facially plausible "when the plaintiff pleads factual content that <u>allows the court to draw the reasonable inference</u> that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court **must** "draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Additionally, where, as here, a plaintiff proceeds pro se, the Court must "construe the pleadings liberally" and "afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). This is simply **not** being done in this case - and it is "**not** being done", repeatedly, and prejudicially.

The Magistrate's F&Rs purportedly address Plaintiff's Monell liability allegations[22] of the FAC at pages 24-26, but then focus on **totally unrelated** allegations constituting some of her <u>state law claims</u> involving (lower-level functionary) Dingman's theft/waste of public funds by way of falsified timesheets (see also FAC, ¶¶61-63). Plaintiff's <u>actual</u> Monell allegations properly relate to the Board Defendants, and their responsibility for the direct operation of the HCSD - particularly concerning HCSD President Puckett, since it was he who <u>personally</u> oversaw and directed the overt, highly invasive acts complained of in the FAC, and who recruited Dingman and the Sheriff's Deputies to assist him in undertaking those civil rights violations involving Plaintiff's home, property, chattels, water service, and privacy in July of 2021 - which the Magistrate identified as viable causes of action in the FAC at F&Rs, pp. 20:4-9, 21:27-22:2, and 22:18-23:3 (while some are alleged to have been undertaken pursuant to policy, custom, or practice; see, i.e., FAC, ¶¶2, 9-11, 15-16, 19, 22, 27, 33, 43, 46, and 52).

Plaintiff also clearly pled in the FAC the capacity of Defendant Puckett as President of the HCSD[23] in the FAC at ¶¶2, and 3, and set forth in detail that Puckett undertook the

[22] The term "allegations" is used because the FAC does not actually contain any separate "Monell liability claims" as asserted by the Defense in the 12b Motion (ECF #47-1, pp.16-17), and as listed by the F&Rs at page 24. Plaintiff <u>did</u>, however, specifically allege that the unlawful water service termination and other constitutional violations occurred because of the unlawful adoption and imposition by the HCSD, Puckett, and Dingman of unwritten customs, policies, and practices of ignoring state and federal laws/rights; and, by adopting and imposing "in manners contrary to law" HCSD's formal "Resolution 2021-02", as well as other "official actions" taken during the specified timeline (FAC, ¶1), which resulted in the Constitutional violations attributed to the Defendants. See FAC, ¶¶2, 4-6, 9-11, 15-18, and 21-24. These are enough facts, and enough specificity, for a pro se complaint to survive a Rule 12b/Rule 8 analysis. (*Iqbal, supra; Retail Prop. Tr., supra, Hebbe v. Pliler, supra.*

[23] There are three methods by which a policy or custom may be demonstrated: (1) When a longstanding practice or custom…constitutes the standard operating procedure of the local government entity; (2) A

organization, planning, direction, and control of those actions, practices, and "policies"[24] of the HCSD entity that were imposed/enforced by himself, Dingman, and the police in committing clearly constitutional-level wrongs against Plaintiff (FAC, pp. 1-3, 5-6, 18-19).  Rather than parse those obviously relevant factual allegations (pointed out in the Opposition, ECF #56, p.16) as to President Puckett, the Magistrate inexplicably sidetracks into fraud/falsifying documents, and waste of public funds concerning Dingman and his work hours - *none* of which have **anything** to do with Monell liability since those actions are not federal claims, nor constitutional violations, and do not involve a high-ranking official of the HCSD - instead dealing with the lowest-level functionary the HCSD has.  (F&Rs, pp. 24-26; c.f., FAC, ¶¶2-3, 35.)

Because the alleged fraud, theft, and waste of public funds by Dingman are instead purely state-law matters (including the state-level "conspiracy" mentioned in ¶61 of the FAC), they are not any part of Plaintiff's claim under §1983 for conspiracy to commit deprivations of civil rights[25] (see FAC, ¶46), nor can they possibly be related to any sort of Monell liability for any of Plaintiff's claims.  The confusion by the Court, and the resultant inapplicable, very opaque discussion, and prejudicial rulings in the F&Rs at pages 24-25 arising therefrom, results in an extremely baffling, and an unduly limited review of Plaintiff's FAC that is prejudicial to her.

In this instance, the allegations of the FAC, taken together and read in the correct frame of reference[26], paint a clear picture of HCSD President Robert Puckett running amok - without care or consideration for niceties like Constitutional Rights, or the consequences of his actions. Plaintiff made mention of this in her Opposition (ECF #56, p.16) to the Defendants' 12b Motion.

*Monell* holds that municipal governments may be sued for damages, as well as declaratory and injunctive relief, whenever "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover. . . local governments . . . may be sued for

---

decision-making official responsible for the violation(s) was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate who was responsible for the violation(s). (See *Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).)
[24] See definition of "policies" in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-481 (1986).
[25] Rather, allegations of a separate conspiracy to defraud (etc) the HCSD by the Board Defendants to give Dingman extra money he was not entitled to is set forth as a state law claim.  See FAC, paragraphs 61-63.
[26] "Accept[ing] all allegations in the complaint as true, to view them in the light most favorable to the plaintiff, and to afford a pro se pleading the benefit of any doubt." (*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

constitutional deprivations visited pursuant to governmental 'custom ' even though such a custom has not received formal approval ...." *Monell*, 436 U.S. at 690 -91.

