1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    KIMBERLY OLSON,                        No. 2:21-CV-01482-KJM-DMC

12              Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS

14    ROBERT PUCKETT, SR., et al.,

15              Defendants.

16

17            Plaintiff Kimberly Olson, proceeding pro se, brings this civil action. Before the

18    Court is Plaintiff's motion for a preliminary injunction. See ECF No. 72.  Plaintiff seeks an order

19    enjoining Defendants from enforcement of Resolutions 2021-02 and 2021-09 ("Resolutions"),

20    which are the basis for water restrictions imposed upon Plaintiff.  See ECF No. 72, pg. 25.

21            Plaintiff's core arguments are that: (1) she has not been provided the opportunity

22    to address those violations alleged against her in July 2021; (2) the notices regarding water

23    restriction and termination are insufficient; (3) Defendants' adoption of, and reliance on, the

24    Resolutions were improper as they extend past any "time of arguable 'emergency'" and were

25    done so without any public hearings as required under California Water Code section 351; and

26    (4) the designation of 200/300 gallons per day restriction of water use in the Resolutions was

27    arbitrarily decided.  See ECF No. 72, pgs. 2-5.  Defendants oppose the motion. ECF No. 79.

28    Despite Plaintiff's attention to the charged unconstitutionality of the Resolutions, Plaintiff

                                             1

concedes that her water service currently meets the minimum standards to operate her residential water fixtures in "usable fashion." See ECF No. 72, pg. 26 n.56. Therefore, the undersigned recommends denying relief as Plaintiff has not shown an immediate and irreparable injury requiring Court intervention.

## I. BACKGROUND

Once again, Plaintiff seeks this Court's immediate intervention.  As with her prior motion for injunctive relief, see ECF No. 3, this motion is about water—one of life's basic necessities.   Plaintiff has submitted extensive arguments and exhibits contending that the Resolutions establishing water limits were unconstitutionally approved, that Defendants have engaged in inappropriate bidding and audit practices, and that Defendants have abused emergency declarations in order to obtain grants for HCSD.  The primary question is, however, whether this Court should intervene on an emergency basis because Plaintiff will be irreparably injured by the continued conduct of  Defendants such that the issues cannot wait until trial to be resolved.

Previously, the Court resolved the issue in Plaintiff's favor because Plaintiff was without water due to HCSD's conduct.  See ECF No. 29.  In the current motion, Plaintiff concedes that her water was fully restored on February 20, 2022.  See ECF No. 72, pgs. 3 n.4, 6, & 8.  Plaintiff now argues that she has been denied her due process rights with respect to the Resolutions.  But the facts asserted by Plaintiff here are not enough to warrant emergency relief.  Thus, the answer to the question of whether the Court must intervene to protect Plaintiff from irreparable harm is no, and the undersigned recommends Plaintiff's motion be denied.

### A.    **Procedural History**

Plaintiff initiated this action with a pro se complaint filed on August 18, 2021.  See ECF No. 1.  With her complaint, Plaintiff filed a motion for a temporary restraining order and declaration in support thereof.  See ECF No. 3 and 4.  On August 20, 2021, the District Judge issued a minute order referring Plaintiff's motion for a temporary restraining order to the undersigned.  See ECF No. 5.

/ / /

On August 23, 2021, the undersigned issued orders granting Plaintiff's application for leave to proceed in forma pauperis and directing Plaintiff to effect service of her motion for a temporary restraining order on the named defendants.  See ECF Nos. 6 and 7.  The Court also issued an order directing that the original complaint be served on the named defendants by the United States Marshall.  See ECF No. 8.

Following compliance with the Court's order directing service of Plaintiff's motion for a temporary restraining order, the Court issued an order directing Defendants to show cause why Plaintiff's motion should not be granted.  See ECF No. 12.  A briefing schedule was established, and the matter was set for hearing before the undersigned in Redding, California, on September 14, 2021.  See id.  On September 8, 2021, the Court denied Defendants' request for additional time and confirmed that the hearing remained on calendar for September 14 as originally scheduled.  See ECF No. 18.

Following the September 14 hearing, Plaintiff's motion for a temporary restraining order was taken under submission.  See ECF No. 24 (hearing minutes).  On September 17, 2021, the undersigned issued findings and recommendations that Plaintiff's motion for a temporary restraining order be construed as a motion for preliminary injunctive relief and, so construed, be granted.  See ECF No. 29.  Specifically, the undersigned recommended as follows:

1.  Plaintiff's motion for injunctive relief be granted to the extent Defendant Hornbrook Community Services District (HCSD) must provide Olson with water in compliance with internal rules and all other applicable state and local laws.

2.  HCSD be ordered to return Olson's water meter and attach a flow restrictor to it, limiting Olson to 200 gallons of water per day, or whatever generally applicable use restrictions HCSD enacts in order to conserve water.

3.  HCSD provide all required time periods between any notice of violation and any adverse action not covered by the order granting injunctive relief.

4.  HCSD be permitted to take regular readings of Olson's water meter and undertake any routine or emergency maintenance necessary.

/ / /

/ / /

3

5.     Olson be ordered not to tamper with or obstruct her water meter or the attached flow regulator, except to the extent an emergency situation requires maintenance of the meter. Olson should be further ordered to comply with all lawful directives from law enforcement, including orders to remove illegal obstructions to her water meter. Olson should further be ordered not to interfere with HCSD officials undertaking lawful, routine duties concerning her water meter.

6.     Olson be ordered to comply with all HCSD restrictions, including usage limits and restrictions on outdoor watering via the HCSD water system.

7.     That the order last during the pendency of this case.

Id. at 19-20 (emphasis in original).

Thereafter, despite the claimed exigence of the water issue and urgent need for injunctive relief, and despite the Court's findings and recommendations in her favor, on September 29, 2021, Plaintiff filed objections to the Court's findings and recommendations. See ECF No. 40. This triggered a further 14-day period within which Defendants could respond to Plaintiff's objections, which Defendants did on October 14, 2021. See ECF No. 45. On October 21, 2021, Plaintiff filed a reply to Defendants' response to Plaintiff's objections. See ECF No. 49. On December 6, 2021, the District Judge adopted the September 17, 2021, findings and recommendations in full. See ECF No. 52.

