**SPINELLI, DONALD & NOTT**
A Professional Corporation
J. SCOTT DONALD, SBN: 158338
JEFFREY C. ARNOLD, SBN: 307748
601 University Avenue, Suite 225
Sacramento, CA 95825
Telephone:  (916) 448-7888
Facsimile:   (916) 448-6888

Attorneys for Defendants
**ROBERT PUCKETT, SR., CLINT DINGMAN, MICHELE HANSON, MELISSA TUELLEDO and HORNBROOK COMMUNITY SERVICES DISTRICT**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY R. OLSON,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT PUCKETT, SR., CLINT DINGMAN; MICHELE HANSON; MELISSA TUELLEDO; HORNBROOK COMMUNITY SERVICES DISTRICT; BRUCE'S TOWING/RADIATOR & DISMANTLING; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No.:  2:21-cv-1482-KJM-DMC (PS)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMMENDATIONS OF MAGISTRATE JUDGE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Complaint Filed: August 18, 2021<br>FAC filed October 6, 2021<br>Trial Date:  TBD |

---

1
DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMMENDATIONS OF
MAGISTRATE JUDGE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Plaintiff Kimberly Olson ("Plaintiff" or "Olson") has been waging a private war against Defendant Hornbrook Community Services District ("HCSD") by filing numerous lawsuits naming the District, its board members, employees, contractors, consultants and even its former legal counsel Robert Winston. (See C.A.E.D. Dkts. 2-14-cv-01595-KJM-GGH, 2:15-cv-1274-MCE-AC-PS, 2:16-cv-0955 KJM-GGH, 2:19-cv-00031-KJM-AC).

In his Findings and Recommendations on August 14, 2017, Hon. Gregory G. Hollows, U.S. Magistrate Judge of the Eastern District of California, stated that "[t]he instant case is an example of a purposeful overloading of the court with pleadings which take up more than warranted judicial attention, but which simultaneously demonstrate a desire to wage a war of attrition on the opposing parties. There seems to be no desire on plaintiff's part to ever reach the merits of a viable claim; rather, there seems to be much desire to use the litigation process per se as an end in itself." (See *Harrell v. Hornbrook*, 2017 WL 3493636, ECF No. 157)

Plaintiff's most recent motion for preliminary injunction, effectively her third motion for preliminary injunction in this case, is simply a continuation of these efforts.  Plaintiff's thirty-two (32) page motion restates the same arguments that were made in her prior motions.  Plaintiff's primary concerns that she requests for this court to immediately redress is 1) poor water pressure/flow to her house and 2) HCSD's failure to provide notice and hearing for its passage of resolutions on July 16, 2021, and December 20, 2021.  However, Plaintiff has utterly failed to demonstrate irreparable harm or the need for the extraordinary remedy of injunctive relief.  In fact, Plaintiff plainly admits that she had partially restored water service and that her water service was fully restored on February 20, 2022. (ECF No. 72, p. 3, fn. 4)  Pursuant to this court's order on December 6, 2021, Plaintiff was not even entitled access to full water service.  Instead, this court ordered that Plaintiff's water be restricted to 200 gallons of water per day, or whatever generally applicable use restrictions HCSD enacts in order to conserve water. (ECF No. 52)  Rather than appeal the order, Plaintiff has instead opted to collaterally attack it with successive motions for preliminary injunction.  Plaintiff's motion for emergency relief is baseless and must be denied.