> "An individual 's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy - making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred."

> (*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) [citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-484 (1986)]; *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); and *Laverdure v. County of Montgomery*, 324 F.3d 123, 125-126 (3d Cir. 2003).)

The Supreme Court has explained what constitutes an "official policy " as follows:

> "[O]fficial policy " often refers to formal rules or understandings -- often but not always committed to writing  -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. That was the case in Monell  itself, which involved a written rule requiring pregnant employees to take unpaid leaves of absence before such leaves were medically necessary. However, as in Owen and Newport, a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim [of such a policy] would therefore be contrary to the fundamental purpose of §1983.

> (*Pembaur*, 475 U.S. at 480-81 (1986) [referencing *Monell*, 436 U.S. 658; *Owen v. City of Independence*, 445 U.S. 622 (1980); and *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)].)

"Where plaintiffs allege that their rights were deprived ... by the unconstitutional application of a valid policy, or by a city employee's single tortious decision or course of action, the inquiry focuses on whether the actions of  the employee in question may be said to represent the conscious choices of the municipality itself." *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). "Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city 's authorized policymakers. " *Ibid.* (citing *Pembaur*, 475 U.S. at 481-82).

"Thus, even a single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality in

the constitutional deprivation for the purposes of §1983." *Amnesty America*, 361 F.3d at.   In this case, that would be President Puckett.   In fact, although not made part of the FAC, there has been a great deal of live testimony (ECF #36) and declarations provided to the Court by Defendant Puckett, and much of it speaks to his long-time assumption of ultimate authority within the HCSD, and how he made the decisions to undertake, and told others (including Dingman) to participate in, the wrongful, civil rights-violating conduct in Plaintiff's driveway in July of 2021 and ongoingly as specified, that has been alleged in the FAC.

Thus, a municipality may be held liable for the actions of its employees when "the policymakers make a deliberate choice from among various alternatives to follow a particular course of action, where the policy reflected deliberate indifference to the constitutional rights of the municipality inhabitants and where the policy was the moving force behind a constitutional violation." *Mark v. Borough of Hatboro*, 51 F.2d 1137, 1149 (3d. Cir.), cert. denied, 516 U.S. 858 (1995).   Therefore, liability must attach when the "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

### b. Supervisory Liability of Puckett, and other Board Defendants

As to Plaintiff's federal claims, generally, supervisory liability can also be imposed against HCSD President Puckett even without a determination of municipal liability. Supervisory liability runs against the individual, is based on his or her personal responsibility for the constitutional violation and does not require any proof of official policy or custom as the "moving force," *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)), behind the conduct - although because Puckett actually creates, determines, and imposes policies, customs, and practices of the HCSD as a "policymaker" government official, his conduct also imposes municipal liability upon the HCSD.

See *McGrath v. Scott*, 250 F. Supp.2d 1218, 1222, 1223 (D.Ariz. 2003):

> ("[M]unicipal and supervisory liability present distinct and separate questions that are treated and analyzed as such. . . . Supervisory liability concerns whether supervisory officials' own action or inaction subjected the Plaintiff to the deprivation of her federally protected rights. Generally, liability exists for supervisory officials if they personally participated in the wrongful conduct or breached a duty imposed by law. . .In contrast, municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs federally protected rights....  Typically, claims asserted against supervisory officials in both their individual and official capacities provide bases for imposing both supervisory liability (the individual claim) and municipality liability (the official capacity claim) if the supervisor constitutes a policymaker.").

"[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). Plaintiff pled throughout the FAC that Puckett personally participated in rights violations at Plaintiff's home in July, 2021 while also directing Dingman, the Siskiyou County Sheriff's Deputies, and Bruce's Towing to also personally participate in, and aid him in committing each of those acts. Plaintiff also pled that President Puckett whimsically, arbitrarily, and capriciously creates/imposes customs, practices, policies and procedures in his official capacity, presenting them as those of "the HCSD"; appointed himself to act as the enforcement arm of the HCSD (by issuing "violations" without any due process procedures, and imposing punishments unilaterally and with no provision for judicial review); and, dictates the official conduct of the HCSD itself relating to vendors/contractors, and media contacts - all occurring without actions of the Board beforehand in violation of the Brown Act, and Government Code ¶¶61045, 61050, and 61051. (FAC, pp.2-8 (and at fn17), 11 at fn22, 16-19, 21, 23-25, 29.)

### c. Personal and Individual Capacity of HCSD Officers is Properly Alleged

Contrary to the statement by the Magistrate in the F&Rs at page 16:22-25, to designate claims against public officers in their "individual" capacity, a plaintiff need only allege such a status in the complaint. As for a factual basis, merely indicating the official personally participated in, was "directly responsible" for, or "ratified" after the fact the constitutional deprivation or connected acts alleged is sufficient. "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) . Plaintiff has pled those allegations and related claims in the FAC at pages 2-14, and 17-25.