Plaintiff filed a first amended complaint on October 6, 2021. See ECF No. 44. Defendants filed their motion to dismiss Plaintiff's first amended complaint on October 20, 2021. See ECF No. 47. Plaintiff filed her motion for civil contempt, sanctions, and renewed request for injunctive relief on February 4, 2022. See ECF No. 67. Plaintiff filed yet another request for injunctive relief on March 16, 2022. See ECF No. 72. On August 3, 2022, the undersigned issued findings and recommendations granting Defendants' motion to dismiss and providing Plaintiff an opportunity to amend to cure the deficiencies. See ECF No. 109. Thereafter, Plaintiff filed a motion for clarification of the findings and recommendations, see ECF No. 113, to which this Court denied; the Court further directed the parties to file any objections to those findings and recommendations within 30 days of the date of the order. See ECF No. 120. The parties

/ / /

/ / /

4

1   complied.  See ECF Nos. 121, 122[1].  Outstanding before the Court is Plaintiff's motion for

2   injunctive relief filed on March 16, 2022, which has been fully briefed and submitted for decision

3   without oral argument.  See ECF No. 72.

4          **B.      Plaintiff's Allegations**

5          The action currently proceeds on Plaintiff's first amended complaint.  See ECF

6   No. 44.  As with the original complaint, Plaintiff names the following defendants: (1) Clint

7   Dingman, (2) Robert Puckett, Sr., (3) Michele Hanson, (4) Melissa Tulledo, and (5) the

8   Hornbrook Community Services District (HCSD).  See id., pg. 1.  Defendants Puckett, Dingman,

9   Hanson, and Tulledo are "the Directors and employees of Defendant Hornbrook Community

10  Services District."  Id., pg. 2.  Specifically, Defendants Puckett, Hanson, and Tulledo are

11  respectively President, Secretary, and Director of the HCSD board, and are sometimes referred to

12  as the "Board Defendants."  Id., pg. 3.  Defendant Dingman is "the HCSD's Systems Operator,

13  shift operator, . . . and/or water plant operator."  Id., pg. 3 n.8.  The HCSD is "a public entity

14  providing domestic water to the community of Hornbrook."  Id., pg. 2.  Plaintiff alleges that she

15  is a "water customer of the HCSD, which supplies the only source of potable water" to her home.

16  Id.  She also states that she is disabled, suffering from "mobility and other disabilities as a result

17  of spinal damage."  Id.

18         Plaintiff alleges that between July 19-23, 2021, there was no "usable water" in the

19  distribution system on her block, and "no water flowing from the taps" in her home.  Id., pg. 5.

20  She states that during this time, Defendants trespassed onto her land, and cut her home off from

21  the HCSD water system.  Id.  According to Plaintiff, they also plugged and locked off a

22  "residence side" supply pipe, which was Plaintiff's personal property, in order to prevent her

23  from accessing any alternative water supply.  Id., pg. 5-6.  She claims that in the process of

24  shutting off her water supply, officials took her "water meter, a utility van belonging to a

25  plumbing contractor  . . . and a 2001 Honda CR-V belonging to [her] Personal Caregiver."  Id.,

26

27         [1]      The District Court Judge has not yet ruled on the findings and recommendations
28  submitted by the undersigned.

1   pg. 5 n.11.  "Defendants also destroyed some of Plaintiff's landscaping and bushes."  Id.  At the

2   time of the alleged seizure of property, HCSD and Defendant Puckett told Plaintiff that no one

3   could use certain portions of her driveway, and that any vehicles parked in those sections would

4   be seized.  Id., pg. 6.

5           Plaintiff wrote to the HSCD on August 4, 2021, asking for explanation, the return

6   of any seized property, and the restoration of her water service.  See id.  She did not receive a

7   response.  See id.  Her billing statement from HCSD after the "discontinuation of water service

8   [did] not show any fines," or other reason for the shut-off.  Id., pg. 7.

9           As a result of the water shut-off, Plaintiff claims that she "has had to borrow and

10  expend substantial sums in constructing a system of temporary pumps, . . . and storage for potable

11  water."  Id.  She has also spent money to "have potable water delivered by truck."  Id.  Plaintiff

12  also states that this system only currently works because temperatures remain above freezing.  Id.,

13  pg. 7, n.16.

14          On September 17, 2021, this Court issued findings and recommendations granting

15  Plaintiff's motion for preliminary injunction and ordering that her water service be restored.  See

16  id., pg. 29.  As outlined above, the findings and recommendations provided that HCSD return

17  Plaintiff's water meter and limit her water usage in accordance with whatever "generally

18  applicable" use restrictions would apply.  See id., pg. 19.  It was further recommended that

19  Plaintiff be ordered not to tamper with or obstruct her water meter, and "not to interfere with

20  HCSD officials undertaking lawful, routine duties concerning her water meter."  Id.

21          Plaintiff addresses the Court's recommendations in her first amended complaint,

22  which was filed before the findings and recommendations were adopted in full by the District

23  Judge.  According to Plaintiff, the HCSD did not restore service for several days.  See ECF No.

24  44, pg. 7.  When Defendants did return water service to Plaintiff, they installed a flow restrictor,

25  which limited her to the use of "~1/6 of a gallon each minute, and about 4 gallons per day."  Id.

26  "Plaintiff notified the HCSD, and its President, Robert Puckett," of the alleged issues with the

27  water supply.  Id., pg. 8.  The only change was that the flow of water was increased to "1/2 gallon

28  each minute."  Id.

She alleges that all of this activity was in retaliation for numerous lawsuits she has commenced "against the HCSD and its officers for violations of the Brown Act" and for allowing a water leak to continue, leaking 25,000 gallons of water per day. Id., pg. 8 n.17. Plaintiff also alleges ongoing actions by Defendants. Plaintiff claims that following this, "HCSD, Puckett, and Dingman . . . fabricate[d], and submit[ted], false evidence" to this Court. Id., pg. 9. She also states the "HCSD Board Defendants" used their official positions to "gain access to Plaintiff's personal information as contained in her water account" and to provide that information to third parties to engender ill-will towards Plaintiff, though she does not provide additional factual specificity. Id. Furthermore, Plaintiff claims that HCSD and Board Defendants held improperly noticed Board meetings to coordinate creation and application of rules against Plaintiff, and to falsify records. Id., pg. 10.