/ / /

## II. PROCEDURAL HISTORY

Plaintiff Kimberly Olson filed her Complaint on or about August 18, 2021. (ECF No. 1). Plaintiff concurrently filed a Motion for Temporary Restraining Order and Preliminary Injunction with her Complaint. (ECF No. 3) Defendants filed a written Opposition on September 3, 2021. (ECF No. 17) A hearing on Plaintiff's Motion was held on September 14, 2021. On September 17, 2021, the Honorable Dennis M. Cota submitted Findings and Recommendations to the U.S. District Judge assigned to the case. (ECF No. 29) On September 29, 2021, Plaintiff Olson filed Objections to Judge Cota's Findings and Recommendations. (ECF No. 40) On October 14, 2021, Defendants filed a response in opposition to Plaintiff Olson's Objections. (ECF No. 45) On December 6, 2021, U.S. District Judge Kimberly J. Mueller adopted Judge Cota's Findings and Recommendations in full. (ECF No. 52) Judge Mueller's order stated that "Within 10 days of the date of this order, HCSD is ordered to return Olson's water meter and attach a flow restrictor to it, limiting Olson to 200 gallons of water per day, or whatever generally applicable use restrictions HCSD enacts in order to conserve water."

Defendants filed a 12(b)(6) motion to dismiss on September 17, 2021 (ECF No. 30). Instead of opposing Defendants' motion, Plaintiff filed a First Amended Complaint on October 6, 2021. (ECF No. 44) Defendants filed a 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint on October 20, 2021. (ECF No. 47) On December 1, 2021, Plaintiff filed a Motion to Strike Portions of Defendants' Motion to Dismiss. (ECF No. 51) On December 28, 2021, this Court took Defendants' Motion to Dismiss and Plaintiff's Motion to Strike off calendar and deemed the matters submitted on the record without oral argument. (ECF No. 59)

On February 4, 2022, Plaintiff filed a Motion for Civil Contempt Sanctions and Further Injunction. (ECF No. 67) Defendants filed written opposition to Plaintiff's Motion for Civil Contempt Sanctions on February 23, 2022. (ECF No. 69) On February 22, 2022, Plaintiff filed a Motion for Partial Summary Judgment. (ECF No. 68) On March 17, 2022, Plaintiff filed the instant Motion for Preliminary Injunction.

Plaintiff currently proceeds on her first amended complaint which was [modified] after this court granted in part Defendants 12 (b)(6) motion to dismiss. This Court granted Defendants' motion to dismiss in part but gave Plaintiff leave to amend her complaint. However, Plaintiff chose not to amend

1  her complaint and elected to proceed on the portions of her complaint that survived Defendants'
2  12(b)(6) motion. (ECF No. 128) Currently, Plaintiff's operative complaint seeks causes of actions
3  against Defendants stemming from her claims of violations of her constitutional rights by Defendants.

## III. DISCUSSION

### a. Standard of Review for Preliminary Injunction

The standard to be granted the extraordinary relief Plaintiff seeks by way of this preliminary injunction is well understood and was thoroughly analyzed by the Magistrate Court. (ECF No. 123, p. 13 – 22.)  Injunctive relief is an extraordinary measure that should only be granted if the moving party demonstrates that she will likely succeed on the merits and is likely to suffer irreparable harm in the absence of an injunction. ECF No. 123, p. 13:9 – 14:2 citing *Winter v. Nat. Res. Def. Counsel, Inc.* 555 U.S. 7, 20 – 22, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.")

The purpose of a temporary restraining order or a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined.  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  "A plaintiff seeking a preliminary injunction [or temporary restraining order] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  FRCP 65(a), *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

"A preliminary injunction is an extraordinary remedy never awarded as of right.  In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  *Winter*, 555 U.S. at 24 (internal citations omitted); see *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (A preliminary injunction is a "drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.")

In other words, a party seeking a preliminary injunction simply cannot prevail when the motion

is unsupported by evidence. A motion for preliminary injunction must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings." *Fidelity Nat. Title Ins. Co. v. Castle*, No. C-11-00896-SI, 2011 WL 5882878, *3 (N.D. Cal. Nov. 23, 2011) (citing 9 Wright & Miller, Federal Practice & Procedure §2949 (2011)). The plaintiff, as the moving party, bears the burden of establishing the merits of his or her claims. See *Winter*, 555 U.S. at 20, see also *Coltharp v. Herrera*, 584 Fed.Appx. 334, 336 (9th Cir. 2014) (such relief is "particularly disfavored" and should be denied "unless the facts and law clearly favor the moving party).