Local officials sued in their personal capacity are "persons" for purposes of §1983, and so the allegation of capacity is important to establish this Court's jurisdiction, and relates to the HCSD Defendants' oft-repeated (but specious) claim that they have 11th Amendment immunity. See *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining the Eleventh Amendment does not bar claims for damages against state officials in their personal capacities; *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992) . Thus, liability in a personal-capacity suit is demonstrated by alleging and showing that the official caused the alleged constitutional injury. See *id*. at 166 . As explained in *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997), a

§1983 plaintiff can easily meet individual capacity pleading requirements by stating that she "sues each and all defendants in both their individual and official capacities."[27]

Although no analysis on this topic appears in the F&Rs (pp.24-26), a Court will usually examine the nature of the proceedings to determine the capacity in which a defendant is sued. *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1996).  Where the plaintiff is seeking damages against an official, a strong presumption is created in favor of a personal-capacity suit[28].  See *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).

Plaintiff's complaint quite clearly sets forth personally -executed, constitutional rights-violating actions jointly and individually taken by Defendants Puckett and Dingman on pages 2-3, 5-14, and 18-25.  The HCSD and its Board officers as individual Defendants, and collectively as "the Board Defendants"[29], are identified at FAC page 3, ¶3.  The motivation for, and specific acts that the "Board Defendants" took to instruct, promote, approve, "ratify", and undertake the wrongful conduct *executed* by Puckett, Dingman, and the John Doe Sheriff's Deputies on behalf of the HCSD against Plaintiff as alleged in the FAC is set forth initially at ¶¶5-6[30], 21-23, 30-33.

## 2.  Plaintiff's ADA Claims are Sufficient to State a Claim.

Under the ADA, an individual is considered to have a "disability" if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.  In what appears to be another instance of Counsel not bothering to actually read the FAC, the Motion attempts to attack Plaintiff's ADA claims as being based upon "facilities" access, and physical barriers thereto. (Motion, p. 16.)  Although it is true that the HCSD refuses to provide Plaintiff with any facility to inspect records or conduct other business (and so details of "barriers" to any facility are not relevant), in reality, Plaintiff's claims relate to the reasonable accommodation portion of

---

[27] This exact statement is made in the FAC at p.11 at ¶25.

[28] These Defendants, however, are local officials of a political subdivision of the State of California - not officers of the State itself, and so are not entitled to 11th Amendment immunity regardless.

[29] Plaintiff realizes that the Magistrate dislikes the "grouping" of Defendants, often stating that it keeps the individual Defendants from knowing what the allegations against them are for purposes of "Rule 8". However, in this case, it is important to have a way to refer to the governing body of the HCSD collectively, as many of Plaintiff's allegations relate to the considered joint action of all of those Defendants comprising the Board taking some sort of official action based upon a collective agreement and/or plan to do so.  Another reason is due to the fact that the HCSD can (legally) only act through its properly-convened Board of Directors, and so collective actions by the Board members are also attributable to the agency.  See example in the FAC at p.11, fn22.

[30] See also, i.e., FAC at pp. 9, 10, 11 (and fn 22), 12, 13, 15 (allegations as to Dingman further meet the heightened pleading requirements for fraud), 16, and 19.

the ADA relating to participation in the HCSD's services and programs along with access to its records, and its applications of various rules, regulations, orders, polices, etc, without any corresponding consideration of Plaintiff's special needs and circumstances as a disabled person - despite her requests that it, and officers/employees/agents, do so.  See FAC, pages 4, 6, 20-21.

Under the ADA, "services, programs, and activities" are broadly construed by courts to cover virtually everything a public entity does. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (" Rather than determining whether each function of a city can be characterized as a service, program, or activity for purposes of Title II, however, we have construed 'the ADA's broad language [as] bring[ing] within its scope 'anything a public entity does.'")  Additionally, local public entities are required to proactively provide public notice about the ADA under 28 C.F.R. §35.107(b) - something that the FAC alleges the HCSD does not do, even when asked.  (FAC, ¶¶7, 9, 11, 18, 31-32, and 51-52.)  The target audience for public notice includes applicants, beneficiaries, and other people interested in the state or local government's programs, activities, or services. The audience is expansive, and includes everyone who interacts, or potentially interacts, with the local agency .

Title II of the ADA prohibits public entities from discriminating on the basis of disability. 42 U.S.C. §12132.  To make out a prima facie case for a violation of Title II, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (citation omitted).  Therefore, in the context of a 12(b) motion, a plaintiff must merely allege those elements - as was done here[31].

---

[31] Unusually, this Court also has before it some admissible statements by a Defendant it may consider by way of judicial notice of its own files in this action in relation to the 12b Motion - those being made by Defendant Puckett while he was under oath and testifying before the Court on September 14, 2021.  In the transcript that appears in the record as ECF #36, Puckett expresses his disregard for Plaintiff's disabled status in regards to the issue of her inability to walk out to her fence line to check for random notices that may be affixed there at (ECF #36, pp.26:15-27:4 - demonstrating good cause for Plaintiff's allegations).  An unqualified government officer's "disputing" a person's disability is not an excuse to refuse accommodation under the ADA.  Furthermore, in regards to "notices" the HCSD and its Officers provide to Olson, ADA implementing regulations **require** public agencies to take appropriate steps to ensure communications with applicants, participants and members of the public with disabilities are as effective as communications with others. 28 C.F.R. §35.160(a).  Olson has properly alleged in the FAC that this was not done - particularly since the HCSD failed to even follow its own rules regarding written notice

## 3. Despite at Least Four Valid Federal Claims in the SAC, the Magistrate Erroneously Did Not Assert Jurisdiction Over, or Analyze Plaintiff's Pendent State Claims

The Magistrate found that Plaintiff had stated at least[32] four (4) viable Federal causes of action in the FAC. See F&Rs, pp. 20:4-9 (4th and 5th Amend. claims), 21:27-22:2 (Due Process claim), and 22:18-23:3 (Equal Protection Claim).