Plaintiff also states that the HCSD, Board Defendants, and Dingman deliberately mis-operated water facilities and did not repair them. Id., pg. 11. This was "to create the false perception of an 'emergency' so as to wrongfully acquire public funds" while also retaliating against Plaintiff. Id.

### C.   Pending Motion for Injunctive Relief

#### 1.   Plaintiff's Contentions

Plaintiff's motion for injunctive relief[2], as well her declaration in support, primarily focus on her contention that the Resolutions are unconstitutional because a hearing under California Water Code section 351 was not conducted and, based on these Resolutions, Plaintiff has been prevented full restoration of her water in violation of her constitutional due

/ / /

---

[2]   Plaintiff submits her motion, reply, and all supporting documents in her usual verbose manner, extensively using footnotes and citing to various other court-filed documents throughout; such actions are contrary to the spirit of Local Rule 230(b) and places an undue burden on the Court requiring it to piece together multiple documents just to consider Plaintiff's argument. Going forward, Plaintiff is to make all arguments in the motion at hand, without incorporating other documents, and is similarly required to submit all evidence in support of the motion without directing the Court to evidence submitted elsewhere. See e.g., L.R. 230(b). The Court has limited resources and Plaintiff's excessive citations to other documents in the file is unhelpful.

process rights.[3]  See ECF No. 72, pgs. 2-5. Plaintiff bases her motion chiefly on facts alleging irreparable harm and the lack of due process afforded to her and other District customers relating to the Resolutions. See id.  Plaintiff submits eight grounds supporting her motion.  See id., pg. 2.

Plaintiff claims that on July 16, 2021, Defendants "unlawfully, fraudulently, wrongfully, arbitrarily, and capriciously adopted" resolution 2021-02 and thereafter enforced its provisions against Plaintiff.  Id.  Plaintiff claims that on August 18, 2021, Plaintiff filed her complaint alleging constitutional violations relating to the adoption and enforcement of the Resolutions.  See id.  After the September 14, 2021 hearing on Plaintiff's motion for injunctive relief, Plaintiff's service was "somewhat reconnected" on or about September 20, 2021.  Id., pg. 3.  Plaintiff asserts that,

> . . .[C]learly it was the expectation of the Court . . . and of Plaintiff . . .that HCSD would in good faith comply . . . by simply "attaching" a devise that would allow Plaintiff to actually use her water service in the same manner as other customers do, but which would also automatically (and temporarily) restrict the flow of water to plaintiff's service on any day in which the 200/300 gallon per day "limit" had been reached – and then that water service would . . . not resume until the next day's allotment became available.

> ECF No. 72, pg. 7.

Plaintiff maintains that the water is regulated in flow over a 24-hour period, which renders it "unusable" for Plaintiff's needs, because it "dribbles out of the tap."  Id., pgs. 7-8. Plaintiff argues that such flow regulation, in essence, would require her to "leave her taps on constantly to accumulate the water" for her use.  Id., pg. 8.  On this basis, Plaintiff claims that Defendants have not complied with this Court's order.  Id.  Plaintiff asserts that HCSD argues it "does not have to abide by the Codes and Regulations of the State of California regulating pressure and flow of water in people's homes" despite the District Judge's order that the HCSD must provide Plaintiff with water "in compliance with internal rules and all other applicable state

---

[3]    Plaintiff further contends, at great length, that there is a conflict of interest between Defendants and others regarding financial audits, a failure of Defendants to abide by established bidding requirements, and that Defendants' abused emergency declarations in order to obtain grants for HCSD.  See ECF No. 72, pgs. 15, 18, 21-23.  Even if true, there is no showing that these alleged acts constitute an immediate threat of harm to Plaintiff; thus these allegations will not be addressed here.

and local laws." Id., pg. 2. According to Plaintiff, Defendants have "declined to attach any type of devise that would simply prevent any use beyond 300 gallons" and instead, HCSD is inserting "flow restrictors" into Plaintiff's water service at random, without any notice, which Plaintiff alleges violates her due process requirements because she was not notified such restrictors would be inserted.  Id., pg. 8.

Plaintiff also asserts that she has "repeatedly" complained about a broken water valve and that water service to her home was unusable due to poor water pressure and flow.  See id., pg. 3. Plaintiff further complained that she was still being denied her due process rights to hearings concerning "any and all of the 'notices' and/or 'violations' attributed to her in July, 2021" in order to obtain full restoration of her water.  Id., pgs. 3, 25 & n.53, 26.

On or about December 20, 2021, resolution 2021-09 was "unlawfully, fraudulently, wrongfully, arbitrarily, and capriciously adopted" and enforced against Plaintiff, and the public, in a manner that was facially, and as applied, "unlawful, fraudulent, wrongful, reckless, arbitrary, capricious, and deliberately indifferent" to Plaintiff's and the public's federal and state statutory and constitutional rights.  Id., pg. 3.  Plaintiff alleges that Defendants engaged in wrongful conduct by (1) failing and refusing to respond to her requests for hearings regarding Defendants' July 2021 allegations, which were the basis for their enforcement actions, (2) refusing to respond to Plaintiff's requests for information concerning administrative procedures, which would allow Plaintiff to fully reinstate her water service, (3) failing and refusing to repair Plaintiff's broke water valve when reinstalling her "stolen water meter," and (4) failing and refusing to fully restore Plaintiff's water service to a useable state until February 20, 2022.  Id., pgs. 3-4.