      **b.**      **Plaintiff is not entitled to the extraordinary remedy of a preliminary injunction.**

           i.    <u>The Water Boards' resolutions of which Plaintiff challenges the constitutionality cannot cause her any harm, let alone irreparable harm.</u>

Irreparable harm is harm that cannot be redressed by legal or equitable remedies. (*Cutera, Inc. v. Lutronic Aesthetics, Inc*. 44 F. Supp. 3d 1198, 208 (E.D. Cal. 2020.) To obtain the extraordinary relief of a preliminary injunction, irreparable injury must be likely in the absence of an injunction. *Disney*, 869 F.3d at 856. At a minimum, a Plaintiff seeking preliminary injunctive relief must demonstrate that she will be exposed to irreparable injury. (*Los Angeles Mem'l coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1187, 1201 – 02 (9th Cir. 1980.) Particularly relevant to Plaintiff's current motion, "speculative injury is insufficient to warrant granting a preliminary injunction." *Caribbean Marine Services Co., Inc. v Baldrige*, 844 F.2d 668, 674 (9th Cir. 1984.). A Plaintiff seeking a preliminary injunction must do more than merely allege imminent harm; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. (L.A. Coliseum, 634 F.2d at 1201.

As the Magistrate Court found, Plaintiff has not alleged sufficient facts to warrant the Court to further intervene and impose additional injunctive relief than the relief she was already granted. Plaintiff herself concedes that the pressure and flow rate "currently meet the minimum standards to operate Plaintiff's residential water fixtures in usable fashion." ECF No. 79, pgs. 26 & 26 fn. 56. As Judge Cota correctly found, "this alone is enough to defeat any argument that Plaintiff is sustaining irreparable harm by the actions of Defendants sufficient to require [further] court intervention."

Plaintiff's objections to the Findings and Recommendations confusingly claim that, "while the original emergency relief motion dealt with restoring water service to Plaintiff[,]" the previous order did

1 not "examine, address, or issue rulings concerning, the Constitutional issues surrounding [the claimed
2 unconstitutional application of the subject Resolutions.]." ECF No. 95, p. 12; See also ECF No. 136, p.
3 1. According to Plaintiff, her lengthy arguments in her motion to the Magistrate Court "led the
4 Magistrate astray, as his F&Rs are gravely sidetracked into the details of Plaintiff's water service, rather
5 than analyzing the HCSD's 'no process' rules."

6     Problematic to Plaintiff's objection is that the Magistrate Court did, and correctly, analyzed all of
7 the legal factors in granting her preliminary injunction, including whether the subject resolutions that
8 Plaintiff claims are unconstitutional subject her to any immediate threat of irreparable harm. As the
9 Magistrate Court correctly found, any alleged constitutional violations in relation to the alleged
10 offending resolutions do not threaten here with any immediate injury. ECF No. 123, p. 16 – 20. Thus,
11 she cannot be granted the extraordinary relief of a preliminary injunction. *Id*. at p. 20:22 – 24 ("a
12 preliminary injunction on these facts would go far beyond preserving the status quo.").

13     As the Magistrate Court noted, both Plaintiff and Defendants remain subject to this Court's
14 original restraining order issued in favor of Plaintiff. The Court's order prevents Defendants from
15 further restricting Plaintiff's water usage, and just as importantly, Plaintiff is ordered to comply with all
16 of Defendants' watering restrictions. ECF No. 123, p. 19 citing ECF No. 52, pg. 2. As the Magistrate
17 Court noted, the imposition of the current injunction makes any potential threat of harm from the
18 implementation of the current resolutions immaterial. ECF No. 123, p. 19:21 – 20:1 9 ("Therefore,
19 whether or not HCSD has afforded Plaintiff the Due Process requirements established under <u>Memphis
20 Light</u> is **immaterial**." [emphasis added.].) If Plaintiff were to act in violation of the challenged
21 resolutions, she would not just be in violation of the restrictions, she would be in violation of this
22 Court's order and risk sanctions. Because any "violation and enforcement is speculative, as well as a
23 violation of this Court's order, the sufficiency of the notice provided to Plaintiff, when, and if, Plaintiff
24 is in violation of the restrictions, does not rise to the level of irreparable harm required for the Court to
25 intervene. **Such arguments may wait until trial for resolution**." ECF No. 123, p. 20:3-6 (emphasis
26 supplied.).