At page 29 of the F&Rs, the Court states that;

"Defendants fail to analyze any of Plaintiff's ten state law claims to determine whether they state a cause of action, and the Court declines to conduct that analysis for them. To the extent Defendants argue that the Court should decline supplemental jurisdiction because Plaintiff fails to state a federal cause of action, the Court has found that Plaintiff's allegations are sufficient to state Fourth, Fifth, and Fourteenth Amendment claims. Nevertheless, the Court will recommend that supplemental jurisdiction be declined[33] at this time **because Plaintiff has not complied with Rule 8's pleading requirements, as discussed supra.**" (emphasis added)

This statement is unclear, confusing, and nerve-wracking because Plaintiff cannot tell if the Court is saying the purported Rule 8 deficiencies lie with her State-claims[34], or if the Court is

---

being given via USPS, and/or "in person". (FAC, ¶¶7, 9, 11, 20, 24, 31, 32, and 51-52; ECF #36, §§2.10, 4.03, and 4.15.)

[32] Plaintiff notes that the analysis is somewhat incomplete, and that she did not help matters by combining claims a few times. She also brought same-titled claims against different Defendants for different events (FAC, pp.18-21), so there are actually as many as six viable Federal claims pending, not counting those Plaintiff argues for reinstating herein.

[33] Because of the (at least) four viable federal civil rights causes of action found by the Magistrate in the FAC, the Court is actually not free to simply "decline" supplemental jurisdiction of related state law claims, and instead may only do so under very specific circumstances, none of which are set forth in the F&Rs. See 28 USC §1367(c). C.f., 28 USC §1367(a) (emphasis added): "[D]istrict courts **shall** have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy..."  Furthermore, "a district court's decision under any of the §1367(c) provisions must be "informed by whether [declining jurisdiction] comports with the underlying objective[s] of . . . economy, convenience, fairness, and comity," *O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) (first alteration in original) (quoting *Exec. Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir.1994)). This is because the Court "has an affirmative duty to decide cases properly before [it], absent a firm basis for declining to do so." *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (citation and internal quotation marks omitted); see also *City of Tucson v. U.S. W. Commc'ns, Inc*., 284 F.3d 1128, 1132 (9th Cir. 2002) (same).

[34] If so, Plaintiff respectfully points out that the F&Rs are thereby not providing her with an any analysis as to how any of those claims is actually deficient under Rule 8, as the prior analysis seemed to be under Rule 12, and mentioned simply elements and facts relating thereto that Plaintiff needed to amend into them to achieve viability. ("[T]he district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet, supra*, 963 F.2d at 1261; *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

stating that despite its finding of <u>four</u> properly-stated and valid federal constitutional claims[35], that the FAC *itself* is still subject to complete dismissal because some <u>other</u> of Plaintiff's claims do not meet "Rule 8" standards in some generalized, undefined (F&Rs, pp. 16-17) way[36].

Upon review, Plaintiff realizes that while some of her State-law claims "wont fly" (e.g., Count VI, ¶65), it is also true that most of them are properly pled, and are supported by the facts presented in the FAC.  It is not correct to say that the complaint, and/or all of her claims just sort of generally "violate Rule 8" and should be dismissed - particularly without clarification.

**4. Rule 8 Seems to be Misread, and Misapplied in the F&Rs - Along With Being Improperly Merged/Confused With Rule 12 .**

When considering a Rule 12(b)(6) motion, the reviewing court must accept all allegations in the complaint as true, to view them in the light most favorable to the plaintiff, and to afford a pro se pleading the benefit of any doubt (*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc); *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).  Furthermore, absent some special types of claims, specific details are not normally required to be pled.  ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,'" *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555)[37].

Courts agree that while stating a claim became stricter after Twombly and Iqbal, the filings and motions of pro se parties continues to be construed  liberally.  See *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (as amended) (explaining that Twombly and Iqbal "did not alter the courts' treatment of pro se filings," and, "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." (internal citation omitted)); *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)  (pro se complaints are construed liberally and "may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts

---

[35] See F&Rs, pp. 20:4-9 (4th <u>and</u> 5th Amend. claims), 21:27-22:2 (Due Process claim), and 22:18-23:3 (Equal Protection Claim).  Clearly those claims thus **do** comply with Rule 8 (and 12).