Next, Plaintiff asserts that the Resolutions at issue were adopted and have been implemented and enforced unconstitutionally and contrary to the requirements established under Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978).  See id., pgs. 4, 9-10, 19, 26-27. Continuing, Plaintiff asserts that the Resolutions were unlawfully adopted because it was "well past any time of arguable [water] 'emergency'" and done so without any public hearings as required under state law.  Id., pgs. 4-5, 8-9, 19-21.  In doing so, Plaintiff and the public have been

deprived of full and complete water service without any substantial and procedures due processes. See id., pg. 5.  Plaintiff claims that the Resolutions allow HCSD to interfere with and terminate a customer's water service based on an observed violation, all without a hearing or "correctly-formulated, properly-served notice." See id., pgs. 24-25, 27, 29-30.  Plaintiff submits that the Resolutions and the resulting actions by Defendants are causing irreparable injury to Plaintiff and other District customers such that an order enjoining Defendants from enforcing such Resolutions is warranted.  See id., pg. 5.

Plaintiff asserts that the balance of equities tips sharply toward Plaintiff and other members of the public who are customers of HCSD because HCSD has failed to undertake any changes to its "clearly unconstitutional procedures relating to adoption, imposition, and enforcement of the Resolutions" and that compliance with the law costs Defendants "nothing-and would probably save them a great deal of money." Id., pg. 16.

Plaintiff contends that preventing Defendants from acting pursuant to the Resolutions is in the public interest. See id., pg. 5.  Plaintiff claims that it is in the public interest not to allow Defendants "and their collaborators and conspirators" to "establish[] dictatorial authority over all operations" of HCSD "as well as the distribution of its grant moneys via no-bid contracting – by way of fraudulent, arbitrary, capricious imposition of 'emergency' statuses, restrictions and punishments . . . ." Id., pg. 17.

2.      Defendants' Opposition

Defendants oppose Plaintiff's motion for injunctive relief.  ECF No. 79. Defendants argue only that Plaintiff has shown neither a likelihood of success on the merits nor irreparable harm. See id., pg. 7-8.  Defendants also request a stay of the action pending resolution of their motion to dismiss and request leave to file their late opposition.  See id., pgs. 4-6.

i.      Plaintiff's likelihood of success on the merits

Defendants argue that Plaintiff's First Amended Complaint is subject to dismissal based on the doctrine of res judicata and for failure to comply with Rule 8, as briefed in their motion to dismiss.  See id., pg. 7; see also ECF No. 47.  Defendants claim that, because Plaintiff has initiated several suits against these same Defendants alleging the same or similar claims and

1    that the cases have either been dismissed by the court or have motions to dismiss pending,

2    Plaintiff cannot here establish a likelihood of success on the merits because her complaints are

3    "plagued by baseless and conclusory allegations, speculative conjecture, and incoherent analysis."

4    See ECF No. 79, pgs. 7-8.  Defendants also argue that Plaintiff is a vexatious litigant in California

5    state court and that her "track record alone demonstrates that she is unlikely to succeed on the

6    merits of this case."  Id.

7                            ii.      Plaintiff's showing of irreparable harm

8             Defendants argue that Plaintiff cannot show irreparable harm because Plaintiff

9    admits that she had partially restored water service, and that her water service was fully restored

10   on February 20, 2022.  See ECF No. 79, pg. 8.   Further, Defendants argue that any failure of

11   Defendants in responding to Plaintiff's written demands for a hearing and any deficiencies of

12   notices based on the requirements set forth in Memphis Light are not grounds for emergency

13   injunctive relief.  See id.  Thus, Defendants assert, Plaintiff's motion seeking immediate redress is

14   patently frivolous.  See id.

15                           iii.      Defendants' request to stay action

16            Defendants request a stay be issued pending resolution of their motion to dismiss

17   (ECF No. 47), Plaintiff's motion for civil contempt sanctions and further preliminary injunction

18   (ECF No. 67), and Plaintiff's motion for partial summary judgment (ECF No. 68).  See ECF No.

19   79, pg. 4.  Defendants argue that Plaintiff is using the current motion for injunctive relief to

20   challenge the Court's ruling on her motion for temporary restraining order, which they contend is

21   improper because no appeal was filed; Plaintiff's actions, they assert, allow her "multiple bites at

22   the apple," while Defendants await a ruling on their dispositive motion.  See id.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1          iv.     Defendants' request to file a late opposition[4]

2                  Defendants' opposition was untimely, as it was filed on April 12, 2022, not March

3     30, 2022, as Local Rules require.  See ECF No. 79, pgs. 5-6.  Defendants claim that Plaintiff's

4     motion was filed approximately two weeks after the Court's Local Rules were amended causing a

5     calendar mishap, as Defense Counsel was unaware of the recent amendments. See id., pg. 5.

6     Defendants plead forgiveness and request the Court to use its inherent power and discretion to

7     excuse Defendant's noncompliance in order to resolve the matter on the merits, instead of a

8     technicality.  See id., pgs. 5-6.

9          3.     Plaintiff's Reply[5]

10                 Plaintiff asserts in her reply that "while the original emergency relief motion dealt

11    with restoring water service to Plaintiff[,]" the previous order did not "examine, address, or issue

12    rulings concerning the Constitutional issues surrounding the HCSD's adoption, implementation,

13    and oppressive enforcement mechanisms/procedures of [the Resolutions] . . . as set forth in the

14    current motion." ECF No. 95, pg. 12.   Like before, Plaintiff argues in reply that Defendants do

15    not respond to her allegations but only impugn her character.  See, e.g., id., pgs. 9-12.  Plaintiff

16    also chastises Defendants for their lackluster opposition, comparing it to "what a proper

17    opposition to a motion for injunction" looks like from another case, and proclaiming that because

18    their opposition does not address all of Plaintiff's allegations, it should be ignored as

19    unresponsive and Plaintiff's contentions be admitted.  See id., pgs. 10-11 & n.12, n.13, & n.16.

20    / / /

21    / / /

22    / / /

23          [4]     Plaintiff filed objections to Defendants' late-filed opposition, which not only
24    addresses the untimeliness of the opposition, but also Defendants' substantive position. Any
      arguments other than timeliness should instead be discussed on reply.  See ECF No. 83.
25          [5]     Plaintiff filed her reply and request for judicial notice with an administrative
      motion seeking to exceed the page limitations on reply.  See ECF Nos. 84-86. Thereafter, her
26    motion to exceed the page limitations was denied but she was granted an extension of time in
      which to file her reply.  See ECF No. 89.  Plaintiff then filed another reply and request for judicial
27    notice.  See ECF Nos.  95 & 96.  Thus, the reply and request for judicial notice initially filed,
      ECF Nos. 85 & 86, are superseded and will not be considered.  See ECF Nos. 95 & 96.
28

1    Plaintiff's 20-page reply needs no further summarization because it mostly repeats

2  allegations from her motion, as well as several other filings in this matter.  Plaintiff does,

3  however, submit additional evidence in support of her motion—not in response to Defendants'

4  opposition—in the form of three non-party declarations. See ECF Nos. 95-1, 95-2, 95-3.