27     As stated above, the Magistrate Court was not "lead astray" and did not become "sidetracked."
28 Rather, the Magistrate Court directly considered Plaintiff's claims but found that there was no threat of

irreparable harm.

### ii. Balance of hardship

The Magistrate Court also correctly examined whether Plaintiff has established that the balance of hardships tips sharply in her favor. *Winter*, 555 U.S. at 20. To assess this prong, a court "balance[s] the interests of all parties and weigh[s] the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (citing L.A. Coliseum, 634 F.2d at 1203).

The Magistrate Court correctly found that, it is not enough for there to be serious questions as to the merits of a due process claim. See *Paramount Land Co. LP v. Cal. Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007). Rather, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, AK, 480 U.S. 531, 542 (1987)

Because Plaintiff concedes she has water and thus she is not at risk of being immediately and irreparably harmed by any purported unconstitutionality of the Resolutions, the balance of equities does not lean sharply toward Plaintiff. See ECF No. 72, pgs. 3 n.4 & 26 n.56. Because Plaintiff has water, any displeasure at the volume of water she is limited to pursuant to the Resolutions tips the balance of hardships in the favor of Defendants. During this time of extreme drought in the State[1], prohibiting HCSD from enforcing water regulations in order to meet the requirements of all its customers would indeed create a greater magnitude of hardship on Defendants than on Plaintiff.

### iii. Public interest

In exercising discretion, courts of equity must pay particular attention to the public consequences in utilizing the extraordinary remedy of an injunction. *Winter*, 555 U.S. at 24. A court must balance competing claims of injury and consider the effect of granting or withholding relief on each party. Id. A plaintiff bears the initial burden of showing an injunction is in the public interest. *Stormans*, 586 F.3d at 1139. The Court need not consider public consequences that are "highly speculative," but "should weigh the public interest in light of the *likely*

---

[1] During the intervening time of the magistrate courts Finding and Recommendation and Plaintiff's objections filed, this State enjoyed an above average rainfall year. However, one above average rainfall year does not alleviate drought conditions and Plaintiff has made no argument related to this in her objection.. .

1 consequences of the injunction." Id. (emphasis in original). Those consequences must not be too
2 remote, insignificant, or hypothetical and must be supported by evidence. Id.

3     Plaintiff argued that vindication of her constitutional rights is in the public interest.
4 See ECF No. 72, pg. 17. Unlike before when Plaintiff had no water, here Plaintiff is not seeking
5 restoration of her water, but an order enjoining HCSD from enforcing water restrictions through
6 its Resolutions. In this instance, there is a significant public consequence in the granting of an
7 injunction: if there is no regulation of the limited water supply, HCSD presumably risks not
8 having enough water for its customers. The public interest is best served by maintaining the
9 status quo and waiting until trial to resolve the issue of whether the Resolutions were approved
10 and have been implemented and enforced unconstitutionally. Because there is no irreparable
11 harm to Plaintiff and she does not represent the interests of other HCSD customers, any issue of
12 public interest weighs in favor of Defendants.

        iv.    <u>Success on the merits</u>

14     Plaintiff's operative complaint and current motion attack the constitutionality of water
15 restrictions put in place by Defendants in response to this State's emergency drought conditions,
16 specifically how they are implemented against Plaintiff. It remains unclear both from Plaintiff's
17 allegations and her current motion what exactly about the subject resolutions Plaintiff finds
18 objectionable.  The current restrictions found in the subject resolutions are familiar to all California
19 water customers.  Water customers are restricted in the water usage so not to waste the scarce water
20 resources.