[36] In the Ninth Circuit, dismissal of a complaint that states viable claims is normally considered error. "Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged 'enough facts to state a claim to relief that is plausible on its face.' *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). " *Woods v. Cnty. of Tehama*, No. 2:18-cv-02918-TLN-DMC, 6 (E.D. Cal. Aug. 3, 2020)

[37] And yet, clearly the obverse is true in the requirements being imposed on Plaintiff, who merely seeks more detailed explanations of what the Magistrate finds fault with; which claims those faults apply to; and, what it is the Court wants to see her plead by way of "facts" or other elements so that she may comply. C.f., F&Rs at pages 6:12-13, 16:22-24, 25.

in support of his claim which would entitle him to relief,").  Plaintiff notes that there are <u>no</u> exclusions as to the application of "Rule 8" to any sort of pro se pleadings in these authorities.

Here, it seems that the Magistrate, in applying a "Rule 8" analysis in the F&Rs, does not apply that Rule to individual "<u>claims</u>" as mandated at Rule 8(a)(2), but is instead applying the consequences set forth in <u>Rule 12</u> as when there is a determination the complaint states no viable claims.  The F&Rs also make no analysis concerning affording pro se plaintiff's the presumptions and leeway mandated as to Rule 12b by the jurisprudence of this Circuit, insofar as what is meant by "short and plain"[38] and "sufficient to give notice" as applied to any portion of the complaint itself - particularly in the face of *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131-32 (9th Cir. 2008); *Bhatt v. Hoffman*, 716 F. App'x 124, 128 (3d Cir. 2017), etc.

Without providing examples, the F&Rs repeatedly criticize "conclusionary", "irrelevant", and "argumentative" statements made in pro se pleadings as being singular bases for <u>outright dismissal</u> of not only a defective *claim*, but the **entire complaint** as well.  Meanwhile, counseled complaints containing what are very clearly conclusionary statements ( in <u>very</u> long complaints), are routinely approved to move forward in the system.  C.f. <u>52-page</u> complaint pending in this Court as *Chang, et al v. County of Siskiyou, et al*, #2:22-at-00807 - containing:

> "Siskiyou County and its Sheriff Jeremiah LaRue (together "Defendants") are engaged in a sweeping campaign to harass and intimidate Hmong and other Asian Americans. In service of this campaign, the Defendants have used widespread racial profiling in traffic stops, restricted access to water making it difficult for Asian American residents to live, and placed unlawful liens to dispossess Asian Americans of their land." (ECF #1, ¶1.)

> "Defendant Siskiyou County passed the challenged water ordinances, discussed below, with racial animus towards Asian Americans in Siskiyou County, and is liable for racial discrimination against these communities by the Sheriff and County agencies. Defendant Siskiyou County is further responsible for recording unlawful property liens to collect cannabis-related fines." (ECF #1, ¶14.)

> "In addition to the discrimination seen in the enforcement of pre-existing traffic laws, the County has also passed a dragnet of racially motivated ordinances designed to drive out the Asian American community and punish their supporters." (ECF #1, ¶107.)

> "Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein." (ECF #1, ¶¶200, 205, 212, 219, 228, 234, 239, 245, 249, 254, 257, 263[39].)

---

[38] There is also no analysis by the Magistrate of <u>any specific claim</u> in the FAC to provide example to Plaintiff as to why any claim might be deficient in this way.

[39] Such gross "shotgun pleading" definitely violates Rule 8's requirement of a "short and plain statement" and interferes with the court's ability to administer justice. *Byrne v. Nezhat*, 261 F.3d 1075, 1129–1130

Obversely, while Rule 8 merely requires, "a short and plain statement" (FRCivP 8(a)(2)), this type of subjective hypertechnicality applied to eliminate pro se pleadings defeats the simplifying purpose of this rule - which is merely to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  It is <u>not</u> a challenge to minimize claims as much as possible, create a complaint with as few pages as possible[40] - nor to detail every applicable fact; many in exclusive possession of the Defendants. See *Iqbal*, 556 U.S. at 678 ("detailed factual allegations" not required); *Twombly*, 550 U.S. at 555 (same); see also *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) ("[A]lthough Twombly and Iqbal emphasized the plaintiff's burden of pleading sufficient 'factual matter,' the Supreme Court also expressly 'disavow[ed]' the requirement that a plaintiff plead 'specific facts.'".)

In this case, although Plaintiff's amended complaint is perhaps "argumentative", and repetitive in some respects, it is clearly written, logically organized, and clearly reveals the nature of her claims[41]. <u>See</u> *Hearns*, 530 F.3d at 1132 (reversing Rule 8 dismissal of **81**- and **61-page** complaints for similar reasons). Most of Plaintiff's **29**-page FAC consists of independent listings of Defendants, and their general actions relating to her federal and pendent state claims in sections titled: "Parties"; "Overview and Basis for Claims/Action"; two sections detailing additional allegations against the HCSD officer defendants and HCSD employee Clint Dingman; and, a series of labeled and numbered "Counts." (FAC, pp.2-4, 5-13, 13-16, and 17-28.)