5

6    ## II.  DISCUSSION

7    **A.**    <u>Standard of Review</u>

8    The primary purpose of a preliminary injunction is preservation of the status quo.

9  <u>See</u>, <u>e.g.</u>, <u>Ramos v. Wolf</u>, 975 F.3d 872, 887 (9th Cir. 2020). More specifically, the purpose of a

10  preliminary injunction is preservation the Court's power to render a meaningful decision after a

11  trial on the merits. <u>See</u>, <u>e.g.</u>, <u>Univ. of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981); <u>Barth v.</u>

12  <u>Montejo</u>, No. 2:19-cv-1874-DB-P, 2021 WL 1291962, at *1 (E.D. Cal. Apr. 7, 2021). It is meant

13  to maintain the relative positions of the parties and prevent irreparable loss of rights before a trial

14  and final judgment. <u>See</u>, <u>e.g.</u>, <u>Camenisch</u>, 451 U.S. at 395; <u>Ramos</u>, 975 F.3d at 887; <u>Doe #1 v.</u>

15  <u>Trump</u>, 957 F.3d 1050, 1068 (9th Cir. 2020). A preliminary injunction may assume two forms.

16  <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 878 (9th Cir. 2009).

17  Prohibitory injunctions prevent a party from acting, thus maintaining the status quo. <u>Id.</u> A

18  mandatory injunction directs some responsible party to act. <u>Id.</u> at 879.

19    The legal principles applicable to requests for injunctive relief are well established.

20  To prevail, the moving party must show that irreparable injury is *likely* in the absence of an

21  injunction. <u>See</u> <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing <u>Winter v.</u>

22  <u>Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20-22 (2008)); <u>see also</u> <u>All. for the Wild Rockies v.</u>

23  <u>Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011). To the extent that prior Ninth Circuit cases suggest

24  a lesser standard by focusing solely on the *possibility* of irreparable harm, such cases are "no

25  longer controlling, or even viable." <u>Am. Trucking Ass'ns, Inc. v. City of Los Angeles</u>, 559 F.3d

26  1046, 1052 (9th Cir. 2009); <u>see</u> <u>Cottrell</u>, 632 F.3d at 1132; <u>Stormans</u>, 586 F.3d at 1127. Instead, a

27  party must demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer

28  irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and

13

1   (4) an injunction is in the public interest. See, e.g., Winter, 555 U.S. at 20; Cottrell, 632 F.3d at

2   1131; Stormans, 586 F.3d at 1127.

3           The Ninth Circuit evaluates the above factors under a sliding scale. Cottrell, 632

4   F.3d at 1131–35. A stronger showing on one factor may offset a weaker showing on another. Id.

5   at 1132. But a plaintiff must make some showing on all four factors. Id. at 1135. Under the scale,

6   if the balance of hardships tips *sharply* towards the plaintiff, the plaintiff need only show "serious

7   questions going to the merits" provided that the plaintiff also satisfies the other two factors. Id. at

8   1131–35. Thus, when there are serious questions going to the merits and a balance of hardships

9   tips sharply towards the plaintiff, a preliminary injunction may issue if the plaintiff also shows

10  that there is a likelihood of irreparable injury and that the injunction is in the public interest. Id.

11  A preliminary injunction is an extraordinary remedy that is not awarded as of right. Winter, 555

12  U.S. at 24; Cottrell, 632 F.3d at 1131.

13          **B.      Preliminary Injunction**

14                  1.      Likelihood of Success on the Merits

15          Plaintiff raises several federal and state law claims in her complaint, but the

16  impetus of this current motion appears to be that she has been denied due process in all matters

17  related to the Resolutions.  Defendants' opposition did not substantively address these arguments.

18  The likelihood of success on the merits is the most important factor for the court to consider.

19  Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017); Garcia, 786 F.3d at

20  740.  Nevertheless, serious questions going to the merits of a plaintiff's claims are sufficient if the

21  balance of hardships tips sharply in her favor. Cottrell, 632 F.3d at 1131-35.

22          Under the Fourteenth Amendment's Due Process Clause, the government cannot

23  deprive individuals of life, liberty, or property without due process of law. U.S. const. amend

24  XIV; Wright v. Beck, 981 F.3d 719, 727 (9th Cir. 2020). One of due process' core promises is

25  that, before the government deprives someone of a protected interest, it must provide—at the very

26  least—notice. Wright, 981 F.3d at 727. At base, the Due Process Clause encompasses a promise

27  of fair procedure. See, e.g., Zinerman v. Burch, 494 U.S. 113, 125 (1990).

28  / / /

1      Constitutionally secured property interests do not extend from the Constitution

2  itself. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576–78 (1972); Roybal v. Toppenish

3  Sch. Dist., 871 F.3d 927, 931 (9th Cir. 2017); Nozzi v. Hous. Auth. of L.A., 806 F.3d 1178, 1191

4  (9th Cir. 2015). Rather, property interests are created, and their dimension defined, by existing

5  rules and understandings stemming from independent sources like state law. Roth, 408 U.S. 577;

6  Roybal, 871 F.3d at 931. In the context of procedural due process claims, it is not a deprivation

7  itself that is unlawful. Zinermon, 494 U.S. at 125. Rather, as implied above, what becomes

8  unconstitutional is deprivation of a liberty or property interest with sufficient due process. Id.; see

9  S.B. by and through Kristina B. v. Cal. Dep't of Educ., 327 F. Supp. 3d 1218, 1239 (E.D. Cal.

10  2018).