21     Water Code section 353 specifically authorizes a governing board of water to adopt regulations
22 and restrictions on the delivery of water when faced with emergency situations and a depleted water
23 supply.  Moreover, Water Code section 375 specifically allows a water district to adopt resolutions and
24 water conservation programs to adopt and enforce those programs.

25     That is all Defendants are doing with the currently operative resolutions, maintaining its water
26 supply so it may continue to provide the scarce resource.  Plaintiff, who is an aggrieved former board
27 member, has instead taken this as a private attack on her and has waged this war against Defendants
28 based on her status as a pro se litigant. The subject resolutions are both legal and necessary and Plaintiff

8

DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMMENDATIONS OF
MAGISTRATE JUDGE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1 has not shown she will prevail on the merits in this matter. Regardless, such finding must wait for a trial
2 on the matter as Plaintiff cannot show that she could be irreparably harmed by the subject resolutions
3 because she is currently under this Court's order to abide by the resolutions.

4     Furthermore, it is unclear exactly what constitutional right Plaintiff currently claims is being
5 violated. As the Magistrate Court analyzed, constitutionally secured property interests do not extend
6 from the constitution itself. ECF No. 123. (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 567 -578 (1972).
7 Rather, property interests are created and defined by existing sources of law such as state law. *Roth*, 408
8 U.S. 577.

9     Plaintiff, and every other water customer in this state, has a property interest in "safe, clean,
10 affordable, and accessible water adequate for human consumption, cooking, and sanitary purposes."
11 Water Code § 106.3 (a); see also Water Code § 102. However, an assumption that agrees with
12 Plaintiff's implication that she has an unfettered right to any amount of water she may wish to use,
13 especially in a region constantly plagued with drought conditions, is unfounded. See Water Code § 102
14 ("the right to the use of water may be acquired by appropriation.") see also Water Code § 365 et seq,
15 (Excessive Residential Water Use During Drought). There is no provision of law, either in the Water
16 Code or elsewhere, that Defendants are aware of, that gives Plaintiff a property interest in unrestricted
17 rights to water usage.

18     Plaintiff's immediate right to water was addressed by this Court's order ruling on her temporary
19 restraining order. Pursuant to the Court's order, Plaintiff's water access has been restored well beyond
20 her protected property interest in water for consumption, cooking, and sanitary purposes. The
21 resolutions challenged by Plaintiff's complaint and this motion restrict water only beyond the necessities
22 secured by Water Code § 106.3. The restrictions instead limit water consumption for non-critical needs
23 such as filling pools. As discussed above, because there is not constitutionally protected property
24 interest in water use well beyond the interest secured by section 106.3, Plaintiff cannot establish that the
25 resolutions threated a constitutionally threatened property interest. Accordingly, Plaintiff cannot
26 demonstrate any likelihood on the merits. Without a recognized property interest, Plaintiff's claims that
27 the subject resolutions might violate of the constitution predicated on due process violations must fail.
28 She cannot establish that any notice is due under the requirements of the constitution which is the basis

of her claims for relief.

## IV. CONCLUSION

Plaintiff cannot show that she currently faces any real threat of irreparable harm for which any further injunctive relief is necessary. She instead seeks to determine the merits of her case against Defendants through intermediate, injunctive relief. Plaintiff of course cannot do this. She must await for a trial on this matter. For the reasons discussed herein, Defendants' opposition to Plaintiff's motion, and the Magistrate Court's finding and recommendations, this court should adopt the Findings and Recommendations in full.

Dated: June 26, 202                                          **SPINELLI, DONALD & NOTT**


By:___/s/  Jeffrey C. Arnold_____
J. SCOTT DONALD
JEFFREY C. ARNOLD
Attorneys for Defendants
ROBERT PUCKETT, SR., CLINT DINGMAN, MICHELE HANSON, MELISSA TUELLEDO and HORNBROOK COMMUNITY SERVICES DISTRICT