In those sections, Plaintiff separately labels her claims and, for the most part, clearly identifies them and the Defendants to which they relate, <u>often in only one or two paragraphs per</u>

---

(11th Cir. 2001); *Strategic Income Fund, LLC v. Spear, Leeds, & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  If included in a <u>pro se</u> complaint, it would certainly lead to instant dismissal.
[40] "[V]erbosity or length is not by itself a basis for dismissing a complaint" under Rule 8.  *Bhatt v. Hoffman*, 716 F. App'x 124, 128 (3d Cir. 2017) (quotation omitted). In fact, in the context of a multi-party, multi-claim pleading "the entire pleading may prove to be long and complicated by virtue of the number of parties and claims." *Id.* See also *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131 (9th Cir. 2008) (same).  A lengthy complaint is permissible if it is "coherent, well-organized, and <u>state[s] legally viable claims.</u>" *Id.*  That is true here, where Plaintiff brings a fairly complicated action of six federal counts, and ten state-law counts against five named Defendants, and John Doe police officers (FAC, p.1), but this Court determined Plaintiff set forth at least <u>four</u> (4) viable federal claims in her FAC. See F&Rs at pp. 20:4-9 (4th <u>and</u> 5th Amend.), 21:27-22:2 (Due Process), and 22:18-23:3 (Equal Protection).  It also seems unfair to classify a 29-page complaint as one of unusual length or "verbosity".
[41] Plaintiff agrees some <u>elements</u> concerning related causes of action may be missing, but that does not render the *complaint* non-viable - merely in need of amendment.

claim. That is most definitely "short and plain[42]" per Rule 8 - particularly when most Pro Se complaints are deemed acceptable if they set forth claims in one to two **pages** each.

The F&Rs seems to be indicating that if a pro se complaint contains *any* "excess" or "argumentative" verbiage, conclusory statements (even those made with supporting facts), etc, that it will be then be labeled as "prolix", "conclusory", "vague", and dismissed on that basis - irregardless of if there are viable causes of action, as is the case here (see F&Rs at pp. 20:4-9, 21:27-22:2, and 22:18-23:3).   This is simply unfair - allowing bad actors to evade consequences.

According to Ninth Circuit and Supreme Court jurisprudence, "legal conclusions" are only disregarded as a basis for any specific claim **if** they are *not* supported by factual allegations; the mere inclusion of "conclusions" does not merit dismissal of an entire complaint that otherwise contains viable causes of action.[43]  This precedent seems to indicate that Rule 8(a)(2) thus does not stand for the proposition that a failure to state a claim for some claims of a complaint means the entire complaint can/should be dismissed even though *other* portions of the complaint do state viable and properly pled causes of action, as here.  The F&Rs do not explain this apparent contradiction, nor set forth the legal basis for the Magistrate's contrary conclusions.

Another repeated error is the F&Rs over reliance upon narrow, exacting applications of seemingly strictly-construed (but vaguely expressed and applied to the FAC) "Rule 8" standards as a repeated basis to claim that Plaintiff's complaint (as opposed to individual *claims* as discussed in the Rule) is subject to outright dismissal.  (F&Rs, pp.16-17:5, 29:6-8.)

In fact, the Magistrate refused to assert mandatory supplemental jurisdiction over Plaintiff's state law claims on the basis that Plaintiff's FAC "does not comply with Rule 8", and so is apparently subject to dismissal on that basis, irregardless of its containing multiple valid Federal claims.  (F&Rs, p.26:3-8.)  Plaintiff is proceeding pro se and on her First Amended Complaint, which the Magistrate found stated four (4) valid federal claims.  (*id.*)   It makes no sense whatsoever to repeatedly state in the F&Rs that the FAC is *also* subject to being dismissed

---

[42] And actually, the term "plain" simply means, in the context of the FAC, that; "a pro se complaint's language will ordinarily be 'plain' if it presents cognizable legal claims to which a defendant can respond on the merits." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004; *Bethea v. Reid* 445 F.2d 1163, 1165 (3d Cir. 1971) ; see also *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) ("[I]t is an abuse of discretion to dismiss a [pro se] complaint merely because of the presence of superfluous matter." And that a pro se complaint, though prolix, "appears to state a claim that would withstand challenge under Fed. R. Civ. P. 12(b)(6)", and so it was an abuse of discretion to dismiss it on that basis).

[43] "Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged 'enough facts to state a claim to relief that is plausible on its face.' *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570)." *Woods v. Cnty. of Tehama*, No. 2:18-cv-02918-TLN-DMC, 6 (E.D. Cal. Aug. 3, 2020)

for unspecified[44] errors that are *not* linked up to any specific portion, claim, or allegation in the FAC. In the Ninth Circuit, dismissal of a complaint that states viable claims is normally considered error.  "Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged 'enough facts to state a claim to relief that is plausible on its face.' *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). " *Woods v. Cnty. of Tehama*, No. 2:18-cv-02918-TLN-DMC, 6 (E.D. Cal. Aug. 3, 2020).  The F&Rs made no explanation as to why such controlling precedent would not apply to the FAC in this action.

Also, the Magistrate, rather than afford Plaintiff and other Pro Se parties leniency and accommodation in pleadings being analyzed pursuant to "Rule 8", seems instead to demand much more precise, factually comprehensive (but undefinedly "short and plain"), pleading.