11      The violation actionable under § 1983 is thus not complete at the time of a

12  deprivation, but when the State fails to provide due process. Zinermon, 494 U.S. at 126. In order

13  to establish a procedural due process claim, a plaintiff must show (1) a protected liberty or

14  property interest (2) that the government deprived (3) without adequate "process." E.g., Hotop v.

15  City of San Jose, 982 F.3d 710, 718 (9th Cir. 2020); Shanks v. Dressel, 540 F.3d 1082, 1090 (9th

16  Cir. 2008); Brewster v. Board of Educ., 149 F.3d 971, 983 (9th Cir. 1998). Once the Court

17  determines that a protected interest has been deprived, the question becomes what procedures

18  satisfy "due process of law." E.g., Lavan v. City of Los Angeles, 693 F.3d 1022, 1031 (9th Cir.

19  2012); Brewster, 149 F.3d at 983; see Shinault v. Hawks, 782 F.3d 1053, 1057 (9th Cir. 2015).

20      Notice is critical because it facilitates an opportunity for individuals to be heard.

21  Wright, 981 F.3d at 727. When notice is due, mere gestures are not due process. Nozzi, 806 F.3d

22  at 1194. Notice must be reasonably calculated to apprise all interested parties of an impending

23  action and afford them an opportunity to present their objections. Id.; see Mullane v. Cent.

24  Hanover Bank & Trust, 339 U.S. 306, 314 (1950). In turn, a meaningful opportunity to be heard

25  minimizes unfair, erroneous deprivations. Wright, 981 F.3d at 727. While due process

26  requirements are flexible with the circumstances, the opportunity to be heard must be provided at

27  a meaningful time and in a meaningful manner. See Gilbert v. Homar, 520 U.S. 924, 930–31

28  (1997); Yagman v. Garcetti, 852 F.3d 859, 863–64 (9th Cir. 2017); Brewster, 149 F.3d at 984.

15

1             In the context of utility services, a vested property interest exists if plaintiffs can

2   establish a "legitimate claim" to continued service. <u>Memphis Light, Gas & Water</u>, 436 U.S. at 9–

3   12; <u>Autotek, Inc. v. County of Sacramento</u>, No. 2:16-cv-01093-KJM-CKD, 2020 WL 4059564, at

4   *17 (E.D. Cal. July 20, 2020). The extent of that right is defined and shaped by state and local

5   law. <u>See</u> <u>Memphis</u>, 436 U.S. at 11–12; <u>Parks v. Watson</u>, 716 F.2d 646, 656 (9th Cir. 1983);

6   <u>Autotek</u>, 2020 WL 4059564, at *17. Nevertheless, where state and local rules limit public

7   utilities' power to discontinue service, customers of that utility have a protected interest in

8   continued service. <u>Memphis</u>, 436 U.S. at 11–12; <u>Autotek</u>, 2020 WL 4059564, at *17.

9             Previously, the Court found Plaintiff had a property interest, and thus due process

10   was required prior to any termination of her water, which HCSD did not provide.  <u>See</u> ECF No.

11   29.  However, that is not the issue now before the Court.  Plaintiff asserts that "while the original

12   emergency relief motion dealt with restoring water service to Plaintiff[,]" the previous order did

13   not "examine, address, or issue rulings concerning, the Constitutional issues surrounding the

14   HCSD's adoption, implementation, and oppressive enforcement mechanisms/procedures of [the

15   Resolutions]  . . .  as set forth in the current motion." ECF No. 95, pg. 12.

16             In their 9-page opposition, Defendants do not substantively address Plaintiff's

17   arguments, other than to contend that there is no likelihood of success on the merits because she

18   is a vexatious litigant, similar cases have been dismissed or motions to dismiss are pending,

19   Plaintiff has failed in her first amended complaint to comply with Rule 8, and is subject to

20   dismissal based on the doctrine of res judicata.  <u>See</u> ECF No. 79, pgs. 7-8.[6]  Defendants do not

21   address how HCSD, in a manner allegedly contrary to the requirements of California Water Code

22   section 361, approved and passed the Resolutions without a public hearing.  In fact, Defendants'

23   opposition is devoid of any argument pertaining to the constitutionality of the Resolutions.

24

25          [6]     While the undersigned recommended that Defendants' motion be granted with
26   leave to amend, <u>see</u> ECF No. 109, the undersigned did not find Defendants' res judicata argument
persuasive because Defendants failed to adequately establish that the claims in other cases and
27   this one were identical and the current case does not arise out of the same transactional nexus of
facts as others.  <u>See</u> <u>id.</u>, pgs. 14-15.  The undersigned did find that Plaintiff failed to comply with
28   Rule 8 and recommended providing an opportunity to amend.  <u>See</u> <u>id.</u>, pgs. 16-17.

1          2.        Irreparable Harm

2          Plaintiff argues the Resolutions were approved and have been implemented and

3  enforced unconstitutionally.  See ECF No. 95, pg. 12. While her position may be worthy of

4  consideration, based on the facts here, such contentions do not rise to the level of irreparable

5  harm required for injunctive relief.  Irreparable harm is harm that cannot be redressed by legal or

6  equitable remedies. Cutera, Inc. v. Lutronic Aesthetics, Inc., 44 F. Supp. 3d 1198, 1208 (E.D. Cal.

7  2020). Irreparable injury must be *likely* in the absence of an injunction. Disney, 869 F.3d at 856.

8  At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that she will be

9  exposed to irreparable harm. Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,

10  634 F.2d 1197, 1201-02 (9th Cir. 1980).  Speculative injury is insufficient to warrant granting a

11  preliminary injunction." Caribbean Marine Services Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th

12  Cir. 1988); Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984)). A

13  plaintiff must do more than merely allege imminent harm; a plaintiff must demonstrate immediate

14  threatened injury as a prerequisite to preliminary injunctive relief. L.A. Coliseum, 634 F.2d at

15  1201; Caribbean Marine Servs. Co., 844 F.2d at 674 (finding district court failed to require a

16  showing that the harms alleged were imminent or likely); see also O'Shea v. Littleton, 414 U.S.