Plaintiff should be informed exactly what it is in her FAC to which the Magistrate is applying the "Rule 8" terminology used at pages 16-17 of the F&Rs; so that non-conforming portions can be changed as necessary to meet the ambiguous "Rule 8" language of a "short and plain" claim that it is the floor of what is required.[45]  Plaintiff requests this clarification because it appears from the F&R's generalized language[46] that there are no firm, easy to find, widely-adopted interpretive rules that an untrained person could possibly abide by, and indeed the unspecified and fluctuating level of fact- and evidence-based pleading requirements (particularly in relation to pro se pleadings)  frustrates even renowned scholars of the law.  See, i.e., Reinert, A. (2012). PLEADING AS INFORMATION-FORCING. *Law and Contemporary Problems*, *75*(1), 1–35. http://www.jstor.org/stable/23216669

---

[44] Either as to which aspect of Rule 8 is being illustrated, and/or which/what portion(s) of Plaintiff's individual *claims* or particular *allegations* (see FRCivP 8(a)(2), and 8(d))violate any specific part of Rule 8 - along with information explaining how to cure the deficiencies .

[45] That is, while almost all federal courts view a pleading that takes a page or less to state a claim (or "count") as being reasonably succinct, this Court does not.  Instead remarking repeatedly that the choice of words by a Pro Se Plaintiff alone can doom a claim, regardless of how few pages it takes up - or even if just a few of the (amendable) claims do not state a claim, rather than the entire complaint itself.  Since Rule 8 acts as a "floor", not a "ceiling" on pleadings, as long as the information given provides notice of a claim, it follows Rule 8. See *Hearns v. San Bernadino*, 530 F.3d 1124, 1130-32 (9th Cir. 2008).

[46] C.f. F&Rs at page 16; after stating generally that because Plaintiff's complaint contains some (unspecified) material it finds "repetitive and argumentative", and "includes vague and conclusory allegations", that Rule 8 is somehow violated despite Plaintiff's setting forth sufficient factual material to clearly establish at least four (4) federal claims.  The Court then provides a full page of various citations vaguely referencing negative complaint structures that have ***nothing*** to do with Plaintiff's FAC, and fails to point out how any of the criticisms and citations apply to any specific claim, statement, allegation, or grounds for relief in the FAC to aid Plaintiff in her attempts to correct its pleading deficiencies.  See *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987), superseded on other grounds by statute as stated in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)) (en banc).

While reading the F&Rs, Plaintiff appreciates the specific analysis of her claims in the context of Rule 12, but there is no corresponding analysis of each of her claims being rejected under Rule 8 to guide a legally untrained person in drafting claims, and a complaint in the manner the Court wants to see.  Plaintiff therefore respectfully points out that the Magistrate did not analyze the portions of the FAC that are being rejected in the complaint under Rule 8 with that specificity it applied under Rule 12 indeed, there is no explanation *at all* for the alleged deficiencies other than vaguer statements of "argumentative", "vague", "repetitive", 'conclusory", etc and so she cannot understand what the defects are, where they are, what sections and claims they are being applied to, nor any instructions on how she might comply with the Court's desires and expectations.  (*Noll v. Carlson, supra*, 809 F.2d at pages 1448-49.)

## 5.  The Terms of "Rule 8" as Applied by the Magistrate Lack Firm Definitions, and are Incorrectly Applied/Construed *Against* Plaintiff as a Basis for Outright Dismissal of the FAC Despite Four Valid Claims

Confusingly, despite its findings that Plaintiff has stated at least four (4) viable federal causes of action based upon clearly-specified and narrated series of events[47], the Court states in the F&Rs that Plaintiff's *complaint* fails to meet the requirements of Rule 8 by failing to explain what the basis for her claims are.  (F&Rs, pp.16-17.) The Magistrate specifically states in the F&Rs that he finds some (unspecified) parts of Plaintiff's complaint (as opposed to any "claim"- the actual subject of Rule 8(a)(2), which does **not** address "complaints" as a whole) to be "vague" and/or "conclusory", as if those things alone justify outright dismissal of the *entire action* under Rule 8[48], and states the complaint "largely fails to allege facts to support any claim against Defendants in their individual capacities."  The Court then quotes vague citations without explaining any application of them to the FAC's **claims**:

"Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support Plaintiff's claims.  See *id*.  The allegations must be short and plain, simple and direct, and describe the relief Plaintiff seeks.  See Fed. R. Civ. P. 8(a); *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002).
Plaintiff has not complied with  these requirements.  The amended complaint is

---

[47] See F&Rs, ECF #109 at pp. 20:4-9, 21:27-22:2, and 22:18-23:3.

[48] "[I]t is an abuse of discretion to dismiss an entire complaint if it contains some claims that satisfy Rule 8. See *Frazier v. Se. Pa. Transp. Auth*., 785 F.2d 65, 68 (3d Cir. 1986), abrogated on other grounds by *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) and *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (reversing the dismissal of the entire complaint as 'broad and conclusory' where the complaint set forth four claims with adequate specificity)."

repetitive and argumentative, includes vague and conclusory allegations, and largely fails to allege facts to support any claim against Defendants in their individual capacities. "This alone justifies dismissal of her amended complaint. See *Schmidt v. Hermann*, 614 F.2d 1221, 1223 (9th Cir. 1980) (upholding the dismissal of a complaint where it was 'impossible to designate the cause of action or causes of action attempted to be alleged in the complaint.')[49]; In re Sagent Tech., Inc. 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act.")[50]; see also McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming Rule 8 dismissal of complaint that was 'argumentative, prolix, replete with redundancy, and largely irrelevant' and providing an example of a properly pleaded claim, which could be 'read in seconds and answered in minutes')." (F&Rs, ECF #109, pp. 16:4 - 17:5)