17  488, 497 (1974) (finding plaintiffs lacked standing to complain of injury that would occur only if

18  law actually violated and held to answer for that violation).  The deprivation of constitutional

19  rights may be considered irreparable harm in some circumstances. Goldie's Bookstore, 739 F.2d

20  at 472 ("An alleged constitutional infringement will often alone constitute irreparable harm.").  In

21  those instances, such actions must be intentionally utilized to infringe upon constitutional rights;

22  otherwise, a finding of irreparable injury does not follow.  See id.

23          Here, Plaintiff has not alleged sufficient facts to warrant the Court issuing a

24  preliminary injunction.  First and foremost, Plaintiff concedes that the pressure and flow rate "as

25  of the date of signing this Motion, currently meet the minimum standards to operate Plaintiff's

26  residential water fixtures in usable fashion." See ECF No. 79, pgs. 26 & 26 n.56.  This alone is

27  enough to defeat any argument that Plaintiff is sustaining irreparable harm by the actions of

28  Defendants sufficient to require Court intervention.  Indeed, Plaintiff is receiving water in

17

amounts that exceed HCSD's "generally applicable use restriction [that] HCSD enacts in order to conserve water"; in other words—Plaintiff is receiving 2100 gallons of water per day, more than HCSD's resolutions require.  See ECF Nos. 69, pg. 4, 69-1, pg. 2.

Next, the irreparable harm that Plaintiff alleges here is not similar to that in her previous motion.  Before, Plaintiff was left without access to water to "protect against loss by fire or permanent injury to her health."  ECF No. 29, pg. 17.  In contrast, here Plaintiff argues that "while the original emergency relief motion dealt with restoring water service to Plaintiff[,]" the previous order did not "examine, address, or issue rulings concerning, the Constitutional issues surrounding the HCSD's adoption, implementation, and oppressive enforcement mechanisms/procedures of [the Resolutions]  . . .  as set forth in the current motion." ECF No. 95, pg. 12.  Because Plaintiff concedes that her water was restored on February 20, 2022, see ECF No. 72, pgs. 3 n.4 & 26 n.56, Plaintiff has not shown that she is likely to suffer irreparable harm in the absence of injunctive relief addressing the constitutionality of the Resolutions.

Moreover, the primary purpose of a preliminary injunction is to preserve the status quo. The status quo here is the 200/300 gallons of water per day, pursuant to the Resolutions and the generally applicable use restrictions HCSD enacts in order to conserve water.  See e.g., ECF No. 29.  But HCSD exceeded those restrictions for Plaintiff.  See ECF Nos. 69, pg. 4, 69-1, pg. 2. Unlike before when Plaintiff was completely without water based on Defendants actions during fire season and the Covid-19 pandemic, Plaintiff cannot argue with the same force here that she is being irreparably harmed by receiving more gallons of water per day than other customers in the District.  Thus, a preliminary injunction is not warranted because Plaintiff has water for her basic needs while the case is pending. See Lo v. Cty. of Siskiyou, No. 2:21-CV-00999-KJM-AC, 2022 WL 1505909, at *9 (E.D. Cal. May 12, 2022).

Furthermore, despite Plaintiff asserting that it's "well past any time of arguable 'emergency'," in limiting Plaintiff's water, there is no question that the State of California is in a drought.  See https://www.waterboards.ca.gov/drought/drought_orders_proclamations.html, accessed Jan. 23, 2023.  The State is, and has been, under emergency curtailment regulations for water consumption.  See id.  In fact, Governor Newsom issued executive orders addressing the

18

State's drought condition in May 2021, July 8, 2021, October 19, 2021, and March 28, 2022—the timeframe in question.[7]  See id.; see also Murphy v. Schwarzenegger, No. CIVS-09-2587JAM DAD, 2010 WL 3521958, at *3 (E.D. Cal. Sept. 8, 2010) (On February 27, 2009, the Governor issued a State of Emergency-Water Shortage Proclamation finding California to be in an official drought condition.); see also Lo, 2022 WL 1505909, at *1 ("[W]ater has become more precious in recent years as a result of prolonged and often severe droughts").

In addition, Plaintiff's allegations that HCSD's Resolutions do not provide for a hearing after installation of a flow regulator prior to termination of water services may implicate due process concerns; however, Plaintiff does not argue that she is in danger, in fact, of losing her water.  See ECF No. 72, pg. 9.  Plaintiff's claims are too attenuated and conjectural to constitute an irreparable harm justifying injunctive relief.  Multiple contingencies must occur before Plaintiff's injury would ripen into a concrete harm:  Plaintiff must demonstrate that she is in immediate threat of having her water terminated, without notice or opportunity to be heard, because she has continued to violate HCSD's restrictions and Plaintiff must also show that such enforcement by HCSD is imminent.[8]  Such future injury is speculative.

As to Plaintiff's argument that the notices provided by HCSD are insufficient to meet the requirements established under Memphis Light, such deficiencies, as to Plaintiff, are also insufficient to warrant immediate action by this Court.[9]  As stated, Plaintiff is ordered to comply with all HCSD restrictions, including usage limits and restrictions on outdoor watering; if Plaintiff fails to abide by this Court's order, then Plaintiff will be in contempt of Court.  See ECF 52, pg. 2.  Therefore, whether or not HCSD has afforded Plaintiff the Due Process requirements

---

[7]    Judicial notice of executive orders issued by the State Governor is proper.  Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

[8]    If Plaintiff violates HCSD's generally applicable water restrictions imposed upon her triggering such immediate harm, then Plaintiff will also be in violation of this Court's order. See ECF 52, pg. 2 ("Olson is ordered to comply with all HCSD restrictions, including usage limits and restrictions on outdoor watering.").

[9]    To the extent Plaintiff is arguing HCSD's notices are insufficient as to its other customers, an injunction may not be issued on these facts.  Plaintiff is proceeding in propria persona here and may not appear on behalf of others.

1    established under <u>Memphis Light</u> is immaterial.  Plaintiff is under a direct order from this Court

2    to comply with HCSD's restrictions or risk sanctions.  As a result, because the violation and

3    enforcement is speculative, as well as a violation of this Court's order, the sufficiency of the

4    notice provided to Plaintiff when, and if, Plaintiff is in violation of the restrictions, does not rise

5    to the level of irreparable harm required for the Court to intervene.  Such arguments may wait

6    until trial for resolution.