This very vague and generalized language of the F&Rs totally fails to identify *any* specific section, part, claim, or allegation in Plaintiff's complaint to which any portion of such language may apply[51]. (c.f., FAC, ¶¶2, 9-11, 19, 24.) It completely fails thereby to inform Plaintiff what claims or portions thereof are deficient in any particular way, and certainly does not provide any pertinent/relevant/applicable "example of a properly pleaded claim, which could be 'read in seconds and answered in minutes'" - nor does it explain how Plaintiff's claims, most only a paragraph, or perhaps two, in length (FAC, pp.18-25), are defective in these regards.

The Court is duty-bound to explain to Plaintiff why that might be so, and what elements may be missing as to her claim(s), and/or any other deficiencies in her pleadings so that she might be given a meaningful opportunity to effectively amend her complaint to "Rule 8" errors. "[T]he district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987), superseded on other grounds by statute as stated in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)) (en banc). See also *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). C.f, Helpful and specific suggestion at F&Rs, ECF #109, p. 26:5-7.

There is also **no** explanation or analysis in the F&Rs concerning the purported application of the standards presented by the complaints under discussion in *Schmidt v. Hermann*, and/or *McHenry v. Renne* to the FAC. Nor do the F&Rs distinguish Plaintiff's pleading from those found to comply with Rule 8 (despite being almost four times as lengthy) in

---

[49] C.f., FAC, pp.18-25, where each Federal and State-law claim/"count" is clearly labeled as a cause of action, with the basis therefor, and the designation of responsible Defendants set forth therein.

[50] See FAC, pp.18-21, Federal "Counts" I - XXI, clearly designating which Defendant(s) are charged with undertaking, or participating in any individual "count".

[51] However, the FAC does clearly "describe the relief Plaintiff seeks" in the section titled "Prayer for Relief" - appearing at pages 26-28 of the FAC.

the later, and now more often cited, *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131 (9th Cir. 2008). This case post dates *McHenry v. Renne* by almost <u>a decade,</u> and specifically discusses ***restrictions and limits of application of McHenry v. Renne in pro se matters***. Clearly the weight of current authority thus favors leniency towards pro se pleadings, encouraging the allowance of them to proceed - no matter if a bit "verbose" or "prolix", so long as they contain those elements meeting the notice requirements of the claims made.

Indeed, *McHenry v. Renne* <u>itself</u> encourages leniency towards pro se pleadings that are the correct "notice pleading", "benefit of any doubt", and "liberality" standards which are still Ninth Circuit jurisprudence even after *Twombly* and *Iqbal,* by stating that a complaint merely needs to set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." (*McHenry v. Renne, supra,* 84 F.3d at 1178.)  See also *Blaisdell v. Frappiea,* 729 F.3d 1237 (9th Cir. 2013).

## CONCLUSION

In assessing the complaint, a reviewing court looks to the complaint as a *whole,* considering whether **all** of the facts alleged raise at least **one** claim that is plausible on its face. *See Speaker v. U.S. Dep't ofHealth & Human Servs. Ctrs.for Disease Control and Prevention,* 623 F.3d 1371, 1382 (11th Cir. 2010). Thus, the court is supposed to read the complaint "holistically". *El-Saba v. Univ. of S. Ala.,* Civ. No. 15-00087-KD-N, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (*citing Garayalde-Rios v. Municipality of Carolina,* 747 F.3d 15, 25 (1st Cir. 2014)).

Under this standard, as well as Rule 8(e), Rule 12, and Rule 15, the F&Rs do not obey established precedent in their analysis of the FAC; do not properly and completely perform the functions they are intended for; and, mistakenly state on <u>multiple</u> occasions that certain necessary factual content is missing from the FAC, when the truth is that it is <u>not</u> missing - all of which is prejudicial, and unfair, to a pro se Plaintiff seeking to assert her civil rights.

The F&Rs also fail completely to <u>identify</u>, and clarify, legal analysis/application to <u>each</u> purportedly "Rule 8"-defective claim or allegation so Plaintiff can grasp what it is she needs to do to satisfy the Magistrate's instructions and comments, why that is so, and what will correct those deficiencies to the Court's satisfaction (see *Akhtar v. Mesa,* 698 F.3d 1202, 1212 (9th Cir. 2012). For all of the above reasons, the F&Rs should be overruled and rejected by this Court.

Respectfully Submitted December 17ᵗʰ, 2022

Kimberly R. Olson, Plaintiff Pro Se

## **CERTIFICATION AND PROOF OF SERVICE**

I, Kimberly R. Olson affirm under penalty of perjury under the laws of the United States that I served the appearing defendants in this action, true copies of the foregoing document via US Mail to their attorney of record at the addresses below, on December 17, 2022 as follows:

1) J. Scott Donald
   601 University Ave., Ste. 225
   Sacramento, CA 95825

By: _Kimberly R. Olson_    12-17-22
Kimberly R. Olson, Plaintiff Pro Se    Date