7            Finally, the limitation of 200/300 gallons of water per day is not an adverse action

8    based on Plaintiff's overuse of water; the resolution provides that "[a]ll residential water users

9    shall be restricted to 200 gallons of water per household per day." ECF No. 72-1, pg. 36.  Only

10   after a customer fails to abide by the usage limit does HCSD issue a warning, which may result in

11   the installation of a flow regulator/restrictor in order to force compliance with the 200/300 gallons

12   of water per day restriction.  <u>See</u> <u>e.g.</u>, ECF 72-1, pg. 17.  Only then, after failure of the flow

13   regulator/restrictor to correct the customer's usage does HCSD retain the right to terminate

14   service.  <u>See</u> <u>id.</u>

15           Plaintiff appears to contend that the 200/300 gallons of water per day is an adverse

16   action by Defendants and that a hearing or other administrative process to correct any

17   "violations" would restore unrestricted use of her water.  <u>See</u> <u>e.g.</u>, ECF No. 72, pg. 28.  Plaintiff's

18   argument that she has not been afforded the opportunity to have a hearing to contest the

19   restriction or identify and pay any amounts due as a condition of full restoration of service is

20   extraneous.  <u>See</u> ECF No. 72, pg. 26.  According to Plaintiff, her water has been fully restored;

21   thus, no adverse action has been taken by Defendants, which Due Process can cure.  <u>see</u> ECF No.

22   72, pgs. 3 n.4 & 26 n.56.  Therefore, because Plaintiff concedes that she currently has water—

23   ostensibly over and above what other customers have—a preliminary injunction on these facts

24   would go far beyond preserving the status quo.

25   / / /

26   / / /

27   / / /

28   / / /

3.      Balance of the hardships

The Court next examines whether Plaintiff has established that the balance of hardships tips sharply in her favor. Winter, 555 U.S. at 20. To assess this prong, a court "balance[s] the interests of all parties and weigh[s] the damage to each." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009) (citing L.A. Coliseum, 634 F.2d at 1203). Here, it is not enough for there to be serious questions as to the merits of a due process claim. See Paramount Land Co. LP v. Cal. Pistachio Comm'n, 491 F.3d 1003, 1012 (9th Cir. 2007). Rather, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 542 (1987).

Because Plaintiff concedes she has water and thus she is not at risk of being immediately and irreparably harmed by any purported unconstitutionality of the Resolutions, the balance of equities does not lean sharply toward Plaintiff.  See ECF No. 72, pgs. 3 n.4 & 26 n.56. Because Plaintiff has water, any displeasure at the volume of water she is limited to pursuant to the Resolutions tips the balance of hardships in the favor of Defendants.  During this time of extreme drought in the State, prohibiting HCSD from enforcing water regulations in order to meet the requirements of all its customers would indeed create a greater magnitude of hardship on Defendants than on Plaintiff.

4.      Public interest

In exercising discretion, courts of equity must pay particular attention to the public consequences in utilizing the extraordinary remedy of an injunction. Winter, 555 U.S. at 24. A court must balance competing claims of injury and consider the effect of granting or withholding relief each party. Id. A plaintiff bears the initial burden of showing an injunction is in the public interest. Stormans, 586 F.3d at 1139. The Court need not consider public consequences that are "highly speculative," but "should weigh the public interest in light of the *likely* consequences of the injunction." Id. (emphasis in original). Those consequences must not be too remote, insignificant, or hypothetical and must be supported by evidence. Id.

/ / /

21

1        Plaintiff argues that vindication of her constitutional rights is in the public interest.

2  See ECF No. 72, pg. 17.  Unlike before when Plaintiff had no water, here Plaintiff is not seeking

3  restoration of her water, but an order enjoining HCSD from enforcing water restrictions through

4  its Resolutions.  In this instance, there is a significant public consequence in the granting of an

5  injunction:  if there is no regulation of the limited water supply, HCSD presumably risks not

6  having enough water for its customers.  The public interest is best served by maintaining the

7  status quo and waiting until trial to resolve the issue of whether the Resolutions were approved

8  and have been implemented and enforced unconstitutionally.  Because there is no irreparable

9  harm to Plaintiff and she does not represent the interests of other HCSD customers, any issue of

10  public interest weighs in favor of Defendants.

11        5.    Bond

12        Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary

13  injunctive relief "only if the movant gives security in an amount that the court considers proper to

14  pay the costs and damages sustained by any party found to have been wrongfully enjoined or

15  restrained." Despite the seemingly mandatory language, "Rule 65(c) invests the district court

16  'with discretion as to the amount of security required, if any.'" Jorgensen v. Cassidy, 320 F.3d

17  906, 919 (9th Cir. 2003) (quoting Barahona–Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir.

18  1999)). In particular, "[t]he district court may dispense with the filing of a bond when it

19  concludes there is no realistic likelihood of harm to the defendant from enjoining his or her

20  conduct." Id.  Because the undersigned recommends denying Plaintiff's motion for injunctive

21  relief, the question of whether to require the filing of a bond is moot.

22

23               **III.  CONCLUSION**

24        The undersigned United States Magistrate Judge recommends denying Plaintiff's

25  motion for injunctive relief as Plaintiff has failed to show that she will suffer irreparable harm

26  without the Court's immediate intervention.  Plaintiff concedes she has useable water.  Insofar as

27  Plaintiff argues that the Resolutions were approved and have been implemented and enforced

28  unconstitutionally, these are matters that can be properly addressed at trial without the harsh

1    actions of an injunction.

2            The undersigned thus recommends that Plaintiff's motion for injunctive relief,

3    ECF No. 72, be denied.

4            These findings and recommendations are submitted to the United States District

5    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days

6    after being served with these findings and recommendations, any party may file written objections

7    with the Court. Responses to objections shall be filed within 14 days after service of objections.

8    Failure to file objections within the specified time may waive the right to appeal. See Martinez v.

9    Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11   Dated:  February 9, 2023

12                                          _____
                                            DENNIS M. COTA
13                                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            23